UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
PETERSEN ENERGÍA INVERSORA, S.A.U. and
PETERSEN ENERGÍA, S.A.U.,

                Plaintiffs,

    -against-

ARGENTINE REPUBLIC and YPF S.A.,

                Defendants.
---------------------------------------------------------------x

Case No. 15 Civ. 2739 (TPG)

## DECLARATION OF JAVIER ERRECONDO IN SUPPORT
## OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to 28 U.S.C. § 1746, I, Javier Errecondo, state the following:

1. I prepared this declaration at the request of counsel for the Republic of Argentina, one of the defendants in this case.

2. I am an attorney duly licensed and admitted by the Bar of the City of Buenos Aires, Argentina. I am also admitted by the Bar of the State of New York. I have experience of more than 25 years in advising foreign clients in investments, financing and other business transactions involving Argentine counterparties, including the sovereign state and sub-sovereign entities. I was a member of the Latin American practice group at the New York office of Shearman & Sterling from 1988 to 1991. I have served as special legal counsel to financial institutions in many of the most important financial transactions involving YPF, including its privatization through an international public offering of shares and numerous debt capital market transactions. For that reason, I am familiar with the bylaws of YPF as well as with similar provisions related to mandatory tender offer provisions contained in the bylaws of other

Argentine listed companies, having analyzed many of them and participated in drafting of many of the most recent ones.  I have extensive experience in representing financial institutions in cross-border financings and have issued numerous legal opinions supporting transactions of billions of dollars in the aggregate.

3. I co-founded the Buenos Aires law firm Errecondo, González & Funes Abogados law firm ("EGFA"), where I currently practice.  A copy of my C.V. is attached hereto.

4. I have been asked to respond to certain questions concerning Argentine law. The questions and my responses are stated below.

1. **Are the corporate affairs of a public Argentine corporation, including with respect to the payment of dividends and the substantive rights of shareholders concerning the acquisition of corporate shares, governed by Argentine law?**

5. Yes.  Law 19,550, as amended (the "Companies Law"), the Civil and Commercial Code, and Law 26.831 (the "Capital Markets Law"), govern the affairs of corporations organized under Argentine law whose shares are publicly traded, including with respect to the payment of dividends and the rights of shareholders generally. Section 150 of the Civil and Commercial Code specifically provides that all entities incorporated in Argentina are governed by Argentine Law.

2. **Under Argentine law (including the law that was in effect in April and May 2012):**

   **(a)    Is a corporation required to pay dividends to shareholders?**

6. Not in the sense that shareholders have a direct claim over the profits of the corporation. The Companies Law generally provides that the partners of a company (such as the case of the shareholders of a corporation) will participate in the benefits and will suffer the losses

of the corporation[1]. Specifically with respect to a public corporation, such participation may occur (i) by benefiting from the appreciation in the value of the shares; or (ii) by a decision of the shareholders of the corporation to distribute dividends (provided that the conditions set forth in the Companies Law described below are met).

7. The shareholders will only be entitled to require payment of dividends if the following legal requirements are met: (i) the company has liquid and realized earnings[2] (not absorbed by prior losses[3]); (ii) evidenced in approved financial statements[4] and (iii) the shareholders at a meeting decide to distribute all or a portion of such earnings as dividends[5]. The shareholders' meeting may decide not to distribute dividends and to retain earnings if such decision is reasonable and based on a prudent management of the corporation[6].

8. The Companies Law specifically regulates the requirements that should be complied with in order to judicially challenge a shareholders' meeting decision[7]. Such judicial action may only be brought before the courts with competent jurisdiction in the domicile of the corporation. Shareholders that voted against the decision or that were absent at the meeting are entitled to challenge a shareholders' meeting decision if the claim is filed within a three month period counted as from the closing of the shareholders' meeting. After such three month period lapses, the right to challenge the decision expires.

---

[1] Section 1 of the Companies Law.
[2] Section 68 of the Companies Law.
[3] Section 71 of the Companies Law.
[4] Section 68 and 224 of the Companies Law.
[5] Sections 68 and 224 of the Companies Law.
[6] Section 70 of the Companies Law.
[7] Section 251 of the Companies Law.

**(b)    Do shareholders have a legal right to receive dividends?**

9.    As mentioned in (a) above, only if all legal requirements are met will the shareholders be entitled to an enforceable right to receive dividends.

3.    **In the particular case of YPF in April and May 2012 (under Argentine law and the YPF bylaws that were in effect at that time):**

**(a)    Was YPF required to pay dividends to its shareholders?**

10.    I have been informed that at that time there existed a shareholders' agreement between Petersen and Repsol providing that at least 90% of YPF's profits should be distributed as annual dividends. Such situation does not create any additional requirement enforceable against YPF to pay dividends to its shareholders or make any difference with respect to the general legal framework described in my answer to Question 2.

11.    Under Argentine Law, shareholders' agreements are private agreements among their parties and are not enforceable against the company[8]. Therefore, in the absence of a valid corporate decision of YPF deciding the distribution of dividends, the provisions of the shareholders agreement had no effect in obligating YPF to distribute dividends.

