# Domb Declaration

# Exhibit 11

InfoLEG - Ministerio de Economía y Finanzas Públicas - Argentina    http://www.infoleg.gob.ar/infolegInternet/anexos/195000-199999/1

**CDI**

This precept was consulted through InfoLEG, Documentation and Information database, Ministry of Economy and Public Finance.

**YACIMIENTOS PETROLIFEROS FISCALES**

**Decree 530/2012**

**Seizure is ordered**

Bs. As., 4/16/2012

VIEWED and WHEREAS:

Section 3rd of Act No. 17,319 stipulates that the NATIONAL EXECUTIVE BRANCH shall set the national policy with respect to activities related to the exploitation, industrialization, transportation, and sale of hydrocarbons, whose principal objective is to meet hydrocarbon needs of the country with the results from its deposits, maintaining reserves that ensure that objective.

In turn, Section 6th of such act establishes that permit holders and concessionaires shall have title to such hydrocarbons as they extract and, consequently, they may transport them, sell them, industrialize them, and sell their derivatives, complying with such regulations as are issued by the NATIONAL EXECUTIVE BRANCH on reasonable technical and economic bases that take into account the needs of domestic market and seek to foster exploration and exploitation of hydrocarbons.

One of the premises of the road to inclusive economic development, in a country such as ours that has hydrocarbon resources, is self-sufficiency as regards fuel.

Otherwise, the production and price of this strategic input that influences the cost and consumption structure of the entire economy would be determined by the dual action of local companies and international changes in the hydrocarbons market, the latter being principally dominated by the behavior of an international oligopoly such as the Organization of Petroleum Exporting Countries (OPEC).

A country that has the possibility of being self-sufficient in oil should ensure it because otherwise its economy is subject to the ups and downs of the international price which, furthermore, depends on geopolitical and speculative factors.

International experience does nothing but confirm that the objective of ensuring self-sufficiency in fuel determines, to a good degree, the type of economic and growth model that countries can implement.

Although YPF S.A. is the biggest company in the petroleum sector in our country, its actions over recent years show that the interests of the majority shareholder have been different from those of Argentine Republic, inasmuch as it has led to a reduction in investments, a fall in production, and a reduction in the reserve horizon that compromises energy sovereignty of the country, and it is evident that the actions of the company were guided by a short-term logic aimed at international expansion bordering on speculation which translated into the progressive evisceration of the principal company in our country, which had a negative effect on production and the level of reserves.

There is no way to deny that over recent years, in order to increase hydrocarbon production and exploration, National State designed different instruments to "incentivize" the sector. The Petróleo Plus, Refino Plus, and Gas Plus programs were created in order to increase exploration, the level of reserves and the production of oil and natural gas.

However, although YPF S.A. was a beneficiary of these programs, the company's supply of hydrocarbons has not only failed to increase, but also it continues to show a downward trend.

In parallel, there has been a deepening strategy to virtually eviscerate the company, which process has led to a sizable increase in sending profit and dividends abroad.

The predatory policy undertaken by the principal shareholder since 1999 led to a systematic loss of relevance for YPF S.A. in the local hydrocarbons market. While numerous private companies, both foreign and domestic, expanded their investments, and thereby their production, there was a progressive reduction in the relevance of YPF S.A. in the production of hydrocarbons. Thus in 1997, YPF represented 42% of oil production and 35% of gas production in our country, which share fell in 2011 to 34% and 23%, respectively.

The following chart shows the share in local oil production, 1997 and 2001 (in %).



|                    | YEAR 1997        |         |                    | YEAR 2001        |         |
| REMAINING COMPANIES |                 | YPF-REPSOL | REMAINING COMPANIES |              | YPF-REPSOL |

This same strategy occurred in gas production. Once all of the deposits discovered in the prior phases had been exhausted, the lack of investments led to a contraction in gas production by Repsol-YPF. Thus, whereas between 1997 and 2004 the company's gas production increased by 33%, between 2004 and 2011 it fell by 38%.

Change in gas production by Repsol-YPF (in millions of m3):



As also occurred with the production of oil, the gas investment policy led to a fall in production and market share by the company: Repsol-YPF reduced its market share between 1997 and 2011 by more than 11 percentage points.

