# Domb Declaration

# Exhibit 13

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

## AGREEMENT FOR THE AMICABLE SETTLEMENT AND COMPROMISE OF

## EXPROPRIATION

Between the ARGENTINE REPUBLIC, represented by the MINISTER OF ECONOMY AND PUBLIC FINANCE, DR. AXEL KICILLOF, with an address at Hipólito Yrigoyen 250, in the Autonomous City of Buenos Aires, on the one part, and REPSOL S.A., REPSOL CAPITAL S.L. and REPSOL BUTANO S.A., represented by Messrs. LUIS SUÁREZ DE LEZO MANTILLA and NEMESIO FERNÁNDEZ-CUESTA LUCA DE TENA as representatives, who provide evidence of their representative capacity with instruments that are in force and that were executed by persons authorized to do so and with the other supplemental documentation attached hereto as **ANNEX** I, with an address at Méndez Álvaro 44, Madrid, Kingdom of Spain, on the other, both referred to collectively as the "PARTIES",

**WHEREAS:**

Decree No. 530/2012 (B.O. 16-04-12) provided for the temporary takeover of YPF for a period of THIRTY (30) DAYS "in order to assure the continuity of the company, the preservation of its assets and its value, the supply of fuel, and to guarantee coverage of the needs of the country" within the framework of the legislative initiative by means of which the NATIONAL EXECUTIVE BRANCH

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

sought that 51% of the ownership of such company represented by an equal percentage of Class "D" shares be declared in the public interest and subject to expropriation.

The takeover of YPF S.A. occurred on that same April 16, 2012.

Decree No. 557/2012 (B.O. 19-04-12) broadened the scope of Decree No. 530/2012 to YPF GAS, the takeover of which occurred on April 18, 2012.

The takeovers of YPF and YPF Gas were extended in time by Decree No. 732/2012 (B.O. 16-05-12).

Article 1 of Law No. 26,741 (B.O. 7-05-12), on National Hydrocarbon Sovereignty declared "hydrocarbon self-sufficiency, as well as the exploration, exploitation, industrialization, transport and sale of hydrocarbons, to be in the national public interest and a primary objective of the Argentine Republic, in order to guarantee economic development with social equity, increased employment, increased competitiveness of the various economic sectors, and the equitable and sustainable growth of the provinces and regions."

"[F]or purposes of ensuring compliance with its objectives," Article 7 of Law No. 26,741 declared fifty-one (51%) percent of the ownership of YPF, represented by an equal percentage of the Class "D" shares of such company, directly or indirectly owned by Repsol, S.A., or its controlled or controlling entities, to be of public interest and subject to expropriation. It also declared fifty-one (51%) percent of the ownership of YPF GAS, represented by sixty (60%) percent of the

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

2

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

Class "A" shares of such company owned by Repsol Butano, S.A., or its controlled or controlling entities, to be of public interest and subject to expropriation. Article 10 of said Law No. 26,741 provided that, for purposes of formalizing and recording the ownership of the rights corresponding to the shares subject to expropriation, it must be stated that the expropriation of such shares is due to reasons of the public interest and that the future transfer thereof is prohibited without the authorization of the Honorable National Congress by a two-thirds vote of its members.

Article 11 of Law 26,741 in turn provided that the expropriation procedures will be governed by the provisions of Law No. 21,499, with the expropriating party being the NATIONAL EXECUTIVE BRANCH.

Article 12 of Law No. 26,741 provided that the price of the property subject to expropriation will be determined by the NATIONAL COURT OF APPRAISALS in accordance with the provisions of Article 10 and related articles of Law No. 21,499.

Article 13 of Law No. 26,741 provided that, "in order to ensure the continuity of the hydrocarbon exploration, production, industrialization and refinancing activities of YPF and YPF GAS, as well as the transportation, sale and distribution thereof and to increase investor flows for the proper supply of the fuel needed for the functioning of the national economy" within the framework of such Law, the NATIONAL EXECUTIVE BRANCH, through the persons or bodies appointed thereby, will exercise all of the rights conferred by the shares to be expropri-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

ated upon the terms of the extraordinary temporary seizure provided for in Articles 57 and 59 of Law No. 21,499.

Within this context, the ARGENTINE REPUBLIC began to exercise the rights conferred by the shares subject to expropriation, beginning with the general shareholder assemblies on June 4, 2012 and July 6, 2012 of YPF and YPF GAS, respectively.

Repsol, S.A. and its controlled companies commenced various non-judicial, judicial and/or arbitral actions and claims at the domestic and international levels against the ARGENTINE REPUBLIC, YPF and YPF GAS, directly or indirectly challenging the provisions of Decree Nos. 530/2012, 532/2012, 557/2012 and 732/2012, the sanction provided by Law No. 26,741 and the application and enforcement of such acts and legal provisions, hereinafter, collectively, the "DISPUTE".

By means of Law No. 24,118 (B.O. 5-08-92), the ARGENTINE REPUBLIC approved the "AGREEMENT FOR THE MUTUAL PROMOTION AND PROTECTION OF INVESTMENT BETWEEN THE ARGENTINE REPUBLIC AND THE KINGDOM OF SPAIN," hereinafter, the "ARGENTINA-SPAIN BIT," pursuant to which REPSOL commenced an international arbitration against the ARGENTINE REPUBLIC.

Article X of the ARGENTINA-SPAIN BIT provides that "disputes arising between one of the Parties and an investor from another Party with respect to invest-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

ments in the sense of this Agreement must, to the extent possible, be resolved amicably between the parties to the dispute."

Within the context of the ARGENTINA-SPAIN BIT and pursuant to Law Nos. 26,741 and 21,499, the ARGENTINE REPUBLIC and REPSOL have engaged in amicable negotiations in Argentina, as a result of which they have agreed to enter into this "AGREEMENT FOR THE AMICABLE SETTLEMENT AND COMPROMISE OF EXPROPRIATION", including all of the ANNEXES hereto (hereinafter, the "AGREEMENT"), by means of which the ARGENTINE REPUBLIC and REPSOL put an end to the DISPUTE.

The signing of the AGREEMENT constitutes a sovereign act of the ARGENTINE REPUBLIC, thus complying with Law Nos. 26,741 and 21,499 and with the international obligations set forth in the ARGENTINA-SPAIN BIT.

