# Domb Declaration

# Exhibit 15, Part 1

COPY

COURT CLERK'S OFFICE
CIVIL COURTS OF THE
FIRST INSTANCE
WRITING SUBMITTED AT DEADLINE

06 OCT 2014

Time:..........................
Reg. No.......................

**Bankrupt Party: PETERSEN ENERGIA, S.A.U.**

**Ordinary Bankruptcy Proceedings No. 405/2012**

## TO THE THIRD COMMERCIAL COURT OF MADRID

The **BANKRUPTCY ADMINISTRATION** named in the Voluntary Bankruptcy proceedings of the legal entity **PETERSEN ENERGIA, S.A.U.** (hereinafter "**PESA**") filed with this Court under Case No. 405/2012, and before which I appear and with all due respect and consideration, **I ASSERT**:

**I.-** On September 2, 2014, a Ruling was issued, which was reported on September 12, 2014, by which the liquidation phase of these bankruptcy proceedings was initiated, and granting this bankruptcy administration a time period of 15 (fifteen) [sic] days to submit a plan for the sale of all property and rights contained in the overall assets of the bankruptcy, pursuant to the provisions set out in Article 148.1 of the Bankruptcy Law (LC).

**II.-** A Plan for the sale of all property and rights contained in the overall assets of the bankruptcy is attached hereto, along with the documents referenced therein.

As a result,

**WE PLEAD THE COURT**: to admit this writing and the declarations made therein, and admit the referenced liquidation plan on its merits, and after the timely filings, issue a Ruling declaring the approval of said Plan, to which the liquidation operations of the complete assets shall adhere.

So that Justice may be served, in Madrid on October 6, 2014.

**THE BANKRUPTCY ADMINISTRATION**          **ASSISTANT TO THE REPRESENTATIVE**
**WITH LIQUIDATION AUTHORITY**

**[ILLEGIBLE SIGNATURE]**                              **[ILLEGIBLE SIGNATURE]**

COURT CLERK'S OFFICE
CIVIL COURTS OF THE
FIRST INSTANCE
WRITING SUBMITTED AT DEADLINE

06 OCT 2014

Time:..............................
Reg. No...........................

**LIQUIDATION PLAN** FOR THE SALE OF THE PROPERTY AND RIGHTS COMPRISING THE OVERALL ASSETS OF THE COMPANY PETERSEN ENERGIA, S.A.U.

The Liquidation Plan is comprised of the following sections:

1. Background

2. The Request to Initiate the Liquidation Process Made by the Debtor

3. Liquidation Plan
3.1.     Current Situation surrounding the Bankrupt Company's Assets
3.2.     ==Sale== of the Indemnification Rights
        3.2.1.   Justification
        3.2.2.   ==Sale== Procedure
        3.2.3.   Conveyance of the Indemnification Rights by the Winning Bidder
                3.2.3.1.     Settlement
                3.2.3.2.     Assignment
        3.2.4.   Exemption from Liability
        3.2.5.   In the Event that there are No Parties Interested in Acquiring the
                Indemnification rights.  Commencement of the Process to Claim the
                Indemnification rights.  Financing.
        3.2.6.   Inability to Monetize the Indemnification Rights

3.3.     Sale of the Remaining Assets

        3.3.1.   Short-term Financial Investments
        3.3.2.   Treasury

4. Debt Payments to Creditors

Exhibits

Exhibit I.- Provisional Report in Accordance with Article 75 of the LC
Exhibit II.- Agreement for the Amicable Settlement and Compromise of Expropriation.
Exhibit III.- Financial Statements.

1. Background

As this bankruptcy administration stated in its Provisional Report pursuant to Article 75 of the Bankruptcy Law attached hereto as **Exhibit I**, and which we submit in its entirety as contained in the court records, the company Petersen Energia S.A.U (PESA) had the following main investment and asset: ***Equity interest in sister companies: 58,603,606 shares of YPF, S.A. stock***, company which is domiciled in Argentina and shares which were officially quoted in the continuous market of the New York and Buenos Aires Stock Exchanges.

