# Domb Declaration

# Exhibit 15, Part 2



Concursada: PETERSEN ENERGÍA, S.A.U.

Concurso Ordinario nº 405/2012

## AL JUZGADO DE LO MERCANTIL NÚMERO 3 DE MADRID

La **ADMINISTRACIÓN CONCURSAL** designada en el procedimiento de Concurso Voluntario de acreedores de la entidad **PETERSEN ENERGÍA, S.A.U.** (en adelante, "**PESA**"), que se tramita ante este Juzgado bajo el nº de Autos 405/2012, ante el mismo comparezco y con el debido respeto y consideración, **DIGO**:

**I.-** Con fecha 2 de septiembre de 2014 se dictó Auto, notificado con fecha 12 de septiembre de 2014, por el que se apertura la fase de liquidación del presente procedimiento concursal, concediéndose a esta administración concursal el plazo de quince (15) días para que presente un plan para la realización de los bienes y derechos integrados en la masa activa del concurso de conformidad con lo establecido en el artículo 148.1 de la Ley Concursal (LC).

**II.-** Que por medio del presente escrito, se acompaña un Plan para la realización de los bienes y derechos integrados en la masa activa del concurso, junto con los documentos que allí se referencian.

En su virtud,

**SUPLICAMOS AL JUZGADO:** Que tenga por presentado este escrito, tenga por hechas las manifestaciones que en él se contienen, y en sus méritos tenga por presentado el referido plan de liquidación, y tras los trámites oportunos, se dicte Auto declarando aprobado dicho Plan, al cual habrán de atenerse las operaciones de liquidación de la masa activa.

Por ser Justicia que pido, en Madrid a 6 de octubre de 2014.

**LA ADMINISTRACION CONCURSAL**  **AUXILIAR DELEGADO**
**CON FUNCIONES DE LIQUIDACIÓN**



PLAN DE LIQUIDACIÓN PARA LA REALIZACIÓN DE LOS BIENES Y DERECHOS INTEGRADOS EN LA MASA ACTIVA DE LA MERCANTIL PETERSEN ENERGÍA, S.A.U.

El Plan de liquidación consta de los siguientes apartados:

1. Antecedentes.

2. De la solicitud de apertura de la liquidación efectuada por el deudor.

3. Plan de liquidación.

3.1. Situación actual de los activos de la sociedad concursada.
3.2. Realización de los Derechos Indemnizatorios.
    3.2.1. Justificación.
    3.2.2. Procedimiento de venta.
    3.2.3. Disposición por la adjudicataria de los Derechos Indemnizatorios.
        3.2.3.1. Transacción.
        3.2.3.2. Cesión.
    3.2.4. Exención de responsabilidad.
    3.2.5. Supuesto de inexistencia de interesados en la adquisición de los Derechos Indemnizatorios. Inicio del procedimiento de reclamación de los Derechos Indemnizatorios. Financiación.
    3.2.6. Imposibilidad de monetización de los Derechos Indemnizatorios.

3.3. Realización del resto de activos.

    3.3.1. Inversiones Financieras a corto plazo.
    3.3.2. Tesorería.

4. Pago de los créditos a los acreedores.

Anexos

Anexo I.- Informe provisional ex artículo 75 de la LC.
Anexo II.- Convenio de Solución Amigable y Avenimiento de Expropiación.
Anexo III.- Balance.

1. Antecedentes.

Tal y como esta administración concursal reflejó en su Informe Provisional ex artículo 75 de la Ley Concursal que acompañamos como **Anexo I**, y al cual nos remitimos íntegramente por obrar en autos, la empresa Petersen Energía S.A.U (PESA) tuvo como principal inversión y activo: ***Participaciones en empresas asociadas: 58.603.606 acciones*** de **YPF, S.A.**, domiciliada en Argentina, las cuales estaban admitidas a cotización oficial en el mercado continuo de las Bolsas de Nueva York y Buenos Aires.

La situación de insolvencia de la sociedad concursada trae causa de la declaración de interés público por el Gobierno de Argentina de las actividades relacionadas con hidrocarburos, declarando sujeto a expropiación el 51% de las acciones y votos de YPF, S.A. que se encontraban en poder de REPSOL o sus sociedades controladas o vinculadas, hecho que se produjo en el mes de abril de 2012.

