# Domb Declaration

# Exhibit 16, Part 2





08/2014

## EXHIBIT A

### Defined Terms

"*Adverse Claim*" means, with respect to a Claim or any interest therein or any Proceeds thereof, (i) any mortgage, deed of trust, lien, pledge, hypothecation, encumbrance, charge or security interest in, on or affecting such Claim or any interest therein or any Proceeds thereof, (ii) the interest of a vendor or a lessor under any conditional sale agreement, capital lease or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such Claim or any interest therein or any Proceeds thereof, (iii) any purchase option, call or similar right of a third party with respect to such Claim or any interest therein or any Proceeds thereof and (iv) any other claim that a claimant has a property interest in such Claim or any interest therein or any Proceeds thereof and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with such Claim or any interest therein or any Proceeds thereof.

"*Affiliate*" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified. For this purpose, "*Control*" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise, and "*Controlling*" and "*Controlled*" have meanings correlative thereto.

"*Attachment Proceeding*" means any proceeding by a creditor of the Counterparty seeking to attach or seize Proceeds.

"*Bankruptcy Court*" means Mercantile Court Number 3, Madrid, Spain, or any successor court in which the Insolvency Proceedings may proceed.

"*Business Day*" means a day on which commercial banks and foreign exchange markets settle payments and are open for general business (including dealings in foreign exchange and foreign currency deposits) in Madrid and New York.

"*Capital Provider*" has the meaning set forth in the recitals to this Agreement.

"*Capital Provider's Entitlement*" has the meaning set forth in Section 3.1.

"*Claim*" means each legal claim described on Annex II, as each such claim may be varied or enlarged by the addition of claims and/or additional parties from time to time, and includes:

(i) any and all related pre- and post-trial proceedings or processes, or pre- and post-hearing proceedings or processes, as applicable, in or in connection with such claim(s), including the pursuit of costs or post-judgment or post-arbitral award remedies;

(ii) all proceedings seeking to appeal, challenge, confirm, enforce, modify, correct, vacate or annul a judgment or award, as well as proceedings on remand or retrial or rehearing;



16

(iii) all ancillary, parallel or alternative dispute resolution proceedings and processes arising out of or related to the acts or occurrences alleged in such claim(s) (including without limitation, conciliation or mediation or court filings seeking discovery for or filed in aid of a contemplated or pending arbitration);

(iv) re-filings or parallel filings of such claim(s) and any other legal, diplomatic or administrative proceedings or processes founded on the underlying facts giving rise to or forming a basis for such claim(s);

(v) ancillary or enforcement proceedings related to the facts or claims alleged from time to time or that could have been alleged in such claim(s) at any time;

(vi) all arrangements, settlements, negotiations, or compromises made between the Counterparty and any adverse party having the effect of resolving any of the Counterparty's claims against any adverse party that are or could be or could have been brought in such claim(s); and

(vii) all rights of the Counterparty to collect any damages or awards or otherwise exercise remedies in connection with any of the foregoing.

"*Claim Resolution*" means either full and final settlement of all Claims or the entry of a final, non-appealable and enforceable judgment with respect to all Claims, in either case resolving with prejudice all aspects and elements of the Claims. In circumstances where a final, non-appealable and enforceable judgment does not automatically come into being upon the rendering of a dispositive decision, a Claim Resolution shall be deemed to have occurred on the date that is sixty days following such dispositive decision in the absence of any subsequent challenge thereto.

"*Common Interest Material*" means any information that is protected by the attorney-client privilege, work product doctrine, common interest privilege or any similar privilege in any jurisdiction including, for the avoidance of doubt, legal professional privilege and/or litigation or arbitral privilege, or that is protected by any rules of professional secrecy in any jurisdiction (collectively, "*Privileges*"), including information: (i) prepared by a party to a Claim or any of its Affiliates or their counsel, advisors, consultants or agents; or (ii) prepared by the Capital Provider or its Affiliates, in each case including legal and factual memoranda and case analyses and evaluations.

"*Confidential Information*" means any non-public, confidential or proprietary information relating to: (i) the Capital Provider and its Affiliates and Representatives, and information provided by them about their business and operations or the structures and economic arrangements they use in their business, including this Agreement and any Credit Support Document and their terms and existence, the existence of any relationship between the Counterparty and the Capital Provider or any of its Affiliates or Representatives, and the discussions and negotiations related thereto, (ii) a Claim, including the names of the parties and potential other parties to such claim; the factual, legal, technical, economic and financial background of such claim; and the procedural status, theories, strategies and tactics for the prosecution or defense of such claim; (iii) other financial or business information; and (iv) other



17





08/2014

proprietary or non-public information, data or material; in all cases regardless of whether such information is (A) written or oral, irrespective of the form or storage medium, or (B) specifically identified as "Confidential". Confidential Information does not include information that: (i) was or becomes generally available to the public other than as a result of a disclosure by the Recipient; (ii) was available to the Recipient on a non-confidential basis prior to its disclosure; or (iii) was developed independent of the information derived from the Confidential Information.

