# Domb Declaration

# Exhibit 17



08/2014

CF8715761

In Madrid, on 4 March 2015

**BETWEEN**

ON ONE HAND, Mr. Armando Luis Betancor Álamo, of legal age, of Spanish nationality, with professional address at Madrid, calle Ayala, 27, and with Spanish Identification Number *(Documento Nacional de identidad)* 43.767.726-Z; and

ON ANOTHER HAND, Mr. Salvador Javier Mendieta Grande, of legal age, of Spanish nationality, with professional address at and with Spanish Identification Number *(Documento Nacional de Identidad)* 1.935.521-W;

**THEY ACT**

Mr. Armando Luis Betancor Álamo acts on behalf of the companies Petersen Energía, S.A. ("**PESA**"), a Spanish company, duly organized and existing under the laws of the Kingdom of Spain, with corporate domicile at Madrid, Velázquez, 9; 1ª planta, and Tax Identification Number A-85174621, and registered with the Mercantile Registry of Madrid, and Petersen Energía Inversora, S.A. ("**PEISA**"), a Spanish company, duly organized and existing under the laws of the Kingdom of Spain, with corporate domicile at Madrid, calle Velázquez, 9; 1ª planta, and Tax Identification Number A- 85392751, registered with the Mercantile Registry of Madrid, in his condition of insolvency administrator and liquidator of PESA and PEISA appointed by virtue of the corresponding resolutions of the Commercial Court no. 3 of Madrid on 23 October 2012 (within the insolvency proceedings 405/2012, of PESA, and the insolvency proceedings 523/2012, of PEISA), whose acceptance of the office took place on the same date.

Mr. Salvador Javier Mendieta Grande acts on behalf of Prospect Investments LLC ("**Prospect**"), a company duly organized and existing under the laws of the State of Delaware (United States of America), with registered office at 2711 Centerville Road, Wilmington, DE 29808 (United States of America), registered with the Company Registry of Delaware under number 5591054, in his/her condition of attorney, by virtue of the power of attorney granted on 2 March 2015, authorized by a duly qualified Notary Public and duly apostilled.

PESA and PEISA shall be jointly referred to as the "**Pledgors**". Prospect shall also be referred to as the Pledgee.

The Pledgors and the Pledgee shall be jointly referred to as the "**Parties**".

The Parties declare that the legal capacity and personality of the entities on behalf of which they act has not changed and that the powers that they exercise have not been revoked, suspended or limited in any way.

Page 1|14

C'M'S' Albiñana & Suárez de Lezo

And pursuant to the above, they grant this PLEDGE AGREEMENT and, to that effect

### DECLARE

I. That, pursuant to a claim prosecution agreement (hereinafter, the "**Claim Prosecution Agreement**") governed by common Spanish law, dated 4 March 2015 and entered into among the Pledgors and the Pledgee (which is attached hereto as Schedule 1), the Pledgee has agreed to pay the Pledgors, for the integration in the estates of their insolvency proceedings, fifteen million one hundred one thousand Euros (Euro 15,101,000.00)) and thirty per cent (30%) of the proceeds of the below-described claims, in consideration for Prospect (a) receiving the exclusive right to direct, manage, fund and settle the Pledgors' claims against any natural person, any corporation, limited liability company, trust, joint venture, association, company, partnership or other entity, or any government or other governmental authority or others resulting from, arising out of or otherwise related to the facts and circumstances related to or caused by the expropriation of shares of YPF, S.A. ("**YPF**") from Repsol S.A. that resulted in damage or harm to the Pledgors, including but not limited to (i) any breach of any investor protection set forth in the bilateral investment treaty between Spain and Argentina; (ii) any breach or failure to comply with the by-laws of YPF; (iii) any breach or failure to comply with any shareholder agreement; (iv) any breach of any other duty to the Counterparty arising pursuant to contract or at law or in equity; or (v) any facts or circumstances otherwise relevant to the Pledgors' interest, rights or ownership in YPF and/or loss or reduction in value thereof (collectively, the "**Claims**"), and (b) receiving seventy per cent (70%) of the Proceeds of the Claims (the "**Capital Provider's Entitlement**").

