# Domb Declaration

# Exhibit 18

COURT CLERK'S OFFICE
CIVIL COURTS OF THE
FIRST INSTANCE
WRITING SUBMITTED AT DEADLINE

13 MARCH 2015

Time:.............................
Reg. No..........................

COPY

**Bankrupt Party: PETERSEN ENERGIA, S.A.U.**

**Ordinary Bankruptcy Proceedings No. 405/2012**

## TO THE THIRD COMMERCIAL COURT OF MADRID

The **BANKRUPTCY ADMINISTRATION** named in the Voluntary Bankruptcy proceedings of the legal entity **PETERSEN ENERGIA, S.A.U.** (hereinafter "**PESA**") filed with this Court under Case No. 405/2012, and before which I appear and with all due respect and consideration, **I ASSERT**:

**FIRST: The Initiation of the Liquidation Phase.  Approval of the Liquidation Plan.**

The attorney, Mr. Rodriguez Nogueira, submitted a writing dated July 17, 2014, requesting the initiation of the liquidation phase. This Court subsequently issued a ruling on September 2, 2014, in which it declared that the agreement phase had concluded and ordered the initiation of the liquidation phase for the legal entity **PETERSEN ENERGIA, S.A.U.**

The liquidation plan submitted was approved in a Ruling dated November 24, 2014, which was served on this Bankruptcy Administration on November 26, 2014.

**SECOND.  Liquidation Operations.  Enforcement of the Liquidation Plan-Sale Procedure.  Transfer of the Financial Rights to the Indemnification Rights – Award.**

Pursuant to the provisions set out in Article 152 of the LC, the purpose of this writing is to inform the Court on the status of the PESA liquidation operations.

This Court has already been informed that on January 9, 2015, the period for submitting bids for the sale of the Indemnification Rights in accordance with sub-section 3.2.2. of the Liquidation

Plan had concluded without any bids being submitted that complied with the requirements set out in the proposals stated in options A, B, C, and D stipulated in the Liquidation Plan.

As a consequence of the foregoing, this Court was notified in a writing dated February 9, 2015, that as provided by sub-section 3.2.5 of the Liquidation Plan, the procedure to transfer the financial rights to the Indemnification Rights and financing of potential lawsuits by interested third parties had begun.

The result of the Bidding process was communicated to this Court on March 3, 2015, by providing the Record signed before Notary Public D. Jaime Recarte Casanova, which included bids submitted by interested parties and the winning bid.

The most relevant information regarding the bidding process is as follows:

**1) The Winning Bidder**

The legal entity that was awarded the financial rights to the Indemnification Rights is the company entitled PROSPECT INVESTMENTS, LLC (**"Prospect"** or the **"Winning Bidder"** or the **"Funder"**) who submitted a bid in which it agreed to pay to the companies PETERSEN ENERGIA, S.A.U. and PETERSEN ENERGIA INVERSORA, S.A.U. (hereinafter the **"Bankrupt Companies"**) the amount of €15,101,000 (FIFTEEN MILLION ONE HUNDRED ONE THOUSAND EUROS), which is to be added to the overall assets of the Bankrupt Companies, along with 30% of the amount obtained from the claims to be filed as consideration for being the Winning Bidder of:

(i)     The exclusive right to direct, manage, finance and settle the Bankrupt Company's claims against any individual, corporation, commercial company, trusts or trust structures,  joint venture, association, company, or any other legal entity, as well as any government or governmental authority or any other type that arises or originates or is related to facts or circumstances related to or caused by the expropriation of the

shares of stock that Repsol, S.A. ("**Repsol**") held in YPF, S.A. ("**YPF**") that caused damage and lost profits to the Bankrupt Companies, including but not limited to (i)

any breach of the mechanisms protecting investors established in the bilateral treaty on investment protection executed by the Spanish Crown and Argentina, (ii) any breach to the YPF bylaws; (iii) any breach to any shareholder agreements; (iv) any contractual or legal breach involving the Bankrupt Companies; or (v) any other event or circumstance which in any way is relevant to the interests, rights, or legal titles held by the Bankrupt Company in YPF and/or the losses or decreases in value (jointly, the "**Claims**"); and,

(ii)   The right of the Winning Bidder to receive 70% (seventy percent) of the amount resulting from the Claims.

