# Domb Declaration

# Exhibit 21

Petersen Energía, S.A.U. & Petersen Energía Inversora, S.A.U.
Calle Ayala, No. 27, 4to Izquierda
Madrid - España
C.P. 28.001

April 8, 2015<br>
8 de abril de 2015

Señora Presidenta de la
Nación Argentina
Dra. Cristina Fernández de Kirchner
Balcarce 50
C1064AAB, Ciudad de Buenos Aires
República Argentina

Re: **Notice of Dispute Under the Agreement on the Reciprocal Promotion and Protection of Investments Between the Kingdom of Spain and the Argentine Republic**

Ref.: **Notificación de controversia bajo el Acuerdo para la Promoción y la Protección Recíproca de Inversiones entre el Reino de España y la República Argentina**

Dear Mme. President:

I hereby address you as the sole bankruptcy receiver and representative of Petersen Energía, S.A.U. ("PESA"), and Petersen Energía Inversora, S.A.U. ("PEISA") (jointly, the "Investors"), incorporated under the laws of the Kingdom of Spain, to formally notify the Government of the Argentine Republic (the "Government," the "Republic," or "Argentina") of a dispute between the Investors and Argentina arising from violations of the Agreement on the Reciprocal Promotion and Protection of Investments Between the Kingdom of Spain and the Argentine Republic, signed in Buenos Aires on October 3, 1991 (the "BIT").

In the 1990's, Argentina privatized its

De nuestra consideración:

Por la presente me dirijo a S.E. como administrador concursal único y legítimo representante de Petersen Energía, S.A.U. ("PESA") y Petersen Energía Inversora, S.A.U. ("PEISA") (conjuntamente, los "Inversores"), sociedades constituidas según las leyes del Reino de España, para notificar formalmente al Gobierno de la República Argentina (el "Gobierno", la "República" o "Argentina") la existencia de una controversia entre los Inversores y Argentina surgida como consecuencia de las violaciones del Acuerdo para la Promoción y la Protección Recíproca de Inversiones entre el Reino de España y la República Argentina, firmado en Buenos Aires el 3 de octubre de 1991 (el "TBI").

En los años 90 Argentina privatizó su

Petersen Energía, S.A.U. & Petersen Energía Inversora, S.A.U.
Calle Ayala, No. 27, 4to Izquierda
Madrid - España
28.001

| | |
|---|---|
| national oil company, Yacimientos Petrolíferos Fiscales ("YPF"). As part of that privatization and public offering process, the Government enacted Executive Decree No. 1,106, dated May 31, 1993, wherein it provided that in the event the Government ever sought in the future to acquire a controlling shareholding interest in, or exercise control over, the newly privatized YPF, the Government would conduct a public tender offer for all of the Class D shares of the company, with the offer price to be determined by an agreed formula. The Government's commitment was reflected in new YPF by-laws that were adopted as part of the privatization decree. The clear purpose and intent of this public tender obligation of the Government, as adopted by executive decree and confirmed in the new YPF by-laws, was to induce prospective investors to acquire shares in YPF based on the Government's express commitment that it would not retake control of YPF without first making a tender offer for all of the issued Class D shares of the company at an agreed pricing formula. Argentina's commitment not to retake control of YPF without conducting a public tender offer was repeatedly reiterated and reaffirmed to investors, including in the YPF initial public offering prospectus and in numerous filings with governmental regulatory authorities. | compañía hidrocarburífera nacional, Yacimientos Petrolíferos Fiscales ("YPF"). Como parte del proceso de privatización y del proceso de oferta pública, el Gobierno dictó el Decreto Ejecutivo No. 1106, con fecha 31 de mayo de 1993, en el cual estableció que, en el caso que el Gobierno decidiera en el futuro adquirir un interés controlante en la recientemente privatizada YPF, o ejerciera el control sobre la misma, el Gobierno haría una oferta pública para todas las acciones de la Clase D de la compañía, y el precio de la oferta sería determinado a través de una fórmula acordada. El compromiso del Gobierno se vio reflejado en los nuevos estatutos de YPF que fueron adoptados como parte del decreto de privatización. El claro propósito de esta obligación del Gobierno de emitir una oferta pública, tal cual fuera adoptada por decreto del Ejecutivo y confirmada en los nuevos estatutos de YPF, fue el de inducir a futuros inversores a adquirir acciones de YPF teniendo en cuenta el compromiso expreso del Gobierno de no obtener nuevamente el control de YPF sin primero hacer una oferta pública para adquirir todas las acciones de la compañía Clase D a través de una fórmula acordada previamente. El compromiso de Argentina de no obtener nuevamente el control de YPF sin hacer oferta pública fue reiterado en repetidas oportunidades y reafirmado a los inversores, entre otras, en el prospecto de oferta pública inicial de YPF y en numerosas presentaciones ante autoridades regulatorias gubernamentales. |
| Through several purchases made between 2008 and 2011, the Investors acquired YPF's Class D shares representing 25.46% of its capital stock (14.9% under PESA's control, and 10.56% under PEISA's control). At the time the Investors acquired their investment in Argentina, Spain's Repsol, S.A., and its affiliates | A través de diversas compras efectuadas entre 2008 y 2011, los Inversores adquirieron acciones de YPF Clase D que representaban el 25,46% de su capital social (14,9% bajo el control de PESA y 10,56% bajo el control de PEISA). Cuando los Inversores adquirieron sus inversiones en |

