**UNITED STATES DISTRICT COURT**
**for the**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. AND PETERSEN ENERGÍA, S.A.U., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 15 Civ. 2739 (TPG) |
| - against - | ) ) | |
| ARGENTINE REPUBLIC AND YPF S.A., | ) ) ) | |
| Defendants. | | |

## DECLARATION OF DR. ALFREDO L. ROVIRA

October 16, 2015

# **TABLE OF CONTENTS**

I.      BACKGROUND AND EXPERTISE ………………………………………………… 2

II.     QUESTIONS RECEIVED FROM COUNSEL TO PLAINTIFFS AND ANSWERS ........4

    1.    What kind of corporation is YPF S.A. and what body of Argentine law governs? ......4

    2.    How would you characterize the bylaws of YPF under applicable Argentine law?....................................................................................................................6

    3.    What are Argentina's obligations under the bylaws in the circumstances of this case, particularly with regard to the provisions of Article 7 and Article 28 (including its prior version under Article 35)? .............................................................6

    4.    What are YPF's obligations under the bylaws in the circumstances of this case?......11

## **DECLARATION OF DR. ALFREDO L. ROVIRA**

Pursuant to 28 U.S.C. § 1746, I, Alfredo L. Rovira, declare as follows:

**1.** I have prepared this declaration at the request of counsel for Plaintiffs Petersen Energía Inversora, S.A.U., and Petersen Energía, S.A.U.

## **I.  BACKGROUND AND EXPERTISE**

**2.** I have been retained by counsel for Plaintiffs to give my opinion as expert on Argentine law on various aspects in case "Petersen Energía Inversora S.A.U. and Petersen Energía, S.A.U., against Argentine Republic and YPF S.A." I do not have any other current relationship with any of the parties in this case. I hereby represent that I have full and absolute independence to render an opinion on a free and objective basis.

**3.** My compensation for rendering this opinion has been agreed on a per hour fee basis. My compensation does not depend in any way on the opinions I have rendered.

**4.** A list of the documents that counsel made available to me for my review in preparing this report is attached hereto as Exhibit 2.

**5.** I hold a PhD (*Doctor en Derecho*) degree from the national University of Buenos Aires, School of Law (*Universidad de Buenos Aires*, hereinafter "UBA"), and am an active legal practitioner as a lawyer, arbitrator, expert witness and Chair Professor of Law. I also serve as a Consultant Professor of business law at the UBA's School of Law as well as at other private universities' law schools in Argentina. Further I am author and co-author of various books and papers

published in specialized legal publications on Argentine law, most of them on corporate and contract laws.

6.  I have practiced Argentine law as a legal counsel, academic and professor of law for 48 years. Most of my legal practice was carried on at Brons & Salas, a law firm with principal office in Buenos Aires, Argentina. I served as the firm's Managing Partner for approximately 20 years, in addition to chairing the corporate legal department of the firm and leading the arbitration practice at such firm until May 31, 2013, when I retired as partner of the firm. Currently, I continue with my legal practice at my own firm, mostly as consultant to law firms and companies' in-house legal departments, as arbitrator or litigator in complex litigations and arbitrations and as expert witness.

7.  Based upon my professional and academic credentials I consider myself qualified to act as an expert on business law matters, specifically corporate laws. The foregoing implies a deep knowledge of the Argentine Commercial Code, Civil Code and their respective supplementary legislation and, currently, of the Civil and Commercial Code of the Nation (*Código Civil y Comercial de la Nación*), hereinafter the "New Code," which entered into force on August 1, 2015. As an attorney with active professional activity in the courts at the City of Buenos Aires, Argentina, I do have extensive experience and knowledge of the Civil and Commercial Code of Procedures of the Nation (*Código Procesal Civil y Comercial de la Nación*). As Chair Professor at the UBA's School of Laws, I currently teach an undergraduate course on General Theory on Contract Laws in the Civil and Commercial Code of the Nation ("*Teoría General de los Contratos en el Código Civil y Comercial de la Nación*") and graduate and LLM courses on corporate laws at the UBA's School of Law, as well as at the School of Law of the *Universidad Católica Argentina*.

8.  As an academic I studied and wrote on various legal matters that are required to give an opinion in this declaration. While my full *curriculum vitae*, attached hereto as Exhibit 1, contains all of my professional experience, I highlight that I was the Co-Vice Chair of the Corporate Governance Committee and, currently, I am the Co-Vice Chair of the International Litigation Sub Committee, Business and Corporate Litigation Committee, both of the American Bar Association, Business Law Section.

9.  Further, in recognition to my many academic contributions in corporate and business law in general, in 2013 I was appointed member of the Argentine National Law Academy's Business Law Institute, the most prestigious legal organization in Argentina and correspondent member (*Miembro Correspondiente*) at the *Instituto de Derecho Comercial de la Facultad de Derecho de la Universidad de la República del Uruguay*.

## II.  QUESTIONS RECEIVED FROM COUNSEL TO PLAINTIFFS AND ANSWERS

### 1.  What kind of corporation is YPF S.A. and what body of Argentine law governs?

**10.** The organizational history of YPF S.A (hereinafter "YPF") reveals that for much of its life the company was essentially a branch of the Argentine government until that government made the conscious decision to transform YPF into a fully private enterprise.  YPF has inhabited numerous legal formats over the course of its existence, but for most of its history prior to 1990 it has functioned as a public-law organization. YPF was originally created as an Argentine federal government agency tasked with exploiting the country's oil deposits and governed by public law. In 1949, YPF was transformed into State Enterprise, a government agency also governed by public law and specifically charged with the management of public resources and utilities. Three decades later, in 1977, YPF was changed into a State Company, a legal form that has some similarities to a modern private corporation, but where the State is the sole shareholder and public law governs its relationship with the Government while private law would also apply in its dealing in the oil and gas market.

**11.** The Argentine Government transformed YPF into a "*sociedad anónima*" (an "SA," which is equivalent to a corporation under U.S. laws) when it made the decision to privatize the company in 1990, a form which it retains today. An SA is a juridical person governed by private law; specifically, an SA is primarily governed by the Argentine Companies Law 19,550 (hereinafter "ACL") with respect to its corporate acts, liability of its shareholders, and internal organization.

**12.** For the first four decades of its existence, YPF's activities were conducted by the Argentine Government using various formats which were governed by public law. Therefore, until 1950*,* YPF was a Governmental agency called *Dirección General de Yacimientos Petrolíferos Fiscales* governed by public law under the supervision of another government agency, *Dirección Nacional de la Energía*.

**13.** On September 30, 1949, Law 13,653 was enacted. It provided for the legal format of State Enterprises ("*Empresas del Estado*"). The aforementioned law clarified that State Enterprises were agencies of the National Administration intended to be the National State's vehicle to carry out activities of a commercial, industrial or public utilities nature. State Enterprises are governed by private law with respect to their specific activities and by public law with respect to their relation with the National State or in connection with the public utility service in charge thereof. State Enterprises are created by specific laws, which then further approve those entities' bylaws.

**14.** As a consequence of having provided for the legal format of State Enterprise, on August 23, 1950 the Executive Branch enacted Decree 17,371/50 whereby *Empresas Nacionales de Energía (E.N.D.E),* hereinafter "ENDE," was created as

a State Enterprise to be a successor of *Dirección General de Yacimientos Petrolíferos Fiscales* and other agencies in charge of the water, electricity and gas public utilities services, respectively.

