UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETERSEN ENERGÍA INVERSORA, S.A.U. AND PETERSEN ENERGÍA, S.A.U.,

Plaintiffs,

- against -

ARGENTINE REPUBLIC AND YPF, S.A.,

Defendants.

No. 15 Civ. 2739 (TPG)

# DECLARATION BY JAVIER GARCÍA MARRERO

1. Pursuant to 28 U.S.C. § 1746, I, Javier García Marrero, hereby DECLARE as follows:

2. I am making this declaration to provide the Court with a general context under Spanish Law on whether the Receiver (the "**Receiver**")—insofar as the debtors' powers of administration and disposition had been suspended—needed a court authorization to submit, on behalf of Petersen Energía, S.A.U. ("**PESA**") and Petersen Energía Inversora, S.A.U. ("**PEISA**"), the claim against the Argentine Republic and YPF S.A.

3. After a brief introduction describing my professional background, this declaration will be structured as follows:

4. I will review: (i) whether the Receiver, with the debtors' powers having been suspended, needs a court authorization to submit non-personal claims on behalf of the debtors; (ii) the purpose of the liquidation plan and whether possible claims against third parties constitute liquidation activities that must be included in the liquidation plan; and (iii) whether the supplementary regulations set forth in Section 149 of Law No. 22/2003 of July 19, 2003, on Bankruptcy (the "**Bankruptcy Act**") require a court authorization for the Receiver to file non-personal claims.

5. The opinions and conclusions in this declaration are based on my legal training, my knowledge and experience, and the review of the relevant documents and

Spanish laws, including the Bankruptcy Act, applicable to this case. These are the sources on which any Spanish Law expert should rely to conduct an analysis and render an opinion such as the one I have been entrusted with.

6. None of the assertions contained herein may be interpreted as a legal opinion under any legal system other than Spanish law.

## I. Professional background

7. Since June 2014, I have served as Counsel of the Litigation and Arbitration Department of Spanish law firm Pérez-Llorca, in Madrid, Spain. I have acted as legal counsel in over 20 bankruptcy proceedings, mainly serving as advisor to financial creditors, although I have also provided legal assistance to debtor companies.

8. From 1999 until June 2014, I served as Judge, and the last court where I served (for 7 years) was the Court in Commercial Matters in and for Madrid, which hears bankruptcy proceedings; during that time, I presided over 700 bankruptcy proceedings.

9. I have ample experience teaching bankruptcy law as Professor of several Master's degree courses on the subject organized by the following universities: UNED (*Universidad Nacional de Educación a Distancia*), *Universidad CEU San Pablo*, the study and research center of the Madrid Bar Association (ICAM, for its Spanish acronym), Master's Degree on Access to Legal Practice at *Instituto de Empresa*; co-director of the bankruptcy law seminar of *Instituto de Empresa*'s Law School Executive Education; Academic Director of the National Congress on Bankruptcy Law organized by *Instituto de Empresa*'s Law School Executive Education.

10. I was also a speaker at several courses, seminars, and conferences on bankruptcy law organized by, among others, the General Council of the Judiciary of Spain, several Spanish universities (such as the Universities of Valencia, Burgos, Madrid, Castellón, etc.), *Instituto de Empresa* of Spain, Spanish bar associations and associations of economists, business professionals, and auditors.

11. My full *curriculum vitae* is attached hereto as Exhibit 1.

## II. Reviewed documents

12. In order to prepare this legal opinion, I have had access to the following documents:

(i) Report prepared by Raúl Bercovitz and submitted by YPF S.A. to the US District Court for the Southern District of New York and its exhibit (liquidation plan prepared by the Receiver and submitted in bankruptcy proceedings 405/12).

(ii) The orders issued on September 2, 2014, by Court in Commercial Matters No. 3 in and for Madrid, in bankruptcy proceedings 405/12 and 523/12, each of them opening the liquidation phase.

(iii) The orders issued on November 24, 2014, by Court in Commercial Matters No. 3 in and for Madrid, in bankruptcy proceedings 405/12 and 523/12, each of them approving the pertaining liquidation plan.

(iv) Claim lodged by debtors PESA and PEISA against YPF S.A. and the Argentine Republic with the US District Court for the Southern District of New York.

**III. Analysis**

    **A.    The Receiver does not need a court authorization to file financial claims.**

13. The commencement of legal actions by the debtor after the opening of the bankruptcy proceedings is regulated by Section 54 of the Bankruptcy Act.[1] Under the Bankruptcy Act, the Receiver of PESA and PEISA did not need a court authorization to file a claim against the Argentine Republic and YPF S.A.

14. In the case of non-personal actions (*i.e.*, those that exceed the scope of *in personam* claims and are, therefore, financial in nature),[2] such as the claim filed with the Court for the Southern District of New York, plaintiff's standing to sue is subject to the limitations on the debtor's powers of administration or disposition.

---

[1] Section 54 of the Bankruptcy Act: "*Filing of claims by the debtor.*

*1. In the event of a suspension of the debtor's powers of administration and disposition, the Receiver shall have standing to bring non-personal claims. To lodge all other claims, the debtor shall personally appear in court and require the Receiver's consent to file claims or appeals, acquiesce to, settle, or abandon claims when the litigation may financially affect its estate.*

*2. In the event of an intervention, the debtor shall remain able to act in legal proceedings, but the Receiver's consent shall be necessary to file claims or appeals that may financially affect debtor's estate. Should the Receiver deem it in the best interests of the bankruptcy proceedings to file a claim and the debtor refuses to bring it, the court presiding over the bankruptcy proceedings may authorize the filing of such claim.*"

[2] Legal scholars have accepted that non-personal claims are of a financial nature. *See* Mairata Laviña J, in *Comentarios a la Legislación Concursal*, AAVV, Pulgar-Alonso-Alonso-Alcover (dirs.) Dykinson, 2004, Section 54, page 693. De Angel Yáguez, R, in the comment to Section 54, *Tratado Práctico Concursal*, AAVV, Prendes Carril (dir.), Aranzadi, 2009, Vol. II, page 352.

