UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETERSEN ENERGÍA INVERSORA, S.A.U.
AND PETERSEN ENERGÍA, S.A.U.,

                      Plaintiffs,

               -against-

ARGENTINE REPUBLIC AND YPF S.A.,

                      Defendants.

15 Civ. 02739 (TPG)

# REPLY MEMORANDUM OF LAW
# IN SUPPORT OF YPF S.A.'S MOTION TO DISMISS

CHADBOURNE & PARKE LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Attorneys for Defendant YPF S.A.*

Thomas J. Hall
Marcelo M. Blackburn
Christopher Cooke

      Of Counsel

**Table of Contents**

Page

I. THE COMMERCIAL ACTIVITY EXCEPTION DOES NOT APPLY BECAUSE PETERSEN'S CLAIMS ARE BASED ON AN EXPROPRIATION ..................................................................................................1

II. YPF DID NOT BREACH THE TENDER OFFER PROVISIONS IN SECTIONS 7(D)-(F) OF THE BYLAWS ...............................2

    A. Petersen Fails to Identify Any Breach by YPF of the Tender Offer Provisions .......................................................2

    B. Petersen Fails to Explain How YPF Could Be Liable for the Republic's Alleged Breach of the Bylaws' Tender Offer Provisions ...........3

III. YPF DID NOT BREACH SECTION 7(H) OF THE BYLAWS BY RECOGNIZING THE REPUBLIC'S VOTE OF THE EXPROPRIATED SHARES ..................................................................................................5

IV. PETERSON HAS ABANDONED ITS BREACH OF CONTRACT CLAIM BASED ON THE ALLEGED FAILURE TO MAKE DIVIDEND PAYMENTS ..................................................................................................7

V. THE ACT OF STATE DOCTRINE BARS THE CLAIMS AGAINST YPF ........8

VI. THE PROMISSORY ESTOPPEL CLAIM IS DUPLICATIVE AND UNENFORCEABLE .......................................................9

VII. THE RECEIVER LACKS STANDING TO SUE IN THE UNITED STATES .....9

CONCLUSION ................................................................................11

Defendant YPF S.A. ("YPF") respectfully submits this reply memorandum in further support of its motion to dismiss all claims brought against it by plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. ("Petersen").

## I. THE COMMERCIAL ACTIVITY EXCEPTION DOES NOT APPLY BECAUSE PETERSEN'S CLAIMS ARE BASED ON AN EXPROPRIATION

As a threshold matter, YPF incorporates the arguments in the Republic's reply brief as to why the commercial activity exception to sovereign immunity does not apply to Petersen's claims. Three points in particular are worth highlighting here.

First, Petersen's argument that its claims are based on an alleged failure to make a tender offer and not the expropriation is refuted by Petersen's assertion that the Expropriation Law "triggered the obligation to carry out a [tender offer]." See Bianchi Dec. ¶¶ 37, 48. While this assertion is wrong (the bylaws provide for a tender offer *prior* to an acquisition of control, not "triggered" *after* such an acquisition), even under Petersen's theory the alleged breach of contract consisted of the Republic assuming control of the shares pursuant to the Expropriation Law without making a tender offer, and thus cannot be divorced from the sovereign act of expropriation itself. Where, as here, the alleged breach of contract was the result of the sovereign act of expropriation of 51% of the shares, the claims should be dismissed. See Carey v. National Oil Corp., 453 F. Supp. 1097, 1102 (S.D.N.Y. 1978) (dismissing under the FSIA claims for inducing breach of contract because the alleged breaches were caused by sovereign acts), aff'd, 592 F.2d 673 (2d Cir. 1979).

Second, Petersen contends that its claims are not based on the breach caused by the Expropriation Law because the Republic could have remedied that breach consistent with the Expropriation Law by making a tender offer for the remaining YPF shares not subject to expropriation. Opp. Br. at 3. This theory is inconsistent with YPF's bylaws. The bylaws do not

1

provide, as Petersen proposes, that the Republic could expropriate 51% of the shares and make a partial tender offer for the remaining 49%. If the tender offer provisions applied, then the Republic would have been obliged to make a tender offer for all of YPF's shares, completely negating the Expropriation Law and unwinding the expropriation. See Section 7(e)(ii) (providing for a "bid for the acquisition of *all the shares of all classes of the Corporation and all securities convertible into shares*.") (emphasis added). In short, Petersen's proposal of a partial tender offer inconsistent with the bylaws does not remedy any alleged breach, and only further demonstrates that the gravamen of its claims is based on a sovereign expropriation immune from suit under the FSIA.

