

Martin Domb

Akerman LLP
666 Fifth Avenue
20th Floor
New York, NY 10103
Tel: 212.880.3800
Fax: 212.880.8965

Dir: 212.880.3811
Dir Fax: 212.880.8965
martin.domb@akerman.com

September 27, 2016

Hon. Loretta A. Preska
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Petersen Energía Inversora v. Argentine Republic*, Case No. 15-cv-2739 (LAP)

Dear Judge Preska:

We represent defendant the Republic of Argentina. We hereby request a pre-motion conference. We wish to make a motion for certification under 28 U.S.C. § 1292(b) with respect to the act of state ruling in the Court's opinion and order dated September 9, 2016 (the "Order"). Alternatively, by this letter we seek (without such a conference) permission to promptly file such a motion or (in lieu of a formal motion) an order of certification under § 1292(b).

We filed a notice of interlocutory appeal from the Order on September 23 (Dkt. 66). The ruling on sovereign immunity is immediately appealable under the collateral order doctrine. *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 116 (2d Cir. 2016).

Section 1292(b) states in relevant part: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that [1] such order involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he [or she] shall so state in writing in such order" (brackets added). We respectfully submit that each of these elements is present as to the act of state ruling and that the Court should exercise its broad discretion and allow the already pending appeal to proceed on both grounds – sovereign immunity and act of state – rather than on immunity only.

**The Court's discretion**. Whether to grant certification for interlocutory appeal under § 1292(b) "lies largely in the discretion of the district judge." *Ferraro v. Sec'y of the U.S. Dep't of Health and Human Serv's*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992). *See also* Charles A. Wright *et al.*, 16 *Federal Practice & Procedure* § 2929 (3d ed.) ("Wright & Miller") ("[T]he three factors that justify interlocutory appeal should be treated as guiding criteria rather than jurisdictional requisites.").

**Controlling question of law**. The Court's act of state ruling involved at least three controlling questions of law: (1) whether the act of state doctrine can never apply "to purely commercial conduct of a sovereign" (Order at 21); (2) whether the Court was required to give

deference to expert opinion on Argentine law, proffered by both sides, in deciding whether the bylaws' tender offer provisions conflicted with Argentina's valid sovereign acts; and (3) whether the conduct at issue was commercial. Each of these questions is "controlling" because a reversal on any of them would end the case. *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action").

**Substantial ground for difference of opinion**. As to the first question – whether the act of state doctrine can apply to purely commercial conduct – the Court cited two authorities: *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 695 (1976) ("*Dunhill*"); and *Lyondell–Citgo Ref., LP v. Petroleos de Venezuela, S.A.*, No. 02 Civ. 0795 (CBM), 2003 WL 21878798, at *8 (S.D.N.Y. Aug. 8, 2003) ("*Lyondell*"). The principle for which the Court cited *Dunhill* – that the act of state doctrine "should not be extended to include the repudiation of a purely commercial obligation" – was stated in Part III of *Dunhill*, in which only three justices joined. Justice Stevens, concurring, joined only Parts I and II. *Dunhill* at 715. Justice Powell, also concurring, implicitly rejected it, stating that "the line between commercial and political acts of a foreign state often will be difficult to delineate." *Id*. Four dissenters expressly disagreed with the "purely commercial" standard proposed in Part III. *Id*. at 715, 724-28. In *Lyondell*, Judge Motley correctly pointed out that in *Dunhill*, only a plurality supported that standard, and that in *Braka v. Bancomer, S.N.C.*, 762 F.2d 222, 225 (2d Cir. 1985), "the Second Circuit decided to 'leave for another day consideration of the possible existence in this Circuit of a commercial exception to the act of state doctrine under *Dunhill*.'" 2003 WL 21878798, at *8. Therefore, there is substantial ground for difference of opinion as to whether the Court's act of state ruling was premised on an incorrect legal standard.

