# CRAVATH, SWAINE & MOORE LLP

| | | WORLDWIDE PLAZA | | |
|---|---|---|---|---|
| JOHN W. WHITE | THOMAS E. DUNN | 825 EIGHTH AVENUE | ALYSSA K. CAPLES | JONATHAN J. KATZ |
| EVAN R. CHESLER | MARK I. GREENE | NEW YORK, NY 10019-7475 | JENNIFER S. CONWAY | MARGARET SEGALL D'AMICO |
| RICHARD W. CLARY | DAVID R. MARRIOTT | | MINH VAN NGO | RORY A. LERARIS |
| STEPHEN L. GORDON | MICHAEL A. PASKIN | TELEPHONE: +1-212-474-1000 | KEVIN J. ORSINI | KARA L. MUNGOVAN |
| ROBERT H. BARON | ANDREW J. PITTS | FACSIMILE: +1-212-474-3700 | MATTHEW MORREALE | NICHOLAS A. DORSEY |
| DAVID MERCADO | MICHAEL T. REYNOLDS | | JOHN D. BURETTA | ANDREW C. ELKEN |
| CHRISTINE A. VARNEY | ANTONY L. RYAN | | J. WESLEY EARNHARDT | JENNY HOCHENBERG |
| PETER T. BARBUR | GEORGE E. ZOBITZ | | YONATAN EVEN | VANESSA A. LAVELY |
| THOMAS G. RAFFERTY | GEORGE A. STEPHANAKIS | | BENJAMIN GRUENSTEIN | G.J. LIGELIS JR. |
| MICHAEL S. GOLDMAN | DARIN P. MCATEE | | JOSEPH D. ZAVAGLIA | MICHAEL E. MARIANI |
| RICHARD HALL | GARY A. BORNSTEIN | CITYPOINT | STEPHEN M. KESSING | LAUREN R. KENNEDY |
| JULIE A. NORTH | TIMOTHY G. CAMERON | ONE ROPEMAKER STREET | LAUREN A. MOSKOWITZ | SASHA ROSENTHAL-LARREA |
| ANDREW W. NEEDHAM | KARIN A. DEMASI | LONDON EC2Y 9HR | DAVID J. PERKINS | ALLISON M. WEIN |
| STEPHEN L. BURNS | DAVID S. FINKELSTEIN | TELEPHONE: +44-20-7453-1000 | JOHNNY G. SKUMPIJA | |
| KATHERINE B. FORREST | DAVID GREENWALD | FACSIMILE: +44-20-7860-1150 | J. LEONARD TETI, II | |
| KEITH R. HUMMEL | RACHEL G. SKAISTIS | | D. SCOTT BENNETT | |
| DAVID J. KAPPOS | PAUL H. ZUMBRO | | TING S. CHEN | SPECIAL COUNSEL |
| DANIEL SLIFKIN | ERIC W. HILFERS | | CHRISTOPHER K. FARGO | SAMUEL C. BUTLER |
| ROBERT I. TOWNSEND, III | GEORGE F. SCHOEN | WRITER'S DIRECT DIAL NUMBER | KENNETH C. HALCOM | |
| WILLIAM J. WHELAN, III | ERIK R. TAVZEL | 212-474-1760 | DAVID M. STUART | |
| PHILIP J. BOECKMAN | CRAIG F. ARCELLA | | AARON M. GRUBER | |
| WILLIAM V. FOGG | DAMIEN R. ZOUBEK | WRITER'S EMAIL ADDRESS | O. KEITH HALLAM, III | |
| FAIZA J. SAEED | LAUREN ANGELILLI | mpaskin@cravath.com | OMID H. NASAB | OF COUNSEL |
| RICHARD J. STARK | TATIANA LAPUSHCHIK | | DAMARIS HERNÁNDEZ | MICHAEL L. SCHLER |

June 24, 2019

<u>*Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. v. Argentine Republic and YPF S.A., No. 15-cv-02739 (LAP)*</u>

Dear Judge Preska:

        We represent Defendant YPF S.A. ("YPF") in the above-referenced action.  On April 30, 2019, this Court entered an order staying all proceedings until the "resolution of the *certiorari* petition currently pending before the Supreme Court of the United States".  (ECF No. 84.)  On June 24, 2019, the Supreme Court denied the *certiorari* petition.  (Order List, 587 U.S. __ (June 24, 2019).)  Thus, we now submit this letter pursuant to Part 2A of Your Honor's Individual Rules of Practice to respectfully request a pre-motion conference in connection with YPF's anticipated motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which, should the Court agree, YPF plans to file concurrently with its Answer within fourteen days from today.[1]  As explained below, YPF's anticipated motion will seek dismissal on the basis of:  (1) the doctrine of *forum non conveniens*; (2) standing; and (3) failure to state a claim, or otherwise bring a claim within the applicable statute of limitations, under controlling Argentine law.

