UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA, S.A.U.　　:
and PETERSEN ENERGÍA, S.A.U.,　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiffs,　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　-against-　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
ARGENTINE REPUBLIC and YPF S.A.,　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　　:
　　　　　　　　　　　　　　　　　　　:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:15-cv-02739-LAP

## DEFENDANT THE ARGENTINE REPUBLIC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendant, the Argentine Republic ("Argentina" or the "Republic"), by and through its undersigned counsel, hereby answers the Complaint of Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (together, "Petersen" or "Plaintiffs") as follows:

## NATURE OF THE ACTION[1]

1.　　　Argentina denies the allegations in Paragraph 1, except admits (1) that an action captioned *Repsol YPF, S.A. v. Republic of Argentina*, No. 12-CV-3877 (TPG), was filed in the United States District Court for the Southern District of New York prior to the commencement of this action, and Argentina respectfully refers the Court to the documents filed in that action for their complete and accurate terms, (2) that this action purports to be a direct action and not a class action, and (3) that YPF, S.A. ("YPF") is an Argentine public company registered with the U.S. Securities and Exchange Commission ("SEC") and whose American Depositary Receipts

---

[1] The headings herein appear in the Complaint and are only included in the Answer for organizational purposes to aid the Court.  To the extent any response to the headings in the Complaint is required, Argentina denies the allegations therein.

("ADRs") are traded on the New York Stock Exchange ("NYSE").  Argentina lacks knowledge

or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth

sentence of Paragraph 1, except admits that American Depositary Shares ("ADSs") of YPF are

evidenced by ADRs listed on the NYSE and provided by the Bank of New York Mellon as

depositary agent pursuant to a deposit agreement governed by New York law.

2.      Argentina denies the allegations in Paragraph 2, except admits that YPF was a

state-owned oil company that was privatized through an initial public offering ("IPO") in 1993.

Insofar as the allegations purport to describe or summarize the information contained in the U.S.

IPO Prospectus of YPF (the "Prospectus") and other public filings, Argentina respectfully refers

the Court to the Prospectus and other public filings referred to in Paragraph 2 for their complete

and accurate terms.  The allegations in Paragraph 2 otherwise purport to state conclusions of law

to which no response is required.

3.      Argentina denies the allegations in Paragraph 3, except admits that in 2012

Argentina passed legislation to expropriate a majority stake in YPF and that Axel Kicillof

temporarily served as Vice-Intervenor.  Argentina further admits that on April 17, 2012, Mr.

Kiciloff made a statement, in Spanish, during a plenary meeting of the Committees of Budget

and Finance, Constitutional Affairs, and Mining, Energy and Oil, and respectfully refers this

Court to that statement in full for its nature and context.  The allegations in Paragraph 3

otherwise purport to state conclusions of law to which no response is required.

4.      Argentina denies the allegations in Paragraph 4, except admits that Petersen filed

for bankruptcy.  Insofar as the allegations purport to describe or summarize the information

contained in public filings, Argentina respectfully refers the Court to those public filings for their

complete and accurate terms.  The allegations in Paragraph 4 otherwise purport to state

conclusions of law to which no response is required.  To the extent Plaintiffs allege to have owned YPF shares, Argentina incorporates its Fifth Defense.

5.      The allegations in Paragraph 5 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 5.

**PARTIES**

6.      Argentina admits that Plaintiffs purportedly acquired shares of YPF stock amounting to approximately 25% ownership of YPF between 2008 and 2011; entered into financing agreements with financial institutions and Repsol; Petersen purported to pay these loans using dividends it caused YPF to issue; Petersen's loans were secured by its YPF shares; and Petersen entered into bankruptcy.  Argentina otherwise denies the allegations in Paragraph 6. To the extent Plaintiffs allege to have legitimately acquired YPF shares, Argentina incorporates its Fifth Defense.

7.      Argentina admits the first sentence of Paragraph 7; it is a controlling shareholder of YPF; Argentina was the sole owner of YPF before its 1993 IPO; Argentina retained Class A shares in YPF after the IPO, which gave Argentina a designated representative on the Company's board of directors; and after the IPO, private shareholders (including Repsol and, purportedly, Petersen) were majority owners of YPF.  Argentina otherwise denies the allegations in Paragraph 7.  To the extent Plaintiffs allege to have owned YPF shares, Argentina incorporates its Fifth Defense.

8.      Argentina admits the allegations in Paragraph 8.

## JURISDICTION AND VENUE

9.      The allegations in Paragraph 9 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 9, except admits that Argentina is a foreign state.

10.      The allegations in Paragraph 10 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 10.

## FACTUAL ALLEGATIONS

### I.      Argentina's Privatization of YPF and Adoption of the Tender Offer Requirements

11.      Argentina denies the allegations in Paragraph 11, except admits that YPF and its predecessors were state-owned and state-run prior to YPF's privatization and respectfully refers the Court to the Prospectus for its complete and accurate terms.  The allegations in the sixth sentence of Paragraph 11 purport to state conclusions of law to which no response is required.

12.      Argentina denies the allegations in Paragraph 12, except admits that in the early 1990s Argentina privatized YPF.  The allegations in Paragraph 12 otherwise purport to state conclusions of law to which no response is required.

### A.      YPF's IPO

13.      Argentina denies the allegations in Paragraph 13, except admits that on or about June 29, 1993, YPF launched an IPO of its Class D shares and that the offering was registered with the SEC, and respectfully refers the Court to the Prospectus for its complete and accurate terms.  The allegations in Paragraph 13 otherwise purport to state conclusions of law to which no response is required.

14.     Argentina denies the allegations in Paragraph 14, except admits that (1) YPF's ADRs are issued by the Bank of New York Mellon, a New York banking corporation, pursuant to a Deposit Agreement governed by New York law, and (2) the Bank of New York Mellon holds the underlying YPF Class D shares in its capacity as a depositary bank.  Insofar as the allegations purport to describe or summarize the information contained in public filings, Argentina respectfully refers the Court to those public filings for their complete and accurate terms.  The allegations in Paragraph 14 otherwise purport to state conclusions of law to which no response is required.

15.     Argentina denies the allegations in Paragraph 15, except to respectfully refer the Court to the referenced public filings for a complete and accurate statement of their contents.

**B.      Adoption of the Tender Offer Requirement in YPF's Bylaws**

16.     Argentina denies the allegations in Paragraph 16, except admits that certain amendments to YPF's bylaws (the "Bylaws") took effect in May 1993, and Argentina respectfully refers the Court to YPF's Bylaws for their complete and accurate terms.

