## Skadden, Arps, Slate, Meagher & Flom llp

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-7808
DIRECT FAX
(917) 777-7808
EMAIL ADDRESS
MAURABARRY.GRINALDS@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

July 8, 2019

**Via ECF**
Hon. Loretta A. Preska
United States District Court for the Southern District of New York
500 Pearl Street, Room 2220
New York, NY 10007

      RE:    *Petersen Energia Inversora S.A.U. v. Argentine Republic*, No. 15 Civ. 02739

Dear Judge Preska:

      I write jointly on behalf of Defendants in reply to Plaintiffs' July 3, 2019 letter (ECF 90 ("Letter")). Contrary to Plaintiffs' refrain that Defendants merely seek delay, Defendants are prepared to move expeditiously for judgment on the pleadings, a procedurally ripe and meritorious motion that can immediately terminate the case, entirely in keeping with Fed. R. Civ. P. 1 and in sharp contrast with Plaintiffs' premature, baseless and piecemeal summary judgment motion. Defendants have filed their answers, including numerous dispositive affirmative defenses that can and should be decided as a matter of law in their proposed Rule 12(c) motions.

      Continuing to misstate purely jurisdictional rulings in this case as "dispositive" of the merits, Plaintiffs mischaracterize *Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling Co.*, 137 S. Ct. 1312 (2017). That case merely reversed the lower court's holding that a "nonfrivolous . . . argument that property was taken in violation of international law" was sufficient to establish jurisdiction under the expropriation exception to the Foreign Sovereign Immunities Act ("FSIA") and held that "the relevant factual allegations" must make out "a legally valid claim" showing the essential elements of that exception, *i.e.*, that property rights were taken "in violation of international law." *Id.* at 1316. The Court underscored that it "need not resolve, as a jurisdictional matter, disputes about whether a party actually held rights in the property; those questions remain for the merits phase of the litigation." *Id.* Here too, the Second Circuit was not required to—and did not—resolve any elements of Plaintiffs' breach of contract claim in declining to apply the commercial activity exception; it simply determined, based on the allegations before it, that Petersen challenged commercial, not sovereign, conduct. Contrary to Plaintiffs' assertion that "litigation over FSIA immunity inevitably included merits findings" (Letter at 1), *Helmerich* underscored the opposite is true: "[C]ases in which the jurisdictional inquiry *does not overlap* with the elements of a plaintiff's claims *have been the norm* in cases arising under other exceptions to the FSIA." 137 S. Ct. at 1324 (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992) (alleging breach of contract)).

The limited FSIA rulings in this case never reached, let alone decided, the several separate merits defenses that Defendants assert under controlling Argentine law (to be addressed in declarations of foreign law entitled by law to the Court's respectful consideration), which preclude any finding of liability and establish the Argentine courts' exclusive jurisdiction over these claims. The Second Circuit in no way foreclosed Defendants' standing arguments. (Letter at 3.) To the contrary, it directly supported them by holding that "under the bylaws, Argentina's expropriation triggered an obligation to make a tender offer for the remainder of YPF's outstanding shares." 895 F.3d at 206. Critically, the Second Circuit did not reach precisely *when* that expropriation and consequent "post-expropriation" tender offer obligation arose (although it noted that an expropriation was contingent on payment of compensation, which did not occur until 2014, when Petersen was no longer a shareholder). And contrary to Plaintiffs' baseless assertion that Defendants estimate damages in billions, Defendants have maintained that Plaintiffs have no legally cognizable damages. Indeed, in light of their numerous defects, Plaintiffs' claims were auctioned in bankruptcy for only *€15 million*.

Plaintiffs dismiss the express terms of YPF's 1993 IPO Prospectus, upon which they rely (*e.g.*, Compl. ¶¶ 2-3, 14, 24), as being "irrelevant, whatever it says." (Letter at 2.) Yet the Prospectus plainly states that YPF's "By-laws are governed by Argentine law and any action relating to enforcement of the By-laws or a shareholder's rights thereunder is required to be brought in an Argentine court." (Prospectus at 90.) It thus reaffirms the result by *operation of controlling Argentine law* that Argentine courts have exclusive jurisdiction to resolve disputes arising under an Argentine company's bylaws. ANCCP art. 5 § 11; *cf. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Const. Indus. Ret. Tr. v. Blanchard*, No. 04 CIV 5954 (LAP), 2005 WL 2063852 (S.D.N.Y. Aug. 25, 2005) (court had "no jurisdiction" where bylaws were subject to Canadian law prescribing Canadian courts' exclusive jurisdiction over action).

Plaintiffs cannot dispute the significant developments supporting a renewed *forum non conveniens* motion (and first such motion by YPF), including the dismissal with prejudice of the previous investigation into Plaintiffs' litigation funder and legal representatives. Plaintiffs' baseless speculation that Argentina may "repeat the tactic" is no grounds to avoid dismissal. The most important new fact is not the *Eton Park* case (which is equally subject to dismissal), but Defendants' dispositive defenses, many of which require witnesses who are unavailable because, for example, they are under indictment or in prison in Argentina. Petersen's belated reference to long-pending "investigations" of certain of its Argentine shareholders (not their lawyers or paralegals) for their own culpable conduct—which Plaintiffs strategically chose to withhold until now—is no basis to deny dismissal. *See RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 554 (S.D.N.Y 2013) (criminal investigation of plaintiff in Russia was "not a basis for retaining jurisdiction over this lawsuit, as Plaintiffs have neither shown that the investigation is baseless nor that the Russian criminal justice system is inadequate to allow [that plaintiff] to vindicate her purported innocence"), *aff'd*, 559 F. App'x 58 (2d Cir. 2014). Lastly, counsel's protest about "an unfamiliar judicial system" (Letter at 3) cannot apply to Plaintiffs themselves, which are shell companies formed and owned by *Argentine nationals* who reside in Argentina.

Respectfully submitted,
/s/ Maura Barry Grinalds
Maura Barry Grinalds