**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA, S.A.U.
and PETERSEN ENERGÍA, S.A.U.,                :    Case Nos.
                                                  1:15-cv-02739-LAP
                         Plaintiffs,         :    1:16-cv-08569-LAP

         - against -                         :

ARGENTINE REPUBLIC and YPF S.A.,             :

                         Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT,
L.P., ETON PARK MASTER FUND, LTD. and :
ETON PARK FUND, L.P.,

                                             :

                         Plaintiffs,         :

         - against -                         :

ARGENTINE REPUBLIC and YPF S.A.,             :

                         Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**DISMISS FOR *FORUM NON CONVENIENS***


Maura Barry Grinalds                    Michael A. Paskin
Boris Bershteyn                         Damaris Hernández
Scott D. Musoff                         CRAVATH, SWAINE & MOORE LLP
Michael D. Moritz                           825 Eighth Avenue
SKADDEN, ARPS, SLATE,                       New York, NY 10019
MEAGHER & FLOM LLP                          (212) 474-1000
     Four Times Square
     New York, NY 10036                 *Counsel for Defendant YPF S.A.*
     (212) 735-3000

*Counsel for Defendant Argentine Republic*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL BACKGROUND ............................................................................. 4

    A.    The Parties ........................................................................................ 4

    B.    YPF's Privatization and Subsequent Expropriation ........................ 5

    C.    Plaintiffs' Purchases of YPF Shares ............................................... 6

    D.    Procedural History ........................................................................... 7

    E.    Dismissal of Investigation into Petersen's Attorneys and Financial Backers .......... 8

ARGUMENT ..................................................................................................... 8

I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO THE DOCTRINE OF FORUM NON CONVENIENS. .................................... 8

    A.    Applicable Legal Standard ............................................................... 8

    B.    Plaintiffs' Choice of Forum Is Due No Deference. ....................... 10

        1.    Plaintiffs Are Sophisticated Foreign Entities Not at Home in This District ............................................................ 10

        2.    The Relevant Conduct All Took Place in Argentina, Not New York. ......................................................................... 12

        3.    Plaintiffs' Efforts To Establish Connections to New York Based on YPF's U.S. IPO and Prospectus Are Directly Contradicted by the Prospectus's Exclusive Jurisdiction Provision .......... 12

    C.    Argentina Is an Adequate Forum. ................................................. 15

        1.    Defendants Are Subject to Service of Process in Argentina and the Forum Permits Subject Matter of the Dispute. ........ 15

        2.    Indeed, Argentina Is the Exclusive Jurisdiction for This Dispute, Pursuant to Argentine Law and as Reflected in the Prospectus ...... 17

        3.    The Basis for the Court's Previous Concerns About Argentina as an Adequate Forum No Longer Exists ...................... 20

    D.    The Balance of Public and Private Interest Factors Strongly Weigh in Favor of Dismissal to Argentina. ................................. 21

        1.    The Private Interest Factors Favor Dismissal. ................... 21

        2.    The Public Interest Factors Overwhelmingly Tilt Towards Dismissal to Argentina. ....................................... 24

            (1)    Argentina Has a Compelling Interest in Addressing the Important Threshold Legal Questions Raised by This Dispute. ....... 24

(2)    Argentina's Interest Should Be Recognized Pursuant to Principles of International Comity....................................................................30

(3)    This District Has Little or No Interest in Adjudicating the Controversy.......................................................................................32

CONCLUSION............................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83 (2d Cir. 2007).......................................12, 23

*AIG Mex. Seguros Interamericana, S.A. de C.V. v. M/V Zapoteca*, 844 F. Supp. 2d 440 (S.D.N.Y. 2012) ........................................................................................................13

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*, No. 91 Civ. 2873 (RPP), 1992 WL 398446 (S.D.N.Y. Dec. 21, 1992)...............................................................................9

*Animal Sci. Prod. Inc. v. Hebei Welcome Pharm. Co.,* 138 S. Ct. 1865 (2018)..........................20

*Arial Techs. LLC v. Aerophile S.A.*, No. 14 CV 4435, 2015 WL 1501115 (S.D.N.Y. Mar. 31, 2015) ................................................................................14, 15

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013)........................................................................................................14

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2000)................................................................30

*Blanco v. Banco Industrial de Venezuela S.A.*, 997 F.2d 974 (2d Cir. 1993)...............................23

*Bohn v. Bartels*, 620 F. Supp. 2d 418, 428 (S.D.N.Y. 2007).........................................................10

*Bugliotti v. Republic of Argentina*, 17 Civ. 9934 (LAP), 2019 WL 586091 (S.D.N.Y. Jan. 15, 2019)............................................................................20, 31

*Bybee v. Oper der Standt Bonn,* 899 F. Supp. 1217 (S.D.N.Y. 1995).........................................25

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC,* 155 F.3d 603 (1998)......................................................................................................15, 21

*CCM Pension-A, L.L.C. v. Republic of Argentina*, 16-cv-1650 (TPG), 2016 WL 4154892 (S.D.N.Y. Aug. 2, 2016) ................................................................................15

*CCS Int'l, Ltd. v. ECI Telesys, Ltd.*, No. 97 CIV. 4646 (LAP), 1998 WL 512951 (S.D.N.Y. Aug. 18, 1998)..............................................................................25

*Construtora Norbeto Oderbrecht S.A. v. Gen. Elec. Co.*, No. 07-CV-8014 (CM), 2007 WL 3025699, at *7 (S.D.N.Y. Oct. 12, 2007) .............................................11

*Elliott Assocs. v. Porsche Auto. Holding SE*, 759 F. Supp. 2d 469 (S.D.N.Y. 2010)...................19

*Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493 (S.D.N.Y. 2007)...............................................9

*First Union Nat. Bank v. Paribas*, 135 F. Supp. 2d 443, 449 (S.D.N.Y. 2001) ...............21, 24, 32

*Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847 (7th Cir. 2015) ............................................31

*Freund v. Republic of France*, 592 F. Supp. 2d 540 (S.D.N.Y. 2008) ........................................30

*Fustok v. Banque Populaire Suisse*, 546 F. Supp. 506 (S.D.N.Y. 1982) ......................................29

*Henderson v. FLOORgraphics, Inc.*, 153 F. Supp. 2d 133 (D. Conn. 2001) ................................25

*Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04 C 698, 2007 WL 1029089 (N.D. Ill.
    Mar. 29, 2007) ........................................................................................................................19

*In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263 (S.D.N.Y. 2010) ........................................19, 33

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445 (S.D.N.Y.
    2013) ........................................................................................................................................15

*In re Monegasque De Reassurances S.A.M (Monde Re). v. Nak Naftogaz of Ukr.*,
    311 F.3d 488 (2d Cir. 2002) .............................................................................................12, 15

*In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.*, 580 B.R. 64 (Bankr.
    S.D.N.Y. 2018) ...................................................................................................................30, 31

*In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298 (S.D.N.Y. 2012) .............................................9, 10

*In re Refco Inc., Sec. Litig.*, No. 07-MDL 1902 (JSR), 2009 WL 5548666
    (S.D.N.Y. Nov. 16, 2009) .........................................................................................................13

*Iragorri v. United Techs. Corp.*, 274 F. 3d 65 (2d Cir. 2001) .....................................................9

*Karlitz v. Regent Int'l. Hotels, Ltd.*, 1997 WL 88291 (S.D.N.Y. 1997) ................................24, 32

*LaSala v. Lloyds TSB Bank, PLC*, 514 F. Supp. 2d 447 (S.D.N.Y. 2007) ....................11, 22, 24

*LaSala v. UBS, AG*, 510 F. Supp. 2d 213 (S.D.N.Y. 2007) ........................................................25

*Lasker v. UBS Sec. LLC*, 614 F. Supp. 2d 345 (E.D.N.Y. 2008) ................................................25

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, No. 11 Civ. 9490 (ALC), 2012 WL
    3854618 (S.D.N.Y. Sept. 5, 2012) ....................................................................................19, 20

*Locals 302 & 612 of Int'l Union of Operating Eng'rs v. Blanchard*, No. 04 Civ.
    5954 (LAP), 2005 WL 2063852 (S.D.N.Y. Aug. 25, 2005)..............................................18, 19

*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972) ............................................................15

*Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014) .................................................................31

*Natasha Inc. v. Shopkorn*, 134 A.D.3d 598 (1st Dep't 2015) .....................................................19

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005) ............................10, 16

*Panama Processes, S.A. v. Cities Serv. Co.*, 500 F. Supp. 787 (S.D.N.Y. 1980) .........................26

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 139 S. Ct. 2741 (2019) ....................8

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 895 F.3d 194 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 2741 (2019) .................................................................................8

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-2739 (LAP), 2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ..................................................... passim

*Petersen v. Boeing Co.*, No. CV-10-00999-PHX-ROS, 2015 WL 12434322 (D. Ariz. Apr. 7, 2015) ............................................................................................................13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ................................................................. passim

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546 (S.D.N.Y. 2013) .......................9, 19

*Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978) .................................................................26

*Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224 (2d Cir. 1996) ...............................................................................................................................19

*Starkey v. G Adventures, Inc.*, 796 F.3d 193 (2d Cir. 2015) .........................................................14

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741 (S.D.N.Y. 2006) ............................................................................................21, 23

*Sussman v. Bank of Isr.*, 801 F. Supp. 1068 (S.D.N.Y. 1992) .................................................11, 16

*Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507 (S.D.N.Y. 2006) ..................................................12

*Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227 (11th Cir. 2004) ....................................31

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239 (CS), 2017 WL 972117 (S.D.N.Y. Mar. 10, 2017) .............................................................................9

*Weber v. Saladworks, LLC*, No. SA CV 13-01049-MWF, 2014 WL 12581768 (C.D. Cal. Jan. 27, 2014) ................................................................................................14

*Wenzel v. Marriott Int'l, Inc.*, No. 13 Civ. 8335 (AT), 2014 WL 6603414 (S.D.N.Y. Nov. 17, 2014) ..............................................................................................8

*Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57 (2d Cir. 2005) .....................................31

**Other Authorities**

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. &
     Proc. § 3828 (4th ed. 2016).....................................................................................................13

Defendants the Republic of Argentina ("the Republic") and YPF S.A. ("YPF") respectfully submit this Memorandum of Law in support of their motion to dismiss the actions commenced by Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (together, "Petersen"), as well as Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd. and Eton Park Fund, L.P. (together, "Eton Park," and with Petersen, the "Plaintiffs") (the "Actions") pursuant to the doctrine of *forum non conveniens*.

