UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., | : | Case Nos.<br>1:15-cv-02739-LAP |
| Plaintiffs, | : | 1:16-cv-08569-LAP |
| - against - | : | |
| ARGENTINE REPUBLIC and YPF S.A., | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD. and ETON PARK FUND, L.P., | : |
| | : |
| Plaintiffs, | : |
| | : |
| - against - | : |
| | : |
| ARGENTINE REPUBLIC and YPF S.A., | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **EXPERT DECLARATION OF RAFAEL M. MANÓVIL**

Pursuant to 28 U.S.C. § 1746 and Rule 44.1 of the Federal Rules of Civil Procedure, I, Rafael Manóvil, hereby declare as follows:

1.    I submit this expert declaration in support of the Republic of Argentina and YPF S.A.'s Motion to Dismiss based on the doctrine of *forum non conveniens*.

2.    I am an attorney duly licensed and in good standing in Argentina. I am a former Partner and present Of Counsel in the law firm of Bomchil in Buenos Aires, Argentina, where I focus my practice on Company Law, Commercial Law, Private International Law, Litigation and Arbitration. Over the course of my career, I have advised numerous Argentine and foreign corporate and business entities regarding Argentine corporate and

company law, including but not limited to matters of corporate governance, transactions and disputes arising between and among shareholders, corporate mergers and acquisitions, the offering of stock on Argentine stock exchanges.  For example, I have provided legal advice regarding the corporate reorganization of one of the largest listed financial groups in Argentina, including as to mergers, spin offs and tender offers, while defending the involved companies against a shareholder's challenge.  In addition to my involvement in the representation of clients in tender offers (both of share capital and bonds), I am currently counsel to a joint venture industrial company involved in a company law dispute between Argentine and Brazilian shareholders.   I also assist international companies in commercial and financial matters, and I am counsel to a pharmaceutical company that has received an offer for the purchase of its majority shareholding.

3. I obtained a law degree from the Facultad de Derecho (Law School) of the University of Buenos Aires in 1966 and was admitted to practice as a lawyer in the City of Buenos Aires and before the Federal Courts of Argentina in 1967.   I completed several postgraduate studies and graduated with a Ph.D. in Law, summa cum laude.  In 1970, I was appointed as assistant lecturer in Commercial Law at the University of Buenos Aires Law School, and completed the *cursus honorum* to become a chair-holding Professor, a position I still hold.  Recently, the University also appointed me as Professor Emeritus. In 2009, I was elected as one of the thirty members of the National Academy of Law and Social Sciences.  This is a semi-public body comprised of academics and scholars, which has intense academic activity in all fields of law.  It is called on from time to time by public entities to provide opinions on questions of law, and may issue opinions on certain legal or institutional matters of particular importance.   I have lectured at several universities, both in Argentina and abroad (Uruguay, Canada, Germany), written several books, chapters and papers, and participated in numerous local and international Congresses regarding my subject matters of specialty.  Several times I have been invited to contribute to draft legislation.  I was a member of a committee appointed by Congress in 1993 to draft a unified Civil and Commercial Code, and a member of a committee appointed by the Minister of Justice in 2003 to draft a Code of Private International Law.

2

Both drafts were taken into account when the new Civil and Commercial Code came into force in August 2015.  In May 2018, I was appointed by the President of the Senate to be part of the committee in charge of drafting amendments to the Argentine General Corporations Law.  The committee delivered the draft in June 2019 and it is now being actively analyzed at the Senate's Committees. A copy of my CV is attached as Exhibit A hereto.

4.  I am being compensated on an hourly basis for my work in this case, including the preparation of this report and any deposition or trial testimony that is required of me. My compensation does not depend on the outcome of this case.

5.  I have been asked by counsel for the Republic of Argentina ("Argentina" or the "Republic") to review the claims presented by plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (together, "Petersen") and Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd. and Eton Park Fund, L.P. (together, "Eton Park," and with Petersen, the "Plaintiffs") in their Complaints and to provide my views, based on principles of Argentine law, as to the applicable law and the proper forum for Plaintiffs' claims.

6.  I understand that Plaintiffs contend that, by acquiring a controlling stake in YPF S.A. ("YPF") without making a public tender offer for all of YPF's outstanding Class D shares at the price set forth in YPF's corporate bylaws ("Bylaws"), Argentina breached certain provisions of those Bylaws.  (Petersen Compl. ¶ 41; Eton Park Compl. ¶ 40)  I understand that Plaintiffs also allege that Argentina was required to launch a tender offer under the Bylaws despite the issuance of Law No. 26,741.

7.  I also understand that although Argentina and YPF (together, "Defendants") have asserted various defenses based on Argentine law, their present motion to dismiss is addressing only the doctrine of *forum non conveniens*.  This declaration is therefore limited to topics related to Argentine courts' jurisdiction over the Plaintiffs' claim, but I briefly note principles of Argentine law relevant to Argentina's other defenses that function as substantive limitations on liability.

**Summary of Opinions**

8.      In Section A, I explain that, under Argentine law, Plaintiffs' allegations regarding Argentina's failure to conduct a tender offer in accordance with the Bylaws are properly characterized as a corporate claim, not a contract claim.  (*See* ¶¶ 13-18.)

