UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., | Case Nos. |
| : | 1:15-cv-02739-LAP |
| | 1:16-cv-08569-LAP |
| Plaintiffs, : | |
| - against - : | |
| ARGENTINE REPUBLIC and YPF S.A., : | |
| Defendants. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD. and ETON PARK FUND, L.P., : | **EXPERT DECLARATION OF GUILLERMO CABANELLAS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR *FORUM NON CONVENIENS*** |
| : | |
| Plaintiffs, | |
| : | |
| - against - | |
| : | |
| ARGENTINE REPUBLIC and YPF S.A., | |
| : | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to 28 U.S.C. § 1746 and Rule 44.1 of the Federal Rules of Civil Procedure, I, Guillermo Cabanellas, hereby declare as follows:

## I.   INTRODUCTION

1.   Credentials

     i.     I have law (1972) and economics (1971) degrees from the University of Buenos Aires.  I have a Master's degree in Comparative Law (1975) and a Juridical Science Doctor degree from the University of Illinois (1978).  I was a research fellow at the Max Planck Institute, Munich, from 1981-82 and in 1987.  I have been visiting and adjunct professor at the Universities of Illinois (1978-2013), Loyola of Los Angeles (1998) and Miami (2015).  I am currently a professor at the Universities of San Andrés and Austral, and at the National University of Buenos Aires, both for graduate and postgraduate studies.  I have published more than 40 books and 100 articles in Argentina, the U.S., Great Britain, Germany, Poland and other

    countries, on contract law and the law of corporations, among other legal matters.  I have attached my CV as Appendix A.

  ii. I was retained by YPF S.A. to submit this report in support of Defendants' Motion to Dismiss for *Forum Non Conveniens*.  I am being compensated $20,000 for writing this report and $250 an hour for writing any additional reports in this case and for my participation in hearings or depositions, if such were required by a court.  My compensation does not depend on the outcome of this case.

2. Summary of Opinions

  i. Argentine courts have exclusive jurisdiction over the claims asserted by Petersen and Eton Park (together, "Plaintiffs") against the Republic and YPF, regardless of whether such claims are characterized as contract claims or as claims based on corporate relationships.[1]

  ii. The Argentine courts present an available and adequate forum for the claims asserted by Plaintiffs because: (i) Argentine courts have jurisdiction over the defendants and exclusive jurisdiction over the claims at issue, (ii) Argentina, YPF and other government-owned companies can be sued, and are currently being sued, in Argentina, (iii) it is common for foreign companies to prevail in suits in Argentine courts, and (iv) the parties and the Court will have better access to evidence and witnesses if the litigation takes place in Argentina.[2]

  iii. Under Argentine law, a corporation is governed by a set of rules created according to the special framework of corporate law, which is not purely contractual in nature.  A violation of a corporation's bylaws is not a contractual violation, rather a violation of corporate law.  Thus, Plaintiffs' claims cannot be validly based on an alleged breach of contract or on an alleged anticipatory breach of contract.[3]

  iv. The Expropriation Law (Law 26,741) is a compulsory law embodying public policy and, under Argentine law, it prevails over YPF's bylaws. Additionally, because the shares were acquired by expropriation, the General Expropriation Law (Law 21,499) and the Expropriation Law

---

[1] *See infra*, Sections II-III.

[2] *See infra*, Sections III-V.

[3] *See infra*, Section VI.

(Law 26,741) govern the acquisition, such that the obligations that the Bylaws might otherwise impose in ordinary circumstances are limited or inapplicable.[4]

v.   In addition to Plaintiffs' claims, I have reviewed the defenses asserted by YPF and the Republic in *Petersen*, and have concluded that the claims and defenses raise issues that need to be decided under Argentine law.[5]  While I have not provided a substantive opinion regarding most of these defense at this time, I am prepared to do so at a later date if requested.

## II.   ARGENTINE LEGAL SYSTEM

3.   The Argentine legal system is part of the civil law tradition.  The concepts as well as the main rules applicable in most areas of the law are drawn from continental European countries, with the exception of constitutional law which is based on American law.

