UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br> Plaintiffs, <br><br> - against - <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | Case Nos. <br><br> 1:15-cv-02739-LAP <br> 1:16-cv-08569-LAP |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., <br><br> Plaintiffs, <br><br> - against - <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | |

**DECLARATION OF CHRISTOPHER P. BOGART**

**DECLARATION OF CHRISTOPHER P. BOGART**

Pursuant to 28 U.S.C. § 1746, I, Christopher P. Bogart, declare as follows:

1.      I am the Chief Executive Officer and one of the founders of Burford Capital, a London Stock Exchange-listed litigation finance firm with more than $2 billion in assets and more than a further $2 billion of assets under management.  Previously, among other positions, I was the Executive Vice President and General Counsel of Time Warner Inc. and a litigator at Cravath, Swaine & Moore.  I reside in Westchester County, New York, and my principal office is in New York City.  Burford's largest area of activity is with respect to U.S. litigation, with a meaningful amount of litigation occurring in the federal and state courts in New York City.  I make this declaration based on personal knowledge unless otherwise specified.

2.      Burford does business all over the world and regularly finances both solvent and insolvent businesses.  Burford's team is comprised of more than 120 people, more than 60 of whom are experienced lawyers typically from leading law firms.  Burford's focus is on large, complex litigation and arbitration matters where its team's experience can best be put to good use.  In *Petersen*, we take a significant role in contributing to case strategy and tactics with outside counsel and the bankruptcy receiver, especially given that our client does not have experience in managing complex transnational litigation, and we act like a particularly engaged set of inside counsel; in *Petersen*, that role was approved by the Spanish bankruptcy court.  For example, in *Petersen*, I personally and the Burford team read and comment on all draft pleadings and engage with every litigation decision, and I have personally attended every meaningful court hearing in this matter.  I would describe our involvement as essential to the conduct of the case.  (Our role varies by case; there are other matters in which we are much less involved.)

3. Burford has had one other experience litigating against Argentina. We were appointed by the Spanish bankruptcy court to finance an arbitration matter named *Teinver* where Argentina had nakedly expropriated two airlines from their Spanish owners without any compensation. As in *Petersen*, Argentina had no substantive defense for its conduct in *Teinver* and instead resorted to pressure tactics. As *Teinver* proceeded and appeared to be going well for the claimants, Argentina became increasingly aggressive, culminating in the launch of criminal charges against Burford and many of the professionals working on the case, all the way down to some of the King & Spalding paralegals. Those charges were announced with much fanfare by Argentina's Attorney General personally at a televised news conference and were clearly an attempt to intimidate. The Attorney General also was threatening and menacing to me in person when we both attended a hearing together in Washington, DC, and Burford is regularly demonized in the Argentine press at what we believe is the behest of the government.

4. While I have visited Argentina in the past in connection with the early stages of the *Teinver* proceeding, I have not returned for some years and I would not be willing to do so today out of fear for my own safety; I do not put it past the Argentine government to attempt to imprison or otherwise menace me. Indeed, I have also stopped members of my family from traveling to Argentina; my daughter, an environmental engineering student at Dartmouth with an interest in Antarctica, was contemplating a role with the Antarctic Treaty Secretariat based in Buenos Aires that she did not pursue given my view that it is not safe for her to travel to Argentina. It is also commonly understood among Burford employees that travel to Argentina carries with it some risk.

5. This is not just paranoia. Governments that react as Argentina has to the use of the international legal system against them have been known to flout legal norms. For example,

2

after losing an arbitration financed by one of our competitors, the government of Georgia invited the CEO of the relevant company to Georgia, ostensibly for settlement discussions, and, once there, imprisoned him for more than a year until it bowed to international pressure and released him.

6. While Argentina and its lawyers have lately tried to portray the abandonment of the *Teinver* prosecution as an act by the Macri administration to reset relations, the facts do not bear that out. After the Macri administration came into power, we endeavored to engage with Argentina to resolve *Teinver* commercially but were unsuccessful – and the criminal prosecution continued. It was not until the international arbitral tribunal comprehensively debunked any basis for the prosecution that it was dismissed. And, in any event, we now of course have back in power the prior administration that commenced the criminal prosecution in the first place.

7. It is troubling that Defendants' filings omit entirely the fact that Burford is once again under criminal investigation in Argentina with respect to this case, along with the Petersen receiver and the Petersen principals. This simply reaffirms my view that Argentina will not hesitate to use tactics outside the four corners of this litigation in an effort to avoid responsibility for its actions and heightens my concern about personal safety.

8. At bottom, sending this case to Argentina would hobble – and perhaps destroy – it. Neither I nor other members of the Burford team would be able to participate in proceedings there given our concerns about our safety. While the lawyers have been stalwart, there will come a point where neither they nor the court-appointed receiver will be willing to risk personal liberty and mistreatment to pursue this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 4, 2019.

_____
Christopher P. Bogart