**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br> Plaintiffs, <br><br> - against - <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | Case Nos. <br> 1:15-cv-02739-LAP <br> 1:16-cv-08569-LAP |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., <br><br> Plaintiffs, <br><br> - against - <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | |

**<u>DECLARATION OF PROFESSOR ALEJANDRO M. GARRO</u>**

## PURPOSE OF THIS DECLARATION

1. I, Alejandro M. Garro, hereby declare as follows, under penalty of perjury under the laws of the United States of America (28 U.S.C. Section 1746).

2. I submit this declaration at the request of Counsel for the plaintiffs, who has requested my opinion on some aspects of Argentine law, including the jurisdiction of its courts to entertain a civil action for damages similar to the one brought by the plaintiffs before this Court and whether the defendants' proposed forum is available and adequate to resolve the instant motion to dismiss on grounds of *forum non conveniens*.

## STATEMENT OF QUALIFICATIONS

3. I am an Adjunct Professor of Law and Senior Research Scholar at the Parker School of Foreign and Comparative Law of Columbia University. I have been a Professor of Law at Columbia University since 1981, where I teach and undertake research in the area of comparative law, private international law, and international business transactions. I am also Honorary Professor of Law at the University of Buenos Aires, Argentina, where I also regularly teach in the field of international commercial contracts and dispute resolution. My curriculum vitae is attached as Exhibit A to this declaration.

4. I earned a J.S.D. from Columbia Law School, an L.L.M. from Louisiana State University, and a degree in law (*abogado*) from the National University of La Plata (Argentina). I have been admitted to practice in my native Argentina since 1975, and I have been admitted to practice law in the State of New York since 1981.

5. My areas of teaching focus on comparative law and international commercial law, including international litigation and arbitration. My research and writing explores various aspects of comparative contract law in Latin American legal systems, areas in which I have published extensively. I have been a Visiting Professor of Law in various universities located in the United States, Latin America, and Western Europe.

6. I am familiar with the rules governing the Argentine law of contracts and I teach and have experience with the principles governing the law applicable to the allegations made by the plaintiffs in their Complaint. It is on the basis of this knowledge and experience that I provide this opinion.

7.  I do not have any particular interest in the outcome of this litigation and I express no opinion with respect to the factual allegations made in the documents that I have reviewed and have been asked to assume for the purposes of this declaration.

## **DOCUMENTS REVIEWED FOR THIS OPINION**

8.  For the purpose of this opinion, I have reviewed the following documents:

    a)  Complaint filed by the plaintiffs in this action on April 8, 2015 (the "Complaint");

    b)  Opinion and Order issued on September 9, 2016 by the United States District Court for the Southern District of New York ("Opinion and Order");

    c)  Opinion issued on July 10, 2018 by the United States Court of Appeals for the Second Circuit on appeal from the United States District Court for the Southern District of New York ("Opinion by the Second Circuit");

    d)  Answers and Defenses of YPF S.A. to Petersen Energía Inversora, S.A.U., and Petersen Energía, S.A.U.'s Complaint, filed on July 8, 2019;

    e)  Defendant the Argentine Republic's Answer and Affirmative Defenses to Plaintiffs' Complaint filed on July 8, 2019;

    f)  Defendants' Memorandum of Law in Support of Their Motion to Dismiss for *Forum Non Conveniens* filed on August 30, 2019;

    g)  Declaration of Bernardo Saravia Frías in Support of Defendants' Motion to Dismiss, filed on August 30, 2019;

    h)  Expert Declaration of Guillermo Cabanellas in Support of Defendants' Motion to Dismiss for *Forum Non Conveniens* filed on August 30, 2019 ("Cabanellas Decl.");

    i)  Expert Declaration of Rafael M. Manóvil filed on August 30, 2019 ("Manóvil Decl.");

    j)  Expert Declaration of Alfonso Santiago filed on August 30, 2019;

    k)  Declaration of Maria Alejandra Etchegorry in Support of Defendants' Motion to Dismiss filed on August 30, 2019 ("Etchegorry Decl.").

## SUMMARY OF CONCLUSIONS

9. According to the facts alleged by the parties and drawn from their submissions, which I assume to be undisputed unless otherwise indicated, and taking into account the sources of law they have invoked, my conclusions are as follows:

   a) The principles and rules binding on this Court to determine its jurisdiction to decide this case are found in U.S. law, rather than in the law of Argentina. See *infra* § A.

   b) To the extent this Court finds it relevant for the purpose of deciding this motion on *forum non conveniens* to examine or apply Argentine rules of adjudicatory jurisdiction, those rules allow this Court's jurisdiction. The relevant Argentine rules of jurisdiction are those dealing with the breach of an international contract, which are primarily found in the Civil Code of Argentina ("Civil Code"), article 1216, and, currently, in the Civil and Commercial Code of 2015 ("Unified Code"), article 2650. Those two rules provide that the plaintiffs may choose to submit this dispute to the courts of Argentina (YPF's home country) or to the courts of New York (place where some of the contractual obligations were to be performed). See *infra* § B.

   c) Argentine codes of civil and commercial procedure — the codes for each of the twenty-three Argentine provinces, as well as the National Code of Civil and Commercial Procedure ("Code of Procedure"), allocating the jurisdiction of federal courts and courts sitting in the federal district of the City of Buenos Aires — do not govern this case because they provide jurisdictional rules determining the "*competencia*" or jurisdiction of Argentine courts for deciding purely *domestic* disputes. See *infra* § C.

   d) Even assuming the Code of Procedure applied to this case (which it does not), it would permit this Court's jurisdiction. In an action for breach of contract, Article 5(3) Code of Procedure provides that suit may be brought, at the option of the plaintiff, either before the courts of the place where the defendant is domiciled (or the corporate seat) or before the courts of the place where any of the contractual obligations are to be performed. To the extent that some of the obligations arising under YPF´s bylaws are to be performed in New York, this Court can assert jurisdiction to decide this dispute pursuant to Article 1216 Civil Code and Article 2650 Unified Code and Article 5(3) Code of Procedure. See *infra* § D.

e) Professors Cabanellas and Manóvil assert that this dispute raises "intra-corporate claims" concerning the "internal affairs" of the corporation, and that according to Article 5(11) Code of Procedure, this type of dispute is subject to the exclusive jurisdiction of the courts of the place where the defendant corporation was incorporated and has its registered seat. I disagree. The characterization of a cause of action for the purpose of determining the jurisdiction of the courts is determined by the facts set forth in the complaint brought by the plaintiff (Art. 5 Code of Procedure, first paragraph). Plaintiffs in this case seek compensatory damages alleging that defendants breached the tender offer requirements in YPF's bylaws, so this is an action for breach of contract which, according to Article 1216 Civil Code and Article 2650 Unified Code, may be brought in any place where the contract was required to be performed, including in New York. And Article 5(11) would not apply, even if it governed international disputes (which it does not), because this is not an intra-corporate dispute. The same reasoning addresses Professors Cabanellas's and Manóvil's invocation of provisions of the Business Corporations Law and the Capital Markets Law. See *infra* § E.

f) Even assuming that this dispute were to concern the "internal affairs" of YPF, multiple sources of law confirm that Argentine courts' jurisdiction over this sort of international economic dispute is not exclusive, as indicated by the fact that the parties to such disputes enjoy ample freedom to select the forum of their choice to settle disputes. According to Article 2605 Unified Code and Article 1 Code of Procedure, the parties may agree on a choice of forum clause or they may even submit disputes to the jurisdiction of foreign arbitral tribunals, thus undermining the notion that Argentine courts have exclusive jurisdiction to decide this case. See *infra* § F.

g) Because Argentine law does not provide for exclusive jurisdiction in Argentine courts, the enforcement of a judgment of this Court would not be refused on that ground. See *infra* § G.

h) Defendants' Argentine law defenses do not raise complex issues of foreign law. Whenever a dispute calls for the application of foreign law, American courts routinely examine and eventually apply defenses similar to those the defendants brought to the attention of this Court. The application of Argentine substantive law to this dispute

does not present questions of foreign law that are unusually difficult or burdensome for this Court to decide. See *infra* § H.

i) Litigating the merits in New York and obtaining evidence abroad would not be unduly burdensome. There are numerous mechanisms by which U.S. courts may seek the cooperation of Argentine courts in order to obtain documents located in Argentina and the declaration of witnesses residing in Argentina. While resorting to such mechanisms implicates additional costs and inconvenience, modern technology and Argentina's legislation compelling judicial assistance and cooperation should not make this issue a dispositive factor in the Court's *forum non conveniens* analysis. See *infra* § I.

