**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA,                   :
S.A.U. and PETERSEN ENERGÍA, S.A.U.,          :
                                               :        Case No.:  1:15-CV-02739 (LAP)
            Plaintiffs,                         :
                                               :
        v.                                      :
                                               :
ARGENTINE REPUBLIC and YPF S.A.,              :
                                               :
            Defendants.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ETON PARK CAPITAL MANAGEMENT,                 :
L.P., ETON PARK MASTER FUND, LTD.,            :
ETON PARK FUND, L.P.,                          :        Case No.:  1:16-CV-08569 (LAP)
                                               :
            Plaintiffs,                         :
                                               :
        v.                                      :
                                               :
ARGENTINE REPUBLIC and YPF S.A.,              :
                                               :
            Defendants.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION TO DISMISS FOR *FORUM NON CONVENIENS***


February 7, 2020

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT .........................................................................1

ARGUMENT .................................................................................................4

I.  PLAINTIFFS CANNOT EVADE ARGENTINA'S EXCLUSIVE JURISDICTION REQUIREMENTS AND THE PLAIN LANGUAGE OF THE PROSPECTUS................................................................................4

    A.  Argentina's Exclusive Jurisdiction Warrants Dismissal of the Complaints. ...........4

    B.  This Court Should Apply an Abbreviated FNC Framework Because the Parties Understood that Argentine Courts Would Have Exclusive Jurisdiction. ..................................................................................6

II.  IN ADDITION, PLAINTIFFS CANNOT EVADE DISMISSAL UNDER A TRADITIONAL FNC ANALYSIS ...................................................8

    A.  Argentina Is the Only Adequate Forum for This Dispute.......................8

        1.  Plaintiffs Cannot Belatedly Rely on a *Different* Argentine Criminal Investigation To Challenge the Adequacy of Argentina as a Forum. ...................................................................8

        2.  The Court Should Reject Plaintiffs' Conclusory Attacks on the Impartiality of the Argentine Judiciary.........................12

        3.  The Possibility that Certain of Plaintiffs' Claims May Be Untimely Is No Basis To Deny Defendants' FNC Motion. .........................14

    B.  The Court Should Afford No Deference to Plaintiffs' Choice of This Forum ...................................................................................15

    C.  All of the Public Interest Factors Support Dismissal.............................17

    D.  The Private Interest Factors Strongly Favor FNC Dismissal. ..............19

CONCLUSION .............................................................................................20

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Alfadda* v. *Fenn*,
  966 F. Supp. 1317 (S.D.N.Y. 1997)..............................................................................9

*Allstate Life Ins. Co.* v. *Linter Grp. Ltd.*,
  1992 WL 398446 (S.D.N.Y. Dec. 21, 1992) ...............................................................9

*Am. Home Assur. Co.* v. *M/V JAAMI*,
  2007 WL 1040347 (S.D.N.Y. Apr. 4, 2007).............................................................14

*Arial Techs. LLC* v. *Aerophile S.A.*,
  2015 WL 1501115 (S.D.N.Y. Mar. 31, 2015) ........................................................ 6-7

*Atlantic Marine Constr. Co.* v. *Western District of Texas*,
  571 U.S. 49 (2013)...............................................................................................2, 6, 7

*Blanco* v. *Banco Indus. de Venezuela, S.A.*,
  997 F.2d 974 (2d Cir. 1993)...............................................................................13, 14

*Bloomberg Fin. L.P.* v. *UBS AG*,
  358 F. Supp. 3d 261 (S.D.N.Y. 2018).......................................................................16

*Boilermakers Local 154 Ret. Fund* v. *Chevron Corp.*,
  73 A.3d 934 (Del. Ch. 2013)......................................................................................4

*Bournias* v. *Atl. Maritime Co.*,
  220 F.2d 152 (2d Cir. 1955)......................................................................................15

*Carey* v. *Bayerische Hypo-Und Vereinsbank AG*,
  370 F.3d 234 (2d Cir. 2004)......................................................................................17

*CCS Int'l, Ltd.* v. *ECI Telesys. Ltd.*,
  1998 WL 512951 (S.D.N.Y. Aug. 18, 1998).......................................................3, 19

*Cyberscan Tech., Inc.* v. *Sema Ltd.*,
  2006 WL 3690651 (S.D.N.Y. Dec. 13, 2006) ..........................................................17

*Elliott Assocs.* v. *Porsche Automobil*,
  759 F. Supp. 2d 469 (S.D.N.Y. 2010)........................................................................6

*Engage Aviation, LLC* v. *Argentina*,
  2017 WL 7355306 (M.D. Fla. Dec. 18, 2017)..........................................................14

*Evolution Online Sys.* v. *Koninklijke PTT Nederland N.V.*,
   145 F.3d 505 (2d Cir. 1998)...............................................................................6

*Giro, Inc.* v. *Malaysian Airline Sys. Berhad*,
   2011 WL 2183171 (S.D.N.Y. June 3, 2011) .......................................................17

*Heritage Lace* v. *Underwraps Costume*,
   2019 WL 3858585 (S.D.N.Y. Aug. 16, 2019).....................................................16

*HSBC USA, Inc.* v. *Prosegur Paraguay, S.A.*,
   2004 WL 2210283 (S.D.N.Y. Sept. 30, 2004).....................................................16

*Iragorri* v. *United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001)..........................................................................3, 17

*Kalin* v. *Xanboo, Inc.*,
   526 F. Supp. 2d 392 (S.D.N.Y. 2007)..................................................................4

*LaSala* v. *UBS, AG*,
   510 F. Supp. 2d 213 (S.D.N.Y. 2007)................................................................19

*Locals 302* v. *Blanchard*,
   2005 WL 2063852 (S.D.N.Y. Aug. 25, 2005)............................................ *passim*

*In re Libor Antitrust Litig.*,
   2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .......................................................6

*Malibu Media, LLC* v. *Doe*,
   2015 WL 4271825 (S.D.N.Y. July 14, 2015) ........................................................6

*Maraschiello* v. *City of Buffalo Police Dep't*,
   709 F.3d 87 (2d Cir. 2013)..................................................................................6

*Martinez* v. *Bloomberg LP*,
   883 F. Supp. 2d 511 (S.D.N.Y. 2012).................................................................14

*Monegaque de Reassurances S.A.M.* v. *Nak Naftogaz of Ukraine*,
   311 F.3d 488 (2d Cir. 2002)..............................................................................14

*Monegasque de Reassurances S.A.M. (Monde Re)* v. *Nak Naftogaz of Ukraine*,
   158 F. Supp. 2d 377 (S.D.N.Y. 2001).............................................................8, 13

*North* v. *McNamara*,
   47 F. Supp. 3d 635 (S.D. Ohio 2014) ..................................................................5

*Online Payment Sols. Inc.* v. *Svenska Handelsbanken AB*,
   638 F. Supp. 2d 375 (S.D.N.Y. 2009).................................................................16

