# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

September 24, 2020

Via ECF

The Honorable Loretta A. Preska,
　United States District for the Southern District of New York,
　　500 Pearl Street,
　　　New York, NY 10007.

　　　Re:　*Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Management, L.P. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

　　　Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), Defendants the Argentine Republic ("Argentina" or the "Republic") and YPF S.A. ("YPF," and together with the Republic, "Defendants") respectfully request that the Court enter the attached proposed orders (attached hereto as Exhibits 1 and 2) requesting the assistance of the Argentine courts in obtaining documents and testimony from Enrique Eskenazi, Sebastián Eskenazi, Matías Eskenazi Storey, and Ezequiel Eskenazi Storey (the "Eskenazi Family").[1]

　　　As discussed more fully below, the members of the Eskenazi Family are central witnesses in this case. Defendants recently learned from Plaintiffs that they do not have (and thus will not be producing) documents or communications involving the Eskenazi Family for the key periods at issue in this litigation, and that they are unable to

---

[1] In order to facilitate processing under Argentine procedures, we are requesting separate letters of request for documents and for testimony. We also understand that, under Argentine procedural rules, the list of questions for testimonial evidence is not disclosed to the witness in advance. In order to prevent disclosure to the witnesses, Defendants respectfully propose to attach the questions to the letter of request before transmitting the request to the Argentine central authority. If Your Honor wishes to review the questions, Defendants would request the opportunity to submit them for in camera review.

The Honorable Loretta A. Preska                                                                                                                  -2-

produce them for depositions. Thus, Defendants must rely on the Hague Convention procedures to obtain this evidence. Plaintiffs do not oppose this request.

## BACKGROUND

The Eskenazis were the owners of Plaintiffs Petersen Energía Inversora S.A.U. ("PEISA") and Petersen Energía S.A.U. ("PESA" and together with PEISA, "Petersen") prior to these entities entering liquidation. (*See Petersen* Compl. ¶ 36 (describing Sebastián Eskenazi as a "part owner of Petersen"); *Petersen* ECF No. 27-10 (May 2011 Stock Purchase Agreement) at 4 (Petersen Energía S.A.U. is "a company fully held by the Eskenazi Family").) In 2008, the Eskenazi Family, who are Argentine citizens and owners of banking and construction businesses, sought to expand their financial empire by acquiring ownership of YPF. They formed a Spanish company, PESA, which was wholly owned by another Spanish company, PEISA, to purchase their stake in YPF. After Petersen acquired its stake in YPF, Sebastián Eskenazi was installed as YPF's CEO. (*Petersen* Compl. ¶ 36.)

Petersen claims it relied on the YPF Bylaws when it made its decision to invest in YPF. (*See Petersen* Compl. ¶ 29.) Defendants dispute this allegation and intend to test it. (*See* Argentina's Answer & Affirmative Defenses ¶ 29, *Petersen* ECF No. 98; YPF's Answer & Affirmative Defenses ¶ 29, *Petersen* ECF No. 99.) At the time of Petersen's acquisition of YPF shares in 2008, there were numerous press reports that the Republic might renationalize YPF. Petersen ultimately acquired its shares, following a "beauty contest" for the sale of YPF, through a series of private agreements with Repsol—as opposed to acquiring them on the open market. (*See Petersen* Compl. ¶¶ 6, 28, 30.) But Petersen borrowed virtually all of the amount it paid to acquire its stake and was highly dependent on an enormous dividend from YPF to maintain its solvency. (*See Petersen* Compl. ¶ 6); *see also Petersen Energia Inversora S.A.U.* v. *Argentine Republic & YPF S.A.*, 895 F.3d 194, 201 (2d Cir. 2018) ("Petersen often used . . . dividends to make payments on the loans it used to finance the purchase of YPF stock.").

