# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

JOHN W. WHITE
EVAN R. CHESLER
RICHARD W. CLARY
STEPHEN L. GORDON
ROBERT H. BARON
DAVID MERCADO
CHRISTINE A. VARNEY
PETER T. BARBUR
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
PHILIP J. BOECKMAN
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO

KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
JOHNNY G. SKUMPIJA
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
KENNETH C. HALCOM
DAVID M. STUART
AARON M. GRUBER
O. KEITH HALLAM, III
OMID H. NASAB
DAMARIS HERNÁNDEZ
JONATHAN J. KATZ
RORY A. LERARIS
KARA L. MUNGOVAN
MARGARET T. SEGALL

NICHOLAS A. DORSEY
ANDREW C. ELKEN
JENNY HOCHENBERG
VANESSA A. LAVELY
G.J. LIGELIS JR.
MICHAEL E. MARIANI
LAUREN R. KENNEDY
SASHA ROSENTHAL-LARREA
ALLISON M. WEIN
MICHAEL P. ADDIS
JUSTIN C. CLARKE
SHARONMOYEE GOSWAMI
C. DANIEL HAAREN
EVAN MEHRAN NORRIS
LAUREN M. ROSENBERG

SPECIAL COUNSEL
SAMUEL C. BUTLER

OF COUNSEL
MICHAEL L. SCHLER
CHRISTOPHER J. KELLY

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1760
+1-212-474-1486

WRITER'S EMAIL ADDRESS
mpaskin@cravath.com
dhernandez@cravath.com

October 2, 2020

*Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. v.*
*Argentine Republic and YPF S.A.*, 15 Civ. 02739 (LAP)

Dear Judge Preska:

Pursuant to Rule 2.A of Your Honor's Individual Practices, Defendant YPF S.A. ("YPF" or "Defendant") respectfully requests a pre-motion conference concerning its request for the issuance of a letter rogatory, attached hereto as Exhibit A, requesting assistance of the Argentine courts in obtaining documents from Repsol, S.A. ("Repsol"), pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), 28 U.S.C. § 1781, and Federal Rule of Civil Procedure 26(b). Alternatively, Defendant requests that the Court treat this letter as its motion and issue the letter of request without first holding a conference.

Defendant understands that Repsol is in possession of key documents regarding Plaintiffs' purchase of its YPF shares and subsequent event of default. Because Repsol is not a party to this litigation, and is headquartered and maintains its principal place of business in Madrid, Spain, Defendant must rely on the Hague Convention to obtain this evidence. Plaintiffs confirmed that they do not oppose this request.

## BACKGROUND

Repsol was the majority shareholder of YPF from 1999 until the renationalization of YPF. In February 2008, Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (together, "Petersen" or "Plaintiffs") purchased from Repsol a 14.9% ownership stake in YPF for $2.235 billion. (Compl. ¶ 28, ECF No. ; Argentina's Mot. to Dismiss at 4, ECF No. 28.) Petersen borrowed virtually all of the amount it paid to acquire its stake, including a loan from Repsol in the amount of $1.026 billion. (Feb. 21, 2008 Seller Credit Agmt. at 1, Ex. B.) Upon information and belief, Petersen's decision to purchase a stake in YPF was the result of a desire to "re-Argentenize" YPF, as Petersen's owners, the Eskenazis, were Argentine citizens.

Petersen and Repsol entered into a series of agreements in connection with the sale.  Among them was an agreement to cause YPF to make bi-annual dividends to shareholders in the amount of 90% of YPF's profits, plus an "extraordinary dividend" of $850 million, to enable Petersen to satisfy its pre-payment obligations under its credit agreements with Repsol and other financial institutions.  (Compl. ¶ 30; Feb. 21, 2008 Shareholders' Agmt. § 7.3, Ex. C.)  Petersen was highly dependent on this enormous dividend payment to maintain its solvency.  (*See* Compl. ¶ 6.)  Petersen also negotiated for and obtained a robust indemnity from Repsol.  In a Supplemental Agreement dated February 21, 2008, Repsol and Petersen agreed that, if within five years, Repsol did not (i) maintain ownership of at least 50.01% of YPF's capital stock or (ii) perform the acts required to approve the bi-annual distribution of 90% of YPF's profits, Repsol would, among other things, buy back the shares or repay the loans Petersen had taken out to acquire them.  (Feb. 21, 2008 Supp. Agmt. § 2, Ex. D.)  Through a series of transactions between February 2008 and May 2011, Petersen increased its ownership stake in YPF to just over 25%, making it YPF's largest minority shareholder.  (Compl. ¶ 28.)

In 2012, the Argentine Republic (the "Republic"), by an Act of Congress, temporarily occupied Repsol's shares constituting 51% of YPF's outstanding stock (the "Intervention").  (Compl. ¶ 35.)  Following the Intervention, YPF, acting consistently with its obligations under the Bylaws and Argentine law, did not declare a bi-annual dividend that Petersen expected to receive in May 2012.  (Compl. ¶ 39; YPF's Mot. to Dismiss at 5, ECF No. 33.)  Petersen defaulted on its loan obligations and its lenders foreclosed on its YPF shares (the "Event of Default").  (Compl. ¶ 42.)  Only after the Event of Default, at a scheduled shareholders meeting on June 4, 2012, did the Republic vote the shares subject to expropriation.  (YPF's Mot. to Dismiss at 24.)  Petersen did not attend this meeting and therefore did not object to the Republic's voting of these shares at the time.  Nor, as far as the record now reflects, did Petersen attempt to enforce the indemnification provision in its Supplemental Agreement with Repsol.

