KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

October 5, 2020

*Via ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

  Re: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739
     *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Your Honor:

  As I indicated last week, I write on behalf of Plaintiffs in the above-referenced cases to respond to Defendants' requests that this Court issue letters rogatory. *See* Dkt. Nos. 175, 178. Though Plaintiffs do not oppose those requests because Plaintiffs do not want to be the cause of any delay, they must address Defendants' evident strategy of delaying these cases and ask the Court, in any order in connection with Defendants' requests, to make it clear that the grant of those requests does not affect the schedule for this case.[1]

**The Merits**

  Whether or not Defendants' requests fall within the formal bounds of Rule 26, Defendants know that they are pointless.

  Defendants contend that evidence from both Repsol and members of the Eskenazi family is relevant to "Petersen's understanding of and reliance on YPF's Bylaws, and to Petersen's acquisition of YPF shares more generally." Dkt. No. 175, at 4; *accord* Dkt. No. 178, at 4. But "reliance" is not an element of breach of contract; nothing turns on Petersen's state of mind in 2008 and 2011. Defendants also claim to seek evidence concerning "the intervention and expropriation of YPF as well as the Republic's alleged 'campaign to devalue' YPF's shares." Dkt. No. 175, at 4. And YPF believes that Repsol will have evidence concerning whether YPF "oppose[d] the Intervention and subsequent voting of the shares subject to expropriation." Dkt. No. 178, at 3. That, too, is irrelevant. What mattes for breach of contract is that there *was* an

---

[1] Docket numbers cited herein refer to the *Petersen* docket.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Loretta A. Preska
October 5, 2020
Page 2

intervention, there *was* an expropriation, and there was *not* a tender offer — facts nobody disputes. And because Executive Decree 530/2012 undisputedly placed Argentine government officials in charge of YPF, *see* Dkt. No. 27-11, at 6, § 3, there is no sense in asking Repsol or Petersen whether they "oppose[d] the Intervention." They no longer had power. As to YPF's assertion (Dkt. No. 178, at 3) that their international discovery will illuminate whether YPF took sufficient steps to enforce the bylaws against Argentina — answer: no — it is strange to suggest that YPF itself is not the best source of that evidence.

Defendants also claim to seek evidence relevant to their (many) affirmative defenses. This effort, too, is a sideshow. Plaintiffs' alleged right to an "indemnity" from a third party has nothing whatever to do with "mitigation of damages." *E.g.* Dkt. No. 178, at 3. Plaintiffs suffered damages as soon as Defendants breached the bylaws; those losses could not have been reasonably "avoided." Restatement (Second) of Contracts § 350. Defendants' so-called "mitigation" defense is in fact nothing more than a preference that Plaintiffs had sued someone else. In any event, clearly Defendants already have the "Supplemental Agreement" that they say (Dkt. No. 178, at 2) supports their point. It is unclear what more they could need. Likewise, as to standing, *see* Dkt. No. 175, at 4-5, the question whether Plaintiffs are "in fact the owner" of their claims (yes) can be answered by reference to documents Defendants have had for years.

### **The Reality**

What, then, is really going on? Defendants are barely concealing their continued tactic of pursuing delay at all costs.

More than two months after discovery began — and more than five *years* after *Petersen* was filed — Argentina has produced 3,150 pages (the images of many of which are illegible), and YPF has produced zero. Anything more, they say, is totally impossible during the pandemic — never mind that YPF pledged in SEC filings to "maintain the activity . . . levels registered during 2019" notwithstanding "COVID-19."[2] And what about depositions? Those, they say, would be impossible without documents. Never mind that these cases are years old and that Defendants' top-shelf counsel undoubtedly have key documents at the ready and have discussed the central issues with their clients at length. If Defendants maintain these positions Plaintiffs expect to file motions to compel in due course.

In the meantime, Plaintiffs have produced nearly 50,000 pages and expect their document productions to be substantially complete in the next two weeks. In addition, Plaintiffs offered on September 23, 2020 to discuss scheduling the depositions of their own witnesses, even though Defendants have not yet issued a single deposition notice. Defendants have not responded.

---

[2] YPF S.A., "Condensed Interim Consolidated Financial Statements as of June 30, 2020 and Comparative Information (Unaudited)," at 44, https://www.ypf.com/english/investors/Lists/ InformacionFinanciera/Financial-Statements-06-30-2020.pdf (last visited Sept. 21, 2020).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. Loretta A. Preska
October 5, 2020
Page 3

     The parties disputed the proper path forward this summer.  Defendants cited the burdens of the Hague Convention process and the complications of the coronavirus pandemic and proposed postponing fact discovery indefinitely.  *See* Dkt. No. 165, at 6-7.  The Court instead ruled that the parties should proceed into fast-paced discovery.  *See* Dkt. No. 170.  Defendants are behaving as if that ruling never happened.  These requests for letters rogatory exemplify the problem; despite asserting the need for them in June, Defendants did not submit them until late September and early October.  Though Plaintiffs do not object to the requests, we urge the Court not to allow Defendants to elongate the schedule through their delay tactics and to make it clear in any order that the Court's schedule will hold, regardless of whether the discovery sought by these letters rogatory is obtained.  This straightforward breach-of-contract case has gone on long enough.

                                               Respectfully submitted,

                                               */s/ Mark C. Hansen*

                                               Mark C. Hansen

Cc:    All counsel of record via ECF