# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 9, 2020

Via ECF

The Honorable Loretta A. Preska,

    United States District for the Southern District of New York,

       500 Pearl Street,

        New York, NY  10007.

       Re:    *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*,
           No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v.
           *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

On behalf of the Argentine Republic (the "Republic"), I respond to Plaintiffs' October 5, 2020 letter.  (*Petersen* ECF No. 180.)  Regrettably, before sending their letter to the Court, Plaintiffs had *agreed with Defendants* not to oppose Defendants' Hague requests.  Plaintiffs also did not meet and confer with Defendants before falsely accusing Defendants' of "pointless" discovery and delay.  While the Court has granted Defendants' Hague requests, the Republic is compelled to set the record straight.  The Republic treats this Court's orders with the utmost respect and takes its discovery obligations seriously.  Since the Court issued its scheduling order in July, the Republic has both pressed for reasonable discovery from Petersen and made extraordinary efforts—despite the severe COVID situation in Argentina—to comply fully with its discovery obligations.  But Petersen has failed to produce even basic discovery—which is why Defendants were forced to resort to the time-consuming Hague process.

### *The "Reality" — Petersen's Failure To Provide Meaningful Discovery*

The Petersen Plaintiffs are a hollow shell that has just one purpose:  prosecuting these claims.  The litigation "funder" Burford bought these claims out of bankruptcy in March 2015 for €15 million, which it now seeks to turn into a more than $1 billion jackpot—realizing at least a 5,000% return—to be extracted from public funds required by the Argentine government to attend to the needs of the people of the Republic.

When a Spanish bankruptcy trustee assumed control of Petersen, and when Burford bought Petersen's claims through the bankruptcy process, both the trustee and Burford assumed the obligation to take basic steps to obtain and preserve from Petersen and its former owners/executives the *evidence* necessary to prosecute its claims, including hard copy files, electronic documents and witness cooperation.  Over the past month, Defendants have learned that Plaintiffs have virtually no documents from and no control whatsoever over any of the individuals who ran Petersen during the relevant time and in whose shoes Burford now stands.  Federal courts

The Honorable Loretta A. Preska                                      -2-

have repeatedly held that it would be "both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim." *JP Morgan Chase Bank* v. *Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005) (Lynch, J.).[1]  Indeed, "[t]hose federal courts that have addressed the issue uniformly agree that the assignee of an assignor's claims 'bears the same discovery obligations that [the assignor] would carry had it remained the plaintiff.'"  *Baxter Bailey & Assoc., Inc.* v. *Hovnanian Enter., Inc.*, 2017 WL 4174965, at *1 (D. Md. May 8, 2017) (citing cases).

Petersen's evidence is central to these actions.  For example, the members of the Eskenazi Family (Enrique, Sebastián, Matías, and Ezequiel)—the subject of Defendants' September 24 Hague requests—are key witnesses.  They created the Petersen entities that are prosecuting these claims and borrowed nearly $2.2 billion in 2008 to acquire their minority stake in YPF from Repsol.  They demanded that Sebastián Eskenazi be installed as the CEO of YPF—a position he held until 2012.  And the Eskenazis had Petersen obtain an indemnity requiring Repsol to assume their debts and buy back their YPF shares if Repsol lost control of YPF.  (*See Petersen* ECF No. 175 at 2.)  The Eskenazis also still hold equity in the Petersen entities and thus stand to profit from any judgment in Petersen's favor.  (*Petersen* ECF. No. 164 at 3.)

On July 28—shortly after Your Honor's Order directing that fact discovery should proceed—Defendants served document requests seeking from Petersen the documents that the Republic is now seeking through the Hague process.  But, until September 9, Petersen did not disclose that they did not have these documents, including almost no documents bearing on the critical period when the Eskenazis ran Petersen.  Thus, while Plaintiffs touted their document production efforts in their October 5 letter, they failed to inform the Court that Petersen's production consisted only of newspaper articles, *public* documents from the 2012 Repsol litigation, *public* documents concerning the expropriation, and *public* investment analyst reports regarding YPF.  Plaintiffs have not produced any contemporaneous documents from Petersen's files or servers, including correspondence, notes and email, and have refused to try to obtain these documents, claiming they do not "control" any of such documents, including documents from the

