# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 13, 2020

Via ECF

The Honorable Loretta A. Preska,
   United States District for the Southern District of New York,
      500 Pearl Street,
         New York, NY 10007.

Re: *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ) ("*Eton Park*")

Dear Judge Preska:

On behalf of Defendants Argentine Republic (the "Republic"), and YPF S.A. ("YPF"), I request a pre-motion conference regarding Burford Capital LLC's ("Burford") refusal to produce *any* documents in response to Defendants' document requests (attached hereto as Exs. 1-2) or Rule 45 subpoena (Ex. 3) and respectfully request that the Court order Burford to produce all responsive documents in its possession, custody, and control.

Burford is effectively the plaintiff in these cases, having acquired in Petersen's Spanish bankruptcy proceedings for €15 million the right to prosecute and make all strategic decisions concerning Petersen's claims. Burford subsequently agreed to fund the Eton Park action as well, in exchange for the lion's share of any recovery. (Ex. 4 (2019 Annual Rpt.) at 63).) Burford is also actively trading portions of its claims to hedge funds and other third party investors—███████████████—and even touts its efforts to create a "secondary market" for its interest in this litigation. (*Id.* at 61; Ex. 5 ("Bogart Tr.") at 252:21-253:10.) Burford has collected $236 million from such sales, which have often been made in response to major milestones in these proceedings, including this Court's rulings. (Ex. 4 at 6, 63-64; Bogart Tr. at 278:24-279:4.) Burford now values these claims at over $1 billion—███████████████
███. (*See* Ex. 4 at 62-64; Bogart Tr. 221:15-20.)

Burford has regularly discussed these cases with prospective third-party investors, in its SEC filings, and on public conference calls. Burford has covered a wide range of topics, including (i) its due diligence on Petersen's claims; (ii) the circumstances giving rise to the Republic's expropriation of Repsol's YPF Class D shares; (iii) the Petersen Claim Prosecution Agreement; (iv) Burford's views of the parties' rights under YPF's bylaws; and (v) the scope of alleged damages here. (Ex. 6 (2019 Q4 Earnings Call) at 7-8; Ex. 4 (2019 Annual Rpt.) at 63; Ex. 7 (2016 Annual Rpt.) at 13-14.) Yet Burford has refused to produce *any* documents at all or provide deposition testimony about core issues. The Court should not permit Burford to control the prosecution of this litigation and seek a billion-dollar "jackpot" from this Court—like Burford

The Honorable Loretta A. Preska                                                                                              -2-

tried to do when it helped fund Steven Donziger's spurious claims against Chevron[1]—without meeting its basic discovery obligations.

## Background

In March 2015, Burford acquired the right to prosecute Petersen's claims from Petersen's Spanish bankruptcy receiver. (*See* Ex. 8.) Under its agreement with Petersen, Burford completely controls the conduct of the case. (*Id.* § 4.3(b) (empowering Burford to "take any and all actions on behalf of [Petersen] that [Burford] may deem necessary or advisable to prosecute the Claims").) On November 3, 2016, the same date that the Eton Park complaint was filed, Burford provided financing for Eton Park's claims. On July 28 and September 21, Defendants served requests for Burford's documents. (Exs. 1-2.) Plaintiffs' counsel refused to produce documents from Burford on the theory that they were not in Plaintiffs' "control" and subsequently refused to accept service of a Rule 45 subpoena. During negotiations with Burford's newly retained counsel on October 19 and 22, Defendants agreed to narrow the subpoena and work with Burford to reduce any burden of production. (Ex. 9.) Nevertheless, Burford's counsel sent Defendants a letter on October 26 saying Burford would not produce any documents or even a privilege log. (Ex. 10.)

Burford stonewalled further during the October 29 deposition of its CEO, Christopher Bogart.



. (*See, e.g.*, Bogart Tr. 38:8-19, 76:20-77:4, 105:16-23, 124:21-125:15, 138:18-140:18, 243:13-24.) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*see id.* at 205:12-14, 208:17-209:12)—long *after* Burford caused the Petersen Complaint to be filed on April 8, 2015. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (*See id.* at 122:5-123:18.)

## Argument

Defendants' document requests[2] and subpoena plainly seek relevant documents from Burford, including (i) documents concerning the negotiation of the claim prosecution agreements and documents Burford obtained during due diligence (relevant to standing); (ii) documents Burford received from the Eskenazis (in its meetings with them or otherwise) (relevant to various defenses concerning the Eskenazis' conduct, including unclean hands, void *ab initio* and assumption of risk); and (iii) documents concerning

---

[1] Burford provided $4 million to plaintiffs in the *Chevron* litigation, hoping its relatively small investment "could work out to a 100-to-1 jackpot." https://www.nytimes.com/2015/10/25/magazine/should-you-be-allowed-to-invest-in-a-lawsuit.html.

