# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

PETERSEN ENERGÍA INVERSORA,
S.A.U. and PETERSEN ENERGÍA, S.A.U.,

    Plaintiffs,

v.

ARGENTINE REPUBLIC and YPF S.A.,

    Defendants.

---

Case No.: 1:15-CV-02739 (LAP)

## DEFENDANTS' FIRST REQUEST
## FOR THE PRODUCTION OF DOCUMENTS TO PLAINTIFFS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Scheduling Order entered on July 20, 2020 in the above-captioned action, defendants the Argentine Republic (the "Republic" or "Argentina") and YPF, S.A. ("YPF," and together with the Republic, the "Defendants") by and through their undersigned counsel, hereby request that Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. ("Plaintiffs"), by and through their counsel, produce and make available for inspection and copying within thirty (30) days, at the offices of Sullivan & Cromwell, LLP, 125 Broad Street, New York, NY 10004, the documents specified below. Defendants reserve the right to deliver and serve additional requests for production of documents.

### DEFINITIONS

The following definitions shall apply to the Defendants' requests regardless of capitalization. Pursuant to Southern District of New York Local Civil Rule 26.3, the Uniform Definitions in Discovery Requests are incorporated herein by reference. In the event of any

ambiguity in one or more of the following definitions, common usage and reference to any cited rules, statutes, or regulations should be used to provide the broadest interpretation of the terms in question.

1. The term "Action" refers to the above-titled action, captioned *Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. v. Argentine Republic and YPF S.A.*, No. 15-cv-02739 (LAP).

2. The term "Argentine National Securities Commission" means the *Comisión Nacional de Valores de la República Argentina*.

3. The term "Complaint" or "Compl." means the Complaint filed by Plaintiffs on April 8, 2015, in the United States District Court for the Southern District of New York, with civil docket number 15-cv-02739 (LAP).

4. The terms "Document," "Communication," "Concerning" and "Person" have the meanings set forth in Local Civil Rule 26.3.

5. The term "Defendants" refers to the Argentine Republic and YPF S.A.

6. "Eskenazi Family" means Enrique Eskenazi, Sebastián Eskenazi, Matías Eskenazi Storey, and Ezequiel Eskenazi Storey.

7. The term "Expropriation of YPF" refers to Argentina's expropriation of 51% of YPF's Class D shares pursuant to Law 21,499 and Law 26,741.

8. "Intervenor" means the individual referred to by the same name in Petersen Compl. ¶ 35.

9. The term "Intervention of YPF" refers to Argentina's exercise of control of YPF pursuant to Emergency Decrees 530/12, 532/12 and 732/12.

10. "IPO" means the initial public offering of YPF shares on June 29, 1993.

11.     The term "Local Civil Rules" means the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York.

12.     The terms "Plaintiffs," "You," and "Your" refer to, collectively and individually, Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (collectively "Petersen"), and each of their predecessors, successors, divisions, subsidiaries and affiliates; each other person directly or indirectly, wholly or in part, owned or controlled by them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, consultants or other persons acting on their behalf, including their Spanish bankruptcy receiver (currently, Armando Betancor Álamo), Prospect Investments LLC, Burford Capital LLC and Petersen's current and former principals, including without limitation Enrique Eskenazi, Sebastián Eskenazi, Matías Eskenazi Storey, and Ezequiel Eskenazi Storey.

13.     "Repsol" means Repsol, S.A., formerly known as Repsol YPF, S.A., a Spanish energy company that was once the majority shareholder of YPF, S.A. and any of its officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, assigns, and any other entities or individuals acting or purporting to act on its behalf or at its direction.

14.     "SEC" refers to the United States Securities and Exchange Commission.

15.     "Shareholders' Agreement" means the agreement dated February 21, 2008 referred to in Petersen Compl. ¶ 30.

16.     "Vaca Muerta" means the shale oil and gas fields discovered by YPF in 2011 and located in the Neuquén Basin in northern Patagonia, Argentina.

