# Exhibit 10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br> Plaintiffs, <br><br> -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | No. 15 Civ. 2739 (LAP) |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND L.P., <br><br> Plaintiffs, <br><br> -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | No. 16 Civ. 8569 (LAP) |

## BURFORD'S RESPONSES & OBJECTIONS TO ARGENTINA'S DOCUMENT SUBPOENA

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Burford Capital LLC

("**Burford**"), by its undersigned counsel, hereby submits these Responses and Objections to the

Subpoena served by Defendant Argentine Republic ("**Argentina**") on October 14, 2020.  These

Responses and Objections reflect Burford's current knowledge, information and belief, and

therefore remain subject to amendment and/or supplementation.  Counsel for Burford, Argentina

and Plaintiffs have met and conferred in good faith concerning the Subpoena and have discussed all of the Requests for Production ("**RFPs**" or "**Requests**") the Subpoena contains.[1]

The Subpoena fails fundamentally because it seeks discovery that is (i) irrelevant to the above-captioned actions (the "**Actions**"), (ii) both disproportionate to the needs of the Actions, within Federal Rule of Civil Procedure ("**Rule**") 26(b)(1), and unduly burdensome, within Rule 45(d)(1), and (iii) protected as attorney work product, in addition to myriad other deficiencies addressed below. There is a wealth of case law protecting litigation financiers' documents from disclosure to their clients' litigation opponents—a position grounded in well-established precedent (including Second Circuit case law), sound policy and common sense. All of the events at issue in the Actions had occurred long before Burford's involvement. Burford's first contact with either Plaintiff about this matter did not occur until 2014, and Burford was first engaged to provide litigation funding for Petersen in 2015 and Eton Park in 2016, after the Petersen Action was commenced.[2] All of Burford's involvement in this matter was directly related to anticipated or pending litigation, and is irrelevant to events that occurred well before its involvement began.

## GENERAL OBJECTIONS TO DOCUMENT REQUESTS

These General Objections are incorporated into each Specific Response and Objection set forth below, as if fully set forth therein. Where a General Objection is repeated or referred to in a Specific Response and Objection, it is for emphasis only. Burford's General and Specific

---

[1]    Defendant YPF S.A. ("**YPF**") did not join with Argentina in the Subpoena. YPF's counsel chose not to participate in the meet-and-confer sessions concerning the Subpoena. YPF has taken no position on the permissibility or appropriateness the Subpoena generally or any RFP in particular.

[2]    "**Petersen**" means Petersen Energia Inversora, S.A.U. and Petersen Energia, S.A.U. "**Eton Park**" means Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P." Emphasis is added to, and internal citations, quotation marks, and brackets are omitted from, quoted material, unless otherwise indicated.

Objections do not mean that responsive documents exist, are within Burford's possession, custody or control, are relevant to the claims and defenses in the Actions, fall within the scope of permissible discovery under Rule 26(b)(1) or are otherwise properly requested.  Burford reserves the right to amend, supplement, correct and clarify these Responses and Objections.

      1.    <u>Irrelevancy, Disproportionality and Undue Burden</u>.  Burford objects to Argentina's Requests because they fail to comply with the relevancy and proportionality requirements of Rule 26(b)(1) and impose an undue burden on Burford that is impermissible under Rule 45(d)(1).  Under Rule 26(b)(1), parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," *inter alia*, the "importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Subpoenas issued under Rule 45 are subject to the relevance limits of Rule 26(b)(1). The party serving the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  *See* Rule 45(d)(1); *see also* Rule 45(d)(2)(B)(ii). This is true even when the non-party subpoena recipient stands to benefit financially from the litigation.[3]  To determine whether a Rule 45 subpoena imposes an undue burden, courts assess the burden on the subpoenaed party against the value of the information to the serving party by weighing "such factors as relevance, the need of the party for the documents, the breadth of the document [request], the time period covered by it, the particularity with which the documents are

---

[3]    *See M'Baye v. N.J. Sports Prod., Inc.*, 246 F.R.D. 205, 207 (S.D.N.Y. 2007) (even though witness paid legal fees and had agreement entitling him to share of damages award, he could not be compelled to travel for deposition as a non-party); *Hermitage Global Partners LP v. Prevezon Holdings Ltd.*, 2015 WL 728463, at *5 (S.D.N.Y. Feb. 19, 2015 (quashing subpoena on non-party as unduly burdensome, and noting that "even if [non-party] did have some interest in the case, Rule 45's undue burden protections would still apply").

described and the burden imposed."[4]  The Subpoena far exceeds the constraints of relevancy to claims and defenses and proportionality to the needs of the cases.  Additionally, Argentina has utterly failed to fulfill its obligation under Rule 45(d)(1) to avoid imposing undue burden or expense on Burford—an obligation that is undiminished by Burford's financial interest in the Actions.

