**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 19, 2020

Via ECF
The Honorable Loretta A. Preska,
    United States District Court for the Southern District of New York,
        500 Pearl Street,
            New York, NY  10007.

Re: *Petersen Energía Inversora S.A.U.*, *et al.* v. *Argentine Republic*, 15-cv-2739 ("*Petersen*"); *Eton Park Cap. Mgmt.* v. *Argentine Republic*, 16-cv-8569

Dear Judge Preska:

On behalf of Defendants Argentine Republic, and YPF S.A., I respond to Burford's November 18 letter ("Opp. Ltr."). Burford concedes that it has "decline[d] to make any production" in these cases (Opp. Ltr. at 1) and does not dispute that it (i) completely controls the prosecution of these actions; and (ii) would be the principal beneficiary of the over $1 billion judgment it seeks in *Petersen*, based on its €15 million investment—a 5,000% rate of return (Defs.' Ltr. at 1-2). Most importantly, Burford admits that it possesses relevant documents, but is refusing to produce *any* of them, much less to provide the privilege log required by this Court's rules. (Opp. Ltr. at 2.) That Burford styles itself a "litigation funder" does not permit it to evade the discovery obligations that it undertook when acquiring Plaintiffs' claims (and their perceived financial upside). As Judge Lynch explained, "[i]t is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim." *JP Morgan Chase Bank* v. *Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005) (Lynch, J.); *see also Royal Park Inv. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 346 (S.D.N.Y. 2016) (Moses, J.) (collecting cases).

At the outset (Opp. Ltr. at 1), Burford makes the frivolous claim that it need not produce documents because its CEO testified to some of the topics on which documents. Defendants have the right to test that testimony in light of the underlying documents. Burford also makes a token effort to claim that Defendants have not "established the relevance" of the many documents in Burford's possession bearing on these actions. (Opp. Ltr. at 2.) Not so. For example, the circumstances surrounding the Petersen Claim Prosecution Agreement ("CPA") are highly relevant, as Petersen's *own initial disclosures* acknowledged. (*See* Ex. 1 at 6 (identifying "Documents concerning the claim prosecution agreement between Petersen and [Burford subsidiary] Prospect" as documents Plaintiffs "may use to support their claims or defenses"); *id.* at 5 (identifying Burford's CEO as having "discoverable information" concerning the CPA).) When the meaning and effect of a contract is relevant, courts routinely order discovery into its negotiating history. *See Gerszberg* v. *Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 293 (S.D.N.Y. 2016) (Engelmayer, J.). Here, there is already strong evidence that Petersen and Burford dressed up the CPA as a funding agreement precisely because of concerns that an overt assignment could jeopardize Petersen's standing to later bring its claims in a U.S. court. If Petersen no longer owns the claim, and is not the real party in interest, its claim must be dismissed. *See Clarex Ltd.* v. *Natixis Sec. Am. LLC*, 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012) (Engelmayer, J.) ("As

The Honorable Loretta A. Preska                                                                                                -2-

assignors—and that was the role plaintiffs held as of January 30, 2012—Clarex and Betax had no interest in this litigation at the filing date."). To date, Defendants have learned that Petersen's receiver announced that it intended to seek a "sale or assignment" of these claims in October 2014 (Ex. 2 (Oct. 2014 Liquidation Plan) § 3.2), and another bidder recognized that a sale of Petersen's claims to a third party could result in a challenge to the assignor's standing (Ex. 3 (Langdell Bid) at ¶ 5).

        Burford's blanket claim to privilege and work product is also wrong. The very cases Burford cites undermine its assertion that it is "well settled" that litigation funding falls within attorney-client privilege or work product protection. *See In re Int'l Oil Trading Co.*, 548 B.R. 825, 830 (Bankr. S.D. Fla. 2016) (characterizing issue as a "novel question of law" and applying privilege and work product doctrine "under the circumstances of this case"); *Doe* v. *Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at *2 n.4 (N.D. Ill. May 1, 2014) (performing "an individual privilege determination for each of the [litigation] Financing Materials"). Burford's failure to cite a single supporting case from *this District* confirms that the application of work product and privilege to litigation funding is *not* "well settled." In particular, Burford's arms-length communications with Petersen concerning the CPA are not privileged or work product. *See, e.g.*, *Cohen* v. *Cohen*, 2015 WL 745712, at *1, 4 (S.D.N.Y. Jan. 30, 2015) (Preska, J.) (litigation funder could not protect documents concerning "legal strategy, court filings, discovery, and funding for the litigation" where funder had only a "common financial interest"); *Acceleration Bay LLC* v. *Activision Blizzard, Inc.*, 2018 WL 798731 (D. Del. Feb. 9, 2018) (work product doctrine does not extend to communications between litigation funder and plaintiff "before any [litigation financing] agreement was reached"). In any event, Defendants have a "substantial need" for documents in Burford's possession. Having received few meaningful documents from Petersen, Burford's internal e-mails are critical to determining Burford's and Petersen's purpose and intent in drafting the CPA.

        Burford's claim of work product is also inconsistent with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮: it cannot claim that its documents were created in anticipation of litigation and therefore protected and yet maintain that no preservation obligations attached to those documents. (*See* Ex. 4 (Bogart Tr.) at 205:12-14, 208:17-209:12.) Burford is not a disinterested "non-party" here; it is the real party in interest in all but label. Document preservation obligations extend to a nonparty where, as here, "there is a special relationship involving the non-party." *Rollins* v. *Banker Lopez & Gassler*, 2020 WL 1939396, at *3 (M.D. Fla. Apr. 22, 2020). Burford's failure to preserve documents subjects it to the same sanctions as a party, yet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ apart from alluding to a preservation notice, which would only have confirmed Burford's already existing obligations given that Burford was contemplating litigation.

        Finally, Burford has not carried its burden of *proving* the existence of any privilege, or that Burford's extensive discussions of these cases with prospective third-party investors, in its SEC filings, and on public conference calls, did not waive that privilege over particular documents. This Court cannot make this determination in the abstract; rather the elements of privilege and work product must be applied "on a case-by-case basis." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992); *see In re Valsartan Prod. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) ("[T]he Court is not ruling that litigation funding discovery is off-limits in all instances."). Burford has no answer to these cases or for its failure to produce the required privilege log.

The Honorable Loretta A. Preska                                                                                     -3-

                                                Respectfully,

                                                */s/ Robert J. Giuffra, Jr.*

                                                Robert J. Giuffra, Jr.

cc:     Counsel of Record