**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

December 21, 2020

Via ECF

The Honorable Loretta A. Preska,
   United States District for the Southern District of New York,
     500 Pearl Street,
      New York, NY  10007.

        Re:  *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP)

Dear Judge Preska:

        On behalf of the Republic of Argentina, I write pursuant to the Court's December 18, 2020 Order (ECF 242 in *Petersen*) and in response to Plaintiffs' December 17, 2020 letter (ECF 241 in *Petersen*).  On November 23, 2020, this Court expressly ordered that "Petersen [1] shall produce *all* documents responsive to Defendants' document requests, including *any* documents in the possession, custody, or control of the Eskenazi family, and [2] shall make the Eskenazis available for deposition."  (ECF 219 at 2 (emphasis added).)  Plaintiffs have not complied with the November 23 Order and apparently do not intend to do so.

        This Court's November 23 Order was grounded on the undisputed facts that the Eskenazis—who are the central witnesses in this case—(i) created the Petersen entities as special purpose vehicles ("SPVs"), with no employees or operations, solely to acquire YPF shares in 2008 and 2011; (ii) have admittedly coordinated with Plaintiffs' counsel and Burford concerning settlement strategy; and (iii) stand to profit from any judgment in this case.  Despite this, Plaintiffs have produced no relevant documents from the Eskenazis' files.  Plaintiffs apparently took no steps to preserve, or ensure access to, documents that the Eskenazis and other individuals within the Petersen Group had regarding Petersen's business either when Petersen went into bankruptcy in Spain in 2012, *or* Burford took over prosecution of the claims in March 2015.  (*See* ECF 194 at 2-6.)  In this District, Plaintiffs cannot evade their discovery obligations by structuring themselves as SPVs and then handing over their case to a litigation speculator, like Burford.  *See, e.g.*, *JP Morgan Chase Bank* v. *Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005) (Lynch, J.); *Royal Park Inv. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 347 (S.D.N.Y. 2016) (Moses, J.).

        To try to justify their non-compliance with the Court's November 23 Order, Plaintiffs claim that counsel for the Eskenazis and other Petersen entities, who is located in New York and apparently has been monitoring the docket in this case, *contacted them* on some unstated date in the

The Honorable Loretta A. Preska                                                                                              -2-

last four weeks and indicated a "willingness" on behalf of his clients "to communicate with Plaintiffs and Defendants to attempt to reach agreement to allow *some* voluntary production of the documents and testimony requested." (Ltr. at 1 (emphasis added).)  Plaintiffs' December 17 letter is the first that Defendants have heard of the Eskenazis's supposed willingness to participate in discovery in this case.

Tellingly, in professing some willingness by the Eskenazis to participate in discovery, Plaintiffs bury the lede:  the Eskenazis continue to deny that this Court has jurisdiction over them and their family company (Grupo Petersen), even though their SPVs are Plaintiffs here.  The Eskanazis may be willing to engage in "some" unspecified amount of discovery, but only "voluntar[ily]" or "in accordance with the rules governing letters rogatory" (*id.* at 2)—which is simply a convoluted way of saying that they (and the Petersen plaintiffs) propose to decide what discovery they are willing to provide, and certainly not deposition testimony or the production of documents to the full extent provided by the Federal Rules of Civil Procedure as this Court has ordered.

By its terms, the Court's November 23 Order requires Plaintiffs to produce documents from the Eskenazis in response to long-outstanding discovery requests and to produce the Eskenazis for depositions.  Although we have repeatedly asked Plaintiffs about their progress, Plaintiffs have to date produced no documents from the Eskenazis nor indicated when they will do so.  Nor have Plaintiffs provided any dates when the Eskenazis will be made available for depositions.  It is up to Plaintiffs to obtain the documents and appearance at depositions of the Eskenazis, whether "voluntar[ily]" or not.  For now, the Court need do no more than emphasize to Plaintiffs their responsibility to comply with the Court's month-old order, and to do so expeditiously in view of the mid-February cutoff of fact discovery.

Plaintiffs' claim of "defendants' unjustifiable refusal to proceed with the letters [rogatory]" (Ltr. at 1), is a false and transparent effort to shift responsibility for their continued refusal to comply with the Court's November 23 Order.  This issue was already addressed during the November 23 hearing (*see* ECF 194 at 6 in *Petersen*), when this Court rejected Plaintiffs' effort to shift the burden to *Defendants* to go get Plaintiffs' documents through the cumbersome Hague process.  Of course, Defendants should never have had to pursue discovery of the Eskenazi family through the Hague Convention process in the first place.  The Petersen Plaintiffs—SPVs backed by a litigation funder seeking a massive multi-billion windfall on its €15 million investment—should have long ago collected those documents and otherwise taken steps to secure the Eskenazis' cooperation.

As Defendants informed the Court in our December 15 letter (ECF 240 in *Petersen*), the Republic transmitted the letters rogatory to the U.S. Department of State on October 27, immediately after receiving the signed copies from the Court, but very recently learned that restrictions imposed on personnel stemming from COVID-19 delayed the State Department's processing of the requests.  As a result, on December 14, we obtained the originals of the letters rogatory from the State Department and, in accordance with the State Department's advice, transmitted the originals that day to the Ministry of Foreign Affairs, International Trade and Worship

The Honorable Loretta A. Preska                                                                                                -3-

(the "Ministry of Foreign Affairs").  We have confirmed that the Ministry of Foreign Affairs received the original letters on Friday, December 18, and that day, in accordance with Argentine law procedures, requested that an appellate chamber of the Argentine judiciary select a lower court judge to whom the requests will be submitted.  The Ministry expects that the appellate chamber will assign the requests to one or more judges pursuant to a random selection process, at which point the Ministry will transmit the requests to those judges.  The process is moving forward, but, as the Court recognized during the November 23 hearing, it is a time-consuming one.[1]  And it is no substitute for the discovery this Court authorized in its November 23 Order pursuant to the Federal Rules.

\*   \*   \*

What is going on here?  Plaintiffs (and their "funder," Burford) and the Eskenazis want to refashion this Court's order into a "voluntary" process so that the Eskenazis can selectively decide how much discovery they will provide.  That way, Plaintiffs can try to duck responsibility when "it turns out" the Eskenazis's documents and information have not been preserved or will not be produced.  The Court should not countenance Plaintiffs' refusal to comply with its November 23 Order.  If the Petersen Plaintiffs continue to disregard this Court's Order, they should be subject to all appropriate sanctions, including dismissal of their action.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.

cc:     Counsel of Record

---

[1]     Plaintiffs cite no authority for the suggestion that this Court order the Republic "to transmit" the letters of request in a manner other than as provided in the Hague Convention and implementing Argentine law.  The complaint and an unrelated order in the *EM Ltd.* case (*see* Ltr. at 2) have nothing to do with the issue presented here.  Indeed, while Plaintiffs state that *EM Ltd.* was "*vacated on other grounds*" by the Second Circuit in *NML Capital, Ltd.* v. *Republic of Argentina*, 652 F.3d 172 (*id.*)—the proposition relied on by Plaintiffs (alter ego liability) was addressed in a *later* opinion.  There, the Second Circuit *rejected* plaintiffs' argument that the Banco Central de la República Argentina was an alter ego of the Republic of Argentina.  *EM Ltd.* v. *Banco Central de la República Argentina*, 800 F.3d 78, 96 (2d Cir. 2015) ("BCRA does not constitute Argentina's 'alter ego' for the purposes of this suit.").