# EXHIBIT 5

English translation for information purposes only.

*In case of discrepancy the Spanish version prevails.*

# AGREEMENT FOR THE AMICABLE SETTLEMENT AND COMPROMISE OF EXPROPRIATION

Between the ARGENTINE REPUBLIC, represented by the MINISTER OF ECONOMY AND PUBLIC FINANCE, DR. AXEL KICILLOF, with an address at Hipólito Yrigoyen 250, in the Autonomous City of Buenos Aires, on the one part, and REPSOL S.A., REPSOL CAPITAL S.L. and REPSOL BUTANO S.A., represented by Messrs. LUIS SUÁREZ DE LEZO MANTILLA and NEMESIO FERNÁNDEZ-CUESTA LUCA DE TENA as representatives, who provide evidence of their representative capacity with instruments that are in force and that were executed by persons authorized to do so and with the other supplemental documentation attached hereto as **ANNEX** I, with an address at Méndez Álvaro 44, Madrid, Kingdom of Spain, on the other, both referred to collectively as the "PARTIES",

**WHEREAS:**

Decree No. 530/2012 (B.O. 16-04-12) provided for the temporary takeover of YPF for a period of THIRTY (30) DAYS "in order to assure the continuity of the company, the preservation of its assets and its value, the supply of fuel, and to guarantee coverage of the needs of the country" within the framework of the legislative initiative by means of which the NATIONAL EXECUTIVE BRANCH

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

1

English translation for informational purposes only.
In case of discrepancy the Spanish version prevails.

sought that 51% of the ownership of such company represented by an equal percentage of Class "D" shares be declared in the public interest and subject to expropriation.

The takeover of YPF S.A. occurred on that same April 16, 2012.

Decree No. 557/2012 (B.O. 19-04-12) broadened the scope of Decree No. 530/2012 to YPF GAS, the takeover of which occurred on April 18, 2012.

The takeovers of YPF and YPF Gas were extended in time by Decree No. 732/2012 (B.O. 16-05-12).

Article 1 of Law No. 26,741 (B.O. 7-05-12), on National Hydrocarbon Sovereignty declared "hydrocarbon self-sufficiency, as well as the exploration, exploitation, industrialization, transport and sale of hydrocarbons, to be in the national public interest and a primary objective of the Argentine Republic, in order to guarantee economic development with social equity, increased employment, increased competitiveness of the various economic sectors, and the equitable and sustainable growth of the provinces and regions."

"[F]or purposes of ensuring compliance with its objectives," Article 7 of Law No. 26,741 declared fifty-one (51%) percent of the ownership of YPF, represented by an equal percentage of the Class "D" shares of such company, directly or indirectly owned by Repsol, S.A., or its controlled or controlling entities, to be of public interest and subject to expropriation. It also declared fifty-one (51%) percent of the ownership of YPF GAS, represented by sixty (60%) percent of the

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

2

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

Class "A" shares of such company owned by Repsol Butano, S.A., or its controlled or controlling entities, to be of public interest and subject to expropriation. Article 10 of said Law No. 26,741 provided that, for purposes of formalizing and recording the ownership of the rights corresponding to the shares subject to expropriation, it must be stated that the expropriation of such shares is due to reasons of the public interest and that the future transfer thereof is prohibited without the authorization of the Honorable National Congress by a two-thirds vote of its members.

Article 11 of Law 26,741 in turn provided that the expropriation procedures will be governed by the provisions of Law No. 21,499, with the expropriating party being the NATIONAL EXECUTIVE BRANCH.

Article 12 of Law No. 26,741 provided that the price of the property subject to expropriation will be determined by the NATIONAL COURT OF APPRAISALS in accordance with the provisions of Article 10 and related articles of Law No. 21,499.

Article 13 of Law No. 26,741 provided that, "in order to ensure the continuity of the hydrocarbon exploration, production, industrialization and refinancing activities of YPF and YPF GAS, as well as the transportation, sale and distribution thereof and to increase investor flows for the proper supply of the fuel needed for the functioning of the national economy" within the framework of such Law, the NATIONAL EXECUTIVE BRANCH, through the persons or bodies appointed thereby, will exercise all of the rights conferred by the shares to be expropri-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

ated upon the terms of the extraordinary temporary seizure provided for in Articles 57 and 59 of Law No. 21,499.

Within this context, the ARGENTINE REPUBLIC began to exercise the rights conferred by the shares subject to expropriation, beginning with the general shareholder assemblies on June 4, 2012 and July 6, 2012 of YPF and YPF GAS, respectively.

Repsol, S.A. and its controlled companies commenced various non-judicial, judicial and/or arbitral actions and claims at the domestic and international levels against the ARGENTINE REPUBLIC, YPF and YPF GAS, directly or indirectly challenging the provisions of Decree Nos. 530/2012, 532/2012, 557/2012 and 732/2012, the sanction provided by Law No. 26,741 and the application and enforcement of such acts and legal provisions, hereinafter, collectively, the "DISPUTE".

By means of Law No. 24,118 (B.O. 5-08-92), the ARGENTINE REPUBLIC approved the "AGREEMENT FOR THE MUTUAL PROMOTION AND PROTECTION OF INVESTMENT BETWEEN THE ARGENTINE REPUBLIC AND THE KINGDOM OF SPAIN," hereinafter, the "ARGENTINA-SPAIN BIT," pursuant to which REPSOL commenced an international arbitration against the ARGENTINE REPUBLIC.

Article X of the ARGENTINA-SPAIN BIT provides that "disputes arising between one of the Parties and an investor from another Party with respect to invest-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

4

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

ments in the sense of this Agreement must, to the extent possible, be resolved amicably between the parties to the dispute."

Within the context of the ARGENTINA-SPAIN BIT and pursuant to Law Nos. 26,741 and 21,499, the ARGENTINE REPUBLIC and REPSOL have engaged in amicable negotiations in Argentina, as a result of which they have agreed to enter into this "AGREEMENT FOR THE AMICABLE SETTLEMENT AND COMPROMISE OF EXPROPRIATION", including all of the ANNEXES hereto (hereinafter, the "AGREEMENT"), by means of which the ARGENTINE REPUBLIC and REPSOL put an end to the DISPUTE.

The signing of the AGREEMENT constitutes a sovereign act of the ARGENTINE REPUBLIC, thus complying with Law Nos. 26,741 and 21,499 and with the international obligations set forth in the ARGENTINA-SPAIN BIT.

For such purpose, subject to compliance with certain conditions, they agree the transfer to the ARGENTINE REPUBLIC of the shares subject to expropriation and the concession to REPSOL of the right to obtain from the ARGENTINE REPUBLIC a single, lump-sum payment of compensation for the expropriation of the shares and for any other concept arising from or linked to the issuance and enforcement of Decree Nos. 530/2012, 532/2012, 557/2012 and 732/2012, of Law No. 26,741, related provisions, and actions taken in enforcement thereof, the BACKGROUND, and other items contemplated in the AGREEMENT.

The NATIONAL COURT OF APPRAISALS has issued a report stating that "the amount to be agreed is fair and reasonable for all purposes of the foreseen

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

5

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

compromise and amicable settlement." Attached as **ANNEX** II is a copy of said report.

Article 12 of Law No. 21,499 provides that the compensation shall be paid in cash, save conformity of the expropriated.

For the ARGENTINE REPUBLIC, the compensation to be paid for the items indicated above will be fair, sufficient, and appropriate, taking into account the terms of payment and other provisions set forth in the AGREEMENT, and after compliance with the applicable terms hereof.

REPSOL affirms its objection to the expropriation, the method thereof and the compensation offered for such items. However, taking into account the advantages of an early resolution and the undertakings provided in the AGREEMENT, it decides to accept the compensation offered in order to put a quick and definitive end to the DISPUTE by amicable means, which includes the waiver, subject to reciprocity, of its actions and claims against the ARGENTINE REPUBLIC and YPF and the other concessions provided for herein.

The representatives of REPSOL are fully authorized to execute this AGREEMENT on its behalf, and for such purpose attach as part of **ANNEX** I certified and duly legalized copies of the decisions made by each of the company's corporate bodies in their capacity as holder of the expropriated shares identified in **ANNEX** III, approving the signing of the AGREEMENT.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

Based on all of the foregoing, the PARTIES AGREE:


**CLAUSE ONE. PURPOSE.**

Within the context of the provisions of Law Nos. 21,499 and 26,741, the ARGENTINA-SPAIN BIT, and pursuant to the provisions of the AGREEMENT, the ARGENTINE REPUBLIC concedes to REPSOL and offers thereto the sum of FIVE BILLION  DOLLARS (USD 5,000,000,000.00) as compensation for the expropriation of 200,589,525 Class "D" shares of YPF and 89,755,383 Class "A" shares of YPF GAS (hereinafter, collectively, the "SHARES") and for any other claim arising from or connected to the issuance and enforcement of Decree Nos. 530/2012, 532/2012, 557/2012 and 732/2012, of Law No. 26,741 and related legal provisions, the BACKGROUND, the interest that has accrued from the date of dispossession and other items contemplated in the AGREEMENT (hereafter, the "COMPENSATION").


**CLAUSE TWO. CONSENT.**

Solely for purposes of finding an amicable resolution of the DISPUTE, and in contemplation of all of the terms and conditions set forth in this AGREEMENT, REPSOL accepts the COMPENSATION offered by the ARGENTINE REPUBLIC for the expropriation of the SHARES and the other items contemplated in the AGREEMENT.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for informational purposes only.
*In case of discrepancy the Spanish version prevails.*

**CLAUSE THREE. MEANS OF PAYMENT.**

REPSOL consent for all purposes to the payment of the COMPENSATION be-
ing made by the delivery of "DOLLAR-DENOMINATED BONDS OF THE
ARGENTINE REPUBLIC," which are instruments of internal public Argentine
debt (hereafter, "GOVERNMENT BONDS"), of the type and amount identified in
**ANNEX** IV, all upon the terms set forth in CLAUSE FOUR below.

The interest accruing on the GOVERNMENT BONDS from the commencement
of the current interest period to the time of delivery thereof shall be received by
REPSOL as consideration for the deferral of the payment of the
COMPENSATION entailed by the acceptance of the GOVERNMENT BONDS
as the means of payment.

**CLAUSE FOUR. NATURE OF THE PAYMENT.**

1.  The delivery of the GOVERNMENT BONDS will not of itself produce the
effects of paying the COMPENSATION. The releasing effect of payment shall
only occur if, and to the extent that:

> *(i)*    REPSOL receives the amounts due in REDEMPTION of the
> GOVERNMENT BONDS, free of DISRUPTIVE MEASURES; or

> *(ii)*    REPSOL for any reason TRANSFERS such GOVERNMENT
> BONDS to third parties.

2.  In both cases, the releasing effects of the payment and the resulting reduc-
tion (or, if applicable, termination) of the debt from the COMPENSATION shall

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts,
the Spanish version will prevail.

8

Case 1:15-cv-02739-LAP   Document 269-5   Filed 01/25/21   Page 10 of 165
English translation for information purposes only.
*In case of discrepancy the Spanish version prevails.*

occur in the sum of (i) the amount received as REDEMPTIONS of the GOVERNMENT BONDS, and (ii) the amount, net of DEDUCTIBLE EXPENSES and ACCRUED INTEREST outstanding, received for the TRANSFER of the GOVERNMENT BONDS. In any case, the outstanding balance of the COMPENSATION may not at any time exceed the FACE AMOUNT plus capitalized interest of the GOVERNMENT BONDS that have not been redeemed and/or TRANSFERRED.

3.   The releasing effect of the payment of the COMPENSATION shall be deemed to have taken complete effect if, whatever the amount received by REPSOL as REDEMPTIONS and/or TRANSFERS of the GOVERNMENT BONDS, REPSOL no longer maintains control of the GOVERNMENT BONDS. For purposes of clarification, it shall be understood that REPSOL maintains control of all of the GOVERNMENT BONDS that have not been TRANSFERRED.

**CLAUSE FIVE. LIMIT OF THE COMPENSATION.**

1.   REPSOL may not in any event, either by collecting the amount of the REDEMPTIONS of the GOVERNMENT BONDS and/or by the TRANSFER thereof, receive an amount greater than the COMPENSATION. Provided that such amount is reached, the debt for the COMPENSATION conceded in CLAUSE ONE shall be deemed to have been definitively extinguished.

2.   In order to determine if the amount of the COMPENSATION has been reached, the following shall be added pursuant to the terms of CLAUSE FOUR:

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

9

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

(i) the amounts actually received by REPSOL as REDEMPTIONS of the GOVERNMENT BONDS, and (ii) the amounts, net of DEDUCTIBLE EXPENSES and ACCRUED INTEREST outstanding, actually received by REPSOL for the TRANSFER of the GOVERNMENT BONDS.

3.   If the amounts received by REPSOL for the items set forth in Section 1 of this CLAUSE reach the sum of FOUR BILLION EIGHT HUNDRED MILLION DOLLARS (USD 4,800,000,000), REPSOL must so notify the ARGENTINE REPUBLIC, which shall have, for a period of TEN (10) DAYS from receipt of such notice and only for purposes of redemption, an option to acquire the remaining GOVERNMENT BONDS that REPSOL maintains under its control for an amount in DOLLARS equal to the positive difference between: (i) the amount of the COMPENSATION plus ACCRUED INTEREST outstanding corresponding to the GOVERNMENT BONDS that have not been TRANSFERRED, and (ii) all amounts collected by REPSOL as referred to at the beginning of this Section, all at no cost to REPSOL.

4.   If the ARGENTINE REPUBLIC does not exercise the option provided for in Section 3 above, upon reaching the amount of the COMPENSATION, REPSOL shall proceed, with respect to the GOVERNMENT BONDS that have not been TRANSFERRED, in accordance with instructions that it receives from the ARGENTINE REPUBLIC solely for purposes of the redemption thereof. With respect to sums received in surplus, it shall also proceed in accordance with

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for informational purposes only.
In case of discrepancy the Spanish version prevails.

instructions that it receives from the ARGENTINE REPUBLIC. In both cases, the corresponding actions shall be at no cost to REPSOL.

5.   REPSOL must notify the ARGENTINE REPUBLIC that it has reached the amount provided for in Section 3 of this CLAUSE and, if applicable, the amount of the COMPENSATION, sending the respective notice within a period of FIVE (5) DAYS from the occurrence of such circumstances.

**CLAUSE SIX. WAIVERS, DISCONTINUANCES AND INDEMNITIES.**

1.   Once the CLOSING has occurred, it shall be deemed that REPSOL:

*(i)*    Has become obligated to abandon the right and all extra-judicial, judicial and/or arbitral actions and claims for any GROUNDS PRIOR to the AGREEMENT that it has commenced against the ARGENTINE REPUBLIC and/or its RELATED PERSONS and against YPF and YPF GAS and/or their RELATED PERSONS, both in the Argentine Republic and abroad or internationally, based on domestic or international law, arising from or connected to: the issuance and implementation of Decree Nos. 530/2012, 532/2012, 557/2012 and 732/2012; of Law No. 26,741 and the supplemental rules and acts in enforcement thereof; the BACKGROUND; the corporate acts and/or bylaw provisions of YPF and YPF GAS, the actions of their Boards and/or officers and/or Managers and the status of REPSOL as shareholder

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

of YPF and YPF GAS; in all cases with the exception of the EXCLUDED MATTERS (hereinafter, collectively, the "DEMANDS").

The DEMANDS are not limited to the grounds and claims described in **ANNEX** V and include any other claim now or hereafter existing against the ARGENTINE REPUBLIC or its RELATED PERSONS and against YPF and YPF GAS and/or their RELATED PERSONS relating to the declaration of public interest, submission to expropriation and temporary seizure of the shares of YPF and YPF GAS; the BACKGROUND; the receipt of dividends by the ARGENTINE REPUBLIC during the temporary seizure, type of any indemnification for such seizure; the exercise of economic and political rights corresponding to the shares by the ARGENTINE REPUBLIC; the disclosure and/or public dissemination of such acts; any act performed and/or carried out and/or conferred by YPF, YPF GAS and/or their RELATED PERSONS with respect to the operation, administration, preservation and/or disposition of the assets of such companies prior to the date of execution of the Agreement; the behavior of REPSOL in the Argentine Republic as shareholder of YPF and YPF GAS for any other GROUNDS PRIOR to the date of execution of the AGREEMENT, including those claims that may be based on the invocation of the ARGENTINA-SPAIN BIT, any other similar provision or the general principles of international law, Argentine laws and reg-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

12

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

ulations; a claim for legal fees and expenses; and any other claim against the ARGENTINE REPUBLIC and/or its RELATED PERSONS arising from or connected to the demand that the ARGENTINE REPUBLIC must for any reason acquire the REMAINING SHARES or provide any compensation for such reason.

(ii)   It has also waived the bringing of any non-judicial, judicial or arbitral claim hereafter in any forum or jurisdiction, whether domestic, foreign or international, against the ARGENTINE REPUBLIC and/or its RELATED PERSONS and YPF and YPF GAS and/or their RELATED PERSONS based on or connected to the issues mentioned in Point (i) above;

(iii)   It must obtain discontinuances from the plaintiffs for the complaints and claims identified in **ANNEX** VI that form part of the definition of DEMANDS and, if such discontinuances are not obtained, indemnify the ARGENTINE REPUBLIC and its RELATED PERSONS pursuant to Point (iv) below; and

(iv)   It must indemnify the ARGENTINE REPUBLIC and its RELATED PERSONS against any judicial, non-judicial and/or arbitral claim or action brought by REPSOL and/or its RELATED PERSONS with respect to the DEMANDS.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for information purposes only.

*In case of discrepancy the Spanish version prevails.*

2.   Once the CLOSING has occurred, it shall be deemed that ARGENTINE REPUBLIC:

*(i)*     Has become obligated to abandon the right and all present or future extra-judicial, judicial and/or arbitral actions and claims against REPSOL and/or its RELATED PERSONS, both within the territory of the ARGENTINE REPUBLIC as well as abroad or in the international area, based on domestic or international law, arising from or connected to the actions of REPSOL and/or its RELATED PERSONS as shareholders (whether controlling or not), directors, statutory auditors and/or employees of YPF and/or YPF GAS and/or their respective CONTROLLED COMPANIES while REPSOL exercised control over YPF and YPF Gas, and also since the seizure provided for by Decree Nos. 530/2012 and 557/2012 became effective, through the CLOSING DATE, as well as the management of such companies during the periods indicated above; in all cases excluding the EXCLUDED MATTERS.

*(ii)*    It has also waived the bringing of any non-judicial, administrative, judicial and/or arbitral claim hereafter in any forum or jurisdiction, whether domestic, foreign or international, against REPSOL and/or its RELATED PERSONS based on or connected to the issues mentioned in Point (i) above;

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

Case 1:15-cv-02739-LAP   Document 269-5   Filed 01/25/21   Page 16 of 165
English translation for informational purposes only.
In case of discrepancy the Spanish version prevails.

*(iii)*    It must indemnify REPSOL and its RELATED PERSONS against the obligations that might arise from the actions listed in **ANNEX** VII and against any other demand or action of third parties, of any kind, relating to: (a) the implementation and/or performance by YPF and/or the ARGENTINE REPUBLIC of the Employee Stock Ownership Plan (*Programa de Propiedad Participada*) provided for in Law 23,696 and (b) any debt arising from any grounds, reason, or set-off existing at December 31, 1990 and/or any potential debt or contingency arising from facts, acts or transactions of YPF and/or YPF GAS and/or their respective CONTROLLED COMPANIES that began prior to January 1, 1991;

*(iv)*    It has become obligated to vote at the shareholder meetings of YPF and YPF GAS to reject the bringing of new actions or claims against REPSOL and/or against its RELATED PERSONS based on GROUNDS PRIOR to the CLOSING DATE and to desist from actions and claims already brought and the rights invoked therein, unless relating to claims that are considered EXCLUDED MATTERS.

3.   For purposes of clarification, it is stated that the provisions of this CLAUSE shall not prevent the enforcement, if applicable, by the Public Prosecutor (*Ministerio Público Fiscal*) or the Judicial Branch of their respective powers in criminal matters.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for information purposes only.
*In case of discrepancy the Spanish version prevails.*

4.   Each PARTY shall indemnify the other if any of the persons or entities included within their respective definition does not observe the discontinuances, waivers and/or indemnities provided for in the AGREEMENT.

5.   The procedure to enforce the indemnities relating to the claims and the scope thereof are governed in **ANNEX** VIII.

**CLAUSE SEVEN. CONDITIONS PRECEDENT.**

1.   The holding of the CLOSING, and therefore the full effectiveness of the AGREEMENT, are subject to compliance with the following conditions (the "CONDITIONS PRECEDENT");

> *(i)*    That prior to April 7, 2014, the General Shareholders' Meeting fully and unconditionally ratifies the AGREEMENT.

> *(ii)*   That prior to May 1, 2014, the AGREEMENT has been fully and unconditionally approved by means of a special law approved by the Honorable National Congress of Argentina, promulgated and published in the Official Gazette (*Boletín Oficial*) of the ARGENTINE REPUBLIC by the National Executive Branch, which also approves the issuance of the GOVERNMENT BONDS and the guaranties necessary for the provision of the GUARANTY and the increase of the corresponding budget items.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

(iii)   That prior to May 7, 2014, the interim measures of protection issued in the proceedings mentioned in **ANNEX** IX are removed at no cost to REPSOL and to the satisfaction of both PARTIES.

(iv)   That there has been no DISRUPTIVE MEASURE at the CLOSING that affects the SHARES and/or the REMAINING SHARES and/or the GOVERNMENT BONDS and/or any economic right of REPSOL arising from the AGREEMENT or the GOVERNMENT BONDS.

(v)   That no MATERIAL ADVERSE CHANGE has occurred or is continuing at the CLOSING.

(vi)   That it has not become legally impossible at the CLOSING for the PARTIES to proceed to the CLOSING and/or to comply with the AGREEMENT in the ARGENTINE REPUBLIC for any other reasons, external or otherwise.

All of the foregoing CONDITIONS PRECEDENT are established in the interest of both PARTIES, which may waive compliance therewith by mutual agreement in writing.

2.   The PARTIES undertake to use their reasonable efforts (without entailing the obligation to make any expenditure) to facilitate compliance with the CONDITIONS PRECEDENT.

3.   The PARTIES undertake to notify each other by email the compliance with the CONDITIONS PRECEDENT provided for in Points (i) to (iii) on the

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*

*In case of discrepancy the Spanish version prevails.*

BUSINESS DAY following the date on which they become verifiably aware of such circumstance, and timely providing the documentation in support thereof. The PARTIES also undertake to notify each other by the same means immediately upon verification of any circumstance that might entail non-compliance with the CONDITIONS PRECEDENT provided for in Points (iv) to (vi).

**CLAUSE EIGHT. REPRESENTATIONS AND WARRANTIES.**

1.  REPSOL represents and warrants that:

    *(i)*     It is the owner of the SHARES and that there are no limitations thereon of any kind on its ability and right to enter into the AGREEMENT except for the interim measures issued in the proceedings mentioned in **ANNEX** IX.

    *(ii)*    It has not totally or partially, directly or indirectly, transferred any right or interest in the SHARES or in the rights associated therewith and/or regarding the DEMANDS to a third party.

    *(iii)*   Upon compliance with the CONDITIONS PRECEDENT, the obligations of REPSOL under this AGREEMENT shall be enforceable upon the terms thereof.

2.  The ARGENTINE REPUBLIC represents and warrants that:

    *(i)*     The rights of REPSOL arising under this AGREEMENT enjoy the protection of the ARGENTINA-SPAIN BIT. In particular, given the nature of the COMPENSATION as expropriatory compensation, the

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for information purposes only.
*In case of discrepancy the Spanish version prevails.*

rights of REPSOL arising from the GOVERNMENT BONDS and/or the COMPENSATION constitute an "Investment" under the terms of the ARGENTINA-SPAIN BIT.

*(ii)*   Given their nature as expropriatory compensation, the rights of REPSOL arising from the COMPENSATION are also protected by the National Constitution and may not be subject to RESTRUCTURING and must be paid upon the terms, within the periods and upon the conditions agreed to in the AGREEMENT.

*(iii)*   As regards the payment of the GOVERNMENT BONDS and/or any payment due under the AGREEMENT, the ARGENTINE REPUBLIC may not raise against REPSOL any set-off, on legal or conventional grounds, for any current or future claim that it might invoke against REPSOL.

*(iv)*   The payment of principle and interest on the GOVERNMENT BONDS, as well as any other sum payable to REPSOL under the AGREEMENT, shall be made in DOLLARS, without being subjected to any restriction, whether an exchange restriction or otherwise.

*(v)*   Pursuant to the legal provisions applicable to the AGREEMENT, the execution and potential performance thereof, the COMPENSATION, and the payments to be made for principal and interest to REPSOL, as well as the receipt by REPSOL of such payments and other pay-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

ments arising from the holding and disposition of the GOVERNMENT BONDS, shall not be subject to any TAXES.

(vi)   Upon compliance with the CONDITIONS PRECEDENT, the obligations of the ARGENTINE REPUBLIC under this AGREEMENT shall be enforceable and payable upon the terms thereof.

3.   Each PARTY undertakes to indemnify the other for any inaccuracy or breach of their respective representations made and warranties provided in the AGREEMENT.


**CLAUSE NINE. CLOSING.**

1.   <u>CLOSING DATE</u>. At 10 a.m. Buenos Aires time on the sixth INTERNATIONAL BUSINESS DAY immediately following the day on which all of the CONDITIONS PRECEDENT provided for in Points (i) to (iii) of CLAUSE SEVEN have been met, provided that on such DAY and time the CONDITIONS PRECEDENT provided for in Points (iv) to (vi) of that same CLAUSE SEVEN have been met, the actions listed in Section 3 below shall be verified (collectively, the "CLOSING").

2.   <u>Place of the CLOSING.</u> The CLOSING shall take place in the city of Buenos Aires, at the place indicated by the ARGENTINE REPUBLIC.

3.   <u>Actions constituting the CLOSING</u>. In the CLOSING proceedings, as part of the same single act, it is agreed that:

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for informational purposes only.
In case of discrepancy the Spanish version prevails.

(i)    REPSOL shall deliver to the ARGENTINE REPUBLIC all documents necessary to transfer the SHARES, those identified in **ANNEX** X, instructing Caja de Valores S.A. and YPF GAS for purposes of recording the change in ownership of the SHARES in favor of the National Government.

(ii)    The ARGENTINE REPUBLIC shall make a deposit of all of the GOVERNMENT BONDS into an account in the ARGENTINE REPUBLIC or abroad indicated by REPSOL for such purposes.

(iii)    The ARGENTINE REPUBLIC shall deliver to REPSOL the GUARANTY upon the terms of the form included in **ANNEX** XI.

(iv)    The ARGENTINE REPUBLIC shall deliver to REPSOL an opinion of the Federal Public Revenue Administration (*Administración Federal de Ingresos Públicos*) that, in the opinion of such agency, the court tax deposited in the proceedings listed in **ANNEX** XII is correct and no additional sum is due for such item;

(v)    REPSOL shall sign and deliver, through its respective participating representatives and attorneys, or shall obtain from the respective subjects and entities, and shall deliver two copies of, the writs of discontinuance of the action and of rights in the cases identified in **ANNEX** V, and, to the extent possible, in **ANNEX** VI, without prejudice in this last case to indemnifying the ARGENTINE REPUBLIC if they are not obtained. Such writs must comply with the formalities,

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

21

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

representations and requests required in each jurisdiction for purposes of complying with the provisions of CLAUSE SIX of the AGREEMENT.

4.   It shall be deemed that the CLOSING has taken place if, upon verification of all the actions listed in Section 3 above, REPSOL has received confirmation that the GOVERNMENT BONDS have been deposited into the account provided for in Point (ii) of such Section 3 free of any DISRUPTIVE MEASURE.

**CLAUSE TEN. ENFORCEABILITY.**

If all of the CONDITIONS PRECEDENT have been met, and one of the PARTIES nevertheless does not attend the act of formalization of the CLOSING or does not comply therein with all of the actions for which it is responsible, the other party may choose to either: (i) demand compliance with the AGREEMENT, or (ii) declare it to be terminated, in both cases in addition to the corresponding damages.

**CLAUSE ELEVEN. TERMINATION.**

If any of the CONDITIONS PRECEDENT is not met for any reason, whether or not attributable to one of the PARTIES, either of the PARTIES may henceforth declare that the AGREEMENT has become fully ineffective, without liability for either of the PARTIES.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for informational purposes only.*
*In case of discrepancy the Spanish version prevails.*

**CLAUSE TWELVE. EFFECTS OF TERMINATION.**

1.   If one of the PARTIES has declared that the AGREEMENT has become ineffective pursuant to the provisions of CLAUSES TEN or ELEVEN, it shall be deemed that the AGREEMENT and the acts performed as a result thereof never existed (except for this CLAUSE and CLAUSES TEN, ELEVEN, SEVENTEEN, EIGHTEEN, NINETEEN, TWENTY-ONE AND TWENTY-TWO).

2.   In such event, neither of the PARTIES may invoke against the other PARTY and/or its RELATED PERSONS, in court, arbitration, administrative proceeding or any other arena, either the recitals or the provisions, or the acts, reports and/or opinions issued as a result thereof, under the provisions of CLAUSE SEVEN and other related CLAUSES, and the PARTIES shall maintain all of the pre-existing rights on the date of the AGREEMENT.

**CLAUSE THIRTEEN. POST-CLOSING OBLIGATIONS.**

1.   After the CLOSING, REPSOL undertakes to:

   *(i)*   File in the respective suits and proceedings the discontinuances provided for in Point (v) of Section 3 of CLAUSE NINE within THREE (3) judicial business DAYS of the act of CLOSING.

   *(ii)*   Comply in good faith with the AGREEMENT and not engage in any conduct or sign any instrument that tends to prejudice the purposes of the AGREEMENT or the commitments assumed hereunder, and,

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

23

English translation for informative purposes only.

*In case of discrepancy the Spanish version prevails.*

in its capacity as shareholder of YPF, to conduct itself in such a manner as to give effect hereto.

*(iii)*   Provide its consent, if required, to the discontinuances of the ARGENTINE REPUBLIC, and in any event to provide or obtain the consent of the respective plaintiffs or claimants to the imposition of costs to their order in all of the suits identified in **ANNEXES** V and VI.

*(iv)*   In order for the ARGENTINE REPUBLIC to know the amounts that REPSOL receives for the possible TRANSFER of the GOVERNMENT BONDS, submit on a quarterly basis, beginning in September 2014, a report containing a description of: (1) the number of GOVERNMENT BONDS TRANSFERRED since the date of the CLOSING, (2) the prices received for such TRANSFERS, net of DEDUCTIBLE EXPENSES and ACCRUED INTEREST outstanding, and (3) dispositions that do not constitute a TRANSFER, with an indication of the number of GOVERNMENT BONDS affected, periods and other terms that allow for the traceability of the ownership of the GOVERNMENT BONDS that have not been TRANSFERRED. Such report shall also be reviewed and confirmed by the AUDITOR on a semi-annual basis.

