UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U.,<br><br>                      Plaintiffs,<br><br>                -against-<br><br>ARGENTINE REPUBLIC and YPF S.A.,<br><br>                      Defendants. | Case Nos.:<br><br>1:15-cv-02739-LAP<br>1:16-cv-08569-LAP |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P.,<br><br>                      Plaintiffs,<br><br>                -against-<br><br>ARGENTINE REPUBLIC and YPF S.A.,<br><br>                      Defendants. | |

**PLAINTFFS' PRE-MOTION CONFERENCE LETTER AND REPORT
REGARDING STATUS OF DISCOVERY**

| | |
|---|---|
| KING & SPALDING LLP<br><br>Israel Dahan<br>Laura E. Harris<br>1185 Avenue of the Americas<br>New York, New York 10036<br><br>Reginald R. Smith *(pro hac vice)*<br>1100 Louisiana Street<br>Houston, Texas 77002 | KELLOGG, HANSEN, TODD,<br>   FIGEL & FREDERICK, P.L.L.C.<br><br>Mark C. Hansen<br>Derek T. Ho<br>Andrew E. Goldsmith<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036 |

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U.,
Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*

# INTRODUCTION

Plaintiffs respectfully submit this status report in anticipation of the February 18, 2021 status conference.

This report recounts Plaintiffs' discovery status, details Defendants' discovery status and seeks the Court's assistance with several outstanding matters set forth below, and proposes an extension of the current discovery schedule to accommodate the relief sought from the Court. It also reports on the progress of discovery from the members of the Eskenazi family. We hope the Court will find this consolidated approach to be more efficient than a series of pre-motion letters.[1] We have submitted this report in time to permit full briefing of the requested relief under the Court's Individual Practice governing such letters (§ 2.A) before the conference on February 18.

# STATUS OF DISCOVERY

**I. Plaintiffs' Provision of Discovery**

<u>Document production</u>

Plaintiffs have produced more than 25,000 documents (more than 144,000 pages) and have been producing privilege logs on a rolling basis since October. Plaintiffs expect to substantially complete their productions and privilege logs on or before February 15, 2021, although the bulk of their production has already occurred.

---

[1] We ask that the Court treat the portions of this filing seeking relief for Defendants' discovery deficiencies as a series of pre-motion letters under Local Rule 37.2. Plaintiffs request leave to exceed the three-page limitation for pre-motion conference letters under Your Honor's Individual Practices, because this submission addresses multiple issues. *See* Individual Practices § 2.A.

Depositions

Plaintiffs have produced for deposition all witnesses sought by Defendants, including Armando Betancor, the Petersen Plaintiffs' receiver, in both his personal and 30(b)(6) capacity, and four Eton Park witnesses (except the Eskenazis, as to whom see below). Defendants have not yet noticed the further deposition of Mr. Betancor ordered by the Court. Defendants have also deposed Mr. Bogart from Burford Capital.

## II. Defendants' Productions

Plaintiffs' position continues to be that this is a straightforward breach of contract case that can be resolved easily on summary judgment and in which all the material facts are a matter of public record. However, Defendants have raised dozens of affirmative defenses – 28 lodged by the Republic and 17 by YPF. Defendants refuse to meet their own discovery obligations with respect to those affirmative defenses. With their original excuse—the pandemic—no longer credible, Defendants now resort to more naked obstructionism.[2] With regret, we have reached the point where some direction from the Court is necessary.

Document production

Plaintiffs served their requests for production ("RFPs") on the Republic and YPF on August 12, 2020, six months ago. *See* Exs. 1 & 2.

---

[2] At the risk of repetition, we remind the Court that Argentina has publicly avowed a strategy of delay and obfuscation in this matter. This is straight from the Argentine playbook: engage in clearly illegal conduct; fail to pay; and engage in the longest dispute resolution process possible to defer payment, essentially generating a low-interest loan for the Republic. There are many examples of this conduct. *See, e.g.*, Tr. at 26, 27, *NML Capital, Ltd. et al. v. Republic of Argentina*, Case No. 08-cv-06978 (S.D.N.Y. Sept. 29, 2014), ECF No. 696 (holding the Republic in civil contempt of court for, *inter alia*, "actions that come from the executive branch" attempting to "move the proceedings . . . to Buenos Aires" and "ignore [a] basic part of its financial obligations" contrary to the Court's injunction), *order amended at* Am. and Supplemental Order, ECF No. 693, attached hereto as Exs. 25 & 26. And the strategy is working—we are nine years after the wrongdoing, and this case is about to have its sixth anniversary while still being in fact discovery.

