**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA,
S.A.U. and PETERSEN ENERGÍA, S.A.U.,

        Plaintiffs,

        v.

ARGENTINE REPUBLIC and YPF S.A.,

        Defendants.

Case No.:  1:15-CV-02739 (LAP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - x


- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT,
L.P., ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

        Plaintiffs,

        v.

ARGENTINE REPUBLIC and YPF S.A.,

        Defendants.

Case No.:  1:16-CV-08569 (LAP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANTS' REPORT REGARDING STATUS OF DISCOVERY AND RESPONSE TO PLAINTIFFS' FEBRUARY 11, 2021 PRE-MOTION CONFERENCE SUBMISSION

### PRELIMINARY STATEMENT

Defendants the Argentine Republic ("the Republic") and YPF S.A. ("YPF") respectfully make this submission (i) to respond to Plaintiffs' February 11 "Pre-Motion Conference Letter and Report Regarding Status of Discovery" (*Petersen* ECF No. 278-1) (the "Submission"); (ii) to provide a status report regarding Plaintiffs' continued noncompliance with the Court's Orders compelling Plaintiffs to produce "documents in the possession, custody, or control of the Eskenazi family," and to "make the Eskenazis available for deposition" (*see Petersen* ECF Nos. 219, 252); (iii) to provide an update on Defendants' document productions; and (iv) to

request a further 90-day limited extension of the February 15, 2021 fact discovery deadline (and the remaining case deadlines) to allow for all necessary discovery to be completed.

In their Submission, Plaintiffs try to distract from their own discovery failures by raising complaints about Defendants' document productions that are misplaced and not ripe for the Court's resolution.  Defendants are working hard in good faith to complete discovery as promptly as possible in the middle of the COVID-19 pandemic.  The only dispute that actually requires the Court's intervention concerns the length of the extension of fact discovery.  On February 11, Plaintiffs inexplicably reneged on what Defendants thought was the parties' agreement to jointly request a 60-day extension.  Instead, Plaintiffs submitted their own "letter" to the Court requesting only a 30-day extension, without even meeting and conferring with Defendants about their latest proposal.  Here is the status of fact discovery:

*First,* the Petersen Plaintiffs have failed to comply with the Court's November 23 and December 28 Orders that they produce the Eskenazis' documents and make the Eskenazis available for deposition.  (*Petersen* ECF No. 219 at 2; ECF No. 252 at 4.)  To date, Plaintiffs have produced *no documents* from the Eskenazis, even though the Eskenazis' own counsel agreed in December and January to cooperate and provide discovery in the *Petersen* action and represented in meet and confer calls with both Defendants and Plaintiffs that the Eskenazis had potentially tens of thousands of responsive documents.  As explained below, the Eskenazi document production stalled after Plaintiffs sought to impose an unrealistic two-month discovery deadline on the Eskenazis and to require the Eskenazis to sign a stipulation calculated to allow the Plaintiffs to wash their hands of any ongoing obligation to ensure compliance with this Court's Orders.  (*See* Pls. Ex. 22; Ex. 1 (Feb. 12, 2021 Ltr. from S. Reisberg) at 2-3.)  Thus far, Defendants have obtained only very limited testimony from the Eskenazis through the Hague process.  This testimony consisted mostly of "I don't know" and "I don't remember" answers.  But that testimony did make

one thing clear—the Petersen Plaintiffs have failed to take even the most basic steps to preserve and gather evidence in the hands of their owners.  Burford hopes the Court will overlook its fundamental failure to gather—and then preserve—the relevant evidence here, and to award it a windfall of more than $1 billion on its €15 million "investment" without the benefit of a full factual record.

*Second*, Plaintiffs make baseless claims that Defendants have engaged in "obstructionism" over their document productions.  (Submission at 3.)  The Republic has undertaken additional searches in light of various issues that Plaintiffs belatedly raised—only after this Court ordered them to produce the Eskenazis' documents—and was in the process of responding to many of the issues raised in Plaintiffs' Submission when Plaintiffs made their filing. Plaintiffs failed to raise most of their complaints with YPF in advance of their filing.  In any event, as Plaintiffs' own exhibits make clear, Defendants have responded to Plaintiffs' recent letters seeking to manufacture disputes to provide Plaintiffs with cover for their own discovery shortcomings.  (*See*, *e.g.*, Pls. Exs. 3, 6, 8.)  Defendants have been transparent about their discovery efforts, including through Rule 30(b)(6) testimony, whereas Plaintiffs have hidden the facts behind a cloak of privilege, improper instructions not to answer, and refusals to comply with this Court's rulings.

