UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

PETERSEN ENERGÍA INVERSORA,  :
S.A.U. AND PETERSEN ENERGÍA,  :     Case Nos.
S.A.U.,                                             :     1:15-cv-02739-LAP
                                                         :     1:16-cv-08569-LAP
               Plaintiffs,    :
                                                         :
       v.                                     :
                                                         :
ARGENTINE REPUBLIC AND YPF   :
S.A.,                                                 :
                                                         :
            Defendants.    :
                                                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ETON PARK CAPITAL                    :
MANAGEMENT, L.P., ETON PARK    :
MASTER FUND, LTD. AND ETON      :
PARK FUND, L.P.,                          :
                                                         :
            Plaintiffs,    :
                                                         :
       v.                                     :
                                                         :
ARGENTINE REPUBLIC AND YPF   :
S.A.,                                                 :
                                                         :
            Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


**MEMORANDUM OF LAW OF DEFENDANT YPF S.A.
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ........................................................................................................... ii

Preliminary Statement ........................................................................................................ 1

Argument ............................................................................................................................ 4

I.     Plaintiffs Have Failed to Establish a Contractual Obligation on the Part of YPF. ............ 4

      A.     No Court Has Determined That YPF Had Any of the Obligations Alleged........... 4

      B.     Plaintiffs Rely on Generalized Assertions and Group Pleading, but Do Not and Cannot Establish Any Relevant Obligation on the Part of YPF. .................... 7

      C.     Plaintiffs' Allegations About Supposed "Promises" Made by Defendants to Investors Are Legally Irrelevant and Vigorously Disputed............................ 11

II.    Actions By Individual YPF Directors, Officers, or Managers – or the Intervenor or Vice-Intervenor – Allegedly Inconsistent with YPF's Bylaws Cannot Give Rise to a Claim for Breach Against the Company. ................................................................... 13

III.   Plaintiffs Have Not Established that Any Breach by YPF Caused Their Alleged Damages................................................................................................................. 15

Conclusion ........................................................................................................................ 17

1007940223

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samurk-Kazyna JSC*,
   813 F.3d 98 (2d Cir. 2016)........................................................................................6

*Balk v. N.Y. Inst. of Tech.*,
   No. 1:11-cv-509-SAS, 2015 WL 5518709 (E.D.N.Y. Sept. 16, 2015) ...................7

*Boilermakers Local 154 Ret. Fund v. Chevron Corp.*,
   73 A.3d 934 (Del. Ch. 2013).....................................................................................5

*Creative Waste Mgmt., Inc. v. Capitol Env. Serv., Inc.*,
   429 F. Supp. 2d 582 (S.D.N.Y. 2006).....................................................................16

*DiFolco v. MSNBC Cable L.L.C.*,
   831 F. Supp. 2d 634 (S.D.N.Y. 2011).......................................................................5

*Ellington Credit Fund, Ltd. v. Select Portfolio Serv., Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011).......................................................................5

*Galper v. JP Morgan Chase Bank, N.A.*,
   802 F.3d 437 (2d Cir. 2015).......................................................................................4

*Integrated Micro-Chip Elecs. Mex. v. Lantek Corp.*,
   No. 2:18-cv-14112-SDW-LDW, 2019 WL 4668036 (D.N.J. Sept. 24, 2019) .......11

*Petersen Energía Inversora, S.A.U v. Argentine Republic*,
   895 F.3d 194 (2d Cir. 2018)....................................................................................5, 6

*Petersen Energía Inversora, S.A.U. v. Argentine Republic*,
   No. 1:15-cv-02739-LAP, 2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ..................4

*Petitt v. Celebrity Cruises, Inc.*,
   153 F. Supp. 2d 240 (S.D.N.Y. 2001).....................................................................15

*Wolff v. Rare Medium, Inc.*,
   210 F. Supp. 2d 490 (S.D.N.Y. 2002).......................................................................7

ii

Defendant YPF S.A. ("YPF" or "the Company") supplements Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Joint Opp.") by respectfully submitting this memorandum of law in opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 359[1] ("Plaintiffs' Motion")) to address issues specific to YPF.

## PRELIMINARY STATEMENT

As to YPF, Plaintiffs' Motion for Summary Judgment should be denied for all of the reasons set forth in Defendants' Joint Opposition and for Plaintiffs' particularized inability to establish liability on the part of the Company.  Plaintiffs have not shown, as a matter of law and undisputed fact, any contractual obligation on the part of YPF, any breach by YPF, or any causal link between YPF and their claimed damages. Plaintiffs' claims against YPF are demonstrably meritless and their motion should be denied.

To prevail on their contract claims under Argentine law, Plaintiffs must prove each element of their claim as to *each* Defendant, including the existence of a binding contractual obligation between *each* Defendant and Plaintiffs.  ECF No. 371 ("P-MSJ") at 25; Ex. 27 (Kemelmajer Rebuttal Rep.) at ¶ 21; Ex. 28 (Rovira Rep.) at ¶ 11; Ex. 29 (Garro Rep.) at ¶ 8(a).[2] The root of any claim for breach of contract is, of course, a contractual obligation owed by the defendant to the plaintiff, and Plaintiffs cannot prevail against YPF without it.

