# Exhibit 120

Page 1

```
 1  UNITED STATES DISTRICT COURT
 2  SOUTHERN DISTRICT OF NEW YORK
 3  ------------------------------------)
 4  PETERSEN ENERGIA INVERSORA, S.A.U.  )
 5  and PETERSEN ENERGIA S.A.U.,        )
 6                   Plaintiffs,        )  Civ.  2739(LAP)
 7            Vs.                       )
 8  ARGENTINE REPUBLIC and YPF S.A.,    )
 9                   Defendants.        )
10  ------------------------------------)
11  ETON PARK CAPITAL MANAGEMENT, L.P.  )
12  ETON PARK MASTER FUND, LTD.,        )
13  and ETON PARK FUND, L.P.,           )
14                   Plaintiffs,        )  Civ. 8569(LAP)
15            Vs.                       )
16  ARGENTINE REPUBLIC and YPF S.A.,    )
17                   Defendants.        )
18  ------------------------------------)
19  REMOTE VIDEOTAPE DEPOSITION OF ALEJANDRO GARRO
20            Monday, March 7, 2022
21
22  Reported By:
23  ERICA RUGGIERI, RPR, CLR
24  JOB NO: 5065962
25
```

Page 2

1
2                    March 7, 2022
3                     9:03 a.m.
4
5        Remote videotape deposition of
6    ALEJANDRO GARRO, physically
7    located at the offices of Kellogg
8    Hansen located in Washington D.C., and
9    all other participants appearing via
10   videoconference, before Erica
11   Ruggieri, a Registered Professional
12   Reporter, Certified LiveNote Reporter,
13   and Notary Public of the State of New
14   York.
15
16
17
18
19
20
21
22
23
24
25

```
 1   A P P E A R A N C E S:
 2
 3   KELLOGG HANSEN TODD FIGEL
 4   & FREDERICK PLLC
 5   Attorneys for Plaintiffs
 6      1615 M Street, NW, Suite 400
 7      Washington, D.C. 20036
 8      BY:   TRAVIS EDWARDS, ESQ.
 9            CHRISTOPHER SARMA, ESQ.
10
11   KING & SPALDING, LLP
12   Attorneys for Plaintiffs
13   1185 Avenue of the Americas, 35th Floor
14      New York, New York 10036
15      BY:   REGGIE SMITH, ESQ.
16            LAURA HARRIS, ESQ.
17
18   DEBEVOISE & PLIMPTON LLP
19   Attorneys for YPF S.A.
20      919 Third Avenue
21      New York, New York 10022
22      BY:   MARK P. GOODMAN, ESQ.
23            SOL CZERWONKO, ESQ.
24            DIETMAR PRAGER, ESQ.
25            JUAN FANDINO, ESQ.
```

```
                                                          Page 4
 1
 2   A P P E A R A N C E S: (Continued)
 3
 4   SULLIVAN & CROMWELL LLP
 5   Attorneys for The Argentine Republic
 6       125 Broad Street
 7       New York, New York 10004
 8       BY:   THOMAS C. WHITE, ESQ.
 9             SOPHIE A. KIVETT, ESQ.
10             AGUSTINA GUAZZARONI, ESQ.
11             PEDRO JOSE IZQUIERDO, ESQ.
12             ARTURO CARLOS SCHULTZ, ESQ.
13             ROBERTO A. LUZZI, ESQ.
14             MARIA A. ETCHEGORRY, ESQ.
15
16   ALSO PRESENT:
17       ARIELLE FRIEDMAN, Videographer
18       GREGGORY HOLDERMAN, Veritext Concierge
19       MARIA E. BORRAJO
20       MIGUEL A. SCHARGRODSKY
21       PEDRO GRIJALBA MARSANS
22       RAFAEL M. MANOVIL
23       SERGIO J. GALVIS
24       AIDA KEMELMEJOR
25       FRANCO LENZI
```

```
 1   A P P E A R A N C E S:  (Continued)
 2
 3   ALSO PRESENT: (Cont'd)
 4       IGNACIO M. LIMA
 5       IGNACIO ZAPIOLA
 6       JUAN FRANCO RAPARO FAURE
 7       LAURA ROZAN
 8       M. AUGUSTINE ANTOCI RICHIERI
 9       MARIA E. BORRAJO
10       MARIANA PARGENDLER
11       ROSARIO TEJADA
12       ARMANDO BETANCOR
13       GUIDO DEMARCO
14       SERGIO J. GALVIS
15       GUIDO DEMARCO
16
17
18
19
20
21
22
23
24
25
```

