UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA,
S.A.U. AND PETERSEN ENERGÍA,
S.A.U.,

                        Plaintiffs,

            v.

ARGENTINE REPUBLIC AND YPF
S.A.,

                      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

Case Nos.
1:15-cv-02739-LAP
1:16-cv-08569-LAP

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL
MANAGEMENT, L.P., ETON PARK
MASTER FUND, LTD. AND ETON
PARK FUND, L.P.,

                        Plaintiffs,

            v.

ARGENTINE REPUBLIC AND YPF
S.A.,

                      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT YPF S.A.'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Argument ..................................................................................................................... 2

I.      The Second Circuit Did Not Rule On the Merits ............................................ 2

II.     Plaintiffs Cannot Establish Essential Elements of Their Contract Claims Against
        YPF. ................................................................................................................ 4

        A.      Plaintiffs' Alternate History of YPF Is False, Unsupported, and
                Immaterial. .......................................................................................... 5

        B.      Plaintiffs Cannot Establish the YPF Obligations They Allege. ............ 6

        C.      Adequate Causation Is a Necessary Element of Plaintiffs' Contract Claim
                That They Cannot Prove and Have Offered No Evidence to Support. ................. 9

III.    The Section 7(h) Claim Should Be Dismissed Because Any Such Obligation Was
        Legally Superseded and Excused ................................................................... 12

IV.     Plaintiffs Failed to Establish That Argentine Law Permits a Claim For Damages
        Against YPF For Breach of the Bylaws ......................................................... 13

V.      Argentine Law Prohibits YPF Corporate Liability for Acts by the Republic's
        Intervention Team or the CNV. ..................................................................... 14

VI.     The Real Party in Interest Has Failed to Ratify. .......................................... 16

Conclusion ................................................................................................................. 16

i

## **TABLE OF AUTHORITIES**

**Cases**

*Bausch & Lomb Inc. v. Bressler*,
    977 F.2d 720 (2d Cir. 1992)..................................................................10

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*,
    No. 1:14-cv-8467-JMF, 2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016) ..................................6

*D'Amico v. City of New York*,
    132 F.3d 145 (2d Cir.1998).....................................................................6

*Fischer v. N.Y. State Dep't of Law*,
    812 F.3d 268 (2d Cir. 2016)....................................................................2

*Gale v. Bershad*,
    Civ. A. 15714, 1998 WL 118022 (Del. Ch. March 4, 1998) ...................................13

*Gutiérrez Enedina, et al. v. Neumáticos Gutiérrez S.A.,*
    National Court of Appeals in Commercial Matters, Division A
    (Oct. 16, 2012) .............................................................................14

*In re BP p.l.c. Derivative Litig.*,
    507 F. Supp. 2d 302 (S.D.N.Y. 2007).........................................................14

*In re Pearl*,
    No. 2:16-bk-20305, 2017 WL 932951 (Bankr. E.D. Ky. Mar. 8, 2017) ...........................13

*Jaramillo v. Weyerhaeuser Co.*,
    536 F.3d 140 (2d Cir. 2008)....................................................................4

*Montilla, Isaac L., et al. v. Resero S.A., et al.*,
    National Court of Appeals in Commercial Matters, Division B
    (Nov. 10, 1999) ............................................................................15

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*,
    392 F.3d 520 (2d Cir. 2004)...................................................................10

*New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
    352 F.3d 599 (2d Cir. 2003)....................................................................4

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015)............................................................................3

*Official Comm. of the Unsecured Creditors of Color Title, Inc. v.*
    *Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003)....................................................................8

1007983204

*Oliveira v. Quartet Merger Corp.*,
    126 F. Supp. 3d 424 (S.D.N.Y. 2015)........................................................13

*Petersen Energía Inversora, S.A.U. v. Argentine Republic*,
    895 F.3d 194 (2d Cir. 2018)................................................................3, 4

*Petersen Energía Inversora, S.A.U. v. Argentine Republic*,
    No. 1:15-cv-02739-LAP, 2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ..............................2, 8

*Petersen Energía Inversora, S.A.U. v. Argentine Republic*,
    No. 1:15-cv-02739-LAP 2020 WL 3034824 (S.D.N.Y. June 5, 2020) ...................................8

*Petitt v. Celebrity Cruises, Inc.*,
    153 F. Supp. 2d 240 (S.D.N.Y. 2001)..........................................................10, 11, 12

*Point Prod. A.G. v. Sony Music Entm't, Inc.*,
    215 F. Supp. 2d 336 (S.D.N.Y. 2002).........................................................12

*Robinson v. Gov't of Malaysia*,
    269 F.3d 133 (2d Cir. 2001)...................................................................2

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)..........................................................................3

*Sompo Japan Ins. Co. of America v. Norfolk S. Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014)..................................................................4

*Tabatznik v. Turner*,
    No. 1:14-cv-8135-JFK, 2016 WL 1267792 (S.D.N.Y. Mar. 30, 2016)..................................8

*Traher v. Republic First Bancorp, Inc.*,
    432 F. Supp. 3d 533 (E.D. Pa. 2020) .........................................................13

