**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------- x
PETERSEN ENERGÍA INVERSORA,
S.A.U. and PETERSEN ENERGÍA, S.A.U.,

        Plaintiffs,

        v.

ARGENTINE REPUBLIC and YPF S.A.,

        Defendants.
------------------------------- x

Case No.: 1:15-CV-02739 (LAP)

------------------------------- x
ETON PARK CAPITAL MANAGEMENT,
L.P., ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

        Plaintiffs,

        v.

ARGENTINE REPUBLIC and YPF S.A.,

        Defendants.
------------------------------- x

Case No.: 1:16-CV-08569 (LAP)

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**ADDITIONAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

1007950537

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Defendants the Argentine Republic ("Argentina" or "the Republic") and YPF S.A. ("YPF") (collectively with Argentina, "Defendants") respectfully submit this response ("Response") to Plaintiffs Petersen Energía Inversora, S.A.U. ("PEISA"), Petersen Energía S.A.U. ("PESA" and, together with PEISA, "Petersen"), Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund L.P.'s (collectively, "Eton Park" and, together with Petersen, "Plaintiffs") Additional Rule 56.1 Statement of Material Facts (ECF No. 395[1]) ("Additional 56.1 Statement" or "P-ASUF").

## I. GENERAL OBJECTIONS

Plaintiffs' Additional 56.1 Statement does not comply with Local Rule 56.1. As with Plaintiffs' Initial Rule 56.1 Statement of Material Facts (ECF No. 376) ("Initial 56.1 Statement" or "P-SUF"), their Additional 56.1 Statement contains purported facts that are irrelevant and immaterial for summary judgment, and paragraphs that improperly mix factual averments with legal arguments. Defendants therefore incorporate by reference and restate here the general objections made in Defendants' Response to Plaintiffs' Initial 56.1 Statement (ECF No. 401).

## II. RESPONSE TO PLAINTIFFS' ADDITIONAL STATEMENT OF MATERIAL FACTS

1. When Repsol made its tender offer for YPF in 1999, that offer was to "purchase the Shares and/or ADS validly tendered and not properly withdrawn prior to the Expiration Date." Hicks Ex. 152 (YPFPT-HARRIS00002676 at 2786, 2798). The Expiration Date was 54 days after the offer to purchase (April 30, 1999 to June 23, 1999). *See id.*; *see also id*. at 2694, 2760, 2777, 2779, 2781-82, 2785-86, 2789-90, 2793-94, 2797-98.

---

[1] All references to "ECF No." refer to filings in Case No. 1:15-CV-02739.

>   **Defendants' Response:** Undisputed that the quoted language and cited terms appear in YPFPT-HARRIS00002676. Defendants dispute that this fact is material to the issues in this case.

2. When Petersen made its tender offer for YPF, *see* Pls. 56.1 ¶ 63, it announced: "The Offer may be accepted by holders of Shares during the Acceptance Period subject to the requirements of applicable laws and regulations." Hicks Ex. 153 (AR00012170 at 171). The Acceptance Period was 21 business days. *See id.*

>   **Defendants' Response:** Undisputed that the quoted language and cited terms appear in AR00012170. Defendants dispute that this fact is material to the issues in this case.

3. Argentina maintained control of YPF from April 16, 2012 through May 2014. Goodman Ex. 36 (Garro Jan. 2022 Report for Pls. ¶ 37 & n.71) (citing *Giustiniani v. YPF SA*, Supreme Ct. of Argentina, 10 Nov. 2015, LL-2016-A-361, TR LALEY AR/JUR/44820/2015); Hicks Ex. 36 (Rovira Jan. 2022 Report for Pls. ¶ 7(a) n.2).

