# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

April 14, 2023

<u>Via ECF</u>

The Honorable Loretta A. Preska,
   United States District Court for the Southern District of New York,
     500 Pearl Street,
      New York, NY  10007.

     Re:    *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*,
          No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v.
          <u>*Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")</u>

Dear Judge Preska:

        On behalf of the Argentine Republic, I write to provide its position on the scope and timing of the upcoming trial.  As directed by the Court, the parties have conferred, but fundamentally disagree on next steps.  The Republic has filed today a motion that the Court reconsider its decision to grant summary judgment to Plaintiffs, pending hearing from the parties' experts on Argentine law during the upcoming damages trial.  "It is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment."  *In re United States*, 733 F.2d 10, 13 (2d Cir. 1984).  Hearing from the experts in person will give the Court the best opportunity to resolve correctly these complex issues of Argentine public and corporate law, particularly since these experts already will be traveling 6,000 miles to testify on the damages issues.

        The Court should fix a trial date for approximately three months from now, which is what the parties agreed and the Court so-ordered in a February 2022 scheduling order that is already in place.  (Stipulation and Order Regarding Summary Judgment Briefing and Trial Schedule, *Petersen* ECF No. 350, *Eton Park* ECF No. 280 ("Scheduling Order").)  Plaintiffs, by contrast, want to re-trade the parties' earlier stipulation, rush to a "hearing" in three weeks, and have this Court enter a multi-billion dollar judgment in their favor based on a grand total of one day's worth of testimony and argument.  Plaintiffs' approach is unworkable and would severely prejudice the Republic's preparation and presentation of its defense in light of the importance and scope of the upcoming trial.

The Honorable Loretta A. Preska                                                -2-

1.      The parties already stipulated to a schedule last year and the Court so-ordered that stipulation.  The Scheduling Order provides that "*[i]f trial is necessary after the Court's ruling on the Parties' motions for summary judgment*," the following schedule will apply:

- "the joint pretrial order required by th[e] Court's Individual Practice 3.A shall be due 60 days after the Court issues that ruling";

- "the filings required by th[e] Court's Individual Practice 3.B shall be due 90 days after the Court issues that ruling"; and

- "subject to the Court's schedule and other immovable conflicts, including other trials involving lead counsel in these cases, trial in these cases shall begin 115 days after the Court issues that ruling."

(Scheduling Order ¶¶ 3-5.)

Thus, under this Court's Order:  the joint pretrial order is due May 30, the other pretrial filings are due on June 29, and trial should be set on or after July 24, 2023.  There is no reason to deviate from that schedule.  Plaintiffs assert that the issues that remain to be tried under this Court's summary judgment order are "narrow," but the Scheduling Order applies, by its own terms, to *any* scenario where a "trial is necessary."  Moreover, in negotiating the stipulation, Defendants took the position that the parties should review the Court's summary judgment decision before deciding on a proposed timeframe for trial.  Plaintiffs rejected that proposal and insisted on hard wiring firm dates into the schedule.  That is why the stipulation so-ordered by this Court covered any circumstance where a "trial is necessary."

2.      Plaintiffs also disregard the enormous stakes of the upcoming trial.  Plaintiffs are seeking what may become one of the largest judgments ever entered in this District, and the largest ever entered *anywhere* in this country against a foreign sovereign.  Specifically, Burford—the litigation "funder" that stands to gain the lion's share of any recovery here—put out a press release on April 2, 2023 stating that Plaintiffs could recover damages ranging from "$4.5 billion for Petersen and $550 million for Eton Park" to "$7.5 billion for Petersen and $900 million for Eton Park," plus "a very substantial amount of interest."  (Ex. 1 (Burford Press Release, April 2, 2023) at 3-4.)  Under Plaintiffs' theories (the Republic disagrees), pre-judgment interest alone could potentially reach $7.4 billion, substantially increasing any judgment.

3.      The Argentine law experts will testify on important and contested questions of Argentine law during the upcoming damages trial.  As the Court recognized, "there is an issue of fact as to when the Republic acquired control of the shares."  (Opinion and Order, *Petersen* ECF No. 437, *Eton Park* ECF No. 366 ("SJ Order") at 56.)  The parties will present evidence about "the precise date on which the Republic occupied 51% of YPF's shares or precisely what 'occupation' of the shares entailed and whether such 'occupation' is equivalent to 'control' of those shares." (*Id.* at 58.)  Plaintiffs (through three experts, Profs. Alfredo Rovira, Alejandro Garro, and Alberto Bianchi) contend that the Republic controlled 51% of YPF's shares on April 16, 2012, the date

The Honorable Loretta A. Preska                                                    -3-

that the Republic issued the Intervention Decree.  The Republic will show at trial that Plaintiffs' position is wrong.

