UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br> Plaintiffs, <br><br> -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. <br><br> ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., <br><br> Plaintiffs, <br><br> -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | Case Nos.: <br><br> 1:15-cv-02739-LAP <br> 1:16-cv-08569-LAP |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE ARGENTINE REPUBLIC'S MOTION FOR RECONSIDERATION AND REHEARING**

CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV

KING & SPALDING LLP

Israel Dahan
Laura Harris
Reginald R. Smith

KELLOGG, HANSEN, TODD, FIGEL
 & FREDERICK, P.L.L.C.

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

LEGAL STANDARD......................................................................................................................2

ARGUMENT ...................................................................................................................................3

I.  THERE IS NO BASIS TO RECONSIDER THE ISSUES OF ARGENTINE
    LAW RESOLVED AT SUMMARY JUDGMENT .............................................................3

II. THERE IS NO BASIS TO RECONSIDER THE TWO DAMAGES ISSUES...................8

    A.  Argentina acquired control of Repsol's shares before May 7, 2012.........................8

    B.  Prejudgment interest should be calculated using Argentina's
        commercial rate........................................................................................................13

CONCLUSION...............................................................................................................................14

i

## TABLE OF AUTHORITIES

Page(s)

Cases

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) .......................... 3, 13

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
 262 F.R.D. 293 (S.D.N.Y. 2009) ............................................................................................... 7

*Belgrade v. Interenergo, Inc.*, 1998 WL 661481 (S.D.N.Y. Sept. 24, 1998) ................................. 7

*Buchwald v. Renco Grp., Inc.*, 2014 WL 4207113 (S.D.N.Y. Aug. 25, 2014) ............................... 7

*Castillo v. Cessna Aircraft Co.*, 2010 WL 11505745 (S.D. Fla. July 22, 2010) ............................ 7

*Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40 (2d Cir. 2014) ................... 3

*Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678 (S.D.N.Y. 2011) ............................ 2, 3

*Faggionato v. Lerner*, 500 F. Supp. 2d 237 (S.D.N.Y. 2007) ........................................................ 6

*Fed. Republic of Germany v. Elicofon*, 358 F. Supp. 747 (E.D.N.Y. 1970) ................................. 7

*Galu v. Swissair: Swiss Air Transp. Co., Ltd.*, 734 F. Supp. 129 (S.D.N.Y. 1990) ....................... 7

*Gibbs ex rel. Est. of Gibbs v. CIGNA Corp.*, 440 F.3d 571 (2d Cir. 2006) ................................... 8

*In re Motors Liquidation Co.*, 957 F.3d 357 (2d Cir. 2020) .......................................................... 9

*In re Vitamin C Antitrust Litig.*, 837 F.3d 175 (2d Cir. 2016) ...................................................... 4

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998) ................... 6

*Kingstown Cap. Mgmt., L.P. v. Vitek*, 2022 WL 3970920 (2d Cir. Sept. 1, 2022) .................... 1, 4

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) ........................................................ 5

*Petersen Energía Inversora S.A.U. v. Argentine Republic*,
 895 F.3d 194 (2d Cir. 2018) .............................................................................................. 10, 14

*Petersen Energía Inversora S.A.U. v. Argentine Republic*,
 2020 WL 3034824 (S.D.N.Y. June 5, 2020) ........................................................................... 14

*Sealord Marine Co., Ltd. v. Am. Bureau of Shipping*,
 220 F. Supp. 2d 260 (S.D.N.Y. 2002) ....................................................................................... 6

*Torah Soft, Ltd. v. Drosnin*, 224 F. Supp. 2d 704 (S.D.N.Y. 2002) .............................................. 6

*Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185 (7th Cir. 1985) .......................................... 7

*U.S. Bank Nat'l Ass'n as Tr. to Bank of Am., N.A. v. KeyBank, Nat'l Ass'n*,
  2023 WL 2745210 (S.D.N.Y. Mar. 31, 2023) ............................................................................... 8

*U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*,
  2001 WL 300735 (S.D.N.Y. Mar. 27, 2001) ................................................................................ 7

*Westcon Grp., Inc. v. CCC Techs., Inc.*, 2023 WL 2058709 (S.D.N.Y. Feb. 16, 2023) ............ 3, 8

