**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------- x
:
PETERSEN ENERGÍA INVERSORA, :
S.A.U. and PETERSEN ENERGÍA, S.A.U., :
: Case No.: 1:15-CV-02739 (LAP)
Plaintiffs, :
:
v. :
:
ARGENTINE REPUBLIC and YPF S.A., :
:
Defendants. :
---------------------------------- x

---------------------------------- x
ETON PARK CAPITAL MANAGEMENT, :
L.P., ETON PARK MASTER FUND, LTD., :
and ETON PARK FUND, L.P., :
: Case No.: 1:16-CV-08569 (LAP)
Plaintiffs, :
:
v. :
:
ARGENTINE REPUBLIC and YPF S.A., :
:
Defendants. :
---------------------------------- x

**ARGENTINA'S REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR RECONSIDERATION**

May 5, 2023

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ............................................................................................... 1

**I.   THE COURT SHOULD RECONSIDER ITS DECISION PREMISED ON PLAINTIFFS' EXPERTS' UNPRECEDENTED AND ERRONEOUS INTERPRETATIONS OF ARGENTINE LAW**............................................................ 2

    A.    The Court Should Hear Live Testimony from the Parties' Experts on Questions Bearing on Both Liability and Damages.................................................. 2

    B.    Judge Villanueva's Legal Opinion Supports Reconsideration. ............................. 8

**II.  AT A MINIMUM, THE COURT SHOULD RECONSIDER THE TWO DAMAGES ISSUES RAISED BY THE REPUBLIC** ...................................................... 9

    A.    The Republic's Answer Did *Not* Contain an Admission that the Republic Occupied YPF Shares Prior to May 7, 2012............................................................ 9

    B.    The Court Should Use the Prejudgment Rate Governing in the Argentine Court that Would Hear this Dispute........................................................................ 10

**CONCLUSION** .......................................................................................................................... 10

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abad* v. *Bayer Corp.*,
    563 F.3d 663 (7th Cir. 2009) ...................................................................................................4

*Animal Science Products, Inc.* v. *Hebei Welcome Pharmaceutical Co.*,
    138 S. Ct. 1865 (2018) ............................................................................................................6

*Estate of Alvarez* v. *Johns Hopkins Univ.*,
    275 F. Supp. 3d 670 (D. Md. 2017) .........................................................................................7

*Bigio* v. *Coca-Cola Co.*,
    2010 WL 3377503 (S.D.N.Y. 2010) ........................................................................................7

*China Trade & Dev. Corp.* v. *M.V. Choong Yong*,
    837 F.2d 33 (2d Cir. 1987) ......................................................................................................3

*Cruz* v. *Gen. Motors LLC*,
    2022 WL 16081770 (E.D. Mich. Mar. 16, 2022) ....................................................................6

*Cunningham by Cunningham* v. *Quaker Oats Co., Fisher-Price Div.*,
    107 F.R.D. 66 (W.D.N.Y. 1985) .............................................................................................3

*Curley* v. *AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998) ........................................................................................................9

*Dias* v. *Spartan Micro, Inc.*,
    2023 WL 2629870 (C.D. Cal. Mar. 3, 2023) ...........................................................................5

*In re Factor VIII or IX Concentrate Blood Products Litig.*,
    531 F. Supp. 2d 957 (N.D. Ill. 2008) .......................................................................................7

*Fed. Treasury Enter. Sojuzplodoimport* v. *Spirits Int'l B.V.*,
    809 F.3d 737 (2d Cir. 2016) ....................................................................................................3

*Fed. Treasury Enter. Sojuzplodoimport* v. *Spirits Int'l B.V.*,
    61 F. Supp. 3d 372 (S.D.N.Y. 2014) .......................................................................................3

*Hausler* v. *JP Morgan Chase Bank, N.A.*,
    127 F. Supp. 3d 17 (S.D.N.Y. 2015) .....................................................................................10

*Kelo* v. *City of New London, Conn.*,
    545 U.S. 469 (2005) .................................................................................................................6

*Korea Life Ins. Co.* v. *Morgan Guar. Tr. Co. of New York*,
   269 F. Supp. 2d 424 (S.D.N.Y. 2003)...................................................................................3

*Lima LS PLC* v. *Nassau Reinsurance Grp. Holdings, L.P.*,
   160 F. Supp. 3d 574 (S.D.N.Y. 2015)...................................................................................9

*In re M/V Rickmers Genoa Litigation*,
   643 F. Supp. 2d 553 (S.D.N.Y. 2009)...................................................................................2

