**Clement & Murphy**
PLLC

June 20, 2023

*Via ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-2739 ("*Petersen*"); *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569 ("*Eton Park*")

Dear Judge Preska:

    On behalf of Plaintiffs, I write in opposition to Argentina's motion to present trial testimony from Horacio Diez. This Court's summary judgment decision left only two remaining issues—both of which have been present throughout the case. There is thus no justification for Argentina to inject a new witness at this juncture. Argentina never disclosed Mr. Diez as a witness, did not produce documents from him during the relevant time period in 2012 or identify him as a relevant custodian, and never presented him for deposition. If Mr. Diez had any light to shed on any material dispute, he should have been disclosed and deposed years ago. In reality, Mr. Diez's proposed testimony is, like that of ex-Judge Villanueva, a "belated expert opinion that is not properly part of the record." ECF No. 450, at 8. Argentina's attempt yet again to add to the record at the 13th hour is improper and should be rejected.

### Background

    Argentina has received "process, upon process, upon process" throughout this case. June 14, 2023 Tr. at 4. And throughout, the date on which the Republic took control of YPF has been a material issue. Yet during eight years of hard-fought litigation, Argentina never once raised Mr. Diez as a potential witness. Neither Argentina nor YPF identified Mr. Diez in their Rule 26 initial disclosures. He was not mentioned in Argentina's interrogatory or RFA responses. Nor did Argentina identify him as a custodian or produce a single document from him during discovery. In fact, until last week, the only mention of Mr. Diez in any document filed on the docket is a passing and inconsequential reference to his name in the transcript of the June 4, 2012 shareholders' meeting. *See* ECF No. 377-20.

    For good reason: other than serving as one of Argentina's lawyers during 2012, Mr. Diez has no demonstrated personal knowledge of any disputed fact in this case. While he appeared as Argentina's functionary at the June 2012 shareholders' meeting and voted Repsol's government-occupied YPF shares, the parties have no disagreement about those

facts. Not once before last week has Argentina so much as suggested that Mr. Diez's actions were relevant to its defense.

**Argument**

The Court should not permit Mr. Diez to testify at trial. The primary issue left for trial has been part of this case from the beginning: the date on which Argentina acquired "control" of Repsol's shares. On that question, evaluating the record properly before it, the Court has identified a dispute and permitted Argentina to "submit evidence showing that it did not acquire control of YPF's share[s] or 'temporarily occupy' those shares until May 7, 2012." ECF No. 450, at 9. That ruling was not an invitation to re-open discovery and did not inject any new issue into the case. The date on which the Republic controlled more than 49% of YPF's shares has been a material issue throughout the case. The fact that the case has now narrowed to that issue is not a basis to identify new witnesses or ignore all the deadlines on fact and expert development that have governed this case.

In all events, Mr. Diez has nothing to contribute on any material *factual* dispute. On the date of control, Argentina faces a steep climb. Vice-Intervenor Axel Kicillof, in his formal remarks on April 17, 2012 to the Argentine Congress, explained that the prior day's Intervention had "modif[ied] the control that *until now* belonged to the Repsol group[.]" ECF No. 364-74, at 23 (emphasis added). To try to rehabilitate that dispositive concession, Argentina asserts that "Mr. Diez clearly has personal knowledge concerning this important issue," Ltr. 1, without identifying any disputed issue of fact about which he would testify. Instead, he would offer a "contemporaneous recollection that" Argentina "was authorized for the first time to occupy the shares at issue" "[a]fter the YPF Expropriation Law went into effect." Ltr. 2. That is plainly a legal conclusion about the "authori[ty]" conferred by Argentine law – even if Mr. Diez held that view "contemporaneous[ly]."

