# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

June 21, 2023

Via ECF

The Honorable Loretta A. Preska,
   United States District Court for the Southern District of New York,
     500 Pearl Street,
       New York, NY 10007.

          Re:   *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

        On behalf of the Argentine Republic, I respond to Plaintiffs' letter of yesterday opposing any testimony of Horacio Diez (*Petersen* ECF No. 460).  Despite the Court's ruling at summary judgment that "there is a question of fact as to the proper notice date" (*Petersen* ECF No. 437 at 54), Plaintiffs ask this Court to resolve that issue with *no* fact testimony at all—asserting that the Republic's efforts to put on evidence in a trial amount merely to more "process."  But the purpose of a trial is to present evidence, which should not be limited to opinions of paid experts.  In a case with literally billions of dollars at stake, the Republic should be allowed to present the testimony of Mr. Diez, its sole proposed live fact witness.

        1.     Plaintiffs first urge that Mr. Diez's testimony be excluded because the issue of "control" has "been part of this case from the beginning."  (Pls.' Ltr. at 2.)  But Plaintiffs conflate control of *the management of YPF* with control of Repsol's YPF *shares*.  On summary judgment and previously in their expert reports, Plaintiffs claimed that the Republic was required to conduct the tender offer *at the time of the Intervention* because that was when it seized control of YPF. (*See* ECF No. 375 at 2, 18, 19, 31.)  For its part, the Republic maintains that the tender offer provisions of the YPF bylaws could have been triggered, if at all, only by *its acquisition of Repsol's YPF shares*, which did not occur until May 8, 2014.  (*See* ECF No. 373 at 2, 12, 19.)  In its summary judgment ruling, the Court rejected the positions of *both sides*, holding that "the event that triggered the Republic's tender offer obligations was its acquisition of control of the shares, not its intervention in or acquisition of control of YPF."  (ECF No. 437 at 56.)  The Court also held that a trial was needed on the "precise date on which the Republic occupied 51% of YPF's shares or precisely what 'occupation' of the shares entailed and whether such 'occupation' is equivalent to 'control' of those shares."  (*Id.* at 56-58.)  To resolve that disputed issue, the Court stated that it "will allow the Republic to submit evidence showing that it did not acquire control of YPF's shares or 'temporarily occupy' those shares until May 7, 2012," and "will allow the Republic to submit evidence on this point since the precise date of control requires a trial."  (ECF No. 450 at 9-10.)

Evidence on that issue is not mere additional "process," but necessary to resolve the multi-billion dollar dispute of mixed fact and law identified in the Court's recent decisions.

2. Plaintiffs next assert that Mr. Diez "has nothing to contribute" on any "*factual* dispute" because, they say, Vice-Intervenor Axel Kiciloff made a "dispositive concession" in a speech on April 17, 2012 that the Intervention "modif[ied] the control" of the company, and, thus, "there are no disputed facts regarding" the operation of YPF during the Intervention. (Pls.' Ltr. at 2-3.) This argument makes no sense. The Court has expressly identified a critical factual dispute: when the Republic obtained control over Repsol's YPF shares. Mr. Diez will testify to his contemporaneous understanding of the powers that the Republic obtained and exercised through the Intervention Decree issued on April 16, 2012 and under the YPF Expropriation Law that came into force on May 7, 2012. He will also, as witnesses typically do at trials, provide necessary context for contemporaneous documents—which, here, Plaintiffs badly misread.

Plaintiffs are equally wrong in claiming that Mr. Diez should not be able to testify about the Repsol settlement that they affirmatively seek to use as part of their case in chief. Tellingly, Plaintiffs do not dispute that they advanced this theory—that the settlement meant that the Republic "dispossess[ed] Repsol of its shares" on April 16, 2012—*for the first time **after*** the summary judgment order. (*Petersen* ECF No. 443 at 11-12.) Mr. Diez, who was involved in negotiating the settlement, can demonstrate that Plaintiffs' newly-minted theory is factually incorrect.[1]

In seeking to bar the Republic from putting on Mr. Diez, Plaintiffs ignore the "low bar" on admissibility of relevant evidence. As the Second Circuit has explained, under the Federal Rules of Evidence, the standard of what evidence is considered relevant is "very low." *United States* v. *White*, 692 F.3d 235, 246 (2d Cir. 2012). It would be highly unusual—if not unprecedented—to bar testimony from the *only* live fact witness offered by either party in a multi-billion dollar damages trial. Unlike the experts for both sides, who will opine on the law, Mr. Diez, who was part of the Argentine civil service during the events in question, can provide context for those events, including the Republic's "temporary occupation" of Repsol's YPF shares when the YPF Expropriation Law became effective on May 7, 2012.

