UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U.,<br><br>　　　　　　Plaintiffs,<br><br>-against-<br><br>ARGENTINE REPUBLIC and YPF S.A.,<br><br>　　　　　　Defendants. | 15 Civ. 2739 (LAP)<br>16 Civ. 8569 (LAP)<br><br>ORDER |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P.,<br><br>　　　　　　Plaintiffs,<br><br>-against-<br><br>ARGENTINE REPUBLIC and YPF S.A.,<br><br>　　　　　　Defendants. | |

LORETTA A. PRESKA, Senior United States District Judge:

　　Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (together, "Petersen") and Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P. (together, "Eton Park," and together with Petersen, "Plaintiffs"), who previously owned stakes in Argentine energy company YPF S.A. ("YPF"), commenced actions against the Argentine Republic (the "Republic") and YPF (collectively, "Defendants").  Following the Court's decision on the parties'

1

motions for summary judgment and the Republic's motion for reconsideration (dkt. nos. 437 & 450),[1] Plaintiffs and the Republic submitted letters, dated June 16, 20, and 21, 2023, regarding whether the Republic should be permitted to call Horacio Diez as a fact witness at trial (dkt. nos. 457, 460-61.)

Plaintiffs assert that the Republic "never disclosed Mr. Diez as a witness, did not produce documents from him during the relevant time period in 2012 or identify him as a relevant custodian, and never presented him for deposition" and that "[i]f Mr. Diez had any light to shed on any material dispute, he should have been disclosed and deposed years ago."  (Dkt. no. 460 at 1.)  Plaintiffs thus argue, among other things, that he should be precluded from testifying because he is an undisclosed witness.  (Id. at 3 (citing Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002)).)  Plaintiffs assert that they would be prejudiced if Mr. Diez were allowed to testify because there is no meaningful opportunity for a deposition between now and the rapidly approaching trial given the Republic's failure to produce any documents from Mr. Diez. (Id.)  Plaintiffs assert that "this matter has had a highly choreographed (and highly adversarial) history, and it is wholly

---

[1] All docket references are to the Petersen docket (15-cv-2729).

inappropriate to insert a new witness, whether fact or expert, at this late stage." (Id.)

The Republic asserts that it should be allowed to call Mr. Diez, despite the fact that he was undisclosed, due to the substantial financial stakes at issue in this litigation. (Dkt. no. 457 at 1.)  The Republic claims that Plaintiffs will not be prejudiced because the Republic will make Mr. Diez available for a deposition in advance of the trial.  (Dkt. no. 457 at 1.)  The Republic does not contest Plaintiffs' assertion that they have not received any documents from Mr. Diez but argues that Plaintiffs have received documents "pertaining to Mr. Diez's testimony."  (Dkt. no. 461 at 3.)  According to the Republic, the introduction of a previously undisclosed witness is justified because, it claims, "until the Court's March 30 summary judgment decision and its May 24 decision on reconsideration, the Republic had no reason to present Mr. Diez as a witness at trial" and that "[a]s a result of those decisions, the focus of this case has changed since the Republic provided its initial disclosures nearly three years ago.  In such circumstances, courts routinely permit parties to present witnesses not listed on their initial disclosures to respond to the 'changing trajectory of the case.'"  (Dkt. no. 461 at 3

(quoting LaVigna v. State Farm Mut. Auto. Ins. Co., 736 F. Supp. 2d 504, 511-12 (N.D.N.Y. 2010)).)

When "determining whether the testimony of witnesses should be precluded" courts consider: (1) the party's explanation for failing to disclose the witness; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. Emmpresa Cubana del Tabaco v. Culbro Corp., 213 F.R.D. 151, 159 (S.D.N.Y. 2003). "A finding of bad faith is not required, and delay resulting from neglect is sufficient for preclusion." Id.

Turning to the first factor, the Court is unpersuaded by the Republic's proffered reason for failing to identify Mr. Diez as a witness until now. As Plaintiffs observe "[t]he date on which the Republic controlled more than 49% of YPF's shares has been a material issue throughout the case." (Dkt. no. 460 at 2.) Indeed, the Court of Appeals' decision on sovereign immunity in this case in 2018 included the holding that "section 28(A) compels Argentina to make a tender offer in accordance with the procedures set forth in the bylaws if 'by any means or instrument' it 'becomes the owner [of], or exercises the control of,' at least 49% of YPF's capital stock." Petersen Energía Inversora S.A.U. v. Argentine Republic, 895 F.3d 194, 206 (2d

4

Cir. 2018) (emphasis added).  Clearly the significant of the question of the date of control was apparent from at least that point.

More to the point, the Republic itself clearly recognized that the question of the date of control was highly relevant and could come down to the question of when, between April 16 and May 7, 2012, the Republic exercised control of YPF or YPF's shares.  For example, in arguing against summary judgment, the Republic argued that:

> April 16, 2012, cannot be the anchor from which to calculate the notice date because that was merely the date on which the government assumed control of management of YPF via the Intervention Decree; the Government neither initiated the 'temporary occupation' of the YPF shares nor commenced the expropriation process until the effective date of the Public Interest Law, May 7, 2012.  (See SOF ¶¶ 66, 68, 71; Giuffra Ex. 72 (Public Interest Law) Arts. 7, 13, 18.)  Second, Plaintiffs cannot simply count backward from the relevant government action (whether in April or May) and declare a "notice date" in February or March of 2012.  That position would fix liability at a point at which the Government had not yet decided to intervene in YPF in any way.  It would thus penalize the Republic for having failed to begin a tender offer even though it had not yet taken any executive or legislative action to exercise even functional control over YPF management or Repsol's shares.  There is thus no scenario in which February 13, 2012, or any date before May 7, 2012, could be appropriate for the calculation of damages—even if this Court were to fail to apply the proper May 2014 acquisition date.

