**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br>                              Plaintiffs, <br><br>          -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br>                              Defendants. | Case Nos.: <br><br> 1:15-cv-02739-LAP <br> 1:16-cv-08569-LAP |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., <br><br>                              Plaintiffs, <br><br>          -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br>                              Defendants. | |

**PLAINTIFFS' OBJECTIONS TO ARGENTINA'S PROPOSED**
**<u>EXHIBITS AND DEPOSITION DESIGNATIONS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.      THIS COURT SHOULD EXCLUDE ARGENTINA'S IRRELEVANT AND
WASTEFUL EXHIBITS AND DEPOSITION DESIGNATIONS PURPORTEDLY
RELATED TO PREJUDGMENT INTEREST ........................................................ 2

      A.    Argentina's Ability To Pay ...................................................................... 4

      B.    Burford Capital ....................................................................................... 5

      C.    Petersen's leveraged acquisition of its stake in YPF ............................... 5

      D.    Eton Park's transactions after May 7, 2012 ........................................... 6

      E.    Evidence of the theoretical value of YPF's shares ................................. 6

II.     THE COURT SHOULD ALSO EXCLUDE ARGENTINA'S HEARSAY EXHIBITS ..... 7

## TABLE OF AUTHORITIES

**CASES**

*Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, 2009 WL 884515
(S.D.N.Y. Mar. 31, 2009) ...................................................................................5

*Loeffler v. Frank*, 486 U.S. 549 (1988) ....................................................................4

*McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688 (S.D.N.Y. 1999) ...........................7

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 875 F. Supp. 165 (S.D.N.Y. 1994) ...................................3

*Perez v. Progenics Pharm., Inc.*, 204 F. Supp. 3d 528 (S.D.N.Y. 2016) ...........................................3

*Rao v. New York City Health & Hosps. Corp.*, 882 F. Supp. 321 (S.D.N.Y. 1995) ........................3

*SEC v. Wyly*, 2014 WL 12771253 (S.D.N.Y. Sept. 24, 2014) ...........................................................4

*Yousefi v. Delta Elec. Motors, Inc.*, 2015 WL 11217257 (W.D. Wash. May 11, 2015) ..................5

**RULES**

Fed. R. Evid. 401 ..........................................................................................................1, 4

Fed. R. Evid. 402 ...........................................................................................................4

Fed. R. Evid. 403 .........................................................................................................1, 4

Fed. R. Evid. 801 .........................................................................................................2, 7

Fed. R. Evid. 901 ...........................................................................................................7

**STATUTES**

Civil Code of Argentina of 1871

    Art. 666 *bis*...........................................................................................................3

    Art. 508 .................................................................................................................2

    Art. 622 ..............................................................................................................2, 4

**ARGENTINE LEGAL AUTHORITES**

I Santos Cifuentes, *Codigo Civil Comentado Y Anotado* ...............................................3

As previewed in Plaintiffs' June 16 letter, Dkt. 456,[1] the parties have negotiated a procedure for exchanging and objecting to exhibits and deposition designations to be used at the upcoming hearing. The parties have already exchanged exhibit lists and designations and initial objections and have met and conferred. They will file objections and responses to those objections today, July 24, and complete exhibit lists indicating points of agreement and disagreement tomorrow, July 25. As directed by the Court, the parties will also submit paper copies of all proposed exhibits on July 25. Plaintiffs herein summarize their principal objections to the Republic's proposed exhibits and deposition designations.

## INTRODUCTION

Two narrow issues remain in these cases: when, between April 16, 2012 and May 7, 2012, Argentina first exercised control of more than 49% of YPF's shares, and what prejudgment interest rate should apply. Notwithstanding that limited scope, Argentina seeks to admit 200 exhibits and designate several depositions, the vast majority of which are irrelevant or will otherwise waste the Court's and parties' time. *See* Fed. R. Evid. 401, 403.

