UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x
PETERSEN ENERGÍA INVERSORA, : 
S.A.U. and PETERSEN ENERGÍA, S.A.U., :
: Case No.: 1:15-CV-02739 (LAP)
Plaintiffs, :
:
v. :
:
ARGENTINE REPUBLIC and YPF S.A., :
:
Defendants. :
---------------------------------x

---------------------------------x
ETON PARK CAPITAL MANAGEMENT, :
L.P., ETON PARK MASTER FUND, LTD., :
and ETON PARK FUND, L.P., :
: Case No.: 1:16-CV-08569 (LAP)
Plaintiffs, :
:
v. :
:
ARGENTINE REPUBLIC and YPF S.A., :
:
Defendants. :
---------------------------------x

**THE ARGENTINE REPUBLIC'S OBJECTIONS TO PLAINTIFFS'
EXHIBITS AND DEPOSITION DESIGNATIONS**

In accordance with the parties' agreement, the Argentine Republic submits its written objections to Plaintiffs' proposed exhibits and deposition designations.[1] If the Court wishes to hear argument on any evidentiary disputes, the Republic respectfully requests that the Court order a hearing on the morning of Wednesday, July 26, prior to the start of trial.

---

[1] Plaintiffs will also be submitting objections, and both sides have agreed to submit responses at 9:00 PM today.

1.  The parties agree on three points: *First*, the parties agree that exhibits to which no objections have been lodged should be deemed admitted, may be used for any purpose, and do not need to be sponsored by any witness. *Second*, the parties agree that the expert reports included on the parties' exhibit lists should not be admitted, but marked for identification only.[2] *Third*, the parties agree that any demonstratives on the parties' exhibit lists (including expert damages charts) are marked for identification and are not admissible.[3]

2.  As to objections to exhibits and deposition designations, the parties disagree as to the approach this Court should take. Over the past two weeks, by agreement, the Republic and Plaintiffs have exchanged exhibit lists and objections. Not counting objections the Republic has now withdrawn or which have been mooted by the foregoing agreements, the Republic maintains objections to 10 of Plaintiffs' 80 proposed exhibits, with only minimal relevance or hearsay objections detailed below.

By contrast, Plaintiffs have objected to approximately 120 of the Republic's approximately 200 exhibits (excluding objections that have been mooted by the parties' agreements), including objecting to more than 100 exhibits on "Rule 401" and "Rule 403" grounds.

---

[2]  Plaintiffs have indicated that they object to the marking of the expert reports for identification, but have not explained why they object to this standard procedure, other than to suggest that expert reports may not be used on direct examination. For example, the Republic believes that experts may refer on direct examination to figures or analyses in their reports and adopt those figures during their examination.

[3]  The parties are also in agreement that their experts may lay a foundation for their respective damages calculations during trial, but need not read all the calculations in to the record. The summary damages calculations of Plaintiffs' expert are marked as PX-1, with back up at PX-2. The Republic's expert's responsive damages calculations are marked as DX-162, with back up and alternative interest calculations at DX-175. The Republic's expert also presents alternative interest calculations with respect to Plaintiffs' damages calculations on DX-169.

Many of the Republic's 200 exhibits are documents supporting its damages expert's analyses and calculations. The Republic expects that many of these exhibits—included to ensure that the record underlying its expert's opinions regarding damages is complete—will not be a significant focus of the trial or arguments.

3. When the parties met and conferred on Sunday, July 23 to address their respective objections to exhibits, Plaintiffs asserted that four broad categories of the Republic's exhibits should be excluded, including (1) all exhibits relating to the Republic's current financial position and economic situation; (2) exhibits relating to the Eskenazi family's financing and acquisition of YPF shares through the now-bankrupt Petersen plaintiff SPVs, including documents relating to the exorbitant dividends Petersen and Repsol caused YPF to pay to service that debt; (3) exhibits relating to Eton Park's trading in YPF shares; and (4) exhibits relating to litigation funder Burford's acquisition and sponsoring of Petersen and Eton Park's claims—including that Burford paid only 15 million euros (approximately $17 million) for Petersen's claims, and for which it now asserts it should receive 70% (75% in the case of Eton Park) of the $16 *billion* that Plaintiffs seek.

