**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

PETERSEN ENERGÍA INVERSORA, :
S.A.U. and PETERSEN ENERGÍA, S.A.U., :
                            :    Case No.:  1:15-CV-02739 (LAP)
        Plaintiffs, :

            v. :

ARGENTINE REPUBLIC and YPF S.A., :
             :
        Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ETON PARK CAPITAL MANAGEMENT, :
L.P., ETON PARK MASTER FUND, LTD., :
and ETON PARK FUND, L.P., :    Case No.:  1:16-CV-08569 (LAP)
             :
        Plaintiffs, :

            v. :

ARGENTINE REPUBLIC and YPF S.A., :
             :
        Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ARGENTINA'S RESPONSE TO PLAINTIFFS' WRITTEN EVIDENTIARY**
**OBJECTIONS**


July 24, 2023

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ............................................................................. 1

**BACKGROUND** ............................................................................................... 3

**II.**   **THE COURT SHOULD DEFER RULING ON ANY EVIDENTIARY ISSUES** ...... 4

**III.**   **PLAINTIFFS' EVIDENTIARY OBJECTIONS ARE MERITLESS** ........................ 6

    A.    The Republic's Exhibits Are Relevant to the Calculation of Prejudgment Interest ........................................................................................... 6

    B.    The Republic's Exhibits Are Not Hearsay ........................................... 11

**CONCLUSION** .............................................................................................. 13

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Coon* v. *Bell*,
2019 WL 3975547 (N.D.N.Y. 2019) ......................................................................4

*Coventry Enterprises LLC* v. *Sanomedics Int'l Holdings, Inc.*,
191 F. Supp. 3d 312 (S.D.N.Y. 2016)..................................................................12

*Dreyful Ashby, Inc.* v. *S/S "ROUEN"*,
1989 WL 151685 (S.D.N.Y. Dec. 12, 1989) .........................................................5

*FAA* v. *Landy*, 705 F.2d 624 (2d Cir. 1983) ................................................................11

*Howard Univ.* v. *Borders*,
2022 WL 3568477 (S.D.N.Y. Aug. 17, 2022)........................................................5

*Jean-Laurent* v. *Hennessy*,
840 F. Supp. 2d 529 (E.D.N.Y. 2011) .................................................................11

*Kaur* v. *New York City Health & Hosps. Corp.*,
688 F. Supp. 2d 317 (S.D.N.Y. 2010).................................................................12

*Lakah* v. *UBS AG*,
2016 WL 10839568 (S.D.N.Y. Jan. 20, 2016) .......................................................5

*Malinowski* v. *Wall St. Source, Inc.*,
2011 WL 6019245 (S.D.N.Y. Dec. 2, 2011) ..........................................................4

*Myers* v. *Andzel*,
2007 WL 3256865 (S.D.N.Y. Oct. 15, 2007)..........................................................4

*In re Parmalat Sec. Litig.*,
477 F. Supp. 2d 637 (S.D.N.Y. 2007)..................................................................11

*Penberg* v. *HealthBridge Mgmt.*,
823 F. Supp. 2d 166 (E.D.N.Y. 2011) .................................................................12

*Rekor Sys., Inc.* v. *Loughlin*,
2023 WL 1777248 (S.D.N.Y. Feb. 6, 2023)...........................................................1

*United States* v. *Brown*,
415 F.3d 1257 (11th Cir. 2005) .............................................................................5

*United States* v. *Donziger*,
2020 WL 6364652 (S.D.N.Y. Oct. 28, 2020) .........................................................1

*United States v. Stein*,
    2007 WL 3009650 (S.D.N.Y. Oct. 15, 2007) ...........................................................................11

*Victoria's Secret Stores Brand Mgmt., Inc.* v. *Sexy Hair Concepts, LLC*,
    2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ................................................................................1

**Other Authorities**

8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure .............................5

Fed. R. Evid. 403 .........................................................................................................................3

Fed. R. Evid. 803 ...................................................................................................................11, 12

**PRELIMINARY STATEMENT**

Regrettably, two days before the start of the upcoming damages trial, Plaintiffs bring a slew of evidentiary disputes to the Court's attention, purportedly grounded in relevance, hearsay, or both.  In doing so, Plaintiffs seek to hamstring the Republic's opportunity to present evidence in an already truncated trial at which the Court must decide, taking into account its summary judgment rulings, whether to award between *$4.92 billion* and *$16.05 billion* in damages.  The Court should not permit Plaintiffs to "run up the score" by keeping out evidence before the game even starts.

