SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

August 7, 2023

Via ECF

The Honorable Loretta A. Preska,
   United States District Court for the Southern District of New York,
     500 Pearl Street,
      New York, NY 10007.

        Re:  *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

        On behalf of the Argentine Republic, I respond to Plaintiffs' August 4, 2023 submission of new exhibits as attachments to their post-trial brief (ECF. No. 480) and to identify two errors of law in new arguments in Plaintiffs' brief.

        1.    Exhibits A and B to Plaintiffs' post-trial brief purport to be transcriptions of (i) a July 28, 2023 radio interview with the current CEO of YPF S.A., Pablo González (ECF No. 481-1, Rhodes Decl., Ex. A), and (ii) excerpts of a July 30, 2023 video podcast interview with the governor of the Argentine province of Buenos Aires Axel Kicillof (ECF No. 481-2, Rhodes Decl., Ex. B). These exhibits should be stricken. Both are irrelevant hearsay, with no evidentiary value. Plaintiffs wrongly claim (Pls.' Br. at 3, 10) that these are statements of the Republic's "officials." In fact, Mr. González and Mr. Kicillof are not part of, and do not speak for, the Argentine government. Moreover, the statements of Messrs. González and Kicillof do not support Plaintiffs' position. Rather, both express their personal opinion that it is "unfair" that Burford, which "did not suffer any damages" and "bought a bankruptcy case from Spain," should receive the proceeds of a multi-billion damages award arising out of a "sovereign act" of the Argentine government. (ECF No. 481-1 at 3-5; *see* ECF No. 481-2 at 1-2.) Both also observed that the expropriation of Repsol's YPF shares benefitted Argentina by allowing YPF to invest in the development of its hydrocarbon resources (ECF No. 481-1 at 3; ECF No. 481-2 at 2), rather than permitting Petersen to continue spending YPF's capital on exorbitant dividends to repay Petersen's loans from Repsol for its highly leveraged acquisition of YPF shares.

The Honorable Loretta A. Preska                                                                                                -2-

        2.      Exhibits D through G to Plaintiffs' brief (ECF Nos. 481-4, -5, -6 & -7) are various Argentine statutes that Plaintiffs did not submit to the Court with their lengthy July 17, 2023 legal compendium (ECF No. 470) or the supplemental legal compendium the Court permitted them to file on July 25, 2023 (ECF No. 478).  Plaintiffs wrongly claim that these exhibits, which they do not say are comprehensive, illustrate that the Argentine Federal Court of Appeals in Civil and Commercial Matters hears "only cases involving certain defendants or subject matters specified by statute, mostly cases involving the Argentine government or federal agencies." (Pls.' Br. at 11.)  But Plaintiffs did not present any competent expert evidence at trial on prejudgment interest, much less anything that would permit the Court to evaluate the significance of these statutes.  Plaintiffs did not even cross-examine Prof. Manóvil about the jurisdiction of, or interest rate applied by, this Argentine federal commercial court when they had the opportunity to do so at trial, (*see* Tr. 287:20-25 (Plaintiffs' counsel referenced the "federal court" about which Prof. Manóvil had testified, but did not ask a single question about it)), even though he specifically opined on the relevance of the Federal Court of Appeals in Civil and Commercial Matters in his rebuttal expert report (*see* ECF No. 368-2 ¶ 166).  The Court should reject Plaintiffs' belated post-trial effort to contradict Prof. Manóvil's testimony by lobbing yet more context-free Argentine law into the record.

        3.      In their post-trial brief, Plaintiffs claim for the first time that Article 622 of the Argentine Civil Code "makes clear that a debtor 'owes the interest . . . from the time of [the obligation's] maturity.'" (Pls.' Post-Trial Br. at 12 (quoting Art. 622).)  This is another point that Plaintiffs could have put to Prof. Manóvil, or Plaintiffs' two private law experts who were sitting in the courtroom, but chose not to—and for good reason.  Plaintiffs quote the portion of Article 622 that governs "interest agreed upon in the obligation," **not** prejudgment interest determined by a court on an "obligation" with no agreed rate and no "maturity," which is the issue at stake here. (DLA-29 (Arg. Civil Code) Art. 622.)  And the case law cited by both parties makes clear that prejudgment interest under Argentine law runs from the date a claimant serves notice of the claimed default.[1]

        4.      Plaintiffs incorrectly cite a 34-year old case, *Leddy* v. *Standard Drywall, Inc.*, 875 F.2d 383, 386 (2d Cir. 1989), to claim that the Republic should not be heard on the issue of Prof. Fischel's omission of available data from his damages calculations. (Pls.' Br. at 13.)  But this Court *denied* Plaintiffs' summary judgment motion as to damages; it did not "remove [] claims" as to that issue from the case.  Moreover, since *Leddy*, Federal Rule of Civil Procedure 56 has been amended to make clear that a party need not address on summary judgment every "fact[] stated by the movant" to preserve an issue for trial.  *See* Fed. R. Civ. P. 56 Advisory Committee Note to 2010 Amendments to Subdivision (g).

---

[1] *E.g.*, PLA-10 at 16 ("In fact, no evidence has been provided in the case to show that there was a notice to pay that constituted a default under the terms of 509 [of the Civil Code] prior to the commencement of this action, therefore it must be concluded that up to that time the defendant was not required to make any payment to the extent recognized in this case.  Consequently, the interest owed on the differences recognized in this lawsuit must be calculated *from the time the claim was served*.") (emphasis added).

The Honorable Loretta A. Preska                                                          -3-

    5.  Finally, Plaintiffs incorrectly assert that "Argentina has not identified a single case awarding no[]" prejudgment interest.  (Pls.' Post-Trial Br. at 9.)  The Republic identified three Argentine commercial court cases in which courts have exercised their discretion to award no prejudgment interest,[2] and Prof. Manóvil confirmed that, under Argentine law, a "court has full discretion to establish the interest rate," including considerations of "the equities" and "fair[ness]."  (Tr. 268:8-22.)  Plaintiffs elected not to cross-examine him on this subject.  For the reasons the Republic stated in its post-trial brief, Plaintiffs should be awarded no prejudgment interest or, at most, interest at the commercial court rate of approximately 3% running from the dates of service of Plaintiffs' complaints.  (*See* Argentina's Post-Trial Br. at 12-15.).

                          Respectfully,

                          */s/ Robert J. Giuffra, Jr.*
                          Robert J. Giuffra, Jr.

cc:  Counsel of Record (via ECF)

---

[2] *See* ECF No. 477 at 7; ECF No. 469-22 at 13 (citing DLA-22 (*Bovero Nilda María* v. *Poder Ejecutivo Nacional y otro*) at 6-7; *see also* Ex. A (*Montenegro Alejandro Fabián y otros* v. *Siembra Seguros de Retiro S.A.*, Fed. Court of Appeals in Civil & Comm. Matters (March 11, 2015)) at 21; Ex. B (*Avila Benita Antonia* v. *Orígenes Seguros de Retiro S.A.*, Fed. Court of Appeals in Civil & Comm. Matters (December 30, 2016)) at 14-15).