# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

August 10, 2023

Via ECF

The Honorable Loretta A. Preska,
    United States District Court for the Southern District of New York,
       500 Pearl Street,
          New York, NY  10007.

> Re: *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*,
> No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v.
> *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

On behalf of the Argentine Republic, I respond to Plaintiffs' August 9, 2023 letter. (ECF No. 485.)

1. Plaintiffs recognize that neither YPF's current CEO nor the governor of the Province of Buenos Aires is an "official" of the Argentine government—and, therefore, not a party opponent—but still argue that their hearsay statements are "judicially noticeable." (Pls.' Ltr. at 1.) This is wrong. *See Lyons* v. *United States Citizenship & Immigr. Servs.*, 2023 WL 144879, at *5 (S.D.N.Y. Jan. 10, 2023) (Koeltl, J.) ("[J]udicial notice cannot be used to circumvent the rule against hearsay."). The relevant facts that *are* judicially noticeable are that Argentina faces significant economic challenges, and that this case is being closely followed in Argentina because of the harm that the people of Argentina would suffer if the Court enters the massive—indeed, historic—$16 billion judgment that Plaintiffs seek.

2. Plaintiffs claim that they "cross-examin[ed] Prof. Manóvil about the 'commercial rate applied by Argentine courts,'" but Plaintiffs asked him about only the National Court of Appeals in Commercial Matters, ignoring entirely his testimony about the 4% rate applied by the *Federal Court of Appeals in Civil and Commercial Matters*. (Tr. 268:23-269:6; 270:16-22.) Moreover, Prof. Manóvil testified that that there are literally "thousands of court decisions about rates of interest," and that he had not "searched for" cases applying a level below 6% from the National Court of Appeals on Commercial Matters "other than cases from panel C," because that panel had explained the reasoning behind its choice of rate. (Tr. 269:13-25; 289:8-14; 293:4-14.) The fact that *both Argentine courts* apply rates well below the "top end" rate Plaintiffs seek (Tr. 449:5) is highly relevant. Plaintiffs cannot remedy their trial strategy of not calling any witnesses with their cherry-picked selection of Argentine statutes and cases.

The Honorable Loretta A. Preska                                                                    -2-

3.      Legions of cases, including at least 12 in Plaintiffs' compendium, confirm that, under settled Argentine law, prejudgment interest runs "from the time the claim was served." (PLA-10 at 16; *see also* PLA-11 at 1, 10-11; PLA-13 at 2, 7-8; PLA-15 at 7-8; PLA-25 at 5; PLA-34 at 13; PLA-42 at 12; PLA-54 at 3, 5; PLA-57 at 2; PLA-60 at 2; PLA-63 at 2, 8; PLA-71 at 4.) This is not a "novel assertion" (Pls.' Ltr. at 2); it was explained in Prof. Manóvil's expert report (ECF No. 368-2 ¶ 158); was the uncontradicted testimony at trial (Tr. 267:6-17 (Manóvil)); and is clear from the text of the Argentine Civil Code itself (*see* ECF No. 484 at 2). The language that Plaintiffs point to applies only to situations in which the "interest [is] *agreed upon* in the obligation." (DLA-29 (Arg. Civil Code) Art. 622 (emphasis added).) Absent such a provision, the general principle is that "the creditor must give notice to the debtor to put them in default." (*Id.* Art. 509.)

4.      Plaintiffs renew their efforts to foreclose this Court from even considering what they concede is a "$3.4 billion issue" (Pls.' Ltr. at 3)—the defensibility of Prof. Fischel's damages calculation. But *Leddy* v. *Standard Drywall Inc.*, stands only for the proposition that "claims" resolved on summary judgment cannot be litigated at trial. 875 F.2d 383, 386 (2d Cir. 1989). Here, the Court *denied* summary judgment as to damages and did not "resolve" the *issue* of Prof. Fischel's failure to use available earnings data in his tender offer price calculations. Tellingly, Plaintiffs have *no* response to the authority on this issue cited in the Republic's post-trial brief. (*See* Argentina's Post-Trial Br. at 11-12.) Plaintiffs' last sally is to argue that whether to ignore available earnings data in the Formula D calculation is a "legal objection." (Pls.' Ltr. at 3.) This too is wrong. The issue is a mixed question of law and fact. In this action, only this Court can interpret Formula D, and Prof. Fischel should not have purported to do so. Expert assistance was needed, however, to address how members of "the financial community" (DX-1t (Bylaws) § 7(f)(v)(D)) would have calculated P/E ratios over a two-year lookback period, and Prof. Harris authoritatively explained that they would have used all available data, as Bloomberg does in performing its own lookback calculations. (Tr. 342:20-343:19; 365:10-366:14; 369:22-370:5.) Prof. Fischel, on the other hand, had to try to dodge questions about how investment bankers would perform the calculation to defend his convoluted methodology, which no one in the financial community would use in pricing a real world tender offer. (Tr. 215:10-22; 222:3-223:21.)[1]

5.      Plaintiffs' U.S. counsel now claims that the Argentine cases awarding no prejudgment interest are "inapposite[] because the defendants were never in default." (Pls.' Ltr. at 3.) In all three cases, however, the Argentine appellate court affirmed the lower court's determination that defendants had breached their contracts, as Plaintiffs allege here, and "ordered" that defendants "comply with the obligations set forth in [the contracts]"; these courts nevertheless exercised their discretion under Argentine law to award no prejudgment interest. (*See* DLA-22 at 2, 6-7; ECF 484-1 at 15, 20, 22; ECF 484-2 at 11, 13-14.)

---

[1] This point was also, contrary to Plaintiffs' suggestion, raised in the Republic's pre-trial brief. (ECF No. 466 at 7 n.4 ("Plaintiffs' calculation of these numbers is based on ignoring earnings information that would have been available at the hypothetical notice dates. If properly calculated, the May 7 amount is lower, and the April 16 amount is significantly lower.").)

The Honorable Loretta A. Preska                                                    -3-

                               Respectfully,

                               */s/ Robert J. Giuffra, Jr.*
                               Robert J. Giuffra, Jr.

cc:      Counsel of Record (via ECF)