KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
_____
(202) 326-7900
FACSIMILE:
(202) 326-7999

September 14, 2023

*Via ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:  *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-2739 ("*Petersen*")
     *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569 ("*Eton Park*")

Your Honor:

Pursuant to the Court's Findings of Facts and Conclusions of Law, ECF No. 493, Plaintiffs submit a proposed judgment against the Republic of Argentina.  *See* Ex. A.  Plaintiffs also submit a workbook to support their calculation of damages and to provide the Court with the appropriate award of prejudgment interest and the final judgment amount for each day for the remaining week.  *See* Ex. C.  Depending on which day the Court enters judgment, it can select the prejudgment interest amount and final judgment amount from the page of the workbook corresponding to the date of judgment.[1]  For the Court's convenience, we also have included an annotated version of the proposed judgment that indicates the appropriate row and column from the workbook (e.g., [L][1]) to be entered into each blank of the proposed judgment.  *See* Ex. B.

Regrettably, Argentina has refused to confer with Plaintiffs in good faith to prepare a joint submission.  Instead, the Republic has turned a straightforward exercise of reading and counting into a backdoor, collateral attack on this Court's order, consistent with the Republic's effort to relitigate settled matters at every turn and its full-throated, public denunciation of the Court's ruling.  *See*, *e.g.*, Alex Kicillof (@Kicillofok), Twitter (Sept. 8, 2023 4:42 PM),

_____

[1] Each page of the workbook provides the calculation for each of the remaining days this week (*i.e.*, September 14, September 15, and September 16). If the Court does not enter judgment this week, Plaintiffs will submit an updated proposed judgment and supporting workbook.  The updated judgment will include a new post-judgment interest rate, which changes weekly pursuant to 28 U.S.C. § 1961.  The updated workbook will include new prejudgment interest awards and final judgment amounts.

Kᴇʟʟᴏɢɢ, Hᴀɴsᴇɴ, Tᴏᴅᴅ, Fɪɢᴇʟ & Fʀᴇᴅᴇʀɪᴄᴋ, ᴘ.ʟ.ʟ.ᴄ.

Hon. Loretta A. Preska
September 14, 2023
Page 2

https://perma.cc/T6MD-3V5V ("a ridiculous ruling"; "The ruling is a legal absurdity"; "the evident electoral scent of this 'casual ruling'").  Plaintiffs' proposed judgment faithfully implements that ruling, and the Court should enter it.

The Court resolved four issues at trial:  (1) Argentina "trigger[ed] its tender offer obligations" "on April 16, 2012"; (2) "Professor Fischel's calculation of the tender offer price is correct and relies on the price/income ratio required by Formula D"; (3) "prejudgment interest of 8% simple interest is appropriate"; and (4) prejudgment interest "should run from May 3, 2012." ECF No. 493, at 25.  Consistent with those findings of fact and conclusions of law, calculating damages is a straightforward math exercise, as Professor Fischel explained at trial.

- *First*, Professor Fischel calculated the Formula D tender offer price in pesos as of February 12, 2012 – the pricing date for the February 13 "notice date" under the Bylaws.  *See* PDX-3.6; Tr. 147:10-148:2; *see also* ECF No. 437, at 55-56 (notice date precedes trigger date by 40 business days).  He then converted the tender offer price to U.S. dollars as of the pricing date based on Bloomberg's published rates.  *See* PDX-3.6; Tr. 168:3-5.  That yields a tender price of 383.88 pesos, or $88.35.  *See* PDX-3.6; Tr. 167:18-168:5.

- *Second*, Professor Fischel subtracted the closing trading price of YPF shares on April 18, 2012, which was the first day the New York Stock Exchange permitted trading in YPF stock after the Intervention.  *See* PDX-3.6; Tr. 168:6-11.  (A closing trading price is not available for April 16, because the NYSE halted trading midday that day.) That yields damages per share of $75.23.  *See* PDX-3.6; Tr. 168:6-11.

- *Third*, Professor Fischel multiplied the damages per share by the number of shares held by each Plaintiff as of April 16, 2012.  He then subtracted all dividend payments received by each Plaintiff after that date.  *See* PDX-3.6; Tr. 168:12-14.  That calculation yields $7.5 billion in damages for the Petersen Plaintiffs and $898 million in damages for the Eton Park Plaintiffs.  PDX-3.6; Tr. 168:12-14.

- *Fourth*, Professor Fischel calculated prejudgment interest.  He used rates between 6 and 8 percent simple interest because the Court had not yet set an interest rate.  *See* PDX-3.6; Tr. 168:15-23.  He also calculated prejudgment interest to run from the trigger date (April 16, 2012) until July 31, 2023 (as a hypothetical judgment date). *See* PX-1.

