# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

September 14, 2023

Via ECF

The Honorable Loretta A. Preska,
   United States District Court for the Southern District of New York,
      500 Pearl Street,
         New York, NY 10007.

      Re:    *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

      On behalf of the Argentine Republic, I respond to Plaintiffs' September 14, 2023 submission of their form of proposed judgment, and to submit the Republic's forms of judgment in the *Petersen* and *Eton Park* cases consistent with the Court's September 8, 2023 findings of fact and conclusions of law (ECF No. 493 (as corrected)).

      In their letter, Plaintiffs assert that "Argentina has refused to confer with Plaintiffs in good faith to prepare a joint submission." (Pls.' Letter at 1.) That is not true. On the afternoon of Monday, September 11, Plaintiffs proposed their form of judgment stating they intended to file the next morning. On Tuesday, September 12, the Republic provided its responsive proposal, explaining the basis for its disagreement with Plaintiffs' calculation of the judgment and offering to confer. Plaintiffs did not respond until today, when they unilaterally submitted their own form of judgment and letter to the Court.

      The Republic's forms of judgment correctly implement the Court's September 8 findings of fact and conclusions of law. In particular, the parties agree that the Court's holding that the tender offer obligation was triggered on **April 16, 2012** requires that the tender offer price be calculated in pesos using a February 12, 2012 "pricing date." (*See* Pls.' Letter at 2; *see also* ECF No. 493 at 25.) The parties also both recognize that the Court's ruling requires prejudgment interest to be calculated from **May 3, 2012** through the date of judgment at 8% simple interest. (*See* Pls.' Letter at 2-3; ECF No. 493 at 25.) The parties disagree, however, with respect to the

The Honorable Loretta A. Preska                                                                                          -2-

calculation of damages in light of the Court's determination that it was not until May 3, 2012 that "the Argentine Legislature, the second necessary branch, passed the YPF Expropriation Law while fully aware that the law was intended to escape the obligation to pay the tender offer," thus putting the Republic "in default" as of that date. (ECF No. 493 at 15, 17.)

The Court's recognition that "the Republic's system of government requires both executive and legislative action in order to enact legislation" and determination that the Republic was not "in default" until the "second necessary branch" passed the YPF Expropriation Law means that, under the Court's reasoning, the Republic's *breach* of the tender offer requirement could not have occurred until May 3, 2012, and damages must be calculated as of that date. (*Id.* at 16-17.)

That conclusion has two principal implications for the calculation of damages: *first*, although the tender offer price in Argentine pesos is set as of the April 16, 2012 trigger date using a February 12, 2012 pricing date, as Plaintiffs agree, under the breach date rule the Court held applicable, the price is not converted to United States dollars until the date of breach, which the Court has now held was May 3, 2012. (*See* ECF No. 437 (SJ Decision) at 59 ("the appropriate measure of damages is the equivalent of such foreign currency in terms of dollars, at the rate of exchange prevailing **at the date of breach**") (citation omitted) (emphasis added).) *Second*, using May 3, 2012 as the default date requires that the value of Plaintiffs' shares to be deducted from the hypothetical tender offer price be based on the closing share price as of May 3, 2012. Moreover, with respect to Eton Park, there is a difference in the number of shares it held on the later date due to sales in April before the Republic was, under the Court's ruling, in default.

The net effect of these refinements to the calculation is that the *Petersen* damages under the Court's findings are **$7,264,275,959** and the *Eton Park* damages are **$724,195,831**, which with 8% prejudgment interest through today results in total damages of **$13,870,189,593** to the *Petersen* plaintiffs and **$1,382,757,694** to the *Eton Park* plaintiffs.[1]

Plaintiffs disagree with this approach on the basis that that the Court's ruling that default did not occur until May 3, 2012 applies only to the calculation of prejudgment interest, not the date of breach. That position is, however, not consistent with the Court's findings. The Court held that the Republic's obligation to make a tender offer *arose* on April 16, 2012, but its "manifest[ation]" of its "will not to perform" did not occur until May 3, 2012, when *both* "necessary" branches of government had acted. (ECF No. 493 at 15-17.) Because no breach can have occurred before then, damages must be calculated as of May 3, 2012 (using the tender offer pricing date of February 12, 2012, corresponding to the Court's determination that an April 16, 2012 trigger date applies). (*See id.*)

Contrary to Plaintiffs' argument (Pls.' Letter at 4), this outcome is fully consistent with the Republic's prior position that prejudgment interest could commence only upon service of

---

[1] The Republic respectfully disagrees that these damages figures are correct and also disagrees with the Court's liability rulings, and reserves all of its rights of appeal. As reflected on Exhibit D to Plaintiffs' letter, the Republic provided its calculations to Plaintiffs on September 12. The above totals are updated to reflect additional prejudgment interest through today.

The Honorable Loretta A. Preska                                                                                              -3-

the Plaintiffs' complaints.  The Republic argued at trial and in its post-trial submissions that a "default" that triggers contractual prejudgment interest occurs only upon a "formal request" subsequent to breach.  (*See* ECF No. 493 at 15.)  In addressing this issue, the Court agreed that "an obligor must be in default before interest can run," but *rejected* the Republic's definition of default, holding that default occurs "where the obligor has repudiated the contract by clearly 'manifest[ing] its will not to perform.'" (*Id*.)  The Court adopted a position that neither party had argued for, that "repudiation" and "default" occurred with the passage of the YPF Expropriation Law by the Argentine Congress on May 3, 2012.  Under the Court's ruling, no breach occurred until May 3, 2012.

For the foregoing reasons, the Republic respectfully submits that the figures on its attached proposed *Petersen* (Exhibit A) and *Eton Park* (Exhibit B) judgments correctly state the amounts of the judgments consistent with the Court's opinions.  The Republic proposes separate forms of judgment for the *Petersen* and *Eton Park* cases, which it believes to be more appropriate than a single judgment addressing both, and its forms explicitly address costs.  The Republic believes the parties' forms are otherwise the same in substance.  To the extent judgment is not entered on these proposed forms of judgment today, the Republic is prepared to resubmit the proposed judgments adjusting the interest figures as appropriate.

Respectfully,

*Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

cc:    Counsel of Record (via ECF)