# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 6, 2023

Via ECF

The Honorable Loretta A. Preska,
   United States District Court for the Southern District of New York,
      500 Pearl Street,
         New York, NY 10007.

         Re:   *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

      On behalf of the Argentine Republic, I request a pre-motion conference on the Republic's anticipated motion, pursuant to Fed. R. Civ. P. 62(b), to stay execution of the judgment without bond pending appeal. Because of the unprecedented size of the $16.1 billion judgment, the sovereign interests at stake, and the fact that, absent a stay, the Court would set into motion sprawling attachment proceedings that will be difficult or impossible to unwind if the Republic prevails on appeal, the Republic respectfully submits that the imposition of a stay and waiver of the bond requirement is appropriate in this clearly "unusual" case. *Cayuga Indian Nation of New York* v. *Pataki*, 188 F. Supp. 2d 223, 256 (N.D.N.Y. 2002) (waiving bond requirement for "state of New York" because of "unusual circumstances" including that party was a "sovereign").

      1.   The Court should take into account legal and practical realities in dispensing with a "potentially crippling bond requirement" that the Republic cannot meet. *Palazzetti Import/Export, Inc.* v. *Morson*, 2002 WL 562654, at *3 (S.D.N.Y. Apr. 16, 2002) (waiving bond requirement). It would be practically impossible for *any* party to secure a bond approaching the size of the enormous judgment in this case, which represents 20% of the Republic's annual budget.[1] The attached declarations from the Secretary of Treasury and the Secretary of Finance of

---

[1] The combined underwriting limits of the 212 surety companies licensed in New York is approximately $30.4 billion. *See* https://www.fiscal.treasury.gov/surety-bonds/list-certified-companies.html. This judgment represents over half that total combined limit, which is itself wholly hypothetical. Sureties typically offer supersedeas bonds for only a fraction of their limits, even to judgment debtors with excellent credit.

The Honorable Loretta A. Preska                                                                                                 -2-

the Republic detail the insurmountable challenges that the Republic would face in attempting to secure a bond or pay the $16.1 billion judgment while the appeal is pending.

*First*, as Secretary of Treasury Raúl Rigo explains, there is a clear legal barrier to the Republic's securing a bond or paying out the enormous judgment in this case. Under Argentine law, the "only payments the Argentine government can make in the current year" are those "included in the budget approved by the National Congress for the year." (Ex. 1 (Rigo Declaration) ¶ 8.) This year's budget, which the Executive submitted to Congress in 2022, understandably did not appropriate funds for a judgment that had not been issued. (*Id.*) And "under Article 170 of Law 11,672 (the Permanent Supplementary Budget Law [*Ley Complementaria Permanente de Presupuesto*])," a judgment that is subject to appeal is not final and "cannot be budgeted for" under Argentine law. (Rigo ¶ 7.) Because the Republic intends to appeal, it cannot, consistent with its own law, move forward to finance a bond or begin paying the judgment.

*Second*, even if it were legally possible—and it is not—securing a bond approaching the size of the $16.1 billion judgment or beginning payment on the judgment is a practical impossibility given the Republic's current financial circumstances. Quite simply, there are no "sources of funding to finance" an amount approaching the judgment "in this fiscal year." (Rigo ¶ 10.) The IMF recently estimated that the Republic's Central Bank has nearly *negative $10 billion* in net international reserves. IMF, *Argentina: Fifth and Sixth Reviews Under the Extended Arrangement Under the Extended Fund Facility* 62 (Aug. 23, 2023), https://www.elibrary.imf.org/view/journals/002/2023/312/article-A001-en.xml. Nor can the Republic borrow the necessary funds to secure a bond. As Eduardo Setti, the Republic's Finance Secretary explains, the Republic "currently does not have the ability to issue public debt on the international capital markets," and it has a CCC- (negative) rating from S&P. (Ex. 2 (Setti Declaration) ¶ 6.) And the Republic cannot raise money in its "local market," which "would not be able to absorb additional net financing of the magnitude required to pay the amount of the Judgment." (Setti ¶ 10.)

