**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA,  :
S.A.U. and PETERSEN ENERGÍA, S.A.U., :
                                  :
        Plaintiffs,       :
                                  :  Case No.:  1:15-CV-02739 (LAP)
        v.          :
                                  :
ARGENTINE REPUBLIC and YPF S.A.,  :
                                  :
        Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT, :
L.P., ETON PARK MASTER FUND, LTD.,:
and ETON PARK FUND, L.P.,  :
                                  :
        Plaintiffs,       :
                                  :  Case No.:  1:16-CV-08569 (LAP)
        v.          :
                                  :
ARGENTINE REPUBLIC and YPF S.A.,  :
                                  :
        Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ARGENTINA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A STAY OF ENFORCEMENT OF JUDGMENT PENDING APPEAL WITHOUT BOND

Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
(212) 558-4000

October 26, 2023                   *Counsel for the Argentine Republic*

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................4

LEGAL STANDARD .............................................................................................7

ARGUMENT .........................................................................................................8

I.      THE COURT SHOULD STAY EXECUTION OF THE JUDGMENT
       PENDING APPEAL WITHOUT REQUIRING A BOND ............................. 8

       A.     The Size of the $16.1 Billlion Judgment and Impossibility of Securing a
            Bond Support a Stay Without Bond.................................................................8

       B.     Principles of International Comity Strongly Favor Granting a Stay and
            Waiving the Bond ...........................................................................................11

       C.     Requiring a Bond Would Place Numerous Other Creditors at Risk.....................14

       D.     The Republic Has Substantial Grounds for Appeal and Limited Ability to
            Recoup Any Payments Made to Plaintiffs ..............................................................15

       E.     The Balance of Equities Favors a Stay ................................................................16

II.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT A
       TEMPORARY STAY ................................................................................... 17

CONCLUSION .......................................................................................................18

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Acevedo-Garcia* v. *Vera-Monroig,*
296 F.3d 13 (1st Cir. 2002)............................................................................14

*Arctic Ocean Int'l Ltd.* v. *High Seas Shipping Ltd.,*
2009 WL 5103283 (S.D.N.Y. Dec. 28, 2009) .......................................................18

*Cayuga Indian Nation of New York* v. *Pataki,*
188 F. Supp. 2d 223 (N.D.N.Y. 2002).......................................................... *passim*

*Centauri Shipping Ltd.* v. *W. Bulk Carriers KS,*
528 F. Supp. 2d 186 (S.D.N.Y. 2007)................................................................18

*Conte* v. *County of Nassau,*
2015 WL 13720237 (E.D.N.Y. June 4, 2015) .......................................................9

*E.J. Brooks Co.* v. *Cambridge Security Seals,*
2016 WL 908633 (S.D.N.Y. Mar. 2, 2016) .....................................................8, 10

*Easter House* v. *State of Ill. Dep't of Children & Family Servs.,*
645 F. Supp. 107 (N.D. Ill. 1986) .....................................................................12

*EM Ltd.* v. *Republic of Argentina,*
473 F.3d 463 (2d Cir. 2007)............................................................................13

*Federal Prescription Serv., Inc.* v. *Am. Pharm. Ass'n,*
636 F.2d 755 (D.C. Cir. 1980)......................................................................7, 17

*Federal Republic of Germany* v. *Philipp,*
141 S. Ct. 703 (2021)...............................................................................2, 12

*Gates* v. *Syrian Arab Republic,*
2009 WL 10693488 (D.D.C. Feb. 6, 2009) ........................................................12

*Hardesty* v. *Sacramento Metro. Air Quality Mgmt. Dist.,*
2019 WL 2715616 (E.D. Cal. 2019)...................................................................14

*HWB Victoria Strategies Portfolio* v. *Republic of Argentina,*
2017 WL 1738065 (D. Kan. May 4, 2017)..........................................................13

*Int'l Distrib. Centers, Inc.* v. *Walsh Trucking Co., Inc.,*
62 B.R. 723 (S.D.N.Y. 1986)..........................................................................9

*Morgan Guar. Trust Co. of New York* v. *Republic of Palau*,
    702 F. Supp. 60 (S.D.N.Y. 1988)...................................................................*passim*

*In re Nassau County Strip Search Cases*,
    783 F.3d 414 (2d Cir. 2015)...........................................................................*passim*

*NML Capital, Ltd.* v. *Space Exploration Techs. Corp.*,
    2015 WL 1334291 (C.D. Cal. Mar. 6, 2015).........................................................13

*Olympia Equip. Leasing Co.* v. *W. Union Tel. Co.*,
    786 F.2d 794 (7th Cir. 1986) .............................................................................15

*Palazzetti Import/Export, Inc.* v. *Morson*,
    2002 WL 562654 (S.D.N.Y. Apr. 16, 2002)................................................7, 9, 17

*Petroleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*,
    2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020) ......................................................8

*River Oaks Marine, Inc.* v. *Town of Grand Island*,
    1992 WL 406813 (W.D.N.Y. Dec. 10, 1992)..............................................1, 10, 11

