UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br> Plaintiffs, <br><br> -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | Case Nos.: <br><br> 1:15-cv-02739-LAP <br> 1:16-cv-08569-LAP |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., <br><br> Plaintiffs, <br><br> -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | |

**DECLARATION OF ALBERTO B. BIANCHI**

1. I am an Attorney at Law, a Constitutional Law Professor, and a Member of the National Academy of Sciences of Buenos Aires. I have previously served as an expert in this case. This declaration is made in connection with Plaintiffs' opposition to the Republic's application to stay, pending determination of its appeal, execution or enforcement of the final judgment entered in the above-captioned cases on September 15, 2023 (*Petersen* ECF No. 498; *Eton Park* ECF No. 418).

2. According to Argentina "legal barriers preclude the Republic from funding a $16.1 billion bond or paying that amount out to Plaintiffs at this time" because: (1) "[u]nder Article 170 of Law 11,672 (the Permanent Supplementary Budget Law [*Ley Complementaria Permanente de Presupuesto*]), . . . [a] judgment that is still subject to appeal is not considered final" and "cannot be budgeted for[;]" and (2) "[t]he only payments the Argentine government

1

can make in the current year . . . are those included [ ] in the Budget Bill approved by the National Congress for the year." Arg. Mem. at 4; Rigo Decl. ¶¶ 7, 8.

3. In my opinion, there are no such legal barriers.

**Article 170 does not legally preclude Argentina from paying a bond or judgment.**

4. *First*: Argentina conflates its legal ability to budget for and pay a bond with its legal ability to budget for and pay a judgment. Mr. Rigo's declaration does not suggest that Article 170 of Law 11,672 presents any legal obstacle to payment of a bond.

5. *Second*: Mr. Rigo's declaration (¶ 9) also provides the clear and simple solution for Argentina to pay a bond or the judgment: "[i]n order to effect an increase to the budget in the same fiscal year (*i.e.* in this case, 2023), it would be necessary to enact a law that clearly identifies the source of funding for the proposed increase of total expenses." Therefore, there is no legal obstacle precluding Argentina from passing a specific law to increase the 2023 Budget.

6. *Third*: if, as claimed by Argentina, Article 170 of the Permanent Supplementary Budget Law ("PSLB") does not apply to the judgment here because it is not "final," then the judgment entered on September 8, 2023, would fall *outside* the scope of Article 170. Accordingly, the amount of the judgment need not be included in the next fiscal year budget. Thus, accepting Argentina's argument on its face, Article 170 PSLB would not be applicable to the case at hand and would not restrict Argentina's legal ability to pay the judgement.

7. Given that Article 170 PSLB is the legal provision that provides for payment of judgments entered against the Federal State, if Article 170 PSLB is *not* applicable to the case at hand, it follows that Argentina should immediately *comply* with the judgment entered on September 8, 2023.

8. *Fourth*: Article 170 is not a mandatory requirement. It grants the federal government the discretionary authority to prevent creditors from seizing Argentina's assets

while enforcing a judicial decision. Nothing in Article 170 PSLB forbids Argentina from waiving this prerogative.

9. Article 170 PSLB regulates Section 7 of Law 3952 (Lawsuits Against the Nation), according to which a judgment against the Federal State has a merely declaratory effect, which is to say, it cannot be enforced.[1] The reasoning behind this Section is that the performance of the State's duties should not be adversely affected by enforcement of a judgment, for instance by means of a seizure in aid of execution. This Section, however, was limited by the Supreme Court in *Pietranera c/ Gobierno de la Nación*,[2] where the Supreme Court concluded that judges may establish a term within which the State must comply with a judgment to pay a certain sum of money.

10. As a result of the Supreme Court's decision, Section 7 of Law 3952 is not absolute. Years later, Congress modified the judicial standard through the enactment of Law 24,624 (Budget Law for Fiscal Year 1996)[3], which established the regime now governed by the provisions of Section 170 PSLB, according to which, the amount of the judgment should be included in the Budget for the following year.

11. Accordingly, Section 7 of the Law of Lawsuits Against the Nation and Section 170 PSLB do not regulate a "principle" of Argentine public law, but rather, merely provide the state with a mechanism to budget for an outstanding judgment while preventing the State's assets from becoming subject to enforcement actions. From this perspective, the State is not "bound" by the provisions of Article 170 PSLB, but rather, may use it at its discretion to prevent enforcement. There is no law precluding the state from waiving those provisions.

---

[1] Law 3952, Article 7 "A judgment entered against the Nation in any such legal proceeding will be merely declaratory in nature, and will be limited to merely acknowledging the rights claimed."
[2] Fallos 265-291 (1966) (original Spanish and certified English translation attached hereto as Ex. A).
[3] See Ex. B (original Spanish and certified English translation).

**Argentina has the legal authority to pay the bond or judgment in the current year**

12.     *First*: even without Congressional approval, the Argentine executive has the discretion to change the intended use of any items included in the budget. According to the provisions of Section 37, second paragraph, of Law No. 24,156 (Financial Administration Law or "FAL"): *"The Chief of Cabinet is entitled to perform all the budget restructuring deemed necessary within the total amount approved."*[4] In other words, allocation of the items included in the Budget Law is not final or unchangeable: the Chief of the Cabinet – who is in charge of execution of the Budget, pursuant to the provisions of Article 100(7) of the Constitution[5] – has the discretionary power to change the allocation of any items within the budget.

