**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. AND PETERSEN ENERGÍA, S.A.U., <br><br>             Plaintiffs, <br><br>   - against - <br><br> ARGENTINE REPUBLIC AND YPF, S.A., <br><br>             Defendants. | No. 15 Civ. 2739 (LAP) |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., AND ETON PARK FUND, L.P., <br><br>             Plaintiffs, <br><br>   - against - <br><br> ARGENTINE REPUBLIC AND YPF, S.A., <br><br>             Defendants. | No. 16 Civ. 8569 (LAP) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**THE ARGENTINE REPUBLIC'S MOTION TO STAY EXECUTION OF JUDGMENT**
**PENDING APPEAL**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

ARGUMENT ................................................................................................................3

**I.      Applicable Legal Standard**.............................................................................3

**II.     Argentina Is Not Entitled to a Stay Without Posting a Bond or Other Security.** ..........................................................................................................5

A.      Collection of the Judgment Will Be Complex and Time Consuming. ...............5

B.      Argentina Claims It Is Unable to Pay the Judgment.........................................9

C.      Argentina Has Not Shown that Posting Security Would Prejudice Other Creditors.........................................................................................................11

**III.    Argentina is Not Entitled to an Unsecured Stay Under Any Other Standard.**.......................................................................................................14

A.      The *Hilton* Factors Weigh Strongly Against the Motion...................................14

1.      The Republic Cannot Show Strong Likelihood of Success on Appeal.....................................................................................................15

2.      There is No Risk of Irreparable Injury to Argentina Absent a Stay. ........16

3.      Plaintiffs Will Suffer Irreparable Injury if a Stay is Granted.................17

4.      The Public Interest Does Not Support the Motion................................18

B.      International Comity Does Not Favor the Granting of an Unsecured Stay. ......18

**IV.     The Court Should Deny Argentina's Alternative Request for a Temporary Stay.** ........................................................................................20

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*605 Fifth Prop. Owner, LLC v. Abasic, S.A.*,
    No. 21-cv-811 (DLC), 2022 WL 1422821 (S.D.N.Y. May 5, 2022) .......................................7

*Arctic Ocean Int'l Ltd. v. High Seas Shipping Ltd.*,
    No. 06 Civ. 1056 (LAP), 2009 WL 5103283 (S.D.N.Y. Dec. 28, 2009) ...............................21

*Artnet Worldwide Corp., Inc. v. Gruber*,
    No. 21 Civ. 10459 (JHR), 2023 WL 6390167 (S.D.N.Y. Oct. 2, 2023)...................................8

*Bank of Am., N.A. v. New England Quality Serv., Inc.*,
    No. 5:16-cv-83, 2019 WL 10888179 (D. Vt. Oct. 24, 2019)....................................................7

*Butler v. Ross*,
    No. 16-cv-1282 (DLC), 2017 WL 6210843 (S.D.N.Y. Dec. 7, 2017) ...........................4, 5, 10

*Cayuga Indian Nation of N.Y. v. Pataki*,
    188 F. Supp. 2d 223 (N.D.N.Y. 2002)...........................................................................5, 19, 20

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*,
    528 F.Supp.2d 186 (S.D.N.Y. 2007)....................................................................................21

*Conte v. Cnty. of Nassau*,
    No. 06-CV-4746 (JFB)(ARL), 2017 WL 9478355 (E.D.N.Y. May 4, 2017) ........................10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    No. 16-cv-00661 (RC), Order, ECF 44 (D.D.C. Aug. 8, 2017)..............................................20

*de la Fuente v. DCI Telecomm., Inc.*,
    269 F. Supp. 2d 237 (S.D.N.Y. 2003).....................................................................................3

*Doraleh Container Terminal SA v. Republic of Djibouti*,
    No. 20-02571 (BAH), Memorandum Opinion & Order (D.D.C. Apr. 24, 2023)..........7, 11, 19

*Easter House v. State of Ill. Dep't of Children & Family Servs.*,
    645 F. Supp. 107 (N.D. Ill. 1986) .........................................................................................20

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
    No. 12-CV-2937 (LAP), 2016 WL 908633 (S.D.N.Y. Mar. 2, 2016)......................................5

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007)....................................................................................................8

*EM Ltd. v. Republic of Argentina*,
 720 F. Supp. 2d 273 (S.D.N.Y. 2010), *vacated on other grounds*, *NML Cap.,
 Ltd. v. Banco Central de la. Republica Argentina*, 652 F.3d 172 (2d Cir. 2011).....................8

*EM Ltd. v. Republic of Argentina*,
 865 F. Supp. 2d 415 (S.D.N.Y. 2012).......................................................................................8

*EM Ltd. v. Republic of Argentina*,
 No. 03 Civ. 2507 (TPG), 2003 WL 22454934 (S.D.N.Y. Oct. 27, 2003) ...............................9

*EMA Fin., LLC v. Joey N.Y. Inc.*,
 No. 17-CV-9706 (VSB), 2022 WL 2399754 (S.D.N.Y. July 1, 2022)....................................4

*Federal Republic of Germany v. Philipp*,
 141 S. Ct. 703 (2021)............................................................................................................19

*Fry v. Lagerstrom*,
 No. 15 Civ. 5348 (NRB), 2018 WL 4935805 (S.D.N.Y. Oct. 10, 2018) ................................4

*Gates v. Syrian Arab Republic*,
 No. 06-cv-1500 (RMC), 2009 WL 10693489 (D.D.C. Oct. 21, 2009)..................................20

*Gilead Comm. Services, Inc. v. Town of Cromwell*,
 604 F.Supp. 3d 1 (D. Conn. 2022).......................................................................................10

*Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*,
 No. 15-7158, Order (D.C. Cir. May 4, 2016) .......................................................................19

*Grant v. Lockett*,
 No. 5:15-CV-0445 (DNH/TWD), 2019 WL 1872967 (N.D.N.Y. Apr. 26,
 2019) ......................................................................................................................................7

*Hilton v. Braunskill*,
 481 U.S. 770 (1987)..........................................................................................4, 5, 14, 17

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
 327 F. Supp. 3d 606 (S.D.N.Y. 2018)......................................................................... *passim*

*Me. Comm. Health Options v. U.S.*,
 140 S. Ct. 1308 (2019)............................................................................................................6

*Miller v. City of Ithaca*,
 No. 3:10-cv-597 (GLS/DEP), 2017 WL 61947 (N.D.N.Y. Jan 5, 2017) ................................7

