UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x
PETERSEN ENERGÍA INVERSORA, :
S.A.U. and PETERSEN ENERGÍA, S.A.U., :
:
      Plaintiffs, :
:
      v. : Case No.: 1:15-CV-02739 (LAP)
:
ARGENTINE REPUBLIC and YPF S.A., :
:
      Defendants. :
:
---------------------------------- x

---------------------------------- x
ETON PARK CAPITAL MANAGEMENT, :
L.P., ETON PARK MASTER FUND, LTD., :
and ETON PARK FUND, L.P., :
:
      Plaintiffs, :
:
      v. : Case No.: 1:16-CV-08569 (LAP)
:
ARGENTINE REPUBLIC and YPF S.A., :
:
      Defendants. :
:
---------------------------------- x

**ARGENTINA'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION FOR A STAY OF ENFORCEMENT
OF JUDGMENT PENDING APPEAL WITHOUT BOND**

                                  Robert J. Giuffra, Jr.
                                  Sergio J. Galvis
                                  Amanda F. Davidoff
                                  Thomas C. White
                                  Adam R. Brebner
                                  SULLIVAN & CROMWELL LLP
                                  125 Broad Street
                                  New York, New York  10004-2498
                                  (212) 558-4000

November 7, 2023                            *Counsel for the Argentine Republic*

## TABLE OF CONTENTS

*Page*

**ARGUMENT** ..................................................................................................................................2

    **I.**    **PLAINTIFFS' OPPOSITION CONFIRMS THAT THE COURT SHOULD STAY EXECUTION OF THE $16.1 BILLION JUDGMENT PENDING APPEAL WITHOUT BOND** ..................................... 2

        A.    In Their Opposition, Plaintiffs Offer No Lawful Way for the Republic To Secure This Extraordinary Non-Final Judgment. .......................................................2

        B.    The Court Should Consider *All* Relevant Factors in Assessing This Motion. .................................................................................................................6

        C.    The Relevant Factors Decisively Support a Stay Without Bond. ............................7

    **II.**   **AT A MINIMUM, THE COURT SHOULD GRANT A TEMPORARY STAY** ................................................................................................................ 10

**CONCLUSION** ............................................................................................................................10

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Aurelius Cap. Master Ltd.* v. *Republic of Argentina*,
  644 F. App'x 98 (2d Cir. 2016) ..................................................................................9

*Butler* v. *Ross*,
  2017 WL 6210843 (S.D.N.Y. Dec. 7, 2017) ...........................................................6, 7

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
  No. 16-cv-00661 (RC), Order, ECF 44 (D.D.C. Aug. 8, 2017)..................................7

*Doraleh Container Terminal SA* v. *Republic of Djibouti*,
  No. 20-02571, Mem. Op. & Order (D.D.C. Apr. 24, 2023) .......................................7

*E.J. Brooks Co.* v. *Cambridge Sec. Seals*,
  2016 WL 908633 (S.D.N.Y. Mar. 2, 2016) ................................................................6

*EMA Fin., LLC* v. *Joey N.Y. Inc.*,
  2022 WL 2399754 (S.D.N.Y. July 1, 2022) ...............................................................7

*Frye* v. *Lagerstrom*,
  2018 WL 4935805 (S.D.N.Y. Oct. 10, 2018) .............................................................7

*Gold Rsrv. Inc.* v. *Bolivarian Republic of Venezuela*,
  No. 15-7158, Order (D.C. Cir. May 4, 2016) .............................................................7

*Gold Rsrv. Inc.* v. *Bolivarian Republic of Venezuela*,
  No. 14-2014, Order (D.D.C. Nov. 20, 2015).............................................................8

*John Wiley & Sons, Inc.* v. *Book Dog Books, LLC*,
  327 F. Supp. 3d 606 (S.D.N.Y. 2018).........................................................................7

*JP Morgan Chase Bank, N.A.* v. *Reifler*,
  2014 WL 12648526 (S.D.N.Y. Aug. 25, 2014) ..........................................................6

*Miller* v. *City of Ithaca*,
  2017 WL 61947 (N.D.N.Y. Jan. 5, 2017)...............................................................1, 6

