# Exhibit A

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-956-7676
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

_____

NEW YORK • LOS ANGELES • PALO ALTO
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 12, 2024

Laura Harris,
   King & Spalding LLP,
      1185 Avenue of the Americas, 34th Floor,
         New York, NY 10036.

> Re:   *Petersen Energía Inversora S.A.U.* v. *Argentine Republic*,
>        No. 15-cv-2739 (S.D.N.Y.)
>        *Eton Park Capital Management, L.P.* v. *Argentine Republic*,
>        No. 16-cv-8569 (S.D.N.Y.)

Dear Laura:

On behalf of the Argentine Republic, I respond to your January 26, 2024 letter ("Letter") regarding Plaintiffs' post-judgment document requests (the "Requests").

As an initial matter, the Republic agrees that the parties have made progress in our several meet-and-confer sessions. However, we disagree with the implication that the information provided by the Republic in our meetings, in response to Plaintiffs' own clarifications regarding the Requests, indicates that the Republic's Objections (the "Objections") served in November 2023 were deficient in some way. (Ltr. at 1.) As you know, Plaintiffs served 77 extremely broad Requests on the Republic on October 16, 2023. The Republic responded on November 15, 2023, notwithstanding the fact that, at the time, the Republic's motion for a stay of enforcement of the judgment was pending. Indeed, the Court stayed enforcement of the judgment until January 10, 2024 in part "[t]o accommodate the new administration in Argentina" (*Petersen* ECF No. 529 at 1), as a new President was elected on November 19, 2023 and did not take office until December 10, 2023. The Republic continued to meet and confer with Plaintiffs while this stay was in effect, and the administration of Argentina was changing, to ensure that the parties could make progress. The Republic hopes to continue our productive dialogue in responding to Plaintiffs' Requests.

Below are responses to the points raised in your Letter and in our meetings, both regarding the Requests generally and regarding Requests 1–30 specifically. Further,

Laura Harris                                                                                                                              -2-

please note that the Republic is producing documents subject to the Protective Order entered in these Actions (*see Petersen* ECF No. 177).

**Preliminary Matters**

*First*, I address your points regarding the scope of post-judgment discovery. You assert that "broad post-judgment asset discovery is permitted" and "self-serving assertions of non-attachability and immunity are no basis to refuse to produce responsive documents." (Ltr. at 2; *see also id.* at 4, 5.) But post-judgment discovery is not limitless. The "concepts of attachability or executability" are relevant to post-judgment discovery because "'information that could not possibly lead to executable assets is simply not relevant to execution in the first place' under Rule 26." *Gujarat State Petroleum Corp. Ltd.* v. *Republic of Yemen*, 2022 WL 1567464, at *8 (S.D.N.Y. May 18, 2022) (Abrams, J.) (quoting *Republic of Argentina* v. *NML Capital, Ltd.*, 573 U.S. 134, 144 (2014)). In addition, there are "other sources of law" beyond the Foreign Sovereign Immunities Act ("FSIA") that "bear on the propriety of discovery requests," including "comity interests" and "the burden that the discovery might cause to the foreign state." *NML*, 573 U.S. at 146 n.6. Indeed, the Second Circuit has urged district courts to "closely consider Argentina's sovereign interests in managing discovery, and to prioritize discovery of those documents that are unlikely to prove invasive of sovereign dignity," particularly "when it comes to a foreign sovereign's diplomatic and military affairs." *Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014).

As described in the Republic's Objections, and as we have noted in our meetings, the Requests are unjustifiably and overly invasive of the Republic's sovereign interests and seek a broad and burdensome array of information that is simply not reasonably calculated to assist in collecting on the judgment in these Actions (particularly because there has been no waiver in these Actions of the execution immunity that the Republic enjoys under the FSIA). Indeed, although Plaintiffs claim that the information the Requests seek is "readily available" or that "much of it must be compiled for the Republic's annual financial reporting obligations" (Ltr. at 1), the Letter itself belies that assertion, as Plaintiffs have rejected the Republic's financial reports as sufficient to respond to their Requests. (*See, e.g.*, *id.* at 5 (regarding Request 18, "Plaintiffs disagree that the high-level summary contained in the Republic's 2022 18-K filing is sufficient to show the Republic's outstanding Debts").) Notwithstanding this burden, the Republic is working to respond, subject to its Objections and the parties' negotiations, and will continue to do so.

