UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U.,<br><br>                                        Plaintiffs,<br><br>    - against -<br><br>ARGENTINE REPUBLIC and YPF, S.A.,<br><br>                                        Defendants. | No. 15 Civ. 2739 (LAP) |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P.,<br><br>                                        Plaintiffs,<br><br>    - against -<br><br>ARGENTINE REPUBLIC and YPF, S.A.,<br><br>                                        Defendants. | No. 16 Civ. 8569 (LAP) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEAL**

Plaintiffs Petersen Energía Inversora, S.A.U, Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P. (together, "Plaintiffs") request that the Court grant them leave to file under seal their Motion for Injunction and Turnover (the "Turnover Motion"), and its accompanying memorandum of law, declarations, and exhibits. Plaintiffs further request that the Court: (i) direct the Parties to file under seal all other papers relating to the Turnover Motion; and (ii) cause this memorandum of law in support of Plaintiffs' Motion to Seal (the "Sealing Motion") to be entered into the Court's ECF system under seal in order to ensure the protection of the interests detailed below.

## I.     THE TURNOVER MOTION

In the Turnover Motion, Plaintiffs seek turnover of Argentina's 51% shareholding in YPF S.A. ("YPF") in partial satisfaction of this Court's judgment in the aggregate amount of more than $16.1 billion, which remains unpaid. In *Bainbridge Fund Ltd. v. Republic of Argentina*, No. 16-cv-8605, 2023 WL 5747299 (S.D.N.Y. Sept. 6, 2023), this Court held that the Foreign Sovereign Immunities Act ("FSIA") "does not supersede" its authority under New York law to order a foreign state to turn over its extraterritorial assets in full or partial satisfaction of a New York judgment. *Id.* at *3. The Court determined that the "prudent" course was "to evaluate whether the assets are subject to execution immunity before ordering that they be brought to the United States." *Id.*

As explained in the Turnover Motion, New York law provides the Court with the authority to order Argentina to transfer its ownership interests in its YPF shares to Plaintiffs through a global custody account in New York. Moreover, the Turnover Motion establishes that the shares will not be immune from execution under Section 1610(a) of the FSIA after their recall to the United States because Argentina (i) used them for the commercial activity upon which Plaintiffs' claim is based, and (ii) has used and continues to use them for commercial activity in the United States.

## II.     ARGUMENT

"Although the right of public access to court records is firmly entrenched and well supported by policy and practical considerations, the right is not absolute." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994). The Second Circuit has set forth a three-part test to determine whether court records may be withheld from the public. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). First, the court must determine whether the records are "judicial documents"—*i.e.*, documents "relevant to the performance of the judicial function and useful in the judicial process"—to which the public has a presumptive right of access. *Id*. at 119 (cleaned up). Second, if the court determines that the records are judicial documents, it must then determine the weight of the presumption of access. *Id*. "The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id*. (cleaned up). Third, "the court must balance competing considerations against [the presumption of access]." *Id*. at 120 (cleaned up). Such considerations include (but are not limited to) "judicial efficiency." *Id*. If filing in public view would create "impediments to the fair and efficient administration of justice, without serving any legitimate purpose," the court should allow a litigant to file under seal. *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007).

In *Attestor Master Value Fund LP v. Republic of Argentina*, this Court ordered the sealing of all filings, submissions and other papers related to motions for attachment and turnover filed by certain judgment-creditors of Argentina. *See* Public Docket, Case No. 14-cv-5849, ECF Nos. 98-106, 112, 114-121, 128-146 (each identified only as "sealed document"). The Court's sealing order of July 23, 2021 itself remains under seal, but according to the parties' filings before the Second Circuit, this Court concluded that the sealing of the motion papers was warranted due to the

"'sensitivity of the financial information and the [settlement] negotiations described in the papers.'" *Attestor Master Value Fund LP v. Republic of Argentina*, No. 22-2301, ECF No. 3 at 5, Oct. 5, 2022 (quoting this Court's sealing order of July 23, 2021) (alteration in original); *see also, e.g.*, *id.*, ECF No. 127 at 5-6, Dec. 21, 2022; *id.*, ECF No. 308 at 6-7, Jan. 26, 2024.

The Second Circuit subsequently ordered the sealing and redaction of the parties' appellate briefing related to this Court's attachment and turnover orders in *Attestor*. *See id.*, ECF Nos. 145, 202, 222 (sealing orders granting parties' motions for leave to file their briefs under seal and to file redacted versions on the public docket). Although the Second Circuit did not state the reasons for its sealing orders, both parties had requested sealing on the following grounds: (i) Argentina had a privacy interest in the protection of its confidential financial information; (ii) the presumption of public access should be given minimal weight because (a) information sufficient to file similar attachment motions was already publicly available and (b) any third party's interest in accessing the materials to seek a second priority attachment was minimal because Plaintiffs-Appellees' judgments far exceeded the value of the attached property; and (iii) as this Court had recognized, "maintaining the confidentiality of the attachment proceeding would facilitate potential resolution of the parties' appealed disputes." *Id.*, ECF 190 at 7-11, Feb. 21, 2023 (Plaintiffs-Appellees' motion for leave to file under seal) (noting that "[t]he parties have engaged in discussions about potential resolution, and the confidentiality afforded by the district court have [*sic*] allowed these discussions to continue to proceed unimpeded by public attention and distraction."); *see also id.*, ECF No. 127 at 8-11, Dec. 21, 2022 (Defendant-Appellant's motion for leave to file under seal).

