**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETERSEN ENERGÍA INVERSORA, S.A.U. and
PETERSEN ENERGÍA, S.A.U.,

                    Plaintiffs,

          - against -

ARGENTINE REPUBLIC and YPF, S.A.,

                    Defendants.

No. 15 Civ. 2739 (LAP)

ETON PARK CAPITAL MANAGEMENT, L.P., ETON
PARK MASTER FUND, LTD., and ETON PARK
FUND, L.P.,

                    Plaintiffs,

          - against -

ARGENTINE REPUBLIC and YPF, S.A.,

                    Defendants.

No. 16 Civ. 8569 (LAP)

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SEAL

## INTRODUCTION

Plaintiffs believe the question of sealing orders in connection with post-judgment proceedings against Argentina needs to be addressed consistently and holistically, and Plaintiffs do not take a particularly strong view about which way the Court should rule here as long as it applies a consistent standard. Argentina is obviously a serial judgment-debtor before this Court, with respect to currently unpaid judgments and prior judgments now resolved. This Court has granted sealing orders in other Argentine post-judgment matters, and Argentina has supported or even requested those orders. Although the orders are themselves sealed, Plaintiffs presume that in addition to the protection of confidential financial information and the facilitation of settlement discussions, another rationale for the sealing orders in those cases was to preserve an orderly post-judgment process and avoid competing creditors rushing to court and engaging in a melee of motion practice to try to be first past the post (including perhaps involving courts in other Districts). Most of those issues are present here as well.

As set out in Plaintiffs' opening brief, the Court has the authority to order sealing of their Turnover Motion in order to preserve the parties' ability to achieve a commercial resolution of this case, minimize the risk of unfairness to Plaintiffs, and conserve valuable judicial resources, and Plaintiffs have requested a sealing order consistent with the Court's past practice in other post-judgment proceedings against Argentina. *See* ECF No. 545 at 3-5.[1] As noted, however, Plaintiffs do not take a particularly strong position on the issue of sealing, should the Court be inclined to revisit its approach as suggested in Argentina's briefing, except that if the Court were to credit Argentina's arguments then Plaintiffs see no justification for the sealing of other Argentine post-

---

[1]     References to the docket herein are references to the docket in *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, Case No. 15-cv-2739.

judgment proceedings and should the Court not unseal them *sua sponte* then Plaintiffs would seek their unsealing as a matter of equity and fairness.

As to YPF's request that it be permitted access to the pending Turnover Motion, Plaintiffs again take no particularly strong position except for a concern that, if apprised of the contents of the motion, YPF might feel compelled to issue a public securities filing that would essentially vitiate any sealing order the Court might make, and there is an obvious chicken-and-egg problem with trying to ascertain the potential of that occurring. Thus, given that the Court is able to satisfy itself that there is nothing in the Turnover Motion that affects YPF's appeal (and we submit there is clearly not) and that YPF does not have any special rights or status simply because Argentina's shares in YPF are at issue in the turnover proceedings, the more prudent course is not to provide YPF with access to the motion papers should the Court issue a sealing order.

At bottom, Plaintiffs have a long road ahead and will doubtless regularly need the Court's assistance given Argentina's history (especially as third-party discovery disputes seem likely soon to bubble up), and Plaintiffs would appreciate as much guidance from the Court as possible about how it would like its engagement to occur, including, for example, whether the Court would prefer to hold monthly status conferences instead of entertaining motion practice about discrete procedural issues such as sealing.

## I.     The Court Should Adopt a Consistent Approach to the Sealing of Post-Judgment Proceedings Against Argentina.

Argentina's contention that *Attestor* is "the <u>sole</u> purportedly relevant sealing precedent involving Argentina", Opp'n Br. at 13 n.12 (emphasis added), is wrong. As Argentina is well aware, this Court has ordered the sealing of all papers related to attachment and turnover motions made by the plaintiffs in at least 15 currently pending cases against Argentina.[2] Although those

---

[2]     *See Attestor Master Value Fund LP v. Republic of Argentina*, Case No. 14-cv-5849; *Bison*

motions apparently all involved the same property, the Court's decision to seal the attachment and turnover proceedings in at least 15 cases against Argentina cannot be dismissed as a "one-off" with only minimal precedential value. To the contrary, the Court's orders in those cases (which remain under seal) suggest that the sealing of post-judgment proceedings against Argentina, a serial judgment-debtor with a host of creditors holding unsatisfied U.S. court judgments, generally is appropriate. Moreover, although Plaintiffs are obviously unable to cite to sealed precedent, we believe that *ex parte* and sealed motions were also regularly employed during the prior phase of Argentine judgment-debtor litigation in the last decade.

