**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA, :
S.A.U. and PETERSEN ENERGÍA, S.A.U., :
                                          :
           Plaintiffs, :
                                            :    Case No.:  1:15-CV-02739 (LAP)
            v. :
                                            :

ARGENTINE REPUBLIC and YPF S.A., :
                                            :
          Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT, :
L.P., ETON PARK MASTER FUND, LTD., :
and ETON PARK FUND, L.P., :
                                            :
          Plaintiffs, :
                                            :    Case No.:  1:16-CV-08569 (LAP)
            v. :
                                            :

ARGENTINE REPUBLIC and YPF S.A., :
                                            :
          Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ARGENTINA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO SEAL

Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
(212) 558-4000

April 12, 2024                            *Counsel for the Argentine Republic*

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ................................................................................................1

**ARGUMENT**........................................................................................................................2

      A.      Plaintiffs' Turnover Motion and All Accompanying Documents Are
            Subject to a Strong Presumption of Public Access. .................................................3

      B.      Plaintiffs' Speculative Claims of Harm to Their Interests Cannot
            Overcome the Strong Presumption of Public Access. ..........................................10

**CONCLUSION** ....................................................................................................................13

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Am. Railcar Indus., Inc.* v. *Gyansys, Inc.*,
  2017 WL 11501880 (S.D.N.Y. May 8, 2017) ...........................................................................4

*In re Anthracite Cap., Inc.*,
  492 B.R. 162 (Bankr. S.D.N.Y. 2013) ...................................................................................11

*In re Auction Houses Antitrust Litig.*,
  158 F. Supp. 2d 364 (S.D.N.Y. 2001)....................................................................................11

*Bernstein* v. *Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016)........................................................................................2, 3, 11

*Cedar Swamp Holdings, Inc.* v. *Zaman*,
  476 F.Supp.2d 303 (S.D.N.Y. 2007)........................................................................................4

*Citibank, N.A.* v. *Aralpa Holdings Ltd. P'ship*.,
  2024 WL 398094 (S.D.N.Y. Feb. 2, 2024).........................................................................3, 4

*E.E.O.C.* v. *Kelley Drye & Warren LLP*,
  2012 WL 691545 (S.D.N.Y. Mar. 2, 2012) ..............................................................................4

*Imig, Inc.* v. *Omi Elec. Appliance Compay Co.*,
  2021 WL 9628853 (E.D.N.Y. Jan. 11, 2021) ...........................................................................4

*Jiangsu Steamship Co.* v. *Success Superior Ltd.*,
  2015 WL 518567 (S.D.N.Y. Feb. 5, 2015)...........................................................................11

*Khelalfa* v. *Gen. Elec. Co.*,
  2021 WL 11660920 (S.D.N.Y. Mar. 22, 2021) .......................................................................4

*Liberty Ins. Underwriters, Inc.* v. *Epiq Ediscovery Sols., Inc.*,
  2020 WL 8513142 (S.D.N.Y. Dec. 1, 2020) ...........................................................................4

*In re Lifetrade Litig.*,
  2023 WL 6160520 (S.D.N.Y. Sept. 21, 2023).......................................................................10

*Lugosch* v. *Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006)......................................................................................2, 9, 10

*Metcalf* v. *TransPerfect Translations Int'l Inc.*,
  2023 WL 7297176 (S.D.N.Y. Nov. 6, 2023)............................................................................3

*In re New York Times*,
828 F.2d 110 (2d Cir. 1987)..........................................................................................5

*Pers. Staffing Grp., LLC* v. *XL Ins. Am., Inc.*,
2023 WL 4304688 (S.D.N.Y. June 30, 2023) ...................................................3, 12

*S.E.C.* v. *Qin*,
2024 WL 1342803 (S.D.N.Y. Mar. 29, 2024) ........................................................3

*Under Seal* v. *Under Seal*,
273 F. Supp. 3d 460 (S.D.N.Y. 2017)....................................................................10

*United States* v. *Amodeo*,
71 F.3d 1044 (2d Cir. 1995)....................................................................3, 10, 13

*United States* v. *Avenatti*,
2020 WL 70952 (S.D.N.Y. Jan. 6, 2020) ...............................................................5

