# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 1 0036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Randy M. Mastro
Partner
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

May 7, 2024

*Via CM/ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739;
*Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Your Honor:

We regret needing to return to the Court again with respect to the Republic's non-compliance with Plaintiffs' document requests. We continue to try to resolve discovery disputes without the Court's involvement despite the Republic's ongoing intransigence—having now met and conferred 12 times since service of our document requests in October, with only 925 documents produced to date—but the Republic has flatly refused to produce two significant categories of documents. Given the importance of these two categories of documents to Plaintiffs' worldwide enforcement efforts, we respectfully request a pre-motion conference.[1]

## I.   Documents Related to Alter-Ego Relationships

Requests 31-77 seek documents related to whether six specified state-owned enterprises (the "SOEs") are alter egos of the Republic: Requests 31-39 seek documents concerning the relationship between the Republic and each of the SOEs, and Requests 40-77 seek targeted information concerning the Republic's relationship with each SOE.

---

[1] The parties continue to meet and confer regarding other categories of documents, which may require further petitions to the Court to compel the Republic's compliance. Plaintiffs wish to proceed in a manner that would be most efficient for the Court, whether by monthly status reports or seriatim motions to compel.

Hon. Loretta A. Preska
May 7, 2024
Page 2

The Republic refused to produce *any* documents responsive to Requests 31-77 in its Responses and Objections (the "Objections") served on November 15, 2023, insisting that the SOEs "are not alter egos of the Republic and therefore their assets are not subject to attachment or execution to satisfy a judgment against the Republic." *See, e.g.*, Obj. at 43, 56. The Republic's position is that roughly a decade ago—or more—certain courts determined that the SOEs were not alter egos of the Republic and that ends the matter. But that is not the law.

Plaintiffs seek this discovery to determine whether any of the SOEs is *currently* an alter ego of the Republic, such that its assets are available to satisfy the judgment. In *OIEG*, the district court concluded that it must evaluate anew whether PDVSA was the alter ego of Venezuela in light of recent political developments, although the issue had previously been decided only a few years earlier, because the circumstances relevant to an alter ego analysis "can change at any time." *See, e.g.*, *OI Euro. Grp. B.V. v. Bolivarian Rep. of Venezuela ("OIEG")*, 663 F. Supp. 3d 406, 438-39 (D. Del. 2023); *see also Crystallex Int'l Corp. v. PDV Holding Inc.*, 2019 WL 6785504, at *6-8 (D. Del. Dec. 12, 2019) (August 2018 alter ego decision did not estop Venezuela from relitigating the issue in 2019). In affirming, the Third Circuit emphasized that alter ego analysis "should consider all relevant facts up to the time of the service of the writ of attachment," because "a state determined to avoid creditors might simply drop vulnerable assets into a new instrumentality." 73 F.4th 157, 171-72 (3d Cir. 2023) (cleaned up).

Here, four of the five court decisions on which the Republic relies were issued at least 12 years ago and the fifth decision is almost nine years old. Argentina has had four presidential administrations over the last decade (Kirchner, Macri, Fernandez, and Milei), each with radically different political agendas. These dated rulings do not resolve the question of whether any of the SOEs is presently an alter ego of the Republic; nor can they foreclose necessary discovery on the question given its significance to Plaintiffs' enforcement efforts. Plaintiffs request that the Court order the Republic to produce documents responsive to Requests 31-77.

## II.   Documents Related to Alleged Military, Diplomatic and Consular Assets

Requests 13-30 seek documents related to the Republic's assets located outside of Argentina. The Republic initially refused to produce any documents concerning assets that it deemed military, diplomatic, or consular in nature, on the

Hon. Loretta A. Preska
May 7, 2024
Page 3

ground that such documents are not "relevant to identifying attachable or executable assets." *See, e.g.*, Obj. at 25. Following the Court's admonition that the parties "talk between yourselves about diplomatic and military [assets]" (Tr. at 32:5-6), the Republic ultimately agreed to produce documents by June 3, 2024.[2] Once the parties had submitted their status update to the Court, the Republic informed Plaintiffs that it would only produce documents concerning its military, diplomatic, and consular real-estate holdings and movable assets, and would withhold documents concerning financial accounts if it unilaterally determines they are immune from execution in the jurisdictions in which they are located.

As Plaintiffs explained the first time this issue was before the Court, *see* ECF No. 539, the Republic's position squarely conflicts with binding Supreme Court precedent holding that a foreign state's "self-serving legal assertion" that an asset is immune from execution does not preclude discovery about that asset. *Rep. of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 144-45 (2014). In so holding, the Court noted that "[i]f, bizarrely, NML's subpoenas had sought only 'information that could not lead to executable assets in the United States or abroad,' then Argentina likely would be correct to say that the subpoenas were unenforceable . . . because information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." *Id.* at 144. Requests 13-30 are plainly not so circumscribed: discovery concerning diplomatic and military accounts can lead to the identification of attachable assets regardless of whether a particular account is itself attachable. Moreover, Argentina is not—and cannot be—the unilateral and ultimate arbiter of whether its accounts are used solely for military, diplomatic, or consular purposes and are therefore immune from execution under applicable law.[3] *See, e.g.*, *Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, No. 10-cv-5256, 2011 WL 4111504, *20-21 (S.D.N.Y. Sept. 13, 2011) (ordering Laos to produce documents concerning U.S. bank accounts held by its embassy "to determine if that property is, in fact, immune"). Accordingly, Plaintiffs respectfully request that the Court order production of documents concerning all of the Republic's financial accounts outside Argentina.

---

[2] Plaintiffs made clear during the meet and confer process that they do not seek documents relating to the Republic's military equipment.

[3] Argentina does not and cannot dispute that a mixed-use financial account may be susceptible to execution under the law of the jurisdiction in which it is held.

Hon. Loretta A. Preska
May 7, 2024
Page 4

                                        Respectfully,

                                        */s/ Randy M. Mastro*
                                        Randy M. Mastro