# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 9, 2024

Via ECF

The Honorable Loretta A. Preska,
    United States District Court for the Southern District of New York,
        500 Pearl Street,
            New York, NY  10007.

      Re:    *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP)

Dear Judge Preska:

      On behalf of the Argentine Republic, I respond to Plaintiffs' May 7, 2024 letter ("Ltr."; *Petersen* ECF No. 568) requesting a pre-motion conference regarding a motion to compel post-judgment discovery related to (i) purported "alter-ego relationships" between the Republic and six specified entities majority or wholly owned by the Republic (the "Entities"),[1] even though federal courts have found that those Entities are *not* the Republic's alter egos, and (ii) bank accounts outside of Argentina and the United States that the Republic uses to support its military, diplomatic, and consular operations.  Because Plaintiffs' requests for these documents are not calculated to assist in collecting on their judgment, the Court should deny their request for a pre-motion conference.

      Over the past several months, the Republic has worked diligently to respond to Plaintiffs' overbroad and invasive document requests, including by, among other things, searching for and producing deeds for diplomatic, consular, and military properties and information about assets similarly used for diplomatic, consular, and military purposes.  To produce such documents and information, the Republic contacted multiple ministries, secretariats, and offices within its

---

[1]    The Entities are YPF, Aerolíneas Argentinas S.A. ("AA"), Empresa Argentina de Soluciones Satelitales S.A. ("ARSAT"), Banco Central de la República Argentina ("BCRA"), Banco de la Nación Argentina ("BNA"), and Energía Argentina Sociedad Anónima ("ENARSA").

The Honorable Loretta A. Preska                                                                                                    -2-

government and produced over 20,000 pages of post-judgment discovery.[2]  But post-judgment discovery has limits, which Plaintiffs' latest demands far exceed.

      1.  Plaintiffs first claim that the Republic must produce documents related to alleged "alter ego" relationships between the Republic and the Entities.  (Ltr. at 2.)  But federal courts have determined that each of the Entities is *not* an alter ego of the Republic.  *See NML Cap., Ltd.* v. *The Republic of Argentina*, 2015 WL 7731779, at *4 (N.D. Cal. Dec. 1, 2015) (YPF); *Seijas* v. *Republic of Argentina*, 2009 WL 10700009, at *2 (S.D.N.Y. Aug. 19, 2009) (Griesa, J.) (AA); *Hercaire Int'l, Inc.* v. *Argentina*, 821 F.2d 559, 565 (11th Cir. 1987) (same); *NML Cap., Ltd.* v. *Republic of Argentina*, 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011) (Griesa, J.), vacated and remanded on mootness grounds, 497 F. App'x 96 (2d Cir. 2012) (ARSAT); *EM Ltd.* v. *Banco Central de la República Argentina*, 800 F.3d 78, 94–95 (2d Cir. 2015) (BCRA); *Seijas* v. *Republic of Argentina*, 502 F. App'x 19, 22 (2d Cir. 2012) (BNA); *NML Cap., Ltd.* v. *Republic of Argentina*, 892 F. Supp. 2d 530, 533 (S.D.N.Y. 2012) (Griesa, J.) (ENARSA).  And to the extent that Plaintiffs seek discovery into BCRA's assets held for its own account, those assets are immune from attachment or execution under 28 U.S.C. § 1611(b)(1).

      Plaintiffs do not claim that any of the facts upon which these decisions were based have changed.  Instead, Plaintiffs rely on cases (Ltr. at 2) where a court first found that Venezuela's state-owned oil company (PDVSA) *was* its alter ego and later permitted Venezuela to relitigate this finding after showing a dramatic change in the relationship between PDVSA and the Venezuelan government.  *See Crystallex Int'l Corp.* v. *PDV Holding Inc.*, 2019 WL 6785504, at *1, *3, *7 (D. Del. Dec. 12, 2019) (after U.S. government recognized a different legitimate president of Venezuela, permitting new government to relitigate PDVSA's alter ego status because "things [were] not at all the same"); *OI Euro. Grp. B.V.* v. *Bolivarian Rep. of Venezuela ("OIEG")*, 663 F. Supp. 3d 406, 411, 419 (D. Del. 2023) (reconsidering alter ego finding based on "developments in Venezuela and the United States" including the old government's loss of all control of PDVSA's U.S. property).  These cases have no bearing here, where the reasons for the court decisions rejecting the alter-ego claims have not changed in any way that would affect the separate status of the Entities.  For example, the finding that BNA was not an alter ego of the Republic rested on language in BNA's charter that remains in its charter to this day.  *See Seijas*, 502 F. App'x at 22.  The fact that there have been "four presidential administrations" with different "political agendas" (Ltr. at 2) says nothing about the Republic's relationship with these Entities.  Nor is there any basis for Plaintiffs' speculation (Ltr. at 2) that the Republic may try to "drop vulnerable assets into a new instrumentality."  *OIEG*, 73 F.4th 157, 171 (3d Cir. 2023).

