**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA,   :
S.A.U. and PETERSEN ENERGÍA, S.A.U., :
                                  :

         Plaintiffs,        :
                                    :   Case No.:  1:15-CV-02739 (LAP)
          v.           :

ARGENTINE REPUBLIC and YPF S.A.,  :
                                    :

         Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT, :
L.P., ETON PARK MASTER FUND, LTD.,:
and ETON PARK FUND, L.P.,        :
                                    :

         Plaintiffs,        :
                                    :   Case No.:  1:16-CV-08569 (LAP)
          v.           :

ARGENTINE REPUBLIC and YPF S.A.,  :
                                    :

         Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ARGENTINA'S [PROPOSED] SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION AND TURNOVER

Robert J. Giuffra Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
(212) 558-4000

June 14, 2024                          *Counsel for the Argentine Republic*

In their Reply (*Petersen* ECF No. 587; *Eton Park* ECF No. 513), Plaintiffs distort U.S. and Argentine law.  They improperly raise completely new arguments—including  through new reports from Argentine law experts who did not submit declarations with Plaintiffs' moving papers—about the applicability of international comity to their motion and the YPF Expropriation Law's prohibition on transfer of the YPF Shares.[1]  And they advance new and incorrect interpretations of both the FSIA and the New York CPLR.  The Republic writes briefly to demonstrate why Plaintiffs' new arguments do not come close to supporting the extraordinary relief that they seek:  an unprecedented turnover order requiring the Republic to transfer its YPF Shares from Argentina to the United States.

1.     ***This Court cannot enjoin a foreign sovereign to act within its own territory, much less order a foreign sovereign to violate or revise its own laws.***  Despite seeking an order requiring the Republic to violate (or revise) its own laws, Plaintiffs' opening brief failed even to mention long-recognized considerations of international comity governing the enforcement of judgments against foreign sovereigns.   In their Reply, Plaintiffs make the breathtaking argument that the FSIA somehow overrides all considerations of international comity and international law.  (Reply 3.)  Not true.  Courts from the Supreme Court, to the Second Circuit, to this Court have held exactly the opposite:  the FSIA does not eliminate the need to consider principles of international comity in enforcing judgments against foreign sovereigns.  *See Republic of Argentina* v. *NML Cap., Ltd.*, 573 U.S. 134, 146 n.6 (2014) (courts "may appropriately consider comity interests" in ordering discovery permitted by the FSIA); *Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014) ("Argentina—like all foreign

---

[1] All defined terms have the same meaning set forth in the Republic's Opposition to Plaintiffs' Motion for Injunction and Turnover ("Opposition"; *Petersen* ECF No. 577).

sovereigns—is entitled to a degree of grace and comity" in the enforcement of judgments); *Thai Lao Lignite (Thailand) Co., Ltd.* v. *Gov't of Lao People's Democratic Republic*, 2013 WL 1703873, at *7 (S.D.N.Y. Apr. 19, 2013) (Wood, J.) ("[c]omity concerns . . . support a finding that" FSIA § 1610(a) exception did not apply to the enforcement of a judgment against a foreign sovereign).

Plaintiffs wrongly assert that the Second Circuit's (now vacated) *Peterson* decision limits courts to consideration of "comity concerns" in connection with efforts to enforce judgments against *non-sovereign third-party garnishees.* (Reply 4.) The issue in *Peterson* was the enforcement of a judgment against a third-party, but the very footnote Plaintiffs cite makes clear that the comity questions left open by the FSIA include whether "a court order will infringe on sovereign interests of a foreign state." *Peterson* v. *Islamic Republic of Iran*, 876 F.3d 63, 94 & n.23 (2d Cir. 2017), *vacated on other grounds*, *Clearstream Banking S.A.* v. *Peterson*, 140 S. Ct. 813 (2020).

