UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA,
S.A.U. AND PETERSEN ENERGÍA,
S.A.U.,

               Plaintiffs,

        v.

ARGENTINE REPUBLIC AND YPF
S.A.,

               Defendants.

Case Nos.
1:15-cv-02739-LAP
1:16-cv-08569-LAP

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL
MANAGEMENT, L.P., ETON PARK
MASTER FUND, LTD. AND ETON
PARK FUND, L.P.,

               Plaintiffs,

        v.

ARGENTINE REPUBLIC AND YPF
S.A.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF
<u>YPF S.A.'S ORDER TO SHOW CAUSE FOR PERMANENT INJUNCTION</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ............................................................................................... 7

I.      Res Judicata Bars Plaintiffs' Attempt to Re-Litigate YPF's Liability ................... 7

II.     Plaintiffs Should Be Enjoined from Pursuing Recovery Under the Theory
        That YPF Is an Alter Ego of the Republic. ......................................... 19

CONCLUSION ........................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*,
    449 U.S. 90 (1980)...............................................................................8, 9

*AmBase Corp. v. City Investing Co. Liquidating Tr.*,
    326 F.3d 63 (2d Cir. 2003)...............................................................12

*Arch Trading Corp. v. Republic of Ecuador*,
    839 F.3d 193 (2d Cir. 2016)..............................................................17

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)..........................................................................17

*Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*,
    2023 WL 3135745 (S.D.N.Y. Apr. 27, 2023)..................................10

*Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs.,
    Inc.*, 652 F. Supp. 2d 463 (S.D.N.Y. 2009) ...........................12, 13

*Broad. Music, Inc. v. CBS Inc.*,
    424 F. Supp. 799 (S.D.N.Y. 1976) ................................................20

*C.G. Holdings, Inc. v. Rum Jungle, Inc.*,
    582 F. Supp. 2d 385 (E.D.N.Y. 2008) ...........................................16

*Chevron Corp. v. Donziger*,
    990 F.3d 191 (2d Cir. 2021)..............................................................15

*Coleman v. Tollefson*,
    575 U.S. 532 (2015)..........................................................................10

*Comm'r of Internal Rev. v. Sunnen*,
    333 U.S. 591 (1948)............................................................................7

*Commissions Imp. Exp. S.A. v. Rep. of Congo*,
    2023 WL 3601035 (S.D.N.Y. May 23, 2023) ......................14, 17

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019)..............................................................17

*EM Ltd. v. Banco Cent. De La Republica Argentina*,
    800 F.3d 78 (2d Cir. 2015).............................................14, 15, 18

ii

*Epperson v. Ent. Express, Inc.*,
    242 F.3d 100 (2d Cir. 2001)....................................................................................17, 18

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019).........................................................................17

*Fed. Deposit Ins. Corp. v. Bank of New York*,
    479 F. Supp. 2d 1 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007).........................20

*Fed. Dept. Stores, Inc. v. Moittie*,
    452 U.S. 394 (1981).....................................................................................................18

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
    150 F.3d 172 (2d Cir. 1998)............................................................................14, 15, 17

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)........................................................................................10, 14, 17

*Gater Assets Ltd. v. AO Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ............................................................................................17

*GemShares, LLC v. Kinney*,
    2017 WL 2559232 (S.D.N.Y. June 2, 2017) ........................................................11, 12

*Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*,
    713 F. Supp. 2d 267 (S.D.N.Y. 2010).........................................................................14

*Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982).......................................................................................................15

*Harrison v. Diamonds*,
    2014 WL 3583046 (S.D.N.Y. July 18, 2014) .............................................................19

*Hart Steel Co. v. Railroad Supply Co.*,
    244 U.S. 294 (1917)....................................................................................................18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    2007 WL 1856550 (S.D.N.Y. June 27, 2007) ............................................................20

*In re Teltronics Servs., Inc.*,
    762 F.2d 185 (2d Cir. 1985) .............................................................................. *passim*

*Int'l Bus. Mach. Corp., v. Liberty Mut. Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004)...........................................................................................8

iii

*Kamdem-Ouaffo v. Pepsico, Inc.*,
    160 F. Supp. 3d 553 (S.D.N.Y. 2016), *aff'd*, 657 F. App'x 949 (Fed.
    Cir. 2016) ....................................................................................................12

*L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*,
    198 F.3d 85 (2d Cir. 1999)..........................................................................16

*LV v. New York City Dep't of Educ.*,
    2021 WL 663718 (S.D.N.Y. Feb. 18, 2021) (Preska, J.)............................19

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002).........................................................................8

*Monahan v. City of New York Dep't of Correction*,
    10 F. Supp. 2d 420 (S.D.N.Y. 1998)..........................................................20

*Monahan v. New York City Dep't of Corrections*,
    214 F.3d 275 (2d Cir. 2000).....................................................................8, 10

*Nykcool A.B. v. Pac. Fruit Inc.*,
    2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012)............................................18

