# KING & SPALDING

1185 Avenue of the Americas,
34th Floor
New York, NY 1 0036-4003
www.kslaw.com

Randy M. Mastro
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

August 14, 2024

*Via CM/ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739; *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Your Honor:

      We write in further support of Plaintiffs' request for a pre-motion conference regarding the four discovery issues set out in Plaintiffs' letter dated August 1, 2024. *See Petersen* ECF No. 599. We continue to regret needing to burden the Court, but it is clear that the only way to have the Republic comply with its basic obligations is through clear and specific orders; perhaps the clearest example of the current posture is the Republic protesting that it could not possibly comply with production deadlines *a full year* after the service of Plaintiffs' initial document requests.[1] What is really happening is that the Republic is ignoring both Plaintiffs and this Court, and granting itself the stay that this Court denied – while making it clear to the world that it is stalling while the appeal process plays itself out.

      **I.**    **Scheduling Order**

      The Republic wrongly attempts to cast Plaintiffs' request for a scheduling order as a Rule 37 motion (Opp'n at 1, 3), apparently so that it can merely complain that the discovery requests were not quoted verbatim. This is self-evidently not a motion but rather a pre-motion conference letter, but in any event Plaintiffs merely seek a discovery schedule as a necessary procedural guardrail to avoid further delay for the production of documents pursuant to requests that have already been litigated in this Court or that the Republic has agreed to comply with.

      The Republic's only substantive objection to the entry of a scheduling order relates to a claim that it cannot even begin to review electronically stored information ("ESI") for at least three

---

[1] Unless otherwise indicated, all capitalized terms used herein have the meanings given to them in Plaintiffs' letter requesting a pre-motion conference. Plaintiffs hereby respectfully request the Court's permission to exceed the page limit for this reply by two pages, given Plaintiffs' need to respond to both the Republic's eight-page opposition and BNA's three-page opposition.

months (Opp'n at 2) given the process of restoring back-up tapes. That is simply nonsensical and at odds with the state of technology in 2024; it also ignores that the Republic agreed six weeks ago to produce ESI so should presumably have been moving forward with the process to do so.[2] Nevertheless, Plaintiffs propose the revised schedule attached as Exhibit 1 hereto to provide extra time for the Republic's ESI production.

## II.     Protective Order Modification

In its Opposition, the Republic for the first time agrees to modification of the Protective Order (never offered during the meet-and-confer process) so that Plaintiffs can use post-judgment discovery concerning the Republic's extraterritorial assets in foreign enforcement proceedings, but it proposes modifications to Plaintiffs' proposed protective order while failing to articulate any reasons for those modifications. *See* Opp'n at 8. Instead, the Republic suggests that its counter-proposal is appropriate solely because it tracks the protective order in *EM Ltd. v. Republic of Argentina*. *See id.*

The Republic's proposed modifications are unnecessary to protect any legitimate confidentiality interest that it may have in the information it has produced in these post-judgment proceedings; instead, they appear to be intended to create the potential for procedural mischief in the foreign enforcement proceedings where such information will be used. For example, forcing Plaintiffs to "move this Court for a modification of [the Protective] Order" in the event Plaintiffs seek to use the information in a jurisdiction where "the same confidentiality available" in this Court is unavailable is unnecessary. ECF 623-1 ¶ 14. That would effectively force Plaintiffs to seek emergency relief before deploying any produced documents in an overseas enforcement proceeding, which would unduly hamper enforcement efforts and unnecessarily burden the Court, particularly in light of the protections otherwise afforded to confidential documents pursuant to Plaintiffs' proposed modifications, which provide for "reasonable steps to maintain confidentiality" in those foreign proceedings. *Id.* Argentina is deploying sophisticated counsel to delay and frustrate the foreign enforcement proceedings as well; those lawyers will doubtless be able to protect the Republic's interests adequately in each other jurisdiction.

