# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

August 26, 2024

<u>Via ECF</u>

The Honorable Loretta A. Preska,
   United States District Court for the Southern District of New York,
      500 Pearl Street,
         New York, NY  10007.

Re:    *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*,
No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v.
<u>*Argentine Republic and YPF S.A.*</u>, No. 16 Civ. 8569 (LAP) ("<u>*Eton Park*</u>")

Dear Judge Preska:

      On behalf of the Argentine Republic, and in accordance with the Court's August 20, 2024 Scheduling Order (*Petersen* ECF No. 634), I write regarding the Republic's custodian and search term proposal in connection with Plaintiffs' YPF and BCRA "alter ego" requests.  On July 27, the Republic provided Plaintiffs with its proposal to review emails between 18 custodians and the relevant entities.[1]  Regrettably, Plaintiffs waited until Friday, August 23, the date that the Court set for the parties to reach agreement, to provide their response.  Plaintiffs now seek to increase the number of custodians by fifty percent and to expand the search far beyond the scope of justifiable enforcement discovery.

      This Court should not reward Plaintiffs' nearly one-month delay in meeting and conferring with the Republic.  By any measure, their proposal should be rejected as not reasonable or proportionate to the needs of the case.  *First*, Plaintiffs have waived their objections to the Republic's custodian and search term proposal by waiting until the Court-imposed deadline for the parties to agree on search terms and custodians to make their completely reworked counterproposal.  *Second*, the Court should adopt the Republic's proposal.  The Republic has identified 18 Argentine government officials most likely to have had frequent contact with YPF and BCRA and proposed reviewing their email communications with YPF and BCRA—which is what Plaintiffs asked for more than two months ago.  Plaintiffs' counterproposal, by contrast, is not reasonably tailored to assessing the Republic's "day-to-day" relationship with YPF and BCRA, but instead seeks to harass the Republic by requiring searches of "all" documents and

---

[1] The Republic's proposal is set forth in the attached Proposed Order.

The Honorable Loretta A. Preska                                          -2-

communications of several high-ranking officials, including Luis Caputo and Sergio Massa, the current and former Ministers of Economy, who were not involved in that day-to-day relationship.

## Background

On June 18, 2024, Plaintiffs provided a list of proposed search terms for post-judgment discovery.  For Request Nos. 32(b), 32(c), and 53, which relate to YPF and BCRA, Plaintiffs' proposed search terms appeared under the headings "@bcra AND" and "@ypf.com AND," indicating that the search terms were meant to apply to email communications between the Republic and YPF or BCRA.  (Ex. A (Plaintiffs' June 18 Proposal) at 1, 3.)   Plaintiffs' June 18 proposal made no mention of searching any forms of electronically stored information other than email.

As to custodians, Plaintiffs' June 18 proposal indicated that "[r]elevant custodians" would "be identified by the Republic," including relevant government custodians "who have a role liaising with YPF or BCRA," and "[b]oard members of YPF who simultaneously held a position in the Argentine government or were Class A appointees."

In response to Plaintiffs' proposal, the Republic agreed to produce email communications between key Republic officials and YPF and BCRA, and began the work of identifying custodians consistent with Plaintiffs' June 18 proposal.  (*See* Ex. B (July 27, 2024 email from H. Masters to N. Deb Sen) (confirming that "the Republic will perform custodial email review of communications with both YPF and BCRA").)   In addition, the Republic agreed to produce documents from the Republic's *Sistema de Gestión Documental Electrónica* ("GDE System"), which is the government system that houses official reports and communications.  Until last Friday, Plaintiffs never expressed any disagreement with this approach.

The Republic promptly communicated with various authorities, and identified a list of 18 relevant custodians for its email searches.  In keeping with the criteria in Plaintiffs' June 18 proposal that the custodians "have a role liaising with YPF or BCRA," the Republic identified custodians who hold or previously held relevant government positions and who have the most day-to-day contact with YPF and BCRA due to their roles and responsibilities, including the Secretary of Energy, the Undersecretary of Hydrocarbons, the Undersecretary of Liquid Fuels, the Chief of Cabinet, the Secretary of Finance, the Secretary of Treasury, the Director of the National Office of Public Credit, and the National General Treasurer.  Plaintiffs also requested as custodians "Board members of YPF who simultaneously held a position in the Argentine government or were Class A appointees," and accordingly four of the Republic's proposed custodians (Nicolás Posse, Agustín Rossi, Juan Manzur, and José Rolandi) are current or former YPF board members while serving as government officials during the relevant period.

