**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETERSEN ENERGÍA INVERSORA, S.A.U. and
PETERSEN ENERGÍA, S.A.U.,

                         Plaintiffs,

        -against-

ARGENTINE REPUBLIC and YPF S.A.,

                         Defendants.

ETON PARK CAPITAL MANAGEMENT, L.P.,
ETON PARK MASTER FUND, LTD., and
ETON PARK FUND, L.P.,

                         Plaintiffs,

        -against-

ARGENTINE REPUBLIC and YPF S.A.,

                         Defendants.

Case Nos.:

1:15-cv-02739-LAP
1:16-cv-08569-LAP

**PLAINTIFFS' OPPOSITION TO YPF S.A.'S REQUESTS FOR
ORDERS TO SHOW CAUSE FOR INTERVENTION AND PERMANENT INJUNCTION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 1

ARGUMENT ......................................................................................................................... 4

I.      YPF's Proposed Orders Violate Local Rule 6.1(d) ........................................... 4

II.     Intervention Is Not Warranted ............................................................................ 5

III.    An Injunction Is Not Warranted .......................................................................... 8

        A.      YPF Waived Res Judicata ........................................................................ 8

        B.      Res Judicata Does Not Apply Here .......................................................... 9

        C.      No Injunction Is Warranted .................................................................... 16

IV.     At Best for YPF, the Court Should Reject the Res Judicata Defense Without Prejudice . 17

CONCLUSION ..................................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**

*Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*,
    48 F.3d 576 (1st Cir. 1995) ....................................................................10

*Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*,
    652 F. Supp. 2d 463 (S.D.N.Y. 2009) ................................................14

*Catanzano ex rel. Catanzano v. Wing*,
    103 F.3d 223 (2d Cir. 1996) ..................................................................5

*Cook Cnty., Illinois v. Mayorkas*, 340 F.R.D. 35 (N.D. Ill. 2021),
    *aff'd sub nom. Cook Cnty., Illinois v. Texas*, 37 F.4th 1335 (7th Cir. 2022)...................5, 6

*Cowan v. Ernest Codelia, P.C.*,
    2001 WL 856606 (S.D.N.Y. July 30, 2001).......................................8, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019)...........................................................13, 14

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
    875 F.3d 1241 (9th Cir.  2017) ............................................................10

*Env't Dynamics, Inc. v. Robert Tyer & Assocs., Inc.*,
    929 F. Supp. 1212 (N.D. Iowa 1996) ..................................................11

*Farinella v. Paypal, Inc.*,
    611 F. Supp. 2d 250 (E.D.N.Y. 2009) ..................................................6

*First Cap. Asset Mgmt., Inc. v. N.A. Partners, L.P.*,
    688 N.Y.S.2d 25 (N.Y. App. Div. 1999)........................................11, 15

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983).................................................................................2

*Five Points Hotel P'ship v. Pinsonneault*,
    835 F. Supp. 2d 753 (D. Ariz. 2011) ..................................... 11-12, 15

*Floyd v. City of New York*,
    770 F.3d 1051 (2d Cir. 2014) ................................................................5

*In re Chevron Corp.*, 749 F. Supp. 2d 170 (S.D.N.Y.),
    *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*,
    409 F. App'x 393 (2d Cir. 2010)...........................................................6

*In re Holocaust Victim Assets Litig.*,
    225 F.3d 191 (2d Cir. 2000)............................................................................6

*Kumaran v. Nat'l Futures Ass'n*,
    2023 WL 3160116 (S.D.N.Y. Apr. 28, 2023).................................................6

*Medical Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*,
    542 F. Supp. 2d 296 (S.D.N.Y. 2008) ...........................................................8

*NML Cap., Ltd. v. The Republic of Argentina*,
    2015 WL 7731779 (N.D. Cal. Dec. 1, 2015)..................................................3

*Olin Corp. v. Lamorak Ins. Co.*,
    325 F.R.D. 85 (S.D.N.Y. 2018).................................................................. 7-8

*Pike v. Freeman*,
    266 F.3d 78 (2d Cir. 2001) ............................................................. 9-10, 12, 15

*SEC v. Berman*,
    2021 WL 2895148 (S.D.N.Y. June 8, 2021) .................................................7

*Storey v. Cello Holdings, L.L.C.*,
    347 F.3d 370 (2d Cir. 2003)...................................................................... 13-14

