# KING & SPALDING

1185 Avenue of the Americas,
34th Floor
New York, NY 1 0036-4003
www.kslaw.com

Randy M. Mastro
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

August 27, 2024

*Via CM/ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

   Re:   *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739; *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Your Honor:

      Plaintiffs respectfully submit this response to the Republic's letter dated August 26, 2024 presenting its "views on the relevance of the Second Circuit decision in *Attestor Master Value Fund LP v. Republic of Argentina*, No. 22-2301, issued on August 21, 2024, to Plaintiffs' Motion for Injunction and Turnover." *See* ECF No. 639.[1]

      Only Argentina could somehow try to transform the Circuit's unequivocal affirmance of this Court's decision – in an opinion that called Argentina's arguments without merit no fewer than seven times – into some sort of support for its position in this matter. But that attempt too is unavailing: Far from rejecting Plaintiffs' position in their turnover motion, the *Attestor* decision strongly supports it.

      In *Attestor*, the Second Circuit affirmed this Court's orders granting attachment and turnover of Argentina's reversionary interests in certain collateral held by the Federal Reserve Bank of New York in accounts in New York, Germany, and Switzerland. Slip op. at 25. As relevant here, the Second Circuit held that the reversionary interests were not immune from attachment or execution under Section 1610(a) of the FSIA, for two reasons. <u>First</u>, Argentina had "used the reversionary interests in commercial activity" when it offered to alter or extinguish them in its 2005 and 2010 exchange offers. *Id.* at 11, 14. <u>Second</u>, in a section of its decision entitled "The Commercial Activity Was in the United States," the Second Circuit concluded that "the commercial activity in which Argentina used the reversionary interests took place at least in part in the United States," because both exchange offers "were made in the United States and registered with the Securities and Exchange Commission." Slip op. at 18, 21.

---

[1] ECF numbers refer to the *Petersen* docket.

   The Second Circuit's *Attestor* decision thus contains strong support for Plaintiffs' position in these proceedings that, for Argentina's YPF shares to be attachable under Section 1610(a), the commercial activity for which Argentina uses the shares must take place in the United States, regardless of where Argentina's chosen YPF Board is physically located when it decides to engage in U.S. commercial activity. *See* ECF No. 587 at 13-14; ECF No. 598 at 4-5. *See also* 28 U.S.C. § 1610(a) (referring to "property . . . used for a commercial activity in the United States"). Argentina does not dispute that YPF's sponsorship of an ADR program for its Class D shares with BNYM in New York, listing of the shares on the NYSE, registration of the shares with the SEC, and sale of its debt to U.S. institutional investors under SEC Rule 144A, all constitutes "commercial activity" that takes place in the United States. *See* ECF No. 577 at 24. Because Argentina uses its controlling YPF shares to direct this commercial activity in the United States, *see* ECF No. 556 at 16-18, the shares are subject to turnover under Section 1610(a).

   Argentina nonetheless brazenly asserts in its letter that the *Attestor* decision affords its YPF shares immunity from execution because it directed substantial U.S. commercial activity from "annual shareholder meetings of YPF *in Argentina*." ECF No. 639 at 2. Specifically, Argentina invokes the Second Circuit's paraphrasing of Section 1610(a) as requiring that "the use of th[e] [attached] property in commercial activity occur in the United States." *See id.* at 1 (quoting slip op. at 19 (citing 28 U.S.C. § 1610(a)). But, as already discussed, the Court later clarified what it means to "use" "property in commercial activity" "in the United States": the FSIA required that "the *commercial activity* in which Argentina used [the property] took place at least in part in the United States." Slip op. at 21 (emphasis added). That was true in *Attestor* because Argentina's "2005 and 2010 exchanges offers were made in the United States," even though Argentine officials were (presumably) located in Argentina when they directed those offers to occur.[2] Likewise here, Argentina uses its YPF shares to direct commercial activity that takes place in the United States. *Attestor* thus confirms Plaintiffs' position that Argentina's YPF shares are subject to turnover under Section 1610(a).

Respectfully,

*/s/ Randy M. Mastro*
Randy M. Mastro

---

[2] The Second Circuit had no occasion in *Attestor* to draw a clear distinction between (i) Argentina's "use" of its reversionary interests in the 2005 and 2010 exchange offers and (ii) the "commercial activity" for which the reversionary interests were used, because these were two sides of the same coin. *See, e.g.*, slip op. at 18 (holding that "Argentina's uses of the reversionary interests have been commercial in nature"). That distinction is crucial where, as here, a foreign state uses its controlling shares in a state-owned company to direct the company's commercial activity in the United States.