# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

August 29, 2024

Via ECF

The Honorable Loretta A. Preska,
    United States District Court for the Southern District of New York,
        500 Pearl Street,
            New York, NY 10007.

Re: *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

On behalf of the Argentine Republic, I respond briefly to Plaintiffs' August 26, 2024 letter proposing custodians and search terms (*Petersen* ECF No. 642). In their letter, Plaintiffs offer—for the first time—the purported support for their 12 proposed document custodians, in addition to the 18 custodians whose emails with YPF and BCRA the Republic has already agreed to search for relevant evidence. The Court should reject Plaintiffs' request because those 12 additional custodians are unlikely to possess information relevant to the alter-ego inquiry:

1. **Mariela Beliansky**: As Undersecretary of Energy Transition and Planning, Ms. Beliansky is primarily responsible for matters related to energy planning and the transition towards a low-carbon economy, not working with YPF. *See* Decree 293/2024. Plaintiffs provide no basis for their speculation that she is "likely to have information regarding the Republic's control over YPF's oil pricing and supply policies, as well as YPF's petroleum export and import policies." (Pls.' Ltr. at 2.) These areas are not part of the Undersecretary's purview.

2. **Luis Caputo**: As the current Minister of Economy, Mr. Caputo is unlikely to have "day-to-day" interaction with either YPF or BCRA. The Republic proposed as custodians the current and former Secretaries of Energy, Finance, and Treasury, which are within the Ministry of Economy and would have "day-to-day" interaction with YPF and BCRA. This Court should not countenance Plaintiffs' demand to conduct a fishing expedition through the email of one of the most senior members of the Republic's government, even though Plaintiffs will receive email from lower level officials far more likely to possess relevant evidence. If the shoe were on the other foot, the U.S. Government would object strenuously to a similar request directed to our Treasury Secretary. *See* Rep. Ltr. at 6. The articles

The Honorable Loretta A. Preska                                                                                          -2-

       cited by Plaintiffs also do not support their inclusion of Mr. Caputo as a custodian. One article notes that YPF—not the Republic—chose to move the location of a planned LNG plant from Buenos Aires province to Río Negro,[1] while another explains that YPF Luz (which is a separate company partially owned by YPF S.A.[2]) reached an agreement with the Ministry of Economy related to the payment of certain debts with sovereign bonds.[3]

3. **Santiago Caputo**: As explained in the Republic's August 26 letter, Mr. Caputo is not a government official (and has no governmental email account). (Rep. Ltr. at 3.) He is a consultant. Plaintiffs assert that Mr. Caputo "manages YPF's advertising budget through Guillermo Carat, his former partner at the consulting firm Move Group and current Corporate Affairs, Communication and YPF Marketing Vice President." (Pls' Ltr. at 3.) The article cited by Plaintiffs makes no mention of Mr. Caputo "managing" YPF's advertising budget, but notes only that Mr. Carat, who is YPF Marketing Vice President, is a former partner of Mr. Caputo.[4]

4. **Ricardo Blas Casal**: Plaintiffs provide no support for their speculation that Mr. Casal "is likely to have information regarding the Republic's implementation" of unspecified "policies" at BCRA. (Pls.' Ltr. at 4.) In his former role as Legal and Administrative Secretary, Mr. Casal was primarily responsible for the coordination of technical and administrative support activities for different areas of the Ministry of Economy, not interfacing with BCRA. *See* Decree 480/2022.

5. **Sergio Massa**: As the Minister of Economy prior to Mr. Caputo, Mr. Massa is equally unlikely to have had day-to-day contact with either YPF or BCRA. The Republic proposed as custodians the government officials that held the positions of Secretaries of Energy, Finance, and Treasury when Mr. Massa was Minister of Economy. Plaintiffs cite *no* support for their speculation that Mr. Massa "is likely to have communications regarding use of YPF's advertising budget for political purposes and oil price manipulation." (Pls.' Ltr. at 4.) Plaintiffs merely cite an article—which makes no mention of Mr. Massa or the Ministry of Economy—reporting that YPF lowered oil prices in response to inflation.[5]

6. **José Ignacio de Mendiguren**: As the Secretary of Industry and Productive Development from August 2022 to December 2023, Mr. Mendiguren was primarily responsible for

---

[1] https://www.lanacion.com.ar/politica/axel-kicillof-responsabilizo-a-milei-de-la-decision-de-ypf-de-hacer-una-planta-de-gnl-en-rio-negro-nid31072024/

[2] https://ypfluz.com/IR/TheCompany?AspxAutoDetectCookieSupport=1 (showing that YPF Luz is 75.01% owned by YPF and 24.99% owned by General Electric).

