UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

PETERSEN ENERGÍA INVERSORA, S.A.U. AND PETERSEN ENERGÍA, S.A.U.,

           Plaintiffs,

v.

ARGENTINE REPUBLIC AND YPF S.A.,

           Defendants.

Case Nos.
1:15-cv-02739-LAP
1:16-cv-08569-LAP

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD. AND ETON PARK FUND, L.P.,

           Plaintiffs,

v.

ARGENTINE REPUBLIC AND YPF S.A.,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF YPF S.A.'S ORDERS TO SHOW CAUSE FOR INTERVENTION AND A PERMANENT INJUNCTION**

1010332274

# **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 1

    I.    Res Judicata Bars Plaintiffs' Attempt to Relitigate YPF's Liability. ...................... 3

    II.   Plaintiffs' Remaining Arguments Likewise Lack Merit. ......................................... 8

CONCLUSION ........................................................................................................ 10

1010332274

# **TABLE OF AUTHORITIES**

**Cases**

*Allen v. McCurry*,
    449 U.S. 90 (1980)..................................................................................................1

*Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*,
    48 F.3d 576 (1st Cir. 1995)......................................................................................7

*Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs.,
    Inc.*, 652 F. Supp. 2d 463 (S.D.N.Y. 2009) ............................................................8

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*,
    110 F.4th 106 (2d Cir. 2024) ...................................................................................4

*Bevona v. Field Bridge Assocs.*,
    1991 WL 274467 (S.D.N.Y. Dec. 6, 1991) ...........................................................10

*Cook Cnty., Illinois v. Mayorkas*,
    340 F.R.D. 35 (N.D. Ill. 2021).................................................................................9

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
    875 F.3d 1241 (9th Cir. 2017) .................................................................................7

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    600 F.3d 190 (2d Cir. 2010).................................................................................4, 7

*Env't Dynamics, Inc. v. Robert Tyer & Assocs., Inc.*,
    929 F. Supp. 1212 (N.D. Iowa 1996)......................................................................7

*Farinella v. Paypal, Inc.*,
    611 F. Supp. 2d 250 (E.D.N.Y. 2009) ...................................................................10

*First Cap. Asset Mgmt., Inc. v. N.A. Partners, L.P.*,
    688 N.Y.S.2d 25 (N.Y. App. Div. 1999) .................................................................7

*First Cap. Asset Mgmt., Inc. v. N.A. Partners, L.P.*,
    755 N.Y.S.2d 63 (N.Y. App. Div. 2002) .................................................................8

*Five Points Hotel P'ship v. Pinsonneault*,
    835 F. Supp. 2d 753 (D. Ariz. 2011) .......................................................................8

*Floyd v. City of New York*,
    302 F.R.D. 69 (S.D.N.Y. 2014) ...............................................................................9

*Go New York Tours, Inc. v. Gray Line New York Tours, Inc. et al.*,
   2024 WL 3952190 (S.D.N.Y. Aug. 27, 2024) ................................................................4

*Herero People's Reparations Corp. v. Deutsche Bank AG*,
   2006 WL 903197 (S.D.N.Y. Apr. 5, 2006) ..................................................................10

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010) ..........................................................................9

*Richardson v. Manhattan Transit Auth. NYC Headquarters*,
   2019 WL 4256355 (S.D.N.Y. Sept. 9, 2019) ..............................................................10

*S.E.C. v. Xia*,
   2024 WL 964676 (E.D.N.Y. Mar. 4, 2024) ..................................................................9

*Sure-Snap Corp. v. State St. Bank & Tr. Co.*,
   948 F.2d 869 (2d Cir. 1991) ........................................................................................4

*Trs. of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368 (6th Cir. 2019) ...............................................................................7

*Trs. of Sheet Metal Workers Loc. No. 1 Welfare Tr. v. Pekin Climate Control, Ltd.*, 669 F. Supp. 2d 924 (C.D. Ill. 2009) .......................................................7

*Universitas Educ., LLC v. Benistar*,
   2022 WL 801160 (D. Conn. Mar. 16, 2022) ................................................................3

*Waldman v. Vill. of Kiryas Joel*,
   207 F.3d 105 (2d Cir. 2000) ................................................................................ *passim*

*Wells Fargo Bank, N.A. v. Weinberg*,
   173 Cal. Rptr. 3d 113 (Cal. Ct. App. 2014) .................................................................8

