

ANTHONY P. BADARACCO
(212) 415-9354
FAX (212) 658-9569
badaracco.anthony@dorsey.com

October 2, 2024

**VIA ECF**
Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739;
        *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Dear Judge Preska:

Pursuant to the Stipulation so-ordered on September 9, 2024, we respond on behalf of non-party Banco de la Nación Argentina ("BNA") to Plaintiffs' letter-motion (*Petersen* ECF No. 657) (the "Motion") for alter ego discovery.

At the outset, the Motion does not actually request an order compelling BNA to produce anything. On its face, it seeks to compel only the Republic to produce documents related to BNA under Plaintiffs' alter ego theory. *See* Motion at 1 & n.2. In its pre-motion letter dated August 1, 2024 (*Petersen* ECF No. 599), Plaintiffs sought leave to move to compel production by both the Republic and BNA of such documents. BNA explained, in its responsive letter (*Petersen* ECF No. 620), that there is no basis under settled Second Circuit law to overcome the presumption that discovery from BNA should be limited to a search for the Republic's assets. BNA also explained that, at a minimum, the Court should reserve decision on Plaintiffs' motion to compel production by BNA pending the resolution of Plaintiffs' efforts to obtain the same information from the Republic. Perhaps Plaintiffs have accepted this point, and that is why the Motion does not explicitly seek to compel BNA to do anything further. In any event, despite the Court's invitation at the September 3, 2024 hearing for Plaintiffs to offer additional facts in support of an application for alter ego discovery from BNA, Plaintiffs offer none.

"[G]overnment instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 626–27 (1983). The "touchstone inquiry" for a court is evidence of "significant and repeated



Hon. Loretta A. Preska
October 2, 2024
Page 2

control over…[the instrumentality's] day-to-day operations." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 56 (2d Cir. 2021); *see also Seijas v. Republic of Argentina*, 502 F. App'x 19, 21 (2d Cir. 2012) (no evidence of "extensive control" by the Argentine Republic of BNA's activities).

The evidence that Plaintiffs cite as purported justification to depart from the presumption that discovery should be limited to information about the Republic's assets within BNA's possession, custody, or control—which BNA has already provided, in three separate productions—falls far short of the "reason to believe" standard. If it sufficed, "the presumption of separateness announced in *Bancec* would be an illusion." *Seijas*, 502 F. App'x at 21.

Plaintiffs offer four factual allegations, none of which is new to the Motion:

- BNA serves as a "financial agent" of the Republic and "plays the role of financial branch of the National Government, to the benefit of the productive development of the country." Motion, at 6. This is not day-to-day control. *See Minpeco, S.A. v. Hunt*, 686 F. Supp. 427, 434 (S.D.N.Y. 1988) ("It is in the very nature of a government corporation to aim to benefit the economy of its owner government."); *GSS Group Ltd. v. Republic of Liberia*, 31 F. Supp. 3d 50, 66 (D.D.C. 2014) ("[G]overnments establish instrumentalities . . . precisely to achieve the economic goals of the state."). *See also Seijas*, 502 F. App'x at 21-22 ("BNA's lending to Argentina . . . reflects the actions of an independent instrumentality serving as a vehicle for the government to obtain the financial resources needed to make large-scale national investments") (quotation omitted).

- The Republic guarantees some of BNA's debts. Motion, at 6. That is not day-to-day control, either. Rather, it is "a normal aspect of the relation between a government and government-owned corporation." *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000).

- The Republic appoints some BNA's officers and directors, and for some such individuals, "determines their remuneration." Motion, at 6. The Second Circuit squarely held that the Republic's "control of the board's membership does not render the instrumentality an alter ego." *Seijas*, 502 F. App'x at 21. "[E]ven if Argentina took an active role in overseeing the membership of BNA's board," "this, by itself, does not evidence . . . 'extensive control' of BNA's day-to-day

Case 1:15-cv-02739-LAP     Document 669     Filed 10/02/24     Page 3 of 4



Hon. Loretta A. Preska
October 2, 2024
Page 3

activities." *Id.* at 22 (quotations omitted); *see also Gater Assets*, 2 F.4th at 58 (same). The same is true for corporate officers. *EM Ltd. v. Banco Central De La República Argentina*, 800 F.3d 78, 92-93 (2d Cir. 2015).

- There is an open investigation regarding whether the Republic's then-President instructed some administration officials to purchase insurance policies from a BNA affiliate—not from BNA itself. Motion, at 6. Even if that instruction were given and followed (an open question), it would not be evidence of the Republic exercising control of <u>BNA</u>'s activities, much less extensive day-to-day control.

Plaintiffs have been given ample opportunity—in their subpoena, in the meet-and-confer process with BNA, in their pre-motion letter, at the September 3 conference, and in the Motion—to allege day-to-day control by the Republic over BNA's activities. They have failed.[1] That is why Plaintiffs' case law is inapposite. In their lead case regarding alter ego discovery, Judge Wood allowed the discovery based on news sources indicating that a foreign government entity "closely controlled or supervised" the foundation at issue. *Gabay v. Mostazafan Found. of Iran*, 151 F.R.D. 250, 256-57 (S.D.N.Y. 1993). Here, Plaintiffs have cited nothing of the sort. They have simply shown that BNA is an instrumentality of a foreign sovereign—to which BNA would of course stipulate.

Law No. 2841 of the Argentine National Congress in 1891 established BNA as a banking institution, adopted its Charter, and granted it independence as an autarchic entity of the State. BNA enjoys financial and administrative independence. Law No. 21799, Art. 1, adopted May 18, 1978 (Arg.). As an independent commercial bank with financial autonomy, BNA does not receive financial support from the Argentine National Treasury. Plaintiffs offer nothing to undermine this.

For these reasons, the Court should not compel BNA to produce alter ego discovery.

---

[1] With respect to the other three state-owned entities at issue, Plaintiffs include allegations under the headings "Financial Control," "Active Supervision," and "Operational Control." *See* Motion, at 4-6, 7, 8. Plaintiffs do not even *attempt* to offer such allegations with respect to BNA.



Hon. Loretta A. Preska
October 2, 2024
Page 4

Respectfully Submitted,

*/s/ Anthony P. Badaracco*
Anthony P. Badaracco