# KING & SPALDING

1185 Avenue of the Americas,
34th Floor
New York, NY 1 0036-4003
www.kslaw.com

Randy M. Mastro
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

October 11, 2024

*Via CM/ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739;
*Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Your Honor:

Plaintiffs submit this reply to the October 2 responses of the Republic and BNA (ECF 671 and 669) in opposition to Plaintiffs' application to compel certain alter ego discovery.[1] For the reasons explained here and in our prior submissions on these issues (ECF 599, 629, and 657), we respectfully request that the Court compel the Republic and BNA to produce this alter ego discovery.

## I.    The Republic and BNA Mischaracterize Both the Threshold Test for Alter Ego Discovery and Plaintiffs' Factual Showings

### A.    The "Reason to Believe" Test Requires More Than Bare Allegations But Less Than a *Prima Facie* Showing

At the September 3 hearing, the Court held that the threshold test for alter ego discovery is "whether plaintiff has demonstrated that there is reason to believe that these [State-Owned Entities] are alter egos." Sept. 3 Hr'g Tr. at 60:6-7, 75:4-6. The Republic and BNA wrongly contend in their response briefs that this test requires Plaintiffs to proffer facts that would be sufficient at trial to establish an alter ego relationship. *See, e.g.*, Republic's Response (ECF 671) at 2 (contending that alter

---

[1] ECF citations refer to the *Petersen* docket. Unless otherwise noted, defined terms refer to the definitions set forth in ECF 657.

Page 2

ego discovery is unwarranted because facts adduced by Plaintiffs have been found "insufficient to show alter ego status as to any of these entities"); BNA's Response (ECF 669) at 2-3 (same). The Republic's and BNA's position improperly conflates the threshold test for alter ego discovery with the *prima facie* standard applied by courts after the conclusion of discovery. It also squarely contradicts case law that the Republic and BNA cited previously but now ignore.

It is well-settled in this district that alter ego discovery is appropriate based on a threshold showing of alter ego status that is well short of *prima facie* proof. *See, e.g.*, *Esso Exploration & Prod. Nigeria, Ltd. v. Nigerian Nat'l Petroleum Corp.*, 2017 WL 2491999, at *3-4 (S.D.N.Y. May 15, 2017); *Costamar Shipping Co., Ltd. v. Kim-Sail, Ltd.*, 1995 WL 736907, at *4 (S.D.N.Y. Dec. 12, 1995); *Gabay v. Mostazafan Found. of Iran*, 151 F.R.D. 250, 256-57 (S.D.N.Y. 1993). The Republic seeks to brush aside *Esso*, *Costamar*, and *Gabay* in a footnote, erroneously asserting that they are "inapposite" because none involved a "prior alter ego determination."[2] *See* ECF 671 at 2 n.1. The Republic has it backwards: Plaintiffs' cases are relevant because they concern the threshold test for *alter ego discovery*, whereas the decade-old alter ego decisions on which the Republic relies are inapposite because they applied the more stringent standard for establishing *alter ego status*.[3]

Moreover, the low threshold for alter ego discovery also finds support in the analogous context of jurisdictional discovery, where it is well-settled that "[j]urisdictional discovery is warranted where, even if plaintiff has 'not made a *prima facie* showing, [they have] made a sufficient start toward establishing personal jurisdiction.'" *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 809 (S.D.N.Y. 2017) (Nathan, J.) (alteration in original) (quoting *Strategem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547-48 (S.D.N.Y. 1994) (Kram, J.)); *see also, e.g.*, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207-08 (2d Cir. 2003) (per curiam) (holding that jurisdictional discovery is appropriate even in the absence of a *prima facie* showing of jurisdiction). By contrast, to defeat a jurisdictional motion **after** jurisdictional discovery, "the plaintiff's prima facie showing . . . must include an averment of facts that, if credited, would suffice to establish jurisdiction over the

---

[2] BNA previously cited *Costamar* to this Court, ECF No. 620 at 2, but ignores the decision in its response brief, ECF No. 669.

[3] The decade-old decisions cited by the Republic also are inapposite because they do not resolve whether any of the State-Owned Entities is *currently* an alter ego of the Republic. *See, e.g.*, *Crystallex Int'l Corp. v. PDV Holding Inc.*, 2019 WL 6785504, at *6-8 (D. Del. Dec. 12, 2019) (August 2018 alter ego decision did not bar Venezuela from relitigating the issue in 2019 following change in government).

