UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PETERSEN ENERGÍA INVERSORA, :
S.A.U. AND PETERSEN ENERGÍA, :
S.A.U., :
:
:
Plaintiffs, :
v. : Case No. 1:15-cv-02739-LAP
:
ARGENTINE REPUBLIC AND YPF :
S.A., :
:
Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ETON PARK CAPITAL :
MANAGEMENT, L.P., ETON PARK :
MASTER FUND, LTD. AND ETON :
PARK FUND, L.P., :
:
Plaintiffs, :
v. : Case No. 1:16-cv-08569-LAP
:
ARGENTINE REPUBLIC AND YPF :
S.A., :
:
Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SECOND EXPERT REPORT OF MIRIAM MABEL IVANEGA**

Pursuant to 28 U.S.C. § 1746 and Rule 44.1 of the Federal Rules of Civil Procedure, I,

Miriam Ivanega, state the following:

1.  I have written this expert report at the request of counsel for the Argentine Republic (the

    "Republic") to respond to the assertions and conclusions made by Prof. Alberto Bianchi in his

    report of October 2, 2024.

2. This report supplements my Expert Report dated September 18, 2024 ("First Report"), (*Petersen* ECF No. 660), which describes my professional background.

## EXECUTIVE SUMMARY

3. Prof. Bianchi builds his arguments against my First Report on the basis of a premise that departs from the facts of the case.

4. If it were a matter of evidentiary measures ordered in the context of a proceeding pending before Argentine courts for the enforcement of a foreign judgment or in response to a court order under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters of 1970, the actions of the Argentine State would be determined by the content of the orders issued by the Argentine courts. But the question to be answered here does not arise from an evidentiary measure ordered against the Argentine State in the context of a judicial proceeding in accordance with Argentine procedural rules. It deals with a request for information made by a plaintiff in a proceeding in a foreign jurisdiction in which the Argentine State was sued without having consented at any time to the jurisdiction of any court. In these circumstances, the Argentine State can and must adjust its actions to the applicable laws in force, which were described in my First Report. Deviating from that normative framework could expose public officials to the risk of non-compliance with the Argentine regulations referenced in my First Report.

5. First, the reference to the Argentine National Code of Civil and Commercial Procedure ("CPCCN") is mistaken because the CPCCN is not applicable to the facts of the case. Prof. Bianchi correctly admits that the CPCCN applies if "the litigation was before an Argentine court" (para. 6) and "if this litigation was before an Argentine court, the applicable procedural rules would be the [CPCCN]" (para. 7). This litigation is not before an Argentine court, but

before a United States federal court located in New York City, in accordance with the procedural rules of that jurisdiction. There is no rule in the CPCCN that governs proceedings in a judicial case before a foreign court.

6.  Second, in the absence of a court order issued by an Argentine judge, the Argentine State must conform its actions to applicable law. Prof. Bianchi correctly states that "[l]aw 27,275 regulates the right of the Argentine public to access governmental information" (para. 4). Together with its regulation, that norm defines under what circumstances the national State can (and must) disclose information created by public officials on devices that are within the possession, control, and custody of the Argentine State. That would be the only available legal basis for the Argentine State to disclose information created by its officials in the aforementioned devices. As I explained in my First Report, the rule is that the information created in administrative proceedings is confidential with respect to those that are not part of the administration.

7.  Third, the legal precedents cited by Prof. Bianchi under Law No. 27,275 do not enable the Argentine State to access information that may be located on devices that are not within its possession, control and custody. The "Public Information Access Agency" (the "AAIP"), in the resolutions referred to by Prof. Bianchi, limited its findings to the disclosure of information contained in emails created in official (non-personal) accounts of officials and from devices within the possession, control and custody of the Argentine State. The references to foreign regulations (Chile and the United Kingdom) on which Prof. Bianchi relies are equally irrelevant.

8.  Fourth, Prof. Bianchi's construction, to the effect that in this case there was a consent to jurisdiction and, therefore, the foreign court's order would provide sufficient justification to

violate or circumvent Argentine privacy and personal data protection rules, is not supported by Argentine law. Indeed, I understand that the Argentine State did not consent to any of jurisdiction nor did it waive its immunity from jurisdiction. There was, therefore, no such waiver or consent to jurisdiction.

9.  Fifth, the exceptions referring to the disclosure of financial, banking and tax secrets under Argentine law rest, again, on a court order issued by an Argentine judge under specific rules. It is those rules that allow officials to exempt themselves from the obligation to preserve confidentiality. Neither the plaintiffs' requests for information nor a foreign court order would fall within those exceptions.

