# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 1 0036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Randy M. Mastro
Partner
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

November 14, 2024

*By CM/ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

 Re: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739;
   *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Your Honor:

  We write in response to the Statement of Interest submitted by the United States on November 6. *See* ECF 679.[1] The timing of the United States' submission is curious, because it has known about this case since at least 2019, when it filed an amicus brief opposing Argentina's petition for a writ of certiorari. *See* Brief for the United States as Amicus Curiae, *Argentine Republic v. Petersen Energía Inversora, S.A.U.* (No. 18-581). Leaving that aside, the United States' submission brazenly ignores the most apposite Supreme Court precedent, *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014), a case in which the United States also sided with Argentina against the plain text of the FSIA and lost.

  As explained below, the Statement of Interest does nothing to call into question the correctness of this Court's decision in *Bainbridge Fund Ltd. v. Republic of Argentina*, 690 F. Supp. 3d 411 (S.D.N.Y. 2023), which held that: (i) a foreign state's property is not immune from execution by virtue of its location outside the United States; and (ii) the Court has the authority under CPLR § 5225 to order a foreign state to bring its property to the United States if it would not be immune from execution afterward. *Id.* at 415-17.

---

[1] ECF references are to the *Petersen* docket.

Hon. Loretta A. Preska
November 14, 2024
Page 2

## I. The United States' Statement of Interest Squarely Conflicts With *Bainbridge*.

*Bainbridge* directly rejected the two principal contentions in the United States' Statement of Interest, namely that: (i) a foreign state's property located outside the United States is "absolutely immune" from execution (*see* ECF 679 at 2-5, 8-9); and (ii) CPLR § 5225 "does not reach" such property (*see id.* at 5-8). *See Bainbridge*, 690 F. Supp. 3d at 415-16. This Court correctly grounded *Bainbridge* on *NML Capital* and *Peterson v. Islamic Republic of Iran*, 876 F.3d 63 (2d Cir. 2017), *vacated on other grounds sub nom. Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020), which are equally "persuasive and applicable here." *See id.* at 416.

## II. *NML Capital* Forecloses the United States' Invocation of Execution Immunity Under Both the Common Law and the FSIA.

The United States' contention (at 3) that the FSIA "did not . . . abrogate common law principles concerning execution immunity of foreign state property located abroad" conflicts with *NML Capital*, a decision that the Statement of Interest almost entirely ignores.[2] *NML Capital* held that "'after the enactment of the FSIA, the Act—and not the pre-existing common law—indisputably governs the determination of whether a foreign state is entitled to sovereign immunity.'" *NML Capital*, 573 U.S. at 141 (quoting *Samantar v. Yousuf*, 560 U.S. 305, 313 (2010)). "Thus, ***any*** sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." *Id.* at 141-42 (emphasis added).

Applying these principles, *NML Capital* squarely rejected Argentina's argument that the absolute execution immunity that a foreign state's extraterritorial property purportedly enjoyed under the common law survived the enactment of the FSIA. *NML Capital*, 573 U.S. at 143. That argument, the Supreme Court concluded, "founders at each step." *Id.* at 144. First, Argentina failed to cite a single pre-FSIA case holding that extraterritorial property enjoyed absolute execution immunity in

---

[2] The Statement of Interest refers to *NML Capital* only once, misquoting the Supreme Court's statement that the FSIA does not "contain[] the 'plain statement' necessary to preclude application of federal discovery rules" to suits against foreign sovereigns. *See* ECF 679 at 5 (citing *NML Capital*, 573 U.S. at 143).

U.S. courts. *Id.* Second, "even if Argentina were right about the scope of the common-law execution-immunity rule, then it would be obvious that the terms of § 1609 execution immunity are narrower, since the text of that provision immunizes only foreign-state property '***in the United States***.'" *Id.* Congress's grant of immunity to certain property "in the United States" in Section 1609 provides no reason to think that it agrees with the Executive that the interests of a foreign sovereign should be categorically elevated over the interests of defrauded U.S. investors with respect to extraterritorial property.

*NML Capital* thus forecloses the United States' invocation of common-law execution immunity. The United States' failure to address this decision in its Statement of Interest is inexplicable, especially given that the United States submitted an amicus brief to the Supreme Court supporting Argentina's position in that case. *See* Brief for the United States as Amicus Curiae at 12, *NML Capital* (No. 12-842) (arguing that "[t]he FSIA modified in part the prior legal regime, under which all foreign-state property was absolutely immune from execution").

*NML Capital* also disposes of the United States' contention (at 8-9) that, even if the FSIA did abrogate common-law execution immunity, the "in the United States" requirement in Section 1610(a) of the FSIA would be a "nullity" if a U.S. court could utilize CPLR § 5225 to order a foreign state to bring its property to the United States. Section 1610(a) sets out exceptions to the execution immunity granted by Section 1609, which, as *NML Capital* clearly held, "immunizes only foreign-state property '***in the United States***.'" *NML Capital*, 573 U.S. at 144. The phrase "in the United States" in Section 1610(a) accordingly creates symmetry between the scope of the execution immunity granted by Section 1609 and the scope of the exceptions to this immunity under Section 1610(a); it does not implicitly immunize a foreign state's property located outside the United States.

