UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. AND PETERSEN ENERGÍA, S.A.U., | : : : : | Case Nos. 1:15-cv-02739-LAP 1:16-cv-08569-LAP |
| Plaintiffs, | : : | |
| v. | : : | |
| ARGENTINE REPUBLIC AND YPF S.A., | : : : | |
| Defendants. | : : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD. AND ETON PARK FUND, L.P., | : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| ARGENTINE REPUBLIC AND YPF S.A., | : : : |
| Defendants. | : : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

### YPF S.A.'s MEMORANDUM OF LAW REGARDING THE IMPACT OF *PETERSON v. BANK MARKAZI*

1010718221

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1

RELEVANT BACKGROUND ....................................................................... 3

ARGUMENT ............................................................................................... 6

I.     *Bank Markazi* Confirms that the Court Does Not Have Jurisdiction Over
       Plaintiffs' Continued Pursuit of YPF as the Republic's Alleged Alter Ego. .......... 7

       A.  The Court of Appeals Held that Post-Judgment Alter Ego Claims
           Under *Bancec* Seek to Impose Liability for the Judgment and Require
           an Independent Basis for Subject Matter Jurisdiction. ..................................... 7

       B.  The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Post-
           Judgment Pursuit of YPF as the Republic's Alleged Alter Ego. ................... 11

II.    Following *Bank Markazi*, the Court Can and Should Grant YPF's Res
       Judicata Motion. ...................................................................................... 16

III.   Denying Plaintiffs' Motions and Barring Plaintiffs' Continued Pursuit of
       YPF Is Not Just Legally Required, But Fair. ....................................................... 18

CONCLUSION ............................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cessna Fin. Corp. v. Al Ghaith Holding Co. PJSC*,
    2021 WL 603012 (S.D.N.Y. Feb. 16, 2021)...............................................................14

*Chevron Corp. v. Donziger*,
    990 F.3d 191 (2d Cir. 2021).......................................................................................14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019)......................................................................................10

*Epperson v. Ent. Express, Inc.*,
    242 F.3d 100 (2d Cir. 2001)..................................................................................8, 10

*F.B.I. v. Superior Ct. of Cal.*,
    507 F.Supp.2d 1082 (N.D. Cal. 2007) .......................................................................15

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)......................................................................................... *passim*

*Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982).....................................................................................................14

*In re Backer*,
    2010 WL 2816789 (S.D.N.Y. July 16, 2010) ...........................................................15

*In re Petition of Austin*,
    2013 WL 5255125 (S.D.N.Y. July 16, 2013) ...........................................................15

*Knox v. Orascom Telecom Holding S.A.E.*,
    477 F. Supp. 2d 642 (S.D.N.Y. 2007).......................................................................10

*Owen Equipment & Erection Co. v. Kroger*,
    437 U. S. 365 (1978)...................................................................................................9

*Peacock v. Thomas*,
    516 U.S. 349 (1996).......................................................................................8, 9, 10, 12

*Petersen Energía Inversora S.A.U. v. Argentine Republic*,
    2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016),
    *aff'd*, 895 F.3d 194 (2d Cir. 2018) ...........................................................................13

*Peterson v. Bank Markazi,*
121 F.4th 983 (2d Cir. 2024) ............................................................... *passim*

*Phoenix Light SF Ltd. v. Bank of New York Mellon,*
66 F.4th 365 (2d Cir. 2023) ...................................................................17

*Wye Oak Tech., Inc. v. Republic of Iraq,*
24 F.4th 686 (D.C. Cir. 2022) ................................................................16

**Statutes**

22 U.S.C. § 8772....................................................................................8

28 U.S.C. § 1330(a) ..............................................................................15

Foreign Sovereign Immunities Act....................................................2, 8, 9

**PRELIMINARY STATEMENT**

The Court has correctly recognized that the Court of Appeals' decision in *Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024) ("*Bank Markazi*") has immediate implications for this case and the pending motions. For YPF, those implications are completely dispositive: *Bank Markazi* confirms that this Court lacks subject matter jurisdiction over Plaintiffs' efforts to hold YPF liable as an alter ego for the judgment against the Republic under *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"). The Court has an ongoing, independent duty to assess its jurisdiction throughout the case and, on that basis, should conclude that it lacks jurisdiction now, even in the absence of a pending pleading and motion. Without jurisdiction, the Court must also deny all of Plaintiffs' pending motions seeking discovery from and about YPF regarding whether it is an alter ego of the Republic. And, because res judicata is a non-merits threshold question that can and should be decided without reaching the questions of jurisdiction, the Court can and should grant YPF's res judicata motion to ensure the finality of its own judgment, the repose to which YPF is entitled, and the efficiency of these proceedings.

