**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PETERSEN ENERGÍA INVERSORA,   :
S.A.U. and PETERSEN ENERGÍA, S.A.U., :
                             :
          Plaintiffs,        :
                             :   Case No.:  1:15-CV-02739 (LAP)
          v.          :
                             :
ARGENTINE REPUBLIC and YPF S.A.,   :
                             :
          Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ETON PARK CAPITAL MANAGEMENT, :
L.P., ETON PARK MASTER FUND, LTD.,:
and ETON PARK FUND, L.P.,      :
                             :
          Plaintiffs,        :
                             :   Case No.:  1:16-CV-08569 (LAP)
          v.          :
                             :
ARGENTINE REPUBLIC and YPF S.A.,   :
                             :
          Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ARGENTINA'S SUBMISSION WITH RESPECT
## TO THE COURT'S NOVEMBER 15, 2024 ORDER

Robert J. Giuffra Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:     (212) 558-4000

December 20, 2024

*Counsel for the Argentine Republic*

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ...................................................................................1

**THE *BANK MARKAZI* DECISION** ..........................................................................3

**DISCUSSION** .................................................................................................................6

**I.     THE *BANK MARKAZI* DECISION DOES NOT IMPACT THE RESOLUTION OF PLAINTIFFS' PENDING TURNOVER MOTION, WHICH MUST BE DENIED.** ................................................................. 6

     A.     Principles of International Comity, Customary International Law, and Federal Common Law Continue To Bar Plaintiffs' Turnover Motion. ...................6

     B.     *Bank Markazi* Is Irrelevant to the Failure of Plaintiffs' Turnover Motion Under the FSIA. ........................................................................................10

     C.     *Bank Markazi*'s Analysis of Turnover Orders Directed at Garnishees Does Not Apply to the Turnover by a Sovereign of Sovereign Property in the Sovereign's Territory. ...............................................................................12

**II.    THE *BANK MARKAZI* DECISION DEMONSTRATES WHY THE COURT MUST DENY FURTHER ALTER EGO DISCOVERY FROM THE REPUBLIC.** ................................................................................... 14

**CONCLUSION** ............................................................................................................19

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Argentine Republic* v. *Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989)...........................................................................................9

*Attestor Master Value Fund LP* v. *Republic of Argentina*,
   113 F.4th 220 (2d Cir. 2024) .........................................................................11

*Aurelius Capital Master, Ltd.* v. *Republic of Argentina*,
   589 F. App'x 16 (2d Cir. 2014) .....................................................................18

*Bartfield* v. *Murphy*,
   578 F. Supp. 2d 638 (S.D.N.Y. 2008)............................................................15

*EM Ltd.* v. *Banco Central de la República Argentina*,
   800 F.3d 78 (2d Cir. 2015).............................................................................18

*EM Ltd.* v. *Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012)...........................................................................17

*First National City Bank* v. *Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983).......................................................................................16

*Gesualdi* v. *D. Gangi Contracting Corp.*,
   2019 WL 3821221 (E.D.N.Y. Aug. 7, 2019)..................................................17

*Gujarat State Petroleum Corp.* v. *Republic of Yemen*,
   2022 WL 1567464 (S.D.N.Y. May 18, 2022) ...........................................14, 17

*Imagineering, Inc.* v. *Lukingbeal*,
   1997 WL 363591 (S.D.N.Y. June 30, 1997) ..................................................15

*Ings* v. *Ferguson*,
   282 F.2d 149 (2d Cir. 1960)..............................................................................7

*NML Cap., Ltd.* v. *Republic of Argentina*,
   2011 WL 1533072 (S.D.N.Y. Apr. 22, 2011)................................................18

*NML Cap., Ltd.* v. *Republic of Argentina*,
   2011 WL 524433 (S.D.N.Y. Feb. 15, 2011)..................................................18

*NML Cap., Ltd.* v. *Republic of Argentina*,
   2015 WL 7731779 (N.D. Cal. Dec. 1, 2015)..................................................18

*Nykcool A.B.* v. *Pacific Fruit Inc.*,
  2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012)..........................................................................15

*Parker Drilling Mgmt. Servs., Ltd.* v. *Newton*,
  587 U.S. 601 (2019)...............................................................................................................9

*Permanent Mission of India to the United Nations* v. *City of N.Y.*,
  551 U.S. 193 (2007)...............................................................................................................8

*Peterson* v. *Bank Markazi*,
  121 F.4th 983 (2d Cir. 2024) ........................................................................... *passim*

*Peterson* v. *Islamic Republic of Iran*,
  2015 WL 731221 (S.D.N.Y Feb. 20, 2015).............................................................................3

*Peterson* v. *Islamic Republic of Iran*,
  2023 WL 2601265 (S.D.N.Y. Mar. 22, 2023) .........................................................................5

*Peterson* v. *Islamic Republic of Iran*,
  876 F.3d 63 (2d Cir. 2017)................................................................................................3, 4

*Peterson* v. *Islamic Republic of Iran*,
  963 F.3d 192 (2d. Cir. 2020)................................................................................................5

*Republic of Argentina* v. *NML Capital*,
  573 U.S. 134 (2014)................................................................................................9, 17, 18

*Samantar* v. *Yousuf*,
  560 U.S. 305 (2010)...............................................................................................................8

*Seijas* v. *Republic of Argentina*,
  2009 WL 10700009 (S.D.N.Y. Aug. 19, 2009).......................................................................18

