# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 1 0036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Randy M. Mastro
Partner
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

January 2, 2025                   *Via CM/ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> Re: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739-LAP; *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569-LAP

Your Honor:

I respectfully write to request a pre-motion conference regarding Plaintiffs' intended motion to compel the Republic to produce discovery under Rule 37 of the Federal Rules of Civil Procedure ("FRCP"). After lengthy efforts to meet and confer, the Republic's production is at a standstill because it continues to stonewall even the most basic asset discovery. Plaintiffs require the Court's intervention regarding the four categories of documents set out below.

## SWIFT Messages for Accounts Outside of Argentina and the United States

Request No. 16 of Plaintiffs' First Post-Judgment Requests for Production of Documents ("First Requests") seeks SWIFT messages for transactions in the Republic's accounts outside Argentina. The Republic produced account summaries but refuses to produce SWIFT messages, relying on three baseless arguments.

First, the Republic faults Plaintiffs for "insist[ing]" on production by August 9, 2024, implying that a rushed production forced it to provide account summaries rather than SWIFT information. *See* Ex. A at 3 (Nov. 8, 2024 Letter). But this deadline was hardly rushed; it was almost ten months after service of the First Requests. Plaintiffs immediately informed the Republic that the account summaries are not an adequate substitute for SWIFT information, but the Republic refuses to supplement its production. *See* Ex. B at 1 (Aug. 2, 2024 Email); Ex. A at 4.

Page 2

Second, the Republic's claim that account summaries are adequate is wrong, because the summaries lack key detail contained in SWIFT messages. Even where summaries identify counterparties by name, they do not identify the counterparty's specific banking institutions making or receiving payments. SWIFT messages would provide precision and allow Plaintiffs to properly trace the Republic's assets.

Third, the Republic's position that it would be unduly burdensome to produce SWIFT messages, *see* Ex. A at 3–4, is unsupported and wrong. SWIFT messages are electronically-stored information that the Republic can readily obtain from its financial institutions, requiring no manual collection. Any burden is proportional to the relevance of the SWIFT data and the size of the judgment.

**Accounts in Argentina and the United States**

The Republic also refuses to produce *any* information regarding its accounts in Argentina and the United States,[1] objecting that such assets will be immune from execution. *See* Ex. A at 2–3. But neither the FSIA nor the FRCP precludes *discovery* of assets that may ultimately be immune from execution. *See Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 145 (2014) ("Argentina's self-serving legal assertion" of execution immunity does not shield assets from discovery); *Gujarat State Petroleum Corp. Ltd. v. Republic of Yemen*, 2022 WL 1567464 at *8, (S.D.N.Y. May 18, 2022) ("judgment creditor[s] need not prove that post-judgment discovery will lead to attachable or executable assets in order to obtain that discovery"). Indeed, this Court already rejected the Republic's similar argument regarding discovery of military and diplomatic assets, *see* Dkt. 592, May 28, 2024 Hr. Tr. at 25:3–6 (citing *NML*, 573 U.S. 134), and respectfully should do so again.

The Republic protests that Plaintiffs agreed to withdraw Request No. 16 as to U.S. accounts. *See* Ex. A at 2. In fact, Plaintiffs agreed only that the Republic could *prioritize* foreign accounts, *not* that the Request was withdrawn as to U.S. accounts. *See* Ex. C at 3 (Feb. 12, 2024 Letter). This objection is an abuse of the meet-and-confer process that has become standard operating procedure for the Republic.

**Documents Produced in Post-Judgment Litigation**

The Republic is also deficient in its response to First Request No. 30, which calls for "Documents produced in connection with any other proceeding concerning

---

[1] Request No. 6 of Plaintiffs' Second Post-Judgment Requests for Production extended the scope of First Request No. 16 to include accounts in Argentina.

Page 3

the enforcement of a judgment against Argentina." Post-judgment production continues in *Bainbridge Fund Ltd. v. The Republic of Argentina*. *See, e.g.*, Letter Reply, No. 1:16-cv-08605-LAP, Dkt. 155 (S.D.N.Y., Oct. 10, 2024), but the Republic has not produced to Plaintiffs all documents produced in *Bainbridge*. The Republic's argument that these documents are not "independently relevant" makes no sense. Plaintiffs and the *Bainbridge* plaintiff are both seeking to enforce a money judgment. The scope of relevance is identical in both cases, so cross-production is a valuable tool to verify the completeness of the Republic's productions in this case.

**Gold Reserves**

The Republic has also refused its obligations under First Request No. 26, which calls for documents "sufficient to identify, locate, and ascertain the purposes of any gold or other precious metals reserves of Argentina held in the United States or any Foreign Country." It is widely reported that Argentine gold reserves have been transferred to London. *See* Ex. D ("The mystery of Milei's gold," Javier Lorca, *El País*, Jul. 28, 2024). The Republic responds that any precious metals reserves are owned by the Republic's Central Bank (BCRA), for its own account. Ex. A at 6. Once again, this response improperly appoints the Republic as sole arbiter of how Argentine assets should be categorized and treated.[2] The Republic must produce documents to establish ownership and "ascertain the purposes" of the gold reserves, including whether the Republic is using the reserves as collateral as speculated in the press. *See Thai Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 523 (S.D.N.Y. 2013) (ordering discovery of sovereign's accounts with the central bank of Laos, even if those accounts were held in the bank's name); *Gujarat State Petro. Corp.*, 2022 WL 1567464, at *4–10 (ordering discovery into assets held by central bank); Ex. D (reporting possible use as collateral). Plaintiffs expect that the reserves purportedly held by BCRA do not serve the regular central banking purposes of BCRA and are immune from neither discovery nor attachment, and the Republic should be forced to produce documents showing or disproving its interest in the gold reserves.

Accordingly, Plaintiffs respectfully request a pre-motion conference concerning Plaintiffs' proposed motion to compel the production of documents.

---

[2] Plaintiffs are seeking the Republic's own documents regarding the gold reserves, not BCRA documents, so the Republic has no "possession and control" objection.

Page 4

                                              Respectfully,

                                              */s/ Randy M. Mastro*
                                              Randy M. Mastro

cc: All Counsel of Record (via ECF)