# **EXHIBIT A**

**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-956-7676
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

NEW YORK • LOS ANGELES • PALO ALTO
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 8, 2024

Via E-mail

Laura Harris,
    King & Spalding LLP,
        1185 Avenue of the Americas, 34th Floor,
            New York, NY 10036.

        Re:    *Petersen Energía Inversora S.A.U.* v. *Argentine Republic*,
                  No. 15-cv-2739 (S.D.N.Y.)
                  *Eton Park Capital Management, L.P.* v. *Argentine Republic*,
                  No. 16-cv-8569 (S.D.N.Y.)

Dear Laura:

        On behalf of the Argentine Republic, I respond to your October 25, 2024 letter ("Letter") regarding alleged "deficiencies" in the Republic's post-judgment document productions. There are no such "deficiencies." Instead, Plaintiffs' complaints appear to stem from a failure to fully review the Republic's productions, or from an effort to alter the parameters of discovery agreed by the parties.

        **Accounts in Argentina**. Plaintiffs demand that the Republic produce "diplomatic, consular, and military accounts in . . . Argentina." (Ltr. at 3.) As the Republic made clear months ago, in its June 14, 2024 Responses and Objections to Plaintiffs' Second Requests, this information is not subject to discovery and will not be produced.

        The Republic's June 14, 2024 responses explained that information about accounts (or any other asset) in Argentina is not discoverable because it has no relevance to enforcing the judgments in these cases. (*See* Resp. to Second Request at 8.) There is a process to enforce judgments against the National State in Argentina: any recognized judgment must be paid with sums allocated in the General Budget of the National Administration, and it is not permissible to enforce directly against state assets. *See* Article 20 of Law 24,264 and Article 165 of Law 11,672. Information on the Republic's assets within Argentina "could not possibly lead to executable assets" and therefore is not "'relevant' to execution in the first place." *Republic of Argentina* v. *NML Capital, Ltd.*, 573 U.S. 134, 144–45 (2014). Furthermore, requests for the Republic's information on its assets located within its own borders—particularly its military and diplomatic assets—are

Laura Harris                                                                                                           -2-

highly "invasive of sovereign dignity." *Aurelius Capital Master, Ltd.* v. *Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014).

The Republic's position on this has been clear since the start of post-judgment discovery. Plaintiffs have never pursued discovery concerning accounts in Argentina. Indeed, on August 1, 2024, the parties met and conferred for the first and only time on the Second Requests, where the Republic reiterated its position on the non-discoverability of assets within Argentina. The parties were clearly at an impasse, yet Plaintiffs did not raise the issue in their motion to compel filed that day. (*Petersen* ECF No. 599.) Raising this issue now smacks of gamesmanship and is at the very least untimely.[1]

**Accounts in the United States**. Plaintiffs' demand for discovery concerning "diplomatic, consular, and military accounts in the United States" (Ltr. at 3) rests on a similar misrepresentation of the parties' negotiations. (*Id*.) As the parties have agreed in their meet-and confers, this information is not subject to discovery and will not be produced.

On January 26, 2024, Plaintiffs confirmed "that they were willing to suspend requiring compliance with Requests 13 through 16 in so far as they seek information about U.S. assets." (Pls.' Jan. 26, 2024 Ltr. at 5.) The Republic responded on February 12, 2024 and "acknowledged Plaintiffs' reservation of rights to raise U.S.-related matters for these Requests at a later date" while reserving all objections. (Republic Feb. 12, 2024 Ltr. at 3.) Plaintiffs' May 7, 2024 letter-motion to compel did not seek discovery concerning accounts in the United States; the Republic confirmed this limitation both in its opposition and at the May 28 conference, which Plaintiffs did not challenge. (*See* ECF No. 572 (Republic Opp.) at 1 (describing Plaintiffs' letter-motion as requesting "bank accounts outside of Argentina and the United States"); May 28, 2024 Tr. 5:4–6 (noting that "Plaintiffs haven't asked for account information for accounts in the United States.").) Until Plaintiffs' Letter, they had not raised the issue again, and it is untimely as well.

Plaintiffs, in any event, are not entitled to information on diplomatic, consular, and military accounts in the United States because this property is not subject to execution under U.S. law. *See* 28 U.S.C. § 1611(b)(2) ("[T]he property of a foreign state

---

[1] Plaintiffs imply that the Republic was ordered to produce information on these accounts in Argentina at the May 28, 2024 court conference. (Ltr. at 3.) This is incorrect, as Plaintiffs did not serve the Second Requests until May 15, 2024—a week after filing the May 7, 2024 motion to compel that was the subject of the May 28 conference. (*See Petersen* ECF No. 568.) Indeed, Plaintiffs' May 7 motion to compel only sought "production of documents concerning all of the Republic's financial accounts outside Argentina." (*Id.* at 3.)

