UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br> Plaintiffs, <br><br> v. <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | No. 15 Civ. 2739 (LAP) |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br> Defendants. | No. 16 Civ. 8569 (LAP) |

**MEMORANDUM OF THE UNITED STATES OF AMERICA CONCERNING THE SECOND CIRCUIT'S DECISION IN *PETERSON V. BANK MARKAZI***

EDWARD Y. KIM
Acting United States Attorney for the
Southern District of New York
  *Attorney for the United States of America*
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2772
david.farber@usdoj.gov

DAVID E. FARBER
Assistant United States Attorney
– Of Counsel –

**PRELIMINARY STATEMENT**

The United States of America (the "United States" or the "Government"), by and through its attorney, Edward Y. Kim, Acting United States Attorney for the Southern District of New York, submits this memorandum in accordance with 28 U.S.C. §§ 517, 518, and in response to the Court's November 15, 2024 Order (ECF No. 685), requesting briefing addressing the impact of the Second Circuit's decision in *Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024) ("*Bank Markazi*"), on Plaintiffs' motion for an injunction and turnover of the Argentine Republic's ("Argentina's") foreign state property (ECF Nos. 555-556 (the "Turnover Motion")).[1]

In *Bank Markazi*, the Second Circuit vacated and remanded a summary judgment order directing Bank Markazi, Iran's central bank, and Clearstream Banking ("Clearstream"), to turn over the contents of a blocked account to judgment creditors seeking to enforce a judgment against Iran. 121 F.4th at 990. The turnover order in *Bank Markazi* was issued pursuant to 22 U.S.C. § 8772, as amended in 2019, which specifically strips execution immunity from certain Iranian assets outside the United States and subjects those assets to a turnover order without regard to concerns relating to international comity. *See* 22 U.S.C. § 8772(a)(1).

The United States agrees with Plaintiffs (ECF No. 695 at 12), and Argentina (ECF No. 698 at 6), that the Second Circuit's decision in *Bank Markazi* does not impact this Court's determination of Plaintiffs' Turnover Motion, which should be denied. As the Government asserted in its Statement of Interest (ECF No. 679 ("Statement of Interest"), at 5-8), principles of prescriptive comity must limit the New York turnover statute, CPLR 5225, from reaching the property of a foreign sovereign located outside of the United States, and the *Bank Markazi* decision

---

[1] References to ECF entries refer to the docket in Case No. 15 Civ. 2739. This supplemental memorandum does not address the implications of the *Bank Markazi* decision on YPF S.A.'s motion to intervene or Plaintiffs' requests for alter ego discovery. *See* ECF No. 685 at 1-2.

only reinforces the need to conduct that comity analysis. In contrast to Section 8772, which specifically subjects certain Iranian assets abroad to turnover without consideration of international comity concerns, there is nothing in the Foreign Sovereign Immunities Act ("FSIA"), or any other law, which would obviate the requirement that the Court conduct a comity analysis with respect to the reach of the New York turnover statute in this matter.

Similarly, the *Bank Markazi* decision does not address whether the FSIA abrogated common law principles of sovereign immunity from execution with respect to foreign sovereign property located abroad. To the extent the panel in *Bank Markazi* suggested in a footnote that Iran's foreign state property abroad possesses no execution immunity by virtue of the limited application of the FSIA to "*the property located in the United States* of a foreign state," 121 F.4th at 996 n.3 (quoting 28 U.S.C. § 1609) (emphasis in original), its suggestion is dicta—warranting careful consideration, but ultimately unpersuasive. As the Government has previously asserted (Statement of Interest, at 3-5), the FSIA did not abrogate foreign sovereigns' longstanding common law execution immunity for property located abroad.

**THE SECOND CIRCUIT'S DECISION IN *BANK MARKAZI***

In the *Bank Markazi* matter, judgment creditors of the Islamic Republic of Iran sought to enforce their judgment by seeking turnover of a $1.68 billion right to payment held by Clearstream, a Luxembourg-based securities intermediary, representing the principal and interest of bond investments that Clearstream made in New York on behalf of Bank Markazi. *See Bank Markazi*, 121 F.4th at 990. This Court granted the judgment creditors' request for summary judgment and a turnover order of the assets held by Clearstream, relying in part on 22 U.S.C. § 8772, as amended in 2019, which specifically makes certain assets held abroad by Clearstream on behalf of Bank Markazi (i) subject to execution "notwithstanding any other provision of law, including any provision of law relating to sovereign immunity, and preempting any inconsistent provision of

2

State law," and (ii) subject to "an order directing that such assets be brought" into the jurisdiction "without regard to concerns relating to international comity." *Id.* at 992-993 (citing 22 U.S.C. § 8772(a)(1)). On appeal, the Second Circuit vacated the turnover order and remanded to this Court. *Id.* at 990.