**(b)    Was YPF required to pay dividends in a certain minimum amount?**

12.    No. The By-laws of YPF provide that the balance of the profits of any fiscal year (after complying with the formation of mandatory reserves, and other legal obligations) should be applied to the purpose determined by the shareholders' meeting of YPF (whether to pay

---

[8] Section 1199 of the Civil Code in force until August 1, 2015. Section 1021 of the Civil and Commercial Code in force since August 1, 2015.

dividends, to form voluntary reserves, to be carried forward, or any other purpose determined by the shareholders' meeting)[9].

4. **Assuming, hypothetically, that in May 2012, a person had announced and begun the process of making a public tender offer for all shares of YPF, briefly describe the <u>timing</u> of each step in the tender offer process:**

   **(a)   Based on the YPF bylaws in effect at that time, and**

   **(b)   Based on Argentine law and regulations in effect at that time.**

13. The bylaws provide the following time frames in section 7(f):

    (a)   The bidder must notify YPF about the takeover at least 15 business days before the starting date of the offer (section 7(f)(i)).

    (b)   The YPF board must call a special meeting of the Class A shareholders within 10 business days following that notice (section 7(f)(ii)).

    (c)   The offer must be open for at least 20 days after the CNV authorizes the offer (section 7(f)(vii)).

14. The periods stated in the YPF bylaws establish a minimum timeframe in relation to a potential public tender offer; the actual timeframe will depend in large part on the time that the CNV takes to review and approve the offer.

15. The regulations of the *Comisión Nacional de Valores* (CNV) (which is the Argentine equivalent of the Securities and Exchange Commission) in effect in April and May 2012 provided (as they do at present) that:

    (a)   The bid process begins when the bidder submits to the CNV an announcement of the bid, including a description of its terms. That day, the bidder must

---

[9] Section 25, paragraph c) (iv) of the By-laws of YPF.

publish the terms of the offer in the Buenos Aires Stock Exchange's Gazette and in a newspaper of wide circulation for at least three consecutive days.

   (b) Within 10 business days from the last such publication, the bidder must file a comprehensive package of information about the target company and about the bidder, as well as a detailed offering memorandum.

   (c) The CNV has 15 business days from the filing of the offering memorandum to comment on the offer; that period is interrupted if the CNV makes comments or requests clarification, in which case the period of 15 business days begins again once the bidder has responded to the comments or submitted any additional materials requested by the CNV.

   (d) Once the offer is made, it must be held open for a minimum of 20 days.

16. Based on my experience, it typically takes at least a few months for the CNV to review, comment on and approve a public tender offer.

5. **Under Argentine law, when a party sues for breach of contract and seeks to recover damages, is the plaintiff required to prove that the claimed damages were proximately caused by the conduct alleged to be a breach of the contract?**

17. Yes, Argentine law recognizes the principle that, in order for a plaintiff to recover damages for breach of contract, there must be a causal link between the plaintiff's alleged damages and the alleged conduct constituting the breach. This principle was contained in the Argentine Civil Code that was in force until August 1, 2015, is also carried forward in the Civil and Commercial Code that became effective on that date, and is also contained in the Law 26,944, the law of Responsibility of the State.

18.     The direct connection between the alleged breach and the resulting damages is a necessary element to give rise to the obligation to compensate[10].

19.     The principle has been carried forward in article 1726 of the Civil and Commercial Code, which provides that damages are compensable when they are adequately connected to the act that caused the harm.  Analogous provisions are contained in the law of responsibility of the State, Law 26,944.

20.     The Civil Code that was in force until August 1, 2015, provided that a breaching party could be liable for damages only to the extent that they were the "immediate and necessary" result of the act of breach[11].  But, if the breaching party acted maliciously, then the breaching party could be liable for "mediate" (or indirect) consequences of the breach[12].

21.     These principles also have been carried forward, in substance, in the Civil and Commercial Code currently in effect and in the law of responsibility of the State, Law 26,944, which requires, depending on the nature of the case, adequate causation between the action or omission of the State entity and the claimed damages or a causal relationship that is "direct, immediate and exclusive" between the State action and the claimed damages (Law 26,944, sections 3 and 4).

22.     In summary, when a plaintiff seeks to recover damages based on a contractual or extra-contractual relationship, there must be a sufficiently close causal link between the alleged wrongful conduct and the damages claimed by the plaintiff.  The claiming party has the burden

---

[10] Bustamante Alsina, Jorge, "Teoría General de la Responsabilidad Civil"["General Theory of Civil Responsibility"], Ed. Abeledo Perrot, Buenos Aires, 1997, page 267.

[11] Section 520 of the Civil Code in force until August 1, 2015.

[12] Section 521 of the Civil Code in force until August 1, 2015.

of proving the connection between the breach and the alleged damages attributed as its consequence[13].

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Buenos Aires, Argentina on September 7th, 2015.

Javier Errecondo

---

[13] Section 1736 of the Civil and Commercial Code.