Share in production, 1997 and 2011 (in %).



|                    | YEAR 1997        |         |                    | YEAR 2001        |         |
| REMAINING COMPANIES |                 | YPF-REPSOL | REMAINING COMPANIES |              | YPF-REPSOL |

The systematic lack of investment by the company led to a significant fall in oil reserves in the Repsol-YPF concession areas. Thus, Repsol-YPF's oil reserves fell by 50% between 2001 and 2011.

Change in the level of Repsol-YPF's oil reserves (in millions of barrels):



In the case of gas reserves, the reduction in the reserve horizon has forced the importation of this fuel, with the consequent need to finance those purchases with foreign currency. Indeed, since 1999, Repsol-YPF's gas reserves fell by more than 55%.

Change in the level of Repsol-YPF's gas reserves (in billions of m3):



This reduction was so drastic that it led to a fall in the gas reserve horizon from almost 17 years in 1997 to just 7 years in 2011.

Change in the level of YPF-Repsol's gas reserves (in years of consumption):



However, the contraction of the oil and gas production levels and, consequently, the fall in the reserve horizon was far from negatively affecting the company. Indeed, the reduction in production was not a result of the slow depletion of the wells explored by Repsol-YPF, but rather between 1997 and 2001 Repsol-YPF's share fell as a result of a policy of market segmentation by

the company, which reduced the production of oil and gas so as to be able to increase the prices and keep the most profitable portion of the market.

As shall be seen below, Repsol-YPF's behavior caused Argentina to have a significant deterioration in terms of its self-sufficiency capacity in fuels. The result of this change caused an increasing need for fuel imports which implied greater external vulnerability and undermined the bases of the social inclusion growth process which from 2003 to date has allowed, among other things, the unemployment rate to fall from the 24.7% reached in 2002 to a level as low as 6.7% of the economically active population. For all these workers to continue to enjoy the fruits of growth and, above all, to continue to advance along this road, it is central that the State has the ability and power to effectively control the activity in the sector.

Repsol-YPF's predatory strategy has had serious consequences for domestic economy, given that as a result, starting in the middle of 2010, the imported amounts of fuel exceeded the exported amounts.

Likewise, an analysis of oil and gas production data clearly shows the differential responsibility that belongs to YPF. Between 1998 and 2011 Argentina's total production of oil fell by 15.9 million m3 per year, out of which 8.6 million m3 were YPF's responsibility. In this same sense, the total production of gas fell between 2004 and 2011 by 6.6 million m3 per year, out of which 6.4 million belonged to YPF. That is to say, YPF was responsible for 54% of the fall in oil production and 97% of the fall in gas production. Indeed, if YPF had been able to maintain 1998 levels of oil production and 2004 levels of gas production, the fall in the former of these hydrocarbons would have been reduced by one-half, whereas, in the case of gas, the production would not have recorded any reduction whatsoever.

Change in fuel imports (in millions of dollars):



Fuel Imports

In conclusion, the predatory policy implemented by Repsol-YPF led Argentina to experience a deficit trade balance for fuels, which reached US$ 3.029 billion in 2011, for the first time in 17 years.



As a result, it is absolutely necessary to ensure the supply of fuel, in order to guarantee that the country's needs are met, and specific measures must exist to that end.

Thus, it is necessary to take into account the forfeitures ordered by different Provincial Governments, with respect to concessions granted to YPF S.A.

In this line of thought, on March 14 of this year, the Province of Chubut, through Decree No. 324/12, ordered the forfeiture of YPF's operating contracts in the "EL TREBOL – ESCALANTE" and "CAÑADON PERDIDO – CAMPAMENTO CENTRAL – BELLA VISTA ESTE" areas, after determining that the company has failed to comply with the investments that it was responsible for, promised in the sector.

Likewise, on the 19th of that month, the Province of Neuquén was the one that reversed the concessions in the "Chihuido de la Salina" and "Portezuelo Minas" areas, also concessioned to YPF S.A., after proving the breach by the company of the obligations corresponding to those concessions.

The Province of Salta did the same thing on the 26th of that month, also claiming breaches by the concessionaire, in relation to the Tartagal Oeste deposit, whereas on the next day the province of Río Negro withdrew YPF's concession to exploit the LOS CALDENES area and on the 4th of such month, it did the same thing with the Ñirihuau area concession.