For such purpose, subject to compliance with certain conditions, they agree the transfer to the ARGENTINE REPUBLIC of the shares subject to expropriation and the concession to REPSOL of the right to obtain from the ARGENTINE REPUBLIC a single, lump-sum payment of compensation for the expropriation of the shares and for any other concept arising from or linked to the issuance and enforcement of Decree Nos. 530/2012, 532/2012, 557/2012 and 732/2012, of Law No. 26,741, related provisions, and actions taken in enforcement there-of, the BACKGROUND, and other items contemplated in the AGREEMENT.

The NATIONAL COURT OF APPRAISALS has issued a report stating that "the amount to be agreed is fair and reasonable for all purposes of the foreseen

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

compromise and amicable settlement." Attached as **ANNEX** II is a copy of said report.

Article 12 of Law No. 21,499 provides that the compensation shall be paid in cash, save conformity of the expropriated.

For the ARGENTINE REPUBLIC, the compensation to be paid for the items indicated above will be fair, sufficient, and appropriate, taking into account the terms of payment and other provisions set forth in the AGREEMENT, and after compliance with the applicable terms hereof.

REPSOL affirms its objection to the expropriation, the method thereof and the compensation offered for such items. However, taking into account the advantages of an early resolution and the undertakings provided in the AGREEMENT, it decides to accept the compensation offered in order to put a quick and definitive end to the DISPUTE by amicable means, which includes the waiver, subject to reciprocity, of its actions and claims against the ARGENTINE REPUBLIC and YPF and the other concessions provided for herein.

The representatives of REPSOL are fully authorized to execute this AGREEMENT on its behalf, and for such purpose attach as part of **ANNEX** I certified and duly legalized copies of the decisions made by each of the company's corporate bodies in their capacity as holder of the expropriated shares identified in **ANNEX** III, approving the signing of the AGREEMENT.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

Based on all of the foregoing, the PARTIES AGREE:

**CLAUSE ONE. PURPOSE.**

Within the context of the provisions of Law Nos. 21,499 and 26,741, the ARGENTINA-SPAIN BIT, and pursuant to the provisions of the AGREEMENT, the ARGENTINE REPUBLIC concedes to REPSOL and offers thereto the sum of FIVE BILLION  DOLLARS (USD 5,000,000,000.00) as compensation for the expropriation of 200,589,525 Class "D" shares of YPF and 89,755,383 Class "A" shares of YPF GAS (hereinafter, collectively, the "SHARES") and for any other claim arising from or connected to the issuance and enforcement of Decree Nos. 530/2012, 532/2012, 557/2012 and 732/2012, of Law No. 26,741 and re-lated legal provisions, the BACKGROUND, the interest that has accrued from the date of dispossession and other items contemplated in the AGREEMENT (hereafter, the "COMPENSATION").

**CLAUSE TWO. CONSENT.**

Solely for purposes of finding an amicable resolution of the DISPUTE, and in contemplation of all of the terms and conditions set forth in this AGREEMENT, REPSOL accepts the COMPENSATION offered by the ARGENTINE REPUBLIC for the expropriation of the SHARES and the other items contem-plated in the AGREEMENT.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

**CLAUSE THREE. MEANS OF PAYMENT.**

REPSOL consent for all purposes to the payment of the COMPENSATION being made by the delivery of "DOLLAR-DENOMINATED BONDS OF THE ARGENTINE REPUBLIC," which are instruments of internal public Argentine debt (hereafter, "GOVERNMENT BONDS"), of the type and amount identified in ANNEX IV, all upon the terms set forth in CLAUSE FOUR below.

The interest accruing on the GOVERNMENT BONDS from the commencement of the current interest period to the time of delivery thereof shall be received by REPSOL as consideration for the deferral of the payment of the COMPENSATION entailed by the acceptance of the GOVERNMENT BONDS as the means of payment.

**CLAUSE FOUR. NATURE OF THE PAYMENT.**

1.   The delivery of the GOVERNMENT BONDS will not of itself produce the effects of paying the COMPENSATION. The releasing effect of payment shall only occur if, and to the extent that:

> *(i)*   REPSOL receives the amounts due in REDEMPTION of the GOVERNMENT BONDS, free of DISRUPTIVE MEASURES; or

> *(ii)*   REPSOL for any reason TRANSFERS such GOVERNMENT BONDS to third parties.

2.   In both cases, the releasing effects of the payment and the resulting reduction (or, if applicable, termination) of the debt from the COMPENSATION shall

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

occur in the sum of (i) the amount received as REDEMPTIONS of the GOVERNMENT BONDS, and (ii) the amount, net of DEDUCTIBLE EXPENSES and ACCRUED INTEREST outstanding, received for the TRANSFER of the GOVERNMENT BONDS. In any case, the outstanding balance of the COMPENSATION may not at any time exceed the FACE AMOUNT plus capitalized interest of the GOVERNMENT BONDS that have not been redeemed and/or TRANSFERRED.

3.   The releasing effect of the payment of the COMPENSATION shall be deemed to have taken complete effect if, whatever the amount received by REPSOL as REDEMPTIONS and/or TRANSFERS of the GOVERNMENT BONDS, REPSOL no longer maintains control of the GOVERNMENT BONDS. For purposes of clarification, it shall be understood that REPSOL maintains control of all of the GOVERNMENT BONDS that have not been TRANSFERRED.

**CLAUSE FIVE. LIMIT OF THE COMPENSATION.**

1.   REPSOL may not in any event, either by collecting the amount of the REDEMPTIONS of the GOVERNMENT BONDS and/or by the TRANSFER thereof, receive an amount greater than the COMPENSATION. Provided that such amount is reached, the debt for the COMPENSATION conceded in CLAUSE ONE shall be deemed to have been definitively extinguished.

2.   In order to determine if the amount of the COMPENSATION has been reached, the following shall be added pursuant to the terms of CLAUSE FOUR:

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

(i) the amounts actually received by REPSOL as REDEMPTIONS of the GOVERNMENT BONDS, and (ii) the amounts, net of DEDUCTIBLE EXPENSES and ACCRUED INTEREST outstanding, actually received by REPSOL for the TRANSFER of the GOVERNMENT BONDS.