The situation of insolvency regarding the bankrupt company was caused by the Argentinian Government's announcement that activities related to hydrocarbons were now of public interest, declaring subject to expropriation 51% of YPF, S.A. shares and votes, which were in the possession of REPSOL or its subsidiary or sister companies, which occurred in the month of April 2012.

Such expropriation did not comply with the current laws in Argentina and the statutory agreements existing in YPF, S.A., or in other words, by way of a public bid for the acquisition of the shares (OPA) held by the bankrupt company.  As a result, the bankrupt company lost all its YPF, S.A. shares, as the lending financial institutions refused to refinance the debt, and thus declared the finance agreements as outstanding and immediately due and payable and also executed the pledges on shares it held.  If the Argentine Government had complied with its legal and statutory obligations, the bankrupt company without a doubt could have paid all its creditors the amount they were supposed to receive.

As a consequence of the foregoing, an asset related to **"Indemnification Rights"**[1] was included in the bankrupt company's inventory.  The substantiation and appraisal of those potential Indemnification Rights, the existence of which has not been questioned during these bankruptcy proceedings, and subject to the filing of a lawsuit and acknowledgement before the competent Courts or Agencies, are detailed in the Report submitted by the bankruptcy administration.  The appraisals included in this Report by the bankruptcy proceedings are in no

---

[1] By **"Indemnification Rights,"** we refer to the description provided in the report issued by the Bankruptcy Administration attached hereto as Exhibit I.

way binding on those who participate in the liquidation process, because they were done in the framework of the bankruptcy proceedings and for that purpose only, and these individuals should perform their own appraisals on the existence, amount and success of the lawsuit(s) that may or should be filed against the Republic of Argentina.

In this regard, it must be pointed out that on February 27, 2014, the Argentinian Republic executed the **"Agreement for the Amicable Settlement and Compromise of Expropriation,"** attached hereto as **Exhibit II**.

It is therefore required to monetize the main asset of the bankrupt company with respect to the Indemnification Rights, which we understand belong to the bankrupt company in the best interest of the overall assets and to cover the debts it has with its creditors.

2.  The Request to Initiate the Liquidation Process Made by the Debtor

The bankrupt debtor requested the initiation of the liquidation phase on July 17, 2014, and by way of a Ruling dated September 2, 2014, the initiation was ordered.

The following are the reasons stated by the bankrupt company for requesting the initiation of the liquidation, and with which this Bankruptcy Administration is in agreement:

The ruling dated July 8, 2014, was served on my principal on July 15, 2014, by which the Court agreed to end the common phases of the PESA bankruptcy proceedings and initiate the agreement phase.

Notwithstanding the foregoing, in light of the objective circumstances of how the events progressed and the available means for proposing an agreement, my principal, after holding several meetings with its creditors, considers that the best way to preserve their interests is to directly order the liquidation proceedings and adopt the necessary procedures.

Therefore, and pursuant to the provisions established in Article 142.1 of the Bankruptcy Law (LC) and considering that the current circumstances represent the most reasonable course of action to follow, on behalf of PESA, I hereby REQUEST THAT THE LIQUIDATION PHASE BE INITIATED and the overall assets be sold in the terms that offer the greatest compensation to my principal's creditors.

In light of the foregoing, and based on the existing documents and information obtained by the creditors, the bankruptcy administration has confirmed that an agreement between the bankrupt society and its creditors is not possible.

3.  Liquidation Plan

Beforehand, it is confirmed that the filing of this liquidation phase would not be necessary if all acknowledged creditors were to waive or desist on their collection rights (176.1.5 of the LC).

3.1.   Current Situation surrounding the Bankrupt Company's Assets

The property and rights comprising the overall assets of the PESA bankruptcy proceedings, as of the date of the liquidation plan, and which will be analyzed separately in the different sub-sections that make up the plan, can be found in **Exhibit I** and **Exhibit III** attached hereto, and as a result are part of the overall assets.