Dicha expropiación no vino acompañada del cumplimiento de la normativa vigente en Argentina y de los pactos estatutarios existentes en YPF, S.A., es decir, mediante la realización de una oferta pública de adquisición de acciones (OPA) de las que era titular la sociedad concursada. Este hecho referenciado supuso que la sociedad concursada perdiera la totalidad de sus acciones de YPF, S.A., como consecuencia de la negativa de las entidades financieras acreedoras a refinanciar la deuda, declarando vencido anticipadamente los contratos de financiación y ejecutando las garantías prendarias sobre acciones de su titularidad. Si el Gobierno Argentino hubiera cumplido con las obligaciones legales y estatutarias, la sociedad concursada podría haber pagado con el precio que debía recibir, sin lugar a dudas, a la totalidad de sus acreedores.

Como consecuencia de lo anterior, se incorporó al Inventario de la sociedad concursada un activo que se corresponde con los **"Derechos Indemnizatorios"**[1] que le asisten a la sociedad concursada. La justificación y valoración de esos potenciales Derechos Indemnizatorios, cuya existencia no ha sido cuestionada durante la tramitación de este procedimiento concursal, y sujeto a la reclamación y reconocimiento ante los Tribunales u Organismos competentes, se encuentran detallados en el Informe presentado por la administración concursal. Las valoraciones incluidas en dicho Informe de la administración

---

[1] Por **"Derechos Indemnizatorios"** nos remitimos a lo detallado en el informe emitido por la Administración Concursal que se acompaña como Anexo I al presente documento.

4

concursal no son en ningún caso vinculantes para quienes participen en el proceso de liquidación, pues las mismas fueron realizadas en el marco del procedimiento concursal y para estos únicos efectos, debiendo ser estos quienes realicen sus propias valoraciones sobre la existencia, cuantificación y éxito de la/s reclamación/es que pudieran o debieran ejercitarse contra la República de Argentina.

En este sentido es de destacar el hecho de que el pasado 27 de febrero de 2014 la República Argentina suscribió el **"Convenio de Solución Amigable y Avenimiento de Expropiación",** que se acompaña como **Anexo II**.

Resulta obligado por tanto proceder a monetarizar el principal activo de la sociedad concursada en relación con los Derechos Indemnizatorios que entendemos asisten a la sociedad concursada en el mejor interés para la masa activa, y así hacer frente a las deudas que mantiene con sus acreedores.

2. De la solicitud de apertura de la liquidación efectuada por el deudor.

Habiéndose solicitado por el deudor concursado con fecha 17 de julio de 2014 la apertura de la fase de liquidación, mediante Auto de fecha 2 de septiembre de 2014 se declaró aperturada la misma.

Las razones esgrimidas por la sociedad concursada para solicitar la apertura de la liquidación y con las que esta Administración Concursal muestra su conformidad son las siguientes:

5

Que con fecha 15 de julio de 2014 ha sido notificado a mi mandante el auto de fecha 8 de julio del mismo año por el que el Juzgado acuerda poner fin a la fase común del concurso de PESA y abrir la fase de convenio.

Que ello no obstante, a la vista de las circunstancias objetivas, de la evolución de los acontecimientos y de los medios disponibles para proponer un convenio, mi mandante, tras haber mantenido diversas reuniones con los acreedores, considera que la mejor forma de preservar el interés de éstos pasa por instar directamente la liquidación, de manera que en ese ámbito se disponga lo necesario a tal efecto.

Así, con base en lo dispuesto en el artículo 142.1 de la Ley Concursal (LC) y desde el convencimiento de que en las actuales circunstancias representa la más razonable actuación a seguir, en nombre de PESA, por el presente vengo a SOLICITAR LA APERTURA DE LA FASE DE LIQUIDACIÓN y la realización de la masa activa en los términos que hagan posible la mejor satisfacción de los acreedores de mi mandante.

A la vista de lo anteriormente expuesto, de los documentos existentes y de la información recabada de los acreedores, se ha constatado por la administración concursal la imposibilidad de alcanzar un convenio entre la sociedad concursada y sus acreedores.

3. Plan de liquidación.

De forma previa se hace constar que la tramitación de esta fase de liquidación no sería necesaria si la totalidad de los acreedores reconocidos renunciaran o desistiesen de sus derechos de cobro (176.1.5° de la LC).