"*Cooperation Costs*" has the meaning set forth in Section 4.2(a).

"*Counterclaim*" means any claim interposed by the Opponent against the Counterparty in response to the Claims, provided, however, that a claim brought by the Opponent other than in an action instituted by the Capital Provider (an "*Opponent's Claim*") shall not be a Counterclaim if the Capital Provider causes the lawyers appointed by it to prosecute the Claims on behalf of the Counterparty to provide to the Counterparty an explanation, based on all relevant facts and circumstances, as to why it is reasonable not to defend the Opponent's Claim.

"*Counterparty*" has the meaning set forth in the first paragraph of this Agreement.

"*Counterparty's Entitlement*" has the meaning set forth in Section 3.1.

"*Credit Support Document*" means any document identified as such with respect to the Counterparty in Annex I.

"*Disclosing Party*" has the meaning set forth in Section 6.1.

"*Expert*" has the meaning set forth in Section 3.2(b).

"*Governmental Authority*" means the government of any nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"*Initial Payment*" has the meaning set forth in Section 2.1.

"*Insolvency Administration*" means Mr. Armando Betancor Álamo, the receiver in the Insolvency Proceedings as of the date hereof, and any successor(s) thereto.

"*Insolvency Proceedings*" means the insolvency proceedings of each of Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A., nos. 523/2012 and 405/2012 in the Bankruptcy Court.

"*Litigation Costs*" has the meaning set forth in Section 17(a).

"*Opponent*" means the Person(s) identified as such in Annex II and any other Person added or joined to the Claim from time to time as a defendant or against whom proceedings are asserted or threatened even if such Person(s) are not named or served.

18

"*Payment Agent*" means, at the Capital Provider's election, (i) the legal counsel appointed by the Capital Provider to assist in the assertion of the Claims (as applicable, "*Counsel*"), provided that such counsel has agreed to act in such capacity and has accepted Irrevocable Instructions to Counsel from the Capital Provider (given on the Counterparty's behalf, pursuant to the powers of attorney granted pursuant hereto), in the form attached hereto as Annex IV, directing it to remit any and all Proceeds in accordance with the terms of this Agreement; or (ii) a third party escrow agent that has entered into an agreement with the Capital Provider and the Counterparty to act in such capacity and to remit any and all Proceeds in accordance with the terms of this Agreement. In the event the Payment Agent in place at any time becomes unwilling to continue serving as such, the Capital Provider shall as promptly as practicable identify a replacement that is so willing, and the Capital Provider shall, in any interim period, serve as Payment Agent until the same is accomplished.

"*Person*" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership or other entity or Governmental Authority.

"*Privileges*" has the meaning set forth in the definition of "Common Interest Material".

"*Proceeds*" means the aggregate amount of all funds actually received by the Payment Agent (or any other party in accordance with Section 3.2) or, in the case of Non-Cash Proceeds, the aggregate amount of all funds received from the monetization thereof, in each case as a result of the prosecution of the Claims. For the avoidance of doubt, in no event shall Proceeds be deemed to include any amount payable by the Counterparty or set off against amounts awarded to the Counterparty as a result of the resolution of a Counterclaim in favor of the Opponent.

"*Recipient*" has the meaning set forth in Section 6.1.

"*Representatives*" means, with respect to any person or entity, as applicable, its directors, officers, managers, members, partners, principals, employees, shareholders and participants (or potential shareholders and participants), Affiliates, related entities, agents, assignees, reinsurers, lawyers, accountants, consultants, advisors and independent contractors.

19

  

08/2014

## ANNEX I

**Counterparty: Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.**

| 1. Type of Entity: | Each entity is a Spanish public limited liability company (Sociedad anónima española) under liquidation in insolvency proceedings |
|---|---|
| 2. Jurisdiction of Organization or Formation: | Spain |
| 3. Credit Support Document(s): | Pledge Agreement, governed by Spanish law, between the Counterparty, as Pledgor, and the Capital Provider, as Pledgee, to be registered in a public deed. |
| 4. Notice Information: | Address: Insolvency Administration of Petersen Energía, S.A.U. (Alas Abogados, S.L.) Insolvency Administration of Petersen Energía Inversora, S.A.U. (Alas Abogados, S.L.) C/ Ayala 27, 4° Izq. 28010 Madrid, Spain. Fax Number: +34 917 819 625 Email Address: administracion@alasabogados.es betancor@alasabogados.es Attn: D. Armando Betancor Álamo |