II. That the Parties are fully aware of and confirm all the terms and conditions in the Claim Prosecution Agreement.

III. That the Pledgors have undertaken, *inter alia*, to grant an *in rem* first ranking pledge right in favor of the Pledgee, over the credit rights over the Claims and over any Claim Resolution, as security for the full and punctual performance of the obligations undertaken by the Pledgors under the Claim Prosecution Agreement.

IV. That, the Parties expressly acknowledge that the obligation to create such in *rem pledge* is an essential structural element of the transactions contemplated in the Claim Prosecution Agreement and, thus, of the payment of fifteen million one hundred one thousand Euros (Euro 15,101,000.00) by the Pledgee and its financing of the Claims, and that such payment and financing will be made considering the obligation of the Pledgors to execute this agreement.

V. That, in view of the foregoing, with the purpose of creating the security set out in the preceding Recital, the Parties agree to execute this pledge agreement (hereinafter, the "**Pledge Agreement**"), according to the following

08/2014




CF8715762

**CLAUSES**

### 1. Common definitions and construction

**1.1.** For the purposes of this Pledge Agreement, and unless otherwise provided herein, capitalized terms shall have the meaning assigned thereto in the Claim Prosecution Agreement unless herein defined or unless a contrary intention appears.

**1.2.** In the event of a conflict between the terms of this Pledge Agreement and the Claim Prosecution Agreement, the terms of the Claim Prosecution Agreement shall prevail.

**1.3.** In the event of a conflict between the terms of this Pledge Agreement and any document related to the subject matter of the Claim Prosecution Agreement (other than the Claim Prosecution Agreement), the terms of this Pledge Agreement shall prevail.

**1.4.** Any reference to any document shall include such document as it is or may be amended, novated, transferred, ratified or supplemented at any given time and any reference to any of the parties of a document shall be understood as made to its successors or assignees.

**1.5.** Notwithstanding the above, for the purposes of this Pledge Agreement, the following definitions are applicable:

"**Credit Rights Over the Claims and Any Claim Resolution**": all rights, current or future, title and interests derived from the Claims and from any Claim Resolution, which shall include any Proceeds.

"**Liabilities of PESA and PEISA**": the payment obligation of all present and future moneys, debts and obligations due, owing or incurred by the Pledgors to the Pledgee, or to which the Pledgee is entitled, under or in connection with the Claim Prosecution Agreement (whether alone or jointly and severally, with any other person, whether actually or contingently), including but not limited to, the Capital Provider's Entitlement, any interests, both ordinary and default, commissions, compensations, penalties, expenses and taxes, even those arising from the fulfillment, early termination or resolution of the Claim Prosecution Agreement, as well as any other expense or in-court or out-of-court fees incurred in the establishment, effectiveness, cancellation or execution of the security included or related to the Claim Prosecution Agreement.

### 2. Creation and extension of the pledge of Credit Rights Over the Claims and Any Claim Resolution

**2.1.** As security for the total and accurate fulfillment of all the Liabilities of PESA and PEISA and without prejudice to the personal and unlimited liability of the Pledgors by virtue of the Claim Prosecution Agreement, according to Article 1,911 of the Spanish Civil Code - which shall not be limited in any manner whatsoever by the creation of the Pledge of Credit Rights Over the Claims and Any Claim Resolution (as defined below), the Pledgors create in

Page 3|14



C/M/S/ Albiñana & Suárez de Lezo

favor of the Pledgee a pledge of Credit Rights Over the Claims and Any Claim Resolution (hereinafter, the "**Pledge of Credit Rights over the Claims and Any Claim Resolution**").

The Pledgee accepts, in this act, the creation of the Pledge of Credit Rights Over the Claims and Any Claim Resolution.

**2.2.** The Pledge of Credit Rights Over the Claims and Any Claim Resolution created by virtue of this Pledge Agreement shall be automatically extended, and shall include, all the credit rights and Proceeds corresponding to the Pledgors by virtue of the Claims and/or any Claim Resolution.