## 2) Formalization before a Notary Public

Subsequent to the bidding process reported to this Court on March 4, 2015, the bidding operation was formalized, and as a result the Bankrupt Companies represented by the Bankruptcy Administration and PROSPECT INVESTMENTS, LLC, executed the following contracts: **"Claim Prosecution Agreement"** and a **"Pledge Agreement"** regarding the financial rights to the claims, which were then notarized before Notary Public D. Jaime Recarte Casanova, under Notary Register Numbers 696 and 697, which are attached hereto as **Document Numbers 1 and 2.**

## 3) The amount paid by PROSPECT INVESTMENTS, LLC

The amount paid by the Winning Bidder is €15,101,000 (FIFTEEN MILLION ONE HUNDRED ONE THOUSAND EUROS) and 30% of the amount obtained from the Claims held by the bankrupt companies.

This amount has been distributed based on the Bankrupt Companies' interest in the YPF capital stock, so that the distribution is as follows:

- **PETERSEN ENERGIA, S.A.U.**: 14.90% of the capital stock held in YPF, which is equal to the amount of €8,836,924.97 (EIGHT MILLION EIGHT HUNDRED THIRTY-SIX THOUSAND NINE HUNDRED TWENTY-FOUR AND 97/100 EUROS), which has been deposited in the checking account number ███████████████ managed by the Bankruptcy Administration in CAIXABANK, S.A. (a receipt of deposit into the foregoing checking account is provided as **Document Number 3**).

- **PETERSEN ENERGIA INVERSORA, S.A.U.**: 10.56% of the capital stock held in YPF, in the amount €6,264,075.03 (SIX MILLION TWO HUNDRED SIXTY-FOUR THOUSAND SEVENTY FIVE AND 03/100 EUROS), which has been deposited in the checking account number ██████████████ managed by the Bankruptcy Administration in CAIXABANK, S.A. (a receipt of deposit in the foregoing checking account is provided as **Document Number 4**).

**4) Obligations undertaken by the Bankrupt Companies, the Bankruptcy Administration and the Winning Bidder:**

The main obligations undertaken by the Bankrupt Companies, the Bankruptcy Administration and the Winning Bidder are as follows:

**4.1) Obligations undertaken by the Bankrupt Companies and the Winning Bidder:**

(i)     *Conserve and maintain its legal capacity. That obligation shall include that the Bankruptcy Companies, represented by the Bankruptcy Administration, shall not request the conclusion of the Bankruptcy Proceedings, in specific, due to a deficiency*

*in the overall assets, and if applicable, shall diligently oppose any attempt to achieve this conclusion for any reason.*

(ii)   *They shall do everything possible to keep current and in full effect all agreements, approvals, actions, authorizations, exceptions, notifications, declarations and registrations from or with any other Government Agency that are deemed mandatory with regard to the Contracts executed with the Winning Bidder, or any other Document to which they are party, and shall do everything reasonably possible to obtain any that may be required in the future.*

(iii)   *They shall comply, in all important aspects, with all applicable laws and orders or rulings from any Government Agency to which they can be submitted, if it can be reasonably expected that their failure to comply, individually or globally, may (i) harm their abilities to perform any of their obligations established in the Contract executed or any Document to which they are party, (ii) undermine the rights or remedies or resources available to the other party under the signed Contract or any Document to which it is party, or (iii) cause a substantial negative impact on the Claims, their value or the possibilities of collection.*

(iv)   *At any given moment and at the request of the other party, and without the right to any additional consideration, each party shall provide to the other any additional information, authorization or guarantees, grant or sign those additional documents, legal titles, and transfer documents, and carry out any other actions and perform other activities to the extent that it is deemed necessary or convenient in compliance with the provisions established in the executed Contract and any Document to which it is party, as well as obtaining efficiency in business activities or settlements contained therein.  That will include, without limit, the granting of any additional pledge or surety agreement and/or the granting, registration or authorization of instruments or registrations of guarantees in the corresponding jurisdictions as needed in order to obtain the efficiency in Clause 3.3 of the executed Contract.*

## 4.2) Obligations undertaken by the Bankruptcy Administration

The Bankruptcy Administration has undertaken the following obligations:

(i)     *The Bankruptcy Administration shall cooperate promptly with the Winning Bidder in all matters related to the Claims, including without limitation to (i) provide all the pertinent documents and information in its possession or control; and (ii) cooperate and do all that which is commercially reasonable to guarantee the cooperation of all the representatives of the Bankrupt Companies in all matters related to the Claims. This cooperation may include the providing of all necessary documents; sign and grant additional contracts and powers-of-attorney; submit to examination by an attorney in preparing written depositions and sign them under oath, if necessary; consult with an attorney and its delegates, when required, with the purpose of pursuing the Claims and enforce any award or judgment; and appear at any hearing related to those depositions or the Claims in general. Any reasonable and documented expense by the Bankruptcy Administration (including reasonable legal fees) incurred in the course of all the cooperation activities described in previous sub-sections (i) and (ii) (and not other activities or expenses by the Bankrupt Companies or Bankruptcy Administration) shall be payable by the Winning Bidder (together, the **"Cooperation Expenses"**).*

(ii)    *The Bankrupt Companies shall not perform any acts that will adversely affect the benefits, rights or grounds for legal actions that are being investigated or anticipated with regard to the Claims or while they are being pursued in general.*

(iii)   *Except as stated in any Document for Securing Credit in which the Bankrupt Companies are party, it shall not dispose, transfer, encumber, assign, allow the existence (without objection) of a Counterclaim, with regard to each and every part of the Claims (or any right therein) or any Profits (or any right to those Profits), either through a guarantee or otherwise.*

(iv)    *The Bankrupt Companies shall not compensate or agree to compensation for any amount against any Claim.*

(v)     *The Bankrupt Companies shall not initiate a separate action, lawsuit or arbitration proceeding against any Legal Entity related to an Opposing Party, before a Judgment is issued on a Claim.*

### 4.3.) Obligations of the Winning Bidder

The Winning Bidder has also assumed the following obligations:

(i)     *The Funder shall perform, at its own expense, those actions that are commercially reasonable to (i) diligently pursue the Claims and (ii) try to obtain the enforcement of any reasonable judgment, award or settlement obtained with regard*

       *to the Claims.*

(ii)    *The Funder shall keep the Bankrupt Companies reasonably informed on the status of the Claims by (i) delivering written reports to the Bankrupt Companies on a quarterly basis on all the relevant updates to the Claims; (ii) timely delivery of copies of any requests, legal writings or similar documents to the Bankrupt Companies; (iii) timely notice to the Bankrupt Companies of any offer to settle; (iv) timely response to any request from the Bankrupt Companies for the information related to the Claims.*

(iii)   *In recognition of the Bankruptcy Administration's interest, and on behalf of the Bankrupt Companies, in protecting the Bankrupt Companies' consideration and the value that their cooperation under the executed Contract may provide to the Funder in pursuing the Claims, the Funder shall, in good faith, take into reasonable consideration any recommendation from the Bankrupt Companies with respect to Funder's management of the Claims and provide them with a reasonable response to the recommendation. Notwithstanding the foregoing, given the Funder's greater knowledge and experience in the subject matter, and given the converging interests of both the Funder and the Bankrupt Companies, the Bankrupt Companies shall defer to the Funder to decide what course of action will be more beneficial for both the Funder and the Bankrupt Companies.*

(iv)   *If the Bankrupt Companies pose a question on the decision by the Funder to settle or provide their consent on a settlement of the Claims, the Funder shall have the attorneys designated in pursuit of the Claims on behalf of the Bankrupt Companies to provide them with an explanation, grounded in all the relevant facts and circumstances, including considerations regarding earlier settlements under similar circumstances, on the reasons why the settlement is reasonable.*

**THIRD.  Other Information of Interest in the Process.**

### 1.   Confidentiality

As evidenced by the attached documents, except for the mandatory communication set out in the contracts with this Commercial Court, which is fulfilled with this communication, the intervening parties have agreed to confidentiality covenants that shall be equally respected by those who have appeared in these proceedings.

### 2.   Counsel to the Bankrupt Companies

Due to the peculiar characteristics regarding the subject matter of the liquidation process and its transnational character, this Court is hereby informed that the bankrupt companies and the Bankrupt Administration have deemed necessary, aside from the services provided by advisers to the bankrupt companies, contracting legal counsel services in Spain and the United States, given that the search for potential interested parties, prior negotiations and the formalization of the final documents have been carried out in Spain, London and New York, and several trips have been made to these countries.