2

Petersen Energía, S.A.U. & Petersen Energía Inversora, S.A.U.
Calle Ayala, No. 27, 4to Izquierda
Madrid, España
C.P. 28.001

("Repsol"), owned a majority of YPF's Class D shares, which gave Repsol control over YPF.

The dispute between the Investors and Argentina arose in early 2012, when the Government began taking a series of measures against YPF that had as their direct and intended consequence a devaluation of the share price of company. These measures included, but were not limited to, public statements suggesting an impending nationalization of YPF, as well as the revocation and threat of revocation of several of YPF's oil and gas concessions. On April 16, 2012 by Decree No. 530/12, the Government formally seized and exercised control of YPF, unilaterally appointed one of its own Ministers as YPF's intervenor ("Intervenor"), transferred to the Intervenor all the powers granted by the YPF by-laws to the company's Board and President, replaced YPF's top management, and announced legislation that would expropriate 51% of the company's Class D shares. On May 4, 2012, Argentina enacted Law No. 26,741, which provided for the expropriation of 51% of YPF's Class D shares under Repsol's control. These actions gave Argentina total and unequivocal control over YPF.

These events caused substantial economic harm to the value of the Investors' shares in YPF. Moreover, apart from the loss of asset value, the change of control events immediately triggered the Investors' default of the loans executed to acquire YPF's shares between 2008 and 2011, with further catastrophic economic

Argentina, la compañía española Repsol, S.A. y sus compañías afiliadas ("Repsol") eran dueñas de la mayoría de las acciones Clase D de YPF, por lo que Repsol tenía el control de YPF.

La controversia entre los Inversores y Argentina surgió a principios de 2012, cuando el Gobierno comenzó a tomar medidas en contra de YPF, las cuales tuvieron como consecuencia directa e intencionada la devaluación del precio de la acción de la compañía. Estas medidas incluyeron, entre otras, las declaraciones públicas que sugerían la inminente nacionalización de YPF, como así también la terminación, o la amenaza de terminación, de varias de las concesiones hidrocarburíferas de YPF. A través del Decreto No. 530/12, el 16 de abril de 2012 el Gobierno formalmente tomó y ejerció el control de YPF, designó de manera unilateral a uno de sus ministros de gobierno como interventor de YPF (el "Interventor"), transfiriéndole todas las facultades y derechos que los estatutos de YPF le otorgan al Directorio y al Presidente de la compañía, reemplazó a los ejecutivos de mayor rango de YPF, y anunció que sancionaría una ley para expropiar el 51% de las acciones Clase D de la compañía. El 4 de mayo de 2012 el Gobierno sancionó la Ley No. 26.741, que dispuso la expropiación del 51% de las acciones Clase D de YPF que estaban bajo el control de Repsol. Estas medidas dieron a Argentina control total e inequívoco sobre YPF.

Estos sucesos causaron un daño económico significativo en el valor de las acciones que los Inversores tenían en YPF. Asimismo, además de la pérdida de valor de esos bienes, el cambio de control provocó inmediatamente el incumplimiento de los Inversores en los préstamos obtenidos para

3

Petersen Energía, S.A.U. & Petersen Energía Inversora, S.A.U.
Calle Ayala, No. 27, 4to Izquierda
Madrid - España

and financial consequences to the Investors, including the foreclosure of the pledges over the Investors' shares in YPF. No such losses would have occurred had the Government abided by the express provisions in YPF's by-laws when it took control of Repsol's controlling shareholding interest by making a public tender offer for all YPF's Class D shares, including those of the Investors. By failing to abide by the tender provisions in the YPF by-laws, Argentina violated the specific guarantee that the Government itself had granted to shareholders in YPF, causing massive losses to the Investors.