**15.** ENDE was later further reorganized and *Dirección General de Yacimientos Petrolíferos Fiscales* became *Yacimientos Petrolíferos Fiscales State Enterprise*, which was officially abbreviated "YPF." Decree 15,027 of August 16, 1956 approved YPF's first set of bylaws. Article 3 of those bylaws described the activities to be carried out by YPF, clarifying in Article 4 that YPF had the legal capacity of a private law juridical person with autonomy in the carrying on of its administrative, industrial, commercial and financial government. However, Article 5 of the bylaws provided that in its relationship with the Executive Branch, YPF would act through the Ministry of Commerce and Industry and be governed by public law. YPF's sole member was the National State.

**16.** By Decree 1080/77 of April 19, 1977, YPF was transformed into a State Company ("*Sociedad del Estado*"). Only a government (whether Federal, Provincial or Municipal) may be a shareholder in a State Company.

**17.** The legal format of State Company was created by Law 20,705 of 1974 as a first stage in the deregulation process of activities that the National State wished to be governed by private law in order to gain in operational agility and efficiency. Therefore, the legal format of a State Company has the purpose of making available to companies fully owned by the State a legal format that could give them a much more flexible operational structure in substitution of the regime which applies to State Enterprises.

**18.** A State Company is similar to a corporation ("*Sociedad Anónima*"). But while its capital is represented by shares and though it permits these companies to operate under the framework of private law, a State Company still maintains certain obligations and liabilities proper of a Governmental agency. Thus, a State Company maintains certain aspects that are still governed by public law. Further, Law 20,705 excludes the possibility to have private investors owning its stock capital.

**19.** Specifically, on December 31, 1990, the Argentine Government enacted Decree 2778/90 ("Decree 2778"), which ordered the transformation of *Yacimientos Petrolíferos Fiscales* State Company into YPF Sociedad Anónima. While YPF Sociedad Anónima became fully governed by private law at the time of Decree 2778, it remained 100 % State owned.

**20.** Importantly, the preamble "whereas" clauses of Decree 2778 noted that the Argentine Government adopted the SA legal format in order to enable YPF to continue the exploitation of hydrocarbons in an economic and financially balanced basis, looking forward to a profitable operation and "a public capital structure" that would attract private investors to purchase YPF's stock capital, which would be traded and quoted in public markets and exchanges. Specifically,

paragraph 12 of Decree 2778's preamble  clarified that in transforming YPF into an SA the State wanted to stress the "… nature of a company to be governed by private law, whose initial capital owned by the State would be gradually integrated with private investments."[1]

**21.** Further, Article 7 of Decree 2778 stated that the Argentine Government "would not apply to *YPF Sociedad Anónima* public work laws, accounting laws, laws on administrative procedures and their supplementary norms and regulations nor the administrative legislation that applies to enterprises in which the State has an equity interest."[2] Article 8 further provided that "YPF Sociedad Anónima's contracting procedures shall be governed by norms and principles of private law ensuring the transparency, competitiveness and publicity, with exclusion of any norm which is proper of administrative law or a public law prerogative."[3] Decree 2778 approved the first YPF's bylaws, but it did not include the current text of Articles 7 and 28, which will be discussed herein below.

### 2.  How would you characterize the bylaws of YPF under applicable Argentine law?

**22.** Bylaws are a contract enforceable against both its shareholders (i.e., Argentina and the other shareholders) and the company whose legal framework they constitute (i.e., YPF). Thus, YPF is bound by its bylaws. Its management and shareholders conduct and resolutions of its corporate bodies must be in accordance thereto.[4]

### 3.  What are Argentina's obligations under the bylaws in the circumstances of this case, particularly with regard to the provisions of Article 7 and Article 28?

**23.** Summary: Argentina, as a YPF shareholder, was obligated to comply with the Company's bylaws, including the mandatory tender provisions of Articles 7 and 28. Those Articles plainly required Argentina to make a tender offer to all of YPF's other shareholders if and when Argentina took over or acquired a

---

[1] The relevant portion of the "whereas"clause(12th paragraph) reads: "…*la naturaleza de sociedad regida por el derecho privado cuyo capital inicial del Estado se integrará progresivamente con aportes del sector privado*…"

[2] DECRETO 2778/90, ARTÍCULO 7: "*No le serán aplicables a YPF Sociedad Anónima las leyes de obras públicas, de contabilidad, de procedimientos administrativos y sus normas complementarias y reglamentarias ni legislación y normativa administrativa alguna aplicable a las empresas en que el Estado tenga participación.*"

[3] DECRETO 2778/90, ARTÍCULO 8: "*Los procedimientos de contratación de YPF Sociedad Anónima se regirán por las normas y principios del derecho privado asegurando su transparencia, competencia y publicidad, con exclusión de toda norma propia del derecho administrativo o prerrogativa de derecho público.*"

[4] ARTICLE 1197, CIVIL CODE: "*Las convenciones hechas en los contratos forman para las partes una regla a la cual deben someterse como a la ley misma*". This rule was reaffirmed by the New Code, in Article 959 which reads: "*Todo contrato válidamente celebrado es obligatorio para las partes. Su contenido sólo puede ser modificado o extinguido por acuerdo de partes o en los supuestos en que la ley lo prevé.*"

controlling stake in YPF. Under Argentine law, Argentina's "temporary occupation" of Repsol's majority capital stock holding in YPF enabled the Government to place its own personnel in charge of the board of the company, thereby also to change the company's management. Since under Argentine law the board's acts are deemed the company's acts, Argentina's decision in April 2012 to vest the intervenor by decree with the full powers of the Board placed the Government in complete control of YPF. That seizure of control constituted a takeover under the Articles 7 and 28 of the bylaws and triggered Argentina's obligation to make a tender offer.

**24.** To provide a full answer this question it is necessary to carry out a comprehensive interpretation of Article 7 and 28 of YPF's bylaws in conjunction with the analysis of the legislation governing public companies at the time (Law 17,811 and *Comisión Nacional de Valores* ("CNV")[5] regulations, namely Resolution N° 110/1987), including the legislation described in answering question II.1, which constitutes the background of YPF original creation and its subsequent reorganization during the privatization process.

**25.** Decree 2778 approved YPF's bylaws and ordered the registration of the articles of incorporation and bylaws with the Public Registry of Commerce in charge of the General Inspection of Corporations ("*Inspección General de Justicia*"), same as any other SA organized under the ACL. It is noteworthy that these bylaws (1) were drafted by the Argentine Government as part of the YPF privatization process, and (2) initially did not include the current text of Article 7 nor Article 28, which the Government introduced later in order to induce private party investment in YPF. In fact, in 1990 the legislation governing public companies and investment in stock exchange markets was Law 17,811 and CNV's Resolution N°110/1987, neither of which provided for a mandatory tender offer procedure in the event of a change of control of a public company.[6]

**26.** Law 24,145 of September 24, 1992 approved Decree 2778 and stated that the YPF stock capital would be composed by Class A shares, equivalent to 51% of its stock capital, Class B shares, equivalent to up to 39% of its stock capital to be transferred to the Provinces, Class C shares, equivalent to up to 10% of the stock capital to be transferred to its employees and Class D shares, which would be created upon the time the National State and the Provinces would transfer its Class A or B shares to private investors.