In the case of an <u>intervention</u> of powers,[3] it is the debtor that has to file those actions, albeit with the Receiver's consent. However, in the case of a <u>suspension</u>[4] of powers, the main standing to sue pertains to the Receiver, who has the right to file the claim.

15. During a suspension of powers, the Receiver's power to act is absolute, meaning that, throughout the proceedings, the Receiver has control and disposal powers over the subject matter of the proceedings without the need of the presiding judge's intervention. Therefore, the Receiver does not need a court authorization to sue, settle with the defendants, or even abandon the claim, as set forth in Section 54 of the Bankruptcy Act (which is also applicable during the liquidation phase, pursuant to Section 147 of the Bankruptcy Act). Legal scholars agree that, in the case of a suspension of powers, the Receiver does not need a court authorization to file, settle, or abandon financial claims.[5]

16. This stance has also been adopted in previous case law, although court rulings on this matter are scarce given the clarity of this legal tenet. In this respect, for instance, the Ruling by the Provincial Court in and for León, Division 1, dated June 11, 2012 (JUR 2012\250535), follows this line of thought, pointing out that, since the debtor was subject to a suspension of powers because the bankruptcy proceeding it was involved in was in the liquidation phase (Section 145.1 of the Bankruptcy Act), it was the Receiver that had standing to institute non-personal claims (Section 54.1 of the Bankruptcy Act). Likewise, the Ruling by the Provincial Court in and for Zamora, dated June 17, 2013 (JUR 2013\250281), stated that, in the event of a suspension of the debtor's powers, the Receiver does not need a court authorization to bring claims because Section 54.1 of the Bankruptcy Act does not set forth this requirement.

17. In the case of PESA and PEISA, the powers of administration and disposition were suspended before the claim was filed in New York. As a result, under the Bankruptcy Act, the Receiver had full powers to commence the proceedings and needed no court authorization whatsoever.

18. Even if the debtor's powers had not been suspended yet,[6] the suspension of powers is automatically ordered at the outset of the liquidation phase. In this

---

[3] The intervention of powers means that any act by the debtor has to be authorized by the Receiver before or after the relevant act or contract is made.

[4] The suspension of powers means that the Receiver will act in the debtor's stead.

[5] Bellido Panadés (*Comentarios de la Ley Concursal*, Rojo-Beltrán (dirs.), Civitas, 2004); De Angel Yágüez, R, *op. cit.*, page 353; Tirado, I. in *Los Administradores Concursales*, Aranzadi, 2005, page 258.

[6] Section 40 of the Bankruptcy Act allows for the suspension of powers during the first stage ("*fase común*") of the bankruptcy proceedings, before the liquidation phase.

respect, the suspension of powers is a legal effect, a necessary result, of the liquidation's commencement, provided for in Section 145 of the Bankruptcy Act.[7]

19. In conclusion, with the commencement of the liquidation phase in the bankruptcy proceedings of PESA and PEISA on September 2, 2014, the debtor's powers were suspended and the Receiver did not need a court authorization to file a claim against the Argentine Republic and YPF S.A., under Sections 145, 147, and 54 of the Bankruptcy Act, since it is a financial claim.

### B. It is unnecessary to specify anticipated financial legal claims in the liquidation plan.

20. Mr. Bercovitz suggests that Section 148.2[8] of the Bankruptcy Act states that the liquidation plan must include the legal proceedings that the Receiver will seek to institute on behalf of the debtor to recover assets of the estate. However, as explained below, this interpretation is erroneous insofar as Section 148.2 of the Bankruptcy Act does not require that the liquidation plan include possible legal proceedings the Receiver may initiate.

21. Pursuant to Section 148 of the Bankruptcy Act, when the liquidation phase begins, the Receiver has to prepare a liquidation plan providing for how the Receiver intends to dispose of the debtor's assets and rights for the benefit of creditors. As correctly pointed out by legal scholars,[9] the liquidation plan is a document delineating the sale of the estate and establishing the rules that will apply during the liquidation. In sum, the liquidation plan makes provision for the sale of the debtor's assets and rights.[10]

22. This stance has been adopted in previous case law. Thus, Spanish courts have held, for instance, that the liquidation plan is a document setting forth the guidelines for the sale of the estate in bankruptcy proceedings (Order by the Provincial Court in and for Lleida, dated November 9, 2006 (AC 2007\457));

---

[7] Gutiérrez Gilsaz A, *Tratado Práctico del Derecho Concursal y su reforma.* AAVV, Martínez Sanz (dir.), Tecnos, page 833. Sacristán Represa, M, in *Comentarios a la Legislación Concursal*, AAVV, Pulgar-Alonso-Alonso-Alcover (dirs.) Dykinson, 2004, "Section 145", page 1314. Etxarandio Herrera, E, in *Manual de Derecho Concursal*, La Ley, 2009, 2nd edition, page 810. Blasco Gascó, F, in *Comentarios a la Ley Concursal*, AAVV, Sagrera-Salas-Ferrer (dirs.), Bosch, 2004, Vol. II, page 1520.