Third, Petersen claims that the bylaws required YPF to prohibit the Republic's control of the shares subject to expropriation, effectively nullifying the expropriation. Compl. ¶ 71; Opp. Br. at 1 ("bylaws required YPF not to recognize the voting rights or management authority of any shares acquired in violation of the tender-offer requirements."). Petersen further alleges that YPF breached the bylaws by complying with the Expropriation Law's provision for the Republic to vote the shares subject to expropriation. Id. That Petersen's claims against YPF are based on YPF's compliance with the Expropriation Law make clear that the claims are based on the Republic's sovereign act of expropriation, not commercial activity.

## II. YPF DID NOT BREACH THE TENDER OFFER PROVISIONS IN SECTIONS 7(D)-(F) OF THE BYLAWS

### A. Petersen Fails to Identify Any Breach by YPF of the Tender Offer Provisions

Petersen's argument that YPF breached bylaw Section 7(d)'s tender offer requirement fails to state a claim against YPF for the most basic of reasons: it utterly fails to identify any obligation that YPF had under Section 7(d). See Opp. Br. at 16. On its face, Section 7(d) imposes no obligation on YPF. The alleged obligation to make a tender offer was solely on the

acquirer of the shares. See Kemelmajer Dec. ¶¶ 7-8. The only provision in Sections 7(d)-(f) that imposed obligations on YPF was its requirement that YPF provide notice to shareholders after a tender offer notice was received, but it is not disputed that YPF never received any tender offer notice. Id. at ¶¶ 10-11.

Petersen next frivolously asserts that nothing in the bylaws "conditions YPF's obligations on notice by Argentina" (Opp. Br. at 17), but this statement completely ignores the plain language of Section 7(f)(iii): "The Corporation shall send by mail to each shareholder or holder of securities convertible into stock, at the Bidder's cost and expense, and with reasonable due diligence, a copy of the notice delivered to the Corporation in accordance with the provisions of paragraph (i)."). The plain language of Section 7(f)(iii), Petersen's inability to identify any relevant YPF obligation in the bylaws' tender offer provisions, and Petersen's failure to dispute the opinion of Dr. Kemelmajer on this point, make clear that no such obligation existed.

### B. Petersen Fails to Explain How YPF Could Be Liable for the Republic's Alleged Breach of the Bylaws' Tender Offer Provisions

Having failed to identify any obligation of YPF in Sections 7(d)-(f) that it breached, Petersen resorts to claiming that YPF is somehow liable for the Republic's alleged breach of the tender offer requirement. See Opp. Br. at 3 ("Argentina breached the bylaws by failing to tender for Plaintiffs' shares under Sections 7 and 28 of the bylaws. *That breach is also attributable to YPF*, which is bound to the bylaws no less than Argentina.") (emphasis added). Petersen's theory of some sort of vicarious liability is absurd on a number of levels.

First, the Opposition's conclusory assertion that the tender offer provision in Section 7(d) "was binding on YPF just as much as Argentina" (Opp. Br. at 16), is nonsensical given that Section 7(d) by its terms does not impose any obligations on YPF. While the bylaws may generally be binding on YPF, YPF's obligations thereunder are only those that the bylaws impose

3

on it. All parties to a multi-party contract surely are not required to perform the obligations the contract imposes only on certain parties thereto. See Kemelmajer Dec. ¶¶ 7-9.

Second, Petersen's statement that the Republic acted as YPF's management in allegedly breaching the tender offer provision in Section 7(d) (see Opp. Br. at 2), cannot be squared with the opinion of Petersen's own expert that the breach of the tender offer provisions occurred when the Argentine Congress enacted the Expropriation Law that authorized the Republic to "temporarily occupy" the shares subject to the expropriation. See Bianchi Dec. ¶¶ 37, 48. The Republic's alleged breach of Section 7(d) by enacting the Expropriation Law, however, occurred on May 7, 2012, well before the Republic first exercised control over the shares at the June 4, 2012 shareholder meeting. Petersen's theory thus amounts to stating that a company can be liable for what its majority shareholder may have done before it became its majority shareholder. The Opposition offers no legal authority for this theory.