As to the second question – whether the Court should have deferred to expert opinion on Argentine law – this month the Second Circuit reaffirmed the principle that district courts are "bound" to do so. In *In re Vitamin C Antitrust Litigation*, No. 13-4791-cv, slip op. (2d Cir. Sept. 20, 2016), the appeals court reversed, based on international comity, a $147 million judgment, entered after ten years of litigation including a jury trial, and directed dismissal of the case because the district court failed to give due deference to the Chinese government's interpretation of its own law. The court stated:

> [W]e reaffirm the principle that when a foreign government, acting through counsel or otherwise, directly participates in U.S. court proceedings by providing a sworn evidentiary proffer regarding the construction and effect of its laws and regulations, which is reasonable under the circumstances presented, a U.S. court is *bound* to defer to those statements. [*Id*. at 30 (emphasis added).]

In this case, the Court determined that the internal affairs of YPF, and therefore Petersen's contract claim under the bylaws, are governed by Argentine law (Order at 39). Yet, in interpreting the intervention decree, the expropriation law and the bylaws, for purposes of determining the validity of Argentina's acts under the act of state analysis, the Court did not give any deference to (and did not discuss) the proffered opinions concerning the bylaws' enforceability *under Argentine law* in the context of the expropriation process (Order at 22-24).

*See* Fed. R. Civ. P. 44.1.  Argentina's and YPF's experts categorically, and reasonably, opined that the bylaws' tender offer provisions were not enforceable in the context of the expropriation process (Mata [Dkt. 24] ¶ 62; *see also id.*, ¶¶ 4-19, 30-35, 56-63; Kemelmajer [Dkt. 36] ¶¶ 14-22; Mata Reply [Dkt. 51] ¶¶ 4-17).  Petersen's experts differed, not surprisingly, as to the *ultimate issue* of whether the tender offer provisions conflicted with Argentine law.  But, even Petersen's experts interpreted the bylaws as requiring that Argentina make a tender offer *before* it took control over YPF (Bianchi [Dkt. 47] ¶¶ 28, 31, 38; Rovira [Dkt. 46] ¶ 42).  Under this interpretation by Petersen's own experts, Argentina breached the bylaws *by its concededly sovereign act of taking control of YPF*; thus, the claims in this case indeed conflict with valid sovereign acts of Argentina.  When Argentina's counsel referred, at oral argument, to this interpretation by Petersen's experts, the Court stated that it was not interested in what the experts said (Tr. at 8:9-10).  We respectfully submit that there is substantial ground for difference of opinion as to whether, in analyzing the act of state doctrine, the Court failed to give due deference to the opinions of Argentine law experts.

The third question – whether Argentina's act of not making a tender offer was a commercial or sovereign act in the context of the expropriation process – is already encompassed by the pending appeal as to the sovereign immunity ruling and, we submit, presents similar grounds for difference of opinion as in the sovereign immunity context.

**Materially advance the ultimate termination of the litigation**.  Allowing an immediate appeal of the act of state ruling not only would advance the ultimate termination of the litigation, it would also cause no delay.  That is because the appeal from both rulings – on sovereign immunity and act of state – would proceed simultaneously.  As Judge Furman stated in granting certification in *Atlantica*, No. 12 Civ. 8852 (JMF), 2014 WL 1881075, at *2-3 (S.D.N.Y. May 9, 2014), "given the pending appeal of the FSIA ruling and the resulting stay of all further proceedings in this Court, even if the first two Section 1292(b) factors tilted slightly in Plaintiffs' favor, the weight of the third factor would call for certification."  Judge Pauley used similar reasoning in granting certification in *Figueiredo Ferraz Consultoria E Engenharia De Projeto Ltda. v. Republic of Peru*, No. 08 Civ. 492 (WHP), 2009 WL 5177977, at *1-2 (S.D.N.Y. Dec. 15, 2009) ("*Peru*"); in that case, the Court of Appeals accepted the certification and reversed on one of the certified grounds, 665 F.3d 384, 388-89 (2d Cir. 2011).  *See also* 16 Wright & Miller § 2929.1 ("In cases in which appeal is going to be taken in any event, § 1292(b) should be available to frame an optimal appeal package without undue concern for the criteria that might defeat certification if no appeal could otherwise be taken.").

In conclusion, we respectfully request that the Court (in order of preference) either: (1) issue an order certifying the Order for immediate appeal; or (2) allow Argentina to file a § 1292(b) motion seeking such certification; or (3) schedule a pre-motion conference on such a motion at the earliest time convenient to the Court.

                Respectfully submitted,
                s/ *Martin Domb*

Copy to:  All counsel of record (via ECF)