        *First,* YPF is entitled to judgment on the pleadings pursuant to the doctrine of *forum non conveniens*.  Plaintiffs' choice of forum in this case is entitled to little deference because, as this Court previously explained, "the forum is not home to Defendants, Plaintiffs, or Plaintiffs' owners or receiver".  (ECF No. 63 at 31 ("deference to Plaintiffs' choice of forum is not at its greatest height").)  Instead, Plaintiffs ("Petersen") are sole shareholder corporations organized under the laws of the Kingdom of Spain (*id.* ¶ 6), bringing these claims against Argentina and YPF S.A., a stock corporation organized under the laws of Argentina.  In addition, as this Court has observed, all of the relevant facts "took place in Argentina".  (ECF

---

[1] YPF acknowledges that Plaintiffs filed a letter today requesting a pre-motion conference for the purpose of moving for partial summary judgment.  (ECF No. 85.)  Pursuant to Part 2A of Your Honor's Individual Rules, YPF will respond to that letter on or before June 27, 2019.

No. 63 at 14.)  The Second Circuit has held repeatedly that, where a dispute (like this one) concerns conduct by foreign plaintiffs and foreign defendants taking place outside the United States, the selection of a U.S. forum is entitled to little deference.  *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 522-23 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x 623 (2d Cir. 2009); *see also Acosta v. JPMorgan Chase & Co.,* 219 F. App'x 83, 85-86 (2d Cir. 2007).

Importantly, the concerns that animated this Court's conclusion that Argentina was not an adequate forum in 2016 no longer persist today.[2]  As this Court noted in its motion to dismiss decision, "[c]ourts generally have found Argentina to be an adequate alternative forum".  (*See* ECF No. 63 at 32.)  This case is no exception.  Plaintiffs' professed fear regarding the prior government's investigation of King & Spalding and Burford Capital in Argentina—which the Court substantially relied on in denying Argentina's initial *forum non conveniens* motion (*see* ECF No. 63 at 32-34)—is no longer reasonable.  *See NML Capital, Ltd. v. Republic of Argentina*, No. 11-CV-4908 (TPG), 2016 WL 715732, at *3 (S.D.N.Y. Feb. 19, 2016), *aff'd sub nom. Aurelius Capital Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98 (2d Cir. 2016) ("President Macri's election marked a turning point in the Republic's attitude and actions.  Since the election, President Macri's government has consistently declared its desire to resolve [legal] disputes and reopen the country to foreign investors.").  In fact, since Macri took office, the investigation into King & Spalding and Burford Capital was terminated *with prejudice*.

Plaintiffs seek to manufacture connections to New York by relying on YPF's U.S. IPO Prospectus throughout their Complaint.  (*See* ECF No. 1 at ¶¶ 2, 3, 5, 10, 14-15, 24-25, 41, 65, 83.)  However, that document contains a forum-selection clause which vests Argentine courts with exclusive jurisdiction over this action. (YPF's Form F-1 (June 28, 1993) at 90) ("[A]ny action relating to enforcement of the Bylaws or a shareholder's rights thereunder is required to be brought in an Argentine court.").)  Plaintiffs cannot cherry pick which provisions of the Prospectus to enforce.  *See AIG Mexico Seguros Interamericana, S.A. de C.V. v. M/V Zapoteca*, 844 F. Supp. 2d 440, 442 (S.D.N.Y. 2012) (Preska, J.), *aff'd*, 508 F. App'x 58 (2d Cir. 2013).