**C.      Section 7 of the Bylaws Requires a Tender Offer Upon a Control Acquisition**

17.     Argentina denies the allegations in Paragraph 17, except admits that tender offers to acquire all YPF shares have been launched on two occasions (including Petersen's purported acquisition of Class D shares through a public tender offer), and Argentina respectfully refers the Court to YPF's Bylaws for their complete and accurate terms.  The allegations in Paragraph 17 otherwise purport to state conclusions of law to which no response is required.

**D.      The Offer Requirement Applies to Control Acquisitions by Argentina**

18.     Argentina denies the allegations in Paragraph 18, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

19.     Argentina denies the allegations in Paragraph 19, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

20.     Argentina denies the allegations in Paragraph 20, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

**E.      The Bylaws Specify the Price Shareholder Must Be Offered**

21.     Argentina denies the allegations in Paragraph 21, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

**F.      The Bylaws Specify That the Tender Offer Shall Be Made in New York**

22.     Argentina denies the allegations in Paragraph 22, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

23.     Argentina denies the allegations in Paragraph 23, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.  The allegations in Paragraph 23 otherwise purport to state conclusions of law to which no response is required.

**G.      Argentina and YPF Reiterate the Tender Offer Commitment in the U.S. IPO Prospectus and Other SEC Filed Documents**

24.     Argentina denies the allegations in Paragraph 24, except to respectfully refer the Court to the Prospectus for its complete and accurate terms.  The allegations in Paragraph 24 otherwise purport to state conclusions of law to which no response is required.

25.     Argentina denies the allegations in Paragraph 25, except to respectfully refer the Court to YPF's Bylaws, the Prospectus and the referenced documents filed with the SEC for their complete and accurate terms.

26.     Argentina denies the allegations in Paragraph 26, except admits that Argentina held 3,764 of YPF's Class A shares as of December 31, 2011, and respectfully refers the Court to YPF's Bylaws for their complete and accurate terms regarding Argentina's enumerated rights as

a Class A shareholder.  The allegations in Paragraph 26 otherwise purport to state conclusions of law to which no response is required.

## II.     Petersen's Acquisition of YPF Shares in Reliance on the Tender Offer Protection

27.     Argentina admits that Petersen and Repsol portrayed that they had entered into agreements with each other and others to facilitate Petersen's purchase of YPF shares, but lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27.  To the extent Plaintiffs allege to have owned YPF shares, Argentina incorporates its Fifth Defense.

28.     Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 28, except it admits Petersen purportedly acquired Class D shares of YPF between 2008 and 2011, and otherwise respectfully refers the Court to public filings of YPF and referenced agreements, including the Shareholders' Agreement, for their complete and accurate terms regarding such acquisitions, to the extent they may be referenced therein.  To the extent Plaintiffs allege to have legitimately acquired YPF shares, Argentina incorporates its Fifth Defense.

29.     Argentina denies the allegations in Paragraph 29.

30.     Argentina admits that Petersen and Repsol portrayed that they had entered into agreements with each other and others to facilitate Petersen's purchase of YPF shares, but Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30, except Argentina admits Petersen and Repsol caused YPF to distribute dividends twice per year and to declare an "extraordinary dividend" of $850 million. Argentina respectfully refers the Court to YPF's Bylaws and the referenced agreements,

including the shareholders' agreement between Petersen and Repsol ("Shareholders' Agreement"), for their complete and accurate terms.

### III.    Argentina and YPF's Campaign To Devalue YPF's Shares

31.    Argentina denies the allegations in Paragraph 31, except admits that YPF paid certain dividends at certain times as directed by the controlling shareholders and respectfully refers the Court to the Shareholders' Agreement for its complete and accurate terms.  Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in the last sentence of Paragraph 31.

32.    Argentina denies the allegations in Paragraph 32, except admits that Argentina did ultimately retake control of YPF in 2014, when the expropriation of Repsol's shares of YPF was completed.

33.    Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33, except refers the Court to publicly available price data for YPF's ADRs and Moody's ratings.

34.    Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34, except refers the Court to publicly available price data for YPF's ADRs, and otherwise denies the allegations in Paragraph 34.

### IV.    Argentina and YPF's Violations of the Bylaws

35.    The allegations in Paragraph 35 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 35, except admits that (1) on or about April 16, 2012, President Fernández de Kirchner introduced to the Republic's Congress a bill to declare 51% of YPF's Class D shares to be of public utility and subject to expropriation; (2) on or about May 4, 2012, President

Fernández de Kirchner signed that bill, and the law went into effect on or about May 7, 2012; (3) Executive Decree No. 530/2012 is dated April 16, 2012; and (4) Julio De Vido was appointed Intervenor.  Argentina respectfully refers the Court to the text of the referenced executive and legislative acts for their full and complete provisions.

36.      Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36 and otherwise denies the allegations in Paragraph 36, except Argentina admits that Julio De Vido exercised powers conferred upon him as Intervenor, and Argentina then temporarily occupied 51% of YPF's Class D shares pending implementation of legislation declaring these shares to be of public utility and subject to expropriation.  Argentina further respectfully refers the Court to Law 26,741.

37.      Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 37, except admits that the NYSE suspended trading of YPF's ADRs on April 17, 2012 and resumed trading the following day.  Argentina further respectfully refers the Court to publicly available price data for YPF's ADRs.

38.      Argentina denies the allegations in Paragraph 38, except refers the Court to Decree No. 532 for its complete content, and admits that on April 17, 2012, Mr. Kiciloff made a statement, in Spanish, during a plenary meeting of the Committees of Budget and Finance, Constitutional Affairs, and Mining, Energy and Oil, and respectfully refers this Court to that statement in full for its nature and context.

39.      Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39, except admits that YPF's board meeting did not take place on April 23, 2012, and YPF issued a dividend in November 2012.

40.     The allegations in Paragraph 40 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 40, except admits that Law 26,741 was signed on May 4, 2012 and became effective on May 7, 2012, and Argentina respectfully refers the Court to the text of Law 26,741 and Law 21,499 for their full and complete provisions.

## V.     Argentina's and YPF's Breaches of Their Contractual Duties Put Petersen into Loan Default and Liquidation

41.     The allegations in Paragraph 41 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 41, except to respectfully refer the Court to YPF's Bylaws, the Prospectus and other referenced public filings for their complete and accurate terms.

42.     The allegations in Paragraph 42 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 42, except admits that Petersen entered bankruptcy.

43.     Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 43 and otherwise refers the Court to publicly available information regarding the historical share price of YPF.

44.     The allegations in Paragraph 44 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 44, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

45.     Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 45, except admits that Petersen's creditors foreclosed on Petersen's purported YPF shares, and otherwise denies any unlawful conduct by

Argentina.  To the extent Plaintiffs allege to have owned YPF shares, Argentina incorporates its Fifth Defense.

46.     Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 46, except admits that Petersen filed for bankruptcy.  Argentina denies any breach by Argentina of its legal obligations.