## PRELIMINARY STATEMENT

Plaintiffs are foreign entities bringing claims under the bylaws of YPF (the "Bylaws"), a stock corporation organized under the laws of Argentina, against the Republic and YPF.  All of the relevant facts "took place in Argentina," as this Court has observed, and both the claims and defenses asserted are governed by Argentine law, which mandates that Argentine courts have exclusive jurisdiction over these Actions.  In seeking to manufacture New York connections, Plaintiffs plead that they purchased their shares in reliance on alleged promises in YPF's public filings, including its U.S. IPO Prospectus, yet that same Prospectus contains an exclusive jurisdiction provision which, consistent with controlling Argentine law, recognizes Argentine courts' exclusive jurisdiction over any disputes under the Bylaws.

The doctrine of *forum non conveniens* warrants dismissal of Plaintiffs' claims. Plaintiffs' choice of forum is due no deference—they are sophisticated foreign plaintiffs who chose to invest in an Argentine corporation governed by a legal regime that requires disputes of this nature to be brought in Argentina, yet have now brought suit in an unrelated forum. Argentina, on the other hand, is an adequate and appropriate forum.  As this Court explained in its motion to dismiss decision, "[c]ourts generally have found Argentina to be an adequate alternative forum."  *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-2739

1

(LAP), 2016 WL 4735367, at *11 (S.D.N.Y. Sept. 9, 2016) (Petersen ECF No. 63) ("*Petersen I*"). And the Court's previously expressed concern regarding a then-pending investigation into Petersen's counsel and Burford Capital Limited ("Burford") is no longer any basis to reject Argentina as an adequate forum, as Argentina's Attorney General has confirmed in a sworn declaration to the Court that the prior investigation has been terminated with prejudice and cannot be revived.

Additionally, both the private and public interest factors relevant to the Court's *forum non conveniens* analysis strongly weigh in favor of dismissal. With respect to the private factors, and to address another concern previously raised by the Court, Defendants have now made clear that most, if not all, relevant witnesses are located in Argentina beyond this Court's subpoena power. And due to legal restrictions, certain crucial witnesses are likely unable to leave Argentina to testify in the United States, even if they were inclined to do so voluntarily. Even if Plaintiffs maintain that no discovery is necessary to resolve their claims (as suggested by their prior request to file a premature summary judgment motion), several defenses asserted by the Republic and YPF will require witnesses and evidence located in Argentina.

With respect to the public *forum non conveniens* factors, it is difficult to imagine a more compelling case favoring dismissal to Argentina. Argentina has an overwhelming interest in having this controversy decided at home, where the subject company is organized, relevant witnesses are located, the alleged events at issue took place, and the courts are best suited to decide important issues of Argentine law. On the other hand, if these cases involving the actions of a foreign government within its own borders were to proceed in New York, it would impose an unnecessary burden on the Court, would be inconvenient to witnesses, and would deprive the finder of fact of the live testimony of unwilling witnesses.

Courts engaging in a *forum non conveniens* inquiry generally find that the need to apply foreign law weighs against retention of the action, and the complex issues of Argentine law implicated by both the substantive legal claims and the defenses now asserted (many of which are equally applicable to the *Eton Park* action) create especially compelling circumstances for dismissal here.  Resolving these Actions requires the Court to do much more than simply apply Argentine contract law to a traditional commercial dispute.  Instead, the substantive claims and defenses here give rise to fundamental questions of Argentine constitutional law, public law, priority of law and statutory law under Argentina's civil code system, which are implicated by the unique circumstances of these Actions.  As a threshold matter, the Court will first need to determine whether, under Argentine law, Plaintiffs' claims concerning alleged violations of YPF's Bylaws may even be brought as alleged breaches of contract, as Plaintiffs cast them, or instead, must be brought as claims alleging corporate law violations, as Defendants and their experts contend (and thus, subject to the corresponding requirements of such claims, which would require dismissal).  The issues become even more complex in light of the fact that the party acquiring 51% of YPF's Class D shares was the Republic through a sovereign act of expropriation.  This dispute therefore implicates issues of Argentine constitutional law, public law and priority of law, which are critical to determining whether the same Argentine corporate law requirements that might otherwise apply are still applicable in these cases, and to what degree.  Although this Court surely is called upon from time to time to address questions of foreign law, those fundamental questions of law under Argentina's civil law framework would require it to wade into far less familiar territory than cases involving the application of foreign law to a more typical commercial dispute between private parties (and even disputes of that nature typically favor dismissal for *forum non conveniens*).   While the Court is not being asked

to decide these issues of foreign law now, the fundamental nature of these inquiries illustrates the significance of the complex matters of Argentine law that must be untangled to resolve both the substantive legal claims and the defenses asserted in these Actions.  Additionally, these same interests favor dismissal pursuant to the principles of international comity.

Accordingly, both Actions should be dismissed in their entirety.

## FACTUAL BACKGROUND

### A.    The Parties

Argentina is a foreign federal state composed of twenty-three provinces and the Autonomous City of Buenos Aires, which is the federal capital city.  YPF, an Argentine energy company, is a stock corporation organized under the laws of the Republic.  (Petersen Compl. ¶ 8.)  Its Class D shares primarily trade on the Buenos Aires Stock Exchange.  (*Id.* ¶¶ 8, 21, 34.) 51% of those shares are currently owned by the Republic.  (*Id.* ¶¶ 35, 40.)

Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. are sole shareholder corporations organized under the laws of the Kingdom of Spain.  (*Id.* ¶ 6.)  The Petersen entities are controlled by Argentine nationals, including Sebastián Eskenazi, who served as YPF's CEO prior to the expropriation.[1]  (*Id.* ¶ 36.)

The Eton Park plaintiffs are Eton Park Master Fund, Ltd., Eton Park Fund, L.P. and Eton Park Capital Management, L.P.  Eton Park Master Fund, Ltd. is a Cayman Islands company.  (Eton Park Compl. ¶ 9, ECF No. 1.)  Eton Park Fund, L.P. is a Delaware limited partnership.  *Id.*  Eton Park Capital Management, L.P., also a Delaware limited partnership (*see* Declaration of Michael A. Paskin ("Paskin Decl."), Ex. A (Dec. 31, 2016, Schedule 13G/A)), is

---

[1] Petersen has since gone bankrupt and its claims were auctioned off to Burford. (*See* Petersen Compl. ¶ 47.) (Petersen ECF No. 1.)

named as a plaintiff although it never held any YPF shares.  As of July 2018, Eton Park was in the process of dissolving its hedge fund business and sold a majority of its stake in this litigation to Burford, which also owns a majority of Petersen's stake.[2]

**B.    YPF's Privatization and Subsequent Expropriation**

Until 1993, YPF was wholly owned and operated by the Republic.  (Petersen Compl. ¶ 2.)  On June 29, 1993, Argentina privatized the Company through an initial public offering ("IPO") of nearly 100% of YPF's voting stock.  (*Id.* ¶¶ 2, 13.)  The stock was offered and traded on the Buenos Aires Stock Exchange and American Depository Receipts ("ADRs") were secondarily traded on the New York Stock Exchange ("NYSE").  (*Id.* ¶¶ 2, 13.)

The IPO of ADRs was carried out in the United States pursuant to YPF's U.S. IPO Prospectus (the "Prospectus"), which incorporates YPF's Bylaws.  (*Id.* ¶ 2.)  Relevant here, the Prospectus contains a provision titled "Exclusive Jurisdiction," which provides that "[t]he By-laws are governed by Argentine law and any action relating to enforcement of the By-laws or a shareholder's rights thereunder is required to be brought in an Argentine court".  (Paskin Decl. Ex. B ("Prospectus") at 90.)  That provision is a restatement of what Argentine law requires in any event—that disputes arising out of an Argentine corporation's bylaws *must* be brought exclusively in the jurisdiction where the corporation is registered (the City of Buenos Aires in the case of YPF).  (*See* Declaration of Rafael M. Manóvil ("Manóvil Decl.") ¶¶ 19-30; Declaration of Guillermo Cabanellas ("Cabanellas Decl.") ¶ 6 ("Argentine courts have exclusive jurisdiction over claims based on corporate relationships of a corporation incorporated in Argentina").)

---

[2] Paskin Decl. Ex. C (Burford Investor Presentation dated July 25, 2018) at 9 ("Eton Park is now in the process of dissolving and [Burford] agreed in June to take on a broader role in the Eton Park matter, comparable to [its] role in the Petersen claim").