9.      In Section B, I explain that disputes arising out of the bylaws of an Argentine corporation are governed by Argentine law and can be brought only in a court or tribunal located in the place of the registered office of the corporation.  (*See* ¶¶ 19-30.)  In other words, claims arising out of YPF's Bylaws are governed by Argentine law and subject to the exclusive territorial jurisdiction of Argentina.

10.     In Section C, I explain that Argentine courts must refuse to enforce a judgment entered by a foreign court in disregard of Argentina's exclusive jurisdiction, and therefore Plaintiffs' claims can be remedied only by Argentine courts or tribunals.  (*See* ¶¶ 31-34.)

11.     In Section D, I analyze specific remedies available for shareholders alleging a breach of a company's bylaws, and conclude that as a prerequisite to bringing a claim, shareholders must submit to the jurisdiction of an Argentine court or tribunal and fulfill various conditions precedent.  (*See* ¶¶ 35-41.)

12.     In Section E, I briefly provide my views on some of Argentina's other defenses that function as exemptions from liability.  (*See* ¶ 42.)

A.      **Under Argentine Law, Plaintiffs' Allegations in This Case Are Properly Characterized as Corporate Claims, Not Contract Claims**

13.     I understand that the Plaintiffs seek recovery of damages supposedly caused by a purported failure to make the tender offer allegedly required under the Bylaws.  Below I discuss certain aspects of Argentine law applicable to such a claim for relief.  I focus my analysis on the claims asserted by Plaintiffs in the Complaints at issue here—that is, their attempt to bring civil "contract" claims against the Defendants for a breach of the Bylaws.

4

14.     In their Complaints, Plaintiffs allege that they are seeking damages for breach of contract, anticipatory breach of contract, and breach of the implied covenant of good faith and fair dealing.  Argentine law does not recognize a specific cause of action for anticipatory breach but instead recognizes it as a type of breach of contract that allows the other party to terminate the contract.[1]  As for a breach of the implied duty of good faith and fair dealing, the Civil and Commercial Code requires that all contracts be made, interpreted, and performed in good faith.[2]  Nonetheless, Argentine law does not provide a plaintiff with a cause of action for breach of such duty separate from the claim for breach of contract.

15.     Plaintiffs' allegations regarding Argentina's purported failure to conduct a tender offer would not properly be characterized as breach of contract, anticipatory breach of contract, or breach of the implied covenant of good faith and fair dealing under Argentine law. Rather, to the extent Plaintiffs are able to assert any claim under the Bylaws, their allegations may give rise only to corporate law claims, which provide rights and remedies distinct from those available in contract law.  Additionally, under Argentine law, shareholders may only bring direct claims for damages against other shareholders in very limited instances (if at all) and only after satisfying various substantive prerequisites. (*See* ¶ 40.).

---

[1]     *See* Civil and Commercial Code, Art. 1084 ("Breach configuration. For purposes of the termination, the breach must be essential in view of the purpose of the contract. It is considered essential when: a) strict compliance with the provision is essential within the context of the contract; b) the timely fulfillment of the benefit is a condition of maintaining the interest of the creditor; c) the breach deprives the aggrieved party of what it is substantially entitled to expect; d) the breach is intentional; e) the breach has been announced by a serious and final manifestation of the debtor to the creditor.") (translation) (emphasis added).

[2]     Civil and Commercial Code, Art. 961; *see also* Art. 1198 of the prior Civil Code.

16.     To better understand these principles, it is important to provide some brief background on the legal nature of companies (including corporations) in the Argentine legal system. The Argentine General Corporations Law No. 19,550, as amended ("General Corporations Law") explicitly adopts the principle that the shareholders of a company have a common purpose; they are exposed to a shared enterprise risk and therefore they have an objective collective interest.[3]   Argentine case law provides that the shareholders' respective contributions to the company are made not to fellow shareholders, but rather to the corporation itself, which in turn provides them with what can be called the *consideration*.[4]   As corporate law scholars explain, the company bylaws give birth to a new juridical person, creating rights and obligations only between the corporation and the respective shareholders.[5]

17.     Consequently, Plaintiffs' statement in the Complaints that "YPF's bylaws constitute a binding and enforceable contract *among* YPF and its shareholders" (Petersen Compl. ¶

---

[3]   General Corporations Law, Arts. 1, 13; *see also* Civil and Commercial Code, Art. 1442.

[4]   National Court of Appeals in Commercial Matters (CNCom.), Division D, Apr. 13, 1982, *Lauzan, Eduardo et al. v. Fleidman, Roberto et al*, La Ley, Vol. 1982-C, at 381-82.

[5]   VANASCO, Carlos Augusto, *Sociedades Comerciales* [*Commercial Companies*], Astrea, Buenos Aires, 2006, Vol. 1, at 97-99 ("These rights and obligations are held and assumed, first, in respect of and towards the other participants and in respect of and towards the corporation, once this has been incorporated. . . There is no opposition of obligations, but each one depends on the nature of the shareholder's participation and is separate from the others because they are aimed at achieving the chosen purpose. Thus, the obligation of each shareholder does not constitute the consideration of the others, but they will jointly constitute the means of obtaining those ends . . . Since there is no functional bilateralism, failure by the parties to perform has its own consequences but does not authorize rescission of the contract") (translation); ZALDÍVAR, Enrique *et al*, *Cuadernos de Derecho Societario* [*Corporate Law Treatises*], Abeledo Perrot, Buenos Aires, 1973, Vol. I, at 36, 37 ("[O]bligations are intended for the direct benefit of this legal person (and not for the benefit of joint contracting parties, as happens with bilateral contracts) . . . [F]ailure to comply with the obligation by one or some of the contracting parties does not affect the contract") (translation).