4.   The legal system is organized on a federal basis.  The country is divided into provinces, each of which elects its own government, has its own constitution and organizes its own judicial system on the basis of its local procedural codes.  The Civil and Commercial Code, and the Criminal Code, are both enacted at the federal level. In addition, there is a federal court system, and federal codes on civil and criminal procedure.  The Civil and Commercial Code includes rules on international jurisdiction.  Rules on jurisdiction within Argentina are also included in the National Code of Civil and Commercial Procedure, as well as in the provincial codes on procedure.  Basically, the Civil and Commercial Code determines the limits of Argentine jurisdiction in the international context, and the National Code of Civil and Commercial Procedure determines which court within Argentina has jurisdiction in cases falling within the Argentine jurisdictional system.  However, since the Civil and Commercial Code does not include a fully comprehensive set of rules applicable to international jurisdiction, it is in some cases necessary to use the rules included in the National Code of Civil and Commercial Procedure, in international cases, either because the Civil and Commercial Code makes a reference to rules included beyond its text or by way of analogy.

## III.   JURISDICTION OF THE ARGENTINE COURTS

5.   A case based on the violation of YPF's bylaws would properly be characterized, under Argentine law, as a case "based on corporate relationships", not a case for

---

[4] *See infra*, Section VII.

[5] *See infra*, Section VIII.

breach of contract.  The National Code of Civil and Commercial Procedure provides the relevant rules on jurisdiction over these cases.  Section 5(11) of this Code provides that jurisdiction over claims "based on corporate relationships" lie with the courts of the jurisdiction where the registered corporate domicile of the relevant corporation is located.

6.   Thus, pursuant to Section 5(11) of the National Code of Civil and Commercial Procedure, Argentine courts have exclusive jurisdiction over claims based on "corporate relationships" of a corporation incorporated in Argentina.[6]  In addition, Section 46 of the Argentine Capital Markets Law (Law 26,831 as amended) provides the exclusive jurisdiction of special arbitration tribunals, which function as part of the organization of securities markets, regarding matters connected with securities issued by corporations whose securities are traded in such markets; Section 46 only allows as a possible alternative, for these cases, litigation before Argentine judicial courts.

7.   In this respect, it should be noted that Articles 118 and 124 of Argentine Corporations Law, as amended,[7] provide certain compulsory rules on the determination of the law applicable to business associations, particularly those whose principal place of business is located in Argentina.  The compulsory/mandatory effects of these provisions are triggered in cases dealing with corporate matters of the relevant business associations.  Current Argentine judicial practice demonstrates that if this case is decided by a non-Argentine court, Argentine courts will certainly refuse to

---

[6] This is consistent with Article 1 of the National Code of Civil and Commercial Procedure, which states that the jurisdiction conferred on national courts cannot be extended, except for two limited circumstances which do not apply here.  *See* Antonio Boggiano, *Sociedades y Grupos Multinacionales* 211 (1985) (noting that corporations that must be governed by Argentine corporate law pursuant to Section 124 of the Corporations Law are subject to the exclusive jurisdiction of Argentine courts).  Section 124 is intended to assure that corporations and other business association whose main activities are located in Argentina should be governed by Argentine corporate law.  This position dates back to the nineteenth century and is actively enforced by Argentine authorities.  The idea behind this position is that in the absence of such compulsory application of Argentine rules, the choice of foreign laws of incorporation would be used to avoid the effects of Argentine public policy in corporate matters, such as the need to disclose the identity of shareholders or partners.

Additionally, in *San Martín, Jose v. Estado Nacional*, Aug. 20, 2014, the Federal Supreme Court decided that the National Court for Administrative Matters of the City of Buenos Aires, had jurisdiction in connection with a case brought by a shareholder of YPF for an alleged violation of YPF's bylaws provisions on compulsory tender offers.

[7] Ley General de Sociedades No. 19.550, T.O. 1984., arts. 118, 124.

enforce the judgment because Argentine courts had exclusive jurisdiction over the claims.[8]

8. Plaintiffs' alleged violations may only be construed as a breach of the corporate relationship between the parties.  Nevertheless, Plaintiffs mistakenly bring breach of contract claims.  Even if these were breach of contract claims, since YPF has a domicile in Argentina, Argentine courts would have exclusive jurisdiction over breach of contract claims against YPF and the Republic pursuant to Article 2650 of the Argentine Civil and Commercial Code and to Article 5(4) of the National Code of Civil and Commercial Procedure.  Additionally, Argentine courts would likely refuse to enforce a U.S. judgment obtained in violation of Article 2650, since Article 517(1) of the Argentine National Code of Civil and Commercial Procedure prevents the enforcement by Argentine courts of judgments issued in violation of the Argentine rules on international jurisdiction.[9]

9. In sum, Argentine courts would have exclusive jurisdiction over the claims asserted by Plaintiffs, regardless of whether such claims are characterized as contract claims or as claims based on corporate relationships, on the basis of the rules described in the preceding paragraphs.