## OPINION AND ANALYSIS

### A.      The jurisdiction of this Court is determined by the "*lex fori*", rather than by Argentine law

10. Jurisdiction is an aspect of sovereignty, for it pertains to the law binding on the courts of an independent nation to decide, consistently with basic principles of international law, whether it may exercise ultimate control over persons and property within its national sphere.[1] Whether a given court can assert jurisdiction in a given dispute is determined by the law of the forum (*lex fori*).[2] This Court has reached the conclusion, affirmed by the Second Circuit Court of Appeals, that pursuant to the commercial-activity exception of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), it has personal and subject matter jurisdiction to settle the controversy whether YPF and the Republic of Argentina are liable for their breaches of the bylaws.

11. The defendants claim that the Republic of Argentina bears a significant interest to have this dispute decided in Argentina. It also seems beyond dispute that, under Argentine

---

[1] Adjudicative jurisdiction refers to the power of courts to try and decide a case pursuant to the type and location of the property, claims and issues involved in the dispute (subject matter and territorial jurisdiction), as well as the location of the parties (personal jurisdiction). Those concepts are peculiar to the national laws of each country, rooted in their history and notions of order and fundamental fairness. For a general discussion of these broad concepts under international law and Argentine law, see Werner Goldschmidt, <u>Sistema y filosofía de derecho internacional privado</u> 25 (1949). See also the landmark case of <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310, 316 (1945) (discussing the scope of jurisdiction *in personam* as an element of constitutional due process in the United States).

[2] Each state has its own rules of jurisdiction for domestic as well as international disputes. Some predicates of general jurisdiction, such as the defendant's domicile or main place of business, are widely shared by Western legal

rules on jurisdiction, Argentine courts are "competent" and entitled to exercise general jurisdiction over disputes brought against YPF and the Republic of Argentina (YPF's home nation). However, neither the Republic's interest in having this dispute decided in Argentina, nor the potential jurisdiction of the Argentine courts, nor the eventual application of Argentine substantive law to the merits preclude this Court from asserting its own jurisdiction to try this dispute.[3]

12. The expert declarations filed by Professors Cabanellas and Manóvil refer to the jurisdictional rules found in Argentina's National Code of Civil and Commercial Procedure (*Código Procesal Civil y Comercial de la Nación* or "Code of Procedure") and Argentina's Civil and Commercial Code (*Código Civil y Comercial de la Nación* or "Unified Code"), neither of which addresses whether a foreign court may exercise jurisdiction over a given dispute.[4] Not only the Code of Procedure and the Unified Code fail to prescribe or intend to rule on whether a <u>foreign court</u> may exercise jurisdiction over this dispute, but there is nothing in Argentine law purporting to divest U.S. courts, or the courts of any foreign country, of jurisdiction over this case.

13. In brief, the jurisdiction of this Court is determined by the law of this forum (U.S. federal law), rather than by Argentine law.

---

systems, but the jurisdictional rules of the various countries do not always coincide. Many states allow suit to be brought *in personam* based on the fact that the defendant owns assets in the jurisdiction (*e.g.*, Austria, Germany, Switzerland), whereas other countries such as England and the United States authorize their courts to assert personal jurisdiction as long as the defendant is physically located at the place where the suit is filed and is appropriately served with process in that place. Such predicates of jurisdiction go beyond what would be permitted under Argentine due process standards, which in contract disputes give Argentine courts authority to decide a dispute as long as any of the obligations arising from the contract are to be performed in Argentina. See Article 2650(b) Unified Code, to be discussed further below.

[3] The contours of determining the substantive law applicable to an international contract does not necessarily coincide with the limits a legal system may wish to establish for asserting adjudicatory jurisdiction. Therefore, the application of Argentine law to the merits does not necessarily entail the assertion of Argentina jurisdiction (let alone the Argentine court's exclusive jurisdiction, as alleged by defendants' affiants).

[4] See Cabanellas Decl., Para. 4 ("*Basically, the Civil and Commercial Code <u>determines the limits of Argentine jurisdiction</u> in the international context, and the National Code of Civil and Commercial Procedure <u>determines which court <b>in Argentina</b> has jurisdiction in cases falling within the Argentine jurisdictional system</u>.*") (emphasis added).

**B.      To the extent Argentine law is consulted, the relevant rules of international jurisdiction are found in the Civil Code and the Unified Code, which permit jurisdiction in this forum**

14. When the nature of a dispute is international — that is, if the parties or the object of the claim bear relevant connections with more than one country — it pertains to Argentine federal law to determine[5] whether Argentine courts can assert jurisdiction over such a dispute, specifically the Argentine Civil Code of 1871 ("Civil Code")[6] and the Argentine Civil and Commercial Code that came into force in 2015 ("Unified Code").[7] Professor Cabanellas acknowledges the same in his report.[8]

15. The dispute before this Court is of an international nature, for it alleges the breach of a contract with significant connections with more than one country. Particularly relevant to the characterization of plaintiffs' cause of action as the breach of an international contract is the fact that the parties to the dispute are located in different countries and that the contract the defendants are alleged to have breached was to be performed in more than one jurisdiction.[9] Plaintiffs' YPF shares were listed, offered, and traded as American Depositary Receipts ("ADRs") on multiple stock exchanges, including the Buenos Aires Stock Exchange and the New York Stock Exchange ("NYSE"). Also relevant to the international nature of plaintiffs' claims is that the takeover bid had to comply with publication requirements of the U.S. Securities and Exchange Commission ("SEC") and that plaintiffs purchased NYSE-listed and SEC-registered ADRs. Whereas Argentina's alleged decision not to make a tender offer, YPF's failure to enforce the tender offer requirements, as well as Argentina's alleged exercise of voting rights associated with its shares point to the defendants' conduct that took place in Argentina, the place of performance of other contractual obligations arising from YPF's bylaws was located in

---

[5] See Art. 31 CN, Argentina's supremacy clause, and Art. 75(13) CN, providing for Congress' legislative jurisdiction to prescribe on matters of foreign and inter-provincial commerce.

[6] Law No. 340 of 1869, which came into force on January 1, 1871 ("Civil Code"). See Arts. 1215-1216 Civil Code.

[7] See Unified Code, Book Sixth (Provisions Common to Rights *In Rem* and *In Personam*), Title IV (Private International Law), Chapter 2 ("International Jurisdiction") (Arts. 2601-2612 Unified Code), Section 11 ("Contracts") (Arts. 2650-2653 Unified Code).

[8] See Cabanellas Decl., Para. 4 ("*the Civil and Commercial Code determines the limits of Argentine jurisdiction in the international context*").