*In re Optimal U.S. Litig.*,
  886 F. Supp. 2d 298 (S.D.N.Y. 2012) ............................................................................9, 17

*Palacios* v. *The Coca-Cola Co.*,
  757 F. Supp. 2d 347 (S.D.N.Y. 2010) ...........................................................................16

*Petersen Energía Inversora, S.A.U.* v. *Argentine Republic*,
  2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ............................................................ *passim*

*PT United Can* v. *Crown Cork & Seal*,
  138 F.3d 65 (2d Cir. 1998) ...........................................................................................13

*In re Revlon, Inc. S'holders Litig.*,
  990 A.2d 940 (Del. Ch. 2010) .........................................................................................5

*RIGroup LLC* v. *Trefonisco Mgmt. Ltd.*,
  949 F. Supp. 2d 546 (S.D.N.Y. 2013) ...........................................................................12

*Rogers* v. *Petroleo Brasileiro, S.A.*,
  741 F. Supp. 2d 492 (S.D.N.Y. 2010) ...........................................................................15

*Sawyer* v. *N.Y. State Dep't of Corr. Servs.*,
  2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015) .................................................................6

*Schertenleib* v. *Traum*,
  589 F.2d 1156 (2d Cir. 1978) ........................................................................................19

*Starkey* v. *Gap Adventures, Inc.*,
  2014 WL 1271233 (S.D.N.Y. Mar. 27, 2014) ...............................................................14

*Sussman* v. *Bank of Israel*,
  801 F. Supp. 1068 (S.D.N.Y. 1992) .........................................................................10, 13

*Traher* v. *Rep. First Bancorp, Inc.*,
  2020 WL 208932 (E.D. Pa. Jan. 13, 2020) .....................................................................4

*Verlinden B.V.* v. *Cent. Bank of Nigeria*,
  461 U.S. 480 (1983) .........................................................................................................8

*W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ..........................................................................................15

*Warter* v. *Boston Secs. S.A.*,
  380 F. Supp. 2d 1299 (S.D. Fla. 2004) ..........................................................................13

*Wave Studio, LLC* v. *Gen. Hotel Mgmt.*,
  712 F. App'x 88 (2d Cir. 2018) ......................................................................................16

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that this lawsuit does *not* belong in this United States Court.  Plaintiffs do not dispute that this case turns entirely on:

- Plaintiffs' alleged rights under *Argentine* law;

- under the bylaws of an *Argentine* corporation, which are governed by, and interpreted with reference to, *Argentina*'s General Corporations Law;

- for actions of the *Argentine* government and an *Argentine* corporation, taken in *Argentina*;

- in connection with *Argentina's* act of expropriation, pursuant to *Argentine* statutes;

- of certain shares in YPF, an *Argentine* corporation.

(*See* Opp. 21, 29, 33.)  Under settled principles of *forum non conveniens* ("FNC"), an Argentine court should decide this dispute.

To try to find some hook to stay in this Court, Plaintiffs claim that the United States has an "obvious interest in deciding a case concerning the rights of shareholders on American securities markets."  (Opp. 2.)  But Plaintiffs have not brought a case under the U.S. securities laws.  In fact, the very instrument pursuant to which YPF sold these securities—the Prospectus— informed investors that YPF's bylaws would be "governed by Argentine law," and that "any action relating to enforcement of the By-laws or a shareholder's rights thereunder *is required to be brought in an Argentine court*."  (Paskin Decl. Ex. B at 90 (emphasis added).)  The Prospectus's discussion of exclusive jurisdiction reflects a fundamental principle of Argentine law that requires that corporate law claims be brought in the place of the company's registered office.

Plaintiffs cannot evade this "single-forum" rule by labeling corporate law claims as something else.  In determining jurisdiction, Argentine law requires courts to go beyond Plaintiffs' labels and look to the "nature" of the claim.  (Manóvil Reply ¶¶ 5-9; Cabanellas Reply ¶¶ 19-20.) Applying established Argentine law, Plaintiffs' claims must be treated as "corporate law claims" (*id.* ¶ 20), which must be brought in Argentina.  In light of this, Plaintiffs have no way around

*Locals 302* v. *Blanchard*, where this Court enforced Canada's analogous single-forum rule to dismiss a dispute involving a Canadian corporation.  2005 WL 2063852, at *3-4 (S.D.N.Y. Aug. 25, 2005) (Preska, J.).

Because Argentine law expressly provides for "exclusive jurisdiction" in Argentina—and because that requirement of Argentine law is specifically called out in the YPF Prospectus—the Court should dismiss on FNC grounds pursuant to the Supreme Court's decision in *Atlantic Marine Constr. Co.* v. *Western District of Texas*, 571 U.S. 49, 64 (2013).  Under *Atlantic Marine*, Plaintiffs cannot complain about the "inconvenience" (Opp. 31, 34) of litigating in Argentina, because "whatever 'inconvenience' the parties would suffer by being forced to litigate in the [pre-selected] forum . . . was clearly foreseeable," 571 U.S. at 64.

Beyond Argentina's controlling single-forum rule, these Actions should be dismissed under a traditional FNC analysis.  *First*, Plaintiffs cite nothing to justify a departure from the consensus among U.S. courts that Argentina is a wholly adequate forum.  *See Petersen Energía Inversora, S.A.U.* v. *Argentine Republic*, 2016 WL 4735367, at *11-12 (S.D.N.Y. Sept. 9, 2016) ("*Petersen I*") (Preska, J.).  Faced with the fact that the *Teinver* investigation that the Court considered relevant in *Petersen I* was terminated *with prejudice*, Plaintiffs cite a different criminal investigation that purportedly forms the basis for their "of prosecution." (Opp. 16-17.) But Plaintiffs' "fear" rests solely on the speculation of their expert, who did not review the complete investigative file and instead simply presumed that "the investigation is being pursued as a litigation tactic." (Freeland ¶ 4.)  By contrast, Defendants' expert (Professor Máximo Langer of UCLA Law) has reviewed the more than 8,000-page record of the investigation and conclusively shows that Professor Freeland's speculation is wrong.  The indisputable facts are that this investigation: (i) has been ongoing for nearly 14 years; (ii) was prompted by *private* complaints ("*denuncias*")—*not* the Argentine executive branch; (iii) focuses on political figures and former directors and shareholders of YPF and does *not* name Burford or King & Spalding as defendants; and (iv) is in the hands of what Plaintiffs acknowledge is Argentina's *independent* judiciary (*see* Opp. 16 n.8; Freeland ¶ 11 (executive officials have "no authority over federal

prosecutors, and, it goes without saying, over federal judges")).  (Langer ¶ 25.)  Indeed, Petersen itself has participated extensively in that investigation, and in fact its lawyer filed a *denuncia* with the supervising judge accusing Argentina's lawyers *in this litigation* of criminal conduct in making arguments to this Court.  (Langer ¶ 70 & Langer Ex. G.)