Petersen also negotiated for and obtained a robust indemnity from Repsol. In a "Supplemental Agreement" signed the day Petersen acquired its shares, the parties agreed that if, within five years, Repsol did not (i) maintain ownership of at least 50.01% of the capital stock of YPF or (ii) perform the acts required to approve the bi-annual distribution of 90% of YPF's profits, Repsol would, among other things, buy back the shares and repay the loans Petersen had taken out to acquire them. (Ex. 1 (Feb. 2008 Supplemental Agreement) § 2.)

After the Republic, by an Act of Congress, temporarily occupied Repsol's shares of YPF in 2012 and YPF ceased paying the huge dividend Repsol and Petersen had agreed to, Petersen defaulted on its loans and declared bankruptcy in Spain. (*See Petersen* Compl. ¶¶ 41-42, 46.) As far as the record now reflects, however, Petersen did not attempt

to enforce the indemnification provision in its 2008 agreement with Repsol. Defendants are entitled to explore why this is the case.

As the "owner[s] of Petersen" (*Petersen* Compl. ¶ 36) during the most relevant time periods here, members of the Eskenazi Family are thus central to this litigation. Plaintiffs informed Defendants on August 27, 2020 that they would not produce the Eskenazi Family for depositions by notice because they "do not control them" and "do not represent them." (Ex. 2.) On September 9, Plaintiffs informed Defendants that they were not in possession of the Eskenazi Family's documents and communications. On September 10, Plaintiffs informed Defendants that they would not oppose this Hague Convention application.

## ARGUMENT

Under the Hague Convention, United States courts may "request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." *See Villella* v. *Chem. & Mining Co. of Chile Inc.*, 2018 WL 2958361, at *2 (S.D.N.Y. June 13, 2018) (Ramos, J.) (quoting Hague Convention, Chapter I, Article 1, reprinted at 28 U.S.C. § 1781); *see also* Fed. R. Civ. P. 28 (b)(1)(A) ("A deposition may be taken in a foreign country under an applicable treaty or convention"). A party seeking evidence through the Hague Convention must "demonstrate[e] that proceeding in that manner is 'necessary and appropriate.'" *Metso Minerals Inc.* v. *Powerscreen Int'l Distribution Ltd.*, 2007 WL 1875560, at *3 (E.D.N.Y. June 25, 2007) (Boyle, J.). "That burden is not great, however, since the [Hague] 'Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention.'" *Id.* (quoting *Societe Nationale Industrielle Aérospatiale* v. *U.S. Dist. Ct. S. Dist. Iowa*, 482 U.S. 522, 541 (1987)); *see Villella*, 2018 WL 2958361, at *3 (explaining the burden "is not a heavy one").

Letters of request under the Hague Convention are an "appropriate mechanism" to obtain evidence from witnesses who cannot be compelled to appear in a United States court. *Elliott Assocs.* v. *Republic of Peru*, 1997 WL 436493, at *2 (S.D.N.Y. Aug. 1, 1997) (Sweet, J.) (citing *Aerospatiale*, 482 U.S. at 541); *see also Lantheus Med. Imaging, Inc.* v. *Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 781 (S.D.N.Y. 2012) (Cott, J.). Where, as here, members of the Eskenazi Family are not U.S. citizens, not parties to this action, and apparently not otherwise subject to the jurisdiction of this Court, letters of request under the Hague Convention "may be the only means" by which the requested evidence may be obtained. *See Metso Minerals Inc.*, 2007 WL 1875560, at *3.

In considering an application for issuance of letters of request, U.S. courts apply "the relevance standards of Rule 26 of the Federal Rules of Civil Procedure." *Blagman* v. *Apple, Inc.*, 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014) (Francis, J.). Thus, courts "routinely" issue letters of request upon a reasonable showing that the evidence sought may be relevant. *See, e.g.*, *Netherby Ltd.* v. *Jones Apparel Grp., Inc.*,

The Honorable Loretta A. Preska                                                                                     -4-

2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005) (Lynch, J.) (granting request for letters of request for assistance from Canadian courts where the request "may uncover relevant evidence"); *FDIC* v. *Even Int'l Corp.*, 1992 WL 35927, at *2 (S.D.N.Y. Feb. 20, 1992) (Keenan, J.) (granting application for issuance of letters of request "to obtain documentary evidence from *Banco Central de la Republica Argentina* [Central Bank of Argentina]").