## ARGUMENT

Under the Hague Convention, United States courts may "request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act."  *See Villella v. Chem. & Mining Co. of Chile Inc.*, 15 Civ. 2106 (ER), 2018 WL 2958361, at *2 (S.D.N.Y. June 13, 2018) (Ramos, J.) (quoting Hague Convention, Chapter I, Art. 1, *reprinted in* 28 U.S.C. § 1781).  A party seeking evidence through the Hague Convention must "demonstrat[e] that proceeding in that manner is 'necessary and appropriate.'"  *Metso Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.*, No. CV 06-1446(ADS)(ETB), 2007 WL 1875560, at *2 (E.D.N.Y. June 25, 2007) (Boyle, J.).  "That burden is not great, however, since the [Hague] 'Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention.'"  *Id.* (quoting *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003)); *see also Villella*, 2018 WL 2958361, at *3 (explaining the burden "is not a heavy one").

Letters of request under the Hague Convention are an "appropriate mechanism" to obtain evidence from a non-party witness in foreign country.  *Elliot*

*Assocs. v. Republic of Peru*, Nos. 96 CIV. 7917 (RWS), 96 CIV. 7916 (RWS), 1997 WL 436493, at *2 (S.D.N.Y. Aug. 1, 1997) (Sweet, J.). Where, as here, the foreign entity is apparently not otherwise subject to the jurisdiction of this Court, letters of request under the Hague Convention "may be the only means" by which the requested evidence may be obtained. *Metso Minerals*, 2007 WL 1875560, at *3.

 In considering an application for issuance of letters of request, U.S. courts apply "the relevance standards of Rule 26 of the Federal Rules of Civil Procedure." *Blagman v. Apple, Inc.*, No. 12 Civ. 5453(ALC)(JCF), 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014) (Francis, J.). Thus, courts routinely issue letters of request upon a reasonable showing that the evidence sought may be relevant. *See, e.g.*, *Villella*, 2018 WL 29584361, at *8 (finding request "relevant and proportional to the needs of the case" where the evidence sought is relevant and significant damages are at stake in the matter); *Netherby Ltd. v. Jones Apparel Grp., Inc.*, No. 04 Civ. 7028(GEL), 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005) (Lynch, J.) (granting motion for letter of request for assistance from Canadian courts where the request "may uncover relevant evidence"); *FDIC v. Even Int'l Corp.*, No. Civ. 2043 (JFK), 1992 WL 35927, at *2 (S.D.N.Y. Feb. 20, 1993) (Keenan, J.) (granting application for issuance of letters of request "to obtain documentary evidence from [the Central Bank of Argentina]").

 Here, the documents that Defendant seeks from Repsol are highly relevant to the claims and defenses in this matter.

 *First*, evidence from Repsol is relevant to Defendant's mitigation of damages defense. (*See* YPF's Answer & Affirmative Defenses at 19, ECF No. 99.) The Supplemental Agreement guaranteed Petersen complete indemnification. (Ex. D § 2.) Communications between Repsol and Petersen are critical to understanding whether Petersen sought indemnification from Repsol following the intervention or expropriation.

 *Second*, evidence from Repsol is relevant to Plaintiffs' allegation that YPF "breached the [B]ylaws" by failing to "prohibit[] Argentina from voting or otherwise exercising corporate governance powers using a controlling stake acquired in violation of the tender offer requirement". (Compl. ¶ 71.) Argentina did not vote these shares until the June 4, 2012 shareholders meeting. (YPF's Mot. to Dismiss at 5.) Following the passage of the expropriation legislation, Repsol took (unsuccessful) action to prevent the Republic from voting the shares subject to expropriation at the meeting. (*Id.*) In contrast, Petersen did not take any action with respect to the June 4 meeting—it did not attend the meeting, let alone object to the vote. Defendant expects that Repsol, as part of YPF's controlling shareholder group with Petersen as of the Intervention, is in possession of relevant communications with Petersen regarding their respective decisions whether to oppose the Intervention and subsequent voting of the shares subject to expropriation.

 *Third*, evidence from Repsol is relevant to Plaintiffs' argument that YPF "breached the [B]ylaws" by "failing to distribute dividends to YPF's shareholders". (Compl. ¶ 71.) As explained above, YPF's payment of bi-annual dividends was the result of an agreement between Repsol and Petersen—not YPF. YPF had no obligation to pay dividends unless such dividends were approved at a shareholders' meeting. (*See* YPF's

Mot. to Dismiss at 24-25.)  It is Defendant's position that the cause of Petersen's Event of Default was the fact that YPF, consistent with its obligations under the Bylaws and Argentine law, stopped making the exorbitant dividend payments with which Petersen was satisfying its loan obligations.  Indeed, Petersen's lenders foreclosed on its shares after YPF did not make a dividend payment in May 2012—and before the Republic ever voted the shares subject to expropriation.  (*Id.* at 24.)  Repsol, as the party that agreed to cause such dividend payments, is uniquely positioned to produce evidence on this issue.

*Fourth*, evidence from Repsol is relevant to Petersen's understanding of and reliance on "the representations and promises that Argentina and YPF made" regarding the tender offer provision of YPF's Bylaws.  (*See* Compl. ¶¶ 27-30.) Defendant is entitled to test these factual allegations through communications between Repsol and Petersen concerning the bases for Petersen's acquisition of YPF shares.

## CONCLUSION

Defendant respectfully requests that the Court grant its Motion for Issuance of Letter of Request.

Respectfully,

/s/ Michael A. Paskin

Michael A. Paskin
Damaris Hernández
    Cravath, Swaine & Moore LLP
        Worldwide Plaza
            825 Eighth Avenue
                New York, NY 10019

*Counsel for YPF S.A.*

The Honorable Loretta A. Preska
    United States District Court for the Southern District of New York
        500 Pearl Street
            New York, NY 10007

Copies to:  Counsel of Record