---

[1] *See also*, *e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 129814, at *2 (E.D. Tenn., Jan. 10, 2014) ("wholly unfair for Plaintiffs to step into the shoes of the assignors for the purposes of bringing their claims and not also assume a claimant's attendant discovery obligations"); *Travelers Indent. Co. of Am.* v. *Kendrick Bros. Roofing, Inc.*, 2013 WL 6681240, at *2 (D. Idaho Dec. 18, 2013) (assignee "bears the same discovery obligations that [assignor] would carry had it remained the plaintiff"); *JPMorgan Chase Bank, N.A.* v. *KB Home*, 2010 WL 1994787, at *6 (D. Nev. May 18, 2010) ("unfair to allow [assignees] to stand in the shoes of the original lenders in order to pursue this action without requiring them to produce discovery that the original lenders would be required to produce if they had brought the action themselves").

The Honorable Loretta A. Preska                                        -3-

time when the Eskenazis managed Petersen.  As a result, Defendants have been forced to pursue evidence through the Hague process.[2]

Plaintiffs claim that this discovery is irrelevant because "[w]hat mattes [*sic*] for breach of contract is that there was an intervention [and] expropriation."  (*Petersen* ECF No. 180 at 1.)  But this is not a "straightforward breach-of-contract case."  (*Id*. at 3.)  The Court has held these are "'corporate claims" governed by Argentine law.  *Petersen Energía Inversora S.A.U.* v. *Argentine Republic*, 2020 WL 3034824, at *12 (S.D.N.Y. June 5, 2020) (Preska, J.).  In any event, Plaintiffs have pled as an element of their supposed damages an alleged "campaign" to devalue YPF shares, when the Eskenazis managed Petersen and YPF.  (*Petersen* Compl. ¶¶ 31-34; *Eton Park* Compl. ¶¶ 32-34.)  And even if this were the "straightforward" breach of contract case as Plaintiffs claim, Defendants have the right to discovery of (i) the circumstances under which the parties entered the contract (Petersen and the Eskenazis in 2008 to 2011), (ii) the circumstances of the alleged breach (purportedly suffered in 2012), and (iii) Petersen's subsequent assignment of its claims to Burford. *See, e.g.*, *Amto, LLC* v. *Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 574 (S.D.N.Y. 2016) (Karas, J.).

### *The Republic Is Working Diligently to Complete Discovery Expeditiously*

To secure their preferred schedule, Plaintiffs repeatedly represented to the Court that they would be seeking only "limited" discovery—"basically like nothing discovery."  (Ex. 1 (July 9 Hearing Transcript) at 7:15-16; 27:24-28:2.)  That is not remotely what Plaintiffs have done. Specifically, Plaintiffs have served 29 broad requests for production, 47 requests for admissions, and an extremely broad Rule 30(b)(6) deposition notice (and similar requests on YPF), demanding testimony on topics such as "YPF's value and assets from 1993 through 2014, including YPF's oil and gas production, operational management, and discovery and development of new and existing oil reserves . . . ."  In response, the Republic is searching for documents from the relevant government entities, but has not yet been able to collect and review many documents concerning the events giving rise to this litigation (which span back to 1993), because, if these documents exist at all, they exist largely in hard copy and are in buildings that are inaccessible because of legal restrictions relating to the pandemic, which also prevent most public employees from entering their workplaces.

Plaintiffs' statement in their October 5 letter that Defendants "have not responded" to their "offer" to discuss scheduling depositions is not true.  On October 1, the Republic responded to Plaintiffs' "offer" proposing that "both sides should work cooperatively to develop a deposition schedule after both sides have been able to produce documents."  Plaintiffs have not responded.

---

[2] As more fully outlined in YPF S.A.'s October 9, 2020 Letter, Plaintiffs' claims about delayed discovery for Repsol S.A. are similarly baseless.

The Honorable Loretta A. Preska                                        -4-

*        *        *

   Plaintiffs' mischaracterization of Defendants' diligence in discovery is only made more misleading by Plaintiffs' failure to comply with their own discovery obligations and subsequent posturing before the Court.  Defendants will continue to work to comply with all of their discovery obligations.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.

cc:  Counsel of Record