[2] Even though not technically a plaintiff, Burford must respond to document requests because it is "closely connected to the litigation" and has a "substantial interest" in the outcome. *See Bank of N.Y.* v. *Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 148 (S.D.N.Y. 1997) (Francis, J.).

The Honorable Loretta A. Preska                                                                                              -3-

Petersen's supposed damages (a subject Buford routinely discusses on public conference calls).  (*See* Petersen Compl. ¶¶ 50-54, 67; Argentina's Answer in *Petersen* at pp. 23, 26-27.)  Burford says collecting these documents is "burdensome," but has not bothered even to search for documents, let alone engage on how to minimize burden (custodians, search terms, date ranges) *or* provide a privilege log.

Burford has taken the extreme position that *all* the documents it generates in the course of its business are privileged or work product because they relate, in some way, to litigation.  This is not tenable.  Burford is not a law firm.  It is, in Burford's words, "fundamentally *a business* run by . . . lawyers."  (Ex. 4 (2019 Annual Rpt.) at 71.)  Privilege and work product do not extend to business communications.  *Koumoulis* v. *Indep. Fin. Mktg. Grp.*, 295 F.R.D. 28, 37-38 (E.D.N.Y. 2013); *Acceleration Bay LLC* v. *Activision Blizzard, Inc.*, 2018 WL 798731, at *1-2 (D. Del. Feb. 9, 2018) (work product doctrine does not extend to communications between litigation funder and plaintiff "before any [litigation financing] agreement was reached").  In any event, Burford has waived any privilege as a result of its many communications with third parties.  *See N.Y. Times Co.* v. *U.S. Dep't of Justice*, 939 F.3d 479, 496 (2d Cir. 2019).  Moreover, even though Burford bears the "heavy burden" of *proving* the existence of any privilege, *In re Grand Jury Subpoena*, 510 F.3d 180, 183 (2d Cir. 2007), Burford has refused to produce a privilege log or otherwise met the requirements of Rule 26(b)(5), Rule 45(e)(2), and Local Rule 26.2.  Thus, Burford has now waived any privilege it may once have had.  *Au New Haven, LLC* v. *YKK Corp.*, 2018 WL 333828, at *2 (S.D.N.Y. Jan. 5, 2018) (Netburn, J.); *SEC* v. *Yorkville Advisors*, 300 F.R.D. 152, 166 (S.D.N.Y. 2014) (Pitman, J.).

Even if Burford had a basis to assert work product, that protection is not absolute.  *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).  Defendants have a substantial need for at least two categories of documents and testimony.  *First*, under Spanish law, the Petersen Claim Prosecution Agreement is a disguised *assignment* of Petersen's claim, which deprives Petersen of standing.  (*See* Argentina's Answer in *Petersen* at pp. 26-27; YPF's Answer in *Petersen* at p. 19; *see also* Ex. 11 (Oct. 2014 Liquidation Plan) § 3.2 (seeking "sale or assignment" of claims); Ex. 12 (Langdell Bid) ¶ 5 (bidder explaining that a sale of the claims could lead to potential standing issues).)  Because the interpretation of that contract is central to this defense, Defendants are entitled to discovery regarding the negotiating history of an agreement between arms-length counterparties, particularly since Mr. Bogart is listed as a potential witness on this issue in Plaintiffs' initial disclosures.  (*See* Ex. 13).  *See Gerszberg* v. *Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 293 (S.D.N.Y. 2016) (Engelmayer, J.) (discovery of negotiating history, including prior drafts of agreement and written and oral communications between the signatories, could bear on standing issue).

*Second*, to the extent that the Eskenazis or Petersen provided Burford with any factual materials regarding their conduct in operating YPF or during the intervention and expropriation process, those materials should be produced, especially because both Petersen and the Eskenazis have not produced any documents on these issues.  *See SEC* v. *Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 310, 314 (S.D.N.Y. 2011) (Rakoff, J.) (ordering disclosure of report summarizing factual findings of internal investigation).

*        *        *

While Burford has continuously marketed its "investment" in *Petersen* and *Eton Park* to the world, it is obstructing discovery from Defendants by pretending to be a third-party here.  Burford should be compelled to fully respond to Defendants' document requests and subpoena.

The Honorable Loretta A. Preska                                                                    -4-

                                                Respectfully,

                                                */s/ Robert J. Giuffra, Jr.*

                                                Robert J. Giuffra, Jr.

cc:      Counsel of Record

          Pamela Jarvis, Esq.
          (Joseph Hage Aaronson LLC)