17.     "YPF" means, YPF, S.A. and any of its officers, directors, employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents,

attorneys, assigns, and any other entities or individuals acting or purporting to act on its behalf or at its direction.

18. "YPF Bylaws" or "Bylaws" means the operative version at any point in time of the bylaws of YPF on file with the Argentine National Securities Commission and SEC (duly registered with the Superintendency of Legal Entities in charge of the Public Registry of Commerce).

19. The terms "YPF shares," "shares of YPF," or "shares in YPF" refer to any equity, debt, option, derivative or similar interest in YPF, including, without limitation, American depository shares, American depository receipts, common stock, preferred stock, bills, bonds, notes, paper, warrants, convertibles, options, calls, puts, swaps, credit default swaps, and derivatives and also includes, without limitation, any and all instruments encompassed within the definition of the term "security" under the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), whether traded, sold or acquired on a public market (including any international or domestic stock exchange), by private agreement or otherwise.

20. "YPF Prospectus" means the U.S. prospectus dated June 28, 1993 that was filed with the SEC in connection with YPF's initial public offering of Class D shares on June 29, 1993.

21. To bring within the scope of these requests all documents that might otherwise be construed to be outside their scope, the following rules of construction apply: (a) the word "including" shall be read to mean "including without limitation"; (b) the present tense shall be construed to include the past tense and vice versa; (c) references to employees, officers, principals, directors or agents shall include both current and former employees, officers, principals, directors and agents; (d) the terms "and" and "or," and "all," "any," and "each," shall be construed in

accordance with Local Civil Rule 26.3; and (e) in accordance with Local Civil Rule 26.3, the use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1. These requests are deemed to be continuing in accordance with Federal Rule of Civil Procedure 26(e). You shall supplement Your responses within a reasonable time if You obtain or become aware of any further documents responsive to these requests.

2. Unless otherwise specified, all requests are without regard to date.

3. Unless otherwise indicated, the documents requested include all documents and data in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a document is in Your possession, custody, or control if You have actual possession or custody or the right or practical ability to obtain the document or a copy thereof upon demand from one or more of Your representatives, advisors, attorneys, or any other person or public or private entity that has actual physical possession thereof.

4. As the term "possession" relates to email, the term includes, but is not limited to, email contained in Your electronic email directories, including but not limited to: (a) "deleted" emails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" emails, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" emails, including all subdirectories irrespective of the title of such subdirectories.

5. Documents shall be produced as they are kept in the usual course of business, including producing any tabs, labels, or directories of files identifying the documents. All documents shall be produced in their native format where available. The parties shall agree to a

protocol to govern the procedure for the collection, review and production of electronically stored information ("ESI").

6. You must produce entire documents including attachments, enclosures, cover letters, memoranda, and appendices. Documents not otherwise responsive to the requests are to be produced if such documents are attached to, or enclosed with, any document that is responsive. Examples of such documents include email attachments, routing slips, transmittal memoranda or letters, comments, evaluations, or similar documents. In the case of email attachments, if either the email or any of its attachments is responsive, produce the email and all corresponding attachments. Documents attached to each other shall not be separated.

7. A document with handwritten, typewritten, or other recorded notes, editing marks, etc., are not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

8. The term "original" includes the file copy or copies of any document if there is no actual original copy.

9. Pursuant to Federal Rule of Civil Procedure 26(b)(5), if any document responsive to a request below is withheld from production on the basis of any claim of privilege, You are requested to provide a written statement identifying:

   a. the nature of the privilege (including work product privilege) which is being claimed;

   b. the general subject matter of the document and a description of the file or other location where it was found;

   c. the type or general nature of the document (*e.g.*, whether it is a letter, memorandum, invoice, email, etc.) and the number of pages of which it consists;

   d. the date of the document;

   e. the author(s) and recipient(s) of the document; and

      f.    the request to which the document relates.