      2.    <u>Invasion of Work Product Protection</u>.  Burford objects to the Subpoena on the grounds that it impermissibly seeks to invade the protection afforded by the work product doctrine.  Under Rule 26(b)(3)(A), a "party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Even if a party can show substantial need for, and undue hardship in obtaining, the substantial equivalent of the protected information—criteria that Argentina cannot, and has not even tried to, meet—the Court "*must* protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney *or other representative* concerning the litigation."  Under Burford's litigation funding agreements (**"LFAs"**) with Petersen and Eton Park, Burford is a "representative" of each of them in connection with the Actions.  *See* Petersen LFA § 7.3 ("Capital Provider and its Affiliates shall be considered 'representatives' of the Counterparty"); Eton Park LFA § 9.3 (same).  This brings documents created by Burford, along with documents received by Burford from Plaintiffs or their counsel, within the ambit of Rule 26(b)(3)(A).  Burford would qualify as a "representative" under Rule 26(b)(3)(A) even if those provisions were absent from the LFAs, as reflected in the case law holding that litigation funding documents are protected.

---

[4]    *Night Hawk Ltd. v. Briarpatch Ltd.*, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (sanctioning attorney for refusing to withdraw improper subpoena).

That Burford's involvement in the Actions also serves its business interests does not detract from the applicability of work product protection, which applies to documents that "in light of the nature of the document and the factual situation in the particular case, … can fairly be said to have been prepared or obtained *because of* the prospect of litigation.[5]  There is no requirement that litigation be the primary or predominant purpose of the protected information.[6] From the moment of Burford's first contacts with Petersen and Eton Park, anticipated and then actual litigation have been the *raison d'etre* for Burford's involvement in the Actions.  Absent such litigation, Burford would have had no involvement in this matter.  "Where a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection … merely because it is created in order to assist with a business decision" such as setting reserves for litigation or when deciding whether to invest in a company engaged in litigation.[7]  These delineations of the scope of work product protection are dictated by Second Circuit precedent that is binding here.  Consistent with these principles, protecting litigation funding agreements and related documents as work product has been mainstreamed by a growing body of case law across the country.[8]

---

[5]     *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original).

[6]     *Id.* at 1202-03.

[7]     *Id.* at 1199-1201, 1202; *accord Schaeffler v. United States*, 806 F.3d 34, 43-44 (2d Cir. 2015) (work-product protection withheld "only from documents that were prepared in the ordinary course of business in a form that would not vary regardless of whether litigation was expected"), *aff'd after remand*, 696 F. App'x 542 (2d Cir. 2017); *Subramanian v. Lupin Inc.*, 2020 WL 4707268, at *4 (S.D.N.Y. Aug. 13, 2020) (no question that communications with expert are work product; "[b]ut for that litigation, the communications would never have occurred.").

[8]     *See, e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1021 (D. Ariz. 2020) (litigation funding agreements protected as work product because they would not have been created but for prospect of litigation); *In re: Int'l Oil Trading Co.*, 548 B.R. 825, 836 (S.D. Fla. 2016) ("communications between a client, the client's attorney, and a litigation funder whose participation depends on assessments of the merits of litigation" are opinion work product

3.     No Waiver of Work Product Protection.  Argentina mistakenly suggests that any direct or indirect disclosure of work product, including any portion of the contents thereof, to anyone other than Burford, Plaintiffs and Plaintiffs' outside counsel waives work product protection.  A waiver occurs only where the work product is given to adversaries or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material.[9]  Argentina does not—and cannot—identify any disclosure that has increased, much less substantially increased, the chances that Argentina or YPF would obtain protected material.

To the extent that Burford has disclosed any information concerning any aspect of the Actions, *publicly or non-publicly*, it has done so at such a high level that work product is not implicated.  Insofar as there has been any disclosure relating to the Actions outside of public documents and communications, Burford has taken great care to protect confidentiality, including by use of strict non-disclosure agreements.  Nor would disclosure of work product to Burford by Plaintiffs or their counsel waive protection because Burford has a common interest

entitled to heightened protection from disclosure; it "does not matter that Burford's obvious purpose is to obtain a return on its investment"); *Devon IT, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012) (communications between Burford and plaintiff, documents relating to plaintiff's business, documents relating to investment by Burford in litigation, documents relating to the lawsuit, and documents relating to plaintiff's relationship all protected by work product); *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045, at *5-6 (W.D. Pa. Jan. 18, 2018) (communications with litigation funding companies, including agreement with funder, are protected work product because they were communications with plaintiff's agents made in anticipation of litigation); *Doe v. Soc'y of the Missionaries of the Sacred Heart*, 2014 WL 1715376, at * 3 (N.D. Ill. May 1, 2014) (documents sent to litigation funders that include counsel's mental impressions, conclusions, opinions, or legal theories are protected as work product).