*(v)*   In each case of TRANSFER of the GOVERNMENT BONDS at an aggregate FACE VALUE equal to or greater than THREE HUNDRED MILLION DOLLARS (USD 300,000,000), to offer the acquisition of

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

24

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

GOVERNMENT BONDS, of the same type and amount and on the same financial legal conditions as those on which such TRANSFER has been made, to the ARGENTINE REPUBLIC or to an assignee of this right under CLAUSE SEVENTEEN. If REPSOL does not have GOVERNMENT BONDS of the same type in an amount sufficient to meet the purchase option of the ARGENTINE REPUBLIC, REPSOL shall only be required to sell GOVERNMENT BONDS to the ARGENTINE REPUBLIC up to the limit of the GOVERNMENT BONDS of such same type as owned by it and that are not previously subject to collateral or hedging transactions. The procedure set forth in **ANNEX** XIII shall apply for purposes of exercising the right provided for in this clause.

2. After the CLOSING, the ARGENTINE REPUBLIC undertakes to:

   *(i)*   Comply in good faith with the AGREEMENT, timely pay the GOVERNMENT BONDS, and not engage in any conduct or sign any instrument that tends to prejudice the purposes of the AGREEMENT and the commitments assumed hereunder.

   *(ii)*  Provide its consent, if required, to the discontinuances of REPSOL, and in any event to the imposition of costs to its order in all active suits that are discontinued in which the ARGENTINE REPUBLIC is a plaintiff or defendant.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for informational purposes only.
In case of discrepancy the Spanish version prevails.

(iii)    Vote at the Shareholders' meetings of YPF and YPF GAS, and generally conduct itself as a shareholder of YPF and YPF GAS in a manner that gives effect to the AGREEMENT.

**CLAUSE FOURTEEN. RESTRUCTURING.**

1.   In any case of RESTRUCTURING, REPSOL shall have the right to demand from the ARGENTINE REPUBLIC the payment in cash of the outstanding amount of the COMPENSATION, plus the ACCRUED INTEREST outstanding (the "ACCELERATED COMPENSATION").

2.   For purposes of the provisions of Section 1 above, the following rules shall apply:

(i)    The amount of the ACCELERATED COMPENSATION shall be determined by adding: (1) the balance of the COMPENSATION outstanding calculated in accordance with the provisions of CLAUSE FOUR and subject to the limit set forth in CLAUSE FIVE, and (2) the amount of ACCRUED INTEREST that remains unpaid at the time that REPSOL sends the notice referred to in Point (iii) below.

(ii)    In order to show the balance of the COMPENSATION outstanding referred to in Point (i) above, REPSOL must provide (i) a certification of the AUDITOR verifying the amounts received by REPSOL for REDEMPTIONS of the GOVERNMENT BONDS and of the amount, net of DEDUCTIBLE EXPENSES and ACCRUED INTEREST out-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

26

English translation for informational purposes only.
In case of discrepancy the Spanish version prevails.

standing, actually received by REPSOL for the TRANSFER of the GOVERNMENT BONDS; and (ii) a certification of the depository showing the GOVERNMENT BONDS held by REPSOL and, if applicable, an identification of the contracts executed with third parties pursuant to which it has ceased to be a holder of the GOVERNMENT BONDS without a TRANSFER, which allows for full traceability of the holdings thereof.

To show the ACCRUED INTEREST outstanding, REPSOL must provide the corresponding certification of the AUDITOR, which shall be based on the documentation provided by the depository or depositories, on the terms of issuance of the GOVERNMENT BONDS, and on the other documents it deems necessary to verify the accrual and non-payment thereof.

(iii)    The payment of the ACCELERATED COMPENSATION shall be enforceable as from the thirtieth DAY following the day on which the ARGENTINE REPUBLIC receives verifiable notice from REPSOL pursuant to which (1) it chooses to demand payment of the ACCELERATED COMPENSATION pursuant to the provisions of Section 1 of this CLAUSE, (2) states the occurrence of the circumstance or circumstances included in the definition of RESTRUCTURING giving rise to its right to demand payment of the ACCELERATED COMPENSATION, (3) sets forth the balance out-

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for informative purposes only.

*In case of discrepancy the Spanish version prevails.*

standing accompanied by the supporting documentation referred to in Point (ii) above, and (4) makes available to the ARGENTINE REPUBLIC, against payment and for cancellation, the GOVERNMENT BONDS in its power, which shall be duly identified.

However, within such period of THIRTY (30) DAYS, the ARGENTINE REPUBLIC may cure or remove the grounds for the reported RESTRUCTURING, in which case acceleration of the maturity of the COMPENSATION, and thus the enforceability of the ACCELERATED COMPENSATION, shall not occur.

*(iv)* As from the DAY on which payment is enforceable in accordance with the provisions of Point (iii) above, and until the actual payment thereof to REPSOL, the amount due as ACCELERATED COMPENSATION (increased in turn by the compensatory interest accrued during the cure period referred to in Point (iii) above) shall accrue annual interest of EIGHT POINTS SEVENTY-FIVE (8.75%) PERCENT, plus default interest of ONE POINT SEVENTY-FIVE (1.75%) PERCENT, in substitution of any other interest. Such interest shall accrue daily on the basis of a year of THREE HUNDRED SIXTY (360) DAYS. Interest thus accrued shall be automatically capitalized on an annual basis and shall generate new default and compensatory interest. All payments shall be allocated, in this order, to

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

28

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

the payment of expenses, default interest, compensatory interest, and principal.

(v)    Upon payment of the amount of the ACCELERATED COMPENSATION and other applicable amounts under this CLAUSE, REPSOL shall make available to the ARGENTINE REPUBLIC the non-TRANSFERRED GOVERNMENT BONDS offered for cancellation pursuant to the provisions of number (4) of Point (iii) above, deducting, if applicable, any that have been sold to enforce the guaranty pursuant to the provisions of Section 3 below, and shall proceed in accordance with the instructions it receives from the ARGENTINE REPUBLIC for the cancellation thereof.

(vi)    Except in the circumstance provided for in Section 2 of CLAUSE SIXTEEN, the ACCELERATED COMPENSATION and other amounts applicable under this CLAUSE shall be payable into the account indicated by REPSOL, in the Argentine Republic or abroad, in cash, in DOLLARS, free of expenses, DISRUPTIVE MEASURES and TAXES.

3.    For so long as the ACCELERATED COMPENSATION and other amounts under this CLAUSE are not paid, REPSOL may retain the GOVERNMENT BONDS to secure the collection of the amount due thereto. For such purpose, REPSOL is expressly authorized to dispose of them as from the thirtieth DAY following the date of enforceability provided for in Point (iii) of Section 2 above

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

and to apply the proceeds to the payment, in this order, of interest and of the ACCELERATED COMPENSATION, which shall only be reduced in such circumstance by the amount corresponding to such application.

To enforce the guaranty, REPSOL must instruct at least three of the REFERENCE ENTITIES to proceed with the sale of the GOVERNMENT BONDS on the market, with an instruction for them to proceed in the manner they deem most appropriate to maximize the price during the period set by REPSOL, which may not be less than NINETY (90) INTERNATIONAL BUSINESS DAYS. Upon the total or partial sale of the GOVERNMENT BONDS retained to secure the payment of the ACCELERATED COMPENSATION, REPSOL shall provide to the ARGENTINE REPUBLIC a description of the GOVERNMENT BONDS disposed of, the amount obtained, and, as a result thereof, the amount of debt remaining.

For the avoidance of any doubt, it is stated for the record that (i) the amount of the remaining debt shall not be affected by the limitation contained in the last sentence of Section 2 of CLAUSE FOUR, and (ii) the sales of the GOVERNMENT BONDS by REPSOL to enforce the guaranty shall not give rise to the purchase options provided for in Section 3 of CLAUSE FIVE and in Point (v) of Section 1 of CLAUSE THIRTEEN.

4.   The RESTRUCTURING shall not give REPSOL the right to terminate the AGREEMENT or to re-commence the DISPUTE and/or invoke the DEMANDS and other rights and actions waived and discontinued by the AGREEMENT,

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

30

English translation for information purposes only.
*In case of discrepancy the Spanish version prevails.*

and/or reclaim a sum other than that regarding the ACCELERATED COMPENSATION upon the terms of this CLAUSE.

## CLAUSE FIFTEEN. BREACH OF OTHER OBLIGATIONS.

Except in the circumstance provided for in this CLAUSE TEN, if there is a breach of any obligation other than the payment of the GOVERNMENT BONDS, the complying PARTY may also not choose to terminate the AGREEMENT, but may demand the enforcement thereof and compliance therewith using all available remedies at law for such purpose. In any event, the complying PARTY may also claim from the other PARTY indemnification for the damages caused by the breach, which shall accrue interest in accordance with the rules set forth in Point (iv) of Section 2 of CLAUSE FOURTEEN.

## CLAUSE SIXTEEN - DISRUPTIVE MEASURES

1. If any DISRUPTIVE MEASURE occurs after the CLOSING, the ARGENTINE REPUBLIC shall have a period of NINETY (90) DAYS to obtain the lifting or withdrawal of such DISRUPTIVE MEASURE and, if applicable, to cure the failure to receive payment by REPSOL, always at no cost to REPSOL. The period of NINETY (90) DAYS shall be calculated from the date on which REPSOL notifies the ARGENTINE REPUBLIC of the occurrence of the DISRUPTIVE MEASURE.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for informational purposes only.
In case of discrepancy the Spanish version prevails.

Notwithstanding the foregoing, the ARGENTINE REPUBLIC may demand that REPSOL return the amounts that it has had to deposit or place in bond to the order of the respective court or governmental authority, plus the interest and damages that may apply, if there is a firm and binding award adverse to REPSOL and favorable to the ARGENTINE REPUBLIC in the arbitration it brings pursuant to CLAUSE NINETEEN of the AGREEMENT to determine the existence of such right to restitution. In particular, such restitution shall not apply in the case of the items included in the indemnities, discontinuances or waivers provided by the ARGENTINE REPUBLIC in the AGREEMENT.

2.   REPSOL hereby gives its consent to the cure of the payment failure by means of the deposit by the ARGENTINE REPUBLIC of the amount due in DOLLARS under this AGREEMENT into the bank account in the Argentine Republic indicated by REPSOL for such purpose, provided that REPSOL may immediately transfer such amount of DOLLARS into a foreign account free of any DISRUPTIVE MEASURE and TAXES.

3.   After such period of NINETY (90) DAYS without the lifting or cure, REPSOL may demand the immediate payment of the ACCELERATED COMPENSATION and other applicable amounts under CLAUSE FOURTEEN. In this case, the date of enforceability shall be the DAY after the day on which the ARGENTINE REPUBLIC receives the corresponding demand for payment from REPSOL accompanied by the documentation provided for in Point (iii) of Section 2 of CLAUSE FOURTEEN.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

**CLAUSE SEVENTEEN. ASSIGNMENT.**

Neither of the PARTIES may assign their contractual position in the AGREEMENT without the prior written consent of the other PARTY. REPSOL may also not assign the credit rights deriving from the COMPENSATION unless the assignee is a CONTROLLED COMPANY of REPSOL. Except for the defense of set-off of credit rights and debts, the ARGENTINE REPUBLIC may raise against such assignee any objection or defense that it could raise against REPSOL. The ARGENTINE REPUBLIC may assign the right in its favor provided in Point (v) of Section 1 of CLAUSE FOURTEEN to any entity included within the definition of the ARGENTINE REPUBLIC or to any company or trust fund controlled by the National Government.

**CLAUSE EIGHTEEN. NON-SEVERABILITY.**

1.  This AGREEMENT is a single and non-severable whole. Therefore:

    *(i)*    The failure to approve or the conditional approval of any of its CLAUSES or ANNEXES shall mean that the CLOSING may not occur, with the same consequences set forth in Section 1 of CLAUSE TWELVE.

    *(ii)*   Neither of the PARTIES may demand partial compliance with the AGREEMENT.

English translation for informational purposes only.

*In case of discrepancy the Spanish version prevails.*

2.   Each PARTY authorizes its respective bodies signing the AGREEMENT to agree on non-material amendments to this AGREEMENT.


**CLAUSE NINETEEN. APPLICABLE LAW. JURISDICTION.**

1.   The AGREEMENT, as well as the totality of the agreements and commitments of which it is comprised, is governed by the provisions hereof and by the laws of the Argentine Republic, the Argentina-Spain BIT and other sources provided for in this latter document, including the principles of international law regarding the international liability of States.

2.   Any litigation, dispute or claim between the PARTIES arising from this AGREEMENT or that have a direct relationship hereto, and particularly those relating to a demand by REPSOL for payment of the ACCELERATED COMPENSATION, as well as any litigation, dispute or claim regarding the interpretation and application to the case of the ARGENTINA-SPAIN BIT, shall be resolved exclusively by arbitration in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL") in force on the date of signing of the AGREEMENT.

Upon the terms of Article X, section 3, paragraph b) of the Argentina-Spain BIT, the PARTIES agree that if any dispute or discrepancy arises between them, they shall give notice thereof to the other PARTY. The PARTIES must engage in a mandatory period of amicable discussions for a period of THIRTY (30) DAYS from the receipt of the notice. If the dispute or discrepancy continues at

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

34

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

the end of such period, either of the PARTIES shall have the right to commence the arbitration.

The number of arbitrators shall be THREE (3), the place of the arbitration shall be Paris, Republic of France, and the language of the arbitration shall be Spanish. Each party shall appoint one arbitrator. The two arbitrators so appointed shall by mutual agreement appoint the third, who shall chair the tribunal. If there is no agreement regarding the appointment of the third arbitrator, the appointing authority shall be the Secretary-General of the Permanent Court of Arbitration at The Hague.

**CLAUSE TWENTY. SUSPENSION OF PROCEEDINGS.**

As from the signing of the AGREEMENT and until the CLOSING takes place or until the AGREEMENT becomes ineffective, each PARTY shall be required to suspend all current proceedings and/or refrain from commencing new proceedings against the other PARTY and/or against its RELATED PERSONS with respect to the issues contemplated in this AGREEMENT, except in those cases strictly necessary to preserve their rights. In those cases where the suspension of the proceedings is not available, the PARTIES shall do the fillings strictly necessary to preserve their rights. The PARTIES undertake to file requests for suspensions of the proceedings when such suspension is available.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for informational purposes only.
*In case of discrepancy the Spanish version prevails.*

**CLAUSE TWENTY-ONE. ADDRESS AND NOTICES.**

1.   For all legal purposes relating to the enforcement of the AGREEMENT, the ARGENTINE REPUBLIC and REPSOL set their addresses as those indicated at the beginning of this document, which shall be deemed valid for all notices delivered thereto.

2.   All notices must be provided in writing and by verifiable means, and shall be valid and effective as from the date of the actual receipt thereof by the address-ee.

All notices between the PARTIES must be sent to the attention of the persons and to the addresses notified by each PARTY to the other.

3.       By way of exception from the rule set forth in Section 2 above, the notic-es to be sent by email [shall be sent to] the addressees and addresses that the PARTIES communicate in writing.

**CLAUSE TWENTY-TWO. DEFINITIONS.**

The definitions listed in **ANNEX** XIV shall apply for all purposes of the AGREEMENT.

In witness whereof and as evidence of their complete consent hereto, FOUR (4) specimens are signed, TWO (2) for each PARTY, each having the same effect, in the City of Buenos Aires, Argentine Republic, on February 27TH, 2014.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for informational purposes only.

*In case of discrepancy the Spanish version prevails.*

## ANNEX V

## PROCEEDINGS INITIATED BY REPSOL SUBJECT TO DISCONTINUANCE

1. REPSOL BUTANO S.A. Vs. NATIONAL GOVERNMENT-NEB-LAW 26741-DECREE 530 557 AND 732/12, COGNIZANCE PROCEEDINGS. Court: Federal Contentious Administrative Court No. 7, Secretary 13. Case no. 27075/2012.

2. REPSOL S.A. AND OTHER Vs. PROVINCE OF NEUQUEN AND OTHER (ARGENTINE NATIONAL GOVERNMENT) on declaration of certainty and unconstitutionality. Court: National Supreme Court of Justice, original proceedings Secretary. Case No. R-498/13.

3. REPSOL S.A. Vs. NATIONAL GOVERNMENT–DECREE. 530 532 732/12, COGNIZANCE PROCEEDINGS. Court: National Federal Contentious Administrative Court No. 7. Secretary 13. Case No. 21,941/2012.

4. REPSOL YPF S.A. Vs. Argentine Republic (Disclosure claim under Section 13-D of the Exchange Act). Court: United States District Court, Southern District of New York (Judge Griesa), New York, United States of America. Case No. 12 CV 4018.

5. REPSOL YPF S.A., Texas Yale Capital Corp. Vs. Argentine Republic (Class action on takeover bid). Court: United States District Court, Southern District of New York (Judge Griesa), New York, United States of America. Case No. 12 CV 3877.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

83

6. REPSOL, S.A. and REPSOL BUTANO, S.A. Vs. Argentine Republic. Court: International Centre for Settlement of Investment Disputes, Washington D.C., United States of America. ICSID Case No. ARB/12/38.

7. Administrative complaint against CNV for unlawful actions filed by REPSOL and others dated 6/24/2013, Case No. S01:20131371/2013 Ministry of Economy and Public Finance.

8. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No.6. Case No. 103,677.

9. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings on interim measures. Court: National Commercial Court of First Instance No. 3, Secretary No.6. Case No. 103,585.

10. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings on article 250 of Procedural Code. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,791.

11. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,181.

12. REPSOL BUTANO S.A. Vs. YPF GAS S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,945.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

13. REPSOL S.A. and others Vs. YPF S.A. Ordinary proceedings on interim measures. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,553.

14. REPSOL S.A. and others Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,144.

15. REPSOL S.A. and others Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,268.

16. REPSOL S.A. and others Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 103,520.

17. REPSOL S.A. Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 3, Secretary No. 6. Case No. 104,022.

18. REPSOL, S.A. Vs. YPF S.A. Ordinary proceedings for unfair competition (Spain). Court: Commercial Court No. 1 of Madrid, Gran Vía 52, 1ª floor, 28013, Madrid, Kingdom of Spain. Case No. 395/2012.

19. REPSOL, S.A. Vs. THE BANK OF NEW YORK MELLON and YPF S.A. Court: Supreme Court of the State of New York, County of New York, United States of America. Case No. 652653/2012.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

English translation for information purposes only.
In case of discrepancy the Spanish version prevails.

## ANNEX VI

## PROCEEDINGS INITIATED BY THIRD PARTIES SUBJECT TO DISCONTINUANCE

1.   BRUFAU, NIUBÓ ANTONIO and others Vs. NATIONAL GOVERNMENT-NEB LAW 26,741-DECREEE 530 532/12 ON DAMAGES Court: Federal Contentious Administrative National Court No. 1, Secretary 1. Case No. 16,785/2012.

2.   DE SAN MARTÍN, JOSÉ and other Vs. NATIONAL GOVERNMENT–NEB ON COGNIZANCE PROCEEDINGS. Court: National Supreme Court of Justice. Case No. C-731/2013.

3.   FORWOOD WALTER CRISTIAN Vs. NATIONAL GOVERNMENT-NEB DECREE 530 and 532/2012 on interim measures (autonomous). Court: Federal Contentious Administrative National Court No. 7, Secretary 13. Case No. 12,881/2012.

4.   GOMIS SAEZ ANTONIO Vs. NATIONAL GOVERNMENT-NEB ON PRECAUTIONARY/INTERIM? MEASURES. Court: National Federal Contentious Administrative Court No. 4, Secretary 7. Case No. 26,981/2012.

5.   Administrative complaint against CNV for unlawful actions filed by Antonio Gomis and other dated 6/24/2013, Case No. S01:20131371/2013 Ministry of Economy and Public Finance.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

*English translation for information purposes only.*
*In case of discrepancy the Spanish version prevails.*

6.   GALLEGO, JOSE MANUEL Vs. NATIONAL GOVERNMENT- NEB DECREE 530/12 557/12 on precautionary/interim measures (autonomous). Court: National Federal Contentious Administrative Court No. 5, Secretary 10. Case No. 13,223/2012.

7.   GARCIA DEL RIO LUIS and other Vs. YPF S.A. Ordinary proceedings. Court: National Commercial Court of First Instance No. 21, Secretary No. 41. Case No. 58,143.

8.   GARCIA DEL RIO LUIS Vs. YPF SA on interim measures. Court: National Commercial Court of First Instance No. 25, Secretary No. 49. Case No. 59,278.

9.   Administrative claim filed by Walter Forwood before the Department for Economic Policy of the Argentine Ministry of Economics. Case No. EXP-S01: 0192282/2012.

This document is a translation of an original text in Spanish. In case of any discrepancy between both texts, the Spanish version will prevail.

**CONVENIO DE SOLUCIÓN AMIGABLE Y AVENIMIENTO DE
EXPROPIACIÓN**

Entre la REPÚBLICA ARGENTINA, representada por el Señor MINISTRO DE
ECONOMÍA Y FINANZAS PÚBLICAS, DR. AXEL KICILLOF, con domicilio en
Hipólito Yrigoyen 250, de la Ciudad Autónoma de Buenos Aires, Argentina, por
una parte, y REPSOL S.A., REPSOL CAPITAL S.L. y REPSOL BUTANO S.A.,
representadas por los Señores LUIS SUÁREZ DE LEZO MANTILLA y
NEMESIO FERNÁNDEZ-CUESTA LUCA DE TENA en su carácter de apode-
rados, quienes acreditan representación con los instrumentos que se encuen-
tran vigentes y fueran otorgados por personas autorizadas a hacerlo y demás
documentación complementaria que se adjunta al presente como **ANEXO** I,
con domicilio en Méndez Álvaro 44, Madrid, Reino de España, por otra parte,
ambas en conjunto las "PARTES",

**CONSIDERANDO:**

Que el Decreto Nº 530/2012 (B.O. 16-04-12) dispuso la intervención transitoria
de YPF por un plazo de TREINTA (30) DÍAS "con el fin de asegurar la continui-
dad de la empresa, la preservación de sus activos y de su patrimonio, el abas-
tecimiento de combustibles y garantizar la cobertura de las necesidades del
país", en el marco de la iniciativa legislativa por la cual el PODER EJECUTIVO
NACIONAL promoviera la declaración de utilidad pública y sujeción a expropia-

ción del 51% del patrimonio de dicha empresa representado por igual porcenta-
je de acciones Clase "D".

Que la intervención de YPF S.A. se perfeccionó el mismo 16 de abril del año
2012.

Que el Decreto Nº 557/2012 (B.O. 19-04-12) amplió los alcances del Decreto
Nº 530/2012 a YPF GAS, cuya intervención se perfeccionó el 18 de abril de
2012.

Que mediante el Decreto N° 732/2012 (B.O. 16-05-12), se prorrogaron las in-
tervenciones de YPF e YPF GAS.

Que la Ley N° 26.741 (B.O. 7-05-12), de Soberanía Hidrocarburífera Nacional,
declaró en su artículo 1º "de interés público nacional y como objetivo prioritario
de la República Argentina el logro del autoabastecimiento de hidrocarburos, así
como la exploración, explotación, industrialización, transporte y comercializa-
ción de hidrocarburos, a fin de garantizar el desarrollo económico con equidad
social, la creación de empleo, el incremento de la competitividad de los diver-
sos sectores económicos y el crecimiento equitativo y sustentable de las pro-
vincias y regiones".

Que "a los efectos de garantizar el cumplimiento de sus objetivos", la Ley Nº
26.741 en su artículo 7º declaró de utilidad pública y sujeto a expropiación el
cincuenta y un por ciento (51%) del patrimonio de YPF representado por igual
porcentaje de las acciones Clase "D" de dicha empresa, pertenecientes a Rep-
sol, S.A., sus controlantes o controladas, en forma directa o indirecta. Asimismo
declaró de utilidad pública y sujeto a expropiación el cincuenta y un por ciento

(51%) del patrimonio de YPF GAS representado por el sesenta por ciento (60%) de las acciones Clase "A" de dicha empresa, pertenecientes a Repsol Butano, S.A., sus controlantes o controladas.

Que el artículo 10 de la mencionada Ley Nº 26.741 dispuso que, a efectos de la instrumentación y registración de la titularidad de los derechos correspondientes a las acciones sujetas a expropiación, debe dejarse constancia que la expropiación de tales acciones es por causa de utilidad pública y que se encuentra prohibida la transferencia futura de ellas sin autorización del Honorable Congreso de la Nación votada por las dos terceras partes de sus miembros.

Que el artículo 11 de la Ley Nº 26.741, a su vez, estableció que los procesos de expropiación estarán regidos por lo establecido en la Ley N° 21.499, actuando como expropiante el PODER EJECUTIVO NACIONAL.

Que el artículo 12 de la Ley N° 26.741 ordenó que el precio de los bienes sujetos a expropiación se determinará a través del TRIBUNAL DE TASACIONES DE LA NACIÓN conforme lo previsto en el artículo 10 y concordantes de la Ley N° 21.499.

Que el artículo 13 de la Ley Nº 26.741 estableció que, "a fin de garantizar la continuidad en las actividades de exploración, producción, industrialización y refinación de hidrocarburos a cargo de YPF e YPF GAS, así como su transporte, comercialización y distribución y el incremento del flujo inversor, para el adecuado abastecimiento de los combustibles necesarios para el funcionamiento de la economía nacional" en el marco de lo dispuesto en dicha Ley, el PODER EJECUTIVO NACIONAL, a través de las personas u organismos que

designe, ejercerá todos los derechos que las acciones a expropiar confieren en los términos de la ocupación temporánea anormal prevista en los artículos 57 y 59 de la Ley Nº 21.499.

Que, en ese marco, la REPÚBLICA ARGENTINA comenzó a ejercer los derechos que confieren las acciones sujetas a expropiación, a partir de las asambleas de accionistas de fechas 4 de junio de 2012 y 6 de julio de 2012 de YPF e YPF GAS, respectivamente.

Que Repsol, S.A. y sus compañías controladas iniciaron diversas acciones y reclamos extrajudiciales, judiciales y/o arbitrales, en el plano nacional e internacional, contra la REPÚBLICA ARGENTINA, YPF e YPF GAS, objetando — directa o indirectamente— el dictado de los Decretos Nros. 530/2012, 532/2012, 557/2012 y 732/2012, la sanción de la Ley N° 26.741 y la aplicación y ejecución de tales actos y normas, en adelante y en conjunto la "CONTROVERSIA".

Que mediante la Ley N° 24.118 (B.O. 5-08-92) la REPÚBLICA ARGENTINA aprobó el "ACUERDO PARA LA PROMOCIÓN Y LA PROTECCIÓN RECÍPROCA DE INVERSIONES ENTRE LA REPÚBLICA ARGENTINA Y EL REINO DE ESPAÑA", en adelante el "TBI ARGENTINA-ESPAÑA", bajo cuyo amparo REPSOL inició un arbitraje internacional frente a la REPÚBLICA ARGENTINA.

Que el Artículo X del TBI ARGENTINA-ESPAÑA dispone que "las controversias que surgieren entre una de las Partes y un inversor de la otra Parte en relación

con las inversiones en el sentido del presente Acuerdo, deberán, en lo posible, ser amigablemente dirimidas entre las partes en la controversia."

Que, en el marco del TBI ARGENTINA-ESPAÑA y de conformidad con las Leyes Nros. 26.741 y 21.499, la REPÚBLICA ARGENTINA y REPSOL han llevado a cabo negociaciones amistosas en territorio argentino como resultado de las cuales acuerdan celebrar el presente "CONVENIO DE SOLUCIÓN AMIGABLE Y AVENIMIENTO DE EXPROPIACIÓN", incluyendo todos sus ANEXOS (en adelante el "ACUERDO"), a través del cual la REPÚBLICA ARGENTINA y REPSOL ponen fin a la CONTROVERSIA.

Que la suscripción del ACUERDO constituye un acto soberano de la REPÚBLICA ARGENTINA mediante el cual se da cumplimiento a las Leyes Nros. 26.741 y 21.499 y a las obligaciones internacionales previstas en el TBI ARGENTINA-ESPAÑA.

Que a tal efecto, sujeto al cumplimiento de determinadas condiciones, acuerdan la transferencia de las acciones objeto de expropiación a la REPÚBLICA ARGENTINA y el reconocimiento a REPSOL del derecho a obtener de la REPÚBLICA ARGENTINA una indemnización única y total por la expropiación de las acciones y por cualquier otro concepto originado en, o vinculado con, el dictado y ejecución de los Decretos Nros. 530/2012, 532/2012, 557/2012 y 732/2012, de la Ley Nº 26.741, normas concordantes y sus actos de ejecución, ANTECEDENTES y demás conceptos contemplados en el ACUERDO.

Que el TRIBUNAL DE TASACIONES DE LA NACIÓN ha emitido un informe en el que manifiesta que "el valor a acordarse es justo y razonable a todos los

efectos del avenimiento y la solución amigable previstos". Se adjunta, como **ANEXO** II, copia del referido informe.

Que el artículo 12 de la Ley Nº 21.499 establece que la indemnización se pagará en dinero efectivo, salvo conformidad del expropiado.

Que, para la REPÚBLICA ARGENTINA, la indemnización a abonar por los conceptos antes indicados resultará justa, suficiente y adecuada, considerando los términos de pago y demás estipulaciones previstas en el ACUERDO y una vez cumplidas sus condiciones de vigencia.

Que REPSOL ratifica su disconformidad con la expropiación, su procedimiento y la compensación ofrecida por los mencionados conceptos. No obstante, considerando las ventajas de una solución anticipada y los compromisos asumidos en el ACUERDO, decide aceptar la compensación ofrecida al efecto de poner pronto y definitivo término a la CONTROVERSIA por vía amigable, comprendiendo en ella la renuncia, sujeta a condición de reciprocidad, a sus acciones y reclamos contra la REPÚBLICA ARGENTINA e YPF y demás concesiones aquí previstas.

Que los representantes de REPSOL cuentan con plenas facultades para suscribir el ACUERDO en nombre y representación de aquélla, adjuntando a tales efectos, formando parte del **ANEXO** I, copias certificadas y debidamente legalizadas de las decisiones adoptadas por los órganos societarios respectivos, en su carácter de titulares de las acciones expropiadas que se identifican en el **ANEXO** III, aprobando la suscripción del ACUERDO.

Por todo lo expuesto, las PARTES ACUERDAN:

**CLÁUSULA PRIMERA. OBJETO.**

En el marco de lo dispuesto en las Leyes Nros. 21.499 y 26.741, el TBI ARGENTINA-ESPAÑA y de conformidad a lo establecido en el ACUERDO, la REPÚBLICA ARGENTINA reconoce a REPSOL y le ofrece la suma de DÓLARES CINCO MIL MILLONES (USD 5.000.000.000,00) a título de indemnización por la expropiación de 200.589.525 acciones Clase "D" de YPF y 89.755.383 acciones Clase "A" de YPF GAS (en adelante y en conjunto, las "ACCIONES") y por cualquier otro reclamo originado en, o vinculado con, el dictado y ejecución de los Decretos Nros. 530/2012, 532/2012, 557/2012 y 732/2012, de la Ley Nº 26.741 y normas concordantes, los ANTECEDENTES, los intereses que se hayan devengado desde la fecha de desposesión y demás conceptos contemplados en el ACUERDO (en adelante, la "COMPENSACIÓN").