3

Both Defendants concede that their document productions are incomplete. We ask for the Court's assistance in (i) setting firm deadlines for Defendants to complete document discovery and (ii) instructing Defendants to meet their production obligations in several respects.

The dates and volume of Defendants' productions are set forth below:

| Production | Date Produced | Document Count | Page Count |
|---|---|---|---|
| Republic Production No. 1 | September 30, 2020 | 90 | 3,150 |
| Republic Production No. 2 | October 15, 2020 | 191 | 9,483 |
| Republic Production No. 3 | November 11, 2020 | 419 | 6,948 |
| Republic Production No. 4 | November 19, 2020 | 194 | 20,436 |
| Republic Production No. 5 | January 8, 2021 | 878 | 11,001 |
| Republic Production No. 6 | January 8, 2021 | 71 | 523 |
| Republic Production No. 7 | February 4, 2021 | 157 | 4,654 |
| **Republic Totals** | | **2,000** | **56,195** |
| YPF Production No. 1 | October 9, 2020 | 349 | 7,657 |
| YPF Production No. 2 | October 16, 2020 | 13 | 395 |
| YPF Production No. 3 | January 15, 2021 | 400 | 6,330 |
| YPF Production No. 4 | February 5, 2021 | 51 | 948 |
| **YPF Totals** | | **813** | **15,330** |

Neither Defendant has produced any privilege logs.

<u>The Republic's document production</u>

The Republic's productions to date overwhelmingly consist of publicly available "filler," including legislative materials, ratings reports, and YPF securities filings. Indeed, many of the longest documents are produced in triplicate. Others—including a 1,642-page manual of employment and social security law—have no discernible relevance to this litigation whatsoever. What few emails have been produced are without metadata, meaning Plaintiffs have no efficient means of determining the sender, recipient, or date of those materials. The Republic concedes that its searches are still incomplete seven months into discovery, *see* Ex. 3 at 3, but has refused to provide even basic information, including:

- The identity of the custodians included in the Republic's collections, including whether certain relevant individuals are among the custodians from whom the Republic collected email and other ESI;

4

- The search terms, date ranges, and any other parameters used to identify responsive documents; and

- Confirmation that the Republic's productions will include documents relevant to its affirmative defenses, including, at a minimum, the Kirchner administration's non-privileged documents and communications with or concerning the Eskenazis or any of their representatives.

In the Republic's view, its productions need only include "administrative files" that, as its Rule 30(b)(6) witness testified, are heavily curated compendiums of "memos, notes that support an act of government." Ex. 4 (Etchegorry Dep. 73:8-17). The Republic's insistence on producing only materials that "*support*" the Republic's actions is offensive to the principles governing the American discovery process.

We ask the Court to order:

1. That the Republic search for and produce documents from the custodians identified by Plaintiffs (including fact witnesses identified in Defendants' disclosures) as set forth on Exhibit 5 at 2 n.1, and produce those documents with metadata.

2. That the Republic provide within 24 hours the search terms, date ranges, and other parameters used to collect documents.

3. That the Republic produce a privilege log for its productions, including by February 26 a privilege log covering the productions already made.

4. That the Republic commence additional rolling productions by no later than February 26 and complete its production (and its privilege log) by March 12.

YPF's document production

Thus far, the vast majority of YPF's productions have been publicly available SEC filings. YPF contends that it must obtain the consent of its current and former employees before it begins searching and reviewing documents in their custodial files, much less producing those documents. As a result, YPF has produced only 428 documents from four of more than a dozen

individual custodians, and confirmed during a recent meet and confer that it had not even begun its review of at least some of the remainder. YPF has identified nothing in Argentine law—to say nothing of U.S. law—that supports its position.

Last fall, YPF asserted that it could not produce documents in its current or former employees' custodial files without their consent. However, after Plaintiffs objected, YPF said on November 5, 2020 that its claimed Argentine obligations were "a non-issue" because YPF expected to obtain the needed consents and would "produce non-privileged responsive emails on a rolling basis as it obtains consents from its custodians." Ex. 6 at 1. On November 10, 2020, YPF represented to the Court that it "hope[d] to substantially complete its document production within 60 days [*i.e.*, by January 9, 2021]." *Petersen* Dkt. No. 194 at 9.