*Third*, the Court should reject Plaintiffs' proposed one-month fact discovery extension.  In light of the significant discovery that remains outstanding—Plaintiffs' production of the Eskenazi discovery, discovery from Burford and Repsol, Defendants' document

productions, and additional depositions—the Court should enter a 90-day extension to ensure that the factual record is complete.[1]

## THE STATUS OF DISCOVERY

**I.    The Court Should Require the Petersen Plaintiffs To Comply With the Court's November 23 and December 28 Orders.**

Nearly three months ago, on November 23, 2020, the Court ordered the Petersen Plaintiffs to produce "documents in the possession, custody, or control of the Eskenazi family" and to "make the Eskenazis available for deposition." (*Petersen* ECF No. 219 at 2.) To date, Plaintiffs have failed to do so. To the contrary, Plaintiffs instead thwarted and obstructed the production of this evidence. (*See* Pls. Ex. 23 (Feb. 2, 2012 Ltr. from S. Reisberg).)

As this Court recognized in its December 28 Order, "the Eskenazis' lawyer miraculously surfaced" right after the November 23 Order "and offered to negotiate to effect a voluntary production of documents." (*Petersen* ECF No. 252 at 4 n.1; *Eton Park* ECF No. 192 at 4 n.1.) The parties then proceeded to meet and confer. By January 14, the Eskenazis' counsel had finally agreed to review and produce the Eskenazi documents in the *Petersen* action and to make Sebastián Eskenazi, Matías Eskenazi Storey, and Ezequiel Eskenazi Storey available for deposition, subject to certain conditions, including that "the Plaintiffs and the Defendants agree [to] an extension" of the fact discovery schedule and an adjournment of the Hague proceedings in Argentina. (*See* Pls. Ex. 20 at 2-3.) The Eskenazis' counsel represented that the Eskenazis had potentially tens of thousands of responsive documents in their possession that they were willing to

---

[1]    In addition, as discussed further below, despite months of requests from YPF, Plaintiffs have so far failed to obtain the Eskenazis' consent to allow YPF to review documents the Eskenazis generated while they led the company. Defendants' expectation that a 90-day extension will be sufficient assumes that the requested consents are promptly forthcoming.

review and produce, indeed intended to engage "a third party consultant to assist counsel in the review and collection" of the requested documents (Ex. 2 (S. Reisberg Jan. 8 Ltr.) at 1), and needed more than 60 days to do so.

While Defendants agreed to the Eskenazis' requests, the Petersen Plaintiffs demanded a firm 60-day deadline for the Eskenazis to complete discovery and, notwithstanding the Court's Orders, sought to shift responsibility for compliance entirely to the Eskenazis.  (*See* Pls. Ex. 22 (Feb. 2 Ltr. from M. Hansen) at 1-2.)  The Eskenazis' counsel then wrote to the parties that "Plaintiffs have put conditions on the requested stipulation and order that are not acceptable to the Eskenazis."  (*See* Pls. Ex. 23 (Feb. 2 Ltr. from S. Reisberg) at 1; *see also* Ex. 1 (Feb. 12 Ltr. from S. Reisberg) at 2-3.)  It appears that Plaintiffs had no particular interest in obtaining the court-ordered discovery, but were hoping that by imposing roadblocks they would ultimately be let off the hook, and that this Court would be satisfied with the very limited testimony obtained by the Defendants' Hague process.  Whatever the reasons, the fact remains that Plaintiffs have so far failed to comply with the Court's two Orders that they produce the Eskenazis' documents and produce them for deposition, and "completely disrupted" the Eskenazis' counsel's proposal for a voluntary production of documents and testimony from the Eskenazis. (Ex. 1 (Feb. 12 Ltr. from S. Reisberg) at 3).

In parallel, consistent with its representations to this Court, the Republic continued to diligently pursue the Hague letters rogatory as an alternative (albeit insufficient) means of obtaining (much more limited) discovery from the Eskenazis.  On January 8, 2021, the Argentine court granted the Republic's request to lift the January judicial holiday in order to expedite the Hague proceedings and ordered that "a hearing shall be arranged for the . . . testimony" of the Eskenazis to be taken on February 5, with no advance production of documents.  (*See* Ex. 3 at 2.) In accordance with the Eskenazis' counsel's request, and with the parties' tentative agreement that

production of documents would proceed followed by depositions, the Republic on January 27 requested that the Argentine court postpone the Hague proceedings. (Ex. 4.) The Argentine court, confirming its independence from the executive branch, denied the adjournment request, noting this Court's February 15, 2021 fact discovery deadline. (Ex. 5.) Thereafter, despite repeated requests, Plaintiffs refused to agree with Defendants' reasonable request for an extension of the fact discovery deadline to allow for the Eskenazis' document production to occur *prior* to their testimony. (Exs. 6-9.)