Plaintiffs' opening brief acknowledges their burden in principle, but ignores it in practice. Plaintiffs refer to "promises" made by "Defendants," or to a corporation's need to "abide by its bylaws," but never point to any text, in any binding agreement or in any Argentine law, imposing on YPF the contractual obligations they allege that it had.  Although Plaintiffs claim that YPF

---

[1]   All references to "ECF No." refer to filings in Case No. 1:15-CV-02739.

[2]   "Ex." refers to the Exhibits to the Declaration of Mark P. Goodman (ECF No. 377) (Ex. 1–77) or the First Supplemental Declaration of Mark P. Goodman filed herewith (Ex. 78–83).

had a contractual obligation to enforce, compel, or guarantee that an acquiring stockholder make a tender offer, and to sanction its absence, they ***never identify any provision of the Bylaws that imposes such an obligation on YPF*** – and there is none.  It is ironic that Plaintiffs accuse Defendants of trying "to divert the Court's attention away" from the clear text of the Bylaws, P-MSJ at 39, when they have disregarded the text of the Bylaws entirely and instead attempt to establish YPF's purported "obligations" through overreaching readings of prior rulings, broad generalizations, group pleading, and unsupported and entirely irrelevant allegations about the circumstances of YPF's 1993 initial public offering ("IPO") and unidentified "promises" made to investors.  Those sources do not support their claims, and, as YPF demonstrated in its opening brief, nothing in the Bylaws creates the alleged obligations on the part of YPF.  For that reason alone, their motion should be denied.

Plaintiffs' claims against YPF fail for other distinct reasons as well.  *First*, even if YPF had the obligations Plaintiffs allege (it did not), Plaintiffs still must establish that the ***Company*** breached those obligations. Under Argentine law, if an individual takes (or fails to take) action in breach of corporate bylaws to the detriment of the Company and its shareholders, that conduct gives rise to individual – not corporate – liability.  Plaintiffs ignore this dispositive distinction. Instead, Plaintiffs assert YPF is liable for breach, or anticipatory breach, of contract based on opinions offered by Secretary of Economic Policy and Development Planning, Axel Kicillof at the time the Public Interest Law was being considered by Congress.  But Secretary Kicillof's views are not proof of a breach by YPF; they are not actions of the Company and cannot give rise to corporate liability.  YPF was the target of the alleged takeover – not an actor in it – and committed no breach.

*Second*, Plaintiffs concede that in a breach of contract claim, Argentine law requires plaintiffs to prove that the defendant's breach *caused* their damages.  "Adequate causation" cannot be assumed from the fact of a breach and must be proven on the undisputed facts with respect to each defendant.  Here again, Plaintiffs offer no evidence to support their claim against YPF – much less the kind of clear undisputed facts required to prevail on summary judgment. Plaintiffs do not explain how YPF could have forced the Republic to make a tender offer, how YPF's alleged failure to take some action caused their claimed losses, or how imposing a "sanction" under the Bylaws – which YPF had no ability to do – could have avoided their alleged damages.  None of their theories make sense, nor are they established by undisputed facts.  Plaintiffs offer no credible reason to believe, and no factual evidence to suggest, that any alleged action or inaction by YPF caused them not to receive a tender offer and suffer the alleged damages as a result.  In fact, the great weight of the evidence and expert testimony shows otherwise – that any attempt by YPF to force a tender offer would have been contrary to applicable law and, at best, futile because (among other reasons) it would have been very difficult, if not impossible, for the Republic to finance a tender offer for the 49% of YPF's equity not subject to expropriation.

*Third*, in addition to the failure to prove the most basic elements of their claims – an obligation, its breach by YPF, and causation – Plaintiffs' Motion fails for the many other reasons set forth in the Joint Opposition and YPF's opening brief, including the fact that any private law obligation was superseded and excused by public law and impossibility.

In short, YPF owed no obligation, breached no obligation and did not cause – and could not have avoided – Plaintiffs' alleged damages.  Plaintiffs' Motion as to YPF should be denied.

## ARGUMENT[3]

**I.    PLAINTIFFS HAVE FAILED TO ESTABLISH A CONTRACTUAL OBLIGATION ON THE PART OF YPF.**

### A.    No Court Has Determined That YPF Had Any of the Obligations Alleged.

Plaintiffs' attempt to bypass their burden to prove an obligation on the part of YPF by relying on language taken out of context from prior decisions in this case, *see, e.g.*, P-MSJ at 3, 23, 26, has no merit.  Plaintiffs cannot avoid proving the most basic element of their claim – a legal obligation on the part of YPF – by relying on decisions from this Court and the Second Circuit on a motion to dismiss standard.  Neither this Court nor the Second Circuit has held, as a matter of law or fact, that YPF had a contractual obligation to Plaintiffs to do the things they claim it should have done – enforce the tender offer provisions, sanction their alleged breach, or guarantee payment.  The prior decisions did not touch the dispositive question here, namely, the existence of the alleged contractual obligations.