Page 217

1    question -- the principal -- unless
2    as I said to you there was something
3    against the assignment of that
4    contract and assuming that there's
5    no assignment contract.  The
6    assignee standing in the shoes of
7    the assignor party to the contract
8    could conceivably bring an action.
9        Q.   But could the assignor
10   bring the action after it had
11   already assigned the contract to
12   someone else for a historical
13   breach?
14       MR. EDWARDS:  Objection to
15    form.  Asked and answered.
16       A.   It's not a simple question
17   as you may think.  It depends.  It
18   depends.  The assignor could well
19   have been -- retained rights into
20   that -- to that -- to that contract.
21   And it would be very -- one would
22   have to be very attentive, what were
23   the terms of the assignment.  And
24   therefore, I think that again within
25   the realm of the world of -- of

1  hypothesis of which I'm sure you
2  later on want to link to something
3  more realistic having to do with
4  this case, I am not really
5  comfortable in answering your
6  question in the abstract.  Or I
7  could say in the abstract in
8  principal perhaps, yes.  Unless
9  something else happens.  You are an
10 on assignee, the assignor has left
11 this right and, therefore, if he has
12 left the right, he has left with
13 nothing to sue upon.  That would be
14 the logical question.
15         But this type of question,
16 counsel, of hypothesis really I'm
17 not comfortable answering those
18 questions.
19     Q.   Where would you look in the
20 Civil Code to find the answer to
21 that question, do you know?
22     A.   Well, there is a provision
23 in the Civil Code on the assignment
24 of rights and therefore that would
25 be the appropriate way to look at it

Page 219

1     and the assignment of rights would
2     provide that the assignor -- the
3     assignee stands in the shoes of the
4     assignor, things of that nature.
5          But again, that's why I
6     hesitate to having to look at the
7     code, study the probations, what --
8     what doctrine is behind them and
9     then provide you the answer as I did
10    with these cases that I had in my
11    report.
12         Q.   Do you agree that if a
13    court in Argentina had ordered the
14    Republic to perform a tender offer,
15    the Republic would have to comply
16    with that order?
17         MR. EDWARDS:   Objection to
18    form.
19         A.   The hypothetical is, you
20    know, fascinating from an academic
21    standpoint because when you, a judge
22    orders, a member of the Judiciary
23    Branch to the Executive Branch to
24    perform.  Today one of your first
25    questions was whether or not

1       judgments against the Argentine
2       government were automatically
3       enforceable and you remember my
4       answer to that I said was no and
5       there's legislation about there has
6       to be a budgetary provision in order
7       to make that judgment, money
8       judgment, against it.
9              Now you are talking about an
10      order of specific performance, order
11      under sovereign.  Not a frequent
12      case definitely to -- to confront
13      that.  And again, because we are in
14      the realm of hypothesis probably
15      your follow-up questions can lead us
16      closer to where you want to go and
17      that could probably give it a more
18      clear answer to your question.
19             Q.   Sure.  Let me make it a
20      little more concrete.  And I'll tell
21      you why I ask the question.  Because
22      you say -- I'm looking at your reply
23      report, your third report, in
24      paragraph 6m, that's the sixth page
25      of your report, the last sentence of