*Will v. Hallock*,
    546 U.S. 345 (2006)..........................................................................2

*Wye Oak Tech., Inc. v. Republic of Iraq*,
    24 F.4th 686 (D.C. Cir. 2022)................................................................2

*Zullo, Norberto v. Kehoe, Roberto Eduardo, et al.*,
    National Court of Appeals in Commercial Matters, Division A
    (July 22, 2008) .............................................................................14

## Other Authorities

Black's Law Dictionary (10th ed. 2014)..........................................................8

Merriam-Webster Dictionary, available at https://www.merriam-
    webster.com/dictionary/abide (last visited June 23, 2022)......................................8

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that these former ADR holders have no legal basis to pursue billions of dollars in damages and interest from YPF based on the Republic's alleged failure to make them a tender offer.   Plaintiffs' claim to such relief is extraordinary, unprecedented and not recognized by Argentine law.  Plaintiffs' Opposition still cannot make out the basic elements of a claim for breach of contract against YPF.  Namely, Plaintiffs still fail to show a YPF obligation, a breach by YPF, a causal link between any YPF breach and their alleged harm, or a legal right to the relief they seek.  Every claim for breach of contract – even an unprecedented claim like this one – must meet each of those basic requirements. Plaintiffs' claim cannot and Plaintiffs' failure warrants dismissal.

Plaintiffs' Opposition relies on three forms of misdirection to avoid addressing the central failings of their claims: (1) a mischaracterization of the Second Circuit decision on interlocutory appeal of the jurisdictional question as a legal conclusion on the merits, usurping the role of this trial court; (2) a false, misleading, and utterly irrelevant narrative about YPF's pre-1993 IPO history; and (3) inapposite arguments that fail to distinguish YPF from the Republic, fail to respond to YPF's motion as pled, or just miss the point entirely.

None of Plaintiffs' arguments warrant denial of YPF's motion.  Plaintiffs' assertion that the Second Circuit validated their claims grossly overstates the scope of its decision.  The Second Circuit addressed only the narrow jurisdictional question of the applicability of the "commercial activities" exception to sovereign immunity, not the merits questions now before this Court.  In relying on that decision, along with their alternate history of YPF prior to its 1993 IPO and their conflation of the two Defendants, Plaintiffs demonstrably fail to carry their legal and evidentiary burden on the merits of their alleged contract claims.

This Court is free to consider the substance of Plaintiffs' claims and of YPF's motion in full, and to find that as a matter of Argentine law and undisputed fact, YPF should be dismissed because Plaintiffs cannot show (i) a legal obligation by YPF, (ii) a causal link between any YPF breach and their alleged harm, (iii) a breach by and legally attributable to YPF, or even (iv) that they have the right to bring damages claims against YPF under the Bylaws.  For the reasons herein, and the reasons in the Republic's brief, summary judgment for YPF is warranted.[1]

## ARGUMENT

## I.    THE SECOND CIRCUIT DID NOT RULE ON THE MERITS.

When the Second Circuit affirmed this Court's denial of YPF's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction under the FSIA, it did not and could not rule on the merits of Plaintiffs' claims for breach of contract.  By definition, an interlocutory appeal taken under the collateral order doctrine is available only where it would "resolve an important issue *completely separate from the merits of the action*."  *Fischer v. N.Y. State Dep't of Law*, 812 F.3d 268, 273 (2d Cir. 2016) (emphasis added) (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)).  A court "does not . . . decide a case on the merits in order to decide if it has jurisdiction." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001).  That principle holds true in FSIA cases, where courts focus on "the *substance of the allegations* to determine whether one of the exceptions to the FSIA's general exclusion of jurisdiction over foreign sovereigns applies," *Petersen Energía Inversora, S.A.U. v. Argentine Republic* ("MTD Order I"), No. 1:15-cv-02739-LAP, 2016 WL 4735367, at *4 (S.D.N.Y. Sept. 9, 2016) (emphasis added) (quoting *Robinson*, 269 F.3d at 140), but do not assess the sovereign's alleged liability on the merits until they have established their authority to do so.  *Wye Oak Tech., Inc. v. Republic of*

---

[1]    YPF adopts and incorporates by reference the Reply Memorandum of Law in Support of the Republic's Motion for Summary Judgment ("Rep-Reply") to the extent relevant to YPF.

*Iraq*, 24 F.4th 686, 697-700 (D.C. Cir. 2022).  Unlike the merits inquiry, the FSIA jurisdictional determination is made based on the "gravamen" of the claim and not an "exhaustive claim-by-claim, element-by-element analysis" of the causes of action.  *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 34-35 (2015); *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, 895 F.3d 194, 204 (2d Cir. 2018) (citing *OBB*, 577 U.S. at 34-35).  In the FSIA context, the "gravamen of the complaint" – or what the claims are "based upon" – "mean[s] those elements of a claim that, ***if proven***, would entitle a plaintiff to relief ***under his theory of the case***."  *OBB*, 577 U.S. at 33-34 (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993)); *Petersen*, 895 F.3d at 204 (citing *OBB*, 577 U.S. at 34-35).