>   **Defendants' Response:** Defendants dispute this statement because the phrase "maintained control" is vague and ambiguous and asserts a legal conclusion. Undisputed that Decree 530 of 2012, dated April 16, 2012, provided for the temporary intervention of YPF "with the purpose of ensuring the company's continuity, the preservation of its assets, the supply of fuels and the satisfaction of the country's needs[,]" Goodman Ex. 16 (Decree 530) at 9, and that Public Law No. 26,741 (the "Public Interest Law"), effective May 7, 2012, required the Argentine Executive Branch to temporarily occupy Repsol's YPF shares declared of public interest and subject to expropriation and to "exercise all of the rights" attaching to such shares, including voting, Goodman Ex. 15 (Public Interest Law) § 13, until the expropriation of such shares was completed in May 2014. *See* Plaintiffs' Responses to YPF's Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (ECF No. 394) at 15-16 (Response to ¶ 48); Goodman Ex. 52 (Deposition Transcript of S. Eskenazi) at 136:12-13 ("[I]t was 2014 when Repsol lost their shares."); Giuffra Ex. 67 (YPF SEC Form 6-K, dated May 9, 2014). Defendants dispute Plaintiffs' characterization of the Argentine Supreme Court's holding in *Giustiniani* as incomplete and misleading.

4. Argentina received dividends issued by YPF on November 19, 2012 and August 28, 2013 from the Repsol shares that Argentina occupied. Hicks Ex. 154 (Affidavit of Gustavo

-2-

Naveira in Supp. of Pls. Arguments at 49, *Repsol YPF, S.A. v. Republic of Argentina*, No. 1:12-cv-03877-LAP (S.D.N.Y. July 26, 2013), ECF No. 18) (YPF stating that "the exercise of all rights pertaining to the Company's shares declared to be of public use and subject to expropriation belongs to the Argentine Executive Branch" and that it "paid the dividends pertaining to such shares to the Argentine State"); Hicks Ex. 109 (Settlement Agreement at 2) (Repsol agreeing to settle its claims against Argentina for the receipt of dividends by Argentina during the temporary occupation of its shares).

> **Defendants' Response:** Undisputed that YPF distributed dividends scheduled for payment on November 19, 2012 and August 28, 2013, including with respect to those YPF shares held by Repsol that were subject to expropriation as required by the Public Interest Law. Goodman Ex. 15 (Public Interest Law) § 13. Defendants dispute that this fact is material to the issues in this case.

5.  The Spanish Bankruptcy court approved Petersen's proposed liquidation plan contemplating the award of financial rights to Petersen's claim. Giuffra Ex. 68 (PESA Liquidation Plan Approval at 1-2).

> **Defendants' Response:** Undisputed that the Spanish Bankruptcy Court approved the PESA and PEISA liquidation plans (the "Liquidation Plans") on November 24, 2014, which contemplated a sale or assignment of Petersen's claims, or, if sale or assignment were not possible, litigation financing, subject to certain conditions that the Prospect bid did not satisfy. Goodman Ex. 62 (Conthe Rep.) at ¶¶ 23-34; Hicks Ex. 145 (Conthe Reply Rep.) at ¶¶ 20-21, 33-41. Disputed that Giuffra Ex. 68 contains the Spanish Bankruptcy Court's approval of the Liquidation Plans. Giuffra Ex. 68 is a letter by the Petersen insolvency administrator to the Spanish Bankruptcy Court informing it of the result of the bidding process conducted by the insolvency administrator and the execution of the Claim Prosecution Agreement. Giuffra Ex. 68 (PESA Insolvency Administrator's March 13, 2015 letter). There is no evidence that the Spanish Bankruptcy Court reviewed or approved the specific terms of the Claim Prosecution Agreement or execution of that agreement. Hicks Ex. 145 (Conthe Reply Rep.) at ¶ 20-21.

6.  Prospect was the winning bidder in a court-approved bidding process for the rights to provide financing and litigation management services to the Petersen estate. Argentina 56.1 ¶

1007950537

100; Giuffra Ex. 68 (PESA Liquidation Plan Approval at 2); Hicks Ex. 149 (Bogart Tr. 69:2-4) (Prospect "put in a bid in the process that the [Spanish] Bankruptcy Court had set forth").