Prof. Rafael Manóvil, the Republic's private law expert and the preeminent corporations law scholar in Argentina, has explained that "[t]he intervention did not grant the Republic control over any shares in YPF."  (Manóvil Reply ¶ 43.)  Judge Alejandro Uslenghi, one of the Republic's public law experts and a former judge of the Argentine Federal Court of Appeals on Administrative Matters, and Prof. Alfonso Santiago, another expert and well-regarded scholar on public law, have also explained that the Intervention Decree did not grant any rights over shares in YPF.  (*See* Uslenghi Rebuttal ¶¶ 38-41; Santiago Rebuttal ¶ 27 n.43).

The Court also "reserve[d] judgment" on "the precise [prejudgment interest] rate" that will apply in this case, which also turns on Argentine law.  (SJ Order at 63.)  There is substantial divergence between the parties' experts on that issue as well.  While Profs. Rovira and Garro assert that the rate hovers between 6% and 8% (*see* Rovira Opening ¶ 57; Garro Opening ¶ 41), Prof. Manóvil explains that Argentine courts have rejected that range and instead adopt interest rates between approximately 2% and 6% (*see* Manóvil Rebuttal ¶ 166).

4.       Indeed, precisely because of the billions of dollars at stake, and the fact that the Court's summary judgment decision turned on its resolution of a series of disputed questions of Argentine law, the Republic today filed a motion for reconsideration of the Court's summary judgment order.  That motion asks the Court to reconsider its decision to grant summary judgment to Plaintiffs on liability pending the live testimony of the parties' Argentine law experts.[1]  Courts in this District and elsewhere have routinely held hearings with foreign law experts before deciding disputed questions of foreign law,[2] which is especially appropriate here in light of the "substantial . . . weight" that is owed to a sovereign's interpretation of its own law.  *Animal Science Products, Inc.* v. *Heibei Welcome Pharmaceutical Co. Ltd.*, 138 S. Ct. 1865, 1875 (2018).  The fact that the Republic's (and presumably, Plaintiffs') experts on Argentine law will need to testify at the

---

[1] The disputed questions of Argentine law in this case include whether a shareholder can bring a breach of contract action against another shareholder for breach of a corporate bylaws provision *at all*; which body of Argentine law would govern Plaintiffs' claim for an alleged violation of corporate bylaws; whether the existence of a specific, non-damages penalty for breach of the bylaws precludes damages claims; whether Argentina's civil law system requires a party to request specific performance before requesting damages in a breach of contract action; and whether the Constitutional and statutory expropriation law of the Argentine Republic forecloses Plaintiffs' claims.  (*See* Argentina's Memorandum of Law in Support of Motion for Reconsideration, *Petersen* ECF No. 440 at 2, *Eton Park* ECF No. 369 at 2.)

[2] *U.S. Fid. & Guar. Co.* v. *Petroleo Brasileiro S.A.-Petrobras*, 2001 WL 300735, at *22 (S.D.N.Y. Mar. 27, 2001) (Koetl, J.) (requiring a hearing on disputed issues of foreign law); *Galu* v. *Swissair: Swiss Air Transp. Co.*, 734 F. Supp. 129, 131-32 (S.D.N.Y. 1990) (Patterson, J.), *aff'd* 923 F.2d 842 (2d Cir. 1990) (same); *Republic of Ecuador* v. *ChevronTexaco Corp.*, 499 F. Supp. 2d 453, 454 (S.D.N.Y. 2007) (Sand, J.) (same).

The Honorable Loretta A. Preska                                              -4-

damages trial is why the Court should hear the live testimony and keep an open mind about its conclusions on Argentine law in its summary judgment order.

*        *        *

Given the enormous financial stakes of this litigation, the Republic respectfully requests that it be afforded the opportunity to present fully its case on these complex issues of fact and Argentine law.  The Court should schedule a trial date consistent with the Scheduling Order in place.  The Republic anticipates that the trial would last approximately five days (depending in part on the length of Plaintiffs' case).

Respectfully,


*Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

cc:      Counsel of Record (via ECF)