*Zuckerman v. Metro. Museum of Art*, 307 F. Supp. 3d 304 (S.D.N.Y. 2018) ............................ 3, 5

**Rules**

Federal Rule of Civil Procedure 44.1 ........................................................................................ 3, 4

Federal Rule of Civil Procedure 45 .............................................................................................. 7

**PRELIMINARY STATEMENT**

After seven years of litigation, this Court's 64-page summary judgment ruling has settled all but two issues in this case. The Court granted summary judgment against Plaintiffs and in favor of YPF. But, at the same time, this Court "grant[ed] summary judgment to Plaintiffs on their breach of contract claim against the Republic based on the Republic's failure to do what [YPF's] Bylaws unequivocally required it to do": make a tender offer to minority shareholders in the event of renationalization. *Petersen* ECF No. 437 at 24; *Eton Park* ECF No. 366 at 24 (the "Order") (emphases omitted). While this Court exhaustively considered details of Argentine law, its basic holding came down to a simple and universal principle: one cannot assuage investors with an express promise and then proceed to do the opposite. Now, Argentina wants a complete do-over, asking this Court to reconsider *all* of its rulings on Argentine law. Argentina does not point to any intervening change in the law or to any new evidence to justify its extraordinary request. Instead, it repeats its unavailing arguments and asserts that this Court's careful opinion constitutes clear error and manifest injustice. But the only manifest injustice in this case occurred back in 2012 when the Republic brazenly violated the express promises that were necessary for investors to inject new capital in the face of the Republic's checkered economic past. This Court should reject the Republic's request for a do-over and resolve the two narrow issues that remain.

Argentina's principal argument that this Court should hear from its Argentine law experts has no merit. As the Second Circuit recently reiterated, "disputes over foreign law – like all legal disputes – can be decided on the papers without a hearing." *Kingstown Cap. Mgmt., L.P. v. Vitek*, 2022 WL 3970920, at *2 (2d Cir. Sept. 1, 2022). That is especially true in this case, given that the Republic's blatant bait and switch violated basic principles of law that are nearly universal. Moreover, the Argentine law issues here were fully vetted by the parties through

voluminous briefing, extensive expert declarations, and lengthy depositions.  The Court's resolution of those issues rested not on expert credibility but on the substance of their opinions (and, in many cases, the Argentine code provisions and other legal authorities themselves).  This Court committed no error – much less manifest injustice – in resolving the issues without oral testimony.

Argentina also asks this Court to revisit two damages issues, neither of which warrants reconsideration.  First, Argentina asserts that its Answer cannot be read as an admission that it occupied Repsol's shares *before* the enactment of the Expropriation Law on May 7, 2012.  But that is exactly what the plain language of Argentina's Answer says, and this Court committed no error (much less manifest injustice) in holding Argentina to its pleading.  In any event, Argentina's strained post-hoc parsing of its pleading cannot obscure the overwhelming evidence that Argentina did in fact control Repsol's shares as of April 16, 2012, as Plaintiffs will demonstrate at the upcoming hearing.  Second, Argentina attempts to reduce the rate of prejudgment interest it will owe by arguing that Plaintiffs' case would have been litigated in a federal court on administrative affairs had it been brought in Argentina.  But that argument is a red herring, as the question of which court would have heard this case had it been brought in Argentina simply does not control what prejudgment interest rate this Court should apply.  It is the commercial nature of Argentina's obligation, not the Argentine court that might hypothetically have had jurisdiction if this case had been brought in Argentina, that establishes the range of interest rates to which this Court should look in exercising its discretion to set an appropriate prejudgment interest rate.  The motion for reconsideration should be denied.

## LEGAL STANDARD

"[R]econsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Drapkin v. Mafco Consol. Grp., Inc.*,

2

818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks & citation omitted).  A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Id.*

Motions for reconsideration "are properly granted only if there is a showing of:  (1) an intervening change in controlling law; (2) the availability of new evidence[;] or (3) a need to correct a clear error or prevent manifest injustice." *Drapkin*, 818 F. Supp. 2d at 696.  Manifest injustice – the only prong Argentina even attempts to invoke here — "is defined as an error committed by the trial court that is direct, obvious, and observable." *Westcon Grp., Inc. v. CCC Techs., Inc.*, 2023 WL 2058709, at *2 (S.D.N.Y. Feb. 16, 2023) (internal quotation marks & citation omitted).  The strict standard "provides relief only in the proverbial 'rare case.'" *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (alteration accepted) (internal quotation marks & citation omitted).