*Muench Photography, Inc.* v. *Houghton Mifflin Harcourt Pub. Co.*,
   2010 WL 3958841 (S.D.N.Y. Sept. 27, 2010).....................................................................2

*Olmeca, S.A.* v. *Manufacturers Hanover Tr. Co.*,
   639 F. Supp. 1142 (S.D.N.Y. 1986)..................................................................................3, 6

*In re Pearl*,
   2017 WL 932951 (Bankr. E.D. Ky. Mar. 8, 2017)...............................................................5

*Quantum Tech. Partners II, L.P.* v. *Altman Browning & Co.*,
   2009 WL 4826474 (D. Or. Dec. 8, 2009) ............................................................................5

*Société Nationale Industrielle Aérospatiale* v. *United States Dist. Court
   for the S. Dist. of Iowa*,
   482 U.S. 522 (1987)..............................................................................................................6

*T.Z.* v. *City of New York*,
   634 F. Supp. 2d 263 (E.D.N.Y. 2009) ..................................................................................2

*Terra Firma Invs. (GP) 2 Ltd.* v. *Citigroup Inc.*,
   716 F.3d 296 (2d Cir. 2013).................................................................................................9

*Twohy* v. *First National Bank of Chicago*,
   758 F.2d 1185 (7th Cir. 1985) .............................................................................................3

*U.S. Fid. & Guar. Co.* v. *Petroleo Brasileiro S.A.-Petrobras*,
   2001 WL 300735 (S.D.N.Y. Mar. 27, 2001) .......................................................................3

*Washington* v. *Barr*,
   925 F.3d 109 (2d Cir. 2019).................................................................................................5

## PRELIMINARY STATEMENT

Plaintiffs' opposition continues to press the fiction that this lawsuit is about only the "straightforward" question of whether a "promise" should be kept. (Pls. Opp. at 4.) But, as the Court's summary judgment decision recognized, the dispositive questions here turn on complex issues of Argentine law such as what remedies are available to shareholders for breach of an Argentine corporation's bylaws and whether the Argentine Constitution forecloses Plaintiffs' claims. (Order at 14-53.) The parties' experts offered directly conflicting opinions on these fundamental questions of Argentine law. In moving for reconsideration, Defendants make a modest request: that while the parties' Argentine law experts are before the Court for the damages trial, the Court also hear their live testimony on questions bearing on liability. This is the only fair and prudent course in this case. Plaintiffs ask this Court to enter the largest judgment in the history of this District premised on the opinions of Plaintiffs' experts on multiple, disputed questions of Argentine law over the Republic's interpretation of its own laws. Respectfully, under these extraordinary circumstances, this Court should hear from both sides' experts, so they can be cross-examined, their credibility evaluated, and the Court can ask its own questions of them.

The wisdom of Defendants' proposed approach is confirmed by an opinion released this week by Judge Julia Villanueva of the Argentine National Court of Appeals for Commercial Matters. That specialized court is the court of last resort for deciding corporate and commercial disputes involving companies, including YPF, domiciled in Buenos Aires. Following this Court's summary judgment decision, the Republic requested that Judge Villanueva provide to the Court a legal opinion ("*opinión jurídica*") on the Argentine private law issues discussed in the Court's decision. (Reply Exhibit 1 (Letter from the Republic).) That formal application was unanimously approved by the judges of the Court of Appeals. Judge Villanueva's opinion (Reply Exhibit 3 (Villanueva Legal Opinion)) was prepared without the involvement of the Republic or its lawyers,

and explains why the positions of Plaintiffs' experts on the private law issues are unprecedented and wrong. She also explains that Plaintiffs' experts have inaccurately described Argentine law, which is why this Court should assess their credibility with live testimony.

I. **THE COURT SHOULD RECONSIDER ITS SUMMARY JUDGMENT DECISION PREMISED ON PLAINTIFFS' EXPERTS' UNPRECEDENTED AND ERRONEOUS INTERPRETATIONS OF ARGENTINE LAW.**

   A. **The Court Should Hear Live Testimony from the Parties' Argentine Law Experts on Questions Bearing on Both Liability and Damages.**

In opposing hearing live from the parties' Argentine law experts, Plaintiffs first parrot the standard governing reconsideration without any real disagreement that this Court resolved disputed issues of Argentine law in an unprecedented manner. (Pls. Opp. at 3.) It is black-letter law that the Court should grant reconsideration to correct a misreading of controlling law, and courts (including this one) regularly grant such relief. *In re M/V Rickmers Genoa Litigation*, 643 F. Supp. 2d 553, 555-58 (S.D.N.Y. 2009) (Preska, J.) (granting motion for reconsideration where court had "overlooked" certain arguments); *Muench Photography, Inc.* v. *Houghton Mifflin Harcourt Pub. Co.*, 2010 WL 3958841, at *1 (S.D.N.Y. Sept. 27, 2010) (Preska, J.) (granting in part); *T.Z.* v. *City of New York*, 634 F. Supp. 2d 263, 272 (E.D.N.Y. 2009) (granting motion to reconsider grant of summary judgment where court had "misread" relevant law).