Argentina's letter makes clear its real intent: to use Mr. Diez's testimony to try to bolster that of its legal experts. That gambit is clearly improper. We are far past the deadline for expert evidence, and "the impropriety of allowing a *lay* witness to testify in the form of a legal conclusion is . . . clear." *Cameron v. City of N.Y.*, 598 F.3d 50, 62 n.5 (2d Cir. 2010). This remains true under Rule 44.1. *See* Wright & Miller 9A Fed. Prac. & Proc. Civ. § 2444 (3d ed.) ("the process of determining alien law [is] identical with the method of ascertaining domestic law to the extent that it is possible to do so"). Courts routinely reject foreign legal opinions from fact witnesses. *See, e.g., Trejos Hermanos Sucesores S.A. v. Verizon Commcn's Inc.*, 2023 WL 24237, at *2 (S.D.N.Y. Jan. 3, 2023) (disregarding testimony from lay witness that "impermissibly interpret[ed] and applie[d] Costa Rican law"). Argentina's cited cases are not to the contrary. Neither involved legal opinion testimony by a fact witness. *See Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*, 2008 WL 4129620, at *8 & n.4 (S.D.N.Y. Sept. 4, 2008) (court could "not use [foreign counsel's] affidavit to resolve questions of fact"); *In re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 561, 565-66 (E.D.N.Y. 2011) (evaluating allegations of "coercion").

The remainder of Mr. Diez's proposed testimony is likewise impermissible or insubstantial. There are no disputed facts regarding "the day-to-day operations of YPF"

during the Intervention, nor about the events surrounding the June 4, 2012 shareholders' meeting. Ltr. 2. The parties stipulated to the relevant facts long ago. *See* ECF No. 401, ¶ 100; ECF No. 389, ¶ 74. It is said that Mr. Diez also would testify regarding "what authority he understood that he had over Repsol's YPF shares" in June 2012, so that he might contrast his "responsibilities" with "those of the Intervenor Julio De Vido and Sub-Intervenor Axel Kicillof." Ltr. 2. Not only is this (once again) improper legal opinion, *see Fed. Aviation Admin. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983) (improper to "solicit[] the [witness's] understanding of the meaning and applicability of [the law]"), but it is uniquely problematic because Mr. Diez had no role at YPF during the Intervention, *see* Ltr. 2. Mr. Diez is therefore in no position to offer any testimony regarding the "responsibilities" exercised by Intervenors who preceded him at the company.

Finally, Mr. Diez would testify that Argentina's 2014 settlement with Repsol resolved "all claims relating to . . . the Republic's intervention in YPF *and* the temporary occupation of Repsol's YPF shares." Ltr. 2. That Argentina settled claims regarding the Intervention "*and*" the Expropriation Law says nothing about the relevant issue: whether the Intervention first accorded Argentina control over YPF's shares. And, regardless, Argentina does not propose that the Repsol settlement is ambiguous regarding any material term, which renders irrelevant Mr. Diez's subjective understanding of that agreement. *See HOP Energy, LLC v. Loc. 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012).

Apart from being improper and unhelpful, Mr. Diez's testimony would be prejudicial to Plaintiffs. Preclusion of an undisclosed witness is "'automatic' absent a determination of either 'substantial justification' or 'harmlessness.'" *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (citations omitted). Argentina claims harmless error because Mr. Diez can be deposed now. *See* Ltr. 3. But there is no meaningful opportunity for a deposition in the few remaining weeks because Argentina has failed to produce a single document from Mr. Diez during the relevant period. And harmlessness does not mean that any witness can appear at any time after the close of discovery and simply be deposed to cure the harm; this matter has had a highly choreographed (and highly adversarial) history, and it is wholly inappropriate to insert a new witness, whether fact or expert, at this late stage.

Moreover, to the extent Mr. Diez will testify regarding his "central role in advising on . . . legal issues," Ltr. 2, Argentina necessarily would effect a subject-matter waiver over the legal advice it received regarding the Intervention. No doubt significant motions practice would ensue, meaning opening this door is far from harmless. Argentina's two cited cases (at 3) – which involved witnesses identified in discovery or briefing whose testimony was "necessary" to resolve a central issue[1] – provide no support for accelerated pre-trial deposition under these circumstances. Mr. Diez's testimony is improper, irrelevant, and the Court should exclude it.

---

[1] *See 3DT Holdings LLC* v. *Bard Access Sys. Inc.*, 2022 WL 1569493, at *1 (S.D.N.Y. May 17, 2022); *Rosado* v. *Soriano*, 2021 WL 4192863, at *2 (S.D.N.Y. Aug. 6, 2021).

                                      Respectfully submitted,

                                      */s/ Paul D. Clement*
                                      Paul D. Clement

Cc:    All counsel of record via ECF