3. Mr. Diez's testimony will not be legal opinion, but will be directed primarily to *factual* issues surrounding the *events* that occurred in 2012, and his understanding of the Republic's powers during that period. To the extent Mr. Diez's testimony also touches on related legal issues, his testimony is permissible. *See United States* v. *Scali*, 2018 WL 543584, at *3 (S.D.N.Y. Jan. 23, 2018) (permitting trial testimony from three attorneys because such "general testimony from attorneys with personal knowledge" would be helpful to understanding

---

[1] Plaintiffs' contention that Mr. Diez's testimony would be relevant only if the settlement is determined to be ambiguous is incorrect. The parol evidence rule bars evidence that seeks to vary the unambiguous terms of an agreement in an action *to enforce the agreement*. *Happy Dack Trading Co., Ltd.* v. *Agro-Industries, Inc.*, 602 F.Supp. 986, 992 (S.D.N.Y. 1984). Here, Plaintiffs do not seek to enforce the Repsol settlement, but to use it collaterally as a source of alleged "admissions" or "concessions." (ECF No. 443 at 11-12.) If the settlement is admissible at all for such purposes—which it is not, *see* Fed. R. Evid. 408—the Republic should be permitted to present rebuttal testimony.

The Honorable Loretta A. Preska -3-

"background information and context"). The theoretical specter of disputes over privilege is no basis to preclude Mr. Diez's testimony. Lawyers often testify as fact witnesses without effecting a subject-matter waiver. *See, e.g., Starr Intern Co.* v. *American Intern. Group, Inc.*, 2006 WL 3851148, at *1 & n.2. Mr. Diez, too, is being offered as a fact witness—he will not be testifying to the details of legal advice that he provided the Republic—but about the facts surrounding the Republic's occupation of Repsol's YPF shares.

4. Finally, until the Court's March 30 summary judgment decision and its May 24 decision on reconsideration, the Republic had no reason to present Mr. Diez as a witness at trial. As a result of those decisions, the focus of this case has changed since the Republic provided its initial disclosures nearly three years ago. In such circumstances, courts routinely permit parties to present witnesses not listed on their initial disclosures to respond to the "changing trajectory of the case." *LaVigna* v. *State Farm Mut. Auto. Ins. Co.*, 736 F. Supp. 2d 504, 511–12 (N.D.N.Y. 2010). Even absent such circumstances, courts permit parties to present trial witnesses not identified on their initial disclosures by directing a pretrial deposition to address any claimed prejudice. *Rowland* v. *Am. Gen. Fin., Inc.*, 340 F.3d 187, 196 (4th Cir. 2003) (affirming district court decision to allow witnesses not identified on initial disclosures where witness was "deposed prior to trial").[2]

Plaintiffs are also incorrect in claiming that the Republic has not produced documents pertaining to Mr. Diez's testimony. For example, on November 19, 2020, the Republic produced a 412-page administrative file concerning the voting of Repsol's shares at the June 4 shareholder meeting. (AR00039177.) Mr. Diez's name appears several times in this file and in the minutes of the June 4 shareholders meeting, and Plaintiffs were on notice of his role. In addition, the Republic produced files from the PTN, where Mr. Diez worked at the relevant time, in response to Plaintiffs' document requests. In these circumstances, there is no basis to bar Mr. Diez's testimony. *See 3DT Holdings LLC* v. *Bard Access Sys. Inc.*, 2022 WL 1569493, at *1 (S.D.N.Y. May 17, 2022) (permitting witness who was not identified on initial disclosures to testify at trial in part because the witness's "name appeared on documents produced by [the defendant]").

The Republic respectfully requests that Mr. Diez be permitted to testify at trial.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

cc:    Counsel of Record (via ECF)

---

[2] Plaintiffs argue that "[p]reclusion of an undisclosed witness is 'automatic' absent a determination of either 'substantial justification' or 'harmlessness.'" (Pls.' Ltr. at 3.) In fact, the very case that Plaintiffs cite explains that "[p]reclusion of evidence is generally a disfavored action," and a "drastic remedy" to be imposed only "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." *Am. Stock Exch., LLC* v. *Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (citations omitted). Those circumstances are not present here and there is no basis for "automatic" preclusion.