(Dkt. no. 402 at 51.)  Similarly, one of the Republic's experts has an entire subsection in his expert rebuttal report titled

"Neither the Intervention on April 16, 2012 nor the Temporary Occupation as of May 7, 2012 Triggered a Tender Offer Obligation Under the Bylaws."  (Dkt. no. 368-2 at 22-25.)  This same expert stated in his reply report that:

> The intervention did not grant the Republic control over any shares of YPF, much less did it constitute an acquisition thereof.  Further, the temporary occupation of Repsol's 51% stake in YPF, which came into effect pursuant to Article 13 of the Public Utility Law of May 2012, did confer on the Republic certain rights attaching to the shares, but it did not result in a transfer of title over those shares.

(Dkt. no. 368-3 at 22.)  Perhaps most telling is the repeated use of the April 16 and May 7, 2012 dates in the Republic's rebuttal expert report on the issue of damages.  (Dkt. no. 337-3.)  It is apparent from these submissions that, contrary to its newly asserted shock to learn that the date the Republic took control of YPF's shares might be relevant, the Republic has been keenly aware of the fact that this was not only a relevant, but a central issue.  The first factor weighs against the Republic.

The second factor also weighs against the Republic.  The Republic suggests that Mr. Diez will testify as to his contemporaneous understanding of legal issues and can provide context through his experiences during the relevant events.  (Dkt. no. 457 at 2; dkt. no. 461 at 2.)  The Republic itself seems to recognize that Mr. Diez's proposed testimony is

6

nominally probative, arguing that the relevant threshold is "very low," (dkt. no. 457 at 3), and that "Plaintiffs ignore the 'low bar' on admissibility of relevant evidence," (dkt. no. 461 at 2). Even assuming that Mr. Diez's proposed testimony is relevant, it is at best nominally so.

The third factor weighs heavily against the Republic and is not remedied by the Republic's offer of a deposition. "The prejudice to plaintiff from the late disclosure flows from the need for it to examine" Mr. Diez "prior to trial." Lexington Furniture Indus. v. Lexington Co., No. 19-cv-6239 (PKC), 2021 U.S. Dist. LEXIS 100723, at *3-4 (S.D.N.Y. May 27, 2021). "Experience teaches that granting the modest request of reopening discovery for a single deposition . . . would likely lead to the reopening of much of the completed discovery process, including requests to reexamine other witnesses and supplement document productions" and "will cause [further] delay in the action proceeding to trial." Id.; see also Emmpresa Cubana del Tabaco v. Culbro Corp., 213 F.R.D. 151, 160 (S.D.N.Y. 2003) ("[I]t is clear that even the bare minimum of discovery required by fairness would at the very least severely hamper trial preparation and likely could not be completed in the two months before the trial is set to begin."). Nor is the Court persuaded that no further productions would be warranted due to

the fact that the Republic produced minutes from a shareholder meeting, a file in which "Mr. Diez's name appears several times," and files from Mr. Diez's employer. (Dkt. no. 461 at 3.)

The fourth factor also weighs against the Republic. "[A] continuance is not a reasonable possibility" given the fact that this case has been pending since April 8, 2015 – over eight years. Emmpresa Cubana del Tabaco, 213 F.R.D. at 159 (refusing to continue trial date when case was pending for approximately six years); Point Prods. A.G. v. Sony Music Entm't, Inc., 2004 U.S. Dist. LEXIS 2676, at *44 (S.D.N.Y. Feb. 20, 2004) ("[E]xclusion of the newly offered evidence, and not a continuance of discovery, is now the proper resolution in this decade old action."). "All hard-fought battles must come to an end . . . to avoid unnecessary waste. After [eight] years it is time for this case to be tried." Emmpresa Cubana del Tabaco, 213 F.R.D. at 161.

Finally, though not a recognized factor, the Court briefly addresses the Republic's assertion that it would be "highly unusual—if not unprecedented—to bar testimony from the only live fact witness offered by either party in a multibillion dollar damages trial." (Dkt. no. 461 at 2.) What is "highly unusual—if not unprecedented—[is that] the only live fact witness

offered by [the Republic] in a multibillion dollar damages trial" that will putatively swing the potential outcome by billions of dollars was never identified or disclosed.[2]  "Any claim that there is an injustice in not letting" Mr. Diez "testify at trial is baseless; as noted, [Mr. Diez] was never listed as a person whose testimony may be used at trial in" the Republic's "initial disclosures . . . and never listed at any other time through the close of discovery."  Lexington Furniture Indus., 2021 U.S. Dist. LEXIS 100723, at *4-5.  Discovery in this matter lasted for almost two years.  During that time the Republic made the strategic decision to develop a record and argue that May 8, 2014, was the relevant date and that Plaintiffs were entitled to nothing instead of arguing, as it does now, that Plaintiffs are entitled to four billion dollars instead of eight.  Having done so, it cannot now cry about the unfairness of not being permitted to change its strategy, at Plaintiffs' expense, now that it cannot argue that Plaintiffs are not entitled to anything.

   Balancing the relevant factors, the Court concludes that Mr. Diez's testimony must be precluded.

---

[2] WILLIAM SHAKESPEARE, HAMLET act 3, sc. 4, l. 206-09.

**SO ORDERED.**

Dated:   New York, New York
         June 23, 2023

_____
LORETTA A. PRESKA
Senior United States District Judge