This Court was clear in its summary-judgment order that "the commercial rate applied by Argentine courts is the appropriate measure" of prejudgment interest in this case. Dkt. 437, at 63. The Court rejected the Republic's argument that it should pay the lower rate applied by Argentine administrative courts in cases involving the government. *See id.* Argentina now pivots to a new theory never before hinted at in eight years of litigation: that it should not have to pay *any* pre-judgment interest. Dkt. 466, at 7. The Republic seeks to admit a host of irrelevant evidence to support its newfound position. The Court should reject Argentina's inappropriate attempt to introduce evidence on an issue this Court has already decided —— as well as flatly inconsistent

---

[1] Docket numbers refer to the No. 15-cv-02739 matter.

with its previous position and Argentine law.  This evidence is equally inadmissible to the extent

the Republic seeks to use it to advance rationales for a reduced prejudgment interest rate for

reasons not recognized by Argentine law.

Many of Argentina's exhibits are also inadmissible hearsay.  *See* Fed. R. Evid. 801.  The

Court should exclude those exhibits as well.[2]

## ARGUMENT

## I.   THIS COURT SHOULD EXCLUDE ARGENTINA'S IRRELEVANT AND WASTEFUL EXHIBITS AND DEPOSITION DESIGNATIONS PURPORTEDLY RELATED TO PREJUDGMENT INTEREST

Argentine law requires an award of prejudgment interest to fully compensate Plaintiffs.

The Argentine Civil Code is clear that a "debtor is also liable for the damages that his delay in the

performance of the obligation might cause the creditor."  *See* PLA-4, at 2 (Civil Code Art. 508).

Full compensation requires "placing the injured party in the same pecuniary position it would have

been had the contract been properly performed."  *See* Hicks Ex. 29 (Garro Report) ¶ 37.  Courts in

Argentina accordingly seek to compensate "the creditor in full for the lost opportunity of the use

of its money."  *See id.* ¶ 39.

Prejudgment interest is not discretionary under the plain text of the Argentine Civil Code.

"A debtor in default owes interest at the rate agreed upon in the obligation from the time of

maturity. . . .  If legal interest has not been fixed, the courts shall fix the interest that the debtor

*must* pay."  *See* PLA-4, at 14 (Civil Code Art. 622) (emphasis added).  The Court accordingly ruled

on summary judgment that Plaintiffs are entitled to prejudgment interest at the rate applied by

---

[2] The Republic's exhibit list also includes three spreadsheets reflecting damages calculations by the Republic's expert Jeffrey Harris, DX-162, DX-169, and DX-175.  During the parties' meet and confer, the Republic said that these spreadsheets were in fact demonstratives that Dr. Harris would explain from the witness stand.  Plaintiffs reserve the right to object to that testimony and do not separately address the demonstrative spreadsheets here.

Argentine courts in commercial cases.  Dkt. 437, at 62-63.  Despite this clear ruling, Argentina now contends for the first time that the Court should not require the Republic to pay *any* interest. Dkt. 466, at 7.

Argentina supports this constructive motion for reconsideration of the Court's summary-judgment order by relying on inapposite precedents under U.S.-law, which does not require prejudgment interest.  *See*, *e.g.*, Dkt. 466, at 7 (citing *Rao v. New York City Health & Hosps. Corp.*, 882 F. Supp. 321, 325 (S.D.N.Y. 1995) ("[W]hen a federal statute is silent concerning the availability of prejudgment interest, a court may award prejudgment interest in accord with its equitable discretion.")).  These cases direct courts to weigh "considerations of fairness and the relative equities" when deciding *whether* to make a discretionary award of prejudgment interest under the court's inherent equitable powers.  *See*, *e.g.*, *Perez v. Progenics Pharm., Inc.*, 204 F. Supp. 3d 528, 547 (S.D.N.Y. 2016) (Preska, J.) (citation omitted).  Yet under Argentine law, as under New York law, prejudgment interest "is a legal remedy, not an equitable one."  *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 875 F. Supp. 165, 174 (S.D.N.Y. 1994) (Preska, J.); *see* I Santos Cifuentes, *Codigo Civil Comentado Y Anotado* ("It is not necessary for the creditor to prove that the delay resulted in damages for the creditor, because the law holds that such damages are inevitable, obligatory and automatic, since the creditor was deprived of the timely availability of capital that yields returns.").  Some provisions of the Argentine civil code, such as Article 666 *bis* (sanctions), allow for equitable considerations in the context of penalties or sanctions.  *See* PLA-4, at 18 (Civil Code Art. 666 *bis*) ("The penalties shall be scaled in proportion to the economic means of the person that must discharge them, and may be left without effect or readjusted if the judgment debtor ceases to resist and totally or partially justifies his conduct.").  The absence of

similar language in Article 622 underscores Argentine law's deliberate choice to exclude such considerations from prejudgment interest determinations.