In their pre-trial brief, Plaintiffs claim that awarding less than 8% in prejudgment interest will be a "windfall for Argentina and a further injury to Plaintiffs." (Pls.' Trial Mem. at 10.) In support of their argument, Plaintiffs attempt to introduce exhibits—including hearsay newspaper articles and documents concerning arbitration awards against the Republic—that have no bearing on this case, including PX-40, PX-41, and PX-42. In response, the Republic is entitled to present its own evidence to demonstrate why Plaintiffs' "windfall" argument is wrong. The

Republic's proposed evidence is directly relevant to the setting of the pre-judgment interest rate.[4]

Specifically, Plaintiffs seek billions in prejudgment interest at 8%—a rate that would nearly double the billions Plaintiffs seek in damages. In Argentina, as in the United States, court have discretion in awarding prejudgment interest. *SEC* v. *Contorinis*, 743 F.3d 296, 308 (2nd Cir. 2014) ("The decision to award prejudgment interest is governed by the equities, reflecting 'considerations of fairness.'"). Given that the Plaintiffs' damages will be a massive windfall in any scenario, the Republic urges the Court to award no prejudgment interest. *See* Republic's Pre-Trial Mem. at 7-8.

As a practical matter, even if the Court were inclined to entertain Plaintiffs' relevance objections, there is no need for it to rule on these objections now, two days before the start of trial. In this time-limited bench trial where over $10 billion is in dispute, the Court should receive the party's evidence and determine the weight and significance in its post-trial ruling.

As this Court has recognized, "[w]hen the Court is the trier of fact, concerns about permitting evidence of questionable reliability…are far less pressing." *United States* v. *Donziger*, 2020 WL 6364652, at *2 (S.D.N.Y. Oct. 28, 2020) (Preska, J.). Because there is no risk of misleading or confusing a jury, the Court can determine the relevance and weight of that evidence post trial. This approach is routinely followed in this District in bench trials. *See, e.g.*, *Mullins* v. *City of New York*, 634 F. Supp. 2d 373, 388 (S.D.N.Y. 2009) (Scheindlin, J.), *aff'd*, 626 F.3d 47 (2d Cir. 2010) ("Moreover, concerns at the root of relevancy and hearsay objections apply with far lesser force when a judge serves as fact-finder, rather than a lay jury"); *Malinowski* v. *Wall Street*

---

[4] This morning at 9:41 AM, Plaintiffs indicated that they object to the relevance of the Republic's exhibits "apparently relating to various valuation metrics." These documents include documents relating to takeover premiums (DX 172 and DX 181 – DX 183) and changes in oil prices (DX 194). These documents are relevant to demonstrating the magnitude of the damages Plaintiffs seek, provide necessary context, and are relevant to prejudgment interest.

*Source, Inc.*, 2011 WL 6019245, at *1 (S.D.N.Y. Dec. 2, 2011) (Engelmayer, J.) (finding that the Court would "defer[] ruling until trial" on the admissibility of evidence and noting that "because this is a bench trial—there should be no prejudice to [a party] from deferring this ruling").

4.   Likewise, while the Republic has lodged only minimal objections to the deposition testimony offered by Plaintiffs—and has now withdrawn most of its objections—Plaintiffs have objected to nearly all the substantive deposition testimony relied on by the Republic on Rule 401 and Rule 403 grounds. There is also no need for the Court to rule on these objections. The parties have agreed that they will not use valuable trial time playing video or reading deposition testimony into the record, but will instead, subject to the Court's permission, submit the designated testimony.[5] The Republic urges the Court to defer addressing any objections on the designated testimony until it is weighing the evidence after the trial.

5.   Although the Court can defer ruling on evidentiary objections, the Republic has the following objections to Plaintiffs' proposed exhibits, which are specified in **Exhibit A** hereto and summarized below.

*First*, Plaintiffs propose to submit newspaper articles (PX-7, PX-8, PX-79, and PX-80) as evidence. Newspaper articles are clearly hearsay and not admissible. *McAllister* v. *New York City Police Dep't*, 49 F.Supp.2d 688, 705, n.12 (S.D.N.Y. 1999) (Wood, J.) ("Newspaper articles are hearsay…and therefore are not admissible evidence"). Plaintiffs have taken the position that portions of newspaper articles may be admissible to the extent that they contain supposed quotations from government officials. But quotes in newspaper articles not

---

[5]   The Republic proposed on July 22 that the parties submit the transcripts of the designated testimony with differently colored (*i.e.*, yellow and blue) highlighting to indicate the parties' respective designations. Plaintiffs have said that they are still evaluating the Republic's proposal.

properly admissible as statements of an opposing party absent a basic showing of reliability. *See In re Columbia Sec. Litig.*, 155 F.R.D. 466, 475 (S.D.N.Y. 1994) (Sand, J.) ("News accounts, unsupported by corroborating evidence and offered to prove that certain statements were made, will usually lack the 'circumstantial guarantees of trustworthiness' that [potentially applicable hearsay exceptions] require[]").