As the Republic explained in its submission earlier today, the Court need not (and should not) rule on the admissibility of 121 individual exhibits less than 48 hours before presiding over a two-and-half-day bench trial.  In this District, courts have repeatedly recognized that "[w]here a bench trial is in prospect," resolving evidentiary questions "at the pretrial stage is generally less efficient than simply hearing the evidence." *Victoria's Secret Stores Brand Mgmt., Inc*. v. *Sexy Hair Concepts, LLC*, 2009 WL 959775, at *6, n.3 (S.D.N.Y. Apr. 8, 2009) (Lynch, J.); *Rekor Sys., Inc.* v. *Loughlin*, 2023 WL 1777248, at *3 (S.D.N.Y. Feb. 6, 2023) (Liman, J.) (deferring ruling on evidentiary motion in the context of a bench trial because "[t]he Court need not prejudge the force of Plaintiffs' argument or Defendants' responses").  As this Court has rightly put it, "[w]hen the Court is the trier of fact, concerns about permitting evidence of questionable reliability . . . are far less pressing." *United States* v. *Donziger*, 2020 WL 6364652, at *2 (S.D.N.Y. Oct. 28, 2020) (Preska, J.).  Respectfully, the prudent path here is to admit the contested exhibits, with objections preserved and to be resolved as needed during and after the trial.  In all likelihood, the vast majority of these disputes will fall away and never require this Court's attention.  The Republic proposed this commonsense approach to Plaintiffs last week.

If the Court chooses to resolve the evidentiary objections presented in Plaintiffs' eve-of-trial motion, it should overrule them.  Plaintiffs' relevance objections to 107 of the Republic's exhibits ask the Court to prematurely rule on an Argentine law issue to be decided at trial *before* hearing from the Republic's experts.  Specifically, this Court found that it would use the rate applied by an Argentine commercial court, but left open the prejudgment interest rate it would apply.  *Petersen* ECF No. 437 (Order) at 63.  As much as $7.62 billion turns on this question.  A brief on evidentiary issues—with an 11-hour response window—is not an appropriate procedure to decide this issue.  Indeed, much of Plaintiffs' submission is, in essence, an improper reply to the Republic's pretrial memorandum.

As the Republic's experts will explain at trial, the contested exhibits would be relevant to an Argentine commercial court's determination of prejudgment interest in this case.  That is because Argentine commercial courts take into account equitable considerations when determining whether to apply prejudgment interest rate, and if so, what rate to apply in a given case.  Thus, as the Republic's experts will explain at trial, evidence pertaining to Argentina's financial position and the potential effects of a judgment for billions more in damages on the Argentine public, Plaintiff Petersen's overleveraged acquisition of YPF, S.A. shares resulting in its mismanagement of YPF, Plaintiff Eton Park's acquisition of shares in the midst of speculation of an intervention by the Republic and subsequent selling off of those shares, and finally, Plaintiffs' enormous windfall in this case are all relevant to the Court's determination of prejudgment interest. (*See Petersen* ECF No. 473 (Pls' Br.) at App. A. 1-9 (dividing the Republic's exhibits into these broad categories).)

*Second*, Plaintiffs' hearsay objections—through which they ask the Court to resolve without any context about the purpose for which the Republic intends to use these exhibits—

should be rejected.  These exhibits fall within recognized exceptions to the hearsay rule, are not hearsay, or are not being admitted for the truth of the matter asserted.  Once again, the sensible solution is for the Court to simply hear the parties' presentation of the evidence and take these exhibits "for what they are worth" when rendering its decision on damages.