In light of the Court's findings of facts and conclusion of law, the Court may use the damages calculation presented by Professor Fischel at trial based on an 8% simple prejudgment interest rate but with two modifications:  the interest rate would run from May 3, 2012, instead of

Kᴇʟʟᴏɢɢ, Hᴀɴsᴇɴ, Todd, Fɪɢᴇʟ & Fʀᴇᴅᴇʀɪᴄᴋ, ᴘ.ʟ.ʟ.ᴄ.

Hon. Loretta A. Preska
September 14, 2023
Page 3

April 16, 2012, and it would run through a judgment date in September 2023, instead of July 31, 2023.  Plaintiffs' proposed judgment and supporting materials reflect those two changes.

Argentina has no basis to disagree with these calculations.  The Republic's damages expert, Professor Harris, testified that, "other than the tender offer price[]," "the inputs [he] used in [his] damages calculation . . . are the same as Professor Fischel's."  Tr. 371:12-15.  He also confirmed that his "method" of calculating damages was "the same as Professor Fischel's, in terms of multiplying the number of shares owned by the parties on the trigger date by the tender offer price on the notice date, and then deducting the value of the shares as of the trigger date."  Tr. 367:16-24; *see also* Tr. 367:25-368:1.  The Court held that April 16 is the trigger date.  ECF No. 493, at 25.  It also found "that Professor Fischel's calculation of the tender offer price is correct."  *Id*.  That resolves the only room for daylight between the experts' calculations.  The evidence therefore supports Plaintiffs' proposed judgment and nothing else.

Yet Argentina refused to agree to that proposal when Plaintiffs offered it.  Argentina's counterproposal for a judgment, *see* Ex. D,[2] attempts to reduce Plaintiffs' collective damages by $800 million.  The Republic agrees (as it must) that the tender offer price is 383.88 pesos based on an April 16 trigger date.  But then, remarkably, Argentina (1) uses the peso-dollar exchange rate on May 3, 2012; (2) subtracts the trading price of YPF's shares on May 3; and (3) uses the number of shares held by each Plaintiff as of May 3.  In effect, Argentina seeks reconsideration of the Court's holding that damages should be calculated based on a February 13 notice date and an April 16 completion date.  It seeks to transform the Court's unrelated holding that interest would begin running May 3, 2012, into a holding that it did not breach its tender offer obligation until May 3 – ignoring the central purpose of holding a trial in the first place.

That makes no sense and simply reflects Argentina's continued refusal to move off a May date.  Argentina implausibly assumes it would have priced a tender offer in dollars, and that Plaintiffs would have tendered their shares, a full two-and-a-half weeks after the April 16 completion date.  But the Court held that "the Republic . . . trigger[ed] its tender offer obligations," and so breached the Bylaws, on April 16.  ECF No. 493, at 25.  Neither party ever before has suggested that damages should be calculated from anything other than the Bylaws' trigger date.  Indeed, the Republic's expert (like Professor Fischel) calculated damages by taking the "tender offer price on the notice date," "multiplying the number of shares owned by the parties on the *trigger date*," and "then deducting the value of the shares as of the *trigger date*."  Tr. 367:16-24 (emphases added).  Argentina's use of May 3 to calculate damages is thus (yet another) eleventh-hour sideshow.

---

[2] Exhibit D is Argentina's proposed calculation of damages and prejudgment interest, which it shared with Plaintiffs on September 12, 2023.

Kᴇʟʟᴏɢɢ, Hᴀɴsᴇɴ, Tᴏᴅᴅ, Fɪɢᴇʟ & Fʀᴇᴅᴇʀɪᴄᴋ, ᴘ.ʟ.ʟ.ᴄ.

Hon. Loretta A. Preska
September 14, 2023
Page 4

The Court used the May 3 date for one basic purpose:  to set the date from which "prejudgment interest should run."  ECF No. 493, at 15.  The Court held that, despite Argentina's April 16 breach of the Bylaws, its interest obligations did not begin to run until the Argentine Congress' passage of the YPF Expropriation Law on May 3, which obviated the need for Plaintiffs to provide Argentina with a formal notice of default.  *See id.* at 17 (as of that date "no formal request for compliance was necessary").  The Court did not hold, nor has the Republic ever before argued, that *damages* run from anything other than the Bylaws' trigger date.  For example, Argentina's lead corporate-law expert, Professor Manóvil, testified that the Court could "establish[] . . . the date from which eventually the tender offer should have been conducted," "[b]ut the right to get *interest* is only from the request to pay damages."  Tr. 295:8-12 (emphasis added).  The Republic repeated the point in its posttrial brief.  *See* ECF No. 482, at 15 ("*interest* should accrue only from the service of Plaintiffs' Complaints") (emphasis added).  Simply put, the Court's holding regarding May 3 relates only to interest – it is not an invitation to relitigate the proper calculation of damages.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter their proposed judgment, with prejudgment interest calculated in accord with the attached workbook.

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho

Cc:    All counsel of record via ECF