*Third*, even if it were possible legally and practically to somehow secure a bond or begin paying the judgment, doing so would impose serious and irreversible harm on an Argentine population already suffering from high inflation and the adverse economic consequences of a severe and unprecedented drought. *See* IMF Report, *supra*, at 9; *see also Texaco Inc.* v. *Penzoil Co.*, 784 F.2d 1133, 1155 (2d Cir. 1986) (waiving bond requirement following issuance of $11.12 billion judgment in Texas state court where party could not "possibly meet" the bond requirement without entering into bankruptcy proceedings). By way of example, the $16.1 billion judgment represents over 14 times the Republic's annual budget for drinking water and over 9 times the budget for the Ministry of Health. (Rigo ¶ 11.) The "balance of the public interest of [Argentina] predominates over the financial interests" of Plaintiffs here, *Morgan Guar Trust Co. of New York* v. *Republic of Palau*, 702 F. Supp. 60, 66 (S.D.N.Y. 1988), given that a bond—even if possible to secure—would come at the expense of humanitarian and social needs in Argentina.

2.      The "sovereign" interests at stake in this case also support the Court's grant of a stay of the judgment without bond. *Cayuga Indian Nation*, 188 F. Supp. at 255 (waiving bond requirement for State of New York); *Easter House* v. *State of Ill. Dept. of Children and Family Services*, 645 F. Supp. 107, 108 (N.D. Ill. 1986) (waiving requirement for State of Illinois). Given the legal and practical impediments to the Republic's obtaining a bond or paying the judgment described above, without a stay and waiver of the bond requirement, Plaintiffs will immediately

The Honorable Loretta A. Preska                                                                                            -3-

begin collecting on the judgment, thus "embroil[ing]" the Republic in "expensive and difficult" execution proceedings that may well prove to be unnecessary should the Republic prevail on appeal.  *Federal Republic of Germany* v. *Philipp*, 141 S. Ct. 703, 714 (2021).  Burford apparently has a "team of 30 recovery specialists" ready to commence such proceedings, which will impose costs not only on the Republic but also on courts around the world.  *See* Joe Miller & Ciara Nugent, *After $16 Billion Judgment, Burford's Next Battle Will Be Making Argentina Pay*, Financial Times (Sept. 14, 2023), https://www.ft.com/content/1abd35df-1efd-4c61-b983-b5a580e44b3a.

       3.       These execution proceedings, if successful, would be extremely difficult to unwind if the Republic prevails on any material part of its upcoming appeal.  Burford has sold at least 38.75% of its interest in these cases to third-party investors whose identities have not been publicly disclosed; other funds would immediately go to Plaintiffs' Spanish bankruptcy proceedings; and still others would be paid out as contingency fees to Plaintiffs' lawyers.  Rule 62 exists in part to "protect[] the other side against the risk that payment cannot be recouped if the decision should be reversed."  *In re Nassau County Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015).  It will be difficult, if not impossible, to trace and recover those funds if the Court's judgment is reversed, in whole or in any material part.

       4.       Plaintiffs' plan to jumpstart collection proceedings, in courts around the world, would place the Republic's other creditors "in an insecure position," a factor the Second Circuit has advised courts to consider carefully in deciding whether to waive the bond requirement.  *In re Nassau County*, 783 F.3d at 417; *see also Acevedo-Garcia* v. *Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002) ("no bond is required" if "the bond would put the defendant's other creditors in undue jeopardy").  Plaintiffs should not get to prematurely cut the line while the Republic's appeal remains pending.

       5.       Finally, the Republic's appeal undoubtedly raises serious legal questions, and the balance of conveniences thus favors imposing a stay without requiring a bond.  "Tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained."  *Morgan Guar. Trust Co.*, 702 F. Supp. at 66.  The Court's summary judgment decision adjudicated numerous disputed questions of Argentine law, all against the Republic's view of its own law, and in unprecedented ways.  *See Petersen Energía Inversora S.A.U.* v. *Argentine Republic*, 2023 WL 2746022, at *12-*19 (Mar. 31, 2023).  The Court then entered the largest award in this District's history.  The Republic is a sovereign nation of 46 million people; it "is not going anywhere," and Plaintiffs can enforce the judgment just as well after appeal as before.  *Morgan Guar. Trust Co.*, 702 F. Supp. at 66.  In these circumstances, there is no need for chaotic and haphazard collection proceedings until the judgment here is final.

                                                                                  Respectfully,

                                                                                  */s/Robert J. Giuffra, Jr.*
                                                                                  Robert J. Giuffra, Jr.

cc:       Counsel of Record (via ECF)