*Rivera* v. *Home Depot U.S.A., Inc.*,
    2018 WL 3105069 (S.D.N.Y. June 25, 2018) ......................................................15

*SDF9 Cobk LLC* v. *AF & AR LLC*,
    2015 WL 3440259 (E.D.N.Y. May 27, 2015) .......................................................7

*Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*,
    443 B.R. 295 (Bankr. S.D.N.Y. 2011)..........................................................3, 15

*Societe Nationale Industrielle Aerospatiale* v. *U.S. Dist. Ct. for S. Dist. of Iowa*,
    482 U.S. 522 (1987)..............................................................................................11

*Teachers Ins. & Annuity Ass'n of Am.* v. *Ormesa Geothermal*,
    1991 WL 254573 (S.D.N.Y. Nov. 21, 1991).......................................................11

*Texaco Inc.* v. *Penzoil Co.*,
    784 F.2d 1133 (2d Cir. 1986)..................................................................2, 11, 16

*U.S. CFTC* v. *eFloorTrade, LLC*,
    2020 WL 2216660 (S.D.N.Y. May 7, 2020) .......................................................18

**Statutes**

28 U.S.C. § 1961...............................................................................................3, 17

**Rules**

Federal Rule of Civil Procedure 62 ...............................................................1, 3, 7

## PRELIMINARY STATEMENT

On September 15, 2023, this Court entered its final judgment against The Republic of Argentina, awarding Plaintiffs $16.1 billion—the highest award ever entered in this District, to our knowledge.  The Republic has filed its notice of appeal with the Second Circuit (*see Petersen* ECF No. 504), and now respectfully moves for a stay of execution or enforcement of the judgment without bond pending that appeal.  *See* Fed. R. Civ. P. 62(b).

The circumstances before the Court are extraordinary, not only because of the unprecedented size of the judgment but also because the judgment debtor is a sovereign nation with many preexisting creditors across the globe.  The Republic does not have the financial resources to post a bond, and the absence of a stay on enforcement of the judgment would immediately trigger sprawling discovery, attachment, and execution proceedings that will be difficult, if not impossible, to unwind should the Republic prevail on appeal in any material respect.  Accordingly, "due to all the unusual circumstances, including that the debtor is [a sovereign]," the Court should stay all proceedings relating to execution of the judgment pending appeal and "waive[] the requirement of posting [a supersedeas] bond."  *Cayuga Indian Nation of New York* v. *Pataki*, 188 F. Supp. 2d 223, 256 (N.D.N.Y. 2002) (citation omitted); *see River Oaks Marine, Inc.* v. *Town of Grand Island*, 1992 WL 406813, at *2 (W.D.N.Y. Dec. 10, 1992) (no bond or other security required for stay under Rule 62 where "immediate execution could work substantial hardship on the Town's residents and visitors").

*First*, it would be impossible for the Republic to immediately pay or bond the judgment in this case, which represents almost 20% of its budget for 2023.  The Republic's declarants—the Secretary of Treasury and the Secretary of Finance—both attest to the insurmountable legal and practical challenges the Republic would face in attempting to secure a bond or pay the judgment this year.  And even if the Republic could somehow immediately secure

a bond or pay the judgment, doing so would cripple a nation already suffering from severe inflation and drought.  *See Texaco Inc.* v. *Penzoil Co.*, 784 F.2d 1133, 1155 (2d Cir. 1986) (waiving bond requirement following issuance of $11.12 billion judgment in Texas state court where party could not "possibly meet" the bond requirement without entering into bankruptcy proceedings), *rev'd on other grounds*, 481 U.S. 1 (1987).

*Second*, principles of international comity weigh strongly in favor of granting a stay without requiring a bond.  *Cayuga Indian Nation*, 188 F. Supp. 2d at 255 (taking into account principles of "state sovereignty" in waiving bond requirement).  Requiring a bond would effectively "embroil" the Republic in "expensive litigation" proceedings around the world concerning discovery and collection of its assets, a scenario that the Supreme Court has cautioned against.  *Federal Republic of Germany* v. *Philipp*, 141 S. Ct. 703, 714 (2021) (quotation omitted).  Plaintiffs reportedly have "a team of 30 recovery specialists" working to enforce the judgment,[1] and just last week Plaintiffs served seventy-seven burdensome and invasive requests for production that seek information well beyond matters reasonably relevant to the discovery of assets and impinge on the Republic's sovereignty, including by seeking documents regarding the Republic's relationships with other nations and inter-governmental organizations.  (*See*, *e.g.*, Ex. 3 (Document Requests).)