13.     Under the Argentine Constitution, all budgetary roles belong to the Chief of Cabinet. Thus, in accordance with Article 100(6), the Chief of Cabinet will submit to Congress a draft Budget prepared by the National Budget Office, a component of the Ministry of Economy. After the Budget Law is approved, the Chief of Cabinet is in charge of executing it, that is to say, he is in charge of authorizing any expenses contemplated in the Budget's items. Also, in order to streamline execution of the Budget, Article 37 FAL allows the Chief of Cabinet to make "budget restructuring", that is to say, to change the intended use of any such items and modify the resources allocated to them.

14.     *Second*: even if Article 170 were applicable to the case at hand and the amount of the judgment could not be honored now, but should rather be included in the Budget Law for the next fiscal year, that outcome is not absolute, as (a) a specific law could be enacted by Congress in order to do so; (b) government debt instruments could be issued by Congress in order to honor the amount of the judgment, by enacting a specific law for that purpose; or (c)

---

[4] Spanish original: "El jefe de Gabinete […] puede disponer las reestructuraciones presupuestarias que considere necesarias dentro del monto total aprobado." (original Spanish and certified English translation attached hereto as Ex. C)
[5] Spanish original: "Artículo 100. […] El jefe de gabinete […] le corresponde: […] 7. Hacer recaudar las rentas de la Nación y ejecutar la Ley de Presupuesto Nacional."

the Executive Branch of government, acting by itself and without need for Congressional consent, could issue debt instruments with an international credit agency of which Argentina is a member.

15. As far as (b) above is concerned, the first paragraph of Section 60 FAL provides that "Federal government agencies shall not enter into government credit transactions not specifically contemplated in the general budget law for the applicable year **or in a specific Act of Congress**."[6] (emphasis added). This means that Congress has the ability to enact a specific law authorizing the issuance of government debt instruments, even if that transaction is not contemplated in the Budget Law.

16. As far as (c) above is concerned, the fourth paragraph of Section 60 FAL provides that "*The abovementioned provisions shall not apply to government debt transactions closed by the Executive Power with any international credit agencies of which Argentina is a member.*"[7] This means that the Executive Power, i.e. the President, acting by itself and without need for Congressional consent, may apply for a loan from an international credit agency of which Argentina is a member.

17. *Third*: Argentina has done this before. In the case "*Gobierno de la Ciudad de Buenos Aires c/ Estado Nacional s/ acción declarativa de inconstitucionalidad - cobro de pesos*" (CSJ 1865/2020), the Argentine executive complied with an interim measure ordered by the Argentine judiciary, which involved a payment of millions of dollars.[8] This is despite the fact that (i) the main proceeding related to the interim measure is still awaiting resolution;

---

[6] Spanish original: "Las entidades de la administración nacional no podrán formalizar ninguna operación de crédito público que no esté contemplada en la ley de presupuesto general del año respectivo o en una ley específica." Ex. C at § 60.
[7] Spanish original: "Se exceptúa del cumplimiento de las disposiciones establecidas precedentemente en este artículo, a las operaciones de crédito público que formalice el Poder Ejecutivo Nacional con los organismos financieros internacionales de los que la Nación forma parte." *Id.*
[8] See Ex. D (Spanish original and certified English translation).

(ii) the Government has appealed the interim measure; and (iii) Congress has not passed any law including that payment in any budget.

18.   On December 21, 2022, the Supreme Court of Argentina issued an interim measure against the Government.[9] The measure ordered the Government to pay approximately ARS $98,5 billion (equivalent to USD 565 million)[10] to the City of Buenos Aires as part of the Federal Revenue Sharing framework. Then on December 26, the President instructed that this interim measure be appealed.[11] Despite claiming that the 2022 budget law did not include the sums required and that there was no definitive judgment, the President instructed the Chief of Cabinet to pay it.[12]

19.   On the same day, the Chief of Cabinet issued Administrative Decision No. 1282/2022, reallocating resources and transferring them to a bond-denominated bank account at the Banco de la Nación Argentina. The Chief of Cabinet also instructed same bank to transfer the necessary bonds to an account in the name of the Government of the Autonomous City of Buenos Aires "immediately."[13] The Chief of Cabinet thus paid a judgment of several hundred million dollars that was *not* final and had *not* been budgeted for – *without* Congressional approval.

**Argentina has the legal authority to pay the bond or judgment in the coming fiscal year**

20.   Just as Argentina could enact a law to pay the bond or the judgment this year, it could also include either item in the budget for fiscal year 2024. That means that Argentina's legal arguments are, at best, theoretical. The Budget Law for 2024 has not been approved by

---

[9] *Id.*
[10] This conversion applies the wholesale exchange rate published by the Central Bank of Argentina on December 21, 2022.
[11] Alberto Fernandez (@alferdez) (Dec. 26, 2022 9:07 AM), https://twitter.com/alferdez/status/1607377562673479682 (Spanish original and certified English translation attached hereto as Ex. E).
[12] Ex. E.
[13] Administrative Decision No. 1282/2022 (original Spanish and certified English translation attached hereto as Ex. F).

Congress yet. That will probably happen sometime in November-December 2023. Accordingly, there is nothing to prevent the amount of the claim under the judgment entered on September 8, 2023 from being included in the Budget for 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on November 2, 2023.

_____
Alberto B. Bianchi