*Moore v. Navillus Tile, Inc.*,
 No. 14 CIV. 8326, 2017 WL 4326537 (S.D.N.Y. Sept. 28, 2017)................................ *passim*

iv

*Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*,
    702 F. Supp. 60 (S.D.N.Y. 1988).............................................................................5, 6, 15

*In re Nassau Cnty. Strip Search Cases*,
    783 F.3d 414 (2d Cir. 2015)....................................................................................... *passim*

*NML Cap., Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012).............................................................................................8, 13

*NML Cap., Ltd. v. Republic of Argentina*,
    No. 08-cv-6978 (TPG), 2016 WL 836773 (S.D.N.Y. Mar. 2, 2016), *aff'd sub*
    *nom. Aurelius Cap. Master Ltd. v. Republic of Argentina*, 644 F. App'x 98 (2d
    Cir. 2016) ...........................................................................................................................9

*NML Cap., Ltd. v. Republic of Argentina*,
    No. 05 Civ. 2434 (TPG), 2006 WL 1294853 (S.D.N.Y. May 10, 2006)..................................9

*Ortiz v. Stambach*,
    No. 1:16-CV-00321 EAW, 2023 WL 3089087 (W.D.N.Y. Apr. 26, 2023)............................7

*Pao Tatneft v. Ukraine*,
    No. 17-CV-582 (CKK), 2021 WL 2209460 (D.D.C. June 1, 2021)......................................20

*Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*,
    895 F.3d 194 (2d Cir. 2018)......................................................................................15, 16

*Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
    No. 19 Civ. 10023 (KPF), 2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020)..............................6

*Preble-Rish Haiti, S.A. v. Republic of Haiti*,
    No. 22-cv-7503, 2023 WL 5803567 (S.D.N.Y. Sept. 7, 2023) ...............................................19

*Rabinowitz v. Kelman*,
    75 F.4th 73 (2d Cir. 2023) .............................................................................................15

*Rivera v. Home Depot U.S.A.Inc.*,
    No. 16-cv-7552 (KBF), 2018 WL 3105069 (S.D.N.Y. June 25, 2018)..........................7, 17

*Seneca Nation of Indians v. State*,
    No. 19-CV-735S, 2019 WL 6768779 (W.D.N.Y. Dec. 12, 2019) ...........................................7

*Sire Spirits, LLC v. Green*,
    No. 21 Civ. 7343 (JPC), 2023 WL 1516574 (S.D.N.Y. Feb. 3, 2023).......................4, 10, 12

*Texaco Inc. v. Penzoil Co.*,
    784 F.2d 1133 (2d Cir. 1986), *rev'd*, 481 U.S. 1 (1987) ........................................................12

v

*Titan Consortium 1, LLC v. The Argentine Republic*,
    No. 1:21-cv-02250 (JMC), 2022 WL 1617209 (D.D.C. Feb. 4, 2022) ....................................9

*Uniformed Fire Officers Assoc. v. de Blasio*,
    973 F.3d 41 (2d Cir. 2020)....................................................................................................15, 17

**Other Authorities**

Fed. R. Civ. 62 ...............................................................................................................................3

Fed. R. Civ. 62(b) .......................................................................................................................3, 6

Fed. R. Civ. 62(c) ...........................................................................................................................4

Fed. R. Civ. 62(d) ......................................................................................................................3, 4

Fed. R. Civ. 62(e)..........................................................................................................................19

## **INTRODUCTION**

The Republic presents a deeply distorted picture of the issue before this Court – namely, whether the Republic has met its heavy burden to establish entitlement to the extraordinary relief of an unsecured stay pending appeal of a multi-billion-dollar judgment, both generally and particularly in light of its own sordid history of trying to evade its payment obligations. In the Republic's telling, denial of an unsecured stay will cause its assets around the globe to leap suddenly into Plaintiffs' hands and then dissipate before the Second Circuit decides its appeal, while Plaintiffs would suffer no harm by waiting a year or more to begin the arduous process of collecting the Judgment they have been pursuing for over a decade. Nothing could be further from reality. The Republic has spent many years designing its affairs to place its assets out of creditors' reach, and its Motion makes clear that collection of this Judgment will require painstaking effort to discover executable assets, obtain recognition of the Judgment in the jurisdictions where such assets are located, and then litigate the Republic's objections to execution on those assets – all of which the Republic will vigorously resist. In other words, the risk that Plaintiffs will be able to seize and dissipate assets during the appeal is nil.

In truth, the Republic's stated concerns are illusory; its real objective is to frustrate and delay collection of the Judgment at every turn, by any means possible. Indeed, Plaintiffs have offered not to seize or attach any assets in exchange for the Republic's agreement to permit procedural enforcement steps to move forward unobstructed during the appeal, which the Republic has rejected. The Republic knows full well that its stated concerns about asset dissipation are manufactured, and its real objective is delay.

Furthermore, Plaintiffs will suffer substantial prejudice from an unsecured stay. The sheer size of the Judgment means that Plaintiffs have a very long road ahead to identify and attach

executable assets sufficient to satisfy their claim. Additionally, the Judgment's accrual of post-judgment interest at 5.42% will not fully compensate Plaintiffs for delayed collection because it is a small fraction of the actual market cost of serving as a forced, unsecured creditor of Argentina.

The Republic realizes that its position is meritless under the Second Circuit law governing its Motion – the five-factor test set out in *In re Nassau County Strip Search Cases*, 783 F.3d 414 (2d Cir. 2015) – so it steadfastly resists applying it and, instead, invokes other standards not controlling here. Although the Republic begrudgingly acknowledges *Nassau*, it ignores every aspect of it that protects Plaintiffs and fashions from whole cloth the impression that unsecured stays are the norm. The Second Circuit made clear in *Nassau*, however, that some form of adequate assurance that a money judgment will be paid after appeal is a mandatory prerequisite for a stay. While a solvent debtor can sometimes meet this requirement without a bond and instead based on a credible undertaking that it will pay the judgment voluntarily, the Republic's lengthy history as a recalcitrant debtor and its own Motion demonstrate that the Republic cannot possibly secure the Judgment based on its word alone.