*Moore* v. *Navillus Tile, Inc.*,
  2017 WL 4326537 (S.D.N.Y. Sept. 28, 2017)............................................................7

*Morgan Guar. Tr. Co. of N.Y.* v. *Republic of Palau*,
  702 F. Supp. 60 (S.D.N.Y. 1988).........................................................................8, 10

*In re Nassau County Strip Search Cases*,
    783 F.3d 414 (2d Cir. 2015)..................................................................................1, 6

*Pao Tatneft* v. *Ukraine*,
    2021 WL 2209460 (D.D.C. June 1, 2021)..................................................................7

*Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*,
    895 F.3d 194 (2d Cir. 2018)....................................................................................10

*Preble-Rish Haiti, S.A.* v. *Republic of Haiti*,
    2023 WL 5803567 (S.D.N.Y. Sept. 7, 2023)........................................................7, 10

*River Oaks Marine, Inc.* v. *Town of Grand Island*,
    1992 WL 406813 (W.D.N.Y. Dec. 10, 1992).............................................................4

*Sire Spirits, LLC* v. *Green*,
    2023 WL 1516574 (S.D.N.Y. Feb. 3, 2023)...............................................................7

*Texaco Inc.* v. *Penzoil Co.*,
    784 F.2d 1133 (2d Cir. 1986)....................................................................................6

*Texaco Inc.* v. *Penzoil Co.*,
    481 U.S. 1 (1987).......................................................................................................6

**Rules**

Federal Rule of Civil Procedure 62 ............................................................................6, 7

**Other Authorities**

*Survey on Foreign Recognition of U.S. Money Judgments*, COMMITTEE ON
    FOREIGN AND COMPARATIVE LAW OF THE BAR OF THE CITY OF NEW YORK
    (2001)........................................................................................................................8

Plaintiffs' Opposition confirms why the Court should grant the Republic's requested stay pending appeal. Remarkably, Plaintiffs propose that the Republic should secure the unprecedented $16.1 billion judgment in this case by pledging more than half of the assets of its national pension fund. But this course of action—literally putting at risk the pensions of millions of Argentines—would be legally and politically impossible. Plaintiffs do not dispute that assets seized by their team of 30 recovery specialists will be irreversibly lost to the Republic. Instead, Plaintiffs say that they are unlikely to *succeed* in seizing assets before the appeal concludes, which would be cold comfort if they do seize assets during that period, and the Republic prevails on a material part of its appeal. The Court should exercise its discretion in this extraordinary case to stay enforcement of the judgment pending appeal without bond. *See In re Nassau County Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015).

*First*, the record before the Court makes clear that, as the Republic's Secretary of Treasury and Secretary of Finance confirm, the Republic cannot immediately pay or secure this $16.1 billion non-final judgment. Plaintiffs' U.S. economist's suggestion that the Republic pledge more than half of its national pension fund, or its equity in YPF or state-owned enterprises, ignores that the Republic has no legal right to pledge those assets. (*See infra* at I.A.) Plaintiffs are demonstrably wrong in claiming that the Republic can pay or secure *non-final* judgments with no authorization because the Argentine budget law only addresses *final* judgments.

*Second*, Plaintiffs misstate the governing standard on this motion. *Nassau* identifies "non-exclusive" factors that courts can consider in deciding whether to stay a judgment pending appeal without bond, 783 F.3d at 417–18, but the Second Circuit has not barred consideration of other factors or otherwise limited "the district court's inherent power to issue a stay" without bond, *Miller* v. *City of Ithaca*, 2017 WL 61947, at *4 (N.D.N.Y. Jan. 5, 2017). There

is no precedent for a judgment against a sovereign that represents 20% of its annual budget, much less for a country faced with undeniable economic and environmental crises. The Court should consider all factors that bear on the justice of allowing Plaintiffs to move forward with burdensome discovery and execution proceedings worldwide during the appeal period.