*Second*, regarding your Requests that seek documents and information from Banco Central de la República Argentina ("BCRA") (*see, e.g.*, Requests 20, 21, 24, 26), you claim that "even if the BCRA is determined to be an independent entity, that separation is not a barrier to discovery regarding accounts BCRA holds on the Republic's behalf." (Ltr. at 4; *see also id.* at 6.) Yet as we have explained (*see, e.g.*, Objections to Requests 20–21), BCRA is not an alter ego of the Republic but a "legally separate" entity, and it

Laura Harris                                                                                                                        -3-

cannot be compelled, through requests to the Republic, to produce documents. *EM Ltd.* v. *Banco Central De La República Argentina*, 800 F.3d 78, 96 (2d Cir. 2015); *see EM Ltd.* v. *Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (affirming denial of discovery request regarding BCRA).  Aside from the Republic's inability to require BCRA to produce documents to Plaintiffs, such documents are outside the scope of post-judgment discovery because "'information that could not possibly lead to executable assets is simply not relevant to execution in the first place' under Rule 26." *Gujarat State Petroleum Corp.*, 2022 WL 1567464, at *8.  The Republic will therefore not search for or produce documents in the possession, custody, or control of BCRA.

*Third*, in response to Plaintiffs' question in the Letter (at 4), the Republic maintains its Objection to Plaintiffs' overbroad definition of the Republic in the Requests. (*See* Obj. at 9.)  The definition of "Argentina" in the Requests includes the "ministries, agencies, political subdivisions, and representatives, and all other Persons acting or purporting to act for or on Argentina's behalf," and refers to a non-exhaustive list of 19 government ministries.  This definition is far too broad, as explained in our Objection. Subject to that Objection, the Republic confirms, as discussed on our February 5, 2024 call, that it is not withholding or refusing to search for responsive documents from other ministries or agencies beyond the National Treasury.  Rather, in the course of performing reasonable searches for responsive documents, the Republic has been consulting with ministries reasonably likely to have access to potentially responsive documents and will continue to do so.  This includes, but is not limited to, the Secretariat of Finance, the Secretariat of Energy, the Secretariat of Treasury, and the Agency of State Property Management.

*Finally*, the Republic appreciates Plaintiffs' confirmation both in our January 19 meeting and in the Letter that at this time, regarding Requests 13–16, 23 and 26, they are seeking documents regarding assets or financial instruments in a Foreign Country, not in the United States or in Argentina.  We acknowledge Plaintiffs' reservation of rights to raise U.S.-related matters for these Requests at a later date, and the Republic reserves all Objections.  We had understood from our January 19 call that Plaintiffs were proposing the same limitation to apply in the first instance to all Requests where it would be relevant (i.e., also to Requests 17–22, 24, and 27–28), but your Letter does not mention this limitation.  Please confirm that, as to those Requests as well, in the first instance Plaintiffs are seeking documents regarding Foreign Countries, while reserving their rights as to the United States.

**Requests 1–12:  Documents Related to YPF Shares**

In our discussions on November 21, 2023 and December 5, 2023, Plaintiffs indicated that they were seeking responses to their YPF-related Requests (Requests 1 to 12) in the first instance as to the YPF shares expropriated from Repsol.  We confirmed in our January 18, 2024 discussion that all YPF shares expropriated from Repsol are held in

Laura Harris                                                                                                                                                         -4-

Argentina at the Caja de Valores and have been held there since they were expropriated from Repsol on May 8, 2014.