Plaintiffs respectfully request that the Court order the sealing of all filings, submissions and other papers related to their Turnover Motion, as it did with respect to the judgment-creditors' attachment and turnover motions in *Attestor*. Although the papers related to the Turnover Motion

are judicial documents to which the public has a presumptive right of access, the Court should give that presumption little weight here because (i) the Turnover Motion is based entirely on publicly available information and (ii) any third party's interest in accessing the papers is minimal because Plaintiffs' judgment far exceeds the value of Argentina's YPF shares. Moreover, as discussed below, there are three competing considerations that weigh in favor of sealing. *See Lugosch*, 435 F.3d at 120 (district court "must balance competing considerations," including "judicial efficiency," against presumption of public access).

First, the filing of Plaintiffs' Turnover Motion in public view likely would impede the parties' ability to engage in a commercial discussion about the resolution of the Court's judgment. Although Argentina has to date been unwilling to discuss resolution, Plaintiffs have reiterated their continued interest in a commercial solution. Like the *Attestor* parties, Plaintiffs expect that a public filing of their Turnover Motion would attract significant publicity in Argentina because the motion calls into question the Republic's continued majority ownership and control over YPF. Such publicity would further impede the prospects for the parties to have productive discussions.

Second, Argentina's many other judgment-creditors in the United States may file copycat turnover motions seeking the same relief as Plaintiffs. Priority among Argentina's competing judgment-creditors likely will be determined by the chronological order in which they obtain turnover orders with respect to Argentina's YPF shares. *See* CPLR § 5234(c). Plaintiffs already have expended substantial resources—both time and money—in preparing their Turnover Motion. It would be grossly unfair if another judgment-creditor, not having expended these resources, could establish priority over Plaintiffs by copying their Turnover Motion and then relying on the vagaries of the respective courts' calendars.[1]

---

[1] To execute upon Argentina's YPF shares, Plaintiffs must establish that the shares were

4

Third, judicial efficiency supports the sealing of Plaintiffs' Turnover Motion. As already noted, filing the motion in public view could lead to an avalanche of copycat motions, which would consume valuable judicial resources. It might also generate voluminous further litigation between Plaintiffs and Argentina's other judgment-creditors with respect to priority because Plaintiffs' judgment substantially exceeds the value of Argentina's YPF shares. *See generally Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. MC 17-151-LPS, 2023 WL 4826467 (D. Del. July 27, 2023) (discussing the time, complexity, and expense of proceedings to determine the priority of attachments against Venezuela's shares of PDV Holding, Inc.).

In short, the Court should authorize the sealing of Plaintiffs' Turnover Motion in order to preserve the parties' ability to achieve a commercial resolution of this case, minimize the risk of unfairness to Plaintiffs, and conserve valuable judicial resources.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (i) permitting Plaintiffs to file their Turnover Motion and related papers under seal; (ii) directing all future papers relating to the Turnover Motion to be filed under seal; and (iii) causing this memorandum of law in support of the Sealing Motion to be entered into the Court's ECF system under seal.

Dated: April 1, 2024                                              Respectfully,

                                                                              KING & SPALDING LLP

---

"used for the commercial activity upon which [their] claim is based." 28 U.S.C. § 1610(a)(2). Argentina's other judgment-creditors do not need to make this showing, because either: (i) Argentina has contractually waived its immunity from execution; or (ii) the judgment they are seeking to enforce is based on an order confirming an arbitral award. *See* 28 U.S.C. §§ 1610(a)(1), (6). Given the lesser showing that Argentina's other judgment-creditors need to make in order to execute upon the shares, there is a risk that they may obtain turnover orders before Plaintiffs, if Plaintiffs are required to file their Turnover Motion in public view.

5

By:   /s/ *Randy M. Mastro*
Randy M. Mastro
Laura Harris
Thomas C.C. Childs
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2114
Fax: (212) 556-2222
Email: rmastro@kslaw.com
      lharris@kslaw.com
      tchilds@kslaw.com

-and-

Reginald R. Smith
1100 Louisiana Street
Houston, TX 77002
Phone: (713) 751-3200
Fax: (713) 751-3290
Email: rsmith@kslaw.com


KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
Email: mhansen@kellogghansen.com
      dho@kellogghansen.com
      agoldsmith@kellogghansen.com


CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV
706 Duke Street
Alexandria, VA 22314
Phone: (202) 742-8900
Fax: (202) 742-8895
Email: paul.clement@clementmurphy.com

6

        harker.rhodes@clementmurphy.com

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*