Argentina's attempts to distinguish *Attestor* are unavailing. *First*, Argentina asserts that, unlike in *Attestor*, "public access to the motion papers [in this case] will have no impact on the ability of the parties to engage in settlement or 'commercial' discussions in the future," and it contends that Plaintiffs "cannot offer speculation about how publicity could affect hypothetical settlement discussions to justify keeping their motion secret." *Id.* at 11.

Plaintiffs' position that publicity would impede the parties' ability to engage in a commercial discussion is not mere "speculation" and is based upon Argentina's own arguments when it moved (successfully) to seal the post-judgment proceedings in *Attestor*:

> [R]esolution of the parties' dispute is best served from [*sic*] maintaining the confidentiality of the sealed attachment proceedings. As the district court emphasized, the parties have engaged in settlement negotiations to resolve the appealed disputes. *See* Sealing Order. The confidentiality afforded by the district court has facilitated the settlement discussions.

---

*Bee LLC v. Republic of Argentina*, Case No. 18-cv-3446; *Bybrook Capital Master Fund LP v. Republic of Argentina*, Case Nos. 15-cv-2369, 15-cv-7367, 16-cv-1192, 21-cv-2060; *Trinity Investments Ltd. v. Republic of Argentina*, Case Nos. 14-cv-10016, 15-cv-1588, 15-cv-2611, 15-cv-5886, 15-cv-9982, 16-cv-1436; *White Hawthorne, LLC v. Republic of Argentina*, 15-cv-4767, 15-cv-9601, 16-cv-1042; *Bainbridge Fund LTD v. Republic of Argentina*, Case No. 16-cv-8605.

*Attestor Master Value Fund LP v. Republic of Argentina*, No. 22-2301, ECF No. 127 at 11, Dec. 21, 2022 (Motion to Seal filed by Argentina in the Second Circuit). Plaintiffs continue to seek a commercial discussion with Argentina about resolution.[3] Based on Argentina's arguments in *Attestor*, Plaintiffs filed this motion to seal in part to help facilitate such a discussion. Argentina's apparent position that publicity with respect to Plaintiffs' Turnover Motion would not negatively impact a commercial discussion seems peculiar and perhaps motivated by other political considerations.

*Second*, Argentina attempts to distinguish *Attestor* on the ground that it involved confidential financial information. *See* Opp'n Br. at 12-13. While this Court appears to have ordered sealing in part to protect the confidentiality of Argentina's financial information, it could have protected this interest by ordering the redaction of account numbers, balances, and other sensitive financial information contained in the parties' filings, especially as more macro financial information of a government is of course a matter of public record. Instead, the Court ordered the wholesale sealing of all papers related to the attachment and turnover motions in *Attestor*, the same relief sought here.

## II. The Sealing of the Turnover Proceedings is Wholly Supported by Existing Precedent Should the Court Wish to Continue a Sealed Approach to Post-Judgment Proceedings.

Argentina's contention that Plaintiffs' concern about copycat turnover motions is too "speculative" to overcome the presumption of public access, Opp'n Br. at 10-12, is misplaced and presumably inconsistent with Argentina's position in *Attestor*. It is hardly speculative to infer from the history of the Argentine sovereign debt litigation that Argentina's numerous other judgment-

---

[3]     For example, it is a matter of public record that Plaintiffs' representatives met with senior Argentine officials in January 2024. *See* https://audiencias.mininterior.gob.ar/audiencia?id=47343

creditors are likely to leverage Plaintiffs' efforts for their own benefit, resulting in copycat motions and disputes over priority with respect to Argentina's YPF shares. Nor is it speculative to anticipate that another judgment-creditor of Argentina may be able to obtain priority over Plaintiffs in another court, given the vagaries of court calendars.