*United States* v. *Erie Cty.*,
763 F.3d 235 (2d Cir. 2014)....................................................................................2

*Wolinsky* v. *Scholastic Inc.*,
900 F. Supp. 2d 332 (S.D.N.Y. 2012)....................................................................12

## PRELIMINARY STATEMENT

By their motion to seal, Plaintiffs ask this Court to take the extraordinary step of keeping from the public *all* papers pertaining to their April 1, 2024 motion seeking to seize the Republic of Argentina's ownership interest in YPF, a company that is one of that nation's most important businesses and vital to its energy production needs.  Plaintiffs' "turnover" motion is of immense importance to Argentina's citizens, YPF shareholders, and many other stakeholders. Plaintiffs' effort to keep their turnover motion secret disregards the strong presumption favoring access to judicial documents in U.S. courts—which they do not dispute—and does not satisfy any of the requirements that have ever justified a broad sealing order such as the one Plaintiffs here seek.

YPF is the largest producer of natural gas and crude oil in Argentina.  In 2012, as the Court knows, the Argentine Congress passed a law declaring 51% of the shares in YPF then held by Repsol to be of "public interest and subject to expropriation."[1]   In 2014, the Republic completed its expropriation of those shares in "the public interest" through a $5 billion settlement with Repsol, which also settled pending minority shareholders' claims and was approved by the Argentine Congress.[2]  All of this was done in broad daylight through the passage of duly enacted laws and widely reported in Argentina and elsewhere.

This case as a whole and the Court's September 15, 2023 judgment have already received extensive coverage by the U.S., Argentine and international press.[3]  Yet, in their sealing motion, Plaintiffs seek to shield their turnover motion from the public, and even from YPF itself,

---

[1]    *See Petersen* ECF No. 363 Ex. 72 (Law No. 26,741) at 3.

[2]    *See Petersen* ECF No. 393 ¶¶ 97-98.

[3]    *See infra* n.11 (citing examples).

arguing that third parties would have no more than a "minimal" interest in Plaintiffs' current effort to seize 51% of YPF's shares.  (Pls.' Sealing Br. at 4.)  This is illogical and plainly incorrect; the Argentine public, YPF and many other stakeholders have a very significant interest in these proceedings.

At bottom, Plaintiffs' speculative interest in concealing their enforcement strategy from other creditors cannot outweigh the strong presumption of public access enshrined in both the U.S. Constitution and the common law.  Because Plaintiffs cannot satisfy the  high standard that they must meet to overcome the public's significant interest in access to court records relating to their turnover motion, the Court should deny their motion to seal.

## ARGUMENT

There is a "'presumption of access' to judicial records [that] is secured by two independent sources:  the First Amendment and the common law." *Bernstein* v. *Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016).  This presumptive right of access to "proceedings and documents of courts is integral to our system of government." *United States* v. *Erie Cty.*, 763 F.3d 235, 238-39 (2d Cir. 2014).

Where, as here, the documents at issue are "judicial documents," courts engage in a two-part analysis:  they (i) "must determine the weight of [the] presumption" of access that attaches and (ii) "balance competing considerations against" the presumption. *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006); *see also Metcalf* v. *TransPerfect Translations Int'l Inc.*, 2023 WL 7297176, at *2 (S.D.N.Y. Nov. 6, 2023) (Parker, M.J.).

### A.  Plaintiffs' Turnover Motion and All Accompanying Documents Are Subject to a Strong Presumption of Public Access.

It is beyond dispute that court papers pertaining to the turnover motion are judicial documents to which the public has a strong presumptive right of access.  "[T]he strong weight to

be accorded the public right of access to judicial documents [is] largely derived from the role those documents play[] in determining litigants' substantive rights—conduct at the heart of Article III— and from the need for public monitoring of that conduct." *United States* v. *Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). "[W]here documents directly affect an adjudication or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith and thus can be overcome only by extraordinary circumstances." *Bernstein*, 814 F.3d at 142 (internal citations omitted).