---

[2]    In criticizing the number of individual documents the Republic has produced (Ltr. at 1), Plaintiffs ignore that most of their requests seek "documents sufficient to identify" particular assets and thus result (after substantial work) in production of "only a limited set of materials."  *Hedgeye Risk Mgmt., LLC* v. *Dale*, 2023 WL 4353076, at *2 (S.D.N.Y. July 5, 2023) (Lehrburger, J.).

The Honorable Loretta A. Preska                                                                                          -3-

   Because Plaintiffs have made no showing calling into question the conclusions of multiple courts that each of the Entities is not the Republic's alter ego, the Court should not permit Plaintiffs to seek discovery that is "simply not 'relevant' to execution in the first place." *Republic of Argentina* v. *NML Capital, Ltd.*, 573 U.S. 134, 144 (2014).[3]

   2. The Republic has already produced substantial information about its diplomatic, consular, and military-related assets in foreign countries. Plaintiffs now seek documents "concerning all of the Republic's financial accounts outside Argentina," including those used only for diplomatic, consular, and military purposes. (Ltr. at 3.) But discovery regarding accounts maintained in the names of the Ministry of Foreign Affairs, Embassies and Consulates, as well as for the Armed Forces, is a bridge too far. Such discovery would not "assist" Plaintiffs in collecting on the judgment in these actions, *Gujarat*, 2022 WL 1567464, at *8, because "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." *NML*, 573 U.S. at 144.

   In both the United States and elsewhere, diplomatic, consular, and military property receive high levels of protection from attachment and execution. *See, e.g.*, Vienna Convention on Diplomatic Relations (Apr. 18, 1961), Arts. 22, 24, 27; Vienna Convention on Consular Relations (Apr. 24, 1963), Arts. 31, 33, 35; 28 U.S.C. § 1611(b)(2). The Republic's judgment creditors have previously tried to attach diplomatic and consular bank accounts in foreign jurisdictions. French, Belgian and German courts have rejected such efforts, because, just as in the United States and in other countries that are parties to the Vienna treaties, such accounts are not "executable under the relevant jurisdiction's law." *NML*, 573 U.S. at 144. Here, in trying to attach the Republic's bank accounts used for diplomatic, consular, and military operations in foreign countries, Plaintiffs seek to make mischief by disrupting the Republic's sovereign activities while courts in those other countries resolve their attachment applications—concerns that are magnified in attempts to attach this specific type of property, as funds in those accounts are used to support critical sovereign functions. In light of the substantial "comity interests" at stake, *id.* at 146 n.6, this Court should not compel the Republic to produce documents about its military, diplomatic, and consular bank accounts in foreign countries, because such discovery would not be "relevant" or "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

   Because Plaintiffs have not shown their entitlement to either of the two categories of post-judgment discovery that they now seek, the Court should deny their request for a pre-motion conference.

---

[3] Even if any of the Entities were alter egos, their U.S. assets would be immune from execution under the FSIA because their assets could not satisfy the only exception to execution immunity that is potentially relevant here. *See* 28 U.S.C. § 1610(a)(2). Thus, by any measure, Plaintiffs' requests are so far attenuated from any attachable assets that they cannot be "calculated to assist in collecting on [the] judgment." *Gujarat State Petroleum Corp. Ltd.* v. *Republic of Yemen*, 2022 WL 1567464, at *8 (S.D.N.Y. May 18, 2022) (Abrams, J.).

The Honorable Loretta A. Preska                                                                                          -4-

                                                                                                  Respectfully,

                                                                                            */s/ Robert J. Giuffra, Jr.*
                                                                                            Robert J. Giuffra, Jr.

cc:      Counsel of Record (via ECF)