In their Reply, Plaintiffs also ignore that since their creation, U.S. courts have long followed the basic principle of international law that "[t]he jurisdiction of [a] nation within its own territory is necessarily exclusive and absolute.  It is susceptible of no limitation not imposed by itself." *Republic of Philippines* v. *Westinghouse Elec. Corp.*, 43 F.3d 65, 79 (3d Cir. 1994) (quoting *Schooner Exch.* v. *M'Faddon*, 11 U.S. 116 (1812)); *see In re Austrian, German Holocaust Litig.*, 250 F.3d 156, 165 (2d Cir. 2001) ("It is not the office of the court. . . to decide what legislation should be enacted [by a foreign sovereign]").

To try to evade this bedrock principle of international law, Plaintiffs also cite patently inapposite cases where U.S. courts were unwilling to recognize foreign limitations on

U.S. court jurisdiction on actions against sovereigns *within the United States*.[2]  This case does not involve a *post hoc* attempt by a foreign court or legislature to undermine or limit the jurisdiction of a U.S. court against a sovereign; rather, it involves the basic application of a long-settled doctrine that U.S. courts should not, by injunction, turnover or otherwise, dictate the actions of a foreign sovereign in its own territory.

> 2.      *Article 10 of the YPF Expropriation Law is not limited to "the allocation of power between Argentina's legislative and executive branches."*  (Reply 5.)  Plaintiffs' opening brief cited to the YPF Expropriation Law, but ignored its prohibition on future transfers of the YPF Shares without a two-thirds vote of the Argentine Congress.  Now, on reply, Plaintiffs offer a conclusory opinion on this Argentine statute from their favorite expert, Professor Alberto Bianchi, who this Court observed during the damages hearing as he tried to extricate himself from his prior sworn declarations.  Without citing any Argentine law, Professor Bianchi conclusorily states that no court—in Argentina or the United States—must follow Article 10 of the YPF Expropriation Law's actual terms because he believes it does not apply to court-ordered transfers, even though this "Bianchi-created" exception is contrary to the text of that law.  (*Petersen* ECF No. 588, at ¶¶ 5, 7 (May 30, 2024).)

As explained in the declaration of Professor Alfonso Santiago submitted in opposition to the parallel motion filed in *Bainbridge Fund Ltd.* v. *Argentina*, Case No. 16-cv-8605, ECF No. 121 (S.D.N.Y. June 11, 2024) (Preska, J.) ("Santiago II," attached as Exhibit A hereto),

---

[2] *See Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 60 (2d Cir. 2004) (rejecting "collusive" attempt by Turkish court to interfere with U.S. court's jurisdiction in the U.S.); *Simon* v. *Republic of Hungary,* 911 F.3d 1172, 1180 (D.C. Cir. 2018), *vacated on other grounds*, 592 U.S. 207 (2021) (addressing novel prudential "exhaustion" argument in context of jurisdictional immunity to suit against foreign sovereign in U.S. courts); *De Csepel* v. *Republic of Hungary*, 27 F.4th 736, 753 (D.C. Cir. 2022) (same).

nothing in the YPF Expropriation Law (or any other provision of Argentine law) limits the application of Article 10 to "voluntary share transfers" (Reply 2) by the Argentine executive branch.  Rather, Article 10 prohibits "*any* future transfer of the shares" "without the permission of the National Congress by a two-thirds vote of its members."  Santiago II ¶ 6 (quoting YPF Expropriation Law) (emphasis added).

In Argentina, as in the United States, courts must apply duly enacted laws unless those laws violate the nation's constitution.  Santiago II ¶ 7.  Because the YPF Expropriation Law does not violate the Argentine Constitution, an Argentine court would apply Article 10 to prohibit the transfer of the Republic's YPF Shares to private parties in response to a U.S. court order unless at least two-thirds of the Argentine Congress approved that transfer.  Santiago II ¶¶ 7–10.

### 3. *Plaintiffs misread 28 U.S.C. § 1610 to include sovereign property located outside the United States.*

In their Reply, Plaintiffs claim, also for the first time, that FSIA § 1610(a)'s exception to immunity from attachment or execution not only does not require property to be in the United States when "used" for a commercial activity, it does not even require that this commercial activity be conducted by the sovereign itself.  (Reply 7–10.)