*Pearlstein v. BlackBerry Ltd.*,
    2019 WL 6831554 (S.D.N.Y. Aug. 2, 2019), *report &*
    *recommendation adopted*, 2019 WL 4673757 (S.D.N.Y. Sept. 24,
    2019), *aff'd sub nom.*, *Cho v. Blackberry Ltd.*, 991 F.3d 155 (2d Cir.
    2021) ...........................................................................................................16

*Petersen Energía Inversora S.A.U. et al. v. Argentine Republic et al.*,
    895 F.3d 194 (2d Cir. 2018).......................................................................17

*Petrella v. Siegel*,
    843 F.2d 87 (2d Cir. 1988)..........................................................................10

*Phoenix Light SF Ltd. v. Bank of New York Mellon*,
    66 F.4th 365 (2d Cir. 2023) .....................................................................7, 19

*Rafter v. Liddle*,
    704 F. Supp. 2d 370 (S.D.N.Y. 2010)..........................................................9

*Robb v. Brewster*,
    2023 WL 3436105 (S.D.N.Y. May 12, 2023) ............................................12

*Simmtech Co., Ltd. v. Citibank, N.A.*,
    697 F. App'x 35 (2d Cir. 2017) ..................................................................12

iv

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422 (2007)........................................................................................7

*Soules v. Connecticut, Dep't of Emergency Servs. and Pub. Prot.*,
    882 F.3d 52 (2d Cir. 2018)........................................................................8, 10

*Sure-Snap Corp. v. State St. Bank & Tr. Co.*,
    948 F.2d 869 (2d Cir. 1991)........................................................................12

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Co.*,
    199 F.3d 94 (2d Cir. 1999)..........................................................................14

*Waldman v. Vill. of Kiryas Joel*,
    207 F.3d 105 (2d Cir. 2000)..........................................................12, 13, 14

*Woods v. Dunlop Tire Corp.*,
    972 F.2d 36 (2d Cir. 1992)..........................................................................11

*Wynn v. Union Loc. 237, I.B.T.*,
    2019 WL 1171563 (S.D.N.Y. Mar. 13, 2019), *aff'd*, 797 F. App'x 13
    (2d Cir. 2019).................................................................................................9

*Zenith Radio Corp. v. Hazeltine Research*,
    395 U.S. 100 (1969)....................................................................................16

**Statutes**

28 U.S.C. § 1603............................................................................................17

**Other Authorities**

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal
    Practice & Procedure* (3d ed. 1998)..........................................................12

v

YPF S.A. ("YPF") respectfully submits this memorandum of law in support of its Order to Show Cause why the post-judgment proceedings brought by Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. ("Petersen") and Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P. ("Eton Park") (collectively, "Plaintiffs") are not barred and should not be enjoined under the doctrine of res judicata to the extent they seek to hold YPF liable or attach YPF's assets.  Consistent with its simultaneously-filed Order to Show Cause for Intervention, YPF makes a special appearance for the limited purpose of asserting its res judicata defense to these enforcement proceedings while it specifically preserves its jurisdictional objections and defenses.[1]

## PRELIMINARY STATEMENT

Plaintiffs spent eight years arguing to this Court that YPF should be held liable for the damages they sought as compensation for their lack of a tender offer in connection with the Republic of Argentina's ("Republic") expropriation of 51% of YPF's outstanding Class D shares.  Throughout that litigation, Plaintiffs insisted that this Court should hold each of YPF and the Republic directly liable for their own alleged breaches of YPF's Bylaws.  This Court considered those claims in full, on a complete record, and, as to YPF, entirely rejected them.  It entered summary judgment for YPF and against Plaintiffs, finding that YPF had no obligation to Plaintiffs and owed no damages.

---

[1] YPF has, preserves and will raise all of its threshold and merits objections and defenses to any complaint or motion by Plaintiffs against it, if and when filed.

Now, under the guise of post-judgment enforcement proceedings against the Republic, and relying on a Foreign Sovereign Immunities Act ("FSIA") exception reserved for extraordinary cases of sovereign control over state instrumentalities wholly unlike the relationship between the Republic and YPF, Argentina's largest publicly traded energy company, Plaintiffs are trying to build a case to recover under an alter ego theory the very damages this Court found that YPF does not owe. Plaintiffs now contend that YPF might be the Republic's "alter ego" under the FSIA and liable for their multi-billion-dollar award. That is an abuse of the judicial process. It is utterly unfair to YPF and its many constituents — which include not only the Republic, but the Provinces of Argentina, public stockholders and bondholders, over 20,000 employees, and countless commercial counterparties — all of whom are confronted with an unprecedented situation in which a public company that was dismissed and is not liable is the target of efforts to collect judgment in an amount approximately twice its market capitalization.

That is not just unfair and abusive. It is barred. The federal doctrine of res judicata unequivocally prevents plaintiffs from relitigating against the same defendant, after a final determination on the merits, claims they could and should have raised in the underlying litigation. Having elected to sue YPF along with the Republic, Plaintiffs were obligated — like every other plaintiff — to assert all of their claims and theories of recovery or risk preclusion. They cannot now pursue recovery under a new "alter ego" claim or theory.