## III.    Information Subpoena

The Republic's contention that Plaintiffs "lost their ability to rely on New York procedure when they elected to pursue discovery under the Federal Rules" lacks any merit. Opp'n at 7. Numerous courts in this and other districts have held that FRCP 69(a)(2) allows a judgment-creditor to employ **both** federal **and** state discovery procedures to obtain post-judgment discovery. *See, e.g.*, *Chevron Corp. v. Donziger*, 2020 WL 635556, at *4 n.35 (S.D.N.Y. Feb. 11, 2020) (holding that FRCP "'does not require the judgment creditor to make an election between federal and state procedures'") (quoting *Retamco Operating, Inc. v. Carone*, 2007 WL 9752774, at *1 (C.D. Cal. June 29, 2007)); *Amaprop Ltd. v. Indiabulls Fin. Servs.*, 2012 WL 4801452, at *11 (S.D.N.Y. Oct. 5, 2012) ("Rule 69(a) allows a judgment creditor to utilize discovery devices available, under both the [FRCP] and the laws of the forum state.").

---

[2] The Republic represented on July 27, 2024 that it already had begun these preliminary steps (which allegedly take 60 days to complete, as also noted in the Republic's letter).

Page 3

The Republic's continued reliance on a 24-year old decision of Magistrate Judge Maas is unavailing. *See* Opp'n at 7 (citing *British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 2000 WL 713057, at *10 (S.D.N.Y. June 2, 2000)). Neither of the two authorities cited by Judge Maas supported his decision: In *F.D.I.C. v. LeGrand*, the Fifth Circuit held that the judgment-creditor could obtain the judgment-debtor's tax returns, noting that it was "irrelevant" whether the returns were discoverable under Texas law because the judgment-creditor had elected to pursue the discovery under the FRCP. 43 F.3d 163, 171-72 (5th Cir. 1995). Section 69.04[2] of Moore's Federal Practice merely paraphrases the Fifth Circuit's holding in *F.D.I.C. See* MOORE'S FEDERAL PRACTICE § 69.04[2], at 69-15 (3d ed. 1999).[3]

The Republic's objection that the questions in the Information Subpoena "are cumulative and duplicative" of Plaintiffs' document requests also misses the mark. New York CPLR § 5224(a) provides that a judgment-creditor may serve "[a]ny **or all**" of three kinds of subpoena: a deposition subpoena, a document subpoena, and an information subpoena. There is no bar to seeking similar information through different discovery devices. *See, e.g.*, *Beijing Choice Elec. Tech. Co. v. Contec Med. Systems USA Inv.*, 2020 WL 1701861, at *6 (N.D. Ill. 2020). Moreover, CPLR § 5224(a)(3) requires the Republic to provide a written, sworn answer to each of the questions in the Information Subpoena; such sworn answers plainly would have substantial value to Plaintiffs above and beyond the Republic's piecemeal document productions.

Finally, the Republic's objection that the Information Subpoena impermissibly requires the Republic to "review" its own document productions lacks merit. Most of the documents produced by the Republic are difficult to interpret and do not clearly identify the nature and location of its assets. Having failed to satisfy the Judgment, the Republic cannot complain about the burden of compiling a complete list of its significant worldwide assets.

### IV.  Alter Ego Discovery

At the May 28 hearing, the Court held that Plaintiffs could take alter ego discovery on the Republic's relationship with the four State-Owned Entities (Aerolíneas, BNA, ENARSA, and ARSAT) if they could make "some kind of a showing" that the State-Owned Entities may be alter egos of the Republic. May 28 Hr'g Tr. 39:21-25. The Court noted that "massive briefing" on this issue was not warranted. *Id.* Plaintiffs made the requisite showing in their opening letter, within the constraints of the information available without yet having obtained any discovery. *See* ECF 599 at 4-8.