On July 27, 2024, the Republic sent Plaintiffs its list of proposed custodians.  (*See* Ex. B.)  In a meet-and-confer on August 1, 2024, the Republic informed Plaintiffs that it intended to review *all* emails between those custodians and the @YPF or @BCRA domains, volume permitting, without applying search terms.  Plaintiffs indicated that they would consider the proposal and respond promptly with any comments regarding custodians.

The Honorable Loretta A. Preska                                    -3-

       Plaintiffs never responded to the substance of the Republic's custodian proposal. Instead, on August 1, 2024, Plaintiffs filed a letter-motion requesting that the Court enter a scheduling order, including a deadline of August 14, 2024 for the parties to finalize their agreement to custodians and search terms. (*Petersen* ECF No. 599.)  On August 14, 2024, Plaintiffs sent a revised scheduling order to the Court moving that deadline to August 21, 2024. (*Petersen* ECF No. 629-1.)  Plaintiffs' letters to the Court requesting the imposition of a schedule *never* mentioned any substantial disagreement with the Republic's proposal, but instead intimated that the primary issue regarding search terms and custodians was timing.  Plaintiffs *did not* respond to the Republic's proposal either before or after submitting these letters.  Instead*, both* of *Plaintiffs'* proposed deadlines (August 14 and August 21) passed without Plaintiffs expressing any disagreement with the Republic's proposals or offering any counterproposal.

       On August 20, 2024, the Court entered a scheduling order based on Plaintiffs' proposals, giving the parties until August 23 to agree to custodians and search terms. (*Petersen* ECF No. 634.)  At 11:06 am on August 23, the *due date* for the parties to reach agreement—and three weeks *after* the Republic provided its proposal—Plaintiffs sent the Republic their counterproposal.  (*See* Ex. C (Plaintiffs' August 23, 2024 Counterproposal).)  That counterproposal seeks to increase the number of custodians by fifty percent (from 18 to 27) and *adds* entirely new search parameters not contemplated by Plaintiffs' own June 18, 2024 proposal, including expanding searches beyond emails between the Republic's custodians and YPF/BCRA to cover all "Electronically Stored Information (including email, chats, WhatsApp, or any other electronic document)."[2]  Plaintiffs include obviously inappropriate custodians, such as the current and former Minister of the Interior, Eduardo de Pedro, the former National Director of Customs of the Argentine Federal Administration of Public Income, Guillermo Michel, along with the current and former Ministers of Economy, Luis Caputo and Sergio Massa, and Santiago Caputo, a consultant who is not a government official.  Plaintiffs have not explained why the remaining newly proposed custodians, who include lawyers from the Ministry of Economy and a representative of Argentina before the IMF, are needed or not duplicative of the custodians the Republic has already proposed.[3]

       Given the same-day deadline to reach agreement on custodians and search terms, the Republic offered to meet and confer later on August 23 and asked Plaintiffs to provide their basis in advance of that meeting for their lengthy list of new custodians.  In a call on Friday evening, Plaintiffs' counsel acknowledged that both the custodians and search terms were different from those contemplated by Plaintiffs' June 18 proposal, stating that the difference was the result of "additional research."  Plaintiffs did not explain why they had waited until the very last minute to provide their counterproposal and refused to identify the sources supposedly establishing a basis

---

[2]     During the parties' August 1 meet-and-confer, Plaintiffs raised for the first time the possibility of collecting communications beyond official Republic email accounts (personal Gmail and WhatsApp).  The Republic did not agree to this suggestion, which differed from the approach to merits discovery in this case, and Plaintiffs did not follow up on it.

[3]     Without explanation, Plaintiffs also removed four custodians proposed by the Republic (Agustín Rossi, Juan Manzur, Nicolás Posse, all YPF board members; and Pablo Quirno Magrane, who has been Secretary of Finance since December 11, 2023).

The Honorable Loretta A. Preska                                                    -4-

to add these proposed custodians, which they asserted were all "public record" and thus presumably were known to Plaintiffs for months.

Argument

Plaintiffs' effort to shift entirely the ground upon which the parties have been negotiating, a month after the fact, confirms their strategy of harassment. If Plaintiffs truly sought discovery of relevant information, they would have promptly responded to the Republic's proposal. The Court should reject Plaintiffs' belated counterproposal and adopt the Republic's email review protocol. Because the Republic intends to review *all* email communications between its 18 custodians and the YPF or BCRA domains, search terms are not needed.