*Trustees of Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc.*,
    919 F.3d 368 (6th Cir. 2019).......................................................................11

*Wells Fargo Bank, N.A. v. Weinberg*,
    173 Cal. Rptr. 3d 113 (Cal. Ct. App. 2014)...........................................12, 15

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
    694 F.3d 155 (2d Cir. 2012)........................................................................16

## RULES

Individual Prac. 2.A ...........................................................................................5

Local Civ. R. 6.1(d)............................................................................................4

## OTHER MATERIALS

Restatement (Second) of Judgments ...................................................................9

## PRELIMINARY STATEMENT

YPF's inappropriate use of the order to show cause process is just the latest attempt by YPF and the Republic to stymie basic discovery and award themselves the stay pending appeal that this Court denied. YPF's contention that res judicata would bar any argument Plaintiffs may eventually make that YPF is an alter ego of the Republic is baseless, which is likely why YPF did not raise it during the months it has been involved in discovery. The facts from which Plaintiffs may argue that YPF today is an appropriate source of funding to satisfy Plaintiffs' judgment against the Republic are fundamentally different from those underlying Plaintiffs' arguments that YPF and the Republic breached their contractual obligations in 2012. In any event, YPF's requests for orders to show cause do not satisfy the requirements of the Local Rules and its res judicata theory is waived. The Court therefore should not hear YPF's request for an injunction at all, but if the Court elects to do so it should deny it.

To be clear, Plaintiffs did not sue YPF in this action (now nine years ago) as an alter ego of the Republic. They sued YPF based on completely independent facts showing (in Plaintiffs' view) that YPF had failed to enforce its own bylaws when it owed a duty to Plaintiffs to do so, and injured Plaintiffs as a result. The Court held otherwise, concluding that YPF was not an enforcer of its bylaws. But that has nothing to do with the wholly different question of whether YPF today is an alter ego of the Republic such that Plaintiffs can look to its assets to satisfy this Court's judgment.

## FACTUAL BACKGROUND

Plaintiffs' claims in these cases arise from the Republic's failure to conduct a tender offer for Plaintiffs' shares as required by YPF's bylaws in light of the Republic's 2012 intervention in YPF and subsequent expropriation of 51 percent of YPF's class D shares. *See* ECF No. 437

(opinion on summary judgment) at 8-11.[1]  The Court granted summary judgment on liability to Plaintiffs on their breach of contract claim against the Republic and to YPF on all of Plaintiffs' claims against it.  *Id.* at 63.  The Court's liability findings did not address any events after May 8, 2014, when the Republic "completed the expropriation."  *Id.* at 9.  Nor did Plaintiffs' complaints, apart from background concerning Petersen's liquidation and Eton Park's tolling agreements with YPF.  *See* ECF No. 1 ¶ 46; *Eton Park* ECF No. 1 ¶ 44.

After a damages trial between Plaintiffs and the Republic, the Court entered final judgment.  ECF No. 498.  The Court granted the Republic's motion for a stay of enforcement pending appeal subject to certain conditions, ECF No. 527 at 10; ECF No. 529, which the Republic failed to satisfy.  On January 11, 2024, the Court granted Plaintiffs' motion for an order that a "reasonable period of time" had elapsed since judgment such that attachment and execution was permissible under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1610(c). *See* ECF No. 538.

On March 25, 2024, Plaintiffs issued document and Rule 30(b)(6) subpoenas to YPF seeking information about, among other things, Argentina exercising control over YPF's management or using YPF assets for government purposes.  *See* ECF No. 573-1 (subpoenas) at p. 22 of 25.  Both subpoenas specified that the relevant time period was from January 1, 2020 forward.  *See id.* at pp. 7, 18 of 25.  When negotiations over the document subpoena broke down, Plaintiffs filed a pre-motion letter on April 30, 2024, explaining that they sought "discovery on whether YPF is *now* the Republic's alter ego" under the test derived from *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*").  ECF No. 563 at 2 (emphasis added).  In response, YPF argued principally that it had not been properly

---

[1] ECF No. citations refer to the *Petersen* docket except where otherwise noted.

served.  ECF No. 569 at 1-2.  YPF also, however, denied that it was the Republic's alter ego.  *See id*. at 3.  YPF claimed "[t]hat question has been considered and rejected, and there is no basis to revisit it here," citing a 2015 decision in unrelated litigation in the Northern District of California.  *See id*. at 3 (citing *NML Cap., Ltd. v. The Republic of Argentina*, 2015 WL 7731779, at *4 (N.D. Cal. Dec. 1, 2015)).  YPF said nothing about res judicata arising from earlier proceedings in this case.