[3] https://www.lanacion.com.ar/economia/guino-de-ypf-a-su-gran-accionista-convalido-la-polemica-propuesta-de-caputo-y-ya-cobro-nid15052024/

[4] https://www.lapoliticaonline.com/politica/la-pauta-de-ypf-se-disparo-mas-de-1000-y-exponeuna-secretaria-de-medios-paralela/

[5] https://www.lapoliticaonline.com/energia/ypf-intervino-para-bajar-el-precio-del-barril-criollocomo-aporte-ante-la-escalada-inflacionaria/

The Honorable Loretta A. Preska -3-

    developing and planning industrial development policies.  *See* Decree 451/2022; Ministry of Economy Administrative Resolution 449/2023.  Plaintiffs provide no basis to support their speculation that Mr. Mendiguren may have information about supposed "instructions" from the Minister of Economy to YPF about "oil and gas pricing" or YPF's advertising.  (Pls.' Ltr. at 4.)

7. **Guillermo Michel**:  As the former National Director of Customs of the Argentine Federal Administration of Public Income, Mr. Michel was primarily in charge of enforcing customs legislation (*see* Decree 1155/1996 and Decree 618/1997) and did not have "day-to-day" interaction with YPF or BCRA.  Plaintiffs repeat a news report that Mr. Michel is "Sergio Massa's most trusted man" and speculate that he was involved in trade and economic policy decisions "affecting YPF and BCRA."  (Pls.' Ltr. at 4, n.9.)  Even if that were so, decisions by the Republic "affecting" those entities are not relevant to the alter-ego inquiry.

8. **Eduardo de Pedro**: Mr. de Pedro was the Minister of the Interior from December 2019 to December 2023.  Pursuant to Decree No. 50/2019, the Minister of the Interior oversees the design and implementation of policies related to the Provinces and the City of Buenos Aires, including tourism, the environment, sports, and migration.  Plaintiffs do not support their speculation that Mr. de Pedro has information about YPF's oil and gas pricing or was involved in the alleged use of YPF's advertising budget.  (Pls.' Ltr. at 4-5.)

9. **Gabriel Rubinstein**: Plaintiffs have identified no reason to believe that Mr. Rubinstein, who is the former Secretary of Economic Policy, is "likely to have information about the Republic's directives to BCRA" or even information about what the alleged "directives" are.  (Pls.' Ltr. at 5.)  Pursuant to Decree No. 480/2022, the Secretary of Economic Policy is responsible for the design of strategic guidelines for economic policy, not the Republic's "directives" to BCRA.

10. **Rita Haydee Tanuz**:  Plaintiffs speculate that Ms. Tanuz "may have information regarding instructions from the Minister of Economy to BCRA" of unspecified policies "which shape BCRA's daily operations."   (Pls.' Ltr. at 5.)  But like Mr. Casal, as Legal and Administrative Secretary, Ms. Tanuz was primarily responsible for the coordination of technical and administrative support activities for different areas of the Ministry of Economy, not interfacing with BCRA.  *See* Decree 480/2022.

11. **Matias Tombolini**: As the former Secretary of Commerce, Mr. Tombolini was in charge of execution of trade policy.  *See* Decree No. 480/2022.  He did not have day-to-day interaction with YPF in this high-level role.  Plaintiffs assert vaguely that he played a role in "the government's oversight of natural gas and oil products" (Pls.' Ltr. at 5), but this has no relevance to the alter-ego inquiry.

12. **Julio Vitobello**: As Secretary General of the Presidency from December 2019 to December 2023, Plaintiffs contend that Mr. Vitobello "coordinated the Republic's use of YPF aircraft for government purposes," but cite nothing in support of that speculation.  (Pls.' Ltr. at 5.)  Moreover, the Republic's proposed custodians include three former Chiefs of Cabinet and the Executive Secretary of the Chief of Cabinet (who, unlike Mr. Vitobello, were also YPF

The Honorable Loretta A. Preska                                                                                          -4-

board members). *See* Rep. Ltr. at 5. Those officials would be much more likely than Mr. Vitobello to have information about day-to-day interactions with YPF.

The Court should reject Plaintiffs' untimely and meritless proposal to add 12 additional custodians on top of the 18 whose email the Republic has agreed to search.

Plaintiffs' letter also does not offer *any* defense of their 212 broad and largely irrelevant search terms, which include "reserves," "inflation," "World Bank," "Burford," "Petersen," "JP Morgan," "Javier," and "Bianchi" (Plaintiffs' expert in this case). Plaintiffs also have not supported their claim that personal email and chats should be searched because government officials supposedly "communicate extensively through non-government e-mail accounts." (Pls.' Ltr. at 1.) Plaintiffs' basis for this assertion is that a handful of emails from the merits phase of this case copied Gmail addresses of some individuals (while using government email addresses for all other recipients). This is no reason to go beyond a review of communications with YPF or BCRA in government email, especially when personal data was never produced during merits discovery. Plaintiffs do not, in any event, explain how personal data would be in the Republic's control or legally accessible under Argentina's Personal Data Protection Law. *See* Rep. Ltr. at 6.

        Respectfully,

        */s/ Robert J. Giuffra, Jr.*
        Robert J. Giuffra, Jr.

cc:     Counsel of Record (via ECF)