*Woods v. Dunlop Tire Corp.*,
   972 F.2d 36 (2d Cir. 1992) ..........................................................................................3

**Other Authorities**

Fed. R. Civ. P. 8(c)(1) ..........................................................................................................10

S.D.N.Y. Local Rule 6.1 .......................................................................................................9

## ARGUMENT

Plaintiffs cannot overcome dispositive Second Circuit law that precludes them from relitigating against the same defendant, after final judgment, claims that they could have raised in the underlying litigation. Having elected to sue YPF along with the Republic — and having argued that the Republic was YPF's controlling stockholder with a notable role in its corporate governance — Plaintiffs were obligated to assert any alter ego theory by which they might pursue damages from YPF along with all of their other claims and theories of recovery as to YPF, or face preclusion. They failed to do so then, but are attempting to do so now, in an utterly improper process that threatens YPF with shared responsibility for enterprise-crippling damages, for which this Court already found YPF is not liable. Because YPF is entitled to finality and repose under its final judgment and that judgment bars Plaintiffs' latest theory, their "alter-ego-for-enforcement" efforts should promptly be enjoined.

Plaintiffs now concede that: (i) they are pursuing YPF as an alleged "alter ego of the Republic for purposes of judgment enforcement," Dkt. 645[1] at 10 ("Opp."), and seek to hold YPF "legally responsible for satisfying the judgment against the Republic," Dkt. 619 at 2; (ii) they seek to enforce a judgment involving the same parties, for the same damages, that Plaintiffs pursued — and this Court rejected — in the prior litigation; (iii) the Court's judgment is final; and (iv) res judicata bars claims that "were or could have been" raised then, *Allen v. McCurry*, 449 U.S. 90, 94 (1980); Opp. at 9. Plaintiffs

---

[1]  Unless otherwise stated, "Dkt." refers to entries in docket No. 15-cv-02739.

also agree that to determine whether res judicata bars a subsequent claim "[the Second Circuit] look[s] to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (cleaned up); Opp. at 9–10.

        Plaintiffs would rather the Court not reach this dispositive threshold bar, however. They devote the bulk of their brief to mischaracterizing this as a discovery dispute, objecting to the intervention of a plainly-affected non-party, contradicting themselves in arguing that YPF is both too early and too late, and offering self-serving process arguments. But as to the dispositive legal issue on their alter ego theory, Plaintiffs disagree with YPF on just one point: they assert that "the facts underlying Plaintiffs' breach of contract claim and their potential future alter ego assertion are fundamentally different," such that pleading both would have been "impossible." Opp. at 10, 12. Plaintiffs' argument ignores both Second Circuit law and their own pleadings. Plaintiffs could have pursued any theory of recovery as to YPF — including "alter-ego-as-enforcement" — in the underlying litigation, when they alleged similar facts to seek the same damages and relief from the same alleged harm, against the same party. The Court should grant YPF's orders to show cause, permit YPF to intervene and be heard, and give preclusive effect to its own final judgment by enjoining alter ego litigation against YPF.[2]

---

[2] YPF continues to preserve its jurisdictional objections and defenses. It will raise its threshold and merits objections and defenses to any complaint or motion filed against it.

I.      **Res Judicata Bars Plaintiffs' Attempt to Relitigate YPF's Liability.**

Res judicata bars successive attempts to recover against the same defendant for the same wrong.  *Waldman*, 207 F.3d at 110–12.  It does not look to the narrow facts asserted in each cause of action — as Plaintiffs imply, Opp. at 10–15 — but to the overarching question of whether the new theory could have been asserted based on facts available at the time.  "A judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, **but also as respects any other available matter which might have been presented to that end**."  *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (emphasis added); *see Universitas Educ., LLC v. Benistar*, 2022 WL 801160, at *3 (D. Conn. Mar. 16, 2022) ("*Res judicata* bars . . . claims" where "company knew *enough* to bring its claims earlier"; "[o]nce it knew enough to sue, it could have learned the rest during discovery.") (applying New York law).