Page 3

defendant." *Id.* at 206 (cleaned up). In other words, even when the court has not yet ascertained that it has jurisdiction over the dispute and the defendant, the bar for obtaining discovery does not require *prima facie* proof. The bar cannot be higher here, where the Court already has jurisdiction over the dispute and the Republic. *See First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 177 (2d Cir. 1998) (allowing "full" alter ego discovery from sovereign judgment debtor without threshold showing because district court already had jurisdiction).

The Republic's current position is not only inconsistent with the law, but also its prior arguments before this Court concerning the threshold test for alter ego discovery. At the May 28 hearing, the Republic stated unequivocally: (i) "[c]ourts have permitted discovery into alter ego status under Rule 69 where the relationship between the judgment debtor and the nonparty is sufficient to raise a ***reasonable doubt*** about the alter ego status"; and (ii) the test for alter ego discovery is "less than a *prima facie* showing but more than a hunch or bare allegations in the face of specific denials." May 28 Hr'g Tr. at 28:10-16 (emphasis added) (referencing *NML Cap., Ltd. v. Republic of Argentina*, No. 12-mc-80185, 2015 WL 7731779, at *3 (N.D. Cal. Dec. 1, 2015)). The Republic ignores the *NML* decision now, *see* ECF 669, but its position on May 28 was consistent with the case law in this and other districts and with the "reason to believe" test the Court has articulated. As the Republic observed at the May 28 hearing, the threshold test for alter ego discovery requires more than a hunch or bare allegations of alter ego status, but less than a *prima facie* showing.

## B.    Plaintiffs Easily Satisfy The "Reason to Believe" Standard

In addition to applying the wrong legal standard, the Republic and BNA mischaracterize much of Plaintiffs' proffer and improperly consider the facts in separate, piecemeal fashion. Taken together, Plaintiffs' factual showings easily satisfy the "reason to believe" standard for alter ego discovery.

***Aerolíneas.*** The Republic's contention that its negotiation of Aerolíneas's aircraft acquisitions in 2008 "cannot provide a basis for alter ego discovery on whether the entity 'is *currently* an alter ego of the Republic,'" ECF 671 at 3, ignores Plaintiffs' evidence suggesting that the Republic continues to exercise control over Aerolíneas's finances. Since nationalizing Aerolíneas in 2008, the Republic has funneled over US$ 8 billion (an average of US$ 1.55 million per day) into the airline. ECF 659-1. Plaintiffs also adduced evidence that the Republic *currently* exercises control over Aerolíneas's purse strings by, for example, managing its wage negotiations with employees (September 2024) and paying for voluntary retirements and layoffs at the airline (July 2024). *See* ECF 659-5, 659-10.

Page 4

The Republic also mischaracterizes Plaintiffs' evidence regarding its appointment of Aerolíneas's personnel, arguing that "appointment of officers and directors is not evidence of an alter ego relationship." ECF 671 at 4. The Republic has used its control over the airline to appoint *mid-level management*, including hundreds of members of La Campora (a pro-Kirchner youth political organization), who reportedly have "little training, but who are militant." *See* ECF 659-1 and 659-4. That is evidence of day-to-day control over hiring decisions far beyond the level typically exercised by a majority shareholder.

The Republic further mischaracterizes its role in Aerolíneas's wage negotiations, suggesting that it is merely "involved" (ECF 671 at 5) when the evidence suggests that the Republic uses the airline's economic dependence on the government's funding to *control* those negotiations for the purpose of "reduc[ing] the company to the minimum in order to sell it cheaply to foreign interests." ECF 659-5 at 3, 8.

Considered as a whole, this evidence strongly supports an inference that the Republic exercises significant control over Aerolíneas's operations, which at the very least warrants further discovery on this issue.

**BNA.** The Republic mischaracterizes the dated decisions in *Seijas v. Republic of Argentina*, 2011 WL 1137942 (S.D.N.Y. Mar. 28, 2011), *aff'd* 502 F. App'x 19 (2d. Cir. 2012), as holding that evidence similar to Plaintiffs' proffer was "irrelevant" to the alter ego analysis. In *Seijas*, Judge Griesa held that the plaintiffs' evidence was *insufficient* to establish alter ego, not that it was *irrelevant*. *Id*., 2011 WL 1137492 at *12. The issue before the Court now is only whether to allow Plaintiffs to discover additional evidence that might meet the sufficiency standard if and when that issue comes before the Court.