10. In summary, this case is pending before a federal court in New York, which I assume has its own procedural rules. The procedural rules invoked by Prof. Bianchi only play a role with Argentine courts, in the context of proceedings conducted in the Argentine Republic.

## I.    THE ARGENTINE NATIONAL CODE OF CIVIL AND COMMERCIAL PROCEDURE IS NOT APPLICABLE BECAUSE THIS CASE IS NOT PENDING BEFORE AN ARGENTINE COURT.

11. Prof. Bianchi begins his report by arguing that the CPCCN, in particular Article 36(4)(c), should apply to the post-judgment discovery process in the above cases because that is the rule that would apply if the case was before an Argentine court (Bianchi para. 7).  However, after making this statement, Prof. Bianchi confirms that this rule is only applicable to litigation "before an Argentine court."  (Bianchi para. 7).

12. Indeed, the CPCCN does not apply to Plaintiffs' request. First, because the action is not before an Argentine court but before a U.S. court, which is not exercising its powers under Argentine procedural law, but under U.S. law, with its specific procedural rules. I understand that the Plaintiffs have not initiated enforcement proceedings before Argentine courts nor—as I

understand from the request made by them—a judicial request under the 1970 Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

13. In the Argentine Republic, the so-called "substantive codes"—which regulate and declare rights and duties in civil, commercial, criminal, mining, labor and social security matters—are issued by the National Congress "without such codes altering local jurisdictions, and their application corresponds to the federal or provincial courts" (Article 75, paragraph 12 of the National Constitution). In turn, each province dictates its "codes of form"—procedural rules—governing judicial proceedings in all matters before the provincial courts (civil, commercial, contentious-administrative, criminal, labor and social security). The Nation issues the procedural rules applicable to litigation before all federal courts at the national level and the local courts in civil and commercial matters in the Autonomous City of Buenos Aires. The CPCCN is the code issued by the National Congress to regulate proceedings in those courts.

14. The inapplicability of the CPCCN to Plaintiffs' request arises from the text of the CPCCN itself.[1]  The CPCCN does not contain rules regulating any judicial or procedural action, including discovery, in a foreign court. Consequently, the powers provided for in Articles 36, 387, 388 and 389 of the CPCCN to order the exhibition and production of specific documents in the possession of the parties or third parties to a proceeding are only exercised by Argentine courts in litigation subject to those rules.

## II.    LAW NO. 27,275 IS THE ONLY ARGENTINE LAW APPLICABLE TO THE

---

[1] Article 1 of the CPCCN refers to the fact that "[t]he jurisdiction **attributed to the national courts** cannot be extended"; (ii) Article 4 states that **"any lawsuit must be filed before a competent judge";** and (iii) Article 5 regulates the jurisdiction of Argentine judges by territory, without prejudice to any referral provided for in the rules of the substantive codes.

**PLAINTIFFS' REQUEST**

15. The only applicable Argentine law in this case is Law No. 27,275, which establishes the circumstances in which the right of access to public information is exercised.

    A.    <u>Resolutions 237/2021 and 250/2021 of the Public Information Access Agency are not applicable.</u>

16. Prof. Bianchi argues that "internal government communications concerning YPF and BCRA would still be subject to disclosure under that law" (Bianchi para. 9), citing AAIP Resolutions 237/2021 and 250/2021.

17. The factual background of those resolutions is neither similar nor relevant to ruling on Plaintiffs' requests in this case. In those cases, the argument concerned only official e-mails,[2] the content of which was indisputably of a public nature (purchase of Covid-19 vaccines) and, therefore, subject to public access.[3]

18. The AAIP itself has subsequently issued resolutions that refute Prof. Bianchi's interpretation. In Resolution 130/2023, issued two years later, in rejecting the request of a citizen who sought

---

[2] Resolution 237/2021 deals with a journalist's public information request to access "the emails that have been sent **from [and to] the emails cavizzotti@msal.gov.ar and mmonsalvo@msal.gov.ar** addressed to directors/authorities of AstraZeneca UK Limited and its directors in Argentina (...)" (Bianchi, Exhibit B, pp. 1-2). Resolution 250/2021 deals with a request to the Ministry of Health of the Argentine Republic in order to "know the content of **all official mails/emails** of the Minister of Health of the Nation Carla Vizzotti and Mauricio Alberto Monsalvo related to the purchase, negotiation and contracts for vaccines against the coronavirus (...)" (Bianchi, Annex C, p. 1).