### III. New York's Turnover Statute Applies to Foreign Sovereign Property, Wherever Located.

The United States concedes (at 6) that in *Koehler v. Bank of Bermuda*, the New York Court of Appeals held that CPLR § 5225 "ha[s] extraterritorial reach." 12 N.Y.3d 533, 539 (2009).[3] In *Attestor Master Value Fund LP v. Republic of*

---

[3] The other statute under which Plaintiffs seek turnover of Argentina's YPF shares,

Hon. Loretta A. Preska
November 14, 2024
Page 4

*Argentina*, the Second Circuit recently clarified that CPLR § 5225 authorizes a court with jurisdiction over a foreign state to order it to turn over its non-immune property. 113 F.4th 220, 234 (2d Cir. 2024). Together, these decisions make clear that CPLR § 5225 permits this Court to require Argentina to turnover its extraterritorial property.

Notwithstanding these decisions, the United States contends (at 5) that "prescriptive comity" requires interpreting CPLR § 5225 as not reaching a foreign state's extraterritorial property. This contention fails for three reasons. **First**, a foreign state cannot invoke comity to shield its property from execution because the FSIA already grants immunity to a foreign state's property (subject to certain exceptions) as a gesture of comity. *See* ECF 587 at 9-10. The FSIA leaves no room for another layer of comity analysis that would undermine its tailored exceptions.

**Second**, even if this Court could undertake a comity analysis, no conflict exists between CPLR § 5225 and customary international law. The United States cites (at 7) Restatement (Fourth) of Foreign Relations Law § 432, but this section addresses limits on a state's "use of force" in the territory of another state, such as sending its law enforcement officers into that state to seize property.[4] *Id.* cmt.a. The Reporters' Notes thus explain that "[a]n order issued within a state's own territory" relating to "property located outside the territory of that state" "will not constitute enforcement within another state's territory absent attempts by the first state to execute those orders ***in the territory of the other state***." *Id.* n.2 (emphasis added.)[5]

---

UCC § 8-112(e), likewise authorizes a court to order a judgment-debtor to bring into the United States shares located outside this country. *See Inter-Reg'l Fin. Grp. v. Hashemi*, 562 F.2d 152, 154-55 & n.2 (2d Cir. 1977).

[4] The Executive has sometimes honored those limits in the breach. *See, e.g.*, *United States v. Alvarez-Machain*, 504 U.S. 655, 669 (1992).

[5] The United States contends (at 7) that the FSIA "codifie[s]" the alleged customary international law principle preventing a foreign court from executing on a foreign state's property in the United States. On the contrary, the FSIA does not purport to regulate immunity determinations made by foreign courts. *See* 28 U.S.C. § 1602 ("Claims of foreign states to immunity should henceforth be decided ***by courts of the United States and of the States*** in conformity with the principles set forth in this chapter.") (emphasis added).

Hon. Loretta A. Preska
November 14, 2024
Page 5

The United States' argument (at 7-8) that interpreting CPLR § 5225 as applying to a foreign state's extraterritorial property could conflict with the law of a foreign country goes much too far because it would prohibit the turnover of ***any*** judgment-debtor's property located in another country, contrary to *Kohler*. In any event, no conflict exists between Plaintiffs' requested turnover order and Argentine law, and even if there were such a conflict, comity considerations would weigh in favor of the turnover order. *See* ECF 587 at 10-11.

The United States' concern that Plaintiffs' interpretation of CPLR § 5225 creates "the potential for reciprocal adverse treatment of the United States in foreign courts" is unfounded because the FSIA narrowly limits the property subject to turnover under New York law. In particular, a U.S. court cannot order the turnover of a foreign state's extraterritorial property unless that property is "used for a commercial activity in the United States" ***and*** satisfies one of the other requirements set out in Section 1610(a) of the FSIA. *See Bainbridge*, 690 F. Supp. 3d at 416-17. In any event, as the Supreme Court noted in *NML Capital*, the United States' policy concern is "better directed to that branch of government with authority to amend the [FSIA]." *NML Capital*, 573 U.S. at 146.

***Third***, even if there were a conflict between CPLR § 5225 and foreign or international law, construing a statute to avoid such a conflict is prohibited if "such construction is not fairly possible." Restatement (Third) of Foreign Relations Law § 403, comment g. Here, it is impossible fairly to construe the terms of CPLR § 5225 as applying to private property but not sovereign property.

### IV.   *Bainbridge* Is Controlling on the Facts of This Case.

In short, *Bainbridge* is controlling on the facts of this case: Argentina's YPF shares are not immune from execution by virtue of their location outside the United States, and this Court has the authority under New York law to order Argentina to bring the shares to this country, because they would not be immune from execution afterward. Notably, the United States does not express any disagreement with Plaintiffs' interpretation of the "used for" and claim-nexus requirements in Sections 1610(a) and 1610(a)(2) of the FSIA or with their argument that Argentina's YPF shares satisfy both of these requirements.

Hon. Loretta A. Preska
November 14, 2024
Page 6

                                                                       Respectfully,

                                                                       */s/ Randy M. Mastro*
                                                                       Randy M. Mastro