In *Bank Markazi*, the Court of Appeals definitively rejected the same kind of post-judgment expansion of jurisdiction and liability that Plaintiffs are attempting against YPF here. In that case, the plaintiffs obtained a judgment against a sovereign — Iran — and attempted to enforce that judgment against its sovereign instrumentality — Bank Markazi — on the theory that the bank was Iran's alter ego. In addition to arguing jurisdiction pursuant to an Iran-specific statute, the plaintiffs argued that the Court had subject matter

jurisdiction to determine the alter ego and turnover issues because they were ancillary to the judgment and within the Court's enforcement authority.  The Court of Appeals rejected that argument.  It found that a court's ancillary jurisdiction to enforce its judgments "does not extend to an action to establish liability on the part of a third party," including through veil-piercing and alter ego theories under *Bancec*; those are substantive theories seeking to establish liability on the part of a new party that require an independent basis for subject matter jurisdiction.  Without it, the claims cannot proceed.

What this means for YPF is straightforward.  Like Bank Markazi, YPF is a sovereign instrumentality immune from jurisdiction in the United States, except under the very limited circumstances provided in the Foreign Sovereign Immunities Act ("FSIA"), and is now the target of new efforts to tag it with liability in enforcement proceedings as the putative alter ego of a sovereign judgment-debtor.  *Bank Markazi* holds that those efforts are ***not*** within the Court's ancillary jurisdiction in enforcement proceedings, and instead are new theories of liability that require a separate jurisdictional hook, as YPF has argued.  Plaintiffs have no such hook.  They have not and cannot plead any basis for subject matter jurisdiction over a new claim that YPF is liable as the Republic's alter ego and, as in *Bank Markazi*, they cannot rely on ancillary jurisdiction extending from the underlying litigation to pursue — in the guise of enforcement proceedings — that new claim against an entity that was not previously found liable.

Having continued to assess its own jurisdiction and *sua sponte* directed briefing on its jurisdiction in light of *Bank Markazi*, the Court should conclude that it does not, in fact, have subject matter jurisdiction over Plaintiffs' alter ego theory as to YPF, either in

connection with Plaintiffs' discovery demands or any threatened alter ego proceeding.

*Bank Markazi*'s ruling also has direct implications for YPF's pending res judicata motion, making clear that any attempt by Plaintiffs to recover from YPF as an alter ego of the Republic would be a new action to establish liability — exactly the kind of claim that YPF has demonstrated res judicata bars. Despite its lack of jurisdiction as to the merits, the Court can and should grant YPF's res judicata motion because it would wholly resolve, on non-merits threshold grounds, Plaintiffs' improper attempts to pursue YPF and would ensure the finality of the Court's judgment, the efficiency of these proceedings, and the repose to which YPF — as a prevailing party — is entitled post-judgment.

YPF and its many stakeholders — including its business partners, public stockholders and bondholders, and over 20,000 employees — are operating under the constant threat, and resulting negative business consequences, of Plaintiffs' attempt to shift liability for their multi-billion-dollar judgment against the Republic onto YPF, when that attempt is both completely barred by the final judgment and outside the Court's jurisdiction to hear. As *Bank Markazi* makes crystal clear, Plaintiffs have no way forward in their efforts to recover the judgment against the Republic from YPF. All such motions should be denied and any further attempts enjoined.

## RELEVANT BACKGROUND

On March 31, 2023, after eight years of litigation, the Court granted summary judgment for YPF and dismissed it from the case, granted judgment as to Plaintiffs' claims against the Republic, denied the Republic's motion, and set limited issues for trial

between Plaintiffs and the Republic.  Dkt. 437.[1]  On September 15, 2023, after trial, the Court entered its final judgment for YPF, dismissing all claims against YPF, while awarding Plaintiffs damages and pre-judgment interest in connection with their claims against the Republic.  Dkt. 498.  Notices of appeal were timely filed, Dkts. 504, 509, 511, and all appellate issues were fully briefed as of September 6, 2024.  A date for oral argument has not yet been set.