*Seijas* v. *Republic of Argentina*,
  502 F. App'x 19 (2d Cir. 2012) ...........................................................................................18

*Seneca Nation of Indians* v. *New York*,
  383 F.3d 45 (2d Cir. 2004)...................................................................................................15

*Turkiye Halk Bankasi A.S.* v. *United States*,
  598 U.S. 264 (2023)...............................................................................................................8

*United States* v. *Afriyie*,
  27 F.4th 161 (2d Cir. 2022) ................................................................................................11

*United States* v. *Donziger*,
  2021 WL 3141893 (S.D.N.Y. July 26, 2021) (Preska, J.) ......................................................10

*In re Vitamin C. Antitr. Litig.*,
  8 F.4th 136 (2d Cir. 2021) ..........................................................................................7

*Willis Mgmt. (Vermont), Ltd.* v. *United States*,
  652 F.3d 236 (2d Cir. 2011) .......................................................................................10

**Statutes**

22 U.S.C. § 8772 .............................................................................................................2, 5, 6

28 U.S.C. § 1605 ................................................................................................................16

28 U.S.C. § 1610 ......................................................................................................... *passim*

N.Y. C.P.L.R. § 5225 ...........................................................................................2, 11, 12, 13

**Rules**

Fed. R. Civ. P. 19 ...............................................................................................................15

Fed. R. Civ. P. 26 .........................................................................................................17, 18

## PRELIMINARY STATEMENT

In response to the Court's November 15, 2024 Order,[1] the Republic addresses the impact of *Peterson* v. *Bank Markazi*, 121 F.4th 983 (2d Cir. 2024), on two pending issues: (1) Plaintiffs' motion for what would be an extraordinary—indeed, unprecedented—order directing the Republic to turn over its 51% interest in YPF's Class D shares held in Argentina ("YPF Shares") (ECF No. 555); and (2) Plaintiffs' remaining requests for extensive alter ego discovery from the Republic on top of the substantial discovery that the Court has already allowed. (ECF Nos. 657–658; *see* ECF Nos. 599; 670).

In *Bank Markazi*, the Second Circuit reviewed a summary judgment order directing Iran's central bank (Bank Markazi) and Luxembourg-based Clearstream Banking to turn over the contents of a blocked account in Luxembourg to judgment creditors seeking to enforce a terrorism-related judgment against Iran pursuant to a 2019 amendment to 22 U.S.C. § 8772 directed solely to such Iranian judgments. 121 F.4th at 990, 992. The Second Circuit vacated the turnover order against Bank Markazi for lack of subject matter jurisdiction and vacated and remanded the turnover order against Clearstream. *Id.* at 1011.

*Bank Markazi* does not impact this Court's resolution of Plaintiffs' turnover motion, which the Court should deny for the reasons stated in the Republic's briefing (Turnover Opp. (ECF No. 577); Turnover Opp. Sur-Reply (ECF No. 597)), and in the United States' Statement of Interest (ECF No. 679). In *Bank Markazi*, the turnover order relied on the amendment to 22 U.S.C. § 8772, which Congress enacted in 2019 for the specific purpose of making certain assets available to satisfy terrorism-related judgments solely against Iran. That Iran-specific

---

[1]     *Petersen* ECF No. 685; *Eton Park* ECF No. 607. All subsequent references to "ECF No." are to the docket filings in *Petersen Energía, et al.* v. *Argentine Republic*, 15-cv-02739-LAP.

amendment provides those Iranian assets are subject to "an order directing that the asset be brought to the State in which the court is located," "notwithstanding any other provision of law, including any provision of law relating to sovereign immunity" and "without regard to concerns relating to international comity."  121 F.4th at 992–93 (quoting 22 U.S.C. §§ 8772(a)(1); 8772(b)).  Here, by contrast, the 2019 amendment to Section 8772 does not apply and longstanding federal common law and customary international law bar the extraordinary relief that Plaintiffs seek in this dispute over the rights of shareholders in an Argentine company.  Moreover, nothing in *Bank Markazi* impacts the Foreign Sovereign Immunities Act ("FSIA") Section 1610(a) analysis that would apply to the Republic's YPF Shares, even if those shares could be compelled into the United States.  Because no Section 1610(a) exception to execution immunity applies here, the Republic's YPF Shares are immune from execution under the FSIA.  And *Bank Markazi*'s holding that a N.Y. C.P.L.R. § 5225(b) action against a third-party garnishee could proceed in that case cannot be extended to permit an unprecedented N.Y. C.P.L.R. § 5225(a) order directing a sovereign to turn over sovereign assets held in its own territory.

At the same time, *Bank Markazi* does confirm that this Court should deny the additional broad-ranging alter ego discovery that Plaintiffs seek from the Republic.  Under *Bank Markazi*, this Court's ancillary jurisdiction from a merits proceeding does not extend to actions seeking to establish "alter ego" liability on the part of a foreign sovereign's agencies or instrumentalities. 121 F.4th at 999.  Plaintiffs thus cannot establish jurisdiction over any of the six sovereign instrumentalities as to which they have sought alter ego discovery—YPF, Banco Central de la República Argentina ("BCRA"), Aerolíneas Argentinas S.A. ("Aerolíneas"), Banco de la Nación Argentina ("BNA"), Energía Argentina S.A. ("ENARSA"), or Empresa Argentina de Soluciones Satelitales S.A. ("ARSAT").   In any event, even if Plaintiffs could establish

-2-

jurisdiction, they would be limited to executing on assets of those instrumentalities that "[are] or [were] used for the commercial activity upon which the claim is based," 28 U.S.C. § 1610(a)(2), of which there are none.  Plaintiffs' "alter ego" discovery requests therefore have no relevance to their enforcement efforts, and the Court should deny their requests for alter ego discovery regarding Aerolíneas, BNA, ENARSA, and ARSAT (ECF No. 599; *see also* ECF Nos. 623; 629; 657; 671; 675) and for further alter ego discovery about YPF or BCRA.