Laura Harris                                                                                                          -3-

shall be immune from attachment and from execution, if the property is, or is intended to be, used in connection with a military activity and (A) is of a military character, or (B) is under the control of a military authority or defense agency."); *Avelar* v. *J. Cotoia Constr., Inc.*, 2011 WL 5245206, at *4 (E.D.N.Y. 2011) ("Bank accounts used by the mission for diplomatic purposes are immune from execution under [the Vienna Convention], as facilities necessary for the mission to function."). Military, diplomatic, and consular property also is not relevant to execution on any other property, given that Plaintiffs in this case are limited to executing on "property [that] is or was used for the commercial activity upon which the claim is based." 28 U.S.C. § 1610(a)(2). The Republic's accounts used for military, diplomatic, and consular purposes in the United States by definition are not used for or relevant to commercial activity that forms the basis of this litigation.

**First Request 16**. Plaintiffs also raise a host of issues regarding the Republic's response to Plaintiffs' First Request 16, which seeks "SWIFT messages received or transmitted in connection with transfers from or to" the Republic's accounts in foreign countries in addition to the extensive account information already provided. Plaintiffs have no basis to obtain such disproportionate discovery.

As a reminder, the Court required production of information concerning the Republic's diplomatic, consular, and military accounts outside of the United States and Argentina in response to First Request Nos. 15 and 16 on May 28, 2024. The parties conferred about these requests on June 3, 2024: the Republic explained that it would not be possible to produce all SWIFT messages over a two-year period to or from hundreds of independently managed accounts around the world and proposed producing monthly account statements instead.

Plaintiffs insisted on receiving a response to First Request No. 15 (a list of accounts) by July 8 and First Request No. 16 (account information) by August 9. (*See* C. Corey June 4, 2024 Email.) The Republic produced a list of the Republic's diplomatic, consular, and military accounts in foreign countries in response to First Request No. 15 on July 8, but explained to Plaintiffs at a July 22, 2024 meet and confer that it would be extremely burdensome for the Republic to pull each individual statement for each account, and impossible to do so by August 9. Instead, the Republic identified reasonable alternatives to account statements that would provide the same information in the timeframe demanded by Plaintiffs. For diplomatic and consular accounts, the Republic produced *libros banco* showing every individual inflow or outflow to or from the relevant accounts during the relevant time period of 2022 through 2024. For military accounts, the Republic produced aggregate amounts spent on various categories of expenditures by each

Laura Harris                                                                                           -4-

attaché for calendar years 2022, 2023, and 2024 to date.[2] Plaintiffs asked whether the *libros banco* contain every transaction in the covered accounts, and at our August 1, 2024 meet and confer, Plaintiffs requested that the Republic provide an explanation of how the *libros banco* were compiled to ensure they are reliable. The Republic provided this explanation on August 9, 2024 and confirmed these documents record all relevant transactions, *see* Aug. 9, 2024 Ltr. from A. Davidoff, and that they are not "account summaries," as Plaintiffs wrongly labeled them in the Letter. (Ltr. at 2.)

Plaintiffs now claim that the Republic's productions in response to First Request No. 16 are "incomplete" because they do not contain SWIFT information. (Ltr. at 2.) But the extreme burden of producing this information would be disproportionate given that Plaintiffs already have the information they sought: the Republic has produced documents showing the "flow" of funds into and out of these accounts during the relevant time period, which is what Plaintiffs told the Court they needed this information for. (*See* May 28, 2024 Hearing Tr. 11:4–8 ("[W]e think that the documents will be sufficient to show whether these accounts were used for no other purpose or not, whether funds flowed through these accounts that weren't for diplomatic or consular or military purposes.").) This is more than enough to satisfy Plaintiffs' requests, particularly as these documents reflect that relatively small sums of money flow through these accounts. To take just two examples, the Argentine Air Force's account in Paraguay had a total of less than US $830,000 flow through it in a two-year period. And a diplomatic account in Italy had only approximately €3,900,000 flow in and €3,300,000 flow out in a two-year period. A careful analysis of the *libros banco* reveals that the expenses identified in the chart are nominal amounts that obviously relate to the operation of the embassies. Any further productions on this topic would require an incredible expenditure of the Republic's resources for information that would be neither "relevant" nor "proportional" to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Plaintiffs next claim that "for many of the accounts identified in the Account Summaries, the documents fail to identify the bank at which the Republic's account is located." (Ltr. at 3.) But Plaintiffs have this information: as discussed above, the Republic produced a list of accounts owned by the Republic in foreign countries on July 8, 2024 in response to First Request No. 15. (*See* AR00161234.) To the extent that the *libros banco* themselves do not list the name of the bank at which the account is located, Plaintiffs can refer to AR00161234, which contains that information. This is apparent in the examples listed in your letter:

---

[2]   Much of the specific information regarding transactions in these accounts is highly confidential and protected from disclosure by Argentine banking secrecy law and international agreements into which the Republic has entered.