As relevant to Plaintiffs' Turnover Motion, the Second Circuit agreed with Bank Markazi's argument that Section 8772's "notwithstanding clause" only strips the execution immunity of assets held on behalf of Bank Markazi, but not Bank Markazi's jurisdictional immunity conferred by the FSIA. *Id.* at 995-96. As explained by the Second Circuit:

> In the absence of an explicit reference to jurisdictional immunity, we find nothing else in the statute to suggest that the notwithstanding clause's reference to "sovereign immunity" was intended to go beyond the execution immunity provided to the assets under the FSIA and reach the jurisdictional immunity provided by the same statute to Iran and its instrumentalities.

*Id.* The Second Circuit panel noted in dicta that it may seem "counterintuitive" that the statute only abrogates execution immunity when such assets abroad do not possess execution immunity under the FSIA. *Id.* at 996 n.3 (citing 28 U.S.C. § 1609). The panel explained that in its previous (and vacated) decision in *Peterson v. Islamic Republic of Iran (Peterson II)*, they "noted that if the Assets were brought into the United States pursuant to a turnover order it would then be necessary to conduct an execution immunity analysis under the FSIA because they would become assets 'in the United States.'" *Id.* (citing *Peterson II*, 876 F.3d 63, 94 (2d Cir. 2017)). However, the 2019 amendments to Section 8772 "eliminat[e] the need to conduct this analysis if the Assets are delivered to the United States pursuant to a turnover order." *Id.*

Similarly relevant to Plaintiffs' Turnover Motion, the Second Circuit rejected separate constitutional due process arguments concerning the exercise of personal jurisdiction raised by Clearstream, which argued that such an exercise of jurisdiction was unreasonable because allowing

3

a judgment to be enforced using property located abroad would go beyond U.S. courts' traditional limits. *Id.* at 1006. The Second Circuit held that while execution against property abroad was uncommon "because U.S. courts 'generally lack authority in the first place to execute against property in other countries,'" *id.* (quoting *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 144 (2014)), the New York turnover statute at CPLR 5225(b) was "one exception to the general principle that courts cannot reach extraterritorial property," and allows a court "with personal jurisdiction over a non-sovereign third party to order that third-party garnishee to produce in New York an extraterritorial asset." *Id.* (citing *Peterson II,* 876 F.3d at 91).

## DISCUSSION

### I. Principles of Prescriptive Comity Preclude the New York Turnover Statute from Reaching Foreign Sovereign Property Located Abroad.

The *Bank Markazi* decision does not alter the prescriptive comity analysis that this Court must undertake—which precludes application of the New York turnover statute to Argentina's foreign state property located abroad.

The turnover motion at issue in *Bank Markazi* arose from Section 8772, as amended, which is a unique statute authorizing turnover of certain Iranian assets held abroad "without regard to concerns relating to international comity." 22 U.S.C. § 8772(a)(1); *see also Bank Markazi,* 121 F.4th at 1013 (Lohier, J., concurring) (Section 8772's "provisions apply 'without regard to concerns relating to international comity'"). Here, there is no statutory directive that international comity concerns do not apply to limit the reach of the New York turnover statute.

That the *Bank Markazi* panel reiterated that the New York turnover statute may be applied extraterritorially to "a non-sovereign third party," 121 F.4th at 1006, does not alter the requirement that this Court must conduct a separate analysis of international comity prior to issuing turnover of a foreign sovereign's assets located abroad. A statute with extraterritorial reach may still be

4

subject to constraints imposed by principles of prescriptive comity where the interests of foreign sovereigns are involved. *See* Statement of Interest at 5. And the Court must undertake an analysis of whether application of the New York turnover statute conflicts with these principles (it does) before ordering turnover of Argentina's assets located abroad.

Indeed, the same panel of the Second Circuit that decided *Bank Markazi* previously determined that this Court should undertake just such an analysis prior to issuing a turnover order concerning foreign sovereign property abroad. In *Peterson II*, the same panel noted—prior to the 2019 amendments to Section 8772—that "the court should determine if a barrier exists to an exercise of *in personam* jurisdiction to recall to New York State the right to payment held by Clearstream in Luxembourg, whether for reasons of, *inter alia*, state law, federal law, international comity, or for any other reason." 876 F.3d at 94. Accordingly, this Court must conduct an analysis of whether such concerns preclude application of the turnover statute to Argentina's foreign state property held abroad. *See also id.* n.23 (noting that the district court may conduct a comity analysis based on the framework provided by the Restatement (Third) of Foreign Relations Law (citing *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 138-39 (2d Cir. 2010))).[2] As the Government explained in its Statement of Interest (at 5, 7-8), common law immunity from execution, customary international law, and principles of prescriptive comity preclude the requested turnover order here.

---

[2] The factors set out at Section 403 of the Restatement (Third) of Foreign Relations Law apply with respect to an analysis of prescriptive comity. *See* Statement of Interest at 4; *see also* Restatement (Fourth) of Foreign Relations Law § 402(2) (2018) ("In exercising jurisdiction to prescribe, the United States takes account of the legitimate interests of other nations as a matter of prescriptive comity."); *id.* § 402, note 13 ("The principle of reasonableness expressed in § 403 of the Restatement Third is reflected in § 402(2) with respect to the exercise of jurisdiction to prescribe.").