On April 11, the Province of Santa Cruz was the one that ordered forfeiture due to breach of the concession of the LOS PERALES – LAS MESETAS area operated by YPF S.A., a deposit of vital importance for the company. It also cancelled the concessions for the CAÑADON VASCO and PICO TRUNCADO – EL CORDON areas, located in the San Jorge Gulf Basin, which are added to the reversals announced by that province in the middle of March through Decree No. 393/12 regarding the LOS MONOS Y CERRO PIEDRA – CERRO GUADAL NORTE areas, also operated by YPF S.A. Those areas represent 11% of the total oil production in the country.

Different measures were also adopted with respect to hydrocarbons by the Department of Domestic Trade within the Supply Act (Resolution No. 13 dated February 1, 2011, Resolution No. 295 dated August 17, 2010, Resolution No. 25 dated October 11, 2006).

In this instance, in view of the seriousness of the situation set forth and to resolve that problem, National Government has ordered to send a Bill to the Honorable Congress of the Nation, which contributes to the declaration of national public interest and to a priority objective for ARGENTINE REPUBLIC to achieve self-sufficiency in hydrocarbons, as well as the exploitation, industrialization, transportation, and commercialization of hydrocarbons, in order to ensure economic development with social equity, job creation, an increase in the competitiveness of the different economic sectors and equitable and sustainable growth of provinces and regions; as well as the declaration of public utility and subject to expropriation of FIFTY-ONE PERCENT (51%) of the equity of YPF Sociedad Anónima represented by the same percentage of Class D shares of that company belonging to Repsol YPF S.A., its direct or indirect controllers or controlled entities.

Likewise, to ensure full and absolute compliance with measures brought about through the aforementioned Bill that is being sent today, the issuance of an act of such nature is vital to take the necessary measures that urgency requires, as it is impossible to follow the ordinary processes stipulated by NATIONAL CONSTITUTION to enact laws, thus ordering the temporary seizure of YPF S.A. for a period of THIRTY (30) days in order to ensure the continuity of the company, the preservation of its assets and its equity, the supply of fuel and to ensure that the country's needs are met. Act No. 26,122 regulates the process and the scope of the involvement of the HONORABLE CONGRESS OF THE NATION with respect to the Necessary and Urgent Decrees issued by the NATIONAL EXECUTIVE BRANCH, by virtue of the provisions of Section 99, subsection 3 of NATIONAL CONSTITUTION.

The aforementioned act stipulates that the Permanent Bicameral Committee has jurisdiction to decide on the validity or invalidity of necessary and urgent decrees, as well as to send an opinion to the plenary of each Chamber for the express prosecution thereof, within a period of TEN (10) business days.

Section 20 of Act No. 26,122 also stipulates that if the Permanent Bicameral Committee does not send the corresponding order, the Chambers shall undertake the express and immediate prosecution of the decree, pursuant to the provisions of Sections 99, subsection 3 and 82 of NATIONAL CONSTITUTION.

For its part, Section 22 of such act provides that the Chambers will decide through different resolutions and that the rejection or approval of the decrees shall be expressed as established in Section 82 of the Constitution.

The pertinent legal department has been involved as appropriate.

This measure is issued in use of the powers conferred by Section 99, subsection 3 of NATIONAL CONSTITUTION and Sections 2nd, 19, and 20 of Act No. 26,122.

Therefore,

THE PRESIDENT OF THE ARGENTINE NATION IN A GENERAL RESOLUTION OF MINISTERS

ORDERS:

**Section 1st** – Order the temporary seizure of YPF S.A. for a period of THIRTY (30) days in order to ensure the continuity of the company, the preservation of its assets and equity, the supply of fuel and to ensure that the country's needs are met.

(**Infoleg Note**: Sect. 1st of Decree No. 732/2012 Official Register 5/16/2012 extends, from its expiration date, the seizure of YPF Sociedad Anónima and Repsol YPF SAS S.A., which was ordered by this Decree and 557 dated April 18, 2012, for a period of THIRTY (30) days)

(**Infoleg Note**: Sect. 1st of Decree No. 557/2012 Official Register 4/19/2012 expands the scope of this Decree to Repsol YPF Gas S.A. Effective period: from that day)

**Section 2nd** – Appoint the Minister of Federal Planning, Public Investment and Services, Architect Mr. Julio Miguel DE VIDO (ID No. 8.186.471) to the position of Receiver of YPF S.A.

(**Infoleg Note**: Sect. 2nd of Decree No. 732/2012 Official Register 5/16/2012 extends for a period of THIRTY (30) days, the appointment of the Minister of Federal Planning, Public Investment and Services, Architect Mr .Julio Miguel DE VIDO (ID. No. 8.186.471) as Receiver of YPF Sociedad Anónima and Repsol YPF GAS S.A.)