3.   If the amounts received by REPSOL for the items set forth in Section 1 of this CLAUSE reach the sum of FOUR BILLION EIGHT HUNDRED MILLION DOLLARS (USD 4,800,000,000), REPSOL must so notify the ARGENTINE REPUBLIC, which shall have, for a period of TEN (10) DAYS from receipt of such notice and only for purposes of redemption, an option to acquire the remaining GOVERNMENT BONDS that REPSOL maintains under its control for an amount in DOLLARS equal to the positive difference between: (i) the amount of the COMPENSATION plus ACCRUED INTEREST outstanding corresponding to the GOVERNMENT BONDS that have not been TRANSFERRED, and (ii) all amounts collected by REPSOL as referred to at the beginning of this Section, all at no cost to REPSOL.

4.   If the ARGENTINE REPUBLIC does not exercise the option provided for in Section 3 above, upon reaching the amount of the COMPENSATION, REPSOL shall proceed, with respect to the GOVERNMENT BONDS that have not been TRANSFERRED, in accordance with instructions that it receives from the ARGENTINE REPUBLIC solely for purposes of the redemption thereof. With respect to sums received in surplus, it shall also proceed in accordance with

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

instructions that it receives from the ARGENTINE REPUBLIC. In both cases, the corresponding actions shall be at no cost to REPSOL.

5.   REPSOL must notify the ARGENTINE REPUBLIC that it has reached the amount provided for in Section 3 of this CLAUSE and, if applicable, the amount of the COMPENSATION, sending the respective notice within a period of FIVE (5) DAYS from the occurrence of such circumstances.

**CLAUSE SIX. WAIVERS, DISCONTINUANCES AND INDEMNITIES.**

1.   Once the CLOSING has occurred, it shall be deemed that REPSOL:

*(i)*   Has become obligated to abandon the right and all extra-judicial, judicial and/or arbitral actions and claims for any GROUNDS PRIOR to the AGREEMENT that it has commenced against the ARGENTINE REPUBLIC and/or its RELATED PERSONS and against YPF and YPF GAS and/or their RELATED PERSONS, both in the Argentine Republic and abroad or internationally, based on domestic or international law, arising from or connected to: the issuance and implementation of Decree Nos. 530/2012, 532/2012, 557/2012 and 732/2012; of Law No. 26,741 and the supplemental rules and acts in enforcement thereof; the BACKGROUND; the corporate acts and/or bylaw provisions of YPF and YPF GAS, the actions of their Boards and/or officers and/or Managers and the status of REPSOL as shareholder

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

of YPF and YPF GAS; in all cases with the exception of the EXCLUDED MATTERS (hereinafter, collectively, the "DEMANDS").

The DEMANDS are not limited to the grounds and claims described in **ANNEX** V and include any other claim now or hereafter existing against the ARGENTINE REPUBLIC or its RELATED PERSONS and against YPF and YPF GAS and/or their RELATED PERSONS relating to the declaration of public interest, submission to expropriation and temporary seizure of the shares of YPF and YPF GAS; the BACKGROUND; the receipt of dividends by the ARGENTINE REPUBLIC during the temporary seizure, type of any indemnification for such seizure; the exercise of economic and political rights corresponding to the shares by the ARGENTINE REPUBLIC; the disclosure and/or public dissemination of such acts; any act performed and/or carried out and/or conferred by YPF, YPF GAS and/or their RELATED PERSONS with respect to the operation, administration, preservation and/or disposition of the assets of such companies prior to the date of execution of the Agreement; the behavior of REPSOL in the Argentine Republic as shareholder of YPF and YPF GAS for any other GROUNDS PRIOR to the date of execution of the AGREEMENT, including those claims that may be based on the invocation of the ARGENTINA-SPAIN BIT, any other similar provision or the general principles of international law, Argentine laws and reg-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

12

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

ulations; a claim for legal fees and expenses; and any other claim against the ARGENTINE REPUBLIC and/or its RELATED PERSONS arising from or connected to the demand that the ARGENTINE REPUBLIC must for any reason acquire the REMAINING SHARES or provide any compensation for such reason.

*(ii)* It has also waived the bringing of any non-judicial, judicial or arbitral claim hereafter in any forum or jurisdiction, whether domestic, foreign or international, against the ARGENTINE REPUBLIC and/or its RELATED PERSONS and YPF and YPF GAS and/or their RELATED PERSONS based on or connected to the issues mentioned in Point (i) above;

*(iii)* It must obtain discontinuances from the plaintiffs for the complaints and claims identified in **ANNEX** VI that form part of the definition of DEMANDS and, if such discontinuances are not obtained, indemnify the ARGENTINE REPUBLIC and its RELATED PERSONS pursuant to Point (iv) below; and

*(iv)* It must indemnify the ARGENTINE REPUBLIC and its RELATED PERSONS against any judicial, non-judicial and/or arbitral claim or action brought by REPSOL and/or its RELATED PERSONS with respect to the DEMANDS.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

2.  Once the CLOSING has occurred, it shall be deemed that ARGENTINE REPUBLIC:

>   *(i)*    Has become obligated to abandon the right and all present or future extra-judicial, judicial and/or arbitral actions and claims against REPSOL and/or its RELATED PERSONS, both within the territory of the ARGENTINE REPUBLIC as well as abroad or in the international area, based on domestic or international law, arising from or connected to the actions of REPSOL and/or its RELATED PERSONS as shareholders (whether controlling or not), directors, statutory auditors and/or employees of YPF and/or YPF GAS and/or their respective CONTROLLED COMPANIES while REPSOL exercised control over YPF and YPF Gas, and also since the seizure provided for by Decree Nos. 530/2012 and 557/2012 became effective, through the CLOSING DATE, as well as the management of such companies during the periods indicated above; in all cases excluding the EXCLUDED MATTERS.

>   *(ii)*   It has also waived the bringing of any non-judicial, administrative, judicial and/or arbitral claim hereafter in any forum or jurisdiction, whether domestic, foreign or international, against REPSOL and/or its RELATED PERSONS based on or connected to the issues mentioned in Point (i) above;

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

(iii)   It must indemnify REPSOL and its RELATED PERSONS against the obligations that might arise from the actions listed in **ANNEX** VII and against any other demand or action of third parties, of any kind, relating to: (a) the implementation and/or performance by YPF and/or the ARGENTINE REPUBLIC of the Employee Stock Ownership Plan (*Programa de Propiedad Participada*) provided for in Law 23,696 and (b) any debt arising from any grounds, reason, or set-off existing at December 31, 1990 and/or any potential debt or contingency arising from facts, acts or transactions of YPF and/or YPF GAS and/or their respective CONTROLLED COMPANIES that began prior to January 1, 1991;

(iv)   It has become obligated to vote at the shareholder meetings of YPF and YPF GAS to reject the bringing of new actions or claims against REPSOL and/or against its RELATED PERSONS based on GROUNDS PRIOR to the CLOSING DATE and to desist from actions and claims already brought and the rights invoked therein, unless relating to claims that are considered EXCLUDED MATTERS.