Even though this liquidation plan sets out a quick monetization procedure on the property and rights comprising the overall assets of the bankruptcy, the sale of the property and rights comprising the overall assets may be extended for more than one year as of the initiation of the liquidation phase.  Therefore, and under that scenario, the bankruptcy administration requests that this Court be expressly permitted to extend the aforementioned time period, which shall be deemed granted when the liquidation plan is approved, and the Court will be informed on the progress of the liquidation process on a quarterly basis, in accordance with the provisions set out in Article 152 of the LC.

## 3.2 Sale of the Indemnification Rights

3.2.1. Justification

In this sub-section, the transfer process of the bankrupt company's Indemnification Rights is determined.

The proposed process consists of the sale or assignment of the Indemnification Rights to third parties, or if applicable, the assignment of the financial rights that may be produced by these Indemnification Rights that correspond to the bankrupt company, considering that not enough liquid assets exist to handle the litigation proceeding(s) necessary to file against the Argentine Government.

Prior to the submission of this liquidation plan, the bankrupt company and the bankruptcy administration had contacted several entities (headquartered in London and New York) that are specialized in the acquisition of third-party claims or in financing claims, who have expressed interest and are awaiting the submission of potential bids once the liquidation plan has been approved.

Taking into consideration the peculiarities of the main assets to be liquidated, it would not be appropriate to widely publicize this plan to third parties.  The most appropriate course of action would be for the bankruptcy administration to identify and invite all those entities specializing in the acquisition of this type of assets to participate, and allowing any of the bankrupt company's creditors to also participate under the same conditions.

7

3.2.2. <mark>Sale Procedure</mark>

Phase 1.- Communicate the approval of the Liquidation Plan to potential interested parties or candidates.

During the period of 10 (ten) calendar days following the approval of the Liquidation Plan, the bankruptcy administration shall remit the approved Liquidation Plan along with a calendar of the phases of the liquidation process to potential interested parties or candidates.

Phase 2.- Due Diligence or period of analysis for the interested parties or candidates.

For a period of 30 (thirty) calendar days following the completion of the previous phase, interested parties or candidates that have expressed interest may analyze the information related to the Indemnification Rights in the offices of the bankruptcy administration. Before the Due Diligence process is carried out, the bankruptcy administration shall remit and execute a **Confidentiality Agreement**.

During this phase, the bankruptcy administration shall provide the following information:

---

**1.- The documentation related to bankruptcy proceedings 405/2012 filed with the Third Commercial Court Number of Madrid.**

**2.- Financing Agreements (including contracts and sureties) related to the acquisition of YPF, S.A. shares of stock; communications regarding termination due to acceleration and documentation related to the execution of pledges on YPF, S.A. shares of stock, which are the property of the bankrupt company.**

**3.- The YPF, S.A. bylaws.**

**4.- The documentation related to the Decrees issued by the Argentinian Government whereby the takeover of YPF, S.A. was adopted, along with other documentation mentioned in the bankruptcy administration's report.**

---

Both the bankruptcy administration and the former representatives of the bankrupt company associated with the company in the year 2012 shall be at the disposal of the potential buyers, either physically or via telephone conference, to inform on the bankrupt company's situation and answer or clarify any question that arises with regard to the information delivered for analysis.

Phase 3.- Submission of Bids.

During a period of 5 (five) calendar days following the completion of the previous phase, the interested parties or candidates may submit their joint bid to acquire the Indemnification Rights (the "Joint Bid") in a **sealed envelope** to the Third Commercial Court of Madrid, and include the following reference: ***"Joint Bid for the Acquisition of the Indemnification Rights – Petersen Energia Inversora, S.A.U. – Court Proceedings 523/2012 and Petersen Energia, S.A.U. – Court Proceedings 405-2012."*** Once the period for submitting bids has been precluded, interested parties shall communicate the bids submitted to the bankruptcy administration via email.

❖ The Bid:

➢ Shall be drafted in Spanish, will include the date and be signed by a legal representative of the interested party who has sufficient power and authority to do so, and shall also identify the most recent titleholders of the interested party's capital stock.