3.1. Situación actual de los activos de la sociedad concursada.

Los bienes y derechos que integran la masa activa del concurso de PESA a la fecha del presente plan de liquidación, y que serán objeto de análisis de forma separada en los diferentes apartados que componen el mismo, se encuentran incorporados en el **Anexo I** y en el **Anexo III** que se acompaña al presente plan, y por tanto forman parte de la masa activa.

Aunque el presente plan de liquidación prevé un procedimiento rápido de monetización de los bienes y derechos que conforman la masa activa del concurso, pudiera ser que la realización de los bienes y derechos integrados en la masa activa del concurso se prolonguen por tiempo superior al año desde la apertura de la fase de liquidación. Por ello, para ese supuesto, la administración concursal solicita la habilitación expresa de este Juzgado para superar el indicado plazo, la cual se entenderá otorgada con la aprobación del plan de liquidación, si bien trimestralmente, se irá informando al Juzgado de la evolución del proceso de liquidación de conformidad con lo dispuesto en el artículo 152 de la LC.

3.2   Realización de los Derechos Indemnizatorios

3.2.1. Justificación.

En este apartado se determina el procedimiento de enajenación de los Derechos Indemnizatorios que asisten a la sociedad concursada.

El proceso que se propone consiste en la venta o cesión a terceros de los Derechos Indemnizatorios, o en su caso de la cesión de los derechos económicos que pudieran generar esos Derechos Indemnizatorios, que le corresponden a la sociedad concursada habida cuenta la inexistencia de tesorería suficiente con la que poder hacer frente al/los litigio/s que sean necesarios interponer frente al Estado Argentino.

Con carácter previo a la presentación de este plan de liquidación la sociedad concursada y la administración concursal, han contactado con diversas entidades (con sede en Londres y Nueva York) especializadas en la adquisición de reclamaciones frente a terceros o en la financiación de reclamaciones, habiendo mostrado interés y quedando a la espera de estudiar la presentación de posibles ofertas una vez se haya aprobado el plan de liquidación.

Teniendo en cuenta las peculiaridades del principal activo a liquidar, no resulta procedente que este plan de liquidación establezca una amplia publicidad a terceros, siendo lo más apropiado que la administración concursal identifique e invite a participar a todas aquellas entidades especializadas en la adquisición de este tipo de activos, pudiendo participar igualmente cualquiera de los acreedores de la sociedad concursada, en igualdad de condiciones.

7

3.2.2. Procedimiento de venta.

Fase 1ª.- Comunicación de la aprobación del Plan de Liquidación a posibles interesados o candidatos.

Durante el período de diez (10) días naturales siguientes a la aprobación del Plan de Liquidación, la administración concursal remitirá el Plan de Liquidación aprobado y un calendario de las fases del proceso de liquidación a posibles interesados o candidatos.

Fase 2ª.- Due Diligence o período de análisis por los interesados o candidatos.

Durante el período de treinta (30) días naturales siguientes al transcurso del plazo de la fase anterior, los interesados o candidatos que hayan mostrado su interés podrán analizar, en las oficinas de la administración concursal, la información relativa a los Derechos Indemnizatorios. De forma previa a la realización del proceso de Due Diligence la administración concursal remitirá y suscribirá un **Acuerdo de Confidencialidad.**

En esta fase la administración concursal pondrá a su disposición la siguiente información:

> **1.- Documentación relativa al proceso concursal 405/2012 seguido ante el Juzgado de lo Mercantil número 3 de Madrid.**
> **2.- Contratos de Financiación (incluidos contratos de garantías) relativos a la adquisición de las acciones de YPF, S.A.; comunicaciones de resolución por vencimiento anticipado y documentación relativa a la ejecución de las garantías prendarias sobre las acciones de YPF, S.A. propiedad de la sociedad concursada.**
> **3.- Estatutos Sociales de YPF, S.A.**
> **4.- Documentación relativa a los Decretos del Gobierno Argentino por las que se adoptó la toma de control de YPF, S.A., así como otra documentación mencionada en el informe de la administración concursal.**

Al mismo tiempo la administración concursal y la antigua representación social de la sociedad concursada vinculada a la misma en el año 2012, estarán a disposición de los posibles adquirentes bien presencialmente o mediante conferencias telefónicas, para informar de la situación de la sociedad concursada y solventar y/o aclarar cualquier cuestión que surja en relación con la información que se le entrega para su análisis.