**Capital Provider: Prospect Investments LLC**

| 1. Type of Entity: | Limited liability company |
|---|---|
| 2. Jurisdiction of Organization or Formation: | State of Delaware |
| 3. Notice Information: | Address: Prospect Investments LLC 2711 Centerville Road Wilmington, DE 29808 Fax Number: (302) 636-5454 Email Address: info@litfinsolutions.com Attn: Prospect Investments LLC Manager |

20

## ANNEX II

| 1. Description of the Claims: | Any claims against any Person resulting from, arising out of or otherwise related to the facts and circumstances related to or caused by the expropriation of shares of YPF, S.A. from Repsol S.A. that resulted in damage or harm to the Counterparty, including but not limited to (i) any breach of any investor protection set forth in the bilateral investment treaty between Spain and Argentina; (ii) any breach or failure to comply with the by-laws of YPF; (iii) any breach or failure to comply with any shareholder agreement; (iv) any breach of any other duty to the Counterparty arising pursuant to contract or at law or in equity; or (v) any facts or circumstances otherwise relevant to the Counterparty's interest, rights or ownership in YPF, S.A. and/or loss or reduction in value thereof. |
|---|---|
| 2. Identity of the Opponent: | Republic of Argentina or any subdivision, federal, regional or local government entity thereof; YPF S. A. and any subsidiary, affiliate, predecessor or successor thereof; and any other defendant or respondent to any action arising out of the facts and circumstances set forth in Section (1) of this Annex II. |

21

PAPEL EXCLUSIVO PARA DOCUMENTOS NOTARIALES



08/2014







## ANNEX III

### IRREVOCABLE POWER OF ATTORNEY

Petersen Energía Inversora, S.A.U., a Spanish public limited liability company (Sociedad anónima española) under liquidation in insolvency proceedings (the "*Company*"), having received the approval of the court overseeing such proceedings, hereby irrevocably appoints PROSPECT INVESTMENTS LLC, a Delaware limited liability company ("*Prospect*") (such appointment being coupled with an interest of both the Company and Prospect), as its agent and attorney-in-fact, with full and exclusive authority in its place and stead and in the name of the Company, to do any and all of the following (the capitalized words used herein shall have the same meaning as attributed to them in the Claim Prosecution Agreement, dated as of the date hereof, among the Company, Prospect and the other parties named therein):

1. take any and all actions on behalf of the Company that Prospect may deem necessary or advisable to prosecute the Claims (including the defense of any Counterclaims and/or Attachment Proceedings) and bring about the resolution and monetization thereof, including without limitation directing and managing the conduct of the Claims; appointing, hiring, firing and instructing lawyers, experts or any other professionals in connection with the Claims; settling the Claims, including entering into any agreements implementing such settlements; and granting releases of liability to any Opponent in connection with any settlements; and

2. collect and enforce any settlement, final award or judgment arising out of the Claims, including but not limited to asking for, demanding, collecting, suing for, recovering, receiving and giving acquittance and receipts for moneys due and to become due under or in respect of the Claims or any proceeds thereof;

3. to the extent necessary or desirable to effectuate the powers above, to receive, endorse and collect any drafts or other instruments or documents, including granting power of attorney in favor of Court representatives and lawyers; and

4. pay or discharge taxes, liens or other Adverse Claims or clouds upon title levied or placed upon or threatened against the Claims or any proceeds thereof (the legality or validity thereof and the amounts necessary to discharge the same to be determined by Prospect in its sole discretion).

The powers conferred on Prospect hereunder are to protect the interests of Prospect and the Company in the Claims and all proceeds thereof, and the grant of such powers does not create a fiduciary, agency or other non-contractual relationship between the Company and Prospect. As stated above, this power is irrevocable, and it is coupled with an interest since the power is held for the benefit of Prospect, the attorney-in-fact, and the Company as principal, and this power is also material or essential for the due execution and performance of the agreement to which it relates. This power of attorney shall continue to be effective even though the Company becomes liquidated and extinct. The Company agrees that any third party who receives a copy of this document may act under it.

Signed this 4 day of March, 2015



22

PETERSEN ENERGÍA INVERSORA, S.A.U.