**3. Liabilities. Indivisibility of the pledge.**

**3.1.** The Pledge of Credit Rights Over the Claims and Any Claim Resolution granted by virtue of this Pledge Agreement in favor of the Pledgee and, if applicable, of its assignees and successors, guarantees the full and accurate fulfillment of all Liabilities of PESA and PEISA in favor of the Pledgee.

**3.2.** The Pledge of Credit Rights Over the Claims and Any Claim Resolution is created as a permanent security and shall be kept fully valid until all Liabilities of PESA and PEISA have been satisfied.

**3.3.** The Pledge of Credit Rights Over the Claims and Any Claim Resolution created has an indivisible nature. Consequently, each and all of the receivables shall guarantee the full and accurate fulfillment by the Pledgors of the Liabilities of PESA and PEISA. Partial fulfillment of said obligations shall not proportionally cancel the Pledge of Credit Rights Over the Claims and Any Claim Resolution.

**3.4** The Pledgors may only urge the cancellation of the Pledge of Credit Rights Over the Claims and Any Claim Resolution once all Liabilities of PESA and PEISA have been fully satisfied.

**4. Transfer of possession**

**4.1.** For the purposes of Article 1,863 of the Spanish Civil Code, the Parties agree that the execution of this Pledge of Credit Rights Over the Claims and Any Claim Resolution in a public document shall represent the transfer of possession of the credit rights in favor of the Pledgee.

**4.2.** The Parties agree that the Pledgee may, in its discretion, inform Opponent of the existence of such Pledge of Credit Rights Over the Claims and Any Claim Resolution granted by virtue of this Pledge Agreement, according to the form of notice attached as <u>Schedule 2</u> of this Pledge Agreement, or in such other form as the Pledgee may reasonably request, and in such event the Pledgors will fully cooperate with the Pledgee's preparation and delivery of such notice.



08/2014

CF8715763

G/M/S/ Albiñana & Suárez de Lezo

### 5. Other obligations of the Pledgors

5.1. The Pledgors shall not do or fail to do, nor shall they allow anyone (including their Representatives) to do or fail to do anything that may damage the Credit Rights Over the Claims and Any Claim Resolution or the Pledge of Credit Rights Over the Claims and Any Claim Resolution.

5.2. In particular and except otherwise provided in the Claim Prosecution Agreement, the Pledgors:

(i) shall not create or allow the existence of any security interest, charge or encumbrance, nor shall they grant any preemption right of any nature over the Credit Rights Over the Claims and Any Claim Resolution, nor shall they do any other action prohibited by the Claim Prosecution Agreement. Moreover, they shall not waive, without the prior consent of the Pledgee, any rights of the Pledgors derived therefrom insofar as the Pledge of Credit Rights Over the Claims and Any Claim Resolution could be negatively affected;

(ii) shall not take part (nor agree to do so) in any transaction or set of transactions to sell, grant a loan, lend, transfer or dispose in any other manner of the Credit Rights Over the Claims and Any Claim Resolution unless in the events authorized by the Claim Prosecution Agreement;

(iii) shall not modify, cancel or waive the Credit Rights Over the Claims and Any Claim Resolution without the prior written consent of the Pledgee;

(iv) shall not enter into any agreement for a payment deferral, reduction or balance regarding the amounts due or the claims made in relation to the Credit Rights Over the Claims and Any Claim Resolution;

(v) shall maintain the Pledgee informed at all times of the circumstances regarding the Credit Rights Over the Claims and Any Claim Resolution insofar as those circumstances may affect the Pledge of Credit Rights Over the Claims and Any Claim Resolution; and

(vi) shall immediately serve notice to the Pledgee of any fact, act or circumstance which may affect in any manner the Credit Rights Over the Claims and Any Claim Resolution and any other rights or powers of the Pledgee under the Pledge Agreement, including, without limitation, any claim or action (or seizure request) filed or made by any third party against the Pledgees, the Credit Rights Over the Claims and Any Claim Resolution and any decision, ruling or resolution from any judicial or administrative body over or in relation to the Credit Rights Over the Claims and Any Claim Resolution.