Specifically, Clifford J. Hendel, North American attorney at the law firm ARAOZ & RUEDA, and Daniel P. Goldberg, attorney from the law firm HOLWELL SHUSTER & GOLDBERG LLP, (125 Broad Street, 39th Floor, New York, 10004, USA) are providing services to the bankrupt companies and the bankrupt administration.  Their respective resumes are attached hereto as **Documents Number 5 and 6.**

### 3.   Allocation of the Amounts Received.  Guarantee for the Compliance with the Obligations undertaken by the Bankrupt Companies regarding the [sic]

Without prejudice to the payment of the claims against the overall assets that have already accrued (attorneys' fees, accounting and tax advisement, legal fees from the bankrupt companies, fees from outside counsel, expenses incurred and fees from the bankruptcy administration), we consider it necessary to inform this Court that taking into account the obligations undertaken by the Winning Bidder and the foreseeable duration of the proceedings

filed, new claims shall be incurred against the overall assets, which shall be promptly communicated to the Court along the same lines as those already incurred.

**FOURTH.- Claims against the overall assets**

Finally, this Bankruptcy Administration is attaching a list of the claims against the overall assets as **Document Number 7**, and the amount of some have not yet been determined.

Accordingly,

**I PLEAD TO THE COURT**: Admit this writing as submitted, and rule that the obligation imposed on the Bankruptcy Administration set out in Article 152 of the Bankruptcy Law has been duly fulfilled in a timely and appropriate manner on its merits.

So that Justice may be served, on March 13, 2015

**THE BANKRUPTCY ADMINISTRATION**

[ILLEGIBLE SIGNATURE]                    [ILLEGIBLE SIGNATURE]
_____          _____
**D. Armando Betancor Almano**            **Pedro Martin Molina**

**FIRST ADDITIONAL PLEADING:** That this writing has been submitted within the period of 3:00 p.m. on the day following that of the expiration of the term for submitting this requirement, in accordance with the provisions set out in Article 135.1 of the Rules of Civil Procedure.

As a result,

**I PLEAD TO THE COURT**: Admit the foregoing declaration pursuant to Article 35.1 of the Rules of Civil Procedure.

So that Justice may be served, we make our request at the place and date indicated ut supra.

**SECOND ADDITIONAL PLEADING**: Considering the express will of this party to comply with each and every one of the legal requirements established by the Rules of Civil Procedure currently in effect, pursuant to the provisions established in Article 231 of the Rules of Civil Procedure.

As a result,

**I ONCE AGAIN PLEAD TO THE COURT**: That this Court issue a ruling in accordance with the provisions set out in Article 231, in the event that this party has incurred in any curable defect.

So that Justice may be served, we make our request at the place and date indicated "*ut supra.*"

COPIA

Concursada: **PETERSEN ENERGÍA, S.A.U.**

Concurso Ordinario nº 405/2012

## AL JUZGADO DE LO MERCANTIL NÚMERO 3 DE MADRID

La **ADMINISTRACIÓN CONCURSAL** designada en el procedimiento de Concurso Voluntario de acreedores de la entidad **PETERSEN ENERGÍA, S.A.U.** (en adelante, **"PESA"**), que se tramita ante este Juzgado bajo el nº de Autos 405/2012, ante el mismo comparezco y con el debido respeto y consideración, **DIGO**:

**PRIMERO. Apertura de la fase de liquidación. Aprobación del Plan de Liquidación.**

Que mediante escrito de fecha 17 de julio de 2014 el Sr. procurador Rodríguez Nogueira solicitó la apertura de la fase de liquidación, lo que fue acordado por este Juzgado mediante Auto de fecha 2 de septiembre de 2014, declarando finalizada la fase de convenio y abierta la fase de liquidación de la entidad **PETERSEN ENERGÍA, S.A.U.**

Que mediante Auto de fecha 24 de noviembre de 2014, notificado a esta Administración Concursal con fecha 26 de noviembre de 2014, se aprobó el plan de liquidación presentado.

**SEGUNDO. Operaciones de liquidación. Ejecución del Plan de liquidación- Procedimiento de venta. Transmisión de los derechos económicos de los Derechos Indemnizatorios – Adjudicación.**

Según lo dispuesto en el artículo 152 de la LC, por medio del presente escrito venimos a informar a este Juzgado del estado de las operaciones de liquidación de PESA:

Como se ha informado a este Juzgado, el pasado 9 de enero de 2015 concluyó el plazo de presentación de ofertas para la venta de los Derechos Indemnizatorios conforme al apartado 3.2.2. del Plan de Liquidación sin que ninguna de las ofertas presentadas cumpliera con todos los requisitos establecidos dentro de las propuestas contempladas en cualquiera de las opciones A, B, C y D que se estipulaban en el Plan de Liquidación.