Having seen the economic value of their shares substantially impaired, and then been deprived of their investments as a direct consequence of the Government's actions, the Investors had no other recourse but to file for bankruptcy in Spain. On October 23, 2012, the competent Spanish court declared the initiation of the Investors' bankruptcy proceedings. In view of the insufficiency of assets to pay the Investors' creditors, on September 3, 2014, both companies entered the liquidation phase of their bankruptcy proceedings, with the signatory hereto being appointed as the sole court-appointed liquidator for the Investors.

As a part of the liquidation plan approved by Spanish bankruptcy court, and with a view to seeking compensation for the harm caused to Investors by Argentina, the Investors hereby notify the Republic of the dispute that arose due to the numerous illegal actions in breach of the BIT, international law, and Argentine law. The

adquirir las acciones de YPF entre los años 2008 y 2011, con adicionales consecuencias económicas y financieras catastróficas para los Inversores, incluyendo la ejecución de las prendas existentes sobre las acciones de YPF que pertenecían a los Inversores. Tales pérdidas no se habrían producido si el Gobierno hubiese cumplido las expresas previsiones de los estatutos de YPF cuando tomó control del interés controlante que correspondía a Repsol, y hubiese realizado una oferta pública de todas las acciones Clase D de YPF, incluidas las de los Inversores. Al haber incumplido las obligaciones de realizar oferta pública de acuerdo con los estatutos de YPF, Argentina violó la garantía específica que el Gobierno mismo había otorgado a los accionistas de YPF, causando enormes perjuicios a los Inversores.

Habiendo visto que el valor de sus acciones había sido afectado significativamente, y luego de haber sido despojados de sus inversiones como consecuencia directa de las medidas del Gobierno, los Inversores no tuvieron otra opción que solicitar su concurso voluntario en España. Los concursos de los Inversores fueron declarados por el tribunal español competente el 23 de octubre de 2012. Debido a la falta de fondos suficientes para satisfacer a los acreedores de los Inversores, el 3 de septiembre de 2014 ambas sociedades entraron en fase de liquidación, donde el que aquí suscribe fue designado liquidador único de los Inversores.

Como parte del plan de liquidación aprobado por el juez competente español, y con el fin de obtener la correspondiente indemnización que les corresponde por el daño causado por Argentina, por la presente los Inversores notifican a la República de la controversia suscitada a raíz de las

4

Petersen Energía, S.A.U. & Petersen Energía Inversora, S.A.U.
Calle Ayala, No. 27, 4to Izquierda
Madrid - España
C.P. 28001

Government's illegal actions included, *inter alia,* the *de facto* and unlawful seizure of YPF's operations, the unilateral appointment of the Intervenor, the unilateral transfer of powers granted by the by-laws to the company's Board and President to the Intervenor, the replacement of the legitimate members of YPF's Board of Directors with the Government's own hand-picked members, the termination of the dividend distribution policy previously agreed between the shareholders and enforced by all YPF's shareholders and Board members, as well as the confiscation of Repsol's controlling shareholding interest without first complying with the public tender provisions of the YPF's by-laws to which the Government had approved and agreed to comply.

These Government measures, *inter alia,* violated the Republic's obligations under the BIT toward the Investors in Argentina, including but not limited to the obligations to (i) accord fair and equitable treatment to investments, (ii) not to obstruct, by unjustified or discriminatory measures, the management, maintenance, use, enjoyment, extension, sale and, where appropriate, liquidation of such investments, (iii) not to nationalize, expropriate or adopt any other measures having similar characteristics or effects, except for the public interest, in accordance with the law, and in a non-discriminatory manner, upon payment of appropriate compensation, without undue delay, and in freely convertible currency, and (iv) accord treatment no less favorable than that accorded by Argentina to investments made in its territory by investors of a third country or its own nationals.

numerosas acciones ilegales en violación del TBI, del derecho internacional y del derecho argentino. Las acciones ilegales del Gobierno incluyeron, entre otras, la apropiación ilegal y de hecho de las operaciones de YPF, la designación unilateral del Interventor, la transferencia unilateral al Interventor de las facultades otorgadas por los estatutos de la compañía al Directorio y al Presidente, el reemplazo de los legítimos miembros del Directorio de YPF por los miembros que el Gobierno designó discrecionalmente, la terminación de la política de distribución de dividendos previamente acordada por los accionistas y puesta en ejecución por los accionistas de YPF y por los miembros del Directorio, como así también la confiscación del interés accionario controlante que correspondía a Repsol sin haber cumplido primero con las previsiones sobre oferta pública establecidas en los estatutos de YPF que el Gobierno había aprobado y se había comprometido a cumplir.