---

[5] The *Comisión Nacional de Valores* is, in Argentina, the equivalent to the US Securities and Exchange Commission.

[6] In fact, the Argentine Government first introduced mandatory tender offer procedures in the event of change of control of public companies by Decree 677/2001 enacted on May 22, 2001. Given the objectives of providing transparency to the Argentine capital market and protecting the public investor, the Executive Branch opted to institute a tender offer mechanism on a mandatory basis that would take place prior to any acquisition that would change the control of a public company.

27. Article 9 of Law 24,145 stipulated that Class D shares would be sold in domestic and/or international stock markets and exchanges for a period of up to 3 years, but as noted above did not contemplate any change of control protection mechanism.

28. The planned privatization of YPF caused Argentina to seek investment bankers' advice in order to foster a successful privatization process. Therefore, not surprisingly Decree 1106/93 enacted on May 31, 1993 ("Decree 1106"), approved a modification to the original bylaws (as approved by Decree 2778) and entrusted to the Ministry of Economy and Public Works and Services (*Ministerio de Economía y Obras y Servicios Públicos*) to propose and cause, by exercising the shareholder rights pertaining to the National State, the amendment and substitution of the then current YPF bylaws by the new text approved by Decree 1106. Further, it authorized the mentioned Ministry to set the volume and conditions for YPF shares to be offered for sale at Domestic and International Exchanges and Markets. The new bylaws text to be approved included an amendment to Article 7 as currently reads and introduced a new Article 35 (which currently is Article 28). **Both Articles 7 and 35 introduced for the first time a tender offer provision applicable in the event of a change of control in YPF**, as described therein.

29. It bears emphasizing that while YPF started to operate as a private law juridical person as from January 1, 1991 (as provided by Decree 2778), until May 31, 1993 YPF's sole shareholder was the Argentine Government, who therefore exercised full decision making power in adopting the change of control protections in Articles 7 and 28. Also, one should note that the change introduced by the Argentine Government to Articles 7 and 28 of YPF's bylaws was designed specifically to attract private investors by providing a unique change of control protection that did not at the time exist as a matter of statute for other public companies.

30. The relevant provisions which I believe should be pointed out in this regard are: (1) Article 7 d) which reads: "**Takeover:** No Company share or security …may be acquired either directly or indirectly, by any means or under any title unless the provisos of paragraphs e) and f) of this Section are complied with whenever, as a result of such acquisition, the acquirer thereof shall turn out to be the owner of, or shall exercise control of shares of the Company …"; (2) Article 7 e) which reads: "**Requisites:** Any person **willing** to carry out a Control Acquisition (hereinafter in this paragraph the "Offeror") **shall:** …(ii) make a public offering to acquire all the shares of all the classes in the Company…"; (3) Article 7 f) "**Public Offering:** Each public offering shall be carried out fully in accordance with the procedure set forth in this paragraph and- to the extent the applicable rules of the jurisdictions in which the said public offering is made and the provisos of stock markets and exchanges in which the referenced shares and securities of the Company are listed shall impose requisites additional to, or stricter than, the requisites herein set forth- such additional or stricter requisites shall be complied with in the exchanges and markets where same are required…" and (4) Article 28 (A): "The provisos of paragraphs e) and f) of Section 7 (save

for provisos of paragraph (B) of this Section)shall apply to acquisitions **directly or indirectly made by the National Government, by any means or title**, of shares or other securities of the Company (1) when as a consequence of such acquisition the National Government **turns out to be the owner of, or acquires control over, shares in the Company which, if aggregated to its prior holdings of any class, shall represent as a whole 49% or more of the capital stock**; …"[7]

**31.** This text makes clear that Articles 7 and 28 do not turn only on formal stock purchases or transfers of title, but also on the more practical measure of control.

**32.** Argentine laws provide for guidance in interpreting laws and contracts. The Argentine Civil Code[8] does not legislate in a comprehensive manner the issue of interpretation of juridical acts and contracts. However, it does contain a general rule which has been deemed as the backbone rule in interpreting contracts. At the time the bylaws were drafted and approved by Decree 1106 and the Extraordinary Shareholders Meeting of YPF, respectively, Article 1198 of the Civil Code was in force. Article 1198 reads: "Contracts shall be entered into, interpreted and performed in good faith and in accordance with what the parties could likely interpret or may have interpreted acting with due foresight and care…"[9] Thus, fundamentally, contracts must be interpreted in good faith.[10] And parties entering into a contract create expectations and a reasonable belief that they will honor their commitments. Further, in interpreting a contract special attention must be paid to the intention of the parties without attacking the meaning of the words used to express their respective will.

**33.** It is important to highlight that the Argentine Government did not incorporate Articles 7 and 28 of the current YPF bylaws at the start-up of YPF's transformation to become a private law juridical person, but rather did so to induce private investors to purchase YPF shares of its stock capital in a successful privatization process.

**34.** Thus, Articles 7 and 28 function to ensure an exit mechanism to those private investors that purchase YPF stock should the Argentine Government wish – at any time in the future – to retake control of YPF.

**35.** Based on the foregoing, the proper interpretation of the bylaws is clear. When the President, Mrs. Fernández de Kirchner and her ministries enacted Decree 530

---

[7] All emphases added.

[8] In force at the time YPF's bylaws were approved with the text of the new Article 7 and 35 (later on renumbered to become 28).

[9] ARTÍCULO 1198, CÓDIGO CIVIL: "*Los contratos deben celebrarse, interpretarse y ejecutarse de buena fe y de acuerdo con lo que verosímilmente las partes entendieron o pudieron entender, obrando con cuidado y previsión…*"

[10] RAYMUNDO M. SALVAT; JOSÉ M. LOPEZ OLACIREGUI, *Tratado de Derecho Civil Argentino,* Parte General, Vol. II, Buenos Aires,Tipográfica Editora Argentina, 1964, p. 270, paragraph F).

appointing Mr. de Vido, intervenor in substitution of YPF's Board members, and assigned to him the powers and capacity to act as the Board of Directors and the Chairman of the Board, Argentina took over YPF´s management decision making power and consummated such takeover by subsequently enacting Law 26,741 (the "Repsol Expropriation Law"). This complete assumption of control constituted an acquisition of "control" that triggered the obligations in Articles 7 and 28 of the Bylaws.

36. Contrary to the suggestion in Mr. Errecondo's declaration, specifically paragraphs 13-16, that the mandatory tender provisions of the by-laws would interfere with the Argentine Government's ability to expropriate the Repsol majority shareholding interest in YPF, in reality the tender provisions of Articles 7 and 28 neither interfere nor prevent the expropriation process. Instead, Articles 7 and 28 apply to a different situation; namely these articles set forth the procedure to follow to give minority shareholders the opportunity to decide whether to sell their shares if they deem a change in control to affect their rights or expectations as YPF shareholders. There is nothing inconsistent about giving both the expropriation and the Bylaws full force.

37. Stated simply, the expropriation procedure runs in parallel with the tender offer procedure specified in the bylaws and serves a diverse purpose, i.e., the expropriation is a mechanism for the Argentine Government to acquire the shares on a mandatory basis from Repsol while the tender offer provides for a mechanism for a voluntary sale of the shares in hands of minority shareholders prior to consummating a change of control event.