[8] Section 148.2 of the Bankruptcy Act: "During the fifteen days following the date on which the liquidation plan is made available at the Court offices, the debtor and its creditors may make remarks or proposals for amendment. Once that term has elapsed, the Court, as it may deem convenient and in the best interests of the bankruptcy proceedings, shall issue an order approving the plan pursuant to the terms under which it was submitted, making amendments thereto, or resolving to wind up pursuant to the supplementary legal rules. A remedy of appeal to the Higher Court may be lodged against such order."

[9] Gutiérrez Gilsanz, A, op. cit., page 841. Blasco Gascó, F, op. cit., page 1546.

[10] This is the opinion of Commercial Judge Sánchez Magro in "*Ley Concursal Comentada*", AAVV, Macías-Juega (coordinators), El Derecho, 2014, page 503

establishing the actions necessary to liquidate the assets, providing for the rules, ways, and criteria applicable to the sale of the assets and rights that make up the estate in order to pay creditors with the proceeds (Orders by the Provincial Court in and for Madrid, Division 28, of February 27, 2015 (JUR\2015\173781); December 2, 2014 (JUR 2015\101414); July 5, 2013, and October 22, 2012 (JUR 2012\380468); Order by Court in Commercial Matters No. 6 in and for Madrid, dated May 11, 2015 (JUR\2015\148428)). And, as held in the Order by the Provincial Court in and for Cáceres, Division 1, dated February 16, 2011 (JUR 2011\159821), *"the purpose of the liquidation plan is that the Receiver expound and justify the procedures applicable to the sale of the assets and rights making up the estate (...)."*

23. Therefore, the liquidation plan must include only the activities that involve the sale or assignment of the debtor's assets for the benefit of creditors, *i.e.*, liquidation activities. The liquidation plan need not include legal claims in which the ownership or value of the debtor's rights or assets, or even the enforcement against a third party of a judgment that recognizes those rights or their value, are at issue.

24. Case law makes clear that matters regarding the existence or the value of the debtor's estate do not need to be discussed nor included in the liquidation plan (Orders by the Provincial Court of Madrid, Division 28, of February 27, 2015, of December 2, 2014, and of October 22, 2012).

25. Because the filing of a claim is not a liquidation activity, the Receiver had the power to sue YPF S.A. and the Argentine Republic at least from the moment the liquidation phase of the PESA and PEISA bankruptcy proceedings began, and even before the liquidation plan was submitted or approved. The claim did not need to be listed in the liquidation plan.

26. Hence, under Spanish bankruptcy law, Mr. Bercovitz is wrong when he avers in paragraph 31 of his report that the Receiver of PESA and PEISA were not authorized to file a claim against YPF S.A. because the claim had not been mentioned in the liquidation plan.

27. In addition, Mr. Bercovitz erroneously states in paragraph 30 of his report that the Receiver had to specify the defendants that the Receiver intended to sue. This is incorrect for two reasons.

28. First, since the liquidation plan did not need to specify potential claims that may be filed, it was clearly also unnecessary to specify the defendants that the Receiver intended to sue.

29. Second, since the liquidation plan does not provide for procedural rules (Ruling by the Provincial Court in and for Alicante, Division 8, dated June 11, 2014) and, since the defendant's identity is a purely procedural matter because it refers to the standing to be sued, which is governed by Section 10 of the Spanish Civil Proceedings Act,[11] it is also unnecessary to provide that information in the liquidation plan. Therefore, this constitutes an additional reason why it is not required to mention who the potential defendants will be in the liquidation plan.

### C. The supplementary provisions of Section 149 of the Bankruptcy Act do not require a court authorization to file financial claims either.

30. Section 149 of the Bankruptcy Act sets forth the supplementary rules applicable to liquidation activities. Therefore, this section covers all cases not provided for in the liquidation plan (Order by the Provincial Court in and for Madrid of October 22, 2012).

31. There is no rule in Section 149 of the Bankruptcy Act that requires that the Receiver obtain a court authorization to file claims against third parties. Contrary to what Mr. Bercovitz states at paragraph 30 of his declaration, this conclusion is the same regardless of "any serious risk of incurring in additional, substantial, non-recoverable costs for the debtor if the suit is ultimately dismissed." As already stated above, there is no provision in the Bankruptcy Act stating that a court authorization is needed to bring a lawsuit. Pursuant to Section 54 of the Bankruptcy Act, the only possible conclusion is that the Receiver can file claims against third parties for the benefit of the bankruptcy estate without the need of a court authorization, regardless of any additional consideration related to potential costs.

## IV. Conclusions

32. When the debtor's administration and disposition powers are suspended—which is always the case when the liquidation phase begins—Section 54 of the Bankruptcy Act gives the Receiver the ability and standing to file non-personal claims against third parties—*i.e.*, claims of a purely financial or economic nature—without the need for any court authorization whatsoever.

33. The liquidation plan submitted by the Receiver for the court's approval must include the liquidation activities relating to how the Receiver intends to dispose of the assets of the estate for the benefit of its creditors, but that does not entail a requirement that the potential claims that may be brought or the identity of

---

[11] Civil Proceedings Act, Section 10: "*Those who appear and act in the proceedings as owners of the legal relationship or subject matter at dispute shall have standing.*"

potential defendants that may be sued must be specified therein. Neither do the supplementary rules set forth in Section 149 of the Bankruptcy Act require that potential claims or defendants be included.