Moreover, that an intervenor appointed by Argentina's President was managing YPF at the time the Expropriation Law was enacted is irrelevant. The Complaint does not allege that the intervenor, purportedly acting on behalf of YPF, had any part in the enactment of the Expropriation Law, had any role in deciding whether the Republic would make a tender offer, or otherwise took any actions on YPF's behalf in connection with the Republic's alleged failure to make a tender offer.

Similarly, to the extent that Petersen is suggesting that YPF should be liable simply because an intervenor was managing it during the period that the Republic allegedly should have made a tender offer, Petersen ignores that any alleged breach was that of the Republic in failing to make a tender offer, not a breach caused by the intervenor acting on behalf of YPF. As noted, the obligations in Section 7(d) are imposed only on the acquirer, not on the company or its

management, and remedying any alleged such breach would have been the responsibility of the acquirer of the shares, not the company. See Kemelmajer Dec. ¶¶ 7-9.[1]

### III. YPF DID NOT BREACH SECTION 7(H) OF THE BYLAWS BY RECOGNIZING THE REPUBLIC'S VOTE OF THE EXPROPRIATED SHARES

Petersen's attempt to hold YPF liable under Section 7(h) fails for the same reason that its tender offer argument fails, namely, that Petersen conflates the Republic's alleged obligation to make a tender offer with YPF's alleged obligation not to permit voting of shares allegedly acquired in violation of the tender offer provisions.

As a threshold matter, there is no dispute that the Expropriation Law authorized the Republic to vote the shares subject to expropriation under a temporary occupation measure in Argentine public law. See Marcer Dec. ¶¶ 46-52. Accordingly, the Republic voted such shares as a legally authorized exercise of its public authority, not as an ordinary private shareholder. Under Argentine law, YPF cannot be liable under Section 7(h) for complying with the Republic's exercise of its public powers. See Kemelmajer Dec. ¶¶ 17-19.

Further, Petersen does not dispute that the Expropriation Law legally required third parties such as YPF to honor the Republic's authority to exercise such voting rights. This imperative under Argentine public law took precedence over any alleged private contractual obligation otherwise. Id. Moreover, because YPF could not violate the Expropriation Law, its enactment constituted an event of force majeure that exempts YPF from any liability for complying with that law. See YPF Br. at 23-24; Kemelmajer Dec. ¶¶ 24-31.

---

[1] Petersen's attempt to have this Court attribute to YPF liability for alleged contractual obligations of the Republic invites the Court to disregard the independent corporate existence of YPF. Courts have warned against doing so. See EM Ltd. v. Banco Central de la Republica Argentina, 800 F.3d 78, 89 (2d Cir. 2015) ("In Bancec, the Supreme Court created a presumption that 'government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such.'") (quotation omitted).

5

Petersen's argument that the Expropriation Law was not inconsistent with YPF's obligations because the "occupation of Repsol's shares was distinct from the actions Argentina was obligated to take with respect to the remainder of YPF's shares" (Opp. Br. at 18), is beside the point. As to YPF, the issue is not whether the Expropriation Law prevented the Republic from making a tender offer, but whether it prevented YPF from barring the Republic from voting the occupied shares at the June 4, 2012 shareholder meeting. Even assuming arguendo that the Expropriation Law did not prevent the Republic from making a tender offer, it still required YPF to respect the voting rights the Expropriation Law granted to the Republic. See Kemelmajer Dec. ¶¶ 24-31.

Petersen's arguments against the application of force majeure also fail because they ignore that the Republic is not YPF. The Opposition summarily asserts that "compliance [with the bylaws] was not at all impossible" because "[t]o the extent that Argentina 'caused' YPF to violate its bylaws, it did so in its capacity as YPF's management and Board. In that role Argentina could easily have acted otherwise." Opp. Br. 19. This argument is wrong for at least two independent reasons.

First, nothing in the Complaint or the law supports Petersen's astonishing suggestion that the enactment of the Expropriation Law was done by the Republic in its "capacity as YPF's management and Board." As noted above, the Complaint lacks any allegation that the intervenor had any role on behalf of YPF in the Argentine Congress's enactment of the Expropriation Law. Second, even if the Republic could have revoked the Expropriation Law, YPF surely could not have done so. The real question is not whether the Expropriation Law was an event of force majeure to the Republic, as the Opposition presumes, but whether it was an event of force majeure to YPF. Petersen fails even to address YPF's assertion that the Expropriation Law

6

nullified any obligation YPF had in Section 7(h) to prevent the Republic from voting the shares subject to expropriation.