The forum-selection clause is also consistent with controlling Argentine law, which mandates that Argentine courts have exclusive jurisdiction over Plaintiffs' claims.  If this case were to proceed in New York, it would impose an unnecessary burden on local jurors and unnecessarily contribute to congestion in the Southern District of New York.  *See Karlitz v. Regent Intern. Hotels, Ltd.*, 95 CIV. 10136 LAP, 1997 WL 88291, at *3 (S.D.N.Y. Feb. 28, 1997) (Preska, J.) ("Scarcity of judicial resources requires that this court in particular decline to exercise jurisdiction over those cases, like the present one, that clearly have a much stronger connection to another forum.").  By contrast, Argentina has an overwhelming interest in having this controversy decided at home.

Additionally, YPF will demonstrate that, most, if not all, witnesses are located in Argentina beyond this Court's subpoena power, and, due to legal restrictions, certain crucial witnesses are likely to be unable to leave Argentina to testify in the United States even if they were inclined to do so voluntarily.  Thus, trial in New York would not only be inconvenient to

---

[2] While Argentina previously moved for dismissal on the basis of *forum non conveniens*, YPF did not.

witnesses and the parties, but it would also "unquestionably [] deprive the finder of fact of the live testimony of unwilling [] witnesses and quite likely would deprive it of a meaningful substitute in the form of depositions." *See First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 450 (S.D.N.Y. 2001), *aff'd sub nom., First Union Nat'l Bank v. Arab African Int'l Bank*, 48 F. App'x 801 (2d Cir. 2002). Thus, Plaintiffs' claims must be dismissed.

*Second*, YPF is entitled to judgment on the pleadings because Plaintiffs lack standing. In 2008, Petersen entered into several "Pledge and Security Agreements" (the "Agreements") with Repsol and The Bank of New York Mellon ("BNYM") to facilitate Petersen's purchase of its 25% interest in YPF from Repsol. (*See, e.g.*, ECF No. 1 at ¶¶ 6, 27, 30.) These Agreements provided that an event of default effectuated a complete assignment from Petersen to BNYM of all the rights and powers of ownership associated with the YPF shares. As the Complaint acknowledges, in May 2012, Petersen defaulted on its loan obligations. (ECF No. 1 at ¶ 42.) As a result, BNYM (but not Petersen) attended the June 4, 2012 shareholders' meeting and voted the shares. Thus, because Petersen defaulted on their loan obligations in May 2012, they cannot establish that they suffered an "injury" that is "fairly traceable" to the challenged action. *See Nat. Res. Def., Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013) (internal quotations omitted). Accordingly, Petersen lacks standing to bring claims against YPF for its alleged failure to prevent Argentina from voting its shares at the June 4, 2012 shareholders' meeting.

*Third*, Plaintiffs' claims must be dismissed because they fail to state a claim under controlling Argentine law and their claims are otherwise time-barred. As YPF's motion will demonstrate, controlling Argentine law does not recognize a "guarantor" theory of liability such that YPF could be liable for the obligations its Bylaws impose on potential control acquirers. The only actions YPF could have taken to enforce any tender offer requirement, to the extent such obligation was not preempted by the intervention decrees and expropriation, are those enumerated in Bylaw § 7(h), which would include blocking Argentina's vote at the June 4, 2012 shareholders' meeting, not counting the shares subject to expropriation in computing the existence of a quorum at the shareholders' meeting and subsequently not paying dividends to Argentina. (*See* ECF No. 27-2 at 13; *see also* ECF No. 1 at ¶¶ 69, 71, 74, 76.)[3] However, pursuant to Argentine corporate law, which undisputedly governs Plaintiffs' claims, a shareholder seeking to enforce a company's obligations under its bylaws must object to the company's actions during a shareholders' meeting and file a lawsuit within three months of the meeting. Plaintiffs did not comply with the statutory requirements and object to Argentina voting its shares at the June 4, 2012 shareholders' meeting at issue; nor did they file a claim within three months of the meeting. Accordingly, Plaintiffs' claims fail.

YPF intends to raise several substantiated grounds for dismissal in its motion for judgment on the pleadings, and as such, respectfully requests an enlargement of the page limit to 35 pages.

---

[3] As detailed further in the pre-motion letter filed today by Argentina (ECF No. 86), YPF expressly reserves its right to argue that any alleged obligations it had under the Bylaws would not have been triggered until the expropriation of Repsol's shares was finalized in 2014.

Respectfully,

*/s/* Michael A. Paskin

Michael A. Paskin
Damaris Hernández

Honorable Loretta A. Preska, U.S.D.J.
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

VIA ECF

Copies to: All Counsel of Record via ECF