47.     Argentina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 47, except admits that it is aware of an agreement between Petersen and Prospect Investments LLC, a wholly owned subsidiary of Burford Capital LLC, and otherwise denies any misconduct by Argentina.

48.     Argentina denies the allegations in Paragraph 48, except admits that on May 15, 2012, Repsol and Texas Yale Capital Corp. filed *Repsol YPF, S.A. v. Republic of Argentina*, No. 12-CV-3877 (TPG), in the United States District Court for the Southern District of New York, which was voluntarily dismissed in May 2014 after Argentina and Repsol entered into a settlement, and respectfully refers the Court to the documents filed in that action for their complete and accurate terms.

49.     The allegations in Paragraph 49 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 49.

### FIRST CAUSE OF ACTION:
### BREACH OF CONTRACT BY ARGENTINA

50.     Argentina is not required to respond to Paragraph 50 because it contains no direct allegations of fact.  Inasmuch as Paragraph 50 incorporates allegations from Paragraphs 1 through 49, Argentina respectfully refers the Court to Argentina's answers to those paragraphs and incorporates those answers as if fully set forth herein.

51.     The allegations in Paragraph 51 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 51, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

52.     The allegations in Paragraph 52 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 52, except admits that it was a shareholder of YPF at all the relevant times and respectfully refers the Court to YPF's Bylaws for their complete and accurate terms.

53.     The allegations in Paragraph 53 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 53, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

54.     Argentina denies the allegations in Paragraph 54.

## SECOND CAUSE OF ACTION:
## ANTICIPATORY BREACH BY ARGENTINA

55.     Argentina is not required to respond to Paragraph 55 because it contains no direct allegations of fact.  Inasmuch as Paragraph 55 incorporates allegations from Paragraphs 1 through 54, Argentina respectfully refers the Court to Argentina's answers to those paragraphs and incorporates those answers as if fully set forth herein.

56.     The allegations in Paragraph 56 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 56, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

57.     The allegations in Paragraph 57 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 57, except admits that it was a shareholder of YPF at all the relevant times and to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

58.     The allegations in Paragraph 58 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 58, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

59.     Argentina denies the allegations in Paragraph 59.

### THIRD CAUSE OF ACTION: BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING BY ARGENTINA

60.     Argentina is not required to respond to Paragraph 60 because it contains no direct allegations of fact.  Inasmuch as Paragraph 60 incorporates allegations from Paragraphs 1 through 59, Argentina respectfully refers the Court to Argentina's answers to those paragraphs and incorporates those answers as if fully set forth herein.

61.     The allegations in Paragraph 61 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 61.

62.     The allegations in Paragraph 62 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 62.

63.     The allegations in Paragraph 63 purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 63.

## FOURTH CAUSE OF ACTION:
## PROMISSORY ESTOPPEL AGAINST ARGENTINA

64.     Argentina is not required to respond to Paragraph 64 because it contains no direct allegations of fact.  Inasmuch as Paragraph 64 incorporates allegations from Paragraphs 1 through 63, Argentina respectfully refers the Court to Argentina's answers to those paragraphs and incorporates those answers as if fully set forth herein.

65.     Paragraph 65 contains allegations to which no response is necessary pursuant to the Court's September 9, 2016 Opinion and Order (the "Order") dismissing Plaintiffs' claim for promissory estoppel against Argentina.  The allegations in Paragraph 65 also purport to state conclusions of law to which no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 65, except to respectfully refer the Court to YPF's Bylaws, the Prospectus and other referenced public filings for their complete and accurate terms.

66.     Paragraph 66 contains allegations to which no response is necessary pursuant to the Court's Order.  To the extent any response is required, Argentina denies the allegations in Paragraph 66.

67.     Paragraph 67 contains allegations to which no response is necessary pursuant to the Court's Order.  To the extent any response is required, Argentina denies the allegations in Paragraph 67.

## FIFTH CAUSE OF ACTION:
## BREACH OF CONTRACT BY YPF

68.      Argentina is not required to respond to Paragraph 68 because it contains no direct allegations of fact.  Inasmuch as Paragraph 68 incorporates allegations from Paragraphs 1 through 67, Argentina respectfully refers the Court to Argentina's answers to those paragraphs and incorporates those answers as if fully set forth herein.

69.      The allegations in Paragraph 69 are not directed at Argentina.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 69, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

70.      The allegations in Paragraph 70 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 70,  except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

71.      The allegations in Paragraph 71 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 71, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

72.      The allegations in Paragraph 72 purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 72.

## SIXTH CAUSE OF ACTION:
## ANTICIPATORY BREACH BY YPF

73.     Argentina is not required to respond to Paragraph 73 because it contains no direct allegations of fact.  Inasmuch as Paragraph 73 incorporates allegations from Paragraphs 1 through 72, Argentina respectfully refers the Court to Argentina's answers to those paragraphs and incorporates those answers as if fully set forth herein.

74.     The allegations in Paragraph 74 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 74, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

75.     The allegations in Paragraph 75 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 75, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

76.     The allegations in Paragraph 76 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 76, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

77.     The allegations in Paragraph 77 purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 77.

## SEVENTH CAUSE OF ACTION:
## BREACH OF IMPLIED DUTY
## OF GOOD FAITH AND FAIR DEALING BY YPF

78.     Argentina is not required to respond to Paragraph 78 because it contains no direct allegations of fact.  Inasmuch as Paragraph 78 incorporates allegations from Paragraphs 1 through 77, Argentina respectfully refers the Court to Argentina's answers to those paragraphs and incorporates those answers as if fully set forth herein.

79.     Paragraph 79 contains allegations to which no response is necessary pursuant to the Court's Order dismissing Plaintiffs' claim for breach of the implied duty of good faith and fair dealing against YPF.  Furthermore, the allegations in Paragraph 79 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 79, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

80.     Paragraph 80 contains allegations to which no response is necessary pursuant to the Court's Order dismissing Plaintiffs' claim for breach of the implied duty of good faith and fair dealing against YPF.  Furthermore, the allegations in Paragraph 80 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 80, except to respectfully refer the Court to YPF's Bylaws for their complete and accurate terms.

81.     Paragraph 81 contains allegations to which no response is necessary pursuant to the Court's Order dismissing Plaintiffs' claim for breach of the implied duty of good faith and fair dealing against YPF.  Furthermore, the allegations in Paragraph 81 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 81.

## EIGHTH CAUSE OF ACTION:
## PROMISSORY ESTOPPEL AGAINST YPF

82.     Argentina is not required to respond to Paragraph 82 because it contains no direct allegations of fact.  Inasmuch as Paragraph 82 incorporates allegations from Paragraphs 1 through 81, Argentina respectfully refers the Court to Argentina's answers to those paragraphs and incorporates those answers as if fully set forth herein.