In the years following the IPO, through a series of acquisitions, Repsol S.A., a large Spanish energy company, became the majority shareholder of YPF.  On April 16, 2012, pursuant to Article 17 of Argentina's National Constitution and Argentina's General Expropriation Law (Law 21,499), Argentina's Executive Branch submitted a bill to Congress that declared 51% of YPF's Class D shares to be of public utility and subject to expropriation. (Petersen Compl. ¶ 35.)  On May 7, Law 26,741 became effective.  On June 4, 2012, the president of the Comisión Nacional de Valores ("CNV", which is the Argentine equivalent to the U.S. Securities and Exchange Commission)—pursuant to Article 13 of Law 26,741—presided over a meeting of YPF's shareholders, at which he authorized the Republic to "exercise political rights over all [shares] subject to expropriation" and further mandated that Argentina be counted as part of the quorum.  (*See* Paskin Decl. Ex. D (YPF Shareholders' Meeting Minutes June 4, 2012 Meeting Minutes) at 35.)

Although Argentina temporarily occupied Repsol's shares in 2012 pursuant to Article 13 of Law 26,741, it did not acquire ownership of the shares through expropriation until May 8, 2014, when the settlement agreement between Repsol and Argentina, ratified by Law 26,932, became effective.  (*See* Declaration of Bernardo Saravia Frías ("Saravia Frías Decl.") ¶ 23.)

C.   **Plaintiffs' Purchases of YPF Shares**

Petersen allegedly relied on the provisions of the Bylaws and the U.S. IPO Prospectus in deciding to acquire its 25% stake in YPF.  (*See* Petersen Compl. ¶¶ 2, 29, 41, 65, 83.)  Petersen acquired its 25% interest in YPF—primarily through private agreements with Repsol—between February 2008 and May 2011.  (*Id.* ¶¶ 6, 28, 30.)

Eton Park also alleges that it was induced to purchase its shares by the promises of the Bylaws and the Prospectus.  (*See, e.g.*, Eton Park Compl. ¶ 5 (reciting acquisitions "in

6

reliance on the tender offer provisions in the bylaws and the U.S. IPO Prospectus").)  The Eton

Park Funds purchased their shares through a series of transactions between November 2010 and

March 2012.  (*Id.*)

### D.   Procedural History

On September 8, 2015, Defendants moved to dismiss the *Petersen* complaint.

(Defs.' Mots. to Dismiss, Petersen ECF Nos. 23, 32.)  Defendants' motions were centered largely

on the defense of sovereign immunity and the "act of state" doctrine, but Argentina (not YPF)

also moved to dismiss on the grounds of *forum non conveniens*, and Defendants also moved on

certain other grounds.  (*See* Def. Argentina's Mem. of Law in Supp. of its Mot. to Dismiss,

Petersen ECF No. 28, at 25-31; Def. YPF's Mem. of Law in Supp. of its Mot. to Dismiss,

Petersen ECF No. 33.)

On September 9, 2016, this Court granted in part and denied in part the

Defendants' motions.  *Petersen I,*  at *16 (Petersen ECF No. 63.)  With respect to *forum non*

*conveniens*, the Court held that "deference to Plaintiffs' choice of forum is not at its greatest

height" because "the forum is not home to Defendants, Plaintiffs or Plaintiffs' owner or

receiver."  *Id.* at *11.  The Court also observed that "[c]ourts generally have found Argentina to

be an adequate alternative forum."  *Id.* (collecting cases).  On the record before it, however, the

Court found that a then-pending investigation of Petersen's attorneys at King & Spalding and its

financial backers at Burford gave rise to "rare circumstances" that made Argentina an inadequate

forum at the time.  *Id.*  Finally, the Court noted that Argentina had not identified witnesses who

would be unable or unwilling to testify in New York.  *Id.* at *12.

Following the Court's ruling on the motion to dismiss in *Petersen*, Defendants

filed an interlocutory appeal based on foreign sovereign immunity and the act of state doctrine.

(Defs.' Notices of Appeal, Petersen ECF Nos. 66, 67.)  The Second Circuit affirmed and

Defendants filed petitions for writ of *certiorari* before the Supreme Court of the United States. *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 895 F.3d 194, 199 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 2741 (2019).  While those appeals were pending in *Petersen*, the *Eton Park* action remained stayed.  (Eton Park ECF Nos. 21, 29, 32, 36.)  On June 24, 2019, Defendants' petitions for *certiorari* were denied.  *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 139 S. Ct. 2741 (2019).

### E.    Dismissal of Investigation into Petersen's Attorneys and Financial Backers

As Argentina's Attorney General explains, the investigation of King & Spalding and Burford referenced in this Court's prior opinion did not result in any prosecution of Plaintiffs' counsel and the investigation was dismissed with prejudice on September 29, 2017. (Saravia Frías Decl. ¶ 14.)  Under applicable Argentine law, the claims giving rise to those investigations "cannot be revived".  (*Id.* ¶ 15.)  Accordingly, there is "no basis to find that the facts give rise to a well-founded fear of prosecution of Plaintiffs or their counsel by virtue of pursuing the claims asserted in this litigation in Argentina, or traveling to or from Argentina in connection with those claims."  (*Id.* ¶ 16.)

## ARGUMENT

### I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*.

#### A.    Applicable Legal Standard

"The central purpose of a *forum non conveniens* inquiry is to determine where trial will be most convenient and will serve the ends of justice."  *Wenzel v. Marriott Int'l, Inc.*, No. 13 Civ. 8335 (AT), 2014 WL 6603414, at *2 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 629 F. App'x 122 (2d Cir. 2015) (citation and quotation marks omitted).

Such motion may be made at any time, and the decision to dismiss a case for *forum non conveniens* is within the discretion of the district court. *See Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239 (CS), 2017 WL 972117, at *5 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018). In deciding a *forum non conveniens* motion, a district court is entitled to make findings of fact, and it may consider evidence outside of the pleadings, including declarations and other evidentiary submissions. *See RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014). While the Court previously denied Argentina's motion to dismiss for *forum non conveniens*, now, changed circumstances, the more developed fact and expert record and newly asserted defenses warrant dismissal of these Actions. *See In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 302 (S.D.N.Y. 2012) ("Because the balance of factors has changed [since initial *forum non conveniens* motion] and now point strongly towards dismissal, defendants' motion is now granted."); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, No. 91 Civ. 2873 (RPP), 1992 WL 398446, at *3 (S.D.N.Y. Dec. 21, 1992) (granting renewed *forum non conveniens* motion based on intervening events), *aff'd*, 994 F.2d 996 (2d Cir. 1993).

To determine whether a complaint should be dismissed on the basis of *forum non conveniens*, courts engage in a three-step inquiry. *See Iragorri v. United Techs. Corp.*, 274 F. 3d 65, 73 (2d Cir. 2001) (en banc); *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 497 (S.D.N.Y. 2007). "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *In re Optimal U.S. Litig.*, 886

F. Supp. at 303 (*citing Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir.

2005).)  Here, all three steps overwhelmingly favor dismissal.

**B.**  **Plaintiffs' Choice of Forum Is Due No Deference.**

The deference given to a plaintiff's forum selection "moves on a sliding scale

depending on several relevant considerations[,]" including "the plaintiff's or the lawsuit's bona

fide connection to the United States and to the forum of choice."  *Bohn v. Bartels*, 620 F. Supp.

2d 418, 428 (S.D.N.Y. 2007) (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d at 71-72).  Here

neither the Plaintiffs nor the Actions have any meaningful connection to this forum.

1.  <u>Plaintiffs Are Sophisticated Foreign Entities Not at Home in This District.</u>

Plaintiffs are not at home in New York and, as the Supreme Court held, "a foreign

plaintiff's choice deserves less deference" because it is "much less reasonable" to assume that

the chosen forum is convenient.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

Petersen's choice of forum in this case is not entitled to deference because, as this

Court previously explained, "the forum is not home to Defendants, [Petersen], or [Petersen's]

owners or receiver."  *Petersen I*, at *11 ("deference to Plaintiffs' choice of forum is not at its

greatest height").  Indeed, the Petersen plaintiffs are Spanish shell entities controlled by the

Eskenazi family—Argentine nationals, all of whom reside in Argentina, and one of whom served

as YPF's CEO prior to the expropriation.  (*See* Petersen Compl. ¶¶ 6, 36; Declaration of María

Alejandra Etchegorry ("Etchegorry Decl.") ¶ 13.)  Argentine nationals who led and invested in

an Argentine company should not be afforded deference with respect to their choice of forum

simply because they chose to file suit in this Court.  Moreover, the Petersen plaintiffs—and

Burford—are all sophisticated entities, capable of having foreseen litigation in Argentina (even

more so, in light of Argentine law mandating exclusive jurisdiction in Argentina for a dispute of

this nature) and are more than capable of litigating their claims in that forum.

Eton Park is also not at home in New York, and as such, its choice of forum is entitled to no greater deference.  One of the Eton Park Funds is a Cayman Islands entity and the other is a Delaware limited partnership with a registered address in Delaware.  (Eton Park Compl. ¶ 9); *see Sussman v. Bank of Isr.*, 801 F. Supp. 1068, 1072 (S.D.N.Y. 1992) (explaining that the Southern District of New York is a foreign forum to plaintiff, a Swedish citizen and California resident, and therefore according plaintiff's choice of forum less deference), *aff'd*, 990 F.2d 71 (2d Cir. 1993).  The third entity, Eton Park Capital Management, L.P., is merely an investment manager—it never owned or had a proprietary interest in YPF shares—and is also a Delaware limited partnership.  (Eton Park Compl. ¶¶ 9, 30.)