41; Eton Park Compl. ¶ 40) is an incorrect statement of Argentine law. Shareholders cannot demand that other shareholders meet their obligations under the bylaws.[6] As an Argentine court explained, "both the rights and the obligations of the shareholders hinge on their relations with the legal subject known as the corporation, and not with each of the other shareholders individually considered."[7]

18.    In sum, an alleged breach of a tender offer obligation in the Bylaws cannot give rise to a contract claim. Nor does it give rise to a claim by one shareholder against another shareholder, except in the limited instance discussed in Section D. And as discussed in Section B, any claim whatsoever would be subject to the exclusive territorial jurisdiction of Argentina.

**B.    Disputes Arising Out of YPF's Bylaws Are Subject to Argentina's Exclusive Territorial Jurisdiction**

19.    YPF is an Argentine company with its registered office in the City of Buenos Aires, Argentina. The 1993 Prospectus for the sale of shares of YPF, which is attached as Exhibit B, states that:

> The By-laws are governed by Argentine law and any action relating to enforcement of the By-laws or a shareholder's rights thereunder is required to be brought in an Argentine court.[8]

---

[6]    *See* ROITMAN, Horacio, *Ley de Sociedades Comerciales. Comentada y Anotada* [*Commercial Companies Law. Commented and Annotated*], La Ley, Buenos Aires, 2011, 2nd Ed., Vol. I, at 14, fn. 8 (translation). citing CNCom, Division D, Apr. 13, 1982, *Lauzan v. Fleiderman*, La Ley, Vol. 1982-C, at 381 ("Nobody would describe a partnership agreement as a contract of 'reciprocal benefits,' because the partners' benefits are not directed from one to the other, but rather all of the benefits are allocated to the company, from which the 'valuable consideration' will later be extracted.") (translation).

[7]    CNCom, Division A, Oct. 22, 1999, *Gatti v. Bulad,* El Derecho, Vol. 188, at 698 (translation).

[8]    YPF Prospectus, June 1993 Form F-1, at 90.

7

20.  This provision reflects Argentine law, which requires that claims arising out of or relating to the bylaws of an Argentine company be subject to Argentine law and be resolved in an Argentine forum.

21.  Exclusive Argentine territorial jurisdiction over intra-corporate disputes involving Argentine corporations is codified in the Argentine Capital Markets Law No. 26,831, effective as of January 27, 2013 (the "Capital Markets Law"), which regulates the conduct of companies issuing shares traded on Argentina's stock exchange.  Specifically, Article 46 of the Capital Markets Law (attached as Exhibit C) requires that an issuing company that has its registered office in Argentina is subject to either (i) mandatory arbitration in Argentina or (ii) at the option of the shareholder, competent judicial courts in Argentina.[9]  The law does not permit shareholders to proceed outside of these designated Argentine fora.  This binary choice between arbitration or a competent Argentine court explicitly applies to all claims arising under the General Corporations Law, which include all shareholder claims under corporate bylaws, including but not limited to challenges to resolutions of shareholders' meetings' or board of directors, liability claims against board members and other shareholders, and claims for annulment of bylaw provisions, among others.  The claims brought by Plaintiffs squarely fall within these categories.[10]

22.  The Capital Markets Law provides that each Argentine stock market where shares or other securities are traded has the obligation to establish an arbitral tribunal to whose jurisdiction companies or issuers will be subject for all matters mentioned in the previous paragraph.  An Argentine company that trades on that stock exchange is bound to accept this mandatory arbitral jurisdiction.  Accordingly, an Argentine company that trades its

---

[9]  Capital Markets Law No. 26,831, consolidated text 2013, Art. 46.

[10]  The same requirement for exclusive Argentine jurisdiction or mandatory arbitration in Argentina was provided for under the previous Article 38 of Decree No. 677/2001, which was in effect from 2001 to 2012.

shares on an Argentine stock market is required to submit to the jurisdiction of the arbitral tribunal established by that stock market.  For YPF, which trades on the Buenos Aires Stock Exchange, the relevant tribunal is the *Tribunal General de Arbitraje de la Bolsa de Comercio de Buenos Aires* (Buenos Aires Stock Exchange Arbitration Tribunal), located in the City of Buenos Aires.

23.     Under the Capital Markets Law, the *shareholder* has the right to opt out of the arbitral tribunal and choose to bring his or her claims in the "*tribunales judiciales competentes*", which means the competent judicial courts.  In a case where YPF shareholders allege a breach of YPF's Bylaws, the competent court is the National Commercial Court of the City of Buenos Aires[11] unless the case involves the Republic of Argentina or implicates important issues of administrative law, in which case the competent court would be either the Federal Civil and Commercial Court or the Federal Court in Administrative Matters (both also located in the City of Buenos Aires).[12]  The competent courts for various types of disputes are defined in Article 5 of the National Code of Civil and Commercial Procedure, attached as Exhibit D.  Paragraph 11 of Article 5 provides that the exclusive

---

[11]   There are 31 National Commercial Courts in the City of Buenos Aires. All would have jurisdiction in the matter. In Argentina, when plaintiffs file a claim in the National Commercial Court system, the case is assigned to one of those 31 courts through a lottery system.