## IV.   ADEQUACY OF THE ARGENTINE COURTS

10. Based on my past experience practicing law in Argentina and my legal scholarship, Argentine courts present an available and adequate forum for the claims asserted by Plaintiffs against YPF and the Republic.  Argentine courts clearly have jurisdiction over these claims.  Such claims involve significant and complex questions related to Argentine law, which Argentine courts are better qualified to decide upon than non-Argentine courts.

11. Argentina, YPF and other government-owned companies can be sued in Argentina.  Some previous cases include:

    i.    In *Giustiniani, R.H. v. YPF,* a well-known case which is part of a broader litigation involving major agreements for the exploitation of large shale oils fields, the Federal Supreme Court reversed previous decisions of

---

[8] Argentine courts have held that a foreign judgment will not be enforced in Argentina if it was issued by a foreign court in violation of Argentine exclusive jurisdiction rules.  *See, e.g.*, *Trade Development Institute Argentina S.A. v. Estado Nacional,* National Court of Appeals for Federal Civil and Commercial Matters III, Nov. 4, 2011; *Nassiri, S. v. Rancibia M.J.*, National Court of Appeals for Civil Matters, Dec. 30, 2009.

[9] *Id.* art. 517(1).

lower courts and ordered YPF to make public the terms of such agreements.[10]

    ii.    In *Nidera S.A. v. DGI*, a recent case decided by the Federal Supreme Court, a taxpayer won a lawsuit against the federal government's tax agency related to the computation of prices for purposes of income tax determination; the Supreme Court reversed the previous decisions of lower courts.[11]

    iii.    In *Silvano Sampietro v. Banco de la Nación Argentina,* a decision was issued by the National Court of Appeals for Federal Civil and Commercial Matters against a government-owned commercial bank due to non-compliance by the bank with its obligation to inform its clients about the legal requirement of certain financial transactions.[12]

    iv.    In *Benito Roggio e Hijos S.A. et al v. E.N. Agua y Energía Eléctrica S.E.*, the Federal Supreme Court confirmed the decision of a court of appeals which had admitted the plaintiffs' claims against a government-owned corporation, relative to the calculation of the price for certain construction work performed by plaintiffs.[13]

    v.    Other noteworthy cases in which the opposite party, including foreign entities, has prevailed against YPF and the federal government or its agencies in the Argentine courts are listed in Appendix B.

12. Moreover, the Argentine government and YPF are currently defending themselves in several cases, including:

    i.    *Unión de Usuarios y Consumidores v. Repsol YPF S.A.*, Federal Court Nr. 2, La Plata, case 8514-U.

---

[10] *Giustiniani, R.H. v. YPF*, Federal Supreme Court, Nov. 10, 2015.

[11] *Nidera S.A. v. DGI*, Federal Supreme Court, August 9, 2016, "La Ley", v. 2016-E, at 384.

[12] *Silvano Sampietro v. Banco de la Nación Argentina,* National Court of Appeals for Federal Civil and Commercial Matters II, Sept. 23, 2016, "La Ley", v. 2016-F, at 488.

[13] *Benito Roggio e Hijos S.A. et al v. E.N. Agua y Energía Eléctrica S.E.*, Federal Supreme Court, May 14, 2013, "La Ley", v. 2013-C, at 562.

     ii.    *Pérez Carrega, Alejandro José v. YPF S.A.,* National Civil Court Nr. 57, City of Buenos Aires, case 88365/2011.

    iii.    *Correa, Diego y otros v. Cardoso, Jorge y otros,* Court for Civil, Commercial and Labor Matters Nr. 1, San Lorenzo, Province of Santa Fe.

13. More generally, the federal government and its agencies are involved on a constant basis in thousands of court cases, in many of them as defendants, in many of which final decisions are entered against the government or its agencies.

## V.   ACCESS TO EVIDENCE AND WITNESSES

14. Argentine courts have the power to compel the testimony of unwilling witnesses.[14] However, this power may be exercised only in connection with cases proceeding in Argentine courts.  In connection with foreign cases, Argentine courts may only compel the testimony of unwilling witnesses if such compulsion is required by international treaties to which Argentina is part and is requested by the non-Argentine court entertaining the case in compliance with the terms of the relevant treaty. Enforcement of these requests, by Argentine courts, is generally slow and cumbersome because Argentine courts seek to determine not only whether the relevant treaty provisions are complied with, but also whether adequate procedural guarantees exist for the protection of the parties involved.  Thus, enforcement of these requests may take several years to be completed.