[9] Article 2594 Unified Code incorporates a general provision pointing to the application of Argentina's choice-of-law rules to what the code broadly refers as "international cases connected with more than one legal system" ("…*situaciones vinculadas con varios ordenamientos jurídicos*").

the United States, including the publication of the tender offer notices and SEC filings in New York and the plaintiffs' purchase of ADRs held in the United States.

16. The relevant provisions of the Civil Code of Argentina (Art. 1216 Civil Code), and currently those of the Civil and Commercial Code of 2015 (Art. 2650 Unified Code), determine when the Argentine courts can assert international jurisdiction to decide this dispute.

17. Article 1216 Civil Code, which was in force at the time of the alleged contract breaches in question, provides the plaintiff with the choice to file suit before the courts of the place of the defendant's domicile and those of the place where the contract is to be performed.

Article 1216 Civil Code

"*The suit may be brought before the courts of the defendant's domicile if the defendant is domiciled or resides in Argentina and the contract is to be performed abroad, or the suit may be brought before the courts of the place where the contract is to be performed, even if the defendant is not found in that place*."[10]

18. Article 2650 Unified Code expresses and reinforces this policy of giving the plaintiff the choice to sue where any of the obligations arising out of the contract may be performed.

Article 2650 Unified Code

"*Jurisdiction. In the absence of an enforceable choice of forum clause, the following courts have jurisdiction, at the election of the plaintiff, to bring a dispute arising out of a contract:*

a) *The courts of the defendant's domicile or habitual residence. In case of several defendants, the courts of the domicile or habitual residence of any of them;*

b) *The courts of the place of performance of any of the contractual obligations;*

c) *The courts of the place where the agency, branch or representative of the defendant is located, as long as it has participated in the negotiation or conclusion of the contract*."[11]

---

[10] Art. 1216 Civil Code ("*Si el deudor tuviere su domicilio o residencia en la República, y el contrato debiese cumplirse fuera de ella, el acreedor podrá demandarlo ante los jueces de su domicilio, o ante los del lugar de cumplimiento del contrato, aunque el deudor no se hallase allí*"). All translations from Spanish into English are mine, unless indicated otherwise.

[11] Art. 2650 Unified Code ("*Jurisdicción. No existiendo acuerdo válido de elección de foro, son competentes para conocer en las acciones resultantes de un contrato, a opción del actor: (a) los jueces del domicilio o residencia*

19. Therefore, according to Argentine law, the courts sitting in New York and those sitting in Argentina may exercise jurisdiction to decide the dispute before this Court. It is for the plaintiffs to decide whether to file suit before the Argentine courts of competent jurisdiction or those of New York.

### C.    Argentine codes of civil and commercial procedure provide *local* jurisdictional rules allocating the powers of the courts within Argentina to decide domestic disputes

20. Whereas the rules of jurisdiction in the international context are gathered with other rules of private international law found in the Civil Code and the Unified Code, the allocation of jurisdiction within the Argentine territory is considered a procedural matter falling under the legislative jurisdiction of each of the Argentine provinces. Characterizing adjudicative jurisdiction as a procedural issue is relevant because Argentina's National Constitution ("CN"), having adopted a federal form of government, dictates that procedural matters are governed by the local law of each province (or state) or by the federal rules of procedure binding on the courts sitting in the City of Buenos Aires, Argentina's national capital.[12] Accordingly, rules allocating the jurisdiction of the civil courts within Argentine territory are codified in the codes of civil and commercial procedure of each province and in the Code of Procedure, which applies to federal courts throughout Argentina and national courts sitting in the City of Buenos Aires.

21. Local or provincial rules of procedure, as codified in the codes of civil and commercial procedure of each of the twenty-four Argentine jurisdictions, prescribe which of the many courts *within Argentina* may assert jurisdiction over disputes involving persons or property bearing a reasonable connection to the Argentine Republic. As admitted by Professor Cabanellas, those rules say nothing about the jurisdiction of courts outside Argentina.[13]

---

habitual del deandado. Si existen varios demandados, los jueces del domicilio o residencia habitual de cualquiera de ellos; (b) los jueces del lugar de cumplimiento de cualquiera de las obligaciones contractuales; (c) los jueces del lugar donde se ubica una agencia, sucursal o representación del demandado, siempre que ésta haya participado en la negociación o celebración del contrato.").

[12] See Art. 121 CN ("*The provinces retain all the power not delegated to the federal government as well as those powers reserved under special treaties at the time of their incorporation into the Union*"); Art. 75 CN ("*It pertains to Congress [the power to]...(13) regulate commerce with foreign nations and between the provinces*").

[13] Cabanellas Decl., Para. 4.

### D.     At any rate, the Code of Procedure would authorize this Court's jurisdiction even if it applied to this case

22. The rules of the Code of Procedure, even if they governed here, would permit this Court's jurisdiction. The rules of jurisdiction binding on the courts sitting in the City of Buenos Aires, Argentina's national capital where YPF has its seat, are listed in Article 5 Code of Procedure. Those rules determine jurisdiction depending on the cause of action and the claim for relief sought by the plaintiff. Thus, paragraph (3) of Article 5 Code of Procedure provides a jurisdictional rule for "personal actions" (*acciones personales*), such as those based on torts or a breach of contract:

Article 5(3) Code of Procedure

"*In the case of personal actions* [the competent court shall be the court] *of the place where the performance of the obligation has been expressly or impliedly established pursuant to the facts of the case and, in default thereof, at the option of the plaintiff, the court of the defendant's domicile or the place of the contract, as long as the defendant is found in that place, even though temporarily, at the moment summons were served.*"[14]

23. If the Code of Procedure governed international disputes — which, as explained, it does not — Article 5(3) Code of Procedure would clearly authorize a New York court's jurisdiction over this case.

### E.     Neither Paragraph 5(11) of the Code of Procedure, the provisions of the Business Corporations Law ("ACL"),[15] nor the provisions of the Capital Markets Law ("ACML") apply to this case

24. Paragraph (11) of Article 5 Code of Procedure, which the defendants rely upon, would not determine which court may assert jurisdiction, even if it governed (which, as explained, it does not). Article 5(11) Code of Procedure provides for the jurisdiction of the courts of the place of incorporation of the defendant company, that is, where the company has been organized and registered (*domicilio social inscripto*). But Article 5(11) Code of Procedure only applies to disputes concerning "intra-corporate affairs" (*relaciones societarias*), that is, controversies related to the corporation's internal affairs.

---

[14] Art. 5(3) Code of Procedure ("*Cuando se ejerciten acciones personales, el del lugar en que deba cumplirse la obligación expresa o implícitamente establecido conforme a los elementos aportados en el juicio y, en su defecto, a elección del actor, el del domicilio del demandado o el del lugar del contrato, siempre que el demandado se encuentre en él, aunque sea accidentalmente, en el momento de la notificación*").

[15] Law No. 19.550, *Ley de Sociedades Comerciales* (Argentine Business Corporation Law or "ACL").

Article 5(11) Code of Procedure

"*In actions implicating intra-corporate affairs* [the competent court shall be the court] *of its registered corporate seat. If the corporation is not required to be registered, the court of the place fixed in the contract, or the court of the company's seat in case of irregular companies or unincorporated associations.*"[16]

25. Professors Cabanellas and Manóvil assert that this dispute involves "*corporate relationships*," raising "*corporate claims*" subject under Article 5(11) Code of Procedure to the exclusive jurisdiction of the courts of the seat of the corporation or of the place where the corporation was organized and registered.[17] This is wrong as a matter of Argentine law for two reasons. *First*, plaintiffs clearly characterized the "gravamen" of their complaint as an action for damages for breach of contract. *Second*, as I explain below, this dispute does not involve "corporate relationships" as that term is understood under Argentine law.