*Second*, Petersen—created and controlled by Argentine principals—is entitled to no deference in its choice of forum.  Tag-along plaintiff Eton Park similarly has no material connection to New York.  Courts defer to a plaintiff's choice of forum "because it is presumed to be convenient."  *Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001).  That rationale does not apply to plaintiffs like Eton Park that are winding down (*see* Opp. 11 n.5), particularly when that plaintiff admittedly has no documents, witnesses, or other substantial connections to the selected forum.

*Third*, the public and private interest factors strongly favor FNC dismissal here. Plaintiffs misleadingly claim that these are "straightforward breach-of-contract claims based on undisputed facts." (Opp. 2.)  But any trial of these Actions requires resolving complex issues of Argentine corporate and public law, including, *inter alia*, (1) whether Plaintiffs' claims are cognizable as "contract," as opposed to corporate, claims; (2) what rights and remedies, if any, are available to Plaintiffs, given that they did not challenge the resolutions adopted at the relevant shareholder meeting; (3) whether any or all of Plaintiffs' claims or the relief sought is barred by the failure to comply with Argentine corporate law rules requiring them to assert a claim within the specified limitations period; (4) whether and to what extent, under Argentina's civil code system, public laws govern the rights and obligations of the Republic in connection with the expropriation of a majority of YPF shares; and (5) whether and to what extent, under Argentina's civil code system, public laws obviate obligations that might otherwise have existed pursuant to YPF's bylaws and Argentine corporate law.  And, with all material witnesses and documentary evidence in Argentina, the balance here tilts clearly in favor of trial there.  *See CCS Int'l, Ltd.* v. *ECI Telesys. Ltd.*, 1998 WL 512951, at *7, *11 (S.D.N.Y. Aug. 18, 1998) (Preska, J.) ("greater relative ease of access to . . . evidence in Israel" "tips strongly in defendants' favor").

**ARGUMENT**

I. **PLAINTIFFS CANNOT EVADE ARGENTINA'S EXCLUSIVE JURISDICTION REQUIREMENTS AND THE PLAIN LANGUAGE OF THE PROSPECTUS.**

    A.    **Argentina's Exclusive Jurisdiction Warrants Dismissal of the Complaints.**

        Under Argentine law, which Plaintiffs concede governs here (Opp. 7 (citing *Petersen I*, at *13)), Plaintiffs' claims for "breach of the bylaws" (Opp. 14) are "corporate law" claims, which provide for specific rights and remedies. (Manóvil ¶¶ 8, 13-18; Manóvil Reply ¶¶ 5-11, 45-57.) Plaintiffs cannot *circumvent* Argentine law simply by framing their claims as "breach of contract" claims. (Opp. 25.) Article 5 of the Argentine National Code of Civil and Commercial Procedure specifically provides that, for the purposes of determining the proper applicable Argentine law and forum, it is the *nature of the claims* that matters, not the way Plaintiffs *label* their claims. (Manóvil Reply ¶¶ 5-9; Cabanellas Reply ¶¶ 19-20.)[1] Plaintiffs' semantics do not change the substance of their claims under Argentine law. *Id.*[2]

        Argentine law requires that corporate law claims be brought in the place of the company's registered office. (*See* Br. 14; Manóvil ¶¶ 19-30; Manóvil Reply ¶¶ 25, 30-34;

---

[1] Nor can Plaintiffs evade Argentina's single-forum rule by characterizing this dispute as "international." (Garro ¶ 15; Rovira ¶ 12.) The bylaws of an Argentine corporation do not lose their domestic character merely because some purchasers of shares were located outside of Argentina. (Manóvil Reply ¶¶ 3, 26); *see also Locals 302*, 2005 WL 2063852, at *3 n.2 ("[S]tockholders impliedly consent to be governed by the law of a corporation's state of incorporation when they purchase stock in the company.").

[2] The result would be the same if Plaintiffs' claims were governed by the corporate law of Delaware, New York, or other U.S. states. *See, e.g.*, *Boilermakers Local 154 Ret. Fund* v. *Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013) (explaining that, although bylaws are in some ways contractual in nature, claims based upon a corporation's bylaws are governed by the Delaware General Corporations Law); *Kalin* v. *Xanboo, Inc.*, 526 F. Supp. 2d 392, 409 (S.D.N.Y. 2007) ("[Defendant] is a New York corporation, so the adequacy of the demand and the corresponding duties of the directors are governed by general provisions of New York corporate law."); *Traher* v. *Rep. First Bancorp, Inc.*, 2020 WL 208932, at *4 (E.D. Pa. Jan. 13, 2020) (applying Pennsylvania's Business Corporation Law where the court was "unpersuaded that Pennsylvania recognizes a contract remedy on behalf of an individual shareholder arising out of a corporation's purported failure to follow its Articles [of incorporation]").

Cabanellas ¶ 6; Cabanellas Reply ¶¶ 8-14.)  This "single forum" rule reduces duplicative litigation and ensures consistency in the interpretation and application of a single corporation's bylaws.[3] This policy is particularly compelling in a civil law jurisdiction, where, unlike a common law jurisdiction, a plaintiff is presumptively entitled to an "in-kind" remedy (specific performance or injunctive relief).  (Manóvil ¶ 35; Manóvil Reply ¶¶ 52-57.)  Such an "in-kind" remedy is precisely what is contemplated by YPF's bylaws.  (*See Petersen* Dkt. 45-2 at 12, 29 (YPF's Bylaws § 7(h) (stating that shares acquired in breach of the bylaws "shall not grant any right to vote or collect dividends or other distributions that the Corporation may carry out"); *id.* § 28(C) (specifying that, where the National Government becomes the owner of 50% of YPF shares in breach of Section 7, "the penalties provided for in subsection h) of Section 7 shall be applied"); *see also* Manóvil Reply ¶¶ 44-51.)  Argentine law provides Plaintiffs the mechanism to enforce these in-kind remedies, but exclusively from a venue located in the place of YPF's registered office.  (Manóvil ¶ 36; Manóvil Reply ¶¶ 25, 30-34.)[4]  Other YPF shareholders complied with the single-forum requirement and commenced lawsuits arising from the same challenged actions in the City of Buenos Aires.  (Carlos Gustavo Pistarini Decl. (*Petersen* Dkt. 25) ¶ 5).)  Plaintiffs here did not.

Given that, under Argentine law, Argentine courts have exclusive jurisdiction over this dispute, Plaintiffs cannot escape this Court's decision in *Locals 302*, which addressed similar provisions of Canadian law.  2005 WL 2063852, at *3-4.[5]

---

[3] Courts in the United States have recognized the value of having all matters relating to corporate governance resolved in a single forum.  *See, e.g., North* v. *McNamara*, 47 F. Supp. 3d 635, 644 (S.D. Ohio 2014); *In re Revlon, Inc. S'holders Litig.*, 990 A.2d 940, 960 (Del. Ch. 2010).