Here, the documents and deposition testimony that Defendants seek from the Eskenazi Family are highly relevant to the claims and defenses in this matter.  Indeed, the Eskenazi Family are central witnesses in this case.

*First*, evidence from the Eskenazi Family is relevant to Defendants' mitigation of damages defense.  (*See* Argentina's Answer & Affirmative Defenses at pp. 23-26, 32-33, *Petersen* ECF No. 98.)  For example, Petersen's agreement with Repsol guaranteed Petersen complete indemnification (Ex. 1 (Feb. 2008 Supplemental Agreement) § 2), but Petersen appears to have never sought to invoke that indemnity.  Members of the Eskenazi Family are singularly positioned to provide evidence on this issue and assist the Court in evaluating Defendants' mitigation of damages defense.

*Second*, the evidence sought from the Eskenazi Family is relevant to Petersen's understanding of and reliance on YPF's Bylaws, and to Petersen's acquisition of YPF shares more generally.  *See Petersen Energía Inversora, S.A.U.* v. *Argentine Republic*, 2016 WL 4735367, at *1 (S.D.N.Y. Sept. 9, 2016) (Preska, J.) ("Particularly relevant to the instant action are Sections 7 and 28 of the Bylaws.").  Specifically, despite obtaining its YPF shares in private transactions with Repsol, Petersen alleges that it relied on the tender offer provisions of the Bylaws.  (*See Petersen* Compl. ¶¶ 27-30 ("Petersen made its decisions to invest in YPF in justifiable reliance on the representations and promises that Argentina and YPF made regarding the launching of a tender offer in the event Argentina were to decide to renationalize YPF.").)  The Republic is entitled to test these factual allegations through evidence from the Eskenazi Family concerning the bases for Petersen's acquisition of YPF shares.

*Third*, members of the Eskenazi Family are fact witnesses who possess evidence concerning the intervention and expropriation of YPF as well as the Republic's alleged "campaign to devalue" YPF's shares.  (*Petersen* Compl. ¶¶ 31-34.)  Sebastián Eskenazi was YPF's CEO at the time and Petersen alleges that the Republic replaced Sebastián Eskenazi and other members of YPF's management.  (*Petersen* Compl. ¶ 36.)

Further, the Eskenazi Family, as the former owners of Petersen, possess evidence that is relevant to Defendants' standing defense.  The Spanish bankruptcy receiver executed an agreement on behalf of Petersen with Prospect Investments LLC ("Prospect"), a wholly owned subsidiary of Burford Capital, pursuant to which Prospect acquired complete control over this litigation.  (*See Petersen* ECF No. 27-17, *Petersen* Compl. ¶ 47.)  Documents surrounding this transaction refer to it as a "sale" or "acqui[sition]."  Evidence

The Honorable Loretta A. Preska                                                                                          -5-

from the Eskenazi Family is relevant to whether Petersen is in fact the owner of the claim that it purports to prosecute.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion for Issuance of Letters of Request.

Dated:   September 24, 2020
              New York, New York

Respectfully submitted,

| /s/ *Robert J. Giuffra, Jr.* | /s/ *Michael A. Paskin* |
|---|---|
| Robert J. Giuffra, Jr. | Michael A. Paskin |
| Sergio J. Galvis | Damaris Hernández |
| Joseph E. Neuhaus | Cravath, Swaine & Moore LLP |
| Thomas C. White | 825 Eighth Avenue |
| Elizabeth A. Cassady | New York, NY 10019-7475 |
| Jason E. Kornmehl | |
| Sullivan & Cromwell LLP | *Counsel for YPF S.A.* |
| 125 Broad Street | |
| New York, NY 10004-2498 | |

*Counsel for Argentine Republic*

cc:       Counsel of Record