You are further requested to provide all portions of the requested documents that are not subject to a claim of privilege or other reason for nonproduction by excising, redacting, or otherwise protecting the portions for which a privilege or other reason for non-production is asserted.

      10.    Pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), if You object to any individual request, You must state whether any responsive materials are being withheld on the basis of that objection, and You must specify the part of the request to which You are objecting and produce all materials that are responsive to the remainder of the request.

      11.    In the event that You object to any request on the ground that it is overbroad or unduly burdensome for any reason, respond to that request as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that request for purposes of Your response and the factual basis for Your conclusion.

      12.    In the event that any document responsive to any request once was but is no longer in Your possession, custody, or control or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify such document as completely as possible, including without limitation, the following information:

      a.    the nature of the document;

      b.    the person who prepared or authorized the document, and, if applicable, the person to whom the document was sent;

      c.    the date on which the document was prepared or transmitted; and

      d.    what has happened to the document and where it or any copies of it may be located, or if the document was lost or destroyed, the date on which the document was lost or destroyed, and, if destroyed, the conditions of and the reasons for such destruction and the persons requesting and performing the destruction.

13. Each request shall be construed independently, and no request shall be viewed as limiting the scope of any other request.

14. Each document is to be produced along with all drafts, without abbreviation or redaction.

15. If no documents are responsive to a particular request, You are to state that no responsive documents exist. If You object to the scope or breadth of any of these requests, You should identify, to the extent possible, those documents that You will produce notwithstanding the objection.

16. You shall respond within thirty (30) days, in accordance with Federal Rule of Civil Procedure 34(b)(2)(A).

## DOCUMENT REQUESTS

1. All documents and communication concerning any allegation contained in the Complaint, including all documents referred to or quoted in the Complaint.

2. All documents and communication concerning any investigation by You concerning any allegation in the Complaint.

3. All documents and communications concerning Your investment practices, policies or procedures effective at any time since February 1, 2007, including all statements of investment practices, policies or procedures prepared by or for any Plaintiff.

4. All documents and communications concerning any potential transaction of YPF shares, including any documents concerning Your contemplating but not completing any purchase, sale, exchange, acquisition, transfer or disposal of YPF shares.

5. Any and all documents or communications relating to any information that You used or relied upon in purchasing, selling, owning, exchanging, trading or otherwise

8

acquiring, transferring or disposing of YPF shares, including, but not limited to, advice received by You concerning YPF from advisors, brokers, consultants or other third parties.

6. All documents and communications concerning Defendants, including without limitation all reports, analyses or YPF prospectuses created, considered, reviewed, obtained or otherwise received by You.

7. All documents and communications concerning the IPO, including, without limitation, (i) documents relating to your allegation that "[i]n order to induce investors like Petersen to purchase shares in that former state enterprise, Argentina and YPF promised that any subsequent acquisitions of a controlling stake in the Company, explicitly including any reacquisition of control by Argentina itself, would be conditioned on the acquirer making a tender offer for all Class D shares of YPF at a predetermined price"; (ii) documents reflecting any analysis of the YPF Prospectus and any other materials provided to potential investors in connection with the IPO; and (iii) documents related to YPF's periodic reporting requirements under U.S. securities law referring or related to the IPO, and roadshow and other investor presentations.  (*See* Petersen Compl. ¶¶ 2, 16, 66, 84.)

8. All documents and communications regarding Your allegation that "investors insisted on a compensated exit should Argentina once again obtain control of YPF." (*See* Petersen Compl. ¶ 15.)

9. All documents and communications concerning the YPF Bylaws, including, but not limited to (i) any due diligence related to the YPF Bylaws; (ii) any analysis of Sections 7 and 28 of the YPF Bylaws; and (iii) all documents concerning Your reliance on the YPF Bylaws. (*See* Petersen Compl. ¶¶ 2, 17-23.)