[9]     *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 138 (S.D.N.Y. 2019), *aff'd*, 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019); *JA Apparel Corp. v. Abboud*, No. 07-CV-07787 (THK), 2008 U.S. Dist. LEXIS 1825, at *11, 2008 WL 111006, at *3 (S.D.N.Y. Jan. 10, 2008); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1025 (7th Cir. 2012); *see also United States v. Stewart*, 287 F. Supp. 2d 461, 468 (S.D.N.Y. 2003).

with Plaintiffs in the success of the Actions and is also bound by confidentiality.  There is no likelihood that disclosure of work product to Burford would lead to Defendants obtaining such information.[10]  This subpoena is proof of that.

4.    <u>Invasion of Attorney-Client and Common Interest Privilege</u>.  Burford objects to the Subpoena on the grounds that it seeks documents and communications protected by attorney-client privilege and the common-interest doctrine.  Under binding Second Circuit precedent, because Burford has a common interest with Petersen and Eton Park in the success of the Actions, the common interest doctrine applies to their communications, even though Burford's interest is financial.[11]  In addition, the individuals at Burford who are working most closely on the Actions are all active members of the New York State bar.  While they do not act as counsel to Plaintiffs, they could give legal advice protected by attorney-client privilege and work product doctrine.

5.    <u>Overbroad Time Frames and Scope</u>. Burford objects to the overbroad time frames and scope of the Subpoena.  Ten of the Subpoena's thirteen Requests are temporally unlimited (*see* Instruction #2).  The temporal ranges Argentina has articulated with respect to the other three Requests are excessive (*see* Specific Objections 1, 2, 5).  To produce documents in

---

[10]    *See Cont'l Circuits LLC*, 435 F. Supp. 3d at 1022 (disclosures to litigation funder not waiver of work product because funder had common interest with plaintiff); *Morley v. Square, Inc.*, 2015 WL 7273318, at *2 (E.D. Mo. Nov. 18, 2015) (because litigation funders and banks have inherent interest in maintaining confidentiality of potential client's information, no waiver of work product, even absent non-disclosure agreement); *Devon IT, Inc.*, 2012 WL 4748160, at *1 n.1 (work product protection not waived by disclosure to Burford).

[11]    *See* Schaeffler, 806 F.3d at 42 ("**A financial interest of a party, no matter how large, does not preclude a court from finding a legal interest shared with another party where the legal aspects materially affect the financial interests**;" the common legal interest "is underlined by the extent to which the [non-party] essentially insured" defendants); *see also, e.g.*, *Devon IT, Inc.*, 2012 WL 4748160, at *1 n.1 (communications between plaintiff and litigation funder have common interest in outcome of litigation, so attorney-client privilege not waived); *In re Int'l Oil Trading Co.*, 548 B.R. at 833 (same).

response to these Requests would require Burford to search through tens of thousands of documents and communications over the course more than six years—a period that did not begin until after all of the events giving rise to these Actions had occurred.

As to scope, the Subpoena sweepingly seeks every single document or communication that has anything to do with any aspect of the Actions. *See, e.g.*, RFPs 1 & 2 ("all communications" between Burford and Petersen or Eton Park); RFP 3 ("all communications between [Burford] and any third party concerning the Actions"); RFP 5 ("all documents and communications with or concerning [Burford] and Petersen between January 1, 2012 to the present"); RFPs 5 & 6 ("all documents and communications concerning financing" of the Actions). During the meet-and-confer process, when questioned about the broad scope of the Requests, Argentina's response was, in substance, that within the documents called for, there might be something relevant to a claim or defense. Such a slender, speculative possibility cannot suffice.[12]

A keyword search of Burford's emails for just the period from February 2017 to the present resulted in more than 100,000 hits.[13] Burford's emails from before February 2017, and documents other than emails, would balloon the quantity—and since they are not held in an easily searchable database, the quest for potentially responsive documents would be even more burdensome. Subpoenas that require a non-party to sift through thousands of documents—and would likely result in the production of non-relevant information—are the epitome of unduly

---

[12] *See, e.g.*, *Carvel v. Franchise Store Realty Corp.*, 2011 WL 13269780, at *3 (S.D.N.Y. June 16, 2011) (subpoenas improper where requests that could potentially uncover relevant information were "buried in larger, over-broad discovery demands that extend well beyond the claim being litigated")

[13] Burford searched for: Petersen OR Eton Park OR Eton OR EP OR PESA OR PEISA OR YPF. Including "Argentina" in the search added approximately 26,000 documents.

burdensome under Rule 45.[14]  Such a vast search-and-review burden on Burford is additionally

indefensible because of the extent to which the documents would ultimately be non-producible

under the work product doctrine and attorney-client and common-interest privileges.