**CLÁUSULA SEGUNDA. CONFORMIDAD.**

Al sólo efecto de encontrar una solución amigable a la CONTROVERSIA, y contemplando el conjunto de los términos y condiciones previstos en este ACUERDO, REPSOL acepta la COMPENSACIÓN ofrecida por la REPÚBLICA ARGENTINA por la expropiación de las ACCIONES y demás conceptos contemplados en el ACUERDO.

**CLÁUSULA TERCERA. MEDIO DE PAGO.**

REPSOL presta conformidad, a todos los efectos, a que el pago de la COMPENSACIÓN se efectúe mediante la entrega de los títulos de deuda pública interna argentina "BONOS DE LA REPÚBLICA ARGENTINA EN DÓLARES" (en adelante "TÍTULOS PÚBLICOS"), de la especie y cantidad que se identifican en el **ANEXO** IV, todo ello en los términos previstos en la CLÁUSULA CUARTA siguiente.

Los intereses que devenguen los TÍTULOS PÚBLICOS desde el inicio del período de renta vigente al momento de su entrega serán percibidos por REPSOL como remuneración del aplazamiento del pago de la COMPENSACIÓN que la aceptación de los TÍTULOS PÚBLICOS como medio de pago conlleva.

**CLÁUSULA CUARTA. CARÁCTER DEL PAGO.**

1.  La entrega de los TÍTULOS PÚBLICOS no producirá por sí misma los efectos del pago de la COMPENSACIÓN. El efecto liberatorio del pago sólo se producirá si, y en la medida en que:

    *(i)*    REPSOL reciba los importes debidos en concepto de AMORTIZACIÓN de los TÍTULOS PÚBLICOS, libres de MEDIDAS DISRUPTIVAS; o

    *(ii)*    REPSOL ENAJENE por cualquier causa tales TÍTULOS PÚBLICOS a favor de terceros.

2.  En ambos supuestos, los efectos liberatorios del pago y la consiguiente reducción (o, en su caso, extinción) de la deuda de COMPENSACIÓN se pro-

ducirán por la suma de (i) el importe percibido en concepto de AMORTIZACIONES de los TÍTULOS PÚBLICOS y (ii) el monto, neto de GASTOS DEDUCIBLES e INTERESES DEVENGADOS y pendientes de pago, percibido por la ENAJENACIÓN de los TÍTULOS PÚBLICOS. En todo caso, el saldo pendiente de la COMPENSACIÓN no podrá exceder en ningún momento del VALOR NOMINAL con más los intereses capitalizados de los TÍTULOS PÚBLICOS que no hayan sido amortizados y/o ENAJENADOS.

3.   El efecto liberatorio del pago de la COMPENSACIÓN se tendrá por totalmente operado cuando, cualquiera sea el monto percibido por REPSOL en concepto de AMORTIZACIONES y/o ENAJENACIONES de los TÍTULOS PÚBLICOS, REPSOL ya no mantenga TÍTULOS PÚBLICOS en su poder. A efectos aclaratorios, se entenderá que se mantienen en poder de REPSOL todos los TÍTULOS PÚBLICOS que no haya ENAJENADO.

**CLÁUSULA QUINTA. LÍMITE DE LA COMPENSACIÓN.**

1.   REPSOL no podrá en ningún caso, sea por el cobro del importe de las AMORTIZACIONES de los TÍTULOS PÚBLICOS y/o por su ENAJENACIÓN, recibir un monto mayor al de la COMPENSACIÓN. Siempre que se alcance dicho monto, la deuda de COMPENSACIÓN reconocida en la CLÁUSULA PRIMERA se tendrá por definitivamente extinguida.

2.   Para determinar si el monto de la COMPENSACIÓN ha sido alcanzado, se sumarán, de conformidad con lo previsto en la CLÁUSULA CUARTA: (i) los montos efectivamente percibidos por REPSOL en concepto de

AMORTIZACIONES de los TÍTULOS PÚBLICOS y (ii) los montos, netos de GASTOS DEDUCIBLES e INTERESES DEVENGADOS y pendientes de pago, efectivamente percibidos por REPSOL por la ENAJENACIÓN de los TÍTULOS PÚBLICOS.

3.   Cuando los montos percibidos por REPSOL por los conceptos previstos en el Apartado 1 de esta CLÁUSULA alcancen la suma de DÓLARES CUATRO MIL OCHOCIENTOS MILLONES (USD 4.800.000.000), REPSOL deberá comunicarlo a la REPÚBLICA ARGENTINA y ésta dispondrá, durante el plazo de DIEZ (10) DÍAS desde la recepción de dicha comunicación y al solo efecto cancelatorio, de una opción para adquirir los TÍTULOS PÚBLICOS remanentes que REPSOL mantenga en su poder por una suma de DÓLARES igual a la diferencia positiva entre: (i) el monto de la COMPENSACIÓN más los INTERESES DEVENGADOS y pendientes de pago correspondientes a los TÍTULOS PÚBLICOS no ENAJENADOS y (ii) la totalidad de los montos cobrados por REPSOL referidos al comienzo de este Apartado, todo ello sin costo para REPSOL.

4.   En caso que la REPUBLICA ARGENTINA no ejercite la opción prevista en el Apartado 3 anterior, una vez alcanzado el monto de la COMPENSACIÓN, REPSOL procederá, con relación a los TÍTULOS PÚBLICOS que no hubieran sido objeto de ENAJENACIÓN, con arreglo a las instrucciones que reciba de la REPÚBLICA ARGENTINA exclusivamente a los efectos de su cancelación. Con relación a las sumas percibidas en exceso, procederá igualmente confor-

me a las instrucciones que reciba de la REPÚBLICA ARGENTINA. En ambos casos, las actuaciones que correspondan serán sin costo para REPSOL.

5. REPSOL deberá comunicar a la REPÚBLICA ARGENTINA que ha alcanzado el monto previsto en el Apartado 3 de esta CLÁUSULA y, en su caso, el monto de la COMPENSACIÓN cursando la correspondiente comunicación en el plazo de CINCO (5) DÍAS de haberse producido tales circunstancias.

**CLÁUSULA SEXTA. RENUNCIAS, DESISTIMIENTOS E INDEMNIDADES.**

1. Una vez llevado a cabo el CIERRE se entenderá que REPSOL:

    *(i)* Ha quedado obligada a desistir del derecho y de todas las acciones y reclamos extrajudiciales, judiciales y/o arbitrales, por cualquier CAUSA ANTERIOR al ACUERDO que hubiera iniciado contra la REPÚBLICA ARGENTINA y/o sus PERSONAS VINCULADAS y contra YPF e YPF GAS y/o sus PERSONAS VINCULADAS, tanto en la República Argentina como en el extranjero o en el ámbito internacional, con fundamento en el derecho nacional o internacional, originados en, o vinculados con: el dictado e implementación de los Decretos Nros. 530/2012, 532/2012, 557/2012 y 732/2012; de la Ley Nº 26.741 y de sus normas y actos complementarios y de ejecución; los ANTECEDENTES; los actos societarios y/o disposiciones estatutarias de YPF e YPF GAS, la actuación de sus Directorios y/o directivos y/o Gerentes y la condición de REPSOL como accionista de YPF

e YPF GAS; en todos los casos con excepción de las MATERIAS EXCLUIDAS (en adelante y en conjunto las "PRETENSIONES").

Las PRETENSIONES no se limitan a las causas y reclamos detallados en el **ANEXO** V e incluyen cualquier otro reclamo existente a la fecha o que pudiera existir en el futuro contra la REPÚBLICA ARGENTINA o sus PERSONAS VINCULADAS y contra YPF e YPF GAS y/o sus PERSONAS VINCULADAS relacionado con la declaración de utilidad pública, sujeción a expropiación y ocupación temporánea de las acciones de YPF e YPF GAS; los ANTECEDENTES; la percepción de dividendos por parte de la REPÚBLICA ARGENTINA durante la ocupación temporánea; cualquier tipo de resarcimiento por dicha ocupación; el ejercicio de los derechos económicos y políticos correspondientes a las acciones por parte de la REPÚBLICA ARGENTINA; la divulgación y/o difusión pública de tales actos; cualquier acto celebrado y/o cumplido y/u otorgado por YPF, YPF GAS y/o sus PERSONAS VINCULADAS, referidos a la explotación, administración, preservación, y/o disposición de los activos de tales empresas con anterioridad a la fecha de celebración del ACUERDO; la actuación de REPSOL en la República Argentina como accionista de YPF e YPF GAS por cualquier otra CAUSA ANTERIOR a la fecha de suscripción del ACUERDO, incluyendo aquellos reclamos que pudieran fundarse en la invocación del TBI ARGENTINA-ESPAÑA, cualquier otra norma análoga o los principios generales del derecho in-

ternacional, las leyes y reglamentaciones argentinas; el reclamo de honorarios y costas legales; así como cualquier reclamo contra la REPÚBLICA ARGENTINA y/o sus PERSONAS VINCULADAS originado en, o vinculado con, la pretensión de que la REPUBLICA ARGENTINA deba adquirir por cualquier causa las PARTICIPACIONES REMANENTES u otorgar indemnización alguna por tal concepto.

*(ii)*   Ha renunciado asimismo a promover cualquier reclamo extrajudicial, judicial o arbitral en el futuro en cualquier fuero o jurisdicción, nacional, extranjera o internacional contra la REPÚBLICA ARGENTINA y/o sus PERSONAS VINCULADAS e YPF e YPF GAS y/o sus PERSONAS VINCULADAS, fundado en, o vinculado con, las cuestiones mencionadas en el Punto (i) precedente;

*(iii)*   Deberá obtener los desistimientos de los actores por las demandas y reclamos que se identifican en el **ANEXO** VI y que forman parte de la definición de PRETENSIONES y, en caso de no obtener dichos desistimientos, mantener indemne a la REPÚBLICA ARGENTINA y sus PERSONAS VINCULADAS conforme al Punto (iv) siguiente; y

*(iv)*   Deberá mantener indemne a la REPÚBLICA ARGENTINA y a sus PERSONAS VINCULADAS por cualquier reclamo y/o acción judicial, extrajudicial y/o arbitral que sea formulado por REPSOL, y/o por sus PERSONAS VINCULADAS, referido a LAS PRETENSIONES.

2.  Una vez llevado a cabo el CIERRE se entenderá que la REPÚBLICA ARGENTINA:

   *(i)*    Ha quedado obligada a desistir del derecho y de todas las acciones y reclamos extrajudiciales, judiciales y/o arbitrales, presentes o futuros, contra REPSOL y/o sus PERSONAS VINCULADAS, tanto en el territorio de la REPÚBLICA ARGENTINA como en el extranjero o en el ámbito internacional, con fundamento en el derecho nacional o internacional, originados en, o vinculados con, la actuación de REPSOL y/o sus PERSONAS VINCULADAS como accionistas (controlantes o no), directores, síndicos y/o empleados de YPF y/o YPF GAS y/o sus respectivas CONTROLADAS mientras REPSOL ejerció el control de YPF e YPF GAS, y también desde que se hizo efectiva la intervención dispuesta por los Decretos Nº 530/2012 y 557/2012 hasta la FECHA DE CIERRE, así como con la gestión de dichas sociedades durante los indicados períodos; en todos los casos con excepción de las MATERIAS EXCLUIDAS.

   *(ii)*   Ha renunciado asimismo a promover cualquier reclamo extrajudicial, administrativo, judicial y/o arbitral en el futuro en cualquier fuero o jurisdicción, nacional, extranjera o internacional contra REPSOL y/o sus PERSONAS VINCULADAS, fundado en, o vinculado con, las cuestiones mencionadas en el Punto (i) precedente;

   *(iii)*  Deberá mantener indemne a REPSOL y a sus PERSONAS VINCULADAS, de las obligaciones que pudieren derivarse de las

acciones enumeradas en el **ANEXO** VII y de cualquier otra pretensión o actuación de terceros, de cualquier naturaleza, relacionada con: (a) la implementación y/o el cumplimiento por parte de YPF y/o de la REPÚBLICA ARGENTINA del Programa de Propiedad Participada previsto en la Ley 23.696 y (b) cualquier deuda originada en causa, título o compensación existentes al 31 de diciembre de 1990 y/o cualquier deuda eventual o contingencia generada por hechos, actos u operaciones de YPF y/o YPF GAS y/o sus respectivas CONTROLADAS cuyo inicio sea anterior al 1 de enero de 1991;

*(iv)*   Ha quedado obligada a votar en las asambleas de YPF y de YPF GAS en el sentido de rechazar la promoción de nuevas acciones o reclamos contra REPSOL y/o contra sus PERSONAS VINCULADAS fundados en CAUSA ANTERIOR a la FECHA DE CIERRE y de desistir de las acciones y reclamos ya promovidos y del derecho invocado en ellos, salvo que se tratare de reclamos que sean considerados MATERIAS EXCLUIDAS.

3.   A efectos aclaratorios se deja constancia de que las estipulaciones de la presente CLÁUSULA no obstarán el ejercicio, en su caso, por parte del Ministerio Público Fiscal y del Poder Judicial, de sus respectivas competencias en materia penal.

4.   Cada PARTE mantendrá indemne a la otra si cualquiera de las personas o entidades comprendidas dentro de su respectiva definición no respeta los desistimientos, renuncias y/o indemnidades previstas en el ACUERDO.

5. El procedimiento para hacer efectivas las indemnidades relacionadas con reclamos y el alcance de las mismas se regulan en el **ANEXO** VIII.

**CLÁUSULA SÉPTIMA. CONDICIONES SUSPENSIVAS.**

1. La celebración del CIERRE y, por lo tanto, la plena eficacia del ACUERDO, quedan sujetas a que se cumplan las siguientes condiciones (las "CONDICIONES SUSPENSIVAS"):

> *(i)* Que, antes del 7 de abril de 2014, la Junta General de accionistas de REPSOL S.A. ratifique el ACUERDO de manera plena e incondicionada.

> *(ii)* Que, antes del 1 de mayo de 2014, el ACUERDO sea aprobado de manera plena e incondicionada mediante una ley especial sancionada por el Honorable Congreso de la Nación Argentina, promulgada y publicada en el Boletín Oficial de la REPÚBLICA ARGENTINA por el Poder Ejecutivo Nacional, que apruebe, además, la emisión de los TÍTULOS PÚBLICOS y de los avales necesarios para el otorgamiento de la GARANTÍA y la ampliación de las partidas presupuestarias correspondientes.

> *(iii)* Que, antes del 7 de mayo de 2014, sean removidas, sin costo para REPSOL y a satisfacción de ambas PARTES, las medidas cautelares existentes dictadas en los procesos mencionados en el **ANEXO** IX.

*(iv)*   Que, al CIERRE, no se haya producido ninguna MEDIDA DISRUPTIVA que afecte a las ACCIONES y/o a las PARTICIPACIONES REMANENTES y/o a los TÍTULOS PÚBLICOS y/o a cualquier derecho económico de REPSOL emanado del ACUERDO o de los TÍTULOS PÚBLICOS.

*(v)*   Que, al CIERRE, no se hubiese producido y mantuviera sus efectos un CAMBIO MATERIAL ADVERSO.

*(vi)*   Que, al CIERRE, no resulte jurídicamente imposible en la REPÚBLICA ARGENTINA proceder al CIERRE y/o al cumplimiento del ACUERDO por cualesquiera otras causas, ajenas o no, a las PARTES.

Todas las CONDICIONES SUSPENSIVAS precedentes se establecen en interés de ambas PARTES, quienes podrán renunciar a su cumplimiento de común acuerdo y por escrito.

2.   Las PARTES se obligan a realizar sus razonables esfuerzos (sin que ello implique obligación de efectuar erogación alguna) para facilitar el cumplimiento de las CONDICIONES SUSPENSIVAS.

3.   Las PARTES se obligan a notificarse recíprocamente por correo electrónico el cumplimiento de las CONDICIONES SUSPENSIVAS previstas en los Puntos (i) a (iii) en el DÍA HÁBIL siguiente a la fecha en que hubieran tomado conocimiento fehaciente de dicha circunstancia, aportando oportunamente la documentación respaldatoria. Asimismo, las PARTES se obligan a notificarse recíprocamente por el mismo medio y de manera inmediata la verificación de cual-

quier circunstancia que pueda implicar el incumplimiento de las CONDICIONES SUSPENSIVAS previstas en los Puntos (iv) a (vi).

**CLÁUSULA OCTAVA. DECLARACIONES Y GARANTÍAS.**

1. REPSOL declara y garantiza que:

    *(i)*   Es propietaria de las ACCIONES, y que no pesa sobre ella limitación de ningún tipo a su capacidad y/o derecho para celebrar el ACUERDO con excepción de las medidas cautelares dictadas en los procesos mencionados en el **ANEXO** IX.

    *(ii)*  No ha transferido, total o parcialmente, directa o indirectamente, derecho o interés alguno sobre las ACCIONES o sobre los derechos asociados a ellas y/o sobre las PRETENSIONES a un tercero.

    *(iii)* Una vez cumplidas las CONDICIONES SUSPENSIVAS, las obligaciones de REPSOL derivadas de este ACUERDO serán exigibles en sus términos.

2. La REPÚBLICA ARGENTINA declara y garantiza que:

    *(i)*   Los derechos de REPSOL emergentes del ACUERDO gozan de la protección del TBI ARGENTINA-ESPAÑA. En particular, dado el carácter de indemnización expropiatoria que tiene la COMPENSACIÓN, los derechos de REPSOL emergentes de los TÍTULOS PÚBLICOS y/o la COMPENSACIÓN constituyen una "Inversión" en los términos del TBI ARGENTINA-ESPAÑA.

*(ii)* Dado su carácter de indemnización expropiatoria, los derechos de REPSOL emergentes de la COMPENSACIÓN están igualmente protegidos por la Constitución Nacional y no podrán ser objeto de REESTRUCTURACIÓN y deberán ser satisfechos en los términos, plazos y condiciones pactados en el ACUERDO.

*(iii)* En relación con el pago de los TÍTULOS PÚBLICOS y/o con cualquier pago que resulte exigible en virtud del ACUERDO, la REPÚBLICA ARGENTINA no podrá oponer a REPSOL ninguna compensación, de fuente legal o convencional, por ningún crédito, actual o futuro, que pudiera invocar contra REPSOL.

*(iv)* El pago del capital y de los intereses de los TÍTULOS PÚBLICOS, así como de toda otra suma pagadera a REPSOL en virtud del ACUERDO, serán efectuados en DÓLARES, sin sujeción a restricción alguna, cambiaria o de otra naturaleza.

*(v)* De conformidad con la normativa aplicable al ACUERDO, su celebración y eventual ejecución, la COMPENSACIÓN y los pagos que se efectúen en concepto de capital e intereses a REPSOL, así como la percepción por REPSOL de los indicados pagos y los demás que se originen de la tenencia y/o disposición de los TÍTULOS PÚBLICOS, no estarán sujetos a IMPUESTO alguno.

*(vi)* Una vez cumplidas las CONDICIONES SUSPENSIVAS, las obligaciones de la REPÚBLICA ARGENTINA derivadas de este ACUERDO serán exigibles y ejecutables en sus propios términos.

3.   Cada PARTE se obliga a mantener indemne a la otra por cualquier inexactitud o incumplimiento de sus respectivas declaraciones realizadas y garantías otorgadas en el ACUERDO.

**CLÁUSULA NOVENA. CIERRE.**

1.   <u>FECHA DE CIERRE</u>. A las 10 horas de Buenos Aires del sexto DÍA HÁBIL INTERNACIONAL inmediatamente posterior a aquél en que se hallen cumplidas todas las CONDICIONES SUSPENSIVAS previstas en los Puntos (i) a (iii) de la CLÁUSULA SÉPTIMA, y siempre que en ese DÍA y hora se hubieren cumplido las CONDICIONES SUSPENSIVAS previstas en los Puntos (iv) a (vi) de esa misma CLÁUSULA SÉPTIMA, se verificarán las actuaciones enumeradas en el Apartado 3 siguiente (conjuntamente, el "CIERRE").

2.   <u>Lugar del CIERRE</u>. El CIERRE se llevará a cabo en la ciudad de Buenos Aires, en el lugar que indique la REPÚBLICA ARGENTINA.

3.   <u>Actuaciones constitutivas del CIERRE</u>. En el acto de CIERRE, y como parte de un único y mismo acto, se acuerda que:

> *(i)*   REPSOL entregará a la REPÚBLICA ARGENTINA todos los documentos necesarios para la transferencia de las ACCIONES, los que se identifican en el **ANEXO** X, instruyendo a Caja de Valores S.A.  e YPF GAS a los efectos del registro del cambio de titularidad de las ACCIONES a favor del Estado Nacional.

*(ii)*     La REPÚBLICA ARGENTINA hará efectivo el depósito de todos los TÍTULOS PÚBLICOS en la cuenta en la REPÚBLICA ARGENTINA o en el extranjero que indique REPSOL a tales efectos.

*(iii)*    La REPÚBLICA ARGENTINA entregará a REPSOL la GARANTÍA en los términos del modelo incorporado al **ANEXO** XI.

*(iv)*     La REPÚBLICA ARGENTINA entregará a REPSOL un dictamen de la Administración Federal de Ingresos Públicos del que resulte que, a criterio de dicho organismo, la tasa de justicia ingresada en los procesos listados en el **ANEXO** XII es correcta y no se adeuda ninguna suma adicional por tal concepto;

*(v)*      REPSOL suscribirá y entregará, por intermedio de sus respectivos apoderados y letrados intervinientes, u obtendrá de parte de los sujetos y entidades correspondientes y entregará, dos copias de los escritos de desistimiento de la acción y del derecho en los casos identificados en el **ANEXO** V y, en la medida de lo posible, el **ANEXO** VI, sin perjuicio, en este último supuesto, de mantener indemne a la REPÚBLICA ARGENTINA en caso de no obtenerlos. Tales escritos cumplirán con las formalidades, declaraciones y peticiones exigidas en cada jurisdicción a los efectos del cumplimiento de lo previsto en la CLÁUSULA SEXTA del ACUERDO.

4.   Recién se entenderá que ha tenido lugar el CIERRE cuando, verificadas todas las actuaciones enumeradas en el Apartado 3 anterior, REPSOL haya recibido confirmación de que los TÍTULOS PÚBLICOS han sido depositados en

la cuenta prevista en el Punto (ii) del indicado Apartado 3 libres de toda MEDIDA DISRUPTIVA.

**CLÁUSULA DÉCIMA. EXIGIBILIDAD.**

Si todas las CONDICIONES SUSPENSIVAS hubieren quedado cumplidas, y pese a ello, una de las PARTES no concurre al acto de formalización del CIERRE o no cumple en él con todas las actuaciones a su cargo, la otra parte podrá optar entre: (i) exigir el cumplimiento del ACUERDO o (ii) declararlo resuelto, en ambos casos con más los daños y perjuicios que correspondan.

**CLÁUSULA DECIMOPRIMERA. EXTINCIÓN.**

Si alguna de las CONDICIONES SUSPENSIVAS resultara incumplida por cualquier causa, imputable o no a alguna de las PARTES, cualquiera de las PARTES podrá, de allí en más, declarar que el ACUERDO ha quedado sin efecto de pleno derecho, sin responsabilidad para ninguna de las PARTES.

**CLÁUSULA DECIMOSEGUNDA. EFECTOS DE LA EXTINCIÓN.**

1. En caso de que una de las PARTES hubiera declarado que el ACUERDO ha quedado sin efecto en virtud de lo dispuesto en las CLÁUSULAS DÉCIMA o DECIMOPRIMERA, se considerará como si el ACUERDO y los actos cumplidos en su consecuencia nunca hubieran existido (con excepción de la presente CLÁUSULA       y       las       CLÁUSULAS       DÉCIMA,       DECIMOPRIMERA,

DECIMOSÉPTIMA, DECIMOCTAVA, DECIMONOVENA, VIGESIMOPRIMERA y VIGESIMOSEGUNDA).

2.   En tal supuesto ninguna de las PARTES podrá invocar en contra de la otra PARTE y/o sus PERSONAS VINCULADAS, en juicio, arbitraje, procedimiento administrativo o en cualquier otro ámbito, sus considerandos ni estipulaciones, ni los actos, informes y/o dictámenes emitidos en su consecuencia, en virtud de lo dispuesto en la CLÁUSULA SÉPTIMA y demás CLÁUSULAS concordantes, y las PARTES mantendrán todos los derechos preexistentes a la fecha del ACUERDO.

**CLÁUSULA DECIMOTERCERA. OBLIGACIONES POSTERIORES AL CIERRE.**

1.   Con posterioridad al CIERRE, REPSOL se compromete a:

   *(i)*   Presentar en los respectivos juicios y procesos los desistimientos previstos en el Punto (v) del Apartado 3 de la CLÁUSULA NOVENA dentro de los TRES (3) DÍAS hábiles judiciales de cumplido el acto de CIERRE.

   *(ii)*   Cumplir de buena fe el ACUERDO y no adoptar ninguna conducta u otorgar ningún acto que tienda a desvirtuar los fines del ACUERDO o de los compromisos asumidos en virtud del mismo, y, en su calidad de accionista de YPF, a conducirse en el sentido de dar eficacia al presente.

*(iii)*   Prestar su conformidad, en caso de corresponder, a los desistimientos de la REPÚBLICA ARGENTINA y, en todo caso, prestar u obtener el consentimiento de los respectivos actores o demandantes a la imposición de costas por su orden en todos los litigios que se identifican en los **ANEXOS** V y VI.

*(iv)*   Al objeto de que la REPÚBLICA ARGENTINA tenga constancia de los montos que REPSOL reciba por la eventual ENAJENACIÓN de los TÍTULOS PÚBLICOS, presentar trimestralmente, comenzando en septiembre de 2014, un informe en el que conste un detalle de: (1) el número de los TÍTULOS PÚBLICOS ENAJENADOS desde la fecha del CIERRE, (2) los precios recibidos por tales ENAJENACIONES, netos de GASTOS DEDUCIBLES y de INTERESES DEVENGADOS pendientes de pago, y (3) las operaciones de disposición que no constituyan ENAJENACIÓN con indicación del número de TÍTULOS PÚBLICOS afectados, los plazos y demás términos que permitan la trazabilidad de la tenencia de los TÍTULOS PÚBLICOS no ENAJENADOS. Asimismo, dicho informe será revisado y confirmado por el AUDITOR semestralmente.

*(v)*   En cada caso de ENAJENACIÓN de TÍTULOS PÚBLICOS por un VALOR NOMINAL conjunto igual o superior a DÓLARES TRESCIENTOS MILLONES (USD 300.000.000), ofrecer a la REPÚBLICA ARGENTINA, o al cesionario de este derecho de acuerdo con la CLÁUSULA DECIMOSÉPTIMA, la adquisición de

TÍTULOS PÚBLICOS de la misma especie y cantidad y en las mismas condiciones económicas y jurídicas en las que se haya efectuado aquella ENAJENACIÓN. En caso de que REPSOL no tuviere TÍTULOS PÚBLICOS de la misma especie en cantidad suficiente para atender la opción de compra de la REPÚBLICA ARGENTINA, REPSOL sólo estará obligada a vender a la REPÚBLICA ARGENTINA TÍTULOS PÚBLICOS hasta el límite de los TÍTULOS PÚBLICOS de dicha especie de los que fuera titular y que no estuvieran previamente afectados a operaciones de garantía o cobertura. A los fines del ejercicio del derecho previsto en esta cláusula, se estará al procedimiento previsto en el **ANEXO** XIII.

2. Con posterioridad al CIERRE, la REPÚBLICA ARGENTINA se compromete a:

   *(i)* Cumplir de buena fe el ACUERDO, pagar puntualmente los TÍTULOS PÚBLICOS y no adoptar ninguna conducta u otorgar ningún acto que tienda a desvirtuar los fines del ACUERDO y los compromisos asumidos en virtud del mismo.

   *(ii)* Prestar su conformidad, en caso de corresponder, a los desistimientos de REPSOL y, en todo caso, a la imposición de costas por su orden en todos los litigios abiertos que se desisten en los cuales la REPÚBLICA ARGENTINA sea parte actora o demandada.

*(iii)*   Votar en las Asambleas de YPF e YPF GAS y, en general, conducir-
se como accionista de YPF e YPF GAS en el sentido de dar eficacia
al ACUERDO.

**CLÁUSULA DECIMOCUARTA. REESTRUCTURACIÓN.**

1.  En cualquier caso de REESTRUCTURACIÓN REPSOL tendrá derecho a
exigir de la REPÚBLICA ARGENTINA el pago en efectivo del importe pendien-
te de la COMPENSACIÓN incrementado por los INTERESES DEVENGADOS
pendientes de pago (la "COMPENSACIÓN ACELERADA").

2.  A efectos de lo previsto en el Apartado 1 precedente, serán de aplicación
las siguientes reglas:

*(i)*   El importe de la COMPENSACIÓN ACELERADA se determinará
sumando: (1) el saldo de la COMPENSACIÓN pendiente de pago
calculado conforme a lo previsto en la CLÁUSULA CUARTA y con
sujeción al límite previsto en la CLÁUSULA QUINTA y (2) el importe
de los INTERESES DEVENGADOS e impagos en el momento en
que REPSOL envíe la comunicación a que hace referencia el Punto
(iii) siguiente.

*(ii)*   Para acreditar el saldo de la COMPENSACIÓN pendiente de pago a
que se refiere el Punto (i) anterior REPSOL deberá aportar (i) certifi-
cación del AUDITOR acreditativa de los importes percibidos por
REPSOL en concepto de AMORTIZACIONES de los TÍTULOS
PÚBLICOS y del monto, neto de GASTOS DEDUCIBLES e

INTERESES DEVENGADOS y pendientes de pago, efectivamente percibido por REPSOL por la ENAJENACIÓN de los TÍTULOS PÚBLICOS; y (ii) certificación de la entidad depositaria acreditativa de los TÍTULOS PÚBLICOS de los que REPSOL sea tenedor y, en su caso, identificación de los contratos celebrados con terceros en cuya virtud haya dejado de ser tenedor de los TÍTULOS PÚBLICOS sin mediar ENAJENACIÓN que permita la plena trazabilidad de su tenencia.

Para acreditar los INTERESES DEVENGADOS e impagos, REPSOL deberá aportar la correspondiente certificación del AUDITOR, que se basará en la documentación que le proporcione la entidad o entidades depositarias, en las condiciones de emisión de los TÍTULOS PÚBLICOS y en los demás documentos que estime necesarios para acreditar su devengamiento y falta de pago.

(iii) El pago de la COMPENSACIÓN ACELERADA será exigible a partir del trigésimo DÍA posterior a aquél en que la REPÚBLICA ARGENTINA reciba una notificación fehaciente de REPSOL mediante la cual (1) opta por exigir el pago de la COMPENSACIÓN ACELERADA conforme a lo prevenido en el Apartado 1 de esta CLÁUSULA, (2) expresa el acaecimiento de la circunstancia o circunstancias incluidas en la definición de REESTRUCTURACIÓN que hayan motivado su derecho a exigir el pago de la COMPENSACIÓN ACELERADA, (3) justifica la liquidación del saldo

pendiente de pago acompañando la documentación soporte a que se refiere el Punto (ii) anterior y (4) ofrece poner a disposición de la REPÚBLICA ARGENTINA, contra el pago y para su cancelación, los TÍTULOS PÚBLICOS que obran en su poder, los cuales serán debidamente identificados.