On December 2, 2020, after YPF had still produced no custodial documents, Plaintiffs requested YPF's basis for withholding responsive documents. Ex. 7. On January 6, 2021, a few days before YPF's self-imposed production deadline, YPF withdrew its prior assertions under Argentine law, indicating that it was "not currently withholding any responsive documents from production based on Argentine law" and therefore was not required "to demonstrate that Argentine law prohibits production of documents absent consent from individual document custodians." Ex. 8 at 1. YPF also represented that: (a) its review of documents was "in progress"; (b) it would produce non-privileged emails the following week; (c) it would produce additional responsive, non-privileged documents "as soon as possible," and (d) it would notify Plaintiffs if it determined it would not be able to complete its production by the February 15, 2021 fact discovery deadline. *Id.* at 2 & n.2.

Notwithstanding these assurances, YPF has produced documents from only four of the 15 to 16 custodians it has promised. YPF has also apparently reversed course again: during a

6

January 20, 2021 meet-and-confer call, counsel for YPF made plain their position that YPF must obtain consent from its custodians *before YPF can even begin searching and reviewing documents from custodial files*.

YPF's position is inconsistent with the law in this District, which provides that "a party raising foreign law as a basis for objecting to discovery faces the burden of demonstrating that the foreign law actually prohibits producing the requested information." *NML Capital, Ltd. v. Republic of Argentina*, 2013 WL 491522, at *3 (S.D.N.Y. Feb. 8, 2013); *see also Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 425 (S.D.N.Y. 2016) (requiring disclosure where resisting parties were "unable to cite a single instance in which a UK enforcement action was taken against an entity for violating the [foreign law at issue] by complying with discovery demands in the United States"); *In re Vivendi Universal, S.A. Sec. Litig.*, 2006 WL 3378115, at *4 (S.D.N.Y. Nov. 16, 2006) (compelling production where resisting non-party "ha[d] been threatened with prosecution by two French agencies" but there was no showing that the threats would be carried out).  Indeed, YPF's position conflicts with its own code of ethics, which provides that email and other files are not "for [employees'] personal use" and therefore cannot be private.[3]

We ask the Court to order:

1. That YPF identify the custodians, search terms, date ranges, and other parameters used to collect documents, and produce those documents with metadata.

2. That YPF's objections based on the absence of consent from custodians are overruled.

---

[3] *See* Section 8.11, Ethics and Conduct Regulation for YPF Employees, https://www.sec.gov/Archives/edgar/data/904851/000119312505135966/dex111.htm.

3. That YPF produce a privilege log for its productions, including by February 26 a privilege log covering the productions already made.

4. That YPF commence additional rolling productions by no later than February 26 and complete its production (and its privilege log) by March 12.

Document production from the Republic and YPF relating to the Eskenazis

Defendants have asserted affirmative defenses that Petersen Plaintiffs' YPF purchase was consummated through a "sham agreement," and that Petersen Plaintiffs' claims are barred by unclean hands based on the Eskenazis' share acquisition and management of YPF. *See Petersen* Dkt. No. 98 at 23-26, 29 (Republic's Fifth and Ninth Defenses), Dkt. No. 99 at 20 (YPF's Eleventh and Thirteenth Defenses). Defendants have made much of the Eskenazis, as the Court knows, and have insisted that these defenses require discovery from the Eskenazis; we address the status of that discovery in the next section. Yet, although each Defendants has a long history with the Eskenazi family, neither has produced *any* documents or communications concerning that relationship, including as to events Defendants insist are relevant.[4]

The Republic's relationship with the Eskenazis goes back nearly twenty-five years, to when the patriarch of the family, Enrique Eskenazi, came to know Néstor Kirchner, then Governor of the Province of Santa Cruz and a rising star in Argentine politics.[5] Then-Governor Kirchner and Enrique Eskenazi became close friends, with the Eskenazis' companies handling

---

[4] Plaintiffs' RFPs sought these documents. *See* Ex. 9 at 9-11 (RFP Nos. 17-22, 28); Ex. 10 at 8-10 (RFP Nos. 14, 18-22, 25).