On February 10, pursuant to the letters rogatory under the Hague Convention, the Eskenazis provided testimony before the Argentine court, with the four members of the Eskenazi family questioned over a single day through the Argentine court with limited follow-up— uninformed by any documents—by the Republic's and YPF's Argentine (not U.S.) counsel. The Eskenazis explained that they could not produce any documents prior to or at the hearing in the time permitted, and said that, if they had had more time, they had proposed to engage a third-party e-discovery vendor to assist in recovering their documents. (Ex. 10 at 1-2.) The Argentine court has since made clear that, under Argentine procedures, it cannot compel the production of the documents. (Ex. 11 (Argentine Court Feb. 12 Order) at 4.) The Republic repeatedly requested that the Argentine court permit further testimony once the documents were available, but the court denied those requests. (*See* Ex. 12 (Minutes from Testimony of Enrique Eskenazi) at 6.)

The Eskenazis' limited testimony in Argentina bore no resemblance to what is permitted under the Federal Rules of Civil Procedure. Without their documents to refresh their recollections, the Eskenazis repeatedly testified to a lack of memory or knowledge on virtually every subject. Because of restrictions imposed by the pandemic, Defendants' U.S. lawyers were not permitted to attend the in-person testimony of two of the witnesses at all; as to the other two, U.S. counsel could listen in on the proceedings conducted virtually, but could not ask questions.

Pursuant to the Argentine court's ruling, all questioning and testimony was conducted in Spanish, and no translators were permitted to participate, which meant that non-Spanish speaking U.S. lawyers could not meaningfully participate in the process. The Argentine Court conducted the questioning, and Argentine counsel were permitted to follow up within the one-day time constraint and without documents ordinarily available in the United States for cross-examination.

The limited testimony obtained from the Eskenazis confirms the importance of obtaining a complete record. Sebastián Eskenazi testified, for example, that at the time of the intervention and expropriation Petersen "made the decision not to sue Argentina." (Ex. 13 (Minutes from Testimony of Sebastián Eskenazi) at 14.) Mr. Eskenazi's admission explains why Petersen never made any demand that the Republic comply with its supposed obligations under YPF by-laws at the time of the expropriation nor pursued any remedies available under Argentine law for the supposed breach of those by-laws, and did not preserve documents. It was not until 2015—when Burford purchased Petersen's claims and brought this litigation (from which the Eskenazis stand to benefit)—that Petersen alleged the right to any recourse directly against the Republic.

Moreover, Sebastián Eskenazi made clear that at no time did anyone on Plaintiffs' side—the Eskenazis, the Petersen Plaintiff entities or Burford—take any steps to ensure that documents relating to Petersen's decision not to sue the Republic, or any other matters relating to the Eskenazis' investment in YPF, were preserved as required to bring this litigation in the United States. Sebastián Eskenazi testified that he was unaware of any policy to preserve emails or other documents of the Petersen Group. (Ex. 13 (Minutes from Testimony of Sebastián Eskenazi) at 7.)

At the same time, Sebastián Eskenazi claimed that the Eskenazis were prepared to cooperate.[2]  Yet, the Petersen Plaintiffs offer no explanation for why they have not, since they first decided to bring this suit in 2015—including since being ordered by this Court to do so—obtained the evidence needed to prosecute their claims.  The reason is simple.  As a matter of Argentine law, these are not legitimate claims with respect to the intervention and expropriation.  Those were settled by the Republic in accordance with Argentine law for $5 billion in 2014.[3]

As recent events have confirmed, this case is an attempt by a litigation funder to obtain a "jackpot" on belated claims never pursued by the principals—the Eskenazis—at the time of the supposed "wrongdoing."  Plaintiffs would like to have this case proceed with no documents from the Eskenazis and their essentially untested lack of recollection.  Since the testimony on February 10, the Eskenazis' counsel has again written to Plaintiffs' counsel confirming that the Eskenazis "remain committed to cooperat[ing]" with Plaintiffs to provide the discovery sought, provided that Plaintiffs withdraw the separate subpoena they served on February 11 and agree to reimburse the costs of providing this discovery.  (Ex. 1 (Feb. 12, 2021 Ltr. from S. Reisberg) at 4.)  Plaintiffs have so far declined to withdraw the subpoena.  (Ex. 14 (Feb. 17, 2021 Ltr. from M. Hansen) at 2.)