In denying YPF's initial motion to dismiss the Petersen claims, this Court considered only whether, accepting the allegations of the Petersen Complaint as true and considering them "in the light most favorable to [Petersen]," the Complaint alleged "a plausible basis for relief." *See Petersen Energía Inversora, S.A.U. v. Argentine Republic* ("MTD Order I"), No. 1:15-cv-02739-LAP, 2016 WL 4735367, at *13 (S.D.N.Y. Sept. 9, 2016) (quoting *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015)).  Applying that generous Rule 8 pleading standard, the Court concluded the claims were "plausible" and afforded Petersen an opportunity to attempt to prove them on a fully developed record. *See id.* at *15.  The Second Circuit decision on which Plaintiffs mistakenly rely was even narrower.  The Second Circuit considered

---

[3]    The relevant background is set forth in the Joint Opposition and accompanying Defendants' Response to Plaintiffs' Rule 56.1 Statement of Material Facts.

1007940223

whether this Court's denial of YPF's motion to dismiss the Petersen Complaint **on sovereign immunity grounds** was proper, but did not reach the merits or plausibility of the claims themselves.  *Petersen Energía Inversora, S.A.U v. Argentine Republic*, 895 F.3d 194, 199 (2d Cir. 2018).[4]

Plaintiffs do not and cannot point to any binding holding in a prior decision in this case finding as a matter of law that YPF owed the contractual obligations that Plaintiffs claim it did. Nothing in the prior decisions holds that any provision of the Bylaws or applicable Argentine law required YPF to enforce, compel, or guarantee the tender offer provisions, or sanction their breach, as Plaintiffs must prove to prevail on their Motion.  *Ellington Credit Fund, Ltd. v. Select Portfolio Serv., Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (citations omitted) (recognizing "a plaintiff must identify what provisions of the contract were breached" to prevail on a breach of contract claim).  Instead, Plaintiffs rely on two things: the fact that the claim survived a motion to dismiss and the Second Circuit's recognition of the general proposition that "every corporation is obligated to abide by its bylaws," *Petersen*, 895 F.3d. at 210 (*citing Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 938–40 (Del. Ch. 2013)).  Neither answers the question that is now before the Court: whether Plaintiffs have proven, as a matter of undisputed fact, that YPF had the contractual obligations they claim it did, and that Plaintiffs are entitled to judgment as a matter of law.

On summary judgment, Plaintiffs are not entitled to the favorable reading that Rule 8 warrants.  Contractual obligations must be proven, not assumed, and the Court "resolves all ambiguities and draws all reasonable inferences *against the moving party*," here Plaintiffs.  *DiFolco v. MSNBC Cable L.L.C.*, 831 F. Supp. 2d 634, 640 (S.D.N.Y. 2011) (Preska, J.)

---

[4]   The Second Circuit dismissed the appeal to the extent it asked the Court to review YPF's arguments for dismissal under the Act of State doctrine.  *Petersen*, 895 F.3d at 211–12.

1007940223

(emphasis added).  And the Second Circuit's general observation is not a binding conclusion that YPF had, as a matter of Argentine law, the blurred obligations Plaintiffs claim.  The Second Circuit did not determine what particularized obligations, if any, the Bylaws imposed *on YPF* specifically, nor did it determine whether YPF was required to abide by any such obligations in light of the Argentine Congress's passage of Law No. 26,741 (the "Public Interest Law").  The Second Circuit considered ***the nature*** of Plaintiffs' allegations, not their merits.  It recognized that "Petersen *alleges* two separate breaches of YPF's bylaws" – "(1) failing to enforce the bylaws' tender offer provisions vis-à-vis Argentina" and "(2) failing to enforce the penalties that section 7(h) imposes on shareholders who have breached *their* tender offer obligations," *Petersen*, 895 F.3d at 210 (emphasis added), and concluded that Petersen's "theory" of liability against YPF involved commercial rather than sovereign activity, and was not subject to sovereign immunity.  The Second Circuit has not addressed whether Petersen's commercial "theory" of liability as to YPF is supported by the Bylaws or Argentine law.  *Id.*; *see also Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 107-08 (2d Cir. 2016) (noting in the FSIA context, relevant inquiry is only whether complaint "allege[s] facts sufficient to establish an exception to sovereign immunity" and does not require "analysis of each individual claim").

On their motion for summary judgment, Plaintiffs must meet a much more demanding standard: they must prove, on the basis of the provisions of the Bylaws, that YPF in fact owed the purported obligations to enforce the tender offer provisions or sanction their alleged breach, and that no reasonable fact-finder could conclude otherwise.  Because that question has not been answered by this or any other Court, Plaintiffs cannot rely on prior opinions and must prove the existence of the contractual obligations that are at the core of their claim against YPF.

6

### B.    Plaintiffs Rely on Generalized Assertions and Group Pleading, but Do Not and Cannot Establish Any Relevant Obligation on the Part of YPF.