In their attempt to use the Second Circuit decision to usurp this Court's role on summary judgment, Plaintiffs ignore the limits of the collateral order doctrine, conflate the jurisdictional question and the merits questions, and grossly overstate the scope and effect of the Second Circuit decision.  Plaintiffs point to the Second Circuit opinion as dispositive of the merits of their case, and treat its decision on subject matter jurisdiction as though it has already fully and finally resolved questions that this Court has not yet had an opportunity to consider.  ECF No. 392 ("P-Opp.") at 2-3, 6-7, 42-43, 70-71.  Plaintiffs' Opposition incorrectly recasts the Second Circuit's description of the gravamen of their claims as legal conclusions binding on this Court, to insist without any legal basis that the Second Circuit has reached the central merits questions, including whether YPF had the contractual obligations that Plaintiffs allege.  *Id.* at 42-43.

None of that is true.  The Second Circuit affirmed this Court's conclusion that it has subject matter jurisdiction over Plaintiffs' claims under the "commercial activity" exception to the FSIA.  *Petersen*, 895 F.3d at 211.  In doing so, it followed the Supreme Court's express guidance in *OBB* and *Nelson*, and assessed the "'gravamen' of Petersen's lawsuit" to determine

whether the FSIA exception applied.  That is all.  It did not attempt to assess whether Plaintiffs

had, as a matter of law, established a right to relief.  *Id.* at 210-11[2]  The Second Circuit was not

presented with and did not answer the separate question of the merits of Plaintiffs' claims; there

is no "law of the case" on that issue.  *See, e.g.*, *New England Ins. Co. v. Healthcare Underwriters

Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003) (internal citations omitted) ("[T]he law of the

case does not extend to issues an appellate court did not address"); *Sompo Japan Ins. Co. of

America v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175–76 (2d Cir. 2014) (district court did not violate

mandate rule in "addressing on remand an issue that was not decided by this Court in the original

appeal").  The merits are before this Court for the first time on cross-motions for summary

judgment and this Court is free to decide them for YPF.[3]

## II.    PLAINTIFFS CANNOT ESTABLISH ESSENTIAL ELEMENTS OF THEIR CONTRACT CLAIMS AGAINST YPF.

On the merits, to survive YPF's summary judgment motion, Plaintiffs must come forward

with "admissible evidence sufficient to raise a genuine issue of fact for trial," or demonstrate that

YPF is not entitled to "judgment as a matter of law."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d

140, 145 (2d Cir. 2008) (internal citation omitted).  Plaintiffs have done neither.  The Opposition

offers an untrue, unsupported and irrelevant history of YPF, but does not identify any genuine

dispute of fact *material* to the motion.  As to the law, Plaintiffs rely on generalizations and

mischaracterizations of the Bylaws and of Argentine public and private law, but do not and

cannot point to any legally binding obligation owed to them by YPF or a right to relief.

---

[2]    Judge Winter concurred: "My colleagues' conclusion as to the lack of immunity under FSIA is that *the facts alleged in the complaint* do not state a claim that implicates a sovereign, rather than commercial, act of the Argentinian state."  *Petersen*, 895 F.3d at 213 (Winter, J., concurring in part and dissenting in part) (emphasis added).

[3]    Dismissing the Republic on subject matter jurisdiction or act of state doctrine grounds would likewise require dismissal of YPF.

A.      **Plaintiffs' Alternate History of YPF Is False, Unsupported, and Immaterial.**

Whether YPF owed and breached obligations to these Plaintiffs is a question of what the Bylaws say, not what investors may have thought about Argentina, its debt, or its government-owned companies in or before the early 1990s.  Plaintiffs' effort to vilify YPF by telling a false history of its performance prior to its 1993 IPO has nothing to do with the merits of their contract claims (Plaintiffs have not, and could not fairly, criticize YPF's performance since the IPO).  Plaintiffs' aspersions are a distraction from the terms of the Bylaws and from YPF's limited role in the disputed events.  They have no connection to the facts, and Plaintiffs cite none for support.  For example:

- The assertion that YPF had a "spotted history" such that the Bylaws' tender offer provisions were necessary to secure investment does not cite a single fact, P-Opp. at 46, and the record shows that investors did not place any importance on the Bylaws' tender offer provisions.  ECF 402 ("Joint Opp.") at 6-8.

- Whether YPF raised funds through an IPO has no bearing on whether it had a direct contractual obligation to these Plaintiffs to pay them damages in the absence of a tender offer – but the allegation that YPF had a "campaign to secure billions from foreign investors through its IPO" and "[took] money into its coffers," has no factual citation or support, P-Opp. at 6, 41-42, 45-46.  In fact, all proceeds from the 1993 IPO went to Argentina and to the Provinces, not to YPF.  ECF No. 364 ("Hicks Decl.") Ex. 3 (IPO Prospectus) at 3 ("All of the net proceeds of the sales of the ADSs will be received by the Argentine government . . . and certain provinces of Argentina.").