> **Defendants' Response:** Undisputed that Prospect was the winning bidder as determined by Petersen's insolvency administrator. Plaintiffs' characterization of the rights awarded to Prospect pursuant to the bid as rights "to provide financing and litigation management services" is inaccurate and disputed. Prospect was the winning bidder of "[t]he exclusive right to direct, manage, finance and settle" Petersen's claims "that arise[] or originate[] or is related to facts or circumstances related to or caused by the expropriation of the shares of stock that [Repsol] held in [YPF]." Giuffra Ex. 68 (PESA Insolvency Administrator's March 13, 2015 letter) at 2-3. Plaintiffs' characterization of the bidding process as "court-approved" is inaccurate and disputed. Prospect's bid was not compliant with the Liquidation Plans approved by the Spanish Bankruptcy Court. Goodman Ex. 62 (Conthe Rep.) at ¶¶ 29-32; Hicks Ex. 145 (Conthe Reply Rep.) at ¶¶ 33-41. There is also no evidence that the Spanish Bankruptcy Court reviewed or approved the specific terms of the Claim Prosecution Agreement or execution of that agreement. Hicks Ex. 145 (Conthe Reply Rep.) at ¶¶ 20-21.

7. The subsequent Claims Prosecution Agreement formalizing the funding of Petersen's claim was "the result of the public execution of an un-challenged, court-approved liquidation plan, conducted in the context of bankruptcy liquidation proceedings." Hicks Ex. 144 (Tirado Dec. 2021 Report for Pls. ¶ 11); Hicks Ex. 147 (PT_TIRADO_000000194 at -203) (Section 8 ruling); Hicks Ex. 133 (PESA Bankr. Ct. Order ¶ 8) (recognizing and summarizing the economic terms of the CPA).

> **Defendants' Response:** Disputed as irrelevant, inaccurate, and misleading. Plaintiffs' expert's characterization of the process by which the Claim Prosecution Agreement was formalized is a legal conclusion, not a fact, and is disputed. Hicks Ex. 145 (Conthe Reply Rep.) at ¶¶ 19-21, 33-41. In addition, Prospect and Petersen included a broad confidentiality provision in the Claim Prosecution Agreement to shield the specifics of the agreement from public review. Goodman Ex. 62 (Conthe Rep.) at ¶¶ 118-122.

8. The text of the Claims Prosecution Agreement instructs Prospect and Petersen to collaborate on both the direction of the litigation and settlement. *See* Goodman Ex. 70 (CPA § 4.3(b), (c), PT_000008143 at 8151) (listing Prospect's obligations) ("(b) The Capital Provider

shall keep the Counterparty reasonably informed of the status of the Claims . . . (c) In recognition of the Insolvency Administration's interest, on behalf of the Counterparty, in the protection of the Counterparty's Entitlement, and the value that its cooperation hereunder may bring to the Capital Provider in the prosecution of the Claims, the Capital Provider shall give reasonable, good faith consideration to any recommendations of the Counterparty regarding the Capital Provider's conduct of the Claims and shall provide a reasoned response thereto").

>**Defendants' Response:** Undisputed that the quoted text in the parentheticals appears in Section 4.3 of the Claim Prosecution Agreement. Disputed that the obligation to "give reasonable, good faith consideration to any recommendations" from Petersen amounts to an instruction to collaborate on the direction of the litigation and settlement or limits Prospect's decision-making authority and control of the prosecution and resolution of the claims. Section 4.3(c) of the Claim Prosecution Agreement goes on to state that Petersen "shall reasonably defer to [Prospect] in selecting the course of action." Goodman Ex. 70 (CPA) at PT_000008151. Further, as clearly stated in the irrevocable power of attorney, Prospect retains full and exclusive authority to direct, manage, and settle the claims. Goodman Ex. 70 (CPA) at PT_000008167; Goodman Ex. 62 (Conthe Rep.) at ¶¶ 106-113.

Dated: June 23, 2022             Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:    (212) 558-4000
Facsimile:     (212) 558-3588

*Counsel for the Argentine Republic*

/s/ *Mark P. Goodman*
Mark P. Goodman
Shannon Rose Selden
Dietmar W. Prager

-5-

        Carl Riehl
        Wendy B. Reilly
        J. Robert Abraham

        DEBEVOISE & PLIMPTON LLP
        919 Third Avenue
        New York, New York  10022
        Telephone:    (212) 909-6000
        Facsimile:    (212) 909-6836

        *Counsel for YPF S.A.*