## ARGUMENT

**I.    THERE IS NO BASIS TO RECONSIDER THE ISSUES OF ARGENTINE LAW RESOLVED AT SUMMARY JUDGMENT**

This Court committed no error, much less manifest injustice, in resolving the relevant issues of Argentine law at summary judgment based on the written materials submitted by the parties.[1]  Federal Rule of Civil Procedure 44.1 makes clear that "a court's determination of foreign law [is] a matter of law rather than fact." *Zuckerman v. Metro. Museum of Art*, 307 F.

---

[1] Unless otherwise stated, this motion will use only the ECF number in the *Petersen* docket.

3

Supp. 3d 304, 316 (S.D.N.Y. 2018) (Preska, J.) (quoting *In re Vitamin C Antitrust Litig.*, 837 F.3d 175, 187 (2d Cir. 2016)). Thus, "disputes over foreign law – like all legal disputes – can be decided on the papers without a hearing." *Kingstown Cap. Mgmt., L.P.*, 2022 WL 3970920, at *2. Because a district court is "not required" to "h[o]ld a hearing pursuant to Rule 44.1," the decision not to do so cannot constitute legal error. *Id*. Indeed, Argentina has not identified a single case (and Plaintiffs are aware of none) in which a district court's decision not to hear in-person testimony from foreign law experts was considered legal error. That is dispositive: if there was no legal error, there can be no "manifest injustice" warranting reconsideration.

Against that backdrop, it is clear that this Court's decision that no live hearing on Argentine law was needed does not warrant reconsideration. While the parties exhaustively briefed many finer points of Argentine law, the basic principles that resolved this case on the merits are straightforward and nearly universal: one cannot make an express promise and then do the opposite while dismissing the possibility of compliance as a course for fools. The Republic raised a host of technical arguments in an effort to obscure this basic principle of law, but this Court saw through those efforts in a careful and thorough opinion that relied on extensive materials that left no room for credibility determinations. As this Court is well aware, the parties here provided the Court with abundant resources regarding the relevant Argentine legal issues, including translated versions of the controlling laws and cases[2] and comprehensive

---

[2] *See*, *e.g.*, ECF No. 364-114 (Decree 530/2012); ECF No. 364-116 (Decree 55/2011); ECF No. 364-117 (Executive Order 1106/93); ECF No. 364-118 (Argentine Law No. 26,741); ECF No. 364-119 (Civil Code art. 505); ECF No. 364-120 (Civil Code art. 521); ECF No. 364-121 (Civil Code art. 622); ECF No. 364-122 (Civil Code art. 889); ECF No. 364-123 (Civil Code art. 1083); ECF No. 364-124 (Civil Code art. 1197); ECF No. 364-125 (Civil Code art. 1723); ECF No. 377-5 (Argentine Law No. 24,145); ECF No. 377-17 (Decree No. 532/2012); ECF No. 377-37 (Argentine General Company Law); ECF No. 377-38 (*Gutíerrez Enedina y Otros v. Neumaticos Gutíerrez S.A.*); ECF No. 377-54 (Argentine Commercial Code, arts. 217 and 218);

expert opinions that were extensively tested through depositions and rebuttal reports.[3]  Those materials were more than sufficient for the Court to resolve the relevant issues on the papers, just as numerous other courts have done in similar circumstances.  *See*, *e.g.*, *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004) (relying on declarations and affidavits of Swiss legal experts to determine defendants could not invoke arbitration agreements); *Zuckerman*, 307 F.