Tellingly, Plaintiffs' opposition studiously avoids addressing the Argentine law issues in this case. Instead, Plaintiffs claim that because a hearing is not *always* necessary to decide issues of foreign law, it is *never* required or helpful, even though multiple courts in this District have required foreign law experts to testify live. (Motion at 3-4, 6-8.) Plaintiffs next conclusorily claim that reconsideration is not warranted because this Court decided "simple" questions of Argentine law. (Pls. Opp. at 1-2.) Finally, Plaintiffs assert that there is no need for live testimony here because expert "credibility" is not at issue. (Pls. Opp. at 6.) All three arguments fail.

*First*, while not always necessary, courts in this District and elsewhere routinely require live testimony from expert witnesses where complex questions of foreign law must be decided. (Motion at 3-4, 6-8 (citing cases).)[1] As those courts have observed, "a district court in New York should hesitate to declare [its] opinion on . . . difficult and disputed point[s] of foreign law" and may need to engage in "several [oral] arguments" and "evidentiary hearings" before the court is able to render a decision. *Korea Life Ins. Co., Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 269 F. Supp. 2d 424, 427, 440 (S.D.N.Y. 2003) (Hellerstein, J.); *U.S. Fid. & Guar. Co.* v. *Petroleo Brasileiro S.A.-Petrobras*, 2001 WL 300735, at *22 (S.D.N.Y. Mar. 27, 2001) (Koeltl, J.) (foreign law hearing required given "sharp conflict" among experts). Appellate courts likewise have cautioned that a "complete presentation" of foreign law questions beyond expert affidavits can be the more "appropriate" course. *Twohy* v. *First Nat'l Bank of Chicago*, 758 F.2d 1185, 1193 (7th Cir. 1985).

As the Second Circuit has explained, "restraint and caution" are particularly warranted when a foreign sovereign is party to a litigation. *China Trade & Dev. Corp.* v. *M.V. Choong Yong*, 837 F.2d 33, 37 (2d Cir. 1987) ("the restraint and caution required by international comity" overrode typical analysis). Given the lack of Argentine precedent supporting the Court's decision, which contradicted the Republic's statement of fundamental principles of its own law, the Court should direct that the parties' Argentine law experts testify live before it decides these issues. *See Fed. Treasury Enter. Sojuzplodoimport* v. *Spirits Int'l B.V.*, 809 F.3d 737, 743 (2d Cir. 2016) ("The

---

[1] In addition to the cases cited in the Republic's opening brief, *see also, e.g.*, *Fed. Treasury Enter. Sojuzplodoimport* v. *Spirits Int'l B.V.*, 61 F. Supp. 3d 372, 375 (S.D.N.Y. 2014) (two-day hearing of expert testimony on foreign law); *Olmeca, S.A.* v. *Manufacturers Hanover Tr. Co.*, 639 F. Supp. 1142, 1150 (S.D.N.Y. 1986) (relying on "[c]onsiderable testimony from credible witnesses" on foreign law); *Cunningham by Cunningham* v. *Quaker Oats Co., Fisher-Price Div.*, 107 F.R.D. 66, 77 (W.D.N.Y. 1985) (expressing preference for "a live witness" to determine questions of foreign law). By contrast, the non-precedential Second Circuit decision cited by Plaintiffs found that a foreign law hearing was not required for that particular case. (Pls. Opp. at 1, 4 (quoting *Kingstown Cap. Mgmt., L.P.* v. *Vitek*, 2022 WL3970920, at *2 (2d Cir. Sept. 1, 2022)).)

declaration of a United States court that the executive branch of the Russian government violated its own law . . . would be an affront to the government of a foreign sovereign.").