Likewise, just as with the law of many American jurisdictions, under Argentine law, the sole purpose of prejudgment interest is to compensate "the creditor in full for the lost opportunity of the use of its money." *See* Hicks Ex. 29, ¶ 39; *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) ("Prejudgment interest, of course, is 'an element of complete compensation.'"). Argentina's proposed evidence related to putative equitable considerations has no bearing on that issue either. Accordingly, the Court should exclude it under Rules 401 and 402 as irrelevant and under Rule 403 as wasting time.

Argentina seeks to admit exhibits that appear to concern five topics that the Republic contends are relevant to these issues: 1) economic conditions in Argentina, 2) Burford Capital's involvement in this litigation, 3) how Petersen financed its purchase of YPF shares, 4) Eton Park's purchase and sale of YPF shares after May 7, 2012, and 5) other value metrics, such as tender offers concerning other companies. None of these issues speaks to Plaintiffs' loss of use of their money, the relevant issue under Argentine law. A complete list of exhibits the Court should exclude on this basis appears in Attachment A.

### A. Argentina's ability to pay

The Republic contends that "current economic conditions in Argentina weigh in favor of a restrained approach to prejudgment interest." Dkt. 466, at 9. The Republic accordingly seeks to admit Argentina's 2023 Fiscal Year Budget, DX-147 through DX-150, and various IMF reports, DX-68 through DX-70 and DX-153. But Argentine courts do not take into account a debtor's ability to pay to determine interest or damages. Neither do American courts. *See SEC v. Wyly*, 2014 WL 12771253, at *27 (S.D.N.Y. Sept. 24, 2014) (rejecting argument that inability to pay

weighed against awarding prejudgment interest).  The Court should reject the Republic's attempts to use evidence related to Argentina's current economic conditions to curry sympathy.

### B.      Burford Capital

Argentina also seeks to present evidence related to the funding of this litigation, including Burford press releases (which if offered for their truth are inadmissible hearsay) and the deposition testimony of Burford's CEO.  The Republic asks the Court to award no prejudgment interest because, it claims, "most prejudgment interest would accrue to litigation funder Burford."  Dkt. 466, at 8.  Its proposed exhibits include Burford's annual financial reports, DX-67 and DX-84, and Burford's funding agreements with Plaintiffs, DX-44 and DX-45.  Like the fee structure of counsel, the participation of a financier or other service provider is irrelevant to damage or prejudgment interest awards.  *See Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, 2009 WL 884515, at *1 (S.D.N.Y. Mar. 31, 2009) ("[E]vidence of Barbarian's attorneys' fees and costs should be precluded because it was irrelevant to the issue of damages, and any probative value of any such evidence would be substantially outweighed by the danger of unfair prejudice before the jury under Federal Rule of Evidence 403.").  Courts have accordingly repeatedly rejected discovery requests into litigation funders because their involvement is irrelevant.  *See*, *e.g.*, *Yousefi v. Delta Elec. Motors, Inc.*, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from [a third-party] is not relevant to any claim or defense at issue."). The only relevant question is the amount that would fully compensate Plaintiffs for their loss of the use of their money since the time of the breach.  Burford's involvement has no relevance to that question.

### C.      Petersen's Leveraged Acquisition of Its Stake in YPF

Argentina seeks to introduce a number of exhibits related to Petersen's financing and acquisition of its shares in YPF.  These exhibits include correspondence from Petersen's creditors,

DX-48 and DX-138 through DX-140.  The Republic has also designated deposition testimony by Sebastian Eskenazi on the topic.  How Petersen acquired its shares is simply not relevant to the appropriate commercial rate that this Court should apply in setting prejudgment interest.