In any event, any use of the newspaper articles should only extend to statements that the Court deems to be sufficiently trustworthy; a newspaper article that contains a non-hearsay quote of an opposing party does not become generally admissible because it contains a non-hearsay statement. *See Redmond* v. *Teledyne Landis Mach.*, 2017 WL 2465173, at *10 (N.D.N.Y. June 7, 2017) (D'Agostino, J.) (acknowledging that statement of party opponent was not hearsay, but "the newspaper article itself is still inadmissible hearsay as it is being offered for the truth of the matter asserted, and the Court will not consider it as part of the admissible record . . .").[6]

*Second*, other documents proposed by Plaintiffs are hearsay, including an April 2012 email chain between Sebastián Eskenazi, Matias Eskenazi, and Ruben Marasca (an Eskenazi group employee) related to "changes in YPF's management." (PX-45). This email is hearsay and is not subject to any exception—even if the e-mail itself constitutes a business record, the embedded hearsay statements of the Eskenazis and their employees are clearly hearsay and not subject to any exception to the extent offered by the Plaintiffs for their truth.[7]

---

[6] PX-7 and PX-8 should also be excluded on Rule 403 grounds because they report on a March 2012 YPF Board Meeting, the minutes of which are a separate exhibit (PX-6). There is no need for the Court to rely on second-hand news reports, when the actual board minutes are part of the record.

[7] The Republic also objected to the admission of the transcript of a YouTube video of comments made by Argentina's current president Alberto Fernández during an interview on April 16, 2012. (PX-13.) At the time of this interview, Mr. Fernández was not in the government. Instead, he was speaking on a television news show as a commentator, and there is no hearsay exception that would apply to his remarks. Plaintiffs have now agreed to withdraw

*Third*, the Republic also objects to Plaintiffs' inclusion of Argentine Ministry of Finance resolutions dealing with arbitration awards issued against Argentina in three cases completely unrelated to the present dispute (PX-40, PX-41, PX-42).  These documents have no relevance to the present dispute as they do not concern the intervention and expropriation of 51% of Repsol's YPF shares.  They should not be admitted.

The Republic also attaches its objections to certain designated deposition testimony to preserve those objections:  attached as **Exhibit B** is a chart identifying the Republic's specific objections to Plaintiffs' designations of the deposition of Diego Pando, who served as YPF's Rule 30(b)(6) witness when YPF was a party to this case.  Specifically, the Republic objects to Plaintiffs' designation of the testimony of Mr. Pando related to the supposed actions of certain government officials at YPF's headquarters on April 16, 2012 (Pando Tr. at 65:8-65:16, 65:19-65:23, 65:24-66:24, and 67:13-68:7).  As Mr. Pando explains in his testimony, he did not witness the events on April 16 and therefore lacks personal knowledge; accordingly, his testimony about these events is not admissible.  FRE 602.  The Republic also objects to Plaintiffs' designation of portions of Mr. Pando's testimony discussing an October 2013 email exchange between Mr. Pando and others discussing the YPF Bylaws tender offer formula  (Pando Tr. at 123:13-125:2, 125:3-126:10, 126:13-127:9, 127:12-127:13, 129:12-129:24, 130:2-130:11, and 130:14-131:20).  This exchange asks Mr. Pando, who is not a lawyer, to reach legal conclusions under Argentine law, and should be excluded on that ground and because Plaintiffs failed to lay a foundation for Mr.

---

this exhibit.  The Republic notes that this exhibit was referred to in support of argument in Plaintiffs' pretrial memorandum (at 6-7), but should not be considered in light of Plaintiffs' withdrawal of the exhibit.

Pando's testimony.[8]

Dated: July 24, 2023

                      Respectfully submitted,

                      */s/ Robert J. Giuffra, Jr.*
                      Robert J. Giuffra, Jr.
                      Sergio J. Galvis
                      Amanda F. Davidoff
                      Thomas C. White
                      Adam R. Brebner

                      SULLIVAN & CROMWELL LLP
                      125 Broad Street
                      New York, New York  10004-2498
                      Telephone:   (212) 558-4000
                      Facsimile:    (212) 558-3588

                      *Counsel for The Argentine Republic*

---

[8] Mr. Pando's role as YPF's Fed. R. Civ. P. 30(b)(6) witness does not make his testimony admissible.  Particularly when YPF is no longer a party to this action.