## BACKGROUND

The Republic has tried to facilitate the efficient and expeditious resolution of the outstanding issues to be decided at trial and to avoid burdening the Court with having to rule on evidentiary issues.  To that end, and as explained in the Republic's Objections to Plaintiffs' Exhibits, the Republic agreed with Plaintiffs to narrow the range of disputes prior to trial by adopting a schedule for the exchanging of exhibit objections, along with committing to a meet-and-confer at which the parties would attempt to resolve any disagreements.  (*See Petersen* ECF No. 474 ("Arg. Br.") at 2-3.)  The Republic also agreed to submit any remaining objections to the Court on July 24, 2023 with any responses due later that same day, on the understanding that outstanding disputes would be limited and the parties would preview their objections well in advance of that deadline at the meet-and-confer.

Plaintiffs have obstructed the Republic's efforts at cooperative dispute resolution. Recognizing that the upcoming damages trial is limited to 7.5 hours per side, the Republic offered minimal (less than 20) objections to Plaintiffs' exhibits on hearsay or relevance grounds. Plaintiffs, by contrast, objected to over 120 of the Republic's 200 exhibits prior to the meet-and-confer and refused to hold the meet-and-confer until July 23, 2023.  Prior to the meet-and-confer, on July 22, 2023, the Republic suggested, among other things, that the parties agree to admit all exhibits objected to solely based on relevance or Rule 403 grounds, without waiving the right to argue later on that the Court should not consider individual exhibits.  Plaintiffs did not respond to the Republic's offer and then at the meet-and-confer largely refused to articulate their specific

justifications for objections, seemingly in order to prevent *any* issues from being resolved without involving the Court.  At the meet-and-confer, Plaintiffs alluded only to the "categories" of exhibits they might object to today—and did not even identify the exhibits in the various categories of objections—while stating there "might" *also* be "one-off [exhibits]," to which they would later also seek an *in limine* exclusion order.  Plaintiffs then filed earlier today a submission with the Court objecting to 121 exhibits primarily based on a relevance objection grounded in an Argentine law theory.  Specifically, Plaintiffs object to 107 exhibits that they have arbitrarily divided into five categories on relevance grounds, and they object to 52 overlapping exhibits on hearsay grounds, which they have subdivided into three different categories.

The purpose of a meet-and-confer is for the parties "to make a genuine effort to resolve . . . dispute[s] by determining . . . what specific genuine issues, if any, cannot be resolved without judicial intervention."  *Myers* v. *Andzel*, 2007 WL 3256865, at *1 (S.D.N.Y. Oct. 15, 2007).  Rather than following that process, Plaintiffs held back their laundry list of evidentiary objections until the eve of trial and made no effort to resolve these unnecessary disputes without judicial intervention.

## I.    THE COURT SHOULD DEFER RULING ON ANY EVIDENTIARY ISSUES

As explained in the Republic's submission earlier today, the Court need not address any of Plaintiffs' relevance or hearsay objections.  (Arg. Br. at 3-4.)  Instead, it should follow the ordinary course and defer ruling on any relevance or hearsay objections until during or after the bench trial.  *See Malinowski* v. *Wall St. Source, Inc.*, 2011 WL 6019245, at *1 (S.D.N.Y. Dec. 2, 2011) (Englemayer, J.) ("[B]ecause this is a bench trial—there should be no prejudice to [the Plaintiff] from deferring [evidentiary] ruling."); *Coon* v. *Bell*, 2019 WL 3975547 at *3 (N.D.N.Y. 2019) ("[T]he Court agrees with Defendant that relevance cannot be determined until the Court

hears Plaintiff's testimony at trial. Accordingly, the Court reserves decision on the motion until trial.").