*Third*, absent a stay, Plaintiffs' enforcement efforts will directly prejudice "existing creditors."  *In re Nassau County Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) (outlining non-exclusive factors relevant to determining whether waiver of bond requirement is appropriate).  Any attempted seizure of the Republic's assets "would be satisfied from the same limited pool of

---

[1] Joe Miller & Ciara Nugent, *After $16 Billion Judgment, Burford's Next Battle Will Be Making Argentina Pay*, Financial Times (Sept. 14, 2023), https://www.ft.com/content/1abd35df-1efd-4c61-b983-b5a580e44b3a.

funds sought by" these existing creditors.  *Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295, 316 (Bankr. S.D.N.Y. 2011).  Plaintiffs should not be authorized to begin global collection proceedings that may never be needed and would place the Republic's other creditors "in an insecure position."  *In re Nassau County*, 783 F.3d at 418.

>*Fourth*, the Republic's appeal raises, at a minimum, challenging issues of first impression for the Second Circuit.  The Court ruled on significant jurisdictional and comity issues and adjudicated complex questions of Argentine public and private law.  This factor counsels strongly in favor of a stay of execution without bond because if the Republic prevails on appeal in whole or in any material part, it would be extremely difficult for the Republic to recover any assets from the undisclosed third-party investors to whom Burford Capital has sold 38.75% of its interest in these cases or from creditors in Petersen's Spanish bankruptcy proceedings.[2]  Given that Rule 62(b) serves to "protect[] . . . against the risk that payment cannot be recouped if the decision should be reversed," *In re Nassau County*, 783 F.3d at 417 (quotation marks omitted), the Court should not condone such a result.

>*Fifth*, the balance of the equities favors the Republic.  Argentina "is not going anywhere"; Plaintiffs are entitled to post-judgment interest at 5.42% per year, *see* 28 U.S.C. § 1961, and they can enforce the judgment just as well after appeal as before.  *Morgan Guar. Trust Co. of New York* v. *Republic of Palau*, 702 F. Supp. 60, 66 (S.D.N.Y. 1988) (Sweet, J.).  It is in the interests of all parties and affected courts for any collection proceedings to take place in an orderly, as opposed to a haphazard, fashion.

---

[2] Burford Capital LLC, *Burford Capital Statement on YPF Summary Judgment Ruling* (Apr. 4, 2023) (*Petersen* ECF 441-1).

*Finally*, if the Court does not grant the Republic's motion, it should temporarily stay enforcement without bond to allow the Republic time to seek the same relief from the Second Circuit.

## BACKGROUND

On September 15, 2023, this Court entered judgment against the Republic for $16.1 billion.  This sum is large for any national budget, but truly overwhelming for the Republic because of the fiscal and monetary issues it faces, as it continues to seek to provide services to its over 45 million people, to alleviate its debt burden of $235 billion, and to stabilize its currency, as the country suffers from severe inflation.  Numerous obstacles, both legal and practical, would make obtaining a bond to guarantee a stay—or paying the judgment before resolution of its appeal— impossible.

As a threshold matter, legal barriers preclude the Republic from funding a $16.1 billion bond or paying that amount out to Plaintiffs at this time.  As the Secretary of the Argentine Treasury Raúl Rigo explains, such a payment currently would be impossible because "[u]nder Article 170 of Law 11,672 (the Permanent Supplementary Budget Law [*Ley Complementaria Permanente de Presupuesto*])," a "judgment that is still subject to appeal is not considered final" and "cannot be budgeted for" under Argentine law.  (Ex. 1 (Rigo Decl.) ¶ 7.)  Because the Republic has filed its notice of appeal from the Court's order (*see Petersen* ECF No. 504), the judgment is not final under Argentine law until the appeal is resolved.

In any event, under Argentine law, the "only payments the Argentine government can make in the current year" are those included in "the Budget Bill approved by the National Congress for the year or those added in any amendment to the Budget Bill, during the fiscal year." (Ex. 1 (Rigo Decl.) ¶ 8.)  The Argentine Congress understandably did not appropriate funds in this year's budget—submitted to it in 2022, before the Court's March 30, 2023 summary judgment

ruling—to bond or pay a $16.1 billion judgment.  (*Id.*)  Nor could the Congress do so now:  there are no "sources of funding to finance or secure the amount of the Judgment in this fiscal year." (*Id*. ¶ 10.)  The International Monetary Fund recently estimated that the Republic's Central Bank had negative $9.8 billion in net international reserves as of the end of June 2023.[3]  And "[t]he re-allocation of amounts already budgeted and executed" would not be feasible this late in the year because 80% of the 2023 budget is comprised of mandatory spending on social services and other public benefits that cannot be foregone as a matter of Argentine law.  (*Id.* ¶¶ 8(b), 12.)

Borrowing funds even approaching the amount of the $16.1 billion judgment—or that would be necessary to secure the judgment—also is not a viable option for the Republic.  The Republic cannot raise the necessary funds from international lenders.  As the Republic's Secretary of Finance Eduardo Setti explains:  "The Republic currently does not have the ability to issue public debt on the international capital markets," as exemplified by its Ca, CCC-, and C credit ratings, respectively, from Moodys, S&P, and Fitch.  (Ex. 2 (Setti Decl.) ¶ 6.)  The Republic was last able to issue debt in the international market in January 2018.  (*Id.*)  At this point, the IMF is targeting *2025*, at the earliest, for the Republic to "strengthen debt sustainability and secure a gradual re-accessing of international markets."  *See* IMF Report, *supra* n.3 at 16.  Because the Republic cannot borrow on international markets, it is confined to the Argentine market, but its "local market would not be able to absorb additional net financing of the magnitude required to pay the amount of the Judgment, which, in all events, would require the approval of the Argentine Congress" and "take many months to complete."  (Ex. 2 (Setti Decl.) ¶ 10.)