One thing is clear: the Republic will not post a bond or other assets regardless of what the Court decides. Therefore, the question before this Court is whether the Republic is entitled to a stay notwithstanding its failure to provide any credible assurance that the Judgment will be paid if its appeal is denied, considering the long road ahead for Plaintiffs to collect the Judgment involuntarily. The clear answer is no. Granting the Republic's Motion not only would contravene controlling law, but also would unjustly privilege the Republic's manufactured concerns over the Plaintiffs' legitimate interest in beginning the arduous process of recognition and enforcement of the Judgment.

## ARGUMENT

### I.    Applicable Legal Standard

Rule 62(b)[1] provides that "after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). "[T]he purpose of [FRCP 62(b)] is to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed." *Nassau Cnty.*, 783 F.3d at 417–418 (internal citations omitted). "Rule 62(d) is not couched in discretionary language." *Moore v. Navillus Tile, Inc.*, No. 14 CIV. 8326, 2017 WL 4326537, at *1 (S.D.N.Y. Sept. 28, 2017). Rather, a district court has discretion to waive the bond requirement under Rule 62(b), but only so long as "the appellant provides an acceptable alternative means of securing the judgment." *Nassau Cnty.,* 783 F.3d at 417–418 (internal citations omitted); *see also Moore*, *2017 WL 4326537* at *6 (denying stay where defendant offered nothing to "ameliorate the plaintiffs' legitimate fears" and court had no way "of fashioning an appropriate alternative form of security"). The Republic bears "the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a [full] supersedeas bond." *de la Fuente v. DCI Telecomm., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003).

Thus, credible assurance that the Republic will pay the Judgment if it loses on appeal is a mandatory prerequisite to issuance of a stay. While *Nassau* further held that a solvent debtor's clear ability and intent to pay can satisfy this requirement in some limited circumstances, it identified five non-exclusive factors that this Court should consider in making that determination:

> (1) the complexity of the collection process; (2) the amount of time
> required to obtain a judgment after it is affirmed on appeal; (3) the

---

[1]    Rule 62 was reorganized in 2018, moving former Rule 62(d) to current Rule 62(b) and adding the words "other security" (which "makes explicit the opportunity to post security in a form other than a bond"). *See* Fed. R. Civ. P. 62, Advisory Committee Notes to 2018 Amendments. Thus, case law refers variously to Rule 62(b) and Rule 62(d), depending on the date of the decision.

> degree of confidence that the district court has in the availability of
> funds to pay the judgment; (4) whether the defendant's ability to pay
> the judgment is so plain that the cost of a bond would be a waste of
> money; and (5) whether the defendant is in such a precarious
> financial situation that the requirement to post a bond would place
> other creditors of the defendant in an insecure position.

783 F.3d at 417–418. Following *Nassau*, this Court has routinely applied these factors when deciding whether to waive the bond requirement. *See, e.g.*, *Sire Spirits, LLC v. Green*, No. 21 Civ. 7343 (JPC), 2023 WL 1516574 (S.D.N.Y. Feb. 3, 2023); *EMA Fin., LLC v. Joey N.Y. Inc.*, No. 17-CV-9706 (VSB), 2022 WL 2399754 (S.D.N.Y. July 1, 2022); *Fry v. Lagerstrom*, No. 15 Civ. 5348 (NRB), 2018 WL 4935805 (S.D.N.Y. Oct. 10, 2018).

No doubt because the *Nassau* factors weigh decisively against it, the Republic invokes stay factors derived from *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), that traditionally apply to non-monetary judgments. The Second Circuit, however, held explicitly that the *Nassau* factors, "in contrast to the traditional stay factors, more directly address the primary purpose of Rule 62(d): to ensure recovery for a party who ultimately prevails on appeal, and to protect the judgment debtor from the risk of losing the money if the decision is reversed." *Nassau Cnty.*, 783 F.3d at 418. Subsequent precedent makes it clear that the *Hilton* factors apply "only when the judgment sought to be stayed is for injunctive or equitable relief." *Moore*, 2017 WL 4326537 at *4 (observing that *Hilton* itself involved non-monetary *habeas* relief that the Supreme Court explicitly analogized to Rule 62(c) rather than Rule 62(d)); *Butler v. Ross*, No. 16-cv-1282 (DLC), 2017 WL 6210843, at *2 (S.D.N.Y. Dec. 7, 2017) ("[A] motion for a stay of money judgment is assessed under the announced test for Rule 62(d) [rather than] the test used when assessing a Rule 62(c) motion."); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018)

(following *Moore* and *Butler*).[2] For completeness, Plaintiffs demonstrate below that the Motion also fails even under the *Hilton* factors, but it is clear that the *Nassau* test governs the Republic's Motion in this Circuit.

## II.    Argentina Is Not Entitled to a Stay Without Posting a Bond or Other Security.

The *Nassau* factors weigh decisively against the Motion and thus the Republic's word alone cannot provide acceptable assurance that the Judgment will be paid if it loses its appeal – and the Republic in any event has not even given its unsecured word that it will pay the Judgment.

### A.    Collection of the Judgment Will Be Complex and Time Consuming.

The first *Nassau* factor weighs against an unsecured stay when collection of the judgment will be complex and time-consuming. *See, e.g., Moore*, 2017 WL 4326537 at *2 (denying unsecured stay in part because debtor's "net worth is tied up in hard assets [such that] collection of this judgment would be complicated and time consuming"). Here (1) the Republic has no intention of paying the Judgment voluntarily, (2) the Republic's status as a foreign sovereign will complicate collection, and (3) the Republic's history and the Motion itself confirm that collection will be a slow and arduous process.

***First***, the Republic has no intention of paying the Judgment voluntarily if it loses on appeal, unlike other cases in which debtors have persuaded courts to waive the bond requirement based on their word alone. *See, e.g., Nassau Cnty.*, 783 F.3d at 418 (appellant county passed an ordinance appropriating funds to pay the judgment); *Cayuga Indian Nation of N.Y. v. Pataki*, 188 F. Supp. 2d 223, 254 (N.D.N.Y. 2002) (defendant provided "assurances through its Director of the Division

---

[2]    This Court applied *Hilton* in *E.J. Brooks Co. v. Cambridge Sec. Seals*, No. 12-CV-2937 (LAP), 2016 WL 908633, *1 (S.D.N.Y. Mar. 2, 2016), but neither the opinion nor the party briefing discussed *Nassau* at all, and thus the Court did not consider how *Nassau* affects continued application of the *Hilton* test. *See Moore*, 2017 WL 4326537 at *4 (declining to follow *E.J. Brooks* because the Court "believe[s] this case to have relied on the wrong test in reaching its result").

of Budget that 'it will satisfy any judgment determined after exhausting appeals'"). In this case, the Republic has not even expressed a generalized commitment that it will pay the Judgment if it loses its appeal. To the contrary, when Plaintiffs' counsel invited the Republic during closing arguments to make a "precommitment that you're actually going to pay this judgment when it's entered and affirmed on appeal," the Republic's counsel offered no such assurance. Mastro Decl., Ex. A at 489–90. In any event, no such commitment would be credible or remotely sufficient to provide "acceptable" assurance of payment in light of the Republic's long history of intransigence.