*Third*, Plaintiffs have no response to the international comity concerns the Republic raises, nor do they adequately address the risk of seized assets being dissipated—a result that would injure the Republic's creditors and its citizens. With post-judgment interest accruing, Plaintiffs would suffer no injury from a stay pending appeal, allowing the Republic's incoming administration[1] to work to improve the country's economic situation.

*Finally*, Plaintiffs misread the caselaw in opposing even a temporary stay if the Court denies this motion. But even under that misreading, a temporary stay is warranted here, because the Republic raised multiple meritorious bases for a stay, including the balance of harms and its likelihood of success on appeal.

## ARGUMENT

**I.     PLAINTIFFS' OPPOSITION CONFIRMS THAT THE COURT SHOULD STAY EXECUTION OF THE $16.1 BILLION JUDGMENT PENDING APPEAL WITHOUT BOND.**

### A.    In Their Opposition, Plaintiffs Offer No Lawful Way for the Republic To Secure This Extraordinary Non-Final Judgment.

Nowhere do Plaintiffs dispute that the Court's $16.1 billion judgment represents ***almost 20% of the Republic's annual budget for the entirety of 2023***, or that the Republic does not have the debt capacity to fund a bond or judgment of this size. (*See* Rigo Decl. ¶ 11; Setti Decl. ¶¶ 6–10.) Yet Plaintiffs say it is "untrue" that "Argentine law and economic conditions

---

[1]    The upcoming election is November 19, and the new Argentine President will be sworn in on December 10, 2023. The current President is not up for reelection.

preclude [the Republic] from securing the Judgment until it is non-appealable." (Opp. at 6.) Not so. In fact, Dr. Calomiris's suggestions for how the judgment could be secured, alongside Prof. Bianchi's unsupported and speculative legal arguments, underscore the insurmountable legal and practical impediments the Republic faces in trying to secure the judgment. (Mot. at 8–11.)

1. Relying exclusively on their economist, Dr. Calomiris, Plaintiffs assert that the Republic has "assets worth billions of dollars" that it could post as security. (Opp. at 6.) Dr. Calomiris first suggests that the Republic pledge more than half of its $27.8 billion pension fund, the equivalent of pledging United States Social Security trust funds to a foreign private plaintiff. (Calomiris Decl. ¶ 21.) Plaintiffs' only support for the idea is that Dr. Calomiris is "not aware of any legal impediment[s]" to the Republic doing so. (*Id.*) Notably, Prof. Bianchi, Plaintiffs' Argentine legal expert, does not claim that the Republic could take this drastic and unlawful step and as shown below, it cannot.

2. The other assets that Dr. Calomiris points to are (i) the Republic's "51% stake" in YPF; (ii) money supposedly owed to the Republic from Paraguay for the Yacyretá dam; (iii) the Republic's natural resources (including shale and lithium reserves, offshore oil and gas and 5G bands); and (iv) state-owned enterprises, such as the postal service and water and sewage company. (Calomiris Decl. ¶¶ 21–35.) In fact, 49% of the "state-owned" YPF shares are earmarked for certain Argentine Provinces;[2] Argentina owes its own debts to Yacyretá;[3] and Argentina's land-based natural resources are owned by Argentine Provinces, not the Republic

---

[2] *See* YPF, S.A. SEC 2022 Form 20-F 17, https://www.ypf.com/english/investors/Lists/InformeAnualForm20/YPF%20Form%2020F%202022.pdf.

[3] IMF, *Fifth and Sixth Reviews Under the Extended Arrangement Under the Extended Fund Facility* 27 (Aug. 25, 2023), http://www.elibrary.imf.org/view/journals/002/2023/312/article-A001-en.xml.

itself.⁴  But even if assets existed that the Republic could use to secure the judgment, it would be unreasonable to lock up a country's major resources, including some that are critical to the well-being of its population, to benefit two private plaintiffs.  A stay without bond is appropriate where "[m]any innocent third parties may suffer if execution is allowed to proceed."  *See River Oaks Marine, Inc.* v. *Town of Grand Island*, 1992 WL 406813, at *1 (W.D.N.Y. Dec. 10, 1992).