During our January 18, 2024 discussion, Plaintiffs stated that they were additionally seeking responses to Requests 1 to 12 as to (1) all YPF shares owned by the Republic, not just those expropriated from Repsol, and (2) for the period April 16, 2012 to the present.  The Republic confirms that, in addition to the YPF Class D shares expropriated from Repsol, it owns YPF Class A shares.  We will produce to Plaintiffs documents sufficient to confirm the Republic's shareholdings since April 2012.  As to the shares expropriated from Repsol, the Republic has only held title to them since May 8, 2014 when, as Plaintiffs have acknowledged, the title to these shares was transferred from Repsol to Argentina pursuant to a settlement agreement.  (*See* Petersen ECF No. 390, Pls.' Resp. to Defs.' 56.1 Statement, ¶ 48.)[1]

Although, as set forth below, the Republic maintains its Objections as to the discoverability of information about YPF shares on the basis that such information cannot possibly lead to executable assets, we respond as follows.  The Republic's agreement to perform a reasonable search for documents is not an agreement to Plaintiffs' phrasing of their Requests or an admission that any responsive documents exist or can be located by a reasonable search.

**Request 1**:  This Request seeks documents sufficient to identify and locate all shares of YPF currently owned by Argentina.  In response to Plaintiffs' further clarifications on Request 1, the Republic confirms that all YPF shares that it owns are held in Argentina at the Caja de Valores (not only those expropriated from Repsol, the point confirmed on our January 18, 2024 call).

Subject to its Objections, the Republic will produce documents responsive to this Request.

**Request 2**:  This Request seeks documents sufficient to identify accounts through which Argentina holds YPF shares.  Subject to its Objections, the Republic will

---

[1] To be clear, this only includes YPF shares owned by the Republic itself.  It does not include shares that are owned by the Fondo de Garantía de Sustentabilidad ("FGS"), which is a *patrimonio de afectación específica* administered by the National Social Security Administration (*Administración Nacional de la Seguridad Social*) to support the Republic's social security system.  The FGS holds a wide range of financial assets, including without limitation public sector securities, shares of corporations, fixed and floating rate instruments, bonds, mutual funds, securities representing debt issued under trusts, and mortgage bonds.  (*See* Republic of Argentina 18-K, D-119.)

Laura Harris                                                                                                                                      -5-

produce documents responsive to this Request identifying the account through which all shares of YPF owned by the Republic are held.

**Requests 3–5**:  Request 3 seeks documents sufficient to identify any sales or transfers by Argentina of YPF shares from June 1, 1993 to the present, and Requests 4 and 5 seek information about accounts that received proceeds of any such transfers.  The Republic maintains its Objection that these Requests are overly broad and unduly burdensome at least as to the period before May 8, 2014.  We understand based on our February 5, 2024 call that you request that the Republic produce documents in response to this Request, in the first instance, for the period April 16, 2012 through the present, and would not accept a limitation to May 8, 2014.  We also understand that you will consider whether to narrow the Request to a period less burdensome than June 1, 1993 through the present but do not yet agree to do so.  The Republic likewise maintains its objections to the period before May 8, 2014.

In response to this Request, the Republic again confirms that it owns YPF Class A shares and the expropriated Class D shares held at Caja de Valores, and there have been no sales or transfers by Argentina of its YPF shares since April 16, 2012 (we note that the Republic did not own the expropriated shares until May 8, 2014, and therefore could not have transferred or sold those shares before that date, nor could it transfer or sell them thereafter "without the permission of the National Congress by a two-thirds vote of its members," Expropriation Law art. 10).  The Republic will produce documents sufficient to confirm this information.