The cases cited by Argentina in support of its position are inapposite. *First*, Argentina relies upon a cherrypicked and incomplete quotation from *In re Auction Houses Antitrust Litigation*, a case in which the Court ordered unsealing of "the bids submitted by counsel in the course of their competition for the position of lead counsel for the plaintiff class" in an antitrust class action. 158 F. Supp. 2d 364, 364 (S.D.N.Y. 2001). According to Argentina, that Court held that a plaintiff's concern that "disclosure of judicial documents 'might give [other law firms] an unfair competitive advantage in subsequent . . . cases" was too "speculative" to permit sealing. Opp'n Br. at 11. But by truncating the quote, Argentina mischaracterizes the Court's holding. What the Court actually held is that it was "speculative" to conclude that "access to the bids and bidding methodologies of the unsuccessful bidders might give other plaintiffs' firms an unfair competitive advantage in subsequent antitrust cases where the lead counsel position is assigned pursuant to auction." *Auction Houses*, 158 F. Supp. 2d at 367 (internal quotation omitted). This ruling relates to competition between law firms competing to be lead counsel in subsequent class action cases – not competition by parties seeking to execute upon the same assets.

*Second*, Argentina's reliance upon *Jiangsu Steamship Co., Ltd., v. Success Superior Ltd.* also is misplaced. In *Jiangsu*, the plaintiff sought permanent sealing of the Court's decision denying its application for discovery under 28 U.S.C. § 1782, because disclosure "would compromise its ability to obtain pre-judgment security for a potential arbitral award" by alerting other parties to its litigation strategy and thereby enabling them to hide their assets. Case No. 14-

cv-9997, 2015 WL 518567, at *5 (S.D.N.Y. Feb. 5, 2015). The Court noted that "Jiangsu's concerns are not trivial" but did not overcome the presumption of public access, because: (i) the other parties "should not be surprised to be served with a demand for arbitration"; (ii) Jiangsu's § 1782 petition already was a matter of public record; and (iii) the risk of hiding assets was not the kind of "exceptional" interest that justified "withholding the basis of the Court's decision from public scrutiny." *Id.* None of these three factors is applicable here.

Finally, *In re Anthracite Capital* also does not support Argentina's position. In that case, after settling a contested bankruptcy, the parties sought to permanently seal the entire record, including "the settlement agreement and all other documents that have been filed in connection with these Adversary Proceedings." 492 B.R. 162, 179 (S.D.N.Y. 2013). The Court refused to grant a permanent sealing order, although it had ordered temporary sealing of the record during the pendency of the bankruptcy proceedings. *See id.* at 169.

Here, should it so choose, the Court can order sealing of the papers related to Plaintiffs' Turnover Motion only during the pendency of the turnover proceedings in order to minimize any purported interference with the public's ability to monitor the Court's conduct.[4] Accordingly, this case is distinguishable from the cases cited by Argentina in which the Court rejected a defendant's request for the permanent sealing of judicial documents. *See* Opp'n Br. at 12; *Personnel Staffing Grp., LLC v. XL Ins. Am., Inc.*, Case No. 22-cv-10259, 2023 WL 4304688, at *3 (S.D.N.Y. June 30, 2023) (denying respondent's request for sealing of stipulation memorializing the terms of parties' settlement); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 338-39 (S.D.N.Y. 2012) (denying defendant's request for sealing of court order approving settlement of plaintiff's claim

---

[4]     Plaintiffs' proposed sealing order provides for the sealing of all papers relating to the Sealing Motion and the Turnover Motion "pending further Order of this Court." ECF No. 545-1 at 2.

under Fair Labor Standards Act).

Dated: April 16, 2024                    Respectfully,

KING & SPALDING LLP

By:    <u>/s/ *Randy M. Mastro*</u>
Randy M. Mastro
Laura Harris
Thomas C.C. Childs
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2114
Fax: (212) 556-2222
Email: rmastro@kslaw.com
      lharris@kslaw.com
      tchilds@kslaw.com

-and-

Reginald R. Smith
1100 Louisiana Street
Houston, TX 77002
Phone: (713) 751-3200
Fax: (713) 751-3290
Email: rsmith@kslaw.com

KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
Email: mhansen@kellogghansen.com
      dho@kellogghansen.com
      agoldsmith@kellogghansen.com

CLEMENT & MURPHY, PLLC

Paul D. Clement

C. Harker Rhodes IV
706 Duke Street
Alexandria, VA 22314
Phone: (202) 742-8900
Fax: (202) 742-8895
Email: paul.clement@clementmurphy.com
       harker.rhodes@clementmurphy.com

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*