Courts in this District have accorded a particularly strong presumption of public access to documents submitted in connection with execution or turnover proceedings. *See.*, *e.g.*, *Citibank, N.A.* v. *Aralpa Holdings Ltd. P'ship.*, 2024 WL 398094, at *21-22 (S.D.N.Y. Feb. 2, 2024) (Rochon, J.) (holding that such documents are "plainly 'relevant to the performance of the judicial function'"); *Pers. Staffing Grp., LLC* v. *XL Ins. Am., Inc*., 2023 WL 4304688, at *2 (S.D.N.Y. June 30, 2023) (Oetken, J.) (An "injunction is an extraordinary and drastic remedy and an area where district courts have wide discretion. . . . Unquestionably, it is a formal act of government which therefore should generally be subject to public scrutiny") (internal citation omitted); *S.E.C.* v. *Qin*, 2024 WL 1342803, at *11 (S.D.N.Y. Mar. 29, 2024) (Clarke, J.) ("A motion to compel turnover of assets calls upon the court to exercise its Article III powers and is therefore of value to those monitoring the federal courts.").

Plaintiffs' turnover motion will "directly affect[] the adjudication of [a] post-judgment proceeding[]" and will be "used to determine[] [the Republic's] substantive legal rights." *Citibank, N.A.*, 2024 WL 398094, at *22. The filed documents pertaining to that motion *are* the information and legal argument that Plaintiffs contend should be reviewed by the Court to adjudicate Plaintiffs' request for relief. For that reason, the "presumption of access" to the

information Plaintiffs seek to shield from the public "is at its zenith."  *Id.*; *see also Cedar Swamp Holdings, Inc.* v. *Zaman*, 476 F. Supp. 2d 303, 304 (S.D.N.Y.2007) (Kaplan, J.) ("The presumption is at its strongest when the document in question . . . has been submitted as a basis for judicial decision making.") (citation omitted).

   In the face of this strong presumption of public access, Plaintiffs' request for a blanket sealing order—one that hides from the public *everything* associated with their turnover motion—is without merit.  As federal courts in New York have consistently found, "[t]he blanket sealing of entire documents or all documents . . . is generally disfavored."  *Imig, Inc.* v. *Omi Elec. Appliance Compay Co., Ltd.*, 2021 WL 9628853, at *1 (E.D.N.Y. Jan. 11, 2021); *see also Liberty Ins. Underwriters, Inc.* v. *Epiq Ediscovery Sols., Inc.*, 2020 WL 8513142, at *1 (S.D.N.Y. Dec. 1, 2020) (Liman, J.) (denying request to seal entire agreement); *E.E.O.C.* v. *Kelley Drye & Warren LLP*, 2012 WL 691545, at *4 (S.D.N.Y. Mar. 2, 2012) (Swain, J.) (deeming "wholesale sealing" of judicial documents unwarranted); *Am. Railcar Indus., Inc.* v. *Gyansys, Inc.*, 2017 WL 11501880, at *1 (S.D.N.Y. May 8, 2017) (Nathan, J.) ("[A]ny request for sealing must be narrowly tailored to achieve its aim of preserving confidentiality").  Accordingly, Plaintiffs' request for "blanket sealing of entire judicial documents" that are accorded a "strong presumption of public access" is "inappropriate" and should be denied.  *Khelalfa* v. *Gen. Elec. Co.*, 2021 WL 11660920, at *7 (S.D.N.Y. Mar. 22, 2021) (Vyskocil, J.).

   Plaintiffs wrongly claim that the public's strong interest in obtaining access to the judicial documents pertaining to their turnover motion should be given "little weight" because: "(i) the Turnover Motion is based entirely on publicly available information and (ii) any third party's interest in accessing the papers is minimal because Plaintiffs' judgment far exceeds the value of Argentina's YPF shares."  (Pls.' Sealing Br. at 4.)  But Plaintiffs do not cite a single case

where such considerations played a role in the court's determination of the weight of presumption of public access to be accorded to a judicial document.  Nor could they, because those factors have nothing to do with the reasons why judicial documents are presumed to be public.