Plaintiffs misread the language and context of the FSIA.  By its terms, § 1610(a) applies only to "[t]he property **in the United States** of a foreign state . . . used for a commercial activity **in the United States**."  (Emphases added.)  Numerous courts have held that the plain language of § 1610(a) and the FSIA's context requires *both* that the property be "in the United States" **and** "used for a commercial activity" here *by the foreign sovereign*.[3]  Indeed, Plaintiffs'

---

[3] *See Rubin* v. *Islamic Republic of Iran*, 830 F.3d 470, 480 (7th Cir. 2016) (emphasis added) ("A foreign state may lose its execution immunity only by *its own* commercial use of its property *in the United States*."); *Casa Express Corp.* v. *Bolivarian Republic of Venezuela*, 2023 WL 9228326, at *8 (S.D. Fla. Nov. 27, 2023) (emphasis added) (judgment-creditor's argument that § 1610(a)

reading of § 1610(a)'s exception—claiming that it is somehow broader than § 1605(a)'s exception to jurisdictional immunity (Reply 10)—is exactly backwards because execution immunity under the FSIA is *narrower* than jurisdictional immunity.  (*See* Opp. 13–14) (citing cases).

Ultimately, Plaintiffs' argument confirms how untethered from the FSIA their own theory is:  they cite no cases where a foreign sovereign "used" its property in its own territory and a judgment creditor was allowed to attach that property based on the commercial activities of a third party in the United States.  Tellingly, Plaintiffs' sole authority is a *dissent* in a Fifth Circuit case.  (Reply 6–7.)  The *majority opinion* in that very case, *Conn. Bank. of Commerce* v. *Republic of Congo*, 309 F.3d 240 (5th Cir. 2002), held the opposite—that "[t]o use property for a commercial activity, within the ordinary meaning of 'use', would be to put the property in the service of the commercial activity, to carry out the activity by means of the property."  *Id.* at 254.  The Second Circuit has "agree[d]" that § 1610(a) requires that "*the sovereign* actively *utilize* that property in service of that commercial activity," and not that the property "merely. . . relate to commercial activity in the United States."  *Exp.-Imp. Bank of the Republic of China* v. *Grenada*, 768 F.3d 75, 90 (2d Cir. 2014) (first emphasis added).

---

"does not explicitly require that the commercial activity with respect to property *in the United States* of a foreign state be actually carried out by the foreign state" "violates the well-established canon of statutory construction that context must be taken into account"); *see also Exp.-Imp. Bank* v. *Grenada*, 768 F.3d 75, 89 (2d Cir. 2014) (funds not attachable because "they are used to serve public purposes, ***and*** that use takes place in Grenada") (emphasis added); *Thai Lao Lignite*, 2013 WL 1703873, at *6 ("In order to be subject to attachment, the [property] must be *both* (1) used for a commercial activity and (2) used in the United States.") (emphasis in original); *Aurelius Cap. Partners, LP* v. *Republic of Argentina*, 2010 WL 768874, at *2, *4 (S.D.N.Y. Mar. 5, 2010) (Griesa, J.).  Plaintiffs try to distinguish *Thai Lao Lignite* and *Aurelius* by claiming that they had no "occasion to distinguish between the 'use' of the property at issue and the 'commercial activity' for which it was used" (Reply 7 n.2), but that is wrong.  For example, in *Aurelius*, in interpreting § 1610(a), Judge Griesa reasoned that "even if the property is being used for commercial activity, this use is not occurring in the United States."   2010 WL 768874, at *4.