By raising this new theory and potential claim in their enforcement proceedings against the Republic, post-judgment and under Federal Rule of Civil Procedure ("FRCP")

1010231855

69, Plaintiffs have so far avoided filing a complaint or motion against YPF. But that is unsustainable and masking how utterly improper these claims are. An entity cannot be adjudicated an alter ego, or bound by any such findings, unless it has a full and fair opportunity to litigate whether or not that relationship exists, and whether there is proper jurisdiction to reach any such finding. As it is, YPF now faces the public threat of sharing responsibility for the enterprise-crippling damages awarded against its controlling stockholder for actions it did not take, on claims for which it is not liable, on a theory that is barred, in a posture the law does not allow. Any such claim would be immediately dismissible with prejudice. Because YPF is entitled to the prompt preclusive effect of its final judgment, it moves this Court to require Plaintiffs to show cause why their attempt to bypass this Court's holding that YPF is not liable is not precluded and should not be enjoined.

### RELEVANT BACKGROUND[2]

On March 31, 2023, after eight years of hard-fought litigation and upon cross-motions for summary judgment, this Court rejected all of Plaintiffs' claims for damages against YPF relating to the Republic's partial expropriation of YPF, and entered judgment for YPF, dismissing it from the case. The Court granted Plaintiffs summary judgment as to liability against the Republic, and denied the Republic's motion, leaving only narrow questions of fact related to the calculation of damages for trial. As to YPF, the Court

---

[2] The history of this litigation is extensive. While that history is squarely relevant to the question of preclusion, this brief cannot recount it in full, and provides this summary.

1010231855

found that the company had no duty to Plaintiffs to ensure a tender offer occurred, that YPF was not a guarantor of the Republic's obligations under the company's bylaws, and that YPF had no liability to Plaintiffs for the damages they sought.  Summ. J. Op. and Order ("SJ Dec.") at 19–26, Dkt. 437.[3]  Plaintiffs and the Republic participated in a brief trial on damages in July 2023 in which YPF did not take part because this Court had found it not liable to Plaintiffs.  Post-trial, the Court resolved the last open issues, determining the notice date for the tender offer and the rate at which pre-judgment interest would run. *See* Findings of Fact and Conclusions of Law at 25, Dkt. 493.  In its final order of judgment dated September 15, 2023, this Court entered final judgment for YPF, dismissing all of Plaintiffs' claims against YPF, while entering judgment for Plaintiffs and against the Republic and awarding damages and interest.  *See* Final J. at 3–4, Dkt. 498. The parties timely filed notices of appeal (the Republic), *see* Dkt. 504, cross-appeal (Plaintiffs), *see* Dkt. 509, and conditional cross-cross-appeal (YPF), *see* Dkt. 511.

The summary judgment decision entered by this Court resolved claims that had been pending since April 8, 2015, when Petersen filed suit against the Republic and YPF for breach and anticipatory breach of contract, breach of the implied duty of good faith and fair dealing, and promissory estoppel, *see* Petersen Compl. ¶¶ 68–85, Dkt. 1, and since November 3, 2016, when Eton Park filed a complaint against the Republic and YPF bringing similar causes of action, *see* Eton Park Compl. ¶¶ 61–74, Case No. 16-cv-8569, Dkt. 1.  In their complaints and their motions for summary judgment, Plaintiffs urged this

---

[3] Unless otherwise stated, "Dkt." refers to entries in docket No. 15-cv-2739.

1010231855

Court to find YPF liable for damages they claim they suffered as a result of the Republic's expropriation of YPF Class D shares without conducting a tender offer. *Id.*; *see also* Pls. Mot. Summ. J. ("Pls. SJ Mot.") at 24–30, Dkt. 371.

In light of its complete dismissal, YPF has not been a party to Plaintiffs' post-judgment enforcement proceedings against the Republic. Those efforts have been extensive. Plaintiffs have moved — initially under seal without notice to YPF — to force the turnover of the Republic's stake in YPF's Class D shares. *See* Pls. Mot. Seal, Dkt. 544; *see also* Order, April 19, 2024, Dkt. 554 (denying motion to seal). They sought and received this Court's permission to compel the Republic to provide extensive discovery as to the Republic's assets and interests. *See* Ex. C (May 28, 2024 Hr'g Tr.) at 25:4–8.[4]

Plaintiffs also sought and received permission to pursue discovery from the Republic and YPF on the question of whether YPF is the Republic's "alter ego" (over YPF's objection and without briefing). Pls. Pre-Mot. Conf. Ltr. ("Pls. PMC Ltr.") at 1–2, April 30, 2024, Dkt. 563. Plaintiffs contend that YPF is an alter ego based on unfounded allegations that "YPF's executive ranks [are] filled with politically connected hacks," Ex. C (May 28, 2024 Hr'g Tr.) at 35:17–18, and that "[YPF] just [] totally, in the past decade, [is] in the grip of the government and the politicians who control the government," *id.* at 35:23–25, and allege that its public filings "basically tell[] shareholders the Republic has sufficient control that YPF can make decisions that favor that shareholder," *id.* at 34:25–35:2. Plaintiffs' counsel has recently represented that Plaintiffs are pursuing YPF as an

---

[4] "Ex." refers to the Exhibits attached to the Declaration of Mark P. Goodman in Support of YPF S.A.'s Order to Show Cause for Intervention.