Argentina instead tries to create an unnavigable Catch-22, basically arguing that Plaintiffs must prove an alter ego relationship before being permitted to obtain alter ego discovery. As this Court recognized at our last hearing, that is not the law, and Plaintiffs are entitled to inquire into the alter ego status of the identified Argentine entities once a preliminary showing is made. Argentina's zeal on this issue is understandable, as recent public statements make it clear that this

---

[3] The two other cases cited by the Republic do not support its position. *See Cessna Fin. Corp. v. Al Ghaith Holding Co. PJSC*, 2021 WL 949714, at *6 (S.D.N.Y. 2021) (holding that subpoenas served under FRCP 45 must comply with that rule's notice requirement); *Jacobson v. Moller & Moller, Inc.*, 2007 WL 1989260, at *1 (E.D.N.Y. 2007) (merely noting that plaintiff had "elected to pursue discovery" under the CPLR).

is an area of vulnerability for the Republic in light of the conduct of its new government in dealing directly in the business activities of state-owned enterprises. *See, e.g., Axel Kicillof blamed Milei for YPF's decision to choose Río Negro instead of Buenos Aires for LNG plant*, LA NACIÓN, July 31, 2024 (ECF No. 627-3).

In its Opposition, the Republic cites numerous inapposite cases addressing whether an entity *is* an alter ego, not whether the plaintiff can take discovery on that issue.[4] *See Gater Assets Limited v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021) (concerning alter ego status, rather than discovery); *EM Ltd. v. Banco Central De La República Argentina*, 800 F.3d 78, 92–93 (2d Cir. 2015) (same); *GSS Group Ltd. v. Republic of Liberia*, 31 F. Supp. 3d 50, 66 (D.D.C. 2014) (same); *Transamerica Leasing, Inc. v. La República de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000) (same). Plaintiffs do not currently seek a determination that the State-Owned Entities are alter egos of the Republic; we merely seek threshold discovery.

The Republic's contention that courts previously have held that the State-Owned Entities were not alter egos of the Republic also is unavailing. *See* Opp'n at 4-5. As Plaintiffs have explained, the cases relied upon by the Republic are over 10 years old, and (if Plaintiffs seek to establish the alter ego status of the State-Owned Entities in the future) the relevant inquiry will be whether the entities are alter egos of the Republic *at that time*. During the last decade, Argentina has had four presidential administrations. *See, e.g.*, *OI Euro Grp. B.V. v. Bolivarian Rep. of Venezuela*, 663 F. Supp. 3d 406, 438-39 (D. Del. 2023) (concluding that court must evaluate anew whether PDVSA was alter ego of Venezuela in light of recent political developments, because circumstances relevant to alter ego analysis "can change at any time").

BNA's separate response to Plaintiffs' letter wholly misconstrues Plaintiffs' subpoena requests. *See* ECF No. 620. Plaintiffs' subpoena does not seek information related to BNA's assets, as BNA erroneously asserts, but rather it seeks information related to (i) Argentina's assets in BNA's possession, custody or control and (ii) Argentina's relationship with BNA. *See* Declaration of Laura Harris, Ex. A. Plaintiffs have moved to compel BNA to produce only documents responsive to Requests 16-26 in their subpoena, which relate to issue (ii). As explained above, Plaintiffs have made the requisite showing to obtain such discovery.

Respectfully,
/s/ Randy M. Mastro
Randy M. Mastro

---

[4] *Seijas v. Republic of Argentina*, 502 F. App'x 19 (2d Cir. 2012), the only case cited by Argentina that relates to discovery, also is inapposite, because it addresses *jurisdictional* discovery. *See id.* at 21. The plaintiffs in that case filed a declaratory judgment action against Argentina and BNA, seeking a declaration that BNA was the Republic's alter ego. The Second Circuit held that the district court did not abuse its discretion in denying jurisdictional discovery in view of the "comity concerns implicated by allowing jurisdictional discovery from a foreign sovereign." *Id.* (internal citation and quotation marks omitted). Here, this Court already has determined that it has subject-matter jurisdiction over this action, and there are no "comity concerns" in allowing Plaintiffs to take post-judgment discovery from the Republic.