## I.    Plaintiffs Have Waived Their Objections to the Republic's Proposal.

District courts have "broad discretion to manage or otherwise limit discovery based on the circumstances" and may "consider whether parties have acted in bad faith." *Coyotecatl* v. *Grand Rest. Grp.*, 2016 WL 11472226, at *2 (E.D.N.Y. May 13, 2016) (Pollak, M.J.) (citations omitted). As courts have found in similar contexts, waiting until the very last minute to respond to a discovery proposal "smacks of gamesmanship and suggests bad faith"; if Plaintiffs "had intended in good faith to reach an agreement . . . , they would not have waited until the last minute to contact Defendants." *Wang* v. *Shun Lee Palace Rest., Inc.*, 2022 WL 2718453, at *4 (S.D.N.Y. July 13, 2022) (Broderick, J.).

Here, for almost a month, when they were pressing the Court to impose strict deadlines on the Republic, Plaintiffs never once stated any disagreement with the Republic's proposed plan—developed in response to *Plaintiffs'* suggestion—to collect email communications between Republic officials and YPF and BCRA. Then, on the same date that the parties were ordered to reach agreement, Plaintiffs provided a counterproposal that sought to drastically expand the scope of discovery by (i) increasing the number of custodians from 18 to 27; (ii) including a burdensome list of other forms of electronically-stored information beyond email; and (iii) proposing an entirely new set of search terms well beyond the to-or-from @YPF or @BCRA terms that Plaintiffs themselves originally proposed. (*See* Ex. C.)

## II.    The Republic's Proposal Is Reasonable and Proportional to Obtaining Evidence Relevant to the Alter Ego Inquiry.

Plaintiffs seek post-judgment discovery from the Republic to try to establish that YPF and BCRA are alter egos of the Republic. The "touchstone inquiry" to overcome the presumption of separateness is evidence of "significant and repeated control over . . . day-to-day operations." *See Gater Assets Ltd.* v. *AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021). At a May 28, 2024 conference, the Court authorized limited discovery into the Republic's relationship with YPF and BCRA for the past two years to permit Plaintiffs to explore this issue and left it to the parties to narrow Plaintiffs' extremely broad requests. (Conf. Tr. 39:20–21; 40:14–16.)

To respond to Plaintiffs' requests, the Republic has begun the process of producing documents from its GDE system for official reports and communications, as well as government orders that apply to YPF, and *mandas*, which are instructions to the Republic's YPF shareholder

The Honorable Loretta A. Preska                                                    -5-

representative regarding how to vote its shares at YPF shareholder meetings.  In addition, as noted, in response to Plaintiffs' June 18 request, the Republic proposed to search the email of 18 relevant custodians for communications to or from YPF and BCRA.  The Republic's 18 identified email custodians are the officials most likely to have communications responsive to Plaintiffs' requests because they would have had the most day-to-day interaction with YPF and BCRA.  Three of the Republic's proposed custodians (Eduardo Rodríguez Chirillo, Flavia Royon, and Darío Martínez) are current or former Secretaries of Energy, who have exercised control over the Republic's YPF shares and have had authority over YPF in their capacity as regulators.  As for BCRA, three of the Republic's proposed custodians (Pablo Quirno Magrane, Eduardo Setti, and Rafael Brigo) are current or former Secretaries of Finance, who have been responsible for the administrative aspects of the relationship between BCRA and the executive branch, and another three of the Republic's proposed custodians (Carlos Guberman, Raúl Rigo, and Martín Di Bella) are current or former Secretaries of Treasury, who have been responsible for the coordination and implementation of national budgetary policy and therefore frequently interact with BCRA.  The Republic's custodian list also includes three officials from the Undersecretariat of Hydrocarbons (Federico Bernal, Maggie Luz Videla Oporto, and Luis Francisco De Ridder), four officials from the office of the Chief of Cabinet who were or are also YPF board members (Nicolás Posse, Agustín Rossi, Juan Manzur, and José Rolandi), the Director of the National Office of Public Credit (Susana Casillas), who has a role liaising with BCRA on the Republic's financial policy, and the National General Treasurer (Jorge Domper), who liaises with BCRA in his role as manager of public sector finances.