The Court heard argument on May 28, 2024.  Counsel for YPF again argued that it had not been served.  *See* ECF No. 611-3 (May 28, 2024 Tr.) at 41-44.  The Court had ruled earlier in the day that Plaintiffs could obtain certain alter ego discovery from the Republic, and counsel for YPF noted that "our recommendation would be that that discovery occur," and if discovery from the Republic showed "that YPF is or might be an alter ego, then it might be the case that third-party discovery from YPF to fill in whatever holes remain would be appropriate."  *Id*. at 47:20-25.  Finally, counsel asked to submit briefing on whether Plaintiffs had made an adequate showing to justify discovery, *see id*. at 53, because YPF had declined to address the issue in its letter to the Court.  The Court rejected that request and ordered YPF to produce certain materials, holding that Plaintiffs had made an adequate showing to justify alter ego discovery.  *See id*. at 54.  Counsel for YPF never raised res judicata as a potential defense to such discovery or to a potential alter ego finding.

Through June, July, and the first half of August, Plaintiffs and YPF met and conferred six times over YPF's production.  *See* ECF No. 619 at 1.  Along the way, YPF produced documents twice.  YPF never raised the issue of res judicata.

On August 12, 2024, YPF filed its proposed orders to show cause for intervention and a permanent injunction.  ECF Nos. 609, 612.  YPF argues for the first time that res judicata bars

3

any future attempt by Plaintiffs "to hold YPF liable or attach YPF's assets."  ECF No. 613 ("Inj. Br.") at 1.  YPF asserts that it "preserves its jurisdictional objections and defenses" and will raise "threshold and merits objections" later.  *Id*. at 1 & n.1; *see also id*. at 7.

## ARGUMENT

### I.    YPF's Proposed Orders Violate Local Rule 6.1(d)

YPF's requests for orders to show cause fail out of the gate because they violate Local Rule 6.1(d).  That rule provides that no order to show cause will be granted "except upon a clear and specific showing by affidavit that contains good and sufficient reasons why a procedure other than by notice of motion is necessary."  Counsel for YPF asserts in two declarations that YPF has good and sufficient reasons but does not articulate them, much less make a clear and specific showing – and YPF has already litigated these issues in a conventional posture.  *See* ECF No. 611 ¶ 14; ECF No. 614 ¶ 5.

Counsel's declaration in support of intervention claims YPF must contest Plaintiffs' "attempt to shift liability" and "pursu[e] extensive discovery."  ECF No. 611 ¶ 14.  But Plaintiff has not sought any relief concerning liability, and YPF already litigated Plaintiffs' document subpoena through this Court's usual procedures.  Counsel's declaration in support of an injunction merely summarizes YPF's (meritless, as explained below) position that Plaintiffs' "attempt to pursue recovery from YPF" is barred by res judicata.  ECF No. 614 ¶ 5.  It asserts "YPF is entitled to the prompt preclusive effect" of its judgment of non-liability on Plaintiffs' breach of contract claims, *id*., but that does not explain why ordinary motion practice would not be sufficient.  Any claim to urgency is severely undermined by YPF's failure to invoke res judicata in any way, in communications with Plaintiffs or the Court, for four and a half months – from its receipt of Plaintiffs' subpoena on March 25 to its filing of proposed orders on August 12.

4

YPF appears to have used the order to show cause process to grant itself 38 pages of first-round briefing – in two memoranda and one letter, ECF Nos. 610, 613, 618 – rather than the three pages of the Court's pre-motion letter process, Individual Practice 2.A.  The Court should reject the proposed orders for their breach of the Local Rules and gamesmanship alone.

## II.    Intervention Is Not Warranted

Even if YPF's proposed orders were properly filed, intervention would not be appropriate because YPF's request is untimely.  Both intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b) require a "timely" request by the intervenor, and untimeliness alone is a sufficient basis to deny intervention.  *Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996).  Evaluation of timeliness considers "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness."  *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014).  All factors weigh against timeliness here.