That a claim for breach of contract has different elements and may turn on different facts than a claim for alter ego liability does not — as Plaintiffs argue — exempt the latter from preclusion; it is black-letter law that "a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)."  *Waldman*, 207 F.3d at 110.  "Neither the doctrine of *res judicata* nor the doctrine of collateral estoppel allows plaintiff to bring countless actions, one at a time, until plaintiff happens upon a legal theory that achieves the desired result."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 199 (2d Cir. 2010); *id.* ("Where a litigant selected a litigation strategy he now regrets,

placing all his eggs in a single basket, his choice of that strategy will not prevent the application of preclusion against him.") (cleaned up).  Courts routinely enforce preclusion to protect final judgments and bar improper claims: Judge Ramos did so just last week, *Go New York Tours, Inc. v. Gray Line New York Tours, Inc. et al.*, 2024 WL 3952190, at *7–9 (S.D.N.Y. Aug. 27, 2024); and the Second Circuit affirmed preclusion (under essentially identical New York doctrine) in July, *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, 110 F.4th 106, 118–20 (2d Cir. 2024).  A claim is precluded when it is so related to the initial action that allowing it "would impair or destroy rights or interests established by the judgment entered in the first action." *Sure-Snap Corp. v. State St. Bank & Tr. Co.*, 948 F.2d 869, 874 (2d Cir. 1991) (internal quotations omitted).[3]

Plaintiffs asserted in the underlying litigation, just as they do now, that YPF was dominated and controlled by the Republic, and that the Republic "retook" control of YPF in 2012 and maintained control throughout the case.  *See, e.g.*, Dkt. 1 ¶ 3 (Petersen Compl.) (asserting that "in 2012, Argentina took steps to re-take control of YPF's operations"); *id.* ¶ 26 ("[A]fter privatization, Argentina in its commercial capacity continued to exercise important privileges and play a significant continuing role in YPF's

---

[3] Pleading practice in this court is consistent with this doctrine.  Plaintiffs routinely allege multiple causes of action or bases of recovery, whether cumulatively or in the alternative, recognizing that to do otherwise risks preclusion.  Plaintiffs even did so here. *See* Dkt. 1 ¶¶ 68–85 (Petersen Compl.) (alleging breach of contract, anticipatory breach, breach of implied duty of good faith and fair dealing, and promissory estoppel); Dkt. 1 ¶¶ 61–74, No.16-cv-8569 (Eton Park Compl.).

corporate governance"); Dkt. 364-27 ¶ 36 (Coffee Report) (the Republic "simply took executive control of the company" in 2012); Dkt. 377-36 ¶ 46 (Garro Reply) ("These arguments rest on the erroneous premise that '[t]he Republic was, and is, independent of YPF[.]'"); Dkt. 375 at 21 (S.J. Mem.) ("YPF was 'materially impaired by [its] state ownership,' because management would 'focus[] on whatever the state's interests were as opposed to the interest of the minority shareholders.'").

To advance their "alter ego" theory, Plaintiffs make similar (albeit unfounded) allegations that YPF is subject to extensive, day-to-day control by the Republic, and rely on alleged facts that were or could have been included in their prior case.  Among other things, Plaintiffs now argue that "[YPF] just [] totally, in the past decade, [is] in the grip of the government and the politicians who control the government," Ex. C[4] (May 28, 2024 Hr'g Tr.) at 35:23–25 (emphasis added); point to statements that have been in YPF's SEC filings since at least 2015, and that they relied on in the prior case, *see* Dkt. 562 at 2; Ex. C at 34:25–35:3[5]; and rely on the time period during and after the Republic's 2012 intervention, while citing discovery from the prior litigation, *see* Dkt. 562 at 2 (reciting allegation related to 2012 event); Dkt. 583 ¶ 7 (Harris Decl.); Ex. C at

---

[4]   "Ex." refers to the Exhibits attached to the Declaration of Mark P. Goodman in Support of YPF S.A.'s Order to Show Cause for Intervention, Dkt. 611.

[5]   *Compare* YPF S.A., Annual Report (Form 20-F), at 12 (Mar. 30, 2015), available at https://www.sec.gov/Archives/edgar/data/904851/000119312515111986/ d863353d20f.htm, *with* YPF S.A., Annual Report Form (Form 20-F), at 6 (April 25, 2024), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000904851/ 000119312524114066/d804823d20f.htm.

35:10–13.  Tellingly, before the Court imposed date parameters on discovery, Plaintiffs demanded documents from *2012 to the present* to support their alter ego theory, with respect to: "Argentina's ownership interests in" YPF; YPF's "organizational structure and reporting relationships"; YPF's "corporate resolutions and board minutes"; YPF's "assumption of any Debt or other liability of Argentina"; and "any subsidies [YPF has] received from Argentina."  Ex. A (Pls. Subp.), Nos. 2, 13, 15, 18, 21.