While Judge Griesa also denied alter ego discovery from BNA in *Seijas*, the context has changed.[4] Bloomberg recently reported that President Milei appointed

---

[4] The legal context in *Seijas* also was different as to the Republic, as Plaintiffs explained in their August 14 letter. *See* ECF 629 at 4 n.4. The *Seijas* plaintiffs sought alter ego discovery from BNA for the purpose of establishing jurisdiction under the FSIA, and the Second Circuit held that the district court's denial of that discovery did not abuse its discretion in view of the "comity concerns implicated by allowing jurisdictional discovery from a foreign sovereign." ECF 629 at n. 4, *quoting Seijas*, 502 F. App'x at 21. Here, this Court already has subject-matter jurisdiction over this action and there are no "comity concerns" in allowing Plaintiffs to take post-judgment discovery from the Republic.

Page 5

Daniel Tillard as president of BNA with the intention of privatizing the bank. Harris Decl., Ex. 1. When opposition lawmakers thwarted that plan, "Tillard and Milei had to temper some of their ambitions" and now the "government is . . . focused on securing financing through debt issuance." *Id*. To that end, BNA has announced a reorganization plan in line with President Milei's austerity policies, all of which strongly indicates that the Republic is controlling BNA's operations for the purpose of advancing President Milei's political agenda. *Id*.

Similarly, Economy Minister Caputo recently announced on X that President Milei instructed him to close BNA branches in municipalities that had enacted local tax increases, and that he had relayed this instruction to BNA president Tillard "who "will be responsible for implementing this measure." Harris Decl., Ex. 2. Mr. Caputo offered no business justification for this "measure." It is naked political retaliation against local governments that do not fall in line behind President Milei's austerity policies, carried out through the government's domination of BNA. This is a classic alter ego hallmark according to precedent that the Republic and BNA both cite. *See Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000) (observing that agency relationship may exist where "parent has manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by" voting stock or appointing board members).

**ENARSA.** The Republic's reliance on *NML Cap., Ltd. v. Republic of Argentina*, 2011 WL 524433 (S.D.N.Y. Feb. 15, 2011), is unavailing, for three reasons. First, as discussed above, Plaintiffs need only satisfy the threshold test for alter ego discovery, not the more stringent standard applied by the court in *NML* for establishing alter ego status. *See id.* at *1 (concluding that "NML has not made a showing that ENARSA *is* an alter ego of the Republic") (emphasis added). The facts adduced by Plaintiffs in their opening brief, *see* ECF 657 at 7-8, warrant post-judgment discovery on the Republic's current relationship with ENARSA because they support more than a hunch that ENARSA is the Republic's alter ego, regardless of whether they satisfy the pleading standard for an alter ego cause of action.

Second, unlike the plaintiff in *NML*, Plaintiffs have adduced specific evidence that the Republic controls ENARSA's day-to-day operations. For example, according to a May 27, 2024 Argentine press report, "[g]overnment energy officials" recently directed ENARSA to purchase a 44 million cubic meter shipment of LNG from Petrobras without a bidding process in order "to alleviate the unexpected gas crisis that has jeopardized the energy supply across the country." ECF 659-29. By contrast, the plaintiff in *NML* made only general, unsupported allegations concerning

Page 6

the Republic's control over ENARSA's operations. *See NML*, 2011 WL 524433, at *7 (finding that alter ego claim "is not developed in the complaint with any specific detail").

Third, the 13-year-old *NML* decision cannot resolve whether Plaintiffs meet the threshold test for alter ego discovery today because political circumstances have changed over the last decade, and the ultimate issue for the Court will be whether ENARSA is *currently* an alter ego of the Republic. *See* ECF 657 at 2-3.

***ARSAT.*** The Republic mischaracterizes the evidence adduced by Plaintiffs with respect to its relationship with ARSAT. The Republic's statement in a June 2023 SEC filing that it "initiated the acquisition of equipment to expand the cybersecurity and storage capacity of ARSAT's national data center" (ECF 659-42 at 57) strongly suggests that the Republic exercises control over the ordinary business decisions of ARSAT, which is a satellite telecommunications provider, not a cybersecurity or data storage company. At the very least, this evidence warrants discovery into the Republic's control over ARSAT's day-to-day operations.