[3] In paragraph 14 of his report, Prof. Bianchi refers to the guide issued by the United Kingdom Information Commissioner's Office, which the AAIP includes in recitals 44 and 45 of Resolution 237/2021. However, this guide lacks the relevance Bianchi gives it in paragraph 14. It is an international precedent with respect to a foreign law that does explicitly include within its definition of "public information" the communications contained in private messaging devices or applications, while Law No. 27,275 does not include them. In fact, the AAIP, beyond referring to it, did not adopt nor purport to adopt this rule.

access to information contained in the official e-mail of a public official, the AAIP expressly stated that **"e-mails . . . deserve the highest level of protection, as established by the Argentine Constitution, even if they were received or sent through the institutional mailboxes of public officials and employees"**.[4] (Exhibit A).

### B. <u>The rule and exceptions to the right of access to public information in Law No. 27,275</u>

19. In response to paragraphs 16 to 20 of Prof. Bianchi's report, which refer to the principle of transparency and maximum disclosure—it is not in dispute that public information must be available nor that there are exceptions to this rule. As Prof. Bianchi points out, the Argentine Supreme Court of Justice has issued several rulings in which it has emphasized the principles of public disclosure and transparency in public administration. Prof. Bianchi cites a comment I have made to the "Giustiniani" ruling and argues that this case affirms the principles of transparency and maximum disclosure. However, he does not mention that the facts that gave rise to that judgment had certain particularities, and that they were assessed in the light of a different regulatory framework than the one at issue here.[5]

### C. <u>Internal communications and documents of Argentine officials are "working papers" and "preparatory deliberations"</u>

---

[4] It also recognizes that "in a state governed by the rule of law, the exercise of public office cannot be tantamount to an absolute restriction of the rights enshrined in the Argentine Constitution and international human rights instruments, **meaning that public officials and employees retain their rights to privacy, communication and the protection of human dignity—rights that must be balanced and reconciled with others, such as the right to access public information"** (Exhibit A) (emphasis added).

[5] As of the date of the judgment, Law No. 27,275 had not been enacted and Decree 1172/2003, which was applicable only to the National Executive Branch, was in force. Likewise, Section 15 of Law No. 26,741 had provided that YPF was not subject to any legislation or administrative regulation governing the administration, management and control of companies or entities in which the National State or the provincial States have an equity interest.

20. Prof. Bianchi seeks to limit the scope of the GDE system to what he calls "official administrative acts" (paragraph 43). This is incorrect. Public officials perform numerous actions on a daily basis that do not qualify as official administrative acts, but still express the will of the Argentine State, because they are acts of the administration.

21. It is not correct to state, as Prof. Bianchi maintains, that "any action" of an official is an expression of the will of the State, becuase the principle of legality cannot be ignored in the public administration of a government under the rule of law. As I explained in my First Report (paragraphs 8 to 12), **all acts of the administration** (including reports, rulings, orders, preparatory acts in general, regulations, public contracts, among many other types of documents) must be made in conformity with the legal forms that make them valid.

22. Finally, paragraphs 46-48 of Prof. Bianchi's report, where he argues that "an email or other internal government document does not constitute a 'deliberative act' or a 'working paper' unless it relates to an official administrative act, are dogmatic arguments. Decree 780/2024 states that a "document" is "any record that has been generated, that is controlled or that is kept within the framework of government activity" and that preparatory deliberations and working papers, or the preliminary examination of "a matter" are not public documents.[6]  It does not include, in that paragraph, the words "administrative act", so there is no basis to exclude from the term public document the preparatory deliberations and working papers only of administrative acts.[7]

---

[6] According to the Diccionario de la Lengua Española, updated to 2023, *"asunto"* [matter] means, as its first meaning, *"materia de que se trata"* [matter in question].

[7] When the legislator intended, in Decree 780/2024, to refer to the administrative act, it did so expressly, for example, in the 2nd recital (acts of government), in Article 8 ( grounded act), Article 13 (act of denial and act of refusal).

### III.    ON WAIVER OF JURISDICTION

23. Prof. Bianchi argues that a foreign judge may issue an order under the CPCCN if there is a waiver of jurisdiction (paras. 26-29). However, I understand that in the present case there has been no waiver of jurisdiction by Argentina in favor of foreign judges.  Therefore, without a court order from an Argentine judge, Argentine government officials are not authorized to set aside the Argentine privacy and personal data protection rules to which their officials are subject.