On January 11, 2024, the Court authorized Plaintiffs to initiate post-judgment enforcement proceedings against the Republic.  Dkt. 538.  On November 15, 2024, the Court issued an Order with respect to the *Bank Markazi* decision that recognized the Court now has before it multiple motions related to Plaintiffs' efforts to obtain post-judgment relief.  Those motions are as follows:

a.  <u>Turnover motion</u>.

On April 22, 2024, Plaintiffs publicly moved for an injunction and turnover of the Republic's 51% shareholding in YPF's Class D shares.  Dkt. 555.  The turnover motion was fully briefed on November 14, 2024, following a submission of a statement of interest by the United States, Dkt. 679, and response by Plaintiffs, Dkt. 684.[2]

---

[1]    "Dkt." refers to entries in docket No. 15-cv-2739.

[2]    YPF is not a party to the pending turnover motion.  As the issuer of the disputed shares, it is not a subject of that motion and has not sought to intervene, as yet. Accordingly, it is not addressing the implications of *Bank Markazi* on the turnover motion.  YPF reserves its right to be heard on the turnover issues, if necessary.

b. <u>Discovery motions</u>.

Plaintiffs have sought, by subpoena and motion, extensive discovery from YPF and from more than 20 other non-parties on the theory that they might possess information regarding entities that Plaintiffs may attempt to pursue for the judgment on alternate theories, including that they are alter egos of the Republic under *Bancec*.

Two discovery motions related to YPF are now pending: On August 14, 2024, Plaintiffs moved to compel YPF to conduct additional alter ego discovery over its objection, specifically demanding a new search of wide-ranging electronic communications other than company emails, including Teams, WhatsApp, Slack, and any other chat platform, which YPF opposed.  Dkts. 626, 631, 636.  On September 18, 2024, Plaintiffs likewise moved to compel additional electronic discovery from the Republic, including seeking discovery from additional custodians on the basis that they purportedly might have evidence relevant to Plaintiffs' alleged alter ego theory regarding YPF, which the Republic opposed.  Dkts. 657–60, 670–73, 675–78.

c. <u>YPF's res judicata motion</u>.

On August 12, 2024, to ensure the finality of this Court's judgment in its favor and to protect its rights, YPF moved by order to show cause to intervene and to enjoin Plaintiffs' efforts to hold YPF liable for Plaintiffs' judgment against the Republic under an alter ego theory that is barred by the doctrine of res judicata.  Dkts. 609–19, 645, 650.

While these motions were pending, on November 13, 2024, the Court of Appeals for the Second Circuit confirmed in *Bank Markazi* that, among other things, courts lack ancillary jurisdiction over new alter ego claims asserted in an effort to enforce an existing

judgment against a third party; and that new claims against an entity not previously held liable for the judgment — including claims of alter ego under *Bancec* — require an independent basis for subject matter jurisdiction in order to proceed. By Order dated November 15, 2024, the Court promptly requested briefing to address "the applicability and impact, if any, of [*Bank Markazi*] on the resolution of the issues remaining in this case," and in particular on the Court's "subject-matter jurisdiction over post-judgment proceedings against a foreign sovereign or its instrumentality." Dkt. 685.

## ARGUMENT

*Bank Markazi* confirms that Plaintiffs' attempt to recover from YPF as an alleged alter ego of the Republic liable for the judgment against it is a new theory of liability that requires an independent basis for subject matter jurisdiction — which Plaintiffs do not have.

In Section I, YPF demonstrates that under *Bank Markazi*, this Court does not have jurisdiction to adjudicate Plaintiffs' putative post-judgment alter ego claim as to YPF, including on the merits or in their discovery motions. Plaintiffs' motions should be denied. Section II addresses the implications for YPF's pending res judicata motion. On that issue, the Court's lack of jurisdiction over the merits of the claim does not prevent it from granting YPF's pending motion, which can and should be decided as a non-merits threshold matter and is fully dispositive of any further attempt by Plaintiffs to pursue YPF to recover their judgment against the Republic. Section III explains why barring Plaintiffs' further pursuit of YPF in light of *Bank Markazi* is both legally required and fair.