## THE *BANK MARKAZI* DECISION

The proceedings underlying the *Bank Markazi* decision started over a decade ago. In December 2013, judgment-creditors of the Islamic Republic of Iran and the Iranian Ministry of Information and Security brought claims seeking a turnover order against Iranian assets beneficially owned by Bank Markazi and held through Clearstream.  *See Peterson* v. *Islamic Republic of Iran*, 2015 WL 731221 at *1 (S.D.N.Y Feb. 20, 2015) (Forrest, J.).  Specifically, plaintiffs sought the turnover of approximately $1.6 billion of U.S. dollar proceeds beneficially owned by Bank Markazi and in Clearstream's possession in Luxembourg.  *Id.* at *3, 10.  The proceeds were held by Bank Markazi through Clearstream as securities intermediary (and custodian), and Clearstream had originally received the proceeds in New York before they were credited to a "sundry blocked account" in Luxembourg.  *Id.* at *3.

In 2015, the district court dismissed the action.  *Id.* at *11.  As relevant here, the court held that it lacked subject-matter jurisdiction under the FSIA over the claims against Bank Markazi because the assets were in Luxembourg, and "[t]he FSIA does not allow for attachment of property outside of the United States."  *Id.* at *10.  The Second Circuit reversed and held (in a since-vacated decision) that the FSIA's text "does not by its terms provide execution immunity to a foreign sovereign's extraterritorial assets."  *Peterson* v. *Islamic Republic of Iran*, 876 F.3d 63, 90 (2d Cir. 2017).  Thus, the Second Circuit held that New York law "authorize[d] a court sitting

in New York with personal jurisdiction over a non-sovereign third party to recall to New York extraterritorial assets owned by a foreign sovereign." *Id.* at 92. The court then remanded to the district court to determine whether it had personal jurisdiction over Clearstream, and if so, whether any other barrier existed "to recall[ing] . . . the right to payment" accruing in a Luxembourg account to the United States. *Id.* at 94. If the asset held by that non-sovereign third party could be recalled, the Second Circuit further held that "upon being produced in New York, [it would] qualify as an asset 'in the United States of a foreign state'" and be immune from execution under the FSIA unless an exception to that immunity applied. *Id.* (emphasis omitted).

Clearstream and Bank Markazi filed petitions for certiorari with the Supreme Court. In 2019, while those petitions were pending, Congress amended 22 U.S.C. § 8772 to specifically make Bank Markazi's assets subject to turnover and execution, notwithstanding sovereign immunity or principles of international comity. Specifically, as amended, Section 8772 now provides:

[N]otwithstanding any other provision of law, including any provision of law relating to sovereign immunity, and preempting any inconsistent provision of State law, a financial asset that is[:]

(A) held by or for a foreign securities intermediary doing business in the United States;

(B) a blocked asset (whether or not subsequently unblocked), or an asset that would be blocked if the asset were located in the United States, that is property described in subsection (b) [assets that are "the subject of proceedings in the United States District Court for the Southern District of New York in *Peterson et al.* v. *Islamic Republic of Iran et al.*, Case No. 13 Civ. 9195 (LAP)"]; and

(C) equal in value to a financial asset of Iran, including an asset of the central bank or monetary authority of the Government of Iran or any agency or instrumentality of that Government, that such foreign securities intermediary or a related intermediary holds abroad,

-4-

shall be subject to execution or attachment in aid of execution, or to an order directing that the asset be brought to the State in which the court is located and subsequently to execution or attachment in aid of execution in order to satisfy any judgment to the extent of any compensatory damages awarded against Iran for damages for personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage, or hostage-taking, or the provision of material support or resources for such an act, without regard to concerns relating to international comity.

22 U.S.C. § 8772(a)(1).  By its terms, this amendment did not cover assets of other foreign sovereigns located outside of the United States.

After the Supreme Court granted the petitions, vacated the 2017 Second Circuit decision, and remanded for reconsideration in light of the amendment to Section 8772, the Second Circuit remanded to the district court, "reinstat[ing] only [its] judgment that the district court prematurely dismissed the amended complaint for lack of subject-matter jurisdiction." *Peterson* v. *Islamic Republic of Iran*, 963 F.3d 192, 196 (2d. Cir. 2020).