Laura Harris                                                                                                                -5-

- AR00161337 refers to an account held at Banco Bradesco S.A.;

- AR00161518 refers to an account held at Arab Banking Corporation Egypt;

- AR00161805 refers to an account held at The Ratnakar Bank Ltd.;

- AR00161883 refers to an account held at The Bank of Tokyo-Mitsubishi UFJ, Ltd.;

- AR00161980 refers to an account held at Credit du Maroc;

- AR00171197 refers to an account held at Bank of China; and

- AR00172900 refers to an account held at Banco de America Central, S.A.

With regard to AR00162375, that *libro banco* refers to an account held at CM – CIC Banques. That account's IBAN number is listed on AR00161234 as FR7630066111100000003370800114.

Finally, Plaintiffs challenge the Republic's redactions of individuals' names in the *libros banco*, all of which were made to avoid disclosing individual employees' salary information. (Ltr. at 3–4.) To reiterate, individuals' salary information is protected by Law No. 25,326 and cannot be disclosed without consent; it is not the sort of information collected for the exercise of functions inherent to the powers of the State or by virtue of a legal obligation, which are the legal standards for an exception to this law. A discovery request does not amount to a "legal obligation" under Law No. 25,326 sufficient for the exception contained in Article 5(2)(b) to apply. Further, the names of the individual employees could not possibly lead to the identification of attachable or executable assets. *See Gujarat State Petroleum Corp. Ltd.* v. *Republic of Yemen*, 2022 WL 1567464, at *8 (S.D.N.Y. May 18, 2022). The Republic will therefore not be able to produce unredacted versions of the *libros banco*.

**First Request 30.** Plaintiffs claim that the Republic has not fully responded to First Request No. 30, which seeks "Documents produced in connection with any other proceeding concerning the enforcement of a judgment against Argentina." (Ltr. at 5.) Plaintiffs go so far as to assert that the Republic failed to comply with the Court's August 20, 2024 Scheduling Order (*Petersen* ECF No. 634), which required production of non-ESI material by October 4 "consistent with the Court's prior orders and the Parties' meet-and-confer engagement." The Republic complied fully with that order, as explained below, and in particular its response to Request 30 follows precisely "the Parties' meet-and-confer engagement."

Laura Harris                                                                                                          -6-

There is only a single post-judgment proceeding in which the Republic produced documents during the period covered by Plaintiffs' Request, which is *Bainbridge Fund Ltd.* v. *the Republic of Argentina*, 16-cv-10838. To be clear, the Republic does not agree that "[a]ny documents produced to Bainbridge must also be produced to Plaintiffs" (Ltr. at 5), if those documents are not independently relevant to Plaintiffs' Requests in these Actions. The Republic took this position in its November 15, 2023 responses and objections to Plaintiffs' document requests and at our meet and confer on January 19, 2024, as Plaintiffs are aware and have acknowledged. (*See, e.g.* Pls.' May 15, 2024 Ltr.) The Republic has produced 832 documents previously produced in the *Bainbridge* matter on March 25, May 7, and October 4, 2024. (*See* AR00136977-AR00137056; AR00140745-AR00140796; AR00174715-AR00175977.) Plaintiffs have not sought to compel production of documents produced in *Bainbridge* that are not independently relevant to this litigation, nor would they have any ground to do so.

**First Request 26**. Plaintiffs claim that the Republic "must produce documents responsive to Request No. 26," which seeks documents related to "any gold or other precious metals reserves of Argentina held in the United States or any Foreign Country." (Ltr. at 5.) The Republic has already responded to this Request by explaining that Argentina does not own precious metals reserves, which are instead owned by the Republic's central bank. (*See* R&O to First Request No. 26; Republic Feb. 12, 2024 Ltr. at 10; Republic Apr. 15, 2024 Ltr. at 4–5.) Plaintiffs now claim (citing to unknown "reporting") that "the Republic may be using these reserves as collateral," which Plaintiffs say "does not serve any regular central banking purpose," and seek "documents showing the Republic's interest in and communications about the gold reserves." (Ltr. at 5.) *First*, if Plaintiffs intend to rely on this "reporting," please identify what it is. *Second*, Plaintiffs appear to misunderstand the functions of a central bank like BCRA: its statutory mandate includes owning and managing reserves in the national interest. (*See* BCRA Charter, Section 4 stating that the BCRA "shall have the following functions and powers (…) to hold and administer its gold and foreign exchange reserves, and other foreign assets;") The Republic reiterates that the gold reserves Plaintiffs reference belong to BCRA, not the Republic, and therefore no documents responsive to First Request No. 26 exist. *See* https://www.bcra.gob.ar/Pdfs/PublicacionesEstadisticas/itemp0924.pdf. We refer you to the IMF's Global Financial Stability Reports, which provide more detail on how central banks may utilize gold reserves.