5

## II. The FSIA Did Not Abrogate Common Law Execution Immunity for Foreign State Property Located Abroad.

The *Bank Markazi* decision similarly does not alter the analysis that common law execution immunity prevents this Court from issuing a turnover order of Argentina's property located abroad.

The FSIA did not abrogate the longstanding common law immunity from execution for foreign sovereign property located abroad. *See* Statement of Interest at 3-5. And the *Bank Markazi* panel did not reinstate their analysis to the contrary in their prior opinion in *Peterson II*. *See Peterson II*, 876 F.3d at 90-93; *see also Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 196 (2d Cir. 2020) (declining to reinstate analysis in *Peterson II* as to common law execution immunity). Rather, the panel simply relied on Section 1609 of the FSIA, which grants execution immunity to "the *property in the United States* of a foreign state," in suggesting that the assets in Luxembourg possess no execution immunity. *Bank Markazi*, 121 F.4th at 996 n.3 (emphasis in original).[3] The panel's statement in a footnote is assuredly dicta—not necessary to support the judgment reached and therefore "not binding on lower courts." *United States v. Donziger*, No. 11 Civ. 691 (LAP), 2021 WL 3141893, at *55 n.519 (S.D.N.Y. July 26, 2021). And while dicta may "deserve close consideration," *Jimenez v. Walker*, 458 F.3d 130, 142-43 (2d Cir. 2006), the notion that the FSIA abrogated, *sub silentio*, the longstanding common law execution immunity for foreign sovereign property located abroad is simply unpersuasive. *See* Statement of Interest at 3-5. Among other things, it would make no sense to conclude that Congress meticulously delineated the circumstances under which execution on foreign-state-owned assets in the United States would be allowed, but, through its silence, abandoned all such limits for assets located abroad. *Id.* at 4. Likewise, it would be particularly anomalous, as the panel's dicta would have it,

---

[3] The *Bank Markazi* panel also referenced its holding in *Peterson II* in its discussion of the procedural history of the case, *see Bank Markazi*, 121 F.4th at 992, however, it did not otherwise address the issue in its discussion except for this single sentence in footnote 3.

6

that a foreign sovereign's property enjoys *less* protection when it is located in the sovereign's own territory than when it is located in the United States. *Id.* at 5.

The FSIA contains no explicit reference to abrogation of execution immunity for foreign sovereign property located abroad, and the Supreme Court has made clear that "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993) (citations omitted); *see also* Statement of Interest at 4-5. The *Bank Markazi* panel did not address this statutory silence in its dicta suggesting that the FSIA stripped foreign state property abroad of its execution immunity. Indeed, this dicta is hard to square with the panel's own holding that they would not extend the immunity stripping provision of Section 8772's "notwithstanding clause" to Bank Markazi's jurisdictional immunity "in the absence of an explicit reference" in the statute. 121 F.4th at 995-96.

Furthermore, the panel's suggestion that foreign sovereign property located abroad "possesses no execution immunity," *id.* at 996 n.3, is belied by the fact that the 2019 amendments to Section 8772 specifically struck the requirement that the assets at issue be held "in the United States" to be subject to execution, and further provided that such assets may be subject "to an order directing that the asset[s] be brought to the State in which the court is located and subsequently to execution." National Defense Authorization Act for Fiscal Year 2020, § 1226, Pub. L. No. 116-92, 133 Stat. 1198, at 1645-46 (2019). The fact that Congress found it necessary to include this new authority in a statute that specifically abrogates the immunity from execution for Iran's property located outside the United States is further indication that foreign state property abroad would not otherwise be subject to execution by U.S. courts in the normal course.

Finally, the *Bank Markazi* panel did not have occasion to address any of the arguments raised by the Government in its Statement of Interest and attached amicus briefs, which all counsel

7

against reading into the FSIA an abrogation of common law immunity from execution for foreign state property abroad. *See* Statement of Interest at 3-5; ECF No. 679-1, *Clearstream* amicus brief at 11-15; ECF No. 679-2, *Levin* amicus brief at 2-5 & 16-29. Nor did the Second Circuit address the argument that application of the New York turnover statute to bring foreign sovereign property into the jurisdiction would render the FSIA's prerequisite that foreign sovereign property be located in the United States a nullity. *See* Statement of Interest, at 8-9. For all these reasons, Plaintiffs' Turnover Motion must be denied.

## CONCLUSION

The Second Circuit's *Bank Markazi* decision does not impact this Court's determination of the Turnover Motion, which conflicts with federal common law, customary international law, and principles of prescriptive comity. Accordingly, the Turnover Motion must be denied.

Dated: New York, New York
       January 10, 2025

                    EDWARD Y. KIM
                    Acting United States Attorney
                    Southern District of New York

By:   */s/ David E. Farber*
       David E. Farber
       Assistant United States Attorney
       Southern District of New York
       (212) 637-2772
       david.farber@usdoj.gov


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

LAUREN A. WETZLER
Deputy Director, Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director, Federal Programs Branch

CORMAC EARLY
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 2,501 words.

                                        */s/ David E. Farber*
                                        Assistant United States Attorney