**Sect. 3rd** – In exercise of such position, the appointed Receiver shall have such powers conferred by YPF S.A. Bylaws to the Board of Directors and/or the President of the company.

**Sect. 4th** – This measure shall come into effect from the day it is issued.

**Sect. 5th** – Inform the HONORABLE CONGRESS OF THE NATION by virtue of the provisions of Section 99, subsection 3 of NATIONAL CONSTITUTION.

**Sect. 6th** – Notify, publish, give to the National Department of Civil Register and file. FERNANDEZ DE KIRCHNER.– Juan M. Abal Medina. – Aníbal F. Randazzo. – Nilda C. Garré. – Hernán G. Lorenzino. – Débora A. Giorgi. – Julio M. De Vido. – Julio C. Alak. – Carlos A. Tomada. – Alicia M. Kirchner. – Alberto E. Sileoni. – José L. S. Barañao. – Juan L. Manzur. – Héctor M. Timerman. – Carlos E. Meyer.

**Honorable House of Deputies of the Nation**

**CONGRESS OF THE NATION**

**Unnumbered Resolution**

**Decree No. 530/12** is declared valid.

Bs. As., 5/23/2012

Madam President of the Nation:

I have the honor to write to the Honorable President to notify that today this Honorable House has approved the following resolution.

THE HOUSE OF DEPUTIES OF THE NATION
RESOLVES:

**Section 1st** – Decree 530 dated April 16, 2012 is declared valid.

**Sect. 2nd** – Notify the Executive.

God save the President.

Julián A. Domínguez. – Gervasio Bozzano.

**Honorable Senate of the Nation**

**CONGRESS OF THE NATION**

**Unnumbered Resolution**

**Decree No. 530/12** is declared valid.

InfoLEG - Ministerio de Economía y Finanzas Públicas - Argentina     http://www.infoleg.gob.ar/infolegInternet/anexos/195000-199999/1

Bs. As., 5/30/2012

Madam, President of the Nation:

I have the honor to write to the Honorable President to notify that today this Honorable Senate has approved the following resolution:

"THE SENATE OF THE ARGENTINE NATION
RESOLVES:

**Section 1st** – Decree 530 dated April 16, 2012 is declared valid.

**Section 2nd** – Notify the National Executive Branch."

Sincerely yours,

AMADO BOUDOU. – Juan H. Estrada.



**Global Language Services**
Translations · Interpreting
DTP · Localization

KERN Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169

Tel. (212) 953 2070
Fax (212) 953 2073
kern.ny@kerntranslations.com

www.e-kern.com

State of :   New York

County of:   New York                 ss.:

# CERTIFICATE OF ACCURACY

**IT IS HEREBY CERTIFIED**, that KERN Corporation, a corporation organized and existing under the laws of the State of New York, is professionally engaged in the rendering of foreign language translation services; that it has translated the following document(s)

### DECREE 530/2012

from the **SPANISH** language into the **ENGLISH** language
and that the said translation is a true and correct rendering of the said document to the best of our knowledge and belief.

Signed by: _____
(Rosana Chinchilla)
for

Sworn to before me this 29
Day of April, 2013.

_____
Notary Public

JOY WILTERMUTH
NOTARY PUBLIC, State of New York
No. 01WI - 6093589
Qualified in New York County
My Commission Expires June 20, 2015

[KERN Corporation stamp: The Helmsley Building, 230 Park Avenue, Ste.1517, New York, NY 10169, Tel: 212 953-2070, www.e-kern.com]

San Francisco: The Russ Building · 235 Montgomery Street, Suite 946 · San Francisco, CA 94104
Tel. (415) 433 5376 · Fax (415) 433 5377 · kern.sf@kerntranslations.com

**London:** Tel. 011 44 (20) 78 31 56 00 · **Frankfurt:** Tel. 011 49 (69) 75 60 73-0 · **Berlin:** Tel. 011 49 (30) 24 72 12 50 · **Paris:** Tel. 011 33 (1) 53 93 85 20
**Zurich:** Tel. 011 41 (1) 2 61 11 60 · **Hong Kong:** Tel. 011 (852) 28 50 44 55 · **Amsterdam:** Tel. 011 31 (20) 6 39 01 19 · **Lyon:** Tel. 011 33 (4) 783 783 73