3.   For purposes of clarification, it is stated that the provisions of this CLAUSE shall not prevent the enforcement, if applicable, by the Public Prosecutor (*Ministerio Público Fiscal*) or the Judicial Branch of their respective powers in criminal matters.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

4.   Each PARTY shall indemnify the other if any of the persons or entities included within their respective definition does not observe the discontinuances, waivers and/or indemnities provided for in the AGREEMENT.

5.   The procedure to enforce the indemnities relating to the claims and the scope thereof are governed in **ANNEX** VIII.

**CLAUSE SEVEN. CONDITIONS PRECEDENT.**

1.   The holding of the CLOSING, and therefore the full effectiveness of the AGREEMENT, are subject to compliance with the following conditions (the "CONDITIONS PRECEDENT");

> *(i)*   That prior to April 7, 2014, the General Shareholders' Meeting fully and unconditionally ratifies the AGREEMENT.

> *(ii)*   That prior to May 1, 2014, the AGREEMENT has been fully and unconditionally approved by means of a special law approved by the Honorable National Congress of Argentina, promulgated and published in the Official Gazette (*Boletín Oficial*) of the ARGENTINE REPUBLIC by the National Executive Branch, which also approves the issuance of the GOVERNMENT BONDS and the guaranties necessary for the provision of the GUARANTY and the increase of the corresponding budget items.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

(iii)    That prior to May 7, 2014, the interim measures of protection issued in the proceedings mentioned in **ANNEX** IX are removed at no cost to REPSOL and to the satisfaction of both PARTIES.

(iv)    That there has been no DISRUPTIVE MEASURE at the CLOSING that affects the SHARES and/or the REMAINING SHARES and/or the GOVERNMENT BONDS and/or any economic right of REPSOL arising from the AGREEMENT or the GOVERNMENT BONDS.

(v)    That no MATERIAL ADVERSE CHANGE has occurred or is continuing at the CLOSING.

(vi)    That it has not become legally impossible at the CLOSING for the PARTIES to proceed to the CLOSING and/or to comply with the AGREEMENT in the ARGENTINE REPUBLIC for any other reasons, external or otherwise.

All of the foregoing CONDITIONS PRECEDENT are established in the interest of both PARTIES, which may waive compliance therewith by mutual agreement in writing.

2.  The PARTIES undertake to use their reasonable efforts (without entailing the obligation to make any expenditure) to facilitate compliance with the CONDITIONS PRECEDENT.

3.  The PARTIES undertake to notify each other by email the compliance with the CONDITIONS PRECEDENT provided for in Points (i) to (iii) on the

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

BUSINESS DAY following the date on which they become verifiably aware of such circumstance, and timely providing the documentation in support thereof. The PARTIES also undertake to notify each other by the same means immediately upon verification of any circumstance that might entail non-compliance with the CONDITIONS PRECEDENT provided for in Points (iv) to (vi).

## CLAUSE EIGHT. REPRESENTATIONS AND WARRANTIES.

1.  REPSOL represents and warrants that:

    *(i)*     It is the owner of the SHARES and that there are no limitations thereon of any kind on its ability and right to enter into the AGREEMENT except for the interim measures issued in the proceedings mentioned in **ANNEX** IX.

    *(ii)*    It has not totally or partially, directly or indirectly, transferred any right or interest in the SHARES or in the rights associated therewith and/or regarding the DEMANDS to a third party.

    *(iii)*   Upon compliance with the CONDITIONS PRECEDENT, the obligations of REPSOL under this AGREEMENT shall be enforceable upon the terms thereof.

2.  The ARGENTINE REPUBLIC represents and warrants that:

    *(i)*     The rights of REPSOL arising under this AGREEMENT enjoy the protection of the ARGENTINA-SPAIN BIT. In particular, given the nature of the COMPENSATION as expropriatory compensation, the

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

rights of REPSOL arising from the GOVERNMENT BONDS and/or the COMPENSATION constitute an "Investment" under the terms of the ARGENTINA-SPAIN BIT.

*(ii)*   Given their nature as expropriatory compensation, the rights of REPSOL arising from the COMPENSATION are also protected by the National Constitution and may not be subject to RESTRUCTURING and must be paid upon the terms, within the periods and upon the conditions agreed to in the AGREEMENT.

*(iii)*   As regards the payment of the GOVERNMENT BONDS and/or any payment due under the AGREEMENT, the ARGENTINE REPUBLIC may not raise against REPSOL any set-off, on legal or conventional grounds, for any current or future claim that it might invoke against REPSOL.

*(iv)*   The payment of principle and interest on the GOVERNMENT BONDS, as well as any other sum payable to REPSOL under the AGREEMENT, shall be made in DOLLARS, without being subjected to any restriction, whether an exchange restriction or otherwise.

*(v)*   Pursuant to the legal provisions applicable to the AGREEMENT, the execution and potential performance thereof, the COMPENSATION, and the payments to be made for principal and interest to REPSOL, as well as the receipt by REPSOL of such payments and other pay-

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

ments arising from the holding and disposition of the GOVERNMENT BONDS, shall not be subject to any TAXES.

*(vi)* Upon compliance with the CONDITIONS PRECEDENT, the obligations of the ARGENTINE REPUBLIC under this AGREEMENT shall be enforceable and payable upon the terms thereof.

3. Each PARTY undertakes to indemnify the other for any inaccuracy or breach of their respective representations made and warranties provided in the AGREEMENT.

**CLAUSE NINE. CLOSING.**

1. <u>CLOSING DATE</u>. At 10 a.m. Buenos Aires time on the sixth INTERNATIONAL BUSINESS DAY immediately following the day on which all of the CONDITIONS PRECEDENT provided for in Points (i) to (iii) of CLAUSE SEVEN have been met, provided that on such DAY and time the CONDITIONS PRECEDENT provided for in Points (iv) to (vi) of that same CLAUSE SEVEN have been met, the actions listed in Section 3 below shall be verified (collectively, the "CLOSING").