➢ A sworn declaration shall also be included, made before a Spanish Notary Public and shall declare unconditionally:

1. *To have knowledge of and accept the content of the PESA liquidation plan in all its terms;*
2. *To have knowledge of and accept the sale conditions of the Indemnification Rights, the payment of the price and the formalization of the documents described in the liquidation plan;*
3. *To have knowledge of and accept that the transfer is made without any guarantee of success with regard to the lawsuit(s) filed or the result that may be obtained;*
4. *That the submission of their bid is done at their own risk and peril, having analyzed, reviewed or performed a legal, economic, tax, financial or any other type of study on the existence of the Indemnification Rights and the feasibility of the claim, and therefore waive any claim against the bankruptcy administration, bankrupt company, their consultants, companies belonging to the same group, advisers, directors, employees, partners and/or shareholders;*

5. *That they have analyzed how the* <mark>transfer</mark> *will impact the Indemnification Rights and the possibility of legal action based on these rights once the transfer is made,  and therefore waive any claim against the bankruptcy administration, bankrupt company, their consultants, companies belonging to the same group, advisers, directors, employees, partners and/or shareholders, arising out of the enforcement of this Liquidation Plan;*

6. *To have knowledge of and accept, as an essential requirement for the award, that once the* <mark>transfer</mark> *of the Indemnification Rights has been formalized, the interested party shall file the corresponding legal actions against the Argentinian State in claiming the Indemnification Rights;[2]*

The foregoing declarations shall also be reproduced in the instrument containing the transfer of the indemnification rights and the instrument containing the assignment of future claims, which shall be an essential part thereof.

➢ It shall indicate the bid <mark>price</mark> according to the options indicated below;

➢ It shall indicate that the bid is irrevocable and unconditional, and shall not be subject to obtaining financing or any other type of approval or condition;

➢ It shall indicate the date on which the operation is to be formalized, and under no circumstances may it exceed a period of 15 (fifteen) from notice of the award.

➢ The current head of the interested party submitting the bid shall include a letter of commitment, which will state that in the event of being the winning bidder, it shall jointly and severally guarantee, payable on demand, the financial obligations assumed by the formalization of the <mark>transfer</mark> of the Indemnification Rights and the agreement to assign future claims.  In the event that the current head of the interested party is a fund, it may provide a security interest by a managing company.

---

[2] The declaration contained in statement No. 6 shall not be required in the event that an Option A bid is made.

➢ It shall indicate an email address to which the bankruptcy administration may direct communications necessary so that the liquidation process may proceed accordingly.

❖ Price

The bids shall indicate one of the following options as the price to be paid to the bankrupt company:

➢ "Option A:"

1.- The minimum price of €15,000,000, plus legally applicable taxes.  This bid does not include the obligation to pay a variable price to the bankrupt company.

➢ "Option B:"

1.- A fixed price of €10,000,000 or greater, plus legally applicable taxes.

2.- A variable price or *"success fee"* of 20% over the total amount obtained from the lawsuit (whether monetary or non-monetary), plus legally applicable taxes.

➢ "Option C:"

1.- A fixed price of €7,500,000 or greater, plus legally applicable taxes.

2.- A variable price or *"success fee"* of 25% of the total amount obtained from the lawsuit (whether monetary or non-monetary), plus legally applicable taxes.

➢ "Option D:"

1.- A fixed price of €5,000,000 or greater, plus legally applicable taxes.

2.- A variable price or *"success fee" of 30%* of the total amount obtained from the lawsuit (whether monetary or non-monetary), plus legally applicable taxes.

Phase 4.- Bid Increases

Once the period for receiving bids has ended and those received by the Court are reported to the bankruptcy administration, all bidders shall be notified at the same time of the result of the bids received, and they shall all be granted a period of 7 (seven) calendar days so that they may increase their bids.

The increased bids shall be submitted in a sealed envelope to the Third Commercial Court of Madrid, which shall include the following reference: ***"Bid Increase for the Joint Acquisition of the Indemnification Rights – Petersen Energia Inversora, S.A.U. – Court Proceedings 523/2012 and Petersen Energia, S.A.U. – Court Proceedings 405-2012."***

Those who wish to compete in the increased-bids phase shall provide a guarantee payable on demand for the amount of €100,000.00 in favor of the bankrupt company, which will guarantee the formalization of the operations described in this liquidation plan, in the event that the bidder is declared the winner and then it fails to formalize said operations.  The guarantees delivered by the candidates during the increased-bid phase shall be returned to those who have not been awarded the rights at the moment the award is formalized.