Fase 3ª.- Presentación de ofertas.

Durante el periodo de cinco (5) días naturales siguientes al transcurso del plazo de la fase anterior, los interesados o candidatos podrán presentar su oferta conjunta de adquisición de los Derechos Indemnizatorios (la "Oferta Conjunta") en **sobre cerrado** ante el Juzgado de lo Mercantil número 3 de Madrid incluyendo como referencia la siguiente: *"Oferta Conjunta de adquisición de los Derechos Indemnizatorios – Petersen Energía Inversora, S.A.U. – Autos 523/2012 y Petersen Energía, S.A.U. – Autos 405/2012"*. Una vez precluido el plazo de presentación de ofertas, los interesados deberán comunicar las ofertas presentadas a la administración concursal mediante correo electrónico.

❖ La Oferta:

  ➢ Se redactará en Castellano, y deberá venir fechada y firmada por el representante legal del interesado con facultades suficientes, debiendo identificar de igual modo el/los titular/es último/s propietario/s del capital social del interesado;

  ➢ Deberá acompañarse de un acta de manifestaciones, otorgada ante fedatario público español donde, sin condición alguna, se declare:

    *1. Declarar conocer y aceptar en todos sus términos el contenido del plan de liquidación de PESA;*
    *2. Declarar conocer y aceptar las condiciones de la venta de los Derechos Indemnizatorios, el pago del precio y la formalización de los documentos que se describen en el plan de liquidación;*
    *3. Declarar conocer y aceptar que la transmisión se realiza sin garantía de éxito de la/s reclamación/es que se interponga/n, y del resultado que pueda obtenerse;*
    *4. Declarar que la presentación de su oferta se realiza, bajo su riesgo y ventura, habiendo realizado el análisis, revisión o estudio legal, económico, fiscal, financiero, o de cualquier otra índole, de la existencia de los Derechos Indemnizatorios y viabilidad para su reclamación que ha considerado necesaria, con renuncia por tales motivos a cualquier reclamación contra la administración concursal, sociedad concursada, sus asesores, empresas de su mismo grupo, consejeros, directivos, empleados, socios y/o accionistas;*

> *5. Declarar que han analizado el impacto de la transmisión sobre los Derechos Indemnizatorios y sobre la posibilidad de accionar con base a los mismos una vez realizada la transmisión, con renuncia por tales motivos a cualquier reclamación contra la administración concursal, sociedad concursada, sus asesores, empresas de su mismo grupo, consejeros, directivos, empleados, socios y/o accionistas, derivada de la ejecución del presente Plan de Liquidación;*
>
> *6. Declarar conocer y aceptar, como requisito esencial para la adjudicación, que formalizada la transmisión de los Derechos Indemnizatorios el interesado deberá interponer las acciones que correspondan frente al Estado Argentino en reclamación de los Derechos Indemnizatorios[2];*

Las anteriores manifestaciones serán igualmente reproducidas en la escritura de transmisión de los derechos indemnizatorios como en la escritura de cesión de créditos futuros, siendo contenido esencial de las mismas.

- Indicará el precio de la oferta conforme a las opciones que se indicarán a continuación;

- Indicará que la oferta es irrevocable e incondicional, no estando sujeta a la obtención de financiación, ni a ninguna ulterior aprobación o condición;

- Indicará la fecha en la que se formalizará la operación sin que en ningún caso pueda exceder del plazo de quince (15) desde la notificación de la adjudicación.

- Se acompañará documento de compromiso por parte del titular último del interesado que presenta la oferta, mediante el cual en caso de que resultase adjudicatario asume la obligación de garantizar de forma solidaria y a primer requerimiento las obligaciones económicas que se asumen por la formalización de la escritura de transmisión de los Derechos Indemnizatorios y de la escritura de cesión de créditos futuro. En caso de que el titular último del interesado sea un fondo podrá otorgarse garantía por su sociedad gestora.

---

[2] La declaración contenida en el manifestación n° 6 no resultará necesaria en caso de presentarse una oferta dentro de la opción A.

> Indicará una dirección de correo electrónico donde la administración concursal pueda remitir las comunicaciones necesarias para el buen desarrollo del proceso de liquidación.