By: _____
Name: Armando Betancor Álamo
Title: Insolvency Administration

Address:

C/ Ayala 27, 4º Izq.
28010 Madrid

KINGDOM OF SPAIN

CITY OF MADRID

On 4 March, 2015, before me, The Notary Public Mr. Jaime Recarte Casanova, personally appeared Mr Armando Luis Betancor Álamo, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person or the entity upon behalf of which the person acted executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

23






08/2014

## IRREVOCABLE POWER OF ATTORNEY

PETERSEN ENERGÍA, S.A., a Spanish public limited liability company (Sociedad anónima española) under liquidation in insolvency proceedings (the "*Company*"), having received the approval of the court overseeing such proceedings, hereby irrevocably appoints PROSPECT INVESTMENTS LLC, a Delaware limited liability company ("*Prospect*") (such appointment being coupled with an interest of both the Company and Prospect), as its agent and attorney-in-fact, with full authority in its place and stead and in the name of the Company, to do any and all of the following (the capitalized words used herein shall have the same meaning as attributed to them in the Claim Prosecution Agreement, dated as of the date hereof, among the Company, Prospect and the other parties named therein):

1. take any and all actions on behalf of the Company that Prospect may deem necessary or advisable to prosecute the Claims (including the defense of any Counterclaims and/or Attachment Proceedings) in order to bring about the monetization thereof through a settlement or final award or judgment and to collect and enforce the same, including appointing and hiring lawyers, experts or any other professionals for the prosecution of the Claims;

2. ask for, demand, collect, sue for, recover, receive and give acquittance and receipts for moneys due and to become due under or in respect of the Claims or any proceeds thereof;

3. to the extent necessary or desirable to effectuate the powers above, to receive, endorse and collect any drafts or other instruments or documents, including granting power of attorney in favor of Court representatives and lawyers; and

4. pay or discharge taxes, liens or other Adverse Claims or clouds upon title levied or placed upon or threatened against the Claims or any proceeds thereof (the legality or validity thereof and the amounts necessary to discharge the same to be determined by Prospect in its sole discretion).

The powers conferred on Prospect hereunder are solely to protect the interests of Prospect in the Claims and all proceeds thereof, and the grant of such powers does not create a fiduciary, agency or other non-contractual relationship between the Company and Prospect. As stated above, this power is irrevocable, and it is coupled with an interest since the power is held for the benefit of Prospect, the attorney-in-fact, and the Company as principal, and this power is also material or essential for the due execution and performance of the agreement to which it relates. This power of attorney shall continue to be effective even though the Company becomes liquidated and extinct. The Company agrees that any third party who receives a copy of this document may act under it.

Signed this 4 day of March, 2015

24

PETERSEN ENERGÍA, S.A.

By: _____
Name: Armando Betancor Álamo
Title: Insolvency Administration

Address:

C/ Ayala 27, 4º Izq.
28010 Madrid

KINGDOM OF SPAIN

CITY OF MADRID

On 4 March, 2015, before me, The Notary Public Mr. Jaime Recarte Casanova, personally appeared Mr Armando Luis Betancor Álamo, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person or the entity upon behalf of which the person acted executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

25

PAPEL EXCLUSIVO PARA DOCUMENTOS NOTARIALES

   

08/2014

## ANNEX IV

### IRREVOCABLE INSTRUCTIONS TO COUNSEL

as of _____, 2015

[NAME AND
ADDRESS OF LAW FIRM]
Attention: NAME OF ATTORNEY

    As you know, Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A. ("Us" "We," or "Clients") have retained [NAME OF LAW FIRM] ("You" or "Legal Counsel") to represent Us in claims against the Opponent. We are entering into a Claim Prosecution Agreement (the "Claim Prosecution Agreement") and a Pledge Agreement (the "Pledge Agreement") (together with the Claim Prosecution Agreement, the "Agreements") with Prospect Investments LLC (the "Capital Provider"). Copies of the Agreements are attached to this letter as Appendix A. All capitalized terms not defined in this letter refer to defined terms in each Agreement.

    In connection with the Agreements, We hereby give You the following irrevocable instructions: upon the occurrence of a Claim Resolution, we instruct You to promptly pay to the Counterparty any amounts owed to the Counterparty based on the Claim Prosecution Agreement. Such payment shall be in accordance with the Claim Prosecution Agreement. Following such payments, and the payment of Your agreed upon fees, all remaining funds shall be paid to Us in accordance with our directions.

    The provisions of these Irrevocable Instructions to Legal Counsel are for the benefit of Clients, and also for the benefit of the Capital Provider and its Affiliates, permitted successors and assigns (collectively, the "Third Parties"). The Capital Provider would not have entered into the Agreements without these Irrevocable Instructions and Your acknowledgment hereof, and the Agreements are of significant economic value to Us. Clients and Legal Counsel explicitly agree that the Third Parties are express third-party beneficiaries hereunder, and the Third Parties shall be permitted to enforce this letter agreement as if they were a party hereto.

Very truly yours,

By:_____
Name:
Title:
Address:

Telephone:
Fax:
Email:

26

Accepted and agreed,
[NAME OF LAW FIRM]

By:_____
Name:
Title: [Partner] [Member]

27