5.3. At any time, and unless otherwise established in the Claim Prosecution Agreement, the Pledgors shall enter into, grant, sign, hand and/or ratify all deeds, policies, notices and documents and shall take all actions requested by the Pledgee for or in relation to:

(i) the maintenance, execution, protection or, if applicable, foreclosure of the Pledge of



Page 5|14

CMS Albiñana & Suárez de Lezo

Credit Rights Over the Claims and Any Claim Resolution and of the rights conferred to the Pledgee, including any novation, addition or amendment to this Pledge Agreement; and

(ii) the extension of the Pledge of Credit Rights Over the Claims and Any Claim Resolution, immediately delivering, for the purposes of such extension, to the Pledgee the possession of any security, asset, right, shares or funds to which the Pledge of Credit Rights Over the Claims and Any Claim Resolution extends, according to the provisions of this Pledge Agreement, committing themselves to granting and/or procuring, to the extent possible, that any third party grants the necessary documents for the extension of the Pledge of Credit Rights Over the Claims and Any Claim Resolution.

### 6. Representations and warranties of the Pledgors

6.1. Each of the Pledgors represents and warrants, in respect of themselves:

(i) that they have the capacity to enter into and fulfill this Pledge Agreement and that they have taken all actions necessary to authorize its execution and performance;

(ii) that the acceptance and performance of the obligations in this Pledge Agreement: (a) do not contravene any law, regulation, writ or official document; (b) do not conflict with any document or agreement that is binding upon the Pledgors;

(iii) that the Pledgors have valid legal title to the Credit Rights Over the Claims and Any Claim Resolution;

(iv) that the Credit Rights Over the Claims and Any Claim Resolution, in the necessary amount to fully satisfy the Liabilities of PESA and PEISA, are not subject to any claim, charge, encumbrance, seizure or any other type of duty in favor of third parties different from the Pledge of the Credit Rights Over the Claims and Any Claim Resolution granted by virtue of this Pledge Agreement and there are no indicia or threat that any of the foregoing exist; and

(v) that no agreement or commitment of any of the Pledgors in any manner prejudices or affects the rights of the Pledgee under the Claim Prosecution Agreement or the Pledge of the Credit Rights Over the Claims and Any Claim Resolution.

The representations and warranties provided in this clause are made on this date and shall be deemed ratified on the date of the extension of the Pledge of the Credit Rights Over the Claims and Any Claim Resolution on the grounds foreseen herein.

### 7. Maturity and foreclosure of the Pledge of Credit Rights Over the Claims and Any Claim Resolution

7.1. The Pledgee shall be authorized to foreclose the Pledge of Credit Rights Over the Claims and Any Claim Resolution, upon the occurrence of a breach of the Liabilities of PESA and PEISA or any breach of the obligations of PESA and PEISA or the Insolvency Administration under the Claim Prosecution Agreement, including, but not limited to, the



08/2014

CF8715764
C/M/S/ Albiñana & Suárez de Lezo

obligation to take such actions as are reasonably necessary or appropriate to ensure that any Proceeds are paid and distributed in accordance with clause 3 of the Claim Prosecution Agreement (an "**Event of Default**").

Regardless of the indivisible nature of the Pledge of Credit Rights Over the Claims and Any Claim Resolution, the Pledgee may foreclose it, totally or partially, in one or more occasions, in which case the Pledge of Credit Rights Over the Claims and Any Claim Resolution hereby granted will remain in force in respect of the part which has not been foreclosed.

**7.2.** For purposes of the foreclosure of the Pledge of Credit Rights Over the Claims and Any Claim Resolution and without prejudice to the general unlimited liability of the Pledgors in the terms of the Claim Prosecution Agreement, that shall not be limited in any way by the creation of this Pledge of Credit Rights Over the Claims and Any Claim Resolution, the Pledgee may initiate, at its discretion, any proceedings legally available to it, including, without limitation, the foreclosure procedure set out in Articles 681 *et seq.* of the Spanish Civil Procedural Act *(Ley 1/2000, de 7 de enero, de Enjuiciamiento Civil)*, and the extra judicial procedure set out in Article 1,872 of the Spanish Civil Code, or through any other procedure that may correspond at the moment of the foreclosure. In the event that the Pledgee decides to use any of these proceedings, such decision shall not preclude the possibility to use any of the others for as long as the Liabilities of PESA and PEISA have not been satisfied in full.