1

Como consecuencia de lo anterior, mediante escrito de fecha 9 de febrero de 2015 se comunicó a este Juzgado que al amparo de lo dispuesto en el apartado 3.2.5 del Plan de Liquidación, se iniciaba el procedimiento para la transmisión de los derechos económicos de los Derechos Indemnizatorios y financiación de potenciales litigios por parte de terceros interesados.

El resultado del proceso de Adjudicación fue comunicado a este Juzgado el pasado 3 de marzo de 2015, mediante la aportación del Acta otorgada ante el Notario D. Jaime Recarte Casanova, que incluía las ofertas presentadas por los interesados y la oferta ganadora.

Los datos más relevantes del procedimiento de adjudicación son los siguientes:

**1) Adjudicataria.**

La entidad que ha resultado adjudicataria de los derechos económicos de los Derechos Indemnizatorios, es la sociedad PROSPECT INVESTMENTS, LLC (**"Prospect" o "Adjudicataria" o "Financiador"**) quien presentó una oferta en la que se comprometía a abonar, a las sociedades concursadas PETERSEN ENERGÍA, S.A.U y PETERSEN ENERGÍA INVERSORA, S.A.U. (en adelante conjuntamente las **"Concursadas"**) para su integración en la masa activa de los concursos, la cantidad de QUINCE MILLONES CIENTO UN MIL EUROS (15.101.000 €) y el 30% del importe que se obtenga de las reclamaciones que se interpongan, en contraprestación al otorgamiento a la Adjudicataria del :

> (i)    derecho exclusivo a dirigir, gestionar, financiar y transigir las reclamaciones de las Concursadas contra cualquier persona física, corporación, sociedad mercantil, fideicomisos o estructuras fiduciarias (trust), joint-venture o empresa en participación, asociación, compañía, sociedad o cualquiera otra entidad, así como contra cualquier gobierno u otra autoridad gubernamental o de otro tipo, que surjan de, o resulten derivadas o relacionadas con, hechos o circunstancias relativos o causados por la expropiación a Repsol, S.A. (**"Repsol"**) de las acciones de su titularidad en YPF, S.A. (**"YPF"**) que causaran un daño o un perjuicio a las Concursadas, incluyendo, a título

enunciativo pero no limitativo, (i) cualquier incumplimiento de los mecanismos de protección a los inversores establecidos en el tratado bilateral de protección de inversiones suscrito entre el Reino de España y el estado argentino, (ii) cualquier incumplimiento de los estatutos sociales de YPF; (iii) cualquier incumplimiento de cualesquiera acuerdos de accionistas; (iv) cualquier incumplimiento contractual o legal frente a las Concursadas; o (v) cualquier otro hecho o circunstancia que, de cualquier forma, sea relevante para los intereses, derechos o títulos de las Concursadas en YPF y/o las pérdidas o disminuciones de valor (conjuntamente, las "**Reclamaciones**"); y,

(ii)     del derecho de la Adjudicataria a recibir el setenta por ciento (70%) % del importe que resulte de las Reclamaciones.

## 2)  Formalización ante Notario:

Siguiendo el proceso de adjudicación comunicado a este Juzgado, el pasado día 4 de marzo de 2015 se formalizó la operación de adjudicación, y a tal efecto las Concursadas representadas por la Administración Concursal y PROSPECT INVESTMENTS, LLC suscribieron los siguientes contratos: "***Claim Prosecution Agreement*** (Contrato de Prosecución de Reclamaciones)" y "***Contrato de Prenda***" sobre los derechos económicos de las reclamaciones, los cuales fueron elevados a públicos ante  Notario D. Jaime Recarte Casanova, bajo los números de protocolo 696 y 697, los cuales se adjuntan al presente escrito como **Documentos Números 1 y 2**.

## 3)  Importe abonado por PROSPECT INVESTMENTS, LLC.

El importe abonado por la Adjudicataria  asciende a la cantidad de QUINCE MILLONES CIENTO UN MIL EUROS (15.101.000 €) y el mantenimiento del 30% del importe que se obtenga de las Reclamaciones bajo la titularidad de las concursadas.