Estas medidas del Gobierno, entre otras, violaron las obligaciones de la Repúblicas asumidas en el TBI con relación a los Inversores en Argentina, incluyendo, entre otras, las obligaciones de: (i) otorgar tratamiento justo y equitativo a las inversiones, (ii) no obstruir, a través de medidas injustificadas o discriminatorias, la gestión, mantenimiento, utilización, disfrute, extensión, venta o, en su caso, liquidación de tales inversiones, (iii) no nacionalizar, expropiar o adoptar cualquier otra medida de características o efectos similares, excepto por causas de utilidad pública, conforme a las disposiciones legales, y de forma no discriminatoria, mediando el pago de una indemnización adecuada, sin demora injustificada, y en moneda libremente convertible, y (iv) otorgar tratamiento no menos favorable que el otorgado por

5

Petersen Energía, S.A.U. & Petersen Energía Inversora, S.A.U.
Calle Ayala No. 27, 4to Izquierda
Madrid – España
C.P. 28.09

| | |
|---|---|
| | Argentina a inversiones realizadas en su territorio por inversores de otros países o de sus propios nacionales. |
| The Investors also invoke the most-favored-nation clause under Article IV(2) of the BIT ("MFN Clause"), and assert that the Government's conduct violated the so-called "umbrella clause" that exists in other BITs that Argentina has signed with third countries, like Austria, Chile, Guatemala, Switzerland, Netherlands, New Zealand, United Kingdom, and the United States of America, among others. The "umbrella clause" covers all violations of obligations that Argentina entered into with regard to the Investors' investments, including but not limited to the public tender provisions contained in the YPF by-laws approved and adopted by the Government and YPF's shareholders, and the Investors are entitled to invoke that substantive protection as an additional claim against Argentina, notwithstanding any legal actions that may also be brought against YPF, its current or former Directors, or whoever may have exercised its powers, and the other shareholders. | Los Inversores también invocan la cláusula de nación más favorecida del Artículo IV(2) del TBI (la "Cláusula de NMF") y afirman que las acciones del Gobierno violaron la llamada "cláusula paraguas" que se encuentra en otros TBIs que Argentina firmó con otros países, como con Austria, Chile, Guatemala, Suiza, Holanda, Nueva Zelanda, el Reino Unido y los Estados Unidos de América, entre otros. La "cláusula paraguas" cubre todas aquellas violaciones de obligaciones que la Argentina acordó con relación a las inversiones de los Inversores, incluyendo, entre otras, las previsiones sobre oferta pública contenidas en los estatutos de YPF aprobados y adoptados por el Gobierno y por los accionistas de YPF, y los Inversores tienen derecho a invocar esa protección sustancial como un reclamo adicional en contra de la Argentina, sin perjuicio de las acciones que también corresponda iniciar en contra de YPF, sus Directores presentes o pasados, como quienes hayan asumido las facultades del mismo, y contra los demás accionistas. |
| The Investors hereby inform the Republic that they are prepared to undertake negotiations in an effort to settle the dispute. Please advise us in writing promptly upon receipt of this notice letter of the contact information of the person or persons with whom we may begin such negotiations. | Los Inversores informan a la República que están dispuestos a mantener negociaciones en un esfuerzo por resolver la controversia a través de un acuerdo. Les rogamos que nos informen por escrito a la brevedad posible, una vez recibida la presente carta de notificación, los datos de contacto de la persona o personas con quienes podamos comenzar tales negociaciones. |
| In the event that no negotiations take place, or do take place but do not resolve the dispute, the Investors will immediately institute arbitration proceedings as agreed to by | En caso de que las negociaciones no se realicen, o se realicen pero no resuelvan la controversia, los Inversores iniciarán de inmediato un procedimiento de arbitraje |