38. Articles 57 and 59 of the General Expropriation Law govern what is called temporary occupation ("*ocupación temporaria*"). A temporary occupation is a mechanism provided by the General Expropriation Law stemming out of Article 2512 of the Civil Code which allows the State to use a private property under its own responsibility.[11] In sum, it means taking over effective possession of the assets to be expropriated (in this case, YPF's shares owned by Repsol S.A.).

39. Argentina's decision to exercise the rights granted by Articles 57 and 59 of the General Expropriation Law was not inconsistent with and did not alter whatsoever the YPF bylaws. Indeed, Argentina's decision to exercise those rights constituted its takeover of "control" and *triggered* the obligations in the YPF bylaws. The expropriation procedure would not be prevented nor jeopardized by the fact of putting into effect the tender offer procedure giving the chance to all shareholders to sell their shares in YPF in accordance with the procedure set forth in the bylaws and, where applicable, in Decree 677/2001.

40. In fact, it is clear that the triggering event for the obligations in Articles 7 and 28 was Argentina's decision to carry out the temporary occupation and to thus acquire shares representing the majority of YPF's voting capital stock and thereby

---

[11] JOSÉ R. DROMI, *Manual de Derecho Administrativo*, Buenos Aires, Astrea, 1987, p. 103.

create a change of control. Based on the foregoing, Argentina's obligation under the bylaws in the circumstances of this case, particularly with regard to the provisions of Article 7 and Article 28, was to carry out a tender offer procedure immediately upon having enacted Decree 530. Argentina therefore should have started procedures with the purpose of offering to the shareholders to acquire all the shares of all the classes in the Company and all securities convertible into shares, as provided by Articles 7 and 28 of YPF bylaws.

41. Mr. Errecondo further opines, at paragraph 16 of his report, that the tender offer process would typically take "at least a few months" to complete. However, each tender offer operates according to its own timetable based on its own facts. I further have no reason to believe that Mr. Errecondo's assessment of tender offers under the rules of the CNV, even if accurate, would apply to tender offers conducted under the rules of the U.S. Securities and Exchange Commission and the New York Stock Exchange.

42. Mr. Errecondo also states, at paragraph 8 of his report, that a shareholder has no absolute right under the ACL to the payment of dividends. But in this instance, as demonstrated, Argentina was obligated to make a tender offer under Articles 7 and 28 before exercising the control necessary to change YPF's dividend policy. The withholding of dividends in this case was thus a direct consequence of Argentina's violation of YPF's Bylaws.

### 4. What are YPF's obligations under the bylaws in the circumstances of this case?

43. Although YPF, as the company, is differently situated from Argentina (the acquiror), it too had an obligation to honor the bylaw provisions. As noted, bylaws are binding on the corporation itself. When Argentina appointed its representative Mr. de Vido to replace the YPF Board, Argentina thereby made all of Mr. De Vido's acts or omissions in his role as acting Board of Directors and Chairman attributable to YPF.

44. As a consequence, YPF became liable for damages caused to minority shareholders when it permitted Argentina to vote the shares whose control acquired by virtue of the Decree 530 and the Expropriation Law without first insisting on compliance with the Article 7 and 28 mandatory tender provisions. Stated simply, not following the procedures provided by Articles 7 and 28 was a breach of contract by YPF.

45. Contrary to the suggestion of Dra. Aída Kemelmajer de Carlucci, YPF cannot disclaim responsibility for its failure to insist on compliance with the Article 7 and 28 mandatory tender provisions based on the expropriation constituting a force majeure event. A force majeure event must be unforeseeable and unavoidable so as to impede compliance. Recall that by virtue of Decree 530 Argentina's Minister de Vido substituted the YPF Board, as intervenor, and therefore his acts or omissions in exercising YPF's decisions became the

company's decisions. Hence, YPF cannot contend that the actions of Mr. de Vido in his capacity of intervenor are that actions of a third party that were unforeseeable and unavoidable. Instead, his actions – including specifically his failure to insist that Argentina as shareholder comply with the mandatory tender provisions of the bylaws and the decision to withhold dividends – were the actions of the company, namely YPF. Since he instituted those decisions as the YPF Board, his actions were not those of a third party (they were actions of the Board), and the actions were neither unforeseeable nor unavoidable (they instead were knowing and intentional).

Executed: Bath, England, October 16, 2015

_____

Dr. Alfredo L. Rovira

# EXHIBIT 1



**CURRICULUM VITAE**

# I.    PERSONAL DATA

FULL NAME:              Alfredo L. Rovira

DATE OF BIRTH:         February 7, 1945

MARITAL STATUS:       Married, 5 children

NATIONALITY:           Argentine

Libertad 1535 – Piso 13 (residence)
1016 – Buenos Aires
Argentina

Avenida Callao 1016 – Piso 10 (Office)
1023 – Buenos Aires
Argentina

e-mail: (arovira@roviralaw.com.ar)

Tel: +54 11 4816 - 3232 (office)
       +54 11 4815-3509 (residence)
Cel: +54 911 4416 7517[1]
Cel: 011 15 4416 7517[2]

# II.    EDUCATION

***UNIVERSITY DEGREES and PROFESSIONAL BACKGROUND:***

---

[1] Dialing from abroad Argentina
[2] Dialing in Argentina

- Doctor in Laws (LLD), Universidad de Buenos Aires (*Cum Laude*), November 2003. Recommended to School of Laws Award.

- Lawyer (LLM). Law and Social Sciences School - Universidad de Buenos Aires - Graduated on December 15, 1967.

- Procurador (LLB). Law and Social Sciences School – Universidad de Buenos Aires - Graduated on June 30, 1967.

- Certified Mediator. Universidad Austral Law School –, Buenos Aires, Argentina, 1999.

- Certificates issued at several specialization courses, attended as a post-graduate, at the Law and Social Sciences School, Universidad de Buenos Aires on the subjects of Accountancy and Taxes.

- Member of the permanent Arbitration Panels of the following organizations: Commercial Dispute Resolution Center of the Americas, located in Miami, Florida, United States of America, American Chamber of Commerce in Argentina (AMCHAM); Union Industrial Argentina, Buenos Aires, Argentina; Arbitration Panel of the Arbitration and Mediation Business Center of the City of Buenos Aires; Buenos Aires, Argentina; Arbitration Panel of the Settlement and Arbitration Center of the Argentine-Brazilian Chamber of Commerce, San Pablo, Brazil; Montevideo Stock Exchange, Montevideo, Uruguay. Comité Argentino de Arbitraje Nacional y Transnacional, Buenos Aires (CARAT), Cámara Argentina de Comercio

- Arbitrator appointed by either Plaintiffs and/or Defendants in several domestic and international arbitrations representing domestic and foreign parties or appointed by the Chairman of the Arbitration Court or as third arbitrator by panelists' agreement in arbitration proceedings under the ICC, UNCITRAL, CEMA and CAMARA DE COMERCIO DE LOS ESTADOS UNIDOS EN ARGENTINA (AMCHAM). Chairman of the Arbitration Court in three arbitrations under the UNCITRAL Rules.

- Expert Witness as an expert on Argentine Law in proceedings with the London Court of International Arbitration, London, United Kingdom (2002), International Arbitration on Bilateral Investments Treaty at ICSID, Washington, DC., USA (2006) and with the Vienna International Arbitral Centre  (2014) as well as in litigations conducted in Brazil, the USA and Spain.