34. The filing of a financial claim, such as the one pending before the US District Court for the Southern District of New York, does not constitute a liquidation activity under Spanish bankruptcy law. Therefore, it is not required that the claim be mentioned in the liquidation plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed in Madrid, Spain, on October 23, 2015.

[Signature]

Javier García Marrero



## **CERTIFICATE OF ACCURACY**

IT IS HEREBY CERTIFIED THAT THE TR COMPANY S.A. is a corporation professionally engaged in the rendering of foreign language translation services; that it has translated the following document: *Declaración de Javier García Marrero*, and that the foregoing translation is, to the best of our knowledge and belief, a true and accurate rendition into English of the original document, which was written in Spanish.

In the city of Buenos Aires, on this 23rd day of October, 2015.

THE TR COMPANY S.A.
TRANSLATION SERVICES
Signed by:

_____
Ms Cynthia Farber
Certified Sworn Translator
License recorded on Page 226: Book XV.
Registered with the Translators Bar Association
City of Buenos Aires
C.T.P.C.B.A. No. 5402

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS DE AMÉRICA
DISTRITO SUR DE NUEVA YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. y PETERSEN ENERGÍA, S.A.U., <br><br> Demandantes, <br><br> - contra - <br><br> REPÚBLICA ARGENTINA e YPF S.A., <br><br> Demandados. | No. 15 Civ. 2739 (TPG) |

## DECLARACIÓN DE JAVIER GARCÍA MARRERO

1. De conformidad con el artículo 28 U.S.C. § 1746, quien suscribe, Javier García Marrero, DECLARA:

2. Que formulo esta declaración para proporcionar al Tribunal un contexto general bajo las Leyes de España sobre si la Administración Concursal ("**Administración Concursal**"), encontrándose las concursadas con las facultades de administración y disposición suspendidas, necesitaba autorización judicial para presentar en nombre de Petersen Energía, S.A.U. ("**PESA**") y Petersen Energía Inversora, S.A.U. ("**PEISA**") la demanda en contra de la República Argentina e YPF S.A.

3. Tras una breve introducción en la que se detallará mi cualificación profesional, mi declaración tendrá la siguiente estructura:

4. Analizaré: (i) si la Administración Concursal, en suspensión de facultades, precisa autorización judicial para presentar demandas de índole no personal en nombre de la concursada; (ii) la función del plan de liquidación y si las posibles demandas frente a terceros constituyen operaciones de liquidación que deben ser incluidas en el plan de liquidación; y (iii) si las normas supletorias del artículo 149 de la Ley 22/2003, de 19 de julio, Concursal ("**Ley Concursal**") exigen autorización judicial a la Administración Concursal para presentar demandas de índole no personal.

1

5. Las opiniones y conclusiones en esta declaración se basan en mi formación jurídica, mi conocimiento y experiencia así como la revisión de la documentación relevante y de las leyes españolas, incluyendo la Ley Concursal, aplicable a este caso. Estas son las fuentes sobre las que cualquier experto en Derecho Español realizaría su análisis para proveer una opinión como la que se me ha encomendado.

6. Ninguna de las afirmaciones incluidas en esta declaración puede ser interpretada como una opinión legal bajo un sistema legal distinto del español.

**I. Cualificaciones profesionales**

7. Desde junio de 2014 soy Counsel del Departamento de Litigación y Arbitraje del despacho español Pérez-Llorca, en Madrid, España. He intervenido como letrado en más de 20 procedimientos concursales, principalmente asesorando a acreedores financieros, aunque también como letrado asesor de empresas concursadas.

8. Desde 1999 hasta junio de 2014 he sido Juez, siendo mi último destino (en el que estuve 7 años) el Juzgado de lo Mercantil de Madrid, que es el que conoce los procedimientos concursales; durante ese tiempo me he encargado de la tramitación de más de 700 procedimientos concursales.

9. He desarrollado una intensa actividad docente en materia concursal, siendo Profesor de numerosos Másters en materia de Derecho Concursal organizados por las siguientes universidades: UNED (Universidad Nacional de Educación a Distancia), Universidad CEU San Pablo, centro de estudios e investigación del ICAM (Ilustre Colegio de Abogados de Madrid), Máster de Acceso a la Abogacía en el Instituto de Empresa; codirector del aula de concursal del Instituto de Empresa "Law School" Executive Education; Director académico del Congreso Nacional sobre Derecho Concursal organizado por el Instituto de Empresa "Law School" Executive Education.

10. Así mismo he intervenido como ponente en numerosos cursos, seminarios y conferencias en materia concursal, organizados, entre otros, por el Consejo General del Poder Judicial de España, por diversas universidades españolas (de Valencia, de Burgos, de Madrid, de Castellón, etc.), por el Instituto de Empresa de España, por colegios de abogados, de economistas, de titulados mercantiles y de auditores españoles.

11. Adjunto a esta declaración mi *curriculum vitae* completo como Anexo 1.

## II. Documentación analizada

12. Para la elaboración de esta opinión legal he tenido acceso a la siguiente documentación:

    (i) Informe elaborado por D. Raúl Bercovitz presentado por YPF S.A. ante el Tribunal del Distrito Sur de Nueva York y su anexo (plan de liquidación elaborado por la Administración Concursal presentado en el procedimiento concursal 405/12).

    (ii) Los autos de 2 de septiembre de 2014 dictados por el Juzgado de lo Mercantil Nº 3 de Madrid, en los procedimientos concursales 405/12 y 523/12, por los que se abre en cada uno de ellos la fase de liquidación.