In addition, the Opposition asks the Court to disregard that an Argentine court rejected Repsol's lawsuit seeking to prevent the Republic from exercising the voting rights, by arguing that this raises factual questions. Opp. Br. 19. The Argentine decision, however, is not being cited for any disputed issues therein, but rather for its holding that the Republic was entitled to exercise the share rights under Argentine law. This Court is permitted to take judicial notice of such decisions without converting the motion to dismiss to a motion for summary judgment. See Fed. R. Civ. P. 44.1; Guirlando v. T.C. Ziraat Bankasi A.S., 602 F.3d 69, 81-82 (2d Cir. 2010) (citing declaration of foreign legal counsel while dismissing claims pursuant to FSIA).

Finally, the Opposition completely ducks YPF's argument that Petersen has no claim arising from the Republic's voting shares at the June 4, 2012 YPF shareholder meeting because Petersen was no longer a shareholder at that time. See YPF Br. at 24. It is undisputed that (1) the Complaint alleges that Petersen had lost its shares to foreclosure in May 2012 (see Compl. ¶ 42), and (2) the Republic first voted the shares subject to expropriation at the June 4, 2012 shareholder meeting. Marcer Dec. ¶ 9. Each of these uncontested facts is either alleged in the Complaint or is a matter of public record supported by a sworn declaration of law. Together they require dismissal of the claims for breach of Section 7(h) for lack of causation.

### IV. PETERSEN HAS ABANDONED ITS BREACH OF CONTRACT CLAIM BASED ON THE ALLEGED FAILURE TO MAKE DIVIDEND PAYMENTS

In its Opposition, Petersen retracts the Complaint's allegation that "YPF breached the bylaws by . . . failing to distribute dividends to YPF's shareholders, including Petersen." Compl. ¶ 71. Instead, it now claims only that the lack of dividend payments was a "direct consequence of the Company's breach of the bylaws." Opp. Br. at 20. Although Petersen's assertion is

7

completely wrong -- YPF did not breach the bylaws, and any such breach would not have caused the lack of dividend payments -- its retraction effectively concedes that Petersen's alleged lack of dividends is not an independent basis for liability on YPF. The claims against YPF based on the nonpayment of dividends should therefore be dismissed.

## V. THE ACT OF STATE DOCTRINE BARS THE CLAIMS AGAINST YPF

Petersen's opposition to YPF's Act of State argument is based on the false premise that YPF "offers no distinct arguments" to those of the Republic. In so doing, Petersen ignores that its claims against YPF in particular would require this Court to deem invalid the Expropriation Law, and are thus uniquely barred.

As YPF has explained in its moving brief and above, the Expropriation Law required YPF to recognize the Republic's right to vote the shares subject to expropriation pursuant to a "temporary occupation" under Argentine law. This requirement would take precedence over any provision in the bylaws inconsistent with such obligation. Indeed, it could not be otherwise. If YPF could have rejected the Republic's right to vote the shares, it would have rendered those shares essentially useless and effectively invalidated the Republic's sovereign expropriation of control over YPF.

Petersen's claim, on the other hand, asserts that YPF breached its obligations under Section 7(d) precisely because it complied with the Expropriation Law and did not reject the voting rights of the shares subject to expropriation. If this Court were to find YPF liable for not prohibiting the Republic from voting of the shares pursuant to the Expropriation, it would have unavoidably invalidated the Expropriation Law as to YPF. The Court cannot do this without violating the Act of State doctrine. For this reason alone, Petersen's claim must be dismissed.

## VI. THE PROMISSORY ESTOPPEL CLAIM IS DUPLICATIVE AND UNENFORCEABLE

Petersen's argument that its promissory estoppel claim is governed by New York law instead of Argentine law fails to explain why the application of New York law would lead to a different outcome. As noted in YPF's brief, the promissory estoppel claims are duplicative of the contract claims under either state's law because the statements in the IPO on which the promissory estoppel claim are based simply describe the bylaws on which the contract claims are based. See YPF Br. at 25 and note 7.