83.     Paragraph 83 contains allegations to which no response is necessary pursuant to the Court's Order dismissing Plaintiffs' claim for promissory estoppel against YPF. Furthermore, the allegations in Paragraph 83 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 83, except to respectfully refer the Court to YPF's Bylaws, the Prospectus, and other referenced filings for their complete and accurate terms.

84.     Paragraph 84 contains allegations to which no response is necessary pursuant to the Court's Order dismissing Plaintiffs' claim for promissory estoppel against YPF. Furthermore, the allegations in Paragraph 84 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 84.

85.     Paragraph 85 contains allegations to which no response is necessary pursuant to the Court's Order dismissing Plaintiffs' claim for promissory estoppel against YPF. Furthermore, the allegations in Paragraph 85 are not directed at Argentina and purport to state conclusions of law.  Accordingly, no response is required.  To the extent any response is required, Argentina denies the allegations in Paragraph 85.

**GENERAL DENIAL**

Argentina denies each and every allegation, statement, matter and thing in the Complaint not expressly admitted or qualified herein.

**AFFIRMATIVE DEFENSES**[2]

Without undertaking any burden of proof not otherwise assigned to it by law, Argentina asserts the following affirmative and other defenses with respect to the claims Plaintiffs purport to assert in the Complaint:

**FIRST DEFENSE
EXCLUSIVE JURISDICTION IN ARGENTINA
UNDER ARGENTINE LAW**

Plaintiffs are precluded from suing Argentina in this Court because under controlling Argentine law disputes arising out of the bylaws of an Argentine corporation must be brought in the jurisdiction where the corporation maintains its registered office, which in this case is the City of Buenos Aires, Argentina.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

The internal affairs of YPF are governed by Argentine law.  Article 5, Section 11 of the

---

[2] The Argentine Republic pleads these affirmative defenses to comply with the Federal Rules of Civil Procedure, but without waiver of its jurisdictional objections to the Court's exercise of jurisdiction over the Argentine Republic, a sovereign state.  The Argentine Republic further asserts that Plaintiffs' claims and the defenses herein are subject to the exclusive jurisdiction of Argentine courts under controlling Argentine law, as reinforced in the forum-selection clause in the Prospectus filed in connection with YPF's IPO, as they relate to the internal governance of YPF, a corporation organized under Argentine law, and otherwise should be heard in the courts of Argentina pursuant to the doctrine of *forum non conveniens*.  The Argentine Republic has already filed a request for leave to file its motion for judgment on the pleadings based on these and other dispositive grounds.  In the event that Argentina's motion is denied and the Court asserts jurisdiction, then Argentina reserves the right to seek leave to file counterclaims based on the same transactions and occurrences as addressed in the pleadings and defenses, for purposes of recoupment.

Argentine National Code of Civil and Commercial Procedure provides for exclusive jurisdiction over intra-corporate disputes in the place of the company's registered office (unless contracted otherwise, which did not occur here).  YPF is incorporated and has its registered office in the City of Buenos Aires, Argentina.  As a result, the City of Buenos Aires is the exclusive forum for the disputes at issue here.

**SECOND DEFENSE**
**EXCLUSIVE JURISDICTION IN ARGENTINA**
**UNDER FORUM-SELECTION CLAUSE**

Plaintiffs are precluded from suing Argentina in this Court pursuant to the terms of YPF's Prospectus, upon which Plaintiffs rely.  In further support of this defense, Argentina pleads:

The Prospectus contains a section, entitled "Exclusive Jurisdiction," which unambiguously states that YPF's "By-laws are governed by Argentine law and any action relating to the enforcement of the By-laws or a shareholder's rights thereunder is required to be brought in an Argentine court."  Because Plaintiffs' claims explicitly and exclusively relate to the enforcement of YPF's Bylaws and Plaintiffs' alleged rights as a YPF shareholder, this matter is subject to the exclusive forum-selection clause in the Prospectus and cannot be maintained in this forum.

## THIRD DEFENSE
### *FORUM NON CONVENIENS*[3]

This action should be dismissed pursuant to the doctrine of *forum non conveniens*.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

The proper forum for this suit is Argentina because the claims asserted by Plaintiffs are subject to Argentine law and a forum-selection clause, both of which mandate exclusive jurisdiction for Argentine courts.  Additionally, the Republic of Argentina has a compelling public interest in having Argentine courts adjudicate the rights of shareholders in Argentine corporations under Argentine law, as well as the effects of its own sovereign acts, including Law 26,741.  The claims and affirmative defenses raised herein are also overwhelmingly based on conduct and actions that took place in Argentina and require the assessment of Argentine laws and the actions of the Argentine Government.  Additionally, several key witnesses are imprisoned in Argentina or otherwise unable to travel to the United States, and most of the relevant documents are located in Argentina and are written in Spanish.  Argentine courts provide an adequate forum for the resolution of the claims and defenses in this action.  Finally, proceedings in the United States would impose significant and undue burdens on this Court and the parties, which would be avoided if the case proceeded in Argentina.

---

[3] Notwithstanding the Court's prior denial of Argentina's motion to dismiss on *forum non conveniens* grounds, courts allow this grounds for dismissal to be renewed based on a more developed record and/or changed circumstances.  *See, e.g.*, *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 302 (S.D.N.Y. 2012) ("Because the balance of factors has changed [since initial *forum non conveniens motion*] and now point strongly towards dismissal, defendants' motion is now granted."); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, No. 91 CIV. 2873 (RPP), 1992 WL 398446, at *6 (S.D.N.Y. Dec. 21, 1992) (granting renewed *forum non conveniens* motion based on intervening events), *aff'd*, 994 F.2d 996 (2d Cir. 1993).

**FOURTH DEFENSE**
**LACK OF STANDING DUE TO**
**LACK OF CONTEMPORANEOUS OWNERSHIP**

Plaintiffs lack standing to bring the claims asserted in the Complaint because they did not own shares of YPF stock at the time the Argentine Government acquired its controlling stake of Repsol's shares through the sovereign act of expropriation.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

Pursuant to Argentine law, the property declared to be of public utility is not acquired by the Argentine Government, and the expropriation process is not complete, until the expropriated party receives compensation for the expropriated property, pursuant to Law 21,499 arts. 13, 15 and 29, and Article 17 of the National Constitution.  While Law 26,741 authorized the commencement of the expropriation process and permitted the Argentine Government to temporarily occupy Repsol's shares of YPF, the shares remained legally owned by Repsol and were not acquired by the Argentine Government until at least May 8, 2014.  This was the date when – after Repsol and Argentina entered into a settlement agreement regarding payment for the shares to be expropriated – Repsol transferred title and ownership of its YPF shares to Argentina.  Prior to that time, Repsol's shares had not been acquired by the Argentine Government.