The relevant facts in these Actions are analogous to those at issue in *Construtora Norbeto Oderbrecht S.A. v. Gen. Elec. Co.*, a case in which the Court accorded a foreign plaintiff's choice of forum little deference where it brought claims related "entirely to a Brazilian infrastructure project that [was] subject to agreements governed by Brazilian law."  No. 07-CV-8014 (CM), 2007 WL 3025699, at *7 (S.D.N.Y. Oct. 12, 2007).  In granting dismissal based on *forum non conveniens*, the Court aptly declared:

> Less deference is given to plaintiff's choice when the action is not in tort, when the plaintiff sought out the transaction giving rise to the suit, when suit in the international forum was foreseeable in light of the transaction, and when the plaintiff is an organization-rather than an individual-that can easily handle the difficulties of engaging in litigation abroad.

*Id.* (citing *ICC Indus. Inc. v. Isr. Disc. Bank, Ltd.*, 170 F. App'x 766, 767-68 (2d Cir. 2006)) (choice of forum accorded less deference "when suit in the international forum was foreseeable in light of the transaction, and when the plaintiff is an organization . . . that can easily handle the difficulties of engaging in litigation abroad"); *LaSala v. Lloyds TSB Bank, PLC*, 514 F. Supp. 2d 447, 456 (S.D.N.Y. 2007) ("deference *is* diminished when plaintiff is a corporation doing

11

business abroad and can expect to litigate in foreign courts") (emphasis in original) (citations omitted).

        2.      <u>The Relevant Conduct All Took Place in Argentina, Not New York.</u>

Where a dispute (like this one) concerns conduct by foreign plaintiffs and foreign defendants (*including a foreign government*) taking place outside the United States, the selection of a U.S. forum merits little deference.  *See Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 522-23 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x 623 (2d Cir. 2009); *see also Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83, 85-86  (2d Cir. 2007) (suit lacked a "bona fide connection" to the forum where "the vast majority of the activities alleged in the complaint were committed by foreign nationals on foreign soil"); *In re Monegasque De Reassurances S.A.M (Monde Re). v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 491-93, 499 (2d Cir. 2002) (according "little deference" to foreign plaintiff's choice of United States forum for enforcing arbitration award arising out of events that occurred in Ukraine).  As this Court has observed, here, all of the relevant facts "took place in Argentina."  *Petersen I*, at *5.

        3.      <u>Plaintiffs' Efforts To Establish Connections to New York Based on YPF's U.S. IPO and Prospectus Are Directly Contradicted by the Prospectus's Exclusive Jurisdiction Provision.</u>

Despite Plaintiffs' transparent attempt to invoke the Prospectus—which predated their purchase of YPF stock by 15 to 20 years—to support New York connections (Petersen Compl. ¶¶ 2, 3, 5, 10, 14-15, 24-25, 41, 65, 83; Eton Park Compl. ¶¶ 4-6, 14, 16-18, 27-28, 40), Plaintiffs wholly ignore that the same Prospectus upon which they plead reliance contains an "Exclusive Jurisdiction" clause providing unambiguously that "any action relating to

enforcement of the By-laws or a shareholder's rights thereunder is required to be brought in an

Argentine court."  (Prospectus at 90.)[3]

   Plaintiffs cannot ignore the exclusive jurisdiction provision and cherry-pick which

provisions of the Prospectus they seek to enforce.  *See AIG Mex. Seguros Interamericana, S.A.*

*de C.V. v. M/V Zapoteca*, 844 F. Supp. 2d 440, 442 (S.D.N.Y. 2012) (Preska, J.) (enforcing a

forum-selection clause and finding "[w]here a Defendant can be made liable for a breach of any

duty under a bill of lading, it is entitled to assert any additional provisions of the same bill that it

finds beneficial or provide it a defense to the action") *aff'd*, 508 F. App'x 58 (2d Cir. 2013).

Rather, given their purported reliance on the Prospectus throughout their complaints, Plaintiffs

are bound by the exclusive jurisdiction provision in the Prospectus.  *See In re Refco Inc., Sec.*

*Litig.*, No. 07-MDL 1902 (JSR), 2009 WL 5548666, at *9 (S.D.N.Y. Nov. 16, 2009) (enforcing

forum selection clause in unsigned agreements on which suit was based; explaining that "a party

seeking to obtain the benefits of a contract must also accept its burdens, including contractual

forum selection.") (Rakoff, J.) (citing cases).[4]

---

 [3] While Plaintiffs plead reliance on YPF's U.S. IPO Prospectus from 1993 and other SEC filings in deciding to purchase YPF shares (ostensibly to create New York contacts and appear to be bona fide open market purchasers), in fact, Petersen, which is controlled by the Argentine Eskenazi family, acquired its 25% stake in YPF beginning in 2008 through a series of private agreements with Repsol that also coincided with Sebastián Eskenazi becoming YPF's CEO. Indeed, Petersen's purported reliance on the tender offer provisions of the Bylaws for a "compensated exit" in the event of an Argentine takeover is further belied by Petersen's unusual agreement with Repsol, which guaranteed Petersen complete indemnification if Argentina re-acquired majority control, but which Petersen inexplicably never sought to enforce.  (*See* Def. Argentina's Answer & Affirmative Defenses at 23-26, 32-33, Petersen ECF No. 98.)

 [4] For the avoidance of doubt, Defendants are not barred from seeking a *forum non conveniens* dismissal based on the exclusive jurisdiction provision of the Prospectus simply because they did not raise them in a prior pleading.  15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3828 (4th ed. 2016) (it is axiomatic that there is "no time limit on when a motion to dismiss on the ground of *forum non conveniens* can be made"); *Petersen v. Boeing Co.*, No. CV-10-00999-PHX-ROS, 2015 WL 12434322, at *4 (D. Ariz. Apr.

The exclusive jurisdiction provision in the Prospectus implements clear controlling Argentine law providing that disputes arising out of an Argentine corporation's bylaws or other claims based on "corporate relationships" *must be brought* in the corporation's place of incorporation.  (*See* Manóvil Decl. ¶¶ 19-30 (Argentine courts have exclusive jurisdiction over claims arising under an Argentine company's bylaws); Cabanellas Decl. ¶ 6 ("Argentine courts have exclusive jurisdiction over claims based on corporate relationships of a corporation incorporated in Argentina.").)[5]  Accordingly, the Prospectus reinforces that claims relating to YPF's Bylaws (which these indisputably are) cannot be brought in this forum.[6]

---

7, 2015) ("*Atlantic Marine*'s direction to enforce foreign forum selection clauses through *forum non conveniens*, coupled with the Federal Rules and case law on waiver of *forum non conveniens*, show that a party may move to dismiss or transfer a case based on a forum selection clause even if the party declined to raise that ground in either a motion to dismiss or responsive pleading."); *see also Weber v. Saladworks, LLC*, No. SA CV 13-01049-MWF (PJWx), 2014 WL 12581768, at *1 (C.D. Cal. Jan. 27, 2014) (holding that defendants did not waive the right to enforce a forum selection clause by failing to raise it in a motion to dismiss).

   [5] Similarly, even if these actions were (wrongly, in Defendants' view) to proceed as breach of contract claims, they would be subject to the exclusive jurisdiction of Argentine courts.  (*See* Cabanellas Decl. ¶ 8.)

   [6] In fact, this case is also subject to dismissal pursuant to the streamlined *forum non conveniens* analysis used to evaluate forum-selection clauses prescribed by the Supreme Court, which has declared that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases".  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (alteration in original) (quotation omitted).  Indeed, "the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted," and importantly, the plaintiff's "choice of forum merits no weight."  *Id.*  "'If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.'"  *Arial Techs. LLC v. Aerophile S.A.*, No. 14 CV 4435, 2015 WL 1501115, at *2 (S.D.N.Y. Mar. 31, 2015) (Preska, J.) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).  The Prospectus' exclusive jurisdiction provision readily satisfies each of the elements under *Atlantic Marine* for enforcing a forum-selection clause.  *First*, it was reasonably communicated in the Prospectus because it was set off in a section entitled "Exclusive Jurisdiction" and expressed in clear and unambiguous language.  *See Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (forum selection clause set forth "in clear and unambiguous language" and "heralded" by bolded heading was reasonably communicated)

### C.      Argentina Is an Adequate Forum.

As this Court previously observed, "[c]ourts generally have found Argentina to be

an adequate alternative forum." *Petersen I*, at *11 (collecting cases).  An alternative forum is

adequate if "(1) the defendants are subject to service of process there; and (2) the forum permits

'litigation of the subject matter of the dispute.'"  *Capital Currency Exch., N.V. v. Nat'l*

*Westminster Bank PLC,* 155 F.3d 603, 609 (1998) (quoting *Piper Aircraft Co.*, 454 U.S. at 254

n.22); *see Monegasque*, 311 F.3d at 499.  Those factors are readily satisfied.

### 1.      Defendants Are Subject to Service of Process in Argentina and the Forum Permits Subject Matter of the Dispute.

Defendants are both located in Argentina and subject to service of process there.