[12]   *See* ¶¶ 27, 30.

jurisdiction for corporate disputes is "the place of the company's registered domicile",[13] which is typically the same location as the place of incorporation.[14]

24.     It is important to note that Argentina operates under a civil law system and has a developed system of codes that provide a robust set of substantive default rules.  These rules, including Article 46 of the Capital Markets Law and Article 5 of the National Code of Civil and Commercial Procedure, will apply unless they are explicitly modified or excluded by the parties pursuant to an explicit written agreement.[15]  There is no dispute

---

[13]   National Code of Civil and Commercial Procedure, Art. 5, para. 11 ("General rules. Jurisdiction will be determined by the nature of the claims made in the complaint and not by the defenses put forward by the defendant. Apart from cases of express or implied extension, when appropriate, and without prejudice to the special rules contained in this Code and in other laws, the competent judge will be: . . . 11. In actions derived from corporate relations, the judge for the place of the company's registered domicile . . .") (translation) (emphasis added).

[14]   *See* NISSEN, Ricardo Augusto, "*Ley de Sociedades comerciales 19550 y modificatorias, comentada, anotada y concordada*" [*Commercial Companies Law No. 19,550 and amendments, commented, annotated, with concordance*], Astrea, Buenos Aires, 2010, 3rd Ed., Vol. 1, at 300, 302: "[T]he National Code of Civil and Commercial Procedure also provided some specific solutions referring to business and to company conflicts. Firstly, Art. 5 of that regulation, referring to the general rules on competition, includes in its paragraph 11 a precept dedicated to relations emanating from company charters, prescribing that ´in actions deriving from company relations [the competent judge] shall be that of the place of the company's registered domicile´." (translation); CNCom., Division D, Apr. 26, 2004, *Goldaracena de Elizalde v. Los Cedros SCA, cited in* NISSEN, Ricardo Augusto (director), "*Revista de las Sociedades y Concursos*" [*Review of Companies and Insolvency*], Ad Hoc, Buenos Aires, 2004, No. 29, at 240: "In accordance with the provisions of Art. 5 para. 11 of the Code of Procedure, in actions that derive from company relations, the competent judge shall be that of the place of the company's registered domicile, with the exception of cases of express or tacit extension when appropriate" (translation).

[15]   Sometimes even a written agreement would not be able to override the relevant provisions applicable under Argentine law. For example, as explained in paragraph 26 of this declaration, when multiple shareholders bring the same cause of action under Article 46 of the Capital Markets Law, those actions must be consolidated in the same court. The company

(cont'd)

about this principle in Argentina.  In other words, unless expressly agreed otherwise, the provisions mentioned above are deemed incorporated into all Argentine companies' bylaws and thus the place of a company's registered office determines the appropriate and exclusive territorial jurisdiction for all corporate disputes.[16]  This is true whether or not the corporate shareholders are located outside or within Argentina.

25.    Argentine courts have repeatedly held that disputes between shareholders and the company, as well as disputes among shareholders—in the rare instances where these are cognizable—relating to rights granted by the bylaws or the company agreement

---

(cont'd from previous page)

would therefore be unable to agree with any individual shareholder to submit the case to a separate jurisdiction.

[16]  *See, e.g,* ROITMAN, Horacio, "*Ley de Sociedades Comerciales. Comentada y Anotada*" [*Commercial Companies Law. Commented and Annotated*], La Ley, Buenos Aires, 2011, 2nd Ed., Vol. I, at 406: "The general principle that governs territorial jurisdiction in actions derived from corporate relations gives jurisdiction to the judge *for the place of registration of the corporation*" (translation).  *See also id.* Vol. IV, at 880-81 with reference to the challenge of shareholder meeting resolutions: "The action must be filed before the judge of the company's domicile. . . The concentration of all company actions before a single judge, and by connecting all the individual ones that could be directed against third parties (officers and shareholders) based on this same challenge, is in the interest of all the interested parties: (a) For the company, because that is the location where all the company's books and supporting documentation are found; (b) For third parties, because the guarantee of defense in court is safeguarded to the greatest extent through the immediacy of evidence and the ease resulting from the whole concentration in proximity to the company; (c) For the corporate system, as it is consistent with the provisions of Arts. 5, 6, 12 and 15 of the Corporations Law" (translation); ZALDÍVAR, Enrique *et al*, *Cuadernos de Derecho Societario* [*Corporate Law Treatises*], Abeledo Perrot, Buenos Aires, 1973, Vol. 1, at 234; "Importance and effects of domicile and company headquarters . . .  2) it sets the applicable law and the jurisdiction of judges and administrative authorities" (translation); HIGHTON, Elena, I. and AREÁN, Beatriz A., *Código Procesal Civil y Comercial de la Nación (Análisis doctrinal y jurisprudencial)* [*National Code of Civil and Commercial Procedure (doctrinal and jurisprudential analysis)*], Hammurabi, Buenos Aires, 2004, Vol. 1, at 287: "The judge of the place where the company domicile is registered has jurisdiction, for example, for a corporation or a limited liability company" (translation).