15. Courts have the power to compel production of documents from third parties located in Argentina.[15]  As in the case of witnesses, this power may be exercised in connection with cases proceeding in Argentine courts.  In connection with foreign cases, Argentine courts may only compel the production of documents if such compulsion is required by international treaties to which Argentina is part and is requested by the non-Argentine court entertaining the case in compliance with the terms of the relevant treaty.  Further, letters rogatory for the taking of testimony located in Argentina and for the production of documents take approximately eight months from the moment they arrive to Argentina to be executed.

## VI.   CORPORATE RELATIONSHIP VIOLATION

16. Under Argentine law, Plaintiffs' claims cannot be validly based on an alleged breach of contract or on an alleged anticipatory breach of contract.  That is because the bylaws do not give rise to a traditional contractual relationship

---

[14] Código Procesal Civil y Comercial de la Nación, art. 436.

[15] Código Procesal Civil y Comercial de la Nación, arts. 387, 389.

between the corporation and its shareholders.[16]  Instead, a violation of the obligations imposed by the bylaws is properly considered a violation of a corporate relationship.[17]

17. Article 959 of the Civil and Commercial Code provides that amendments to traditional contracts require all parties to the contract to agree before the nature or obligations of the contractual relationship can change.  The bylaws are not a traditional contract[18] for various reasons.  First, unlike traditional contracts, amendments to the bylaws are binding upon all shareholders, including those who have opposed the amendments to the incorporation contract.[19]  Second, the bylaws may be amended at shareholders' meetings, which are not contractual transactions, but rather acts originated in a corporate organ.  Hence, the corporation is governed by a set of rules created according to the special framework of corporate law, which is not purely contractual in origin and legal nature.[20]  In consequence, when there is a violation of the bylaws Argentine law perceives these claims as a violation of corporate law governed by the special rules applicable to such violations.

18. Pursuant to Argentine corporate law, shareholders who disagree with a shareholders' meeting resolution may challenge such a resolution if (1) they were present at the meeting, voted against the resolution at the shareholders' meeting and brought a claim before a court in the corporation's domicile within three months of the shareholders' meeting; or (2) if they were absent from the meeting, they challenged the shareholders' resolution before a court in the corporation's

---

[16] G.COLOMBRES, Curso de Derecho Societario, Abeledo Perrot, Buenos Aires, 1972, p. 80, *et seq*.; G.CABANELLAS, El contrato de sociedad, cit., p. 513, *et seq*.

[17] *See* ACCC, arts. 1716, 1717 (Consistent with the methodology used by Argentine private law, these articles recognize a general category of "illegal"("*antijurídicos")* acts and provide certain effects resulting from the violation of legal rules.  In this context, a "corporate law violation" is characterized by the fact that the legal rules that have been breached are corporate law rules.).  The same rule applied under prior legislation:  Argentine Civil Code, arts. 1066, 1067, 1077.

[18] G.COLOMBRES, Curso de Derecho Societario, Abeledo Perrot, Buenos Aires, 1972, p. 80, *et seq*.; G.CABANELLAS, El contrato de sociedad, cit., p. 513, *et seq*.

[19] G.CABANELLAS, El contrato de sociedad, cit., p. 513 *et seq.*

[20] G.COLOMBRES, Curso de Derecho Societario, Abeledo Perrot, Buenos Aires, 1972, p. 80, *et seq*.; G.CABANELLAS, El contrato de sociedad, cit., p. 513, *et seq*.

domicile within three months of the shareholders' meeting.[21]  I reviewed the June 4, 2012 shareholders' meeting minutes.  Plaintiffs did not oppose the decision to permit Argentina to vote at the June 4, 2012 shareholders' meeting, nor did Plaintiffs bring a claim against YPF for this alleged breach within the three-month period as required.  Accordingly, as a pure matter of corporate law, they cannot now bring a claim against YPF for failing to block Argentina's vote at the June 4, 2012 shareholders' meeting.

## VII.   EXPROPRIATION LAW AND ACQUISITION OF YPF SHARES

19. Argentine civil law dictates that YPF cannot be liable for a breach of the Bylaws if it was complying with a public law.  The Expropriation Law is a compulsory law embodying public policy, which prevails over YPF's bylaws.