26. The leading paragraph of Article 5 Code of Procedure provides that, to determine which jurisdictional rule applies to a particular case, one must look to how *the plaintiffs* characterize the claim brought before this Court. The provision reads:

Article 5 Code of Procedure (first paragraph)

"*The court's jurisdiction shall be determined according to the claims set forth in the pleadings, rather than by the defenses set up by the defendant. The following courts shall have jurisdiction to decide a dispute, with the exception of special provisions and statutes, and those cases in which the parties may expressly or impliedly agree otherwise…*"[18]

27. The plaintiffs characterize this action as a civil action based on the defendants' "*breach of the tender offer requirements…in YPF's bylaws, which constitute a binding contract*

---

[16] Art. 5(11) Code of Procedure ("*En las acciones que derivan de las relaciones societarias, el del lugar del domicilio social inscripto. Si la sociedad no requiere inscripción, el del lugar del domicilio fijado en el contrato; en su defecto o tratándose de sociedad irregular o de hecho, el del lugar de la sede social.*").
[17] Cabanellas Decl., Para. 5; Manóvil Decl., Paras. 24-28.
[18] Art. 5 Code of Procedure ("*La competencia se determinará por la naturaleza de las pretensiones deducidas en la demanda y no por las defensas opuestas por el demandado. Con excepción de los casos de prórroga expresa o tácita, cuando procediere, y sin perjuicio de las reglas especiales contenidas en este Código y en otras leyes, será juez competente…*").

11

enforceable against Argentina and YPF",[19] "seeking compensatory damages for Argentina's and YPF's breaches of contract."[20] By asserting that this dispute centers on YPF's "intra-corporate relationships" (relaciones societarias), Professors Cabanellas and Manóvil misrepresent plaintiffs' action before this Court, which has decided that plaintiffs' claim is based on a breach of contract,[21] a conclusion subsequently affirmed by the Second Circuit.[22]

28.  Moreover, Article 5(11) Code of Procedure's reference to "intra-corporate" disputes refers to the type of disputes that under American law concern the "internal affairs" of a corporation, generally subject to the mandatory rules of the place where the company was incorporated or registered, though not necessarily subject to the jurisdiction of the courts of the place of incorporation.[23] Those sorts of issues are not implicated in this suit for breach of contract. Plaintiffs are not pursuing the avoidance of a corporate resolution or to meddle with or alter YPF's internal affairs. Indeed, Professor Cabanellas himself has acknowledged in prior scholarship that "a cause of action grounded on a breach of contract or a negotiable instrument **does not turn into an intra-corporate dispute merely because a corporation is a party to the dispute**."[24]

---

[19] Complaint, Para. 2 ("Those promises were made in YPF's bylaws, which constitute a binding contract enforceable against Argentina and YPF, in YPF's U.S. IPO Prospectus dated June 28, 1993...filed with the SEC and disseminated by Argentina and YPF into the United States, and in numerous SEC filings made by YPF thereafter.").

[20] Complaint, Para. 5 ("Plaintiffs accordingly seek compensatory damages for Argentina's and YPF's breaches of contract and other relief as set forth therein.").

[21] Opinion and Order, text accompanying footnote 3, responding to defendants' argument that the claim is based upon Argentina's sovereign acts of intervention and expropriation ("However, the particular conduct that constitutes the gravamen of the Complaint is Argentina's failure to enforce the tender offer requirements that are contained in the Bylaws.").

[22] Opinion by the Second Circuit, stating that the plaintiffs in this action seek damages for breach of contract, rather than challenging Argentina's sovereign acts, pursuing the nullity of YPF's corporate resolutions, or seeking the nullification of YPF's sale of shares on the open market ("Petersen claims that defendants repudiated that bargain when they refused to conduct a tender offer in accordance with YPF's bylaws, despite having incurred the obligation to do so by virtue of Argentina's acquisition of a controlling stake in the firm. The 'gravamen' of Petersen's lawsuit is thus the defendants' repudiation of a contract that had a direct effect in the United States.").

[23] See Antonio Boggiano, Jurisdicción internacional sobre sociedades constituidas en el extranjero, 111 ED 970, 971 (favoring under Article 124 ACL the application of mandatory law and exclusive jurisdiction to decide local disputes on the internal affairs of a corporation incorporated abroad but operating in Argentina, while admitting the enforceability of forum selection agreements for disputes which are of an international nature).

[24] Emphasis added. ("Así, un litigio contractual, real o cambiario, no pasa a ser societario porque con él sea parte una sociedad"). See Guillermo Cabanellas, Aspectos procesales de las sociedades extranjeras, 1999 Revista de Derecho Comercial y de las Obligaciones 9-10 (1999) (hereinafter "Cabanellas, Aspectos procesales de las sociedades extranjeras").

29. The declarations filed by Professors Cabanellas and Manóvil speculate that plaintiffs' action before this Court rests on Article 118, Article 224, and other provisions of Argentina's Business Corporation Law ("ACL").[25] This is wrong. Plaintiffs brought this action long after losing their status as YPF's shareholders as a result of defendants' breach and they are not pursuing the avoidance of a corporate resolution or to meddle with or alter YPF's internal affairs. Plaintiffs do not seek and have never sought to avail themselves of any of the causes of action and remedies provided by the ACL aimed at challenging corporate resolutions adopted at shareholders' meetings or by the board of directors.[26] Nor are plaintiffs seeking to hold board members or other shareholders liable or to set aside provisions of YPF's bylaws.[27] What they seek is compensatory damages for breach of contract.

30. Although a company's bylaws constitute, indeed, an agreement of a special nature, corporate bylaws are nevertheless characterized under Argentine law as a contract between the corporation and its shareholders and among the shareholders *inter se*.[28] What the plaintiffs' complaint alleges is the defendants' breach of their promises under such contract. The relief plaintiffs seek in this action is monetary compensation for damages resulting from Argentina's failure to issue a tender offer and YPF's failure to enforce such tender offer requirements.[29] Accordingly, plaintiffs' cause of action is properly characterized under Argentine law as a breach of contract.

31. According to Article 1216 Civil Code and Article 2650 Unified Code, dealing with the jurisdiction over disputes for the breach of an international contract (and under Article 5(3) Code of Procedure, if it governed international cases), the plaintiff has the option to file suit before the courts of the defendant's domicile or those of the place of performance of any of the contractual obligations.

---

[25] Cabanellas Decl., Para. 7 (referring to Articles 118 and 124 ACL); Manóvil Decl., Para. 32 (referring to Art. 118 ACL). Articles 118 and 124 ACL incorporate choice-of-law rules inapposite to the jurisdictional issues discussed in their declarations.

[26] See Manóvil Decl., Para. 41 ("*Plaintiffs do not appear to base their claim on any particular resolution of a shareholders' meeting....*").

[27] See Cabanellas Decl., Para. 7, referring to Articles 118 and 124 ACL, providing for the mandatory application of Argentine law aimed at ensuring compliance with the requirements of the company's place of incorporation.

[28] See 1 Carlos A. Vanasco, Sociedades Comerciales 97-99 (2006); 1 Enrique Zaldivar et al., Cuadernos de derecho societario 97 (1973) (conceptualizing as a "plurilateral organizational contract" (*contrato plurilateral de organización*)).

[29] Complaint, Para. 5; Opinion and Order, text accompanying note 3.

**F.     Even if this dispute were "intra-corporate," the jurisdiction of Argentine courts is not exclusive**

32. Professor Cabanellas wrongly characterizes plaintiffs' complaint "*as a breach of the corporate relationship between the parties*"[30] and Professor Manóvil reaches the equally misguided conclusion that "*disputes arising under the bylaws of an Argentine company are subject to the **exclusive** territorial jurisdiction of Argentina*" (Emphasis added).[31] This representation of Argentine law is wrong because, in the first place, this is an action seeking damages for breach of contract rather than a dispute questioning the internal affairs of YPF, as discussed above.