[4] The exclusivity of the judicial forum is not changed because of the narrow exception offered to shareholders to choose an arbitral forum in Argentina instead.  (Opp. 26.)  Article 46 of the Capital Markets Law provides for "mandatory arbitration in Argentina" or adjudication in "*competent* judicial courts in Argentina."  (Manóvil ¶ 21 (emphasis added).)  The competent courts are the courts at the place of incorporation.

[5] Plaintiffs are wrong in claiming that the exclusive jurisdiction of Argentine courts is "waived," because that argument was "available" at the time of the Republic's September 2015 motion to

**B.     This Court Should Apply an Abbreviated FNC Framework Because the Parties Understood that Argentine Courts Would Have Exclusive Jurisdiction.**

This case should also be dismissed under the abbreviated FNC analysis prescribed by the Supreme Court in *Atlantic Marine*.  Argentina's exclusive jurisdiction provisions, much like a forum-selection clause, deserve "controlling weight."  571 U.S. at 63.  Indeed, just as courts decline to exercise their jurisdiction over claims subject to a forum-selection clause, they routinely find that they "cannot properly exercise jurisdiction over" claims that are subject to the exclusive jurisdiction of foreign courts.  *See, e.g.*, *Locals 302*, 2005 WL 2063852, at *3-4; *Elliott Assocs.* v. *Porsche Automobil Holding SE*, 759 F. Supp. 2d 469, 477 (S.D.N.Y. 2010).[6]

Argentine law concerning exclusive jurisdiction (described in the Prospectus) readily satisfies each of the elements under *Atlantic Marine* for enforcing a pre-selected forum:  it "was communicated to the resisting party"; "has mandatory force"; and "covers the claims and

---

dismiss. (Opp. 22.)  As a threshold matter, YPF has never moved to dismiss on FNC grounds, and neither Defendant has filed an FNC motion against Eton Park.  In any event, the Court granted Defendants leave to file this "renewed *forum non conveniens* motion."  (*Petersen* Dkt. 100.)  Where, as here, defendants file "a renewed motion with the Court's leave," the motion is *not* treated as one "for reconsideration."  *Malibu Media, LLC* v. *Doe*, 2015 WL 4271825, at *1 n.1 (S.D.N.Y. July 14, 2015).  Plaintiffs' contention that the Court is bound by the "law of the case" (Opp. 22), also misses the mark.  The doctrine is "discretionary," *Maraschiello* v. *City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013), and "does not control different factual situations or different parties," *Sawyer* v. *N.Y. State Dep't of Corr. Servs.*, 2015 WL 6641471, at *2 (W.D.N.Y. Oct. 28, 2015).

[6] Plaintiffs are wrong in claiming (Opp. 24 n.16) that the Court's analysis in *Locals 302* turned on the "merits" of the plaintiff's claim.  The Court dismissed there because, "where the CBCA specifically establishes exclusive jurisdiction over an action, that choice of forum must be respected."  2005 WL 2063852, at *3.  Further, the fact that the Court dismissed the case in *Locals 302* under Rule 12(b)(6) (as opposed to 12(b)(1)) is irrelevant.  *See Atl. Marine*, 571 U.S. at 61; *Evolution Online Sys.* v. *Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n.6 (2d Cir. 1998); *see also In re Libor Antitrust Litig.*, 2015 WL 6243526, at *35 n.59 (S.D.N.Y. Oct. 20, 2015) ("*Atlantic Marine* does not disturb Second Circuit precedent holding that a court may enforce a forum selection clause by granting a [12(b)(6)] motion to dismiss.").

parties involved in the dispute." *Arial Techs. LLC* v. *Aerophile S.A.*, 2015 WL 1501115, at *2 (S.D.N.Y. Mar. 31, 2015) (Preska, J.).

- *First*, the exclusive-jurisdiction provisions of Argentine law were communicated to Plaintiffs in the Prospectus (Paskin Decl. Ex. B at 90)—which Plaintiffs repeatedly plead they relied upon (*see* Petersen Compl. ¶¶ 2, 3, 11, 13, 15, 24-25, 41, 65, 83; Eton Park Compl. ¶¶ 4-6, 14, 16-18, 27-28, 40).   Plaintiffs thus "impliedly consent[ed] to be governed by the law of a corporation's state of incorporation when they purchase[d] stock in the company." *Locals 302*, 2005 WL 2063852, at *3 n.2;[7]

- *Second*, Argentine law states that Argentine courts have exclusive jurisdiction over corporate law claims, with respect to Argentine companies, and is mandatory.  (*See* Manóvil Reply ¶¶ 40-42; Cabanellas Reply ¶ 12);

- *Third*, Article 5 of the Argentine National Code of Civil and Commercial Procedure makes clear that Plaintiffs' claims—which are based on YPF's bylaws and are therefore a corporate relationship under Argentine law—are subject to the exclusive jurisdiction of Argentine courts.  (*See* Manóvil Reply ¶¶ 33-38; Cabanellas Reply ¶¶ 8-11).

As a consequence, Plaintiffs, sophisticated investors who knowingly invested in an Argentine corporation governed by Argentine law, accepted that their ordinary "venue privilege" would not apply here, and "whatever inconvenience the parties would suffer by being forced to litigate in the [pre-selected] forum . . . was clearly foreseeable." *Atl. Marine*, 571 U.S. at 63. Indeed, in light of the Prospectus language, litigation in Argentina was the only reasonable

---

[7] Plaintiffs miss the point in arguing that the "Exclusive Jurisdiction" section of the Prospectus does not effect a "waiver" of the right to sue in this forum, and that the Prospectus is not an "enforceable contract."  (Opp. 14.)  This issue here is not one of "waiver"; it is that the FNC analysis is fundamentally altered by the exclusive jurisdiction clause in the Prospectus and governing foreign law.  (*See* Br. 12, 14 n.16, 17-20.)  As discussed above, the rationale behind the *Atlantic Marine* streamlined FNC analysis applies here, not because the Prospectus is an enforceable contract between the parties, but because it "clearly communicated" the exclusive Argentine forum for disputes.

expectation.   Therefore, Plaintiffs' choice of forum based on supposed convenience grounds "merits no weight."  *Id.* at 63.

Plaintiffs are wrong in contending that this Court cannot dismiss on FNC grounds because *subject matter* jurisdiction exists under the FSIA.  (*See* Opp. 22-24.)  There is "nothing to suggest that the FSIA affects the federal judiciary's inherent power to decline jurisdiction over complex and inconvenient lawsuits brought in the United States."  *Monegasque de Reassurances S.A.M. (Monde Re)* v. *Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 381 (S.D.N.Y. 2001); *see Verlinden B.V.* v. *Cent. Bank of Nigeria*, 461 U.S. 480, 490 n.15 (1983) (The FSIA "does not appear to affect the traditional doctrine of *forum non conveniens*.").  This Court resolved, and Defendants do not dispute, the question of the Court's subject matter jurisdiction under the FSIA. Defendants do not ask the Court to reconsider that decision; rather, this Court should dismiss these Actions pursuant to its power to decline to exercise jurisdiction under settled FNC law.