10. All documents and communications concerning any YPF tender offer conducted at any time.

11. All documents and communications concerning Your acquisition of YPF shares (*see* Petersen Compl. ¶¶ 27-30), including, but not limited to, (i) all communications with YPF representatives; (ii) all communications with Argentine government officials; (iii) all communications with or among the Eskenazi Family concerning the acquisition of YPF shares; (iv) all communications with Repsol concerning YPF; (v) documents reflecting Your due diligence of YPF; and (vi) any financial modeling of the value of YPF shares.

12. All documents and communications concerning how Plaintiffs "financed the purchase of [their] YPF shares," including, but not limited to, all documents and communications concerning the (i) Seller Credit Agreement, dated May 19, 2011, between Petersen Energía Inversora, S.A.U. and Repsol; (ii) credit and loan agreements from February 2008, February 2010, and May 2011 between Petersen Energía Inversora, S.A.U. Petersen Energía, S.A., Petersen Energía Pty Ltd., Petersen Inversiones Spain, S.A., and various financial institutions; (iii) Shareholders' Agreement (including without limitation documents and communications concerning Sections 9 and 10 of that agreement); (iv) drafts of any of the foregoing documents; and (v) the formation and operation of any entities by Petersen Energía Inversora, S.A.U. Petersen Energía, S.A., Petersen Energía Pty Ltd., and Petersen Inversiones Spain, S.A. to facilitate the financing of the Petersen Plaintiffs' acquisition of YPF shares. (*See* Petersen Compl. ¶¶ 27-30.)

13. All documents and communications concerning the payment of YPF dividends, including, but not limited to, (i) accounting records reflecting Your receipt of YPF dividends; (ii) policies, practices or correspondence regarding YPF's payment of dividends; (iii)

agreements and announcements regarding YPF dividends and (iv) any analysis or financial modeling of YPF's dividend practices and policies.  (*See* Petersen Compl. ¶ 31.)

14.     All documents and communications concerning meetings of YPF's Board of Directors from January 1, 2007 to December 31, 2012, including, but not limited to, presentations or other materials distributed at those meetings and all communications concerning those meetings.  (*See* Petersen Compl. ¶ 39.)

15.     All documents and communications concerning Your allegation that "Argentina took steps to reacquire control of YPF," including, but not limited to, documents and communications concerning (i) any potential nationalization, expropriation or intervention of YPF; (ii) the Intervention of YPF; (iii) the Expropriation of YPF; and (iv) the actions of the Intervenor in 2012.  (*See* Petersen Compl. ¶¶ 35-40.)

16.     All documents and communications concerning Your allegation that "Argentina engaged in an intentional campaign to devalue YPF's Class D shares," including, but not limited to, analysis of reports and articles by investment banks, rating agencies, and newspapers.  (*See* Petersen Compl. ¶¶ 32-33.)

17.     All documents and communications concerning Your participation in the management and/or oversight of YPF, including without limitation the investments in the expansion of production, the exploration of Vaca Muerta, YPF's reserves and YPF's drilling activities.

18.     All documents and communications concerning Your understanding and analysis of YPF's oil production levels, oil production and import activities, and oil exploration and development activities, including the drilling of new wells from 1999 to 2012.

19. All documents and communications concerning the June 4, 2012 YPF shareholder meeting, including, without limitation, (i) Your attendance or votes at the June 4, 2012 YPF shareholder meeting; (ii) communications with Repsol about the June 4, 2012 YPF shareholder meeting; and (iii) your exercise or failure to exercise, any rights, remedies, or obligations vested to You or in You pursuant to the YPF Bylaws or Argentine law and/or any efforts to remedy any breaches of the YPF Bylaws You contend took place on or around that meeting.

20. All documents and communications with Repsol concerning the Expropriation and Intervention of YPF. (*See* Petersen Compl. ¶¶ 40, 48.)