6.    Argentina's Assignment Defense Does Not Warrant Discovery.  Burford objects

to the Requests for documents concerning the LFAs, other than the LFAs themselves, which

have already been produced.  Six of the thirteen RFPs, in whole or in part, seek documents

concerning the LFAs that include, among other things, documents concerning the negotiation of

the LFAs by plaintiffs and Burford and the due diligence performed by Burford before signing

the LFAs (see RFPs 1, 2, 3, 4, 5, 6).  Argentina contends that funding-related documents other

than the LFAs themselves are relevant to their affirmative defense that Plaintiffs lack standing

because the LFAs assigned their claims to Burford.[15]  This contention is ill-founded.

To the extent that Argentina seeks documents concerning the LFAs on the basis that they

bear on champerty, it seeks manifestly irrelevant documents.   Argentina has not pled champerty

under New York law.  Argentina argued champerty in its motion to dismiss the Actions, but then

waived that affirmative defense by not pleading it in the answers it filed after the motion to

dismiss was denied.[16]  Additionally, in denying the motion to dismiss, the Court ruled that

---

[14]    *In re Int'l Oil Trading Co.*, 548 B.R. at 837 ("The Court will not force [plaintiff] to sort through four years of correspondence, including tens of thousands of e-mails and their attachments, in order to provide [defendant] with non-relevant information."); *Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P.*, 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (quashing "non-specific, overbroad production requests that would surely amount to truckloads of documents from each non-party witness").

[15]    *See* Defendant The Argentine Republic's Answer and Affirmative Defenses to Plaintiffs' Complaint, filed in the Petersen Action (ECF No. 98) at 26-27 (Sixth Defense); Defendant Argentine Republic's Answer and Affirmative and Other Defenses to Plaintiffs' Complaint, *filed in* the Eton Park Action (ECF No. 117) at 19 (Sixth Defense).

[16]    YPF has not pled lack of standing based on assignment to Burford of Plaintiffs' claims in the Actions.

regardless of whether there might otherwise be facts supporting a champerty defense, it was precluded by the bankruptcy exception to the champerty statute.  *See* Opinion and Order, *filed in* the Petersen Action (ECF No. 63) at 25-27.

Whether or not the LFAs were assignments of Plaintiffs' claims depends on the plain language of the final, signed agreements.  The "entire agreement" provisions of the LFAs extinguish any argument by Argentina that prior or contemporaneous statements or understandings affect their meaning (Petersen LFA ¶12, Eton Park LFA ¶19).  As Argentina acknowledged in its motion to dismiss, it is a "well-established principle that an agreement's nature is determined by its terms …" (Argentina's 11/9/15 brief in support of motion to dismiss, ECF No. 53 at 7).  The parties to the LFAs—Plaintiffs and Burford—concur that the LFAs are not assignments.  Even Argentina, a non-party to the LFAs, does not contend that the LFAs are ambiguous.  Insofar as there may be documents indicating that other deal structures were considered in the course of negotiating the LFAs, they would be irrelevant to any claim or defense in the Actions.

Argentina contends that it needs to assess the entire "course of dealing" between Plaintiffs and Burford, in order to find out whether, after signing the LFAs, they might have in some way acted inconsistently with the terms of the LFAs and thereby transmogrified them into assignments.  That is speculative, burdensome and disproportionate.  Argentina is impermissibly asking to flyspeck every single Burford document relating to the Actions.

7.      Public Statements Referencing the Actions Do Not Warrant Discovery of Drafts and Related Communications.  Burford objects to producing drafts of public documents and related communications.  On their face, all of the RFPs encompass public filings, disclosures and statements by Burford and its ultimate parent company ("**Public Documents**").  Burford

appreciates Argentina's acknowledgement that it already has the Public Documents it needs and is not asking Burford to produce any Public Documents.  However, Argentina persists in asking for every draft of, and communication concerning, any portion of any Public Document that references the Actions.  The Actions are significant components of Burford's litigation funding portfolio, and the Public Documents contain innumerable direct and indirect references to the Actions.  Argentina's stated rationale for seeking all these drafts and communications is that it needs to compare them with the Public Documents in order to assess Burford's "credibility."  Argentina's baseless speculation that Burford might have made an inaccurate statement in its Public Documents that might be useful on cross examination does not justify the discovery it seeks.[17]

        8.     <u>Documents Concerning Damages Claimed by Plaintiffs Are Not Discoverable</u>.