No obstante, la REPÚBLICA ARGENTINA podrá subsanar o remover durante dicho plazo de TREINTA (30) DÍAS la causa de REESTRUCTURACIÓN comunicada, en cuyo caso no se producirá la aceleración del vencimiento de la COMPENSACIÓN y, por tanto, la exigibilidad de la COMPENSACIÓN ACELERADA.

(iv)  A partir del DÍA en que el pago resulte exigible según lo previsto en el Punto (iii) precedente, y hasta su efectivo pago a REPSOL, el importe adeudado en concepto de COMPENSACIÓN ACELERADA (incrementado, a su vez, con los intereses compensatorios devengados durante el período de subsanación a que se refiere el Punto (iii) anterior) devengará, en sustitución de cualquier otro interés, un interés anual de OCHO PUNTOS CON SETENTA Y CINCO CENTÉSIMAS POR CIENTO (8,75%), con más un interés moratorio de UN PUNTO CON SETENTA Y CINCO CENTÉSIMAS POR CIENTO (1,75%). Dicho interés se devengará diariamente sobre la base de un año de TRESCIENTOS SESENTA (360) DÍAS. Los intereses así devengados se capitalizarán automáticamente con periodicidad anual y generarán nuevos intereses moratorios y compen-

satorios. Todo pago será imputado, en este orden, al pago de gastos, intereses moratorios, intereses compensatorios y principal.

*(v)*   Contra el pago del importe de la COMPENSACIÓN ACELERADA y las demás cantidades procedentes con arreglo a esta CLÁUSULA, REPSOL pondrá a disposición de la REPÚBLICA ARGENTINA los TÍTULOS PÚBLICOS no ENAJENADOS ofrecidos para su cancelación con arreglo a lo previsto en el número (4) del Punto (iii) anterior, deducidos, en su caso, los que haya vendido en ejecución de la garantía conforme a lo dispuesto en el Apartado 3 posterior, y procederá con arreglo a las instrucciones que reciba de la REPÚBLICA ARGENTINA para su cancelación.

*(vi)*   Salvo en el supuesto previsto en el Apartado 2 de la CLÁUSULA DECIMOSEXTA, la COMPENSACIÓN ACELERADA y las demás cantidades procedentes con arreglo a esta CLÁUSULA serán pagaderas en la cuenta que indique REPSOL, en la República Argentina o en el exterior, en efectivo, en DÓLARES, libres de gastos, MEDIDAS DISRUPTIVAS e IMPUESTOS.

3.   Entretanto no sean satisfechas la COMPENSACIÓN ACELERADA y demás cantidades procedentes con arreglo a esta CLÁUSULA, REPSOL podrá retener los TÍTULOS PÚBLICOS en garantía del cobro de su acreencia. A tal efecto, REPSOL queda expresamente autorizada para disponer de ellos a partir del trigésimo DÍA posterior a la fecha de exigibilidad prevista en el Punto (iii) del Apartado 2 anterior y a aplicar su producido al pago, en este orden, de los

intereses y de la COMPENSACIÓN ACELERADA, la que sólo se reducirá en tal supuesto por el monto que corresponda a dicha aplicación.

Para la ejecución de la garantía, REPSOL deberá instruir, al menos, a tres de las ENTIDADES DE REFERENCIA para que procedan a la venta de los TÍTULOS PÚBLICOS en el mercado con la indicación de que procedan del modo que estimen más oportuno para maximizar el precio durante el plazo fijado por REPSOL, que no podrá ser inferior a NOVENTA (90) DÍAS HÁBILES INTERNACIONALES. Una vez realizados total o parcialmente los TÍTULOS PÚBLICOS retenidos en garantía del pago de la COMPENSACIÓN ACELERADA, REPSOL facilitará a la REPÚBLICA ARGENTINA el detalle de los TÍTULOS PÚBLICOS dispuestos, el monto obtenido y, en consecuencia, el importe de la deuda remanente.

Al objeto de evitar cualquier duda, se deja constancia de que (i) el importe de la deuda remanente no se verá afectado por la limitación contenida en la última frase del Apartado 2 de la CLÁUSULA CUARTA, y (ii) las ventas de TÍTULOS PÚBLICOS que efectúe REPSOL en ejecución de la garantía no darán lugar a las opciones de compra previstas en el Apartado 3 de la CLÁUSULA QUINTA y en el Punto (v) del Apartado 1 de la CLÁUSULA DECIMOTERCERA.

4. La REESTRUCTURACIÓN no habilitará a REPSOL para resolver el ACUERDO ni reiniciar la CONTROVERSIA y/o invocar las PRETENSIONES y los demás derechos y acciones renunciados y desistidos por el ACUERDO, y/o a reclamar otra suma que la relativa a la COMPENSACIÓN ACELERADA en los términos de esta CLÁUSULA.

**CLAUSULA DECIMOQUINTA. INCUMPLIMIENTO DE OTRAS OBLIGACIONES.**

Salvo en el supuesto previsto en la CLÁUSULA DÉCIMA, en caso de incumplimiento de cualquier obligación distinta del pago de los TÍTULOS PÚBLICOS, la PARTE cumplidora tampoco podrá optar por la resolución del ACUERDO, pero podrá exigir su ejecución y cumplimiento utilizando para ello todos los remedios disponibles en derecho. En todo caso, la PARTE cumplidora podrá además reclamar de la otra PARTE la indemnización de los daños y perjuicios causados por el incumplimiento, los que devengarán intereses según el régimen previsto en el Punto (iv) del Apartado 2 de la CLÁUSULA DECIMOCUARTA.

**CLÁUSULA DECIMOSEXTA – MEDIDAS DISRUPTIVAS**

1.  En el caso de que, con posterioridad al CIERRE, se produzca cualquier MEDIDA DISRUPTIVA, la REPÚBLICA ARGENTINA contará con un plazo de NOVENTA (90) DÍAS para obtener el levantamiento o remoción de dicha MEDIDA DISRUPTIVA y, en su caso, subsanar la falta de recepción del pago por parte de REPSOL, siempre sin costo para REPSOL. El plazo de NOVENTA (90) DÍAS se computará desde la fecha en que REPSOL comunique a la REPÚBLICA ARGENTINA el acaecimiento de la MEDIDA DISRUPTIVA.

No obstante lo anterior, la REPÚBLICA ARGENTINA podrá reclamar a REPSOL la devolución de las sumas que haya debido depositar o afianzar a la

orden de la autoridad judicial o administrativa que corresponda, con más los intereses y los daños y perjuicios que fueren procedentes, en caso de recaer laudo, firme y definitivo, adverso a REPSOL y favorable a la REPÚBLICA ARGENTINA en el arbitraje que ésta promueva de acuerdo con la CLÁUSULA DECIMONOVENA del ACUERDO para determinar la existencia de tal derecho a devolución. En particular, no procederá tal devolución cuando se trate de conceptos comprendidos en las indemnidades, desistimientos o renuncias otorgadas por la REPÚBLICA ARGENTINA en el ACUERDO.

2.   REPSOL presta desde ya conformidad para que la subsanación de la falta de pago tenga lugar mediante el depósito, por parte de la REPÚBLICA ARGENTINA, de la cantidad adeudada en DÓLARES en virtud del presente ACUERDO, en la cuenta bancaria en la República Argentina que REPSOL indique al efecto, pero ello siempre que REPSOL pueda transferir inmediatamente dicha cantidad de DÓLARES a una cuenta en el exterior libre de toda MEDIDA DISRUPTIVA e IMPUESTOS.

3.   Transcurrido el referido plazo de NOVENTA (90) DÍAS sin que se haya producido tal levantamiento o subsanación, REPSOL podrá exigir el pago inmediato de la COMPENSACIÓN ACELERADA y demás importes que procedan conforme a la CLÁUSULA DECIMOCUARTA. En este caso, la fecha de exigibilidad será el DÍA posterior a aquél en que la REPÚBLICA ARGENTINA reciba el correspondiente requerimiento de pago de REPSOL acompañado de la documentación prevista en el Punto (iii) del Apartado 2 de la CLÁUSULA DECIMOCUARTA.

**CLÁUSULA DECIMOSÉPTIMA. CESIÓN.**

Ninguna de las PARTES podrá ceder su posición contractual en el ACUERDO sin el consentimiento previo y por escrito de la otra PARTE. REPSOL tampoco podrá ceder los derechos de crédito derivados de la COMPENSACIÓN, salvo que el cesionario sea una CONTROLADA de REPSOL. Excepto por la defensa de compensación de créditos y deudas, la REPÚBLICA ARGENTINA podrá oponer a dicho cesionario cualquier excepción o defensa que hubiera podido oponer a REPSOL. La REPÚBLICA ARGENTINA podrá ceder el derecho previsto a su favor en el Punto (v) del Apartado 1 de la CLÁUSULA DECIMOTERCERA a cualquier entidad comprendida dentro de la definición de la REPÚBLICA ARGENTINA o a cualquier sociedad o fondo fiduciario controlado por el Estado Nacional.

**CLÁUSULA DECIMOCTAVA. INESCINDIBILIDAD.**

1. El ACUERDO constituye un todo único e inescindible. En consecuencia:

    *(i)*    La falta de aprobación o la aprobación condicionada de cualquiera de sus CLÁUSULAS o ANEXOS determinará que no pueda procederse al CIERRE, con las mismas consecuencias previstas en el Apartado 1 de la CLÁUSULA DECIMOSEGUNDA.

    *(ii)*   Ninguna de las PARTES podrá exigir el cumplimiento parcial del ACUERDO.

2.   Cada PARTE faculta a sus respectivos órganos firmantes del ACUERDO para convenir modificaciones no sustanciales del presente ACUERDO.

**CLÁUSULA DECIMONOVENA. LEY APLICABLE. JURISDICCIÓN.**

1.   El ACUERDO, como así también la totalidad de acuerdos y compromisos que lo integran, se rige por sus disposiciones y por las leyes de la República Argentina, el TBI Argentina-España y demás fuentes previstas en este último, incluidos los principios del derecho internacional sobre la responsabilidad internacional de los Estados.

2.   Todo litigio, controversia o reclamación entre las PARTES resultante de este ACUERDO o que guarde relación directa con éste y, en particular, los relativos a la exigencia por REPSOL del pago de la COMPENSACIÓN ACELERADA, así como cualquier litigio, controversia o reclamación sobre la interpretación y aplicación al caso del TBI ARGENTINA-ESPAÑA, se resolverá exclusivamente mediante arbitraje de conformidad con el Reglamento de Arbitraje de la Comisión de las Naciones Unidas para el Derecho Mercantil Internacional ("CNUDMI" o "UNCITRAL"), tal como se encuentra en vigor a la fecha de suscripción del ACUERDO.

En los términos del Artículo X, inciso 3, apartado b), del TBI Argentina-España las PARTES acuerdan que, en caso de surgir cualquier controversia o diferencia entre ellas, procederán a comunicarla a la otra PARTE. Las PARTES deberán llevar adelante un período obligatorio de conversaciones amistosas por espacio de TREINTA (30) DÍAS contados desde la recepción de la comunicación.

En caso de que al cabo de ese lapso se mantenga la controversia o diferencia entre las PARTES, cualquiera de las PARTES quedará habilitada para iniciar el arbitraje.

El número de árbitros será de TRES (3), el lugar del arbitraje será París, República de Francia, y el idioma del arbitraje el español. Cada parte designará un árbitro. Los dos árbitros así designados, de común acuerdo, designarán al tercero, el que presidirá el tribunal. En caso de falta de acuerdo respecto de la designación del tercer árbitro, la autoridad nominadora será el Secretario General de la Corte Permanente de Arbitraje de La Haya.


**CLÁUSULA VIGÉSIMA. SUSPENSIÓN DE PROCEDIMIENTOS.**

A partir de la firma del ACUERDO y hasta que tenga lugar el CIERRE o hasta que el ACUERDO quede sin efecto, cada PARTE queda obligada a suspender todos los procedimientos en curso, y/o a no iniciar nuevos procedimientos, contra la otra PARTE y/o contra sus PERSONAS VINCULADAS, en relación con las cuestiones contempladas en este ACUERDO excepto en los casos en que sea estrictamente necesario para preservar sus derechos. En los casos en los que no resulte posible suspender el trámite de los procedimientos en curso, las PARTES podrán realizar las presentaciones que resulten necesarias para preservar sus derechos. Las PARTES se comprometen a solicitar la suspensión de los procedimientos no bien ello resulte procesalmente posible.

**CLÁUSULA VIGESIMOPRIMERA. DOMICILIO Y NOTIFICACIONES.**

1.   A todos los efectos legales vinculados con la ejecución del ACUERDO, la REPÚBLICA ARGENTINA y REPSOL constituyen domicilio en los indicados en el encabezamiento, donde se tendrán por válidas todas las notificaciones que en ellos se efectúen.

2.   Todas las notificaciones deberán realizarse por escrito y mediante comunicación fehaciente, y serán válidas y eficaces a partir de su efectiva recepción por el destinatario. Todas las comunicaciones cursadas entre las PARTES deberán ser dirigidas a la atención de las personas y a las direcciones que cada PARTE notifique a la otra.

3.   Exceptúanse de la regla prevista en el Apartado 2 precedente, aquellas comunicaciones que expresamente se prevea deban ser cursadas por correo electrónico, las que se enviarán a los destinatarios y direcciones que las PARTES se comuniquen por escrito.

**CLÁUSULA VIGESIMOSEGUNDA. DEFINICIONES.**

A todos los efectos del ACUERDO se aplicarán las definiciones listadas en el **ANEXO** XIV.

En prueba de plena y total conformidad, se firman CUATRO (4) ejemplares, DOS (2) para cada PARTE, de un mismo tenor, en la Ciudad de Buenos Aires, República Argentina, el 27 de febrero de 2014.

## <u>ANEXO I</u>

## PERSONERÍA REPSOL

# ANEXO II

## INFORME DEL TRIBUNAL DE TASACIONES DE LA NACIÓN



**Ministerio de Planificación Federal**
**Inversión Pública y Servicios**
**Tribunal de Tasaciones de la Nación**

171

E-45517/00

Nota TT N° 535

Buenos Aires, 25 FEB 201

Ref.: Proyecto de Ley-Aprobación Convenio de Solución Amigable y Avenimiento de Expropiación (EXP-S01:0035975/2014)

SEÑOR SECRETARIO:

En respuesta a lo solicitado en su nota respecto al asunto de la referencia, se transcribe el informe de la Sala:

1. **SALA:** SALA AD HOC, Resolución TTN N° 9/2013.

2. **EXPEDIENTE N°:** E-45.517/00

3. **SOLICITANTE:** Ministerio de Economía y Finanzas Públicas, Secretaría de Política Económica y Planificación del Desarrollo.

4. **MOTIVO:** Informe Especial sobre el Convenio de Solución Amigable y Avenimiento de Expropiación del cincuenta y un por ciento (51%) del patrimonio de YPF Sociedad Anónima representado por igual porcentaje de las acciones Clase D de dicha empresa, pertenecientes a Repsol YPF S.A., sus controlantes o controladas, en forma directa o indirecta. Ley N° 26.741.

5. **CONVENIO DE ACUERDO:**

Al Tribunal de Tasaciones de la Nación se ha requerido emitir un Informe Especial relativo a la valuación de las acciones de YPF S.A. y de YPF GAS S.A., en conjunto las acciones a expropiar, de titularidad de Repsol S.A., cuya expropiación fue dispuesta por el artículo 7° y concordantes de la Ley 26.741, al tiempo que se le ha suministrado copia del proyecto de Convenio de Solución Amigable y Avenimiento de Expropiación, que han acordado la República Argentina, por intermedio del Sr. Titular del Ministerio de Economía y Finanzas Públicas de la Nación, y Repsol S.A., a los fines de que se lo tenga en consideración al emitir este informe.

Según surge de la copia suministrada al organismo, el convenio tiene por objeto principal la transferencia a favor de la República Argentina de la titularidad de la Acciones Sujetas a Expropiación y el reconocimiento a Repsol S.A., del



*Ministerio de Planificación Federal*
*Inversión Pública y Servicios*
*Tribunal de Tasaciones de la Nación*

E-45517/00

derecho a obtener una compensación por la expropiación, sus antecedentes y medidas complementarias, los actos de ejecución de la expropiación, y demás conceptos contemplados en el Acuerdo (la compensación). El Convenio contiene además otras cláusulas, incluyendo renuncias, desistimientos e indemnidades otorgadas por las partes. Además, y entre otras cuestiones, regula la forma de pago de la Compensación y la entrega de títulos públicos a Repsol S.A.

En virtud de lo antes expuesto, la Sala Ad Hoc, ha realizado una valuación de las Acciones Sujetas a Expropiación con arreglo a los principios generales y bases de valoración previstos en las Normas Nacionales de Valuación y los criterios utilizados en carácter de Órgano Rector en tasación de bienes, con la debida consideración del valor sustantivo o patrimonial, de conformidad con la legislación aplicable y las características de los bienes en cuestión.

Asimismo, la Secretaría de Finanzas del Ministerio de Economía y Finanzas Públicas ha comunicado a este Tribunal que, atendiendo a las particulares circunstancias del caso y, en especial, a los términos y condiciones del Convenio, corresponde aplicar, para el período que media entre la fecha de la desposesión, resultante de la entrada en vigencia y aplicación de los Decretos N° 530/2012 y 557/2012 y la fecha de emisión de este Informe Especial, una tasa de interés del 0,61 % anual.

Finalmente, según lo requerido, esta Sala Ad Hoc ha examinado los términos y condiciones del Convenio, y en particular el valor de la Compensación que la República Argentina ofrece a Repsol S.A. en su Cláusula Primera, que totaliza US$ 5.000.000.000,- (DOLARES EEUU: CINCO MIL MILLONES), pagaderos por medio de la entrega de títulos públicos y alcanza a los conceptos allí referidos.

A la vista de todo lo antedicho, esta Sala AD HOC considera que el valor a acordarse es justo y razonable a todos los efectos del avenimiento y solución amigable previstos en el Convenio y resulta consistente con los principios y bases de valoración aplicados por este Tribunal .

ING. DANIEL G. MARTIN
PRESIDENTE SALA AD HOC TTN
Tribunal de Tasaciones de la Nación

AL SEÑOR SECRETARIO DE POLITICA ECONÓMICA Y
PLANIFICACIÓN DEL DESARROLLO
Lic. Emmanuel A. ALVAREZ AGIS
S                    /                    D

## ANEXO III

## ACCIONES ALCANZADAS POR LA EXPROPIACIÓN

**1. YPF**

Repsol, S.A. (antes Repsol YPF, S.A.)                    179.740.130

Repsol Capital, S.L. (antes Repsol YPF Capital, S.L.)    20.849.396

Total REPSOL                                            200.589.525

**2. YPF GAS**

Repsol Butano, S.A.                                      89.755.383

## ANEXO IV

## TÍTULOS PÚBLICOS

Los TÍTULOS PÚBLICOS que entregará la REPÚBLICA ARGENTINA a REPSOL en el CIERRE serán TÍTULOS PÚBLICOS INICIALES y, en su caso, TÍTULOS PÚBLICOS ADICIONALES. Su denominación completa, términos y condiciones figuran en los términos y condiciones (*term sheets*) que obran como Apéndice I de este **ANEXO**.

### SECCIÓN A

### TÍTULOS PÚBLICOS INICIALES

En el acto del CIERRE, para el pago de la COMPENSACIÓN, la REPÚBLICA ARGENTINA entregará a REPSOL los siguientes TÍTULOS PÚBLICOS:

> (i)    Bono de la Nación Argentina en Dólares Estadounidenses 7% 2017 ("BONAR X") de un VALOR NOMINAL total de DÓLARES QUINIENTOS MILLONES (USD 500.000.000);

> (ii)    Bono de la Nación Argentina con Descuento en Dólares Estadounidenses 8.28% 2033 ("DISCOUNT 33") de un VALOR NOMINAL total de DÓLARES UN MIL DOSCIENTOS CINCUENTA MILLONES (USD 1.250.000.000); y

> (iii)    Un nuevo bono denominado Bono de la Nación Argentina en Dólares Estadounidenses 8,75% 2024 ("BONAR 2024") de un VALOR NOMINAL total de DÓLARES TRES MIL DOSCIENTOS CINCUENTA MILLONES (USD 3.250.000.000).

**SECCIÓN B**

**TÍTULOS PÚBLICOS ADICIONALES**

1.   Si el cuarto (4º) DÍA HÁBIL anterior a la FECHA DE CIERRE (en adelante, la "FECHA DE REFERENCIA"), la sumatoria del VALOR DE MERCADO de los TÍTULOS PÚBLICOS INICIALES es inferior al VALOR DE REFERENCIA, en el acto del CIERRE la REPÚBLICA ARGENTINA entregará a REPSOL, para el pago de la COMPENSACIÓN, TÍTULOS PÚBLICOS ADICIONALES en cantidad equivalente a la diferencia entre el VALOR DE REFERENCIA y el VALOR DE MERCADO de los TÍTULOS PÚBLICOS INICIALES (en adelante, la "DIFERENCIA").

2.   La cantidad de TÍTULOS PÚBLICOS ADICIONALES a entregar a REPSOL será la necesaria para que su VALOR DE MERCADO, calculado conforme al procedimiento previsto en la Sección C siguiente, sea igual a la DIFERENCIA. En ningún caso, cualquiera sea la DIFERENCIA, la cantidad de TÍTULOS PÚBLICOS ADICIONALES a entregar por la REPÚBLICA ARGENTINA superará un VALOR NOMINAL total de DÓLARES MIL MILLONES (USD 1.000.000.000). Las fracciones se redondearán a la unidad más próxima y, en caso de equidistancia, a la unidad superior.

3.   Los TÍTULOS PÚBLICOS ADICIONALES serán entregados en este orden y por las siguientes cantidades de VALOR NOMINAL: (i) hasta DÓLARES CUATROCIENTOS MILLONES (USD 400.000.000) en Bono del Gobierno Nacional en Dólares Estadounidenses 7% 2015 ("BODEN 2015"); (ii) hasta

DÓLARES TRESCIENTOS MILLONES (USD 300.000.000) adicionales en BONAR X; y (iii) hasta los restantes DÓLARES TRESCIENTOS MILLONES (USD 300.000.000) adicionales en BONAR 2024.

## SECCIÓN C

**REGLAS COMUNES A TODOS LOS TÍTULOS PÚBLICOS INICIALES Y ADICIONALES**

1. A los efectos de este **ANEXO** IV, se entenderá que:

    (i)     el **"VALOR DE REFERENCIA"** es igual a DÓLARES CUATRO MIL SEISCIENTOS SETENTA MILLONES (USD 4.670.000.000);

    (ii)    el **"VALOR DE MERCADO"** se calculará, respecto de cada uno de los TÍTULOS PÚBLICOS, multiplicando el promedio aritmético de los PRECIOS DE REFERENCIA calculados durante el PLAZO DE CÓMPUTO por el VALOR NOMINAL del TÍTULO PÚBLICO de que se trate;

    (iii)   el "PLAZO DE CÓMPUTO" es el período que comprende la FECHA DE REFERENCIA y los OCHENTA Y NUEVE (89) DÍAS inmediata-mente anteriores a dicha fecha;

    (iv)    el "PRECIO DE REFERENCIA" se calculará, respecto de cada uno de los TÍTULOS PÚBLICOS, de conformidad con los criterios previs-tos en el Apartado 2, Sección C del presente **ANEXO** IV; y

    (v)     las "ENTIDADES DE REFERENCIA" serán los siguientes bancos in-ternacionales o, en su caso, sus respectivas sucesoras: JP Morgan,

Citibank, Bank of America Merrill Lynch, Goldman Sachs y UBS. Las PARTES podrán de mutuo acuerdo reemplazar a cualquiera de ellos por otra entidad financiera de igual prestigio y reputación.

2.  Al objeto de valorar los TÍTULOS PÚBLICOS se tendrán en cuenta los siguientes criterios:

A)  Valoración del BONAR X, DISCOUNT 33 y BODEN 2015.

(i)  En la determinación del PRECIO DE REFERENCIA para los DÍAS anteriores al de la firma del ACUERDO, se estará a los valores que figuran en la planilla que obra como Apéndice II de este **ANEXO**, y para el DÍA de la firma del ACUERDO y posteriores, el calculado de forma diaria según el método previsto en el Punto (ii) siguiente.

(ii)  Para calcular el PRECIO DE REFERENCIA desde el DÍA de la firma del ACUERDO, inclusive, se aplicarán las reglas siguientes:

(1) REPSOL y la REPÚBLICA ARGENTINA solicitarán a las ENTIDADES DE REFERENCIA que envíen a REPSOL y a la REPÚBLICA ARGENTINA, para cada DÍA DE CÁLCULO, las cotizaciones conforme al modelo de requerimiento de información que se adjunta como Apéndice III de este **ANEXO** IV. La información se enviará mediante correo electrónico remitido por dichas entidades a la REPÚBLICA ARGENTINA y a REPSOL en forma simultánea. La toma de cotizaciones se realizará diariamente alrededor de las 12.00 horas (hora de Nueva York).

(2) REPSOL y la REPÚBLICA ARGENTINA se informarán diariamente el PRECIO DE REFERENCIA de los TÍTULOS PÚBLICOS incluyendo el PRECIO DE REFERENCIA del BONAR 2024 tal como se describe en el Apartado B siguiente. Se entenderá como PRECIO DE REFERENCIA el promedio aritmético de las cotizaciones proporcionadas por las ENTIDADES DE REFERENCIA, luego de excluir para cada uno de los respectivos TÍTULOS PÚBLICOS la mayor y la menor de las cotizaciones diarias reportadas y de realizado el ajuste descripto en el Punto (3) siguiente. A los efectos de la determinación de los PRECIOS DE REFERENCIA, no se tomarán en cuenta las cotizaciones diarias recibidas luego de las 14.00 horas (hora de Nueva York). En caso de que por cualquier causa en un DÍA DE CÁLCULO determinado se reciban menos de tres cotizaciones respecto de uno o más TÍTULOS PÚBLICOS, no se computará el PRECIO DE REFERENCIA de dicho(s) TÍTULOS PÚBLICOS en dicha fecha a los efectos de la determinación de su VALOR DE MERCADO. Salvo el correspondiente al de la FECHA DE REFERENCIA, los PRECIOS DE REFERENCIA se informarán entre las PARTES al DÍA DE CÁLCULO siguiente al DÍA DE CÁLCULO en que se reciba la cotización de las ENTIDADES de REFERENCIA.

(3) En todos los casos para el cálculo del PRECIO DE REFERENCIA, se considerará el precio de demanda (*bid*) en un DÍA DE CÁLCULO. Las cotizaciones enviadas diariamente por las ENTIDADES DE REFERENCIA a efectos del cálculo del PRECIO DE REFERENCIA serán precios cotizados conforme a la convención de mercado, es decir, precios enteros *(dirty)* para el caso del BONAR X y el BODEN 15 y precios ex cupón *(clean)* para el DISCOUNT 33. En el caso del DISCOUNT 33 el PRECIO DE REFERENCIA se calculará utilizando el ISIN US040114GL81 y será el resultante de convertir el precio ex cupón (*clean*) en un precio entero (*dirty*) atendiendo a la función YAS de Bloomberg. En el Apéndice IV del presente **ANEXO** IV se incluye una pantalla descriptiva de Bloomberg en la cual se explica el proceso de conversión de precio ex cupón (*clean*) a precio entero (*dirty*).

(4) Los costos derivados de la actuación de las ENTIDADES DE REFERENCIA serán de cargo de ambas PARTES por mitades.

B) <u>Valoración del BONAR 2024.</u>

En la determinación del PRECIO DE REFERENCIA del BONAR 2024 para los DÍAS anteriores al de la firma del ACUERDO, se estará a los valores que figuran en la planilla que obra como Apéndice II de este **ANEXO** IV. Para el DÍA de la firma del ACUERDO y posteriores, para el cálculo del PRECIO DE REFERENCIA del BONAR 2024 se utilizará como TIR de descuento el resul-

tante de la interpolación lineal de las TIR del DISCOUNT 33 (ISIN US040114GL81) y del BONAR X (ISIN ARARGE03F441), usando la vida promedio como la variable de interpolación, conforme al procedimiento establecido en los Apéndices V y VI de este **ANEXO** IV.

3.  A los efectos del cálculo establecido en esta Sección C, las PARTES han confeccionado, para su utilización por cada una de ellas, una planilla de cálculo con el procedimiento que se detalla como Apéndice VII de este **ANEXO** IV. A la firma del ACUERDO, las PARTES han depositado ante el Escribano General de Gobierno un CD que contiene el archivo de la planilla de cálculo antes mencionada. Cada PARTE ha recibido asimismo del Escribano General de Gobierno una copia del CD depositado.

4.  En caso de discrepancia en los PRECIOS DE REFERENCIA calculados por cada una de las PARTES utilizando la planilla referida en el Apartado 3 anterior, y siempre que los PRECIOS DE REFERENCIA calculados por las PARTES no disten en más del 1% del menor de ellos, el PRECIO DE REFERENCIA final para el DÍA DE CÁLCULO sobre el que verse la discrepancia será el promedio aritmético del calculado por cada PARTE. En caso de que la discrepancia superase el 1% y las PARTES no resolvieran dicha discrepancia dentro de los DOS (2) DÍAS DE CÁLCULO siguientes, cualquiera de ellas podrá solicitar la intervención del AGENTE DE CÁLCULO, quien deberá comunicar a las PARTES su propia determinación del PRECIO DE REFERENCIA dentro de los DOS (2) DÍAS DE CÁLCULO de haber sido requerida su intervención. La determinación del PRECIO DE REFERENCIA por el AGENTE DE

CÁLCULO será vinculante para las PARTES. Las partes se comprometen a compartir con el AGENTE DE CÁLCULO la metodología de cálculo descrita en el presente **ANEXO** IV.

5.   En la FECHA DE REFERENCIA, las PARTES determinarán y se informarán mutuamente la cantidad e importe de los TÍTULOS PÚBLICOS ADICIONALES que, en su caso, cubran la DIFERENCIA y que la REPÚBLICA ARGENTINA deberá entregar a REPSOL en el acto de CIERRE en la forma prevista en la CLÁUSULA NOVENA. En caso de discrepancia, cualquiera de las PARTES podrá solicitar de inmediato la intervención del AGENTE DE CÁLCULO, en cuyo caso la determinación final de la cantidad e importe de los TÍTULOS PÚBLICOS ADICIONALES que cubran la DIFERENCIA será efectuada por el AGENTE DE CÁLCULO en la misma FECHA DE REFERENCIA.