[5] *See* Ex. 11, Jude Webber, *YPF Move Puts Eskenazi Clan in Debt Bind*, Financial Times (Apr. 19, 2012), https://on.ft.com/2X4H331.

various construction projects within the province and Enrique eventually taking 51% ownership in the Bank of Santa Cruz, the major regional bank.[6]

In 2003, Néstor Kirchner was elected President of Argentina. His proximity to the Eskenazi family continued. It was well-accepted—and well-reported—that one of President Néstor Kirchner's goals became the "Argentinization" of the former state-owned and -run oil company, YPF.[7] The Republic wanted more control, and someone who would answer directly to the Republic's leadership (as majority owner Repsol, of Spain, would not). As Julio de Vido, then Minister of Planning and Public Investment, reportedly put it: "We need a director who'll pick up the phone when we ring."[8] The Republic thus sought not just an "Argentinization" of YPF, but a "Kirchnerization."[9]

The Republic could be certain that, as close friends of both Néstor Kircher and his wife, Cristina (who succeeded him as President in 2007), the Eskenazis would pick up the phone. Indeed, even before the Republic installed Sebastián Eskenazi as YPF's CEO, he "was one of the few men in Argentina with free access to the president's office 'without asking for permission from anyone' except the head of State."[10] In the end, "the involvement of the Kirchnerist banker

---

[6] *See id.*

[7] *See* Ex. 12, Carlos Pagni, *Escenario. Por qué Eskenazi se quedará con YPF*, La Nacion (June 18, 2007), https://www.lanacion.com.ar/economia/por-que-eskenazi-se-quedara-con-ypf-nid918387/.

[8] *See* Ex. 11, Webber, *YPF Move Puts Eskenazi Clan in Debt Bind*, supra.

[9] Ex. 12, Pagni, *Escenario. Por qué Eskenazi se quedará con YPF*, supra.

[10] Ex. 13, *El personaje en la noticia. Eskenazi, un constructor y banquero amigo de Kirchner*, La Nacion (Dec. 22, 2007), https://www.lanacion.com.ar/economia/eskenazi-un-constructor-y-banquero-amigo-de-kirchner-nid973367/.

9

[Enrique Eskenazi] in the oil company was put forward by the Casa Rosada [Argentine Presidential Palace]."[11]

Even today, the Eskenazis remain enmeshed with the Republic's leadership. As recently as December 2, 2020, Matías Eskenazi Storey met with President Fernández regarding a banking initiative.[12] The President's own Twitter account publicized the meeting.[13]

Despite all of the above, Defendants have produced *no documents* related to the affirmative defenses that they claim turn on the Eskenazis' conduct. This is difficult to understand. Indeed, Sebastián Eskenazi has now testified pursuant to the letters rogatory that his only email address *was the one provided by YPF*. Based on this testimony there is reason to believe that the documents sought by Defendants from the Eskenazis are all in Defendants' custody and control and have been since the outset of the litigation.

We ask the Court to order both Defendants to produce all documents sought by Plaintiffs' RFPs relating to the Eskenazis on the same schedule as set forth above, including but not limited to:

- Documents concerning the ongoing investigation into the Kirchner administration and the Eskenazis, including an interdisciplinary study ordered by the presiding judge on the management of YPF by the Eskenazis and the participation of the Republic's representatives on YPF's board, among other things;

- Communications between the Republic or its representatives and the Eskenazis or their associates relating to (a) Petersen's investment in YPF, (b) Eskenazi family members' activities on behalf of YPF, or (c) the present litigation;

---

[11] Ex. 14, *Kirchner Impuso a Eskenazi Para YPF*, La Política Online (July 8, 2007), https://www.lapoliticaonline.com/nota/nota-30361/.

[12] *See* Ex. 15, Banks presented to Alberto Fernández the electronic wallet to compete with Mercado Libre, Explica.co (Dec. 2, 2020), https://www.explica.co/banks-presented-to-alberto-fernandez-the-electronic-wallet-to-compete-with-mercado-libre/.

[13] *See* Ex. 16, Alberto Fernández Twitter Account (Dec. 1, 2020), https://twitter.com/alferdez/status/1333922705440198662.

- Records of meetings or telephone calls between the Republic or its representatives and the Eskenazis or their associates relating (a) Petersen's investment in YPF, (b) the Eskenazis' activities on behalf of YPF, or (c) the present litigation; and

- Documents concerning the Eskenazis' or their associates' activities in connection with (a) Petersen's investment in YPF, (b) the management of YPF, or (c) the present litigation.