Finally, there is no support for Plaintiffs' renewed request (Submission at 12 n.14) —their third—that the Court reconsider its Orders compelling Plaintiffs to produce the Eskenazis' documents and to make the Eskenazis available for deposition.  Supposed bickering between

---

[2]     The testimony was recorded in minutes that the Argentine court created and videotaped, copies of which have been delivered to the parties.  The court is transmitting the original minutes and video (all of which are in Spanish) to this Court through the Ministry of Foreign Affairs.

[3]     *See* "Spain's Repsol agrees to $5 billion settlement with Argentina over YPF," Reuters (Feb. 25, 2014), available at https://www.reuters.com/article/us-repsol-argentina-idUSBREA1O1LJ20140225.

Plaintiffs' counsel and the Eskenazis' counsel regarding the timing of production and separate appearance by the Eskenazis is not a basis for reconsideration of this Court's Orders, particularly when the Eskenazis have repeatedly stated that they will cooperate with Plaintiffs and stand to benefit from a judgment in Petersen's favor.  By attempting to persuade this Court that the limited testimony and complete lack of document production through the Hague process is "good enough," Plaintiffs seek to avoid the consequences of their own failure to collect and preserve documents relating to the central issues in this case.

At this point, Defendants submit that there is nothing for this Court to do but to order Plaintiffs to comply with the Court's prior Orders that the Plaintiffs produce the Eskenazis' documents, as the Eskenazis have repeatedly offered to do, produce the Eskenazis for depositions under the Federal Rules, and extend fact discovery in order to allow that process to be completed.

## II.    Defendants Have Complied With Their Discovery Obligations.

### A.  Clarification of the Status Regarding YPF's Custodian Consents.

Plaintiffs' decision to raise the custodian consent issue with the Court was unnecessary and premature.  As YPF has repeatedly informed Plaintiffs, YPF is not withholding any documents on the basis of privacy protections afforded by Argentine law.  (*See, e.g.*, Pls. Ex. 6 (Nov. 5 Ltr. from D. Hernández) at 1; Pls. Ex. 8 (Jan. 6 Ltr. from M. Goodman) at 1-2.)  Instead, YPF has appropriately sought the consent of document custodians prior to producing their documents, consistent with Argentine law.[4]  In accordance with YPF's commitments in the

---

[4]    Plaintiffs' assertion that "YPF has identified nothing in Argentine law . . . that supports its position" regarding consent (Submission at 6) is inaccurate.  YPF's counsel informed Plaintiffs' counsel months ago that "provisions of the Argentine Constitution and Argentine general law . . . provide safeguards for the privacy of employee email communications, including Articles 18 and 19 of the Argentine Constitution; Articles 153, 153bis and 155 of the Argentine Criminal Code; and Article 1770 of the Argentine Civil and Commercial Code."  (Pls. Ex. 6 (Nov. 5 Ltr. from D. Hernández) at 1; Pls. Ex. 8 (Jan. 6 Ltr. from M. Goodman) at 1-2.)  But there is no need for the

November 5 and January 6 Letters, and during a January 20 meet and confer call among all parties, YPF is in the process of producing documents on a rolling basis from the files of custodians who have provided consent. As Plaintiffs acknowledge, YPF produced email correspondence and other electronic documents from the files of four custodians on January 15, 2021 and February 5, 2021. (*See* Submission at 5-6.) YPF made another production of custodial email files this morning, including documents from an additional custodian, and will continue producing the remaining documents on a rolling basis. At present, YPF does not expect to withhold any documents based on a failure to receive consent from any of the seven custodians who are not affiliated with Plaintiffs/the Eskenazis.