On the merits, Plaintiffs' Motion fails because YPF did not have the contractual obligations to "enforce the tender offer provision" or impose "the sanctions in the Bylaws" that Plaintiffs allege as the basis for their claims of breach.  P-MSJ at 26.

YPF already has demonstrated in its opening brief that the "obligations" alleged by Plaintiffs have no basis anywhere in the text of the Bylaws, ECF No. 369 ("YPF-MSJ") at 17–24; *see also* Ex. 27 (Kemelmajer Rebuttal Rep.) at ¶¶ 25–26, 32; Ex. 58 (Manóvil YPF Rebuttal Rep.) at ¶ 6, and Plaintiffs' Motion offers nothing new to support their claim.  Plaintiffs' Motion does not engage with the text of the Bylaws in any meaningful way, and certainly does not – and cannot – point to any provision in the Bylaws that imposes these obligations ***on YPF***.  *See* P-MSJ at 9–11, 26–27.  Plaintiffs' failure to identify any obligation as to YPF is fatal to their motion.  *See, e.g., Balk v. N.Y. Inst. of Tech.*, No. 1:11-cv-509-SAS, 2015 WL 5518709, at *9 (E.D.N.Y. Sept. 16, 2015) (denying plaintiffs' motion for summary judgment on contract claim because defendant "cannot be liable" for breach where there was "no obligation"); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 496 (S.D.N.Y. 2002) (dismissing breach of contract claim where neither the "plain language in the [agreement]" nor any other alleged facts "support the existence of an obligation on the part of [Defendant]").[5]

---

[5]    Plaintiffs' assertion that YPF had an obligation to achieve particular results (*obligación de resultado*) rather than an obligation of best efforts (*obligación de medios*), P-MSJ at 28–29, should be rejected as unsupported and nonsensical.  Plaintiffs' own expert conceded that YPF could not have forced the Republic (or any acquirer) to conduct a tender offer, Ex. 33 (Garro Tr.) at 403:23–25; *see also* Ex. 27 (Kemelmajer Rebuttal Rep.) at ¶ 80, and it would be illogical to read the Bylaws as requiring a specific result that YPF had no means to achieve.  Ex. 27 (Kemelmajer Rebuttal Rep.) at ¶¶ 53–55.  Any purported obligation of YPF would have necessarily been one of best efforts and requires an additional showing of fault, which Plaintiffs have not made.  *Id.* at ¶¶ 53–55; P-MSJ at 29.

1007940223

Plaintiffs utterly disregard the fact that the Bylaws are carefully drafted to identify **who** is obligated to do **what**, in each instance, including when the Company is required to act.   No provisions create or impose any obligation on YPF to "enforce" a tender offer, or "sanction" its absence, as Plaintiffs assert, YPF-MSJ at 18–22, and nothing in the Bylaws imposes a general obligation on the Company to enforce or guarantee any more specific obligations owed by others.   With no textual basis, Plaintiffs rely on conclusory statements made in the reports of two of their experts, Professors Rovira and Garro, alluding to general obligations in the Bylaws, but lost even that anemic support for the central proposition in their case against YPF when each expert conceded at his deposition that, in fact, the plain text of the Bylaws imposes no such obligations on YPF.   *Compare* P-MSJ at 26 (citing Ex. 28 (Rovira Rep.) at ¶ 27; and Ex. 29 (Garro Rep.) at ¶ 19) *with* Ex. 32 (Rovira Tr.) at 154:11–155:6; Ex. 33 (Garro Tr.) at 359:4– 362:23 ("I don't find identified the corporation here as a specific subject of an obligation in 7(f)."); 378:19–23.

The handful of Bylaws provisions that Plaintiffs refer to – Sections 7 (d), (e), (f), and (h) – do not support their claim.   As demonstrated in YPF's opening brief, Sections 7(d), (e) and (f) specifically refer to obligations of a *purchaser or bidder* in the event of a takeover,[6] and do not

---

[6]   Section 7(d), for example, forbids a "***purchaser***" from "acquir[ing] shares or securities of the Corporation" without complying with Sections 7(e) and 7(f) if, "as a result of such acquisition, the purchaser becomes the holder, or exercises the control of, class D shares of stock of the Corporation" which, together with its prior holdings, exceed certain percentages. Ex. 1 (Bylaws) Section 7(d); *see also* P-MSJ at 9.   By its plain terms, Section 7(d) does not impose any obligation on YPF and Plaintiffs do not attempt to argue otherwise.   P-MSJ at 9.   Section 7(e), in turn, defines "[t]he person wishing to [*sic*] a Takeover" as "the Bidder" and specifies the two steps that "***the Bidder***" must take in order to launch a "Takeover."   Ex. 1 (Bylaws) Section 7(e).   Like Section 7(d), Section 7(e) imposes no obligation on YPF.   *See* YPF-MSJ at 18–19.

impose any relevant obligations on YPF itself.[7] *See* YPF-MSJ at 18–20; P-MSJ at 9 (stating that 7(d), (e), and (f) require "shareholders who wish to acquire control of such shares to comply with certain obligations"). Section 7(h) of the Bylaws – the "penalties" provision – provides that shares acquired in violation of the tender offer provisions shall be stripped of their voting and certain other rights, but does not require or contemplate any action by YPF.[8] Plaintiffs' expert, Professor Garro, conceded as much, admitting that Section 7(h) "does not expect the corporation [YPF] to take explicitly any action." Ex. 33 (Garro Tr.) at 378:19–23.[9] Neither Plaintiffs nor their experts identify any relevant obligation as to YPF in the Bylaws' text because there is none.