- The notion that YPF "willfully breached [its] contractual obligations . . . by deciding in February 2012 to proceed despite knowing that the Bylaws required a tender offer," P-Opp. at 28-29, 38, is absurd.  The discussions were undisputedly within the government. ECF No. 372 ("P-SUF") ¶¶ 79-84 (citing Hicks Decl. Ex. 76 reflecting *internal* government correspondence and memorandum).  YPF had no part in them and was managed by *Petersen*'s executive team.  *See, e.g.,* Ex. 84 (YPF 2011 20-F) at 125, 141.[4]  If *Petersen*'s team had participated for YPF (contrary to fact), Plaintiffs could not credibly contend they are entitled to damages on their own theory because their own executives caused YPF to willfully breach its supposed obligations to them.

---

[4]   "Ex." refers to the Exhibits to the Declaration of Mark P. Goodman (ECF No. 377) (Ex. 1-77), the First Supplemental Declaration of Mark P. Goodman (ECF No. 400) (Ex. 78-83), or the Second Supplemental Declaration of Mark P. Goodman filed herewith (Ex. 84-86).

These accusations and the others like them consist of the kind of rank speculation, unsubstantiated assertions, and inadmissible or immaterial facts that are insufficient to defeat summary judgment. *See, e.g., D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998); *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 1:14-cv-8467-JMF, 2016 WL 5416498, at *6 (S.D.N.Y. Sept. 28, 2016). They have no bearing on the merits and no relationship to YPF's strong track record with investors.

### B.      Plaintiffs Cannot Establish the YPF Obligations They Allege.

Focusing on the unambiguous text of the Bylaws and relevant Argentine law, YPF demonstrated that Plaintiffs have no legal basis for the obligations they allege:  YPF had no obligation under the Bylaws to "enforce" the tender offer provisions against the Republic or to "penalize" the Republic for not making a tender offer, and was not a "guarantor" of any alleged obligations or payments. ECF No. 369 ("YPF-MSJ") at 13-28.[5]  As YPF demonstrated, the Bylaws consistently specify *who* is obligated to do *what* and expressly limit any obligations to those terms. *Id.* Argentine law provides no basis – and Plaintiffs identify none – to disregard these clear textual limits to make YPF the multi-billion dollar financial backstop for Plaintiffs.

Plaintiffs' Opposition has no credible response. Plaintiffs admit that the text of the Bylaws governs, P-Opp. at 6, 23-24, 43-45, and do not dispute that under Argentine law, the Court cannot consider extrinsic evidence to alter its meaning. *See* P-Opp. at 43-46. The Opposition confirms that Plaintiffs have no textual basis for their contract claims:  it cannot point to any Bylaws provision that imposes the alleged obligations on YPF. YPF-MSJ at 14-17; ECF No. 399 ("YPF-Opp.") at 12-13; ECF No. 373 ("Rep-MSJ") at 24; Joint Opp. at 29-34. Plaintiffs admit that the Bylaws provisions that supposedly create an obligation to "enforce" (§§

---

[5]     Plaintiffs do not dispute that any claim for breach of an obligation to distribute dividends fails for the reasons stated in YPF's opening brief, YPF-MSJ at 10, 22 n.13.

7(d), 7(e), 7(f)) or to "penalize" (§ 7(h)) do not call for actions by ***the Company***, P. Opp. at 43-45; they cannot deny that the plain text imposes no tangible duty on YPF.  YPF-MSJ at 17-24. Plaintiffs concede they are not pursuing YPF as a guarantor of the Republic's alleged obligations, P-Opp. at 47, and while attempting to preserve that argument in the alternative, they point to no concrete contractual basis to hold YPF liable as such.  *Id*. at 48; YPF-MSJ at 25-28. Plaintiffs do not deny that Argentine law does not recognize a cause of action for anticipatory breach, and cannot salvage that claim.  *See* Rep-Reply at § II.B.

Unable to locate any textual basis for their contract claims, Plaintiffs rely on a general theory of corporate obligation that would create unprecedented liability and has no place in corporate law, in Argentina or elsewhere.  Ex. 78 (Pargendler Reb. Rep.) ¶¶ 22 ("[V]iolations of charters or bylaws do not give rise to damages claims against the corporation.  Corporations are regulated by their charters and bylaws; they are <u>not</u> guarantors of charter or bylaws provisions . . . ."); *id*. at ¶ 28.  Their Opposition offers five such generalized and inadequate responses to YPF's motion, none of which is sufficient to defeat summary judgment.

***First***, Plaintiffs contend that if YPF did not have the obligation to "enforce" then no one did – and that the Court should avoid that "lawless" result by imposing an obligation on YPF even where the text is silent.  P-Opp. at 45-46.  That is incorrect at every level.  It is not YPF's position that the Bylaws are unenforceable and it is not consistent with Argentine law.  In this case, under Argentine law, *shareholders*, not the Company, have the legal right and ability to enforce the Bylaws.  *Shareholders* have the right and ability to raise objections within the appropriate corporate forum and to pursue remedies via Article 251 and 254 of the GCL.  YPF-MSJ at 33; Rep-MSJ at 26-27; Joint Opp. at 25-29.