---

ECF No. 377-55 (*Juan Carlos Sícaro v. YPF*); ECF No. 377-56 (*Mevopal S.A. v. Banco Hipotecario Nacional*); ECF No. 377-57 (*Motta v. Abraxas Producciones S.R.L.*); ECF No. 363-54 (Public Interest Bill 529/12); ECF No. 363-55 (Resolution S/N/2012 of the National Chamber of Deputies); ECF No. 363-56 (Resolution S/N/2012 of the National Senate); ECF No. 363-75 (Decree No. 732/2012); ECF No. 396-12 (*Zullo, Norberto vs. Kehoe, Roberto Eduardo y otros,*); ECF No. 407-4 (*Gatti v. Bulad*); ECF No. 407-7 (*Arana, Martín F. v. Muelles y Depósitos S.A. de Estibaje y Transporte*); ECF No. 407-21 (*ACE Seguros SA c. Transporte Don Francisco de Carlos Orlando Federico y otro s/ ordinario*); ECF No. 407-27 (Argentine Companies Law art. 123; Inspeccion General de Justicia Resolution No. 7/2005, art. 223; and Administración Federal de Ingresos Públicos General Resolution 3995-1995, art. 1); ECF No. 366-4 (*Matilde Leonie Juana Esquivillón de Igón y Elena Rita Igón de Almeyra v. Nación Argentina*); ECF No. 366-5 (*Bauzá, Horacio y otro v. Administración Nacional de Vialidad Nacional*); ECF No. 366-6 (*Puerto de San Nicolás v. Provincia de Buenos Aires*); ECF No. 366-7 (*Ferrocarril Central Argentino v. L. de Fusse*); ECF No. 366-8 (*Sociedad de Electricidad de Rosario*); ECF No. 366-9 (*Hidronor S.A. v. Provincia de Río Negro*); ECF No. 366-10 (*La Nación & Banco de la Nación v. Argal S.A.*); ECF No. 368-5 (*Camiño Trigo, Manuel v. Garcia, José A. y otro*); ECF No. 368-8 (*García, Néstor E. v. Ortea, Luís, y Cía*); ECF No. 368-10 (excerpts from Busso, Eduardo B., *Código Civil anotado*).

[3] ECF No. 364-25 (Bianchi Dec. 2021 Rep. for Pls.); ECF No. 391-9 (Bianchi Jan. 2022 Rep. for Pls.); ECF No. 364-39 (Bianchi Aff. in Supp. of Pls.' Mot. for Summ. J.); ECF No. 377-39 (Bianchi Tr. for Pls.); ECF No. 374-31 (Garro Sept. 2021 Rep. for Pls.); ECF No. 364-32 (Garro Dec. 2021 Rep. for Pls.); ECF No. 364-44 (Garro Aff. in Supp. of Pls.' Mot. for Summ. J.); ECF No. 377-36 (Garro Jan. 2022 Rep. for Pls.); ECF No. 377-33 (Garro Tr. for Pls.); ECF No. 374-35 (Rovira Oct. 2015 Decl. for Pls.); ECF No. 374-36 (Rovira Sept. 2021 Rep. for Pls.); ECF No. 374-37 (Rovira Dec. 2021 Rep. for Pls.); ECF No. 364-38 (Rovira Jan. 2022 Rep. for Pls.); ECF No. 364-46 (Rovira Aff. in Supp. of Pls.' Mot. for Summ. J.); ECF No. 377-32 (Rovira Tr. for Pls.); ECF No. 377-23 (Manóvil Sept. 2021 Rep. for Argentina); ECF No. 406-8 (Manóvil Dec. 2021 Rep. for Argentina); ECF No. 377-31 (Manóvil Jan. 2022 Rep. for Argentina); ECF No. 391-4 (Manóvil Tr. for Defs.); ECF No. 365-1 (Santiago Dec. 2021 Rep. for Argentina); ECF No. 363-13 (Santiago Tr. for Argentina); ECF No. 366-1 (Uslenghi Sept. 2021 Rep. for Argentina); ECF No. 366-03 (Uslenghi Jan. 2022 Rep. for Argentina); ECF No. 366-2 (Uslenghi Dec. 2021 Rep. for Argentina); ECF No. 374-64 (Uslenghi Tr. for Argentina).

Supp. 3d at 317 (relying on expert reports to conclude plaintiff "fail[ed] to meet the pleading standard for duress under Italian law"); *Faggionato v. Lerner*, 500 F. Supp. 2d 237, 245 (S.D.N.Y. 2007) (Preska, J.) (dismissing action for lack of standing based on Court's "interpretation of French law" using "the expert law declarations submitted by both parties"); *Torah Soft, Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 710 (S.D.N.Y. 2002) (relying on expert affidavits to grant summary judgment on breach of contract claim under Israeli law); *Sealord Marine Co., Ltd. v. Am. Bureau of Shipping*, 220 F. Supp. 2d 260, 272 (S.D.N.Y. 2002) (denying summary judgment on breach of contract claim where "each party ha[d] fully-briefed the issues . . . under Greek law and ha[d] submitted a number of subsequent affidavits and English translations of some of the foreign opinions and other materials").