Plaintiffs do not dispute that their and the Republic's experts will already be testifying live on questions of Argentine law at the upcoming trial, and they offer no explanation for why, in a case involving billions of dollars, the Court should cabin their live testimony only to questions relating to damages. At the trial, the Court will determine, *inter alia*, (i) "when the Republic acquired control of the [YPF] shares," (ii) when the Republic temporarily "occupied" the shares, (iii) whether "occupation" of the shares is "equivalent to control," and (iv) the proper prejudgment interest rate to apply to any damages award. (Order at 56-58, 63.) The Republic will need to call its experts Prof. Rafael Manóvil, former Judge Alejandro Uslenghi and Prof. Alfonso Santiago to testify on those questions. It will not inconvenience the Court or the parties to hear from those very same experts on Argentine law questions bearing on liability.

*Second*, Plaintiffs try to brush over the complexities before the Court by describing this case as "straightforward" (Pls. Opp. at 4), but it is no such thing. This case is not about whether an "express promise" must be kept (*id.*), but rather, as a matter of Argentine law, what kind of promise was made, how it can be enforced, and what remedies are available for breach. In its summary judgment decision, at the behest of Plaintiffs' Argentine law experts, the Court recognized new types of claims that would be barred under both Argentine and U.S. law.[2] Plaintiffs have no response, for example, to the following:

---

[2] The Republic submits that the unprecedented nature of the Court's Argentine law holdings, as well as the Court's finding that Argentina is an adequate forum (*Petersen* ECF No. 161 at 28), demonstrate that this dispute should be decided in Argentine courts. (Motion at 1 n.2). As Judge Posner recognized in *Abad* v. *Bayer Corp.*, 563 F.3d 663, 671 (7th Cir. 2009), "the uncertainty of Argentine law is a compelling reason why this case should be litigated in Argentina rather than in the United States."

- There is not a single example of an Argentine court hearing a shareholder-to-shareholder breach-of-contract suit based on a bylaws provision. (Motion at 10-11.) Even in U.S. states, such suits are not cognizable. *See Quantum Tech. Partners II, L.P.* v. *Altman Browning & Co.*, 2009 WL 4826474, at *6 (D. Or. Dec. 8, 2009) (under Delaware law, there is no "cause of action for damages for breach of contract between shareholders for violations of a corporation's bylaws"), *aff'd*, 436 F. App'x 792 (9th Cir. 2011); *Dias* v. *Spartan Micro, Inc.*, 2023 WL 2629870, at *10 (C.D. Cal. Mar. 3, 2023) (the "articles of incorporation and bylaws create a contractual relationship between [the corporation] and [the] shareholders," but do "not create a contractual relationship between" shareholders); *In re Pearl*, 2017 WL 932951, at *10 (Bankr. E.D. Ky. Mar. 8, 2017) ("Bylaws do not constitute an enforceable contract between . . . shareholders.").

- There is not a single example of a suit alleging breach of a bylaws provision proceeding in Argentina under the Argentine Civil Code as opposed to under the procedures prescribed by the Argentine General Corporations Law. (Motion at 11.) Similar to exhaustion of administrative remedies under U.S. law, Argentine corporate law required Plaintiffs to avail themselves of their available corporate remedies before suing the Republic. *Compare Washington* v. *Barr*, 925 F.3d 109, 116 (2d Cir. 2019).

- There is not a single example in Argentine history of a court enforcing a contractual agreement that interfered with the Republic's expropriation power, which would violate the Argentine Constitution. (Motion at 14-15) (citing *Sociedad de Electricidad de Rosario*, Argentine Supreme Court Judgment of April 14, 1975 (Fallos: 291:290).) As in the United States, a contractual agreement—regardless of the parties involved—cannot interfere with

-5-

the Government's authority to take property.  *See Kelo* v. *City of New London, Conn.*, 545 U.S. 469, 488 (2005).

In its summary judgment decision, the Court presumed that the Republic's view of its own law was entitled to little if any deference.  (Order at 14, 17 n.5.)  But the Supreme Court has "long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation."  *Société Nationale Industrielle Aérospatiale* v. *United States Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).  Whether a statement is offered in the "context of litigation" is *one* consideration when determining the deference owed, but *other* "[r]elevant considerations include the statement's clarity, thoroughness, and support; . . . the transparency of the foreign legal system; the role and authority of the entity or official offering the statement; and the statement's consistency with the foreign government's past positions."  *Animal Science Products, Inc.* v. *Hebei Welcome Pharmaceutical Co.*, 138 S. Ct. 1865, 1873-74 (2018).  This Court's opinion did not address any of these other factors, all of which favor the Republic's interpretation of its own laws.