### D.    Eton Park's Transactions After May 7, 2012

Argentina also seeks to enter evidence of Eton Park's transactions after May 7, 2012 and the related deposition testimony of Eric Mindich, the founder of Eton Park.  These exhibits include more than 30 emails confirming Eton Park trades of YPF shares after May 7, 2012.  *See* DX-102 through DX-136.  While the Republic has not clearly explained the purpose of this evidence, this Court's finding that Argentina took control of the Repsol shares no later than May 7, 2012 deprives transactions after this date of any relevance in this action.

### E.    Evidence of the Theoretical Value of YPF's Shares

The Republic appears to seek to introduce evidence that the tender offer price exceeds the "true" value of Plaintiffs' shares to show that prejudgment interest would result in an unjustified "windfall."    For example, the Republic's exhibit list includes compilations of information regarding takeovers of other companies that were not governed by the tender offer provisions in YPF's Bylaws, DX-172, DX-183, and a spreadsheet collecting the rise and fall of oil prices over the past three decades, DX-194.[3]  Put simply, this is a recycled version of Argentina's summary judgment argument that the Bylaws' tender offer price is "invalid . . . because it is 'inflated.'"  Dkt. 437, at 60.  As the Court explained, however, "the Republic was not 'forced' to trigger the tender offer obligation when it did" and cannot trigger "a tender offer obligation at a time when the tender offer price would be high and then seek refuge from its own conduct . . . ."  *Id*. at 61.  Just as with

---

[3] Plaintiffs also include a number of other native spreadsheets that purport to reflect various kinds of data.  Plaintiffs are unsure what purpose these exhibits might serve but reserve the right to object to them under Fed. R. Evid. 901(a) and for lack of foundation.

damages, a theoretical valuation of Plaintiffs' shares is irrelevant to the proper rate of prejudgment interest.

## II.    THE COURT SHOULD EXCLUDE ARGENTINA'S HEARSAY EXHIBITS

Plaintiffs also object to the admission of Argentina's hearsay exhibits.   Plaintiffs' objections fall principally into three buckets: (1) news articles, press releases, and academic publications; (2) statements by Repsol, YPF, Burford, and other non-parties; and (3) Argentine government reports.  A complete listing of these exhibits appears in Appendix B.  The first category is classic hearsay.  *See McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y. 1999) ("Newspaper articles are hearsay . . . and . . . are not admissible evidence.").  The second and third categories are likewise inadmissible: Argentina cannot use its own out-of-court statements or those of non-parties as evidence.  *See* Fed. R. Evid. 801(d)(2).

The Republic also seeks to submit its experts' reports to this court in full, DX-27 through DX-34.  The Republic admits that the reports are inadmissible hearsay, but suggests they be marked only for identification.  If a party cross-examines an adversary expert with his report, Plaintiffs expect the report will be marked for identification for the Court's convenience.  But there is no reason to mark all experts' reports in advance.  The Republic would even mark the reports of a potential rebuttal witness whom it may not call.  The Court should reject this attempt to circumventing their inadmissibility,

Dated: July 24, 2023                              Respectfully submitted,

CLEMENT & MURPHY, PLLC

By:      */s/ Paul D. Clement*
Paul D. Clement
C. Harker Rhodes, IV*
706 Duke Street
Alexandria, VA 22314

Phone:  (202) 742-8900
Fax:  (202) 742-8895
Email:  paul.clement@clementmurphy.com
            harker.rhodes@clementmurphy.com
*Supervised by principals of the firm who are members of the Virginia bar


KELLOGG, HANSEN, TODD, FIGEL
    & FREDERICK, P.L.L.C.

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone:  (202) 326-7900
Fax:  (202) 326-7999
Email:  mhansen@kellogghansen.com
            dho@kellogghansen.com
            agoldsmith@kellogghansen.com


KING & SPALDING LLP

Israel Dahan
Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone:  (212) 556-2114
Fax:  (212) 556-2222
Email:  idahan@kslaw.com
            lharris@kslaw.com

                        -and-

Reginald R. Smith
1100 Louisiana Street
Houston, TX 77002
Phone:  (713) 751-3200
Fax:  (713) 751-3290
Email:  rsmith@kslaw.com


*Counsel for Plaintiffs Petersen Energía Inversora,
S.A.U., Petersen Energía, S.A.U., Eton Park Capital
Management, L.P., Eton Park Master Fund, Ltd.,
and Eton Park Fund, L.P.*