Plaintiffs' approach will waste the limited time available to the parties and the Court disputing the relevance of countless exhibits that may or may not even be contested by the conclusion of the trial and whose relevance the Court will be of course, able to weigh on its own in the context of the evidence submitted at trial and the parties' arguments. *See Lakah* v. *UBS AG*, 2016 WL 10839568, at *1 (S.D.N.Y. Jan. 20, 2016) (Preska, J.) ("[W]here the judge is the trier of fact, the Court has greater flexibility in satisfying its gatekeeping function."); *United States* v. *Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for herself."). The relevance objections Plaintiffs are interposing all speak to weight, not admissibility, and with regard to Plaintiffs' relevance and hearsay objections "all doubts at a bench trial should be resolved in favor of admissibility." *Dreyful Ashby, Inc.* v. *S/S "ROUEN"*, 1989 WL 151685, at *2 (S.D.N.Y. Dec. 12, 1989) (Sotomayor, J.); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2885 ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence.").

Plaintiffs' course of conduct is particularly unwarranted given that the Republic requested—and Plaintiffs successfully opposed—a trial of more than two-and-a-half days. The only "risk of the admission of irrelevant evidence in a bench trial is that it will prolong the proceedings." *See Howard Univ.* v. *Borders*, 2022 WL 3568477, at *7 (S.D.N.Y. Aug. 17, 2022) (Liman, J.) Plaintiffs are free to use their limited time as they see fit, and so is the Republic. But in their rush to have this Court enter the largest judgment in this District's history, Plaintiffs should not be permitted to exclude the Court's consideration of entire categories of relevant evidence

before the Republic's experts can explain the relevance of that evidence to the setting of prejudgment interest.

Finally, the Republic's proposal that the Court hear from witnesses at the trial before ruling on evidentiary issues in the abstract is particularly sensible here given that Plaintiffs' relevance objections *are grounded in Argentine law*.  (Pls' Br. at 2.)  It makes no sense for the Court to pre-determine the question of what is relevant under Argentine law without first hearing from the Republic's experts.

## II.   PLAINTIFFS' EVIDENTIARY OBJECTIONS ARE MERITLESS

### A.   The Republic's Exhibits Are Relevant to the Calculation of Prejudgment Interest.

If the Court elects to rule on each and every one of Plaintiffs' relevance objections to 107 exhibits, it should overrule them.  In its March 31, 2023 Order the Court held that "the commercial rate applied by Argentine courts is the appropriate measure" of prejudgment interest in this case, but it "reserve[d] judgment on the precise rate it will utilize."  (Order at 63; *see also* Pls' Br. at 1.) All of the Republic's contested exhibits are relevant to its argument that an Argentine commercial court would exercise its discretion to either decline to apply prejudgment interest to any damages award or to award at most, an appropriately moderate rate of interest, rather than the highest possible rate, which Plaintiffs' seek.

As Plaintiffs concede, the relevance of *all* the contested exhibits depends on a question of Argentine law—that is, the prejudgment interest rate an Argentine commercial court would apply.  (Pls' Br. at 2.)  As the Republic explained in its pretrial brief, its experts are going to testify at trial that *Argentine commercial courts* have discretion in awarding prejudgment interest.  (*See Petersen* ECF No. 466 (Arg. Pretrial Br.) at 7 (citing Arg. Civil Code § 622).)  An Argentine court in exercising this discretion can consider a wide swath of equitable factors,

including things like "the moral order," "proportionality," and general "fairness."  *See, e.g.*, PLA-28 (*Genexa S.A. c. Banco de Galicia y Buenos Aires*) ("[I]t is up to the courts to establish the compatibility between the interest rate and the moral order."); DLA-26 (Vélez v. Gómez) ("[T]he calculation of such interest yields an absolutely disproportionate result, which become abusive and usurious. This justifies this Court acting on its own initiative."); PLA-24 (*Miguel Edward Roberto Miguel c/ Ormachea Juan Claudio y Otros/ Ejecutivo*) (revising prejudgment interest rate to one the court considered "more equitable"); PLA-9 (*All Food S.A. s/Concurso Preventivo s/Incidente de Revision de Credito de Garantia de Valores S.G.R.*) (revising prejudgment interest rate to one the court "deemed fair").[1]  And Argentine commercial courts have, in fact, exercised that discretion to award no prejudgment interest.  *See* DLA-22 (*Bovero Nilda Maria* vs. *Poder Ejecutivo Nacional y otro*) at 6-7.