---

[3] Net international reserves after excluding swap lines with other central banks, reserve requirements on domestic dollar deposits, and deposit insurance.  IMF, *Fifth and Sixth Reviews Under the Extended Arrangement Under the Extended Fund Facility* 62 (Aug. 25, 2023), http://www.elibrary.imf.org/view/journals/002/2023/312/article-A001-en.xml ("IMF Report").

Even if the Republic could appropriate or borrow funds to secure a bond or pay the $16.1 billion judgment—and it cannot—doing so would impose serious hardship on its more than 45 million people, who are already suffering from high inflation and the adverse economic consequences of a severe and persistent drought, "with reserves falling to dangerously low levels on account of the drought."  IMF Report, *supra* n.3 at 7–9.  The 5.5 trillion peso judgment[4] represents almost 20% of the Republic's annual budget, exceeding the Argentine government's budget for many of its most significant programs, including subsidies for energy and transportation, support for the Ministry of Health, provision of drinking water and sewage, and assistance to its provinces.  (Rigo Decl. ¶ 11.)

Confirming that Plaintiffs have only just begun a campaign to embroil the Republic in enforcement proceedings, on October 16, 2023, Plaintiffs served an extremely broad set of discovery requests on the Republic.  (*See* Ex. 3 (Document Requests).)  The seventy-seven requests are tremendously burdensome, seeking, for example, documents concerning *any* of the Republic's commercial transactions, with *any* person worldwide since 2020 (*id.* Req. 22) and documents about every account of every kind ever used *since 1993* to hold or transfer YPF shares or share proceeds (*id.* Reqs. 1–12).  And Plaintiffs target government information of no relevance to enforcing the judgment in this case, such as information about dealings between the Republic's central bank and the IMF, the International Bank for Reconstruction and Development, the International Development Association, and the Inter-American Development Bank. (Ex. 3 Reqs. 53–58).

---

[4] The Republic arrived at this figure by converting the judgment amount to pesos, applying the Argentine Central Bank's wholesale exchange rate as of September 27, 2023.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(b), an appellant is entitled to a stay as a matter of right pending appeal by posting a supersedeas bond.  The Rule, however, "in no way," "implies that filing a bond is the only way to obtain a stay."  *Federal Prescription Serv., Inc.* v. *Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980).  To the contrary, and as the Second Circuit has made clear, a district court may in appropriate circumstances exercise its discretion to waive the bond requirement.  *See In re Nassau County*, 783 F.3d at 417.  In fact, an "inflexible" bond requirement "can in some circumstances be irrational, unnecessary, and self-defeating, amounting to a confiscation of the judgment debtor's property without due process."  *SDF9 Cobk LLC* v. *AF & AR LLC*, 2015 WL 3440259, at *2 (E.D.N.Y. May 27, 2015) (Vitaliano, J.) (quoting *Texaco Inc.* 784 F.2d at 1154).  Courts can waive the bond requirement "when doing so does not unduly endanger the judgment creditor's interest in ultimate recovery."  *Palazzetti Import/Export, Inc.* v. *Morson*, 2002 WL 562654, at *3 (S.D.N.Y. Apr. 16, 2002) (Maas, J.) (citation omitted).

The Second Circuit has identified five "non-exclusive" factors that district courts "may consider" in assessing whether the bond requirement should be waived.  *In re Nassau County*, 783 F.3d at 417–18.  Those factors are:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that a district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Id*.

Courts in this Circuit, including this one, have also taken into account other pertinent factors such as "principles of . . . sovereignty," *Cayuga Indian Nation*, 188 F. Supp. 2d at 255, whether the stay applicant "has made a strong showing that he is likely to prevail on the merits of his appeal," whether "without a stay, the applicant will be irreparably injured," "whether issuance of the stay will substantially harm other parties interested in the proceedings," and "where the public interest lies." *E.J. Brooks Co.* v. *Cambridge Security Seals*, 2016 WL 908633, at *1 (S.D.N.Y. Mar. 2, 2016) (Preska, J.) (staying enforcement of judgment after considering "irreparable harm" bond requirement could impose). The Court may always "exercise its equitable powers to stay proceedings to protect the status quo during the pendency of [an] appeal," as "part of its traditional equipment for the administration of justice." *Petroleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, 2020 WL 7711522, at *2 & n.5 (S.D.N.Y. Dec. 29, 2020) (Failla, J.) (granting stay based on *Nassau* factors as well as other factors, including "irreparable injury" to the applicant).