The Republic's contention that Argentine law and economic conditions preclude it from securing the Judgment until it is non-appealable is also untrue. The Republic has assets worth billions of dollars – including its YPF shares – that it could post as security during the appeal. Calomiris Decl. at ¶¶ 21–35. In addition, contrary to Argentina's self-serving assertions, there are no legal impediments to securing the Judgment.[3] Bianchi Decl. at ¶¶ 3–20.

In any event, the reason why the Republic will not provide security is irrelevant. Regardless of whether it cannot or simply will not provide security, the fact remains that Plaintiffs must resort to complex and time-consuming involuntary enforcement processes to collect the Judgment, which weighs strongly against an unsecured stay under the *Nassau* factors.

***Second***, the fact that Argentina is a foreign sovereign weighs against an unsecured stay. The Republic has not identified any case applying the *Nassau* factors that waived the requirement to post a bond or other assets in favor of a foreign entity – much less a foreign sovereign – whose

---

[3]     The idea that a government could avoid its obligations by simply failing to appropriate funds to pay them is, of course, absurd on its face. *C.f. Me. Comm. Health Options v. U.S.*, 140 S. Ct. 1308, 1331 (2019) (recognizing "a principle as old as the Nation itself—the Government should honor its obligations"). That  principle should apply as well to other nations who make promises to investors in the United States.

assets are located primarily outside of the United States.[4] On the contrary, in every such case that Plaintiffs have identified, the judgment debtor was a domestic entity with assets in the United States.[5] Because the Republic's executable assets are located outside of the United States (due in part to its multi-decade effort to resist payment of U.S. judgments), this factor too weighs against the Motion. *See 605 Fifth Prop. Owner, LLC v. Abasic*, *S.A.*, No. 21-cv-811 (DLC), 2022 WL 1422821 (S.D.N.Y. May 5, 2022) (declining to waive bond in part because debtor was "located outside of the United States, and has resisted enforcement of its Guarantee at every stage").

In addition, the Republic enjoys protections as a sovereign that make involuntary collection more difficult. Many of the Republic's assets outside of Argentina are immune from attachment under the FSIA and similar immunity doctrines, which weighs against an unsecured stay. *See Doraleh Container Terminal SA v. Republic of Djibouti*, No. 20-02571 (BAH), Memorandum Opinion & Order at 5 (D.D.C. Apr. 24, 2023) (finding that debtor's sovereign immunity weighed against unbonded stay because assets likely would be sheltered from execution). Additionally, Argentina has opted out of expedited service under the Hague Service Convention,[6] so the mere

---

[4]    The Republic's reliance on *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 19 Civ. 10023 (KPF), 2020 WL 7711522 at *2 (S.D.N.Y. Dec. 29, 2020) is misplaced because that judgment was secured by a pledge of shares that "suffices to satisfy the 'other security' requirement of Rule 62(b)." Also, *Morgan Guar. Tr. Co. v. Republic of Palau*, 702 F. Supp. 60 (S.D.N.Y. 1988) is distinguishable because that case predated and did not apply the *Nassau* factors, and in any event, the Court conditioned a stay on Palau's "posting of a partial supersedeas bond in the amount of all the interest payments due since default." *Id.* at 65.

[5]    *See In re Nassau Cnty.*, 783 F.3d at 416; *Ortiz v. Stambach*, No. 1:16-CV-00321 EAW, 2023 WL 3089087 (W.D.N.Y. Apr. 26, 2023); *Seneca Nation of Indians v. State of N.Y.*, 19-CV-735S, 2019 WL 6768779 (W.D.N.Y. Dec. 12, 2019); *Bank of Am., N.A. v. New England Quality Serv., Inc.*, No. 5:16-cv-83, 2019 WL 10888179 (D. Vt. Oct. 24, 2019); *Grant v. Lockett*, No. 5:15-CV-0445 (DNH/TWD), 2019 WL 1872967 (N.D.N.Y. Apr. 26, 2019); *Rivera v. Home Depot U.S.A., Inc.*, No. 16-cv-7552 (KBF), 2018 WL 3105069 (S.D.N.Y. June 25, 2018); *Miller v. City of Ithaca*, No. 3:10-cv-597 (GLS/DEP), 2017 WL 61947 (N.D.N.Y. Jan 5, 2017). Notably, in most of these cases, the judgment debtor demonstrated its ability and intent to pay by segregating specific assets for purposes of satisfying the judgment.

[6]    *See* the website of the Hague Conference on Private International Law.

commencement of recognition and attachment actions in other courts must be served through its Central Authority (which can take from 6 months to well over a year). *See, e.g., Artnet Worldwide Corp., Inc. v. Gruber*, 21 Civ. 10459 (JHR), 2023 WL 6390167 (S.D.N.Y. Oct. 2, 2023), at *2 (noting that service through Argentina's Central Authority was incomplete after 18 months despite plaintiff making "every reasonable effort"). As discussed below, the Republic's flat refusal of a compromise that would ensure no assets are attached or seized during the appeal in exchange for accepting service and other procedural concessions is telling. Mastro Decl., Exs. B–C.

**Third**, Argentina's long history of resisting payment of U.S. court judgments confirms that the "collection of this judgment [will] be complicated and time consuming." *Moore,* 2017 WL 4326537, at *2. *See, e.g.*, *NML Cap., Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 467 n.2 (2d Cir. 2007) ("Argentina has made many contributions to the law of foreign insolvency through its numerous defaults on its sovereign obligations, as well as through what we might term a diplomacy of default."); *EM Ltd. v. Republic of Argentina*, 865 F. Supp. 2d 415, 417 (S.D.N.Y. 2012) (noting Argentina's "continued intransigence in failing to honor its lawful judgment debts"); *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 304 (S.D.N.Y. 2010), *vacated on other grounds*, *NML Cap., Ltd. v. Banco Central de la. Republica Argentina*, 652 F.3d 172 (2d Cir. 2011) ("What is going on between the Republic of Argentina and the federal court system is an exercise of sheer willful defiance of the obligations of the Republic to honor the judgments of a federal court.").