        3.  In all events, the Republic does not have the legal authority to make the pledge that Plaintiffs imagine.  Regarding the Republic's pension fund, Argentine Law No. 26,425 expressly prohibits using these funds for any purpose other than to pay pension benefits; they are subject to strict investment limits and cannot be invested abroad.  (*See* Ex. 4, Art. 8.)  And the Argentine Congress cannot pledge assets to secure a non-final judgment.  As explained by the Secretary of Treasury, Article 170 of the Permanent Supplementary Budget Law, which is the sole authority under which the Congress can make judgment-related payments, allows payments only in connection with final judgments.  (*See* Rigo Decl. ¶ 7; Ex. 5.)

        Prof. Bianchi responds with two pieces of wordplay.  He first asserts that because Article 170 refers only to payment of a *judgment*, not of a *bond*, the government could finance a *bond* for a non-final judgment.  (Bianchi Decl. ¶ 4.)  He next claims that because Article 170 authorizes budgeting only for "final" judgments, a non-final judgment can be paid (or, presumably, security for it pledged) with no authorization at all—it "need not be included in the next fiscal year budget."  (*Id.* ¶ 6.)  Even if they had not already been refuted (*see* Rigo Decl. ¶ 7), these arguments are wrong on their face.  To Prof. Bianchi, a budgeting process is required to pay final judgments, but the Republic can pay or secure a $16.1 billion non-final judgment without any authority.  That is not the law and defies common sense.  (*Id.*)

---

⁴    *See* Argentina Const. tit. II § 124.

Prof. Bianchi also speculates that the Republic could avoid all legal limits on payments related to non-final judgments by having the Argentine Chief of Cabinet reallocate previously budgeted funds. (Bianchi Decl. ¶¶ 12–16.) He cites Article 37 of Law 24,156, which describes how "[t]he Chief of Cabinet is entitled to perform all the budget restructuring deemed necessary within the total amount approved." (*Id.* ¶ 12, quoting Art. 37.) But he fails to mention the ***next sentence*** of Article 37 providing that "such restructuring "***may not exceed . . . five percent (5%)***" of the total annual budget or "***fifteen percent (15%)***" of particular budget sub-categories. (Ex. 6 (emphases added).) A judgment equaling nearly 20% of the Republic's total 2023 budget far exceeds these caps. In fact, the Chief of Cabinet could not even reallocate up to the caps, because Article 37 does not excuse compliance with the Budget Law—under which the Congress cannot appropriate funds for a non-final judgment. (Rigo Decl. ¶ 7.)[5] In any event, as the Secretary of Treasury explained, there are no funds to reallocate given that 80% of the budget goes to mandatory social spending, and the current year is nearly over. (*Id.* ¶¶ 8(b), 11–12.)

Prof. Bianchi's last theory is that the Republic could simply "waiv[e]" Article 170's requirements. (Bianchi Decl. ¶¶ 8–11.) But again, Prof. Bianchi is wrong. His only support is an Argentine Supreme Court case in which the government complied with an eviction judgment that had "been ordered by a ***final*** decision." (*Id.* Ex. A, at 4 (emphasis added).) The case has no bearing on the Republic's ability to pay or secure a ***non-final*** money judgment.

4. Prof. Bianchi further claims that the Republic could simply add the judgment to the 2024 budget. (*Id.* ¶ 20.) But Article 170 allows budgeting only for *final* judgments by July 31 of the prior year. (*See* Ex. 5.) The non-finality of the Court's $16.1 billion judgment, and the

---

[5] Prof. Bianchi's claim that "Argentina has done this before" (Bianchi Decl. ¶¶ 17–19) is wrong. The case he cites has no relevance because the order at issue, though an interim measure, was itself a final order of the Argentine Supreme Court not subject to appeal. (*Id.* Ex. D at 27.)

passing of that deadline, preclude including this judgment in the 2024 budget, which the Republic could not do in any event given the amount at issue and the pressing needs of its people.