**Requests 6–7**:  These Requests seek all documents and communications regarding the cancellation or termination of YPF shares or ADRs from April 16, 2012 to the present, including all documents concerning the transfer of YPF shares or ADRs from Repsol to the Republic or the termination of such ADRs.  We have already confirmed that with the exception of pending transfers to the Provinces, discussed below, no transfers, cancellations or terminations by the Republic of its YPF shares have occurred since April 16, 2012 (we again note that the Republic did not own the expropriated shares until May 8, 2014, and therefore could not have transferred or sold those shares before that date, nor could it transfer or sell them thereafter "without the permission of the National Congress by a two-thirds vote of its members," Expropriation Law art. 10).  Documents already in Plaintiffs' possession make clear that what the Republic expropriated, and what Repsol transferred to the Republic, were YPF shares rather than ADRs.  (*See* Expropriation Law art. 7 ("For purposes of ensuring the fulfillment of the objectives of this law, fifty-one percent (51%) of the equity of YPF Sociedad Anónima, represented by an identical stake of Class D shares held by Repsol YPF S.A. . . . is hereby declared a public interest and subject to expropriation"); *Petersen* ECF No. 364-115, Repsol Settlement Agmt. cl. 1 ("[T]he Argentine Republic concedes to Repsol and offers thereto the sum of five billion dollars . . . as compensation for the expropriation of 200,589,525 Class 'D' shares of YPF.").)

Laura Harris                                                                                                                          -6-

    Subject to its Objections, the Republic will perform a reasonable search for documents, if any exist, regarding the transfer of Repsol's YPF shares or ADRs to the Republic, or the termination of such ADRs, for the period April 16, 2012 to May 8, 2014. As we discussed on our February 5 call, we are willing to discuss the parameters of this and any other reasonable searches with you.

    **Request 8**: This Request seeks documents concerning Argentina's "exercise of the shareholder rights" of shares "held by Repsol" from April 16, 2012 to the present. Repsol ceased holding the expropriated shares as of May 8, 2014, so it is unclear how responsive documents could exist for the period after that date. Further, as we pointed out on our January 18 call, various YPF shareholder meeting minutes were produced in merits discovery. Thank you for confirming that Plaintiffs already have YPF shareholder meeting minutes from 2012 to 2014. Your Letter states that Plaintiffs now seek (1) all YPF meeting minutes from April 2012 to the present; (2) a shareholder registry referenced in YPF shareholder meeting minutes; and (3) other "instructions not reflected in shareholder meeting minutes." (Ltr. at 3.) You stated on our January 18 call that item (3) refers to instructions to Repsol or BONY regarding the Republic's exercise of shareholder rights.

    Although there are no documents responsive to this Request for the period after May 8, 2014 (because the Republic had no rights regarding shares Repsol held after that date), in response to Plaintiffs' further requests, the Republic will produce YPF shareholder meeting minutes dating from April 16, 2012 to the present, with the exception of the meeting minutes Plaintiffs confirmed in their Letter that they have already located. The YPF shareholder meeting minutes include a registry of all shareholders registered to attend the meeting. We understand that any other shareholder registry would be in the possession, custody, or control of Caja de Valores, rather than the Republic. Further, as mentioned during our January 18 meeting, to the extent the Republic exercised political rights associated with the Repsol shares subject to expropriation between April 16, 2012 and May 8, 2014, the Republic did so directly, on the basis of Article 13 of the Expropriation Law, as established by documents produced to Plaintiffs on November 19, 2020 (AR00039199–AR00039206) and documents that will be produced in response to the outstanding Requests. Thus, based on a reasonable inquiry, there are no documents with instructions to Repsol or BONY regarding the Republic's exercise of shareholder rights for the period from April 16, 2012 through May 8, 2014 (or, as stated above, thereafter).

    **Requests 9–11**: These Requests seek documents and agreements concerning the transfer of YPF shares or dividends to the Provinces. The Republic did not state that "there are no documents responsive to these Requests." (Ltr. at 3.) Rather, as explained during our January 18 meeting, the Expropriation Law requires a transfer of YPF shares to the Provinces that is still pending. The Republic directs Plaintiffs to both the Expropriation Law and the YPF Form 20-Fs for further information regarding the pending transfer of YPF shares from the Republic to the Provinces. Further, in response to Request 10, the Republic will produce additional documents related to a form agreement between

Laura Harris                                                                                                                -7-

the Republic and the Provinces consistent with the Expropriation Law regarding the pending transfer that has not become effective to date.