As to Plaintiffs' first reason, courts do not weaken the presumption of public access to judicial documents merely because those documents refer to publicly available information (which is often the case).  To the contrary, where, as here, Plaintiffs cannot assert any confidentiality or privacy interest over the facts that ground their motion, they simply have no argument against the strong presumption of public access.  *See United States* v. *Avenatti*, 2020 WL 70952, at *6 (S.D.N.Y. Jan. 6, 2020) (Gardephe, J.) ("In considering whether sealing is appropriate, an important consideration is, of course, whether the information sought to be kept confidential is already public.").  Plaintiffs' claim that sealing is appropriate because the turnover motion is based on publicly available information thus has it backwards.  *See id.* (denying request to seal motion papers since information contained in the documents "ha[s] been the subject of extensive press reports and/or previous court filings publicly docketed"); *In re New York Times*, 828 F.2d 110, 116 (2d Cir. 1987) (holding that "wholesale sealing" was not appropriate where "much of the . . . material contained in the papers [in question] has already been publicized").

As to Plaintiffs' second argument for weakening the presumption of public access, Plaintiffs' assertion that third parties have no interest in the motion because Plaintiffs' judgment exceeds the value of the YPF shares cannot withstand even minimal scrutiny.  Indeed, sealing the turnover motion would affect a number of important constituencies:

- **The Argentine public.**  The citizens of Argentina have an unquestionably  strong interest in these proceedings because of the immense importance of YPF to Argentina's economy and energy production.  Argentina's citizens should be able

to monitor judicial proceedings that seek to (i) reverse the effect of the YPF Expropriation Law passed by the Argentine Congress to place 51% of YPF in private hands; (ii) potentially disrupt Argentina's largest domestic energy producer;[4] and (iii) strip the Republic of an expropriated asset for which it paid $5 billion when the country is already in the midst of substantial economic reforms directed to stabilizing and improving the country's fiscal and monetary outlook.

- **Argentina's hydrocarbon-producing Provinces.** Under the YPF Expropriation Law, 49% of the YPF shares expropriated by the Republic are due to be distributed to Argentina's hydrocarbon producing provinces that are members of the Argentine National Organization of Hydrocarbon Producing States ("OFEPHI").[5] Thus, these 10 provinces (Chubut, Formosa, Jujuy, La Pampa, Mendoza, Neuquén, Río Negro, Salta, Santa Cruz, and Tierra del Fuego), as well as OFEPHI itself, have a substantial interest in monitoring these proceedings.[6]

- **YPF and its current and prospective stakeholders (shareholders, creditors, suppliers, employees, and business partners).** YPF's public shareholders (and ADR holders) likewise have a strong interest in monitoring the turnover proceedings, in which Plaintiffs seek to force a change of control at YPF, which could have a major effect upon (i) the operation and future direction of the business; and (ii) its share price. YPF's creditors have a similar interest in monitoring the

---

[4]      *See* YPF, S.A. SEC 2022 Form 20-F 51, https://www.ypf.com/english/investors/Lists/InformeAnualForm20/YPF%20Form%2020F%202022.pdf.

[5]      *See Petersen* ECF No. 363 Ex. 72 (Law No. 26,741) at 3 (Article 8).

[6]      OFEPHI has submitted an amicus brief to the Second Circuit in support of the Republic expressing its interest in this action.  *See* Case No. 23-7370, ECF No. 89.1.

proceedings.  Under YPF's bond indentures for certain debt offerings, "YPF is required to offer to purchase certain of its outstanding notes . . . at amounts equal to 101% of the principal amount thereof, plus accrued and unpaid interest" upon a change of control.  *See* YPF S.A., 2024 Bond Prospectus at 15.[7]  Likewise, "other indebtedness of YPF may be subject to mandatory prepayment events triggered by [a] change of control."  *Id.*  YPF also has numerous suppliers, more than 23,000 employees,[8] and contracts with many counterparties that have an obvious interest in YPF's governance.[9]

- **The Bank of New York Mellon ("BNYM").**  Through their turnover motion, Plaintiffs seek an injunction from this Court ordering the Republic to "transfer its Class D shares of YPF into a global custody account at The Bank of New York Mellon" and "instruct[ing] BNYM to turn over the shares to Plaintiffs or their designees."  (Pls.' Turnover Br. at 1, 20.)  Plaintiffs further assert that BNYM will be able to accomplish this through its "network of local subcustodians," which are in turn members of "the central securities depositor[ies]" in foreign local markets.  (*Id.* at 19.)  Plaintiffs fail to explain, however, how this Court could enter an

---

[7]     Publicly available at https://www.luxse.com/security/US984245AX84/395350.