This settled law dooms Plaintiffs' extraordinary turnover motion:  none of YPF's alleged "commercial activity" in the United States is either carried out "by means of" the YPF Shares or is performed by "the sovereign." *Conn. Bank*, 309 F.3d at 254–55; *see Exp.-Imp. Bank*, 768 F.3d at 90.  Plaintiffs have offered nothing to the contrary or shown how, as a matter of Argentine law, the Republic's YPF Shares could ever be used to "direct" YPF's activity as they claim (Reply 8).  With their Reply, Plaintiffs introduce an entirely new expert report from Dr. Alfredo Rovira to attempt to try to show this "direction" by the Republic, but Dr. Rovira's opinion is wrong, for the reasons explained by Dr. Manóvil both in his May 16, 2024 report (*Petersen* ECF No. 579) and in his June 11, 2024 report filed in opposition to the parallel motion in *Bainbridge*. *Bainbridge*, ECF No. 120 ("Manóvil II," attached as Exhibit B hereto).  As Dr. Manóvil makes clear, "[t]o equate the Republic's position as a controlling shareholder in YPF as 'directing' YPF finds no support under (and indeed is contradicted by) Argentine law."  (Manóvil II ¶ 15.)  Thus, "Dr. Rovira does not identify even one instance where the Republic has actually utilized its shares in YPF to 'direct' any commercial action (in the United States or elsewhere), let alone any activity infringing on the role of YPF's directors."  (*Id.* ¶ 16.)

4.    ***Plaintiffs are wrong in claiming the Republic "used its [YPF] shares to effectuate" the breach of the tender offer requirement in YPF's bylaws.***  (Reply 13.)  The supposed "breach" on which Plaintiffs' judgments are based is the April 16, 2012 "exercise[]" of "control" by the Republic, which the Court held was effected by the Intervention Decree issued on that date.  (Sept. 8, 2023 Order (*Petersen* ECF No. 493) at 25.)  The Republic clearly did contest that the alleged "breach" was actually "effectuate[d]" through the YPF Shares.  It is undisputed that the Republic did not hold, much less own, Repsol's YPF shares on April 16, 2012, when the

"breach" took place, and Plaintiffs' long-held theory has been that the tender offer obligation was separate from the Republic's expropriation of Repsol's YPF Shares.  (*See* Opp. 20–22.)

     **5.**    ***N.Y. CPLR § 5225 does not permit turnover of the YPF Shares.***  Because turnover under NY CPLR § 5225(a) applies only to property in the actual "possession or custody" of a judgment debtor (Opp. 24–25), Plaintiffs now claim, also for the first time, that they can alternatively obtain the YPF Shares, now owned by the Republic, under the same rule from the "proper garnishee" (Plaintiffs say YPF or Caja de Valores) pursuant to an injunction under UCC § 8-112(e).  (Reply 16.)

          Plaintiffs' logic fails at every step.  If the Republic does not have actual possession or custody of the YPF Shares, then CPLR § 5225(a) does not apply at all.  In that circumstance, Plaintiffs must proceed against the third party under CPLR § 5225(b) (or use another enforcement mechanism).  (*See* Opp. 24–25.)  Plaintiffs cannot circumvent the fact that they have not sought a turnover order under CPLR § 5225(b) against the proper garnishee (here, Caja de Valores) by seeking an injunction against the Republic under UCC § 8-112(e).  CPLR § 5201(c)(4) does not apply to judgment debtors at all and thus does not apply to Plaintiffs' motion under CPLR § 5225(a).  Plaintiffs' theory is circular:  if the Republic does not have possession or custody of the YPF Shares, then there would be no need for an injunction ordering the Republic to turn over those shares.  And even if UCC § 8-112 applies, that provision provides rules for "reaching" the interest of a debtor in (a) a "certificated security," (b) an "uncertificated security," or (c) a "security entitlement"; it does not provide a mechanism to require a debtor, much less a sovereign, to transform property held as an "uncertificated security" into a "security entitlement," or other form of ownership interest.

**CONCLUSION**

For the foregoing reasons and the reasons set forth in the Republic's Opposition,

this Court should deny Plaintiffs' extraordinary motion seeking the turnover of the Republic's YPF

Shares.

Respectfully,

Dated:  June 14, 2024

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588

*Counsel for the Argentine Republic*