1010231855

"alter ego" of the Republic in order to provide another potential source of recovery for their damages award.  *See, e.g.*, *id.* at 51:13–14 (Mr. Mastro: "It's a judgment debtor and the entities they control, and we're having to chase them."); *id.* at 52:6–7 (Mr. Mastro: "[A]s the judgment creditor, we have the right to seek discovery from both [YPF and the Republic]."); *id.* at 52:18–20 (Mr. Mastro: "I want to get [alter-ego] discovery now.  I want to get it from [YPF], I want to get it from Argentina, and I want to get my money.").  When YPF objected, the Court denied its request for briefing and ordered discovery to proceed.  *See id.* at 54:5–16.

Plaintiffs have pursued extensive discovery in support of their recovery efforts since then, including by originally demanding, among other things, that YPF collect emails from nearly fifty (50) custodians and run over seventy (70) search terms through those emails; subpoenaing information about YPF's business operations, assets, and financial accounts from nearly twenty (20) third-parties; and belatedly requesting to significantly expand the scope of their own discovery proposal to include all electronic communication platforms used by current and former YPF employees.  Moreover, Plaintiffs have relied on YPF's status as a non-party to refuse to provide notice or disclosure of their discovery efforts, including the identity of the third parties they improperly subpoenaed or any documents improperly received.  Ex. D (Ltr. from L. Harris to W. Reilly (June 17, 2024)) at 3 (agreeing to disclose such information only if YPF "agrees to waive any objections or arguments concerning its status as a party for the purposes of post judgment discovery, including any jurisdictional objections").  While Plaintiffs have agreed to narrow certain requests or delay pursuing the full range of

information, the subpoenas' broad scope has caused concern for YPF and the subpoenaed counterparties.

## ARGUMENT

### I.    Res Judicata Bars Plaintiffs' Attempt to Re-Litigate YPF's Liability.

Plaintiffs cannot recover damages on the theory that YPF is an "alter ego" of the Republic because any such claim is precluded by the doctrine of res judicata, which bars parties to a final judgment from relitigating under a claim or theory of recovery that could have been raised in the prior action.  Having litigated against YPF to a final judgment on these same damages for nearly a decade and lost, Plaintiffs are barred from trying again.

Whether relitigation is precluded by the doctrine of res judicata is a "non-merits threshold ground that is suitable for resolution before addressing a . . . question of constitutional jurisdiction."  *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 370 (2d Cir. 2023).  YPF has and reserves complete jurisdictional defenses — personal and subject matter — to any attempt to pursue it on an alter ego theory, but need not raise them yet, when a threshold question of preclusion is an insurmountable bar.  *Id*.  Res judicata defenses can and should be heard first, before those more "difficult" questions of jurisdiction.[5]  *Id*.  If the claim is precluded, it should be dismissed promptly, as the "less burdensome course."  *Id*.; *see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'"); *Comm'r of Internal*

---

[5] And must be heard first here, where Plaintiffs are pursuing YPF in this improper posture without yet making any attempt at the requisite jurisdictional showing.

*Rev. v. Sunnen*, 333 U.S. 591, 597 (1948) ("If the doctrine of res judicata is properly applicable . . . the case may be disposed of without reaching the merits of the controversy."). Accordingly, as intervenor, and without waiving its jurisdictional objections, YPF moves to bar any further alter ego proceedings as precluded by this Court's prior judgment.

Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in the prior action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (same).[6] It applies and bars new claims where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan,* 214 F.3d at 285; *Soules v. Connecticut, Dep't of Emergency Servs. and Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018). In assessing the third factor, courts consider whether the new theory involved "the same claim — or nucleus of operative facts," including whether "the underlying facts are related in time,

---

[6] There is no need for a choice-of-law analysis here because there is no material distinction between the elements of res judicata as defined by federal common law and New York law; accordingly, both uniform federal rules of res judicata and New York law may inform this Court's analysis. *See, e.g.*, *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("[T]here is no discernible difference between federal and New York law concerning res judicata."); *Int'l Bus. Mach. Corp., v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict.").

space, origin, or motivation" and would form "a convenient trial unit." *Soules*, 882 F. 3d at 55. By barring relitigation of prior claims on new theories, res judicata provides a "rule of fundamental repose important for both the litigants and for society." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985). It "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen*, 449 U.S. at 94.