Plaintiffs' counterproposal, on the other hand, would impose an impossibly disproportionate burden on the Republic.  Plaintiffs' proposed custodians do not have roles bearing on "alter-ego" discovery or that involve "liaising with YPF or BCRA"—this is done by the Secretariats of Energy, Finance and Treasury and the Undersecretariat of Hydrocarbons, which are within the Ministry of Economy and whose Secretaries the Republic has proposed as custodians.[4] And, rather than being directed to email communications with YPF or BCRA, as *Plaintiffs* had originally proposed, Plaintiffs now seek to include *all* Republic documents, including internal communications, hitting on an incredibly lengthy list of 212 search terms, including broad terms like "bonds" and "storage," as well as personal communications such as chats.  There is no need for this discovery, because the "touchstone inquiry" for the alter ego inquiry is "day-to-day control"—not internal discussion or incidental communications.  *See In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) (Swain, J.) (denying alter-ego discovery that "sweeps far too broadly" and had "every indication of being an archetypal fishing expedition").  The Republic's proposal, on the other hand, is proportional to the alter-ego inquiry because it focuses on the individuals most likely to have had contact with YPF and BCRA and is limited to their communications with those entities.

---

[4]      Given Plaintiffs' refusal to give a written basis for their belated custodian list or to identify *any* sources they believe support that list, the Republic reserves the right to respond to any such information provided in Plaintiffs' letter of today.  On the parties' August 23 call, Plaintiffs principally asserted that the reasons for adding high-ranking officials were "self-explanatory" and stated that they "understand" certain vague generalities about various individuals' titles or roles, such as roles in "economic policy" and "strategic decision-making."

The Honorable Loretta A. Preska                                                    -6-

      Additionally, requiring the Republic to review *internal* government documents and communications of current and former high-ranking Republic officials from the last two years, especially when including Plaintiffs' expanded list of custodians, would infringe on the Republic's sovereignty.  The Republic's officials are involved in sensitive government decision-making related to matters such as national security, monetary policy, and energy policy.  A broad review of the Republic's internal government email (not to mention personal communications) would be wholly inappropriate.  Such wholesale discovery would not be permitted against federal or state agencies in the United States.  *See Citizens Union of City of N. Y.* v. *Attorney Gen. of N. Y.*, 269 F. Supp. 3d 124, 157-58 (S.D.N.Y. 2017) (Parker, M.J.) (state executive branch documents are generally protected by "deliberative process" privilege because it is "obvious" that "officials will not communicate candidly among themselves if each remark is a potential item of discovery"); *see also Fox News Network, LLC* v. *U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 541 (S.D.N.Y. 2010) (Maas, M.J.) (documents from U.S. Department of the Treasury were properly withheld because deliberative process privilege "applies to materials that are part and parcel of the process of internal agency decisionmaking").  Such communications are also protected from disclosure under the Argentine law governing the Right of Public Access to Public Information, which excuses the national government from disclosing "information that could jeopardize the proper functioning of the financial or banking system."  Law No. 27,275, Art. 8(a).

      Moreover, the Republic cannot legally produce communications from officials' personal accounts and devices (such as Gmail or WhatsApp) without obtaining their consent.  Under Argentina's Personal Data Protection Law No. 25,356 ("APDPL"), the treatment or processing (which includes collecting and searching) of personal data is, as a general rule, only legal when carried out with the data owner's prior written and informed consent.  *See* APDPL, Article 5.1.  The APDPL affords an even higher level of protection against the processing of "sensitive data."[5]  *See* APDPL, Article 7.1.  Because personal devices and personal email or instant messaging accounts must be assumed to contain "sensitive data," absent consent, the Republic cannot access such devices and accounts.  A party that violates the APDPL may be subject to both civil fines and criminal sanctions in Argentina.  *See* APDPL, Arts. 31 and 32.  The personal emails and devices of current and former Republic officials are also outside of the Republic's possession, custody, and control.  *See* Fed. R. Civ. P. 26(a)(1)(A)(ii).

      Finally, collecting and reviewing the broader set of documents now demanded by Plaintiffs would consume substantial resources, and take longer than the 60 days previously estimated to collect and review communications between key officials and YPF/BCRA.  (*See Petersen* ECF No. 623 at 3, n.4.)

*    *    *

      Because the Republic's proposal for email searches is reasonable and proportional to the alter ego inquiry—and Plaintiffs' counterproposal is untimely and unreasonable—the Court should adopt the Republic's proposal.

---

[5]    "Sensitive data" is personal data revealing racial or ethnic origin, political views, religious beliefs, philosophical or moral stances, union affiliations or information about health or sexual life.  APDPL, Art. 2.

The Honorable Loretta A. Preska                                              -7-

                                        Respectfully,

                                        */s/ Robert J. Giuffra, Jr.*
                                        Robert J. Giuffra, Jr.


cc:     Counsel of Record (via ECF)