*First*, YPF knew or should have known that its potential alter ego status was at issue on March 25, when Plaintiffs sought documents in its possession concerning all instances since January 1, 2020 in which Argentina "has . . . exercised control over You" or "used Your Assets for Argentina's own purposes or benefit."  ECF No. 573-1 (subpoenas) at p. 22 of 25.  If YPF needed to intervene to oppose that request, it should have done so then.  Failing that, at a minimum it should have raised res judicata in responding to Plaintiffs' motion to compel.  The four and a half months between YPF's receipt of Plaintiffs' subpoenas and its proposed orders to show cause is long enough to weigh against intervention.  *See Cook Cnty., Illinois v. Mayorkas*, 340 F.R.D. 35, 47 (N.D. Ill. 2021), *aff'd sub nom. Cook Cnty., Illinois v. Texas*, 37 F.4th 1335

(7th Cir. 2022) (four-month delay weighed against timeliness); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 186 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (three-month delay); *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 258 (E.D.N.Y. 2009) (three-month delay).

*Second*, the prejudice to Plaintiffs arising from this delay is substantial.  Plaintiffs have engaged in numerous meet and confer sessions with YPF, including six *after* the Court ordered YPF to produce.  Plaintiffs have also pursued discovery from the Republic relevant to their potential alter ego argument.  Had YPF raised an objection earlier (and prevailed), Plaintiffs would have been spared substantial time, effort, and expense.  *See Cook Cnty., Illinois*, 340 F.R.D. at 49-50 (allowing intervention would "squander the resources" original party invested "in deciding how to proceed with . . . this case" before intervenor moved).

*Third*, YPF will suffer no prejudice if intervention is denied.  Intervention is not required to address YPF's discovery concerns:  YPF already litigated Plaintiffs' subpoena and lost, and Plaintiffs' efforts to obtain discovery from the Republic cost YPF nothing.  Nor is intervention needed to allow YPF to head off a future request by Plaintiffs for relief.  If YPF is entitled to contest such a request, it can do so when it is made.  *See In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000) (denial of intervention did not prejudice movants because they had other routes to relief); *Kumaran v. Nat'l Futures Ass'n*, 2023 WL 3160116, at *20 (S.D.N.Y. Apr. 28, 2023) (same); *Cook Cnty., Illinois*, 340 F.R.D. at 51-52 (same).

*Fourth*, the only unusual circumstance here is that YPF has already appeared in this Court to contest the very same discovery it now seeks to intervene to prevent, and failed to raise the res judicata argument it invokes now.  Indeed, at oral argument on Plaintiffs' motion to compel, YPF's counsel conceded that, if discovery from the Republic showed that "YPF is or might be an

alter ego [of the Republic], then it might be the case that third-party discovery from YPF to fill in whatever holes remain would be appropriate." ECF No. 611-3 (May 28, 2024 Tr.) at 47:23-25. YPF letting that earlier opportunity pass heightens the untimeliness of its request.

YPF claims Plaintiffs' interest in its potential alter ego status became apparent only when Plaintiffs filed their pre-motion letter on April 30. *See* ECF No. 610 ("Int. Br.") at 12. But YPF was on notice a month earlier, through Plaintiffs' subpoenas themselves. Plaintiffs' Rule 30(b)(6) subpoena includes this topic:

> The involvement of Argentina in: (a) matters presented to or decided by Your Board of Directors; (b) appointment of Your Board of Directors; ( c) hiring or appointment of Your officers or employees; ( d) decisions concerning Your operations; ( e) Your Debt, Letters of Credit, or Commercial Transactions with any Person in the United States or any Foreign Country; (f) Your annual budget or financial decision-making; (g) Your selection of any vendor or third party with which you transact business; or (h) Your reserve management.

ECF No. 573-1 (subpoenas) at p. 8 of 25. Plaintiffs' document subpoena sought documents related to YPF personnel "simultaneously serv[ing] in an Official Position for Argentina"; and Argentina "exercis[ing] control over You," "us[ing] Your Assets for Argentina's own purposes," participating in appointment of YPF officers or directors or hiring of YPF employees or vendors, or approving YPF operational decisions. *Id*. at p. 22 of 25. It also sought documents sufficient to identify and locate YPF assets and bank accounts. *See id*. at p. 23 of 25. It should have been obvious to YPF that Plaintiffs were investigating YPF as the Republic's alter ego.