Accordingly, Plaintiffs' argument that preclusion does not apply because they "could not have asserted" an alter ego claim when they "filed suit in 2015 and 2016," Opp. at 13, is directly at odds with their submissions in the underlying case and on this issue.  The record makes abundantly clear that such a claim could have been addressed with their other theories of liability, if only Plaintiffs had articulated it.

To avoid preclusion, the Opposition abruptly shifts focus from the past "decade" to whether "YPF [is] an alter ego of the Republic in 2024."  Opp. at 13.  That convenient new angle is insufficient as a matter of law to avoid preclusion because it still advances the same theory of control, based on the same kinds of facts and in search of the same damages, that Plaintiffs have been pressing for years.  It could have been pled in the alternative, and would have made a "convenient trial unit" at the time.  *Waldman*, 207 F.3d at 108.  The only reason YPF's current status is relevant to Plaintiffs' quest for recovery is that they elected not to include an alter ego claim in the underlying litigation, when it could have been addressed in the Court's 2023 judgment, with their other theories as to YPF.  Plaintiffs are not entitled to try again because they chose not to raise it.  *Duane Reade*, 600 F.3d at 199.  On Plaintiffs' rationale, they had no need to anticipate

alternate rulings — although they plainly did so on other issues — and can renew their alter ego efforts indefinitely every few years.

Plaintiffs searched far afield for some court that might allow claims like theirs — but found none. In a lengthy series of citations, Plaintiffs rely on a number of out-of-Circuit decisions, applying different law to different circumstances, that have no bearing on this proceeding.[6] Plaintiffs place particular emphasis on two just as irrelevant cases: *First Cap. Asset Mgmt., Inc. v. N.A. Partners, L.P.*, 688 N.Y.S.2d 25, 27 (N.Y. App. Div. 1999), applying New York law, permitted a veil-piercing claim against an individual who had defeated personal liability as he was not an individual signatory to the relevant agreement,[7] and the "evidence required to sustain recovery" in the second action "var[ied] materially" from the first action and was not alleged in it, while *Five Points*

---

[6] *See Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246–49 (9th Cir. 2017) (under New Jersey law subsequent alter ego suit for $7.75 million debt "had nothing to do with the guaranty contract" claim for $5 million); *Trs. of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 383–84 (6th Cir. 2019) (applying Sixth Circuit law requiring "identity" of "facts" and "of the evidence" to find preclusion inapplicable to different damages claim); *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 585 (1st Cir. 1995) ("None of the factual circumstances giving rise to [plaintiff's] claim[] . . . of alter ego was ever raised before the arbitrators."); *Env't Dynamics, Inc. v. Robert Tyer & Assocs., Inc.*, 929 F. Supp. 1212, 1244–45 (N.D. Iowa 1996) ("lack of any final judgment" against alleged alter ego); *Trs. of Sheet Metal Workers Loc. No. 1 Welfare Tr. v. Pekin Climate Control, Ltd.*, 669 F. Supp. 2d 924, 930 (C.D. Ill. 2009) (defendants did not show "why facts relating to their alleged alter-ego relationship . . . should have been raised and litigated in the prior action").

[7] *See Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 480 n.12 (S.D.N.Y. 2009) (rejecting *First Capital* as "unpersuasive" because "claims [in *First Capital*] did not arise out of the same transactions, as different agreements were at issue in both actions") (citing *First Cap. Asset Mgmt., Inc. v. N.A. Partners, L.P.*, 755 N.Y.S.2d 63, 65 (N.Y. App. Div. 2002)).

*Hotel P'ship v. Pinsonneault*, 835 F. Supp. 2d 753, 760 (D. Ariz. 2011), applied an Arizona test to examine whether "no additional evidence" is needed, which is contrary to Second Circuit law, *see Waldman*, 207 F.3d at 110–11.  Meanwhile, *Wells Fargo Bank, N.A. v. Weinberg*, 173 Cal. Rptr. 3d 113, 115, 117–18 (Cal. Ct. App. 2014), applied California law to allow a claim against a former defendant who had "drained the assets" of the judgment-debtor corporation, in a "separate and distinct wrong[]," where the suits' "purpose and outcome were not the same."

Nothing Plaintiffs point to saves their alter ego theory from preclusion.