## II.    Discovery from De Pedro, Tombolini, and Vitobello

***Eduardo de Pedro.*** At the September 3 hearing, the Republic argued that Mr. de Pedro's ambit was limited to "policies relating to the provinces and the city of Buenos Aires, including tourism, the environment, sports, and migration," and that Plaintiffs were merely speculating that he had any connection to YPF. *See* Tr. at 39:4–14. Plaintiffs now have adduced further evidence that Mr. de Pedro's policy mandate as Minister of Interior indeed included energy policy (which is hardly surprising given the provinces' interest in energy issues), including key roles in the development of the pipeline to transport YPF's gas from Vaca Muerta and the LNG "megaproject" between YPF and Petronas. *See* ECF 659-48, 49, 50, and 51. The Republic now tries to "move the goalpost," arguing that Mr. de Pedro's involvement in these projects is "unsurprising" given his role in developing policy related to the provinces and has "nothing to do with" control over YPF's day-to-day operations. ECF 671 at 8-9. The Court, however, already has determined that Plaintiffs are entitled to discovery regarding the Republic's relationship with YPF. The question now is simply whether Mr. de Pedro was in a position to have relevant evidence about that relationship and he plainly was. Whether that evidence tends to show day-to-day control over YPF is a question for another day after Plaintiffs receive the evidence, not a reason to exclude Mr. de Pedro from the scope of discovery that the Court already has allowed.

Similarly, the Republic mischaracterizes the relevance of Mr. de Pedro's role

Page 7

as a leader of La Campora. The article that the Republic attempts to cast aside as merely a profile of Mr. de Pedro's "journey into politics" in fact described how his position as head of La Campora placed him at the center of "all the veins where power runs" through "open channels of dialogue with Fernández, Cristina, Massa, and Kicillof." ECF 659-52 at 6. Considering that *de facto* position of influence together with his formal responsibility for policies affecting the provinces and his reported role in significant YPF projects, it is a reasonable inference that Mr. de Pedro was heavily involved in the Republic's politicized control over YPF's operations. The Republic is free to argue that any such control over YPF ended when the prior government left office at the end of 2023, but that is an argument to be had after Plaintiffs receive the relevant evidence.

***Matias Tombolini.*** Plaintiffs have shown that Mr. Tombolini had direct authority in the Republic's efforts to regulate fuel prices through below-market pricing at YPF. *See* ECF 657 at 10. The Republic's argument that YPF participated in the *Precios Justos* program voluntarily along with other companies wrongly presupposes the answer to the very question on which Plaintiffs seek discovery and ignores the evidence that the Republic uses (or abuses) YPF's dominant market position to pressure other companies to go along. *See* ECF 659-55 at 3 (asserting that "YPF's play" constitutes "state interference in the marketing of crude oil" as part of a "model in which YPF orders and others obey"); *see also* ECF 670 at 10. Moreover, the Republic's argument that its efforts to control fuel prices through YPF are insufficient to establish alter ego again puts the cart before the horse and ignores that the Court already has decided that Plaintiffs are entitled to alter ego discovery as to YPF. The question now is whether Mr. Tombolini was in a position to have relevant communications regarding those efforts and he plainly was.

***Julio Vitobello.*** The Republic does not deny that Mr. Vitobello was involved in the government's (mis)use of YPF aircraft by top officials like Cristina Kirchner, which is evidenced by the fact that he was named in a criminal complaint about the matter. *See* ECF 563-12, 659-60. Whether that practice violated Argentine criminal laws is irrelevant to the issue at hand. Moreover, the Republic's quibbles about the number of flights on YPF aircraft simply underscores why discovery is appropriate. The press reporting is ultimately unclear regarding the extent of the government's free use of YPF aircraft, suggesting that Ms. Kirchner used YPF aircraft for four "trips" (not "flights"), but also that the YPF aircraft were her "favorites" and that this practice left a debt to YPF of over USD 1 million (at then exchange rates). ECF 659-60. Moreover, the cited articles only discuss the use of the aircraft by Ms. Kirchner, leaving open the question of whether the Office of the Presidency misused YPF aircraft for other senior officials.

Respectfully,

*/s/ Randy M. Mastro*

Randy M. Mastro