24. In any event, even if it were not necessary that the order come from an Argentine judge, in order for the court order to do what Plaintiffs require, it would be necessary that the order be directed to the owners of the devices and personal accounts, which are not under the possession, control and custody of the national State. Prof. Bianchi says in his report that I concede "that the Republic can collect and produce communications on its officials' personal devices and accounts pursuant to a court order." (Bianchi para. 23). This is false. The order that Bianchi refers to as not contrary to Articles 153 and 153bis of the Argentine Criminal Code is an order issued in a judicial proceeding against the owner of the device. But that is not the case here because the owners of those devices and personal accounts are not parties to this proceeding. Therefore, even if a court order were issued against the State, the national State would not be able to hand over those devices and personal accounts without violating, among other things, the property and privacy rights of those individuals provided for in the Argentine National Constitution and exposing the Republic's officials to the risk of criminal penalties, as I explained in paragraphs 30-31 of my First Report.

### IV.    THE  REPUBLIC  IS  NOT  OBLIGATED  TO  PROVIDE  PRIVILEGED

**INFORMATION.**

25. Prof. Bianchi argues that "Law 21,526 allows judges to request information regarding the financial system" (Bianchi p. 11). Indeed, as Prof. Bianchi argues, banking and tax secrecy yield to a judge's request in court cases. However, he also forgets to clarify that this exception **applies in litigation carried out according to Argentine rules and before a competent Argentine judge.** The recipient of the exception in Law No. 11,683 (the law regulating tax proceedings) is clear, whose Article 101 refers to "contentious lawsuits" (which are proceedings before the Argentine courts). Likewise, this article provides in its subsection h that the secrecy shall not apply **"for the Judiciary"**. Argentine law does not regulate the powers of judges in foreign jurisdictions, but rather deals exclusively with the Argentine Judiciary. Therefore, precedents such as *"Fiscalía de Investigaciones Administrativas c/ Administración Federal de Ingresos Públicos"* are irrelevant.[8] In short, Prof. Bianchi does not present new arguments to refute the analysis already included in paragraph 18 of my First Report.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:     October 11, 2024

_____

Miriam Ivanega

---

[8] Notwithstanding the foregoing, in this judicial precedent, the CSJN states that "the convenience or legal interest in extending the exceptions to tax secrecy **is a problem of legislative policy that it is up to the legislator alone to resolve**" (Fallos: 344:1411, recital 14).

**THE FOREGOING IS A TRUE AND ACCURATE TRANSLATION** into English of the attached document in Spanish, which I had before me. Digitally signed in the City of Buenos Aires, Argentina, on October 11, 2024.------------------------------------------------------------------------------

Juan Manuel Falabella
Sworn Translator
English Language
Registered at the Buenos Aires Sworn Translators' Association
(Registration No. 7210, Volume XIX, Page 082)

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO DEL SUR DE NUEVA YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

| | | |
|---|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. Y PETERSEN ENERGÍA, S.A.U. | : : : : | |
| Demandantes, | : : | Caso Nº 1:15-cv-02739-LAP |
| c. | : | |
| REPÚBLICA ARGENTINA E YPF S.A., | : : : | |
| Demandados. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

| | | |
|---|---|---|
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD. Y ETON PARK FUND, L.P., | : : : : : | |
| Demandantes, | : : | Caso Nº 1:16-cv-08569-LAP |
| c. | : | |
| REPÚBLICA ARGENTINA E YPF S.A., | : : : | |
| Demandados. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

**SEGUNDA DECLARACIÓN EXPERTO DE MIRIAM MABEL IVANEGA**

De acuerdo al 28 U.S.C. § 1746 y la Regla 44.1 de las Reglas Federales de los

Procedimientos Civiles, yo, Miriam Ivanega, declaro lo siguiente:

1. He escrito la presente declaración de experto a solicitud de los abogados de la República Argentina (la "República") para responder a las afirmaciones y conclusiones vertidas por el Prof. Alberto Bianchi en su declaración del 2 de octubre de 2024.

2. Esta declaración complementa mi Declaración de Experto de fecha 18 de septiembre de 2024 ("Primera Declaración"), (*Petersen* ECF No. 660), la cual describe mis antecedentes profesionales.

**RESUMEN EJECUTIVO**

3. El Prof. Bianchi construye sus cuestionamientos a mi Primera Declaración a partir de una premisa que se aparta de los hechos del caso.