I.    ***Bank Markazi* Confirms that the Court Does Not Have Jurisdiction Over Plaintiffs' Continued Pursuit of YPF as the Republic's Alleged Alter Ego.**

In *Bank Markazi*, the Court of Appeals considered and definitively rejected the same kind of post-judgment expansion of liability and jurisdiction that the *Petersen/Eton Park* Plaintiffs are attempting against YPF.  Of the many issues the Court of Appeals (and this Court) confronted in that case, just a handful are dispositive of the motions involving YPF.

A.    **The Court of Appeals Held that Post-Judgment Alter Ego Claims Under *Bancec* Seek to Impose Liability for the Judgment and Require an Independent Basis for Subject Matter Jurisdiction.**

The *Bank Markazi* plaintiffs brought suit in this Court after they had obtained a judgment against a sovereign — Iran — in an attempt to enforce that judgment against a sovereign instrumentality — Bank Markazi, the Iranian central bank — on the theory that the bank was Iran's alter ego.  *See Bank Markazi*, 121 F.4th at 990–91, 999.  Bank Markazi was not a party to the underlying litigation in which the judgment was entered, *see id.*; and like YPF, Bank Markazi had not been adjudged liable to the plaintiffs.  *See id*. at 999; *see also* Dkt. 437 at 19–26.  Among other claims, the *Bank Markazi* plaintiffs sued the bank to force turnover of its assets on the same theory Plaintiffs press here — that the bank was an alter ego of the sovereign under *Bancec* and liable to satisfy the judgment against the sovereign.  *See Bank Markazi*, 121 F.4th at 999.

Because that action was newly filed in this Court after judgment had been obtained elsewhere, the *Bank Markazi* plaintiffs alleged, and the Court considered, whether it had subject matter jurisdiction to hear the claim.  *See id.* at 991, 993.  The parties agreed that Bank Markazi was a sovereign instrumentality immune from jurisdiction and that no

exception under the Foreign Sovereign Immunities Act stripped it of that immunity in the turnover action, *see id.* at 994; the plaintiffs argued that jurisdiction instead arose under the Iran-specific statute, 22 U.S.C. § 8772 ("Section 8772"), and as ancillary to the subject matter jurisdiction in the underlying proceeding to enforce that judgment. *See id.* The history of that litigation is familiar to this Court, which eventually found jurisdiction under Section 8772 and granted summary judgment requiring turnover of the bank's assets to satisfy the judgment against Iran. *See id.* at 993.

On appeal, Bank Markazi argued, among other things, that the Court lacked subject matter jurisdiction over the claims against it. On November 13, the Court of Appeals agreed and reversed. Rejecting the *Bank Markazi* plaintiffs' arguments, the Court of Appeals held that the Court lacked subject matter jurisdiction over the alter ego claims. *Id.* at 1001. It found no jurisdiction under Section 8772, *see id.* at 998, and then determined that ancillary jurisdiction to enforce an existing judgment "does not extend . . . to an action to establish liability on the part of a third party," including claims of veil-piercing and alter ego under *Bancec*, *id.* at 999. In so holding, the Court of Appeals followed *Peacock v. Thomas*, 516 U.S. 349 (1996), concluding that an action to establish liability on the part of an entity not otherwise liable, including through veil-piercing or alter ego theories, requires an independent basis for subject matter jurisdiction over that entity. *Bank Markazi*, 121 F.4th at 999–1000; *see also Peacock*, 516 U.S. at 355–57; *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 106–07 (2d Cir. 2001) (an independent basis for subject matter jurisdiction is required because the court is faced with "a substantive theory seeking to establish liability on the part of a new party not otherwise liable"). That

limitation applies in FSIA proceedings just as it does among private parties, and courts may not determine new claims for alter ego liability and turnover under *Bancec* when enforcing judgments under the FSIA without first having found an independent basis for subject matter jurisdiction over such claims. *See Bank Markazi*, 121 F.4th at 998–1001.