On remand, plaintiffs moved for summary judgment pursuant to 22 U.S.C. § 8772. *Peterson* v. *Islamic Republic of Iran*, 2023 WL 2601265, at *2 (S.D.N.Y. Mar. 22, 2023) (Preska, J.).  This Court granted plaintiffs' motion and entered a turnover order requiring Bank Markazi and Clearstream to turn over the bond proceeds, rejecting arguments that the Court had no subject matter jurisdiction over Bank Markazi or personal jurisdiction over Clearstream.  *Id.* at *22.  On November 13, 2024, the Second Circuit vacated the turnover order and remanded.  As most relevant here, the Second Circuit held that this Court did not have subject matter jurisdiction over the turnover claim against Bank Markazi, either under Section 8772 or the Court's ancillary jurisdiction.  121 F.4th at 1001.  At the same time, the Second Circuit held that this Court had personal jurisdiction over Clearstream because of the "articulable nexus" between the turnover action and Clearstream's "frequen[t] and deliberate" receipt of bond proceeds in New York—the

same bond proceeds credited to the at-issue Luxembourg account.  *Id.* at 1004–05.  The Second Circuit remanded for, among other things, a determination of whether turnover was permitted under Section 8772 in light of state law governing beneficial ownership of the account.  *Id.*

## DISCUSSION

**I.    THE *BANK MARKAZI* DECISION DOES NOT IMPACT THE RESOLUTION OF PLAINTIFFS' PENDING TURNOVER MOTION, WHICH MUST BE DENIED.**

The Second Circuit's holdings in *Bank Markazi* do not alter the multiple independent bases requiring this Court to deny Plaintiffs' turnover motion with respect to the Republic's 51% interest in YPF's Class D shares, including that assets belonging to the Republic and located in Argentina are immune from turnover and execution as a matter of comity and other fundamental legal principles, as well as the FSIA's plain language.

**A.    Principles of International Comity, Customary International Law, and Federal Common Law Continue To Bar Plaintiffs' Turnover Motion.**

The 2019 amendment to Section 8772, the federal statute relevant in *Bank Markazi*, expressly stripped Bank Markazi's Iranian assets of execution immunity "notwithstanding any other provision of law," which necessarily includes principles of comity, international law, and the common law.  22 U.S.C. § 8772(a); *see Bank Markazi*, 121 F.4th at 996 n.3.  By its terms, the 2019 amendment to Section 8772 expressly authorized execution on the Iranian assets held for Bank Markazi through Clearstream in Luxembourg "without regard to concerns relating to international comity."  22 U.S.C. § 8772(a); *see Bank Markazi*, 121 F.4th at 1013 (Lohier, J., concurring) (noting that "concerns relating to international comity" were irrelevant under Section 8772).  As the Republic and the United States have explained, principles of international comity, customary international law, and federal common law continue to require this Court to deny

Plaintiffs' motion seeking the turnover of the Republic's YPF Shares held in Argentina in support of a judgment in this dispute over shareholder rights in Argentina.

        1.      Long-settled principles of international comity bar an order directing the Republic to turn over its YPF Shares, which would require the Republic to violate its own laws, including the YPF Expropriation Law, Argentine Law No. 26,741, and Article 170 of the Permanent Supplementary Budget Law, Argentine Law No. 11,672.  (*See* Turnover Opp. at 7–9 (explaining why comity requires denial of Plaintiffs' motion); *see also* Turnover Opp. Sur-Reply at 1–2 (explaining that the FSIA did not eliminate the need to consider international comity).)  The respect that sovereign nations must afford to each other bars application of New York's turnover statute where Argentine law flatly prohibits such turnover.  *See In re Vitamin C. Antitr. Litig.*, 8 F.4th 136, 143 n.8 (2d Cir. 2021) (the doctrine of prescriptive comity "cautions courts to assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws [and] thereby helps the potentially conflicting laws of different nations work together in harmony") (quoting *F. Hoffmann-La Roche Ltd.* v. *Empagran S.A.*, 542 U.S. 155, 164 (2004)); *see also* (U.S. Stmt. of Interest at 5–6).  Indeed, as the concurrence in *Bank Markazi* noted, "international comity strongly favors allowing a sovereign to litigate in its *own courts*." 121 F.4th at 1013 (Lohier, J., concurring) (emphasis in original).  This rule clearly applies to any enforcement litigation against the Republic directed to its YPF Shares in Argentina.

        The act-of-state doctrine further bars this Court from invalidating Argentina's statutory prohibition on transfer of the YPF Shares without a two-thirds vote of the Argentine Congress.  (*See* Turnover Opp. at 9–10.)  This doctrine reflects the "fundamental principle[]" of international comity that United States courts "dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor." *Ings* v. *Ferguson*,

282 F.2d 149, 152 (2d Cir. 1960).  By any measure, granting Plaintiffs' extraordinary request would violate this "fundamental" rule of law.

       2.     As the United States has advised this Court, the ordering of the turnover of the Republic's YPF Shares in Argentina would also conflict with customary international law, which bars other countries from seeking to enforce judgments of their courts in the territory of another sovereign.  (U.S. Stmt. of Interest at 7; *see also* Turnover Opp. at 30.)  The FSIA codified this longstanding law barring other countries from seeking to enforce in U.S. courts judgments entered in their courts against the property of foreign sovereigns in the United States.  *See* 28 U.S.C. § 1610(a) (providing that certain property of a foreign state in the United States will not be immune from execution only "upon a judgment entered by a court of the United States or of a State"); *see also Permanent Mission of India to the United Nations* v. *City of N.Y.*, 551 U.S. 193, 199 (2007) (the FSIA "codifi[ed] international law at the time of the FSIA's enactment.").  For the same reason, as required by international law, this Court cannot reach into Argentine territory to enforce a U.S.-court judgment against the Republic's YPF Shares in Argentina.