**GDE Documents.** Plaintiffs are incorrect that "the Republic's productions have not included any documents from within the GDE System showing communications with YPF or BCRA." (Ltr.at 4.) The Republic has produced approximately 150 *notas* (notes) and *resoluciones* (resolutions) to or from these entities, which are communications sent through GDE. For example, communications sent through GDE to YPF were produced at AR00162637–AR00162662 and AR00162760–AR00162891, and communications sent through GDE to BCRA were produced at AR00174501–AR00174621.

Laura Harris                                                                -7-

As explained in the Republic's October 4, 2024 production letter, one area of the government (the Ministry of Economy) re-ran its previous searches in GDE to ensure these searches were completed correctly. Through these additional GDE searches, the Republic has identified additional documents related to Plaintiffs' BCRA-related requests, which are being reviewed for responsiveness and privilege before production.

**Email Productions.** Regarding the Republic's production of emails in response to Plaintiffs' BCRA- and YPF-related requests, Plaintiffs are again incorrect that the Republic "failed to produce" documents that were due on October 4. (Ltr. at 5.) The Court's scheduling order set a deadline of October 4 for the Republic to complete production of all documents other than ESI data requiring restoration. (*Petersen* ECF No. 634.) The Republic completed its production of non-email documents (with the caveats already discussed) by October 4. As Plaintiffs acknowledge (Ltr. at 5), because the scope of email discovery remains in dispute, it was not possible to complete email production by that date.

In any event, as Plaintiffs have been made aware, almost all of the data for the agreed email custodians is located on backup tapes that need to be restored before those emails can be searched. As the Republic's vendor explained, this is a time-consuming process that takes at least three months to complete. (*Petersen* ECF No. 623 (Baxter Decl.) ¶¶ 4–8.) The process is underway, and the Republic was not required to begin production of those emails by the October 4 date. (*Petersen* ECF No. 634.)[3]

Only four custodians' emails are not located on back up tapes. Our October 29, 2024 ESI update email explained that these documents were being reviewed for privilege and responsiveness. That review is complete, and no responsive emails to or from a YPF or BCRA email address exist from these custodians.

**Information Subpoena Responses & Objections.** Finally, Plaintiffs claim that there are two "clear defects" in the Republic's September 30, 2024 Responses and Objections to Plaintiffs' Information Subpoena. (Ltr. at 6.) Plaintiffs repeat their demand for information regarding the Republic's assets in Argentina and the United States: Plaintiffs are not entitled to that information for the reasons discussed above at 1-3.

---

[3] Plaintiffs claim that "even if some subset of the emails will take three months to restore from backup tapes—a timeline that Plaintiffs find implausible—it has been more than three months since the May 28, 2024 hearing at which the Court ordered alter ego discovery regarding YPF and BCRA." (Ltr. at 5.) But the Republic disputed the need for email searches to respond to Plaintiffs' alter-ego-related document requests and only agreed to do so on July 2, 2024 (for YPF) and July 27, 2024 (for BCRA).

Laura Harris                                                                                                                    -8-

    Plaintiffs also claim that the Republic "failed to disclose its ownership" of two specific properties in Brazil and France out of the approximately 60 properties it identified in 26 countries around the world. (Ltr. at 6.) The Republic responded to this request after performing reasonable search of the records of the *Escribanía General de la Nación*, the *Agencia de Administración de Bienes del Estado*, the Armed Forces, and the Ministry of Foreign Relations, and there are no "reasonable grounds" to doubt the results of that search. The Republic rents—but does not own—the property in Brazil located at Avenida Silva Jardim. Thus, the Republic has no ownership in that property to disclose. The Republic will investigate your claim as to the property in France, located at 73/75 Rue Edouard Nortier, 92200 Neuilly-sur-Seine and will provide an update once that investigation is complete.

                            Sincerely,

                            */s/ Amanda Flug Davidoff*
                            Amanda Flug Davidoff