2. <u>Place of the CLOSING.</u> The CLOSING shall take place in the city of Buenos Aires, at the place indicated by the ARGENTINE REPUBLIC.

3. <u>Actions constituting the CLOSING.</u> In the CLOSING proceedings, as part of the same single act, it is agreed that:

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

*(i)* REPSOL shall deliver to the ARGENTINE REPUBLIC all documents necessary to transfer the SHARES, those identified in **ANNEX** X, instructing Caja de Valores S.A. and YPF GAS for purposes of recording the change in ownership of the SHARES in favor of the National Government.

*(ii)* The ARGENTINE REPUBLIC shall make a deposit of all of the GOVERNMENT BONDS into an account in the ARGENTINE REPUBLIC or abroad indicated by REPSOL for such purposes.

*(iii)* The ARGENTINE REPUBLIC shall deliver to REPSOL the GUARANTY upon the terms of the form included in **ANNEX** XI.

*(iv)* The ARGENTINE REPUBLIC shall deliver to REPSOL an opinion of the Federal Public Revenue Administration (*Administración Federal de Ingresos Públicos*) that, in the opinion of such agency, the court tax deposited in the proceedings listed in **ANNEX** XII is correct and no additional sum is due for such item;

*(v)* REPSOL shall sign and deliver, through its respective participating representatives and attorneys, or shall obtain from the respective subjects and entities, and shall deliver two copies of, the writs of discontinuance of the action and of rights in the cases identified in **ANNEX** V, and, to the extent possible, in **ANNEX** VI, without prejudice in this last case to indemnifying the ARGENTINE REPUBLIC if they are not obtained. Such writs must comply with the formalities,

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

representations and requests required in each jurisdiction for pur-

poses of complying with the provisions of CLAUSE SIX of the

AGREEMENT.

4.   It shall be deemed that the CLOSING has taken place if, upon verification of

all the actions listed in Section 3 above, REPSOL has received confirmation

that the GOVERNMENT BONDS have been deposited into the account provid-

ed for in Point (ii) of such Section 3 free of any DISRUPTIVE MEASURE.

**CLAUSE TEN. ENFORCEABILITY.**

If all of the CONDITIONS PRECEDENT have been met, and one of the

PARTIES nevertheless does not attend the act of formalization of the CLOSING

or does not comply therein with all of the actions for which it is responsible, the

other party may choose to either: (i) demand compliance with the

AGREEMENT, or (ii) declare it to be terminated, in both cases in addition to the

corresponding damages.

**CLAUSE ELEVEN. TERMINATION.**

If any of the CONDITIONS PRECEDENT is not met for any reason, whether or

not attributable to one of the PARTIES, either of the PARTIES may henceforth

declare that the AGREEMENT has become fully ineffective, without liability for

either of the PARTIES.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

**CLAUSE TWELVE. EFFECTS OF TERMINATION.**

1.  If one of the PARTIES has declared that the AGREEMENT has become ineffective pursuant to the provisions of CLAUSES TEN or ELEVEN, it shall be deemed that the AGREEMENT and the acts performed as a result thereof never existed (except for this CLAUSE and CLAUSES TEN, ELEVEN, SEVENTEEN, EIGHTEEN, NINETEEN, TWENTY-ONE AND TWENTY-TWO).

2.  In such event, neither of the PARTIES may invoke against the other PARTY and/or its RELATED PERSONS, in court, arbitration, administrative proceeding or any other arena, either the recitals or the provisions, or the acts, reports and/or opinions issued as a result thereof, under the provisions of CLAUSE SEVEN and other related CLAUSES, and the PARTIES shall maintain all of the pre-existing rights on the date of the AGREEMENT.

**CLAUSE THIRTEEN. POST-CLOSING OBLIGATIONS.**

1.  After the CLOSING, REPSOL undertakes to:

    *(i)*   File in the respective suits and proceedings the discontinuances provided for in Point (v) of Section 3 of CLAUSE NINE within THREE (3) judicial business DAYS of the act of CLOSING.

    *(ii)*   Comply in good faith with the AGREEMENT and not engage in any conduct or sign any instrument that tends to prejudice the purposes of the AGREEMENT or the commitments assumed hereunder, and,

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

in its capacity as shareholder of YPF, to conduct itself in such a manner as to give effect hereto.

*(iii)* Provide its consent, if required, to the discontinuances of the ARGENTINE REPUBLIC, and in any event to provide or obtain the consent of the respective plaintiffs or claimants to the imposition of costs to their order in all of the suits identified in **ANNEXES** V and VI.

*(iv)* In order for the ARGENTINE REPUBLIC to know the amounts that REPSOL receives for the possible TRANSFER of the GOVERNMENT BONDS, submit on a quarterly basis, beginning in September 2014, a report containing a description of: (1) the number of GOVERNMENT BONDS TRANSFERRED since the date of the CLOSING, (2) the prices received for such TRANSFERS, net of DEDUCTIBLE EXPENSES and ACCRUED INTEREST outstanding, and (3) dispositions that do not constitute a TRANSFER, with an indication of the number of GOVERNMENT BONDS affected, periods and other terms that allow for the traceability of the ownership of the GOVERNMENT BONDS that have not been TRANSFERRED. Such report shall also be reviewed and confirmed by the AUDITOR on a semi-annual basis.

*(v)* In each case of TRANSFER of the GOVERNMENT BONDS at an aggregate FACE VALUE equal to or greater than THREE HUNDRED MILLION DOLLARS (USD 300,000,000), to offer the acquisition of

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

GOVERNMENT BONDS, of the same type and amount and on the same financial legal conditions as those on which such TRANSFER has been made, to the ARGENTINE REPUBLIC or to an assignee of this right under CLAUSE SEVENTEEN. If REPSOL does not have GOVERNMENT BONDS of the same type in an amount sufficient to meet the purchase option of the ARGENTINE REPUBLIC, REPSOL shall only be required to sell GOVERNMENT BONDS to the ARGENTINE REPUBLIC up to the limit of the GOVERNMENT BONDS of such same type as owned by it and that are not previously subject to collateral or hedging transactions. The procedure set forth in **ANNEX** XIII shall apply for purposes of exercising the right provided for in this clause.

2.  After the CLOSING, the ARGENTINE REPUBLIC undertakes to:

*(i)* Comply in good faith with the AGREEMENT, timely pay the GOVERNMENT BONDS, and not engage in any conduct or sign any instrument that tends to prejudice the purposes of the AGREEMENT and the commitments assumed hereunder.