Phase 5.- Award and Price Distribution

Once the period for receiving the increased-bids has finalized and those received by the Court are reported to the bankruptcy administration, all bidders shall be notified of the result of the

bids received at the same time along with the winning bidder and also the distribution of the price between PESA and PEISA, given the joint bid submitted.

The winning bidder of the Indemnification Rights shall be that who submits the best bid; Option "A" shall be preferential over Option "B," Option "B" shall be preferential over Option "C," and Option "C," shall be preferential over Option "D." If there are several bids within the same option, the one who agrees to pay a greater fixed price shall be chosen.

In the event that the winning bidder fails to make the purchase, the bidder who has made the second best bid shall then be declared the winner, and the guarantee payable on demand shall be executed in that case for having breached its obligation to complete the acquisition and as a penalty.

Phase 6.- Formalization of Operations

Prior to the formalization of the transfer operations, the bankruptcy administration shall immediately communicate with the Court who the winning bidder is so that the bankrupt company's creditors are informed.

➢ Instrument Containing the Transfer of the Indemnification Rights

The Indemnification Rights shall be transferred in a public instrument before a Spanish Notary Public, subject to Spanish laws and under the jurisdiction of the Madrid Courts (Spain). All expenses and taxes arising out of the formalization of the operation shall be paid by the winning bidder.

Payment of the "fixed" price shall be made at the moment the public instrument of the sale is executed, by delivering a check payable to the order of the bankrupt company, which shall be issued by a Spanish financial entity or the branch of a financial entity located in Spain.

Payment of the "variable" price, if applicable, shall be done simultaneously at the moment the buyer receives consideration.

> ➢ The instrument containing the assignment of the bankrupt company's share of future claims for the payment of the variable price.[3]

At the same time as the public instrument containing the sale of the Indemnification Rights, the winning bidder shall execute a public instrument containing the assignment of the bankrupt company's proportional share of its rights to future claims that may be obtained from the lawsuit (whether monetary or non-monetary) originating from the legal actions that it agrees to file against the Argentinian Government in claims on the Indemnification Rights, whether as a result of legal or arbitration proceedings, extrajudicial agreement, transaction or any other conventional solution, in accordance with the bid selected.

The assignment of future claims shall be formalized in a public instrument before a Spanish Notary Public, subject to Spanish laws and under the jurisdiction of the Madrid Courts (Spain). All expenses and taxes arising out of the formalization of the operation shall be paid by the winning bidder/assignor.

Furthermore, the current head of the winning bidder/assignor shall jointly and severally guarantee, payable on demand, the financial obligations assumed by the formalization of the transfer of the Indemnification Rights and the assignment agreement of future claims.

3.2.3. Conveyance of the Indemnification rights by the Winning Bidder[4]

3.2.3.1. Settlement

The winning bidder to the Indemnification Rights shall not be required to be authorized by the bankruptcy administration to reach a settlement agreement with the Argentine Government, provided the amount from the settlement agreement is distributed proportionately between the bankrupt company and the winning bidder, pursuant to the winning bid and in the manner reached in the agreement.

3.2.3.2. Assignment

---

[3] This sub-section does not apply to the awarded bid in "Option A."
[4] This sub-section does not apply to the awarded bid in "Option A."

The Indemnification Rights that are subject to transfer may not be assigned to third parties, so either directly nor indirectly, without the authorization from the bankruptcy administration.

If as a result of the assignment the bankrupt company continues in the same initial situation in accordance with the provisions established in this liquidation plan, the bankruptcy administration may not deny authorization, unless the price obtained is distributed proportionately between the bankrupt party and the assignee, according to the winning bid. The price to be paid to the bankrupt company shall be made by transfer to the bankrupt company's checking account managed by the bankruptcy administration.

The amount received shall be applied to the pending payment of the variable price, pursuant to the Transfer of the Indemnification Rights agreement.