❖ Precio:

Las ofertas deberán indicar como precio a abonar a la sociedad concursada alguna de las siguientes opciones:

> "Opción A":

1.- Precio por importe mínimo de 15.000.000 de euros más los impuestos legalmente repercutibles. Esta oferta no incluye la obligación de abonar precio variable a la sociedad concursada.

> "Opción B":

1.- Precio fijo por importe de 10.000.000 de euros o superior más los impuestos legalmente repercutibles.

2.- Precio variable o "success fee" de un 20% sobre el importe total que se obtenga de la reclamación (ya sea dineraria o no dineraria) más los impuestos legalmente repercutibles.

> "Opción C":

1.- Precio fijo por importe de 7.500.000 de euros o superior más los impuestos legalmente repercutibles.

2.- Precio variable o "success fee" de un 25% sobre el importe total que se obtenga de la reclamación (ya sea dineraria o no dineraria) más los impuestos legalmente repercutibles.

11

➢ "Opción D":

1.- Precio fijo por importe de 5.000.000 de euros o superior más los impuestos legalmente repercutibles.

2.- Precio variable o *"success fee"* de un 30% sobre el importe total que se obtenga de la reclamación (ya sea dineraria o no dineraria) más los impuestos legalmente repercutibles.

Fase 4ª.- Ofertas de mejora.

Una vez finalizado el plazo de recepción de ofertas y notificadas las recibidas por el Juzgado a la administración concursal, se notificará conjuntamente a todos los oferentes el resultado de las ofertas recibidas y se les concederá un plazo igual de siete (7) días naturales para que puedan presentar ofertas de mejora.

Dichas ofertas de mejora serán presentadas en sobre cerrado ante el Juzgado de lo Mercantil Nº 3 de Madrid incluyendo como referencia la siguiente: ***"Oferta de mejora para la adquisición conjunta de los Derechos Indemnizatorios – Petersen Energía Inversora, S.A.U. – Autos 523/2012 y Petersen Energía, S.A.U. – Autos 405/2012"***.

Aquellos que quieran concurrir a la fase de presentación de ofertas de mejora deberán aportar un aval a primer requerimiento por importe de 100.000,00€, en favor de la sociedad concursada, que garantice la formalización de las operaciones descritas en el presente plan de liquidación para el caso de que resulte adjudicataria y no formalice las mismas. Los avales entregados por los candidatos en el trámite de presentación de ofertas de mejora serán devueltos a quienes no hayan sido adjudicatarios en el momento de la formalización de la adjudicación.

Fase 5ª.- Adjudicación y distribución del precio.

Una vez finalizado el plazo de recepción de las ofertas de mejora y notificadas las recibidas por el Juzgado a la administración concursal, se notificará conjuntamente a todos los

oferentes el resultado de las ofertas recibidas y la adjudicataria, así como la distribución del precio entre PESA y PEISA dada la oferta conjunta presentada.

Será adjudicataria de los Derechos Indemnizatorios aquella que presente la mejor oferta, siendo preferente la oferta que se refiera a la opción "A" sobre la "B"; la "B" sobre la "C"; la "C" sobre la "D". Si hubieren varias ofertas dentro de una misma opción será elegida aquella que acuerde satisfacer una mayor retribución de precio fijo.

En el caso de que la adjudicataria no llegue a materializar la compraventa resultará adjudicataria aquella entidad que haya presentado la segunda mejor oferta, pudiendo en ese caso ejecutar el aval a primer requerimiento entregado, por incumplimiento de la obligación de adquirir y como penalización.

Fase 6ª.- Formalización de las operaciones.

Con carácter previo a la formalización de las operaciones de transmisión, la administración concursal comunicará inmediatamente al Juzgado el adjudicatario para el conocimiento de los acreedores de la sociedad concursada.

> Escritura de transmisión de los Derechos Indemnizatorios.

Los Derechos Indemnizatorios se transmitirán en escritura pública ante fedatario público español, con sujeción a la legislación española y a la Jurisdicción de los Tribunales de Madrid (España). Todos los gastos e impuestos derivados de la formalización de la operación serán de cuenta de la entidad adjudicataria.

El pago del precio "fijo" se realizará en el momento del otorgamiento de la escritura pública de venta, mediante la entrega de cheque bancario nominativo a favor de la sociedad concursada, debiendo haber sido emitido el mismo por una entidad financiera española o entidad financiera con sucursal en España.