**7.3.** For the foreclosure of the Pledge of Credit Rights Over the Claims and Any Claim Resolution, the notice issued by the Pledgee will suffice as long as it is sent to the Pledgors pointing out the existence of an Event of Default, and that, having required the payment, receipt or retention of any due and payable amounts to the Pledgors, or compliance with an obligation the breach of which may give rise to an Event of Default, in accordance to the Claim Prosecution Agreement, such request has not been promptly and duly fulfilled. That notification will also state the due amount resulting from the liquidation, determined as indicated below.

**7.4.** For the foreclosure of the Pledge of Credit Rights Over the Claims and Any Claim Resolution, the Parties agree and expressly state that the due, liquid and payable amount in case of foreclosure will be the amount specified in the certification issued by the Pledgee in which the total balance of the obligations due to it under the Claim Prosecution Agreement is contained in accordance to the account maintained by it.

**7.5.** Given the monetary nature of the Credit Rights Over the Claims and Any Claim Resolution by virtue of this Pledge of Credit Rights Over the Claims and Any Claim Resolution, the Parties agree that it shall not be necessary to carry out any auction of such receivables for the foreclosure of the Pledge of Credit Rights Over the Claims and Any Claim Resolution. The Pledgee shall be entitled to enforce by compensation or set-off the Pledge of the Credit Rights Over the Claims and Any Claim Resolution after having informed the Pledgors, stating for those purposes in the notice, the amount of the outstanding Liabilities of PESA and PEISA, by means of the collection of the Proceeds.

Page 7|14



7.6. The Pledgee shall keep all its rights and actions with respect to the Liabilities of PESA and PEISA which have not been satisfied, or which have not been collected as a consequence of the foreclosure of this Pledge of Credit Rights Over the Claims and Any Claim Resolution.

7.7. Failure or delay in the execution of any of the rights, powers and instruments foreseen by this Pledge Agreement or by the applicable legislation by any of the Parties, shall not be considered as a waiver thereof, just as a single waiver or partial waiver of such rights shall not exclude their subsequent exercise or the exercise of any other right.

7.8. In the event that the Pledgee decides to follow the procedure set out in Article 1,872 of the Spanish Civil Code, the Parties agree that:

(a) The addresses for purposes of notifications are those determined in accordance with Clause 8.5 below.

(b) The reference price of the Credit Rights Over the Claims and Any Claim Resolution for purposes of the auction shall be the amount owed by the Pledgors.

(c) The Pledgors appoint the Pledgee, who shall act through its authorized representatives, as their attorney to represent them in the auction of the Credit Rights Over the Claims and Any Claim Resolution, and irrevocably authorize the Pledgee to grant, in the name and on behalf of the Pledgors, all the public documents that are necessary to formalize the transfer of the Credit Rights Over the Claims and Any Claim Resolution to the acquirer or acquirers, as the case may be, with express authorization to grant any documents in which the Pledgee is a party as purchaser in its own name and on its own behalf.

(d) The applicable notary public for the foreclosure shall be the one designated by the Pledgee and the reference price for the first auction shall be the price indicated in Clause 7.8 (b) above. For the second auction, the minimum reference price shall be eighty per cent (80%) of the price indicated in Clause 7.8 (b) above. A minimum reference price will not be necessary for the third or subsequent auctions. The Credit Rights Over the Claims and Any Claim Resolution shall be awarded to the bidder making the highest bid. The disagreement of the Pledgors in relation to the amount or the enforceability of the debt shall not suspend or delay the foreclosure.

(e) The notary public shall be authorized to carry out any actions he deems appropriate to ensure the publicity of the auctions.

(f) All the bidders must deposit with the notary public by way of guarantee an amount equal to ten per cent (10%) of the reference price of the Credit Rights Over the Claims and Any Claim Resolution in the first auction. Such amount shall be returned to the non-successful bidders once the auction takes place. The Pledgee shall be authorized to appear as bidder and participate in all auctions without the need to make such deposit.