3

Dicho importe ha sido distribuido en función de la participación de las Concursadas en el capital social de YPF de forma que el reparto quedó de la forma que se indica a continuación:

> **- PETERSEN ENERGÍA, S.A.U**: Por el 14,90% del capital social que ostentaba en YPF, le corresponde el importe de OCHO MILLONES OCHOCIENTOS TREINTA Y SEIS MIL NOVECIENTOS VEINTICUATRO EUROS CON NOVENTA Y SIETE CÉNTIMOS (8.836.924,97 €), el cual ha sido ingresado en la cuenta corriente intervenida por la Administración Concursal número ███████ ███████ abierta en CAIXABANK, S.A. (se aporta justificante de ingreso en la citada cuenta corriente como **Documento Número 3**).

> **- PETERSEN ENERGÍA INVERSORA, S.A.U**: Por el 10,56% del capital social que ostentaba en YPF, le corresponde el importe de SEIS MILLONES DOSCIENTOS SESENTA Y CUATRO MIL SETENTA Y CINCO EUROS CON TRES CÉNTIMOS (6.264.075,03 €), el cual ha sido ingresado en la cuenta corriente intervenida por la Administración Concursal número ███████ ███████ abierta en CAIXABANK, S.A. (se aporta justificante de ingreso en la citada cuenta corriente como **Documento Número 4**).

**4) Obligaciones asumidas por las Concursadas, por la Administración Concursal y por la Adjudicataria:**

Las principales obligaciones asumidas por las sociedades Concursadas, por la Administración Concursal y por la Adjudicataria son las que se indican a continuación:

**4.1) Obligaciones asumidas por las Concursadas y la Adjudicataria:**

Las Concursadas y la Adjudicataria han asumido las siguientes obligaciones:

> (i) *Preservar y mantener su personalidad jurídica. Esa obligación incluirá que las Concursadas, representadas por la Administración Concursal, no solicitarán la conclusión de sus Procedimientos Concursales, especialmente por insuficiencia de masa*

*activa y, en su caso, diligentemente se opondrán a cualquier iniciativa para lograr dicha conclusión, por cualquier motivo.*

(ii) *Harán todo lo posible para mantener en vigor y plena eficacia todos los consentimientos, aprobaciones, acciones, autorizaciones, excepciones, notificaciones, declaraciones e inscripciones de, o con cualquier otra Autoridad Gubernamental, que sean necesarios para obtener, respecto de los Contratos firmados con la Adjudicataria, o cualquier otro Documento en el que sea parte, y hará todo lo que sea posible razonablemente para obtener cualesquiera que puedan ser necesarios en el futuro.*

(iii) *Cumplirán, en todos los aspectos esenciales, todas las leyes y órdenes o resoluciones aplicables de cualquier Autoridad Gubernamental a las que puedan estar sometidas, si razonablemente pudiera esperarse que su falta de cumplimiento, individual o globalmente, pueda (i) perjudicar a sus capacidades de ejecutar cualquiera de sus obligaciones al amparo del Contrato firmado o cualquier Documento del que sea parte, (ii) menoscabar los derechos o remedios o recursos disponibles para la otra parte al amparo de del Contrato firmado o cualquier Documento del que sea parte, o (iii) causar un impacto relevante negativo sobre las Reclamaciones, su valor o sus posibilidades de cobro.*

(iv) *En cada momento y a solicitud de la otra parte, y sin derecho a contraprestación adicional, cada parte proporcionará a la otra parte aquella información adicional, consentimientos o garantías, otorgar y firmar aquellos documentos adicionales, títulos y documentos de transmisión, y realizar aquellas otras actuaciones y ejecutar aquellos otros actos, en la medida en que resulte necesario o conveniente para cumplir las disposiciones del Contrato firmado y cualquier Documento del que sea parte, así como para conseguir la eficacia de los negocios o transacciones que se contemplan en aquellos. Ello incluirá, sin afán limitativo, el otorgamiento de cualquier prenda adicional o contrato de garantía y/o el otorgamiento, inscripción o autorización de escrituras o inscripciones de garantías en las jurisdicciones correspondientes, según sea preciso para conseguir la eficacia de la Cláusula 3.3 del Contrato firmado.*

## 4.2) Obligaciones asumidas por la Administración Concursal:

La Administración Concursal ha asumido las siguientes obligaciones:

(i) *La Administración Concursal cooperará puntualmente con la Adjudicataria en todos los asuntos relativos a las Reclamaciones, incluyendo, sin limitación, para (i) exhibir todos*

los documentos pertinentes e información que posea o controle; y (ii) cooperar y hacer todo lo comercialmente razonable para garantizar la cooperación de todos los representantes de las Concursadas en todos los asuntos relativos a las Reclamaciones. Dicha cooperación podrá incluir la exhibición de todos los documentos necesarios; firmar y otorgar contratos y poderes adicionales; someter al examen del abogado para la preparación de declaraciones escritas y suscribirlas bajo juramento, si fuera necesario; consultar con el abogado y sus delegados, cuando lo exijan, con objeto de proseguir las Reclamaciones y ejecutar cualquier laudo o resolución; y comparecer en cualquier vista en relación con dichas declaraciones o las Reclamaciones en general. Cualquier gasto razonable y documentado de la Administración Concursal (incluyendo honorarios razonables de letrado) incurrido en el curso de todas las actividades de cooperación descritas en las cláusulas anteriores (i) y (ii) (y no otras actividades o costes de las Concursadas o Administración Concursal) serán pagaderas por la Adjudicataria (conjuntamente, los **"Gastos de Cooperación"**).

(ii) Las Concursadas no actuarán en perjuicio de los beneficios, derechos o fundamentos de acciones que sean buscados o anticipados en relación con las Reclamaciones, o la prosecución general de estas.

(iii) Excepto al amparo de cualquier Documento de Respaldo de Crédito en el que las Concursadas sea parte, ésta no dispondrá, transmitirá, gravará, cederá, permitirá que exista (sin objeción) una Reclamación En Contra, respecto de todas o cualquier parte de las Reclamaciones (o cualquier derecho en ellas) o de cualesquiera Ganancias (o cualquier derecho a esas Ganancias), bien sea a través de garantía o de otro modo.

(iv) Las Concursadas no compensará o acordará compensación de importe alguno contra cualquier Reclamación.

(v) Las Concursadas no iniciará una acción separada, demanda o arbitraje contra cualquier Contrario o cualquier Entidad Relacionada de cualquier Contrario, antes de una Resolución sobre una Reclamación.

## 4.3.) Obligaciones de la Adjudicataria:

La Adjudicataria ha asumido además las siguientes obligaciones:

(i) El Financiador ejecutará, a su costa, aquellas actuaciones que sean comercialmente razonables para (i) proseguir diligentemente las Reclamaciones e (ii) intentar conseguir la ejecución de cualquier sentencia, laudo o transacción razonable que se consiga en relación

*con las Reclamaciones.*

(ii)     *El Financiador mantendrá a las Concursadas razonablemente informadas del estado de las Reclamaciones, mediante (i) la entrega a las Concursadas de informes escritos trimestrales sobre todas las novedades relevantes en las Reclamaciones; (ii) la entrega sin demora a las Concursadas de copias de cualesquiera solicitudes, escritos judiciales o documentos similares; (iii) la notificación sin demora a las Concursadas de cualquier oferta de transacción; (iv) la respuesta sin demora a cualquier solicitud de las Concursadas de información relativa a las Reclamaciones.*

(iii)    *En reconocimiento de interés de la Administración Concursal, en nombre de las Concursadas, en la protección de la contraprestación de las Concursadas, y el valor que su cooperación al amparo del Contrato firmado podría aportar al Financiador en la prosecución de las Reclamaciones, el Financiador prestará, de buena fe, atención razonable a cualquier recomendación de las Concursadas en relación con la dirección por el Financiador de las Reclamaciones y les dará una respuesta razonada sobre aquélla. No obstante, dado el mayor conocimiento y experiencia del Financiador en la materia, y dada la convergencia de intereses entre el Financiador y las Concursadas, las Concursadas razonablemente deferirán al Financiador la elección de la actuación que resulte más beneficiosa tanto para el Financiador como para las Concursadas por igual.*

(iv)    *Si las Concursadas plantean una cuestión sobre la decisión del Financiador de celebrar o prestar su conformidad a una transacción de las Reclamaciones, el Financiador hará que los abogados designados por él para la prosecución de las Reclamaciones en nombre de las Concursadas le suministren a éstas una explicación, fundada en todos los hechos y circunstancias relevantes, e incluyendo consideraciones sobre anteriores transacciones en cuestiones similares, sobre las razones por las que esa transacción es razonable.*

**TERCERA. Otra información de interés para el proceso.**

**1. Confidencialidad.**

Como puede comprobarse de los documentos adjuntos, a excepción de la obligada comunicación que se recoge en los contratos para con este Juzgado de lo Mercantil que se cumple mediante la presente comunicación, se han acordado por las partes intervinientes

cláusulas de confidencialidad que deberán ser igualmente respetadas por los personados en el presente procedimiento.