6

Petersen Energía, S.A.U. & Petersen Energía Inversora, S.A.U.
Calle Ayala, No. 27, 4to Izquierda
Madrid, España
C.P. 28.001

| | |
|---|---|
| Argentina in the BIT. The Investors hereby invoke the MFN Clause of the BIT, in order to avoid any requirement to previously refer the current dispute to the Argentine courts or to fulfill a specific waiting period before initiating their claim. Indeed, many foreign investors from countries other than Spain receive a more beneficial treatment because their corresponding BITs do not have such pre-filing requirements. That is the case, for instance, of Australian investors under the Argentina-Australia BIT. Consequently, since Argentina gave to, for example, Australian investors a more beneficial treatment (*i.e.*, by not requiring them to previously refer disputes to local courts or to fulfill a specific waiting period), the Investors are entitled to receive a similar treatment. Therefore, if Argentina does not promptly settle the dispute, the Investors will institute arbitration proceedings. | según lo acordado por Argentina bajo el TBI. Por la presente los Inversores invocan la Cláusula de NMF del TBI para evitar cualquier requisito de someter la disputa a los tribunales locales argentinos o para cumplir con algún período de espera específico antes de iniciar el arbitraje. En efecto, muchos inversores extranjeros provenientes de países distintos a España reciben un tratamiento más beneficioso dado que sus correspondientes TBIs no establecen tales requisitos previos. Tal es el caso, por ejemplo, de los inversores australianos bajo el TBI Argentina-Australia. En consecuencia, dado que Argentina dio a tales inversores un tratamiento más beneficioso (esto es, al no requerirles el previo sometimiento del caso a los tribunales locales o el cumplimiento de período específico de espera), los Inversores tienen derecho a recibir un tratamiento similar. De ese modo, si Argentina no soluciona rápidamente la controversia mediante un acuerdo, los Inversores comenzarán un procedimiento de arbitraje. |
| The Investors write this letter in both the English and Spanish languages. In case of discrepancies, the English shall prevail. | Esta carta ha sido redactada en inglés y en español. En caso de discrepancia entre uno y otro idioma prevalecerá la versión en inglés. |
| Yours sincerely, | Atentamente, |

Armando Betancor Álamo
Administrador Concursal
Bankruptcy Receiver

Cc: Procuradora del Tesoro de la Nación
Dra. Angelina Abbona
Posadas 1641
C1112ADC, Ciudad de Buenos Aires
República Argentina

7

Petersen Energía, S.A.U. & Petersen Energía Inversora, S.A.U.
Calle Ayala, No. 27, 4to Izquierda
Madrid - España
C.P. 28.001

        Presidente del Directorio de YPF S.A.
        Ing. Miguel Matías Galuccio
        Macacha Güemes 515
        C1106BKK, Ciudad de Buenos Aires
        República Argentina

**LEGITIMACION DE FIRMA.-** Yo JAIME RECARTE CASANOVA, Notario del Ilustre Colegio de Madrid, **DOY FE Y LEGITIMO** la firma que antecede de **DON ARMANDO BETANCOR ALAMO con DNI/NIF número 43767726-Z** por ser de mí, el Notario conocida y haciendo constar que he traducido el documento redactado a doble columna en idiomas inglés-español--------

Libro indicador, sección b, folios números **980-983** -.------------------------

Madrid, a 08 de abril de 2015. ------------------------------------------------------

---

# APOSTILLE
(Convention de La Haye du 5 octobre 1961)

1. **País:** *España*
   Country: / Pays:

   El presente documento público
   This public document / Le présent acte public

2. **ha sido firmado por** D. *Jaime Recarte Casanova*
   has been signed by / a été signé par

3. **quien actúa en calidad de** *NOTARIO*
   acting in the capacity of / agissant en qualité de

4. **y está revestido del sello / timbre de** *su Notaría*
   bears the seal / stamp of / est revêtu du sceau / timbre de

   Certificado
   Certified / Attesté

5. **en** Madrid       6. **el día** 08 . abril . 2015
   at / à                  the / le

7. **por** *el Decano del Colegio Notarial de Madrid*
   by / par

8. **bajo el número** 022334
   N° / sous n°

9. Sello / timbre:                10. Firma:
   Seal / stamp / Sceau / timbre     Signature: / Signature:

Doña Mª Nieves González de Echávarri Díaz
Firma delegada del Decano