- Party's counsel in several international and domestic arbitrations held under ICC, UNCITRAL, CEMA and Bolsa de Comercio de Buenos Aires Rules. Of counsel to parties´s counsel in several international arbitrations held under AAA (American Arbitration Association), ICC and London Court of International Arbitration, London, United Kingdom (2003-2004) involving disputes on political risks coverage claims on

transferability of currency, convertibility of currency, bank´s obligations and loans, concession and privatization contracts.

-   The issues subject to arbitration, in which Dr. Rovira acted as arbitrator in any of the abovementioned capacities were: a) disputes arising from shareholders' agreements and their effect on public transportation concession and stock purchase agreements; b) disputes arising from public works agreements; c) termination of commercial distribution and technology transfer agreements; d) disputes arising from the interpretation of stock purchase agreements of companies organized under Argentine laws. e) dispute in shareholders conflict; and f) breach of contracts and dispute on contract terminations and other contractual disputes.

-   Places of arbitration: Buenos Aires, Argentina, New York, Miami and Washington DC, United States of America.

-   Language of the arbitration proceeding: Spanish and English.

-   Practice: Legal counsel to local and foreign companies in Argentina.

From 1968-1970 practiced as solo practitioner.

From May, 1970 through May 2013 joined Brons & Salas, Attorneys at Law, with principal offices in Buenos Aires, and associated offices in Cordoba, Province of Cordoba and Rosario, Province of Santa Fe. Dr. Rovira Chaired the Corporate Department and after his appointment as Managing Partner of the firm he Chaired the Arbitration Department and also co-chaired the Corporate Department of the firm until May 2013 when Dr. Rovira retired as partner of Brons & Salas. Currently he retains a position as "of counsel" to the firm on a non exclusive basis since from his own firm, Estudio ROVIRA, he also acts as consultant to other law firms and in-house legal departments while acting as legal consultant and negotiator in complex contracts and litigates in complex contract and shareholders disputes, arbitration and provides expert witness opinions.

-   Dr. Rovira served as a member of the Board of Directors of HB Fuller Co., from 2003 through July 2013. HB Fuller Co. is a specialty Chemicals company, with headquarters in St. Paul, MN., USA which quotes its stock in the NYSE. As board member he acted in both the Corporate Governance and Nominating Committee as well as in the Audit Committee.

-   Dr. Rovira´s area of specialization is Business Law with emphasis  in Commercial Laws (Corporate and Contract Law as well as Insolvency and Creditors´Rights). At his own firm he devotes to legal consulting to law firms and as legal consultant to in-house Legal Departments handling the role as consultant for the drafting of complex contract arrangements and litigations concerning contracts and shareholders disputes. He is now mainly devoted to arbitrations and acting as expert

witness on Argentine legal issues involving procedural aspects in arbitrations and litigations, corporate, insolvency and contract matters.

Areas of Practice: Business Law, with emphasis on Contract Laws, Corporate Law and Insolvency and Creditors´ rights. Litigator in disputes involving the above mentioned subject matters.

## III.    ACADEMIC BACKGROUND

-    Member of the Business Law Institute of the National Law Academy (Academia Nacional de Derecho y Ciencias Sociales), Buenos Aires, Argentina (tenure valid June 27, 2013/2016).

-    Correspondent Member of the Bussiness Law Institute of the School of Laws of Universidad de la República, Montevideo, Uruguay (as of May 30, 2013).

-    Consultant Professor (Profesor Titular Consulto) by appointment of the High Council of the National University of Buenos Aires (Res. C.S. 5965 del 19/12/12) and by Res. 8043 del 4/3/2013 of the School of Laws of such University, with tenure valid until 18 December 2019. Chair Professor of Business Laws (Profesor Titular) in charge of the subjects "Elementos de Derecho Comercial" (Commercial Law Elements), of "Sociedades Civiles y Comerciales" (Corporate Law) and "Títulos de Crédito y Concursos" (Commercial Papers and Insolvency Law) (appointed by Universidad de Buenos Aires Council's Resolution No. 830/06 dated October 9, 2006 with appointment valid through 2013, extended until substitute Chair Professor is nominated), School of Law, National University of Buenos Aires, Argentina. Formerly  appointed Interim Chair Professor in the same Chapter by School of Laws Council's Resolution 16627/2000. Professor of Corporate and Contract Law at Postgraduate and Master in Law Programs of the School of Law, University of Buenos Aires.

-    Professor of Corporate Law at the Argentine Catholic University, Buenos Aires, Argentina, Master in Business Law Program (2008- present)

-    Adjunct Professor of Business Law (appointed by Resolution No 1503/2003) of the Departamento de Derecho Económico y Empresarial (Corporate and Business Law Department) of Universidad de Buenos Aires, Law School, Buenos Aires, July 23, 2003, valid through 2010, after serving as assistant professor in different capacities at the Universidad de Buenos Aires, School of laws, since 1968 when he was admitted as assistant faculty member of the Business Law Department by award in public contest.

-    Visiting Professor, Universidad Notarial Argentina, Buenos Aires (2001-2010).

- Visiting Professor "Universidad Católica Argentina", Postgraduate Course in Corporate Law (1993-present). MBA in Corporate Law (2007 – present).

- Visiting Professor of Corporate Law at the Program for Master on Business Law of the Universidad Austral, Rosario Branch, Province of Santa Fe, Argentina (1999-present).

- Visiting Professor, Universidad Siglo XXI, Córdoba, Province of Córdoba, Argentina - Program to Master in Business Law (1998-2000).

- Associate Professor (appointed by Resolution of the Qualifying Examination Board) of Civil and Commercial Companies and Business Law, at the Law and Social Sciences School, Universidad de Buenos Aires (1989-1992). Tenure in office up to 1998.

- Professor of Corporate Law- Master in Business Law Program and Postgraduate Courses, Universidad Austral (1992-2009).

- Member of the Academic Council - Master in Business Law Program at Universidad Austral (1992-2006).

- Associate Professor of Business Law I, Commercial and Civil Companies and Commercial and Civil Contracts at the Law and Social Sciences School, Universidad de Buenos Aires, Corporate Law Department (1992-1999).

- Visiting Professor at the "Universidad Argentina de la Empresa", Institute of Economic Studies and Research (1985- 1990)

- Adjunct Professor of Business Law I, (appointed by Resolution of the Qualifying Examination Board) of the Law Department of the Business Sciences School, Universidad de Buenos Aires (1983-1990).

- Professor of Commercial and Civil Companies, Law School, Universidad de Belgrano (1973-1976).

- Adjunct Professor of Private Law I, Business Sciences School, Universidad de Morón (1970-1975).


# IV.   ARBITRATION EXPERIENCE

- Arbitrations under UNCITRAL, BOLSA DE COMERCIO DE BS. AS., and International Chamber of Commerce acting as arbitrator or as counsel to the parties in arbitration. Chairman of the Arbitration Panel under arbitrations procedures conducted under UNCITRAL and (American Chamber of Commerce in Argentina) rules.

- Expert witness in arbitration procedures under LONDON COURT OF ARBITRATION, United Nations Commission on International Trade Law. (CIADI) and Vienna International Arbitral Centre and Argentine legal counsel to US counsel in arbitration proceedings under American Arbitration Association rules

## V.     BOOKS PUBLISHED

- "Pactos de Socios" (Shareholders Agreements), Astrea, Buenos Aires, Argentina, Mayo 2006.