    (iii) Autos de 24 de noviembre de 2014 dictados por el Juzgado de lo Mercantil Nº 3 de Madrid, en los procedimientos concursales 405/12 y 523/12, por los que se aprueba en cada uno de ellos el plan de liquidación correspondiente.

    (iv) Demanda presentada por las concursadas PESA y PEISA frente a YPF S.A. y la República Argentina, ante el Tribunal de Distrito de los Estados Unidos de América, Distrito Sur de Nueva York.

## III. Análisis

### A. La Administración Concursal no necesita autorización judicial para presentar demandas de contenido patrimonial.

13. El ejercicio de acciones del concursado después de la declaración de concurso se regula en el artículo 54 de la Ley Concursal[1]. Bajo la Ley Concursal, la Administración Concursal de PESA y PEISA no requería autorización judicial para presentar la demanda en contra de la República Argentina y de YPF S.A.

---

[1] Art. 54 de la Ley Concursal: *"Ejercicio de acciones del concursado.*

*1. En caso de suspensión de las facultades de administración y disposición del deudor, corresponderá a la administración concursal la legitimación para el ejercicio de las acciones de índole no personal. Para el ejercicio de las demás acciones comparecerá en juicio el propio deudor, quien precisará la conformidad de los administradores concursales para interponer demandas o recursos, allanarse, transigir o desistir cuando la materia litigiosa pueda afectar a su patrimonio.*

*2. En caso de intervención, el deudor conservará la capacidad para actuar en juicio, pero necesitará la conformidad de la administración concursal para interponer demandas o recursos que puedan afectar a su patrimonio. Si la administración concursal estimara conveniente a los intereses del concurso la interposición de una demanda y el deudor se negara a formularla, el juez del concurso podrá autorizar a aquélla para interponerla"*.

14. Cuando se trata de acciones de índole no personal (es decir, acciones que trascienden de la esfera estrictamente personal y revisten, por tanto, carácter patrimonial)[2], como la demanda presentada ante el Tribunal de Distrito Sur de Nueva York, la legitimación para demandar depende de las limitaciones establecidas a las facultades de administración o disposición del concursado. En caso de <u>intervención de las facultades</u>[3], corresponde al concursado iniciar esas acciones, pero necesita conformidad de la Administración Concursal. Sin embargo, en caso de <u>suspensión de facultades</u>,[4] la legitimación principal corresponde a la Administración Concursal, que es la que puede presentar la demanda.

15. En los supuestos de suspensión de facultades el poder de actuación de la Administración Concursal es absoluto, es decir, tiene el poder de disposición sobre el objeto del procedimiento y su control durante el mismo sin necesidad de intervención del juez del concurso. Por ello, no necesita autorización judicial para presentar una demanda ni para celebrar una transacción con los demandados o incluso para desistir del procedimiento, según se establece en el artículo 54 de la Ley Concursal (que también es aplicable en la fase de liquidación según establece el artículo 147 de la Ley Concursal). La doctrina está de acuerdo en que, en caso de suspensión de facultades, la Administración Concursal no requiere autorización judicial para demandar, transigir o desistir en los supuestos de acciones de contenido patrimonial[5].

16. Esta es la posición también de la práctica judicial, si bien las resoluciones son escasas ante la claridad del precepto legal. En este sentido, por ejemplo, la Sentencia de la Audiencia Provincial de León, Sección 1ª, de 11 junio de 2012 (JUR 2012\250535), sigue esta misma posición, señalando que, como la concursada estaba sometida al régimen de suspensión de facultades por encontrarse en fase de liquidación (art. 145.1 de la Ley Concursal), la legitimación para el ejercicio de las acciones de índole no personal correspondía a la Administración Concursal (art. 54.1 de la Ley Concursal). Igualmente, la Sentencia de la Audiencia Provincial de Zamora, de 17 de junio de 2013 (JUR 2013\250281), coincide en señalar que en el supuesto de suspensión de

---

[2] La doctrina acepta que las acciones de índole no personal son de carácter patrimonial. *Vid.* Mairata Laviña J, en *Comentarios a la Legislación Concursal*, AAVV, Pulgar-Alonso-Alonso-ALey Concursalover (dirs). Dykinson, 2004, art. 54, página 693.- De Angel Yáguez, R, en comentario al art. 54, *Tratado Práctico Concursal*, AAVV, Prendes Carril (dir.), Aranzadi, 2009, Tomo II, página 352.

[3] La intervención de las facultades significa que los actos que realiza el concursado tienen que ser autorizados por la Administración Concursal; la autorización puede ser previa o posterior a la realización del acto o contrato.

[4] La suspensión de facultades significa que el que realiza los actos es la Administración Concursal en lugar del concursado.

[5] Bellido Panadés en *Comentarios de la Ley Concursal*, Rojo-Beltrán (dirs.), Civitas, 2004; De Angel Yáguez, R, *op. cit.*, página 353; Tirado, I. en *Los Administradores Concursales*, Aranzadi, 2005, página 258.

facultades del concursado la Administración Concursal no requiere autorización judicial para presentar demandas, porque el artículo 54.1 de la Ley Concursal no lo exige.

17. En el caso de PESA y de PEISA, las facultades de administración y disposición ya se encontraban en régimen de suspensión cuando la demanda fue presentada en Nueva York. En consecuencia, la Administración Concursal se encontraba plenamente facultada para presentar la demanda, de acuerdo con la Ley Concursal, y no requería de autorización judicial alguna.