In addition, although the Opposition invokes the Argentine law doctrine analogous to promissory estoppel (*teoría de los actos propios*), it makes no attempt to address Dr. Kemelmajer's explanation that any promise to contravene a statutory expropriation process would not be binding or enforceable as an *acto propio* under Argentine law. See Kemelmajer Dec. ¶¶ 50-54. Accordingly, the promissory estoppel claim must be dismissed.

## VII. THE RECEIVER LACKS STANDING TO SUE IN THE UNITED STATES

A "foreign representative" of a "foreign proceeding" generally cannot sue in the United States without first obtaining recognition of that foreign proceeding pursuant to Chapter 15 the Bankruptcy Code. See, e.g., Reserve Int'l Liquidity Fund Ltd. v. Caxton Int'l Ltd., No. 09 Civ. 9021(PGG), 2010 WL 1779282, at *5 (S.D.N.Y. Apr. 29, 2010); In re Soundview Elite, Ltd., 503 B.R. 571, 594 n.61 (Bankr. S.D.N.Y. 2014).[2] Plaintiffs do not contest that the Receiver is a foreign representative or that Plaintiffs' Spanish bankruptcy proceedings are foreign proceedings.

---

[2] See also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund Ltd., 289 B.R. 325, 331 (S.D.N.Y. 2008) ("Section 1509 permits the foreign representative to file the petition directly with the Bankruptcy Court, without need for preliminary formalities, but conditions any other court access by the foreign representative on recognition."); In re Millennium Global Emerging Credit Master Fund Ltd., 458 B.R. 63, 81-82 (Bankr. S.D.N.Y. 2011) ("The clear implication of failure to obtain any recognition, borne out by the case law, is that without an order of recognition the foreign representative cannot be heard in any court in the United States.").

Instead, Plaintiffs incorrectly rely on the narrow exception provided by Bankruptcy Code section 1509(f), which allows a foreign representative, without first obtaining recognition, only to bring suit "to collect or recover a claim which is the property of a debtor."

As set forth explicitly in the legislative history, "[s]ubsection (f) provides *a limited exception* to the prior recognition requirement so that collection of a claim which is property of the debtor, *for example an account receivable*, by a foreign representative may proceed without commencement of a case for recognition under [Chapter 15]." H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st. Sess. 100-111 (2005) (emphasis added). Even courts that have ultimately authorized suits to proceed under 1509(f) have emphasized the narrowness of the exception. See, e.g., In re Loy, 380 B.R. 154, 165 (Bankr. E.D. Va. 2007) ("The legislative history of the statute indicates that this exception is to be narrowly applied."). Plaintiffs' sweeping claims against multiple parties, including a sovereign nation, are not the type of narrow action to collect an account receivable that is permitted by section 1509(f).

Moreover, Plaintiffs' assertion that section 1509(f) allows a foreign representative to bring any cause of action in the U.S. without obtaining recognition, so long as it does not request that the U.S. court provide comity, fails on its own terms.[3] By requesting relief from this court in the name of Petersen, the Receiver, is requesting comity in the form of acknowledgment of his authority to act on behalf of Petersen. See Reserve Int'l Liquidity Fund Ltd., 2010 WL 1779282, at *5. Nor may the Receiver "circumvent Chapter 15 by simply appearing as [Petersen] in this action." Id. As this Court previously held, "[t]o allow such a maneuver would eviscerate Chapter 15's requirements." Id.

---

3   Further, in most of the cases cited by Plaintiffs, Chapter 15 recognition was granted, making the court's analysis moot. See, e.g., In re British American Insurance Co., 488 B.R. 205 (Bankr. S.D. Fla. 2013); In re Fairfield Sentry Ltd. Litig., 458 B.R. 665 (S.D.N.Y. 2011); In re Loy, 380 B.R. at 154.

## **CONCLUSION**

For the foregoing reasons, the Complaint against YPF should be dismissed in its entirety.

Respectfully submitted,

CHADBOURNE & PARKE LLP

By     */s/ Thomas J. Hall*
        Thomas J. Hall
       A Member of the Firm
1301 Avenue of the Americas
New York, New York 10019
(212) 408-5100
thall@chadbourne.com

*Attorneys for Defendant YPF S.A.*

Thomas J. Hall
Marcelo M. Blackburn
Christopher Cooke

    Of Counsel

November 17, 2015