In a now-binding judicial admission, Plaintiffs have admitted that they do not challenge Argentina's sovereign act of expropriation but merely allege that the expropriation triggered an obligation to launch a tender offer for the "remainder" of the YPF shares.  By the time the expropriation was actually effectuated in 2014, however, Plaintiffs admit they had already defaulted and their creditors had "foreclosed" on Plaintiffs' Class D shares of YPF.  As a result, Plaintiffs were not shareholders of YPF at the time of Argentina's acquisition of shares by

expropriation and therefore lack standing to challenge Argentina's alleged breach of any

obligation to launch a tender offer allegedly triggered by that expropriation.

**FIFTH DEFENSE**
**LACK OF STANDING DUE TO VOID AGREEMENT**

Plaintiffs lack standing because Plaintiffs' acquisition of YPF shares was procured

through a sham agreement procured through self-dealing, bribery, corruption and/or fraud, thus

rendering the agreement *void ab initio* and its acquisition of YPF shares void.  Therefore,

Plaintiffs lack a justiciable claim.  In support of this defense, Argentina incorporates its previous

allegations and further pleads:

Petersen did not acquire its initial stake in YPF on the open market.  Instead, Petersen

acquired its shares through a set of dubious agreements with Repsol (the "Repsol-Petersen

Agreements").  Specifically, in 2008, through a set of related agreements between Repsol,

Petersen and its affiliates, and the Eskenazi family (all of whom reside in Argentina), Petersen

acquired its control interest in YPF *without investing any significant capital of its own* and while

being fully immunized from any risk of loss through a highly unusual indemnification from

Repsol.

Although Petersen had no known assets or operations, it acquired several billion dollars

of YPF shares through shell companies with financing based almost entirely on *future* dividends.

Rather than acquire the shares through an Argentine corporation, the Argentina-based Eskenazi

Family (on behalf of Petersen) effectuated their acquisition of YPF's shares through a newly-

created Spanish company, PESA, which was thinly capitalized, and to further insulate the

Eskenazi Family from liability, PESA was wholly owned by another newly-created Spanish

company, Petersen Inversiones Spain, S.A.U.

Then, through a Stock Purchase Agreement, Petersen acquired from Repsol 14.9% of YPF's capital stock for $2.24 billion dollars and later exercised two options to acquire an additional 10.1% from Repsol, bringing its total holding to 25%. Petersen financed its acquisition of 14.9% of YPF's capital stock with more than $1 billion from a syndicate of international banks and also "*borrowed*" more than $1 billion from Repsol to acquire Repsol's own shares of YPF. Yet Petersen contributed merely $110.1 million. Argentine news sources reported that a significant amount of money received by the Province of Santa Cruz from oil royalties and the privatization of YPF in 1993 which later "disappeared" (the so-called "Santa Cruz funds") might instead have been used to facilitate and pay for the Repsol-Petersen deal.

To ensure that Petersen could pay back the "loans" it received from Repsol, Petersen and Repsol also improperly agreed that they would distribute as dividends 90% of YPF's profits, instead of reinvesting those profits in YPF, and further agreed to pay themselves an additional special dividend of $850 million, regardless of actual profits. These dividends were then used by Petersen to repay Repsol. In effect, therefore, Petersen "purchased" a 14.9% stake in a multi-billion dollar company from Repsol in exchange for future dividends from the company that Repsol could already have received.

Petersen and Repsol also agreed that if Repsol ever ceased to exercise control of YPF or to approve the distribution of 90% of YPF's profits as dividends, Repsol would completely indemnify YPF, buy back all its shares *and* repay its loans. Specifically, Petersen and Repsol entered into a Shareholders' Agreement, which provided that, for the duration of PESA's Term Loan, Repsol "undertakes to maintain an interest greater than or equal to fifty point zero one percent (50.01%) of the capital stock of the Company" and further provided that "[d]efault by any of the Parties with respect to the matters stipulated in this Agreement shall give a right to the

24

other Party *in bonis* to be indemnified for all damages or losses it may incur as a direct result of this default."

Petersen and Repsol also entered into a "Supplemental Agreement," dated February 21, 2008, whereby Repsol unconditionally gave Petersen a complete indemnity—including the buyback of all of its shares and repayment of the loans Petersen had taken out to acquire the shares—if Repsol failed to maintain 50.01% stock ownership or failed to approve the specific dividends.  Specifically, the Supplemental Agreement provided that if, within five years, Repsol did not (i) maintain ownership of at least 50.01% of the capital stock of the Company or (ii) perform the acts required to approve the bi-annual distribution of 90% of the Company's profits and a special dividend of $850 million, to be paid in four equal installments in the years 2008 and 2009, Repsol shall, among other actions:

(a)     acquire back the Senior Loan to Petersen in its entirety and become the sole holder of the rights thereunder with respect to PESA or "immediately pay, itself or cause a third party to pay, the financial institutions, all the amounts owed by PESA under the Senior Loan . . . and acquire the rights of the financial institutions thereunder by subrogation," and

(b)     acquire the shares held by PESA or acquired through an option purchase agreement for a price set according to pre-determined formulas.

The price set by the Supplemental Agreement for the buyback was highly favorable. Under the Supplemental Agreement, Repsol was required to pay Petersen the sum of Petersen's net equity, $500 million, and the difference, if positive, between (i) the average trade price of one share of the Company during the prior 90 days in the market with the greatest liquidity where such shares are listed, and (ii) the price at which each share acquired by Petersen through the Purchase and Sale Agreement, an option agreement or a public tender offer is reflected on

Petersen's balance sheets.  Any doubt that these interrelated shareholder agreements were a sham was dispelled when in 2012 Petersen made no effort to enforce its purported right to complete indemnity after Repsol failed to approve continued 90% dividends, which allegedly caused Petersen to default.

In sum, Plaintiffs entered into a highly dubious set of sham agreements to acquire their shares of YPF, based on a self-dealing transaction that impermissibly used YPF's own capital to permit Plaintiffs to "purchase" their shares and "repay" Repsol.  Because of the improper nature of the Repsol-Petersen Agreements (which caused harm to the Argentine Government and the Argentine people), they should be voided *ab initio*, and therefore Plaintiffs have no standing to sue Argentina.