(*See* Petersen Compl. ¶ 8; Eton Park Compl. ¶¶ 10-11; Cabanellas Decl. ¶ 8.)  "Argentina has an

independent legal system capable of fairly and impartially adjudicating disputes between private

litigants, including foreigners, and the Argentine State."  (Declaration of Alfonso Santiago

("Santiago Decl.") ¶ 7.)  This impartiality does not waver in actions brought against the

---

(citation omitted); *see also Arial Techs.*, 2015 WL 1501115, at *2; *In re Facebook, Inc. IPO Sec.
& Derivative Litig.*, 922 F. Supp. 2d 445, 461 (S.D.N.Y. 2013) (rejecting plaintiffs' contention
that they "lacked notice" of forum selection clause in prospectus).  *Second*, the clause is
unambiguously exclusive, as underscored by its heading—"*Exclusive Jurisdiction*"—and
mandatorily "require[s]" that "any action relating to the enforcement of the By-laws or a
shareholder's rights" be "brought in an Argentine court."  (Prospectus at 90.)  *Finally*, the clause
indisputably applies to all of Plaintiffs' claims here, which relate to purported shareholder rights
under the Bylaws.  (*See, e.g.*, Petersen Compl. ¶ 53 ("Argentina breached the bylaws"), ¶ 58
("Argentina repudiated its contractual obligations under the bylaws"); Eton Park Compl. ¶¶ 40,
50, 55.)  Plaintiffs cannot possibly make a sufficiently strong showing that "enforcement would
be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or
overreaching."  *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972); *see also CCM
Pension-A, L.L.C. v. Republic of Argentina*, 16-cv-1650 (TPG), 2016 WL 4154892, at *2
(S.D.N.Y. Aug. 2, 2016) (dismissing plaintiffs' claims against Argentina based on bonds with
exclusive forum-selection clause and finding that "[t]he need to enforce forum-selection clauses
is perhaps greatest in the international arena").  Indeed, the exclusive jurisdiction provision
simply reinforces precisely what controlling Argentine law says—Argentine courts have
exclusive jurisdiction over Plaintiffs' claims.

Argentine state.  (Santiago Decl. § A(b)-(d), ¶ 23 ("There are no impediments to filing claims

against the Argentine State.").); *see Sussman*, 801 F. Supp. at 1076, 1078 (S.D.N.Y. 1992)

(finding that "[t]he adequacy of a foreign forum for purposes of transfer of venue turns not on

the status any individual litigant may hold in a foreign society, but on the soundness and

procedural fairness of that society's court system" which "American courts are not prone to

characterizing . . . as 'clearly unsatisfactory'"); *id.* at 1078 ("And it will be a black day for

comity among sovereign nations when a court of one country, because of a perceived 'negative

predisposition,' declares the incompetence or worse of another nation's judicial system.").

Additionally, as Defendants' experts explain, the Argentine Constitution

guarantees equal treatment to foreign and domestic litigants.  (*See* Santiago Decl. ¶¶ 15-17

(enumerating protections for litigants, including foreign litigants, in suits in Argentine courts).)

Moreover, foreign and domestic litigants regularly exercise their right to fairly pursue claims in

Argentine courts against Argentina and government-owned companies, including YPF.  (*See id.*

¶ 13 (listing cases against the government that have reached "the Supreme Court of Justice of the

Nation . . . which demonstrate the impartial and independent conduct on the part of the Argentine

Judiciary"); Cabanellas Decl. ¶ 11, Ex. B (listing cases in Argentina with judgments against the

Republic or YPF).

In addition, Argentine law permits litigation of the subject matter of the dispute.

(*See* Cabanellas Decl. ¶ 5); *Norex*, 416 F.3d at 158.  As Defendants' experts explain, Argentine

law provides that "[a] case based on the violation of YPF's bylaws [is] properly [] characterized .

. . as a case 'based on corporate relationships,'" and accordingly, must be brought pursuant to

Argentine corporate law.  (Cabanellas Decl. ¶ 5; *see also id.* ¶ 8 ("Plaintiffs' alleged violations

may only be construed as a breach of the corporate relationship between the parties."), ¶ 21;

16

Manóvil Decl. ¶ 15 (explaining that Plaintiffs' "allegations may give rise only to corporate law claims, which provide rights and remedies distinct from those available in contract law.").)

2.      Indeed, Argentina Is the Exclusive Jurisdiction for This Dispute, Pursuant to Argentine Law and as Reflected in the Prospectus.

Far beyond the requirements stated above, in this case not only is Argentina an adequate forum, but, pursuant to Argentine law, it is the *only* forum where Plaintiffs can bring their claims.  In fact, the "Exclusive Jurisdiction" section in YPF's Prospectus states that "[t]he By-laws are governed by Argentine law and any action relating to enforcement of the By-laws or a shareholder's rights thereunder is required to be brought in an Argentine court."  (Prospectus at 90.)  This provision reinforces what is already required under Argentine law:  Plaintiffs' claims are subject to Argentina's *exclusive jurisdiction*.

As Defendants' experts explain, disputes arising out of the bylaws of an Argentine corporation are governed by Argentine corporate law and subject to Argentina's exclusive territorial jurisdiction.  (*See* Manóvil Decl. ¶¶ 19-30; Cabanellas Decl. ¶ 6.)  Specifically, under Article 46 of Law 26,831 (the "Capital Markets Law"), all shareholder claims under an Argentine company's bylaws must be brought either before an arbitral tribunal in Argentina or before a court of competent jurisdiction in Argentina.  (Manóvil Decl. ¶ 21; Cabanellas Decl. ¶ 6.)  Article 5, paragraph 11 of the National Code of Civil and Commercial Procedure defines competent courts for corporate disputes as courts in "the place of the company's registered domicile."  (Manóvil ¶ 23; Cabanellas ¶ 5.)  Because Argentina is a civil law country, these provisions of its codes are treated as default provisions, and as a result they are deemed incorporated as a matter of law into all Argentine corporate bylaws unless the corporation explicitly provides otherwise.  (Manóvil ¶ 24.)  Indeed, as Professor Manóvil explains: "There is no dispute about this principle in Argentina . . . . [U]nless expressly agreed

17

otherwise . . . the place of a company's registered office determines the appropriate and exclusive territorial jurisdiction for all corporate disputes." (*Id.*)  YPF is both incorporated and has its registered office in the City of Buenos Aires.  Accordingly, under Argentine law, claims arising out of YPF's Bylaws are subject to exclusive territorial jurisdiction in the City of Buenos Aires.  (*Id.* ¶ 27.)

Courts, including this Court, regularly dismiss claims brought under foreign law that are subject to the exclusive jurisdiction of foreign courts.  In *Locals 302 & 612 of Int'l Union of Operating Eng'rs v. Blanchard*, No. 04 Civ. 5954 (LAP), 2005 WL 2063852, at *3–4 (S.D.N.Y. Aug. 25, 2005) (Preska, J.), this Court held that it could not exercise jurisdiction over Canadian Business Corporations Act ("CBCA") claims subject to the exclusive jurisdiction of a foreign court.  The defendant in that case was a Canadian corporation incorporated under CBCA, which, like the Argentine Capital Markets Law, "enumerates specific Canadian courts where such actions [like that brought before this Court] may exclusively be heard." *Id.* at *3.  This Court recognized that "stockholders impliedly consent to be governed by the law of a corporation's state of incorporation when they purchase stock in the company." *Id.* at *3 n.2.[7] Given the Canadian legislative mandate for exclusive jurisdiction over corporate claims, this Court declared that "[b]oth Canadian and United States courts have made clear that where the CBCA specifically establishes exclusive jurisdiction over an action, that choice of forum must be respected." *Id.*  Because the CBCA "require[d] that [] plaintiff seek leave of a specifically

---

[7] Argentine courts have likewise repeatedly held that disputes relating to rights granted by the bylaws or the company agreement ("*contrato social*") are subject to a single and exclusive jurisdiction, *i.e.*, the place of the company's registered office.  These cases similarly hold that Argentine law presumes that shareholders agree to submit their rights and duties to be adjudicated in the exclusive jurisdiction of the company's registered office when they register the company at a specific location or purchase shares in a company registered at that location. (Manóvil Decl. ¶ 25.)

enumerated Canadian court," which it did not do, the Court held that it had no jurisdiction over the claims. *Id.* at *7; *see also Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04 C 698, 2007 WL 1029089, at *9–10 (N.D. Ill. Mar. 29, 2007) (no jurisdiction over CBCA claim because "the CBCA itself provides that those claims must be heard only in certain enumerated Canadian courts"); *Natasha Inc. v. Shopkorn*, 134 A.D.3d 598, 598–99 (1st Dep't 2015) (granting motion to dismiss where "the High Court of the British Virgin Islands has exclusive adjudicatory authority" over plaintiffs' claims); *Elliott Assocs. v. Porsche Auto. Holding SE*, 759 F. Supp. 2d 469, 477 (S.D.N.Y. 2010) (declining to exercise jurisdiction where "Germany provides for exclusive jurisdiction of securities fraud cases in its own courts, making any judgment from this Court unenforceable in Germany"), *aff'd sub nom. Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198 (2d Cir. 2014). Because Plaintiffs assert claims that must be heard in Argentine courts under controlling Argentine law, and as reinforced in the Prospectus, this Court similarly lacks jurisdiction.