("*contrato social*"), are subject to a single and exclusive jurisdiction, *i.e.*, the place of the company's registered office.  Unless expressly agreed otherwise, Argentine law presumes that shareholders agree to submit their rights and duties to be adjudicated in this jurisdiction when they register the company at a specific location, or purchase shares in a company registered at that location.[17]  These cases reflect the Argentine courts' strong interest in adjudicating matters involving the corporate laws and entities established under Argentine law and registered within Argentina.

26.     Moreover, where multiple shareholders seek to bring claims based on the same cause of action, all such claims are consolidated and heard by a single court or tribunal.  In this

---

[17]   *See* Federal Supreme Court of Justice (CSJN), Aug. 23, 1937, *Fernando Celles, Joaquín v. Gutiérrez, Marcelino*, Fallos: 178:333, at 336. This case concerned a dispute over the competent court for a claim under the bylaws, specifically whether the Commercial Court had jurisdiction or whether instead the Federal Court had jurisdiction on the basis that the Claimant was a foreign citizen. The Court ruled that "as this Supreme Court has repeatedly found, under the law the associates, amongst themselves or in their disputes with the corporation arising from facts or acts derived from the articles of incorporation, have <u>a sole and single forum that is determined by the place of establishment of the corporation</u>, where it is legally presumed that they chose to have their special domicile where their rights would be heard and their obligations as shareholders complied with, and so we can assume that, in these cases, the federal forum cannot arise on a personal basis" (translation) (emphasis added).  *See also* CNCom., Division D, Apr. 26, 2004, *Goldaracena de Elizalde, Isabel et al. v. Los Cedros SCA*, *cited in* NISSEN, Ricardo Augusto (director), "*Revista de las Sociedades y Concursos*" [*Review of Companies and Insolvency*], Ad Hoc, Buenos Aires, No. 29, at 240-41; CSJN, Nov. 2, 1886, *López, Pedro et al. v. Straube, Otto*, Fallos: 30:512; CSJN, Jul. 23, 1898, *Giacometti, Fernando and Teresa v. Empresa del Ferrocarril Central*, Fallos: 74:177, at 183.  In a related context, in November 2017, the Federal Supreme Court of Justice applied this principle in an insolvency case, where it decided that a change made to the place of incorporation of a company from the city of Buenos Aires to the city of Comodoro Rivadavia in order to benefit from a more lenient insolvency procedure was null and void because it was a fraud to avoid the mandatory insolvency law provisions and the exclusive jurisdiction of the place of incorporation. CSJN, Nov. 15, 2017, *Oil Combustibles S.A. re insolvency proceeding*, Fallos: 340:1663. The Supreme Court stated "[t]he judge's jurisdiction to intervene in the insolvency proceedings is expressly provided for by the law and it constitutes a mandatory provision." (translation).

way, the Capital Markets Law addresses the situation that arises when some shareholders file their claim before the courts while others file their claim before the arbitral tribunal. In the event that different shareholders file claims arising out of the same cause of action in both fora, all claims must be consolidated and referred to the Argentine judicial courts.[18]   Accordingly, if any shareholder selected the judicial courts, the jurisdiction of the courts will prevail over arbitration.   Given this express obligation under Argentine law to consolidate shareholder actions in one single forum, the notion that shareholders could instead defy the law and file suits in a foreign country would directly contravene the Capital Market Law's requirements and lead to an illogical result clearly not intended by the law.

27.    YPF is both incorporated and has its registered office in the City of Buenos Aires. Accordingly, any dispute brought under YPF's Bylaws must be adjudicated by either the Buenos Aires Stock Exchange Arbitration Tribunal or the competent courts in the City of Buenos Aires (*i.e.*, the courts within the City of Buenos Aires specifically designated to hear such types of commercial disputes).   As mentioned before, the competent court to decide a dispute arising under YPF's bylaws is the National Commercial Court in the City of Buenos Aires, but the fact that the Republic of Argentina is a defendant means that the Federal Civil and Commercial Court (also located in the City of Buenos Aires) would have jurisdiction.   The Federal Civil and Commercial Court may, however, refer this case to the Federal Courts in Administrative Matters (also located in the City of Buenos Aires) because it implicates important matters of public law and administrative law.[19]   The disclosure in the Prospectus that disputes arising under YPF's Bylaws are governed by Argentine law and required to be brought in Argentine courts articulates the default jurisdictional requirements mandated by Argentine law.

---

[18]   *See supra*, note 9.

[19]   *See infra*, note 21.

28.   In summary, the law is clear that disputes arising under the bylaws of an Argentine company are subject to the *exclusive territorial jurisdiction* of Argentina.[20]   For all companies, this is the court of the place of the company's registered office.   In the event that the incorporated company is an Argentine issuing company, then such disputes may only be adjudicated by (a) arbitration before the relevant stock exchange in Argentina or (b) if a shareholder chooses, the Argentine courts situated in the jurisdiction where the company is registered.

29.   Accordingly, in my view, Plaintiffs could file claims arising under the Bylaws in the court of competent jurisdiction within the City of Buenos Aires or before the Buenos Aires Stock Exchange Arbitration Tribunal.   They could not, under Argentine law, file claims arising under the Bylaws in a court or tribunal outside of Argentina.