20. Articles 9 and 13 of the Expropriation Law indicated that Argentina "shall" exercise the rights associated with the expropriated shares.[22]  Because of these Articles in the Expropriation Law, YPF did not have the option or right to prevent Argentina from exercising the rights associated with the expropriated shares.

21. Additionally, because the YPF shares were acquired by expropriation, the General Law of Expropriation (Law 21,499) and the Expropriation Law (Law 26,741) govern the acquisition, such that the obligations that the Bylaws might otherwise impose in ordinary circumstances are limited or inapplicable.  Pursuant to Articles 13, 15, 19 and 25 of the General Law of Expropriation, and the National Constitution, the expropriation process is not complete until the party subject to expropriation receives compensation for the expropriated property, and does transfer the property, involved in the expropriation process.  Thus, the expropriation, and the acquisition of YPF shares, was not complete until May 2014 when Repsol transferred title and ownership of its shares, and received compensation, pursuant to its settlement agreement with the government.  Prior to that time, the Argentine government was temporarily

---

[21] Ley General de Sociedades, art. 251.

[22] Law 26,741, arts. 9 ("To ensure compliance with the objectives of this law, the National Executive Office, by itself or through an appointed public entity, shall exercise all the political rights associated with the shares subject to expropriation until the transfer of political and economic rights is completed, in accordance with the preceding article."); 13 ("To ensure continuity of the activities associated with the exploration, production, processing and refining of hydrocarbons . . . the National Executive Office, through the persons or organizations it appoints, shall exercise all of the rights conferred upon the shares subject to expropriation in accordance with articles 57 and 59 of such act.").

occupying Repsol's shares of YPF, pursuant to the Expropriation Law and Intervention Decree, but had not yet acquired the shares.

## VIII.   ISSUES OF ARGENTINE LAW PRESENTED BY DEFENSES

22. I have reviewed the defenses asserted by YPF and the Republic in *Petersen*, many of which raise issues that need to be analyzed under Argentine law, particularly those defenses listed below asserted by both defendants.  Unless otherwise noted, I have not provided a substantive opinion as to these defenses, but am prepared to do so if requested at a later date.

   i.   YPF's First Defense/Argentina's Eleventh Defense:  Failure to state a claim

   (1)   Argentine law does not recognize a guarantor theory of liability such that a company is required to take the place of an acquirer in performing its obligations under the company's bylaws. Additionally, under Argentine law, a violation of a company's bylaws is not a contractual violation, but instead is properly perceived as a violation of corporate law governed by the special rules applicable to such violations.[23]  More generally, claims based on the violation of bylaws or other corporate rules require the use of concepts that are unique to Argentine corporations law, concepts that are only found in other civil law countries.  Also, Article 251 of the Argentine Corporations Law, Ley General de Sociedades ("LGS"), sets forth the procedure by which a shareholder may challenge a decision made at a shareholders' meeting, which requires bringing a claim within three months of the meeting. Lastly, under Articles 68 and 234 of the LGS, shareholders have no statutory or legal entitlement to the distribution of a corporation's dividends.  Whether Plaintiffs can nonetheless bring their claims is an issue that must be decided under Argentine law.

   ii.   YPF's Fourth Defense/Argentina's Twentieth Defense:  Statute of limitations

   (1)   Article 251 of LGS sets forth a three-month statute of limitations, which is applicable to Plaintiffs' claims.  Whether Plaintiffs can

---

[23] G.COLOMBRES, Curso de Derecho Societario, Abeledo Perrot, Buenos Aires, 1972, p. 80, *et seq.*; G.CABANELLAS, El contrato de sociedad, cit., p. 513, *et seq.*

nonetheless bring their claims notwithstanding Article 251 is an issue that must be decided under Argentine law.

    iii.    <u>YPF's Sixth Defense/Argentina's Nineteenth Defense</u>:  Doctrine of impossibility and/or *force majeure*

        (1)    The tender offer obligations provided by Articles 7 and 28 of the Bylaws cannot modify or limit the manner of the expropriation and are incompatible with the regulatory framework established by Argentine law.  Private rules, such as those included in the Bylaws, cannot replace, displace or annul public law rules such as those included in Argentina's expropriation regime.  The regulatory framework established by Argentine law includes, but is not limited to, the Civil Code[24], the Civil and Commercial Code[25], the Expropriation Law (Law 26,741), the Intervention Decree (Executive Decree No. 530/12), General Law of Expropriation (Law 21,499) and the National Constitution (Articles 17 and 31).