33. In any event, even if this were an intra-corporate dispute, Argentine law does not provide for exclusive jurisdiction. Argentine law recognizes very few grounds of exclusive jurisdiction, and corporate disputes are not among those grounds. Article 2609 Unified Code addresses the few grounds of exclusive jurisdiction under Argentine law[32]:

<u>Article 2609 Unified Code</u>

"*Exclusive jurisdiction. Aside from what is provided in special laws, Argentine courts have exclusive jurisdiction to decide the following disputes:*

a)  *matters concerning rights <u>in rem</u> in immovable property located in Argentina;*

b)  *the validity or nullity of entries practiced in an Argentine public registry;*

c)  *matters concerning registry entries or the validity of patents, trademarks, designs, drawings, industrial models and other analogous rights subject to deposit or registration, if such deposit or registration has been registered or entered, or deemed to have been registered, in Argentina.*[33]

34. Clearly, intra-corporate disputes are not among the types of disputes over which "*Argentine courts have exclusive jurisdiction*." Thus, even assuming that this case raised

---

[30] Cabanellas Decl., Para. 8.

[31] Manóvil Decl., Para. 28.

[32] See 1 Boggiano, <u>Derecho Internacional Privado</u> 232, referring to the proposition made in <u>Eberth Clemens v. Buque Pauloto</u> to the effect that in international disputes courts in more than one country are likely to assert concurrent jurisdiction, as opposed to exclusive jurisdiction.

[33] Art. 2609 Unified Code ("*<u>Jurisdicción exclusiva</u>. Sin perjuicio de lo dispuesto en leyes especiales, los jueces argentinos son exclusivamente competentes para conocer en las siguientes causas: a) en materia de derechos reales sobre inmuebles situados en la República; b) en materia de validez o nulidad de las inscripciones practicadas en un registro público argentino; c) en materia de inscripciones o validez de patentes, marcas, diseños o dibujos y modelos industriales y demás derechos análogos sometidos a depósito o registro, cuando el depósito o registro se haya solicitado o efectuado tenido por efectuado en Argentina*").

"intra-corporate" issues that Argentine law would declare subject to the jurisdiction of the courts of the place of incorporation, that jurisdiction would not be "exclusive," because this case is not one of those disputes discussed above in Article 2609 Unified Code.[34]

35. Professors Cabanellas and Manóvil assert that Article 46 ACML precludes the parties from agreeing to settle their disputes by courts or arbitral tribunals sitting outside Argentina.[35] Neither the text nor the policies underlying Article 46 ACML support this conclusory interpretation, which is also inconsistent with Argentine law's general recognition that parties to international transactions have wide latitude to choose where to litigate and submit their disputes to arbitration. Rather, Article 46 ACML confirms Argentina's policy favoring the non-exclusive jurisdiction of Argentine courts for settling securities traded in the Argentine stock market.

Article 46 ACML

"***Arbitral tribunal.*** *All markets shall provide within their sphere for a permanent arbitral tribunal, to which all entities trading negotiable shares are required to submit their disputes with shareholders and investors. Actions arising out of Law No. 19.550 on Business Corporations and their amendments shall be included within the arbitral jurisdiction, including the challenge of corporate resolutions and liability claims against their members and other shareholders, as well as the actions to set aside clauses of the*

---

[34] The principle that foreign courts can exercise jurisdiction over corporate disputes is evident throughout Argentine law. Both Article 1 Code of Procedure and Article 2605 Unified Code recognize that parties to international disputes of an "economic nature" may agree to litigate in a foreign forum. In addition, General Resolution 4/2001 adopted by the Inspection General of Justice (*Inspección General de Justicia*), Argentina's highest authority of control for business corporations, promotes parties' freedom to agree to settle corporate disputes by arbitration. See General Resolution 4/2001 of the *Inspección General de Justicia,* Art. 1: "*The <u>Inspeccion General de Justicia</u> shall admit the incorporation of arbitral clauses in contracts binding on closely held corporations, the bylaws of business corporations subject to its control, and in joint-venture contracts governed Law No. 19550.*" (*La Inspección General de Justicia admitirá la inclusion de cláusulas arbitrales en los contratos de sociedades de responsabilidad limitada, en los estatutos de sociedades por acciones sometidas a su contralor y en los contratos de colaboración empresaria regulados por la Ley No 19.550*); see also <u>Cabanellas, Aspectos procesales de las sociedades extranjeras</u> 10. Policies recognizing such private agreements would not be possible if Argentine law categorically restricted parties' right to sue and be sued in foreign courts.

[35] Manóvil Decl., Para. 29 ("*Accordingly, in my view, Plaintiffs could file claims arising under the Bylaws in the court of competent jurisdiction within the City of Buenos Aires or before the Buenos Aires Stock Exchange Arbitration Tribunal. They could not, under Argentine law, file claims arising under the Bylaws in a court or tribunal outside Argentina*"). See also Cabanellas Decl., Para. 6 (stating that, outside the jurisdiction of "*special arbitration tribunals, Section 46 [ACML] only allows as a possible alternative for these cases, litigation before Argentine judicial courts*").

*bylaws and regulations. In all cases, the regulations shall provide for the right of shareholders and investors for bringing their claims to the competent courts….*"[36]

36. Article 46 ACML expressly provides for alternative methods for settling disputes arising out of securities issued by companies registered in Argentina. Rather than restricting the parties to settle their disputes in an exclusive forum, Article 46 ACML offers the option to submit disputes between the company and its shareholders and among the shareholders *inter se* to an arbitral tribunal or to the "*competent courts*".[37]

37. None of the other authorities referred to by Professor Manóvil supports his position that the jurisdiction of Argentine courts for settling this dispute is exclusive and excludes the jurisdiction of New York courts. In <u>De San Martin, Jose v. Estado Nacional</u>, the Supreme Court of Argentina upheld the jurisdiction of the administrative courts of the City of Buenos Aires to decide a complaint brought by YPF's minority shareholders against the company alleging YPF's violation of its bylaws. [38] At no point did the Supreme Court examine in this case any jurisdictional issue other than whether the dispute should be heard by the commercial or the administrative courts of Argentina, let alone did Argentina's highest court examine whether the assertion of Argentine jurisdiction excludes the jurisdiction of the courts of the place of performance or the possibility that the parties may validly agree on a choice of forum clause.[39] Following the opinion of

---

[36] Art. 46 ACML ("***Tribunal arbitral.*** *Todos los mercados deberán contar en su ámbito con un tribunal arbitral permanente, al cual quedarán sometidas en forma obligatoria las entidades cuyos valores negociables se negocien dentro de su ámbito, en sus relaciones con los accionistas e inversores. Quedan comprendidas en la jurisdicción arbitral todas las acciones derivadas de la ley 19.550 de sociedades comerciales (t.o. 1984) y sus modificaciones, incluso las demandas de impugnación de resoluciones de los órganos sociales y las acciones de responsabilidad contra sus integrantes o contra otros accionistas, así como las acciones de nulidad de cláusulas de los estatutos o reglamentos. En todos los casos, los reglamentos deberán dejar a salvo el derecho de los accionistas e inversores para optar por acudir a los tribunales judiciales competentes…*").

[37] See Art. 46 ACML, compelling the submission of these disputes to institutional arbitration, although leaving investors and shareholders the choice of resorting to the "courts of competent jurisdiction" ("*optar por acudir a los tribunales judiciales competentes*"). See also Art. 38 of Decree No. 677/2001, which preceded the adoption of the ACML in 2013, also providing for the option to submit the dispute to arbitration or resort to the courts of competent jurisdiction.