## II.   IN ADDITION, PLAINTIFFS CANNOT EVADE DISMISSAL UNDER A TRADITIONAL FNC ANALYSIS.

### A.   Argentina Is the Only Adequate Forum for This Dispute.

As shown above, because governing Argentine law provides for exclusive jurisdiction in Argentine courts, Argentina is the only adequate forum as a matter of law.  In any event, the Court should reject Plaintiffs' speculative attacks on the adequacy of Argentina as a forum (*infra* Part A.1) and the independence of Argentina's judiciary (*infra* Part A.2).

#### 1.   Plaintiffs Cannot Belatedly Rely on a *Different* Argentine Criminal Investigation To Challenge the Adequacy of Argentina as a Forum.

Plaintiffs do not dispute that the *Teinver* investigation was dismissed years ago and cannot be revived.  (Br. 8, 20.)  Therefore, the "rare circumstances" on which this Court's September 2016 decision rested—"a well-founded fear of prosecution of parties' counsel if the

instant action were brought in Argentina"—are no longer present.  *Petersen I*, at *11.[8]  As a result, Plaintiffs pivot to invoke a *different* criminal investigation, which is focused on former YPF directors and shareholders and current and former government officials, but *not* Burford or its counsel.  (Opp. 1, 15-17.)  Nevertheless, Plaintiffs contend Argentina is "abusing the criminal process" by "commenc[ing]" "criminal proceedings in federal court" to gain a litigation advantage here—thereby engaging in "executive overreach of the worst form."  (Opp. 3, 8.)  These inflammatory claims are utterly baseless, and the record of the investigation directly contradicts them.[9]

Plaintiffs' "executive overreach" theory relates to an investigation that their own expert admits was commenced *in March 2006* with the filing of a *private* complaint ("*denuncia*")—not by the Argentine government—alleging wrongdoing at YPF.  (Freeland ¶ 16.)  Over the years, various related *denuncias* have been filed and assigned to the same judge (Judge Lijo).  (Langer ¶¶ 51, 53.)  Certain of the *denuncias* filed with Judge Lijo, dating back to 2012, have also alleged that Petersen engaged in wrongdoing in its dealings with former YPF directors and Argentine officials.  (*Id.* ¶¶ 61-64.)  None targets Burford or Plaintiffs' counsel.  (*Id.* ¶¶ 72-79.)

Plaintiffs claim that the Argentine *executive branch* is conducting this criminal investigation.  (*See* Opp. 1-2.)  That is false.  The investigation is in the hands of what Plaintiffs elsewhere acknowledge is Argentina's *independent* judiciary.  (Opp. 16 n.8.)  Indeed, Plaintiffs'

---

[8] Courts have not hesitated to revisit an earlier FNC determination when circumstances have changed.  (Br. 9.)  *See also In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 302 (S.D.N.Y. 2012) (granting renewed FNC motion after "federal securities law claims [were] dismissed and the parties have undertaken extensive discovery efforts in Europe"); *Alfadda* v. *Fenn*, 966 F. Supp. 1317, 1333-34 (S.D.N.Y. 1997) (granting renewed FNC motion when it "bec[a]me apparent" after discovery "that France would be a far more appropriate forum"); *Allstate Life Ins. Co.* v. *Linter Grp. Ltd.*, 1992 WL 398446, at *6 (S.D.N.Y. Dec. 21, 1992) (granting renewed FNC motion where "the balance of conveniences has shifted"), *aff'd*, 994 F.2d 996 (2d Cir. 1993).

[9] Contrary to Plaintiffs' assertions (Opp. 1), Defendants did not "misleadingly withhold from the Court" the existence of these criminal investigations.  Both parties addressed the ongoing investigations *before* Defendants filed their motion.  (*See Petersen* Dkt. 100 at 2; Dkt. 90 at 2.)

own expert concedes that executive officials have "no authority over federal prosecutors, and, it goes without saying, over federal judges." (Freeland ¶ 11.)  Further, Argentine law requires Judge Lijo to investigate the allegations of these *denuncias* (Langer ¶ 16), and Plaintiffs offer no evidence that Judge Lijo or those he is working with have engaged in any misconduct.  To the contrary, Petersen has appeared before Judge Lijo multiple times—requesting various types of relief, which Judge Lijo has granted—and Petersen never once questioned his independence or impartiality (Langer ¶¶ 49, 68), until now.[10]

In fact, Petersen *itself* filed a *denuncia* with Judge Lijo in July 2019, just days after its counsel appeared before this Court to discuss scheduling of the FNC motion, alleging that Argentine officials engaged in *criminal wrongdoing* in connection with defending the Republic in these very proceedings.  According to Petersen's *denuncia*, these officials committed crimes of misappropriation of government funds and breached their duties as public officials by making supposedly unfounded claims regarding the Petersen entities acquisition of YPF shares in defense of these Actions.  (Langer ¶ 70 & Ex. F.)  The *denuncia* specifically names a lawyer for the Republic who attended the July 11, 2019 hearing and requests documents and disclosure of fees and expenses related to the litigation.  (*Id.*)  Plaintiffs cannot credibly claim that they have a legitimate "fear" of an investigation they are actively participating in and seeking to shape.

To try to substantiate their purported "fear" of this longstanding criminal investigation, Plaintiffs rely on the speculative declaration of their expert.[11]  But Professor

---

[10] Plaintiffs' expert lodges various complaints concerning the *denuncia* system as a whole, because it "allows individuals to present any number of allegations, regardless of their merit, as potentially criminal in nature." (Freeland ¶ 8.)  There are countervailing benefits to the system.  (*See* Langer ¶ 57.)  Regardless, Professor Freeland's views on this feature of Argentine criminal law (a feature shared by many other civil law countries, *see id.* ¶ 19, are irrelevant to the FNC analysis, and contrary to the principles of international comity that courts regularly rely on in FNC decisions. *Sussman* v. *Bank of Israel*, 801 F. Supp. 1068, 1078 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993).

[11] Freeland ¶ 4 ("I find it very difficult to believe that Argentine authorities at the highest level of government have been unaware of this active investigation."); *id.* ¶ 9 (that certain *denuncias* were

Freeland concedes that he did not review the complete criminal files, was not "privy to all the details of the investigation," and only reviewed those materials selected by Plaintiffs' counsel. (Freeland ¶¶ 2, 14; Opp. 15.)  There is no apparent reason Professor Freeland's review was so circumscribed:  Petersen requested complete access to the files on November 15, 2018; Judge Lijo gave Petersen access on November 27, 2018; and Petersen took copies of the case files on December 18, 2018—a year before Professor Freeland filed his declaration—and on August 5, 2019.  (Langer ¶ 49.)