21. All documents and communications concerning your exercise, or failure to exercise, any rights, remedies, or obligations vested to You or by You pursuant to any agreement with Repsol concerning YPF.

22. All documents and communications concerning Your allegation that the Republic "caused the price of YPF's shares to drop precipitously." (*See* Petersen Compl. ¶¶ 6, 62.)

23. All documents and communications concerning Your April 8, 2015 demand under the 1991 Argentina-Spain Bilateral Investment Treaty.

24. All documents and communications concerning Repsol's litigation in connection with the expropriation of YPF shares by the Republic (*Repsol YPF, S.A.* v. *Republic of Argentina*, No. 12-CV-3877 (TPG) or *Repsol* v. *The Bank of New York Mellon and YPF S.A.*, No. 652653).

25. All documents and communications concerning any analysis by You as to whether to pursue remedies available under Argentine law for the alleged breaches asserted in this Action.

26. All documents and communications concerning Your ownership interest in YPF that You prepared, produced, or provided, such as "Petersen's SEC Form 13-D filings on YPF's shares," to any regulatory body or government agency, including, but not limited to, the U.S. Securities Exchange Commission and Argentine National Securities Commission, and any Argentine court, including, without limitation, Argentine criminal courts. (*See* Petersen Compl. ¶ 4.)

27. All documents and communications concerning Petersen filing for bankruptcy protection in Spain in July 2012, including, but not limited to, all documents and communications concerning (i) the bankruptcy proceedings and the court-appointed receiver; (ii) the liquidation plan approved by the Spanish bankruptcy court in November 2014; (iii) and all documents produced by You to the Spanish bankruptcy court in the bankruptcy proceedings. (*See* Petersen Compl. ¶ 46.)

28. All documents and communications concerning any event of default on Your loan obligations to Repsol, the Bank of New York Mellon, and any other third party, including without limitation (i) communications between You and Repsol regarding Your event of default; (ii) communications between You and YPF regarding Your event of default; (iii) communications between You and the Bank of New York Mellon regarding Your event of default; (iv) communications between You and any party or third-party regarding Your event of default; (v) internal communications regarding Your event of default; and (vi) any press release or public communication concerning Your event of default. (*See* Petersen Compl. ¶ 6.)

29. All documents and communications concerning financing provided by Burford Capital LLC and financing of the above-captioned Action, including, but not limited to, documents and communications concerning the Claim Prosecution Agreement dated March 4, 2015 entered into between Petersen and Prospect Investments LLC and the Pledge Agreement dated March 4, 2015 entered into between Petersen (by its liquidator) and Prospect Investments LLC, and all documents and communications with or concerning Burford Capital LLC, Prospect Investments LLC, and Christopher Bogart between January 1, 2012 and the present.  (*See* Petersen Compl. ¶ 47.)

30. All documents and communications concerning Your attempts to sell, assign, or finance Your claims in the above-captioned Action.

31. All documents and communications concerning Your sale or disposition of YPF shares.

32. Documents and communications sufficient to show Your ownership structure from January 1, 2007 to April 30, 2015.

33. All documents and communications concerning Your alleged damages claimed in this Action, including documents concerning the causation of damages, the amount of damages suffered and any method or formula that You propose to use to calculate damages, including, without limitation, all internal analyses and representations to third parties about the value of any potential recovery in this Action.

Dated: July 28, 2020

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Joseph E. Neuhaus
Thomas C. White
Elizabeth A. Cassady
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498

*Counsel for The Republic of Argentina*

/s/ *Michael A. Paskin*
Michael A. Paskin
Damaris Hernández
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019-7475

*Counsel for YPF S.A.*

### CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2020, I caused the foregoing to be served via email and USPS certified mail on all counsel of record in the above-captioned action.

/s/   *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Joseph E. Neuhaus
Thomas C. White
Elizabeth A. Cassady
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

*Counsel for The Argentine Republic*