<u>Burford objects to producing documents concerning damages</u>.  RFP 9, as it appears in the Subpoena, seeks all documents and communications with any person concerning "the alleged damages claimed in the above-captioned Actions, including documents concerning the causation of damages, the amount of damages suffered and any method or formula that [Burford] propose[s] to use to calculate damages, including, without limitation, all internal analyses and representations to third parties about the value of any potential recovery in the above-captioned Actions."  In the course of the meet-and-confer process, Argentina apparently recognized that RFP 9 was an overbroad invasion of core work product, in that, as written, it sought all communications concerning damages with anyone in the world, as well as Burford's (i) internal

---

[17]    *See Vangelakos v. Wells Fargo Bank, N.A.*, 2014 WL 12772257, at *2 (S.D.N.Y. June 26, 2014) ("vague hope that material may be useful on cross-examination is an insufficient basis for these sweeping and intrusive requests"); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 619 (D.N.J. 2019) (denying discovery into litigation funding because although defendants speculated why such discovery might be relevant, "[s]peculation does not justify discovery.").

damages analyses, (ii) communications with its own lawyers concerning damages, and (iii) communications with Plaintiffs and their lawyers concerning damages, including how to approach them in the litigation prospectively ("propose[d]" methods and formulas for calculating damages).  Argentina has now limited RFP 9 to "documents and communications with non-client third parties, explaining that the term "non-client" excludes Plaintiffs, Burford and their respective lawyers.

Even with this modification, RFP 9 exceeds the proper limits of discovery.  According to Argentina, RFP 9, as modified, seeks damages-related documents and communications with respect to actual or prospective investors ("**Petersen Unitholders**") in Burford's share of Plaintiffs' potential recovery on the Petersen claims.  All of them received the information subject to non-disclosure agreements preserving its confidentiality and dispelling any likelihood that Argentina would obtain it.  Similarly, RFPs 10, 11 and 12 seek documents and communications concerning statements relating to valuation of the Petersen claims by Burford and its ultimate parent company in Public Documents and non-public statements to actual or prospective Petersen Unitholders.  Argentina contends that these materials are relevant because they would give Argentina a window into how Plaintiffs' damages have been analyzed and estimated.  Argentina's rationale for seeking these materials is exactly why they are non-discoverable—they are core work product under Rule. 26(b)(3)(B), and in any event would not be probative of any claim or defense in the Actions.

Burford's first contacts with Plaintiffs took place after the operative facts of Plaintiffs' breach of contract claims occurred.  Whatever non-public documents Burford may have concerning damages were received or generated because of anticipated or actual litigation, and accordingly reflect, among other things, litigation strategy.  Argentina has sought and received

discoverable documents from Petersen concerning the operative facts, and it has its own documents concerning those facts.  Argentina can do—and presumably has done—its own damages analysis based on the operative facts.  It has not asserted a substantial need for, or undue hardship in the absence of, Burford's documents concerning damages.  And even if, *arguendo*, Argentina could make such a showing—which it cannot—the documents it seeks are mandatorily protected by Rule 26(b)(3)(b) as "mental impressions, conclusions, opinions, or legal theories" concerning the Actions.[18]

9. <u>Documents Concerning Burford's Accounting Practices Are Not Discoverable</u>.

<u>Burford objects to producing documents concerning Burford's accounting practices</u>.  RFP 13 seeks all documents and communications concerning a putative class action ("***Merz***") brought in 2019 by an alleged investor in securities of Burford's ultimate parent company.  Mr. Merz voluntarily dismissed the action four months later without any payment.  There were no substantive proceedings in the action.  No answer was filed.  Mr. Merz never attempted to prove his allegations.  His complaint does not mention Argentina, YPF, Petersen or Eton Park.  Argentina's stated rationale for RFP 13 is that *Merz* alleges fraud in public filings and other public statements, and thus might show fraud in Burford's accounting with respect to the Petersen and Eton Park claims.  This is rank speculation that cannot justify discovery.

Argentina also attempts to justify its requests for all drafts of Public Documents referring to the Petersen and Eton Park claims (RFP 7, 8, 9, 10, 11, 12) on the basis that it is entitled to rummage around in Burford's accounting documents in the hope of finding support for its unfounded speculation that there was some flaw in Burford's accounting with respect to the

---

[18]     *See, e.g.*, *Noel v. City of New York*, 2018 U.S. Dist. LEXIS 213425, at *8, 2018 WL 6649969, at *3 (S.D.N.Y. Dec. 18, 21018) ("Documents or portions of documents that qualify as opinion work product are 'entitled to virtually absolute protection'") (citation and quotation marks omitted).

Petersen and Eton Park claims.  Even if, *arguendo*, there were such a flaw in Burford's

accounting practices—there was not—such documents would be undiscoverable on grounds of,

among other things, patent irrelevance to any claim or defense in the Actions.

10.     <u>Objections to Definitions and Instructions</u>.  Burford also objects to the

subpoenaed Definitions and Instructions, as follows:

- Burford objects to the definition of **"You"** and **"Your"** as overly broad, vague, ambiguous, unduly burdensome and seeking evidence not relevant to any party's claim or defense. Burford interprets **"You"** and **"Your"** to mean Burford Capital LLC, Prospect Investments LLC, and Ireton LLC.