La determinación del AGENTE DE CÁLCULO será vinculante para las PARTES a los efectos del CIERRE. No obstante, si cualquiera de las PARTES tuviera objeciones respecto de la determinación realizada por el AGENTE DE CÁLCULO, deberán comunicárselas en el plazo de QUINCE (15) DÍAS contado desde el CIERRE. Tras considerar las alegaciones de las PARTES formuladas dentro de dicho período, el AGENTE DE CÁLCULO contará con un plazo de QUINCE (15) DÍAS para emitir una nueva determinación o ratificar la ya emitida, que será definitiva para las PARTES, las cuales quedarán obligadas, según corresponda, a emitir nuevos TÍTULOS PÚBLICOS ADICIONALES o, respecto de los recibidos en exceso, a proceder con arreglo a las instrucciones de la REPÚBLICA ARGENTINA en el plazo de QUINCE (15) DÍAS contados desde la

fecha de recepción de la nueva determinación o, en su caso, de la recepción de las instrucciones.

6.   En el caso previsto en el Apartado 5 anterior, si la diferencia entre la determinación final del AGENTE DE CÁLCULO y el cálculo de una de las PARTES fuese superior al 3% entre la menor de tales cifras, dicha PARTE podrá someter la cuestión a arbitraje en los términos de la CLÁUSULA DECIMONOVENA dentro de los TREINTA (30) DÍAS de haber tomado conocimiento de la determinación final del AGENTE DE CÁLCULO.

7.   En todo caso, las objeciones de las PARTES a la determinación inicial no serán óbice para que la REPÚBLICA ARGENTINA entregue, o REPSOL reciba, en el acto de CIERRE la cantidad e importe de TÍTULOS PÚBLICOS ADICIONALES comunicada por el AGENTE DE CÁLCULO en la determinación inicial.

8.   Los gastos que irrogue la intervención del AGENTE DE CÁLCULO serán afrontados por ambas PARTES por mitades.

9.   Todas las comunicaciones entre las PARTES se efectuarán por correo electrónico entre las 10.00 y las 16.00 horas de Buenos Aires y dirigidas a las direcciones que las PARTES se comuniquen por escrito.

**APÉNDICE I DEL ANEXO IV**

**Términos y condiciones (*Term sheets*) de los TÍTULOS PÚBLICOS**


**BONAR 2024**

**Bono de la Nación Argentina en dólares estadounidenses 8,75% - 2024**

Resumen de términos y Condiciones

Emisor:                República Argentina

Monto:                Valor Nominal Original de USD 3.250.000.000 más, en su caso, los BONAR 2024 que se entreguen en concepto de TÍTULOS PÚBLICOS ADICIONALES

Listado:              Bolsa de Comercio de Buenos Aires y Mercado Abierto Electrónico

Titularidad:          se emitirán Certificados Globales a nombre de la Central de Registro y Liquidación de Pasivos Públicos y Fideicomisos Financieros del BANCO CENTRAL DE LA REPÚBLICA ARGENTINA (CRYL), en su carácter de Agente de Registro de los Bonos.

Clearing:             Caja de Valores, Euroclear

Moneda:               Dólares Estadounidenses

ISIN:                 A determinar antes del CIERRE

Fecha de Emisión:  Antes del CIERRE

Fecha de Vencimiento: 10 años a contar desde la fecha de emisión

Plazo:                10 años

Precio de Emisión:  100%

Amortización:         En 6 cuotas anuales y consecutivas, comenzando el 5º año posterior a la fecha de emisión. Las primeras cinco cuotas amortizarán el 16,66% del capital y la última el 16.70%.

Interés:                    devengará intereses a la tasa nominal anual del 8,75%, pagaderos semestralmente. Los intereses serán calculados sobre la base de un año de 360 días integrado por meses de 30 días (30/360). Cuando el vencimiento de un cupón no fuere un día hábil, la fecha de pago del cupón será el día hábil inmediato posterior a la fecha de vencimiento original, pero el cálculo del mismo se realizará hasta el vencimiento original.

Denominación Mínima: Valor Nominal USD 1.

Exenciones impositivas:   Gozarán de todas las exenciones impositivas dispuestas por las leyes y reglamentaciones vigentes en la materia.

Atención de los servicios financieros:   los pagos se cursarán a través del BANCO CENTRAL DE LA REPÚBLICA ARGENTINA mediante transferencias de fondos en las respectivas cuentas de efectivo que posean los titulares de cuentas de registro en dicha Institución.

Ley aplicable:             se regirán por la ley de la República Argentina.

---------------------------------------------------------------------------------------------------

## DISCOUNT 33

### DISCOUNT en USD 8,28% - 2033

Bono de la República Argentina con descuento en dólares estadounidenses 8,28% 2033

Resumen de términos y Condiciones

Emisor:                    República Argentina

Monto:                     Valor Nominal Original de USD 1.250.000.000

Listado:                   Bolsa de Comercio de Buenos Aires y Mercado Abierto Electrónico

Titularidad:          se emitirán Certificados Globales a nombre de la Central de Registro y Liquidación de Pasivos Públicos y Fideicomisos Financieros del BANCO CENTRAL DE LA REPÚBLICA ARGENTINA (CRYL), en su carácter de Agente de Registro de los Bonos.

Clearing:             Caja de Valores, Euroclear

Moneda:               Dólares Estadounidenses

ISIN:                 (ARARGE03E113)

Fecha de reapertura:    Antes del CIERRE

Fecha de Vencimiento: 31 de diciembre de 2033

Precio de Emisión:  (100%)

Amortización:         la amortización se efectuará en 20 cuotas semestrales iguales el 30 de junio y el 31 de diciembre de cada año, comenzando el 30 de junio de 2024. Cada uno de los 20 pagos semestrales incluirá la parte proporcional de los intereses capitalizados devengados antes de la primera fecha de amortización.

Interés:              devengará intereses a la tasa nominal anual del 8,28%, de acuerdo al cronograma que se detalla seguidamente. Las fechas de pago de intereses son el 30 de junio y el 31 de diciembre de cada año hasta el vencimiento. Los intereses serán calculados sobre la base de meses de 30 días y años de 360 días (30/360). Cuando el vencimiento de un cupón no fuere un día hábil, la fecha de pago del cupón será el día hábil inmediato posterior a la fecha de vencimiento original, pero el cálculo del mismo se realizará hasta el vencimiento original.

Cronograma de Intereses:

Desde el 31/12/2003 hasta el 31/12/2008: 3,97% se abona en efectivo y 4,31% se capitaliza

Desde el 31/12/2008 hasta el 31/12/2013: 5,77% se abona en efectivo y 2,51% se capitaliza

Desde el 31/12/2013 hasta el 31/12/2033: 8,28% se abona en efectivo

Monto capitalizado desde la fecha de emisión: 40,2038%

Rating:                    B- por Fitch.

                           Deuda a largo plazo en moneda extranjera: CCC+U por
                           S&P y B3 por Moody's

Denominación Mínima: Valor Nominal USD 1

Exenciones impositivas:   gozarán de todas las exenciones impositivas dis-
                           puestas por las leyes y reglamentaciones vigentes en la
                           materia.

Atención de los servicios financieros:   los pagos se cursarán a través del
                           BANCO CENTRAL DE LA REPÚBLICA ARGENTINA me-
                           diante transferencias de fondos en las respectivas cuentas
                           de efectivo que posean los titulares de cuentas de registro
                           en dicha Institución.

Ley y aplicable:          se regirán por la ley de la República Argentina.


-------------------------------------------------------------------------------------


## BONAR X

### Bono de la Nación Argentina en dólares estadounidenses 7% 2017

Resumen de términos y Condiciones

Emisor:                    República Argentina

Monto:                     Valor Nominal Original de USD 500.000.000 más, en su
                           caso, los BONAR X que se entreguen en concepto de
                           TÍTULOS PÚBLICOS ADICIONALES

Listado:                   Bolsa de Comercio de Buenos Aires y Mercado Abierto
                           Electrónico

Titularidad:               se emitirán Certificados Globales a nombre de la Central
                           de Registro y Liquidación de Pasivos Públicos y Fideicomi-
                           sos Financieros del BANCO CENTRAL DE LA

REPÚBLICA ARGENTINA (CRYL), en su carácter de Agente de Registro de los Bonos.

Clearing: Caja de Valores, Euroclear

Moneda: Dólares Estadounidenses

ISIN: ARARGE03F441

Fecha de reapertura: Antes del CIERRE

Fecha de Vencimiento: 17 de abril de 2017

Precio de Emisión: (100%)

Amortización: íntegra al vencimiento.

Interés: Tasa fija del 7% nominal anual. Los intereses serán pagaderos semestralmente calculados sobre la base de un año de 360 días, integrado por meses de 30 días (30/360). Las fechas de pago de intereses serán el 17 de abril y el 17 de octubre de cada año hasta su vencimiento. Cuando el vencimiento de un cupón no fuere un día hábil, la fecha de pago del cupón será el día hábil inmediato posterior a la fecha de vencimiento original, pero el cálculo del mismo se realizará hasta el vencimiento original.

Rating: B- por Fitch.

Deuda a largo plazo en moneda extranjera: CCC+U por S&P y B3 por Moody's

Denominación Mínima: Valor Nominal USD 1

Exenciones impositivas: Gozarán de todas las exenciones impositivas dispuestas por las leyes y reglamentaciones vigentes en la materia.

Atención de los servicios financieros: los pagos se cursarán a través del BANCO CENTRAL DE LA REPÚBLICA ARGENTINA mediante transferencias de fondos en las respectivas cuentas de efectivo que posean los titulares de cuentas de registro en dicha Institución.

Ley y aplicable: se regirán por la ley de la República Argentina.

-----------------------------------------------------------------------------------------

**BODEN 2015**

**Bono del Gobierno Nacional en dólares estadounidenses 7% 2015**

<u>Resumen de términos y Condiciones</u>

Emisor:             República Argentina

Monto:              Valor Nominal Original de USD será igual al monto de BODEN 2015 que se entregue en concepto de TÍTULOS PÚBLICOS ADICIONALES

Listado:            Bolsa de Comercio de Buenos Aires y Mercado Abierto Electrónico

Titularidad:        se emitirán Certificados Globales a nombre de la Central de Registro y Liquidación de Pasivos Públicos y Fideicomisos Financieros del BANCO CENTRAL DE LA REPÚBLICA ARGENTINA (CRYL), en su carácter de Agente de Registro de los Bonos.

Clearing:           Caja de Valores, Euroclear

Moneda:             Dólares Estadounidenses

ISIN:               ARARGE03F144

Fecha de reapertura:        Antes del CIERRE

Fecha de Vencimiento:       3 de OCTUBRE de 2015

Precio de Emisión: (100%)

Amortización:       íntegra al vencimiento.

Interés:            Tasa fija del 7% nominal anual. Los intereses serán pagaderos semestralmente calculados sobre la base de un año de 360 días, integrado por meses de 30 días cada uno. Las fechas de pago de intereses serán el 3 de abril y el 3 de octubre de cada año hasta su vencimiento. Cuando el ven-

cimiento de un cupón no fuere un día hábil, la fecha de pago del cupón será el día hábil inmediato posterior a la fecha de vencimiento original, pero el cálculo del mismo se realizará hasta el vencimiento original.

Rating:                    B- por Fitch.

Deuda a largo plazo en moneda extranjera: CCC+U por S&P y B3 por Moody's

Denominación Mínima: Valor Nominal USD 1

Exenciones impositivas:   Gozarán de todas las exenciones impositivas dispuestas por las leyes y reglamentaciones vigentes en la materia.

Atención de los servicios
financieros:               los pagos se cursarán a través del BANCO CENTRAL DE LA REPÚBLICA ARGENTINA mediante transferencias de fondos en las respectivas cuentas de efectivo que posean los titulares de cuentas de registro en dicha Institución.

Ley y aplicable:          se regirán por la ley de la República Argentina.

# APÉNDICE II DEL ANEXO IV

# PRECIOS DE REFERENCIA

| BODEN 2015 | | |
|---|---|---|
| Fecha de operación | Fecha de liquidación | Precio |
| 02/01/2014 | 07/01/2014 | 99,33 |
| 03/01/2014 | 08/01/2014 | 99,26 |
| 04/01/2014 | 08/01/2014 | n/a |
| 05/01/2014 | 08/01/2014 | n/a |
| 06/01/2014 | 09/01/2014 | 99,18 |
| 07/01/2014 | 10/01/2014 | 98,94 |
| 08/01/2014 | 13/01/2014 | 99,02 |
| 09/01/2014 | 14/01/2014 | 98,61 |
| 10/01/2014 | 15/01/2014 | 98,37 |
| 11/01/2014 | 15/01/2014 | n/a |
| 12/01/2014 | 15/01/2014 | n/a |
| 13/01/2014 | 16/01/2014 | 97,77 |
| 14/01/2014 | 17/01/2014 | 98,13 |
| 15/01/2014 | 21/01/2014 | 98,20 |
| 16/01/2014 | 22/01/2014 | 97,46 |
| 17/01/2014 | 23/01/2014 | 96,40 |
| 18/01/2014 | 23/01/2014 | n/a |
| 19/01/2014 | 23/01/2014 | n/a |
| 20/01/2014 | 23/01/2014 | 96,50 |
| 21/01/2014 | 24/01/2014 | 96,60 |
| 22/01/2014 | 27/01/2014 | 95,49 |
| 23/01/2014 | 28/01/2014 | 93,64 |
| 24/01/2014 | 29/01/2014 | 91,31 |
| 25/01/2014 | 29/01/2014 | n/a |
| 26/01/2014 | 29/01/2014 | n/a |
| 27/01/2014 | 30/01/2014 | 90,89 |
| 28/01/2014 | 31/01/2014 | 92,46 |
| 29/01/2014 | 03/02/2014 | 90,72 |
| 30/01/2014 | 04/02/2014 | 89,21 |
| 31/01/2014 | 05/02/2014 | 87,22 |
| 01/02/2014 | 05/02/2014 | n/a |
| 02/02/2014 | 05/02/2014 | n/a |
| 03/02/2014 | 06/02/2014 | 84,95 |
| 04/02/2014 | 07/02/2014 | 87,29 |
| 05/02/2014 | 10/02/2014 | 88,59 |
| 06/02/2014 | 11/02/2014 | 90,68 |
| 07/02/2014 | 12/02/2014 | 92,08 |
| 08/02/2014 | 12/02/2014 | n/a |
| 09/02/2014 | 12/02/2014 | n/a |

| BODEN 2015 (Continuación) | | |
|---|---|---|
| Fecha de operación | Fecha de liquidación | Precio |
| **10/02/2014** | 13/02/2014 | 91,91 |
| **11/02/2014** | 14/02/2014 | 92,01 |
| **12/02/2014** | 18/02/2014 | 92,50 |
| **13/02/2014** | 19/02/2014 | 92,96 |
| **14/02/2014** | 20/02/2014 | 94,73 |
| **15/02/2014** | 20/02/2014 | n/a |
| **16/02/2014** | 20/02/2014 | n/a |
| **17/02/2014** | 20/02/2014 | 94,75 |
| **18/02/2014** | 21/02/2014 | 94,21 |
| **19/02/2014** | 24/02/2014 | 93,73 |
| **20/02/2014** | 25/02/2014 | 94,43 |
| **21/02/2014** | 26/02/2014 | 94,71 |
| **22/02/2014** | 26/02/2014 | n/a |
| **23/02/2014** | 26/02/2014 | n/a |
| **24/02/2014** | 27/02/2014 | 95,52 |
| **25/02/2014** | 28/02/2014 | 95,66 |
| **26/02/2014** | 03/03/2014 | 95,43 |

**Fuente: Función HP de Bloomberg para precios.**

| Bonar X | | | |
|---|---|---|---|
| Fecha de operación | Fecha de liquidación | Precio | TIR |
| 02/01/2014 | 07/01/2014 | 89,90 | 11,670 |
| 03/01/2014 | 08/01/2014 | 89,81 | 11,721 |
| 04/01/2014 | 08/01/2014 | n/a | n/a |
| 05/01/2014 | 08/01/2014 | n/a | n/a |
| 06/01/2014 | 09/01/2014 | 89,38 | 11,919 |
| 07/01/2014 | 10/01/2014 | 88,92 | 12,126 |
| 08/01/2014 | 13/01/2014 | 88,71 | 12,258 |
| 09/01/2014 | 14/01/2014 | 86,79 | 13,121 |
| 10/01/2014 | 15/01/2014 | 86,32 | 13,348 |
| 11/01/2014 | 15/01/2014 | n/a | n/a |
| 12/01/2014 | 15/01/2014 | n/a | n/a |
| 13/01/2014 | 16/01/2014 | 85,80 | 13,599 |
| 14/01/2014 | 17/01/2014 | 86,29 | 13,391 |
| 15/01/2014 | 20/01/2014 | 86,53 | 13,323 |
| 16/01/2014 | 21/01/2014 | 85,61 | 13,758 |
| 17/01/2014 | 22/01/2014 | 84,72 | 14,190 |
| 18/01/2014 | 22/01/2014 | n/a | n/a |
| 19/01/2014 | 22/01/2014 | n/a | n/a |
| 20/01/2014 | 23/01/2014 | 84,65 | 14,235 |
| 21/01/2014 | 24/01/2014 | 85,49 | 13,858 |
| 22/01/2014 | 27/01/2014 | 84,38 | 14,426 |
| 23/01/2014 | 28/01/2014 | 83,25 | 14,986 |
| 24/01/2014 | 29/01/2014 | 80,91 | 16,165 |
| 25/01/2014 | 29/01/2014 | n/a | n/a |
| 26/01/2014 | 29/01/2014 | n/a | n/a |
| 27/01/2014 | 30/01/2014 | 79,88 | 16,713 |
| 28/01/2014 | 31/01/2014 | 81,43 | 15,922 |
| 29/01/2014 | 03/02/2014 | 79,48 | 16,972 |
| 30/01/2014 | 04/02/2014 | 77,97 | 17,793 |
| 31/01/2014 | 05/02/2014 | 76,07 | 18,859 |
| 01/02/2014 | 05/02/2014 | n/a | n/a |
| 02/02/2014 | 05/02/2014 | n/a | n/a |
| 03/02/2014 | 06/02/2014 | 73,74 | 20,214 |
| 04/02/2014 | 07/02/2014 | 75,47 | 19,235 |
| 05/02/2014 | 10/02/2014 | 76,52 | 18,710 |
| 06/02/2014 | 11/02/2014 | 78,65 | 17,564 |
| 07/02/2014 | 12/02/2014 | 79,67 | 17,041 |
| 08/02/2014 | 12/02/2014 | n/a | n/a |
| 09/02/2014 | 12/02/2014 | n/a | n/a |
| 10/02/2014 | 13/02/2014 | 79,65 | 17,069 |
| 11/02/2014 | 14/02/2014 | 79,84 | 16,985 |
| 12/02/2014 | 17/02/2014 | 80,43 | 16,729 |

| Bonar X (Continuación) | | | |
|---|---|---|---|
| Fecha de operación | Fecha de liquidación | Precio | TIR |
| **13/02/2014** | 18/02/2014 | 80,52 | 16,702 |
| **14/02/2014** | 19/02/2014 | 83,79 | 15,053 |
| **15/02/2014** | 19/02/2014 | n/a | n/a |
| **16/02/2014** | 19/02/2014 | n/a | n/a |
| **17/02/2014** | 20/02/2014 | 83,83 | 15,053 |
| **18/02/2014** | 21/02/2014 | 83,12 | 15,421 |
| **19/02/2014** | 24/02/2014 | 82,89 | 15,586 |
| **20/02/2014** | 25/02/2014 | 83,28 | 15,409 |
| **21/02/2014** | 26/02/2014 | 83,48 | 15,326 |
| **22/02/2014** | 26/02/2014 | n/a | n/a |
| **23/02/2014** | 26/02/2014 | n/a | n/a |
| **24/02/2014** | 27/02/2014 | 84,36 | 14,904 |
| **25/02/2014** | 28/02/2014 | 84,47 | 14,864 |
| **26/02/2014** | 05/03/2014 | 84,28 | 15,072 |

**Fuente: Función HP de Bloomberg para precios, YAS para TIR**

| Discount 33 | | | |
|---|---|---|---|
| Fecha de operación | Fecha de liquidación | Precio clean | Precio dirty | TIR |
| 02/01/2014 | 07/01/2014 | 75,00 | 105,38 | 12,268 |
| 03/01/2014 | 08/01/2014 | 75,63 | 106,29 | 12,149 |
| 04/01/2014 | 08/01/2014 | n/a | n/a | n/a |
| 05/01/2014 | 08/01/2014 | n/a | n/a | n/a |
| 06/01/2014 | 09/01/2014 | 75,50 | 106,14 | 12,173 |
| 07/01/2014 | 10/01/2014 | 74,22 | 104,38 | 12,419 |
| 08/01/2014 | 13/01/2014 | 73,50 | 103,47 | 12,562 |
| 09/01/2014 | 14/01/2014 | 71,11 | 100,15 | 13,050 |
| 10/01/2014 | 15/01/2014 | 70,38 | 99,16 | 13,204 |
| 11/01/2014 | 15/01/2014 | n/a | n/a | n/a |
| 12/01/2014 | 15/01/2014 | n/a | n/a | n/a |
| 13/01/2014 | 16/01/2014 | 69,49 | 97,94 | 13,395 |
| 14/01/2014 | 17/01/2014 | 69,73 | 98,31 | 13,343 |
| 15/01/2014 | 21/01/2014 | 70,50 | 99,52 | 13,179 |
| 16/01/2014 | 22/01/2014 | 70,29 | 99,26 | 13,222 |
| 17/01/2014 | 23/01/2014 | 69,00 | 97,48 | 13,503 |
| 18/01/2014 | 23/01/2014 | n/a | n/a | n/a |
| 19/01/2014 | 23/01/2014 | n/a | n/a | n/a |
| 20/01/2014 | 23/01/2014 | n/a | n/a | n/a |
| 21/01/2014 | 24/01/2014 | 70,17 | 99,15 | 13,250 |
| 22/01/2014 | 27/01/2014 | 69,24 | 97,95 | 13,451 |
| 23/01/2014 | 28/01/2014 | 66,50 | 94,14 | 14,071 |
| 24/01/2014 | 29/01/2014 | 64,97 | 92,03 | 14,435 |
| 25/01/2014 | 29/01/2014 | n/a | n/a | n/a |
| 26/01/2014 | 29/01/2014 | n/a | n/a | n/a |
| 27/01/2014 | 30/01/2014 | 65,33 | 92,56 | 14,347 |
| 28/01/2014 | 31/01/2014 | 65,96 | 93,45 | 14,203 |
| 29/01/2014 | 03/02/2014 | 64,50 | 91,50 | 14,557 |
| 30/01/2014 | 04/02/2014 | 63,25 | 89,78 | 14,870 |
| 31/01/2014 | 05/02/2014 | 61,25 | 87,00 | 15,392 |
| 01/02/2014 | 05/02/2014 | n/a | n/a | n/a |
| 02/02/2014 | 05/02/2014 | n/a | n/a | n/a |
| 03/02/2014 | 06/02/2014 | 61,50 | 87,39 | 15,326 |
| 04/02/2014 | 07/02/2014 | 63,63 | 90,40 | 14,776 |
| 05/02/2014 | 10/02/2014 | 65,00 | 92,42 | 14,437 |
| 06/02/2014 | 11/02/2014 | 66,63 | 94,74 | 14,051 |
| 07/02/2014 | 12/02/2014 | 68,72 | 97,70 | 13,575 |
| 08/02/2014 | 12/02/2014 | n/a | n/a | n/a |
| 09/02/2014 | 12/02/2014 | n/a | n/a | n/a |
| 10/02/2014 | 13/02/2014 | 68,17 | 96,96 | 13,698 |

| Discount 33 (Continuación) | | | | |
| --- | --- | --- | --- | --- |
| Fecha de operación | Fecha de liquidación | Precio clean | Precio dirty | TIR |
| **11/02/2014** | 14/02/2014 | 67,58 | 96,17 | 13,831 |
| **12/02/2014** | 18/02/2014 | 67,82 | 96,63 | 13,779 |
| **13/02/2014** | 19/02/2014 | 68,75 | 97,97 | 13,571 |
| **14/02/2014** | 20/02/2014 | 69,44 | 98,97 | 13,419 |
| **15/02/2014** | 20/02/2014 | n/a | n/a | n/a |
| **16/02/2014** | 20/02/2014 | n/a | n/a | n/a |
| **17/02/2014** | 20/02/2014 | n/a | n/a | n/a |
| **18/02/2014** | 21/02/2014 | 68,18 | 97,24 | 13,700 |
| **19/02/2014** | 24/02/2014 | 67,50 | 96,38 | 13,853 |
| **20/02/2014** | 25/02/2014 | 68,18 | 97,36 | 13,701 |
| **21/02/2014** | 26/02/2014 | 68,35 | 97,64 | 13,662 |
| **22/02/2014** | 26/02/2014 | n/a | n/a | n/a |
| **23/02/2014** | 26/02/2014 | n/a | n/a | n/a |
| **24/02/2014** | 27/02/2014 | 69,63 | 99,46 | 13,380 |
| **25/02/2014** | 28/02/2014 | 69,83 | 99,77 | 13,337 |
| **26/02/2014** | 03/03/2014 | 69,69 | 99,74 | 13,358 |

**Fuente: Función HP de Bloomberg para precios, YAS para TIR**

| Bonar 24 | | | |
|---|---|---|---|
| Fecha de operación | Fecha de liquidación | Precio | TIR |
| 02/01/2014 | 07/01/2014 | 86,38 | 11,882 |
| 03/01/2014 | 08/01/2014 | 86,41 | 11,873 |
| 04/01/2014 | 08/01/2014 | n/a | n/a |
| 05/01/2014 | 08/01/2014 | n/a | n/a |
| 06/01/2014 | 09/01/2014 | 85,85 | 12,009 |
| 07/01/2014 | 10/01/2014 | 84,95 | 12,230 |
| 08/01/2014 | 13/01/2014 | 84,40 | 12,366 |
| 09/01/2014 | 14/01/2014 | 81,53 | 13,096 |
| 10/01/2014 | 15/01/2014 | 80,76 | 13,297 |
| 11/01/2014 | 15/01/2014 | n/a | n/a |
| 12/01/2014 | 15/01/2014 | n/a | n/a |
| 13/01/2014 | 16/01/2014 | 79,91 | 13,526 |
| 14/01/2014 | 17/01/2014 | 80,47 | 13,374 |
| 15/01/2014 | 20/01/2014 | 80,86 | 13,272 |
| 16/01/2014 | 21/01/2014 | 79,75 | 13,567 |
| 17/01/2014 | 22/01/2014 | 78,37 | 13,945 |
| 18/01/2014 | 22/01/2014 | n/a | n/a |
| 19/01/2014 | 22/01/2014 | n/a | n/a |
| 20/01/2014 | 23/01/2014 | n/a | n/a |
| 21/01/2014 | 24/01/2014 | 79,48 | 13,641 |
| 22/01/2014 | 27/01/2014 | 77,89 | 14,077 |
| 23/01/2014 | 28/01/2014 | 75,85 | 14,658 |
| 24/01/2014 | 29/01/2014 | 72,89 | 15,544 |
| 25/01/2014 | 29/01/2014 | n/a | n/a |
| 26/01/2014 | 29/01/2014 | n/a | n/a |
| 27/01/2014 | 30/01/2014 | 71,86 | 15,864 |
| 28/01/2014 | 31/01/2014 | 73,67 | 15,304 |
| 29/01/2014 | 03/02/2014 | 71,10 | 16,103 |
| 30/01/2014 | 04/02/2014 | 69,15 | 16,740 |
| 31/01/2014 | 05/02/2014 | 66,60 | 17,609 |
| 01/02/2014 | 05/02/2014 | n/a | n/a |
| 02/02/2014 | 05/02/2014 | n/a | n/a |
| 03/02/2014 | 06/02/2014 | 64,27 | 18,451 |
| 04/02/2014 | 07/02/2014 | 66,56 | 17,626 |
| 05/02/2014 | 10/02/2014 | 67,89 | 17,165 |
| 06/02/2014 | 11/02/2014 | 70,51 | 16,293 |
| 07/02/2014 | 12/02/2014 | 72,11 | 15,786 |
| 08/02/2014 | 12/02/2014 | n/a | n/a |
| 09/02/2014 | 12/02/2014 | n/a | n/a |
| 10/02/2014 | 13/02/2014 | 71,91 | 15,848 |
| 11/02/2014 | 14/02/2014 | 71,93 | 15,842 |

| Bonar 24 (Continuación) | | | |
|---|---|---|---|
| Fecha de operación | Fecha de liquidación | Precio | TIR |
| **12/02/2014** | 17/02/2014 | 72,52 | 15,658 |
| **13/02/2014** | 18/02/2014 | 72,82 | 15,564 |
| **14/02/2014** | 19/02/2014 | 76,54 | 14,458 |
| **15/02/2014** | 19/02/2014 | n/a | n/a |
| **16/02/2014** | 19/02/2014 | n/a | n/a |
| **17/02/2014** | 20/02/2014 | n/a | n/a |
| **18/02/2014** | 21/02/2014 | 75,39 | 14,794 |
| **19/02/2014** | 24/02/2014 | 74,84 | 14,954 |
| **20/02/2014** | 25/02/2014 | 75,41 | 14,786 |
| **21/02/2014** | 26/02/2014 | 75,65 | 14,718 |
| **22/02/2014** | 26/02/2014 | n/a | n/a |
| **23/02/2014** | 26/02/2014 | n/a | n/a |
| **24/02/2014** | 27/02/2014 | 76,94 | 14,347 |
| **25/02/2014** | 28/02/2014 | 76,90 | 14,306 |
| **26/02/2014** | 05/03/2014 | 76,57 | 14,444 |

**Fuente: Función HP de Bloomberg para precios, YAS para TIR**

## APÉNDICE III del ANEXO IV

## Modelo de solicitud de cotizaciones a las ENTIDADES DE REFERENCIA

| | |
|---|---|
| **Entidad:** | **XXXXXX** |
| **Hora:** | **12:00 NY** |
| **Fecha:** | **xxxxx** |

| | Divisa | ISIN | Px BID | Px ASK |
|---|---|---|---|---|
| **BODEN 2015** | **USD** | ARARGE03F144 | | |
| **BONAR X** | **USD** | ARARGE03F441 | | |
| **DICY 33** | **USD** | US040114GL81 | | |

| | ISIN | Criterio de cotización de los precios por los bancos seleccionados |
|---|---|---|
| **BODEN 2015** | ARARGE03F144 | Precio entero (Dirty) o Precio con cupón corrido |
| **BONAR X** | ARARGE03F441 | Precio entero (Dirty) o Precio con cupón corrido |
| **DICY 33** | US040114GL81 | Precio EX cupón corrido (Clean) y sin tener en cuenta la capitalización |

**APÉNDICE IV DEL ANEXO IV**

**Conversión de precio *clean* a precio *dirty* del DISCOUNT 33**



# APÉNDICE V DEL ANEXO IV

## Obtención TIR Bonos de Referencia

### BONAR X



**DISCOUNT 33**



**APÉNDICE VI DEL ANEXO IV**

**Criterio de valoración del BONAR 2024**

El PRECIO DE REFERENCIA del BONAR 2024 se calcula como la suma de los valores presentes de los cupones de amortización e interés del BONAR 2024 (v. *infra* Tabla I, que recoge el calendario de pagos), descontados con la TIR DE DESCUENTO DEL BONAR 2024 (tal como se define a continuación). La fórmula del Excel aplicada para obtener este cálculo es XNPV (VNA.NO.PER en español).