Other discovery

Plaintiffs have sought Rule 30(b)(6) deposition testimony from the Republic and YPF on 15 and 12 subjects, respectively, generally relating to Defendants' affirmative defenses. Plaintiffs postponed the bulk of Defendants' Rule 30(b)(6) depositions after the Court granted Defendants' requested extension, due to Defendants' failure to produce documents. There is no live dispute for the Court at present but Plaintiffs do expect the remaining witnesses to be provided between the end of document discovery and the close of fact discovery, and we ask Defendants to raise with the Court now any unwillingness to do so to avoid a later disruption to the schedule. We believe all of those depositions can be concluded in one week, the week of March 15, accommodating a close of fact discovery on March 12 and a close of all fact discovery on March 19.

**III. Discovery of the Eskenazis**

Pursuant to the Court's Orders on November 23, 2020 and December 22, 2020, *Petersen* Dkt. Nos. 219 and 249, Plaintiffs have sought to provide discovery from the four members of the Eskenazi family who are the subject of the Orders. These efforts have included consistent efforts to obtain the discovery through the Eskenazis' U.S. counsel, Steven Reisberg of Chaffetz Lindsey LLP. Mr. Reisberg has stated to counsel for both Plaintiffs and Defendants that his clients are willing to cooperate voluntarily in providing documents and testimony. But he has been unwilling to submit his clients to the Court's jurisdiction. Counsel for Plaintiffs continue to work with Mr. Reisberg to secure his clients' voluntary cooperation. But they have taken

11

additional actions to obtain the discovery. Here are the highlights of what has transpired, with additional details set forth below:[14]

- After Defendants let their letters rogatory languish for months,[15] 

- ███████████████████████████████████████

- ███████████████████████████████████████

---

[14] While Plaintiffs have taken all available steps to obtain discovery from the Eskenazis, they respectfully submit that such efforts to comply with the Court's Orders are made without prejudice to their position that they neither control the Eskenazis nor have the practical ability to obtain discovery from them. They further submit that their efforts to compel them, both in Argentina and in this Court, are conclusive evidence that Plaintiffs are unable to obtain the discovery without assistance from judicial authorities. *See Coventry Capital US LLC v. EEA Life Settlements, Inc.*, 439 F. Supp. 3d 169, 171 (S.D.N.Y. 2020) (reconsidering control finding in light of "more developed factual record"); *In re Application of Potanina*, 2015 WL 4476612, at *2 (S.D.N.Y. June 30, 2015) (Preska, J.) (similar). It is Plaintiffs' hope that the Argentine letters rogatory proceedings, which are described in this report and are ongoing, will provide all the necessary discovery, even though Plaintiffs have taken independent steps to seek the discovery informally and through third-party subpoena as well.

[15] It is worth noting the Kafkaesque nature of the letters rogatry process here, in which the Republic sought the letters rogatory requesting orders directing the Republic itself to do things.

- ███████████████████████████████████████████████

  ███████████████████████████████████████████████

  ██████████████████████████

- As a further protection, in case ████████████████ is not viewed as sufficient by the Court, Plaintiffs took the additional step of serving the key Eskenazi witness (Sebastián, the former CEO of YPF) with a third-party subpoena today, when he traveled into the United States from Argentina.  We did so to bring discovery from him under the supervision of the Court, so that there can be no dispute as to the sufficiency of the discovery provided.  Plaintiffs are concerned that Defendants do not seek discovery, but rather discovery fights, to be used tactically to avoid addressing the merits of the case.  Putting Mr. Eskenazi under subpoena will ensure that Defendants receive whatever discovery the Court decides is required.

- Plaintiffs continue to work with the Eskenazis' counsel to obtain voluntary cooperation, in the hope that further compulsion will not be required.  Plaintiffs have proposed an extension of the discovery schedule so that the discovery can be completed appropriately.

- We respectfully request that Mr. Reisberg be ordered to appear at the February 18 conference so that he can address the Court on the status of discovery from his clients.

To provide more detail:

The day after the December 22 conference, Plaintiffs proposed that Plaintiffs, Defendants, and Mr. Reisberg meet and confer to discuss the most efficient way for the Eskenazis to appear for deposition and produce documents.  *See* Ex. 17.  There followed a

13

lengthy exchange of emails and letters, during which Plaintiffs repeatedly encouraged the Eskenazis to cooperate and agreed to pay the reasonable costs of a vendor to assist them in producing documents.  *See* Exs. 18, 19.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

On January 14, 2021, Mr. Reisberg wrote to the parties that his clients are not parties to this litigation or subject to the jurisdiction of this Court.  *See* Ex. 20.  He reported, however, that his clients were "willing to cooperate on a voluntary basis in providing certain of the documents and testimony requested in the Letters Rogatory and the Document Requests, provided their legal rights are protected."  *Id*. at 2.