The custodians affiliated with Plaintiffs/the Eskenazis, however, have for months failed to respond to YPF's requests for consent, notwithstanding the Court's November 23 Order requiring the Petersen Plaintiffs to produce the Eskenazis' documents. (*Petersen* ECF No. 219 at 2.) Since at least October 2020, YPF has been asking Plaintiffs to coordinate with these custodians, including Mauro Dacomo and the four Eskenazis, to obtain their consent for YPF to review and produce email correspondence from their former YPF files, which are in YPF's possession. (*See, e.g.*, Ex. 15 (Oct. 30 Ltr. from D. Hernández); Pls. Ex. 6 (Nov. 5 Ltr. from D. Hernández); Pls. Ex. 8 (Jan. 6 Ltr. from M. Goodman).) On January 12, 2021, after learning that the Eskenazis and Mr. Dacomo had retained Chaffetz Lindsey LLP ("Chaffetz") as counsel in connection with this matter, YPF's counsel contacted Chaffetz and requested that Chaffetz return consent forms to YPF's counsel for the aforementioned five individuals by January 19. (Ex. 16 (Jan. 12 Ltr. from M. Goodman).) In response to questions from YPF's counsel on this issue during the Hague

---

parties to debate, or the Court to analyze, the effect of these laws at this time because a dispute over consent is premature. To date, no custodian has informed YPF that he or she will not provide consent.

proceedings, Sebastián Eskenazi stated that he had offered total collaboration with regard to these proceedings and that the consent issue was being handled by his counsel. Matías Eskenazi gave similar testimony. Despite repeated assurances (*e.g.*, Ex. 17 (Jan. 29 Email from S. Reisberg)), YPF has not only not received the requested consents but has received no additional information as to why the Eskenazis and those affiliated with them continue to refuse to confirm their consent for YPF to review and produce their documents.

If the need for consent were as meaningless under Argentine law as Plaintiffs have suggested, the Eskenazis and Mr. Dacomo, through Plaintiffs' counsel or their own counsel, should have months ago provided the consents requested by YPF or informed YPF that they do not believe such consents are required. YPF remains ready to review and produce responsive, non-privileged documents from these custodians' YPF files once their consents are received. The delay with respect to production of these documents is entirely attributable to the failure of Plaintiffs and the Eskenazis to secure the repeatedly requested consents.

**B. YPF's Document Production**

Plaintiffs misrepresent the status of YPF's document production, mischaracterize YPF's positions regarding various aspects of the review and production process, and request that the Court issue discovery orders regarding purported disputes that do not exist. For example, it is entirely inaccurate to assert that YPF has refused to produce responsive non-privileged documents, has refused to produce a privilege log, or has refused to provide information regarding its document collection. Nor is it true that YPF is "withholding" documents from production on the basis of Argentine law or that the "vast majority" of documents YPF has produced to date are merely "public SEC filings." (Submission at 5-6.)

To the contrary, YPF has obtained or is in the process of finalizing consents to review and produce emails from the relevant document custodians not affiliated with Plaintiffs/the

Eskenazis, has produced and is continuing to produce custodian emails, board meeting minutes, and other responsive documents on a rolling basis (including an additional production this morning) and currently expects to complete its document production by the end of March.  The only exception to this schedule involves the documents in YPF's possession that are in files of the custodians affiliated with Plaintiffs/the Eskenazis, from whom YPF has urgently and repeatedly sought consent for months, as discussed above.

      To be clear, YPF repeatedly and consistently has made clear to Plaintiffs that, with the possible exception of the Eskenazi documents and other Plaintiff-affiliated custodians in regard to which consent has not yet been provided, it does not expect or intend to withhold responsive, non-privileged documents from production on the basis of Argentine law.  (*See, e.g.,* Pls. Ex. 6 (Nov. 5 Ltr. from D. Hernández) at 1; Pls. Ex. 8 (Jan. 6 Ltr. from M. Goodman) at 1-2.)  YPF has not yet produced a privilege log because YPF's document review—including review of privileged documents—remains ongoing.  YPF fully intends to comply with its obligation to provide a log of all responsive documents redacted or withheld from production on the basis of privilege and/or work product.  Finally, YPF is willing to identify "custodians, search terms, date ranges, and other parameters used to collect documents," pursuant to a mutual exchange with Plaintiffs.  (*See* Submission at 7.)  Plaintiffs have not agreed to such an exchange.

      In short, the relief requested by Plaintiffs with respect to YPF's document production is not necessary to address any current discovery dispute regarding YPF's production, is a waste of the Court's limited time and resources, and is part and parcel of Plaintiffs' broader attempts to self-servingly mischaracterize the status of fact discovery to distract from their sabotage of efforts to obtain discovery from the Eskenazis and their affiliates, in defiance of this Court's prior Orders.  (*Petersen* ECF No. 219 at 2; ECF No. 252 at 4.)