Plaintiffs cannot rely on Argentine law to fill the gap in their claims: like the Bylaws, Argentine law does not impose any of the allegedly-breached obligations on YPF. Plaintiffs'

---

[7]   Section 7(f) sets forth the required tender offer procedures, and is the only provision in Section 7 that requires YPF to take any action. Section 7(f)(iii) states that "***the Corporation*** shall send by mail" the Bidder's notice of a takeover bid to each shareholder or holder of securities convertible into stock "at the Bidder's cost and expense." Ex. 1 (Bylaws) Section 7(f). It does not require YPF to enforce the tender offer provisions or take any other action beyond this ministerial act. P-MSJ at 9–10. Moreover, Section 7(f)(iii) was not triggered because there was no takeover bid, and therefore no notice was ever provided to YPF. *See* YPF-MSJ at 8–9, 19.

[8]   Section 7(h) provides that "[s]hares of stock and securities acquired in breach of the provisions of subsections 7(c) to 7(g), both included . . . shall not grant any right to vote or to collect dividends or other distributions." Ex. 1 (Bylaws) Section 7(h). It does not require or even contemplate any action by YPF to enforce these penalties. *See* YPF-MSJ at 21–22. To the contrary, it is the other shareholders, not the Company, who have a mechanism to enforce the penalties in Section 7(h), including by challenging resolutions passed during the relevant shareholders' meetings. *Id.* at 21. Moreover, as established in YPF's opening brief, even if YPF had had an obligation under Section 7(h), it would have been superseded and excused by the May 2012 Public Interest Law. *Id.* at 30–33.

[9]   Section 7(h) of the Bylaws stands in sharp contrast to Section 7(b), which specifies that certain transfers of class A or C shares "shall be null and void and ***shall not be acknowledged by the Corporation***" (emphasis added). Ex. 1 (Bylaws) Section 7(b). Section 7(h) bars shares acquired in breach of the tender offer provisions from voting or receiving dividends, but does not specify any obligation for "the Corporation" not to acknowledge the acquisition of shares or to take any action with respect to the acquired shares. *Id.* Section 7(h).

own experts concede that under Argentine law YPF is not a guarantor of any obligation imposed by the Bylaws on third parties, *see* Ex. 35 (Rovira Reply Rep.) at ¶ 22; Ex. 36 (Garro Reply Rep.) at ¶ 18, and do not offer any credible basis to find any actionable legal obligation on the part of YPF itself, as opposed to the individuals who manage it or vote its shares. *See* Ex. 35 (Rovira Reply Rep.) at ¶ 42 n.33 (citing various provisions of the Argentine General Company Law ("GCL") that authorize damages claims against a company's shareholders, directors, and officers, but not the company itself); Ex. 29 (Garro Rep) at ¶ 11 n.10 (same); Ex. 32 (Rovira Tr.) at 77:11–80:18 (conceding that he is not aware of any case in which an Argentine court sustained a breach of contract action against a company directly for alleged breach of its bylaws); Ex. 33 (Garro Tr.) at 150:1–17 (same).  The general notion that YPF "is obligated *to abide by* its bylaws," as the Second Circuit observed, does not mean that YPF is obligated *to enforce* every action that the Bylaws require of others – which is effectively Plaintiffs' argument.  P-MSJ at 26; *see also* Ex. 78 (Pargendler Rebuttal Rep.) at ¶¶ 22-23.  YPF does not "abide by its bylaws" by undertaking or compelling actions required of others – it "abides by its bylaws" by doing what the Bylaws require of *it*.  Ex. 27 (Kemelmajer Rebuttal Rep) at ¶¶ 26, 30.  In the tender offer context, those requirements are limited, spelled out in the Bylaws, and do not include "enforcing" a tender offer or "sanctioning" its absence.  *See id.* at ¶ 25; Ex. 58 (Manóvil YPF Rebuttal Rep.) at ¶ 24.

Instead, Plaintiffs feebly attempt to establish an obligation on the part of YPF by lumping it together with the Republic, and attributing to both "Defendants" obligations imposed only on "acquirers."  Plaintiffs repeatedly refer to alleged obligations and breaches of "Defendants'" in conclusory fashion, without distinguishing between them.  *See, e.g.,* P-MSJ at 19 ("Defendants did not comply with" the tender offer); *id.* at 20 (noting "Defendants' repudiation" of their tender

1007940223

offer obligation); *id.* at 28 (noting "unambiguous repudiation of Defendants' obligations" and "Defendants' breach" and "Defendants' fault"); *id.* at 39.[10]  But the Company and the Republic are distinct entities with fundamentally different roles, and very different positions vis-à-vis the Bylaws.  General references to "Defendants" are insufficient to carry Plaintiffs' burden of proof as to the specific obligations they claim were owed by YPF.  *See, e.g., Integrated Micro-Chip Elecs. Mex. v. Lantek Corp.*, No. 2:18-cv-14112-SDW-LDW, 2019 WL 4668036, at *2 (D.N.J. Sept. 24, 2019) (dismissing breach of contract claim where "Plaintiff treats [the two defendants] as a single, unitary entity, and fails to identify precisely what acts each individual defendant undertook to breach the contract").