***Second***, Plaintiffs' argument that the Second Circuit's statement that YPF must "abide by" its Bylaws means the question has been resolved and YPF must "enforce" the Bylaws, P-Opp. at 42-43, fails for the reasons above. *Supra* § I. It also disregards the essential legal difference between "*abiding by*" one's own obligations and "*enforcing*" the obligations of others. *See* Ex. 27 (Kemelmajer Reb. Rep.) ¶¶ 28-37; *compare Abide*, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/abide (last visited June 23, 2022) ("abide by" as "to conform to or abide by the rules") *with Tabatznik v. Turner*, No. 1:14-cv-8135-JFK, 2016 WL 1267792, at *15 (S.D.N.Y. Mar. 30, 2016) ("enforcement" is "[t]he act or process of compelling compliance with a[n] . . . agreement" (citing *Enforcement*, Black's Law Dictionary (10th ed. 2014))).  The latter is Plaintiffs' claim and there is no support for it.

***Third***, Plaintiffs' reliance on the IPO prospectus as a source of "representations" that "estop" YPF from disputing an alleged obligation under its Bylaws, P-Opp. at 46-47, is circular, unsupported by the facts or the law, and has been rejected.  Plaintiffs do not meaningfully rebut that in construing the Bylaws, the Court is limited by their text and may not consider extrinsic evidence such as the prospectus to alter its meaning.  YPF-MSJ at 14-17; YPF-Opp. at 12, Rep-MSJ at 24; Joint Opp. at 33-34; *see also Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 1:15-cv-02739-LAP 2020 WL 3034824, at *5 (S.D.N.Y. June 5, 2020) ("[The Prospectus] does not govern the parties' rights and obligations with respect to shares of YPF, the By-laws do.").  This Court also already found that "Plaintiffs have not identified a promise made in the IPO Prospectus, SEC filings, or elsewhere that is distinct from the obligations imposed by the Bylaws."[6]  MTD Order I, 2016 WL 4735367, at *16.

---

[6]   Inability to prove the contract claim is not a basis to reconsider dismissal of the promissory estoppel claim.  P-Opp. at 43 n.22; *cf, e.g.*, *Official Comm. of the Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167–68 (2d Cir. 2003).

*Fourth*, the argument that because the Board had broad powers to manage the Company, the *Company* had the "power . . . to require Argentina to undertake a tender offer, as well as the power to strip Argentina of the right to vote the shares," P-Opp. at 44-45, is a circular attempt to convert the Board's general powers into a particular Company obligation to shareholders.  The general powers Plaintiffs cite do not create any such particular obligations to enforce any tender offer or to strip an acquiring shareholder of any voting rights.  The Board had no such power and no such obligation.  And even if the Board did, under Argentine law YPF *as a company* does not.  In any event, on Plaintiffs' theory, it is the Board who was required to act and any breach of an obligation to act by the Board would give rise, at best, to a claim against the directors and not against the Company.  Pursuant to Article 274 of the GCL, directors are liable in their individual capacity *to* the company and its shareholders for any failure to perform their duties or to act in compliance with the laws, regulations, and bylaws.  Ex. 79 (Manóvil YPF Reply Rep.) ¶ 13; Ex. 58 (Manóvil YPF Rebuttal Rep.) ¶¶ 6, 17-18, 35-38; Ex. 27 (Kemelmajer Reb. Rep) ¶ 32.

*Fifth*, the argument that the Board had an obligation to ensure that shareholders comply with the Bylaws rests solely on a misquoted and irrelevant statement in an Argentine law treatise, P-Opp. at 45 (citing Ex. 28 (Rovira Rep.) ¶ 27 n. 23); Ex. 27 (Kemelmajer Reb. Rep) ¶ 31; YPF-MSJ at 26-28.  That is not a sufficient legal basis for such a sweeping claim.

### C. Adequate Causation Is a Necessary Element of Plaintiffs' Contract Claim That They Cannot Prove and Have Offered No Evidence to Support.

It is undisputed that under Argentine law, a *prima facie* claim for breach of contract requires Plaintiffs to show "an adequate causal connection" between YPF's actions and Plaintiffs' alleged harm.  YPF-MSJ at 28-29.  Plaintiffs must establish that if YPF had complied with its alleged obligations, then, "in the '*natural and ordinary course of things*,' the Republic would have issued a tender offer."  Ex. 27 (Kemelmajer Reb. Rep.) ¶ 79; YPF-MSJ at 28-30

9

(citing Ex. 27 at ¶¶ 46, 60, 62-65, 78, 80); YPF-Opp. at 15-16; Ex. 28 (Rovira Rep.) ¶ 22. Because an adequate causal link is an essential element of the claim, Plaintiffs bear the burden of proof; to defeat summary judgment, they must come forward with facts or legal argument sufficient to raise a genuine dispute requiring trial. *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 527 (2d Cir. 2004); *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 731 (2d Cir. 1992); *Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 264 (S.D.N.Y. 2001).