Notably, Argentina offers no coherent explanation for why it believes that live testimony would have assisted the Court in resolving the issues of Argentine law presented here. Live testimony provides an opportunity to observe a witness's demeanor and assess their credibility. But this Court did not anchor any of its conclusions about Argentine law on the relative credibility of any of the experts who submitted opinions here—for good reason, as with questions of foreign law, "it is not the credibility of the experts that is at issue, it is the persuasive force of the opinions they expressed." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998). Argentina offers no special reason to believe that the credibility of any of the experts here would be relevant to the resolution of any (let alone *all*) of the Argentine legal issues that this Court resolved in its summary judgment decision.

Argentina accordingly cannot cite a single case holding that "[a] hearing is necessary" when foreign law experts "have offered directly contradictory positions." *Contra* Mot. at 7.[4] At most, Argentina's cases demonstrate that courts may find it useful to hold a live hearing when the written materials are inadequate, such as where the "[foreign] law has not been sufficiently developed for the Court," *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, 2001 WL 300735, at *22 (S.D.N.Y. Mar. 27, 2001),[5] or when experts' opinions have not been tested through cross-examination.[6] But those circumstances bear no resemblance to this case, where the Court was thoroughly briefed on the issues and all of the experts were deposed and their opinions tested through rebuttal reports. And in any event, even in those circumstances, the cases that Argentina cites show only that a district court *may* require a live hearing to resolve issues of foreign law, not that it *must* do so – let alone that a district court commits manifest injustice by choosing to resolve foreign law issues on the papers.

---

[4] Argentina's cases suggesting a preference for live testimony are exclusively in the context of fact testimony at trial – not legal questions raised in dispositive briefing. *See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 301 (S.D.N.Y. 2009) (finding "parties who have been served properly under Rule 45 cannot demand that their depositions be used in lieu of live trial testimony"); *Buchwald v. Renco Grp., Inc.*, 2014 WL 4207113, at *2 (S.D.N.Y. Aug. 25, 2014) (explaining court's expectation that "Defendants will opt to make the witnesses available for trial").

[5] *See also Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1193 (7th Cir. 1985) (finding "more 'complete presentation by counsel' " would have been appropriate when the expert reports "lack[ed] discussion of substantive law," were "conclusory," or "fail[ed] even to address the issue") (citation omitted); *Galu v. Swissair: Swiss Air Transp. Co., Ltd.*, 734 F. Supp. 129, 131 (S.D.N.Y. 1990) (holding hearing when "the submissions [were] inadequate for a foreign law determination").

[6] *See Belgrade v. Interenergo, Inc.*, 1998 WL 661481, at *10 (S.D.N.Y. Sept. 24, 1998) (quoting *Fed. Republic of Germany v. Elicofon*, 358 F. Supp. 747, 752-53 (E.D.N.Y. 1970)) (requiring hearing to consider experts' "uncross-examined assertions"); *see also Castillo v. Cessna Aircraft Co.*, 2010 WL 11505745, at *2 (S.D. Fla. July 22, 2010) (noting that the court chose "to schedule a hearing where the [foreign law] experts can be examined" after the experts "had provided insufficient guidance" on the foreign law issue).

7

In the end, Argentina's request for reconsideration boils down to an assertion that this Court should have exercised its discretion differently. But the fact that Argentina "is dissatisfied with the Court's ruling is simply not a basis for reconsideration." *Westcon Grp., Inc.*, 2023 WL 2058709, at *2. Argentina comes nowhere near showing any manifest injustice in the Court's summary judgment decision, and it is not entitled to reopen all of the Argentine law issues in this case just to repeat the same arguments in live testimony that this Court has already rejected on the papers.

## II.   THERE IS NO BASIS TO RECONSIDER THE TWO DAMAGES ISSUES

Argentina also seeks reconsideration on two additional issues relating to damages. Once again, Argentina does not assert any new controlling precedent or newly discovered evidence as to either issue; it just disagrees with the conclusions that this Court reached in its summary judgment decision. And once again, Argentina's continued disagreement with this Court's decision does not remotely constitute a manifest injustice warranting reconsideration.