*Third*, the "credibility of the experts" (Pls. Opp. at 6) is squarely at issue in this foreign law dispute.  In multiple cases, courts have recognized that the "credibility" of foreign law experts may be a significant consideration in support of ordering live testimony.  *Olmeca, S.A.*, 639 F. Supp. at 1150; *Cruz* v. *Gen. Motors LLC*, 2022 WL 16081770, at *3 (E.D. Mich. Mar. 16, 2022) (ordering presentation of live testimony from foreign law experts because "holding such a hearing would permit the Court to assess the credibility of each expert and how their opinions held up under cross-examination").  And because the parties' experts here contradicted one another on fundamental issues of Argentine law, this case in particular may hinge on expert credibility.

-6-

The Republic will show at trial that Plaintiffs' experts are not credible and have offered false testimony in this very case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3]

Meanwhile, Plaintiffs' other expert on Argentine private law, Prof. Alejandro Garro, claimed in his opening expert report that he was "an Argentine lawyer," who "ha[d] been a member of the bar in Argentina for nearly 50 years." (Hicks Ex. 29 (Garro Opening) ¶ 2.) In reality, Professor Garro has not been a member of the bar in Argentina for 45 years, and is not "an expert in corporate law." (Giuffra Ex. 97 (Garro Deposition Tr.) at 20:3-12; 29:17-22.); *Bigio* v. *Coca-Cola Co.*, 2010 WL 3377503, at *5 (S.D.N.Y. Aug. 23, 2010) (finding that whether the parties' experts were admitted to practice law in Egypt was "a relevant factor in deciding the weight to be given" to the experts' opinions on Egyptian law).

There is more. Prof. Garro has claimed to be an "expert" on a dizzying array of countries' legal systems, including Colombia, Costa Rica, Guatemala, El Salvador, Ecuador, Mexico, Panama, and Venezuela. (Hicks Ex. 29 (Garro Opening) Ex. A at 16.) But U.S. federal judges have found his testimony not credible. *See In re Factor VIII or IX Concentrate Blood Products Litig.*, 531 F. Supp. 2d 957, 964-70 (N.D. Ill. 2008) (noting that Dr. Garro had only "practiced law in the province of Buenos Aires from 1975-1977" and finding the "opinion of Dr. Garro to be farfetched," because there was "no rational basis" for his conclusion); *Estate of Alvarez* v. *Johns*

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Hopkins Univ.*, 275 F. Supp. 3d 670, 707–09 (D. Md. 2017) (finding Dr. Garro's opinion "not compelling" where it was based on scant support that "d[id] not mention" the issues).

### B.   Judge Villanueva's Legal Opinion Supports Reconsideration.

Following the Court's summary judgment decision, the Republic requested that Judge Villanueva of the National Court of Appeals for Commercial Matters render an *opinión jurídica* (legal opinion) on the Argentine private law issues decided in the Court's decision. The full Court of Appeals debated that request and unanimously authorized Judge Villanueva to issue the opinion. Judge Villanueva—who has been a member of the National Judiciary of Argentina for 33 years (Reply Ex. 3 at 3)—is indisputably qualified to render such an opinion. Her court exercises appellate jurisdiction over all lower courts for commercial matters within the City of Buenos Aires and would decide corporate and business disputes concerning YPF, which is domiciled in Buenos Aires. (*Id.* at 3.) Thus, Judge Villanueva's court reviews decisions concerning the same issues of Argentine private law covered by this Court's summary judgment decision. The request was made by letter and the Republic provided Judge Villanueva with a Spanish translation of this Court's summary judgment decision and the Argentine private law expert materials. (Reply Exs. 1-2.) As Judge Villanueva explains in her opinion, she was not compensated for writing it and does not intend to "encroach[] upon the jurisdiction of the U.S. Court," but merely seeks to express her "most sincere convictions about . . . the Argentine law governing the facts of the case." (Reply Ex. 3 at 3.) The Republic and its lawyers and experts had no role in the preparation of her opinion.

 Respectfully, we urge the Court to consider Judge Villanueva's opinion in resolving the Republic's motion. For example, Judge Villanueva concludes that under Argentine law the tender offer provisions in the YPF Bylaws could not give rise to bilateral obligations among shareholders. (Reply Ex. 3 at 2-7.) She also explains that Plaintiffs are not entitled to damages because they did not first seek "specific performance or termination" of the contract, a "basic" requirement to pursue

damages for breach of contract in Argentina.  (*Id*. at 9-11.)  Judge Villanueva criticizes Plaintiffs' experts for being "disloyal[] to the District Court" by inaccurately explaining "how to interpret Argentine law."  (*Id*. at 17.)  Prof. Rovira, for example, "astoundingly depart[ed] from the most basic principles [of Argentine law]" and misled the Court with "wrong precedents."  (*Id*. at 9, 20.)