      The challenged exhibits are relevant to the setting of what could be many billions of dollars of prejudgment interest in this case.  Plaintiffs may argue that particular factors are entitled to little or no weight here, but they cannot short-circuit the Court's resolution of this disputed foreign law question through a pre-trial evidentiary motion without hearing from the parties' Argentine law experts.  Moreover, Plaintiffs' re-categorization of huge swaths of exhibits

---

[1] The Argentine precedent supporting this proposition is too extensive to recite fully in this brief. *See also, e.g.*, PLA-52 (*Vernet Coop de Credito Vicienda y Consumo Ltda c/ Schartez Ariel Gerardo s /Ejecutivo*) ("[T]he magistrates should be granted the power to moderate interest that may be categorized as 'excessive' or 'usurious', in cases, such as this case, in which, due to the circumstances of the case, it is evident that the agreed interest is disproportionate to the economic values at stake."); DLA-27 (*B., G. L. v. A., S. G.*) ("In such regard, for the purposes of determining interest, it is not feasible to admit extortionate, extemporaneous rates, or otherwise rates containing inflationary expectations, alien to any international reference and which may result usurious or unrelated to the contracting modality."); PLA-52 (*Vernet Coop de Credito Vicienda y Consumo Ltda c/ Schartez Ariel Gerardo s /Ejecutivo*) ("It is up to the courts to establish the compatibility between the interest rate and the moral order.").

glosses over variations among the many exhibits they have decided to contest, which cannot be neatly categorized and thereby summarily disposed of prior to trial.

*First*, what Plaintiffs label the Republic's "ability to pay," (Pls'. Br. at 4), is clearly relevant to whether the Court should pile on billions in prejudgment interest to their award. The contested exhibits in this category not only speak to the potential impact on the Republic of additional billions in damages, (*See* DXs 68-7, 147-150, 153, 155, 178), but also why the Republic intervened in YPF, (DX 158), and that any award will come at the expense of an Argentine populace suffering from a very challenging economy, made worse by drought (*See* DXs 153, 179).

*Second*, now that Plaintiffs are claiming that the prejudgment interest award should reflect *Plaintiffs'* missed economic opportunities, (Pls' Br. at 2), the Republic should be permitted to submit exhibits demonstrating that the enormous windfall award will largely accrue to litigation funder Burford Capital, which is now the real party in interest here. (Pls' Br. at 5 (objecting to "Burford Capital" exhibits).) The Republic's proposed exhibits show that Burford will recover the lion's share of any judgment in this action after investing just 15 million euro to acquire Petersen's claims. They also make clear that Burford—not the now-bankrupt Plaintiffs—has decision-making authority in this litigation. (*E.g.*, DXs 44, 45).

*Third*, what Plaintiffs label "Petersen's Leveraged Acquisitions of Its Stake in YPF," establish that Plaintiff Petersen does not come to this Court with clean hands. Instead, Petersen purchased YPF shares through overleveraged transactions leading them and their former principals to impose a disastrous dividend policy that destroyed YPF's investments in oil and gas and precipitated their purported "injury" in this case. (*See, e.g.*, DX 49 (Loan Agreement between Petersen and Chevril).) For instance, the Republic's exhibits and deposition designations demonstrate that the Petersen entities—special purpose vehicles created for the sole purpose of

acquiring YPF shares—put up just a tiny fraction of their own equity to finance their $2 billion acquisition of YPF shares.  (DX 48.)

*Fourth*, the exhibits Plaintiffs categorize as "Eton Park Transactions After May 7, 2012" show the full trajectory of Plaintiff Eton Park's involvement in YPF in the context of their now-claimed need to be made whole.  (Pls' Br. at 4.)  Eton Park invested in YPF in the midst of speculation that an expropriation was imminent, and then quickly sold off its shares during the year following passage of the YPF  Expropriation Law.  (DXs 40-136; 143-146.).