## ARGUMENT

## I.  THE COURT SHOULD STAY EXECUTION OF THE JUDGMENT PENDING APPEAL WITHOUT REQUIRING A BOND

### A.  The Size of the $16.1 Billion Judgment and Impossibility of Securing a Bond Support a Stay Without Bond

The unprecedented size of the judgment and the impossibility of bonding or paying it immediately weigh in favor of waiving the bond requirement. As the Republic's Secretary of Treasury and the Secretary of Finance explain, the Republic cannot fund or bond a $16.1 billion judgment, an amount that likely could not be secured by *any* litigant,[5] much less a nation with C-

---

[5] The combined underwriting limits of the 212 surety companies licensed in New York is approximately $30.4 billion, and this judgment represents over half that total combined limit. *See* https://www.fiscal.treasury.gov/surety-bonds/list-certified-companies.html. This limit is itself wholly hypothetical, as sureties typically offer supersedeas bonds for only a fraction of their limits,

level credit ratings (*i.e.*, in the bottom range of debt ratings assigned by the major credit agencies signifying a very high level of risk).  (Ex. 2 (Setti Decl.) ¶ 6.)  This Court should not require a "potentially crippling bond requirement" that the Republic cannot hope to meet.  *Palazzetti*, 2002 WL 562654, at *3 (waiving bond requirement where bank was "unwilling to issue" letter of credit needed for bond); *Int'l Distrib. Centers, Inc.* v. *Walsh Trucking Co.*, *Inc.*, 62 B.R. 723, 732 (S.D.N.Y. 1986) (Keenan, J.) ("These are not the normal circumstances given the relatively inadequate resources of the non-bankrupt individual defendants, in which a full supersedeas bond should, or can, be required.").

        1.     Argentine law prohibits the Republic from securing a supersedeas bond for a $16.1 billion judgment (or paying the judgment) at this time.  The 2023 budget for Argentina, which was presented to Congress in *2022*, necessarily does not authorize any such payment.  (Ex. 1 (Rigo Decl.) ¶ 8(a).)  Nor could Congress amend the budget now to include such authority.  Under Argentine law, a payment on an outstanding legal judgment "*cannot be budgeted for*" by the Argentine Congress "until the appeal process for the Judgment has concluded."  (*Id.* ¶ 7 (citing Law 11,672, Art. 170) (emphasis added).)  The appeal process in this case has just begun.  Courts have taken similar realities into account in staying bond requirements where securing a bond requires intervention by a legislature or similar body.  *See Conte* v. *County of Nassau*, 2015 WL 13720237, at *1 (E.D.N.Y. June 4, 2015) (Bianco, J.).

---

even to judgment debtors with excellent credit.  For example, in *Stmicroelectronics, N.V.* v. *Credit Suisse Securities (USA) LLC*, 09-CV-1388, ECF No. 35 (S.D.N.Y. Aug. 27, 2010), respondent Credit Suisse secured a supersedeas bond of $385,806,565 using three separate surety companies. The maximum liability on the bond for sureties Fidelity and Deposit Company of Maryland and Zurich American Insurance Company jointly was $192,903,282.50; the maximum liability on the bond for surety Liberty Mutual Insurance Company was $192,903,282.50.  *Id.* at 2.  In contrast, Fidelity had at the time of the bond an underwriting limit of approximately $15.5 million; Zurich had a limit of approximately $555 million; and Liberty Mutual's limit was approximately $663 million.  *See* http://fms.treas.gov/c570/c570-02-12-09.pdf.

2.      Beyond these legal impediments, paying or bonding a $16.1 billion judgment is a practical impossibility because of the Republic's current financial circumstances. As the Republic's Secretary of Treasury states, there are no "sources of funding to finance or secure the amount of the Judgment in this fiscal year." (Ex. 1 (Rigo Decl.) ¶ 10.) The year is three-quarters over, and it would not be possible to reallocate funds committed to (or already spent for) other programs to pay or bond the judgment this year. (*Id.* ¶¶ 8, 10.) The Republic also cannot secure funds from international lenders because it "currently does not have the ability to issue public debt on the international capital markets." (Ex. 2 (Setti Decl.) ¶ 6.) Nor can the Republic raise money "on the local market," which would "not be able to absorb additional net financing of the magnitude required to pay the amount of the Judgment." (*Id.* ¶¶ 9–10.) Because the Republic does not have access to international capital markets, it is simply not in a position to obtain a surety bond, and certainly not to obtain sufficient funds to pay the entire judgment. *Cayuga Indian Nation*, 188 F. Supp. 2d at 256 (granting motion to waive bond requirement in part because it would be "impossible to find a bonding agency willing and able to secure a judgment of this size").