While Argentina alleged in its letter submission that it "has paid prior judgments as quickly as possible" (ECF 501 at 3), that assertion is absent from its Motion, presumably because it is demonstrably false. For example, while EM Ltd. and NML Capital Ltd. obtained judgments against the Republic in 2003 and 2006, respectively, those cases were not settled until 2016—after

10-plus years of enforcement efforts. *Compare EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507 (TPG), 2003 WL 22454934 (S.D.N.Y. Oct. 27, 2003) (amended final judgment) *and NML Cap., Ltd. v. Republic of Argentina*, No. 05 Civ. 2434 (TPG), 2006 WL 1294853 (S.D.N.Y. May 10, 2006) (summary judgment) *with NML v. Republic of Argentina*, No. 08-cv-6978, 2016 WL 836773, at *4-*6 (S.D.N.Y. Mar. 2, 2016) (vacatur of injunctions pending settlement), *aff'd sub nom. Aurelius Cap. Master Ltd. v. Republic of Argentina*, 644 F. App'x 98 (2d Cir. 2016). Even today, a much smaller final arbitral award rendered in 2018 remains entirely unpaid more than five years later while Argentina continues to resist enforcement. *See* Reply Memorandum of Law of the Republic of Argentina in Further Support of Its Motion to Dismiss, *Titan Consortium 1, LLC v. The Argentine Republic*, No. 1:21-cv-02250 (JMC), 2022 WL 1617209 (D.D.C. Feb. 4, 2022).

Indeed, the Motion acknowledges that such collection efforts typically entail "lengthy legal proceedings that frequently pose significant and intractable issues." Mot. at 17-18. Additionally, the Motion foreshadows how the Republic plans to resist asset discovery and collection, feigning shock at the scope of the targeted document requests that Plaintiffs have served in order to identify potentially executable assets sufficient to satisfy this large Judgment. Mot. at 16. The Republic's resistance to asset discovery and attachment efforts will make involuntary collection of the Judgment more complex and time-consuming, and therefore weighs against an unsecured stay.

B.  Argentina Claims It Is Unable to Pay the Judgment.

The Republic insists that it is unable to pay or secure the Judgment. Mot. at 5, 9-10. Although Plaintiffs do not credit the Republic's claim, its representation weighs decisively against the Motion because the pertinent question is whether "the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money." *Nassau Cnty.*, 783 F.3d at 417, *quoting Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986); *see also Moore,* 2017 WL 4326537 at *2 (holding that debtor's inability to pay was "determinative

as to factors two, three, and four" of the *Nassau* test); *Sire Spirits*, 2023 WL 1516574, at *2 ("an inability to pay is determinative of at least these factors, and often to the entire inquiry"); *John Wiley & Sons, Inc.*, 327 F. Supp. 3d at 650 (denying unsecured stay based on debtor's "inability to pay the judgment" because bond requirement "will not be waived solely on the basis that it will pose a severe financial hardship on the appellant"), *quoting* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2905; *Butler*, 2017 WL 6210843 at *3 (holding that debtor's "impecuniosity" did not support unsecured stay because "none of the listed *Nassau County* factors take into account the consideration of the debtor's financial insecurity as reason alone to waive the bond").

Having insisted that it cannot pay the Judgment, the Republic offers only a vague and unsupported suggestion that it "is actively working to improve its credit situation, including via negotiations with the IMF, so that it may be in a better position to pay creditors in the future." Mot. at 17. The Republic's aspirations, however, are insufficient to provide Plaintiffs with any actual assurance that the Judgment will be paid promptly following appeal, particularly when the Republic provides no commitment (much less a credible one) that it actually would use any such credit to pay the Judgment voluntarily and promptly.[7]

---

[7]    The *Nassau* factors contemplate waiving bond only upon adequate assurance that the Judgment will be paid "promptly" following appeal, not at some unspecified time in the future when Argentina's economy may improve. *See Conte v. Cnty. of Nassau*, No. 06-CV-4746 (JFB)(ARL), 2017 WL 9478355, *4 (E.D.N.Y. May 4, 2017) (declining to waive bond notwithstanding defendant's showing that "funds are available for the purpose of satisfying any money judgments," because defendant presented no evidence "that specific funds have been encumbered to cover the current judgment" such that defendants would be able to pay "'without substantial delay or other difficulty'" following appeal) (*quoting Nassau Cnty.*, 783 F.3d at 418); *see also Gilead Comm. Services, Inc. v. Town of Cromwell*, 604 F.Supp. 3d 1, 34 (D. Conn. 2022) (conditioning stay on defendant town showing that "funds have been allocated or unencumbered specifically to ensure that the judgment will be paid within thirty days of the Second Circuit's decision").

Finally, the Republic's argument that payment is secure because it is a sovereign nation that "is not going anywhere," Mot. at 21, fails because Argentina's mere existence is not the issue. If it were, no sovereign nation ever would be required to post a bond, but the high bar to obtain "an extraordinary departure" from the normal requirement to provide security in exchange for a stay "applies to foreign sovereigns, just the same as to any party seeking an unbonded stay." *Doraleh*, Memorandum Opinion & Order at 2. Responding specifically to the argument that a sovereign nation should be presumed creditworthy, the *Doraleh* court correctly observed:

> Finally, while as a nation state Djibouti's net worth likely vastly exceeds the award, this status entitles the country to sovereign immunity, which is likely to be invoked to shelter assets from execution. That execution immunity in effect limits the relevant ratio of judgment to net worth. Further, as petitioner points out, an unbonded stay will provide Djibouti a window of time to "shift whatever non-immune assets it has beyond [petitioner]'s reach while the appeal is pending." While making much of the general fact of its solvency, Djibouti offers no assurances that the country will "waive[] its immunity from attachment in aid of execution or from execution," 28 U.S.C. § 1610(a)(1), so that any particular assets or amount of money will actually be subject to execution when the time comes. Djibouti therefore has not met its burden of establishing that an unbonded stay will not "unduly endanger" petitioner's interest in its "ultimate recovery," requiring the denial of its motion.

*Id*. at 5 (internal citations omitted).[8]

> C.     Argentina Has Not Shown that Posting Security Would Prejudice Other Creditors.