### B. The Court Should Consider *All* Relevant Factors in Assessing This Motion.

It is Plaintiffs who "steadfastly resist[] applying" (Opp. at 2) the relevant standards to this Motion. Plaintiffs acknowledge, as they must, that the *Nassau* factors are "non-exclusive." (*Id*. at 3–4.) These factors are not applied mechanically: it is within this Court's "'discretion' whether or not to waive [Rule 62(b)'s] requirement of the bond" after considering other factors in lieu of or alongside those from *Nassau*. *Butler* v. *Ross*, 2017 WL 6210843, at *4 (S.D.N.Y. Dec. 7, 2017) (Cote, J.); *see Miller*, 2017 WL 61947, at *4 (Rule 62 "does not limit the district court's inherent power to issue a stay in a manner that does not fall within the scope of the Rule"). The unique factors here—the largest judgment in the history of this District; entered against a foreign sovereign facing significant economic and environmental challenges; and amounting to 20% of its national budget—bear no resemblance to the run-of-the-mill caselaw standards Plaintiffs cite.

In any event, courts in this Circuit routinely go beyond the *Nassau* factors in deciding whether to stay execution without bond. In *Butler*, for example, the court considered *Nassau* but ultimately granted a temporary unbonded stay based on "the admitted difficulty [defendant] would have in securing a bond." 2017 WL 6210843, at *4. This Court has likewise granted a stay without requiring a full bond given the "irreparable [financial] harm" to the defendant among other factors. *E.J. Brooks Co.* v. *Cambridge Sec. Seals*, 2016 WL 908633, at *1–2 (S.D.N.Y. Mar. 2, 2016); *see also Miller*, 2017 WL 61947, at *4–5.[6]

---

[6] Plaintiffs also urge the Court to overlook *Texaco Inc.* v. *Penzoil Co.*, 784 F.2d 1133, 1138, 1153 (2d Cir. 1986), which waived a state-law bond requirement for a company that "could not possibly meet" it, because the decision was reversed. The Supreme Court reversed *Texaco* on abstention grounds. *See* 481 U.S. 1, 10 (1987). The Court did not question the Second Circuit's reasoning, which remains authority for courts in this Circuit. *See, e.g.*, *JP Morgan Chase Bank, N.A.* v. *Reifler*, 2014 WL 12648526, at *1 (S.D.N.Y. Aug. 25, 2014) (Batts, J.) (relying on *Texaco*

Plaintiffs' cases involve non-sovereign defendants facing judgments a fraction of the size of this one, who did not identify legal or practical barriers to bonding or paying a judgment, or the risk that payments to Plaintiffs would be lost in the event of a successful appeal. *See, e.g.*, *Moore* v. *Navillus Tile, Inc.*, 2017 WL 4326537, at *1–2 (S.D.N.Y. Sept. 28, 2017) (McMahon, J.) (defendant private company had sufficient assets to post a bond).[7] The Republic is a sovereign that has demonstrated, with statements by two of its highest officials, the legal and practical impediments to immediately paying or securing the judgment. The Court can, and should, consider these factors in granting a stay without bond.

### C. The Relevant Factors Decisively Support a Stay Without Bond.

1. International comity principles strongly support a stay and waiver of the bond requirement. In response, Plaintiffs (Opp. at 18–19) largely ignore the specific concerns raised in the Motion regarding the burdensome and invasive enforcement proceedings in courts worldwide that will inevitably begin if Plaintiffs can start enforcing this $16.1 billion judgment immediately.[8]

---

for proposition that "a court may grant a [Rule 62(b)] stay without [] a bond").

[7] *See also Sire Spirits, LLC* v. *Green*, 2023 WL 1516574, at *2 (S.D.N.Y. Feb. 3, 2023) (Cronan, J.) (individual provided "no evidence" that posting a bond would affect other creditors); *EMA Fin., LLC* v. *Joey N.Y. Inc.*, 2022 WL 2399754, at *3 (S.D.N.Y. July 1, 2022) (Broderick, J.) (individuals only gestured to "their personal financial situations" to support stay request); *Frye* v. *Lagerstrom*, 2018 WL 4935805, at *3–4 (S.D.N.Y. Oct. 10, 2018) (Buchwald, J.) (individual made no showing that he would "encounter difficulty recouping the money judgment from the plaintiff" if successful on appeal); *Butler*, 2017 WL 6210843, at *1, 4 (individual identified no legal barriers to payment); *John Wiley & Sons, Inc.* v. *Book Dog Books, LLC*, 327 F. Supp. 3d 606, 619, 649 (S.D.N.Y. 2018) (Pauley, J.) (corporation raised no impediments to paying the judgment).