**Request 12**:  This Request seeks information about YPF dividends paid since January 1, 2020.  There are no documents responsive to this Request because there have been no dividends issued by YPF to Argentina or any other shareholder in that period.  The Republic directs Plaintiffs to the YPF Form 20-Fs and YPF's investor center website, which confirm this information.  Plaintiffs' objections as noted in the Letter (at 3–4) are therefore moot.

\*     \*     \*

As you acknowledged on our January 18 call, any request by Plaintiffs for a U.S.-court turnover order regarding those shares would have to satisfy the FSIA.  Under that statute, property of a foreign state "in the United States" that is "used for a commercial activity in the United States" may not be immune from execution if "the property is or was used for the commercial activity upon which the claim is based."  28 U.S.C. § 1610(a)(2).  The Republic's YPF shares are not "in the United States," but are located in Argentina; and they are not "used for a commercial activity in the United States."  Moreover, the *expropriated* shares are not, and under the Second Circuit's FSIA decision in this case could not have been, "used for the commercial activity upon which the claim is based"— *i.e.*, the alleged obligation under the YPF bylaws to make a tender offer for shares that were *not expropriated*.  See *Petersen* v. *Argentine Republic*, 895 F.3d 194, 209 (2d Cir. 2018).  Indeed, according to the Second Circuit, "when Argentina asserted control over Repsol's 51% stake in YPF via expropriation, it incurred a *separate* commercial obligation under the bylaws to make a tender offer for the remainder of YPF's outstanding shares," and Plaintiffs' claimed injury was the repudiation of that alleged obligation, "an act *separate and apart* from Argentina's expropriation of Repsol's shares."  *Id.* (emphasis added).

The Republic's YPF shares are not attachable for the additional reason, noted during our January 18 meeting, that the Expropriation Law explicitly precludes "any future transfer" of the expropriated shares "without the permission of the National Congress by a two-thirds vote of its members."  Expropriation Law art. 10.  Pursuant to CPLR Section 5201(b), "[a] money judgment may be enforced against any property which could be assigned or transferred."  Property that cannot be transferred—like the YPF shares held by the Republic—is not attachable.  *See, e.g.*, *Alliance Bond Fund, Inc.* v. *Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 24 (2d Cir. 1999) (remanding to address question whether property "could be assigned or transferred" because "only those property interests of the judgment debtor which by law the debtor may assign or transfer, may be sought for application to the judgment").  The cases cited by Plaintiffs (Ltr. at 2) do not address the situation here—a law preventing the transfer of a particular asset—and are not to the contrary.  *See Moskin* v. *Midland Bank & Tr. Co.*, 96 Misc. 2d 600, 601–02 (Sup. Ct. N.Y. Cnty. 1978) (seat on New York Stock Exchange was transferrable; "[t]he fact that

Laura Harris                                                                                                                  -8-

any purchaser of the seat could not take a place on the floor of the Exchange unless he met the requirements imposed by and received the necessary approval of the Exchange, does not preclude a sale"); *Karaha Bodas Co.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002) (determining property interest in disputed funds under Indonesian law).

The Republic is not making "self-serving assertions" of non-attachability regarding its YPF shares. Rather, the documented facts set forth above make clear that the Republic's YPF shares are not subject to attachment or execution. Nevertheless, we remain willing to discuss any further questions Plaintiffs have about those shares.

**Requests 13–30: Documents Related to Assets, Debts, and Other Transactions**

The Republic also maintains its Objections as to the discoverability of information responsive to Requests 13–30 to the extent that such information cannot possibly lead to executable assets. We nevertheless respond as follows. Again, the Republic's agreement to perform a reasonable search for documents is not an agreement to Plaintiffs' phrasing of their Requests or an admission that any responsive documents exist or can be located by a reasonable search.