[8]     *See* YPF, S.A. SEC 2022 Form 20-F 97, https://www.ypf.com/english/investors/Lists /InformeAnualForm20/YPF%20Form%2020F%202022.pdf.

[9]     The proceedings are also likely to be of interest to the shareholders of Burford and to the various unknown investors who purchased an interest in the *Petersen* and *Eton Park* litigations from Burford.  Burford's share price is highly sensitive to news about these cases.  *See* Alison Frankel, *This Billion-Dollar Case Against Argentina's YPF Wouldn't Exist Without Litigation Funding. Is That a Good Thing?*, REUTERS (Apr. 3, 2023); Burford Press Release (Apr. 2, 2023), *available at* https://www.burfordcapital.com/insights-news-events/news-press-releases/burford-capital-statement-on-ypf-summary-judgment-ruling/ (noting that Burford's share price increased substantially as a result of the Court's judgment).

injunction that requires BNYM, a non-party, to take action without any notice to BNYM based on a motion entirely hidden from public view.

- **Argentina's Executive Branch.**  Members of the Argentine executive branch with involvement in Argentina's economy or energy sector also have a substantial interest in monitoring the turnover proceedings.  While a very small number of officials of the Republic are aware of the sealed information, it is not possible to disseminate the information to all those who oversee the energy sector or the economy as a whole without risking an inadvertent breach of the sealing order.

- **Argentina's Congress.**  Additionally, Argentina's Congress also has a substantial interest in learning about the turnover motion.  Among other things, under the YPF Expropriation Law, Argentina's Congress must approve by a 2/3 majority any transfer of the expropriated YPF shares.[10]

- **Other Sovereigns.**  Other nations who could become subject to U.S. turnover orders have a substantial interest in monitoring proceedings that could broaden the application of U.S. law and U.S. jurisdiction as to assets of a sovereign located in that sovereign's own territory.  Notably, Brazil, Uruguay, Chile and Ecuador have expressed an interest in this matter and submitted amicus briefs in support of the Republic to the Second Circuit, explaining the importance of respecting the prerogatives of foreign sovereigns and international comity.

- **Legal community.**  The legal community in the United States, Argentina and around the world also has a substantial interest in monitoring these proceedings.  In

---

[10]     Under Article 10 of the Expropriation Law, any transfer of the expropriated YPF shares "is prohibited without the permission of the National Congress by a two-thirds vote of its members." *Petersen* ECF No. 363 Ex. 72 (Law No. 26,741) at 3-4.

the Second Circuit, approximately 45 U.S. and Argentine scholars and jurists (among others) have expressed an interest in this matter and submitted amicus briefs in support of the Republic addressed to issues including international comity and the assumption of jurisdiction by U.S. courts over matters occurring in other nations.  The turnover motion, too, raises issues of foreign sovereignty and international comity, and will also be of great interest to members of the legal community that write and practice in these areas.

The very fact that this case is being so closely followed by the Argentine and international press contradicts Plaintiffs' assertion that there would be only "minimal" interest from third parties in their turnover motion.[11]  *See Lugosch*, 435 F.3d at 124 ("We have previously held that 'the First Amendment does secure to the public and to the press a right of access to civil proceedings.'") (quoting *Westmoreland* v. *Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984)).

Plaintiffs' concern that other judgment creditors should not learn about their turnover motion also has things exactly backward.  The fact that the Republic's other creditors may have an interest in the motion is a *reason* the motion should be public, not sealed.  As the Second Circuit has recognized, while there may be those who "seek access to particular information . . . for entirely different reasons [from monitoring public courts]," that fact is immaterial.  *Lugosch*, 435 F.3d at 123 (quoting *Amodeo*, 71 F.3d at 1050).  Simply put, "motive

---

[11]      *See, e.g.*, Florencia Barragán, *Juicio por YPF: ¿Podrían embargar acciones de petrolera, Aerolíneas o recursos naturales?* [*YPF Litigation: Could they attach shares of the oil company, Aerolíneas or natural resources?*], EL CRONISTA (Feb. 29, 2024); Kejal Vyas, *Argentina Owes $16 Billion in Expropriation Suit, U.S. Court Rules*, WALL STREET JOURNAL (Sept. 8, 2023); Bob Van Voris et al., *Argentina Ordered to Pay $16 Billion in U.S. Suit over YPF*, BLOOMBERG (Sept. 6, 2023); Jonathan Stempel, *Argentina Will Not Face $16.1 Billion YPF Judgment in U.S. While It Appeals*, REUTERS (Nov. 21, 2023).