Plaintiffs cannot possibly recover on the theory that YPF is an alter ego of the Republic because any attempt to do so is precluded by this straightforward doctrine. Plaintiffs are now pursuing the same damages, for the same alleged harm, relating to the same underlying facts, that they litigated against YPF and lost in a final adjudication on the merits — this time, on an "alter ego" theory that could have been raised in the underlying litigation. That res judicata bars these efforts is clear. Plaintiffs cannot dispute the first two criteria of res judicata — final judgment between these adverse parties — and the only wrinkle in the third is their failure to properly present the issue by filing a complaint or motion. That is a procedural oddity, but it is no defense to preclusion, which bars relitigation even in this posture.

*First*, this Court's decision on summary judgment dismissing Plaintiffs' claims against YPF as a matter of law, and its entry of judgment for YPF, each constitute "final judgments" for purposes of res judicata. *See Wynn v. Union Loc. 237, I.B.T.*, 2019 WL 1171563, at *2–3 (S.D.N.Y. Mar. 13, 2019), *aff'd*, 797 F. App'x 13 (2d Cir. 2019) (summary judgment as preclusive final judgment); *Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010) ("It is well-established that summary judgment is an adjudication on

9

the merits for res judicata purposes"). A district court's judgment has "immediate" preclusive effect, "notwithstanding any appeal." *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015); *see also Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988) (judgment on appeal entitled to res judicata effect); *Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, 2023 WL 3135745, at *8 (S.D.N.Y. Apr. 27, 2023) ("Under federal law, a judgment's preclusive effect is generally immediate, notwithstanding any appeal.").

    ***Second***, Plaintiffs and YPF were adverse parties in the underlying *Petersen* and *Eton Park* litigation, in which Plaintiffs fully and finally litigated claims for the same damages they seek against YPF now. *See Monahan,* 214 F.3d at 285 (res judicata applies where the parties were adverse in the prior case); *Soules*, 882 F.3d at 55 (same).

    ***Third,*** Plaintiffs could and should have asserted any theory that YPF is an alter ego of the Republic in the underlying litigation; any such claim arises from the same core facts and motivation, and was known and available to Plaintiffs at the time. If Plaintiffs had any basis to recover from YPF a judgment against its co-defendant, including as an alter ego, it should have been pled and litigated with the rest of their claims.

    While Plaintiffs have yet to formally plead or move against YPF, they have already begun, in earnest, to relitigate their precluded alter ego claim. In open court, at a conference in May and in their pre-motion letters, Plaintiffs have publicly, and insistently, alleged for the first time that YPF is an "alter ego" of the Republic under the FSIA and *Bancec*, and liable to satisfy their judgment. *See* Pls. PMC Ltr. at 1–2; Ex. C (May 28, 2024 Hr'g Tr.) at 51:1–5, 52:10–12; *see also First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983) ("*Bancec*"). In connection with

1010231855

their Rule 69 enforcement efforts, Plaintiffs informed this Court, YPF, the Republic, and the public — including YPF's stockholders, bondholders, over 20,000 employees, commercial counterparties, and the tens of millions of Argentinians dependent on it for energy — that they intend to pursue YPF for the billions of dollars in damages awarded against the Republic. Those efforts are underway. Plaintiffs are pursing extensive discovery from the Republic, YPF, and third parties to support this theory. *See, e.g.*, Pls. PMC Ltr. at 2 (alter ego claims are "for purposes of judgment enforcement"); Pls. Pre-Mot. Conf. Reply Ltr. ("Pls. PMC Reply") at 1, May 9, 2024, Dkt. 571 (alter-ego discovery "is sought to enforce a judgment"); Ex. C (May 28, 2024 Hr'g Tr.) at 52:18–20 (Mr. Mastro: "I want to get [alter-ego] discovery now. I want to get it from [YPF], I want to get it from Argentina, and I want to get my money."). Having lost their direct claims against YPF, Plaintiffs are now moving under the guise of post-judgment enforcement to recover the same damages, in precisely the same amount, arising from exactly the same set of facts and claims, that they sought (and failed) to secure from YPF in the underlying litigation — this time, under a different legal theory.

"New legal theories" are not sufficient "to defeat the application of the principle of res judicata," however. *Teltronics*, 762 F.2d at 193; *see also Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992) (res judicata concerns the "identity of facts" and "not the legal theory"); *GemShares, LLC v. Kinney*, 2017 WL 2559232, at *18 (S.D.N.Y. June 2, 2017) (res judicata bars relitigation of new legal theories that could have been previously pleaded). Under long-standing Supreme Court and Second Circuit precedent, res judicata bars relitigation "not only as to what was pleaded, but also as to what could have been

pleaded," including new theories of recovery as well as causes of action. *Teltronics*, 762 F.2d at 193; *see also Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 564 (S.D.N.Y. 2016), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016) (same); *Robb v. Brewster*, 2023 WL 3436105, at *3 (S.D.N.Y. May 12, 2023) (res judicata bars "relitigating claims that were raised in an action that has already been adjudicated"). Nor can Plaintiffs "avoid the effects of res judicata by 'splitting' [their] claim[s] into various suits, based on different legal theories." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000); *see also Simmtech Co., Ltd. v. Citibank, N.A.*, 697 F. App'x 35, 35 (2d Cir. 2017) (summary order) (same). Under res judicata, a legal theory or claim for recovery against the same defendant and tied to the same core nucleus of facts, must be raised in the initial litigation or it will be barred. *See Waldman*, 207 F.3d at 110–11; *GemShares, LLC*, 2017 WL 2559232, at *18. If "a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action," and the same transaction and factual issues are involved, res judicata applies. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4407 (3d ed. 1998) ("Wright & Miller"); *see Sure-Snap Corp. v. State St. Bank & Tr. Co.*, 948 F.2d 869, 874 (2d Cir. 1991). "[A] mere change in legal theories does not create a new cause of action." Wright & Miller § 4407; *see AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 73 (2d Cir. 2003).