YPF's cases granting intervention (Int. Br. at 12) do not justify its delay. In each one the intervenor moved more quickly than YPF, which took four and a half months. *See SEC v. Berman*, 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021) (Preska, J.) ("less than three months");[2] *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87-88 (S.D.N.Y. 2018) (two and a

---

[2] The intervention in *Berman*, 2021 WL 2895148, at *1, was on consent.

half months); *Medical Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 301-02, 304 (S.D.N.Y. 2008) (less than four months).

Independent of the standards governing Rule 24, YPF asserts (Int. Br. at 13) that intervention is necessary because Plaintiffs' potential alter ego argument is "barred by law." Presumably YPF refers to the res judicata doctrine, but that does not apply here. *See infra* Part III.A-B. The Court should thus deny intervention for futility. YPF also claims (Int. Br. at 13) to be aware of no case in which a court allowed a plaintiff to seek recovery from a judgment debtor's alter ego after losing a direct liability claim against it. As detailed below, Plaintiffs are aware of three, and YPF conspicuously cites no case rejecting such a process. *See infra* Part III.B. Finally, YPF complains (Int. Br. at 13) that Plaintiffs have not "clearly present[ed] their notice of claim and basis for it." But that is why, if the Court thinks YPF's res judicata argument may have some merit, it should permit YPF to raise it in the future, in opposition to a specific request for relief made by Plaintiffs. *See infra* Part IV.

## III.    An Injunction Is Not Warranted

If the Court grants intervention, it need not reach the merits of YPF's res judicata argument because YPF has waived it. But even if it had not, YPF cannot satisfy the standard for res judicata here. Plaintiffs will base their future argument that YPF is an alter ego of the Republic – should they make such an argument – on different facts from those underlying their earlier arguments that YPF and the Republic breached their contractual obligations. Accordingly, no injunction is warranted.

### A.    YPF Waived Res Judicata

YPF waived any res judicata argument by acquiescing to Plaintiffs' pursuit of post-judgment alter ego discovery. The acquiescence rule, articulated by the Restatement (Second) of Judgments and applied by New York and many other courts, *see Cowan v. Ernest Codelia, P.C.*,

2001 WL 856606, at *7 (S.D.N.Y. July 30, 2001) (collecting cases), provides that res judicata does not apply if "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, *or the defendant has acquiesced therein*," Restatement (Second) of Judgments § 26(1)(a) (emphasis added).  Here, YPF did not assert res judicata in response to Plaintiffs' subpoena, instead negotiating terms of a potential production for a month.  Nor did YPF assert res judicata in response to Plaintiffs' motion to compel, either in its papers or at oral argument.  Instead, as noted above, YPF agreed that "it might be the case" that alter ego discovery "from YPF . . . would be appropriate."  ECF No. 611-3 (May 28, 2024 Tr.) at 47:23-25.  After the Court ordered YPF to produce, YPF did so, and negotiated with plaintiffs for two and a half months over additional productions without ever raising the issue of res judicata.  Even now, having proposed orders to show cause, YPF insists that it is not challenging the Court's discovery ruling and is continuing with production.  *See* ECF No. 621 at 1.  This conduct, which has induced a substantial amount of work by Plaintiffs' counsel, is acquiescence in Plaintiffs' pursuit of a post-judgment alter ego theory, waiving any res judicata argument.  *See Cowan*, 2001 WL 856606, at *7 (holding res judicata defense waived through acquiescence).

### B.    Res Judicata Does Not Apply Here

Even if YPF's res judicata argument is procedurally proper and not waived, it is meritless. Claim preclusion applies when " '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.' "  *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (Sotomayor, J.) (citation omitted; alterations in *Pike*). Whether the third element is satisfied "depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims."  *Id*.  Courts "look to whether the underlying facts are related in time, space, origin,

or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (internal quotation marks omitted). Notably, despite the "could" language of the traditional articulation of the third element, "[t]he question is not whether the applicable procedural rules *permitted* assertion of the claim in the first proceeding; rather, the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." *Id.*

YPF cannot satisfy the third requirement, because the facts underlying Plaintiffs' breach of contract claim and their potential future alter ego assertion are fundamentally different. Not only is there no basis to say Plaintiffs "*should have*" raised their alter-ego-for-enforcement theory alongside their breach of contract claims, *id.* – it would have been impossible for Plaintiffs to do so.