## II. Plaintiffs' Remaining Arguments Likewise Lack Merit.

**YPF's request for relief is not a "discovery dispute"**.  YPF is not seeking via its application to raise a discovery dispute; it is seeking to cut-off the threatened pursuit of legally barred claims and preserve the finality and effect of this Court's final judgment.  The viability of claims is often challenged while discovery proceeds — but that does not make the substantive challenge a discovery dispute.  A dispositive issue that precludes meritless claims can and should be considered regardless of discovery.

**YPF's requests are procedurally appropriate**.  Bereft of a substantive answer, Plaintiffs resort to objecting to the adequacy of YPF's Local Rule 6.1 declarations.  Those objections are meritless.  The simplicity of the declarations tracks the simplicity of the requests: they set forth in sufficient detail the need for urgent relief from the irreparable harm Plaintiffs are causing by relitigating the settled question of YPF's liability for damages.  Dkts. 611, 614.  YPF could not have proceeded by "ordinary motion practice," Opp. at 4, because YPF is not a party post-judgment and there is no

complaint it could move against, a procedural posture entirely the result of Plaintiffs' abuse of process.

**YPF's requests are timely**.  YPF intervened and sought relief when it became actionably clear that Plaintiffs were attempting to shift their damages to YPF.  Plaintiffs argue both that this is too late, coming four months after their first discovery request, and too early, as they have not yet filed suit.  But the Court ordered discovery on May 28, and YPF moved on August 12, when Plaintiffs' intentions became clear.  Two months in these circumstances is not too long.  *S.E.C. v. Xia*, 2024 WL 964676, at *7 (E.D.N.Y. Mar. 4, 2024) (in this Circuit, intervention has been found timely even a year after notice).  Plaintiffs' extraordinary suggestion that they may object to YPF's right to be heard at all is yet another reason to address this threshold issue now.  *See* Opp. at 6 ("If YPF is entitled to contest such a request, it can do so when it is made.").  Plaintiffs' cited cases confirm that "there is no litmus paper test for timeliness," *Floyd v. City of New York*, 302 F.R.D. 69, 83–84 (S.D.N.Y. 2014), and all involve inapposite facts.  *See Cook Cnty., Illinois v. Mayorkas*, 340 F.R.D. 35, 46 (N.D. Ill. 2021) (time had expired before intervenor filed a notice of appeal); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 187 (S.D.N.Y. 2010) (intervenor sought to protect privileged documents after court ordered production); *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 258 (E.D.N.Y. 2009) (challenge to class action settlement three months after preliminary approval and notice).

**YPF has not waived**.  Res judicata is an affirmative defense that can be waived only by failing to raise it in a responsive pleading, Fed. R. Civ. P. 8(c)(1), and Plaintiffs have yet to file a complaint.  *See Richardson v. Manhattan Transit Auth. NYC*

*Headquarters*, 2019 WL 4256355, at *2 (S.D.N.Y. Sept. 9, 2019); *Herero People's Reparations Corp. v. Deutsche Bank AG*, 2006 WL 903197, at *2 (S.D.N.Y. Apr. 5, 2006). Contra Plaintiffs, Opp. 8–9, federal law does not recognize an acquiescence exception to res judicata. *Herero*, 2006 WL 903197, at *3 (acquiescence exception "cannot be adopted into federal law because it is incompatible with [Rule 8(c)]").

**YPF should be permitted to intervene**. Plaintiffs offer no credible basis to deny YPF's request to intervene. It does not "prejudice" Plaintiffs to be required to respond to a substantive legal bar and show cause regarding the viability of a claim; if anything, it is *Plaintiffs'* enforcement efforts that prejudice YPF. *See Bevona v. Field Bridge Assocs.*, 1991 WL 274467, at *4–5 (S.D.N.Y. Dec. 6, 1991). Yet again, none of Plaintiffs' cases cited at Opp. 6 suggest otherwise. Plaintiffs may prefer to force YPF to sit on the sidelines while they build a case in secret against it, but that is not consistent with the law or practice in this Court.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in YPF's opening papers, Dkts. 609–16, YPF's requests for relief should be granted.

Dated: September 3, 2024
      New York, New York

Respectfully Submitted,

DEBEVOISE & PLIMPTON LLP

*/s/ Mark P. Goodman*
Mark P. Goodman
Shannon Rose Selden

1010332274                                10

James J. Pastore
Wendy B. Reilly

66 Hudson Boulevard
New York, NY 10001
(212) 909-6000 (phone)
mpgoodman@debevoise.com
srselden@debevoise.com
jjpastore@debevoise.com
wbreilly@debevoise.com

*Counsel to Defendant YPF S.A.*