4. Si se tratase de medidas probatorias ordenadas en el marco de un proceso en trámite ante las cortes argentinas para la ejecución de sentencia extranjera o en respuesta a una requisitoria judicial conforme al Convenio de La Haya sobre la Obtención de Prueba en el Extranjero en Materia Civil o Comercial de 1970, el actuar del Estado argentino se guiaría por el contenido de las órdenes dictadas por los tribunales argentinos. Pero la pregunta a responder no resulta de una medida probatoria ordenada contra el Estado nacional en el marco de un proceso judicial ajustado a las normas procesales argentinas. Se trata de un pedido de información formulado por una parte demandante en un proceso en extraña jurisdicción en el cual el Estado argentino fue demandado sin haber aceptado en ningún momento la prórroga de jurisdicción. En estas circunstancias, el Estado argentino puede y debe ajustar su actuar a aquellas normas vigentes que le son aplicables y que fueron descritas en mi Primera Declaración. Apartarse de ese marco normativo podría exponer a los funcionarios públicos a riesgos de incumplir con la normativa argentina ya referida en mi Primera Declaración.

5.   Primero, la remisión al Código Procesal Civil y Comercial de la Nación ("CPCCN") es errada porque el CPCCN no es aplicable a las circunstancias del caso. El Prof. Bianchi admite correctamente que el CPCCN se aplica si "el litigio se produjera ante un tribunal argentino" (párrafo 6) y "si este litigio se tratara ante un tribunal argentino, las normas procesales aplicables serían el [CPCCN]" (párrafo 7). Este litigio no tramita ante un tribunal argentino, sino ante una corte federal de los Estados Unidos sita en la ciudad de Nueva York, de acuerdo con las normas procesales de esa jurisdicción. No hay norma alguna en el CPCCN que regule el trámite de un proceso judicial ante un tribunal extranjero.

6.   Segundo, ante la ausencia de una orden judicial emitida por un juez argentino, el Estado argentino debe ajustar su actuar a la legislación aplicable. El Prof. Bianchi correctamente afirma que "[l]a Ley 27.275 regula el derecho del público argentino a acceder a la información gubernamental" (párrafo 4). Junto a su reglamentación, esa norma define en qué circunstancias el Estado nacional puede (y debe) difundir información generada por funcionarios públicos en dispositivos que están bajo la posesión, el control y la custodia del Estado argentino. Esa sería la única base normativa disponible al Estado argentino para divulgar información generada por sus funcionarios en los dispositivos mencionados. Como expliqué en mi Primera Declaración, la regla es que la información generada en las actuaciones administrativas tiene carácter reservado para quienes no forman parte de la administración.

7.   Tercero, los precedentes que cita el Prof. Bianchi bajo la Ley N° 27.275 no habilitan el acceso por el Estado nacional a información que pueda estar ubicada en dispositivos que no están bajo su posesión, control y custodia. La Agencia de Acceso a la Información Pública (la "AAIP"), en los casos referidos por el Prof. Bianchi, se circunscribió a disponer la exhibición

-3-

de información contenida en correos generados desde las cuentas oficiales (no personales) de funcionarios y desde dispositivos bajo la posesión, el control y la custodia del Estado argentino. Las referencias a normativa extranjera (Chile y Reino Unido) en las que se apoya el Prof. Bianchi son igualmente irrelevantes.

8. Cuarto, la construcción formulada por el Prof. Bianchi, de que en este caso hubo una prórroga de jurisdicción y, por tanto, una orden de juez extranjero sería razón suficiente para violar o eludir las normas argentinas de protección de privacidad y datos personales no tiene sustento en el derecho argentino. En efecto, entiendo que el Estado argentino no acordó prórroga de jurisdicción alguna ni renunció a la inmunidad de jurisdicción. No habría, pues, prórroga alguna.

9. Quinto, las excepciones referidas a la divulgación de secretos financieros, bancarios y tributarios en el derecho argentino descansan, nuevamente, sobre una orden judicial emitida por un juez argentino al amparo de las normas específicas. Esas normas son las que permiten a los funcionarios exceptuarse a la obligación de preservar la confidencialidad. Ni los pedidos de información de las demandantes ni siquiera una orden judicial extranjera caerían dentro de esas excepciones.

10. En síntesis, este caso se encuentra en trámite ante un tribunal federal en Nueva York, el cual asumo que tiene sus propias reglas procesales. Las normas procesales invocadas por el Prof. Bianchi únicamente aplican a los jueces argentinos, en el marco de procesos conducidos en la República Argentina.

## I.   EL CÓDIGO PROCESAL CIVIL Y COMERCIAL DE LA NACIÓN NO ES APLICABLE PORQUE ESTE CASO NO TRAMITA ANTE UN TRIBUNAL ARGENTINO.

11. El Prof. Bianchi comienza su declaración sosteniendo que corresponde aplicar el CPCCN, en especial el artículo 36(4)(c) al proceso de *discovery* posterior a la sentencia de primera instancia en los casos arriba mencionados porque esa es la norma que aplicaría si el caso estuviera frente a un tribunal argentino. (Bianchi pár. 7).  Sin embargo, tras esta afirmación el Prof. Bianchi confirma : que esa normativa es solamente aplicable a **litigios** "ante un tribunal argentino."  (Bianchi pár. 7).