Of particular relevance to these post-judgment proceedings, both *Bank Markazi* and *Peacock* recognized that when and how claims are pled matters to the jurisdictional analysis. A new claim post-judgment requires a new basis for subject matter jurisdiction; it cannot be swept in with the subject matter jurisdiction underlying the original claim. As the Supreme Court explained in *Peacock,* when "factually interdependent with and, hence, ancillary" claims are brought *together* with the original claims over which the court has subject matter jurisdiction, they may be resolved together "as an entire, logically entwined lawsuit." *Peacock*, 516 U.S. at 355 (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U. S. 365, 377 (1978)). "But once judgment was entered in the original" suit, ancillary jurisdiction does not extend to allow subsequent adjudication of the related claim under the guise of enforcement proceedings. *Id.* The Supreme Court was clear: "We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357.

In its prior decisions applying *Peacock*, the Second Circuit recognized that it draws a distinction between an action to collect a judgment (*e.g.*, through fraudulent conveyance claims recovering from a transferee without implicating the liability of the transferee), and an action to establish liability on the part of a third party, including

through veil-piercing or alter ego claims.  *See Epperson*, 242 F.3d at 104–06; *see also Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 644–48 (S.D.N.Y. 2007) ("The Second Circuit [in *Epperson*], interpreting *Peacock*, has emphasized that a distinction for jurisdictional purposes exists between an action to collect a judgment and an action to establish liability on the part of a third party.") (cleaned up).  The former might be within the court's enforcement jurisdiction, as in *Epperson*, *see Epperson*, 242 F.3d at 107, but the latter is certainly not, as in *Peacock*, *see Peacock*, 516 U.S. at 355–56, and, now, *Bank Markazi*, *see Bank Markazi*, 121 F.4th at 999–1000.

In *Bank Markazi*, the Court of Appeals applied these precedents to conclude that claims that an instrumentality is an alter ego under *Bancec* liable to satisfy the judgment of its sovereign or to turnover assets are new claims against "a person not already liable," requiring an independent basis for subject matter jurisdiction.  *Bank Markazi*, 121 F.4th at 999–1000 (quoting *Peacock*, 516 U.S. at 357).  Rejecting the *Bank Markazi* plaintiffs' attempt to distinguish alter ego claims under *Bancec* from other forms of veil-piercing or alter ego that require independent subject matter jurisdiction to proceed, the Court of Appeals recognized that the plaintiffs' theory was just another means of extending liability for an underlying judgment to a new party.  *Id.* at 999–1001 ("[The] principles established in *Bancec* do nothing to alter the limits of ancillary jurisdiction as established in *Peacock*.").  That the entities in question are a sovereign and its instrumentality does not shift the nature of the claim or the jurisdictional requirement.  *Id*. at 1000–01.  Nor does the Third Circuit's conclusion in *Crystallex Int'l Corp. v. Bolivarian Republic of*

*Venezuela*, 932 F.3d 126 (3d Cir. 2019), with which the Second Circuit explicitly disagreed.  *Bank Markazi*, 121 F.4th at 1000 n.6.

The *Bank Markazi* decision reinforces the choice that plaintiffs pursuing an alleged alter ego must make: (<u>i</u>) plaintiffs can name the party as a defendant and assert alter ego claims as part of the original action, or (<u>ii</u>) plaintiffs can wait to do so in a separate action, post-judgment, with an independent basis for federal subject matter jurisdiction over the claim.  Dkt. 613 at 14–15.  But plaintiffs who did not pursue a potential alter ego for liability in the original suit cannot tack that liability-expanding claim onto their post-judgment enforcement efforts through ancillary jurisdiction.  Without an independent basis for subject matter jurisdiction that claim cannot proceed.

> **B.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Post-Judgment Pursuit of YPF as the Republic's Alleged Alter Ego.**

The implications of *Bank Markazi* for YPF are straightforward: Plaintiffs' efforts to tack an alter ego claim against YPF onto their enforcement efforts against the Republic — in implicit reliance on the Court's ancillary jurisdiction and without having established an independent basis for subject matter jurisdiction — are utterly improper.  Plaintiffs' approach fails at each step of the analysis.

***First***, and at the simplest level, the Court of Appeals' decision in *Bank Markazi* confirms what YPF argued in its res judicata briefing: "***veil-piercing and alter ego claims are new theories of liability that require a separate jurisdictional hook.***"  Dkt. 613 at 17; Dkt. 618 at 2–3.  When Plaintiffs assert that a sovereign instrumentality is an alter ego under *Bancec* for enforcement, they are attempting ***to impose liability*** on a new party.