       3.     Here, unlike with respect to the Iranian assets in *Bank Markazi,* common law principles of sovereign immunity from execution apply to foreign sovereign property in the sovereign's own territory.  (Turnover Opp. at 27–30); *see Samantar* v. *Yousuf*, 560 U.S. 305, 324 (2010) ("Even if a suit is not governed by the [FSIA], it may still be barred by foreign sovereign immunity under the common law."); *see also Turkiye Halk Bankasi A.S.* v. *United States*, 598 U.S. 264, 280 (2023) (remanding for consideration of sovereign common-law immunity from criminal prosecution).  In its Statement of Interest, the United States explained that "common law sovereign immunity principles that predate the FSIA continue to preclude execution by judgment creditors against foreign sovereign property outside the United States—including under state law."  (*See*

U.S. Stmt. of Interest at 5.)   Continued common-law absolute immunity from execution for exterritorial sovereign assets follows directly from the "commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law.'"   *Parker Drilling Mgmt. Servs., Ltd.* v. *Newton*, 587 U.S. 601, 611 (2019).   Because Congress addressed only Iranian assets in the 2019 amendment, the longstanding law protecting the assets of other sovereigns outside the United States remains in full effect.

4.      Plaintiffs are wrong in claiming that the Supreme Court's decision in *Republic of Argentina* v. *NML Capital*, 573 U.S. 134 (2014), somehow "foreclose[d]" the application of these immunities to all sovereign assets outside the United States.   (*See* Pls.' Nov. 14, 2024 Ltr. (ECF No. 684) at 3.)   Not true.   *NML* concerned only a "narrow question" of whether a foreign sovereign enjoys immunity (1) from discovery in aid of execution (2) under the FSIA.   *NML* does not even suggest (much less hold) that district courts possess the extraordinary authority to *execute* on a sovereign's assets in its own territory.   573 U.S. at 140; (*see* Turnover Opp. at 29–30).   To the contrary, *NML* recognized that execution against property in other countries is generally *not* authorized.   *Id.* at 144.   Notably, the United States has emphasized that *NML* "did not say . . . that the FSIA forecloses whatever immunity from actual execution those assets now would enjoy independent of the FSIA."   (ECF No. 679-1, *Clearstream* Br. at 15); *see* (ECF No. 679-2, *Levin* Br. at 24 ("[I]t is incorrect to conclude . . . that the Supreme Court has held that the FSIA completely 'supersedes the pre-existing common law of foreign sovereign immunity.'")).   Thus, *NML* did not displace pre-existing immunities under federal common law, international law, or principles of comity, because, as the Supreme Court has held, the FSIA does not apply outside "the territorial jurisdiction of the United States."   *Argentine Republic* v. *Amerada Hess Shipping Corp.*, 488 U.S. 428, 440 (1989) (quotation omitted).

5.      The settled principles of comity, international law, and federal common law did not apply to the Iranian central bank assets in *Bank Markazi* because Section 8772 expressly revoked them.  Here, those principles of law require the Court to deny Plaintiffs' motion for an extraordinary order directing the turnover of the Republic's YPF Shares in Argentina.

6.      To the extent that *Bank Markazi* suggests that a foreign sovereign's assets have "no execution immunity" when they are not in the United States because the FSIA provides execution immunity only to "property in the United States," 121 F.4th 996 & n.3, that footnoted commentary is dicta:  the Second Circuit had no occasion to consider or rule upon the continuing scope of comity-, common law-, or FSIA-based execution immunity because Section 8772 overrides all execution immunity.  *See id.*; *see also United States* v. *Donziger*, 2021 WL 3141893, at *55 n.519 (S.D.N.Y. July 26, 2021) (Preska, J.) ("Dicta, which are statements in judicial opinions that are not necessary to support the judgment reached, are not binding on lower courts."); *Willis Mgmt. (Vermont), Ltd.* v. *United States*, 652 F.3d 236, 243 (2d Cir. 2011) ("[E]ven if the . . . footnote applied to this case, its conclusion . . . was not essential to the Court's holding because it was offered in the alternative and therefore it is dictum that is not binding on us.").  Well established pre-existing immunity doctrines compel denial of Plaintiffs' motion.

**B.      *Bank Markazi* Is Irrelevant to the Failure of Plaintiffs' Turnover Motion Under the FSIA.**

As the Second Circuit explained in *Bank Markazi*, Section 8772 "eliminat[ed] the need" to conduct an execution immunity analysis under 28 U.S.C. § 1610(a) of the FSIA if the at-issue assets were ever brought to the United States.  121 F.4th at 996 n.3.  Because no statute abrogates execution immunity for the Republic's YPF Shares in Argentina, Section 1610(a)(2) would apply even if the YPF Shares could be brought into the United States through a turnover

order under N.Y. C.P.L.R. § 5225(a).[2]  As explained in the Republic's prior briefing, Plaintiffs cannot satisfy any of Section 1610(a)(2)'s requirements with respect to the YPF Shares:

1.    The YPF Shares are not and have never been "in the United States." 28 U.S.C. § 1610(a).  As the U.S. Government advised this Court, "application of [N.Y. C.P.L.R. § 5225] cannot be used as a judicial fiction to preempt the application of Section 1610(a)'s requirement that foreign state property must be located in the United States."  (U.S. Stmt. of Interest at 8–9.) Only four months ago, the Second Circuit made clear that before foreign sovereign property can be attached or executed upon, "[t]he FSIA requires that the attached property be *in the United States*."  *Attestor Master Value Fund LP* v. *Republic of Argentina*, 113 F.4th 220, 233 (2d Cir. 2024) (emphasis added).  There is nothing in *Bank Markazi* suggesting that the panel there was revisiting or reconsidering that precedent.  *See United States* v. *Afriyie*, 27 F.4th 161, 168 (2d Cir. 2022) ("Published panel decisions . . . are binding on future panels unless they are 'reversed *en banc* or by the Supreme Court.'").  Indeed, because Section 8772 overrode any application of the FSIA, the *Bank Markazi* panel had no occasion (or need) to do so.