*(ii)* Provide its consent, if required, to the discontinuances of REPSOL, and in any event to the imposition of costs to its order in all active suits that are discontinued in which the ARGENTINE REPUBLIC is a plaintiff or defendant.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

(iii)    Vote at the Shareholders' meetings of YPF and YPF GAS, and gen-erally conduct itself as a shareholder of YPF and YPF GAS in a manner that gives effect to the AGREEMENT.

## CLAUSE FOURTEEN. RESTRUCTURING.

1.   In any case of RESTRUCTURING, REPSOL shall have the right to demand from the ARGENTINE REPUBLIC the payment in cash of the outstanding amount of the COMPENSATION, plus the ACCRUED INTEREST outstanding (the "ACCELERATED COMPENSATION").

2.   For purposes of the provisions of Section 1 above, the following rules shall apply:

(i)    The amount of the ACCELERATED COMPENSATION shall be de-termined by adding: (1) the balance of the COMPENSATION out-standing calculated in accordance with the provisions of CLAUSE FOUR and subject to the limit set forth in CLAUSE FIVE, and (2) the amount of ACCRUED INTEREST that remains unpaid at the time that REPSOL sends the notice referred to in Point (iii) below.

(ii)    In order to show the balance of the COMPENSATION outstanding referred to in Point (i) above, REPSOL must provide (i) a certification of the AUDITOR verifying the amounts received by REPSOL for REDEMPTIONS of the GOVERNMENT BONDS and of the amount, net of DEDUCTIBLE EXPENSES and ACCRUED INTEREST out-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

standing, actually received by REPSOL for the TRANSFER of the GOVERNMENT BONDS; and (ii) a certification of the depository showing the GOVERNMENT BONDS held by REPSOL and, if applicable, an identification of the contracts executed with third parties pursuant to which it has ceased to be a holder of the GOVERNMENT BONDS without a TRANSFER, which allows for full traceability of the holdings thereof.

To show the ACCRUED INTEREST outstanding, REPSOL must provide the corresponding certification of the AUDITOR, which shall be based on the documentation provided by the depository or depositories, on the terms of issuance of the GOVERNMENT BONDS, and on the other documents it deems necessary to verify the accrual and non-payment thereof.

(iii)   The payment of the ACCELERATED COMPENSATION shall be enforceable as from the thirtieth DAY following the day on which the ARGENTINE REPUBLIC receives verifiable notice from REPSOL pursuant to which (1) it chooses to demand payment of the ACCELERATED COMPENSATION pursuant to the provisions of Section 1 of this CLAUSE, (2) states the occurrence of the circumstance or circumstances included in the definition of RESTRUCTURING giving rise to its right to demand payment of the ACCELERATED COMPENSATION, (3) sets forth the balance out-

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

standing accompanied by the supporting documentation referred to in Point (ii) above, and (4) makes available to the ARGENTINE REPUBLIC, against payment and for cancellation, the GOVERNMENT BONDS in its power, which shall be duly identified.

However, within such period of THIRTY (30) DAYS, the ARGENTINE REPUBLIC may cure or remove the grounds for the reported RESTRUCTURING, in which case acceleration of the maturity of the COMPENSATION, and thus the enforceability of the ACCELERATED COMPENSATION, shall not occur.

(iv)   As from the DAY on which payment is enforceable in accordance with the provisions of Point (iii) above, and until the actual payment thereof to REPSOL, the amount due as ACCELERATED COMPENSATION (increased in turn by the compensatory interest accrued during the cure period referred to in Point (iii) above) shall accrue annual interest of EIGHT POINTS SEVENTY-FIVE (8.75%) PERCENT, plus default interest of ONE POINT SEVENTY-FIVE (1.75%) PERCENT, in substitution of any other interest. Such interest shall accrue daily on the basis of a year of THREE HUNDRED SIXTY (360) DAYS. Interest thus accrued shall be automatically capitalized on an annual basis and shall generate new default and compensatory interest. All payments shall be allocated, in this order, to

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

the payment of expenses, default interest, compensatory interest, and principal.

*(v)* Upon payment of the amount of the ACCELERATED COMPENSATION and other applicable amounts under this CLAUSE, REPSOL shall make available to the ARGENTINE REPUBLIC the non-TRANSFERRED GOVERNMENT BONDS offered for cancellation pursuant to the provisions of number (4) of Point (iii) above, deducting, if applicable, any that have been sold to enforce the guaranty pursuant to the provisions of Section 3 below, and shall proceed in accordance with the instructions it receives from the ARGENTINE REPUBLIC for the cancellation thereof.

*(vi)* Except in the circumstance provided for in Section 2 of CLAUSE SIXTEEN, the ACCELERATED COMPENSATION and other amounts applicable under this CLAUSE shall be payable into the account indicated by REPSOL, in the Argentine Republic or abroad, in cash, in DOLLARS, free of expenses, DISRUPTIVE MEASURES and TAXES.

3.  For so long as the ACCELERATED COMPENSATION and other amounts under this CLAUSE are not paid, REPSOL may retain the GOVERNMENT BONDS to secure the collection of the amount due thereto. For such purpose, REPSOL is expressly authorized to dispose of them as from the thirtieth DAY following the date of enforceability provided for in Point (iii) of Section 2 above

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

29

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

and to apply the proceeds to the payment, in this order, of interest and of the ACCELERATED COMPENSATION, which shall only be reduced in such circumstance by the amount corresponding to such application.

To enforce the guaranty, REPSOL must instruct at least three of the REFERENCE ENTITIES to proceed with the sale of the GOVERNMENT BONDS on the market, with an instruction for them to proceed in the manner they deem most appropriate to maximize the price during the period set by REPSOL, which may not be less than NINETY (90) INTERNATIONAL BUSINESS DAYS. Upon the total or partial sale of the GOVERNMENT BONDS retained to secure the payment of the ACCELERATED COMPENSATION, REPSOL shall provide to the ARGENTINE REPUBLIC a description of the GOVERNMENT BONDS disposed of, the amount obtained, and, as a result thereof, the amount of debt remaining.

For the avoidance of any doubt, it is stated for the record that (i) the amount of the remaining debt shall not be affected by the limitation contained in the last sentence of Section 2 of CLAUSE FOUR, and (ii) the sales of the GOVERNMENT BONDS by REPSOL to enforce the guaranty shall not give rise to the purchase options provided for in Section 3 of CLAUSE FIVE and in Point (v) of Section 1 of CLAUSE THIRTEEN.