3.2.4. Exemption from Liability

When transferring the Indemnification Rights, neither the bankrupt company nor the bankruptcy administration shall provide any guarantee of success over claims on said rights. Any claim that harms the Indemnification Rights as a result of their transfer or from the application of a legal rule shall not be enforceable and is therefore expressly waived.

3.2.5. In the Event that there are No Parties Interested in Acquiring the Indemnification rights. Commencement of the Process to Claim the Indemnification rights. Financing.

In the event that the Indemnification Rights are not transferred in accordance with the Liquidation Plan, the bankruptcy administration shall be authorized to locate interested parties or candidates to finance the filing of legal proceedings deemed necessary to claim the

Indemnification Rights, and notifying the Court of the agreements reached.

If at any time during the liquidation process, following an unsuccessful sale process, a bid is made to buy the Indemnification Rights, the bankruptcy administration shall justifiably propose to modify the liquidation plan in order to make a direct sale of the rights, but only if the bid received is more beneficial than the actions filed in claiming the Indemnification Rights, and the claims on the overall assets are covered.

### 3.2.6. Inability to Monetize the Indemnification Rights

If the Indemnification Rights are unable to be liquidated, whether by sale to third parties or if there is a lack of financing, the bankrupt company's creditors shall be offered the option of acquiring the rights for their own benefit during a period of 30 calendar days.  Once this period has concluded without the showing of any interest, the bankruptcy administration shall be entitled to request the conclusion of the bankruptcy proceedings due to lack of property in the overall assets, given its inability to file suit against the Argentinian State with its own funds.

### 3.3 Sale of the Remaining Assets

### 3.3.1. Short-term Financial Investments

These correspond to specific amounts contained in a checking account with partners and administrators for the amount of €2,043.54.

Since we are dealing with liquid assets, they do not need to be sold, and as a result the only appropriate action is to deposit these funds into the checking account managed by the bankruptcy administration.

3.3.2. Treasury

Considering that they are liquid assets, they do not need to be sold, and as a result these amounts shall be used to pay the bankruptcy claims, in accordance with the LC.

The balances of the pledged checking accounts shall be transferred to the preferential creditors, as indicated in the bankruptcy administration's report for the cancellation of the debt, according to the liquid amount collected.

4. Loan Payments to Creditors

Repayment of all loans shall be made against the overall assets from the profit made on the sale of the property and rights not affected by senior loans, along with the remaining balance in the treasury, and if the remaining amount is insufficient, the amount obtained shall be distributed among all creditors from the overall assets in the order of their maturity.

Once the loans have been repaid from the overall assets, the general preference loans shall then be repaid in the order established by Article 91 and, if applicable, proportionate within each number, and once repaid, the ordinary loans shall then be repaid.

Repayment of ordinary loans shall not be made until those against the overall assets and the preferred loans are repaid in full, which shall be done proportionately, and in conjunction with the special preference loans up to the amounts not repaid from those property and rights withheld, where appropriate.

Repayment of the subordinate loans shall be made once the ordinary loans have been repaid in full, in accordance with the provisions set out in Article 92, and if applicable, proportionately within each number.

In view of the loans against the overall assets that can be generated, the bankruptcy administration shall subtract the property and rights necessary to repay the debts against the administration, and shall take into account, among others, the following:

- The expenses for dissolving the Company and its registration in the Commercial Registry.
- Also, the expenses established for tasks related to the liquidation and control of the property and papers of the bankrupt company shall also be subtracted within the time periods established by Law.

Accordingly,

**I PLEAD TO THE COURT**: Admit this writing as submitted, and consider the statements made therein, along with the submission of the Liquidation Plan of the legal entity PETERSEN ENERGIA, S.A.U. on its merits, pursuant to Article 148 of the LC.

So that Justice may be served, in Madrid on October 6, 2014.

**THE BANKRUPTCY ADMINISTRATION**          **ASSISTANT TO THE REPRESENTATIVE**
**WITH LIQUIDATION AUTHORITY**

[ILLEGIBLE SIGNATURE]                              [ILLEGIBLE SIGNATURE]

18