El pago del precio "variable", en su caso, se hará de forma simultánea al momento en el que el adquirente reciba la contraprestación.

> ➤ <u>Escritura de cesión de créditos futuros de la parte proporcional que le corresponde a la sociedad concursada para el abono del precio variable[3].</u>

De forma simultánea a la escritura pública de venta de los Derechos Indemnizatorios, la adjudicataria otorgará escritura pública de cesión de la parte proporcional que le corresponde a la sociedad concursada de los derechos de créditos futuros que pueda obtener de la reclamación (ya sea dineraria o no dineraria) derivado de las acciones que se obliga a interponer frente al Estado Argentino en reclamación de los Derechos Indemnizatorios, bien por el resultado de un procedimiento judicial o arbitral, acuerdo extrajudicial, transacción o cualesquiera otra forma de solución convencional, conforme a la oferta seleccionada.

La cesión de créditos futuros se formalizará en escritura pública ante fedatario público español, con sujeción a la legislación española y a la Jurisdicción de los Tribunales de Madrid (España). Todos los gastos e impuestos derivados de la formalización de la operación serán de cuenta de la entidad adjudicataria/cedente.

De igual modo, el titular último del adjudicatario/cedente deberá garantizar de forma solidaria y a primer requerimiento las obligaciones económicas que se asumen por la formalización de la escritura de cesión de créditos futuros.

3.2.3. Disposición por la adjudicataria de los Derechos Indemnizatorios[4].

3.2.3.1. Transacción.

La adjudicataria de los Derechos Indemnizatorios no deberá contar con la autorización de la administración concursal parar alcanzar un acuerdo con el Estado Argentino, siempre y cuando el resultado de la transacción sea proporcionalmente distribuido entre la sociedad concursada y la adjudicataria, conforme a la oferta adjudicada y sea cual sea la forma en la que se materialice el acuerdo.

---

[3] Este apartado no aplica a la oferta adjudicada dentro de la "Opción A"
[4] Este apartado no aplica a la oferta adjudicada dentro de la "Opción A"

14

3.2.3.2 Cesión.

Los Derechos Indemnizatorios que son objeto de transmisión no podrán cederse a terceros, ni directa ni indirectamente, sin contar con la autorización de la administración concursal.

Si como resultado de la operación de cesión se mantiene a la sociedad concursada en la misma situación inicial, conforme a lo establecido en el presente plan de liquidación, la administración concursal no podrá negarse a conceder la autorización siempre y cuando el precio obtenido por la transmisión, directa o indirecta, de los Derechos Indemnizatorios que se obtenga, sean distribuidos proporcionalmente entre la sociedad concursada y la cedente, conforme a la oferta adjudicada. El precio que debe satisfacerse a la sociedad concursada deberá abonarse mediante transferencia a la cuenta corriente de la sociedad concursada intervenida por la administración concursal.

El importe recibido se aplicará al precio variable pendiente de abono conforme a la escritura de transmisión de los Derechos Indemnizatorios.

3.2.4. Exención de responsabilidad.

Por la transmisión de los Derechos Indemnizatorios, ni la sociedad concursada ni la administración concursal, otorgarán garantía de éxito alguna ante la reclamación de los mismos. No será exigible, y por tanto se renuncia expresamente, a cualquier reclamación derivada de que por la transmisión de los Derechos Indemnizatorios éstos se vean perjudicados por la transmisión misma o por la aplicación de una norma legal.

3.2.5. Supuesto de inexistencia de interesados en la adquisición de los Derechos Indemnizatorios. Inicio del procedimiento de reclamación de los Derechos Indemnizatorios. Financiación.

En caso de que no se produzca la transmisión de los Derechos Indemnizatorios conforme al presente Plan de Liquidación, la administración concursal estará legitimada para buscar a interesados o candidatos que financien la interposición de los procedimientos legales que

resulten necesarios para reclamar los Derechos Indemnizatorios, poniendo en conocimiento del Juzgado los acuerdos que se alcancen.

Si en algún momento durante el proceso de liquidación, tras resultar infructuoso el proceso de venta, se recibiera alguna oferta de compra de los Derechos Indemnizatorios, la administración concursal propondrá justificadamente la modificación del plan de liquidación para proceder a la venta directa de los mismos, siempre y cuando, la oferta recibida sea más beneficiosa que el ejercicio de las acciones en reclamación de los Derechos Indemnizatorios, y al mismo tiempo queden cubiertos los créditos contra la masa.