(g) The successful bidder must pay the difference between the amount deposited in guarantee

Case 1:15-cv-02739-LAP   Document 27-19   Filed 09/08/15   Page 10 of 15



08/2014

CF8715765

C/M/S/ Albiñana & Suárez de Lezo

and the acquisition price of the Credit Rights Over the Claims and Any Claim Resolution within three (3) business days following the date of the auction. In the event that the successful bidder does not pay such difference when due, it will lose the amount deposited as guarantee. Such amount shall be used to reduce the Liabilities of PESA and PEISA. Likewise, the successful bidder shall be entitled to assign its right to acquire the Credit Rights Over the Claims and Any Claim Resolution to a third party, by delivering to the Pledgee the documents evidencing the validity and effectiveness of such assignment within three (3) calendar days following the date of the assignment. The assignee must pay, in such a case, the difference between the amount deposited in guarantee by the successful bidder and the acquisition price of the Credit Rights Over the Claims and Any Claim Resolution within three (3) business days following the date of the auction. Lack of payment of such amount shall entail the loss of the amount deposited in guarantee. This amount shall be used to reduce the Liabilities of PESA and PEISA.

(h) The amount obtained in the auction, once all expenses arising from the foreclosure procedure have been deducted, shall be delivered by the notary public to the Pledgee up to the amount necessary to satisfy all outstanding Liabilities of PESA and PEISA. The Pledgee shall acknowledge receipt of payment for the amount effectively received. In the absence of outstanding Liabilities of PESA and PEISA, the notary public shall deliver directly and immediately the remainder to the Pledgors.

## 8. Common clauses

### 8.1. Integrity of the Claim Prosecution Agreement

The Parties agree and declare that this Pledge Agreement shall not modify the terms and conditions established in the Claim Prosecution Agreement.

### 8.2. Taxes and expenses

All notary public's fees, taxes, duties and, if applicable, notification costs, which may accrue and any other reasonable expenses related to the drafting, execution, raising to a public deed and fulfillment of this Pledge Agreement and its amendment, extension, cancellation or ratification shall be borne by the Pledgee.

### 8.3. Assignments

The Pledgee may assign its rights or its share in the Claim Prosecution Agreement in accordance with the terms thereof. The assignment shall imply, according to the provisions set out Article 1,528 of the Spanish Civil Code, the proportional assignment in favor of the assignee of the security interest granted in favor of the assignor by virtue of this Pledge Agreement.

Therefore, any time this Pledge Agreement refers to the Pledgee it shall be understood that such reference includes its successors and assignees and that all agreements, commitments or contracts entered into by the Pledgors or entered into in their name, shall be binding and

Page 9|14

C/M/S/ Albiñana & Suárez de Lezo

shall act for the benefit of the successors and assignees of the Pledgee.

**8.4. Integrity of this Pledge Agreement and further obligations**

In the event that any of the provisions contained in the Pledge Agreement were considered invalid, illegal, null or unenforceable, this would not affect the validity, legality and enforceability of the others. The Parties commit themselves to replace the invalid, illegal, null or unenforceable provision for a valid one, with an economic effect as similar as possible to that of the provision declared invalid, illegal, null or unenforceable. To this end, the Pledgors commit themselves to modify the security interest established under this Pledge Agreement according to this paragraph.

**8.5. Notices**

**8.5.1.** All requests, notices, notifications and communications between the Parties in relation to this Pledge Agreement shall be sent according to the provisions of the Claim Prosecution Agreement unless this Pledge Agreement foresees a more specific procedure or channel.

**8.5.2.** The Parties, for the purposes of notifications, shall appoint the following addresses, fax numbers and e-mail addresses:

(i)  For Prospect:

   Prospect Investments LLC
   2711 Centerville Road
   Wilmington, DE 29808
   Fax Number: (302) 636-5454
   Email Address: info@litfinsolutions.com
   Attn: Prospect Investments LLC Manager

(ii)  For PESA and PEISA:

   Insolvency Administration of Petersen Energía, S.A.U.
   (Alas Abogados, S.L.)
   Insolvency Administration of Petersen Energía Inversora, S.A.U.
   (Alas Abogados, S.L.)
   C/ Ayala 27, 4º Izq.
   28010 Madrid, Spain.
   Fax Number: +34 917 819 625
   Email Address:
   administracion@alasabogados.es
   betancor@alasabogados.es
   Attn: D. Armando Betancor Álamo

**8.5.3.** Any change in the contact information of any Party shall be notified to the other Party as soon as possible, according to the terms of this Pledge Agreement and they shall only be effective after five (5) business days have elapsed since the date of receipt of the notice by the other Party.