## 2.  Asesoramiento a las sociedades concursadas.

Debido a las peculiares características del objeto del proceso de liquidación y su carácter transnacional, por medio del presente escrito se informa al Juzgado que las sociedades concursadas y la Administración Concursal han considerado necesario, además de los servicios prestados por los asesores de las sociedades concursadas, la contratación de servicios de asesoramiento legal en España y Estados Unidos, dado que la búsqueda de posibles interesados, las negociaciones previas y la formalización de los documentos definitivos, se han desarrollado en España, Londres y Nueva York, realizándose numerosos desplazamientos a dichos países.

En concreto las sociedades concursadas y la administración concursal cuentan con los servicios de don Clifford J. Hendel, abogado norteamericano del despacho ARAOZ & RUEDA, así como de don Daniel P. Goldberg, abogado del despacho HOLWELL SHUSTER & GOLDBERG LLP, (125 Broad Street, 39th Floor, New York, 10004, USA). Se anexan como **Documentos Número 5 y 6** copia de sus curriculum vitae.

## 3.  Destino de las cantidades percibidas. Garantía para el cumplimiento de las obligaciones asumidas por las sociedades concursadas respecto del

Sin perjuicio del abono de los créditos contra la masa ya devengados (honorarios de los asesores legales, servicios de asesoría contable y fiscal, honorarios de letrados de las sociedades concursadas, honorarios de asesores externos, gastos incurridos y honorarios de la administración concursal), consideramos necesario informar a este Juzgado que atendiendo a las obligaciones asumidas con el Adjudicatario y la previsible duración de los procedimientos que se interpongan, se incurrirán en nuevos créditos contra la masa que serán oportunamente comunicados al Juzgado en línea de los ya incurridos.

## CUARTA.- Créditos contra la masa.

Finalmente, esta Administración Concursal acompaña listado de créditos contra la masa como **Documento Número 7**, encontrándose alguno de ellos pendientes de determinación en su cuantía.

En su virtud,

**SUPLICO AL JUZGADO:** Que tenga por presentado este escrito, lo admita, y en sus méritos, tenga por cumplimentado en tiempo y forma la obligación impuesta a la Administración Concursal por el artículo 152 de la Ley concursal.

Es Justicia que pido a 13 de marzo de 2015.

**LA ADMINISTRACIÓN CONCURSAL**

**D. Armando Betancor Álamo**                    **Pedro Martín Molina**

**OTROSI DIGO PRIMERO:** Que el presente escrito se presenta dentro del plazo de las 15:00 horas del día siguiente al del vencimiento del término para la presentación del presente requerimiento, de conformidad con lo establecido por el artículo 135.1 de la Ley de Enjuiciamiento Civil.

Es por lo que,

**SUPLICO AL JUZGADO:** Tenga por efectuada la anterior manifestación a los efectos de lo dispuesto por el artículo 135.1 de la Ley de Enjuiciamiento Civil.

Por ser de igual Justicia que pedimos, en el lugar y fecha indicados ut supra.

9

**OTROSI DIGO SEGUNDO:** Que dada la manifiesta voluntad de esta parte de cumplir con todos y cada uno de los requisitos legales que establece la vigente LEC, al amparo de lo establecido en el artículo 231 de dicho cuerpo legal.

Es por lo que,

**SUPLICO DE NUEVO AL JUZGADO:** Que por este Juzgado se acuerde conforme a lo dispuesto en el precitado artículo 231, para el supuesto de que esta parte haya incurrido en algún defecto subsanable.

Por ser de igual Justicia que pedimos, en el lugar y fecha indicados *"ut supra".*



# TRANSLATION CERTIFICATION

450 7th Avenue
10th Floor
New York, NY  10123
Tel 212.643.8800
Fax 212.643.0005
www.morningtrans.com

**County of San Francisco**
**State of California**

Date: September 3, 2015

To whom it may concern:

This is to certify that the attached translation from Spanish into English is an accurate representation of the documents received by this office.

The documents are designated as:

- Report of the Bankruptcy Administration to the Third Commercial Court of Madrid, dated 13 March 2015

Ilaria Taylor, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_Ilaria Taylor_

_____
Signature of Ilaria Taylor

Accurate Translation Services 24/7