- "Sociedades Extranjeras - Análisis del Régimen Legal Argentino" (Foreign Companies – Analysis of the Argentine Legal System) - Ed. Abeledo Perrot - Buenos Aires - Argentina 1985.

- Co-author of "Cuadernos de Derecho Societario": Vol. I (1973), Vol. II (1974), Vol. III, 1st and 2nd edition (1975) and 3rd edition corrected (1983), and Vol. IV (1976). Ed. Abeledo Perrot - Buenos Aires, Argentina.(Treaty on the Argentine Companies Law).

- "Enforcement of Money Judgments Abroad", author of  Chapter I: Argentina, Editor: Philip R. Weems - Matthew Bender – United Status of America- 1988 (it is annually reprinted and updated ).

- Co-author of "Bank Security and Other Credit Enhancement Methods" - Chapter I: Argentina, Editors: Winnibald E. Moojen/Matthieu Ph. van Sint Truiden, Kluwer Law International – The Netherlands - 1995.

- Author of the Chapter "La denominación social - El nombre comercial y el social: su distinción" (The corporate name – The trade name and the corporate name, their differences), in "Derecho Empresario Actual", Published by Universidad Austral in the honor of Dr. Raymundo L. Fernández, Ed. Depalma, 1996.

- "Temas de Derecho Comercial Moderno", published in the honor of Dr. Fernando Legón, Author of the Chapter "Abusiva utilización de las formas y mecanismos societarios como fundamento para declarar su ilegitimidad" (Abusive use of the corporate form as a background to declare its illegality), Depalma, Bs. As., August 1998.

- Co-author of the Chapter II in the book  "Insolvency & Restructuring 2000", co-authored with Dra. Mariana Sierra, Published by Law Business Research Ltd., Publishing House, UK, September 1999 (it is annually reprinted and updated ).

- "Estudios sobre el Directorio de las Sociedades Anónimas" (Studies on the Board of Directors of Corporations), published in the honor of Dr. Carlos S.

Odriozola. Author of the Chapter "La Remuneración de los Directores" (Board of Directors remunerations), Ad Hoc, Bs. As., November, 1999.

- Editor of "Doing Business in Argentina" and author of the Chapters "Foreign Investment and Transfer of Technology" y "Intellectual Property Protection", published by the American Bar Association, Section of International Law and Practice, United States of America, 2000.

- Author of the Prologue of the Book "La compraventa de acciones y sus garantías" (Stock Purchase and its warranties), Pilar M. Rodríguez Acquarone, Published by Abaco de Rodolfo de Palma. Buenos Aires, April, 2001.

- "Derechos Patrimoniales", in the honor of Professor Dr. Efraín Hugo Richard. Author of the Chapter "La licitud de los pactos de sindicación de votos: su valoración" (The illegality of shareholders voting agreements, how to deal with them), Editor Laura Filippi et al, Ad-Hoc, Buenos Aires, August 2001.

- Co-author, "Collier International Business Insolvency Guide", Chapter 13: Argentina Reorganizations and Bankruptcies, LexisNexis, United States of America, August 2002.

- "Security Interests under Argentine Law", Co-author Chapter I: Argentina, editors: Ian M. Fletcher and Odd Swarting (co-authored with Alejandro Lubinski and Gonzalo Rovira), published by Kluwer Law International, London, UK, November 2002.

- "Attachement of Assets", Vol. 1, author of Chapter Argentina, Editor Lawrence W. Newman, Juris Publishing, 2001.

- Editor of "Empresa en crisis" (Enterprises in Crisis) and author of the Chapter "Responsabilidad por insolvencia y capital social" (Liability due to insolvency and lack of corporate capital). Published by Astrea, Buenos Aires, Argentina, August 2005.

- "Antitrust Year in Review", Chapter for Argentina with the collaboration of María José Rodríguez Macías and Federico Valcarce, American Bar Association, Section of International Law & Practice. March 2005-2010.

- "Tratado de la Empresa" (Treaty on the Enterprise), author of the Chapter "La Empresa en la Concepción Moderna de los Contratos" (The Enterprise under the modern notion of contracts), in Vol. II, Editor Ana I. Piaggi, Abeledo Perrot, Buenos Aires, Argentina, 2010.

- "Tratado de Conflictos Societarios" (Treaty on Shareholders Disputes"). Author of the Chapters on "Information Rights under the Argentine Corporate Law", Vol. II, Editor, Diego A.J. Duprat, Abeledo Perrot, Buenos Aires, Argentina, 2013.

- "25 años de la ley de sociedades comerciales. Necesidad de su reforma" (25 years of the companies act (Uruguay). Need to amend it). Book in the honor of Prof. Dr. Siegbert Rippe. Author of the Chapter "Las nulidades de los actos sociales y su proyección en la doctrina de la apariencia jurídica" ("The nullity of corporate acts and its impact under the theory of juridical appearance"). Editors Dra. Eva Holz – Dra. Rosa Poziomek, Fundación para el Apoyo a la Facultad de Ciencias Económicas y de Administración, Universidad de la República, Montevideo, República O. del Uruguay, Montevideo, September, 2014.

## VI.   PAPERS AND LEGAL ARTICLES PUBLISHED:

- "Los vicios en la constitución de una sociedad en comandita por acciones y su régimen de saneamiento" ("Defects in the Organization of Stock-issuing Partnerships and How to Cure Them) jointly with Mr. C.J. Sala, in "Revista del Derecho Comercial y de las Obligaciones", Year 4, October 1971, No. 23, Buenos Aires, Argentina.

- "Reflexiones acerca del régimen de las sociedades extranjeras que actúan en la República" ("Thoughts on the System Governing Foreign Companies Doing Business in Argentina"), in "Revista La Ley", 06.24.74, Volume 155, p. 983, Buenos Aires, Argentina.

- "Contrato de Leasing o Locación Financiera. Necesidad de Legislarlo" ("Leasing Agreements. Need for their Regulation"), in "Revista Jurisprudencia Argentina", Volume IV, p. 633 (1976), Buenos Aires, Argentina.

- "Sociedades constituidas en el extranjero. Participación en sociedades argentinas" ("Corporations Organized Abroad. Equity interest in Argentine Companies"), in "Revista La Información", Nº 4, April 1977, Nº 568, Volume XXXV, p. 677, Buenos Aires, Argentina.

- "Reuniones del Directorio de las Sociedades Anónimas. Características y lugar de celebración" ("Board Meetings of Corporations. Features and Place of Meeting"), in "Revista La Información", August 1977, No. 572, Volume XXXVI, p. 311, Buenos Aires, Argentina.

- "Las sociedades en formación. Su régimen jurídico y la inscripción preventiva" ("Companies in the process of organization. Legal System and Preventive Registration"), in "Revista La Información", October 1977, Nº 574, Volume XXXVI, p. 629, Buenos Aires, Argentina.

- "Límites a la participación de sociedades en otras", ("Limitation on equity interests held by Companies in other Companies") in "Revista La Información", June 1978, Nº 582, Volume XXXVII, p. 981.