18. Si el concursado no hubiera estado aún suspendido en sus facultades[6], la suspensión de facultades se ordena automáticamente con la apertura de la fase de liquidación del concurso. En este sentido, la suspensión de facultades es un efecto legal, una consecuencia necesaria, de la apertura de la liquidación, que contiene el artículo 145 de la Ley Concursal[7].

19. En conclusión, desde que se abrió la fase de liquidación en los concursos de PESA y de PEISA el 2 de septiembre de 2014, se produjo la suspensión de las facultades de las concursadas y la Administración Concursal no necesitaba autorización judicial para demandar a la República Argentina y a YPF S.A., por aplicación de lo previsto en los artículos 145, 147 y 54 de la Ley Concursal, porque se trata de una reclamación de índole patrimonial.

   B. **Es innecesario especificar en el plan de liquidación las acciones de contenido patrimonial que se pretende presentar.**

20. Sugiere el Sr. Bercovitz, que el artículo 148.2[8] de la Ley Concursal establece que el plan de liquidación debe incluir las demandas que la Administración Concursal pretenda incluir en interés de la concursada para recuperar activos de la masa. Sin embargo, como explicaremos más adelante, esta interpretación no es correcta, ya que el artículo 148.2 de la Ley Concursal no exige que el plan de

---

[6] El artículo 40 de la Ley Concursal permite la suspensión de facultades durante la denominada "fase común" del concurso, antes de la fase de liquidación.

[7] Gutiérrez Gilsaz A, *Tratado Práctico del Derecho Concursal y su reforma*. AAVV, Martínez Sanz (dir), Tecnos, página 833. Sacristán Represa, M, en *Comentarios a la Legislación Concursal*, AAVV, Pulgar-Alonso-Alonso-Alcover (dirs). Dykinson, 2004, "art 145", página 1314. Etxarandio Herrera, E, en *Manual de Derecho Concursal*, La Ley, 2009, 2º edición, página 810. Blasco Gascó, F, en *Comentarios a la Ley Concursal*, AAVV, Sagrera-Salas-Ferrer (dirs), Bosch, 2004, Tomo II, página 1520.

[8] Artículo 148.2 de la Ley Concursal: *"Durante los quince días siguientes a la fecha en que haya quedado de manifiesto en la oficina judicial el plan de liquidación, el deudor y los acreedores concursales podrán formular observaciones o propuestas de modificación. Transcurrido dicho plazo, el juez, según estime conveniente para el interés del concurso, resolverá mediante auto aprobar el plan en los términos en que hubiera sido presentado, introducir en él modificaciones o acordar la liquidación conforme a las reglas legales supletorias. Contra este auto podrá interponerse recurso de apelación."*

liquidación incluya las posibles demandas que la Administración Concursal puede iniciar.

21. Cuando se abre la fase de liquidación, el art 148 de la Ley Concursal establece que la Administración Concursal tiene que elaborar un plan de liquidación que establezca cómo realizar los bienes y derechos de la concursada en beneficio de los acreedores. Como bien señala la doctrina[9], el plan de liquidación es un documento que planifica la venta de la masa activa para que sus reglas sean las que se apliquen durante la liquidación. En suma, el plan de liquidación prevé la realización de los bienes y derechos del concursado[10].

22. Esta es la posición mantenida por la práctica judicial. Así, los tribunales españoles han sostenido, por ejemplo, que el plan de liquidación es un instrumento por el que se determinan las pautas de realización de la masa activa del concurso (Auto de la Audiencia Provincial de Lleida, de 9 de noviembre de 2006 (AC 2007\457)); que establece las operaciones necesarias para la liquidación de los bienes, señala las reglas, formas y criterios conforme a los cuales hay que hacer las operaciones de realización de los bienes y derechos integrados en la masa activa para con su producto satisfacer a los acreedores (Auto de la Audiencia Provincial de Madrid, Sección 28ª, de 27 febrero de 2015 (JUR\2015\173781); de 2 de diciembre de 2014 (JUR 2015\101414); de 5 de julio de 2013 y de 22 de octubre de 2012 (JUR 2012\380468); Auto del Juzgado Mercantil Nº 6 de Madrid, de 11 de mayo de 2015 (JUR\2015\148428)). Y como dice el Auto de la Audiencia Provincial de Cáceres, Sección 1ª, de 16 de febrero de 2011 (JUR 2011\159821), *"el objeto del plan de liquidación es que la administración concursal exponga y justifique los procedimientos a seguir para la realización de los bienes y derechos que integran la masa activa del concurso de acreedores (...)"*.

23. Por ello, el plan de liquidación debe incluir solamente las operaciones que impliquen la venta o la cesión de los bienes de la concursada en beneficio de los acreedores, es decir, operaciones de liquidación. El plan de liquidación no requiere incluir las demandas en las que se deba discutir judicialmente la titularidad o cuantía de los derechos o bienes de la concursada, ni tampoco la ejecución de la sentencia que reconoce o cuantifica un derecho frente a terceros.

24. La jurisprudencia deja claro que las cuestiones relativas a la existencia o cuantía de la masa activa no deben incluirse ni discutirse en el plan de liquidación (Autos de la Audiencia Provincial de Madrid, Sección 28ª de 27 de febrero de 2015, de 2 de diciembre de 2014 y de 22 de octubre de 2012).

---

[9] Gutiérrez Gilsanz, A, op cit, página 841. Blasco Gascó, F, *op. cit.* página 1546.

[10] Esta es la opinión del Magistrado de lo Mercantil Sánchez Magro. en *"Ley Concursal Comentada"*, AAVV, Macías-Juega (coords.), El Derecho, 2014, página 503.