### SIXTH DEFENSE
### LACK OF STANDING BASED ON ASSIGNMENT

As will be shown on a fully developed record, Plaintiffs also lack standing because they assigned their claims and are therefore not a proper party to this suit.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

On October 6, 2014, Plaintiffs' receiver in the Spanish bankruptcy proceedings filed a liquidation plan, which included the "sale" of Plaintiffs' claims against Argentina.  After a winning bid, Plaintiffs' claims were to be "transferred in a public instrument" and fees would be paid to the "acquirer."  On March 4, 2015, Plaintiffs (through their receiver) entered into a Claim Prosecution Agreement with Prospect Investments LLC (which is wholly owned by Burford Capital LLC), pursuant to which Prospect was given an irrevocable power of attorney to conduct and manage Plaintiffs' claims, Prospect purportedly agreed to fund the prosecution of the claims, Plaintiffs agreed "not to take any actions in connection with the Claims absent the direction of [Prospect]," and Plaintiffs further agreed to "reasonably defer to [Prospect] in selecting the

course of action that is best for [Prospect] and [Plaintiffs] alike."  Pursuant to Spanish law, the Claim Prosecution Agreement is an improper agreement which conceals the assignment of litigious rights, and because this agreement constitutes a complete assignment under Spanish law, Plaintiffs lack standing to sue Argentina and are no longer the real party in interest.

## SEVENTH DEFENSE
## LACK OF STANDING TO BRING DIRECT CLAIMS

Plaintiffs lack standing to bring the claims asserted in the Complaint because pursuant to Argentine law, which applies to the internal affairs of an Argentine corporation (such as YPF), shareholders do not have standing to directly sue a co-shareholder because an Argentine company's bylaws do not constitute a source of directly enforceable contractual obligations *between* shareholders.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

To the extent this Court does not find that Plaintiffs lack standing for the reasons addressed in the previous Defenses, Plaintiffs nonetheless lack standing because pursuant to Argentine law, shareholders lack standing to sue other shareholders (including, as here, Argentina) for the alleged breach of a company's bylaws unless – unlike here – the suing shareholder brings the suit derivatively (on behalf of the company) and satisfied specific prerequisites before filing suit.  In a derivative suit pursuant to Argentina General Corporations Law arts. 276 and 277, a plaintiff may generally only assert damages suffered by the *company*.  Any damages resulting from that suit are thus awarded to the company rather than the shareholder who filed the claim.  Plaintiffs cannot invoke such a procedure to sue for individual damages.

**EIGHTH DEFENSE**
**JUSTIFICATION BY PUBLIC NECESSITY**

Plaintiffs' claims are barred because Argentina was justified in its actions.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

As described in the Fifth Defense, Plaintiffs committed wrongdoing and harm to the detriment of YPF and its shareholders.  These acts led then-President of Argentina Cristina Fernández de Kirchner to introduce the expropriation legislation, which outlined the serious negative impacts on the domestic economy resulting from the actions of the controlling shareholders of YPF (including Plaintiffs).  Specifically, President Fernández de Kirchner highlighted that the controlling shareholders' practices had, among other things, caused Argentina to experience a negative energy trade balance for the first time in 17 years, including decreases of oil production between 1997 and 2011 of 44% and gas production by 38% between 2004 and 2011; YPF's market share for oil and gas decreased by more than 11% between 1997 and 2011; and controlling shareholders' policies ensured that YPF's hydrocarbon supply continued to decline even while the Company benefitted from programs created by the Argentine Government to encourage exploration, production and reserve replenishment.  Indeed, by causing YPF to distribute virtually all of its earnings as dividends, YPF's capitalization, investments and production decreased, while its liabilities increased.  In 2007, the Company's net equity was more than two times its liabilities, whereas by 2012 its net equity was reduced to half of its liabilities.  Between 2007 and 2011, YPF's liabilities tripled, rising from 12 million pesos to more than 36 million pesos.  This increase in indebtedness was required to fund the Repsol-Petersen dividend scheme.

The predatory policies implemented by Plaintiffs during their tenure as controlling shareholders of YPF severely impacted the entire country and economy.  Argentina has some of

28

the world's largest unconventional oil and gas reserves; while historically an energy-exporting country, by 2010, Argentina was forced to import power and natural gas, and in 2011, Argentina's international energy trade recorded an imbalance of almost $3.5 billion, the first imbalance in nearly 25 years.  Argentina shifted from having a positive energy trade balance of $6 billion in 2006 to an negative balance of about $3.4 billion in 2011.  Faced with the deepening energy and balance of payments crisis caused by Plaintiffs' rapacious policies, as well as loss of its energy sovereignty and the attendant economic and social consequences of such events, the government of Argentina was forced to intervene.  The Argentine Congress subsequently approved Law 26,741.  Due to the necessity of these actions for the benefit and protection of the Republic of Argentina, its acts were justified, and Plaintiffs should be barred from recovery.

## NINTH DEFENSE
## UNCLEAN HANDS

Plaintiffs' claims are barred by the doctrine of unclean hands, having committed wrongdoing and harm to the detriment of Argentina, YPF and its shareholders.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

While controlling YPF, Plaintiffs caused YPF to pay exorbitant dividends, which deprived YPF of earnings it otherwise should have used for reinvestment.  Plaintiffs further represented to the Argentine Republic, as well as to provincial governments in Argentina, that it would use government concessions and monetary stipends to benefit the country of Argentina, but instead, YPF's domestic production and investments decreased substantially under Plaintiffs' watch, ultimately leading to certain Argentine provinces terminating their concessions to YPF and causing the Argentine Congress to pass Law 26,741 in order to protect the company and the country.

**TENTH DEFENSE**
**FAILURE TO STATE A CLAIM UNDER THE BYLAWS**

Plaintiffs' claims are barred because the Complaint fails to state a claim upon which relief can be granted.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

Even if the Bylaws could be deemed to constitute a direct contract between Plaintiffs and Argentina (and they cannot), the Complaint should be dismissed for failure to state a claim because, pursuant to Section 7(d) of the Bylaws, once the Republic expropriated Repsol's shares, it became a controlling shareholder like Repsol and was exempt from the tender offer requirements.  On their face, YPF's Bylaws "exclude" and exempt such controlling shareholders from the tender offer requirements of Section 7(e) and (f).  Specifically, Section 7(d) of the Bylaws provides that "acquisitions by the person already holding, or the person already exercising control of, shares representing more than FIFTY PERCENT (50%) of the capital stock shall be excluded from the provisions of subsections e) and f) of this section [*i.e.*, the tender offer mandate]."  And Section 28, which governs "Acquisitions by the National Government," expressly incorporates Section 7(d), including the carve-out for holders of more than 51% of the company.  (Bylaws, Sec. 28(C).)  As Plaintiffs have admitted, and are judicially estopped from denying, they do not challenge Argentina's expropriation of Repsol's controlling stake whereby Argentina became a "person already exercising control" of over 50% of YPF's capital stock.  Plaintiffs' acceptance of Argentina's assumption of a controlling stake in YPF through the quintessentially sovereign act of expropriation precludes any claim that as a majority shareholder of YPF, Argentina was subject to the tender offer requirements of Section 7(d).  Accordingly, Plaintiffs cannot state a cognizable claim under the Bylaws.