Further, given the exclusive jurisdiction of Argentine courts over these disputes, an Argentine court will likely refuse to enforce any judgment rendered by this Court, which is a factor that "weighs in favor of dismissal." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 277 (S.D.N.Y. 2010); *see Scottish Air Int'l, Inc. v. British Caledonian Grp.,* PLC, 81 F.3d 1224, 1233 (2d Cir. 1996) (considering the unenforceability of the judgment in the foreign forum as a factor in the *forum non conveniens* analysis weighing in favor of dismissal).[8]  (*See* Manóvil Decl. § C

---

[8] *Accord RIGroup LLC*, 949 F. Supp. 2d at 557 ("[T]he private interest factors favor a Russian forum because a judgment from this Court may not be enforceable in Russia"), *aff'd*, 559 F. App'x 58 (2d Cir. 2014); *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, No. 11 Civ. 9490 (ALC), 2012 WL 3854618, at *9 (S.D.N.Y. Sept. 5, 2012) (concluding that "public interest factors prefer dismissal" because "the exclusive jurisdiction clause and the pendency of the

(explaining that Argentine courts would not enforce a decision in the U.S. where Argentine courts had exclusive jurisdiction over the claims); Cabanellas Decl. ¶ 7 ("[I]f this case is decided by a non-Argentine court, Argentine courts will certainly refuse to enforce the judgment because Argentine courts had exclusive jurisdiction over the claims.")

3. The Basis for the Court's Previous Concerns About Argentina as an Adequate Forum No Longer Exists.

The concerns that animated this Court's conclusion that Argentina was not an adequate forum in 2016 no longer persist today. The Attorney General of Argentina has affirmed that the prior investigation of King & Spalding and Burford has been dismissed with prejudice, and cannot be revived.[9] (*See* Saravia Frías Decl. ¶¶ 7, 13-17, Ex. A (judicial decision dismissing investigation).) In fact, those entities were never prosecuted. (*Id.*) Accordingly, there are no exceptional circumstances today requiring a departure from the usual rule that Argentina is an adequate forum. *Cf. Petersen I,* at *11-12. Plaintiffs' speculation that this will somehow change in the future (*see* Petersen ECF No. 90 at 2) is unfounded. (Saravia Frías Decl. ¶ 15 (explaining that the previous investigation and proceeding were dismissed with prejudice, are subject to res judicata, and cannot be revived).)

---

Belgian proceeding could render any judgment of this Court unenforceable in Belgium"), *vacated on other grounds*, 528 F. App'x 33 (2d Cir. 2013).

[9] The Attorney General's statement is entitled to receive this Court's "respectful consideration." *See Bugliotti v. Republic of Argentina*, 17 Civ. 9934 (LAP), 2019 WL 586091, at *2 (S.D.N.Y. Jan. 15, 2019) (Preska, J.) (similarly according respectful consideration to a declaration submitted by Attorney General Saravia Frías on the meaning and interpretation of applicable Argentine law); *see also Animal Sci. Prod. Inc. v. Hebei Welcome Pharm. Co.,* 138 S. Ct. 1865, 1869 (2018) ("A federal court should accord respectful consideration to a foreign government's submission.") (Ginsburg, J.).

20

D.     **The Balance of Public and Private Interest Factors Strongly Weigh in Favor of Dismissal to Argentina.**

1.     The Private Interest Factors Favor Dismissal.

Private interest factors include (1) the relative "ease of access to evidence; (2) the cost for witnesses to attend trial; (3) the availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive." *Capital Currency Exch.*, 155 F.3d at 609 (citing *Piper Aircraft Co.*, 454 U.S. at 241). All of those factors favor dismissal to Argentina.

*First*, virtually all of the documentary evidence relevant to Plaintiffs' claims and Defendants' defenses[10] is located abroad, the vast majority of it in Argentina. (*See* Etchegorry Decl. ¶¶ 20-24); *see First Union Nat. Bank v. Paribas*, 135 F. Supp. 2d 443, 449 (S.D.N.Y. 2001) (considering the "great deal of documentary evidence" located in London to weigh in favor of dismissal). The books and records of YPF, including documents related to the intervention of YPF and expropriation of Repsol's shares of YPF, are located in Argentina. (*See* Etchegorry Decl. ¶ 22.) Government documents, such as the legislative history of Law 26,741 and documents related to Argentina's settlement with Repsol also would be located in Argentina. (*Id.*) Moreover, documents related to Defendants' affirmative defenses, including documents relating to the events leading up to Petersen's acquisition of YPF shares and Repsol's litigation with Argentina regarding the validity of the expropriation and their compensation in connection therewith are likely to be in the possession of third parties in Argentina and only available in Spanish. (*See* Etchegorry Decl. ¶¶ 20-24; Cabanellas Decl. ¶ 14-20.) Argentine courts have the

---

[10] When conducting a *forum non conveniens* analysis, courts properly consider evidence necessary for a defendant's defenses. *See, e.g.*, *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 765 (S.D.N.Y. 2006) (dismissing suit on *forum non conveniens* grounds because, among other reasons, foreign third-party witnesses "would be needed to establish defendant's interference, mistake, and impossibility defenses").

power to compel production of documents from third parties located in Argentina. (Cabanellas Decl. ¶ 15.)  If these cases were to proceed in New York, however, the production of documents from such third parties would be delayed, as letters rogatory requesting document production take approximately eight months to be executed from when they arrive in Argentina. (*Id.*)

       *Second*, most, if not all, witnesses who will be called to testify in these Actions are located in Argentina and there are few—if any—witnesses in the United States. (Etchegorry Decl. ¶¶ 11-17); *LaSala*, 514 F. Supp. 2d at 460 (considering the location of witnesses in Switzerland to be a factor favoring dismissal, explaining that "the presence of the vast majority of witnesses in one forum weighs in favor of that forum, even if the witnesses could be transported"). The same is true for the parties' experts on Argentine law, who will likely be deposed and asked to appear at trial. (Etchegorry Decl. ¶¶ 18-19.)

       The witnesses with knowledge related to plaintiffs' affirmative case are virtually all located in Argentina because, as this Court has noted, all of the relevant events took place there. *See Petersen I,* at *5. Former Argentine government officials and YPF board members and employees during the time of the intervention and expropriation, including Intervenor Julio de Vido and Vice-Intervenor Axel Kicillof, are located in Argentina.[11] (*See* Etchegorry Decl. ¶ 16.) Individuals who presided over the June 4, 2012, shareholder meeting, including the head of the National Securities Commission, also are located in Argentina.

---

[11] Individuals who managed YPF during the period of temporary occupation include the Chairman of the Board and CEO, Miguel Matias Galuccio, and the Board of Directors:  Axel Kiciloff, Eduardo Baualdo, Héctor Walter Valle, José Iván Brizuela, Carlos Alfonsi, Gustavo Alejandro Nagel, Roberto Ariel Ivovich, Oscar Alfredo Cretini, Walter Fernando Vázquez, Oscar Alberto Lamboglia, Guillermo Juan Pereyra, Sebastián Uchitel, Rodrigo Cuesta, Fernando Giliberti, Fernando Dasso and Luis Garcia del Rio (*see* Paskin Decl. Ex. E (YPF's Form 6-K, June 5, 2012)).

Importantly, most of the relevant witnesses are no longer (or never were) subject to Defendants' control, and important witnesses face legal restrictions on traveling outside of Argentina.  (*See* Etchegorry Decl. ¶ 11.)  Those include Intervenor Julio de Vido and other individuals who were his top aides during the intervention.  (*Id.*)  These individuals are witnesses who would likely be unable or unwilling to appear at trial.  *Cf. Petersen I*, at *12.

*Third*, virtually all of the documentary and testimonial evidence required to establish Defendants' affirmative defenses is located abroad, and most of it is in Argentina. Relevant witnesses include YPF's former CEO and part-owner of Petersen, Sebastián Eskenazi, and other members of the Eskenazi family, including Enrique Eskenazi, Matías Eskenazi Storey and Ezequiel Eskenazi Storey, all of whom live in Argentina.  (Etchegorry Decl. ¶ 13.)  Former and current government officials and domestic experts in Argentina's oil and gas industry, who would have knowledge of the circumstances leading up to the expropriation—which is relevant to several of Defendants' defenses—are also located in Argentina.  (*See id.* ¶¶ 6, 16.)  The location of these nonparty witnesses abroad weighs heavily in favor of dismissal.  *See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 769 (S.D.N.Y. 2006) ("Given defendant has identified at least nine nonparty witnesses central to its defense, and the general preference for live testimony, the Court finds that this factor weighs heavily in favor of dismissal.").[12]

---

[12] Accordingly, conducting proceedings here would require certified translations of voluminous Spanish documents and numerous witnesses' testimony, significantly increasing the cost of the litigation and time to complete discovery.  *See Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83, 87 (2d Cir. 2007) (affirming *forum non conveniens* dismissal where "'nearly all of the relevant non-party witnesses' are in Argentina and Uruguay, and [] the inconvenience of transporting witnesses and translating documents from Spanish to English weighed in favor of dismissal"); *Blanco v. Banco Industrial de Venezuela S.A.*, 997 F.2d 974, 982-83 (2d Cir. 1993)

Thus, insisting on trial in New York not only would be burdensome to the witnesses and the parties, and needlessly expensive, but it also would "unquestionably [] deprive the finder of fact of the live testimony of unwilling [] witnesses and quite likely would deprive it of a meaningful substitute in the form of depositions." *See First Union Nat. Bank*, 135 F. Supp. 2d at 450; *LaSala*, 514 F. Supp. 2d at 460 ("For those who could not be compelled to testify in the United States, obtaining evidence by means of letters rogatory pursuant to the Hague Convention is a poor substitute for live trial testimony.").

In sum, the private factors strongly favor dismissal to Argentina.