30.   In fact, the dispute regarding which court was the competent court to hear the precise claims at issue in these matters has already been litigated in Argentina.   In the matter of *De San Martin v. EN – PEN*, two minority shareholders of YPF sued Argentina citing the General Corporations Law, seeking to compel Argentina to launch a tender offer under YPF's Bylaws after Argentina enacted Law No. 26,741.   The question regarding jurisdiction specifically arose in that case, and the issue was heard by the Argentine Supreme Court.   Before the Supreme Court's decision, on December 17, 2013, the Public Prosecutor submitted its opinion to the Court, explaining, among other things, that in order to determine whether Argentina had an obligation to launch a tender offer under the Bylaws, "it is clear that the aspects of administrative law are of primary relevance to the resolution of the case," and therefore stated that the competent court of jurisdiction was

---

[20]   ANAYA, Jaime Luis, *Arbitraje Societario* [*Corporate Arbitration*], La Ley, Vol. 2007-C, at 1027; PUEYRREDÓN, Pablo, *El Arbitraje obligatorio de amigables componedores* [*Equitable Mandatory Aritration*], La Ley, Vol. 2010-A, at 794; CRACOGNA, Dante, *OPA: Precio equitativo y Arbitraje en el Decreto 677/2001* [*Tender Offer: Equitable price and Arbitration in Decree No. 677/2001*], La Ley, Vol. 2008-D, at 86.

the Federal Administrative Court No. 10.  On August 20, 2014, the Supreme Court adopted the opinion of the Argentine Public Prosecutor and held that the Federal Administrative Court of First Instance No. 10 was the court with jurisdiction to hear the case.[21]

**C.**     **Argentine Courts Will Refuse to Enforce a Foreign Judgment Rendered By a Court or Tribunal Outside of the Exclusive Jurisdiction**

31.     Article 517 of the National Code of Civil and Commercial Procedure, attached together with Article 5 as Exhibit D, regulates the recognition and enforcement of foreign court judgments.  In the absence of an international treaty in force between Argentina and the country where the foreign court sits, the foreign court judgment will be enforceable only if, among other things, the foreign court was competent to issue the ruling, applying Argentine norms of "international jurisdiction."[22]

---

[21]  CSJN, Aug. 20, 2014, *De San Martín, José et al v. EN – PEN*, C. 731. XLIX. COM, available at http://sjconsulta.csjn.gov.ar/sjconsulta/documentos/verDocumentoByIdLinksJSP.html?idDocumento=7134221&cache=1566567926987 and https://www.mpf.gov.ar/Dictamenes/2013/LMonti/diciembre/De_San_Martin_Comp_731_L_XLIX.pdf, attached as Exhibit E.

[22]  Art. 517:

Judgments of foreign courts will be enforceable in the terms of the treaties concluded with the country from which they come.

When there are no treaties, they will be enforceable if the following requirements are met:

1. That the judgment, with the authority of res judicata in the State where it was handed down, is issued by the <u>court of competent jurisdiction</u> according to Argentinian rules on international jurisdiction . . .

4. That the judgment does not affect principles of public order of Argentine law . . .

(translation) (emphasis added).

15

32.    Under Argentine law, the relevant norms of international jurisdiction are set out first in Article 118 of Argentina's General Corporations Law, which provides that a foreign company is governed by the laws of the place of incorporation.[23]   Article 2 of the 1979 Inter-American Convention on Conflicts of Law concerning Commercial Companies, which also applies in Argentina, leads to the same conclusion: disputes arising from a corporation's bylaws are subject to the jurisdiction of the state where the company is registered.   Article 2 provides:

> The existence, capacity, operation and dissolution of commercial companies shall be governed by the law of the place where they are constituted.
>
> The expression "law of the place where they are constituted" shall be understood to mean the law of the State where the formal and substantive requirements for the establishment of commercial companies are fulfilled.[24]

33.    In turn, as already discussed, the law of Argentina requires that corporate disputes be resolved in the jurisdiction of the company's registered office.   Consequently, a court outside of Argentina does not have jurisdiction and is not competent to issue a decision in a dispute arising out of the bylaws of a company registered in Argentina.   According to Argentina's domestic legal system and to the leading authors on this matter, Argentine courts must refuse to enforce a judgment entered by a foreign court in disregard of Argentina's exclusive jurisdiction (or that of any other country).[25]   As one court explained:

---

[23]   Art. 118: "Applicable law. The existence and form of a corporation constituted abroad are governed by the laws of the place of incorporation" (translation).

[24]   1979 Inter-American Convention on Conflicts of Law concerning Commercial Companies, Art. 2.