    iv.    <u>YPF's Seventh Defense/Argentina's Seventeenth Defense</u>:  Doctrine of assumption of risk

        (1)    Investment in corporate shares implies accepting the legal system governing the corporate structure which such shares are a part of.  Argentine law was clearly applicable to YPF, a corporation organized under the laws of Argentina.[26]  This implied acceptance has been expressly developed under Argentine law, pursuant to the so called Calvo doctrine.[27]

    v.    <u>YPF's Eighth Defense/Argentina's Fifteenth and Sixteenth Defense</u>:  Lack of causation and/or intervening or superseding causes

---

[24] Código Civil de la Nación Argentina, Ley 340 y modificaciones, Art. 21 available at: http://servicios.infoleg.gob.ar/infolegInternet/anexos/105000-109999/109481/texactley340_preliminar_tituloI.htm

[25] Art. 12.

[26] Art. 118 of the LGS.

[27] *See* M.LORENCES, Las doctrinas Calvo y Drago, "El Derecho" at 1-2, June 17, 2015. The Calvo doctrine was developed in the 19th century by the Argentine jurist Carlos Calvo.  Its basic principle is that foreign investors, by voluntarily agreeing to operate and invest in a given

      (1)     Plaintiffs' allegations that YPF failed to enforce the tender offer requirement vis-à-vis Argentina are governed by Argentine law, including the Expropriation Law (Law 26,741), the Intervention Decree (Executive Decree No. 530/12), and Argentine Corporations Law (LGS).  Pursuant to Argentine law, these public laws, and the Intervenor's and the National Securities Commission's compliance with them, are binding upon YPF. Further, YPF's obligations under the Bylaws are governed by, and would need to be analyzed under, Argentine law, which does not recognize a guarantor theory of liability.  In addition, any determination of liabilities based on the alleged violation of YPF's obligations pursuant to the tender offer requirements would require resolving issues of causality and/or intervening or superseding causes, which are properly governed by Argentine law.[28]

    vi.     <u>YPF's Thirteenth Defense/Argentina's Fifth Defense</u>:  Contract is *void ab initio*

      (1)     Determining whether the contract is void *ab initio* as a result of the manner in which Petersen acquired its YPF shares from Repsol involves multiple issues of Argentine law, such as those related to possible violations of shareholders' obligations under Argentine corporate law and the improper use of public funds of an Argentine province.

    vii.    <u>YPF's Fourteenth Defense/Argentina's Third Defense</u>:  *Forum non conveniens*

      (1)     I have provided my opinion regarding this defense, including the applicable Argentine laws, in Sections II-V above.

    viii.   <u>YPF's Fifteenth Defense/Argentina's First Defense</u>:  Exclusive jurisdiction

      (1)     I have provided my opinion regarding this defense, including the applicable Argentine laws, in Section III above.

---

jurisdiction, accept to comply with the legal rules in effect in such jurisdiction.  It has been applied by many developing countries thereafter.

[28] ACCC, arts. 1726, 1729 and 1731.

23.  Additional defenses asserted by Argentina also require analysis under Argentine law, including the following:

    i.    <u>Argentina's Eighth Defense</u>:  Justification by public necessity

        (1)    This defense raises issues clearly governed by Argentine law, such as the public necessity motivation of the expropriation of YPF's shares.

    ii.    <u>Argentina's Fourteenth Defense</u>:  Claims barred by Argentine law due to exemptions for Argentina acting as sovereign

        (1)    The powers of Argentina, acting as sovereign, are determined by Argentine law.  Subsidiary issues, such as the constitutional support for the exercise of such powers, are also clearly subject to Argentine law.

24. In addition to those defenses listed in Paragraphs 22 and 23, which directly implicate Argentine law, there are other defenses asserted by Defendants—including Argentina's Fourth Defense, lack of standing due to lack of contemporaneous ownership—which require a determination on the issue of when the Republic acquired the shares it expropriated, such that its alleged obligation to issue a tender offer was triggered.  This determination will require an analysis applying Argentine law, including General Law of Expropriation (Law 21, 499), the Expropriation Law (Law 26,741) and the National Constitution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Buenos Aires, Argentina on this 30 day of August, 2019.

Guillermo Cabanellas

14