[38] <u>De San Martin, Jose v. Estado Nacional</u>, referred to in Cabanellas Decl., note 6, and in Manóvil Decl., Para. 30, Supreme Court of Argentina, August 20, 2014, holding that the Federal Administrative Court of First Instance No. 10 (*Juzgado Federal de Primera Instancia en lo Contencioso-Administrativo*) retained jurisdiction to decide this case.

[39] Id. In order to decide which of the Argentine courts had subject matter jurisdiction over the dispute, the Supreme court emphasized the need to consider the facts plead in the complaint; only later and to the extent that it is necessary, the court may also take into account the law alleged by the plaintiff as applicable to the case ("*…Para determinar la competencia corresponde atender de modo principal a la exposicion de los hechos y despues solo en*

Argentina's Solicitor General (*Procurador General de la Nación*), the Supreme Court upheld the jurisdiction of the administrative courts on the ground that those "*aspects of administrative law are of primary relevance to the resolution of the case.*"[40]

## G.   Enforcement of a judgment of this Court would not be refused on the grounds of exclusive jurisdiction

38. The holdings in Trade Development Institute Argentina S.A. v. Estado Nacional and in Nassiri S. v. Rancibia M.J. stand for the proposition that in the enforcement of foreign judgments an Argentine court must review the jurisdiction of the rendering court, and that a foreign judgment will not be enforced if the rendering court oversteps on the exclusive jurisdiction attributed to Argentine courts.[41] This is a well-known ground for refusing to enforce a foreign judgment,[42] but neither case deals with the enforcement of a dispute arising out of a breach of contract or the internal affairs of an Argentine corporation. Whether the jurisdiction of Argentine courts in corporate disputes is exclusive or concurrent is nowhere to be found in those two judgments cited by Professor Manóvil.

39. The case-law and scholarly doctrine cited by Professor Manóvil are even more inconsequential for the purpose of supporting, or even arguing, the view that a civil action of the type brought before this Court is subject to the exclusive jurisdiction of Argentine courts. No one disputes the holding in Luazan v. Fleidman[43] that the shareholders' contributions to the company are for the benefit of the corporation; or that the bylaws of a corporation give rise to rights and obligations between the corporation and the shareholders as well as between the shareholders *inter se.*[44] However, neither the Luazan case nor the discussion in Professor Horacio Roitman's treatise cited in Professor

---

la medida en que se adecue a ello, al derecho que se invoca como fundamentos de la acciòn y la naturaleza de la pretension…").

[40] Id.

[41] Trade Development Institute Argentina S.A. v. Estado Nacional, Federal Court of Appeals on Civil and Commercial Matters, Division III, November 4, 2011 (discussing the requirements for enforcing a foreign arbitral award under Article 519 Code of Procedure); Nassiri S. v. Rancibia M.J., National Court of Appeals for Civil Matters, December 30, 2009.

[42] See generally 11 Ricardo L. Lorenzetti, Código Civil y Comercial de la Nación Comentado 521 (2015) ("…*The State [Argentina] does not recognize a foreign decision on a subject matter is subject to the exclusive jurisdiction of our national courts (e.g., on matters related to rights in rem in immovable property located in Argentina*")).

[43] Luazan, Eduardo et al. v. Fleidman, Roberto et al., National Court of Appeals for Commercial Matters (hereinafter "CNCom"), Div. D, April 13, 1982, 1982-C LL 381, referred to in Manóvil Decl., Para. 16, note 4.

[44] See Manóvil Decl., Para. 16, note 5 and authorities cited therein.

Manóvil's declaration support his conclusion that "*an alleged breach of a tender offer obligation in the Bylaws cannot give rise to a contract claim.*"[45]

40. <u>Gatti v. Bulad</u>,[46] to which Professor Manóvil attributes the uncontroversial proposition that "*the rights and obligations of the shareholders hinge on their relations with the corporation*,"[47] was a decision rendered in a case in which a shareholder was held liable in his capacity as a director of the corporation. This case bears a scant relationship, in fact or in law, with the question whether the instant dispute is subject to the exclusive or concurrent jurisdiction of Argentine courts. None of the Argentine legal scholars' opinions cited by Professor Manóvil in his declaration[48] support his conclusion that "*the place of a company's registered office determines the appropriate and <u>exclusive</u> territorial jurisdiction for <u>all</u> corporate disputes*"[49] or that "*the law is clear that disputes arising under the bylaws of an Argentine company are subject to the exclusive territorial jurisdiction of Argentina.*"[50]

41. Moreover, the string of judicial decisions referred to in the declaration of Professor Manóvil bears no relevant connection to the legal issues of Argentine law the defendants

---

[45] Manóvil Decl., Para. 18. See id., Para. 17, note 6, referring to 1 Horacio Roitman, <u>Ley de Sociedades Comerciales. Comentada y Anotada</u> 14, note 8 (2nd ed., 2011) (hereinafter "Roitman, <u>Ley de Sociedades Comerciales</u>"), discussing that the contributions of those constituting a corporation are for the benefit of the legal entity to be formed ("…*las prestaciones de los cocontratantes están dirigidas al nuevo sujeto…*").

[46] <u>Gatti Ernesto Ignacio v. Bulad</u>, Alfredo Raguec, CNCom, Div. A, October 22, 1999, 188 <u>El Derecho</u> 698 (1999).

[47] Id., at 698 ("…*tanto los derechos como las obligaciones de los socios giran en torno a sus relaciones con el sujeto de derecho denominado sociedad, y no con relación a cada uno de los otros socios individualmente considerados…*").

[48] See Manóvil Decl., Para. 24, note 6, and Para. 28, note 20.

[49] Manóvil Decl., Para. 24, note 6 (emphasis added), referring to 1 Roitman, <u>Ley de Sociedades Comerciales</u> 406 (referring to the place of the company's registration as the general basis of jurisdiction for deciding disputes concerning the internal affairs of the corporation); 4 Roitman, <u>Ley de Sociedades Comerciales</u> 880-881 (referring to the jurisdiction of the courts and procedure to be followed for challenging shareholders' resolutions); 1 Enrique Zaldivar et al., <u>Cuadernos de derecho societario</u> (referring to the jurisdiction of the place of incorporation to entertain an action against an insolvent company); and 1 Elena I. Highton & Beatriz A. Arean, <u>Código Procesal Civil y Comercial de la Nación. Análisis doctrinal y jurisprudencial</u> 287 (2004) (pointing to the general jurisdiction of the courts of the place where the corporation or closely held corporation has been registered to decide disputes against such company).