As explained in Professor Langer's declaration, the investigative files show no evidence of any improper conduct by Argentine executive or judicial officials, or by YPF.  (*Id.* ¶¶ 45, 55-58; *see also* G. de Urquieta ¶ 7.)  The files also flatly contradict the claims Plaintiffs and their experts are making here concerning "executive overreach."[12]  Specifically, the files show that:

- the investigation is focused on the conduct and responsibilities of certain current and former government officials and various former YPF shareholders and directors (Langer ¶¶ 50-53);

- neither Burford, nor King & Spalding, nor the Spanish bankruptcy receiver are under investigation (*id.* ¶¶ 73-77);

- Judge Lijo's February 2019 letter rogatory was not an "alarming development" (Opp. 1), let alone an attempt to harass Plaintiffs here—rather, it was an ordinary course request for documents (*id.* ¶ 83).  As the file itself shows, the letter rogatory

---

filed by politicians "is a strong indication that there are political implications to the investigation"); *id.* ¶ 10 ("[J]udges are susceptible to significant pressure from the Executive and Legislative Branches.").

[12] Argentine law does not allow informal investigative techniques (like FBI interviews), and thus every aspect is memorialized in the investigative file.  (Langer ¶ 48.)

requested information related to Burford and any litigation funding agreements—an issue previously raised in a *denuncia* filed in July 2015 by a political activist.

In short, there is no evidence supporting Plaintiffs' bald contention that the longstanding YPF-related investigation is "being driven by Defendants' concern about this U.S. litigation." (Opp. 17.)[13] The fact that there is an ongoing criminal investigation into alleged wrongdoing, without more, does not render Argentina an inadequate forum. *See RIGroup LLC* v. *Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 554 (S.D.N.Y. 2013) ("The pending investigation of [Plaintiff], however, is not a basis for retaining jurisdiction over this lawsuit."), *aff'd*, 559 F. App'x 58 (2d Cir. 2014). As Professor Langer explains, the investigation has not gone beyond the preliminary phase (Langer ¶¶ 18, 20-21, 99), and Petersen is actively availing itself of the procedural rights to which it is entitled under Argentine law (*id.* ¶¶ 56, 68, 96), which provides Petersen a robust system of safeguards. *Cf. RIGroup*, 949 F. Supp. 2d at 554.

### 2. The Court Should Reject Plaintiffs' Conclusory Attacks on the Impartiality of the Argentine Judiciary.

Plaintiffs claim that Argentina is an inadequate alternative forum because the political party of former President Cristina Fernández is now back in power. (*See* Opp. 17-20; Bianchi & Naveira ("B&N") ¶¶ 6-56.)[14] But as this Court previously recognized, "Plaintiffs' concerns regarding . . . judicial independence have not prevented other courts from finding Argentina an adequate forum." *Petersen I*, at \*11. Plaintiffs cannot wholesale designate Argentina as an inadequate forum simply because they dislike its democratically elected officials. *See, e.g., Warter* v. *Boston Secs. S.A.*, 380 F. Supp. 2d 1299, 1310-11 (S.D. Fla. 2004) (rejecting allegations of corruption against Argentina's judiciary); *see also Blanco* v. *Banco Indus. de Venezuela, S.A.*,

---

[13] Defendants' filings in Spain—which challenge the enforceability of the Prospect (Burford's subsidary) - Petersen Claims Prosecution Agreement under Spanish law—are not grounds for Plaintiffs' professed fears. Those civil actions are being litigated in Spanish courts, whose independence and impartiality have not been challenged by Plaintiffs, and are subject to the jurisdiction of those courts. (*See Petersen* Dkt. 27 Ex. 17.)

[14] In fact, the current government is composed of a coalition of various political parties. (Santiago Reply ¶ 25-A.)

997 F.2d 974, 982 (2d Cir. 1993) ("[W]e have repeatedly emphasized that 'it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.'").  In fact, the Second Circuit has consistently refused to "pass value judgments on the adequacy of justice and the integrity of another sovereign state's judicial system on the basis of no more than bare denunciations and sweeping generalizations." *Monegasque*, 158 F. Supp. 2d at 384-85; *Sussman,* 801 F. Supp. at 1076-78 (same).

Plaintiffs also make broad, conclusory claims about the impartiality of the Argentine judiciary as a whole—*tracing back to 1865*.  (*See* Opp. 17-20; *e.g.*, B&N ¶¶ 6-13, 49-52.)  But Professor Santiago—who Plaintiffs' experts concede "is a leading Constitutional Law professor and well respected scholar in Argentina" (*id.* ¶ 57)—explains that "Argentina has an independent legal system capable of fairly and impartially adjudicating disputes between private litigants, including foreigners, and the Argentine State" (Santiago ¶ 7).  Courts routinely enforce Argentina's system of checks and balances—modeled on the U.S. Constitution—and regularly rule against the executive branch.  (Cabanellas Reply ¶¶ 37, 38 nn.14-15, 40.)  "[T]he fact that the Argentine judicial branch has significant challenges ahead of it for improving its institutional quality in no way prevents it from hearing and independently and impartially deciding complex judicial matters such as the instant matter."  (Santiago Reply ¶ 17.)  Nor do the statements of government officials (Opp. at 17-20) help Plaintiffs; those statements, taken in context, do not come close to showing the inability of Argentine courts to resolve cases of this nature.  (Santiago Reply ¶¶ 17, 28-39; Cabanellas Reply ¶¶ 38-40.)  In sum, as courts have previously recognized, Plaintiffs' conclusory attacks fall far short of the "rare" circumstances that lead a court to "hold that another country's judicial system is inadequate."  *See PT United Can Co.* v. *Crown Cork & Seal*, 138 F.3d 65, 73 (2d Cir. 1998); *Blanco*, 997 F.2d at 982 ("[I]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.").

Likewise, Plaintiffs' supposed "fundamental concerns" (Opp. 20, n.13) about "Argentine filing fees, the lack of discovery in Argentine courts, and their fear of delays in the

Argentine courts do not render Argentina an inadequate forum." *See Petersen I*, at *11. Nor does the fact that Argentina is a named party to this litigation change the FNC analysis. *See Engage Aviation, LLC* v. *Argentina*, 2017 WL 7355306, at *3 (M.D. Fla. Dec. 18, 2017) (Argentina was an adequate forum even though its executive branch was a party); *Monegaque de Reassurances S.A.M.* v. *Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) ("It is hardly unusual . . . for a finding of [FNC] to be made in favor of the forum of a state whose entity is a party litigant.").

### 3.   The Possibility that Certain of Plaintiffs' Claims May Be Untimely Is No Basis To Deny Defendants' FNC Motion.

Plaintiffs claim that, because Defendants' Answers raise the timeliness of certain of Plaintiffs' claims as an affirmative defense, they can stay in this Court. (Opp. 21.) This is wrong, for two reasons. *First*, given Argentina's exclusive jurisdiction (described in the plain language of the "exclusive jurisdiction" section of YPF's Prospectus), *see supra* Section I, the lapse of any applicable limitations period is not a basis to deny this FNC motion. *See Martinez* v. *Bloomberg LP*, 883 F. Supp. 2d 511, 521 (S.D.N.Y. 2012) ("[C]ourts have consistently held that a forum selection clause is enforceable even if, as may be the case here, the applicable statute of limitations has run in the relevant forum."); *Am. Home Assur. Co.* v. *M/V JAAMI*, 2007 WL 1040347, at *3 (S.D.N.Y. Apr. 4, 2007) (collecting cases). Any other rule would "create a large loophole for the party seeking to avoid enforcement of the forum selection clause [which could] simply postpone its cause of action until the statute of limitations has run in the chosen forum and then file its action in a more convenient forum." *Starkey* v. *Gap Adventures, Inc.*, 2014 WL 1271233, at *4 (S.D.N.Y. Mar. 27, 2014).