- Burford objects to the definition of **"Petersen"** as overly broad, vague, ambiguous, unduly burdensome and seeking evidence not relevant to any party's claim or defense.  Burford interprets **"Petersen"** to mean Petersen Energia Inversora, S.A.U. and Petersen Energia, S.A.U.

- Burford objects to the definition of **"Eton Park"** as overly broad, vague, ambiguous, unduly burdensome and seeking evidence not relevant to any party's claim or defense.  Burford interprets **"Eton Park"** to mean Eton Park Capital Management, L.L.P., Eton Park Master Fund, Ltd/, and Eton Park Fund, L.P.

- Burford objects to the definition of **"YPF"** as overly broad, vague, ambiguous, unduly burdensome and seeking evidence not relevant to any party's claim or defense.  Burford interprets **"YPF"** to mean YPF, S.A.

- Burford objects to ¶13 of the Definitions to the extent it purports to impose rules of construction inconsistent with applicable rules, including the Local Rules of the United States District Court for the Southern District of New York (**"Local Rules"**).  Burford will interpret the present tense to means the present tense, and the past tense to mean the past tense.

- Burford objects to ¶9 of the Instructions to the extent it purports to impose a burden greater than that imposed by applicable rules, including the Local Rules.

**<u>RESPONSES AND OBJECTIONS TO SPECIFIC DOCUMENT REQUESTS</u>**

In addition to the foregoing General Objections, Burford makes the following specific

responses and objections to the RFPs:

**<u>DOCUMENT REQUEST NO. 1:</u>**

***All communications between You and Petersen.***

**Response to Document Request No. 1:**

In accordance with the General Objections above, Burford objects to RFP 1 on the grounds that it is overbroad, unduly burdensome and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Argentina has agreed to a cut-off of April 8, 2015, which is the date Petersen filed suit.  This acknowledges, at least implicitly, that post-suit communications between Petersen and Burford are not proper subjects of discovery.  Argentina disregards the fact that all pre-suit communications between Petersen and Burford were in anticipation of litigation, as well as the fact that Petersen and Burford share a common interest in the pursuit of the claims.  Even with the cutback to April 2015, RFP 1 is excessive because the operative facts on which the claims and defenses are predicated had all occurred prior to Burford's involvement.  In light of the foregoing, Burford declines to search for or produce documents in response to this Request.

**DOCUMENT REQUEST NO. 2:**

***All communications between You and Eton Park.***

**Response to Document Request No. 2:**

In accordance with the General Objections above, Burford objects to RFP 2 on the grounds that it is overbroad, unduly burdensome and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Argentina has agreed to a cut-off of November 3, 2016, which is the date Eton Park filed suit.  This acknowledges, at least implicitly, that post-suit communications between Eton Park and Burford are not proper subjects of discovery.  But Argentina disregards the fact that all pre-suit communications between Eton Park and Burford were in anticipation of litigation, as well as the fact that Eton Park and Burford share a common interest in the pursuit of

the claims.  Even with the cutback to November 2016, RFP 2 is excessive because the operative

facts on which the claims and defenses are predicated had all occurred prior to Burford's

involvement.  In light of the foregoing, Burford declines to search for or produce documents in

response to this Request.

## DOCUMENT REQUEST NO. 3:

*All communications between You and any third party concerning the Actions, including, without limitation, all communications with investors or prospective investors in any financial interest in the Actions.*

## Response to Document Request No. 3:

In accordance with the General Objections above, Burford objects to RFP 3 on the

grounds that it is overbroad, unduly burdensome and disproportional to the needs of the case, and

that it seeks materials protected by the work product doctrine and the attorney-client/common

interest privilege.  RFP 3 is unlimited as to time frame.  That it seeks communications

"concerning the Actions" is not a meaningful limitation as to subject matter, especially since

Argentina has not narrowed the term "third party" by name or even by category.  By asking for

communications with "investors or prospective investors in any financial interest in the Actions,"

RFP 3 impermissibly seeks a window into Plaintiffs' damages analyses.  In light of the

foregoing, Burford declines to search for or produce documents in response to this Request.