Para calcular el PRECIO DE REFERENCIA del BONAR 2024 se utilizará como TIR de descuento la resultante de la interpolación lineal respecto a la VIDA PROMEDIO y las TIR DE LOS BONOS DE REFERENCIA.

Así:

- "TIR DE DESCUENTO DEL BONAR 2024": Significa el resultado de interpolar linealmente usando la VIDA PROMEDIO y las TIR DE LOS BONOS DE REFERENCIA como variables de interpolación

- "BONOS DE REFERENCIA": Son el BONAR X (ISIN: ARARGE03F441) y el DISCOUNT 33 (ISIN: US040114GL81).

- "VIDA PROMEDIO": Significa, para cada BONO DE REFERENCIA, el tiempo medio ponderado necesario para amortizar su principal, siendo las ponderaciones las cantidades amortizadas en cada pago.

- "TIR DE LOS BONOS DE REFERENCIA": Es, para cada BONO DE REFERENCIA, el resultado de aplicar la función YAS (Yield and Spread

Analysis) de Bloomberg al PRECIO DE REFERENCIA. Los PRECIOS DE REFERENCIA de los BONOS DE REFERENCIA serán los descritos en la Sección C del **ANEXO** IV.

**Flujos de caja del BONAR 2024 por US$100 de nominal (Tabla I)**

| Fecha de pago [1] | Pago de intereses | Repago de principal |
|---|---|---|
| 19-ago-14 | 4,375 | 0,00 |
| 19-feb-15 | 4,375 | 0,00 |
| 19-ago-15 | 4,375 | 0,00 |
| 19-feb-16 | 4,375 | 0,00 |
| 19-ago-16 | 4,375 | 0,00 |
| 19-feb-17 | 4,375 | 0,00 |
| 19-ago-17 | 4,375 | 0,00 |
| 19-feb-18 | 4,375 | 0,00 |
| 19-ago-18 | 4,375 | 0,00 |
| 19-feb-19 | 4,375 | 16,66 |
| 19-ago-19 | 3,646 | 0,00 |
| 19-feb-20 | 3,646 | 16,66 |
| 19-ago-20 | 2,917 | 0,00 |
| 19-feb-21 | 2,917 | 16,66 |
| 19-ago-21 | 2,188 | 0,00 |
| 19-feb-22 | 2,188 | 16,66 |
| 19-ago-22 | 1,460 | 0,00 |
| 19-feb-23 | 1,460 | 16,66 |
| 19-ago-23 | 0,731 | 0,00 |
| 19-feb-24 | 0,731 | 16,70 |

(1)  Fecha de inicio ilustrativa. Primer pago seis meses después de fecha de emisión del bono. Pagos sucesivos por periodos semestrales
Nota: Se asume la misma convención que el resto de bonos para la fecha de liquidación (T+3). Es decir, los pagos de cupón semestrales tomarán como fecha de inicio de devengo de cupón T+3

**Fórmula de interpolación lineal**



Siendo:

X1 = Vida promedio BONAR X
X2 = VIDA PROMEDIO BONAR 2024
X3 = VIDA PROMEDIO DISCOUNT 33
Y1 = TIR BONAR X
Y2 = TIR BONAR 2024 (VARIABLE A CALCULAR)
Y3 = TIR DISCOUNT 33

La TIR del BONAR 2024 (Y2 en el gráfico descrito arriba) será la resultante del

siguiente cálculo:

$$Y2 = \frac{(X2 - X1)(Y3 - Y1)}{(X3 - X1)} + Y1$$

# APÉNDICE VII DEL ANEXO IV

## Planilla de cálculo a los meros efectos ejemplificativos.

## 1. Pestaña 1 – Guía

### Guión procedimiento a seguir

**0** Recepción de cotizaciones por parte de las ENTIDADES DE REFERENCIA

**1** Introducción de la fecha de cotización (T)

**2** Introducción de las cotizaciones de la ENTIDADES DE REFERENCIA

**3** Introducción Precio entero (*Dirty*) del Discount 33, (Función YAS de Bloomberg según Apéndice IV del ANEXO IV)

**4** PRECIO DE REFERENCIA DEL BODEN 15, BONAR X Y DISCOUNT 33

**5** Introducción de las TIR del BONAR X (ISIN ARARGE03F441) y DISCOUNT 33 (ISIN US040114GL81), (Función YAS de Bloomberg según Apéndice V del ANEXO IV)

**6** Cálculo del PRECIO DE REFERENCIA del BONAR 24

**7** PRECIOS DE REFERENCIA de la fecha T. Copiar el rango de celdas E55:L55 de la pestaña "Principal" e introducir en la fila de la fecha de cotización (T) en la pestaña "Tabla de Precios"

**8** Obtención de los VALORES NOMINALES de los TÍTULOS PÚBLICOS INICIALES Y ADICIONALES correspondientes a la fecha T

### Consideraciones generales

- En azul los puntos que requieren intervención o copia de datos
- En la pestaña "Principal" los campos en color amarillo son aquellos que deben ser actualizados. En verde los campos a ser copiados en la pestaña de "Tabla de precios"
- Todos las cotizaciones y precios de los bonos serán insertados con dos cifras decimales
- Todas las TIRes serán insertado con tres decimales
- Todos los VALORES DE MERCADO y VALORES NOMINALES están expresado en millones de Dólares excepto cuando se especifique

# 2. Pestaña 2 – Principal

**Consideraciones generales**

En azul los puntos que requieren intervención o copia de datos
En la pestaña "Principal" los campos en color amarillo son aquellos que deben ser actualizados. En verde los campos a ser copiados en la pestaña de "Tabla de precios"
Todas las cotizaciones y precios de los bonos serán insertados con dos cifras decimales
Todas las TIRes serán insertadas con tres decimales
Todos los VALORES DE MERCADO y VALORES NOMINALES están expresado en millones de Dólares excepto cuando se especifique

**1 Introducción de la fecha de cotización (T)**

Fecha de cotización (T)  [20/02/2014]

**2 Introducción de las cotizaciones de la ENTIDADES DE REFERENCIA y cálculo del promedio aritmético de las cotizaciones (en caso de falta de una observación dejar en blanco)**

| | | ISIN | Bank of America | JP Morgan | Goldman | Citibank | UBS | Número de observaciones | Observación seleccionada 1 | Observación seleccionada 2 | Observación seleccionada 3 | Media |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BODEN 15 | USD | ARARGE03F144 | 94.75 | 94.70 | 94.80 | 94.65 | 94.75 | 5 | 94.75 | 94.75 | 94.70 | 94.73 |
| BONAR X | USD | ARARGE03F441 | 83.85 | 84.00 | 83.95 | 83.75 | 84.00 | 5 | 84.00 | 83.95 | 83.85 | 83.93 |
| DISCOUNT 33 | USD | US040114GL81 | 65.00 | 65.25 | 65.35 | 65.10 | 65.00 | 5 | 65.25 | 65.10 | 65.00 | 65.12 |

**3 Introducción Precio entero (Dirty) del Discount 33 una vez convertido desde Precio ex cupón (Clean)**

| | Precio clean | Precio dirty (de Bloomberg) |
|---|---|---|
| DISCOUNT 33 | 65.12 | 92.91 |

**4 PRECIO DE REFERENCIA DEL BODEN 15, BONAR 15, BONAR X Y DISCOUNT 33**

| | |
|---|---|
| BODEN 15 | 94.73 |
| BONAR X | 83.93 |
| DISCOUNT 33 | 92.91 |

**5 Introducción de la TIR del BONAR X (ISIN ARARGE03F441) y DISCOUNT 33 (ISIN US04011 4GL81)**

| | Precio | TIR (de Bloomberg) |
|---|---|---|
| BONAR X | 83.93 | 11.566 |
| DISCOUNT 33 | 92.91 | 12.214 |

**6 Cálculo del PRECIO DE REFERENCIA del BONAR 24**

Interpolación de la TIR del Bonar 24

| TITULOS PUBLICOS INICIAL | VIDA PROMEDIO | TIR |
|---|---|---|
| Bonar X | 3.12 | 11.566 |
| DISCOUNT 33 | 15.08 | 12.214 |
| BONAR 24 | 7.50 | 11.803 |

PRECIO DE REFERENCIA del BONAR 24

| | |
|---|---|
| Bonar 24 | 86.68 |

**7** PRECIOS DE REFERENCIA de la fecha T. Copiar el rango de celdas E55:L55 de la pestaña "Principal" e introducir en la fila de la fecha de cotización (T) en la pestaña "Tabla de Precios"

| | Boden 15 | Bonar X | | Bonar 24 | | Discount 33 | | |
|---|---|---|---|---|---|---|---|---|
| | PRECIO DE REFERENCIA | PRECIO DE REFERENCIA | TIR | PRECIO DE REFERENCIA | TIR | Precio clean | Precio Dirty | TIR |
| | 94,73 | 83,93 | 11,566 | 86,68 | 11,803 | 65,12 | 92,91 | 12,214 |

**8** Obtención de los VALORES NOMINALES de los TÍTULOS PÚBLICOS INICIALES Y ADICIONALES correspondientes a la fecha T

Valoración de los títulos públicos iniciales

| | Promedio aritmético de | VALOR NOMINAL | VALOR DE MERCADO |
|---|---|---|---|
| Bonar X | 85,77 | 500,0 | 428,9 |
| DISCOUNT 33 | 102,02 | 1250,0 | 1275,3 |
| Bonar 24 | 80,54 | 3250,0 | 2617,6 |
| **Total** | | **5000,0** | **4321,7** |

Cálculo del nominal de los TÍTULOS PÚBLICOS ADICIONALES

| | |
|---|---|
| VALOR DE REFERENCIA | 4670,0 |
| DIFERENCIA | 348,4 |

| | Límite en VALOR NOMINAL | Promedio aritmético de PRECIOS DE REFERENCIA | Límite en VALOR DE MERCADO | VALOR DE MERCADO de los TÍTULOS PÚBLICOS ADICIONALES | VALOR NOMINAL de los TÍTULOS PÚBLICOS |
|---|---|---|---|---|---|
| Boden 15 | 400 | 95,91 | 383,6 | 348,4 | 363,2 |
| Bonar X | 300 | 85,77 | 257,3 | 0,0 | 0,0 |
| Bonar 24 | 300 | 80,54 | 241,6 | 0,0 | 0,0 |

**9** Composición final de la cartera de TÍTULOS PÚBLICOS INICIALES Y ADICIONALES

| TÍTULOS PÚBLICOS INICIALE | En US$m | En US$ |
|---|---|---|
| BONAR X | 500,0 | 500.000.000,0 |
| DISCOUNT 33 | 1250,0 | 1.250.000.000,0 |
| BONAR 24 | 3250,0 | 3.250.000.000,0 |

| TÍTULOS PÚBLICOS ADICION | En US$m | En US$ |
|---|---|---|
| BODEN 15 | 363,2 | 363.205.088,0 |
| BONAR X | 0,0 | 0,0 |
| BONAR 24 | 0,0 | 0,0 |

NOTA: Los cuadros de contenidos en las dos páginas anteriores deberán incorporarse en formato legible el día de la firma y se acompañará el modelo de planilla de cálculo acordado por las PARTES en formato digital)

## 3. Pestaña 3 - Tabla de precios

Dia de hoy    26/02/2014
90 dias antes    28/11/2013
Dias    90

| Media | 95,91 | 85,77 | | 80,54 | | | 102,02 | |

Datos redondeados

| Dias | Fecha | Boden 15 Precio | Bonar X Precio | Bonar X TIR | Bonar 24 Precio | Bonar 24 TIR | Discount 33 Precio clean | Discount 33 Precio Dirty | Discount 33 TIR |
|---|---|---|---|---|---|---|---|---|---|
| 104 | 15/11/2013 | 96,12 | 88,21 | 11,838 | 86,74 | 11,794 | 77,83 | 111,93 | 11,712 |
| 103 | 16/11/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 102 | 17/11/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 101 | 18/11/2013 | 95,98 | 88,07 | 11,910 | 86,77 | 11,786 | 78,74 | 113,23 | 11,551 |
| 100 | 19/11/2013 | 95,42 | 87,02 | 12,362 | 85,39 | 12,122 | 78,07 | 112,32 | 11,670 |
| 99 | 20/11/2013 | 95,98 | 87,79 | 12,084 | 86,18 | 11,930 | 78,25 | 112,66 | 11,640 |
| 98 | 21/11/2013 | 96,47 | 88,25 | 11,901 | 86,92 | 11,753 | 79,20 | 114,02 | 11,473 |
| 97 | 22/11/2013 | 96,93 | 88,71 | 11,721 | 87,34 | 11,652 | 78,92 | 113,66 | 11,523 |
| 96 | 23/11/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 95 | 24/11/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 94 | 25/11/2013 | 96,87 | 88,72 | 11,715 | 87,12 | 11,705 | 78,00 | 112,43 | 11,687 |
| 93 | 26/11/2013 | 97,74 | 90,23 | 11,105 | 89,15 | 11,231 | 79,24 | 114,26 | 11,469 |
| 92 | 27/11/2013 | 98,00 | 91,37 | 10,675 | 90,44 | 10,936 | 79,49 | 114,64 | 11,426 |
| 91 | 28/11/2013 | 97,96 | 91,31 | 10,711 | n/a | n/a | n/a | n/a | n/a |
| 90 | 29/11/2013 | 98,04 | 91,50 | 10,644 | 90,62 | 10,897 | 79,81 | 115,11 | 11,371 |
| 89 | 30/11/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 88 | 01/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |

| # | Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 87 | 02/12/2013 | 98,19 | 91,53 | 10.642 | 90,26 | 10.976 | 78,50 | 113,31 | 11.601 |
| 86 | 03/12/2013 | 97,85 | 91,34 | 10.731 | 89,73 | 11.097 | 77,50 | 111,94 | 11.781 |
| 85 | 04/12/2013 | 97,60 | 90,68 | 11.028 | 88,58 | 11.360 | 76,43 | 110,53 | 11.979 |
| 84 | 05/12/2013 | 97,77 | 90,86 | 10.965 | 88,74 | 11.325 | 76,33 | 110,42 | 11.998 |
| 83 | 06/12/2013 | 98,21 | 91,02 | 10.912 | 89,23 | 11.212 | 77,57 | 112,19 | 11.771 |
| 82 | 07/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 81 | 08/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 80 | 09/12/2013 | 98,59 | 91,24 | 10.833 | 89,57 | 11.134 | 78,00 | 112,82 | 11.694 |
| 79 | 10/12/2013 | 98,70 | 90,93 | 10.968 | 89,03 | 11.258 | 77,42 | 112,04 | 11.799 |
| 78 | 11/12/2013 | 98,80 | 90,77 | 11.067 | 88,92 | 11.282 | 78,08 | 113,05 | 11.682 |
| 77 | 12/12/2013 | 98,65 | 90,50 | 11.191 | 88,21 | 11.448 | 76,75 | 111,22 | 11.925 |
| 76 | 13/12/2013 | 98,23 | 89,80 | 11.493 | 87,10 | 11.709 | 75,75 | 109,85 | 12.111 |
| 75 | 14/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 74 | 15/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 73 | 16/12/2013 | 98,26 | 89,72 | 11.538 | 86,95 | 11.744 | 75,68 | 109,78 | 12.125 |
| 72 | 17/12/2013 | 97,91 | 89,21 | 11.762 | 86,13 | 11.940 | 74,92 | 108,74 | 12.271 |
| 71 | 18/12/2013 | 98,36 | 89,75 | 11.570 | 86,63 | 11.819 | 74,88 | 108,77 | 12.280 |
| 70 | 19/12/2013 | 98,63 | 89,99 | 11.503 | 86,80 | 11.780 | 74,83 | 108,73 | 12.291 |
| 69 | 20/12/2013 | 99,00 | 90,05 | 11.491 | 86,73 | 11.795 | 74,50 | 108,33 | 12.356 |
| 68 | 21/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 67 | 22/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 66 | 23/12/2013 | 99,21 | 89,93 | 11.576 | 86,72 | 11.799 | 75,25 | 109,41 | 12.212 |
| 65 | 24/12/2013 | 99,10 | 89,96 | 11.561 | 86,75 | 11.790 | 75,25 | 109,50 | 12.214 |
| 64 | 25/12/2013 | 99,09 | 89,95 | 11.566 | 86,74 | 11.794 | 75,25 | 109,50 | 12.214 |
| 63 | 26/12/2013 | 99,19 | 90,00 | 11.571 | 86,73 | 11.797 | 75,25 | 105,50 | 12.212 |
| 62 | 27/12/2013 | 99,44 | 89,95 | 11.601 | 86,64 | 11.819 | 75,25 | 105,57 | 12.219 |
| 61 | 28/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 60 | 29/12/2013 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 59 | 30/12/2013 | 99,49 | 90,02 | 11.609 | 86,57 | 11.835 | 75,10 | 105,39 | 12.248 |
| 58 | 31/12/2013 | 99,43 | 90,05 | 11.594 | 86,66 | 11.815 | 75,25 | 105,70 | 12.220 |
| 57 | 01/01/2014 | 99,45 | 90,06 | 11.592 | 86,66 | 11.814 | 75,25 | 105,70 | 12.220 |
| 56 | 02/01/2014 | 99,33 | 89,90 | 11.670 | 86,38 | 11.882 | 75,00 | 105,38 | 12.268 |
| 55 | 03/01/2014 | 99,26 | 89,81 | 11.721 | 86,41 | 11.873 | 75,63 | 106,29 | 12.149 |

| # | Date | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|------|---|---|---|---|---|---|---|---|
| 54 | 04/01/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 53 | 05/01/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 52 | 06/01/2014 | 12,173 | 106,14 | 75,50 | 12,009 | 85,85 | 11,919 | 89,38 | 99,18 |
| 51 | 07/01/2014 | 12,419 | 104,38 | 74,22 | 12,230 | 84,95 | 12,126 | 88,92 | 98,94 |
| 50 | 08/01/2014 | 12,562 | 103,47 | 73,50 | 12,366 | 84,40 | 12,258 | 88,71 | 99,02 |
| 49 | 09/01/2014 | 13,050 | 100,15 | 71,11 | 13,096 | 81,53 | 13,121 | 86,79 | 98,61 |
| 48 | 10/01/2014 | 13,204 | 99,16 | 70,38 | 13,297 | 80,76 | 13,348 | 86,32 | 98,37 |
| 47 | 11/01/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 46 | 12/01/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 45 | 13/01/2014 | 13,395 | 97,94 | 69,49 | 13,526 | 79,91 | 13,599 | 85,80 | 97,77 |
| 44 | 14/01/2014 | 13,343 | 98,31 | 69,73 | 13,374 | 80,47 | 13,391 | 86,29 | 98,13 |
| 43 | 15/01/2014 | 13,179 | 99,52 | 70,50 | 13,272 | 80,86 | 13,323 | 86,53 | 98,20 |
| 42 | 16/01/2014 | 13,222 | 99,26 | 70,29 | 13,567 | 79,75 | 13,758 | 85,61 | 97,46 |
| 41 | 17/01/2014 | 13,503 | 97,48 | 69,00 | 13,945 | 78,37 | 14,190 | 84,72 | 96,40 |
| 40 | 18/01/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 39 | 19/01/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 38 | 20/01/2014 | 13,250 | 99,15 | 70,17 | 13,641 | 79,48 | 14,235 | 84,65 | 96,50 |
| 37 | 21/01/2014 | 13,451 | 97,95 | 69,24 | 14,077 | 77,89 | 13,858 | 85,49 | 96,60 |
| 36 | 22/01/2014 | 14,071 | 94,14 | 66,50 | 14,658 | 75,85 | 14,426 | 84,38 | 95,49 |
| 35 | 23/01/2014 | 14,435 | 92,03 | 64,97 | 15,544 | 72,89 | 14,986 | 83,25 | 93,64 |
| 34 | 24/01/2014 |  |  |  |  |  | 16,165 | 80,91 | 91,31 |
| 33 | 25/01/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 32 | 26/01/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 31 | 27/01/2014 | 14,347 | 92,56 | 65,33 | 15,864 | 71,86 | 16,713 | 79,88 | 90,89 |
| 30 | 28/01/2014 | 14,203 | 93,45 | 65,96 | 15,304 | 73,67 | 15,922 | 81,43 | 92,46 |
| 29 | 29/01/2014 | 14,557 | 91,50 | 64,50 | 16,103 | 71,10 | 16,972 | 79,48 | 90,72 |
| 28 | 30/01/2014 | 14,870 | 89,78 | 63,25 | 16,740 | 69,15 | 17,793 | 77,97 | 89,21 |
| 27 | 31/01/2014 | 15,392 | 87,00 | 61,25 | 17,609 | 66,60 | 18,859 | 76,07 | 87,22 |
| 26 | 01/02/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 25 | 02/02/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 24 | 03/02/2014 | 15,326 | 87,39 | 61,50 | 18,451 | 64,27 | 20,214 | 73,74 | 84,95 |
| 23 | 04/02/2014 | 14,776 | 90,40 | 63,63 | 17,626 | 66,56 | 19,235 | 75,47 | 87,29 |
| 22 | 05/02/2014 | 14,437 | 92,42 | 65,00 | 17,165 | 67,89 | 18,710 | 76,52 | 88,59 |

| # | Date | | | | | | | | |
|---|------------|-------|-------|--------|-------|--------|-------|-------|--------|
| 21 | 06/02/2014 | 90,68 | 78,65 | 17.564 | 70,51 | 16.293 | 66,63 | 94,74 | 14.051 |
| 20 | 07/02/2014 | 92,08 | 79,67 | 17.041 | 72,11 | 15.786 | 68,72 | 97,70 | 13.575 |
| 19 | 08/02/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 18 | 09/02/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 17 | 10/02/2014 | 91,91 | 79,65 | 17.069 | 71,91 | 15.848 | 68,17 | 96,96 | 13.698 |
| 16 | 11/02/2014 | 92,01 | 79,84 | 16.985 | 71,93 | 15.842 | 67,58 | 96,17 | 13.831 |
| 15 | 12/02/2014 | 92,50 | 80,43 | 16.729 | 72,52 | 15.658 | 67,82 | 96,63 | 13.779 |
| 14 | 13/02/2014 | 92,96 | 80,52 | 16.702 | 72,82 | 15.564 | 68,75 | 97,97 | 13.571 |
| 13 | 14/02/2014 | 94,73 | 83,79 | 15.053 | 76,54 | 14.458 | 69,44 | 98,97 | 13.419 |
| 12 | 15/02/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 11 | 16/02/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 10 | 17/02/2014 | 94,75 | 83,83 | 15.053 | 75,39 | 14.794 | 68,18 | 97,24 | 13.700 |
| 9 | 18/02/2014 | 94,21 | 83,12 | 15.421 | 74,84 | 14.954 | 67,50 | 96,38 | 13.853 |
| 8 | 19/02/2014 | 93,73 | 82,89 | 15.586 | 75,41 | 14.786 | 68,18 | 97,36 | 13.701 |
| 7 | 20/02/2014 | 94,43 | 83,28 | 15.409 | 75,65 | 14.718 | 68,35 | 97,64 | 13.662 |
| 6 | 21/02/2014 | 94,71 | 83,48 | 15.326 | | | | | |
| 5 | 22/02/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 4 | 23/02/2014 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 3 | 24/02/2014 | 95,52 | 84,36 | 14.904 | 76,94 | 14.347 | 69,63 | 99,46 | 13.380 |
| 2 | 25/02/2014 | 95,66 | 84,47 | 14.864 | 76,90 | 14.306 | 69,83 | 99,77 | 13.337 |
| 1 | 26/02/2014 | 95,43 | 84,28 | 15.072 | 76,57 | 14.444 | 69,69 | 99,74 | 13.358 |

# 4. Pestaña 5 - BONAR X y DISOUNT 33

## 1) INSUMOS (en rojo)

**Fechas**

| | |
|---|---|
| Fecha de valuación (T) | 17-feb-14 |
| Fecha de liquidación (T+3) | 20-feb-14 |
| Fecha Hipotética de emisión Bonar | 20-feb-14 |

**Precios de Pantallas**

| | |
|---|---|
| Precio Bonar X | 83,93 |
| Precio Discount LNY (1) | 65,12 |

(1) Precio en su versión **Clean** cada 100 de Valor Capitalizado

## 2) FLUJOS BONOS DE REFERENCIA

**Bonar X**

| Precio Pantalla | Interes Corrido | | Vida Prom. | Cupón |
|---|---|---|---|---|
| 83,930 | 2,392 | | 3,15 | 7,00% |

| Fecha de Vto. | Fecha de cálculo | TIREA | Valor Residual | Amort. | Interés | Interés Dev. | Cupón | Flujo | Cálculo para Vida Prom. |
|---|---|---|---|---|---|---|---|---|---|
| 17-oct-13 | 20-feb-14 | 15,002% | 100,00 | | | | | -83,93 | |
| 17-abr-14 | 17-abr-14 | | 100,00 | | 3,50 | 2,39 | | 3,50 | 15,34 |
| 17-oct-14 | 17-oct-14 | | 100,00 | | 3,50 | 0,00 | | 3,50 | 50,14 |
| 17-abr-15 | 17-abr-15 | | 100,00 | | 3,50 | 0,00 | | 3,50 | 49,86 |
| 17-oct-15 | 17-oct-15 | | 100,00 | | 3,50 | 0,00 | | 3,50 | 50,14 |
| 17-abr-16 | 17-abr-16 | | 100,00 | | 3,50 | 0,00 | | 3,50 | 50,00 |
| 17-oct-16 | 17-oct-16 | | 100,00 | | 3,50 | 0,00 | | 3,50 | 50,00 |
| 17-abr-17 | 17-abr-17 | | 0,00 | 100 | 3,50 | 0,00 | | 103,50 | 49,86 |

**Discount USD**

| Precio Pantalla Clean | Interes Corrido cada 100 VNO | Precio Dirty | | TIREA | | | Vida Prom | Factor de Cap. | Cupón |
|---|---|---|---|---|---|---|---|---|---|
| 65,120 | | 92,91 | | 14,412% | | | 15,11 | 1,40204 | 8,28% |

| Fecha de Vto. | Fecha de cálculo | Valor Residual | Amort. | Interés | Interés Dev. | Flujo LNY | Cálculo para Vida Prom. |
|---|---|---|---|---|---|---|---|
| 31-dic-13 | 20-feb-14 | 140,20 | | | | -92,910 | |
| 30-jun-14 | 30-jun-14 | 140,20 | | 5,80 | 1,61 | 5,80 | 49,94 |
| 31-dic-14 | 31-dic-14 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,68 |
| 30-jun-15 | 30-jun-15 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,53 |
| 31-dic-15 | 31-dic-15 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,68 |
| 30-jun-16 | 30-jun-16 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,72 |
| 31-dic-16 | 31-dic-16 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,49 |
| 30-jun-17 | 30-jun-17 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,53 |
| 31-dic-17 | 31-dic-17 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,68 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30-jun-18 | 30-jun-18 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,53 |
| 31-dic-18 | 31-dic-18 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,68 |
| 30-jun-19 | 30-jun-19 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,53 |
| 31-dic-19 | 31-dic-19 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,68 |
| 30-jun-20 | 30-jun-20 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,72 |
| 31-dic-20 | 31-dic-20 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,49 |
| 30-jun-21 | 30-jun-21 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,53 |
| 31-dic-21 | 31-dic-21 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,68 |
| 30-jun-22 | 30-jun-22 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,53 |
| 31-dic-22 | 31-dic-22 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,68 |
| 30-jun-23 | 30-jun-23 | 140,20 | | 5,80 | 0,00 | 5,80 | 69,53 |
| 31-dic-23 | 31-dic-23 | 140,20 | | 5,80 | 0,00 | 5,80 | 70,68 |
| 30-jun-24 | 30-jun-24 | 133,19 | 7,01 | 5,51 | 0,00 | 12,81 | 69,72 |
| 31-dic-24 | 31-dic-24 | 126,18 | 7,01 | 5,22 | 0,00 | 12,52 | 66,96 |
| 30-jun-25 | 30-jun-25 | 119,17 | 7,01 | 4,93 | 0,00 | 12,23 | 62,57 |
| 31-dic-25 | 31-dic-25 | 112,16 | 7,01 | 4,64 | 0,00 | 11,94 | 60,08 |
| 30-jun-26 | 30-jun-26 | 105,15 | 7,01 | 4,35 | 0,00 | 11,65 | 55,62 |
| 31-dic-26 | 31-dic-26 | 98,14 | 7,01 | 4,06 | 0,00 | 11,36 | 53,01 |
| 30-jun-27 | 30-jun-27 | 91,13 | 7,01 | 3,77 | 0,00 | 11,07 | 48,67 |
| 31-dic-27 | 31-dic-27 | 84,12 | 7,01 | 3,48 | 0,00 | 10,78 | 45,94 |
| 30-jun-28 | 30-jun-28 | 77,11 | 7,01 | 3,19 | 0,00 | 10,49 | 41,63 |
| 31-dic-28 | 31-dic-28 | 70,10 | 7,01 | 2,90 | 0,00 | 10,20 | 38,77 |
| 30-jun-29 | 30-jun-29 | 63,09 | 7,01 | 2,61 | 0,00 | 10,20 | 34,76 |
| 31-dic-29 | 31-dic-29 | 56,08 | 7,01 | 2,32 | 0,00 | 9,91 | 31,81 |
| 30-jun-30 | 30-jun-30 | 49,07 | 7,01 | 2,03 | 0,00 | 9,62 | 27,81 |
| 31-dic-30 | 31-dic-30 | 42,06 | 7,01 | 1,74 | 0,00 | 9,33 | 24,74 |
| 30-jun-31 | 30-jun-31 | 35,05 | 7,01 | 1,45 | 0,00 | 9,04 | 20,86 |
| 31-dic-31 | 31-dic-31 | 28,04 | 7,01 | 1,16 | 0,00 | 8,75 | 17,67 |
| 30-jun-32 | 30-jun-32 | 21,03 | 7,01 | 0,87 | 0,00 | 8,46 | 13,94 |
| 31-dic-32 | 31-dic-32 | 14,02 | 7,01 | 0,58 | 0,00 | 8,17 | 10,57 |
| 30-jun-33 | 30-jun-33 | 7,01 | 7,01 | 0,29 | 0,00 | 7,88 | 6,95 |
| 31-dic-33 | 31-dic-33 | 0,00 | 7,01 | | | 7,59 | 3,53 |

## 5. Pestaña 6 - BONAR 2024

### 3) Flujo Bonar 2024 y estimación de su precio implícito.

| | Precio teórico | Interes Corrido | TIREA Interpolada | Vida Prom. | Cupón |
|---|---|---|---|---|---|
| Con DICY | **75,409** | 0,00 | 14,787% | 7,50 | 8,75% |

| Fechas | Fecha de cálculo | Valor Residual | Amort. | Interés | Interes Dev. | Flujo | Cálculo para Vida Prom. |
|---|---|---|---|---|---|---|---|
| 20-feb-14 | 20-feb-14 | 100,00 | | | | 0,00 | |
| 20-ago-14 | 20-ago-14 | 100,00 | | 4,38 | 0,00 | 4,38 | 49,59 |
| 20-feb-15 | 20-feb-15 | 100,00 | | 4,38 | 0,00 | 4,38 | 50,41 |
| 20-ago-15 | 20-ago-15 | 100,00 | | 4,38 | 0,00 | 4,38 | 49,59 |
| 20-feb-16 | 20-feb-16 | 100,00 | | 4,38 | 0,00 | 4,38 | 50,41 |
| 20-ago-16 | 20-ago-16 | 100,00 | | 4,38 | 0,00 | 4,38 | 49,73 |
| 20-feb-17 | 20-feb-17 | 100,00 | | 4,38 | 0,00 | 4,38 | 50,41 |
| 20-ago-17 | 20-ago-17 | 100,00 | | 4,38 | 0,00 | 4,38 | 49,59 |
| 20-feb-18 | 20-feb-18 | 100,00 | | 4,38 | 0,00 | 4,38 | 50,41 |
| 20-ago-18 | 20-ago-18 | 100,00 | | 4,38 | 0,00 | 4,38 | 49,59 |
| 20-feb-19 | 20-feb-19 | 83,34 | 16,66 | 4,38 | 0,00 | 21,04 | 50,41 |
| 20-ago-19 | 20-ago-19 | 83,34 | | 3,65 | 0,00 | 3,65 | 41,33 |
| 20-feb-20 | 20-feb-20 | 66,68 | 16,66 | 3,65 | 0,00 | 20,31 | 42,01 |
| 20-ago-20 | 20-ago-20 | 66,68 | | 2,92 | 0,00 | 2,92 | 33,16 |
| 20-feb-21 | 20-feb-21 | 50,02 | 16,66 | 2,92 | 0,00 | 19,58 | 33,61 |
| 20-ago-21 | 20-ago-21 | 50,02 | | 2,19 | 0,00 | 2,19 | 24,80 |
| 20-feb-22 | 20-feb-22 | 33,36 | 16,66 | 2,19 | 0,00 | 18,85 | 25,22 |
| 20-ago-22 | 20-ago-22 | 33,36 | | 1,46 | 0,00 | 1,46 | 16,54 |
| 20-feb-23 | 20-feb-23 | 16,70 | 16,66 | 1,46 | 0,00 | 18,12 | 16,82 |
| 20-ago-23 | 20-ago-23 | 16,70 | | 0,73 | 0,00 | 0,73 | 8,28 |
| 20-feb-24 | 20-feb-24 | 0,00 | 16,70 | 0,73 | 0,00 | 17,43 | 8,42 |

<u>**ANEXO V**</u>

**CAUSAS INICIADAS POR REPSOL SUJETAS A DESISTIMIENTO**

1.   REPSOL BUTANO S.A. C/  EN-PEN-LEY 26741-DTO. 530 557 Y 732/12 S/PROCESO DE CONOCIMIENTO. Radicación: Juzgado de Primera Instancia en Contencioso Administrativo Federal N° 7, Secretaría 13. Expte. N° 27075/2012.