On January 20, 2021, the parties and Mr. Reisberg finally held the meet and confer telephone call Plaintiffs had proposed.  During that call Mr. Reisberg said that he was still evaluating the volume of his clients' documents.  He agreed to report back to the parties with that information, and Defendants agreed to propose search terms the Eskenazis could use if the volume of documents required it.



On January 23, 2021, Mr. Reisberg proposed to the parties that an agreement be entered adjourning the Argentine proceedings, "the goal being to provide us with the time needed to respond to the requests for documents and requests for testimony."  Ex. 21.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

The parties and the Eskenazis then exchanged a series of draft stipulations to be filed in this Court seeking an extension of the discovery deadline.  *See*, *e.g.*, Ex. 22.  However, Mr. Reisberg informed the parties that the Eskenazis remained unwilling to be subject to the supervision of this Court, and that the Eskenazis "will provide such documents and testimony as is required by the Courts in Argentina pursuant to the Letters Rogatory, subject to the assertion of all legal rights and privileges."  Ex. 23.  Plaintiffs and Defendants nonetheless reached agreement on a draft stipulation that would have committed the Eskenazis to providing discovery in the United States and extended the case schedule accordingly, *see* Ex. 24, but Mr. Reisberg never responded further.  We have asked Mr. Reisberg to attend the status conference, but it is not clear to us if he will do so voluntarily, and we thus ask the Court to order his attendance.

Despite Mr. Reisberg's informing the parties that the Eskenazis would comply with the letters rogatory, the following day (February 3, 2021) ████████████████████████████████

15





In light of the uncertainty whether ███████████████████████████ ███, Plaintiffs served Sebastián Eskenazi with subpoenas for documents and testimony on February 11, 2021, during a layover in Miami. The subpoenas call for document production on February 26, 2021, and a deposition on March 1, 2021.

## IV. Discovery Schedule

Given the above, Plaintiffs propose an extension of the remaining deadlines resulting in the following schedule:

| | |
|---|---|
| February 18, 2021 | Status Conference – 10 a.m. EST |
| March 12, 2021 | Document Discovery Closes |
| March 19, 2021 | Fact Discovery Closes |
| April 23, 2021 | Opening Expert Reports Due[16] |
| May 28, 2021 | Rebuttal Expert Reports Due |
| June 2, 2021 | Status Conference – 10 a.m. EDT |

---

[16] Both Plaintiffs and Defendants may serve reports during each of the three report phases (opening, rebuttal, and reply); and a party's "opening" reports need only address issues on which that party bears the burden of proof.

17

| | |
|---:|---|
| June 11, 2021 | Reply Expert Reports Due |
| July 2, 2021 | Expert Discovery Closes |
| July 23, 2021 | Motions For Summary Judgment Due |
| August 27, 2021 | Oppositions to Motions for Summary Judgment Due |
| September 17, 2021 | Replies in Support of Motions for Summary Judgment Due |
| November 2021 | Trial |

DATED:  February 11, 2021  By:  */s/ Mark C. Hansen*

| | |
|---|---|
| Israel Dahan<br>Laura E. Harris<br>KING & SPALDING LLP<br>1185 Avenue of the Americas<br>New York, New York 10036<br>Phone: (212) 556-2114<br>Fax: (212) 556-2222<br>Email: idahan@kslaw.com<br>Email: lharris@kslaw.com<br><br>Reginald R. Smith *(pro hac vice)*<br>KING & SPALDING LLP<br>1100 Louisiana Street<br>Houston, Texas 77002<br>Phone: (713) 751-3200<br>Fax: (713) 751-3290<br>Email: rsmith@kslaw.com | Mark C. Hansen<br>Derek T. Ho<br>Andrew E. Goldsmith<br>KELLOGG, HANSEN, TODD,<br>  FIGEL & FREDERICK, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Phone:  (202) 326-7900<br>Fax:  (202) 326-7999<br>Email: mhansen@kellogghansen.com<br>Email: dho@kellogghansen.com<br>Email: agoldsmith@kellogghansen.com |

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*