## C.  The Republic's Document Production

To try to excuse their own discovery failures, Plaintiffs make baseless accusations about the Republic's document production.  The record flatly contradicts Plaintiffs' claims that it is the "Republic's view" that "its production need only include 'administrative' files" (Submission at 5), and that the Republic "has refused to provide even basic information" about its document collection and production (Submission at 4).

Plaintiffs took a 30(b)(6) deposition specifically on document collection, and María Alejandra Etchegorry, the Republic's witness, testified that the Republic ███████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Ex. 18 (Oct. 30, 2020 30(b)(6) Etchegorry Tr.) at 19:10-19; *see also id.* at 21:16-18 ████████████████████ ██████████████████████████████████████████████; *see also Petersen* ECF No. 194-5 (Etchegorry Decl.) ¶ 2).)  And the Republic has also made clear that it is conducting broad searches in its prior correspondence with Plaintiffs.  (*See, e.g.*, Ex. 19 (Dec. 10 Ltr. from E. Cassady) at 2 ("As we have explained many times—and as Plaintiffs' 30(b)(6) notice acknowledges—most of the documents relevant to this matter are stored in hard copy.  To be clear, the Republic has endeavored to search for and collect from numerous government entities both hard copy and electronic documents, including email.").)

The Republic has taken the extraordinary step of searching for and restoring back-up tapes that may contain potentially responsive email and electronic documents.[5]  In November

---

[5]     *See Zubulake* v. *UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("As a general rule, [a] litigation hold does not apply to inaccessible back up tapes (*e.g.,* those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the

2020, the Republic learned that back-up tapes containing data from the former Ministry of Federal Planning (a ministry that no longer exists) were located at a telecommunications company owned by the Republic, *Empresa Argentina de Soluciones Satelitales* ("ARSAT").  ARSAT is in the process of restoring samples of tapes to determine whether email mailboxes exist for relevant individuals during the relevant period; the email mailboxes of Julio De Vido and Roberto Baratta were located on the first batch of data; outside counsel is reviewing and producing documents responsive to Plaintiffs' requests on a rolling basis.  Last month, the Republic produced electronic documents from back-up tapes located by the Ministry of Economy ("MECON").

        In addition, the Republic was recently granted access to certain potentially relevant back-up tapes from MECON in the possession of an Argentine criminal court in connection with an unrelated investigation.  Specifically, on January 21, 2021, nearly a year after MECON first asked for the return of these tapes in connection with an unrelated case, the Argentine criminal court issued an order instructing such tapes to be delivered to the Ministry so that their contents could be examined.  (Ex. 20.)  The tapes were delivered on January 25.  The MECON tapes cover the period November 2013-December 2015, so the earliest back-up tape may contain responsive material relating to the events at issue in this case, which largely occurred in 2012.  MECON has now restored that tape, and the Republic is in the process of searching for responsive email.[6]

---

schedule set forth in the company's policy."); *Rowe Entm't, Inc.* v. *William Morris Agency, Inc.*, 205 F.R.D. 421, 429 (S.D.N.Y. 2002) ("Back-up tapes, for example, are not archives from which documents may easily be retrieved.  The data on a back up tape are not organized for retrieval of individual documents or files, but for wholesale, emergency uploading onto a computer system.") (internal quotations omitted).

[6]        Neither the ARSAT nor the MECON back-up tapes have an index, and it is not possible to determine the contents of any particular tape without restoring the entire tape.

Regarding individual custodians, Plaintiffs' claim that Defendants have not "identifi[ed] . . . custodians included in the Republic's collection" (Submission at 4) ignores the fact that, as noted above, "the majority of responsive documents are contained in the administrative files (*which are not maintained by custodian*)."[7]  (Pls. Ex. 3 (Jan. 15 Ltr. from E. Cassady) at 3 (emphasis added).)  Nevertheless, the Republic two months ago confirmed to Plaintiffs that it was searching for the email of the government officials identified on both parties' initial disclosures— Julio De Vido, Roberto Baratta, Axel Kicillof, Hernán Lorenzino, and Alejandro Vanoli.  (*See* Ex. 19 (Dec. 10 Ltr. from E. Cassady) at 1-2.)  Plaintiffs first raised on December 2, well after the initial fact-discovery cut-off and long after the Republic's searches were well underway, a demand that the email and documents of additional custodians be searched for.  (*See* Pls. Ex. 5 at 2 n.1.) While Defendants reject that Plaintiffs have the right to now seek to negotiate search terms and custodians when the Republic is close to concluding its production, the Republic has gone back to the relevant Ministries and entities to determine whether email exists for those individuals identified in Plaintiffs' December 2, 2020 letter that were officials or employees of those Ministries and entities.[8]

Regarding Plaintiffs' request that the Republic be ordered to produce its search terms and other search parameters "within 24 hours" (Submission at 5), Plaintiffs conveniently omit that the Republic offered a mutual exchange of search terms as recently as January 15 (*see*

---

[7]    Plaintiffs' assertion that the Republic has produced "administrative files" that are "heavily curated" (Submission at 5) is also incorrect.  The Republic has produced complete administrative files as they are kept in the ordinary course.