The absence of any relevant contractual obligation on the part of the Company is a fatal gap in Plaintiffs' claims against YPF.  Plaintiffs contend that this is "as straightforward a breach of contract case as they come," P-MSJ at 38, involving "contractual promises" that are "clear," *id.* at 39 – but they have no answer at all to the basic question of what provision in the Bylaws creates an obligation on the part of YPF to enforce, compel, or guarantee a tender offer, or sanction its absence.  There is none; and for that reason alone, Plaintiffs' Motion fails.

### C. Plaintiffs' Allegations About Supposed "Promises" Made by Defendants to Investors Are Legally Irrelevant and Vigorously Disputed.

Plaintiffs' attempt to manufacture an obligation based on references to the 1993 IPO Prospectus and on unidentified "promises" supposedly made by YPF and the Republic to

---

[10]    For example, on page 39, Plaintiffs allege that "Defendants unambiguously breached their contractual promises" and did so "deliberately . . . as part of a considered scheme from which they knew litigation and ultimate liability would flow."  But the only "evidence" Plaintiffs cite is an internal government memorandum, P-MSJ at 17-18, 29, or statements of Secretary Kicilloff, *id.* at 19, 29–30, 39, which are not attributable to YPF, s*ee infra* Part II, and, in any case, do not show what Plaintiffs purport them to prove.  *See* Joint Opp. at Factual Background § B; §§ II.B n.8, III.E.

potential investors about the intent of the Bylaws has no factual or legal support and cannot salvage their claim against YPF for multiple reasons.  P-MSJ at 11–14, 38–40.

*First*, Plaintiffs refer to alleged "promises" over 30 times in their brief – 12 times on page 39 alone – without ever defining exactly what those supposed promises entailed, or where they were made.  *See* P-MSJ at 2–3, 12, 38–39.  Plaintiffs cite the IPO Prospectus repeatedly, but, as with the Bylaws themselves, do not identify any language in the Prospectus in which YPF makes any commitment to "enforce" the Bylaws' tender offer provision, to sanction any acquiror that fails to conduct a requisite tender offer, or to act as a guarantor of the obligations – financial or other – of other parties to the Bylaws (because there is none).  *See, e.g.*, P-MSJ at 12–13 (quoting nine excerpts from the Prospectus, *none* of which imposes any obligation on YPF).

*Second*, all of Plaintiffs' purported evidence regarding the IPO is irrelevant.  As a matter of Argentine law, where bylaws are unambiguous (as they are here), they should be interpreted based on the plain meaning of their text.  *See* YPF-MSJ at 14–17; ECF No. 373 ("Rep-MSJ") at 24; Joint Opp. at § II.B.  Extrinsic evidence is particularly disfavored when interpreting bylaws because they are plurilateral agreements among multiple parties who change over time.  YPF-MSJ at 16–17; Joint Opp. at § II.B.  Plaintiffs rely on IPO documents and supposed market expectations, but do not cite any precedent under Argentine law for a court using extrinsic evidence to interpret corporate bylaws, and do not provide this Court any credible legal basis to consider such evidence.  Nor would it make sense to do so.[11]

---

[11]   Unlike where a court considers the drafting history of an ambiguous provision of a bilateral contract, where prior drafts might have some probative value in determining the intended meaning of the ambiguous clause, Plaintiffs here argue that the understanding of potential investors in the 1993 IPO is somehow relevant to interpreting the text of the Bylaws.  *See, e.g.*, P-MSJ at 12–14, 39.  Even if the Bylaws were ambiguous as to whether YPF had any relevant obligations – which they are not – trying to determine what investors thought the Bylaws meant in 1993 has no probative value because the investors had no role in drafting

*Third*, even if the alleged intent of YPF, of potential IPO investors in 1993, or of Plaintiffs at the time of their investments were relevant, that question could not possibly be resolved in Plaintiffs' favor as a matter of undisputed fact on summary judgment.  As detailed in the Joint Opposition, Plaintiffs' investor expectations narrative has no basis in fact and has been thoroughly refuted by Defendants' experts.  *See* Joint Opp. Factual Background at § A.  To the extent investor expectations are relevant at all (they are not), Plaintiffs' unsupported allegations as to those expectations are vigorously disputed and preclude summary judgment in their favor.

## II.   ACTIONS BY INDIVIDUAL YPF DIRECTORS, OFFICERS, OR MANAGERS – OR THE INTERVENOR OR VICE-INTERVENOR – ALLEGEDLY INCONSISTENT WITH YPF'S BYLAWS CANNOT GIVE RISE TO A CLAIM FOR BREACH AGAINST THE COMPANY.