YPF demonstrated that it is entitled to summary judgment because Plaintiffs have no evidence to support, and cannot prove, the requisite causal link between YPF's alleged breach and Plaintiffs' alleged damages.  YPF-MSJ at 28-30; *see also* ECF No. 371 ("P-MSJ") at 2-3; Ex. 27 (Kemelmajer Reb. Rep.) ¶¶ 60-65, 78-81; Ex. 29 (Garro Rep.) ¶¶ 8(a), 13; Ex. 28 (Rovira Rep.) ¶¶ 11(c), 22.  Plaintiffs' position on the tender offer damages further precludes a finding of causation as to YPF: through their own documents and evidence, Plaintiffs insist that they were harmed because they did not receive a tender offer from the Republic, and acknowledge that YPF could not have altered that outcome through any performance of its own.  YPF-MSJ at 29-30.  No evidence in the record suggests otherwise.  *Id.* at 28-30.

Plaintiffs offer no meaningful response to YPF's motion.  Plaintiffs do not dispute that causation is a necessary element of their claim for breach of contract under Argentine law.  *Id.* at 28-29; P-MSJ at 25.  They cannot dispute that Plaintiffs bear the burden of proving the elements of their own claims at trial, or that the non-movant must respond with admissible evidence sufficient to create a genuine issue of material fact in order to defeat summary judgment.  YPF-MSJ at 12.  They do not point to any admissible evidence of causation: they offer no evidence to suggest that any action by YPF would have compelled Argentina to make a tender offer, no testimony by any witness to suggest that YPF action would or could have altered the Republic's

approach, no testimony by any expert that any form of corporate objection would have driven the sovereign to raise debt and/or spend cash to acquire the balance of YPF's shares – rather than take some other course of action.  *See generally* P-Opp.; Plaintiffs' Response to Defendants' 56.1.  They offer no documents whatsoever evidencing a causal link between YPF and their alleged harm.  In response to YPF's motion, Plaintiffs have not come forward with the requisite evidence to show that if only YPF had "enforced" Sections 7 and 28 of the Bylaws or blocked the Republic from voting, Plaintiffs would have received a tender offer and avoided the harm they claim.[7]  They have failed to create a genuine question of material fact as to whether it was lack of action by YPF (not something else) that caused Plaintiffs' alleged damages – and that failure warrants dismissal.

Because Plaintiffs cannot carry their burden on the causation element of their *prima facie* case against YPF, they responded to this point with a dodge:  they recast YPF's motion as raising the affirmative defense of *force majeure*, and argue that the burden is on *YPF* and not on them. *See* P-Opp. at 52-56; 53 n.27.  That is wrong. Although YPF preserved that affirmative defense for trial, it did not move for summary judgment on that basis.  Plaintiffs' argument about *force majeure* – blatantly mischaracterizing YPF's motion in its transparent attempt to shift their burden – is non-responsive and irrelevant. *Petitt*, 153 F. Supp. 2d at 252-53, 255 (granting summary judgment dismissing breach of contract claim where plaintiffs could not establish causation and opposed with irrelevant theory).  Whether or not YPF can prove *force majeure* at trial is not the issue now.  The only question now is whether Plaintiffs have come forward with

---

[7]     Plaintiffs only engage with the factual record to object that YPF emphasizes one statement by their expert, who conceded that YPF "***could not force Argentina to do anything***." YPF-MSJ at 30 (quoting Ex. 33 (Garro Tr.) at 403:24-25) (emphasis added); YPF-Opp. at 15 (same). YPF's expert agrees, Ex. 27 (Kemelmajer Reb. Rep.) ¶ 80.

sufficient evidence that *YPF* caused their alleged damages to warrant trial on that question. Because they have not, dismissal is appropriate. *See Point Prod. A.G. v. Sony Music Entm't, Inc.*, 215 F. Supp. 2d 336, 341–47 (S.D.N.Y. 2002) (granting summary judgment on causation); *Petitt*, 153 F. Supp. 2d at 259–60, 264 (same).

## III.   THE SECTION 7(H) CLAIM SHOULD BE DISMISSED BECAUSE ANY SUCH OBLIGATION WAS LEGALLY SUPERSEDED AND EXCUSED.

Nothing in Plaintiffs' Opposition rebuts YPF's showing that the mandate of Article 13 of the Public Interest Law requiring Argentina to vote the disputed shares directly conflicts with any reading of Section 7(h) of the Bylaws to require YPF to prevent such a vote. Under Argentine law, the Public Interest Law supersedes and excuses any such conflicting commercial obligation, precluding liability.  YPF-MSJ at 30-33. Yet again, this is not an issue the Second Circuit decided, P-Opp. at 71; *supra* § I, and Plaintiffs' arguments are inapposite:

- The argument that the public purposes of Article 13 were "limited by Section 7(h)," P-Opp. at 70, improperly inverts the precedence of public interest law over private law in Argentine law.  In a conflict, as here, the public law prevails and excuses private liability.