### A.   Argentina acquired control of Repsol's shares before May 7, 2012

First, Argentina argues that this Court purportedly "misunderstood," Mot at 16, what Argentina wrote in plain English in its Answer: that Argentina "temporarily occupied 51% of YPF's Class D shares *pending* implementation of legislation declaring these shares to be of public utility and subject to expropriation." ECF No. 98, ¶ 36 ("Argentina Answer") (emphasis added). That statement in Argentina's Answer is "a formal statement of fact" that is "intentional, clear, and unambiguous." *See U.S. Bank Nat'l Ass'n as Tr. to Bank of Am., N.A. v. KeyBank, Nat'l Ass'n,* 2023 WL 2745210, at *9 (S.D.N.Y. Mar. 31, 2023) (finding "factual statements regarding the timing of the alleged breaches" "constitute[d] a 'judicial admission'"); *Gibbs ex rel. Est. of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this

8

litigation."); *cf. In re Motors Liquidation Co.*, 957 F.3d 357, 361 (2d Cir. 2020) (concluding "mistaken citation" that "contain[ed] inherent inconsistencies . . . [with] the actual operative agreement" and was "'plainly' a mistake" "did not constitute a judicial admission") (citation omitted). As Argentina concedes, the "legislation declaring these shares to be of public utility and subject to expropriation" is the YPF Expropriation Law. Mot. at 16. As Argentina also admits, the YPF Expropriation Law "went into effect on or about May 7, 2012." Argentina Answer ¶ 35. Thus, when Argentina admitted that it "temporarily occupied" Repsol's shares "*pending* the implementation of" the YPF Expropriation law, it admitted occupying the shares *before* the YPF Expropriation Law was implemented (i.e., went into effect) on May 7, 2012. *See* Order at 57 ("The Republic is bound by its admission that the occupation occurred while the YPF Expropriation Law was pending and cannot now take the position that occupation of the shares did not occur until passage of the YPF Expropriation Law.").

Argentina attempts to escape the plain language of its Answer by claiming that the YPF Expropriation Law was only "implemented" years later, in 2014, "when the expropriation process was *completed*, and the Republic acquired the expropriated shares." Mot. at 17. But as this Court correctly explained, Argentina's acquisition of control "could not possibly have occurred any later than May 7, 2012, the date o[n] which the Republic[] 'exercised all the political rights associated with the shares.'" Order at 28 (brackets omitted). Read in context, Argentina's reference in its Answer to the "implementation of legislation declaring these shares to be of public utility and subject to expropriation" (i.e., the YPF Expropriation Law) plainly refers to the date on which that legislation was enacted and became effective, not the transfer of legal title years later. That same reading is also entirely consistent with Argentina's fourth affirmative defense, *contra* Mot. at 17, which simply confirms that the YPF Expropriation Law

9

ratified Argentina's prior occupation of the shares by "permitt[ing]" that already-consummated "temporar[y] occup[ation]." Argentina Answer at 22. And it is likewise consistent with Plaintiffs' briefing, which recognized that the YPF Expropriation Law authorized the "formal" occupation of the shares that Argentina already in fact controlled. *Contra* Mot. at 17.

In any event, Argentina's admission that its "temporary occupation of 51% of YPF's shares" began prior to May 7, 2012, is not the sole evidence of its "acquisition of control of the requisite number of shares" before that date. Order at 56-57. At the upcoming hearing, Plaintiffs will set forth the clear (and undisputed) facts showing that the tender offer trigger date was April 16, 2012.

The YPF Bylaws' text "compels Argentina to make a tender offer . . . if 'by *any means* or instrument' it 'becomes the owner [of], *or exercises control of*,' at least 49% of YPF's capital stock." *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194, at 206 (2d Cir. 2018) (second emphasis added). Section 28 of the Bylaws further states that the tender offer provision applies specifically to "all acquisitions made by the National Government, whether directly or indirectly." *Id.* at 200. Because Argentina was exclusively focused on arguing that "acquisition" required holding legal title of the shares, its summary judgment submissions failed to advance any argument that Argentina only exercised control of the shares as of May 7, 2012. Nor could Argentina have advanced any such argument. The plain text of the Bylaws specifies that acquisition of control over the shares by any means – whether "directly or indirectly" – triggers a tender offer. Argentina's uncontroverted actions on April 16, 2012 make clear that it took control of Repsol's shares that day.