The Second Circuit has explicitly "urge[d] district courts to invoke the flexible provisions of Rule 44.1 to determine issues relating to the law of foreign nations."  *Curley* v. *AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998).[4]  Under Rule 44.1, district courts can determine foreign law through consideration of "*any relevant material or source*, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." (emphasis added).  The opinion of a sitting Argentine appellate judge on Argentine law questions presented here is clearly "relevant" and directly bears on the Republic's motion for reconsideration.  While this Circuit does not have a formal procedure for certifying questions of foreign law to foreign courts, Judge Villanueva's opinion provides the best available substitute.  *See Terra Firma Invs. (GP) 2 Ltd.* v. *Citigroup Inc.*, 716 F.3d 296, 301 (2d Cir. 2013) (Lohier, J., concurring) (suggesting that U.S. courts develop a system to certify questions of law to foreign courts).  Particularly under these unique circumstances involving a sovereign defendant, the Court should consider additional, on-point authority.

## II.     AT A MINIMUM, THE COURT SHOULD RECONSIDER THE TWO DAMAGES ISSUES RAISED BY THE REPUBLIC.

### A.     The Republic's Answer Did *Not* Contain an Admission that the Republic Occupied YPF Shares Prior to May 7, 2012.

The Court erred in finding that the Republic "admitted" in its Answer that it temporarily

---

[4] In addition to assisting the Court in correcting a "clear error" and preventing "manifest injustice," Judge Villanueva's opinion qualifies as "newly available" evidence because it could not have been "discovered" prior to the issuance of the decision about which it is based.  *Lima LS PLC* v. *Nassau Reinsurance Grp. Holdings, L.P.*, 160 F. Supp. 3d 574, 578 (S.D.N.Y. 2015).

occupied YPF shares *prior to May 7, 2012*, a date that may be relevant to the assessment of damages. (Motion at 16.) According to Plaintiffs, the Republic's statement that it occupied YPF shares "pending implementation" of the YPF Expropriation Law, qualifies as an admission that the Republic occupied YPF shares *before* the YPF Expropriation Law "went into effect" on May 7, 2012. (Pls. Opp. at 9.) But the Republic's Answer used no such language. Instead, it stated that the Republic occupied YPF shares while the YPF Expropriation Law was being "implement[ed]," that is, *after* the Law "went into effect." In any event, judicial admissions must be "clear and unambiguous." *Hausler* v. *JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 37 (S.D.N.Y. 2015). The Republic's Answer does not "admit" (let alone unambiguously) a legal impossibility—that the Republic occupied YPF shares *prior to* the entry into force of the YPF Expropriation Law that authorized the occupation of those shares. (Motion at 16-18.)

> **B.    The Court Should Use the Prejudgment Rate Governing in the Argentine Court that Would Hear this Dispute.**

Plaintiffs do not dispute that an Argentine federal court on administrative affairs would hear this case in Argentina, but they argue that the Argentine court with jurisdiction over this case is irrelevant to the determination of the prejudgment interest rate. (Pls. Opp. at 13-14.) That is wrong as a matter of law and common sense. The Republic's experts offered uncontroverted testimony that the Argentine federal courts on administrative affairs typically apply prejudgment interest at the average borrowing rate published by the Central Bank of the Argentine Republic. (Santiago Rebuttal ¶¶ 68-72; Manóvil Rebuttal ¶¶ 163-65.) Because those rates would apply to this dispute in the relevant Argentine court the Court should apply them here. (Motion at 18-20.)

## CONCLUSION

For the foregoing reasons, the Republic's motion for reconsideration should be granted.

Dated: May 5, 2023
      New York, New York

                          Respectfully,

                          /s/*Robert J. Giuffra, Jr.*
                          Robert J. Giuffra, Jr.
                          Sergio J. Galvis
                          Amanda F. Davidoff
                          Jeffrey B. Wall
                          Thomas C. White
                          Adam R. Brebner

                          SULLIVAN & CROMWELL LLP
                          125 Broad Street
                          New York, New York  10004-2498
                          Telephone:     (212) 558-4000
                          Facsimile:      (212) 558-3588

                          *Counsel for the Argentine Republic*