*Finally*, what Plaintiffs label "Evidence of the Theoretical Value of YPF Shares," will demonstrate at trial that Plaintiffs are already receiving a windfall return that is multiples of the entire market cap of YPF as damages from their investment in 28% of YPF's shares.  This evidence will also show that the tender offer premium they seek—574%—is disproportionate to typical tender offer premiums, which typically reach around 35%.  (DX 172, DX 183 (Harris Takeover Premia Data)).  They also provide evidence that the Petersen Plaintiffs' supposed "misfortune" resulted from their *own* mismanagement of YPF and the context surrounding the Republic's intervention generally.  (*See* DX 194 (Argentine oil and gas data).)

Plaintiffs raise two arguments in response to all this.  *First*, Plaintiffs raise their own arguments grounded in Argentine private law, arguing that "prejudgment interest is not discretionary under the plain text of the Argentine Civil Code," and the "purpose" of prejudgment interest is to "compensate the creditor in full for the lost opportunity of the use of its money."  (Pls' Br. at 5.)  At trial, Plaintiffs are free to raise these arguments, which fly in the face of the Civil Code and extensive case law from Argentine commercial courts.  Notably, Plaintiffs do not intend to press an affirmative Argentine private law expert as a witness at trial.  But it would infect the

record with error to resolve this contested issue of foreign law in the context of an evidentiary motion without hearing from the Republic's witnesses.

*Second*, Plaintiffs claim that the Court "already decided" this issue. (Pls' Br. at 1.) That is wrong. In a footnote in their motion for summary judgment, Plaintiffs argued, in the alternative to their faulty request for a New York rate, that an Argentine commercial court would apply a prejudgment interest rate between 6 to 8% to any damages award. (*See Petersen* ECF No. 363 (Pls' MSJ) at 38 n.14.) Plaintiffs only briefly expanded on this argument in their summary judgment reply, to which, of course, the Republic had no opportunity to respond. (*See* ECF 404 (Pls.' SJ Reply) at 73-74.) And the Court reserved judgment on the prejudgment rate it will apply. The evidence that Plaintiffs seek to exclude goes not only to why the Court should apply a rate *below* 6% (as the Republic has argued the Court should do (*Petersen* ECF No. 466 (Arg. Pretrial Br.) at 9), but also to which rate *between* 6% and 8% percent the Court should adopt if it determines that range is correct. A single percentage of prejudgment interest applied will yield a massive difference in damages here. *See id.* & Appendix. Thus even within Plaintiffs' preferred range of prejudgment interest, the Court's consideration of equitable considerations could make billions of dollars of difference to the Republic.

Plaintiffs' effort to exclude evidence of equitable considerations in assessing the prejudgment interest rate is particularly inappropriate because *Plaintiffs'* pretrial brief advanced *equitable arguments* in support of their request for an 8% rate. Plaintiffs urged the Court not to "exacerbate [their] injury—or reward Argentina's recalcitrance—by setting the prejudgment interest rate at anything less than 8%," claiming that to do otherwise would grant the Republic a "(yet larger) windfall." (*Petersen* ECF No. 467 (Pls' Pretrial Br.) at 10.) Plaintiffs cannot have it both ways by objecting to the Republic's inclusion of evidence that *Plaintiffs* are receiving a

windfall return on their investment in YPF.  Similarly, Plaintiffs highlighted evidence concerning Argentina's borrowing rate as being relevant to determining prejudgment interest.  (*Id.* at n.4.)  But Plaintiffs now object to the inclusion of public records concerning Argentina's economic crises (*e.g.* DX 69), which not only provide context for the country's borrowing rate but also speak to which party is in fact, receiving a windfall in this case.