3.      Even if it were possible legally and practically to somehow secure a bond for a $16.1 billion judgment or, in the alternative, to obtain approval from the Argentine Congress to begin paying the judgment, making either payment now would unnecessarily harm a country that is confronting a plethora of economic challenges. IMF Report, *supra* n.3, at 7–9; *see River Oaks Marine*, 1992 WL 406813, at *1 ("Many innocent third parties may suffer if execution is allowed to proceed."); *E.J. Brooks Co.*, 2016 WL 908633, at *1 (noting "irreparable harm" to defendant that could result from bond requirement). The Republic is suffering from an increasingly severe drought and acute inflation; the judgment represents over 14 times the annual budget for drinking water and over 8 times the budget for the Ministry of Health. (Ex. 1 (Rigo

Decl.) ¶ 11(e), (f).)  It amounts to *20 percent* of the Republic's 2023 budget.  (*Id.* ¶ 11.)  In other words, the "balance of the public interest of [Argentina] predominates over the financial interest" of Plaintiffs here, *Morgan Guar. Trust Co.*, 702 F. Supp. at 66, given that a bond—even if possible to secure—would come at the expense of the Argentine populace's needs.

    In analogous circumstances where a bond would be impossible to acquire or would impose substantial hardship, courts have rightly waived the requirement.  In *River Oaks Marine*, for example, the court stayed execution of the judgment without bond where the defendant municipality, as here, had "no legal authority to pay the judgment out of funds that have already been allocated to pay for public functions," and the town's "residents and visitors" could suffer "substantial hardship" from immediate execution.  1992 WL 406813 at *2.  And in *Morgan Guaranty Trust Co.*, the court waived the full bond requirement where the $45 million judgment was greater than the anticipated revenue of the sovereign defendant.  702 F. Supp. at 65–66; *see also Texaco*, 784 F.2d at 1140, 1155 (waiving bond requirement following issuance of $11.12 billion judgment where posting bond would likely force defendant into bankruptcy and have severe economic impact on shareholders and employees); *Teachers Ins. & Annuity Ass'n of Am.* v. *Ormesa Geothermal*, 1991 WL 254573, at *4 (S.D.N.Y. Nov. 21, 1991) (Wood, J.) (waiving full bond requirement to avoid "a severe impact on Defendants . . . that could force Defendant Ormesa to cease operations and liquidate its assets").  The Court should likewise waive the bond requirement here pending resolution of the Republic's appeal.

  **B.**  **Principles of International Comity Strongly Favor Granting a Stay and Waiving the Bond**

    "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale* v. *U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1987).

Courts apply this principle by interpreting "statutes affecting international relations[] to avoid, where possible, producing friction in our relations with other nations." *Philipp*, 141 S. Ct. at 714 (quotation omitted). "[I]n assessing the need for a supersedeas bond" in particular, courts act with "respect for the dignity and interests" of states and foreign governments. *Cayuga Indian Nation*, 188 F. Supp. 2d at 255 (waiving bond requirement for State of New York); *see Gates* v. *Syrian Arab Republic*, 2009 WL 10693488, at *2 (D.D.C. Feb. 6, 2009) (waiving requirement for Syrian Arab Republic); *Easter House* v. *State of Ill. Dep't of Children & Family Servs.*, 645 F. Supp. 107, 108 (N.D. Ill. 1986) (waiving requirement for State of Illinois). This approach supports "deferr[ing]" remedies for commercial actors "to accommodate the needs of an emerging nation," *Morgan Guar Trust Co.*, 702 F. Supp. at 66, which is the appropriate outcome here.

      1. Because of the legal and practical impediments to paying or bonding the $16.1 billion judgment in this case, principles of comity weigh heavily in favor of granting a stay without bond. Without a stay and waiver of the bond requirement, the Republic will become entangled in burdensome discovery, attachment, and execution proceedings across the globe that infringe on its sovereign rights and may prove to be ultimately unnecessary.

      Plaintiffs have started the process by serving on the Republic a burdensome set of seventy-seven document requests for information that touches on the Republic's financial affairs and its relationships with other nations. *See supra* at 6. These overbroad requests intrude deeply into the workings of Argentina's government. For example, responding to requests for documents "sufficient to identify all bank accounts, brokerage accounts, trust accounts, or custodial accounts, that are managed for the benefit of the Secretariat of the Treasury of the Ministry of Economy" (Ex. 3, Req. 62) would require coordination across multiple divisions of the Republic's

government in order to ascertain whether any relevant documents exist, what privileges apply to those documents, and how to identify them.

2.      Absent a stay, after litigating discovery issues, even more litigation will surely follow in courts around the world.  The institution of attachment proceedings against the Republic has spawned lengthy proceedings that frequently pose significant and intractable legal issues in their own right, including proceedings that have unlawfully infringed upon the Republic's sovereign immunity.  Creditors, for example, have aggressively tried to seize Argentinian assets immune from collection, requiring expensive and lengthy lawsuits across the country:

- In *NML Capital, Ltd.* v. *Space Exploration Techs. Corp.*, 2015 WL 1334291 (C.D. Cal. Mar. 6, 2015), a judgment creditor sought to attach contracts between Argentina's space agency and SpaceX to launch two of Argentina's observation satellites into space "to study the global environment." *Id.* at *2.  The court rejected this attempt, holding that these contracts were not "used" for commercial activity simply because they involved a private corporation. *Id.* at *7.