The Republic argues that the fifth *Nassau* factor supports its Motion because failure to issue a stay would "jump-start global collection proceedings by Plaintiffs and thereby unnecessarily place the Republic's other creditors 'in an insecure position.'" Mot. at 18. The fifth *Nassau* factor, however, does not inquire whether the judgment itself or efforts to enforce it could

---

[8]     *Doraleh* considered "(1) the damage award amount, (2) the net worth of the moving party in relation to the damage award, and (3) the residency status of the moving party," *id*. at 4, which (like *Nassau*) balances complexity of collection with the debtor's ability to pay.

prejudice other creditors; it inquires "whether the defendant is in such a precarious financial situation that the *requirement to post a bond* would place other creditors of the defendant in an insecure position." *Nassau Cnty.*, 783 F.3d at 417-18 (emphasis added); *see also John Wiley & Sons, Inc.*, 327 F. Supp. 3d at 650 (holding that fifth *Nassau* factor "requires the debtor to show that their inability to pay other creditors would stem from the bond itself, not merely from the judgment."); *Sire Spirits,* 2023 WL 1516574 at \*2 (finding that fifth *Nassau* factor weighed against bond waiver where debtor "presented no evidence or argument that posting a bond would make him unable to pay other creditors, other than his claims that he generally has no money or assets").[9] The Republic's prejudice argument thus is a red herring because it does not even attempt to show how posting a bond or other assets – which Argentina does not intend to do even if it could – would prevent payment to other specific creditors, and instead "moves the goalpost" by arguing that Plaintiffs' *efforts to enforce the judgment* could have an adverse effect on its other creditors.

Moreover, the Republic's argument that failure to issue a stay would enable Plaintiffs to begin collection "prematurely" also fails on its own terms. Mot. at 15; *see also* ECF 503 at 3 (arguing that denial of stay would allow Plaintiffs to "prematurely cut the line"). The Republic nowhere explains why Plaintiffs should be considered in "line" behind its other creditors or why that is relevant to this Motion. The priority of claims arises from insolvency law that does not apply to sovereigns. *See NML Cap., Ltd.*, 699 F.3d at 259 ("When sovereigns default they do not enter bankruptcy proceedings where the legal rank of debt determines the order in which creditors

---

[9]    The Republic's reliance on *Texaco Inc. v. Penzoil Co*., 784 F.2d 1133, 1155 (2d Cir. 1986), *rev'd*, 481 U.S. 1 (1987), for the argument that bond should be waived when the debtor "could not 'possibly meet' the bond requirement without entering into bankruptcy proceedings," Mot. at 6, is misplaced. "[T]he Supreme Court's reversal of *Texaco* undermines '[a]ny 'precedential value' of that case and 'does not justify overlooking [the more recent holding in] *Nassau County*.'" *John Wiley & Sons, Inc*., 327 F. Supp. 3d at 649 (*quoting Moore*, 2017 WL 4326537 at \*5).

will be paid. Instead, sovereigns can choose for themselves the order in which creditors will be paid."). Consequently, as the Republic acknowledges, Plaintiffs are in a *pool* with its other unpaid creditors. Mot. at 19. Moreover, if other creditors have legitimate claims to legal priority over Plaintiffs' Judgment, they are free to assert them if and when Plaintiffs ever get to the point of attaching assets. Indeed, if the Republic's argument were valid, then enforcement of money judgments would be stayed on appeal automatically in every case. That is obviously not the law.

Stripped of these red herrings, the only potential prejudice to other creditors that the Republic articulates is a risk that Plaintiffs will seize and dissipate assets that would then be unavailable to pay other creditors if it wins on appeal. That risk, however, is grossly exaggerated because the process of discovering executable assets, obtaining recognition of the Judgment where those assets are located, and litigating the Republic's objections to attachment clearly will take far longer than the appeal.[10] Moreover, this Court (and any other court overseeing asset attachment) has many tools to manage the risk of dissipation (such as requiring Plaintiffs to deposit any recovered assets with the Court or another intermediary until the appeal is resolved).

Indeed, it is clear that the Republic's concerns about potential dissipation of assets are exaggerated and pretextual. Plaintiffs have offered to refrain from attaching or seizing the Republic's assets pending appeal in exchange for the Republic's agreement to respond to discovery (without waiving objections), accept service of recognition actions (rather than insisting on laborious Hague Convention service), and consent to recognition in other jurisdictions (instead of forcing formal proceedings with an inevitable result). Mastro Decl., Ex. B. The Republic rejected

---

[10]     According to data on the <u>website of the U.S. Courts</u>, the median time in the Second Circuit from filing a notice of appeal until disposition in 13.6 months.

that offer unconditionally, confirming that its stated concerns about asset dissipation are a fig leaf for its true purpose of delaying and frustrating enforcement of the Judgment. Mastro Decl., Ex. C.

Finally, even if Argentina could show that posting a bond would prejudice its other creditors, that would *not* be sufficient to tip the balance in Argentina's favor. "[E]ven if the fifth factor favors a stay without a bond, it does not outweigh the other factors." *See John Wiley & Sons Inc.*, 327 F. Supp. at 649; *see also Moore*, 2017 WL 4326537 at * 3 (considering the fifth *Nassau* factor to be "a weak reed on which to premise an argument that the bond requirement should be waived—especially where, as here, the movant wants it waived entirely and unconditionally"). In this case, the first four *Nassau* factors weigh decisively against the Motion, and the negligible residual risk to the Republic's other creditors cannot tip that balance in its favor.

## III. Argentina is Not Entitled to an Unsecured Stay Under Any Other Standard.

Because the *Nassau* factors defeat its position, the Republic largely ignores them and relies instead on the *Hilton* factors and vague principles of international comity. While the *Hilton* factors do not apply here as discussed above, they also weigh strongly against the Motion in any event because the prejudice to Plaintiffs from delay outweighs the speculative alleged injury to the Republic, its other creditors, and the public. The Republic's international comity arguments also fail.

### A. The *Hilton* Factors Weigh Strongly Against the Motion.

The *Hilton* standard considers "the applicant's strong showing that he is likely to succeed on the merits, irreparable injury to the applicant in the absence of a stay, substantial injury to the nonmoving party if a stay is issued, and the public interest." *Uniformed Fire Officers Assoc. v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)) (internal quotation marks omitted). "The first two factors are the most critical" and the movant bears the burden of proof. *Id.* (quoting *Nken*, 556 U.S. at 433–434).