[8] The cases Plaintiffs point to (Opp. at 19) where foreign sovereigns were required to post bonds pending appeal involve substantially smaller judgments that do not raise the same comity concerns. *See Preble-Rish Haiti, S.A.* v. *Republic of Haiti*, 2023 WL 5803567, at *1–2 (S.D.N.Y. Sept. 7, 2023) (Castel, J.) ($28 million judgment); *Doraleh Container Terminal SA* v. *Republic of Djibouti*, No. 20-02571, Mem. Op. & Order at 5 (D.D.C. Apr. 24, 2023) ($541 million judgment); *Pao Tatneft* v. *Ukraine,* 2021 WL 2209460, at *1, 3 (D.D.C. June 1, 2021) ($172 million judgment); *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, No. 16-cv-00661 (RC), Order, ECF 44 at 2–3 (D.D.C. Aug. 8, 2017) ($1 billion judgment); *Gold Rsrv. Inc.* v. *Bolivarian*

-7-

Plaintiffs have already requested extensive discovery concerning the Republic's financial affairs that could never lead to the identification of executable assets, but which intrudes deeply into the functioning of the Republic's government.  (*See, e.g.*, Mot. Ex. 3 at Nos. 53–58 (requesting information on dealings between the Republic's central bank and international organizations).)  Particularly where such proceedings may never be necessary after appeal, "accommoda[ting] the needs of an emerging nation" to stay enforcement without bond is the appropriate course.  *Morgan Guar. Tr. Co. of N.Y.* v. *Republic of Palau*, 702 F. Supp. 60, 66 (S.D.N.Y. 1988) (Sweet, J.).

    2.  Conditioning a stay in this case on the posting of security—which the Republic cannot do—will kick-start collection proceedings in courts around the world and risk dissipation of the Republic's assets at the expense of its other creditors.  Plaintiffs respond by pointing to their last-minute "offer" to "refrain from attaching or seizing the Republic's assets pending appeal"—an offer the Republic rejected—to claim that these concerns "are exaggerated and pretextual." (Opp. at 13.)  But Plaintiffs' "offer" was not a serious one.  (*See* Mastro Decl. Ex. B, Pls.' Oct. 27 Ltr.)  Plaintiffs conditioned any voluntary stay of attachment or seizure on the Republic consenting to extensive enforcement discovery, jurisdiction, and premature recognition of a non-final judgment in every country worldwide, which violates both Argentine and international norms for judgment recognition and enforcement, under which judgments must, among other requirements, be final and comply with the enforcing nation's public policy.  *See Survey on Foreign Recognition of U.S. Money Judgments*, COMMITTEE ON FOREIGN AND COMPARATIVE LAW OF THE BAR OF THE CITY OF NEW YORK (2001) at 384–405; (Mastro Decl. Ex. C, Def.'s Nov. 1 Ltr.).  As Plaintiffs well know, the Republic cannot accept such onerous conditions.

---

*Republic of Venezuela*, No. 15-7158, Order at 1 (D.C. Cir. May 4, 2016) & No. 14-2014, Order, ECF 41 at 1 (D.D.C. Nov. 20, 2015) ($713 million judgment).

3. The Republic faces a real risk of irreparable injury absent a stay. Plaintiffs claim (Opp. 1) that "the risk that [they] will be able to seize and dissipate assets during the appeal is nil" but if that were so, the "offer" in the prior paragraph was no offer at all. Unfortunately, the facts are otherwise. Plaintiffs will try to execute on all the assets they can, and Plaintiffs do not dispute that absent affirmative intervention by foreign courts, those assets will not be recoverable from the layers of investors in this lawsuit if the Republic ultimately prevails. (*Id*. at 13.) Conversely, there is no irreparable injury to the real parties in interest, who are not "forced, unsecured creditor[s]" (*id*. at 2), but willing, sophisticated ones who invested small amounts in the hopes of obtaining enormous returns and will receive 5.42% post-judgment interest in the interim. As such, the "economic costs and risks" Dr. Calomiris identifies are illusory. (Calomiris Decl. ¶ 36.)