**Requests 13–16**: As narrowed, these Requests seek documents sufficient to identify Argentina's assets or interests in assets worth $1 million or more, as well as bank accounts related to those assets, in Foreign Countries. As we discussed, these Requests are overly broad and unduly burdensome both because they seek information about assets that could never be executable (for example, diplomatic, consular, and military assets) and because they would require the Republic to collect information from every diplomatic, consular, and military mission around the world, as well as from all ministries within the government. Although on our January 19, 2024 call, Plaintiffs appeared to accept that documents concerning diplomatic and military assets would not be discoverable, Plaintiffs now say the opposite in their Letter, and repeated that position on our February 5, 2024 call. This position ignores the Second Circuit's instruction in the case cited by Plaintiffs (Ltr. at 5) that considerations of "grace and comity" are "of particular weight when it comes to a foreign sovereign's diplomatic and military affairs," *Aurelius Cap.*, 589 F. App'x at 18, and discovery should be managed "to prioritize discovery of those documents that are unlikely to prove invasive of sovereign dignity," *id.* Documents that only concern diplomatic, consular, and military property are not relevant because they "could not possibly lead to executable assets," *NML*, 573 U.S. at 145, and therefore Plaintiffs are not entitled to such documents.

Although the parties continue to disagree as to the proper scope of these Requests, on our February 5 call, Plaintiffs suggested starting with a "principle that would facilitate the collection" of relevant information. Plaintiffs, however, rejected the Republic's proposal to limit these Requests and others regarding assets, debts, and

Laura Harris                                                                                                                      -9-

transactions to those worth at least $50 million and proposed instead to limit them in the first instance to those worth at least $20 million. The Republic will perform its searches on these terms. For these Requests, it will therefore begin by performing a reasonable search for responsive information regarding assets in Foreign Countries worth $20 million or more, excluding diplomatic, consular, or military assets.

**Request 17**: This Request, as narrowed, seeks documents sufficient to identify debts of $1 million or more owed to Argentina by persons in Foreign Countries. This Request is overly broad and unduly burdensome for reasons similar to those given as to Requests 13 through 16. Subject to its Objections, to resolve Request 17, the Republic will perform a reasonable search as to debts of $20 million or more currently owed to it by persons in Foreign Countries.

**Request 18**: This Request, as narrowed, seeks documents sufficient to identify any debts of $1 million or more that Argentina owes to a person in any Foreign Country. In response, the Republic directed Plaintiffs to the Republic's 2022 Form 18-K filed with the SEC, which reports all national treasury debt (instrumented in securities or loans) and indirect debt (such as guarantees of obligations of the Provinces or other national and private entities). On our January 19 call, Plaintiffs agreed to review that filing and identify any additional information they seek. Plaintiffs' Letter states that they are still reviewing that material but will specify debts "of particular interest." (Ltr. at 6.) The Letter also asserts that the 18-K does not contain information about new debts incurred in 2023 or about debts owed to individuals or corporations. As to the latter point, the 18-K reports all public debt by creditor, including debt held by National Public Sector Agencies, debt held by private sector creditors, and debt held by multilateral and bilateral lenders. (*See* Republic of Argentina 18-K, D-154.) Subject to its Objections, the Republic will respond by performing a reasonable search as to debts it currently owes to individuals or corporations in Foreign Countries for $20 million or more.

**Request 19**: This Request concerns account information regarding debts identified in responses to Requests 17 and 18. The Republic agrees that Request 19 can be addressed after the parties reach agreement as to Requests 17 and 18.

**Requests 20–21**: These Requests seek documents regarding "currency swap agreements between People's Bank of China and BCRA," any financial agreements between China and the Republic, and any associated bank accounts. Subject to its Objections, in response to these Requests, the Republic confirms that any financial agreements between the Republic and China, to the extent they are in the possession of the Republic, will be reflected in the Republic's response to Request 18. BCRA, on the other hand, is a separate entity from the Republic, and document requests to the Republic are not a proper means of obtaining documents from BCRA. *See EM Ltd.* v. *Banco Central De La República Argentina*, 800 F.3d 78, 90–91 (2d Cir. 2015) (BCRA is presumptively "legally separate and distinct from Argentina," and that presumption could not be rebutted).