[is] . . . irrelevant to defining the weight accorded the presumption of access." *Id.*; *see also Under Seal* v. *Under Seal*, 273 F. Supp. 3d 460, 470, n.1 (S.D.N.Y. 2017) (Forrest, J.) ("Defendant has accused plaintiff of filing this suit and seeking its unsealing for use in a separate action filed by the defendant in this case.  Regardless of the truth of this accusation, the Second Circuit has held that motive is generally irrelevant to the presumption of access").  The presumption in favor of public access is not overcome merely because other creditors might learn of Plaintiffs' "strategy."

> **B.**     **Plaintiffs' Speculative Claims of Harm to Their Interests Cannot Overcome the Strong Presumption of Public Access.**

In their motion to seal, Plaintiffs fail to show any harm to justify limiting public access to the turnover motion documents.  This Court "must make specific, on the record findings that sealing is necessary to preserve higher values and is narrowly tailored to serve that interest," to overturn the weight that must be accorded to the presumption of public access.  *In re Lifetrade Litig.*, 2023 WL 6160520, at *2 (S.D.N.Y. Sept. 21, 2023) (quoting *Lugosch*, 435 F.3d at 120).  "Higher values" that can warrant sealing in appropriate cases include "personal privacy interests, public safety, the preservation of attorney-client privilege, and the protection of competitively sensitive business information."  *Id.*  Plaintiffs do not claim that any of these "higher values"— which can and do warrant sealing in appropriate cases—are implicated here.  Instead, Plaintiffs offer three of their own novel circumstances they say "weigh in favor sealing," but they cite no law supporting even considering these factors in circumstances similar to those here.  (Pls.' Sealing Br. at 4.)

*First*, Plaintiffs offer the conclusory assertion that public access "would impede the parties' ability to engage in a commercial discussion about the resolution of the Court's judgment." (Pls.' Sealing Br. at 4.)  Not true.  Unlike in the *Attestor* case, as shown below, Plaintiffs' motion has nothing to do with any ongoing "commercial discussion" of resolution of the Court's judgment.

Moreover, public access to the motion papers will have no impact on the ability of the parties to engage in settlement or "commercial" discussions in the future.  Particularly in the light of the high public interest in this litigation, Plaintiffs cannot offer speculation about how publicity could affect hypothetical settlement discussions to justify keeping their motion secret.  *See Bernstein*, 814 F.3d at 144-45 (2d Cir. 2016) ("[C]onclusory assertions are insufficient to justify deprivation of public access to the record.") (internal quotations omitted).

> *Second*, Plaintiffs claim that "Argentina's many other judgment-creditors in the United States may file copycat turnover motions seeking the same relief as Plaintiffs" and that it would be "unfair if another judgment-creditor . . . could establish priority over Plaintiffs by copying their Turnover Motion."  (Pls.' Sealing Br. at 4.)  This, too, is not a reason to deny public access.  Plaintiff's concern that "public disclosure of [documents] would compromise its ability . . . to enforce any award that might be entered . . . [by revealing] its litigation strategy . . . fail[s] to overcome the presumption of public access to judicial documents." *Jiangsu Steamship Co.* v. *Success Superior Ltd*., 2015 WL 518567, at *5 (S.D.N.Y. Feb. 5, 2015) (McMahon, J.); *see also In re Anthracite Cap., Inc*., 492 B.R. 162, 173 (Bankr. S.D.N.Y. 2013) (seeking to avoid "providing third parties with a litigation advantage in outside actions does not justify sealing a court document"); *In re Auction Houses Antitrust Litig*., 158 F. Supp. 2d 364, 367 (S.D.N.Y. 2001) (Kaplan, J.) (finding concern that disclosure of judicial documents "might give [other law firms] an unfair competitive advantage in subsequent . . . cases" speculative).  In any event, Plaintiffs' concern that another creditor could swoop in based on the supposed "vagaries" of court calendars is entirely speculative.  (Pls.' Sealing Br. at 4.)  One party's litigation "strategy," even if novel and likely to be copied, has never been ground for keeping judicial records sealed and unavailable to third parties.