That bar on successive litigation includes alter ego claims like this. Where alter ego allegations "arise[] from the same transaction or series of transactions that were the basis of the prior suit" they can, and "should have, been brought in the prior proceeding,"

1010231855

and will be barred if not. *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 472, 479–80 (S.D.N.Y. 2009) (applying New York law, which is indistinguishable from federal preclusion law, to bar alter ego litigation). Indeed, an alter ego theory newly raised in subsequent litigation to recover against a non-judgment-debtor defendant "merely asserts a different legal theory to obtain relief from the same defendant for identical injuries." *Id.* at 480. Federal preclusion doctrine unequivocally bars the "redo" Plaintiffs are attempting here.

Plaintiffs' own allegations make clear that their alter ego theory could and should have been raised in the underlying litigation. "[A]ll the facts necessary" to pursue that claim "could have been pleaded, in the first action" against YPF. *Teltronics*, 762 F.2d at 193; *see also Waldman*, 207 F.3d at 110–11 (applying res judicata where "the facts essential to the barred second suit . . . were already present in the first"). Plaintiffs had alleged in their complaints that the Republic "continued to exercise important privileges and play a significant continuing role in YPF's corporate governance," Petersen Compl. ¶ 26; Eton Park Compl. ¶ 29; that Argentina "took control of YPF's management," including "YPF['s] Board of Directors," Pls. SJ Mot. at 18; and that "YPF has operated under the control of the Republic of Argentina . . . under the jurisdiction of the Executive Branch and under the management appointed by the Republic." Pls. SJ Opp. at 54. Plaintiffs did not allege that YPF was the alter ego of the Republic, but rather pressed the notion that these facts supported their claim of direct liability against YPF.

Plaintiffs' new theory arises from the same kinds of allegations that YPF's "executive ranks" are filled with "politically connected" officers, directors, or employees,

Ex. C (May 28, 2024 Hr'g Tr.) at 35:17–18, that YPF is "in the grip of the government*,"* *id.* at 35:23–25*,* that SEC filings "tell shareholders the Republic has sufficient control," *id.* at 34:25–35:2, among other things.  *See Teltronics*, 762 F.2d at 193 ("[A]ll the facts necessary to support the claims before us now were pleaded, or could have been pleaded, in the first action[.]").  Plaintiffs' latest theory is plainly "related in time, space, origin, or motivation" to form a "common nucleus" that warrants preclusion under federal doctrine as routinely applied in this Circuit.  *Waldman*, 207 F.3d at 108–09.

It is no excuse to say that Plaintiffs did not have a judgment to enforce against an alter ego until after their claims had succeeded against the Republic.  Many plaintiffs avoid this by pursuing litigation against sovereigns first, then enforcing arbitration awards or judgments against them, and only pursuing alter ego recovery against a sovereign instrumentality once they have obtained a judgment against the sovereign itself.  *See, e.g.*, *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 82 (2d Cir. 2015); *Commissions Imp. Exp. S.A. v. Rep. of Congo*, 2023 WL 3601035, at *2–4 (S.D.N.Y. May 23, 2023); *Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 713 F. Supp. 2d 267, 270–72 (S.D.N.Y. 2010).  But that approach to *Bancec* is not mandatory; plaintiffs may choose to sue both the sovereign and its instrumentality in the initial suit, as here.  *See, e.g.*, *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 174 (2d Cir. 1998) (alleged alter ego entity named as co-defendant); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Co.*, 199 F.3d 94, 98 (2d Cir. 1999) (same).  In short, to make the necessary pleading against the putative alter ego under *Bancec*, a plaintiff has two temporal options: (a) it may join the purported alter ego as a party to the original action

and plead and prove their theory up front, or (b) it may wait to commence a separate

action to enforce the award against the purported alter ego after litigating to judgment

against the sovereign. *Compare EM Ltd*, 800 F.3d at 82 *with First City, Texas-Houston,*

*N.A.*, 150 F.3d at 174. What a plaintiff cannot do is *both* pursue a putative alter ego as a

defendant in a first action, *and then* turn around and seek recovery from that same

dismissed defendant as an alter ego to satisfy its judgment against the sovereign co-

defendant.