Courts routinely hold that res judicata does not bar assertions of alter ego status made for judgment enforcement because such assertions do not implicate the same operative facts as the underlying dispute. As the Ninth Circuit has explained, "Because there is not substantial overlap of the facts material to proving, first, the breach of contract claim in the prior . . . action and, second, the alter ego and successor liability claims in the present action, the two actions do not grow from the same transaction or occurrence, and res judicata does not apply." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1247 (9th Cir. 2017); *see also Trustees of Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 384 (6th Cir. 2019) (prior claim for entity's failure to make required payments did not arise out of same operative facts as pending claim that defendant was entity's alter ego); *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 585 (1st Cir. 1995) (prior claims for "misconduct while entering into

and performing under the subcontract" were distinct from pending supplementary pleadings' alter ego claim); *Trustees of Sheet Metal Workers Local No. 1 Welfare Trust v. Pekin Climate Control, Ltd.*, 669 F. Supp. 2d 924, 930 (C.D. Ill. 2009) ("prior action focused on facts surrounding the ERISA violation itself" was not res judicata precluding current action "focused on facts that could potentially establish" current defendants are prior defendant's alter egos); *Env't Dynamics, Inc. v. Robert Tyer & Assocs., Inc.*, 929 F. Supp. 1212, 1244 (N.D. Iowa 1996) ("the essential factual issues of 'alter ego' liability [to enforce judgment], though of contemporary provenance and involving the same actors as the [underlying] patent infringement liability issues, do not amount to a repackaging of the same facts into a different legal theory for recovery").

The same rule applies even if the putative alter ego was a defendant in the prior action and avoided liability.  In *First Capital Asset Management, Inc. v. N.A. Partners, L.P.*, 688 N.Y.S.2d 25, 26 (N.Y. App. Div. 1999), the plaintiff sued two entities and their owner for payment under a contract.  The plaintiff won a judgment against the entities but its claim against the owner was dismissed.  *See id*.  The plaintiff then brought a new action against the owner to enforce the judgment on an alter ego theory.  *See id*.  The First Department reversed the Supreme Court's grant of summary judgment to the owner on res judicata grounds, reasoning that the prior dismissal turned on the owner's personal contractual liability, which "did not preclude a subsequent proceeding to enforce the judgment against [the owner] based on allegations that would support piercing the corporate veil of the judgment debtors, inasmuch as 'the necessary elements of proof and evidence required to sustain recovery vary materially.' "  *Id*. at 27.

Similarly, in *Five Points Hotel Partnership v. Pinsonneault*, 835 F. Supp. 2d 753, 756-57 (D. Ariz. 2011) ("*Five Points*"), the plaintiffs agreed to sell a hotel to an LLC with a sole

individual manager.  When the transaction did not proceed as plaintiffs anticipated, they sued the LLC and the manager.  *See id*. at 756.  The court granted the manager's motion for summary judgment but found for plaintiffs on their claims against the LLC.  *See id*.  When the LLC failed to pay, the plaintiffs brought a new action against the manager asserting he was its alter ego.  *See id*.  The court rejected the manager's argument that the claim was barred by res judicata because the two claims failed Arizona's "same evidence" test, *id*. at 760, similar to the Second Circuit's inquiry into "whether the same evidence is needed to support both claims," *Pike*, 266 F.3d at 91; *see also Wells Fargo Bank, N.A. v. Weinberg*, 173 Cal. Rptr. 3d 113, 117-18 (Cal. Ct. App. 2014) (holding res judicata did not apply where plaintiff bank sued solo law practice and its individual member for repayment of line of credit, won judgment against practice but was dismissed as to member, and later sued member as alter ego to enforce judgment; "motion to add Weinberg to the judgment sought a remedy, not for breach of contract, but for Weinberg's exercise of control over the law corporation that deprived Wells Fargo of the ability to collect the judgment against the law corporation for breach of contract.  These are separate and distinct wrongs.").

  While the precise contours of what Plaintiffs may assert in the future are unclear because that will depend on what discovery reveals, there can be little doubt that any argument that YPF is an alter ego of the Republic for purposes of judgment enforcement will depend on different facts from those underlying Plaintiffs' contract claims.  As this Court has explained, Plaintiffs previously argued that "YPF breached its alleged obligations under the Bylaws by '(1) failing to enforce the bylaws' tender offer provisions vis-à-vis Argentina[;] . . . (2) failing to enforce the penalties that section 7(h) imposes on shareholders who have breached their tender offer obligations[,]'; and (3) 'failing to distribute dividends to YPF's shareholders, including Petersen.'"  ECF No. 437 (opinion on summary judgment) at 10 (citations omitted).  These

events occurred in 2012 or shortly thereafter and have nothing to do with the relationship between the Republic and YPF today, more than a decade later.  The discovery Plaintiffs now seek concerns the latter.  ECF No. 573-1 (subpoenas) at pp. 7, 18 of 25.  Similarly, in making their showing to justify alter ego discovery, Plaintiffs cited a host of facts bearing no connection to the parties' previous contract dispute.  *See* ECF No. 563 (pre-motion letter) at 2-3.  Just as in the cases cited above, this present-day relationship was not and could not have been at issue in litigation over Plaintiffs' contract claims.