12. Efectivamente, el CPCCN no aplica a la petición de los Demandantes. En primer término, porque el proceso no se desarrolla ante un tribunal argentino sino ante un tribunal estadounidense, que no está ejerciendo sus facultades al amparo del derecho procesal argentino, sino estadounidense, con sus reglas procesales específicas. Entiendo que los Demandantes no han iniciado procesos de ejecución ante los tribunales argentinos y tampoco —según comprendo de la petición por ellos formulada— una requisitoria judicial conforme al Convenio de La Haya sobre la Obtención de Prueba en el Extranjero en Materia Civil o Comercial de 1970.

13. En la República Argentina, los llamados "códigos de fondo" o sustantivos —que regulan y declaran derechos y deberes en materia civil, comercial, penal, de minería, y del trabajo y la seguridad social— son dictados por el Congreso Nacional "sin que tales códigos alteren las jurisdicciones locales, correspondiendo su aplicación a los tribunales federales o provinciales" (art. 75 inc. 12 de la Constitución Nacional). Por su parte, cada provincia dicta sus "códigos de forma" —reglas procesales— que rigen los procesos judiciales de todas las materias que tramitan ante los tribunales  provinciales (civil, comercial, contencioso administrativo, penal, de trabajo y seguridad social). La Nación dicta la normativa procesal aplicable para los litigios ante todos los tribunales federales a nivel nacional y los tribunales

locales en materia civil y comercial de la Ciudad Autónoma de Buenos Aires. El CPCCN es

el código dictado por el Congreso Nacional para regular los procesos en esos tribunales).

14. La inaplicabilidad del CPCCN a la solicitud de los Demandante surge del propio texto del

CPCCN.[1] El CPCCN no contiene normas que regulen actuación judicial o procesal alguna,

incluido el *discovery*, ante un tribunal extranjero. En consecuencia, las facultades previstas

en los artículos 36, 387, 388 y 389 del CPCCN para exigir la exhibición y presentación de

documentos específicos en poder de las partes o de terceros de un proceso sólo son ejercidas

por tribunales argentinos en litigios sometidos a esas reglas.

## II.    LA LEY N° 27.275 ES LA ÚNICA NORMA ARGENTINA APLICABLE AL PEDIDO DE LAS DEMANDANTES

15. La única norma argentina aplicable en este caso es la Ley N° 27.275 que establece en qué

circunstancias se ejerce el derecho de acceso a la información pública.

### A.    <u>Las Resoluciones 237/2021 y 250/2021 de la Agencia de Acceso a la Información Pública no son aplicables.</u>

16. El Prof. Bianchi sostiene que "las comunicaciones internas del gobierno relativas a YPF y el

BCRA seguirían estando sujetas a divulgación en virtud de esa ley" (Bianchi pár. 9), citando

las Resoluciones 237/2021 y 250/2021 de la AAIP.

17. Los antecedentes fácticos de esas resoluciones no resultan semejantes ni relevantes para

decidir sobre las peticiones de los Demandantes en este caso. En esos casos, la discusión

---

[1] El artículo 1 del CPCCN hace referencia a que "[l]a competencia **atribuida a los tribunales nacionales** es improrrogable*";* (ii) el artículo 4 expresa que "**toda demanda deberá interponerse ante juez competente"**; y (iii) el artículo 5 que regula la competencia de los jueces argentinos por razón del territorio, sin perjuicio de la remisión que dispongan las normas de los códigos de fondo.

versaba únicamente sobre correos electrónicos oficiales[2] y que contenido era de naturaleza, indiscutiblemente, pública (compra de vacunas contra el Covid-19) y, por lo tanto, de acceso al público.[3]

18. La propia AAIP ha emitido resoluciones posteriormente que refutan la interpretación del Prof. Bianchi.  En la Resolución 130/2023, dictada dos años después, en ocasión de rechazar la petición de un ciudadano que pretendió acceder a información contenida en el correo electrónico oficial de un funcionario público, la AAIP expresamente señaló que "**los correos electrónicos. . . merecen el máximo umbral de protección, tal como lo establece la Constitución Nacional, aún si estos fueron recibidos o enviados por medio de casillas institucionales de funcionarios y empleados públicos**".[4] (Anexo A).