That requires an independent basis for subject matter jurisdiction, and cannot be brought for the first time in enforcement proceedings in reliance on the Court's ancillary jurisdiction from the underlying merits proceeding.  *See Bank Markazi*, 121 F.4th at 1000 n.5 ("[A] post-judgment enforcement proceeding against an instrumentality of the foreign sovereign judgment debtor cannot be supported by ancillary jurisdiction from the proceeding in which the judgment was issued, but must instead have an 'independent basis for jurisdiction.'") (quoting *Peacock*, 516 U.S. at 355); *see also id.* at 1001.

**Second***, as YPF has argued, by characterizing their pursuit of YPF as merely a component of their enforcement efforts against the Republic (rather than an independent attempt to impose liability on a new party, as the Second Circuit has confirmed it is), Plaintiffs have avoided their burden to plead a separate jurisdictional basis as to YPF, while enjoying the benefits of discovery and litigation in this Court.

Unlike plaintiffs in *Bank Markazi*, who filed a new suit post-judgment, Plaintiffs have never even ***attempted*** to establish a basis for subject matter jurisdiction, much less done so in a procedurally appropriate way.  Dkt. 613 at 17–18 (Plaintiffs' approach is "creating an improper and unfair burden on YPF and depriving it of the requisite opportunity to move to dismiss for lack of jurisdiction."); *see also* Dkt. 618 at 2–3.  If YPF had been named in a separate action — as Bank Markazi was — it, too, would have had an opportunity to move to assert its jurisdictional defenses.[3]  Instead, Plaintiffs

---

[3]    YPF continues to preserve and intends to assert at the earliest opportunity, if necessary, any and all jurisdictional and other defenses in accordance with the Federal Rules of Civil Procedure.  *See* Dkt. 618.

proclaimed their intent to recover from YPF as an alter ego without pleading their bases for that claim or establishing this Court's ability to hear that claim, depriving YPF of the benefit of the final judgment, the opportunity to move to dismiss, and the sovereign immunity to which it is presumptively entitled. *Bank Markazi* confirms that Plaintiffs cannot continue on that path.

**Third**, it is inescapably clear under *Bank Markazi* that the Court lacks subject matter jurisdiction over Plaintiffs' continued pursuit of YPF in these post-judgment enforcement proceedings.

In their pursuit of YPF, Plaintiffs are seeking to do exactly what *Bank Markazi* rejected and to impose liability on "a person not already liable" for the judgment, as an alter ego under *Bancec*, in order to enforce a judgment against a sovereign judgment-debtor. *Compare Bank Markazi*, 121 F.4th at 999–1000, *with* Dkt. 619 at 2 (making clear Plaintiffs seek to hold "YPF [] legally responsible for satisfying the judgment against the Republic because it is currently the Republic's alter ego"). The fact that Plaintiffs are pursuing YPF indirectly, through discovery and in terrorem litigation, rather than a formal complaint or motion on the merits against YPF does not alter that jurisdictional analysis.

That YPF was once a defendant in the underlying litigation, and found to be within the Court's subject matter jurisdiction as to those claims, *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 2016 WL 4735367, at *4–7 (S.D.N.Y. Sept. 9, 2016), *aff'd*, 895 F.3d 194 (2d Cir. 2018), also does not alter the analysis. YPF was dismissed and found not liable, putting it in the same jurisdictional position as Bank Markazi as to post-judgment enforcement proceedings. Dkts. 437, 498. Moreover, upon filing of the notice

of appeal, this Court was *divested* of its jurisdiction over the claims against YPF.  *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal."); *Chevron Corp. v. Donziger*, 990 F.3d 191, 210 (2d Cir. 2021) (same).  This Court has no ongoing jurisdiction over the parties after the notice of appeal except to enforce its judgment, *see Cessna Fin. Corp. v. Al Ghaith Holding Co. PJSC*, 2021 WL 603012, at *2 (S.D.N.Y. Feb. 16, 2021) ("[A] district court retains jurisdiction to enforce its orders and judgments despite an appeal."), and *Bank Markazi* confirms that ancillary jurisdiction over enforcement of a judgment does not extend to alter ego claims against entities not already found liable, *see Bank Markazi*, 121 F.4th at 999–1000.