2.    The YPF Shares in Argentina are not and have never been "used" for any commercial activity in the United States, but are instead only "used" by the Republic to vote at shareholder meetings of YPF in Argentina (Turnover Opp. at 13–20; Turnover Opp. Sur-Reply at 4–6); *see also Attestor Master Value Fund*, 113 F.4th at 232 ("The FSIA requires that the attached property be in the United States *and* that the use of that property in commercial activity occur in

---

[2]    The YPF Shares are not in the Republic's possession or custody, but are held by the *Caja de Valores* ("CdV") in Argentina.  Accordingly, as a threshold matter, they are not subject to an order under N.Y. C.P.L.R. 5225(a), which must be directed to a judgment debtor.  (Turnover Opp. at 24–26.)  Likewise, no order is available under N.Y. C.P.L.R. § 5225(b) against the CdV, which is not a party to the turnover proceedings.  (*Id.*)  And, in all events, the YPF Shares, held in book entry form by the CdV, cannot be brought into the United States.  (*Id.* at 11–12.)

the United States.") (emphasis in original).  This uncontroverted fact dooms Plaintiffs' effort to rely on the FSIA's exceptions to execution immunity, because the FSIA requires that the relevant property be both "in the United States" and "used for a commercial activity" here, as numerous courts have recognized.  (Turnover Opp. Sur-Reply at 4–6 & n.3 (collecting cases).)

3.    Nor can Plaintiffs show that the Republic's YPF Shares were used "for the commercial activity upon which the claim is based," both because they have disclaimed any connection between the expropriated YPF Shares and the events at issue in their complaints, and because the YPF Shares were not "used" to create the tender-offer provision of the YPF Bylaws. (Turnover Opp. at 21–23; Turnover Opp. Sur-Reply at 6–7.)

The *Bank Markazi* decision does not impact this analysis:  even if the Republic's YPF Shares could be transferred from Argentina to the United States, those shares would remain immune from execution pursuant to the FSIA, because here no statute like the 2019 amendment to Section 8772 eliminates the settled law governing sovereign immunity.

**C.    *Bank Markazi*'s Analysis of Turnover Orders Directed at Garnishees Does Not Apply to the Turnover by a Sovereign of Sovereign Property in the Sovereign's Territory.**

To the extent that *Bank Markazi* supports the proposition that N.Y. C.P.L.R. § 5225(b) may allow "courts sitting in New York with personal jurisdiction over a non-sovereign third party" garnishee to require the "garnishee to produce in New York an extraterritorial asset," 121 F.4th at 1006 & n.11, that is irrelevant where, as in this case, Plaintiffs seek turnover from the Republic (as judgment debtor) directly of its assets located *within Argentina*.

*Bank Markazi* found it "uncontroversial" that  N.Y. C.P.L.R. § 5225(b) provided a cause of action against Clearstream, as a third-party garnishee, to turn over bond proceeds funneled through a New York account to a Luxembourg account.  121 F.4th at 1003–04.  That is because Section 5225(b) allows turnover "from a third-party custodian or transferee of assets belonging to

-12-

the judgment debtor." *Id.* at 999; *see also* N.Y. C.P.L.R. § 5225(b) (providing for action "against a person in possession or custody of money or other personal property in which the judgment debtor has an interest"). Here, Plaintiffs have brought their motion for turnover directly against the Republic, not a third-party garnishee (which, in this case, would be CdV as the entity with custody of the YPF Shares, *see* Turnover Opp. at 25), and their motion seeks assets in Argentina. N.Y. C.P.L.R. § 5225(b) simply does not apply. And a turnover order under Section 5225(a) directed to a sovereign debtor purporting to require it to bring assets from within its own territory into the United States would be more than "controversial"; such an order would be unprecedented and contrary to longstanding principles of U.S. and international law.

In *Bank Markazi*, in deciding Clearstream's challenge to personal jurisdiction, the Second Circuit quoted *NML*'s point that execution against assets outside the United States is rare because U.S. courts "generally lack authority in the first place to execute against property in other countries." *Bank Markazi*, 121 F.4th at 1006 (quoting *NML*, 573 U.S. at 144). The Second Circuit did not disagree with that "general" proposition, but noted that it does not "'foreclose th[e] possibility' that a U.S. court may possess the authority to execute against extraterritorial property" in some circumstances, *id.* at 1006 n.11 (citing *Peterson*, 876 F.3d at 92 & n.20). And, in that case, Congress had specifically overridden long-settled immunity principles for terrorism-related judgments against Iran. But that reasoning—in the context of a non-sovereign garnishee and a statute that overrode all execution immunity for Iranian assets—cannot be read to mean that New York's turnover statute somehow preempts federal common law or permits an order against all foreign sovereigns with respect to property in the sovereign's territory.

## II.    THE *BANK MARKAZI* DECISION DEMONSTRATES WHY THE COURT MUST DENY FURTHER ALTER EGO DISCOVERY FROM THE REPUBLIC.