4.  The RESTRUCTURING shall not give REPSOL the right to terminate the AGREEMENT or to re-commence the DISPUTE and/or invoke the DEMANDS and other rights and actions waived and discontinued by the AGREEMENT,

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

and/or reclaim a sum other than that regarding the ACCELERATED COMPENSATION upon the terms of this CLAUSE.

**CLAUSE FIFTEEN. BREACH OF OTHER OBLIGATIONS.**

Except in the circumstance provided for in this CLAUSE TEN, if there is a breach of any obligation other than the payment of the GOVERNMENT BONDS, the complying PARTY may also not choose to terminate the AGREEMENT, but may demand the enforcement thereof and compliance therewith using all available remedies at law for such purpose. In any event, the complying PARTY may also claim from the other PARTY indemnification for the damages caused by the breach, which shall accrue interest in accordance with the rules set forth in Point (iv) of Section 2 of CLAUSE FOURTEEN.

**CLAUSE SIXTEEN - DISRUPTIVE MEASURES**

1. If any DISRUPTIVE MEASURE occurs after the CLOSING, the ARGENTINE REPUBLIC shall have a period of NINETY (90) DAYS to obtain the lifting or withdrawal of such DISRUPTIVE MEASURE and, if applicable, to cure the failure to receive payment by REPSOL, always at no cost to REPSOL. The period of NINETY (90) DAYS shall be calculated from the date on which REPSOL notifies the ARGENTINE REPUBLIC of the occurrence of the DISRUPTIVE MEASURE.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

Notwithstanding the foregoing, the ARGENTINE REPUBLIC may demand that REPSOL return the amounts that it has had to deposit or place in bond to the order of the respective court or governmental authority, plus the interest and damages that may apply, if there is a firm and binding award adverse to REPSOL and favorable to the ARGENTINE REPUBLIC in the arbitration it brings pursuant to CLAUSE NINETEEN of the AGREEMENT to determine the existence of such right to restitution. In particular, such restitution shall not apply in the case of the items included in the indemnities, discontinuances or waivers provided by the ARGENTINE REPUBLIC in the AGREEMENT.

2.   REPSOL hereby gives its consent to the cure of the payment failure by means of the deposit by the ARGENTINE REPUBLIC of the amount due in DOLLARS under this AGREEMENT into the bank account in the Argentine Republic indicated by REPSOL for such purpose, provided that REPSOL may immediately transfer such amount of DOLLARS into a foreign account free of any DISRUPTIVE MEASURE and TAXES.

3.   After such period of NINETY (90) DAYS without the lifting or cure, REPSOL may demand the immediate payment of the ACCELERATED COMPENSATION and other applicable amounts under CLAUSE FOURTEEN. In this case, the date of enforceability shall be the DAY after the day on which the ARGENTINE REPUBLIC receives the corresponding demand for payment from REPSOL accompanied by the documentation provided for in Point (iii) of Section 2 of CLAUSE FOURTEEN.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

**CLAUSE SEVENTEEN. ASSIGNMENT.**

Neither of the PARTIES may assign their contractual position in the AGREEMENT without the prior written consent of the other PARTY. REPSOL may also not assign the credit rights deriving from the COMPENSATION unless the assignee is a CONTROLLED COMPANY of REPSOL. Except for the defense of set-off of credit rights and debts, the ARGENTINE REPUBLIC may raise against such assignee any objection or defense that it could raise against REPSOL. The ARGENTINE REPUBLIC may assign the right in its favor provided in Point (v) of Section 1 of CLAUSE FOURTEEN to any entity included within the definition of the ARGENTINE REPUBLIC or to any company or trust fund controlled by the National Government.

**CLAUSE EIGHTEEN. NON-SEVERABILITY.**

1.  This AGREEMENT is a single and non-severable whole. Therefore:

    *(i)*   The failure to approve or the conditional approval of any of its CLAUSES or ANNEXES shall mean that the CLOSING may not occur, with the same consequences set forth in Section 1 of CLAUSE TWELVE.

    *(ii)*  Neither of the PARTIES may demand partial compliance with the AGREEMENT.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

2.   Each PARTY authorizes its respective bodies signing the AGREEMENT to agree on non-material amendments to this AGREEMENT.


**CLAUSE NINETEEN. APPLICABLE LAW. JURISDICTION.**

1.   The AGREEMENT, as well as the totality of the agreements and commitments of which it is comprised, is governed by the provisions hereof and by the laws of the Argentine Republic, the Argentina-Spain BIT and other sources provided for in this latter document, including the principles of international law regarding the international liability of States.

2.   Any litigation, dispute or claim between the PARTIES arising from this AGREEMENT or that have a direct relationship hereto, and particularly those relating to a demand by REPSOL for payment of the ACCELERATED COMPENSATION, as well as any litigation, dispute or claim regarding the interpretation and application to the case of the ARGENTINA-SPAIN BIT, shall be resolved exclusively by arbitration in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL") in force on the date of signing of the AGREEMENT.

Upon the terms of Article X, section 3, paragraph b) of the Argentina-Spain BIT, the PARTIES agree that if any dispute or discrepancy arises between them, they shall give notice thereof to the other PARTY. The PARTIES must engage in a mandatory period of amicable discussions for a period of THIRTY (30) DAYS from the receipt of the notice. If the dispute or discrepancy continues at

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

the end of such period, either of the PARTIES shall have the right to commence the arbitration.

The number of arbitrators shall be THREE (3), the place of the arbitration shall be Paris, Republic of France, and the language of the arbitration shall be Spanish. Each party shall appoint one arbitrator. The two arbitrators so appointed shall by mutual agreement appoint the third, who shall chair the tribunal. If there is no agreement regarding the appointment of the third arbitrator, the appointing authority shall be the Secretary-General of the Permanent Court of Arbitration at The Hague.