3.2.6. Imposibilidad de monetización de los Derechos Indemnizatorios.

Ante la imposibilidad de realización de los Derechos Indemnizatorios bien por la venta a terceros o bien por la imposibilidad de obtener financiación, se ofrecerá a los acreedores de la sociedad concursada la posibilidad de adquirir los mismos en su beneficio por plazo de 30 días naturales. Transcurrido el mismo sin haber mostrado interés en la adquisición la administración concursal estará habilitada para solicitar la conclusión del concurso por inexistencia de bienes de la masa activa, dada la imposibilidad de reclamar al Estado Argentino, por sus propios medios.

3.3   Realización del resto de activos.

3.3.1. Inversiones financieras a corto plazo.

Se corresponden con determinados importes que obran en una cuenta corriente con socios y administradores por importe de 2.043,54€.

Al tratarse de un activo líquido no necesita ser realizado por lo que únicamente se procederá a su reclamación para su posterior ingreso en la cuenta corriente intervenida por la administración concursal.

3.3.2. Tesorería.

Al ser un activo líquido no necesita ser realizado por lo que se procederá con las cantidades existentes al pago de los créditos concursales conforme al orden establecido en la LC.

Los saldos que se encuentran en cuentas corrientes pignoradas serán transferidos a los acreedores privilegiados según se indican en el informe de la administración concursal para la cancelación de la deuda, en función del importe liquido cobrado.

4. Pago de los créditos a los acreedores.

Con el producto de la realización de todos los bienes y derechos no afectos al pago de créditos con privilegio especial, y con el saldo existente en la tesorería, se procederá al pago de los créditos contra la masa y si el importe resultante fuera insuficiente, lo obtenido se distribuirá entre todos los acreedores de la masa por el orden de sus vencimientos.

Una vez satisfechos los créditos contra la masa se procederá al pago de los créditos con privilegio general, por el orden establecido en el artículo 91 y, en su caso, a prorrata dentro de cada número, y una vez satisfechos se procederá al pago de los créditos ordinarios.

El pago de los créditos ordinarios no se realizará hasta que hayan quedado íntegramente satisfechos los créditos contra la masa y los privilegiados, siendo satisfechos a prorrata; conjuntamente con los créditos con privilegio especial en la parte en que éstos no hubieren sido satisfechos con cargo a los bienes y derechos afectos, en su caso.

El pago de los créditos subordinados se realizará una vez hayan quedado íntegramente satisfechos los créditos ordinarios, por el orden establecido en el artículo 92, y en su caso, a prorrata dentro de cada número.

Atendiendo a los créditos contra la masa que se puedan generar, la administración concursal deducirá de la masa activa los bienes y derechos necesarios para satisfacer los créditos contra ésta, debiendo tenerse en consideración, entre otros, los siguientes:

- Gastos de disolución de la Sociedad e inscripción en el Registro Mercantil.

- También ha de hacerse deducción de los gastos previstos para las tareas de liquidación y custodia de bienes y papeles del concursado, en los plazos previstos en la Ley.

En su virtud,

**SUPLICO AL JUZGADO:** Que teniendo por presentado este escrito, se sirva admitirlo, tenga por hechas las manifestaciones que en él se contienen, y en sus méritos tenga por presentado el Plan de liquidación de la entidad PETERSEN ENERGÍA, S.A.U. de acuerdo con lo previsto en el artículo 148 de la LC.

Por ser de Justicia que se pide, en Madrid, a 6 de octubre de 2014.

LA ADMINISTRACION CONCURSAL  
CON FUNCIONES DE LIQUIDACIÓN

AUXILIAR DELEGADO



**Morningside Translations**

# TRANSLATION CERTIFICATION

450 7th Avenue
10th Floor
New York, NY 10123
Tel 212.643.8800
Fax 212.643.0005
www.morningtrans.com

**County of San Francisco**
**State of California**

Date: September 3, 2015

To whom it may concern:

This is to certify that the attached translation from Spanish into English is an accurate representation of the documents received by this office.

The documents are designated as:

- Submission of the Bankruptcy Administration to the Third Commercial Court of Madrid with Plan of Liquidation, dated 6 October 2014

Ilaria Taylor, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

*[signature]*

_____
Signature of Ilaria Taylor