Page 10|14



### 8.6. Amendment or attachments to this Pledge Agreement

Should it be requested, the Pledgors commit themselves to granting, within the maximum period of ten (10) business days upon request of the Pledgee, all public and private documents of amendment as well as all explanatory or additional documents.

### 9. Governing law and jurisdiction

**9.1.** This Agreement shall be governed by the common laws of Spain (derecho común).

**9.2.** The Parties hereby waive their right to any other jurisdiction and expressly and irrevocably submit the resolution of any dispute under or in relation to this Pledge Agreement to the jurisdiction of the Courts and Tribunals of the city of Madrid (Spain).

### 10. Language

This Pledge Agreement is executed in English and Spanish. However, in case of any discrepancy between both versions of the Pledge Agreement, the Spanish version shall prevail.

In witness thereof, the Parties sign this Pledge Agreement in the place and date mentioned in the heading and in one sole counterpart for its notarization.

PETERSEN ENERGÍA INVERSORA, S.A.U.

By: Armando Luis Betancor Álamo
Title: Insolvency Administration

PETERSEN ENERGÍA, S.A.

By: Armando Luis Betancor Álamo
Title: Insolvency Administration

PROSPECT INVESTMENTS LLC

By: Salvador Javier Mendieta Grande
Title: Authorized Signatory

C/M/S/ Albiñana & Suárez de Lezo

Schedule 1 (copy of the Claim Prosecution Agreement)

08/2014

CF8715767

C/M/S/ Albiñana & Suárez de Lezo

Schedule 2 (draft communication to Opponent of the existence of the Pledge of Credit Rights Over the Claims and Any Claim Resolution granted by virtue of the Pledge Agreement)

Madrid, [●]

[●Opponent]

Dear Sirs,

Petersen Energía, S.A., a Spanish company, duly organized and existing under the laws of the Kingdom of Spain, with corporate domicile at [●], registered with the Mercantile Registry of [●], and Petersen Energía Inversora, S.A., a Spanish company, duly organized and existing under the laws of the Kingdom of Spain, with corporate domicile at [●], registered with the Mercantile Registry of [●] (the "**Pledgors**") notify you the following:

As security of the obligations arising from the Claim Prosecution Agreement entered into by the Pledgors and Prospect Investments LLC (the "**Pledgee**") as of [●], we granted a pledge over

(a) the credit rights derived from [*description of the specific claim*] ("**Claim**"); and

(b) the credit rights derived from either full and final settlement of the Claim or the entry of a final, non-appealable and enforceable judgment with respect to the Claim, in either case resolving with prejudice all aspects and elements of the Claim ("**Claim Resolution**").

As consequence, and according to the above, we hereby expressly and irrevocably instruct you so that you proceed to make any payments, for any concept, under the Claim and/or Claim Resolution, through the [Payment Agent]'s deposit in the account with IBAN: [●] opened under the name of [Payment Agent], at [●].

We also instruct you expressly and irrevocably so that, at the Pledgee's request, you immediately comply with any request that the Pledgee may send you in the scope of the enforcement proceeding of the abovementioned pledge to directly pay to a different account of the Pledgee any amounts that you may owe to us under the referred Claim and/or Claim Resolution.

We also instruct you expressly and irrevocably to ignore and not fulfil any instruction or communication from the Pledgors that in any way contravenes or modifies the provisions set forth in this notice unless it is also signed by the Pledgee.

Yours faithfully,

Page 13|14

C/M/S/ Albiñana & Suárez de Lezo

PETERSEN ENERGÍA INVERSORA, S.A.U.

By:
Name:
Title:

PETERSEN ENERGÍA, S.A.

By:
Name:
Title:

Received and accepted:

[Opponent]