- "El artículo 123 de la Ley 19.550. Una polémica concluida en torno de su alcance" ("Section 123, Law No. 19.550, divergent opinions on its scope settled"), jointly with Mr. Enrique Zaldívar, in "Revista del Derecho Comercial y de las Obligaciones", Year 12, 1979, p. 731, Buenos Aires, Argentina.

- "El derecho al reparto anual de utilidades y su protección" ("The right to the annual profit distribution and protection thereof"), in "Revista El Derecho", 1980, Volume 89, p. 468, Buenos Aires, Argentina.

- "La falta de resoluciones sociales como causal estatutaria de disolución" ("Lack of Corporate Decisions as Grounds for Dissolution), in "Revista La Información", February 1980, Nº 602, Volume XLI, p. 309, Buenos Aires, Argentina.

- "Los artículos 30, 31, 32 y 33 de la ley de sociedades comerciales y su aplicación a las sociedades constituídas en el extranjero", ("Sections 30, 31, 32 and 33 of the Company Law and their Application to Foreign Companies"), in "Revista del Derecho Comercial y de las Obligaciones", Year 15, 1982, p. 581, Buenos Aires, Argentina.

- "Apuntes sobre la valuación de los bienes de uso y la responsabilidad del directorio y la sindicatura" ("Notes on the Appraisal of Fixed Assets and Liability of the Board of Directors and Syndics"), in "Revista La Información", March 1984, Nº 651, Volume XLIX, p. 589, Buenos Aires, Argentina.

- "Los efectos de la falta de reinscripción de la prenda con registro frente al concurso o quiebra del deudor", ("Effects of the failure to re-register chattel mortgages in cases of debtors' insolvency or bankruptcy proceedings"), in "Revista La Ley", 1985, Volume D, page 1211, Buenos Aires, Argentina.

- "Legal Remedies for Minority Shareholders to Challenge Stockholders' Meetings and Board of Directors' resolutions. The scenario from the standpoint of Argentine Law". Paper submitted before Committee G for its consideration. International Bar Association, October 20-25. Berlin, Germany.

- "Introducción a la Ley de Defensa de la Competencia" ("Introduction to the Antitrust Law"), in "Revista El Derecho", Buenos Aires, Argentina. July 11, 2001.

- "Justicia y Medios de Comunicación" (Justice and Media), La Hoja, Buenos Aires City Bar Association Bulletin, Year 6, No. 86, Buenos Aires, Argentina. October, 2002.

- "Panorama actual del Derecho Comercial" (Current Panorama on Commercial Law) in Revista del Colegio de Abogados de la Ciudad de Buenos Aires, Vol. 63, Nº 2, Buenos Aires, Argentina. December, 2003.

- "El concepto de establecimiento como nexo relevante para determinar los recaudos a exigir a las sociedades extranjeras que pretenden actuar en la República"

(The notion of establishment as a link to determine the requisites to be demanded to foreign companies which intend to act in the Republic), Lexis Nexis, SJA, 2004-III, Special Edition, page 111, Buenos Aires, Argentina.

- "Responsabilidad del directorio por la gestión empresaria" (Board of Director's liability for business management), Revista La Ley, Buenos Aires, Argentina. September 2005.

- "Getting the Deal Through-Corporate Governance 2006-Argentina" in co-authorship with Juan Felipe Arlia Goyeneche. Published by Law Business Research Ltd., London, United Kingdom. March 2006.

- "Pautas para la interpretación del contrato de franquicia" (Guidelines to interpret Franchise Agreements), in Revista del Derecho Comercial y de las Obligaciones, No. 219, Lexis Nexis, Buenos Aires, Argentina. August 2006.

- "El proyecto de reforma a la Ley de Defensa del Consumidor: un obstáculo al desarrollo económico" (The draft amendment to the Consumer Protection Law: an obstacle to economic development), Jurisprudencia Argentina, Ed. Lexis Nexis, JA 2007-I, fascículo n. 12. Marzo 21, 2007.

- "Panorama del derecho societario argentino actual" (Panorama on current Argentine corporate law), in Revista de Derecho Comercial, del Consumidor y de la Empresa, Año I, N°1, September 2010.

- "Contratos de comercialización. Su problemática en la interpretación de las cláusulas abusivas" (Marketing Contracts. Major Issues in the Interpretation of Abusive Clauses), published in Revista de los Contratos, los Consumidores y Derecho de la Competencia, Legis Publishing House, Year 2, 2011, No. 2, p. 3.

- "Los criterios que inspiran los contratos modernos en el proyecto de Código Civil y Comercial de la Nación" ("Criteria which inspire modern contracts in the proponed new Federal Civil and Commercial Code") Revista "Pensar en Derecho", N° 0, Año 1, Eudeba, Facultad de Derecho, Universidad de Buenos Aires, Bs. As., September 2012 (1rst Edition)

- "Contratos de Comercialización. Problemática actual de su interpretación en el derecho argentino y aplicación práctica" ("Commercialization Agreements. Problems arising in their interpretation under Argentine law and its application in practice"), Revista de Derecho Comercial. Tercera Epoca. Nro. 5, 2012, pág. 191. Instituto de Derecho Comercial. Facultad de Derecho – Universidad de la República (Uruguay)-Ed. Fundación de Cultura Universitaria. Noviembre 2012.

- "Los Contratos de Distribución y Concesión en la Jurisprudencia y el Proyecto de Código Civil y Comercial Unificado (Distribution and Dealers Agreements in Jurisprudence and the Draft Bill of Unified Civil and Commercial Code), in Revista de

Derecho Comercial y de las Obligaciones (RDCO), N°265 (March-April, 2014), p. 323

- "Tratativas preliminares al contrato y ruptura en el nuevo código" ("Precontractual dealings and its breach in the new Code"), in La Ley, LXXIX, Nº 97, 28th May, 2015, pp. 1-4.

- "Contrato de Factoring (o Factoraje) en el nuevo Código Civil y Comercial de la Nación", in elDial DC1F20 (June 9, 2015).


Other publications on issues referred to Business Law, Contract and Corporate Law in:

- "Multinational Employer"

- "International Business Lawyer"

- Articles published containing excerpts from papers presented at:

- Corporate Law Congresses

- International Bar Association Conferences

- (see list of publications and papers presented at those Conferences).


## VII.   OTHER PROFESSIONAL BACKGROUND

- Vice Chair of the Advisory Council of the Corporate Governance Committee, Business Law Section, American Bar Association (2014-2016)

- Co-Vice Chair of the Committee on "Corporate Governance", Business Law Section, American Bar Association (2011-2014).

- Vice-Chair of the International Securities and Capital Markets Committee, American Bar Association, Section of International Law (2005-2008).

- Recognized as a prominent lawyer in the fields of Corporate Governance, Insolvency & Restructuring and Merger & Acquisitions by Who´s Who Legal (The International Who´s Who of Business Lawyers, 2007 through 2012 Editions, Law Business Research Ltd., London)

- Chairman of the Commercial Law Committee of the Colegio de Abogados de la Ciudad de Buenos Aires (2004-2005).

- Regular attendant at the conferences organized by the Business Law Section and International Section of Law and Practice of the American Bar Association.

- Member of the Advisory Council in Revista Jurídica "Foro de Córdoba", Business Law Supplement, Advocatus Publishing House, Córdoba, Province of Córdoba, Argentina (2004).

- Member of the Latin America Law Initiative Council Advisory Council of the American Bar Association (2003-2006).