25. Como la presentación de la demanda no es una operación de liquidación, la Administración Concursal estaba facultada para presentar la demanda en contra de YPF S.A. y de la República Argentina desde el momento mismo en que se abrió la fase de liquidación de los concursos de PESA y PEISA, y aún antes de que se presentara o se aprobara el plan de liquidación. La acción no tenía por qué estar incluida en el plan de liquidación.

26. Por ello, de acuerdo al Derecho Concursal español, no es correcta la afirmación del Sr. Bercovitz en el párrafo 31 de su informe, cuando concluye que la Administración Concursal de PESA y PEISA no estaba autorizada a presentar la demanda contra YPF porque el plan de liquidación no la mencionaba.

27. Adicionalmente, el Sr. Bercovitz incorrectamente afirma en el párrafo 30 de su informe que la Administración Concursal debía especificar los demandados que la Administración Concursal se proponía demandar. Esa afirmación es incorrecta por dos razones.

28. En primer lugar, como el plan de liquidación no requería especificar ninguna de las potenciales reclamaciones que pueden presentarse, es evidente que tampoco era necesario especificar los demandados que la Administración Concursal demandaría.

29. En segundo lugar, como el plan de liquidación no prevé normas de índole procesal (Sentencia de la Audiencia Provincial de Alicante, Sección 8ª, de 11 de junio de 2014) y como la identidad del demandado es una cuestión netamente procesal, porque se refiere a la legitimación pasiva regulada en el artículo 10 de la Ley de Enjuiciamiento Civil[11] española, no corresponde incluir tal mención en el plan de liquidación. Por lo tanto, esta es una razón adicional por la cual no corresponde indicar en el plan de liquidación quiénes serán los posibles demandados.

### C. Las normas supletorias del artículo 149 de la Ley Concursal tampoco exigen autorización judicial para presentar demandas de contenido patrimonial.

30. El artículo 149 de la Ley Concursal contiene las reglas supletorias aplicables a las operaciones de liquidación. En consecuencia, este artículo entra en juego en todo lo no previsto en el plan de liquidación (Auto de la Audiencia Provincial de Madrid, de 22 de octubre de 2012).

---

[11] Ley de Enjuiciamiento Civil, art. 10: *"Serán consideradas partes legítimas quienes comparezcan y actúen en juicio como titulares de la relación jurídica u objeto litigioso"*.

7

31. Ahora bien, ninguna regla del artículo 149 de la Ley Concursal establece que la Administración Concursal necesite obtener autorización judicial para presentar demandas frente a terceros. En contra de lo que afirma el Sr. Bercovitz en el párrafo 30 de su declaración, esta conclusión es la misma independientemente de "cualquier riesgo serio de incurrir en costes adicionales, significativos y que no pueden recuperarse del concursado si la demanda es rechazada en último término". Como he indicado más arriba, no existe en la Ley Concursal ningún precepto que exija autorización judicial para demandar. Según establece el artículo 54 de la Ley Concursal, la única conclusión posible es que la Administración Concursal puede presentar demandas contra terceros en beneficio de la masa activa sin necesidad de autorización judicial alguna, independientemente de cualquier consideración adicional con relación a potenciales costes.

### IV. Conclusiones

32. Cuando el concursado tiene suspendidas sus facultades de administración y disposición, lo que ocurre siempre cuando se abre la fase de liquidación, el artículo 54 de la Ley Concursal atribuye a la Administración Concursal la capacidad y legitimación para presentar demandas de índole no personal (es decir, de contenido patrimonial) frente a terceros, no necesitando para ello autorización judicial alguna.

33. El plan de liquidación que presenta la Administración Concursal para la aprobación judicial debe incluir las operaciones de liquidación estableciendo cómo se propone disponer de los activos de la masa en beneficio de los acreedores, pero eso no implica que deban incluirse las posibles demandas que pueden plantearse, ni tampoco la identidad de los posibles demandados. Las reglas supletorias que establece el artículo 149 de la Ley Concursal tampoco exigen que se incluyan las posibles demandas ni los posibles demandados.

34. La presentación de una demanda de contenido patrimonial como la que se plantea ante el Tribunal Federal del Distrito Sur de Nueva York no constituye una operación de liquidación bajo la normativa concursal española. Por eso, no es necesario que se mencione en el plan de liquidación.

Declaro bajo pena de perjurio de acuerdo con las leyes de Estados Unidos de América que lo que antecede es correcto y verdadero, según mi leal saber y entender.

Firmado en Madrid, España, el 23 de octubre de 2015.

Javier García Marrero

# Exhibit 1

# Pérez-Llorca

**Javier García Marrero**
Counsel

E-mail: jmarrero@perezllorca.com
Phone: +34 91 423 66 38
Fax: +34 91 436 04 30
Address: Paseo de la Castellana, 50
28014 Madrid
Spain



**Expert in Litigation**

## Counsel

Javier García Marrero, a magistrate on leave of absence, joined Pérez-Llorca in June 2014 as a Counsel for the Litigation & Arbitration practice.

## Studies

Law degree from Universidad de La Laguna, 1989-1994. Graduation Award for Special Distinction (Premio extraordinario de Fin de Carrera). PhD courses in the Department of International and Procedural Law at Universidad de La Laguna Law School, "European Law" programme, academic years 94-95/95-96. He became a Court Clerk (Secretario Judicial) in 1997.
In 1999, he became a judicial officer through the regular state examination, serving as a judge at the mixed courts in Arona (Tenerife) and Quart de Poblet (Valencia) as well as at the court of first instance of Almería and the labour court in Santa Cruz de Tenerife. He is a specialist judge in commercial law matters (class salutatorian), being the sitting judge at the Commercial Court no. 5 in Madrid since November 2007.