## ELEVENTH DEFENSE
## FAILURE TO STATE A CLAIM UNDER ARGENTINE LAW

Plaintiffs' claims are also barred because Plaintiffs have failed to state a claim for breach of contract, anticipatory breach and breach of the implied duty of good faith and fair dealing for several separate and independent reasons.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

(a)     Plaintiffs fail to allege a binding contract under Argentine law.  Pursuant to Argentine law, an Argentine company's bylaws do not constitute a source of contractual obligations *between* shareholders, and therefore Plaintiffs have failed to state a judiciable claim against Argentina in its alleged capacity as a co-shareholder;

(b)     Plaintiffs' claims are preempted by Argentine public law, which prevails over private law, such as contractual obligations.  The Argentine Constitution, the Intervention Decree, and Laws 26,741 and 21,499 preempt contractual arrangements, and given the Republic's constitutionally-enshrined right to expropriate property for public purposes, Plaintiffs cannot seek to hold Argentina liable for an alleged breach of contract that would conflict with those sovereign acts; and

(c)     Under Argentine law, anticipatory repudiation and breach of a duty of good faith do not constitute cognizable causes of action separate and distinct from claims arising from a contractual breach.  Because Argentine law governs the corporate relationships in this case, these claims must be dismissed.

## TWELFTH DEFENSE
## FAILURE TO STATE A CLAIM BECAUSE REMEDY
## PRECLUDED UNDER THE BYLAWS AND ARGENTINE LAW

Plaintiffs' causes of action are barred, in whole or in part, by the terms of the Bylaws of YPF and by Argentine law, both of which do not permit the remedy Plaintiffs seek.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

Section 7(h) of the Bylaws provides specific penalties in the case of a breach of the tender offer requirements, which do not include damages.  Under Argentine law, these penalty provisions provide the exclusive remedy in the event of a breach.  Therefore, pursuant to the plain and explicit terms of the Bylaws, Plaintiffs do not have a basis to seek damages.

Additionally, Plaintiffs' alleged remedy is also unavailable because pursuant to the Argentine Capital Markets Law of 2012, Law No. 26,831, article 89, a public auction of acquired shares is the exclusive remedy for a violation of tender offer requirements.  As with the remedies in YPF's Bylaws, these remedies are designed to neutralize the political and economic rights of inappropriately acquired shares.  Argentine law does not provide for direct damages claims for claims against Argentina.

## THIRTEENTH DEFENSE
## FAILURE TO MITIGATE

Plaintiffs' claims are barred, in whole or in part, because they are based on shares that were the subject of a release and indemnification agreement between Plaintiffs and Repsol.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

As explained in the Fifth Defense above, Plaintiffs had a complete indemnity from Repsol, which included the buyback of all of its shares and repayment of the loans Petersen had taken out to acquire the shares, if Repsol failed to maintain 50.01% stock ownership or failed to approve the specific dividends. Pursuant to these indemnification agreements between Petersen

and Repsol, to the extent Plaintiffs suffered any damages, they had the ability to obtain indemnification from Repsol and would have been made whole.  They should therefore be barred from seeking that recovery from Argentina.

## FOURTEENTH DEFENSE
## CLAIMS BARRED BY ARGENTINE LAW DUE TO EXEMPTIONS FOR ARGENTINA ACTING AS SOVEREIGN

Plaintiffs' claims are barred, in whole or in part, by exceptions under Argentine law for actions of the sovereign.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

Under Argentine law, expropriation is recognized as a power of the State pursuant to Article 17 of the Argentine Constitution.  Expropriation is not a private right, but rather an act of sovereignty, governed by public law and non-derogable.  No provision in any contract or corporate document may prevent, restrict or interfere with the Argentine Congress's exercise of an expressly-granted constitutional right.  Additionally, acting pursuant to Argentine Decree 677/01, the Argentine securities commission (the "CNV") issued General Resolution No. 401/2002, which established that mandatory tender offer regimes do not apply in cases of expropriation.  In 2012, Law No. 26,831 (the Capital Markets Law) replaced Decree 677/01, and the CNV subsequently reaffirmed that mandatory tender offers are not applicable to acquisitions of the sovereign executed in accordance with an appropriation law, pursuant to CNV General Resolution No. 622/2013.  Because Plaintiffs seek to enforce the Bylaws contrary to the dictates of Article 17 of the Argentine Constitution, Laws 26,741 and 21,499, and other public laws, their claims are barred.

## FIFTEENTH DEFENSE
## CLAIMS BARRED FOR LACK OF CAUSATION

Plaintiffs' claims are barred, in whole or in part, because no act or omission by Argentina was the cause in fact or proximate cause of any damage alleged by Plaintiffs.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

As explained in the Fourth Defense, Argentina's acquisition of YPF shares did not occur until 2014, when Plaintiffs were no longer shareholders of the company, as Plaintiffs had defaulted and assigned their shares.  Because Plaintiffs' default and alleged damages occurred *before* Argentina acquired ownership of shares of YPF stock, Plaintiffs therefore failed to plead that Argentina's failure to launch a tender offer caused Plaintiffs' damages.

## SIXTEENTH DEFENSE
## INTERVENING OR SUPERSEDING CAUSES

Plaintiffs' claims are barred, in whole or in part, due to intervening or superseding causes.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

The injuries Plaintiffs sustained, if any, were caused by the actions or inactions of parties other than Argentina, actions or inactions by parties outside the control of Argentina, and/or economic events that were, likewise, outside the control of Argentina.  These actions, inactions and events were intervening or superseding causes of Plaintiffs' alleged damages.  This includes, among other things, Plaintiffs' improper actions to enter into improper self-dealing agreements with Repsol, Plaintiffs' failure to request and receive indemnification from Repsol, and Plaintiffs' bankruptcy.

## SEVENTEENTH DEFENSE
## ASSUMPTION OF THE RISK

Plaintiffs' claims are barred, in whole or in part, by the doctrine of assumption of risk.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

Among other things, Plaintiffs assumed the risk that Argentina could exercise its inalienable sovereign power to renationalize YPF through the sovereign act of expropriation or any other means and further assumed the risk of investing in a public company with a stock that is traded and may fluctuate in price.

## EIGHTEENTH DEFENSE
## BARRED BY DISCLOSURES

Plaintiffs' claims are barred, in whole or in part, by the terms, disclaimers, and disclosures contained in the Prospectus.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

Among other things, YPF disclosed in its Prospectus that "future Argentine Government actions . . . could have a significant effect on the Company and on market conditions, prices and returns on Argentine equity securities, including Class D Shares represented by ADSs."