2. <u>The Public Interest Factors Overwhelmingly Tilt Towards Dismissal to Argentina.</u>

Public-interest factors that courts look to include four interrelated considerations: "[T]he local interest in having localized controversies decided at home," "the appropriateness of trying a case in a forum familiar with the governing law in the case," "court congestion," and "the burden of jury duty on people of a community with no relation to the litigation." *See Karlitz v. Regent Int'l. Hotels, Ltd.*, 1997 WL 88291, *1 (S.D.N.Y. 1997) (Preska, J.). All of these factors decisively favor Argentina as a more convenient venue for the claims at issue.

(1) Argentina Has a Compelling Interest in Addressing the Important Threshold Legal Questions Raised by This Dispute.

Argentina has a paramount interest in these cases, which are indisputably governed by Argentine law,[13] being decided at home in its own courts. Courts engaging in a

---

(noting that expense of bringing witnesses from Venezuela and translating testimony and documents "militates strongly in favor of Venezuela as a more appropriate forum").

[13] This Court has already held that "the internal affairs doctrine directs application of Argentine law" to Plaintiffs' claims for breach of the Bylaws. *Petersen I,* at *14. Additionally, Plaintiffs do not dispute that Argentine law governs. (*See* Petersen ECF No. 92 at 2, n.3.) The

*forum non conveniens* analysis which implicates issues governed by the law of a foreign nation

generally find that "the likelihood that foreign law will apply weighs against retention of the

action in the forum non conveniens inquiry." *CCS Int'l, Ltd. v. ECI Telesys, Ltd.*, No. 97 CIV.

4646 (LAP), 1998 WL 512951, at *11 (S.D.N.Y. Aug. 18, 1998) (Preska, J.) (finding that

"because at least six of plaintiffs' seven substantive legal claims are likely governed by Israeli

law, the interest in having foreign tribunals apply foreign law tilts strongly in defendants'

favor"); *Bybee v. Oper der Standt Bonn,* 899 F. Supp. 1217, 1223 (S.D.N.Y. 1995) (finding that

the need to apply German law to plaintiffs' breach of contract claims weighed in favor of

dismissal); *see Piper Aircraft Co.,* 454 U.S. 235 at 251 ("The doctrine of *forum non conveniens*

. . . is designed in part to help courts avoid conducting complex exercises in comparative

law.").[14]

       Here, the complexity of foreign law issues implicated by Plaintiffs' claims and

Defendants' affirmative defenses present an even more compelling case for these issues to be

determined in Argentina.  Beyond the usual challenge of applying foreign law, Argentina's legal

system is based on the civil law, a regime confronted far less frequently in the U.S. than in

Argentina and a factor that also weighs in favor of dismissal.  *See LaSala v. UBS, AG*, 510 F.

Supp. 2d 213, 233 (S.D.N.Y. 2007) (granting *forum non conveniens* motion where the court

---

choice-of-law provision in YPF's U.S. IPO Prospectus further confirms that Argentine law
governs any dispute over the Bylaws.  (Prospectus at 90.)

   [14] These Actions are thus distinguishable from those circumstances in which a Federal Court
sitting in diversity finds that it is suited to apply a different state's law, relatively similar to its
own law, to a commercial dispute such as a contract case where the basic framework of how to
analyze a breach of contract under those states' laws is a familiar one.  *See e.g. Lasker v. UBS
Sec. LLC*, 614 F. Supp. 2d 345, 359 (E.D.N.Y. 2008) ("[T]his Court is not unusually burdened,
and is capable of applying Tennessee law"); *Henderson v. FLOORgraphics, Inc.*, 153 F. Supp.
2d 133, 138 (D. Conn. 2001) (denying *forum non conveniens* motion because, inter alia, the court
felt comfortable applying another state's law to a contract dispute).

would have had to decide complex issues in a civil law system and explaining that "[i]t is inadvisable for this Court to decide a case where legal experts disagree about critical points in the application of the foreign law"); *Schertenleib v. Traum*, 589 F.2d 1156, 1163 (2d Cir. 1978) ("Another difficulty that must be confronted if trial is held in the Southern District is that, as the parties now seem to agree, Swiss law appears to apply to the tort claims. This necessitates the introduction of inevitably conflicting expert evidence on numerous questions of Swiss law, and it creates the uncertain and time-consuming task of resolving such questions by an American judge unversed in civil law tradition. Determining the content of Swiss law is obviously easier at a trial in Geneva."); *Panama Processes, S.A. v. Cities Serv. Co.*, 500 F. Supp. 787, 798 (S.D.N.Y. 1980), *aff'd*, 650 F.2d 408 (2d Cir. 1981) (granting *forum non conveniens* motion and noting the difficulty that an American court "unversed in civil law tradition" would have "pars[ing] significant substantive and procedural questions of Brazilian law").

Further still, the questions of Argentine law to be decided here are fundamental ones of constitutional law, public law, corporate law and priority of law that go far beyond the familiar issues that U.S. courts comfortably consider. *First*, in order to resolve Plaintiffs' claims, the Court would have to first resolve the threshold question concerning the very nature of what Plaintiffs' claims are under Argentine law. Although Plaintiffs cast their claims as alleged breaches of contract, Defendants and their experts fundamentally disagree with that. (*Compare* Petersen Compl. ¶ 5 ("Plaintiffs . . . seek compensatory damages for Argentina's and YPF's breaches of contract") and Eton Park Compl. ¶ 8 (same) *with* Cabanellas Decl. ¶ 5 ("A case based on the violation of YPF's bylaws would properly be characterized, under Argentine law, as a case 'based on corporate relationships', not a case for breach of contract.") and Manóvil Decl. ¶ 15 ("Plaintiffs' allegations regarding Argentina's purported failure to conduct a tender offer

would not properly be characterized as breach of contract . . . under Argentine law.  Rather . . . their allegations may give rise only to corporate law claims, which provide rights and remedies distinct from those available in contract law.").).)[15]  Resolving this corporate law question is essential, and implicates many of the defenses asserted that would also have to be decided under Argentine corporate law.  (*See* Cabanellas Decl. ¶¶ 22; Etchegorry Decl. ¶¶ 8-10; *see also infra* Argument Section IV.B.2.)

       *Second*, even if Argentina's alleged conduct was "taken in connection with commercial activity," *Petersen I*, at *5, the events giving rise to Plaintiffs' claims and Defendants' defenses nonetheless require the Court to address fundamental and complex questions of Argentine constitutional law, public law, priority of law and statutory law, and Defendants' obligations thereunder.  A far cry from the context of an ordinary control acquisition by a private party, the Republic temporarily occupied the shares at issue while acting in its unique capacity as a sovereign, and the head of the CNV presided over YPF's June 4, 2012, shareholder meeting and expressly proclaimed that the Republic was required to be counted in a quorum and authorized to vote the shares subject to expropriation, pursuant to Law 26,741, nearly two years before it actually acquired legal title to the expropriated shares.  (*See* Cabanellas Decl. ¶ 21; Saravia Frías Decl. ¶¶ 18-25; Paskin Decl. Ex. F (YPF's Form 6-K, May 9, 2014) at 6.)  Accordingly, Argentine public law—including the National Constitution and General Expropriation Law (Law 21,499)—governs (*see* Cabanellas Decl. ¶ 21; Saravia Frías Decl.

---

[15] Pursuant to Argentine law, corporate bylaws like YPF's do not give rise to a traditional contractual relationship between a corporation and its shareholders.  (*See* Cabanellas Decl. ¶¶ 21-22.)  Instead, Argentine law conceptualizes breaches of bylaws as violations of a corporate relationship.  (Manóvil Decl. ¶ 15 ("[T]o the extent Plaintiffs are able to assert any claim under the bylaws, their allegations may give rise only to corporate law claims, which provide rights and remedies distinct from those available in contract law."); Cabanellas at ¶¶ 21-24.)

¶¶ 18-19), such that the Court must engage in an analysis of the conflicts and priority between public law and private law to answer the fundamental questions regarding what obligations, if any, the Bylaws impose on the national government in these unique circumstances.  This is precisely the type of analysis that the *forum non conveniens* doctrine is designed to avoid.  *See Piper Aircraft Co.,* 454 U.S. at 251 ("The doctrine of *forum non conveniens* [] is designed in part to help courts avoid conducting complex exercises in comparative law . . . [T]he public interest factors point towards dismissal where the court would be required to "untangle problems in conflict of laws, and in law foreign to itself.")[16]

       In addition to determining the Republic's rights and obligations, the Court will also have to make several complex determinations of constitutional and corporate law with regard to YPF.  For example, Defendants' experts contend that YPF's private Bylaws directly conflicted with the federally enacted Law 26,741 and the General Expropriation Law (Law 21,499)—which governed the time and manner of the expropriation, and the price to be paid for the shares—both of which are compulsory laws embodying public policy.  (*See* Cabanellas Decl. ¶¶ 19-21; Santiago Decl. ¶ 26.)  Thus, the Court will also have to determine whether or not any potential obligations imposed by Argentine corporate law survive when they conflict with duly enacted Argentine public laws and whether or not any such obligations in fact conflicted with such laws.  And while the Court is not being asked to decide these issues now, the fundamental nature of these inquiries illustrates the significance of the complex matters of Argentine law that must be addressed to resolve Plaintiffs' claims.

---

[16] While this Court has previously held, for FSIA purposes, that the relevant conduct here was "commercial" in nature, the Argentine public and private law questions to be answered now to determine the merits of the dispute have not been addressed, and, Defendants submit, are questions that would be more easily and appropriately decided by Argentine courts.