[25]   GOLDSCHMIDT, Werner, *Derecho Internacional procesal en el nuevo Código Procesal Civil y Comercial de la Nación (Ley 17.454 )* [*International Procedural Law in the context of*

(cont'd)

. . . in order for a judgment issued by a foreign court to be valid in our country and for it to be enforceable by means of an exequatur, it is essential that the judge or court from which it proceeds has competence internationally, that is, that our courts are not also competent to settle the dispute. The claim to enforce a foreign judgment for divorce and support is ineffective, since the action in question should have been brought before the local courts because, according to our legislation, it is the matrimonial domicile that determines jurisdiction in this matter.[26]

---

(cont'd from previous page)

the new National Code of Civil and Commercial Procedure (Law No. 17,454)], El Derecho, Vol. 19 (1967), at 856 ("Argentinian courts will not only reject foreign judgments if they invade their own jurisdiction, but also if they offend against the jurisdiction of a third country") (translation); accord HIGHTON, Elena and AREÁN, Beatriz, Código Procesal Civil y Comercial de la Nación [National Code of Civil and Commercial Procedure], Hammurabi, Buenos Aires, 2008,  Vol. 9, at 256-57 ("in Argentina, the international jurisdiction of the foreign court is judged according to the law of the State asked to recognize the foreign judgment, that is, the laws of the place where the decisions of the former court must take effect . . . [H]e will have to confirm that the judge who handed down the judgment has international jurisdiction, so that, in a similar situation, the Argentinian judge would have declared himself competent in accordance with the Argentinian rules on international jurisdiction . . . . The Argentinian judge must start by establishing whether the issue judged abroad was subtracted from [i.e., improperly heard outside of] the national jurisdiction") (translation); see also FALCÓN, Enrique, Código Procesal Civil y Comercial de la Nación [National Code of Civil and Commercial Procedure], Abeledo-Perrot, 2010, Vol. V, at 670-71 (using the same reasoning). The Supreme Court of the Province of Córdoba, in a 1953 divorce case, and citing a classical author, ruled that "if it is apparent from a country's general rules on jurisdiction that its courts are those that must decide a particular action, all other foreign courts will be without jurisdiction to hear it. Any judgments that these latter [courts] may issue would be ineffective in the State that asserts for its own jurisdiction the competence that was sought to be created or consented abroad. The least that such court system may do in defense of its powers is to refuse the assistance requested of it, precisely for the purpose of their invalidation or disownment." (translation) Supreme Court of the Province of Córdoba, Apr. 27, 1953, M.L.A. v. M.A.C., La Ley, Vol. 71, at 306-07.

[26]   National Court of Appeals in Civil Matters (CNCiv), Division D, Feb. 26, 1973, M. de B., C., La Ley, Vol. 152, at 512-13 (translation).

34.   Indeed, there are several cases in which Argentine courts have refused to enforce judgments entered by a foreign court that lacked jurisdiction under Argentine law.[27]

**D.   Argentine Law Mandates the Fulfillment of Certain Conditions Precedent and Recourse to Argentine Courts Before Shareholders Can Assert Claims Under a Company's Bylaws**

35.   In the Argentine civil law system, the primary remedy for an alleged breach of a corporate bylaw is a remedy "in kind" (i.e., specific performance or injunctive relief). Accordingly, Argentine corporate law permits shareholders affected by a breach of a company's bylaws, or by other acts of a corporate nature, to seek a remedy in kind.[28]

36.   The most relevant provision designed to provide relief for an alleged breach of corporate bylaws is Article 251 of Argentina's General Corporations Law, attached as Exhibit F, which permits shareholders to challenge any resolution taken during a shareholders' meeting on the basis that it infringes any law or the bylaws.[29]   To do so, the shareholder

---

[27]   National Court of Appeals in Civil and Commercial Federal Matters (CNCiv. y Com. Fed.), Division III, Nov. 22, 2005, *Overseas Union Insurance Limited et al v. Caja Nacional de Ahorro y Seguro en liquidación,* Thomson Reuters, online citation: 35003817 (the court denied execution of an English court's judgment in a reinsurance case, because no evidence had been produced showing that the English court had jurisdiction); CNCiv., Division J, Aug. 9, 2005, *G., D. y B. y M., A.*, El Derecho, Vol. 215 (2006) at 320; CNCom., Division D, May 8 1986, *Artline SA v. Basman*, La Ley,  Vol. 1996-D, at 73 (the court denied the exequatur of a foreign judgment based on the execution of a bill of exchange because the debtor had not consented to the foreign jurisdiction); CNCiv., Dec. 30, 2009, *Nassiri, S. v. Rancibia M.J.*, Thomson Reuters, online citation: AR/JUR/76751/2009 (the court rejected the exequatur of a Massachusetts Court decision in a case related to the father's right to visit his child, based on the exclusive jurisdiction of the Argentine court where the divorce case and ancillary issues had been heard).

[28]   This analysis assumes, *arguendo*, that the remedies provided under Section 7(h) of the Bylaws are not the exclusive remedies available to Plaintiffs.

[29]   Art. 251 reads as follows: "[Challenge of decision of the shareholders' meeting. Holders] – Any resolution of the shareholders' meeting passed in violation of the law, bylaws or regulations may be challenged for annulment by the shareholders who did not vote in favor

(cont'd)

must satisfy three requirements: (i) it must be a shareholder at the date of the challenged resolution; (ii) it must not have voted in favor of the challenged resolution; and (iii) it must file a claim against the company "*ante el Juez de su domicilio*" (*i.e.*, before the judge of [the corporation's] domicile) within three months of the closing of the shareholders' meeting.  Here, once again, it is clear that plaintiffs asserting claims related to corporate relationships must submit to the exclusive territorial jurisdiction of the place of the corporation's registered office.  Even without this language, Article 46 of the Capital Markets Law would apply, and the claimant could file his claim only in an arbitral tribunal or competent court in Buenos Aires.