[50] Manóvil Decl., Para. 28, note 20 (emphasis added), referring to Jaime L. Anaya, <u>Arbitraje societario</u>, 2007-C LL 1027, discussing the arbitrability of corporate disputes centered on the validity of corporate resolutions; Pablo Pueyrredón, <u>El arbitraje obligatorio de amigables componedores</u>, 2010-A LL 794 (criticizing the adoption of Decree 677/2001, the predecessor of Article 46 ACML, for allowing the parties to settle corporate disputes by arbitration, allegedly depriving the losing party of the right to appeal guaranteed under Article 8.2(h) of the American Convention on Human Rights); and Dante Crocogna, <u>OPA: Precio equitativo y arbitraje en el decreto 677/2001</u>, 2008-D LL 86 (also advocating the need to adjust the freedom of the parties to submit corporate disputes to arbitration under Decree 677/2001 with an alleged "double-instance guarantee" prescribed by Article 8.2(h) of the American Convention on Human Rights).

portray as important to decide this motion on *forum non conveniens*. Thus, <u>Fernando Celles, Joaquin v. Gutierrez, Marcelino</u>,[51] <u>Lopez , Pedro et al. v. Straube, Otto</u>,[52] and <u>Giacometti, Fernando and Teresa v. Empresa del Ferrocarril Central</u>[53] are old Supreme Court cases in which the highest court dismissed disputes between shareholders of Argentine companies for lack of federal subject matter jurisdiction, referring the parties to bring those claims to the local commercial courts of the City of Buenos Aires where the companies were incorporated. <u>Oil Combustibles S.A.</u>,[54] another Supreme Court judgment cited by Professor Manóvil, affirms the jurisdiction of the courts of the place of incorporation for supervising the insolvency of the company, an issue inapposite to the questioned exclusive jurisdiction of Argentine courts to decide disputes involving the proper application of the corporate bylaws.[55]

42. Professor Cabanellas states that Argentine courts will refuse to enforce any judgment resulting from this case on the ground that "*Argentine courts had exclusive jurisdiction over the claims*" brought before this Court.[56] Because the premise is incorrect, the conclusion is as well. Professor Cabanellas is incorrect, as stated before, that Argentine courts have exclusive jurisdiction over the claims brought before this Court. None of the authorities cited in the expert declarations filed by Professors Cabanellas and Manóvil support this conclusion. Actually, none of those authorities ever questioned the enforceability of a foreign judgment rendered in a case of breach of contract in which contractual performances were to be performed within the jurisdiction of the rendering court.[57]

---

[51] <u>Fernando Celles, Joaquin v. Gutierrez, Marcelino</u>, 178 Fallos 333, 336 (1937), Supreme Court of Argentina, August 23, 1937.

[52] <u>Lopez , Pedro et al. v. Straube, Otto</u>, 30 Fallos 512 (1898), Supreme Court of Argentina, July 23, 1898.

[53] <u>Giacometti, Fernando and Teresa v. Empresa del Ferrocarril Central</u>, 74 Fallos 177 (1898), Supreme Court of Argentina, July 23, 1898.

[54] <u>Oil Combustibles S.A.</u>, 340 Fallos 1663 (2017), Supreme Court of Argentina, November 15, 2017.

[55] See Manóvil Decl., Para. 25, note 17, referring to <u>Oil Combustibles</u> in support of the proposition advanced in the text that "*Argentine law presumes that shareholders agree to submit their rights and duties to be adjudicated in this jurisdiction when the register the company at a specific location, or purchase shares in a company registered in that location.*"

[56] Cabanellas Decl., Para. 7.

[57] See Cabanellas Decl., Para. 7, note 8, referring to <u>Trade Development Institute Argentina S.A. v. Estado Nacional</u>, National Court of Appeals for Federal Civil and Commercial Matters III, Nov. 4, 2011; <u>Nassiri, S. v. Rancibia M.J.</u>, National Court of Appeals for Civil Matters, Dec. 30, 2009. Both cases stand for the uncontroversial proposition, not at stake in this case, to the effect that an Argentine court will refuse to enforce a foreign judgment rendered in a dispute over which Argentine courts claim exclusive jurisdiction. None of those cases relates to the enforcement of a foreign judgment settling a dispute remotely similar to the one involved in this case.

43. The normative sources referred to by Professor Manóvil deal with the determination of the applicable law to the requirements for the incorporation of a business entity in Argentina, as opposed to the determination of the court of competent jurisdiction to decide a dispute arising out of a breach of its bylaws. Seeking support in "*relevant norms of international jurisdiction*",[58] Professor Manóvil refers to Article 118 ACL and Article 2 of the 1979 Inter-American Convention on Conflicts of Laws Concerning Commercial Companies ("Inter-American Convention on Commercial Companies"),[59] supposedly advancing the theory that "*...[A] court outside of Argentina does not have jurisdiction and is not competent to issue a decision in a dispute arising out of the bylaws of a company registered in Argentina*".[60] This conclusion is wrong.

44. As noted above, Article 118 ACL is a choice-of-law rule pointing to the law of the place of incorporation of a business corporation to determine whether the company was validly incorporated.[61] In turn, Article 2 of the Inter-American Convention on Commercial Companies also determines the application of the law of the place of incorporation in order to determine the legal requirements governing the existence, legal capacity, and termination of a business corporation.[62] None of those sources deal with the jurisdiction of Argentine courts, let alone suggest the exclusive jurisdiction of those courts in corporate disputes.

45. Likewise, the scholarly writings referred to in Professor Manóvil's declaration do not touch upon the exclusive or concurrent jurisdiction of the courts of the place of

---

[58] Manóvil Decl., Para. 32.

[59] Inter-American Convention on Conflicts of Laws Applicable to Commercial Companies, available at http://www.oas.org/juridico/english/treaties/b-40.html ("Inter-American Convention on Commercial Companies"), adopted at the OAS Second Specialized Inter-American Conference on Private International Law, which entered into force on June 14, 1980.

[60] Manóvil Decl., Para. 33 (emphasis added).

[61] Article 118 ACL ("*The existence and formal validity of a business corporation incorporated abroad is goverend by the law of the place where the Company was constituted*" (*La sociedad constituida en el extranjero se rige en cuanto a su existencia y formas por las leyes del lugar de constitución)).* See *supra* Para. 29.

[62] Article 2 of the Inter-American Convention on Commercial Companies ("*The existence, capacity, operation and dissolution of commercial companies shall be governed by the law of the place where they are constituted. The expression 'law of the place where they are constituted' shall be understood to mean the law of the State where the formal and substantive requirements for the establishment of commercial companies are fulfilled.*").

incorporation to settle corporate disputes.[63] The cases cited by Professor Manóvil also fail to address the issues of Argentine law discussed in the text of his declaration.[64]

46. It is up to the plaintiffs to attempt enforcing a judgment against the Republic or against YPF in a jurisdiction where the defendants have other assets. If Argentina presents a hostile ground for the enforcement of foreign judgments, or the eventual refusal of Argentine courts to enforce a judgment rendered by this Court, despite the fact that New York is the place where some of the defendants' obligations were to be performed, such hostility would suggest, if anything, the inadequacy of an Argentine forum to decide this case.

## H.    The alleged variety and complexity issues to be decided under Argentine law

47. Given the list of Argentine law issues listed in the declarations filed by Professors Cabenellas and Manóvil,[65] as well as the "panoply" of factual and legal issues raised by

---

[63] See Manóvil Decl., Para. 33, note 25, referring to Werner Goldschmidt, Derecho internacional procesal en el Nuevo Código Procesal Civil y Comercial de la Nación (Ley 17.454), 19 ED 856 (1967), whose main contention is that "*the foreign court's international jurisdiction must be determined through the application of analogous provisions of Argentine law on international jurisdiction*" ("*La jurisdicción internacional del tribunal extranjero debe, por consiguiente, determinarse mediante la aplicación analógica de las disposiciones argentinas sobre jurisdicción internacional*."). The same point is made by the other authorities cited by Professor Manóvil in this note, none of whom addresses whether the Argentine courts of the place of incorporation of Argentine companies are vested with exclusive jurisdiction to settle all cases concerning such company, let alone do they discuss whether Argentine courts would refuse to enforce a foreign judgment rendered by a foreign court sitting at the place where one of the contractual obligations was performed or was bound to be performed. Note 26 in Professor Manóvil's declaration makes reference to the case M.L.A. v. M.A.C., 71 LL 306-307 (1953), decided by the Supreme Court of the Province of Cordoba, apparently reinforcing the opinion of Professor Goldschmidt on the exclusive jurisdiction of the enforcing court as a ground for refusing to enforce a foreign judgment. This case concerns the last domicile of the couple as the exclusive predicate of jurisdiction for entertaining matrimonial actions related to their marital bond.