*Second*, where the applicable limitations period is part of *substantive* Argentine law, that period will apply regardless of the forum and thus have no impact on an FNC analysis. *Bournias* v. *Atl. Maritime Co.*, 220 F.2d 152, 155-56 (2d Cir. 1955) (A foreign forum's statute of limitations applies in a U.S. court if the limitation period was "directed to the newly created liability so specifically as to warrant saying that it qualified the right."); *Rogers* v. *Petroleo Brasileiro, S.A.*, 741 F. Supp. 2d 492, 510 n.14 (S.D.N.Y. 2010) ("[W]here the foreign statute of

limitations is regarded as barring the foreign right sued upon, and not merely the remedy, it will be treated as conditioning that right and will be enforced . . . as part of the foreign 'substantive' law."), *rev'd on other grounds*, 673 F.3d 131 (2d Cir. 2012).  While Defendants are not responsible for trying to conjure up appropriate theories under which Plaintiffs may have viable claims under Argentine law, the three-month limitations period governing claims seeking to enforce the penalty set forth in Section 7(h) of YPF's bylaws is a substantive Argentine law that will apply whether the case proceeds in New York or Argentina.  (*See* Manóvil Reply ¶ 54; Cabanellas Reply ¶¶ 18 n.7, 21.)  This period is part of the corporate law statute that provides for enforcing bylaw rights and is closely related to those rights.  (Article 251 of Argentine Gen. Corp. Law; Manóvil Reply ¶ 54; Cabanellas Reply ¶ 21.)  Plaintiffs' assertion that choice-of-law rules would apply New York's limitations period (Opp. 21) is therefore wrong.

### B.     The Court Should Afford No Deference to Plaintiffs' Choice of This Forum.

Plaintiffs do not claim that the *Petersen* plaintiffs' choice of forum should be given meaningful deference.  (*See* Opp. 11-14.)  Instead, Plaintiffs try to hang their hat on Eton Park's choice of this forum because Eton Park Capital Management ("EPCM") once operated in New York.  (*Id.* at 11.)  But EPCM, which acted only as an *investment adviser* and never bought a single share of YPF (*see* Br. 11; *Eton Park* Compl. ¶¶ 9, 30), does not even have standing to bring these claims. *See W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008) (investment advisor lacks Article III standing "because it does not have legal title or ownership of its clients' claims").  (*See* Opp. 5, 11-12.)[15]  And even if EPCM could overcome its standing deficiency (it cannot),[16] its choice to sue in this forum should be accorded no deference

---

[15] Plaintiffs' reliance on *HSBC* and *Bloomberg* (Opp. 11-12) is misguided.  There, the New York plaintiffs were parties to the contracts underlying those lawsuits.  *See HSBC USA, Inc.* v. *Prosegur Paraguay, S.A.*, 2004 WL 2210283, at *1-2 (S.D.N.Y. Sept. 30, 2004); *Bloomberg Fin. L.P.* v. *UBS AG*, 358 F. Supp. 3d 261, 265 (S.D.N.Y. 2018).  EPCM is not (and has never been) a party to YPF's bylaws because it never owned or held a proprietary interest in the YPF shares.

[16]  Because the scope of this motion is directed at FNC dismissal, Defendants do not presently seek dismissal of EPCM for lack of standing but reserve the right to do so on a later motion.

because the real parties in interest in this litigation are *all* foreign.  *See Online Payment Sols. Inc.* v. *Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 381 (S.D.N.Y. 2009) ("The presumption in favor of [plaintiff's] choice of forum is weakened, despite the fact that [plaintiff] is a New York corporation, because the real party in interest is . . . a foreign corporation.").

Indeed, no Eton Park entity (or Petersen for that matter) has any meaningful connection to the Southern District: the Eton Park funds, which did buy YPF shares, are being wound down (Opp. 11 n.5), and the management arm is no longer registered with the SEC.[17]  *See Wave Studio, LLC* v. *Gen. Hotel Mgmt.*, 712 F. App'x 88, 90 (2d Cir. 2018) (affirming dismissal where there were no "meaningful connections between Plaintiff and [S.D.N.Y.]"); *Heritage Lace* v. *Underwraps Costume*, 2019 WL 3858585, at *8 (S.D.N.Y. Aug. 16, 2019) (according less deference where plaintiff did not allege "ongoing business activity").[18]  Eton Park has no witnesses or documentary evidence in this District—undermining any claim to a "presumption of convenience." *Palacios* v. *The Coca-Cola Co.*, 757 F. Supp. 2d 347, 352 (S.D.N.Y. 2010).  To the contrary, the selection of this forum plainly had nothing to do with matters of convenience; Plaintiffs are represented by the same counsel, and Eton Park filed a nearly identical complaint after the Court's 2016 decision on Defendants' motion to dismiss in *Petersen*.  "[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands." *Optimal*, 886 F. Supp. 2d at 303; *Iragorri*, 274 F.3d at 72 (same).

That Plaintiffs are sophisticated entities that sought a business relationship with an Argentine corporation further counsels against giving any deference to their choice of forum.  *See*

---

[17] *See Investment Adviser Firm Summary*, U.S. SECURITIES AND EXCHANGE COMMISSION (last visited Feb. 7, 2020), www.adviserinfo.sec.gov/Firm/156930; Matthew Goldstein, *Eton Park to Shut Down as $3 Trillion Hedge Fund Industry Faces Turmoil*, N.Y. TIMES (Mar. 23, 2017), https://www.nytimes.com/2017/03/23/business/dealbook/eton-park-hedge-fund-closes.html.

[18] These cases make clear that Plaintiffs' assertion that they need not establish a *bona fide* connection to New York because ECPM is in its "home forum" (Opp. 13) is erroneous.

*Giro, Inc.* v. *Malaysian Airline Sys. Berhad*, 2011 WL 2183171, at *7 (S.D.N.Y. June 3, 2011) ("little deference" to Oklahoma corporations that sued in New York for claims arising out of a business relationship with a Malaysian corporation because plaintiffs "had an expectation" of litigating abroad). The analysis is no different with respect to Eton Park Fund, a corporation registered in Delaware. (Opp. 12-13.) The presumptive validity of a U.S. citizen's choice of a U.S. forum applies *only* when "plaintiffs ha[ve] not sought out the relationship that resulted in the suit." *Carey* v. *Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004) (little deference to the selected forum because the plaintiff, a U.S. resident, had "voluntarily" entered into the business relationship giving rise to the suit). As in *Carey*, Eton Park Fund voluntarily sought out the relationship that resulted in this suit by purchasing shares of an *Argentine* corporation.