## DOCUMENT REQUEST NO. 4:

*All documents and communications concerning Petersen filing for bankruptcy protection in Spain in July 2012, including, but not limited to, all documents and communications concerning (i) the bankruptcy proceedings and the court-appointed receiver; (ii) the liquidation plan approved by the Spanish bankruptcy court in November 2014; (iii) all documents produced by You to the Spanish bankruptcy court in the bankruptcy proceedings; and (iv) the agreement on behalf of Petersen to provide financing for Petersen's claims. (See Petersen, ECF No. 1 (Petersen Compl.) at ¶ 47.)*

**Response to Document Request No. 4:**

In accordance with the General Objections above, Burford objects to RFP 4 on the grounds that it is overbroad, unduly burdensome and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Insofar as Argentina is asking for filings in the Petersen's Spanish bankruptcy proceedings, it can seek those documents from the Administrator of the Petersen bankruptcy estate.  Burford has no reason to believe that it has any such documents that the Administrator does not have, and therefore should not be burdened with duplicative discovery.  Insofar as Argentina seeks communications between Petersen and Burford that relate to the Spanish bankruptcy proceedings, such communications concerned Petersen's anticipated litigation against Defendants.  Documents concerning the financing of the Petersen Action are not relevant to any party's claims or defenses.  Insofar as RFP 4 seeks documents concerning the Petersen LFA in support of Argentina's assignment defense, that defense is not a basis for any discovery. Even if documents and communications concerning the Petersen financing were relevant (which they are not), they were created in anticipation of litigation or in connection with the conduct of litigation, and are protected under the work-product doctrine and attorney-client and common interest privileges.  Burford therefore declines to search for or produce documents in response to this Request.

**DOCUMENT REQUEST NO. 5:**

*All documents and communications concerning financing of Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. v. Argentine Republic and YPF S.A., No. 15-cv- 02739 (LAP), including, but not limited to, documents and communications concerning the Claim Prosecution Agreement dated March 4, 2015 entered into between Petersen and Prospect Investments LLC and the Pledge Agreement dated March 4, 2015 entered into between Petersen (by its liquidator) and Prospect Investments LLC, and all documents and communications with or concerning You and Petersen between January 1, 2012 and the present. (See Petersen, ECF No. 1 (Petersen Compl.) at ¶ 47.)*

**Response to Document Request No. 5:**

In accordance with the General Objections above, Burford objects to RFP 5 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Documents concerning the financing of the Petersen Action are not relevant to any party's claims or defenses.  Insofar as RFP 5 seeks documents concerning the Petersen LFA in support of Argentina's assignment defense, that defense is not a basis for any discovery.  Even if documents and communications concerning the Petersen financing were relevant (which they are not), they were created in anticipation of litigation or in connection with the conduct of litigation, and are protected under the work-product doctrine and attorney-client and common interest privileges.  Burford therefore declines to search for or produce documents in response to this Request.

## DOCUMENT REQUEST NO. 6:

***All documents and communications concerning financing of Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P. v. Argentine Republic and YPF S.A., No. 1:16-cv-08569 (LAP). (See Eton Park, ECF No. 1 (Eton Park Compl.) at ¶ 45.)***

**Response to Document Request No. 6:**

In accordance with the General Objections above, Burford objects to RFP 6 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Documents concerning the financing of the Eton Park Action are not relevant to any party's claims or defenses.  Insofar as RFP 6 seeks documents concerning the Eton Park LFA in support of Argentina's assignment defense, that defense is not a basis for any discovery.  Even if documents and communications concerning the financing of the Eton Park Action were relevant (which they are not), they were created in anticipation of litigation or

in connection with the conduct of litigation, and are protected under the work-product doctrine and attorney-client and common interest privileges.  Burford therefore declines to search for or produce documents in response to this Request.

## DOCUMENT REQUEST NO. 7:

*All documents and communications concerning Your attempts to sell, assign, or finance Your interest in the above-captioned Actions to other investors, including Your sale of "38.75% of [Your] interest in the proceeds of the Petersen claim for $236 million in cash in a series of third-party transactions over the past three years" and Your statement during the Q2 2019 Earnings Call that You have "now had 40 different institutional investors participate in the Petersen process in various ways." (Burford Capital 2019 Annual Report at 61.)*

## Response to Document Request No. 7:

In accordance with the General Objections above, Burford objects to RFP 7 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Documents concerning how Burford may go about the sale of portions of its interest in the Petersen claims are not relevant to any party's claims or defenses. Argentina's speculation that such documents might contain some discussion of Petersen's likelihood of success or recovery of damages does not support the fishing expedition it proposes. By seeking such materials, Argentina is plainly attempting to invade core work product such as analyses of damages or the merits of the claims, which are intertwined with litigation strategy. Burford therefore declines to search for or produce documents in response to this Request.

## DOCUMENT REQUEST NO. 8:

*All documents and communications concerning any valuation of any financial interest You have relating to the Actions, including, without limitations, any documents or communications reflecting valuations of the Claims Prosecution Agreement dated March 4, 2015. (See Petersen, ECF No. 1 (Petersen Compl.) at ¶ 47.)*

**Response to Document Request No. 8:**

In accordance with the General Objections above, Burford objects to RFP 8 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Documents concerning Burford's valuation of its financial interest in the Actions are not relevant to any party's claims or defenses. Argentina's speculation that such documents might contain some discussion of Petersen's likelihood of success or recovery of damages does not support the fishing expedition it proposes.  By seeking such materials, Argentina is plainly attempting to invade core work product such as analyses of damages or the merits of the claims, which are intertwined with litigation strategy.  Burford therefore declines to search for or produce documents in response to this Request.