2.   REPSOL S.A. Y OTROS C/ NEUQUEN, PROVINCIA DEL Y OTRO (ESTADO NACIONAL) s/ Acción Declarativa de certeza e inconstitucionalidad. Radicación: Corte Suprema de Justicia de la Nación, Secretaría de Juicios Originarios. Expte. N°  R-498/13.

3.   REPSOL S.A. C/EN –DTO. 530 532 732/12 S/PROCESO DE CONOCIMIENTO. Radicación: Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 7, Secretaría 13. Expte. N° 21.941/2012.

4.   REPSOL YPF S.A. Vs. República Argentina (13-D). Radicación: Corte Federal del Distrito Sur de Manhattan (Griesa), Nueva York, Estados Unidos de América. Expte. N° 12 CV 4018.

5.   REPSOL YPF S.A., Texas Yale Capital Corp. Vs. Republic of Argentina (OPA). Radicación: Corte Federal del Distrito Sur de Manhattan, Nueva York, Estados Unidos de América. Expte. N° 12 CV 3877.

6.   REPSOL, S.A. y REPSOL BUTANO, S.A. c/ La República Argentina. Radicación: Centro Internacional de Arreglo de Diferencias de Inversiones,

Washington D.C., Estados Unidos de América. ICSID Case No. ARB/12/38.

7.    Denuncia administrativa por actuación ilegítima de la CNV presentada por REPSOL y otro con fecha 24/6/2013, Expte. S01:20131371/2013 del Ministerio de Economía y finanzas públicas.

8.    REPSOL BUTANO S.A C/ YPF GAS S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte.  N° 103.677.

9.    REPSOL BUTANO S.A. C/YPF GAS S.A. S/ Ordinario S/ Incidente de medidas precautorias. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.585.

10.  REPSOL BUTANO S.A. C/YPF GAS S.A. S/ Ordinario S/ Incidente art. 250 del Cod. Proc. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.791.

11.  REPSOL BUTANO S.A. C/YPF GAS S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.181.

12.  REPSOL BUTANO S.A. C/YPF GAS S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.945.

13.  REPSOL S.A. y otros C/YPF S.A. S/ Ordinario S/ Incidente de medidas cautelares. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.553.

14.  REPSOL S.A. y otros C/YPF S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 103.144.

15.  REPSOL S.A. y otros C/YPF S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 103.268.

16.  REPSOL S.A. y otros C/YPF S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 103.520.

17.  REPSOL S.A. C/YPF S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 104.022.

18.  REPSOL, S.A. C/YPF S.A. S/ Procedimiento Ordinario por Competencia Desleal (España). Radicación: Juzgado Mercantil N° 1 de Madrid, sito en C/Gran Vía 52, 1ª Planta, 28013, Madrid, Reino de España. Expte. N° 395/2012.

19.  REPSOL, S.A. C/THE BANK OF NEW YORK MELLON e YPF S.A. Radicación: Tribunal de Primera Instancia del Estado de New York, Condado de New York, Estados Unidos de América. Expte. N° 652653/2012.

## ANEXO VI

## CAUSAS INICIADAS POR TERCEROS SUJETAS A DESISTIMIENTO

1.  BRUFAU, NIUBÓ ANTONIO y otros C/EN-PEN LEY 26.741-DECRETO 530 532/12 S/DAÑOS Y PERJUICIOS. Radicación: Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 1, Secretaría 1. Expte. N° 16.785/2012.

2.  DE SAN MARTÍN, JOSÉ Y OTRO C/EN–PEN S/PROCESO DE CONOCIMIENTO. Radicación: Corte Suprema de Justicia de la Nación. Expte. N° C-731/2013.

3.  FORWOOD WALTER CRISTIAN C/ EN-PEN DTOS 530 Y 532/2012 S/ Medida Precautoria (autónoma). Radicación: Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 7, Secretaría 13. Expte. N° 12.881/2012

4.  GOMIS SAEZ ANTONIO C/ ESTADO NACIONAL PODER EJECUTIVO NACIONAL S/ MEDIDAS CAUTELARES. Radicación: Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 4, Secretaría 7. Expte. N° 26.981/2012.

5.  Denuncia administrativa por actuación ilegítima de la CNV presentada por Antonio Gomis y otro con fecha 24/6/2013, Expte. S01:20131371/2013 del Ministerio de Economía y Finanzas Públicas.

6.  GALLEGO, JOSE MANUEL C/ EN- PEN DTO. 530/12 557/12 S/ Medida Cautelar (autónoma). Radicación: Juzgado Nacional de Primera Instancia

en lo Contencioso Administrativo Federal N° 5, Secretaría 10. Expte. N° 13.223/2012.

7.   GARCIA DEL RIO LUIS Y OTRO C/ YPF  S.A. S/ ORDINARIO.  Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 21, Secretaría N° 41. Expte. N° 58.143.

8.   GARCIA DEL RIO LUIS C/ YPF SA s/ Medida Precautoria. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 25, Secretaría N° 49. Expte. N° 59.278.

9.   Reclamación administrativa presentada por Walter Forwood. *Radicación:* Secretaría de Política Económica del Ministerio de Economía de Argentina. EXP-S01: 0192282/2012.

**ANEXO VII**

**JUICIOS DE TERCEROS PENDIENTES CONTRA REPSOL**

**COMPRENDIDOS EN LA INDEMNIDAD**

1.  LÓPEZ, OSVALDO Y OTROS C/ REPSOL YPF S.A. S/AMPARO. Radicación: Juzgado de Primera Instancia del Trabajo de Río Grande, Provincia de Tierra del Fuego. Expte. Nro. 4.440.

2.  LÓPEZ, OSVALDO Y OTROS C/ REPSOL YPF S.A. S/AMPARO S/INCIDENTE DE MEDIDA CAUTELAR. Radicación: Juzgado de Primera Instancia del Trabajo de Río Grande, Provincia de Tierra del Fuego. Expte. Nro. 4.444.

3.  KARCZ, MIGUEL ANGEL Y OTRA C/REPSOL S.A., YPF S.A. Y ESTADO NACIONAL S/ACCIÓN DECLARATIVA DE CERTEZA. Radicación: Juzgado Nacional de Primera Instancia en lo Civil y Comercial Federal Nro. 9, Secretaría Nro. 17. Expte. Nro. 2 K-2010.

4.  YPF S.A. C/KARCZ, MIGUEL ANGEL Y OTRA S/INHIBITORIA. Radicación: Juzgado Nacional de Primera Instancia en lo Civil y Comercial Federal Nro. 9, Secretaría Nro. 17. Expte. Nro. 1.932/2011.

5.  MAC S.S. c/  REPSOL S.A. s/ORDINARIO. Radicación:   Juzgado Nacional en lo Comercial N° 12, Secretaría N° 120.  Expediente N° 029233.

6.  MAC S.S. c/  REPSOL S.A. s/EJECUTIVO. Radicación:   Juzgado Nacional en lo Comercial N° 12, Secretaría N° 120, Expediente N° 029234.

7.  MAC S.S. c/ REPSOL S.A. s/EJECUTIVO. Radicación: Juzgado Nacional en lo Comercial N° 12, Secretaría N° 120, Expediente N° 029235.

8.  MAC S.S. c/ REPSOL S.A. s/EJECUTIVO. Radicación: Juzgado Nacional en lo comercial N° 12, Secretaría N° 120, Expediente N° 029236.

9.  Se deja constancia de que existen además (i) una acción promovida por Asociación de Superficiarios de la Patagónica (ASSUPA) caratulada "Assupa c/ Total Austral S.A. y otros s/ Proceso de Conocimiento" (Expte. Nro. 23.145/2012) y (ii) un incidente caratulado "Assupa c/ Total Austral S.A. y otros s/ Proceso de conocimiento s/ Incidente de medida cautelar" (Expte. Nro. 5.883/2013) que tramitan en el Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal Nro. 9, Secretaría 18, en donde se habría extendido la demanda y medida cautelar contra REPSOL y algunas PERSONAS VINCULADAS a REPSOL. Si en este proceso llegara a determinarse alguna responsabilidad de REPSOL y/o de sus PERSONAS VINCULADAS que esté cubierta por la indemnidad prevista en el subpunto b del Punto iii del Apartado 2 de la CLÁUSULA SEXTA, será de aplicación dicha indemnidad.

<u>ANEXO VIII</u>

**REGLAS SOBRE INDEMNIDADES QUE PROTEGEN FRENTE A**

**RECLAMOS O MEDIDAS DISRUPTIVAS**

**I.   PROCEDIMIENTO**

1.   <u>Comunicación de reclamos comprendidos en una INDEMNIDAD.</u>

a) En caso de que una de las PARTES (la "GARANTIZADA") sea notificada de una acción, procedimiento o reclamo judicial, arbitral, administrativo o extrajudicial (el "RECLAMO") que considere que está cubierto por una INDEMNIDAD otorgada por la otra PARTE (la "INDEMNIZANTE"), la GARANTIZADA deberá comunicar la existencia de tal RECLAMO a la INDEMNIZANTE dentro de los 5 (cinco) DIAS HABILES de recibida dicha notificación, plazo dentro del cual la GARANTIZADA estará obligada a instruir a sus letrados y/o apoderados externos (conjuntamente, los "ABOGADOS") a ejercer todas las medidas procesales urgentes tendientes a preservar los derechos que estimen convenientes, las cuales no podrán ser luego cuestionadas por la INDEMNIZANTE. La INDEMNIZANTE deberá expedirse sobre la aceptación o no de la INDEMNIDAD requerida dentro de los CINCO (5) DÍAS HÁBILES posteriores a la recepción de la notificación aludida precedentemente.

b) La falta de notificación en dicho plazo no liberará a la INDEMNIZANTE de responsabilidad por la INDEMNIDAD pretendida, excepto en la medida en que haya sido perjudicada sustancialmente por dicha demora. A su vez, la falta de contestación por la INDEMNIZANTE en el plazo señalado no le generará res-

ponsabilidad por esa causa, excepto en la medida en que la GARANTIZADA haya sido perjudicada sustancialmente por dicha demora.

c) Simultáneamente con dicha notificación, o posteriormente en el plazo más breve en que sea razonablemente posible, la GARANTIZADA enviará a la INDEMNIZANTE o pondrá a su disposición toda la información que cuente sobre el RECLAMO y que razonablemente pueda servir para la defensa del mismo.

2.   Supuesto de aceptación de la INDEMNIDAD pretendida.

Si la INDEMNIZANTE acepta la INDEMNIDAD pretendida por la GARANTIZADA, entonces:

a) La INDEMNIZANTE tendrá derecho a designar a los ABOGADOS que defenderán el RECLAMO y a dirigir su actuación, manteniendo adecuadamente informada a la GARANTIZADA del progreso del RECLAMO y atendiendo la sugerencias de la GARANTIZADA que los ABOGADOS de la INDEMNIZANTE no consideren perjudiciales para la defensa.

b) La INDEMNIZANTE podrá transar el RECLAMO y/o adoptar las demás medidas que sus ABOGADOS recomienden para mitigar el daño.

c) Si la GARANTIZADA insistiera en defender el RECLAMO con sus propios ABOGADOS no decaerá por dicha razón la INDEMNIDAD pero la INDEMNIZANTE podrá esgrimir, frente a la GARANTIZADA, los defectos incurridos en dicha defensa, así como cuestionar la necesidad o conveniencia de las transacciones y demás medidas decididas por la GARANTIZADA para miti-

gar el daño, con excepción de las transacciones y demás medidas adoptadas con el consenso de la INDENMNIZANTE, el que no será irrazonablemente denegado.

d) Cuando la REPÚBLICA ARGENTINA sea la GARANTIZADA, será siempre de aplicación el Punto c) anterior y con ello la aplicación de las normas que regulan la intervención y representación del Estado Nacional en juicio.

3.   Supuesto de no aceptación de la INDEMNIDAD pretendida.

Si la INDEMNIZANTE rechaza la INDEMNIDAD pretendida por la GARANTIZADA, entonces:

a) La GARANTIZADA tendrá derecho a designar los ABOGADOS que defenderán el RECLAMO y a dirigir su actuación así como a transar y adoptar las demás medidas que sus ABOGADOS recomienden para mitigar el daño.

b) Si se llegare a determinar que correspondía la INDEMNIDAD pretendida por la GARANTIZADA, la INDEMNIZANTE no podrá esgrimir frente a la GARANTIZADA los defectos incurridos en la defensa del RECLAMO ni tampoco cuestionar las transacciones y/o demás medidas para mitigar el daño que haya decidido la GARANTIZADA con la recomendación de los ABOGADOS de la GARANTIZADA.

4.   Supuesto de actuación simultánea.

Si ambas PARTES actuaran simultáneamente frente a un RECLAMO determinado, ya sea por haber sido codemandadas o por haber una de ellas citado al

juicio a la otra PARTE, sin unificar personería y representación, para la conducción de la defensa se aplicarán las reglas previstas en los Puntos 2 y 3 precedentes según sea el caso.

Adicionalmente, las PARTES instruirán a sus respectivos ABOGADOS a coordinar las defensas en la medida en que ellas no sean incompatibles entre sí, en cuyo caso cada PARTE será libre de plantear sus propias defensas, pero la INDEMNIZANTE podrá esgrimir frente a la GARANTIZADA, para reducir el monto de la INDEMNIDAD, los perjuicios que pruebe le han causado la defensas incompatibles de la GARANTIZADA.

5.   Reglas aplicables hasta la aceptación de la INDEMNIDAD.

Mientras la INDEMNIZANTE no haya comunicado a la GARANTIZADA que acepta incondicionalmente otorgar la INDEMNIDAD pretendida por la GARANTIZADA, se aplicarán las reglas previstas en el Punto 3 precedente. A partir de la fecha en que la INDEMNIZANTE haya comunicado tal aceptación a la GARANTIZADA, se aplicarán las reglas previstas en el Punto 2, precedente.

6.   Gastos de los ABOGADOS

En cualquier caso, cada PARTE soportará los honorarios de los ABOGADOS que designe.

7.   Exigibilidad de la INDEMNIDAD.

La obligación indemnizatoria a cargo de la INDEMNIZANTE devendrá exigible a partir del momento en que cualquier obligación de la GARANTIZADA cubierta por la INDEMNIDAD haya sido declarada por resolución judicial o laudo arbitral firmes o ejecutorios, o por resolución administrativa firme o ejecutoria, o haya sido transado . En estos casos la INDEMNIZANTE deberá hacer efectiva la INDEMNIDAD dentro del plazo fijado por la respectiva resolución judicial o laudo arbitral, acto administrativo o acuerdo extrajudicial.

8.    <u>Reglas aplicables en todos los supuestos.</u>

a) Ambas PARTES colaborarán lealmente en la obtención de las pruebas que hagan a la defensa del RECLAMO y se las facilitarán recíprocamente.

b) Cada PARTE pondrá a disposición de la otra PARTE toda la información que esté en su poder y sea conducente a la mejor defensa de los intereses comunes aunque sin violar las obligaciones de confidencialidad a las que pueda estar sujeta.

c) Las PARTES acordarán la conveniencia de unificar personería o mantener representaciones separadas y otorgarán, en su caso, los poderes especiales necesarios al efecto.

d) Las PARTES mantendrán confidencialidad frente a terceros respecto de la aceptación o rechazo de las obligaciones de INDEMNIDAD previstas en el presente **ANEXO**.

e) Las PARTES intentarán en todo momento solucionar las cuestiones que se presenten de buena fe y con el fin de mitigar los daños. Asimismo, procurarán

establecer mecanismos sencillos y eficientes, que eviten recurrir al arbitraje previsto en el Apartado 2 de la CLAUSULA DECIMONOVENA del ACUERDO, para solucionar dichas cuestiones incluyendo, sin limitación, los conflictos de intereses y las controversias sobre atribuciones de responsabilidad, particularmente cuando se trate de cuestiones de entidad económica poco significativa.

## II.   ALCANCE DE LA INDEMNIDAD

1. La INDEMNIDAD cubrirá el monto de toda condena con sus costas y demás accesorios, incluyendo sin limitación tasas judiciales, honorarios de peritos y el costo de cualquier garantía que haya debido prestar la INDEMNIZANTE o la GARANTIZADA según el caso. Exceptúanse los honorarios devengados a favor de los ABOGADOS de la GARANTIZADA, que serán soportados exclusivamente por la GARANTIZADA.

2. Toda demora de la INDEMNIZANTE en hacer frente a los pagos debidos por una INDEMNIDAD a su cargo devengarán intereses compensatorios y punitorios a la tasa prevista en el Punto (iii) del Apartado 2 de la CLÁUSULA DECIMOCUARTA del ACUERDO.

3. La INDEMNIDAD cubrirá también los demás daños y perjuicios sufridos por la GARANTIZADA a raíz de la violación de la INDEMNIDAD.

4. La INDEMNIZANTE deberá además sustituir, a su costa y sin recurso contra la GARANTIZADA, toda medida cautelar dictada contra la GARANTIZADA.

## III.   MEDIDAS DISRUPTIVAS.

Las reglas de este **ANEXO** serán de aplicación, en cuanto resulte pertinente*,* en los casos de MEDIDAS DISRUPTIVAS, que deban ser levantadas por la REPÚBLICA ARGENTINA según lo previsto en la CLÁUSULA DECIMOSEXTA.

**<u>ANEXO IX</u>**

**MEDIDAS CAUTELARES EXISTENTES**

1.  LÓPEZ, OSVALDO Y OTROS C/ REPSOL YPF S.A. S/AMPARO. Radicación: Juzgado de Primera Instancia del Trabajo de Río Grande, Provincia de Tierra del Fuego. Expte. Nro. 4.440.

2.  LÓPEZ, OSVALDO Y OTROS C/ REPSOL YPF S.A. S/AMPARO S/INCIDENTE DE MEDIDA CAUTELAR. Radicación: Juzgado de Primera Instancia del Trabajo de Río Grande, Provincia de Tierra del Fuego. Expte. Nro. 4.444.

3.  KARCZ, MIGUEL ANGEL Y OTRA C/REPSOL S.A., YPF S.A. Y ESTADO NACIONAL S/ACCIÓN DECLARATIVA DE CERTEZA. Radicación: Juzgado Nacional de Primera Instancia en lo Civil y Comercial Federal Nro. 9, Secretaría Nro. 17. Expte. Nro. 2 K-2010.

4.  YPF S.A. C/KARCZ, MIGUEL ANGEL Y OTRA S/INHIBITORIA. Radicación: Juzgado Nacional de Primera Instancia en lo Civil y Comercial Federal Nro. 9, Secretaría Nro. 17. Expte. Nro. 1.932/2011.

5.  OVIEDO, NAHUEL EZEQUIEL C/ REPSOL YPF S.A. Y OTRO S/ DESPIDO. Radicación: Juzgado Nacional Primera Instancia del Trabajo Nro. 67. Expte. Nro. 34.238/2009.

**<u>ANEXO X</u>**

**DOCUMENTACIÓN PARA EL CAMBIO DE TITULARIDAD DE LAS**

**ACCIONES A SER ENTREGADA POR REPSOL AL ESTADO NACIONAL EN**

**EL CIERRE**

**CAJA DE VALORES**

| N° ESPERA | N° CERTIFICADO | N° TRÁMITE |
|---|---|---|
| | | |

## SOLICITUD DE TRANSFERENCIA DE VALORES NEGOCIABLES ESCRITURALES

| ☐ ACCIONES | ☐ BONOS | ☐ OBLIGACIONES NEGOCIABLES | ☐ OTROS |
|---|---|---|---|

ESPECIE _____ COD. ESPECIE _____ ACC. TIPO _____

### DATOS DEL CEDENTE

**CONDOMINIO N°1**

APELLIDO Y NOMBRES Y/O RAZON SOCIAL _____

DOC. DE IDENTIDAD N° _____ TIPO _____ NACIONALIDAD _____

CUIT _____ RPC N° _____ F° _____ L° _____ T° _____

DOMICILIO _____ N° _____ PISO _____ DTO. _____

LOCALIDAD _____ PROV. _____ PAIS _____ C. P. _____
Y/O

**CONDOMINIO N°2**

APELLIDO Y NOMBRES Y/O RAZON SOCIAL _____

DOC. DE IDENTIDAD N° _____ TIPO _____ NACIONALIDAD _____

CUIT _____ RPC N° _____ F° _____ L° _____ T° _____

DOMICILIO _____ N° _____ PISO _____ DTO. _____

LOCALIDAD _____ PROV. _____ PAIS _____ C. P. _____

| CANTIDAD A TRANSFERIR | EN NUMEROS: | | ☐ VALOR NOMINAL |
|---|---|---|---|
| | EN LETRAS: | | ☐ VALOR RESIDUAL |

### DATOS DEL BENEFICIARIO

**CONDOMINIO N°1**

APELLIDO Y NOMBRES Y/O RAZON SOCIAL _____

_____

_____

DOMICILIO _____ N° _____ PISO _____ DTO. _____

LOCALIDAD _____ PROV. _____ PAIS _____ C. P. _____
Y/O

**CONDOMINIO N°2**

APELLIDO Y NOMBRES Y/O RAZON SOCIAL _____

DOC. DE IDENTIDAD N° _____ TIPO _____ NACIONALIDAD _____

CUIT _____ RPC N° _____ F° _____ L° _____ T° _____

DOMICILIO _____ N° _____ PISO _____ DTO. _____

LOCALIDAD _____ PROV. _____ PAIS _____ C. P. _____

AUTORIZO AL Sr./Sra. _____

DNI, LE, LC : _____ A PRESENTAR LA SOLICITUD

| FIRMA CEDENTE | ACLARACIÓN | FIRMA DEL AUTORIZADO | ACLARACIÓN |
|---|---|---|---|

**IMPORTANTE:** Para iniciar el trámite, como para retirar el certificado, se deberá presentar el DNI, LE, LC. En el caso de un autorizado deberá presentar adicionalmente fotocopia del DNI, LE o LC del Titular. Las personas Jurídicas deberán certificar firmas y facultades ante Escribano Público. De tratarse de personas que actúan por sí, deberán presentar certificación ante Escribano Público por derecho propio, o bien en el caso que actúan a través de un Apoderado, certificación ante Escribano de las firmas y facultades de éste. La certificación de firma del solicitante deberá contemplar la firma como solicitante y de corresponder la autorización que éste está realizando a un tercero.

Cod. Acc. CEDENTE _____        Cod. Acc. BENEFICIARIO _____

| FIRMA DEL CEDENTE | | FIRMA DEL BENEFICIARIO |
|---|---|---|
| ACLARACIÓN | | ACLARACIÓN |
| N° DNI - LE – LC / TEL. | | N° DNI - LE – LC / TEL. |

| USO EXCLUSIVO C.V.S.A. - ATENCIÓN A CLIENTES | | | | | MESA DE CONTROL |
|---|---|---|---|---|---|
| | | | | | |
| INGRESÓ | VERIFICÓ FIRMA | VERIFICÓ ANTECEDENTES | REVISÉ | CONF. / ESPERA | VERIFICÓ |

Caja de Valores S.A. - 25 de Mayo 362 - Ciudad Autónoma de Buenos Aires - Argentina - C1002ABH - Tel. (54-11) 4317-8900 - www.cajval.alba.com.ar        ORIGINAL

**CAJA DE VALORES**

| Nº ESPERA | Nº CERTIFICADO | Nº TRÁMITE |
|-----------|----------------|------------|
|           |                |            |

## SOLICITUD DE TRANSFERENCIA DE VALORES NEGOCIABLES ESCRITURALES

| ☐ ACCIONES | ☐ BONOS | ☐ OBLIGACIONES NEGOCIABLES | ☐ OTROS |
|------------|---------|----------------------------|---------|

ESPECIE _____ COD. ESPECIE _____ ACC. TIPO _____

### DATOS DEL CEDENTE

**CONDOMINIO Nº 1**

APELLIDO Y NOMBRES Y/O RAZON SOCIAL _____

DOC. DE IDENTIDAD Nº _____ TIPO _____ NACIONALIDAD _____
CUIT _____ RPC Nº _____ Fº _____ Lº _____ Tº _____
DOMICILIO _____ Nº _____ PISO _____ DTO. _____
LOCALIDAD Y/O _____ PROV. _____ PAIS _____ C. P. _____

**CONDOMINIO Nº 2**

APELLIDO Y NOMBRES Y/O RAZON SOCIAL _____

DOC. DE IDENTIDAD Nº _____ TIPO _____ NACIONALIDAD _____
CUIT _____ RPC Nº _____ Fº _____ Lº _____ Tº _____
DOMICILIO _____ Nº _____ PISO _____ DTO. _____
LOCALIDAD _____ PROV. _____ PAIS _____ C. P. _____

| CANTIDAD A TRANSFERIR | EN NUMEROS: | ☐ VALOR NOMINAL |
|------------------------|-------------|-----------------|
|                        | EN LETRAS:  | ☐ VALOR RESIDUAL |

### DATOS DEL BENEFICIARIO

**CONDOMINIO Nº 1**

APELLIDO Y NOMBRES Y/O RAZON SOCIAL _____

DOC. DE IDENTIDAD Nº _____ TIPO _____ NACIONALIDAD _____
CUIT _____ RPC Nº _____ Fº _____ Lº _____ Tº _____
DOMICILIO _____ Nº _____ PISO _____ DTO. _____
LOCALIDAD Y/O _____ PROV. _____ PAIS _____ C. P. _____

**CONDOMINIO Nº 2**

APELLIDO Y NOMBRES Y/O RAZON SOCIAL _____

DOC. DE IDENTIDAD Nº _____ TIPO _____ NACIONALIDAD _____
CUIT _____ RPC Nº _____ Fº _____ Lº _____ Tº _____
DOMICILIO _____ Nº _____ PISO _____ DTO. _____
LOCALIDAD _____ PROV. _____ PAIS _____ C. P. _____

AUTORIZO AL Sr. / Sra. _____
DNI, LE, LC : _____ A PRESENTAR LA SOLICITUD

| FIRMA CEDENTE | ACLARACIÓN | FIRMA DEL AUTORIZADO | ACLARACIÓN |
|---------------|------------|----------------------|------------|

**IMPORTANTE:** Para iniciar el trámite, como para retirar el certificado, se deberá presentar el DNI, LE, LC. En el caso de un autorizado deberá presentar adicionalmente fotocopia del DNI, LE o LC del Titular. Las personas Jurídicas deberán certificar firmas y facultades ante Escribano Público. De tratarse de personas que actúan por sí, deberán presentar certificación ante Escribano Público por derecho propio, o bien en el caso que actúen a través de un Apoderado, certificación ante Escribano de las firmas y facultades de éste. La certificación de firma del solicitante deberá contemplar la firma como solicitante y de corresponder la autorización que éste une realizando a un tercero.

| Cod. Acc. CEDENTE | Cod. Acc. BENEFICIARIO |
|-------------------|------------------------|

| FIRMA DEL CEDENTE | FIRMA DEL BENEFICIARIO |
|-------------------|------------------------|
| ACLARACIÓN        | ACLARACIÓN             |
| Nº DNI - LE - LC / TEL | Nº DN - LE - LC / TEL |

| USO EXCLUSIVO C.V.S.A. - ATENCIÓN A CLIENTES |
|----------------------------------------------|
| RECIBIÓ |

Caja de Valores S.A. - 25 de Mayo 362 - Ciudad Autónoma de Buenos Aires - Argentina - C1002ABH - Tel. (54-11) 4311-6900 - www.cajval.sba.com.ar   DUPLICADO

Ciudad de [●], [●] de [●] de 2014

Señores

YPF GAS S.A.

Macacha Güemes 515

Ciudad Autónoma de Buenos Aires

<u>Presente</u>

De mi consideración:

Tengo el agrado de dirigirme a Uds. en mi carácter de [apoderado] de Repsol Butano S.A. [●] ("<u>REPSOL BUTANO</u>"), accionista de YPF GAS S.A. (la "<u>Sociedad</u>"), a fin de notificarles, en los términos del artículo 215 de la ley 19.550 y sus modificatorias, que en el día de la fecha, se han transferido 89.755.383 acciones ordinarias, nominativas, no endosables Clase A, de un peso ($1) valor nominal cada una y 1 voto por acción, que representan aproximadamente el 51% del capital accionario de la Sociedad (las "<u>Acciones</u>"), de titularidad de REPSOL BUTANO, a favor de la República Argentina.