[8]    Those inquiries are ongoing.  As noted, email mailboxes of two individuals on the initial disclosure lists (Julio De Vido and Roberto Baratta) have been located in the back up tapes described above.  Many of the individuals identified in Plaintiffs' December 2 letter were not officials or employees of the Republic at all, so the relevant Ministries or departments would not be expected to have email mailboxes for them.

Pls. Ex. 4 (Jan. 15 Ltr. from E. Cassady) at 3), but Plaintiffs rejected this offer (*see* Ex. 21 (Jan. 26 Ltr. from L. Harris) at 2). Like YPF, the Republic remains willing to carry through with a mutual exchange.

Finally, the Republic is producing a privilege log this week covering productions already made—as it was preparing to do prior to Plaintiffs' premature and improper request for relief from the Court.

### D.  Document Production from the Republic and YPF Relating to the Eskenazis

Defendants have already told Plaintiffs that they will conduct a reasonable search for and (have or will) produce documents responsive to Plaintiffs' document requests, including Request Nos. 17-21 (the Republic) and 18-20 and 25 (YPF), subject to the objections set forth in Defendants' respective Responses and Objections. (Exs. 22, 23.) Defendants have also confirmed to Plaintiffs that they are searching for and have (or will) produce documents relevant to Defendants' affirmative defenses.

Plaintiffs' claim (Submission at 10) that Defendants have refused to produce an investigative file, including an interdisciplinary study ordered by the presiding judge in a criminal case related to YPF, is once again false. As the Republic explained in a January 15 letter (Pls. Ex. 3 (Jan. 15 Ltr. from E. Cassady) at 3-4), Defendants understood that Plaintiffs ***already had*** the YPF-related investigation file because Plaintiffs' expert, Alejandro Freeland, relied on that file extensively in supporting Plaintiffs' opposition to Defendants' motion to dismiss on grounds of *forum non conveniens* (*Petersen* ECF No. 131). Indeed, the file itself indicates that Petersen entities were given full access almost a year before Professor Freeland filed his declaration. (*Petersen* ECF No. 155 ¶ 49.) In order to respond to the Freeland declaration, the Republic likewise had to request access—an option equally available to Plaintiffs—and made copies of the

file at that time for that purpose.[9]  Based on Plaintiffs' representation in a January 26 letter that it does not have the complete file, the Republic on February 12 produced the copy it made in connection with the FNC briefing.  Again, Plaintiffs fired off their letter to the Court without waiting for the Republic's response, which we had advised Plaintiffs was forthcoming.

Plaintiffs' reliance on press reports and Twitter (Submission at 8-10) to suggest that the Defendants should have responsive documents from the Eskenazis illustrates the spurious nature of Plaintiffs' claims of non-compliance.  The Republic has conducted broad searches concerning the Eskenazis' acquisition of YPF shares and subsequent management of YPF.  YPF stands ready to review emails it has from the time when the Eskenazis were employed by YPF as soon as the Eskenazis provide the long-sought consents.  But the Petersen Plaintiffs, which were created by and are owned by the Eskenazis, have failed over a period of years to preserve or produce documents in the possession of the Eskenazis and Petersen Group concerning the Eskenazi/Petersen investment in YPF in 2007-2012, the Eskenazi family's role in YPF from 2008-2012 and the events of 2012-2014 between the intervention and the expropriation.[10]  The Eskenazis' counsel has explained that the Eskenazis may hold tens of thousands of responsive documents requiring an electronic discovery vendor—and adequate time—to properly collect.

---

[9]      While the Republic copied the file, it did not copy all related documents.

[10]     Plaintiffs' assertion that "the documents sought by Defendants from the Eskenazis" are "all in Defendants' custody and control" because Sebastián Eskenazi testified in the Argentine proceeding that he used an email address provided by YPF (Submission at 10) is obviously untenable.  Even putting aside the fact that neither Plaintiffs nor the Eskenazis have yet provided consent for YPF to review and produce their documents from their YPF email addresses, that leaves a gaping hole regarding the critical time periods **before** Petersen acquired its shares in YPF (and Sebastián would have been given a YPF email address) or **after** Sebastián Eskenazi was no longer associated with YPF.  The documents from the Eskenazis, which the Court has ordered Plaintiffs to produce, should fill that hole.