Plaintiffs' Motion also fails because Plaintiffs cannot identify any corporate action *by YPF* in violation of the Bylaws.  Here again, Plaintiffs' case against YPF is missing a basic element.  Instead of pointing to any binding action taken by the Company, Plaintiffs assert YPF is liable for breach, or anticipatory breach, of contract because of opinions offered by Secretary Kicillof before Argentine Senate Committees on April 17, 2012, when the Public Interest Law was being considered.  S*ee* P-MSJ at 26, 27–28, 29–30.  Secretary Kicillof's views are not sufficient proof of any breach by YPF.

*First*, as discussed above and in YPF's opening brief, because YPF did not have any relevant obligations under the Bylaws, nothing that Secretary Kicillof (or anyone else) said or did, or did not say or did not do, could result in a breach by YPF.  *See* YPF-MSJ at 13–28; Ex. 27 (Kemelmajer Rebuttal Rep.) ¶ 155; Ex. 58 (Manóvil YPF Rebuttal Rep.) ¶ 51.

---

the Bylaws.  Similarly, Plaintiffs had no role in drafting the Bylaws, and their subjective understanding of the Bylaws at the time of their investments in 2008–2012 (if they had any – they have not presented any evidence they even read the Bylaws before investing) has no legal relevance to the Court's task of interpreting the Bylaws.

1007940223

*Second,* under Argentine law, if an individual director or officer takes action in breach of corporate bylaws to the detriment of the Company or its shareholders, that action gives rise to individual – not corporate – liability.  The individual in that scenario has exceeded the corporate remit and may be the subject of damages claims – but the breach of his or her duty is an injury done *to* the company or its shareholders, not *by* the company.  *See* Ex. 58 (Manóvil YPF Rebuttal Rep.) ¶ 18; Ex. 27 (Kemelmajer Rebuttal Rep.) at ¶ 32; Ex. 65 (Kemelmajer Reply Rep.) at ¶ 16; Ex. 78 (Pargendler Rebuttal Rep.) at ¶¶ 8(vi), 47.   Under Argentine law, such actions are a potential basis for claims against the individual for breach of his or her individual duties, but not for claims against the company.  *See* YPF-MSJ at 26–28.

*Third*, Secretary Kicillof was appointed Vice-Intervenor by government decree and the opinions he offered to the relevant Senate Committees one day after the commencement of the intervention advocating for passage of the Public Interest Law were made acting in his role as a public official, not as a representative of YPF.   The Intervenor and Vice-Intervenor had a mandate granted by the Republic to implement the intervention; they temporarily displaced the Board of Directors as a consequence of the intervention process and their actions carried out pursuant to that mandate are not attributable to the Company.  *See* Ex. 79 (Manóvil YPF Reply Rep.) at ¶¶ 6, 35; Ex. 80 (Kemelmajer Tr.) at 93; Ex. 59 (Comadira Rebuttal Rep.) at ¶¶18, 21–22; Ex. 58 (Manóvil YPF Rebuttal Rep.) at ¶ 53. YPF was the subject of the intervention, not the author, and cannot be liable for actions taken to implement it.

*Finally*, Secretary Kicillof's views cannot be a basis for liability because (i) they were not an unequivocal repudiation of any contractual obligations or directed at Plaintiffs, and (ii) they reflected only his opinion that no tender offer was required in these circumstances.  *See* Joint

14

Opp. at §§ II.B n.8, III.E.  In any event, there is no evidence that he was authorized to speak on behalf of YPF or was in fact doing so.

## III.   PLAINTIFFS HAVE NOT ESTABLISHED THAT ANY BREACH BY YPF CAUSED THEIR ALLEGED DAMAGES.

Plaintiffs cannot show as a matter of law and undisputed fact that any alleged breach by YPF caused their purported damages.  Under Argentine law, adequate causation is an essential element of a breach of contract claim and Plaintiffs bear the burden of establishing causation with respect to *each* Defendant.  Ex. 27 (Kemelmajer Rebuttal Rep) at ¶ 60 ("As a matter of Argentine law, it is Plaintiffs' burden to prove a causal link between YPF's conduct and their alleged damages. . . . Failing to do so is fatal to their claims against YPF."); P-MSJ at 25 (acknowledging causation is a required element); *see also Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 264 (S.D.N.Y. 2001) (granting defendants summary judgment where plaintiffs "failed to raise an issue of material fact that would enable a reasonable jury to conclude" their claimed injuries were caused by defendants' actions).  However, Plaintiffs make no effort to satisfy this burden as to YPF, opting again to rely on broad generalizations that seek to import purported liability to YPF by way of the Republic, without any independent showing that any of the harm alleged was caused by YPF's conduct.  *See, e.g.*, P-MSJ at 28 (alleging Plaintiffs "suffered damages . . . caused by Defendants' breach" and were "entitled to cash payments *from Argentina* in connection with its takeover of YPF" that were never received (emphasis added)).