- The argument that the Republic stepped into Repsol's shoes, and was limited by Section 7(h) just as Repsol would have been, *id.* at 70-71, ignores the fact that Article 13 specifically mandated the Republic vote. The conflict is unavoidable.

- The obligations are not reconcilable: the Public Interest Law took effect on May 7, 2012, nearly a month before the vote at the June 4, 2012 shareholders' meeting. *Id.* at 71-72. Section 7(h) was superseded in May before it could have been triggered in June.

- Finding one provision of the Public Interest Law conflicts with, supersedes, and excuses a provision in the corporate Bylaws does not require a judicial declaration of absolute nullity of the Bylaws, P-Opp. at 72; Argentine law permits a narrower response. *See* Ex. 22 (Comadira Rep.) ¶¶ 57-73; Ex. 85 (Comadira Tr.) at 87:14-88:1.

Plaintiffs offer no meaningful rebuttal to the conflict between Article 13 of the Public Interest Law and Section 7(h) of the Bylaws, which is yet another reason to dismiss that claim.

IV.   **PLAINTIFFS FAILED TO ESTABLISH THAT ARGENTINE LAW PERMITS A CLAIM FOR DAMAGES AGAINST YPF FOR BREACH OF THE BYLAWS.**

Plaintiffs' attempt to impose billions of dollars in contractual damages and interest on a publicly-traded corporation claiming that one of its shareholders did not make an offer to buy out others is extraordinary.  As YPF has amply demonstrated, it is not a claim that Argentine law recognizes.  YPF-MSJ at 33-34.  That is not a quirk of Argentina.  Corporate law regimes around the world – including in Delaware – limit the rights of shareholders to seek damages against the corporation itself, Ex. 78 (Pargendler Reb. Rep.) ¶¶ 34-36 (noting that generally "the only monetary claims that shareholders may assert directly against corporations are claims for dividend payments or for liquidation proceeds under exceptional circumstances"), and do not recognize claims like this.  *Id.*  Only *express* obligations naming the Company as, effectively, the bilateral counterparty, are enforceable.  Plaintiffs cite no law to the contrary and the cases they rely upon fall into this narrow exception (*i.e.*, an express obligation naming the company as counterparty) to the general rule against direct shareholder damages claims – and do not apply governing Argentine law.  In *Oliveira v. Quartet Merger Corp.*, 126 F. Supp. 3d 424, 425-26 (S.D.N.Y. 2015), the certificate of incorporation stated that the "Corporation shall" convert a shareholder's IPO shares into cash on demand.  In *Gale v. Bershad*, Civ. A. 15714, 1998 WL 118022, at *1 (Del. Ch. March 4, 1998), the certificate of incorporation allowed the "corporation" to redeem shares.  And courts reject claims where no such specificity appears in the governing documents.  *See, e.g.*, *Traher v. Republic First Bancorp, Inc.*, 432 F. Supp. 3d 533, 534 (E.D. Pa. 2020) (plaintiffs failed to "establish a literal breach of the corporation's articles"); *In re Pearl*, No. 2:16-bk-20305, 2017 WL 932951, at *10-11 (Bankr. E.D. Ky. Mar. 8, 2017) (corporate bylaws do not include an express obligation to act).

13

Plaintiffs misrepresent two Argentine decisions, *Zullo* and *Gutiérrez*, to argue that they "squarely recognized that actions arising from corporate bylaws *can* be brought against the corporation," P-Opp. at 50. That is not what the cases say. In *Zullo,* the plaintiff (1) filed a claim for damages against the company's directors – *not the company itself;* and (2) brought the claim based on express remedies under the GCL – *not based on a breach of contract theory*. *See* Ex. 65 (Kemelmajer Reply Rep.) ¶ 20(a) (citing Ex. 86 (*Zullo*)); Ex. 79 (Manóvil YPF Reply Rep.) ¶ 18(a). In *Gutiérrez*, which arose from the defendant shareholder's fraudulent acts, "[t]he Appellate Court expressly rejected the company's liability, holding that the company cannot be jointly and severally liable for conduct that is directly attributable to individual shareholders." Ex. 79 (Manóvil YPF Reply Rep.) ¶ 17(a); *see also* Ex. 65 (Kemelmajer Reply Rep.) ¶¶ 20(c), 21 ("*Gutiérrez* demonstrates that Argentine law does *not* allow damages claims by a shareholder against the company in which it holds shares.") (citing Ex. 38 (*Gutiérrez*)). The only liability found there was "on the basis of Article 1109 [of the Civil Code], which exclusively governs liability in tort." *See* Ex. 31 (Manóvil Republic Reply Rep.) ¶ 100 n.198.

Neither those two cases nor anything else Plaintiffs cite provides any legal basis to proceed with the contractual damages claim against the Company – and Argentine law prohibits it. YPF-MSJ at 16 n.11, 33-34. Where governing foreign law "does not recognize plaintiff's cause of action," as here, the claim fails as a matter of law and should be dismissed. *In re BP p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 310 (S.D.N.Y. 2007).