The express purpose and effect of the April 16, 2012, Intervention Decree (530/2012) was to dislodge Repsol's control over the company and transfer Repsol's control rights to the

10

Government. ECF No. 377-16 at 4, 7-8 ("Intervention Decree") (seeking to undo the "predatory" strategy and policy carried out by Repsol-YPF). To accomplish that goal, the Decree did two things. *First*, it announced formal legislation to expropriate from Repsol 51% of YPF's shares. *Id.* at 10; Argentina Answer ¶ 35 (Argentina "admits that . . . on or about April 16, 2012, President Fernández de Kirchner introduced to the Republic's Congress a bill to declare 51% of YPF's Class D shares to be of public utility and subject to expropriation"). *Second*, "in order to ensure the full and absolute compliance of the measures proposed in the" legislation to "declare of public use and subject to expropriation" Repsol's 51% of YPF's shares, the Intervention Decree provided for the "temporary intervention of YPF" and appointed Julio De Vido, Argentina's then-Minister of Planning, Public Investment, and Services, as the "Intervenor" to exercise the powers of YPF's Board of Directors and President for 30 days (later extended for another 30 days). Intervention Decree at 10.[7]

There is no dispute that prior to April 16, 2012, YPF's majority shareholder, Repsol, controlled the board and management of the company – indeed that was the admitted reason for the Government's concern and the motivation for its actions. It is equally undisputed that on April 16, the Intervention Decree stripped Repsol of its powers by substituting the Intervenor and Vice-Intervenor for the board and management of the company. That is, Argentina's actions on April 16 had the effect of seizing – "directly or indirectly" – Repsol's controlling interest in YPF's shares. Indeed, Argentina admitted as much in its settlement with Repsol over the expropriation of Repsol's shares, conceding that the date Argentina "dispossess[ed]" Repsol of

---

[7] Argentina simultaneously issued Decree 532/2012, which appointed Axel Kicillof, then-Secretary of Economic Policy and Development Planning, as YPF's Vice-Intervenor. ECF No. 99 at ¶ 38.

11

its shares was "the entry into force and application of Decree No. 530/2012" on April 16, 2012. *See* ECF No. 363-15 at 8, 16 (Argentina-Repsol Settlement).

It does not matter that the executive branch seized Repsol's controlling interest "indirectly" by one "means" on April 16, 2012 and the legislature followed up with a taking of control "directly" by another "means" on May 7, 2012.  The bylaws demanded a tender offer on the date the Government first acquired control.  Argentine officials acknowledged this fact in real time.  Vice-Intervenor Kicillof in his formal remarks on April 17, 2012 to the Argentine Congress explained that Argentina had: "modif[ied] the control that *until now* belonged to the Repsol group[.]"  *See* ECF No. 364-74 at 23 (emphasis added).  Kiciloff acknowledged that the government's action the prior day had already triggered the tender offer obligation, dismissing as "fools . . . those who think that the State has to be stupid and buy everything according to the law of YPF itself, respecting its bylaws," and characterized the tender-offer requirement as an unfair "bear trap."  *Id.* at 26; *see also* ECF Nos. 364-20, 364-22 (Argentina's Responses to Request for Admission Nos. 42, 44, 58-59).  On April 16, 2012, Argentina's current President, Alberto Fernandez, likewise admitted that Argentina's approach "did not take YPF's recovery rules into account," which, "when YPF was privatized," "established . . . the need to make a hostile offer to all shareholders."  ECF No. 407-1 at 4 (Alberto Fernandez, Sobre La Expropiación de YPF, YouTube (Apr. 16, 2012)).  And, as perhaps the clearest illustration that the April 16 Decree granted Argentina control over not just the company but also Repsol's shares, on April 23, 2012, Intervenor De Vido suspended the Shareholders' Meeting scheduled for April 25, 2012, preventing Repsol from exercising any rights associated with its shares. *See* ECF No. 377-53 at 5 (YPF's Form 6-K, filed April 23, 2012).

These undisputed facts confirm that Argentina's tender offer obligation arose on April 16, 2012. That issue can be decided on the current record or after further testimony at the anticipated hearing. But there is no basis to reconsider the Court's interpretation of Argentina's Answer, which aligns with both the Answer's plain language and the facts.