### B.    The Republic's Exhibits Are Not Hearsay

Plaintiffs also argue in a single paragraph that 52 of the Republic's exhibits are inadmissible hearsay.  (*See* Pls' Br. at 7.)  Again, there is no reason to consider Plaintiffs' hearsay arguments prematurely and out of context.  *See United States* v. *Stein*, 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) (Kaplan, J.) (denying "without prejudice to renewal at trial" motion *in limine* where hearsay exception [business records exception] was at issue because "it is impossible to determine in the abstract which of the documents defendants have in mind satisfy the Rule and which do not"); *Jean-Laurent* v. *Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) ("Indeed, courts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context.")  If reached, the Court should reject Plaintiffs' cursory hearsay objection to the Republic's exhibits.

*First*, Plaintiffs object to what they characterize as "Argentine government reports." (Pls' Br. at 7 (objecting to, *e.g.*, DX 92 (*Report on Oil and Gas Production (from 2009-2023*), Argentine State, Ministry of Economy, Secretary of Energy, Undersecretary of Hydrocarbons).) But each of these exhibits is clearly admissible under the public records exception to the hearsay rule, which permits admission of "a record or statement of a public office," such as foreign government reports and publications.  *See FAA* v. *Landy*, 705 F.2d 624, 633 (2d Cir. 1983) (finding statement of a foreign government "admissible as a public record and report under Fed. R. Evid. 803(8)(B)"); *In re Parmalat Sec. Litig.*, 477 F. Supp. 2d 637, 640 (S.D.N.Y. 2007) ("Rule 803(8)

is available to reports of foreign public offices and agencies that otherwise come within its terms.").

  *Second*, Plaintiffs object to what they characterize as "non-party statements."  But these documents are plainly business records, *see* Fed. R. Evid. 803(6) (DXs 47, 48, 67, 84, 137-140), and/or public records, (DXs 67, 139-140, 153), and/or statements of a party opponent (DX 83); *see also Penberg* v. *HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 189 (E.D.N.Y. 2011) (noting that "email [would] likely be admissible at trial" where it was a "regular business practice . . . to share the type of information contained in the email").  The Republic does not seek to introduce other exhibits for the truth of the matter asserted.  For example, the Republic seeks to introduce Burford's press release regarding its purported damages in this case in order to establish Burford's publicly asserted interest in this litigation, not that it is entitled to the enormous sums it seeks.  (DX 66; *see also Kaur* v. *New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010) (Preska, J.) (overruling hearsay objection where documents were "not hearsay because they are not being offered to prove the truth of what they assert").)

  *Finally*, Plaintiffs object to "News Articles and Argentine Publications," but these exhibits are either market reports, *see* Fed. R. Evid. 803(17) (DX 165), not admitted for the truth of the matter asserted (DX 53), admissible as public records, market reports or as expert materials, *see* Fed. R. Evid. 803(8), (17) & (18) ((DXs 68-70, 165, 181, and 182).  These documents are of the type for which hearsay objections are regularly overruled.  *See, e.g.*, *Coventry Enterprises LLC* v. *Sanomedics Int'l Holdings, Inc.*, 191 F. Supp. 3d 312, 315 n.6 (S.D.N.Y. 2016) (Buchwald, J.) ("Defendants . . . object that the historical price data submitted by plaintiffs drawn from a

Bloomberg data terminal, 'are based upon inadmissible hearsay[.]' This legal assertion is incorrect.").[2]

## CONCLUSION

The Court should defer judgment on the admissibility of exhibits until during or after the upcoming damages trial.  If the Court has any doubts on this issue, the Republic urges that it hear from the parties on Wednesday morning before the start of the timed trial.

---

[2] Plaintiffs also object to the marking of the expert reports for identification because it might risk "mark[ing] the reports of a potential rebuttal witness whom [the Republic] may not call."  (Pls' Br. at 7.)  This objection has no force.  If the expert is not called, the report will not be referred to. For the avoidance of doubt, the Republic reiterates that it believes that experts may refer on direct examination to figures or analyses in their reports and adopt those figures during their examination.

Respectfully Submitted,

/s/ *Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:   (212) 558-3588

*Counsel for the Argentine Republic*

July 24, 2023