- In *HWB Victoria Strategies Portfolio* v. *Republic of Argentina*, 2017 WL 1738065 (D. Kan. May 4, 2017), plaintiff judgment creditors sought to attach two aircraft engines in Kansas that were "operated exclusively by military personnel from the Argentine Air Force." *Id.* at *1.  The judgment creditors argued these assets were not immune from attachment because "GE [was] repairing the engines," rendering them property used for "a commercial purpose." *Id.* at *3.  The district court held these assets were not used for commercial purposes and, indeed, were of "military character" and thus immune from attachment. *Id.* at *2 (citing 28 U.S.C. §§ 1609, 1611).

- In *EM Ltd*. v. *Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007), the Second Circuit affirmed the district court's order rejecting judgment creditors' attempts to attach funds in the account of Argentina's Central Bank at the Federal Reserve Bank in New York, "[e]ven though [judgment creditors did] not hold or seek

judgments against" the Central Bank. *Id.* at 465. The Second Circuit confirmed that the Central Bank's funds held in its own account were not available to satisfy a judgment against the Republic, and that a government's repayment of debt to the IMF (the intended use of the funds of the Central Bank) is not a "commercial activity" in any event. *Id.* at 480–84.

Plaintiffs have touted their "team of 30 recovery specialists" ready to commence just these types of enforcement proceedings. *See* Miller & Nugent, *supra* n.1. The Court should not set into motion such sprawling and intrusive enforcement proceedings in courts around the world against a sovereign nation without knowing whether those proceedings will ever be necessary.

### C.    Requiring a Bond Would Place Numerous Other Creditors at Risk

Courts have recognized that the "waiver of the bond requirement may be appropriate where (1) the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and (2) the opposite case, . . . [where] the requirement would put the defendant's other creditors in undue jeopardy." *Hardesty* v. *Sacramento Metro. Air Quality Mgmt. Dist.*, 2019 WL 2715616, at *4 (E.D. Cal. 2019) (quoting *Olympia Equip. Leasing Co.* v. *W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986) (summarizing same five non-exclusive factors adopted by the Second Circuit)). This is the "opposite case," where conditioning a stay on posting of a bond—that cannot be posted—would jump-start global collection proceedings by Plaintiffs and thereby unnecessarily place the Republic's other creditors "in an insecure position." *In re Nassau County*, 783 F.3d at 418; *see also Acevedo-Garcia* v. *Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002) (no bond required if "the bond would put the defendant's other creditors in undue jeopardy").

The IMF reports that Argentina currently owes **$235 billion** to public and private sector creditors. IMF Report, *supra* n.3 at 56. Those creditors include the IMF itself, the World

Bank, the Inter-American Development Bank, the Paris Club Creditors, and private investors.  Yet "any judgment in favor of the . . . Plaintiffs," on their impending attempts to seize the Republic's assets "would be satisfied from the same limited pool of funds sought by" the Republic's private and public sector creditors, along with any other judgment creditors.  *Bernard L. Madoff Inv. Sec.*, 443 B.R. at 316 (extending bankruptcy stay to new asset recovery litigation to protect preexisting third-party creditors of bankruptcy estate); *see Olympia Equip.*, 786 F.2d at 798 (affirming waiver of bond requirement after balancing interest of "judgment creditor" against "the interest of the other creditors").  Because of the strength of the Republic's arguments on appeal and the difficulty of unwinding collections, *see* Part I(D), *infra*, Plaintiffs should not be permitted to begin this process prematurely at the expense of other creditors.  *See Rivera* v. *Home Depot U.S.A., Inc.*, 2018 WL 3105069, at *2–3 (S.D.N.Y. June 25, 2018) (Forrest, J.) (staying enforcement of judgment and waiving bond requirement "in the interest of judicial efficiency").

### D.    The Republic Has Substantial Grounds for Appeal and Limited Ability to Recoup Any Payments Made to Plaintiffs

All this disruption and hardship may well prove unnecessary because the Republic has a "substantial case on the merits," another factor courts have considered relevant in granting a stay pending appeal without bond.  *Cayuga Indian Nation*, 188 F. Supp. 2d at 253.  Indeed, the case law is clear that "[t]ribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question."  *Morgan Guar. Trust Co.*, 702 F. Supp. at 66.

The Court decided this Argentine law dispute over the Republic's objections on *forum non conveniens* and international comity grounds.  (*See Petersen* ECF No. 161 at 40–41 & n.15.)  The Court's summary judgment decision resolved numerous complex questions of public and private Argentine law, all against the Republic's view of its own law.  (*See Petersen* ECF No. 437, Mar. 30, 2023 Order at 36–53.)  To cite one important example, Plaintiffs do not deny

that the Court's judgment is the *only* one ever granted under Argentine law in a shareholder-against-shareholder action seeking damages for breach of a corporate bylaws provision.  The Court also entered the largest award in this District's history, notwithstanding the Republic's substantial legal objections to the calculation of the amount of damages.  (*See Petersen* ECF No. 493.)  Given the undeniably unique nature of this case, and "because of the difficulties of the issues here presented, it would be foolhardy to predict that there is no likelihood of success on appeal." *Morgan Guar. Trust Co.*, 702 F. Supp. at 65.