1.     The Republic Cannot Show Strong Likelihood of Success on Appeal.

The Republic once again invokes an incorrect standard, arguing that it has a "substantial case on the merits" of its appeal. Mot. at 19. The Republic, however, must make a "strong showing that [it] is likely to succeed on the merits . . ." *Uniformed Fire Officers Assoc.*, 973 F.3d at 48 (quoting *Nken*, 556 U.S. at 434). A "substantial case" is a more lenient standard that *only* should be applied if *every other factor* favors granting a stay. *See Morgan Guar. Tr. Co.*, 702 F. Supp. at 65. That is not the case here, but the Republic's argument also fails under either standard.

The Republic first argues that the Court decided the dispute over its objections on "*forum non conveniens* and international comity grounds." Mot. at 19. Decisions on *forum non conveniens*, however, are reviewed under a high abuse of discretion standard, *see Rabinowitz v. Kelman*, 75 F.4th 73, 81-82 (2d Cir. 2023), and this Court twice rejected the Republic's *forum non conveniens* arguments in thoroughly reasoned decisions. *See* ECF Nos. 63 and 161. Similarly, the Second Circuit was "not persuaded" by the Republic's arguments that its expropriation actions were entitled to protection under the FSIA, so it does not stand to reason that its vague comity arguments will be any more persuasive. *Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 206 (2d Cir. 2018).

The Republic also argues that the Court resolved questions of Argentine law over the Republic's own view, Mot. at 15, but the Court afforded Argentina all the deference it was due. "A federal court should accord respectful consideration to a foreign government's submission, but is not bound to accord conclusive effect to the foreign government's statements." *Petersen*, 895 F.3d at 208 (quoting *Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1869, 201 L. Ed. 2d 225 (2018)). The Court's summary judgment decision gave "respectful consideration" to the Republic's views on Argentine law and assigned those views "the appropriate weight" based on the circumstances. ECF No. 437 at 17, n.5.

Moreover, the Second Circuit already has considered many of the underpinnings of this Court's summary judgment decision, again counseling that success on appeal is unlikely. These issues include (without limitation) the Second Circuit's conclusions that "under the bylaws, Argentina's expropriation triggered an obligation to make a tender offer for the remainder of YPF's outstanding shares," "Petersen's lawsuit is 'based on' Argentina's breach of a commercial obligation," and "[w]hen Argentina asserted control over Repsol's 51% stake in YPF via expropriation, it incurred a separate commercial obligation under the bylaws to make a tender offer for the remainder of YPF's outstanding shares." *Petersen*, 895 F.3d at 206-09.

The Republic further argues that it is likely to succeed on appeal because this is the only judgment "ever granted under Argentina law in a shareholder-against-shareholder action seeking damages for breach of a corporate bylaws provision." Mot. at 20. Even if this were a case of first impression, that would merely underscore how extraordinary Argentina's conduct in this case truly was. But in reality, this is a straightforward breach of contract case, and the Court should continue to reject the Republic's efforts to mischaracterize the common commercial obligation (that it authored) to make a tender offer to YPF shareholders as a novel issue never before encountered.

2.    There is No Risk of Irreparable Injury to Argentina Absent a Stay.

The Republic argues that imposing a bond requirement would cause irreparable harm because "a bond—even if possible to secure—would come at the expense of the Argentine populace's needs." Mot. at 15. Once again, the Republic's argument attacks a straw man because the Republic makes clear that it will not post a bond or other assets to secure the Judgment pending appeal. The relevant question under the *Hilton* factors is whether Argentina would suffer irreparable harm from the *failure to issue a stay* as a consequence of its failure to provide security. *Uniformed Fire Officers Assoc.*, 973 F.3d at 48. It plainly would not.

16

The Republic contends that asset dissipation supports its irreparable injury argument, but as discussed above, that risk is entirely speculative and ultimately nil. The process of discovering potentially executable assets, obtaining recognition of the Judgment where those assets are located, and then litigating the Republic's immunity and other objections to execution on those assets will clearly take far longer than the Republic's appeal. Moreover, in the highly unlikely event that Plaintiffs get close to that finish line while the appeal is still pending, this Court (and any court overseeing attachment) can consider and manage the risk of dissipation at that time.

The Republic's only remaining argument of irreparable injury absent a stay is the burden of responding to discovery and recognition proceedings, but that risk exists whenever a money judgment is enforceable during appeal. If the Republic's argument were valid, unsecured stays would be the norm rather than the exception. The Republic cites no authority for the proposition that this "judicial efficiency" concern is sufficient reason by itself to grant an unsecured stay of enforcement of a money judgment during appeal because that obviously is not the law.[11]

3.  <u>Plaintiffs Will Suffer Irreparable Injury if a Stay is Granted.</u>

The Republic's argument that the accrual of post-judgment interest will ameliorate the very real harm to Plaintiffs of delayed collection, Mot. at 21, is wrong for two related reasons. First, Argentina assumes that Plaintiffs ultimately will recover both the principal amount of the Judgment and the full amount of accrued interest, which is far from certain. Second, that uncertainty has a cost, which is reflected in the interest rate that lenders demand to be creditors of Argentina. As Professor Calomiris explains, the 5.42% interest rate in the Judgment is less than

---

[11]     The Motion cites *Rivera* for this argument, Mot. at 15, but that case primarily waived bond because "Plaintiff has extremely high medical expenses, is currently unemployed, and is not a U.S. citizen," whereas "due to the considerable assets of both Home Depot and BHIC, there is virtually no risk that plaintiff would be unable to collect on the judgment if it is ultimately affirmed." *Rivera*, 2018 WL 3105069 at *4-5. In this case, the parties' roles are exactly reversed.

1/3 of the interest rate demanded by Argentina's secured creditors and less than 1/6 of the rate demanded by its unsecured creditors. This gap between the 5.42% interest rate in the Judgment and the true cost of being Argentina's creditor implies a loss ranging from $2.0 billion to $4.7 billion if ultimate collection is delayed by one year. Calomiris Decl, ¶ 36.

Additionally, delaying asset discovery and enforcement efforts during appeal will give Argentina another year (or more) to move assets out of Plaintiff's reach. While Plaintiffs are sanguine about the prospects that the Republic has not largely done so already, the possibility that Argentina will further secret its assets is certainly more significant than the remote possibility that Plaintiffs will attach and then dissipate assets if a stay is not granted.