And while Plaintiffs claim that the Republic has a "history of resisting payment" (Opp. at 8–9), in fact the Republic has a "history" of paying adverse judgments once they become final consistent with its obligations to other creditors and the IMF—including the settlement with bondholder plaintiffs in this Court in 2016. *See Aurelius Cap. Master Ltd.* v. *Republic of Argentina*, 644 F. App'x 98, 106–07 (2d Cir. 2016). Plaintiffs have no basis for the claim that the Republic has ever "secret[ed] its assets" from Plaintiffs or anyone else. (Opp. at 18.)

Staying enforcement of the judgment will permit the incoming Argentine government to attempt reforms, which may improve the Republic's fiscal and credit position by the time appeals are exhausted. (*See* Mot. at 17.) Dr. Calomiris in fact describes the proposed reforms of presidential candidates as "seek[ing] to improve [the Republic's] economic prospects." (Calomiris Decl. ¶¶ 38–44.) A pledge of the Republic's assets to secure the judgment, even if possible, would undermine the ability of the incoming administration to implement new policies.

4. Finally, all of this may prove unnecessary because of the Republic's "substantial case on the merits" of its appeal. *Morgan Guar.*, 702 F. Supp. at 65.[9] There are multiple complex issues of Argentine law at issue on appeal, including whether money damages are a legal remedy for breach of corporate bylaws, particularly when the bylaws expressly provide for a different remedy. (*See* Mot. at 15–16.) Plaintiffs' only response is that the Second Circuit supposedly "already has considered" many of the issues. (Opp. at 16.) But the *only* issue the Second Circuit decided was jurisdiction, on a motion to dismiss where it accepted Plaintiffs' rendition of facts and Argentine law. *See Petersen Energía Inversora S.A.U.* v. *Argentine Republic*, 895 F.3d 194, 199 (2d Cir. 2018). The Second Circuit certainly did not decide any of the contested Argentine law issues underlying this Court's judgment. This counsels in favor of a stay and—because the Republic has established the impossibility of securing a bond—waiver of bond.

## II.    AT A MINIMUM, THE COURT SHOULD GRANT A TEMPORARY STAY.

Plaintiffs are simply wrong that temporary stays are granted only "when at least one of the broader stay factors weighs in favor of the appellant." (Opp. at 20); *see Preble-Rish Haiti,* 2023 WL 5803567, at *2–4 (granting temporary stay to allow Haiti to seek relief from Second Circuit after finding no factors weighed in its favor). But in any event, the Republic has raised meritorious arguments for a stay on multiple relevant factors, including comity concerns, the real risk of irreparable injury to the Republic, and the Republic's meritorious case on appeal.

## CONCLUSION

This Court should grant the Republic's motion. Alternatively, the Court should grant a brief 30-day stay for review by the Second Circuit of whether to grant a stay.

---

[9]   Plaintiffs say this factor requires a "strong showing that [the Republic is] likely to succeed" rather than a "substantial case on the merits." (Opp. at 15.) This is incorrect, *Morgan Guar.*, 702 F. Supp. at 65, but of no moment because the Republic has made a "strong showing," *see infra*.

                                                      Respectfully,

Dated: November 7, 2023                */s/Robert J. Giuffra, Jr.*
                                                 Robert J. Giuffra, Jr.
                                                 Sergio J. Galvis
                                                 Amanda F. Davidoff
                                                 Thomas C. White
                                                 Adam R. Brebner

                                                 SULLIVAN & CROMWELL LLP
                                                 125 Broad Street
                                                 New York, New York 10004-2498
                                                 Telephone:    (212) 558-4000
                                                 Facsimile:    (212) 558-3588

                                                 *Counsel for the Argentine Republic*