Laura Harris -10-

**Request 22**: As narrowed, this Request seeks documents sufficient to identify any commercial transaction between Argentina and a person in a Foreign Country worth more than $1 million entered into within the past year. This Request is overly broad and unduly burdensome for reasons similar to those given as to Requests 13 through 16. Subject to its Objections, to resolve Request 22, the Republic will perform a reasonable search for responsive information regarding commercial transactions in Foreign Countries worth $20 million or more entered into within the past year, excluding commercial transactions that relate to diplomatic, consular, military, or health-related affairs.

**Request 23**: As narrowed, this Request seeks Letters of Credit issued by Financial Institutions in any Foreign Country in which Argentina is listed as the applicant or beneficiary. Subject to its Objections, to resolve this Request, the Republic will perform a reasonable search as to any such Letters of Credit for $20 million or more in Foreign Countries.

**Request 24**: This Request, as narrowed, seeks documents sufficient to identify accounts used by Argentina to make payments to any "law firm or consulting firm" in any Foreign Country since January 1, 2020. In response to Request 24, the Republic states that it has no accounts in the United States or in any Foreign Country from which it makes payments to any law firm or consulting firm.

**Request 25**: This Request, as narrowed, seeks documents and communications concerning "any plan, project, or transaction to remove, transfer, or dispose" assets of Argentina from any Foreign Country to "shield" them from attachment or execution during the period January 1, 2020 to the present. Subject to its Objections, based on a reasonable search, the Republic confirms that there are no documents responsive to this Request because there are no such "plan[s], project[s], or transaction[s]" to remove assets in order to shield them from attachment or execution.

**Request 26**: This Request seeks documents sufficient to identify any gold or other precious metals reserves of Argentina in any Foreign Country from January 1, 2020 to the present. In response to Request 26, the Republic confirms that all gold and precious metals reserves are held by BCRA and not by the Republic. Once again, the Republic confirms that, as stated in our January 19 meeting, BCRA is a separate entity from the Republic, and document requests to the Republic are not a proper means of obtaining documents from BCRA. *See EM Ltd.* v. *Banco Central De La República Argentina*, 800 F.3d 78, 90–91 (2d Cir. 2015). Further, because any gold or other precious metal reserves are held by BCRA for its own account, they are immune from attachment or execution pursuant to 28 U.S.C. § 1611(b).

**Requests 27–28**: These Requests, as narrowed, seek documents sufficient to identify any escrow accounts established in any Foreign Country in connection with the sale of any asset worth $1 million or more during the period January 1, 2020 to the present.

Laura Harris                                                                                                                               -11-

Subject to its Objections, to resolve Requests 27–28, the Republic will perform a reasonable search for responsive information regarding escrow accounts established in Foreign Countries in connection with the sale of any asset worth $20 million or more during the period January 1, 2020 to the present, if any exist, excluding any such accounts that relate exclusively to diplomatic, consular, military, or health-related affairs.

**Request 29**:  Request 29, as narrowed, seeks concession agreements or similar agreements relating to natural resources, energy or public infrastructure between Argentina and any Person located in any Foreign Country from January 1, 2020 to the present.  Subject to its Objections, the Republic will perform a reasonable search for documents responsive to this Request.

**Request 30**:  This Request seeks documents produced in connection with other judgment enforcement proceedings since January 1, 2020.  As we explained at our December 5 meeting, we do not agree that Plaintiffs are entitled to the production of any and all documents in prior judgment enforcement matters, whether or not those documents would be "relevant to execution" in these Actions under Rule 26.  *Gujarat State Petroleum Corp. Ltd.*, 2022 WL 1567464, at *8.

*     *     *

We are available to continue meeting and conferring on these issues regarding the Requests.

Very truly yours,

*/s/ Amanda Flug Davidoff*

Amanda Flug Davidoff