*Third*, Plaintiffs say that "filing the motion in public view *could* lead to an avalanche of copycat motions" and "*might* also generate voluminous further litigation."  (Pls.' Sealing Br. at 5) (emphasis added).  But a party's "fear of copycat lawsuits . . . does not suffice to defeat the presumption of public access to judicial documents."  *Pers. Staffing Grp., LLC*, 2023 WL 4304688, at *3 (internal quotations omitted).  Simply put, "fear that disclosure will prompt additional litigation . . . is too speculative and insufficient to justify sealing."  *Wolinsky* v. *Scholastic Inc*., 900 F. Supp. 2d 332, 339 (S.D.N.Y. 2012) (Furman, J.) (internal quotations omitted).  Moreover, if the motion is as important and interesting to other litigants as Plaintiffs claim, this cuts in favor of public access, not a blanket order to seal the papers.

In the end, Plaintiffs are left to hang their hat on the *Attestor* case where this Court and the Second Circuit ordered the sealing of filings based on motions, *made by both the plaintiffs in that case and the Republic*, demonstrating the sensitivity of the financial information sought to be sealed.  (*See* Pl's Sealing Br. at 2-3 (*citing Attestor Master Value Fund LP* v. *Republic of Argentina*, No. 22-2301 (2d Cir.), ECF No. 3, 190, 308).)  But the Republic's position in *Attestor* is entirely consistent with its position here because *Attestor* involved confidential information:  in *Attestor*, sealing was justified by the "sensitivity of the financial information and the [settlement] negotiations described in the papers."  (*Attestor*, No. 22-2301, ECF No. 3 at 4.)  In particular, the "financial information, including information related to accounts" there at issue was information "traditionally considered private," which "weigh[s] more heavily against access."  *Id.* at 7 (citing *Amodeo*, 71 F.3d at 1050).  Here, by contrast, Argentina's ownership of YPF shares is public information (Pls.' Sealing Br. at 4), and Plaintiffs do not identify *any* sensitive financial information requiring non-disclosure.  *Id*.  Nor can Plaintiffs contend that there is any sensitivity around their intention to enforce this Court's judgment against the Republic (*see, e.g.*, *Petersen*

ECF No. 521 (Pls.' Opp. to Motion to Stay Execution of Judgment)) or any settlement negotiations, which Plaintiffs concede have not occurred (Pls.' Sealing Br. at 4).[12]

## CONCLUSION

For the foregoing reasons, this Court should deny the Plaintiffs' motion to seal and direct that all papers submitted to date in connection with Plaintiffs' turnover and sealing motions be publicly filed.

Respectfully,

Dated:  April 12, 2024                    */s/ Robert J. Giuffra, Jr.*
                                          Robert J. Giuffra, Jr.
                                          Sergio J. Galvis
                                          Amanda F. Davidoff
                                          Thomas C. White
                                          Adam R. Brebner

                                          SULLIVAN & CROMWELL LLP
                                          125 Broad Street
                                          New York, New York  10004-2498
                                          Telephone:    (212) 558-4000
                                          Facsimile:    (212) 558-3588

                                          *Counsel for the Argentine Republic*

---

[12]    In a letter filed today, Plaintiffs hinted at a new argument that they promised to "elaborate in their forthcoming Reply":  that "what is most important here is a consistent approach across the various cases pending against Argentina, in which a number of such sealing orders have been granted."  (*Petersen* ECF No. 551 at 1-2.)  This argument appears nowhere in Plaintiffs' motion, which cites to *Attestor* as the sole purportedly relevant sealing precedent involving Argentina.  But Plaintiffs should not be permitted to shift the grounds for their motion on Reply, and, in all events, the absence of a basis for sealing these proceedings turns on the facts here, not on the facts of prior cases involving the Republic where sealing was appropriate.  In prior cases, courts granted sealing because the papers relied on confidential information, unlike here.