Like any other plaintiff, those who choose to sue *both* a sovereign *and* its

instrumentality in their initial action must allege any "legal theories" or grounds for

recovery against a defendant for the harm allegedly arising from the same set of facts or

risk preclusion. *Teltronics*, 762 F.2d at 193. Having made the choice to pursue YPF in

their initial action against the Republic, Plaintiffs are precluded by res judicata from

pursuing them again now. "Alter ego" under the FSIA is no exception.

Nor can Plaintiffs avoid res judicata by continuing under the guise of post-

judgment enforcement proceedings against the Republic, without filing a complaint or

making a motion as to YPF. YPF has been dismissed. Final judgment was entered in its

favor. It is not liable to Plaintiffs. It owes them no damages. It is not a party to these

enforcement proceedings. Notice of appeal having been timely filed, any federal

jurisdiction over YPF has been stripped from this Court and transferred to the Court of

Appeals, where it remains. *See Griggs v. Provident Consumer Discount Co*., 459 U.S. 56,

58 (1982) ("The filing of a notice of appeal . . . divests the district court of its control over

those aspects of the case involved in the appeal."); *Chevron Corp. v. Donziger*, 990 F.3d

15

191, 210 (2d Cir. 2021) (same); *see also* Pls. Notice of Appeal, Dkt. 509; YPF Notice of Appeal, Dkt. 511.  As to YPF, this is a *post-dismissal* attempt to relitigate, on a new theory, and subject to all the rules and limitations regarding relitigation that res judicata provides.  *See L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (res judicata precluded subsequent claims on the same docket); *Pearlstein v. BlackBerry Ltd.*, 2019 WL 6831554, at *9 (S.D.N.Y. Aug. 2, 2019), *report & recommendation adopted*, 2019 WL 4673757 (S.D.N.Y. Sept. 24, 2019), *aff'd sub nom.*, *Cho v. Blackberry Ltd.*, 991 F.3d 155 (2d Cir. 2021) (res judicata applies "to bar subsequent claims in the same continuing action after a judgment on the merits has been granted").  As to YPF, any appearance of continuity with the prior action is illusory.  YPF is not a judgment-debtor; this is relitigation against a dismissed defendant.

This posture — in which Plaintiffs are brazenly attempting to relitigate YPF's liability for damages without the pleading an alter ego claim requires — is masking just how utterly improper these claims are.  Plaintiffs are enjoying all of the benefits of treating YPF as a non-party, including filing motions under seal, and pursuing and amassing discovery from YPF's commercial counterparts and vendors without any notice or disclosure to YPF.  But an entity cannot be adjudicated as an alter ego or bound by any such finding, unless it has a full and fair opportunity to litigate whether or not that relationship exists.  *See Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 111–12 (1969) (judgment could not be enforced against alleged alter ego entity "which has never had its day in court on the [alter ego] question"); *see also C.G. Holdings, Inc. v. Rum Jungle, Inc.*, 582 F. Supp. 2d 385, 388 (E.D.N.Y. 2008) (noting that the "black letter rule"

16

requires an entity to first have been found liable before a judgment can be enforced). Plaintiffs' own cases cited in support of their theory confirm that putative alter egos are ordinarily named parties to the litigation concerning their alter ego status. *See, e.g.*, *Bancec*, 462 U.S. at 613 (putative alter ego appeared as plaintiff); *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 334–40 (S.D.N.Y. 2019) (putative alter ego named as defendant); *First City, Texas Houston, N.A.*, 150 F.3d at 174 (same); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 132 (3d Cir. 2019) (alter ego intervened as defendant); *see generally* Pls. PMC Ltr. at 1–2. Moreover, "[v]eil-piercing and alter ego claims are new theories of liability that require a separate jurisdictional hook." *Commissions Imp. Exp. S.A.*, 2023 WL 3601035, at *6; *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 104–06 (2d Cir. 2001). That is true as a general matter, but particularly essential where the putative alter ego is "presumptively shielded from suit" under the FSIA unless Plaintiffs plead and establish the applicability of an exception. *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 200 (2d Cir. 2016); *see Petersen Energía Inversora S.A.U. et al. v. Argentine Republic et al.*, 895 F.3d 194, 204 (2d Cir. 2018) ("The FSIA 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'") (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)).[7] Yet, in the present posture, Plaintiffs have avoided their burden to plead such an FSIA exception as to YPF before

---

[7] "The FSIA's definition of a foreign state includes both the sovereign itself and its agencies and instrumentalities, which are separate legal persons from the sovereign." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021) (citing 28 U.S.C. § 1603(a)–(b)).

pursuing it as a potential alter ego, again creating an improper and unfair burden on YPF and depriving it of the requisite opportunity to move to dismiss for lack of jurisdiction. *See EM Ltd.*, 800 F.3d at 88 (recognizing that "a question of immunity is separate from the merits of the underlying action," and finding that if an exception is not established on the pleadings, "it would be inconsistent with the underlying purpose of the foreign-sovereign-immunity doctrine" to subject a putative alter ego "to further burdensome litigation").