YPF's arguments to the contrary fail.  YPF asserts (Inj. Br. at 10) that a future alter ego assertion will "arise[] from the same core facts and motivation" as Plaintiffs' breach of contract claim against YPF.  As explained above, that is simply wrong.  The facts relevant to alter ego will be different from those relevant to YPF's alleged contract breach, and separated from them by a decade.  There is no necessary connection between the two inquiries.  As the Third Circuit has explained in detail, the *Bancec* test "does not require a connection between a sovereign's extensive control of its instrumentality and the plaintiff's injury."  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 143 (3d Cir. 2019).

YPF contends (Inj. Br. at 12-13) that, where alter ego allegations arise from the same transactions that were the basis for the prior suit, they can and should have been brought there.  Even if that is so, it is not this case.  When Plaintiffs filed suit in 2015 and 2016, they could not have asserted that facts surrounding the 2012 contract breach would render YPF an alter ego of the Republic in 2024 (or later, given the current rate of discovery).  "Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same 'course of conduct.'"  *Storey v. Cello Holdings, L.L.C.*,

347 F.3d 370, 383 (2d Cir. 2003) (Sotomayor, J.).  Moreover, a claim of alter ego status in 2012 would have asserted that YPF was directly liable in real time for the Republic's breach.  But "if the instrumentality were directly liable for the award, there would be no need to invoke *Bancec* at all."  *Crystallex*, 932 F.3d at 143.

*Board of Managers of 195 Hudson Street Condominium v. Jeffrey M. Brown Associates, Inc.*, 652 F. Supp. 2d 463 (S.D.N.Y. 2009), cited by YPF (Inj. Br. at 12-13), is irrelevant here because it involved just such a direct liability claim.  A condo management board sought a declaration that it could recover a judgment against a construction company from that company's parent as an alter ego.  *See id*. at 465.  The board's alter ego allegations arose from the companies' conduct in the project that led to the outstanding judgment.  *See id*. at 468.  Accordingly, the alter ego claim should have been brought in the prior proceeding because it "arises from the same transaction or series of transactions that were the basis of the prior suit." *Id*. at 479-80.  As Plaintiffs' previous factual showing and subpoenas demonstrate, that is not the case here.  *Compare* ECF No. 563 (pre-motion letter) at 2-3 (preliminary alter ego facts); ECF No. 573-1 (subpoenas) at pp. 7, 18 of 25 (requests for recent information), *with* ECF No. 437 (opinion on summary judgment) at 5-9 (summary judgment facts).

In a similar vein, YPF notes that the Republic did not become its controlling shareholder after the Court entered judgment, and claims that therefore no "change in circumstance" exempts Plaintiffs' future alter ego assertion from preclusion.  ECF No. 621 at 2.  Plaintiffs do not need a change in circumstance, because YPF cannot satisfy the requirements of res judicata.  The claims Plaintiffs made before did not arise from the same facts as the alter ego theory Plaintiffs may pursue in the future.  YPF also suggests that Plaintiffs could have argued before judgment that YPF was the Republic's alter ego in 2012.  *See id*.  Even if true, that argument too would have

been based on different facts from Plaintiffs' potential future alter ego argument.  That claim would have been that YPF was the Republic's alter ego at the time of the Republic's breach and therefore directly liable for that breach.  The potential future assertion is that YPF is the Republic's alter ego today and therefore is a potential source of funds to satisfy the Republic's judgment.  These contentions are based on different facts.

YPF asserts (Inj. Br. at 13) that Plaintiffs alleged in their complaints that the Republic exercised certain authority over YPF and "pressed the notion that these facts supported their claim of direct liability against YPF."  Plaintiffs' future alter ego argument, YPF contends (Inj. Br. at 13), will "arise[] from the same kinds of allegations."  But the same "kinds" of allegations are not the same allegations – and could not be because they are separated by more than a decade.  Because any alter ego argument will depend on different facts, Plaintiffs will not be asserting merely a new legal theory they "*should have*" asserted before.  *Pike*, 266 F.3d at 91.