---

[2] La Resolución 237/2021 trata sobre la solicitud de acceso a la información pública de un periodista para acceder a "los correos electrónicos que hayan sido enviados **desde [y hacia] los correos cavizzotti@msal.gov.ar y mmonsalvo@msal.gov.ar** con destino a directivos/autoridades de AstraZeneca UK Limited y sus directivos en la Argentina (…)" (Bianchi, Anexo B, págs. 1-2). La Resolución 250/2021 se origina con un pedido, contra el Ministerio de Salud de la República Argentina con el objeto "conocer el contenido de **todos los mails/correos electrónicos oficiales** de la ministra de Salud de la Nación Carla Vizzotti y Mauricio Alberto Monsalvo vinculados a la compra, negociación y contratos por vacunas contra el coronavirus (…)" (Bianchi, Anexo C, pág. 1).

[3] En el párrafo 14 de su informe, el Prof. Bianchi se remite a la guía emitida por la Oficina del Comisionado de Información del Reino Unido, que la AAIP incluye en los considerandos 44 y 45 de la Resolución 237/2021. Sin embargo, dicha guía carece de la relevancia que le otorga en el párrafo 14. Se trata de un antecedente internacional respecto de una ley extranjera que, si incluye de manera explícita dentro de su definición de "información pública" a las comunicaciones contenidas en los dispositivos o aplicaciones de mensajería privados, y a Ley N° 27.275 no los incluye.  En efecto, la AAIP, más allá de referirse a ella, no adoptó ni pretendió adoptar esta regla.

[4] Asimismo, reconoce que "en un Estado de Derecho, el ejercicio de la función pública no puede ser sinónimo de la restricción absoluta de los derechos consagrados en la Constitución Nacional y los instrumentos internacionales de Derechos Humanos, **por lo que las y los funcionarios y empleados públicos no dejan de ser titulares del derecho a la privacidad, la comunicación y a la protección de la dignidad humana; derechos que deben ser armonizados y**

**B.    La regla y excepciones al derecho de acceso a información pública en la Ley N° 27.275**

19. En respuesta a los párrafos 16 a 20 del informe del Prof. Bianchi, que hablan sobre el principio de transparencia y máxima divulgación, no está en discusión que la información pública debe estar disponible ni que existen excepciones a dicha regla. Tal como señala el Prof. Bianchi, la Corte Suprema de Justicia de la Nación Argentina se ha pronunciado en diversas sentencias en las que valoró los principios de publicidad y transparencia de la gestión pública. El Prof. Bianchi cita un comentario que yo he hecho al fallo "Giustiniani" y argumenta que este caso afirma los principios de transparencia y máxima divulgación. Sin embargo, no hace mención a que los hechos que dieron lugar a esa sentencia revestían ciertas particularidades, y que fueron valorados a la luz de un marco normativo diferente al que es objeto de análisis aquí.[5]

**C.    Las comunicaciones y documentos internos de los funcionarios argentinos son "papeles de trabajo" y "deliberaciones preparatorias"**

20. El Prof. Bianchi busca limitar la competencia del sistema GDE a lo que él denomina "actos administrativos oficiales" (párrafo 43). Esto es incorrecto. Los funcionarios públicos realizan a diario numerosas acciones que no constituyen actos administrativos oficiales, pero aun así manifiestan la voluntad del Estado argentino, porque son actos de la administración.

---

compatibilizados con otros, tales como el de acceso a la información pública" (Anexo A) (remarcado añadido).

[5] A la fecha del fallo no se había dictado la Ley N° 27.275, encontrándose vigente el Decreto 1172/2003, que era aplicable únicamente al Poder Ejecutivo Nacional. Asimismo, el artículo 15 de la Ley N° 26.741 había dispuesto que a YPF no le resultaba aplicable la legislación o normativa administrativa alguna que reglamente la administración, gestión y control de las empresas o entidades en las que el Estado nacional o los Estados provinciales tengan participación.

21. No es correcto afirmar, como sostiene el Prof. Bianchi, que "cualquier acción" es manifestación de la voluntad estatal, por lo que el principio de legalidad es de insoslayable cumplimiento en la gestión pública de un gobierno en el estado de derecho. Como expliqué en mi Primer Informe (párrafos 8 a 12), **todos los actos de la administración** (incluyendo los informes, dictámenes, providencias, actos preparatorios en general, reglamentos, contratos públicos, entre muchos otros tipos de documentos) tienen que ajustarse a las formas que le dan validez.