**Fourth,** the Court's lack of jurisdiction extends not only to the merits but also to Plaintiffs' pending discovery motions, subpoenas, and discovery requests to and about YPF.

Although *Bank Markazi* involved motions to dismiss and for turnover, at its core, it concludes that the Court's ancillary jurisdiction over post-judgment enforcement proceedings does not extend to jurisdiction over alter ego and veil-piercing theories against non-liable third parties — which are the very bases that Plaintiffs have relied on to seek alter ego discovery from and about YPF.  Plaintiffs have demanded discovery in connection with these post-judgment proceedings from YPF, the Republic, and over 20 third parties "related to whether YPF is currently an alter ego of the Republic," Dkt. 563 at 1, insisting that that question is properly before the Court and within its ability to determine.

Alter ego discovery is not available here.  *Bank Markazi* holds the Court's ancillary jurisdiction does not extend to Plaintiffs' attempt to shift liability onto YPF under an alter ego theory, so Plaintiffs' discovery demands in support of that theory are also beyond the Court's ancillary jurisdiction.  Nor does the FSIA provide an alternate basis for jurisdiction over Plaintiffs' discovery efforts, including because post-judgment non-party discovery from a foreign state or instrumentality via subpoena does not constitute a "civil action against a foreign state" — a prerequisite for any FSIA exception to even potentially apply.  28 U.S.C. § 1330(a) (identifying exceptions applicable to a "civil action"); *see also F.B.I. v. Superior Ct. of Cal.*, 507 F.Supp.2d 1082, 1088 (N.D. Cal. 2007) (service of a non-party subpoena does not commence an "action").

Moreover, because *Bank Markazi* holds that an alter ego claim must be pled in a new action, Plaintiffs' alter ego discovery demands about YPF — whether from YPF, other non-parties, or the Republic — amount to prohibited, pre-complaint discovery in service of an unpled claim, and run afoul of the longstanding rule that "there is no right to pre-complaint discovery under the Federal Rules of Civil Procedure."  *In re Backer*, 2010 WL 2816789, at *11 n.6 (S.D.N.Y. July 16, 2010); *see also In re Petition of Austin*, 2013 WL 5255125, at *1 (S.D.N.Y. July 16, 2013) ("In federal court, pre-complaint discovery is not available to determine whether a claim for relief exists.").

Accordingly, the Court should deny all motions seeking alter ego discovery from and about YPF, and should prohibit Plaintiffs from pursuing such discovery from any source.

*Finally*, the Court does not need a pleading from Plaintiffs and a jurisdictional motion from YPF to conclude that it lacks subject matter jurisdiction to resolve Plaintiffs' putative alter ego claim against YPF. As YPF has argued, the Court has the ability, and in fact, an "*ongoing duty*," "to determine its own jurisdiction at every stage of the legal proceedings." Dkt. 618 at 2; *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 699 (D.C. Cir. 2022). Because *Bank Markazi* leaves no room for remaining doubt that this Court lacks jurisdiction to decide any alter ego issues as to YPF, the Court can and should determine that it lacks jurisdiction over Plaintiffs' requested relief as to YPF in the pending motions, and as to any further attempts to pursue YPF as the Republic's alter ego.

## II.    Following *Bank Markazi*, the Court Can and Should Grant YPF's Res Judicata Motion.

*Bank Markazi*, and the Court's lack of jurisdiction to address Plaintiffs' threatened alter ego claim against YPF, do not affect the Court's ability to grant YPF's res judicata motion. If anything, *Bank Markazi* underscores the importance of resolving that motion promptly, in order to ensure the finality of the Court's judgment as to YPF, efficiency, and repose.

As YPF has demonstrated, Plaintiffs cannot relitigate against the same defendant, after final judgment, claims that they could have raised in the underlying litigation, including Plaintiffs' alter ego theory of liability for the judgment against the Republic. Dkts. 613, 650 (motion to preclude). As YPF has also demonstrated, and the Second Circuit has held, whether relitigation is precluded by the doctrine of res judicata is a "non-merits threshold ground" that can be resolved even before jurisdiction is determined.

*Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 370 (2d Cir. 2023) ("Despite the ordinary rule that courts must address questions pertaining to constitutional jurisdiction first, the Supreme Court has supplied courts with 'leeway' to dismiss actions based on non-jurisdictional, non-merits grounds, particularly where the constitutional-jurisdiction question is 'difficult to determine' and dismissing on the threshold issue is 'the less burdensome course.'") (cleaned up); Dkt. 613 at 7–8.

Deciding YPF's pending motion is the less burdensome course. YPF's res judicata motion is fully briefed, wholly dispositive of any further alter ego litigation against it (as well as all discovery from and about YPF to that effect), and an independent and sufficient basis to enjoin and dismiss any further attempts to recover from YPF for Plaintiffs' judgment against the Republic. It avoids further uncertainty over these proceedings (and over YPF), as well as unnecessary further pleading and motion practice. It makes clear that Plaintiffs cannot proceed against YPF, even if they were to attempt to plead an independent basis for subject matter jurisdiction over the alter ego claim, because res judicata bars their claim. It would resolve Plaintiffs' improper enforcement efforts as to YPF on straightforward and dispositive legal grounds, ensuring clarity, efficiency and repose.

For those reasons, and all of the reasons set forth in the res judicata motion, the Court can and should determine now, as a non-merits threshold question, that Plaintiffs' threatened alter ego claim is precluded.

**III.    Denying Plaintiffs' Motions and Barring Plaintiffs' Continued Pursuit of YPF Is Not Just Legally Required, But Fair.**

While the limits of federal subject matter jurisdiction and the doctrine of res judicata are separate and distinct legal doctrines, their principled approach to interrelated claims is instructive — and at the heart of YPF's objection to Plaintiffs' attempt to resurrect their failed claims against YPF as an alter ego claim under *Bancec*.  Both the principles of res judicata and the limits of ancillary jurisdiction recognize the fundamental precept that by foregoing certain claims in litigation on the same issues, plaintiffs do not have the same opportunity to pursue them post-judgment.

Recognizing and enforcing that limit to bring an end to Plaintiffs' nearly decade-long pursuit of YPF is both legally required and fair.  Plaintiffs are well-funded, sophisticated parties, ably represented by sophisticated counsel.  They tried and failed to establish YPF's liability in the underlying litigation on one theory and set of claims.  If they had other theories or claims that this Court could have heard, Plaintiffs could and should have asserted them in the underlying litigation and asked the Court to address those related claims and theories of recovery together in the underlying litigation.

As a matter of law, under both doctrines, plaintiffs who fail to assert and preserve claims in that way simply do not have the same opportunity to try again later.  Plaintiffs cannot assert a new theory of recovery for the same judgment against a defendant who was dismissed from the case, and there is no independent basis to assert jurisdiction over any alter ego theory they offer as a "new" claim.  This Court is a court of limited jurisdiction, and the parties are bound by its prior judgment.  Those limits prevent

Plaintiffs from continuing down this path: Under res judicata, they cannot ignore the prior judgment to try again, and under *Bank Markazi*, they cannot convert the Court's prior judgment into a jurisdictional hook to pursue a new alter ego claim against a non-liable entity.  Plaintiffs had ample opportunity during nearly a decade of litigation to assert any theories of recovery against YPF in the underlying merits proceeding.  They took their shot against YPF and they lost.  YPF is now entitled to the benefit and repose of the Court's final judgment, subject only to appeal.

## CONCLUSION

For all of the reasons above, and in YPF's prior submissions, Dkts. 609–18, 631, 650, the Court should permanently enjoin Plaintiffs from pursuing recovery from YPF in connection with their judgment against the Republic because (1) the Court does not have subject matter jurisdiction over YPF; and (2) such recovery is barred by res judicata.  The Court should also deny Plaintiffs' motions to compel alter ego discovery from and about YPF and permanently enjoin Plaintiffs from pursuing alter ego discovery about YPF from YPF, other non-parties, and the Republic in connection with Plaintiffs' attempts to collect their judgment against the Republic.

Dated: December 20, 2024
      New York, New York

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

*/s/ Mark P. Goodman*
Mark P. Goodman
Shannon Rose Selden
James J. Pastore
Wendy B. Reilly
J. Robert Abraham

66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mpgoodman@debevoise.com
srselden@debevoise.com
jjpastore@debevoise.com
wbreilly@debevoise.com
jrabraham@debevoise.com

*Counsel to YPF S.A.*