The Second Circuit's holding that "alter ego" allegations do not give rise to subject matter jurisdiction over sovereign instrumentalities confirms that the Court should refuse to allow further alter ego discovery because it has no relevance to any possible enforcement proceedings. This Court has no jurisdiction (1) to make any alter ego determinations as to YPF, BCRA, Aerolíneas, BNA, ENARSA, or ARSAT, or (2) to enforce the judgment against the Republic by imposing liability on any of those entities.  Under *Bank Markazi*, Plaintiffs cannot rely on this Court's ancillary jurisdiction to bring alter ego claims against these entities and hold them liable for the judgment against the Republic over a corporate law dispute involving an Argentine company.  And no other basis for jurisdiction exists under the FSIA.  Because this Court cannot make any alter ego determinations about these entities when they are not before it, discovery about their interactions with the Republic are not "relevant to execution . . . under Rule 26."  *Gujarat State Petroleum Corp.* v. *Republic of Yemen*, 2022 WL 1567464, at *8 (S.D.N.Y. May 18, 2022) (Abrams, J.).  Thus, *Bank Markazi* makes clear that the Court should deny Plaintiffs' effort to obtain any further "alter ego"-related post-judgment discovery about these entities.[3]

1.    In these post-judgment proceedings, without joining the purported "alter ego" entities to the action, Plaintiffs could not seek a declaration that any of these entities is an alter ego of the Republic, or collect on any of their assets.  As a matter of due process, "[a]

---

[3]    On December 11, 2024, this Court granted Plaintiffs' motion for clarification regarding the scope of the discovery stay put into place by the Court's November 15, 2024 Order.  (*See* ECF No. 694.)  In its December 11 Order, the Court stated that *Bank Markazi* "has no impact on Plaintiffs seeking discovery from the Republic or non-sovereign non-parties because [it] did not concern subject-matter jurisdiction with respect to those entities."  (*Id.* at 2–3.)  Even if *Bank Markazi* did not affect the Court's jurisdiction over the Republic, its holding does impact the Court's jurisdiction over Plaintiffs' pursuit of alter ego claims and the relevance and proportionality of the requested discovery, as shown here.

judgment cannot be enforced against an alleged alter ego who has not had an opportunity to litigate whether or not such a relationship did exist." *Imagineering, Inc.* v. *Lukingbeal*, 1997 WL 363591, at *5 n.11 (S.D.N.Y. June 30, 1997) (Carter, J.) (citing *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969)); *see also Nykcool A.B.* v. *Pacific Fruit Inc.*, 2012 WL 1255019, at *5 (S.D.N.Y. Apr. 16, 2012) (Peck, J.) (citations omitted) (due process will only be satisfied "[w]hen the alleged 'alter ego' is a party to the action where the 'alter ego' status is litigated").

Likewise, under Rule 19, sovereign instrumentalities would be "required" parties to an action to determine their alter ego status (or execute on their property), and such an action could not proceed without them. Fed. R. Civ. P. 19(a)(1)(B)(i) (parties are "required" if failing to name them would "impair or impede [their] ability to protect th[eir] interests"); Fed. R. Civ. P. 19(b) (enumerating factors that determine whether an action can proceed without a "required" party);[4] *see also Seneca Nation of Indians* v. *New York*, 383 F.3d 45, 48 (2d Cir. 2004) (owner of disputed property is a necessary party to a lawsuit); *Bartfield* v. *Murphy*, 578 F. Supp. 2d 638, 651 (S.D.N.Y. 2008) (Holwell, J.) (entity was a required party where entity had potential ownership of assets sought). Under settled law, this Court cannot permit an alter ego claim against an instrumentality of a foreign sovereign without giving it the opportunity to be heard, which requires a separate basis for jurisdiction.

2.    No such separate basis for jurisdiction exists here. In *Bank Markazi*, the Second Circuit clarified that a proceeding bringing claims of alter ego liability "presents a new

---

[4]    The Rule 19(b) factors include "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; "the extent to which any prejudice could be lessened or avoided"; "whether a judgment rendered in the person's absence would be adequate"; and "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Because due process requires that any foreign instrumentality be a party to an alter ego proceeding, these factors require dismissal of a proceeding that did not include the instrumentality as a party.

substantive theory to establish liability directly on the part of a new party."  121 F.4th at 999 (citation omitted).   In the post-judgment context, to the extent that courts retain ancillary jurisdiction "to allow proceedings in aid of any money judgment that is rendered in the case," that ancillary jurisdiction does not extend to alter ego claims seeking to hold a foreign sovereign instrumentality liable for a judgment against the sovereign.  *Id.* (citations omitted).  Specifically, the Second Circuit was clear that a proceeding to conduct an alter ego analysis pursuant to *First National City Bank* v. *Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), requires a separate basis to exercise jurisdiction over the purported alter ego entity. *See id.* at 1000 ("[W]e are aware of no case—and the Plaintiffs cite none—in which this Court has held that *Bancec* may be used to extend ancillary jurisdiction from a merits proceeding against a foreign sovereign to a new proceeding seeking to establish liability for the judgment on the part of the foreign sovereign's agency or instrumentality.").

Thus, to try to obtain a determination in this Court that any of the six entities about which Plaintiffs have sought alter ego discovery is actually an alter ego, such that any of their assets could be used to collect on their judgment, Plaintiffs must institute a "new proceeding" against each such entity "to establish liability for the judgment." *Bank Markazi*, 121 F.4th at 1000. To do so, Plaintiffs first would need to identify a basis for jurisdiction over the alter ego claims against those entities, and as the jurisdictional analysis in *Bank Markazi* makes clear, they cannot do so here.  These sovereign instrumentalities are located in Argentina and (with the exception of YPF, which has been dismissed as a defendant) have no connection to the underlying events of this case:  none of the exceptions to jurisdictional immunity in 28 U.S.C. § 1605 apply to support jurisdiction.  Indeed, because these entities are entirely removed from the underlying corporate and public law issues in this case, they do not have any assets in the United States (or elsewhere)

that "[are] or [were] used for the commercial activity upon which" the claim against the Republic is based that would allow Plaintiffs to collect on any assets. *See* 28 U.S.C. § 1610(a)(2). There would thus be no basis for this Court to exercise jurisdiction over alter ego claims as to any of these Argentine entities.