**CLAUSE TWENTY. SUSPENSION OF PROCEEDINGS.**

As from the signing of the AGREEMENT and until the CLOSING takes place or until the AGREEMENT becomes ineffective, each PARTY shall be required to suspend all current proceedings and/or refrain from commencing new proceedings against the other PARTY and/or against its RELATED PERSONS with respect to the issues contemplated in this AGREEMENT, except in those cases strictly necessary to preserve their rights. In those cases where the suspension of the proceedings is not available, the PARTIES shall do the fillings strictly necessary to preserve their rights. The PARTIES undertake to file requests for suspensions of the proceedings when such suspension is available.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

**CLAUSE TWENTY-ONE. ADDRESS AND NOTICES.**

1.   For all legal purposes relating to the enforcement of the AGREEMENT, the ARGENTINE REPUBLIC and REPSOL set their addresses as those indicated at the beginning of this document, which shall be deemed valid for all notices delivered thereto.

2.   All notices must be provided in writing and by verifiable means, and shall be valid and effective as from the date of the actual receipt thereof by the address-ee.

All notices between the PARTIES must be sent to the attention of the persons and to the addresses notified by each PARTY to the other.

3.       By way of exception from the rule set forth in Section 2 above, the notic-es to be sent by email [shall be sent to] the addressees and addresses that the PARTIES communicate in writing.

**CLAUSE TWENTY-TWO. DEFINITIONS.**

The definitions listed in **ANNEX** XIV shall apply for all purposes of the AGREEMENT.

In witness whereof and as evidence of their complete consent hereto, FOUR (4) specimens are signed, TWO (2) for each PARTY, each having the same effect, in the City of Buenos Aires, Argentine Republic, on February 27TH, 2014.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

## ANNEX V

## PROCEEDINGS INITIATED BY REPSOL SUBJECT TO DISCONTINUANCE

1.  REPSOL BUTANO S.A. Vs. NATIONAL GOVERNMENT-NEB-LAW 26741-DECREE 530 557 AND 732/12, COGNIZANCE PROCEEDINGS. Court: Federal Contentious Administrative Court No. 7, Secretary 13. Case no. 27075/2012.

2.  REPSOL S.A. AND OTHER Vs. PROVINCE OF NEUQUEN AND OTHER (ARGENTINE NATIONAL GOVERNMENT) on declaration of certainty and unconstitutionality. Court: National Supreme Court of Justice, original proceedings Secretary. Case No. R-498/13.

3.  REPSOL S.A. Vs. NATIONAL GOVERNMENT–DECREE. 530 532 732/12, COGNIZANCE PROCEEDINGS. Court: National Federal Contentious Administrative Court No. 7. Secretary 13. Case No. 21,941/2012.

4.  REPSOL YPF S.A. Vs. Argentine Republic (Disclosure claim under Section 13-D of the Exchange Act). Court: United States District Court, Southern District of New York (Judge Griesa), New York, United States of America. Case No. 12 CV 4018.

5.  REPSOL YPF S.A., Texas Yale Capital Corp. Vs. Argentine Republic (Class action on takeover bid). Court: United States District Court, Southern District of New York (Judge Griesa), New York, United States of America. Case No. 12 CV 3877.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

6. REPSOL, S.A. and REPSOL BUTANO, S.A. Vs. Argentine Republic. Court: International Centre for Settlement of Investment Disputes, Washington D.C., United States of America. ICSID Case No. ARB/12/38.

7. Administrative complaint against CNV for unlawful actions filed by REPSOL and others dated 6/24/2013, Case No. S01:20131371/2013 Ministry of Economy and Public Finance.

8. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No.6. Case No. 103,677.

9. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings on interim measures. Court: National Commercial Court of First Instance No. 3, Secretary No.6. Case No. 103,585.

10. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings on article 250 of Procedural Code. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,791.

11. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,181.

12. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,945.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

13.  REPSOL S.A. and others Vs. YPF S.A. Ordinary proceedings on interim measures. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,553.

14.  REPSOL S.A. and others Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,144.

15.  REPSOL S.A. and others Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,268.

16.  REPSOL S.A. and others Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,520.

17.  REPSOL S.A. Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 104,022.

18.  REPSOL, S.A. Vs. YPF S.A. Ordinary proceedings for unfair competition (Spain). Court: Commercial Court No. 1 of Madrid, Gran Vía 52, 1ª floor, 28013, Madrid, Kingdom of Spain. Case No. 395/2012.

19.  REPSOL, S.A. Vs. THE BANK OF NEW YORK MELLON and YPF S.A. Court: Supreme Court of the State of New York, County of New York, United States of America. Case No. 652653/2012.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

85

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

**ANNEX VI**

**PROCEEDINGS INITIATED BY THIRD PARTIES SUBJECT TO**

**DISCONTINUANCE**

1.  BRUFAU, NIUBÓ ANTONIO and others Vs. NATIONAL GOVERNMENT-NEB LAW 26,741-DECREEE 530 532/12 ON DAMAGES Court: Federal Contentious Administrative National Court No. 1, Secretary 1. Case No. 16,785/2012.

2.  DE SAN MARTÍN, JOSÉ and other Vs. NATIONAL GOVERNMENT–NEB ON COGNIZANCE PROCEEDINGS. Court: National Supreme Court of Justice. Case No. C-731/2013.

3.  FORWOOD WALTER CRISTIAN Vs. NATIONAL GOVERNMENT-NEB DECREE 530 and 532/2012 on interim measures (autonomous). Court: Federal Contentious Administrative National Court No. 7, Secretary 13. Case No. 12,881/2012.

4.  GOMIS SAEZ ANTONIO Vs. NATIONAL GOVERNMENT-NEB ON PRECAUTIONARY/INTERIM? MEASURES. Court: National Federal Contentious Administrative Court No. 4, Secretary 7. Case No. 26,981/2012.

5.  Administrative complaint against CNV for unlawful actions filed by Antonio Gomis and other dated 6/24/2013, Case No. S01:20131371/2013 Ministry of Economy and Public Finance.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

86

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

6.   GALLEGO, JOSE MANUEL Vs. NATIONAL GOVERNMENT- NEB DECREE 530/12 557/12 on precautionary/interim measures (autonomous). Court: National Federal Contentious Administrative Court No. 5, Secretary 10. Case No. 13,223/2012.

7.   GARCIA DEL RIO LUIS and other Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 21, Secretary No. 41. Case No. 58,143.

8.   GARCIA DEL RIO LUIS Vs. YPF SA on interim measures. Court: National Commercial Court of First Instance No. 25, Secretary No. 49. Case No. 59,278.

9.   Administrative claim filed by Walter Forwood before the Department for Economic Policy of the Argentine Ministry of Economics. Case No. EXP-S01: 0192282/2012.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

87