- Vice-Chair, Insolvency and Creditors' Rights Committee, Section of Business Law, Committee J, International Bar Association (2002-2004).

- Chair of the Inter-American Law Committee, American Bar Association, Section of International Law and Practice (2002-2003).

- Board Member of the Colegio de Abogados de la Ciudad de Buenos Aires (March 2001-March 2004)

- Advisory role (pro bono) by invitation of the Secretary of Finance, Ministry of Economy, in the drafting of Decree 677/2001 of "Transparency in Capital Markets" (Régimen de Transparencia de la Oferta Pública).

- Member of the Honorary Advisory Council on Antitrust Matters of the Cámara de Sociedades Anónimas (2000-present).

- Vice Chairman of the Current, Legal and Statutory Developments Sub Committee - Committee J: Insolvency and Creditors Rights - International Bar Association - Section on Business Law (2000-2002).

- Co-chair of the Inter-American Law Committee of the American Bar Association, Section of International Law and Practice (2000-2001).

- Coordinating member for Argentina of the American Bar Association, Section of International Law and Practice, American Bar Association (1995-1999).

- Representative of Foreign Lawyers on the American Bar Association Council, Section of International Law and Practice (1996-1997).

- Coordinating member for Argentina on the Sub-committee of Publications and Development - Committee J: Insolvency and Creditors Rights - International Bar Association - Section on Business Law (1993-1999).

- Member of the Board of Directors of the American Chamber of Commerce in Argentina (1992-present).

- Member of the Honorary Advisory Council of Legal Affairs of the Cámara de Sociedades Anónimas (1991-present).

- Member of the Committee created by Decree # 958/91 dated May 21, 1991 to submit a Bill to the National Executive Branch drafting a Law for Alternative Dispute Resolution Procedures - General Arbitration Law for Civil and Commercial disputes.

- President of the Tax and Legal Affairs Committee of the United States Chamber of Commerce in the Argentine Republic (1988-present).

- President of the Subcomittee "International Developments in Corporate Governance", Business Law Section, American Bar Association (2009-2010).

- Chair of the International Developments on Corporate Governance Sub-Committee, Corporate Governance Committee, Business Law Section, American Bar Association (2008-2010)

- Member of the Commercial Law Committee of the Colegio de Abogados de la Ciudad de Buenos Aires (2007- present).

- Co-Vice Chair of the International Litigation Subcommittee of the Business and Corporate Litigation Committee of the American Bar Association, Business Law Section (2013-2016)

- Jury Member (alternate) appointed by Resolution N°196/14 (Oct. 16, 2104) for the appointment of the judge to fill the vacancy at the First Instance Federal Court N° 1, Bahia Blanca, Province of Buenos Aires, Argentina in representation of the Faculty members of National Universities with general practice background.


## VIII. MEMBERSHIPS

- Buenos Aires Bar Association.

- City of Buenos Aires Bar Association.

- Argentine Association of Comparative Law.

- Chamber of Corporations (Cámara de Sociedades Anónimas).

- International Bar Association (member of the Business Law Committee).

- American Bar Association (member of the International Section of Law and Practice and the Business Law Section).

- The Fellows of the American Bar Foundation.

- San Pablo's Argentine-Brazilian Chamber of Commerce. Mediation and Arbitration Center.

- Comité Argentino de Arbitraje Nacional y Transnacional.

## IX.  LANGUAGES

- English (oral and written).

- French (reading and oral).

- Portuguese (reading and oral).

- Italian (reading and oral).

# EXHIBIT 2

# EXHIBIT 2

## DOCUMENTS RECEIVED AND REVIEWED

1. Complaint filed by Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U.

2. Related Case Statement

3. Rule 7.1 Disclosure Statement of Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U.

4. Republic of Argentina's Memorandum of Law in support of its motion to dismiss.

5. Defendant YPF S.A.'s Memorandum of Law in support of its motion to dismiss.

6. YPF Sociedad Anónima's Bylaws obtained from http://www.sec.gov/Archives/edgar/data/904851/000119312506147059/dex12.htm, 11/07/2014.

7. Declaration of Foreign Law of Ernesto Alberto Marcer in support of YPF S.A.'s motion to dismiss the Complaint.

8. Declaration of Javier Errecondo in support of motion to dismiss plaintiffs' complaint.

9. Declaration of Ismael Mata.

10. Declaration of Argentine Law of Aida Kemelmajer de Carlucci in support of YPFS.A.'s motion to dismiss the complaint.

11. Declaration of Carlos Gustavo Pistarini in support of the Argentine Reupublic´s motion to dismiss the complaint in connection with Repsol YPF, S.A. and Texas Yale Capital Corp., individually and on behalf of all others similarly situated, Plaintiff against The Republic of Argentina, Defendant. Case 12 Civ. 3877 (TPG).

12. Declaration of Javier Errecondo in support of motion to dismiss Plaintiffs' complaint in Repsol YPF, S.A. and Texas Yale Capital Corp., individually and on behalf of all others similarly situated, Plaintiff, against Republic of Argentina, Defendant. Case 12 Civ. 3877 (TPG).

13. Declaration of Martín Arecha in support of the Argentine Republic's motion to dismiss complaint in Repsol YPF, S.A. and Texas Yale Capital Corp., individually and on behalf of all others similarly situated, Plaintiff, against Republic of Argentina, Defendant. Case 12 Civ. 3877 (TPG).

14. Response Statement of Martín Arecha in support of the Argentine Republic's motion to dismiss the complaint in Repsol YPF, S.A. and Texas Yale Capital Corp., personally and on behalf of similarly placed parties, Plaintiffs, against The Argentine Republic, Defendant. Case 12 Civ. 3877 (TPG).

15. Share Purchase Agreement between Repsol YPF, S.A., Repsol Exploración, S.A., Caveant, S.A., Repsol YPF Capital, S.L. and Petersen Energía S.A.

**16.** Assignment of Right to Dividends Agreement between Repsol YPF, S.A., Petersen Energía S.A. and YPF S.A., Madrid, 21 February 2008.

**17.** Shareholders' Agreement between Repsol YPF, S.A., Repsol Exploración, S.A., Caveant, S.A., Repsol YPF Capital, S.L. and Petersen Energía S.A., Madrid, 21 February 2008.

**18.** First Option to Purchase Shares Agreement between Grupo Repsol and Enrique Eskenazi, Sebastián Eskenazi, Matías Eskenazi Storey, Ezequiel Eskenazi Storey, Madrid, 21 February 2008.

**19.** Second Option to Purchase Agreement between Grupo Repsol and Enrique Eskenazi, Sebastián Eskenazi, Matías Eskenazi Storey, Ezequiel Eskenazi Storey, Madrid, 21 February 2008.

**20.** Registration Rights Agreement among YPF Sociedad Anónima, Repsol YPF, S.A., Petersen Energía S.A. and Enrique Eskenazi, Sebastián Eskenazi, Matías Eskenazi Storey, Ezequiel Eskenazi Storey, 21 February 2008.

**21.** Intercreditor Agreement between Repsol YPF, S.A. and Credit Suisse International, Goldman Sachs International Bank, BNP Paribas, Banco Itaú Europa, S.A., Sucursal Financeira Exterior and Petersen Energía, S.A. and Credit Suisse, London Branch, HSBC Bank and Petersen Energía PTY, LTD.