## Languages

Spanish, English

## Practice Areas

Javier is a specialist in commercial law matters, having been the sitting judge at Commercial Court no. 5 in Madrid since November 2007. Javier has a solid background and experience in cases of insolvency law, competition law, corporate, and IP law and is a regular speaker in congresses and events regarding these subjects. Most importantly, Javier has been directing for many years the National Congress on Insolvency Law organized by the Instituto de Empresa: http://www.ie.edu/es/execed/congreso-concursal

## Experience

- Requesting the compulsory insolvency of the company owning one the highest buildings in Europe (2014-2015)
- Advising Prosegur in a potential case of unfair competition (2014)
- Defending Nobel in an IP claim brought by former collaborator (2014)
- Advising a well-Known family office in a dispute concerning their shareholders (2014)
- Advising an insolvent company in relation to the early termination of several contracts (2014)
- Advising different banks and financial institutions in several insolvency proceedings

## Academic Collaboration

- Member of the faculty for the External Practicum at ICADE, academic year 09/10 to 13/14.
- Lecturer for the Master's on Insolvency Administration at UNED since 2011.
- Faculty member of the Master's on Company Insolvency at CEU since academic year 09/10.
- Lecturer for the special training course for Insolvency Administrators at the Centre for Studies and Research at the Madrid Bar Association (ICAM) since 2010.
- Co-director of the Insolvency Lectures Series at IE Law School Executive Education since 2009. European and Middle Eastern Arbitration Review 2013.
- Academic Director for the National Congress on Insolvency Law organized by IE Law School Executive Education 2009-2014.

# Pérez-Llorca

- Member of the Academic Committee of the National Conference on Insolvency Law organized by IE Law School Executive Education 2015.
- Lecturer for the Master's on Access to the Legal Profession at IE Law School, Insolvency Law.
- Lecturer on the Master's on Access to the Legal Profession at Universidad Carlos III, Implementation of Competition Law.
- Co-director and lecturer for the Advanced Program on Insolvency and Company Law, organized by IE Law School Executive Education since 2012.
- Co-director and lecturer for the Advanced Program on Company Law conflicts, organized by the IE Law School Executive Education since 2014.
- Academic Director for the Canary Islands Congress on Commercial and Insolvency Law 2009-2014.
- Lecturer for the Advanced Course for Insolvency Administrators at the university centre Villanueva 2010-2014.
- Lecturer for various courses, seminars and conferences on commercial law (corporate, IP, fair competition) and insolvency law, organized by the General Council of the Judiciary, Universidad de Valencia, Universidad Complutense de Madrid, Universidad de Burgos Foundation, Group AIPPI, FIDE, Aranzadi, Bar Associations (Lawyers, Economists, Auditors), REFOR, FUNDIECO, Tirant Lo Blanch.

## Publications

- Commentary on the acquittance/haircut and deferral regarding the creditor's agreement. Boletín de Mercantil. (Commercial Gazette) Year II. number 12- March 2009. El Derecho.
- Openness and publicity of the bankruptcy liquidation "The liquidation". (Several authors) García-Cruces J.A. (director), 2011.
- Commentary on several problematic issues regarding the appointment of the Insolvency Administration. "Insolvency law: legal responses to a crisis. XXXIII General Conference of the State Legal Service. Ministry of Justice", 2012.
- The refinancing agreements in "Judicial Treaty on Insolvency". (Several authors) Muñoz Paredes A. and P. Carril Prendes (directors), Aranzadi 2012.
- The classification section (fortuitous or tortious) in insolvency proceedings in "Insolvency Law". (Several authors) Nieto Delgado C. (director), Aranzadi 2012.
- The creditor's agreement: procedure and court approval "Practical Treaty on Insolvency law and its amendments". (Several authors) Martínez Sanz F. (director), Tecnos 2012.
- Proposals and procedure of the creditor's agreement. Certain problems regarding the submission of the proposal "The amendment of Insolvency Law analysed by specialists" (Several authors) Martina Molina, González Carre Bilbao (directors), Dykinson 2012.
- Planning and execution of the liquidation "Practical implementation of the new Insolvency Law after a year of life: specialist's analysis" (Several authors) Martina Molina (director), Dykinson 2013.
- Planning and execution of the liquidation "A revision of the Insolvency Law and related case law" (Several authors) Martina Molina (director), Dykinson 2013.
- Lights and shadows regarding the 1% compensation as a legal minimum, in relation to the infringement of trademarks and designs, XXVIII Conference on Intellectual Property. AIPPI Spanish Group, 2013.
- Commentary of article 99 to 110 Insolvency Law in "Commented Insolvency Act" (Several authors) Macías Castilllo A. y Juega Cuesta R (directors). El Derecho, Francis Lefebvre Group. First Edition, October 2014.
- How to apply for insolvency in "Practical Guidelines of the insolvency proceedings 2015, including the latest amendments: Law 14/2013 and 17/2014; Royal Decree-Law 4/2014 and 22/2014" (Several authors) Sanjuán y Muñoz E. (director). Sepin, November 2014.
- State aid and insolvency "Public Administration and insolvency". Hernández Rodríguez M. and Orellana Cano N. (directors). Aranzadi (not yet published).

## Professional Organizations

- The Madrid Bar Association (ICAM)