## NINETEENTH DEFENSE
## CLAIMS BARRED BY IMPOSSIBILITY

Plaintiffs' claims of nonperformance by Argentina are barred, in whole or in part, by the doctrine of impossibility.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

To the extent Argentina had any obligation to tender – which it did not – any alleged nonperformance is excused by the doctrine of impossibility, as Argentina was not able to comply with Laws 26,741 and 21,499 as well as the Bylaws.  Under Argentine law, provisions in a company's bylaws cannot limit or impede the government's acquisition of property through

expropriation because expropriation is a power expressly granted to the federal government by the National Constitution.  Thus, given the conflict between Laws 26,741 and 21,499 and YPF's Bylaws, the former prevails.

### TWENTIETH DEFENSE
### CLAIMS BARRED BY STATUTES OF REPOSE/LIMITATION

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of repose and/or statutes of limitation, including, but not limited to, the three-month statute of limitations governing decisions made at shareholders' meetings pursuant to Argentine corporate law.  In further support of this defense, Argentina incorporates its previous allegations.

### TWENTY-FIRST DEFENSE
### NO COGNIZABLE DAMAGES

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered any cognizable damages.  In support of this defense, Argentina incorporates its previous allegations.

### TWENTY-SECOND DEFENSE
### BARRED BY LACHES

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.  In support of this defense, Argentina incorporates its previous allegations.

### TWENTY-THIRD DEFENSE
### BARRED BY ESTOPPEL AND WAIVER

Plaintiffs' claims are barred, in whole or in part, by equitable estoppel, waiver and/or other equitable doctrines.  In support of this defense, Argentina incorporates its previous allegations.

## TWENTY-FOURTH DEFENSE
## BARRED BY UNJUST ENRICHMENT

Plaintiff's claims are barred, in whole or in part, to the extent that any relief or recovery would unjustly enrich or constitute a windfall to Plaintiff.  In support of this defense, Argentina incorporates its previous allegations.

## TWENTY-FIFTH DEFENSE[4]
## IMMUNITY UNDER THE FSIA

This Court lacks jurisdiction pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602-1611 ("FSIA"), because Plaintiffs' claims are based on Argentina's sovereign acts of expropriation.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

Plaintiffs' claims directly challenge the authority of Argentina to intervene and expropriate Repsol's 51% stake in YPF without conducting a tender offer pursuant to the YPF Bylaws.  Argentina acquired its controlling stake in YPF through the exclusively sovereign act of expropriation, pursuant to Article 17 of the Argentine Constitution and laws passed by the Argentine Congress – Laws 26,741 and 21,499.  As will be shown on a fully developed record, Plaintiffs challenge actions by Argentina that were uniquely sovereign, and this matter should be dismissed as a result.

---

[4] Although this Court previously considered the FSIA and act of state doctrine, courts have allowed renewed motions on these grounds based on additional factual development and/or changes in the law.  *See de Csepel v. Republic of Hungary*, 169 F. Supp. 3d 143, 147 (D.D.C. 2016) (concluding that plaintiffs' claims did not fall within the FSIA's commercial activities exception based on "the full benefit of jurisdictional and merits fact discovery" after having concluded the opposite on a pre-discovery motion to dismiss).  Accordingly, Argentina reserves the right to pursue these defenses again, following discovery and the development of a more robust record.

## TWENTY-SIXTH DEFENSE
## CLAIMS BARRED BY ACT OF STATE DOCTRINE

This action is barred by the act of state doctrine.  The claims raised by Plaintiffs require this Court to assess the validity of official acts of the Argentine Government in connection with its decision to expropriate Repsol's shares of YPF.  In support of this defense, Argentina incorporates its previous allegations and further pleads:

Any attempt to enforce the tender offer requirement would directly conflict with and invalidate the Argentine Constitution and Laws 26,741 and 21,499.  Because of the inherent supremacy of public law under Argentine law, the Court cannot award Plaintiffs relief without invalidating an official act of a foreign sovereign performed within its own territory.

Even if Plaintiffs could establish that the Bylaws apply to acquisitions through expropriation and were not otherwise preempted by Laws 26,741 and 21,499, which they cannot, the Intervention Decree and Laws 26,741 and 21,499 directly conflict with the Bylaws in several ways:

(a)     Pursuant to the power granted by Article 17 of the Argentine Constitution, Law 26,741 declared Repsol's 51% controlling stake in YPF of public utility and subject to expropriation;

(b)     Enforcing the tender offer requirement would require Argentina to purchase more than 51% of YPF shares, while Article 7 of Law 26,741 required acquisition of exactly 51% of YPF exclusively from Repsol;

(c)     Article 15 of Law 26,741 explicitly required YPF to remain a public company, which would not occur if Argentina had to launch a tender offer for all the remaining shares of YPF;

(d)     The YPF Bylaws set a different method for determining the price for the shares than Laws 26,741 and 21,499; and

(e)     Article 13 of Law 26,741 commanded Argentina to immediately exercise *all* rights of the expropriated shares in accordance with Arts. 57 *et seq.* of Law 21,499, including voting rights, while Sections 7(h) and 28(C) of the Bylaws preclude an acquirer subject to tender offer obligations from voting any shares acquired without a tender offer.

Due to these conflicts, permitting Plaintiffs to obtain relief for alleged breaches of the Bylaws would improperly require this Court to invalidate sovereign acts of Argentina.

**TWENTY-SEVENTH DEFENSE**
**INCORPORATION BY REFERENCE**

Defendant Argentina hereby adopts and incorporates by reference any and all other defenses asserted or to be asserted by any other defendant to the extent Argentina may share in such defense.

**TWENTY-EIGHTH DEFENSE**
**RESERVATION OF RIGHTS**

Argentina presently has insufficient knowledge or information upon which to form a belief as to whether there may be other, as yet unstated, defenses available to Argentina, and therefore expressly (1) reserves the right to amend or supplement its Answer, defenses and all other pleadings, and (2) reserves the right to assert any and all additional defenses under any applicable law in the event that discovery indicates such defenses would be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Argentina respectfully requests that the Court (1) dismiss Plaintiffs' claims against Argentina in their entirety and with prejudice; (2) award Argentina the costs, disbursements and attorneys' fees incurred by them in defending this action, to the extent authorized by law; and (3) grant such other and further relief as it may deem just and proper.

Dated: New York, New York
      July 8, 2019

Respectfully submitted,

/s/ Maura Barry Grinalds
Maura Barry Grinalds
Boris Bershteyn
Michael D. Moritz
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (212) 735-2000
maurabarry.grinalds@skadden.com
boris.bershteyn@skadden.com
michael.moritz@skadden.com

*Counsel for Defendant*
*Argentine Republic*