*Third,* the defenses asserted in *Petersen* also invoke intricate issues of Argentine law that Argentine courts are best equipped to decide.  (Cabanellas Decl. § VIII; Manóvil Decl. § E.)  This includes Defendants' contentions that Plaintiffs' claims are barred by the applicable three-month limitation period governing decisions made at shareholders' meetings, pursuant to Article 251 of Argentina's General Corporations Law (Cabanellas Decl. ¶ 22(ii)(1); Etchegorry Decl. ¶ 8(k)) and also are barred by the doctrine of impossibility, *force majeure,* preemption and exemption because Law 26,741 and the General Expropriation Law (Law 21,499), both of which the Republic enacted pursuant to its constitutionally granted right to expropriate, conflicted with and preempted any alleged obligations Defendants had under the Bylaws.  (Cabanellas Decl. ¶ 22(iii)(1); Santiago Decl. ¶ 26; Etchegorry Decl. ¶ 8(e).)

Additionally, the Court will have to determine whether and to what extent YPF had an obligation to "enforce" the Bylaws or act as a "guarantor," and whether or not any such obligations survive when the allegedly offending shareholder is the Argentine government. According to YPF's expert, as a matter of corporate law and before even addressing the massively complicating factor of the Republic's involvement, "Argentine law does not recognize a guarantor theory of liability such that a company is required to take the place of an acquirer in performing its obligations under the company's bylaws."  (Cabanellas Decl. ¶ 22(i)(1).) Plaintiffs have previously suggested, without any support, that such a guarantor theory exists (Mot. to Dismiss Hr'g Tr. 39-40, Petersen ECF No. 61), and to the extent their expert agrees, this will create a "sharp dispute" as to Argentine law which is "best left to knowledgeable [Argentine] jurists" to decide. *See Fustok v. Banque Populaire Suisse*, 546 F. Supp. 506, 513 (S.D.N.Y. 1982) (finding that "[w]ith Swiss legal experts in such sharp dispute as to Swiss law and the holding of Swiss high court rulings, the matter is best left to knowledgeable Swiss

jurists" in a case where the "litigation present[ed] legal and factual issues of substantial complexity".).

Certain other defenses will require that this Court determine under Argentine constitutional law and the General Expropriation Law (Law 21,499) whether, at various points in time, the Republic was acting as an intervenor, was temporarily occupying the shares or was the actual owner of the expropriated shares.  (Etchegorry Decl. ¶ 8(b); Cabanellas Decl. ¶ 21.)  That distinction will lead to different results in analyzing these defenses.  And while Defendants have not yet had an opportunity to answer the *Eton Park* complaint, most of these defenses apply equally in both Actions.  Thus, the need to "untangle problems" in Argentine law presents unusual difficulties that tilt the *forum non conveniens* analysis strongly in favor of dismissal.  *See Piper Aircraft Co.,* 454 U.S. at 251.

> (2)    Argentina's Interest Should Be Recognized Pursuant to Principles of International Comity

Principles of international comity also strongly militate in favor of dismissal to Argentina.  "International comity has been defined as 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.'"  *Bigio v. Coca-Cola Co*., 239 F.3d 440, 454 (2d Cir. 2000).  More specifically, comity "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."  *In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.*, 580 B.R. 64, 93 (Bankr. S.D.N.Y. 2018).  In such cases, a federal court exercises its discretion to dismiss an action in favor of a foreign forum, notwithstanding its admitted jurisdiction.  *See Bigio,* 239 F.3d at 454; *Freund v. Republic of France*, 592 F. Supp. 2d 540, 564 (S.D.N.Y. 2008) (concluding that "even if [the court] had subject matter jurisdiction over the Defendants pursuant to the 'takings' exception of the FSIA . . . the circumstances of the case would make abstention

30

on justiciability grounds appropriate"), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais,* 391 F. App'x 939 (2d Cir. 2010); *see also Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57, 74 n.19 (2d Cir. 2005); *accord Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 858 (7th Cir. 2015) (concluding that although plaintiffs satisfied FSIA expropriation exception requirements, "comity at the heart of international law required plaintiffs either to exhaust domestic remedies in Hungary or to show a powerful reason to excuse the requirement" prior to bringing suit in the United States).

   Courts commonly enforce the principles of international comity when a foreign sovereign has an important interest in exercising jurisdiction and when the issues are governed by foreign law. *See Bugliotti*, 2019 WL 586091, at *3 (Preska, J.) ("Given the importance of the Tax Credit Program to the Republic, international comity points towards dismissing the instant action and allowing the case to proceed in the forum with the greater interest."); *In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.*, 580 B.R. at 93; *Mujica v. AirScan Inc.*, 771 F.3d 580, 615 (9th Cir. 2014) ("In sum, because of the strength of the U.S. government's interest in respecting Colombia's judicial process, the weakness of California's interest in this case, the strength of Colombia's interests in serving as an exclusive forum, and the adequacy of the Colombian courts as an alternative forum, we conclude that all of the claims before us are nonjusticiable under the doctrine of international comity."); *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1240 (11th Cir. 2004) (dismissing Plaintiffs' claims on international comity grounds, noting that "all of the relevant events implicated in this litigation took place in Germany and will involve issues of German law"). It cannot be disputed that these Actions are governed by Argentine law. Nor can it be disputed that Argentina has a significant interest in exercising jurisdiction over these Actions. (*See supra* Argument Section I(D)(2)(1); Saravia Frías Decl. ¶ 11 (expressing

"Argentina's strong interest" in having Argentine courts resolve the Actions).)  Thus, this Court

should honor the principles of international comity and exercise its discretion to dismiss.

> (3)     This District Has Little or No Interest in Adjudicating the
>          Controversy.

Adjudicating this matter in this District would needlessly add to the federal

court's already overburdened docket a matter with virtually no connection to New York.  *See*

*Karlitz,* 1997 WL 88291, at *3 ("[T]here can be no doubt that the Southern District of New York

is one of the most heavily burdened dockets in the United States, if not the world . . . Scarcity of

judicial resources requires that this court in particular decline to exercise jurisdiction over those

cases, like the present one, that clearly have a much stronger connection to another forum").  As

discussed above, all of the relevant conduct took place in Argentina, and all of the Plaintiffs and

Defendants are foreign to this District.  (*See supra* Factual Background Sections A-D; Argument

Section I(B).)  Trying these cases in New York, therefore, would impose unnecessary burdens on

this Court.  *First Union Nat. Bank*, 135 F. Supp. 2d at 451 ("Administrative difficulties follow

for courts when litigation is piled up in congested centers instead of being handled at its

origin.").

The Court should reject Plaintiffs' assertions that New York is a convenient

forum based on the conclusory allegations that "a substantial part of the events and omissions

giving rise to the claims alleged occurred in this District."  (Petersen Compl. ¶ 10; Eton Park

Compl. ¶ 13.)  As this Court has recognized, Plaintiffs' claims are indisputably based upon acts

that took place in Argentina.  *See Petersen I,* at *5 (explaining that Plaintiffs' claims are "based

upon" acts that occurred in Argentina); (*see also* Petersen Compl. ¶¶ 3, 24-25, 35-40; Eton Park

Compl. ¶¶ 3, 6, 11, 14, 32-39.)  Plaintiffs' purported connections to New York, which are

tangential at best, emphasize events that resulted from, or services provided as part of, YPF's

U.S. IPO Prospectus.  (Petersen Compl. ¶ 14 ("The IPO was underwritten in the United States by numerous investment banks located in New York with major New York City law firms as counsel.  The IPO roadshow included material presence in the United States generally and New York City specifically."); Eton Park Compl. ¶ 17.)  As explained in Section I(B)(3) above however, in pleading reliance on YPF's U.S. IPO Prospectus—an event that predates Plaintiffs' acquisitions of YPF shares by 15 to 20 years—to try to support a remote nexus to New York, Plaintiffs are equally bound by the exclusive jurisdiction clause in that Prospectus, which states in clear and unambiguous language that "any action relating to enforcement of the bylaws or a shareholder's rights thereunder is *required* to be brought in an Argentine court."  (Prospectus at 90) (emphasis added).)  This provision is consistent with controlling Argentine law that subjects claims for breach of an Argentine company's bylaws to the exclusive jurisdiction of Argentine courts.  (*See supra* Argument Section I(D)(2)(1).)

Finally, Plaintiffs' attempt to manufacture connections to New York as a result of the fact that YPF's ADRs trade on the NYSE also fails.  *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d at 275 ("As investors in stock traded exclusively on the NYSE, Plaintiffs . . . contend that United States policy interests are implicated by this dispute.  However . . . the predominant public policy interest here is that of Switzerland, whose corporations and corporate governance law are at issue.").

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for dismissal for *forum non conveniens*, in its entirety.

Dated:  August 30, 2019
        New York, New York

Respectfully submitted,


SKADDEN, ARPS, SLATE, MEAGHER &          CRAVATH, SWAINE & MOORE LLP,
FLOM LLP,

by:    /s/ Maura Barry Grinalds          by:        /s/ Michael A. Paskin
         Maura Barry Grinalds                       Michael A. Paskin
           Boris Bershteyn                          Damaris Hernández
           Scott D. Musoff
           Michael D. Moritz
                                                    Members of the Firm

    Four Times Square                         Worldwide Plaza
    New York, NY 10036                        825 Eighth Avenue
     (212) 735-3000                           New York, NY 10019
       maurabarry.grinalds@skadden.com         (212) 474-1000
                                                    mpaskin@cravath.com

*Counsel for Defendant Argentine Republic*      *Counsel for Defendant YPF S.A.*

34