37.     I understand that the Plaintiffs have alleged that YPF's Bylaws prevented Argentina from attending shareholders' meetings or exercising voting rights following the enactment of Law No. 26,741, and that YPF should have acted to prevent Argentina's exercise of voting rights or corporate governance powers.  (Petersen Compl. ¶ 71; Eton Park Compl. ¶ 69.)

38.     Assuming, *arguendo*, that the Bylaws were applicable to the acquisition of shares pursuant to Law No. 26,741, Plaintiffs could have attempted to challenge resolutions passed with the decisive vote of Argentina through Article 251 of the General Corporations Law.  The Plaintiffs could have first presented the issue at a shareholders' meeting, as other shareholders did, in order to obtain a resolution of a shareholders'

---

(cont'd from previous page)

   of the relevant decision and by those who were absent and held the status of shareholder as of the date of the challenged decision … The action will be brought against the corporation, <u>before the judge for its domicile</u>, within three months after the shareholders' meeting ends." (translation) (emphasis added).

meeting which they could then challenge in court or arbitration.[30]  Argentine courts have upheld challenges to resolutions of shareholders' meetings not only because they were in violation of the law or the bylaws, but also because of unreasonable decision-making processes or an abusive exercise of rights.[31]

39.    Another relevant article of the General Corporations Law is Article 254 (attached together with Article 251 as Exhibit F), which provides:

> Shareholder liability.  Shareholders who voted in favor of the [shareholders' meeting] resolutions which are declared null shall be liable jointly and without limit for the consequences of same, without prejudice to the liability which may be imposed on directors, statutory auditors and members of the supervising committee.[32]

40.    To the extent this provision could be read to permit a shareholder to claim directly against another shareholder for personal damages—even though it has not in fact been interpreted to generally allow for such direct claims—it would require as prerequisites that a resolution of a shareholders' meeting be rendered in violation of the law or of the bylaws, challenged, and declared null and void by a court of competent jurisdiction in Argentina pursuant to the requirements of Article 251 of the General Corporations Law, described above.

41.    In this case, Plaintiffs do not appear to base their claim on any particular resolution of a shareholders' meeting voted on by Argentina and later challenged and then declared null

---

[30]  Under Article 236 of the General Corporations Law, any shareholder or group of shareholders holding 5% or more of the shares has the right to force a shareholders' meeting to convene for any special purpose.

[31]  *See, e.g.*, CNCom, Division D, Dec. 29, 2010, *ANSeS v. EMDERSA*, La Ley, Vol. 2011-A, at 541, and online citation: AR/JUR/89557/2010; CNCom, Division C, Feb. 23, 2017, *Akerman, Julián et al. v. Biorecóvery S.A.*, La Ley online citation: AR/JUR/4809/2017.

[32]  General Corporations Law, Art. 254, attached as Exhibit F.

and void by a court of competent jurisdiction in Argentina.  In my view, this is the only type of action that could theoretically be interpreted to allow a shareholder to claim personal damages against another shareholder for actions related to a breach of the corporation's bylaws, and, like all other claims arising out of the General Corporations Law, it could be heard only in an arbitral tribunal or competent court located in the place of the corporation's registered office.[33]

E.    **Additional Issues of Argentine Law**

42.    I have reviewed the affirmative defenses that Argentina has raised, many of which raise issues that need to be analyzed under Argentine law.  I express very brief opinions on some of those issues below.  If this case were to continue beyond the current motion, I am willing and able to provide a more comprehensive opinion on these and other issues of Argentine law raised by Argentina's defenses.

- Argentina's Seventh Defense: Plaintiffs lack standing under Argentine law to bring their claims directly against Argentina as a co-shareholder of YPF.  Under Articles 54, 276(2), and 277 of the General Corporations Law, direct claims by one shareholder against another may only be brought, if at all, after satisfying certain requirements, derivatively with any proceeds for the benefit of the company and in the competent court in the place of the corporation's domicile;

- Argentina's Twelfth Defense: under Article 793 of the Civil and Commercial Code, the penalty provisions in Section 7(h) of YPF's Bylaws constitute the exclusive remedy in the event of a breach.[34]  This type of remedy, which

---

[33]   The remaining provisions of Argentine corporate law under which shareholders could recover damages for a breach of a company's bylaws all involve derivative actions where compensation is awarded to the company, not the individual shareholder bringing the claim; *see* General Corporations Law Arts. 54, 276(2), and 277.

[34]   *See* Civil and Commercial Code, Art. 793 ("The penalty or fine imposed on the obligation supplies the compensation for damages upon a breach; and the non-breaching party is not

(cont'd)

neutralizes the political and economic rights of the improperly acquired shares, is similarly codified in Article 89 of the Capital Markets Law, which provides for a public auction by the CNV of shares acquired in derogation of applicable tender offer provisions.  Neither the remedy under YPF's Bylaws nor the remedy under Argentine corporate law allow shareholder claims for direct damages;

- Argentina's Twentieth Defense: Plaintiffs' claims challenging decisions made at a shareholders' meeting are barred by the applicable three-month limitation period pursuant to Article 251 of the General Corporations Law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  August 29th, 2019

Rafael M. Manóvil

---

(cont'd from previous page)

entitled to other compensation, even if it proves that the penalty is not sufficient reparation") (translation).

22