[64] See Manóvil Decl., Para. 34, note 27, referring to cases dealing with failed attempts to enforce a foreign judgment in an insurance action, Overseas Unión Insurance Limited y otros c. Caja Nacional de Ahorro y Seguro en Liquidacion, Thomson-Reuters Online 35003817; a Paraguayan judgment ordering the dissolution of a marriage, G., D y B c. M.A., National Court of Appeals in Civil Matters ("CNCiv"), Div. J, September 8, 2005, 215 ED 320 (2006); the refusal to enforce a money judgment based on the judgment debtor's failure to honor a bill of exchange, Artline SA c. Basman, CNCom, Div. D, May 8, 1986, 1996 – D LL 73; and the refusal to enforce a judicial decree granting visitation rights to a parent in defiance of the exclusive jurisdiction of the court handling the divorce proceedings, Nassiri S c. Rancibia M. J, CNCiv, December 30, 2009, AR/JUR/76751/2009.

[65] Cabenellas Decl., Paras. 22-23 (listing about 10 affirmative defenses set up by the Republic of Argentina, including plaintiffs' failure to state a claim under Article 251 ACL; the 3-months limitation period set forth in Article 251 ACL barring plaintiffs' remedies; defendants' allegation that the regulatory framework established by Argentine public law qualifies as an impediment under the doctrine of impossibility or *force majeure*; plaintiffs' alleged assumption of the risks posed by Argentina's legal framework, the absence of a causal relationship between defendants' breach and the damage plaintiffs allege to have suffered, the eventual nullity *ab initio* of Petersen's purchase of YPF shares from Repsol, etc.). See also Manóvil Decl., Para. 42 (listing 3 affirmative defenses raised by Argentina, including plaintiffs' lack of standing to bring a claim as a shareholder of YPF; the allegation that

the defendants' affirmative defenses included in the laundry list submitted by Ms. Etchegorry,[66] Counsel for the plaintiffs requested my opinion whether the application of Argentine law in this case may prove unusually difficult or burdensome for this Court.

48. I advance no opinion regarding the merits of the defenses raised by the defendants in this case. But after reviewing the nature of those defenses I submit that virtually all of them raise contract-law defenses not dissimilar from doctrines finding a functional counterpart in American contract law (*e.g.*, statute of limitations or prescription, *force majeure* or impossibility of performance, assumption of risk, causation, the doctrine of estoppel and related doctrines of unclean hands and *venire contra factum proprium*, the duty of an obligee to mitigate damages in case of breach of contract, etc.). American courts routinely examine and eventually apply similar defenses whenever a dispute calls for the application of foreign law. Comparatively speaking, the application of Argentine law to this dispute should not pose unusually difficult or burdensome issues for this Court to decide.

### I. Difficulties, costs, and inconvenience associated with the taking of evidence, if such evidence were necessary, would not pose insurmountable obstacles under existing mechanisms of judicial cooperation between Argentina and the United States

49. Ms. Etchegorry's declaration points to relevant witnesses and documents located in Argentina, stating that compelling those witnesses to testify, the costs of travel, and the inconvenience associated with producing thousands of pages of documentary evidence, including their translation from Spanish into English, "*would be unreasonably and unduly burdensome*."[67] Counsel for the plaintiffs requests my opinion whether, should there be a need for such evidence, the costs and inconvenience posed by the need to take evidence in Argentina may pose obstacles that prove excessively burdensome for this Court to surmount.

---

Section 7(h) of YPF's bylaws stipulates a penalty clause, providing the plaintiffs with the exclusive remedy in the event of defendants' breach, and the applicability of a three-month limitation period under Article 251 ACL, barring plaintiffs' eventual challenges against decisions taken at shareholders' meetings).

[66] Etchegorry Decl., Para. 8, including a long list of answers and affirmative defenses asserted by the defendants, including the exclusive jurisdiction of the Argentine courts, Petersen's lack of standing for not holding the status of YPF shareholder at the time of filing their complaint in 2015, the alleged nullity of Petersen's purported acquisition of YPF shares in 2008, plaintiffs' failure to state a claim under YPF's bylaws, etc.).

[67] Etchegorry Decl., Paras. 11-25.

50.  Although deposing witnesses and obtaining documents under control of individuals located in Argentina is likely to involve costs, time, and inconvenience not present when such evidence were to be located in this country, those additional costs are not prohibitive in proportion to what is at stake in this case. Argentina and the United States have concluded international treaties of judicial cooperation whereby U.S. courts may seek the assistance of Argentine courts for the purpose of obtaining documents and the declaration of witnesses located in Argentina.[68]

51.  Moreover, Articles 2610 and 2611 Unified Code impose on Argentine courts the duty to go beyond the text of international agreements on judicial cooperation, exhorting judges in Argentina to go beyond the traditional letters rogatory as a means of transmitting document requests, establishing direct communications with foreign courts accepting this practice.

<u>Article 2611 Unified Code</u>

"*<u>Jurisdictional cooperation</u>. Argentine judges shall offer ample cooperation in civil, commercial, and labor matters, aside from the obligations assumed under international treaties.*"[69]

<u>Article 2612 Unified Code</u>

"*<u>International procedural cooperation</u>. Communications addressed to foreign officers shall be made by letters rogatory, aside from the obligations assumed under international treaties. If required under the circumstances, Argentine judges are authorized, as long as due process is respected, to establish direct communications with judges from foreign countries who accept such practice, with due regard to the right of due process.*

*The processing of routine requests and evidentiary measures requested by foreign jurisdictional authorities shall be carried out as long as the court order does not affect principles of public policy under Argentine law. Letters rogatory shall be processed on*

---

[68] See, e.g., <u>Convencion sobre la Obtención de Pruebas en el Extranjero en Materia Civil o Comercial</u>, done at The Hague, March 18, 1970, of which both Argentina and the United States are parties, together with most European nations.

[69] Art. 2611 Unified Code ("*<u>Cooperación jurisdiccional</u>. Sin perjuicio de las obligaciones asumidas por convenciones internacionales, los jueces argentinos deben brindar amplia cooperación jurisdiccional en materia civil, comercial y laboral.*").

*the court´s own motion, without delay and pursuant to Argentine law, providing for the due payment of the costs involved in the requested assistance.*"[70]

52. Given the prevalence of electronically stored information, the widespread availability of videoconferencing and other communications tools, I submit that the existence of foreign witnesses and documents in the Spanish language does not appear as a sufficient reason to make this Court an inconvenient forum.

---

[70] Art. 2612 Unified Code ("*Asistencia procesal internacional*. *Sin perjuicio de las obligaciones asumidas por convenciones internacionales, las comunicaciones dirigidas a autoridades extranjeras deben hacerse mediante exhorto. Cuando la situación lo requiera, los jueces argentinos están facultados para establecer comunicaciones directas con jueces extranjeros que acepten la práctica, en tanto se respeten las garantías del debido proceso. Se debe dar cumplimiento a las medidas de mero trámite y probatorias solicitadas por autoridades jurisdiccionales extranjeras siempre que la resolución que las ordena no afecte principios de orden público del derecho argentino. Los exhortos deben tramitarse de oficio y sin demora, de acuerdo con las leyes argentinas, sin perjuicio de disponer lo pertinente con relación a los gastos que demande la asistencia requerida.*").

Under penalty of perjury, pursuant to Section 1746 of Chapter 28 of the U.S.C., I declare that the foregoing is true and correct.

Executed on December 4, 2019.

Respectfully submitted,

Prof. Alejandro M. Garro