### C.    All of the Public Interest Factors Support Dismissal.

The public interest factors overwhelmingly favor FNC dismissal. (Br. 24-33.) Plaintiffs' claim that the public interest factors weigh in their favor because the Eton Park investment funds bought shares in the U.S. ignores a critical fact: unlike in all of their cases (Opp. 28-29),[19] Plaintiffs were specifically told that their claims would be adjudicated in Argentina pursuant to Argentine law. Nor have Plaintiffs raised "straightforward breach-of-contract claims based on undisputed facts." (Opp. 2.) As the evidence in the record makes clear, and in light of Defendants' affirmative defenses—which were not before the Court at the time of its September 2016 decision—adjudicating Plaintiffs' claims will require this Court to rule on important questions of Argentine law, among them:

- whether, pursuant to Article 5, Section 11 of the Argentine National Code of Civil and Commercial Procedure, Plaintiffs can circumvent Argentina's single-forum

---

[19] Plaintiffs' cases do not support retaining this case on grounds of public interest. For example, as *Cyberscan Tech., Inc.* v. *Sema Ltd.*, 2006 WL 3690651, at *13 (S.D.N.Y. Dec. 13, 2006), cited by Plaintiffs (Opp. 28), expressly recognizes, "[t]he fact that a case involves American securities markets does not automatically bar a dismissal on the grounds of *forum non conveniens*."

rule governing all corporate claims simply by pleading them as breach-of-contract claims (*see* Etchegorry ¶ 8(a); *compare* Manóvil Reply ¶¶ 3, 5-11, *and* Cabanellas ¶¶ 5-9 *with* Garro ¶¶ 24-31);

- whether the Argentine General Corporations Law, or any other provision of Argentine law, allows a shareholder to bring a breach of contract claim against another shareholder for alleged violations of corporate bylaws (*see* Etchegorry ¶ 8(d); *compare* Manóvil ¶¶ 15-18, 42, *and* Manóvil Reply ¶ 43 *with* Garro ¶ 39);

- whether Argentine law allows a claim for damages, given that Section 7(h) of YPF's bylaws does not provide for such a remedy (*see* Etchegorry ¶ 8(i); *compare* Manóvil ¶ 42, *and* Manóvil Reply ¶¶ 43-57 *with* Garro ¶ 47 n.65);

- what rights, if any, do former shareholders like Petersen and Eton Park have under Article 251 of the Argentine General Corporations Law where they did not challenge the relevant shareholder meeting's resolution and vote against the resolution (*compare* Manóvil ¶¶ 35-41, Manóvil Reply ¶¶ 54-55, *and* Cabanellas ¶¶ 18, 22(i)-(ii) *with* Garro ¶ 29, *and* Rovira ¶¶ 36-37);

- whether Argentine law recognizes a guarantor theory of liability to impose obligations on YPF beyond those expressly articulated in the bylaws (*compare* Cabanellas ¶¶ 22(i)(1), 22(v)(1), *and* Cabanellas Reply ¶ 33 *with* Rovira ¶ 39);

- whether, under Article 17 of the Argentine Constitution, Petersen has standing to sue when it was not a shareholder as of May 8, 2014, the date Repsol's settlement agreement with Argentina became effective (*see* Etchegorry ¶ 8(b); *compare* Santiago ¶ 26 *with* Garro ¶ 47 nn. 65-66); and

- whether, pursuant to Section 7(d) of the bylaws and CNV General Resolution No. 622/2013 and its predecessor, Argentina became a controlling shareholder and was thereby exempt from the bylaws' tender offer requirements (*see* Etchegorry ¶ 8(e); Santiago ¶ 26).

The need to decide these important questions of Argentine constitutional, public and corporate law warrant FNC dismissal where, as here, experts disagree on several key issues of

Argentine law.[20]   The "interest in having foreign tribunals apply foreign law," coupled with Argentina's compelling interest in adjudicating issues touching on the balance between public acts and private law, "tilts strongly in defendants' favor."  *CCS Int'l, Ltd.,* 1998 WL 512951, at *12-13.

### D.   The Private Interest Factors Strongly Favor FNC Dismissal.

Plaintiffs cannot tilt the private interest factors against dismissal.  *First*, the public interest factors, such as the complexity of interpreting a sovereign's laws, apply with equal force to this Court's analysis of the private interest factors where the sovereign is a party to the action. *Second*, in claiming that "the facts establishing [their] claim are effectively undisputed" (Opp. 29), Plaintiffs ignore the key factual issues that will need to be resolved at trial, based on the testimony of *Argentine* witnesses (*see* Br. 22-23; Etchegorry ¶¶ 11-19).  For example, the *Petersen* Plaintiffs inexplicably did not mitigate any purported damages they may have suffered by seeking coverage under the complete indemnity to which they were entitled by virtue of their shareholder agreement with Repsol.  (*See* Br. 13 n.3.)  This defense is a prime example of a disputed fact that should be resolved in Argentina.[21]   *Finally*, while "modern technologies" may make the location of witnesses and evidence less important to a FNC analysis (Opp. 32), here, virtually every potential witness identified by the parties is located *in Argentina*.

---

[20] *See Schertenleib* v. *Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) ("conflicting expert evidence on numerous questions of Swiss law" counsels against U.S. forum); *LaSala* v. *UBS, AG*, 510 F. Supp. 2d 213, 233 (S.D.N.Y. Aug. 15, 2007) ("It is inadvisable for this Court to decide a case where legal experts disagree about critical points in the application of the foreign law.").

[21] Members of the Eskenazi family (owners of the Petersen entities during the alleged breach of the bylaws) are non-parties to these Actions, are located in Argentina, are the only ones who can speak to the steps (if any) the Petersen Plaintiffs took to mitigate damages at the time of the alleged breach and are the only ones who can provide context to determine whether such steps (or lack thereof) were reasonable at the time of the alleged breach.

# CONCLUSION

In light of the plain language of the Prospectus and settled Argentine law requiring that this case be heard in Argentina, the Court should dismiss this case on grounds of FNC.

Dated:  February 7, 2020
       New York, New York

Respectfully submitted,

/s/ Robert J. Giuffra, Jr._____
Robert J. Giuffra, Jr.
Sergio J. Galvis
Joseph E. Neuhaus
Thomas C. White
Elizabeth A. Cassady

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:      (212) 558-4000
Facsimile:      (212) 558-3588

Scott D. Musoff
Boris Bershteyn
Jennifer Permesly
Michael D. Moritz

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York  10036
Telephone:      (212) 735-3000
Facsimile:      (212) 735-2000

*Counsel for The Republic of Argentina*

/s/ Michael A. Paskin_____
Michael A. Paskin
Damaris Hernández

CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York  10019
Telephone:      (212) 474-1000
Facsimile:      (212) 474-3700

*Counsel for YPF S.A.*