**DOCUMENT REQUEST NO. 9:**

*All documents and communications concerning the alleged damages claimed in the above-captioned Actions, including documents concerning the causation of damages, the amount of damages suffered and any method or formula that You propose to use to calculate damages, including, without limitation, all internal analyses and representations to third parties about the value of any potential recovery in the above-captioned Actions.*

**Response to Document Request No. 9:**

In accordance with the General Objections above, Burford objects to RFP 9 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Any damages analyses Burford may have, whether used in the past or proposed for use at trial, are off limits under the work product doctrine, and are in any event not relevant to any party's claims or defenses.  Burford therefore declines to search for or produce documents in response to this Request.

20

**DOCUMENT REQUEST NO. 10:**

*All documents and communications concerning Your statement during the Q2 2018 Earnings Call on July 25, 2018 that there is "a robust market in the Petersen claim" and that Your "additional sale of Petersen came at a higher implied valuation at $800 million for the Petersen entitlement."*

**Response to Document Request No. 10:**

In accordance with the General Objections above, Burford objects to RFP 10 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege. Documents concerning the sale of portions of Burford's interest in the Petersen claims are not relevant to any party's claims or defenses. Argentina's speculation that such documents might contain some discussion of Petersen's likelihood of success or recovery of damages does not support the fishing expedition it proposes. By seeking such materials, Argentina is plainly attempting to invade core work product such as analyses of damages or the merits of the claims, which are intertwined with litigation strategy. Burford therefore declines to search for or produce documents in response to this Request.

**DOCUMENT REQUEST NO. 11:**

*All documents and communications concerning Your statement during the Q2 2017 Earnings Call on July 27, 2017 that "Petersen is a large and, right now, particularly valuable investment."*

**Response to Document Request No. 11:**

In accordance with the General Objections above, Burford objects to RFP 11 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege. Documents concerning Burford's valuation of its financial interest in the Petersen claims are not relevant to any party's claims or defenses. Argentina's

speculation that such documents might contain some discussion of Petersen's likelihood of success or recovery of damages does not support the fishing expedition it proposes.  By seeking such materials, Argentina is plainly attempting to invade core work product such as analyses of damages or the merits of the claims, which are intertwined with litigation strategy.  Burford therefore declines to search for or produce documents in response to this Request.

## DOCUMENT REQUEST NO. 12:

***All documents and communications concerning Your statement during the Q4 2019 Earnings Call on April 28, 2020 that Section 7(g)(iv) of the YPF Bylaws "would be the mid-point in the bylaws formula range, not at all the high end" and "sophisticated institutional investors who had underwritten it and who have very high return expectations themselves, thought that buying it at $1 billion valuation was an attractive investment."***

## Response to Document Request No. 12:

In accordance with the General Objections above, Burford objects to RFP 12 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  How actual or prospective Petersen Unitholders may value an interest in the Petersen claims is irrelevant to any party's claims or defenses, as is Burford's valuation of its financial interest in the claims.  Argentina's speculation that such documents might contain some discussion of Petersen's likelihood of success or recovery of damages does not support the fishing expedition it proposes.  By seeking such materials, Argentina is plainly attempting to invade core work product such as analyses of damages or the merits of the claims, which are intertwined with litigation strategy.  Burford therefore declines to search for or produce documents in response to this Request.

## DOCUMENT REQUEST NO. 13:

***All documents and communications related to the proceeding in the United States District Court for the Eastern District of New York entitled Merz v. Burford Capital Limited et al., with civil docket number 1:19-cv-04807-NG-CLP.***

**Response to Document Request No. 13:**

In accordance with the General Objections above, Burford objects to RFP 13 on the grounds that it is overbroad, unduly burdensome, and disproportional to the needs of the case, and that it seeks materials protected by the work product doctrine and the attorney-client/common interest privilege.  Court filings in *Merz* are publicly available.  To the extent that Burford may have other documents concerning *Merz*, they are irrelevant to any party's claims or defenses.  Additionally, Burford's documents concerning *Merz* include attorney-client communications with Burford's counsel as well as work product.  Burford therefore declines to search for or produce documents in response to this Request.

Dated: New York, New York
        October 26, 2020

                              JOSEPH HAGE AARONSON LLC

                              By: */s/ Pamela Jarvis*_____

                              Gregory P. Joseph
                              Pamela Jarvis
                              Rachel M. Cherington
                              485 Lexington Avenue, 30th Floor
                              New York, NY 10017
                              Tel.: (212) 407-1200

                              *Counsel for Non-Party Burford*
                              *Capital LLC*