Por tal motivo, solicito tengan a bien anotar la transferencia de las Acciones a nombre de la República Argentina en el Libro de Registro de Acciones de la Sociedad, y emitan los correspondientes certificados representativos de las Acciones.

Atentamente,

_____

Repsol Butano S.A.

Nombre:

Cargo:

**ANEXO XI**

**GARANTÍA A SER ENTREGADA A REPSOL POR LA REPÚBLICA**

**ARGENTINA EN EL CIERRE**

En virtud de lo dispuesto mediante Resolución N° _____ de fecha _____ del Honorable Directorio del Banco de la Nación Argentina, por la presente se otorga una fianza solidaria a favor de Repsol S.A, con domicilio en_____, a efectos de garantizar el pago de intereses del Bono de la Nación Argentina en Dólares Estadounidenses 8,75% 2024 "BONAR 2024", en el marco del CONVENIO DE SOLUCIÓN AMIGABLE Y AVENIMIENTO DE EXPROPIACIÓN (el CONVENIO) suscripto entre la REPÚBLICA ARGENTINA (el Solicitante) y REPSOL S.A. (el Beneficiario) con fecha 27/02/2014, cuyas condiciones se adjuntan.

En consecuencia, por la presente el Banco de la Nación Argentina se constituye en fiador liso, llano y principal pagador, obligándose a abonar el Beneficiario, a su primer requerimiento, el monto de la presente garantía, de conformidad con los términos y condiciones que se detallan a continuación:

a)  Solicitante:  REPÚBLICA ARGENTINA

b)  Beneficiario: REPSOL S.A.

c)   Monto: Hasta U\$S 150.000.000 (Dólares Estadounidenses Ciento Cincuenta Millones).

d)  Vigencia: La garantía se mantendrá vigente hasta el día_____, es decir DIEZ (10) DÍAS HÁBILES posteriores a la fecha de pago del tercer servicio de intereses del Bono de la Nación Argentina en Dólares Estadounidenses 8,75% 2024 "BONAR 2024". Expirará de pleno derecho en dicha fecha o bien de ocurrir la extinción del CONVENIO, antes de dicha fecha.

e)  Objeto: Garantizar al Beneficiario los 3 (TRES) primeros servicios de intereses correspondiente al Bono de la Nación Argentina en Dólares Estadounidenses 8,75% 2024 "BONAR 2024", conforme las condiciones de emisión que lo rigen.

f)  En caso de incumplimiento total o parcial de cualquier servicio de intereses en las fechas de pago previstas en las condiciones de emisión, el Beneficiario deberá notificar de manera fehaciente esta circunstancia al Banco de la Nación Argentina, quien deberá abonar el monto debido e impago, por hasta el límite de la presente garantía, en la cuenta que le indique el Beneficiario, en dólares estadounidenses y sin sujeción a restricción alguna, cambiaria o de otra naturaleza, dentro de los 10 (DIEZ) días hábiles de recibida la notificación respectiva. La obligación del fiador se extingue una vez abonado por el fiador el monto total de la garantía ante el incumplimiento de cualquier servicio de intereses del Bonar 2024 en poder del Beneficiario amparados por esta garantía.

g)  Todos los costos bancarios incluyendo la emisión, gastos, impuestos y costos de ejecución serán soportados por el Solicitante.

h)  Todas las notificaciones al Banco de la Nación Argentina deberán efectuarse al domicilio

i)  La presente fianza se regirá por y será interpretada de acuerdo a las leyes de la República Argentina.  Cualquier reclamo, disputa o controversia derivada de la Fianza otorgada será sometida a los Tribunales Federales de Capital Federal.

j)  Se firman tres ejemplares de un mismo tenor a un solo efecto.

En Buenos Aires, a los____días del mes de_____de 2014

## ANEXO XII

1.   REPSOL BUTANO S.A C/ YPF GAS S.A. S/ Ordinario.  Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte.  N° 103.677.

2.   REPSOL BUTANO S.A. C/  EN-PEN-LEY 26741-DTO. 530 557 Y 732/12 S/PROCESO DE CONOCIMIENTO. Radicación: Juzgado de Primera Instancia en Contencioso Administrativo Federal N° 7 , Secretaría 13. Expte. N° 27.075/2012.

3.   REPSOL BUTANO S.A. C/YPF GAS S.A. S/ Ordinario S/ Incidente de medidas cautelares. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.585.

4.   REPSOL BUTANO S.A. C/YPF GAS S.A. S/ Ordinario S/ Incidente art. 250 del Cod. Proc.. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.791.

5.   REPSOL BUTANO S.A. C/YPF GAS S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.181.

6.   REPSOL BUTANO S.A. C/YPF GAS S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 3, Secretaría N° 6. Expte. N° 103.945.

7.   REPSOL S.A. Y OTROS C/ NEUQUEN, PROVINCIA DEL Y OTRO (ESTADO NACIONAL) s/ Acción Declarativa de certeza e inconstituciona-

lidad. Radicación: Corte Suprema de Justicia de la Nación. Secretaría de Juicios Originarios. Expte. N° R-498/13.

8. REPSOL S.A. y otros C/YPF S.A. S/ Ordinario S/ Incidente de medidas cautelares. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 103.553.

9. REPSOL S.A. y otros C/YPF S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 103.144.

10. REPSOL S.A. y otros C/YPF S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 103.268.

11. REPSOL S.A. y otros C/YPF S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 103.520.

12. REPSOL S.A. C/YPF S.A. S/ Ordinario. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6. Expte. N° 104.022.

13. REPSOL S.A. C/EN –DTO. 530 532 732/12 S/PROCESO DE CONOCIMIENTO. Radicación: Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 7, Secretaría 13. Expte. N° 21.941/2012.

14. BRUFAU, NIUBÓ ANTONIO Y OTROS C/EN-PEN LEY 26.741-DECRETO 530 532/12 S/DAÑOS Y PERJUICIOS. Radicación: Juzgado

Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 1, Secretaría 1. Expte. N° 16.785/2012.

15. GOMIS SAEZ ANTONIO C/ ESTADO NACIONAL PODER EJECUTIVO NACIONAL S/ MEDIDAS CAUTELARES. Radicación: Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 4, Secretaría 7. Expte. N° 26.981/2012.

16. GARCIA DEL RIO LUIS C/ YPF S.A. s/ Medida Precautoria. Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 25, Secretaría N° 49. Expte. N° 59.278.

17. GARCIA DEL RIO LUIS Y OTRO C/ YPF  S.A. S/ ORDINARIO.  Radicación: Juzgado Nacional de Primera Instancia en lo Comercial  N° 21, Secretaría N° 41. Expte. N° 58.143.

18. DE SAN MARTIN, JOSÉ Y OTRO C/EN–PEN S/PROCESO DE CONOCIMIENTO. Radicación: Corte Suprema de Justicia de la Nación. Expte. N° C-731/2013.

19. FORWOOD WALTER CRISTIAN C/ EN – PEN -DTO 530 Y 532/2012 S/ Medida Precautoria (autónoma). Radicación: Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 7, Secretaría 13. Expte. N° 12.881/2012.

20. GALLEGO, JOSE MANUEL C/ EN- PEN DTO. 530/12 557/12 S/ Medida Cautelar (autónoma). Radicación: Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal N° 5, Secretaría 10. Expte. N° 13.223/2012.

Con arreglo a lo que surge de la Nota de AFIP número 523/14 (SDG ASJ) de fecha 24 de febrero de 2014, la REPÚBLICA ARGENTINA declara y garantiza que la tasa de justicia ingresada en los juicios listados en este **ANEXO** es correcta y que no se adeuda ninguna suma adicional por tal concepto.

**ANEXO XIII**

**PROCEDIMIENTO PARA EL EJERCICIO DEL DERECHO DE**

**ACOMPAÑAMIENTO**

1. En caso de que cualquier operación singularmente considerada conlleve la Enajenación de Títulos Públicos de un Valor Nominal conjunto igual o superior a Dólares trescientos millones (USD 300.000.000), Repsol comunicará a la República Argentina vía telefónica la especie, el volumen y el precio acordados en la Enajenación de los Títulos Públicos, el remanente de Títulos Públicos de dicha especie que Repsol aún mantiene en cartera en condiciones de ser Enajenados, y la información relativa a la entidad financiera que actuará como custodio de los Títulos Públicos que puedan ser objeto del derecho de acompañamiento previsto a continuación, y contraparte de la entidad financiera designada por la República Argentina conforme a lo previsto más adelante. Dicha comunicación será efectuada asimismo vía correo electrónico.

2. La comunicación referida en el apartado anterior se efectuará un DÍA HÁBIL INTERNACIONAL, entre las 10.00 y las 14.00 hora de Argentina. Las Partes prestan conformidad a la grabación de las conversaciones, como es práctica habitual de mercado.

3. La República Argentina tendrá un plazo de 2 horas para ejercitar la opción de adquirir de Repsol Títulos Públicos de la misma especie y cantidad y en las mismas condiciones económicas, contractuales y jurídicas que los Enajenados por Repsol, por hasta el límite de los que Repsol aún mantiene en cartera en

condiciones de ser Enajenados, debiendo a tal fin informar la entidad bancaria que actuará como contraparte de la entidad financiera designada por Repsol. Queda entendido que el ejercicio de la opción deberá verificarse por el máximo de la cantidad de Títulos Públicos objeto de la opción, y no podrán existir alteraciones cuantitativas o cualitativas respecto de los Títulos Públicos objeto de la opción. La confirmación del ejercicio de la opción se realizará telefónicamente, con confirmación vía correo electrónico a efectuar no más tarde de las 16.00 horas de Argentina del mismo DÍA HÁBIL INTERNACIONAL.

4. En el supuesto que la República Argentina ejerza su opción de compra, Repsol procederá, a través de la entidad financiera designada, quien actuará como contraparte de la entidad financiera designada por la República Argentina, a la venta de los Títulos Públicos al precio informado por Repsol. La operación se realizará bajo la modalidad "delivery versus payment", y se liquidará conforme a las prácticas habituales de mercado con entrega de fondos en la cuenta que REPSOL indique.

5. Las comunicaciones entre las PARTES se efectuarán a los contactos (teléfono y correo electrónico) que las PARTES se comuniquen por escrito.

6. Todas las menciones de la REPÚBLICA ARGENTINA en este **ANEXO** se entenderán referidas al cesionario que ella haya indicado de acuerdo con la CLÁUSULA DECIMOSÉPTIMA. Dicha indicación deberá incluir, para ser efectiva, el contacto, teléfono y dirección de correo electrónico de dicho cesionario.

**ANEXO XIV**

**DEFINICIONES**

- "ABOGADOS": Tiene el significado que se le atribuye en el Punto a), Apartado 1, Sección I del **ANEXO** VIII.

- "ACCIONES": Son las 200.589.525 acciones Clase "D" de YPF y 89.755.383 acciones Clase "A" de YPF GAS objeto de la EXPROPIACIÓN.

- "ACUERDO": Es el presente CONVENIO DE SOLUCIÓN AMIGABLE Y AVENIMIENTO DE EXPROPIACIÓN y sus ANEXOS.

- "AGENTE DE CÁLCULO": Será Ernst & Young.

- "AMORTIZACIONES, AMORTIZAR": Serán, o hará referencia a, las cantidades pagadas por la REPÚBLICA ARGENTINA en virtud de los TÍTULOS PÚBLICOS a sus respectivos vencimientos en concepto de VALOR NOMINAL**.** En el caso del DISCOUNT 33, incluirá también las cantidades pagadas a sus respectivos vencimientos en concepto de intereses capitalizados con anterioridad al 31 de diciembre de 2013.

- "ANTECEDENTES": Son todas las medidas adoptadas respecto de la industria hidrocarburífera en general y/o de YPF e YPF GAS a partir del año 2002, por la REPÚBLICA ARGENTINA.

- "AUDITOR": Será designado por REPSOL de entre Deloitte, Ernst & Young, KPMG y Price Waterhouse Coopers. Deberá ser distinto del auditor externo de REPSOL en cada momento.

- "BODEN 2015": Tiene el significado que se le atribuye en la Sección B del

**ANEXO** IV.

- "BONAR 2024": Tiene el significado que se le atribuye en la Sección A del **ANEXO** IV.

- "BONAR X": Tiene el significado que se le atribuye en la Sección A del **ANEXO** IV.

- "BONOS DE REFERENCIA": Tiene el significado que se le atribuye en el Apéndice VI del **ANEXO** IV.

- "CAMBIO MATERIAL ADVERSO": Es: (a) cualquier decisión, anuncio o ejecución, legalmente o por vía de hecho, de cualquier medida adoptada por la REPÚBLICA ARGENTINA por la que se disponga, autorice o apruebe, o que implique, en relación con cualesquiera títulos de deuda pública emitidos por la REPÚBLICA ARGENTINA con posterioridad al 31 de diciembre de 2001, una o varias de las siguientes medidas: la cesación de pagos, la consolidación, la conversión a, o el pago en, cualquier divisa distinta del DÓLAR y la modificación de todas o alguna de sus condiciones (salvo aquellas de menor importancia que no afecten el valor de los títulos), con independencia de que las normas o actos en que se funde dicha medida hayan sido convalidados o no por tribunales de la REPÚBLICA ARGENTINA, o hayan sido adoptadas con o sin el consentimiento de sus titulares; y (b) cualquier supuesto de incumplimiento en relación con cualesquiera títulos de deuda pública emitidos por la REPÚBLICA ARGENTINA con posterioridad al 31 de diciembre de 2001.

- "CAUSA ANTERIOR": Todo acto o conducta que haya tenido lugar con an-

terioridad a la fecha de suscripción del ACUERDO aunque el reclamo respectivo o los efectos de dicho acto o conducta se exterioricen con posterioridad a dicha fecha.

- "CIERRE": Tiene el significado que se le atribuye en el Apartado 1 de la CLÁUSULA NOVENA.

- "COMPENSACIÓN ACELERADA": Tiene el significado que se le atribuye en el Apartado 1 de la CLÁUSULA DECIMOCUARTA.

- "CONDICIONES SUSPENSIVAS": Tiene el significado que se le asigna en el Apartado 1 de la CLÁUSULA SÉPTIMA.

- "CONTROLADA": Es, en relación con cualquier sociedad, cualquier sociedad en la que la primera, en forma directa o por intermedio de otra sociedad a su vez controlada, actualmente o en el futuro: (a) tenga participación que por cualquier título otorgue los votos necesarios para formar la voluntad social o (b) ejerza una influencia dominante por los especiales vínculos existentes entre ellas.

- "CONTROVERSIA": Es el conjunto de acciones y reclamos extrajudiciales, judiciales y/o arbitrales iniciados, en el plano nacional e internacional, contra la REPÚBLICA ARGENTINA, YPF e YPF GAS, objetando —directa o indirectamente— el dictado de los Decretos Nros. 530/2012, 532/2012, 557/2012 y 732/2012, la sanción de la Ley N° 26.741 y la aplicación y ejecución de tales actos y normas.

- "DÍA DE CÁLCULO": Es cualquier día (excluidos sábado y domingo) en que los bancos comerciales y entidades financieras se encuentran generalmen-

te abiertos y operando normalmente para operaciones ordinarias tanto en la Ciudad Autónoma de Buenos Aires, República Argentina, como en Nueva York, Estados Unidos de América.

- "DÍA HÁBIL INTERNACIONAL": Es cualquier día (excluidos sábado y domingo) en que los bancos comerciales y entidades financieras se encuentran generalmente abiertos y operando normalmente para operaciones ordinarias tanto en la Ciudad Autónoma de Buenos Aires, República Argentina, como en Madrid, Reino de España, y Nueva York, Estados Unidos de América.

- "DÍA HÁBIL": Es cualquier día (excluidos sábado y domingo) en que los bancos comerciales y entidades financieras se encuentran generalmente abiertos para operaciones ordinarias en (i) la Ciudad Autónoma de Buenos Aires, República Argentina, o (ii) solo en el caso del Punto I, 1 a) del ANEXO VIII, la Ciudad en la cual se ha recibido la notificación que deba trasladarse a la INDEMNIZANTE.

- "DÍAS": Son días corridos.

- "DIFERENCIA": Es la definida en el Apartado 1 de la Sección B del **ANEXO** IV.

- "DISCOUNT 33": Tiene el significado que se le atribuye en la Sección A del **ANEXO** IV.

- "DÓLARES" o "USD": Es la moneda oficial de los Estados Unidos de América y "moneda convertible" a efectos del artículo V del TBI ARGENTINA-ESPAÑA, y en la que serán pagaderas todas las obligaciones resultantes

del ACUERDO.

- "ENAJENACIÓN, ENAJENAR": Es, por referencia a los TÍTULOS PÚBLICOS, todo acto por el cual REPSOL transfiera por cualquier causa su propiedad a favor de terceros, ya sea voluntariamente o como consecuencia de la ejecución de cualquier prenda o gravamen constituidos por su titular. No se considerará ENAJENACIÓN la transferencia de la propiedad de los TÍTULOS PÚBLICOS:

   *(i)* cuando se realice entre Repsol, S.A. y/o CONTROLADAS de REPSOL; ni

   *(ii)* cuando se trate de: (a) cesiones en garantía de operaciones financieras o comerciales de REPSOL; (b) cesiones con garantía de pago o solvencia por parte de REPSOL; y (c) operaciones de financiación y cobertura con derivados utilizando como subyacente los TÍTULOS PÚBLICOS.

   Siempre que un cesionario de los incluidos en los Puntos (i) y (ii) anteriores reciba de la REPÚBLICA ARGENTINA los importes debidos en concepto de AMORTIZACIÓN de los TÍTULOS PÚBLICOS, se entenderá que los ha recibido REPSOL a efectos de lo previsto en el Punto (i) del Apartado 1 de la CLÁUSULA CUARTA y concordantes.

- "ENTIDADES DE REFERENCIA": Tendrá el significado que se le asigna en la Sección C del **ANEXO** IV.

- "EXPROPIACIÓN": Es la expropiación dispuesta por el artículo 7° y concordantes de la Ley N° 26.741.

- "FECHA DE CIERRE": La fecha en la cual tendrá lugar, o debería tener lugar, el CIERRE.

- "FECHA DE REFERENCIA": es la definida en el Apartado 1 de la Sección B del **ANEXO** IV.

- "GARANTÍA": Es la garantía otorgada por el Banco de la Nación Argentina por la suma de CIENTO CINCUENTA MILLONES DE DÓLARES (USD 150.000.000) y por plazo de DIECIOCHO (18) meses al objeto de garantizar el pago de intereses del BONAR 2024 substancialmente en los términos previstos en el **ANEXO** XI, la que deberá constituir una obligación válida, exigible y ejecutable de acuerdo con sus propios términos, que entregará la REPÚBLICA ARGENTINA a REPSOL en el CIERRE.

- "GARANTIZADA": Tiene el significado que se le atribuye en el Punto a), Apartado 1, Sección I del **ANEXO** VIII.

- "GASTOS DEDUCIBLES": Son los gastos en que haya incurrido REPSOL y estén directamente vinculados con la tenencia, gestión y administración de los TÍTULOS PÚBLICOS, con más aquellos incurridos en ocasión de las ENAJENACIONES de los mismos incluyendo, sin limitación, cualesquiera comisiones, aranceles, tasas, cánones, honorarios legales y otros, y demás gastos de cualquier naturaleza (por ejemplo. corretajes de compraventa, comisiones de transferencia y liquidación de fondos, colocación, aseguramiento, etc.) soportados por, o imputados a, REPSOL por cualesquiera personas o entidades por razón de la ENAJENACIÓN (por ejemplo, entidades financieras, entidades de custodia, liquidación y clearing, mercados y

bolsas, asesores intervinientes en la ENAJENACIÓN, etc.), hasta un tope del 0,8% del monto percibido por cada ENAJENACIÓN.

- "IMPUESTOS": Incluye todo tributo, impuesto, tasa, gravamen o deducción, exigible, en la actualidad o en el futuro, en cualquiera de las jurisdicciones de la REPÚBLICA ARGENTINA.

- "INDEMNIZANTE": Tiene el significado que se le atribuye en el Punto a), Apartado 1, Sección I del **ANEXO** VIII.

- "INTERÉS DEVENGADO": Es el interés que devengan los TÍTULOS PÚBLICOS periódicamente. A los fines aclaratorios, en el caso del DISCOUNT 33 este concepto no incluye los intereses capitalizados hasta el 31 de diciembre de 2013.

- "MATERIAS EXCLUIDAS": Significa las siguientes materias:

- (i) Reclamos y acciones que REPSOL y/o sus controladas, por un lado, e YPF y/o sus controladas, por el otro, puedan tener entre sí, en relación con las actividades, operaciones, activos, pasivos, derechos y obligaciones de YPF Holdings, Inc.; Tierra Solutions Inc.; Maxus Energy Corporation; Maxus International Energy Company; Maxus (U.S.) Exploration; CLH Holdings y Gateway Coal Company y/o las sociedades que en cualquier momento anterior al 16 de abril de 2012 eran controladas –directa o indirectamente- por YPF Holdings, Inc.; Tierra Solutions Inc.; Maxus Energy Corporation; Maxus International Energy Company; Maxus (U.S.) Exploration; CLH Holdings o Gateway Coal Company, con excepción de los eventuales reclamos entre sí de REPSOL y/o sus controladas, por un lado, e YPF y/o

sus controladas, respecto de los USD 130 millones que REPSOL y/o sus controladas e YPF S.A. y/o sus controladas –directa o indirectamente- han pagado en virtud del Acuerdo Conciliatorio con el Estado de New Jersey en el litigio del Río Passaic, reclamos éstos que por tal importe quedan comprendidos en las renuncias y desistimientos contemplados en el ACUERDO.

- (ii) Reclamos y acciones que REPSOL y/o sus controladas, por un lado, e YPF y/o sus controladas, por el otro, puedan tener entre sí, en relación con la transferencia de activos de YPF International Ltd. y/o las sociedades que en cualquier momento anterior al 16 de abril de 2012 eran controladas –directa o indirectamente- por YPF International Ltd. a REPSOL y/o sus controladas. Lo anterior sólo en el caso que los activos en cuestión hubieren sido primariamente adquiridos por YPF International Ltd. o sus sociedades controladas  de una cualquiera de las siguientes sociedades: YPF Holdings, Inc.; Maxus Energy Corporation; Maxus International Energy Company o Maxus (U.S.) Exploration y/o a las sociedades que eran controladas –directa o indirectamente- por YPF Holdings, Inc.; Tierra Solutions Inc.; Maxus Energy Coporation; Maxus International Energy Company; Maxus (U.S.) Exploration; CLH Holdings o Gateway Coal Company.

- (iii) Reclamos y acciones que REPSOL y/o sus controladas, por un lado, e YPF y/o  sus controladas, por el otro, puedan tener entre sí, en relación con cualquier responsabilidad de YPF y/o sus controladas en relación con la emisión, registración y compra-venta de las American Depositary Shares

(ADSs) de YPF, incluyendo sin limitación las obligaciones de divulgación bajo las leyes federales y estatales de los Estados Unidos que rigen las ADSs de YPF, o con cualquier oferta pública de venta de dichas ADSs de YPF en los Estados Unidos de América; y, en particular, la oferta registrada ante la Securities Exchange Commission con fecha 23 de marzo de 2011 (Registration No. 333-170848) así como la acción pendiente ante los Tribunales del Distrito Sur de Nueva York, Monroe County Employees' Retirement System v. YPF, No. 13-cv-842 (SAS) (S.D.N.Y.).

- "MEDIDAS DISRUPTIVAS": Significa, conjunta o indistintamente: (1) embargos y cualquier otra medida que impida o limite a REPSOL el cobro de la COMPENSACIÓN y/o de los TÍTULOS PÚBLICOS en las condiciones de emisión o su libre disponibilidad, dispuestos por, o a requerimiento de, autoridades judiciales o administrativas de la REPÚBLICA ARGENTINA con motivo de reclamos o actuaciones que tengan por causa la actuación de REPSOL en la REPÚBLICA ARGENTINA como accionista de YPF y/o YPF GAS, y/o la gestión de dichas sociedades mientras REPSOL fue accionista controlante y/o que se refieran a reclamos alcanzados por las indemnidades o renuncias otorgadas en el ACUERDO; y/o (2) medidas dispuestas por tribunales o autoridades de cualquier país a pedido de terceros que reclamen acreencias contra la REPÚBLICA ARGENTINA que impidan o limiten a REPSOL el cobro de la COMPENSACIÓN y/o de los TÍTULOS PÚBLICOS en las condiciones de emisión o su libre disponibilidad; y/o (3) cualquier otra orden, resolución, sentencia o medida cautelar (en todos los

casos, de carácter interino o definitivo) distintas de embargos, dispuesta por o a requerimiento de, autoridades judiciales o administrativas de la REPÚBLICA ARGENTINA, que tenga por efecto impedir o limitar el cumplimiento del ACUERDO por parte de la REPÚBLICA ARGENTINA y/o el pago de la COMPENSACIÓN y/o de la COMPENSACIÓN ACELERADA y/o de los TÍTULOS PÚBLICOS en las condiciones de su emisión. Se excluyen las órdenes, resoluciones, sentencias, embargos y demás medidas cautelares dispuestas por tribunales extranjeros o internacionales que se ejecuten en la REPUBLICA ARGENTINA a través de tribunales argentinos y no se refieran a reclamos alcanzados por las indemnidades o renuncias contempladas en el ACUERDO.

Con anterioridad al CIERRE el término "MEDIDAS DISRUPTIVAS" incluirá también cualquiera de las medidas enumeradas en los ítems (1), (2) y (3) de esta definición que restrinja, limite o grave de cualquier manera la propiedad y/o la disposición de las ACCIONES y de las PARTICIPACIONES REMANENTES y/o de los derechos emanados de las mismas.

- "PARTICIPACIONES REMANENTES": Son las acciones de YPF y de YPF GAS de propiedad de REPSOL que no forman parte de las ACCIONES.

- "PERSONAS VINCULADAS": Significa (i) con relación a la REPÚBLICA ARGENTINA, sus anteriores o actuales funcionarios, agentes y/o mandatarios; (ii) con relación a YPF e YPF GAS, sus empresas controladas, y los directores, administradores, gerentes, ejecutivos, empleados, agentes y/o mandatarios de todas ellas, en todos los casos actuales o anteriores; inclu-

yendo, sin limitación, a las personas que hayan sido designadas directores o síndicos de YPF con el voto favorable de la REPUBLICA ARGENTINA y (iii) con relación a REPSOL, sus empresas controladas (incluyendo a YPF e YPF GAS mientras estuvieron bajo el control de REPSOL) y los directores, administradores, gerentes, ejecutivos, empleados, agentes y/o mandatarios de todas ellas, en todos los casos actuales o anteriores, incluyendo, sin limitación, a las personas que hayan sido designadas directores o síndicos de YPF con el voto favorable de REPSOL.

- "PLAZO DE CÓMPUTO": Tendrá el significado que se le asigna en la Sección C del **ANEXO** IV.

- "PRECIO DE REFERENCIA": Tendrá el significado que se le asigna en la Sección C del **ANEXO** IV.

- "PRETENSIONES": Son las definidas en el Punto (i) del Apartado 1 de la CLÁUSULA SEXTA.

- "RECLAMO": Tiene el significado que se le atribuye en el Punto a), Apartado 1, Sección I del **ANEXO** VIII.

- "REESTRUCTURACIÓN": Es, por referencia a los TÍTULOS PÚBLICOS y la COMPENSACIÓN, (1) la falta de pago total o parcial del capital y/o de los interesas debidos en virtud de los mismos y/o (2) cualquier decisión, anuncio o ejecución, legalmente o por vía de hecho, de cualquier medida adoptada por la REPÚBLICA ARGENTINA por la que se disponga, autorice o apruebe, o que implique, la cesación de pagos, la consolidación, la conversión a, o el pago en, cualquier divisa distinta del DÓLAR, y la modifica-

ción de todas o alguna de sus condiciones, con independencia de que las normas o actos en que se funde dicha medida hayan sido convalidados o no por tribunales de la REPÚBLICA ARGENTINA. Las anteriores medidas tendrán la consideración de REESTRUCTURACIÓN con independencia de que hayan sido adoptadas con o sin el consentimiento de sus titulares distintos de REPSOL. Al objeto de evitar cualquier duda, se considera también REESTRUCTURACIÓN cualquier incumplimiento de las obligaciones de pago emergentes de los TÍTULOS PÚBLICOS.

- "REPSOL" significa Repsol, S.A. y todas sus sociedades CONTROLADAS, incluyendo, sin limitación, a las mencionadas en el encabezamiento.

- "REPÚBLICA ARGENTINA": comprende el Estado Nacional y todas las sub-divisiones políticas, territoriales y administrativas, incluidas las Provincias, y demás entes, organismos, reparticiones de la administración central o descentralizada nacional, autárquica o autónoma, de la República Argentina.

- "TBI ARGENTINA-ESPAÑA": Es el Acuerdo para la promoción y la protección recíproca de inversiones entre la República Argentina y el Reino de España.

- "TIR DE DESCUENTO DEL BONAR 2024": Tiene el significado que se le atribuye en el Apéndice VI del **ANEXO** IV.

- "TIR DE LOS BONOS DE REFERENCIA": Tiene el significado que se le atribuye en el Apéndice VI del **ANEXO** IV.

- "TÍTULOS PÚBLICOS ADICIONALES": Son los "BONOS DE LA

REPÚBLICA ARGENTINA EN DÓLARES" que la REPÚBLICA ARGENTINA entregará a REPSOL en el CIERRE si se dan las condiciones previstas en la Sección B del **ANEXO** IV, y cuya especie y cantidad se determinan en la indicada Sección B del **ANEXO** IV.

- "TÍTULOS PÚBLICOS INICIALES": Son los "BONOS DE LA REPÚBLICA ARGENTINA EN DÓLARES" que en todo caso la REPÚBLICA ARGENTINA entregará a REPSOL en el CIERRE y cuya especie y cantidad se determinan en la Sección A del **ANEXO** IV.

- "TÍTULOS PÚBLICOS": Significa, conjunta o indistintamente, los TÍTULOS PÚBLICOS INICIALES y LOS TÍTULOS PÚBLICOS ADICIONALES.

- "VALOR DE MERCADO": Es el que resulta en cada caso de los cálculos previstos en la Sección C del **ANEXO** IV.

- "VALOR DE REFERENCIA": Tendrá el significado que se le asigna en la Sección C del **ANEXO** IV.

- "VALOR NOMINAL": Es, por referencia a cada uno de los TÍTULOS PÚBLICOS, el importe de su capital nominal al tiempo de la primera emisión de la serie a la que pertenezcan (sin computar, por tanto, en su caso, los intereses ya devengados y capitalizados o que se capitalicen en el futuro). En concreto, para todos los TÍTULOS PÚBLICOS, el importe unitario del VALOR NOMINAL es de UN (1) DÓLAR.

- "VIDA PROMEDIO": Tiene el significado que se le atribuye en el Apéndice VI del **ANEXO** IV.

- "YPF GAS" significa YPF Gas S.A.

-    "YPF" significa YPF S.A.