III.    **The Court Should Order a Further Limited Extension of the Fact Discovery Deadline To Allow for the Completion of Essential Fact Discovery.**

At the December 22, 2020 hearing, the Court rightly expressed skepticism regarding Plaintiffs' "ambitious" discovery deadlines and the parties' proposed schedule.  (Ex. 24 (Dec. 22, 2020 Hearing Tr.) at 14:23-15:2.)  As events have shown, including Plaintiffs' failure to comply with their own discovery obligations, the Court's skepticism was well founded.  Indeed, Plaintiffs on January 15 proposed a 60-day extension, to which Defendants agreed.  Despite this agreement to Plaintiffs' proposal, Plaintiffs waited until February 11 (the day they filed their Submission with the Court) to shorten their proposed extension to 30 days.

At this point, Defendants urge the Court to extend the fact discovery deadline by 90 days, with corresponding extensions of the remaining deadlines, so that a full and fair record can be developed in this case where Plaintiffs seek more than $1 billion in damages.  While the parties had previously discussed a 60 day extension, the Eskenazis' counsel has already made clear that such an extension is not sufficient to complete the Eskenazis' document production and deposition testimony.  It is not realistic—and would not be fair to Defendants—to require that outstanding fact discovery be completed in the 30 days proposed by Plaintiffs:

1. **Petersen Plaintiffs' Production from the Eskenazis Has Not Yet Even Begun.** As shown above, as a result of the Petersen Plaintiffs' actions, production of documents from the Eskenazis has not occurred.  The Eskenazis' counsel has indicated that he expects document production to take *more than 60 days* to complete, and depositions should be scheduled after that.[11]

---

[11]    Defendants intend to complete the deposition of Plaintiffs' representative as ordered by the Court upon substantial completion of document productions.  Plaintiffs' request to schedule additional 30(b)(6) testimony from Defendants (Submission at 11) disregards that the parties had scheduled, and the Defendants were prepared to provide, this testimony on November 16, 2020.  Plaintiffs abruptly cancelled the scheduled depositions in the fall after the discovery period

18

2.  **Burford Has Not Completed Its Production.** Burford has produced approximately 700 documents.  On February 12, Burford represented that it expects to complete its production by March 5, 2021, but the parties have still not reached final agreement on the scope of Burford's production.

3.  **The Repsol Production.** YPF's letters rogatory to Repsol, which were delivered to the authority in Spain on November 16, 2020, remain outstanding.  YPF has not yet received any update from the Spanish authorities regarding the status of the requests or a timetable for completion of the process.

4.  **YPF Needs Additional Time to Complete Production of Email.** YPF currently projects that it can complete document production for the seven email custodians not affiliated with Plaintiffs by the end of March.  Once consent is obtained from the custodians affiliated with Plaintiffs/the Eskenazis, YPF will be in a position to project when it will complete that final portion of its email production.

5.  **The Republic Needs Additional Time to Complete Production of Email from Recently Obtained Back-Up Tapes.** The Republic has recently obtained back-up tapes that it is in the process of restoring to allow it to search for potentially responsive email, and outside counsel is also reviewing data that has recently been restored.

*     *     *

Defendants respectfully request that the Court (i) order Plaintiffs to comply with the Court's prior Orders directing Plaintiffs to produce the Eskenazis' documents and to produce the Eskenazis for depositions pursuant to the Federal Rules, and (ii) order a 90-day extension of

---

was extended.  Defendants are willing to meet and confer with Plaintiffs regarding their request for additional 30(b)(6) testimony.

the current fact discovery deadline for the limited purpose of completing outstanding fact discovery, with corresponding extensions of the remaining deadlines.

Dated:  February 17, 2021
         New York, New York


/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Joseph E. Neuhaus
Thomas C. White
Adam R. Brebner
Elizabeth A. Cassady

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:      (212) 558-4000
Facsimile:      (212) 558-3588

*Counsel for The Argentine Republic*

/s/ *Mark P. Goodman*
Donald Francis Donovan
Mark P. Goodman
Shannon Rose Selden
Dietmar W. Prager

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Telephone:      (212) 909-6000
Facsimile:      (212) 909-6836

*Counsel for YPF S.A.*