Plaintiffs do not explain how any action or inaction by YPF caused them not to receive a tender offer or "compensated exit."  In particular, Plaintiffs cite no evidence to support the conclusion that any action by YPF would have in fact forced the Republic to conduct a tender offer and their experts *agree* that in fact YPF "could not force Argentina to do anything."  Ex. 33 (Garro Tr.) at 403:23–25.  Plaintiffs' assertions about the Republic's course of action make it

impossible to conclude (particularly as a matter of undisputed fact) that it was YPF that "caused" them not to receive a tender offer: Plaintiffs contend that the Republic was aware of the Bylaws' tender offer provisions and decided not to conduct a tender offer.  P-MSJ at 16–20, 27–28. Plaintiffs provide no factual basis to conclude that any statement by YPF as to provisions of the Bylaws (which the Republic was already aware of) would have resulted in the Republic changing course and making a tender offer.[12]

Moreover, irrespective of any action YPF allegedly took or failed to take, summary judgment is still inappropriate because the question of whether the Republic could (and would) in fact finance the tender offer Plaintiffs allege was required is both material and vigorously disputed by YPF.  *See, e.g., Creative Waste Mgmt., Inc. v. Capitol Envl. Servs., Inc.*, 429 F. Supp. 2d 582, 610–11 (S.D.N.Y. 2006) (denying summary judgment given disputed issue of material fact as to causation).  As YPF's expert Daniel Marx has explained, Plaintiffs claim that the Republic was required to conduct a tender offer for the 49% of YPF's equity not subject to expropriation at a price that would have been very difficult, if not impossible, for the Republic to finance in 2012, especially since any financing would have been in addition to the amount the Republic would need to pay to Repsol for the shares subject to expropriation.  Hicks Decl. Ex. 49 (Marx Rebuttal Rep.) at ¶¶ 89, 93.  Assuming *arguendo* that Plaintiffs' calculation of the proper tender offer price is correct (it is not, *see* Joint Opp. at § III), the funds required to finance such a tender offer would have amounted to between 12.8% and 15.4% of Argentina's total federal expenses and required the Republic to amend the Budget Law in place at the time, significantly

---

[12]   As explained in YPF's opening brief, it is up to the shareholders – not the Company itself – to enforce the penalties in Section 7(h) of the Bylaws.  YPF-MSJ at 21.  Plaintiffs made a conscious decision not to object to or challenge the intervention or the Republic's exercise of voting rights at the June 4, 2012 shareholders' meeting or elsewhere – an act they could have taken at the time, but now suggest that YPF was somehow obligated to do in their stead.  *See* Rep-MSJ at 11.

reduce federal expenditures, or increase its total revenue by between 14% and 17%, none of which were possible much less practical.  Hicks Decl. Ex. 49 (Marx Rebuttal Rep.) at ¶¶ 99–104. Nor would the Republic have had the ability to obtain financing to support such a tender offer through:

(1) issuance of sovereign debt, given ongoing disputes with international bondholders and related concerns, *id.* at ¶¶ 107, 112–16; Ex. 81 (Calomiris Tr.) 148:10-149:5, 162:18-163:2; Ex. 82 (CRS Report dated Feb. 6, 2013) at -0298; -0306), and limits on the availability of domestic sovereign debt in the amounts necessary to fund the alleged tender offer, Hicks Decl. Ex. 49 (Marx Rebuttal Rep.) at ¶¶ 116-19;

(2) funding from the Banco Central de la República Argentina ("BCRA") (the Argentine Central Bank), given regulatory constraints and inflationary risks, *id.* at ¶¶ 108, 121–30;

(3) domestic and international banks, given various regulatory restrictions in Argentina, lack of domestic lending capacity and lack of access to international capital, *id.* at ¶¶ 131–43; or

(4) multilateral agencies, given lending criteria that do not support financing for a tender offer.  *Id.* at ¶ 142; Ex. 83 (IMF Factsheet, dated Feb. 22, 2021) at 3 (stating that "[u]nlike development banks, the IMF does not lend for specific projects" such as a tender offer).

Based on this evidence, it is inconceivable – and impossible to conclude as a matter of undisputed fact – that the Republic both had the financial capacity to make a tender offer and actually would have done so because of some YPF action, as required for Plaintiffs to prevail.

## CONCLUSION

For the foregoing reasons and those stated in YPF's Motion for Summary Judgment and in the Joint Opposition, the Court should deny Plaintiffs' Motion.

Dated: May 26, 2022                     Respectfully Submitted,
       New York, New York

                                        */s/ Mark P. Goodman*
                                        Mark P. Goodman
                                        Shannon Rose Selden
                                        Dietmar W. Prager
                                        Carl Riehl
                                        Wendy B. Reilly
                                        J. Robert Abraham
                                        DEBEVOISE & PLIMPTON LLP

17

919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)
mpgoodman@debevoise.com
srselden@debevoise.com
dwprager@debevoise.com
criehl@debevoise.com
wbreilly@debevoise.com
jrabraham@debevoise.com

*Counsel to Defendant YPF S.A.*

1007940223