## V.   ARGENTINE LAW PROHIBITS YPF CORPORATE LIABILITY FOR ACTS BY THE REPUBLIC'S INTERVENTION TEAM OR THE CNV.

In order to establish liability as to YPF under Argentine law, Plaintiffs must show that YPF itself owed and breached a contractual obligation. YPF-MSJ at 13-28. Alleged breaches by the Republic, including during any period when it "controlled" YPF, are not enough.

14

Plaintiffs' attempts to identify actions by YPF that breached any alleged obligations are utterly confused.  Nothing that they point to involves an action by YPF.  The opinions expressed by Secretary Kicillof, before Argentine Senate Committees on April 17, 2012, P-MSJ at 26-30, were his own statements, not those of YPF.  YPF-Opp. at 13–15.[8]  Plaintiffs' assertion that YPF is liable for the actions taken by the Republic's Intervenor, Minister De Vido, P-Opp. at 48–49, on the theory that he "stepped into the shoes of the YPF Board," *id.*, disregards Argentine law holding that an intervenor's actions in fulfillment of a public interest mandate are not attributable to the intervened Company.  *See* Ex. 79 (Manóvil YPF Reply Rep.) ¶ 6; Ex. 59 (Comadira Reb. Rep.) ¶ 10; *id.* ¶ 18 ("[A]ctions taken by the Republic's Intervenor in fulfillment of his public interest mandate . . . cannot be attributed to YPF."); Ex. 80 (Kemelmajer Tr.) at 93:6–94:10. Intervenors act "in representation of the Republic" and "displace" the company's "natural organs."  Ex. 59 (Comadira Reb. Rep.) ¶ 12 (quoting National Court of Appeals in Commercial Matters, Division B, 10/11/1999, *Montilla, Isaac L., et al. v. Resero S.A., et al.*, at DJ2000-3, 336).  Under Argentine law, as explained in *Montilla*, intervention "'***prevent[s] the attribution of liability [to the company] for acts performed by those who directed and administered it***.'"  *Id.* Plaintiffs' argument that YPF is liable for the Intervenor's acts or had the "power and obligation" to control the Republic (P-Opp. at 41–52) after the Republic took control of YPF (*Id.* at 20-27) is directly contrary to *Montilla*.  YPF could not control its controller.  *See* Hicks Decl. Ex. 26 (Coffee Reb. Rep.) ¶ 31 ("YPF[] had no effective recourse").  The claim that the Intervention team's acts are attributable to YPF under Article 1763 of the Civil and Commercial Code fails because that Code is not applicable to this case and in any case, the article applies to liability *in tort*, not contract claims.  Ex. 79 (Manóvil YPF Reply Rep.) ¶ 36, Ex. 35 (Rovira Reb. Rep.) ¶ 35

---

[8]    Kicillof's statements were not made for and are not binding on YPF.  YPF-Opp. at 13-15.

n.23; Ex. 29 (Garro Rep.) ¶ 10. Finally, Plaintiffs do not dispute that it was the President of the Comisión Nacional de Valores ("CNV") – the Argentine SEC equivalent – who presided over the June 4, 2012 Shareholders' Meeting, not a YPF agent.  *See* Plfs' Resp. to YPF's 56.1 at ¶¶ 39-40.  Plaintiffs provide no legal or factual basis to attribute the CNV President's acts to YPF.

## VI.    THE REAL PARTY IN INTEREST HAS FAILED TO RATIFY.

As for the sale of the claims to a Burford subsidiary, Prospect, which has failed to ratify this action as the real party in interest – Plaintiffs do not seriously contest the undisputed facts. Their baseless arguments can be briefly dispensed with: (1) a "no assignment" provision is indirect evidence of simulation, not proof there was none,  Ex. 62 (Conthe Rep.) ¶¶ 127-28; (2) no Spanish court has approved the Claims Prosecution Agreement ("CPA"), nor determined it was not simulated, nor is it consistent with Petersen's liquidation plan, ECF No. 396-14, Hicks Decl. Ex. 145 (Conthe Reply Rep.) ¶¶ 15-41; (3) a contract need not violate Spanish public policy to be simulated (although simulation did enable Petersen and Prospect to avoid consequences of U.S. and Spanish law).  *Id.* ¶¶ 42-47, 54-48.  Rule 17 requires ratification by the real party in interest, P-Opp. at 60-61, and Prospect's continued failure to do so requires dismissal of Petersen's claims.  YPF-MSJ at 34-35.

### CONCLUSION

For the foregoing reasons and those stated in each of Defendants' briefs, the Court should grant summary judgment and dismiss in their entirety all remaining claims against YPF.

Dated: June 23, 2022                                 Respectfully Submitted,
      New York, New York

                                        */s/ Mark P. Goodman*
                                        Mark P. Goodman
                                        Shannon Rose Selden
                                        Carl Riehl
                                          Wendy B. Reilly
                                        DEBEVOISE & PLIMPTON LLP
                                        919 Third Avenue

16

New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)
mpgoodman@debevoise.com
srselden@debevoise.com
criehl@debevoise.com
wbreilly@debevoise.com

*Counsel to Defendant YPF S.A.*

17