**B.   Prejudgment interest should be calculated using Argentina's commercial rate**

In a final attempt to avoid compensating Plaintiffs adequately for the harm caused by its breach – and the delay it engineered to avoid judgment – Argentina asks this Court to reconsider whether, because Argentina is the defendant here, "a lower interest rate" should apply. It repeats its assertion that prejudgment interest should be "the average borrowing rate published by the Central Bank of the Argentine Republic" because (Argentina claims) this case would have been heard in a federal court on administrative affairs if it had been brought in Argentina. ECF No. 402 at 55 (Argentina Opp'n to Pls.' MSJ); Mot. at 18 (same). But a motion for reconsideration "is not a vehicle for relitigating old issues . . . or otherwise taking a 'second bite at the apple.'" *Analytical Surveys*, 684 F.3d at 52 (citation omitted). And this Court certainly did not commit a clear error or render a manifest injustice when it correctly held that "the commercial rate applied by Argentine courts is the appropriate measure as this case involves purely commercial obligations." Order at 63.

There is no dispute that under Argentine law, prejudgment interest is mandatory and is a "corollary to the principle of full compensation, giving to the party aggrieved by the breach the right to be compensated for all losses suffered and gains foregone as a result of the breach." ECF No. 374-31, ¶ 37 (Garro Sept. 2021 Rep. for Pls.). And, as Argentina's expert concedes, "the judicial determination of the interest rate," under Article 622 of the Argentine Civil Code, is a decision "le[ft] . . . to the discretion of the court." ECF No. 377-31, ¶ 160 (Manóvil Jan. 2022 Rep. for Argentina) (internal quotation marks & citation omitted). Ignoring the absence of any

13

limitations under Argentine law on this Court's discretion, Argentina suggests that because one type of court "typically app[lies]" a lower prejudgment interest rate to cases involving Argentina, this Court should do the same. Mot. at 18. But whether there would have been *jurisdiction* in one *Argentine* court or another in a hypothetical world in which this case had been litigated in Argentine court does not determine which interest rate *this Court* – in its discretion – should apply. Indeed, the presumptive home court advantage Argentina might theoretically benefit from in its own courts is precisely why this Court previously held that Plaintiffs' case belongs in this Court. *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 2020 WL 3034824, at *14 (S.D.N.Y. June 5, 2020). Neither Argentina nor any of its experts can point to any authority suggesting that this Court's discretion is somehow circumscribed by the interest rate that the federal courts of administrative affairs in Argentina would apply. Instead, by insisting (at 18) that it merits "a lower interest rate," Argentina appears to be relitigating the foreign sovereign immunity issue it has repeatedly lost, by once again insisting that its obligation to Plaintiffs is *not* commercial. *See Petersen*, 895 F.3d at 209 ("[W]hen Argentina asserted control over Repsol's 51% stake in YPF via expropriation, it incurred a separate commercial obligation under the bylaws to make a tender offer for the remainder of YPF's outstanding shares."). This Court's conclusion that the commercial interest rate is appropriate is wholly consistent with Argentine law and should not be revisited.

## CONCLUSION

For the foregoing reasons, the Court should deny Argentina's motion for reconsideration.

Dated: April 28, 2023

Respectfully submitted,

CLEMENT & MURPHY, PLLC

By:  /s/ Paul D. Clement
Paul D. Clement

14

        C. Harker Rhodes IV*
        706 Duke Street
        Alexandria, VA 22314
        Phone:  (202) 742-8900
        Fax:  (202) 742-8895
        Email:  paul.clement@clementmurphy.com
               harker.rhodes@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia bar

KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone:  (202) 326-7900
Fax:  (202) 326-7999
Email:  mhansen@kellogghansen.com
       dho@kellogghansen.com
       agoldsmith@kellogghansen.com


KING & SPALDING LLP

Israel Dahan
Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone:  (212) 556-2114
Fax:  (212) 556-2222
Email:  idahan@kslaw.com
       lharris@kslaw.com

-and-

Reginald R. Smith
1100 Louisiana Street
Houston, TX 77002
Phone:  (713) 751-3200
Fax:  (713) 751-3290
Email:  rsmith@kslaw.com

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital*

15

*Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*