If the Republic prevails on appeal, any execution proceedings, if successful, would be extremely difficult to unwind.  Rule 62 exists in part to "protect[] the other side against the risk that payment cannot be recouped if the decision should be reversed."  *In re Nassau County*, 783 F.3d at 417 (quoting *Cleveland Hair Clinic, Inc.* v. *Puig*, 104 F.3d 123, 125 (7th Cir. 1997)).  Here, Burford Capital has sold at least 38.75% of its interest in these cases to third-party investors whose identity has not been publicly disclosed.  Other funds would immediately go to Plaintiffs' Spanish bankruptcy proceedings; and still others would be paid out as contingency fees.  *See* Burford Capital LLC, *supra* n.2.  The Republic should not be put at risk of having to attempt to recover assets in unknown, far-flung jurisdictions from unidentified parties.

### E.    The Balance of Equities Favors a Stay

Finally, courts have also considered the balance of equities between the parties in determining whether to issue a stay and waive the bond requirement.  *See Morgan Guar. Tr. Co.*, 702 F. Supp. at 66 (stay appropriate where "the equities of the case suggest that the status quo be maintained").  Here, that balance decisively favors the Republic.

1.    The odds of immediate execution "irreparably injuring" the Republic and its people are severe in this case.  *See Texaco*, 784 F.2d at 1154 (holding that district court should have waived supersedeas bond requirement).  There is no doubt that imposing a bond requirement

and thereby effectively allowing Plaintiffs to collect now and defend the judgment on appeal later would reduce the funds available for the Republic's social and population needs. Waiving the requirement, on the other hand, will avoid potentially unnecessary discovery and collection litigation and financial harms to a population of over 45 million people.

        2.     A temporary stay will not harm Plaintiffs. *Fed. Prescription Serv., Inc.*, 636 F.2d at 759 (affirming district court's decision to waive bond requirement where it would do Plaintiff no "material damage"); *Palazzetti*, 2002 WL 562654, at *3 (appropriate to enter a stay without bond when "judgment creditor's interest in ultimate recovery" is not endangered). To the contrary, Plaintiffs are entitled to post-judgment interest at 5.42% per year. *See* 28 U.S.C. § 1961; *Cayuga Indian Nation*, 188 F. Supp. at 253 ("[T]he court cannot ignore the fact that there would be no concomitant harm to the tribal plaintiffs if it grants a stay because they would be entitled to post-judgment interest."). Moreover, there is no showing that Plaintiffs' ability to recover "will be any greater now than in the future," because the Republic—the second-largest country in South America—"is not going anywhere," *Morgan Guar. Trust Co.*, 702 F. Supp. at 66. The Republic is actively working to improve its credit situation, including via negotiations with the IMF, so that it may be in a better position to pay creditors in the future. And all parties and affected courts will benefit from orderly collection proceedings as opposed to chaotic enforcement actions that also entangle existing creditors.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT A TEMPORARY STAY

        If it does not grant the Republic's stay motion in full, the Court should order a 30-day stay from the date of the Court's denial so that the Republic can seek a stay pending appeal from the Second Circuit. "[B]rief stays for a matter of days are frequently issued when a district court denies an open-ended stay pending appeal," because "[t]hey give the appellate court an

opportunity to decide whether an additional stay . . . should be granted." *U.S. CFTC* v. *eFloorTrade, LLC*, 2020 WL 2216660, at *10 n.14 (S.D.N.Y. May 7, 2020) (Gardephe, J.) (quoting *Rodriguez* v. *DeBuono*, 175 F.3d 227, 235–36 (2d Cir. 1999)) (granting temporary stay of monetary judgment "to allow Defendants to seek a stay from the Court of Appeals"); *Centauri Shipping Ltd.* v. *W. Bulk Carriers KS*, 528 F. Supp. 2d 186, 196 (S.D.N.Y. 2007) (Sullivan, J.) (same and collecting cases).

This Court has followed that practice, granting motions for a brief "temporary stay," so that parties can "apply to the Court of Appeals for a stay pending appeal." *Arctic Ocean Int'l Ltd.* v. *High Seas Shipping Ltd.*, 2009 WL 5103283, at *2 (S.D.N.Y. Dec. 28, 2009) (Preska, J.). There is no reason to deviate from the ordinary course in this significant dispute.

## CONCLUSION

For the foregoing reasons, this Court should grant the Republic's motion for a stay of enforcement of the judgment pending appeal without bond.

Respectfully,

Dated:  October 26, 2023

/s/Robert J. Giuffra, Jr.

Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588

*Counsel for the Argentine Republic*