4.     The Public Interest Does Not Support the Motion.

The Republic's arguments about the public interest mirror its arguments about irreparable injury and fail for the same reasons. There is essentially no risk of dissipation of its assets during the appeal, and the mere cost of responding to discovery and recognition proceedings is both trivial in the context of this Judgment and an insufficient reason to delay commencement of those processes. Everything else that the Republic says about potential harm to its citizens speaks to the consequences of the Judgment itself. Payment of the Judgment will not be painless, but that is the result of the Republic's own breaching conduct (and delay of a reckoning), and is not a reason to infringe Plaintiffs' rights to begin enforcement of the Judgment.

B.     International Comity Does Not Favor the Granting of an Unsecured Stay.

The Republic contends that "principles of international comity weigh strongly in favor of granting a stay without requiring a bond."  Mot. at 6, 15-18. In support, Argentina asserts that the Supreme Court has "cautioned against" a "scenario" in which "[r]equiring a bond would effectively 'embroil' the Republic in 'expensive litigation' proceedings around the world concerning discovery and collection of its assets." *Id.* at 6 (quoting *Federal Republic of Germany*

*v. Philipp*, 141 S. Ct. 703, 714 (2021)). It further asserts that "'[i]n assessing the need for a supersedeas bond' in particular, courts act with 'respect for the dignity and interests' of states and foreign governments." *Id.* at 16 (quoting *Cayuga Indian Nation*, 188 F. Supp. 2d at 255).

The Republic's reliance on *Phillip* is misplaced because that case did not involve any issue of security for a stay on appeal. The Supreme Court's observation that it interprets the FSIA in light of international comity principles "where possible," 141 S. Ct. at 714, is inapposite because the Second Circuit already rejected the Republic's FSIA objections to jurisdiction and it is not possible to interpret FRCP 62 to provide a totally different standard for staying judgments against foreign sovereigns while on appeal. Indeed, FRCP 62(e) explicitly waives the security requirement to stay judgments *against the United States*, but has no equivalent provision for foreign sovereigns.

Indeed, case law establishes that a foreign sovereign must satisfy the same "stringent requirements" for an unbonded stay as any other judgment debtor. *See, e.g.*, *Preble-Rish Haiti, S.A. v. Republic of Haiti*, No. 22-cv-7503, 2023 WL 5803567, at *2 (S.D.N.Y. Sept. 7, 2023) (requiring Haiti to post bond and rejecting international comity argument where Haiti had no FSIA immunity); *see also Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, No. 15-7158, Order at 1 (D.C. Cir. May 4, 2016) (per curiam) (denying unbonded stay because Venezuela "has not satisfied the stringent requirements for a stay pending appeal without posting a supersedeas bond"); *Doraleh* at 4 (standard for unbonded stay "applies to foreign sovereigns, just the same as to any party seeking an unbonded stay"); *Pao Tatneft v. Ukraine*, No. 17-CV-582 (CKK), 2021 WL 2209460, at *3 (D.D.C. June 1, 2021) (same); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 16-cv-00661 (RC), Order, ECF 44 at 2-3 (D.D.C. Aug. 8, 2017) (same).

Each of the cases that Argentina cites in support of its "international comity" argument is inapposite. Two of the cases—*Cayuga Indian Nation* and *Easter House v. State of Ill. Dep't of*

*Children & Family Servs.*—involved domestic sovereigns.  Moreover, in *Cayuga Indian Nation*, New York's budget director submitted a sworn affidavit that the State would pay the judgment if it was not successful on appeal, *see* 188 F. Supp. 2d 223, 255 (N.D.N.Y. 2002), and in *Easter House*, the Illinois legislature devised a procedure for satisfying judgments against the state, and the plaintiff "seriously challenge[d] neither the state's willingness nor its ability to satisfy an adverse judgment," 645 F. Supp. 107, 108 (N.D. Ill. 1986). Additionally, *Gates v. Syrian Arab Republic* squarely undermines the Republic's position because that court <u>did</u> require Syria to post bond. No. 06-cv-1500, 2009 WL 10693488, at *2 (D.D.C. Feb. 6, 2009). Although the court initially granted an unsecured stay to allow Syria to appeal whether it was properly served, that issue was resolved while the appeal was held in abeyance, and the court then required Syria to post a $60 million bond because there was a "reasonable likelihood of Syria's unwillingness to satisfy the judgment in full upon ultimate disposition of the case." *Compare id*. *with Gates v. Syrian Arab Republic*, No. 06-cv-1500 (RMC), 2009 WL 10693489, at *1 (D.D.C. Oct. 21, 2009).

## IV.    The Court Should Deny Argentina's Alternative Request for a Temporary Stay.

For the reasons explained above, the Court also should deny the Republic's request for a temporary 30-day stay to allow it to seek a stay from the Second Circuit. Courts in this circuit sometimes do grant such temporary stays, but typically only when at least one of the broader stay factors weighs in favor of the appellant. *See, e.g., Arctic Ocean Int'l Ltd. v. High Seas Shipping Ltd*., No. 06 Civ. 1056 (LAP), 2009 WL 5103283 (S.D.N.Y. Dec. 28, 2009) (Preska, J.) (granting 10-day temporary stay where harm to non-movant was "unlikely to be substantial"); *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F.Supp.2d 186 (S.D.N.Y. 2007) (granting 5-day temporary stay where there would be no substantial harm to the non-movant). In this case, there is no risk that Plaintiffs will attach assets while the Republic requests a stay from the Second Circuit, whereas Plaintiffs will suffer harm from delaying enforcement efforts with each day that goes by.

Dated: November 3, 2023             Respectfully,

KING & SPALDING LLP

By:            /s/ Randy Mastro
Randy Mastro
Israel Dahan
Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2114
Fax: (212) 556-2222
Email: rmastro@kslaw.com
       idahan@kslaw.com
       lharris@kslaw.com

-and-

Reginald R. Smith
1100 Louisiana Street
Houston, TX 77002
Phone: (713) 751-3200
Fax: (713) 751-3290
Email: rsmith@kslaw.com

CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV*
706 Duke Street
Alexandria, VA 22314
Phone: (202) 742-8900
Fax: (202) 742-8895
Email: paul.clement@clementmurphy.com
       harker.rhodes@clementmurphy.com
       *Supervised by principals of the firm who
       are members of the Virginia bar

KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith

21

1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
Email: mhansen@kellogghansen.com
        dho@kellogghansen.com
        agoldsmith@kellogghansen.com

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*