Plaintiffs cannot recover against YPF without acting as to YPF. *Nykcool A.B. v. Pac. Fruit Inc.*, 2012 WL 1255019, at *5 (S.D.N.Y. Apr. 16, 2012); *see also Epperson*, 242 F.3d at 106–07. Because any such subsequent action would immediately and obviously be barred under the doctrine of res judicata, YPF *cannot be* liable as the Republic's alter ego as a matter of law. It is an inevitable bar, and YPF should not be forced to litigate now, in a pre-complaint, pre-motion posture, and lose the benefit of both its final judgment and the federal preclusion doctrine that protects and enforces it.

Most critically, Plaintiffs' pursuit of recovery under the theory that YPF is an alter ego of the Republic is depriving YPF of the "fundamental repose" that the final adjudication on the merits is intended to achieve, and that res judicata is meant to protect. *Teltronics*, 762 F.2d at 190; *see also Fed. Dept. Stores, Inc. v. Moittie*, 452 U.S. 394, 401 (1981) (res judicata "serves vital public interests" and "public policy [] that there be an end of litigation"); *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917) (res judicata "is a rule of fundamental and substantial justice, of public policy and of private peace") (quotations omitted). YPF should not face the public threat of sharing

responsibility for the enterprise-crippling damages awarded against its controlling stockholder for actions YPF did not take, on claims for which it is not liable, on a theory that is barred, in a posture the law does not allow.  This is untenable for YPF, significantly disruptive for its business, and grossly unfair.  Plaintiffs' relitigation of claims that YPF has already defeated has caused concern from business partners, increased cost of capital that could complicate YPF's significant growth plans, and unfairly inflicted reputational harm.  *See Harrison v. Diamonds*, 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) (res judicata precludes litigation where defendant had "already been put to the expense and business disruption of defending claims arising out of [the same facts]").  Preclusion can and should be applied at the first opportunity, when doing so both avoids protracted litigation on barred and complex issues, and preserves the "repose" that it protects. *Phoenix Light*, 66 F.4th at 370.

## II.  Plaintiffs Should Be Enjoined from Pursuing Recovery Under the Theory That YPF Is an Alter Ego of the Republic.

Ordinarily, preclusion would be applied to dismiss a complaint or support judgment as a matter of law.  In the absence of any such pleading—but in the face of Plaintiffs' explicit and ongoing efforts to pursue YPF on a claim that is barred—this Court should enforce preclusion by injunction.  Injunctive relief is warranted where, as here, the litigant has suffered an irreparable injury, for which there is no remedy at law, and where "considering the balance of hardships . . . a remedy in equity is warranted" and "the public interest would not be disserved by a permanent injunction."  *LV v. New York City Dep't of Educ.*, 2021 WL 663718, at *8 n.20 (S.D.N.Y. Feb. 18, 2021) (Preska, J.).

1010231855

This standard, too, is readily satisfied on these facts.  "The waste inherent in the enormously expensive relitigation of matters which have been definitively determined constitutes irreparable injury in itself."  *Broad. Music, Inc. v. CBS Inc.*, 424 F. Supp. 799, 802 (S.D.N.Y. 1976); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2007 WL 1856550, at *3 (S.D.N.Y. June 27, 2007) ("party suffers irreparable harm when it is required to relitigate in state court issues previously decided in federal court") (citations omitted).  No adequate legal remedy exists; YPF is entitled to repose and finality, not the ongoing, existential threat of multi-billion-dollar damages.  The equities weigh heavily in YPF's favor.  "[T]here is no harm to [Plaintiffs] in preventing them from relitigating an issue that they already had a full and fair opportunity to litigate before this Court."  *Fed. Deposit Ins. Corp. v. Bank of New York*, 479 F. Supp. 2d 1, 19 (D.D.C. 2007), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007).  The public interest is served both by enforcing res judicata's "strong public policy in economizing the use of judicial resources," *Monahan v. City of New York Dep't of Correction*, 10 F. Supp. 2d 420, 423 (S.D.N.Y. 1998) (quotations omitted), and by recognizing and alleviating the burden this attempt at relitigation poses for YPF and all of YPF's constituents, including stockholders, bondholders, employees, and the public of Argentina, for whom YPF has significance far beyond its commercial role.

## CONCLUSION

For the foregoing reasons, YPF requests an immediate injunction and bar to further litigation of whether it is liable, as an alter ego or otherwise, for any share of the damages awarded to Plaintiffs against the Republic.

1010231855

Dated: August 12, 2024
      New York, New York

                                  Respectfully Submitted,

                                  DEBEVOISE & PLIMPTON LLP

                                  */s/ Mark P Goodman*
                                  Mark P. Goodman
                                  Shannon Rose Selden
                                  James J. Pastore
                                  Wendy B. Reilly

                                  66 Hudson Boulevard
                                  New York, NY 10001
                                  (212) 909-6000 (phone)
                                  mpgoodman@debevoise.com
                                  srselden@debevoise.com
                                  jjpastore@debevoise.com
                                  wbreilly@debevoise.com

                                  *Counsel to Defendant YPF S.A.*

1010231855