YPF makes a show (Inj. Br. at 14-15) of citing cases in which plaintiffs sue only sovereigns in an initial litigation and then sue putative alter egos later, and other cases in which plaintiffs assert alter ego claims alongside their sovereign claims.  YPF then asserts (Inj. Br. at 15) that a plaintiff cannot "pursue a putative alter ego" for direct liability in an initial action and later seek recovery against it "as an alter ego," but cites no authority for this proposition.  In fact plaintiffs can do just that, at least where the facts relied upon are different, as they will be here.  *See Five Points*, 835 F. Supp. 2d at 760; *First Cap. Asset Mgmt., Inc.*, 688 N.Y.S.2d at 27; *Wells Fargo Bank, N.A.*, 173 Cal. Rptr. 3d at 118.

Though not clearly related to its res judicata argument, YPF asserts (Inj. Br. at 15-16) that Plaintiffs must file a complaint or make a motion as to YPF.  YPF contends (Inj. Br. at 18) that "Plaintiffs cannot recover against YPF without acting as to YPF."  Whether that is true or not, it

is irrelevant today. To date Plaintiffs have sought discovery from the Republic and YPF, which the Court ordered over objections. Plaintiffs have not sought relief from the Court in "recover[ing]" anything from YPF. If they do so, YPF may take whatever steps are available to resist it. In the meantime, there is no basis for YPF to demand that Plaintiffs take some procedural step so that YPF can oppose it.

### C.     No Injunction Is Warranted

YPF seeks (Inj. Br. at 19-20) a permanent injunction preventing Plaintiffs "from pursuing recovery under the theory that YPF is an alter ego of the Republic." To secure a permanent injunction, YPF must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160-61 (2d Cir. 2012). YPF satisfies none of these requirements. YPF claims injury (Inj. Br. at 20) from relitigating matters already "definitively determined," but, as explained above, Plaintiffs' future alter ego assertion has not yet been determined. Absent any injury, YPF has no need for a remedy. Furthermore, the Court should not credit YPF's *ipse dixit* claim (Inj. Br. at 20) that being held the Republic's alter ego would be an "existential threat." Given the foregoing, YPF faces no inappropriate hardship, while Plaintiffs have received not a cent on a judgment that took years of litigation to obtain. Cutting off a potential route to collection would impose severe hardship on Plaintiffs. And the only public interest YPF cites is that in enforcing res judicata rules – but those rules favor Plaintiffs, not YPF.

IV.    **At Best for YPF, the Court Should Reject the Res Judicata Defense Without Prejudice**

If there is ambiguity about whether res judicata applies here, it is only because YPF is asserting the doctrine in the absence of any pending request for relief by Plaintiffs.  If the Court harbors any concern that Plaintiffs may in the future assert that YPF is the Republic's alter ego in reliance on the same facts that underlay their breach of contract claim, the Court should reject YPF's request for an injunction without prejudice to YPF asserting res judicata – in a procedurally appropriate way – in response to such an assertion in the future.

**CONCLUSION**

The Court should deny intervention and not reach YPF's request for an injunction.  If it reaches the request, the Court should hold the res judicata defense waived or meritless or, in the alternative, permit YPF to assert res judicata in a procedurally appropriate way in response to a future request for relief by Plaintiffs.

Dated: August 26, 2024                       Respectfully submitted,

KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.

By: */s/ Andrew E. Goldsmith*
Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone:  (202) 326-7900
Fax:  (202) 326-7999
Email:  mhansen@kellogghansen.com
       dho@kellogghansen.com
       agoldsmith@kellogghansen.com


KING & SPALDING LLP

Randy M. Mastro
Israel Dahan

17

Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone:  (212) 556-2114
Fax:  (212) 556-2222
Email:  idahan@kslaw.com
            lharris@kslaw.com

-and-

Reginald R. Smith
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Phone:  (713) 751-3200
Fax:  (713) 751-3290
Email:  rsmith@kslaw.com


CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV*
706 Duke Street
Alexandria, VA 22314
Phone:  (202) 742-8900
Fax:  (202) 742-8895
Email:  paul.clement@clementmurphy.com
            harker.rhodes@clementmurphy.com
*Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*