22. Por último, los párrafos 46-48 del informe del Prof. Bianchi, donde argumenta que "un correo electrónico u otro documento interno del gobierno no constituye una 'deliberación preparatoria' o un "papel de trabajo" a menos que se refiera a un acto administrativo oficial, resultan justificaciones dogmáticas. El Decreto 780/2024 establece que un "documento" es "todo registro que haya sido generado, que sea controlado o que sea custodiado en el marco de la actividad estatal" y no son documentos públicos las deliberaciones preparatorias y papeles de trabajo, o el examen preliminar de "un asunto".[6] No incluye, en ese párrafo, las palabras "acto administrativo", con lo cual no hay razón para excluir del término documento público solo las deliberaciones preparatorias y papeles de trabajo de actos administrativos.[7]

## III.    SOBRE LA PRÓRROGA DE JURISDICCIÓN

23. El Prof. Bianchi sostiene que un juez extranjero puede emitir una orden judicial en virtud del CPCCN si existe prórroga de jurisdicción (párrafos 26-29). Sin embargo, entiendo que en el

---

[6] Según el Diccionario de la Lengua Española, actualizada a 2023, asunto significa, como primera acepción, "materia de que se trata".

[7] Cuando el legislador quiso, en el Decreto 780/2024, referirse al acto administrativo lo hizo expresamente, por ejemplo, en el 2do. considerando (actos de gobierno), en el artículo 8 (acto fundado) artículo 13 (acto denegatorio y acto de denegatoria).

presente caso no ha existido una prórroga de jurisdicción de la Argentina a favor de jueces extranjeros.  Por lo tanto, sin una orden judicial de un juez argentino los funcionarios del gobierno argentino no tienen autorización para dejar de lado las normas argentinas de protección de privacidad y datos personales a las que sus funcionarios están sujetos.

24. A todo evento, incluso si no fuese necesario que la orden proviniese de un juez argentino, para que la orden judicial pueda hacer lo que las Demandantes requieren, sería necesario que la orden se dirija a los propietarios de los dispositivos y las cuentas personales que no están bajo posesión, control y custodia del Estado nacional. Bianchi dice en su informe que yo admito "que la República puede recopilar y producir comunicaciones en los dispositivos y cuentas personales de sus funcionarios en virtud de una orden judicial." (Bianchi párrafo 23). Esto es falso. La orden a la que se refiere Bianchi como no contraria a los artículos 153 y 153bis del Código Penal argentino es aquella orden emitida en un proceso judicial contra el propietario del dispositivo. Pero ese no es el caso aquí porque los propietarios de esos dispositivos y cuentas personales no son parte de este proceso. Por tanto, incluso si se emitiese una orden judicial contra el Estado, el Estado nacional no podría entregar esos dispositivos y cuentas personales sin violar, entre otros, los derechos de propiedad y privacidad de esos individuos previstos en la Constitución Nacional argentina y exponer a los funcionarios de la República al riesgo de sanciones penales, como expliqué en los párrafos 30-31 de mi Primera Declaración.

## IV.   LA REPÚBLICA NO ESTÁ OBLIGADA A ENTREGAR INFORMACION PRIVILEGIADA.

25. El Prof. Bianchi argumenta que "la Ley 21,526 permite a los jueces solicitar información sobre el sistema financiero."  (Bianchi pág. 11.)  Efectivamente como sostiene el Prof.

Bianchi, el secreto bancario y fiscal ceden ante la solicitud de un juez en causas judiciales. Sin embargo, él también olvida aclarar que esa excepción se **aplica en litigios sustanciados según las normas argentinas y ante un juez competente argentino.** Es patente el destinario de la excepción en la Ley N° 11.683 (la ley que regula los procedimientos fiscales), cuyo artículo 101 hace referencia a "los juicios de demanda contenciosa" (que son procedimientos ante los tribunales argentinos). Asimismo, dicho artículo dispone en su inciso h que el secreto no se aplicará **"para el Poder Judicial".** La ley argentina no regula las potestades de jueces de jurisdicción extranjera, tratándose exclusivamente del poder judicial argentino. Es por ello que son irrelevantes los antecedentes como el de la *"Fiscalía de Investigaciones Administrativas c/ Administración Federal de Ingresos Públicos".*[8] En definitiva, el Prof. Bianchi no presenta nuevos argumentos para rebatir el análisis ya incluido en el párrafo 18 de mi Primer Informe.

Declaro bajo pena de perjurio de conformidad con las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto.

Fecha: 11 de octubre de 2024

Miriam Ivanega

---

[8] Sin perjuicio de ello, en ese precedente judicial, la CSJN señala que "la conveniencia o interés jurídico en ampliar las excepciones al secreto fiscal **constituyen un problema de política legislativa que le incumbe resolver solo al legislador."** (Fallos 344:1411, considerando 14).