3.    The impossibility of obtaining an alter ego determination against any of these Argentine entities—and, therefore, of ultimately executing on their assets—directly impacts the broad discovery that Plaintiffs seek from the Republic regarding YPF, BCRA, Aerolíneas, BNA, ENARSA, and ARSAT. Post-judgment discovery is not limitless: such discovery "must be calculated to assist in collecting on a judgment" and remains subject to Rule 26's constraints. *EM Ltd.* v. *Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *see also NML*, 573 U.S. at 144 ("[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution") (citing Fed. R. Civ. P. 26(b)(1)); *Gujarat State Petroleum*, 2022 WL 1567464, at *8 (post-judgment discovery must be tethered to "the concepts of attachability or executability" and relevant under Rule 26). Under Rule 26, discovery must be both relevant and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Gesualdi* v. *D. Gangi Contracting Corp.*, 2019 WL 3821221, at *1 (E.D.N.Y. Aug. 7, 2019) (Bulsara, J.) (denying motion to compel post-judgment discovery where the "current requests are far from proportional or tailored").

This Court has already authorized extensive discovery from the Republic about its relationship to YPF and BCRA. (*See Petersen* ECF No. 641 at 4–5). But Plaintiffs have demanded still more, including emails restored from backup tapes, emails from additional custodians, and sensitive internal government emails. Plaintiffs have also moved to compel production of extensive discovery regarding four other sovereign instrumentalities, including documents and communications concerning their management and operation, their creditors,

investments in those entities, and other information completely untethered to identifying actual assets of the Republic in the United States or other foreign countries. (*See, e.g.*, Pls.' First Document Requests (ECF No. 540-1) Nos. 40, 45, 53, 63, 74.)  This information was already of no relevance to Plaintiffs' enforcement efforts, as courts have held that each one of these entities is *not* an alter ego of the Republic, meaning their assets cannot be used to satisfy a judgment against the Republic.[5]  But after *Bank Markazi*, Plaintiffs cannot enforce the judgment against any of these entities in the United States because no jurisdiction exists to do so.

To be sure, *NML* allows discovery regarding a sovereign's extraterritorial assets. 573 U.S. at 144.  But there are limits to such discovery, including that the information that Plaintiffs seek must be relevant to actual judgment execution, be proportional, and, in cases involving extraterritorial assets and activity, respect principles of international comity.  Fed. R. Civ. P. 26(b)(1); *see also Aurelius Capital Master, Ltd.* v. *Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014) (foreign sovereigns "entitled to a degree of grace and comity" in post-judgment discovery requests).  *NML* itself cautions courts to respect these limits on post-judgment discovery.  573 U.S. at 146 n.6 (noting that "other sources of law" besides the FSIA bear on the propriety of discovery requests against foreign sovereigns, including considerations of comity and burden).

Through their alter ego requests, Plaintiffs do not seek information about the Republic's *assets* outside of Argentina or information calculated to identify such assets.  Instead,

---

[5]      *See NML Cap., Ltd.* v. *Republic of Argentina*, 2015 WL 7731779, at *4 (N.D. Cal. Dec. 1, 2015) (YPF); *EM Ltd.* v. *Banco Central de la República Argentina*, 800 F.3d 78, 94–95 (2d Cir. 2015) (BCRA); *Seijas* v. *Republic of Argentina*, 2009 WL 10700009, at *2 (S.D.N.Y. Aug. 19, 2009) (Aerolíneas); *Seijas* v. *Republic of Argentina*, 502 F. App'x 19, 22 (2d Cir. 2012) (BNA); *NML Cap., Ltd.* v. *Republic of Argentina*, 2011 WL 524433, at *7 (S.D.N.Y. Feb. 15, 2011) (ENARSA); *NML Cap., Ltd.* v. *Republic of Argentina*, 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011) (ARSAT is an instrumentality of and separate from the Republic).

Plaintiffs seek unlimited documents and information about the Republic's *relationship* with sovereign instrumentalities in Argentina.    Under *Bank Markazi*, Plaintiffs cannot use such information—even if it existed—to bring actions against these instrumentalities in the United States.    There is no reason to believe they could do so elsewhere, and, for the purposes of enforcement against the Republic *within Argentina*, no such discovery exercise is needed.    The complete futility of this discovery exercise emphasizes that the discovery sought is not relevant or "proportional" to Plaintiffs' enforcement efforts.    Plaintiffs' outstanding alter ego discovery requests must be denied.

## CONCLUSION

The Second Circuit's *Bank Markazi* decision does not impact Plaintiffs' turnover motion, which seeks extraordinary relief, not authorized under settled immunities under federal common law, international law, and principles of comity, and must be denied.    It also further confirms that the Court should reject Plaintiffs' outstanding requests for further alter-ego-related discovery.

Respectfully,

*/s/Robert J. Giuffra Jr.*
Robert J. Giuffra Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

December 20, 2024                          *Counsel for the Argentine Republic*