**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U.,<br><br>        Plaintiffs,<br><br>   -against-<br><br>ARGENTINE REPUBLIC and YPF S.A.,<br><br>        Defendants. | Case Nos.:<br><br>1:15-cv-02739-LAP<br>1:16-cv-08569-LAP |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P.,<br><br>        Plaintiffs,<br><br>   -against-<br><br>ARGENTINE REPUBLIC and YPF S.A.,<br><br>        Defendants. | |

**PLAINTIFFS' REPLY BRIEF REGARDING
THE SECOND CIRCUIT'S DECISION IN *PETERSON***

CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV

KING & SPALDING LLP

Randy Mastro
Laura Harris
Reginald R. Smith

KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U.,
Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      The Republic and the United States Agree That *Peterson* Has No Effect on
        Plaintiffs' Turnover Motion, and Their Remaining Arguments Are Meritless ................. 2

II.     *Peterson* Does Not Support the Republic's or YPF's Objections To
        Producing Alter-Ego Discovery ..................................................................................... 7

III.    *Peterson* Does Not Support BNA's Objections To Producing Alter-Ego
        Discovery ................................................................................................................... 13

IV.     *Peterson* Does Not Support YPF's *Res Judicata* Arguments ........................................... 14

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

### Cases

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989)................................. 5

*Attestor Master Value Fund LP v. Republic of Argentina*, 113 F.4th 220 (2d Cir. 2024)............... 6

*Bainbridge Fund Ltd. v. Republic of Argentina*, 690 F. Supp. 3d 411 (S.D.N.Y. 2023) ............. 6, 7

*Bank of U.S. v. Halstead*, 23 U.S. (10 Wheat.) 51 (1825)............................................... 12

*Bartfield v. Murphy*, 578 F. Supp. 2d 638 (S.D.N.Y. 2008) ........................................ 10

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
    562 F. Supp. 3d 867 (C.D. Cal. 2021)...................................................... 8

*Commissions Imp. Exp. S.A. v. Republic of Congo*,
    2023 WL 3601035 (S.D.N.Y. May 23, 2023) ......................................... 9

*ConocoPhillips Petrozuata BV v. Bolivarian Republic of Venezuela*,
    2024 WL 4986937 (3d Cir. Dec. 5, 2024)................................................ 9

*Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019) ....................................................1, 8, 9, 10, 11

*EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012) .................................. 12

*First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002) ........................... 12

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)........................................................................ 8

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) ............................... 13

*Imagineering, Inc. v. Lukingbeal*, 1997 WL 363591 (S.D.N.Y. June 30, 1997) ...........................11

*Ings v. Ferguson*, 282 F.2d 149 (2d Cir. 1960).......................................................... 3

*Jacubovich v. State of Israel*, 816 F. App'x 505 (2d Cir. 2020)................................... 13

*Matao Yokeno v. Sawako Sekiguchi*, 754 F.3d 649 (9th Cir. 2014).............................. 14

*Maxwell Commc'n Corp., In re*, 93 F.3d 1036 (2d Cir. 1996) ........................................ 3

*Nykcool A.B. v. Pacific Fruit Inc*, 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012)........................ 10

*Permanent Mission of India to the United States v. City of New York*,
    551 U.S. 193 (2007)....................................................................... 4

*Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024)........................................................ *passim*

*Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365 (2d Cir. 2023) ...................... 14

*Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014) ........................................ 4, 5, 12

*Samantar v. Yousuf*, 560 U.S. 305 (2010) ................................................................................ 4, 5

*Seneca Nation of Indians v. New York*, 383 F.3d 45 (2d Cir. 2004) .............................................. 10

*Terrorist Attacks on Sept. 11, 2001, In re*, 298 F. Supp. 3d 631 (S.D.N.Y. 2018)........................ 10

*Thai Lao Lignite (Thailand) Co. v. Government of Lao People's Democratic Republic*, 924 F. Supp. 2d 508 (S.D.N.Y. 2013) ........................................................ 12

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2023 WL 7182179 (D. Del. Nov. 1, 2023).......................................................................... 8

*Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264 (2023)............................................ 4, 5

*Vitamin C Antitrust Litigation, In re*, 8 F.4th 136 (2d Cir. 2021)................................................ 3

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016)............................................ 10

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................................ 10

*Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100 (1969) ........................................ 10

## Statutes

22 U.S.C. § 8772 .................................................................................................................... 2, 5

28 U.S.C. § 1610(a)(2)................................................................................................................ 5

28 U.S.C. § 1782 ...................................................................................................................... 13

## Rules

Fed. R. Civ. P. 69.................................................................................................................... 9

CPLR § 5223............................................................................................................................11

CPLR § 5225............................................................................................................................ 3, 4, 6

CPLR § 5225(c) ...................................................................................................................... 6

## Other Authorities

Restatement (Fourth) of Foreign Relations Law § 432 (2018).................................................... 4

## INTRODUCTION

The Republic and the United States agree that the Second Circuit's decision in *Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024), is irrelevant to this Court's resolution of Plaintiffs' turnover motion.  Unmoored from *Peterson*, the Republic nevertheless rehashes its previous opposition to the turnover motion, including appeals to international comity, federal common law, and the act-of-state doctrine.  But the *Peterson* decision, by the Republic's and the United States' own admission, says *nothing* about these principles.

As to the remaining discovery disputes, the Republic and YPF fail to articulate a proper basis for denying Plaintiffs' requests.  Both entities argue that alter-ego discovery is per se irrelevant, because Plaintiffs cannot obtain a separate alter-ego judgment against YPF or any other entity.  But Plaintiffs have not asked this Court to make any alter-ego determination.  If they did, *Crystallex* and its progeny make clear that an alter-ego determination would be proper to enable Plaintiffs to enforce their pending judgment against the Republic.  *Peterson* itself recognized the legitimacy of this approach.  Moreover, Plaintiffs may proceed to seek recovery on their judgment against the Republic in foreign jurisdictions as well, confirming that the discovery that Plaintiffs have requested is warranted.

For similar reasons, *Peterson* does not affect Plaintiffs' requests for discovery from BNA.  And to the extent *Peterson* requires an additional jurisdictional finding to compel BNA to produce documents (it does not), BNA has abandoned any potential claim to jurisdictional immunity.

Finally, *Peterson* has no relevance to YPF's proposed orders to show cause for intervention and to enjoin Plaintiffs' post-judgment proceedings on *res judicata* grounds.  Plaintiffs are only seeking *discovery* at this stage, and *Peterson* is *not* a discovery ruling.  As a result, contrary to YPF's position, the *Peterson* decision cannot support YPF's *res judicata*

motion.  Since Plaintiffs have not requested a holding that YPF, or any other entity, is the

Republic's alter ego, YPF's *res judicata* arguments are premature and meritless.  Nothing in

*Peterson* remotely suggests otherwise.

## ARGUMENT

## I.    The Republic and the United States Agree That *Peterson* Has No Effect on Plaintiffs' Turnover Motion, and Their Remaining Arguments Are Meritless

The Republic concedes that *Peterson* is "irrelevant" to Plaintiffs' turnover motion, ECF

698 at 10, and the United States "agrees . . . that the Second Circuit's decision in [*Peterson*] does

not impact this Court's determination of Plaintiffs' Turnover Motion," ECF 702 at 1.  Finding no

footing in *Peterson*, the Republic nonetheless repeats its previous arguments opposing the

motion, including invoking comity, Argentine law, the act-of-state doctrine, international law,

and common law.  ECF 698 at 6-10.  But *Peterson* says nothing about these principles.[1]  For the

reasons Plaintiffs have already explained, the Republic's arguments are meritless, and the Court

should grant Plaintiffs' motion.  Mindful of the Court's Order to address "the applicability and

impact, if any," of the *Peterson* decision, ECF 685, Plaintiffs address the other issues that the

Republic has re-raised only briefly.

First, contrary to the views of the Republic (at 7) and the United States (at 4-5), principles

of international comity do not bar an order directing the Republic to turn over its YPF shares.  In

enacting the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Congress already considered

and resolved any potential international comity concerns.  *See* ECF 587 at 3.  And contrary to the

Republic's assertion, granting Plaintiffs' turnover motion would not force the Republic "to

violate its own laws," ECF 698 at 7, thereby creating a "true conflict" for purposes of

---

[1] The *Peterson* decision is silent on Argentine law, international law, the act-of-state doctrine, and common law, and it references "international comity" only once, quoting Section 8772. *Peterson*, 121 F.4th at 993.

international comity, *In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1049 (2d Cir. 1996).  As previously explained, the Republic can comply with this Court's turnover order *and* Argentine law.  *See* ECF 587 at 5 (referring to Prof. Alberto Bianchi's explanation of Article 10 to underscore that Article 10 does not prevent Argentina from complying with a turnover order); ECF 598 at 2-3 (explaining why a turnover order does not require congressional approval under Argentine law).[2]  The United States' contention (at 1) that principles of "prescriptive comity" preclude CPLR § 5225 from reaching a foreign state's extraterritorial property is similarly misguided—the FSIA already grants immunity to a foreign state's property as a "gesture of comity," but also delineates specific exceptions for cases (like this one) where Congress decided that comity is outweighed by other interests.  *See* ECF 587 at 3; *see also* ECF 684 at 4-5.

Second, the act-of-state doctrine is inapplicable.  *See* ECF 587 at 6.  As this Court already held, Argentina breached its contractual undertakings independent of the expropriation, resulting in this Court's unstayed judgment.  Plaintiffs do not challenge the validity of Argentina's sovereign act of expropriation; instead, the turnover motion holds Argentina to the consequences of breaching its separate contractual obligations.  Moreover, granting Plaintiffs' motion would not violate any "fundamental principle[ ]" of international comity, *Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir. 1960), because, among other reasons, implementing a turnover order would not require the Republic to obtain congressional approval, *see* ECF 587 at 5; ECF 598 at 2-3.

---

[2] The Republic's reference (at 7) to *In re Vitamin C Antitrust Litigation*, 8 F.4th 136, 143 n.8 (2d Cir. 2021), which concerns a violation of Section 1 of the Sherman Act, is unavailing for the same reason:  there is no "true conflict" between complying with the turnover order and Argentine law that would require a distinct prescriptive comity analysis.  *See id.* at 140 (explaining that, in *Vitamin C*, the court had to "decide whether Chinese law made it impossible for the Defendants-Appellants to comply with U.S. antitrust law, such that a so-called 'true conflict' exist[ed]").

Third, even if this Court were to undertake a comity analysis, granting the turnover motion would not conflict with customary international law. *See* ECF 684 at 4-5. The Republic cites the United States' Statement of Interest for the broad proposition that "customary international law . . . bars other countries from seeking to enforce judgments of their courts in the territory of another sovereign." ECF 698 at 8. In turn, the United States' only support for that proposition is the Restatement (Fourth) of Foreign Relations Law § 432 (2018). But as Plaintiffs previously explained, that Restatement section "addresses limits on a state's 'use of force' in the territory of another state, such as sending its law enforcement officers into that state to seize property." ECF 684 at 4. It is not applicable to Plaintiffs' turnover motion. The Republic's reliance (at 8) on *Permanent Mission of India to the United States v. City of New York* is also misguided, as neither the Republic nor the United States can point to any authority establishing that the application of CPLR § 5225 to foreign state property abroad conflicts with "codifi[ed] . . . international law at the time of the FSIA's enactment." 551 U.S. 193, 199 (2007).

Fourth, and contrary to the Republic's (at 8-10) and the United States' (at 6) positions, common law principles of sovereign immunity do not bar Plaintiffs' motion. *See* ECF 587 at 13-15; ECF 684 at 4-5. The Republic's attempt to invoke pre-FSIA common law immunity is foreclosed by the Supreme Court's unequivocal holding that, "after the enactment of the FSIA, the Act—and not the pre-existing common law—indisputably governs the determination of whether a foreign state is entitled to sovereign immunity." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 141 (2014) (cleaned up).[3] The Republic attempts (at 9) to limit *NML* to the

---

[3] Argentina's continued reliance (at 8) on *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264 (2023), and *Samantar v. Yousuf*, 560 U.S. 305 (2010), is befuddling. As Plaintiffs previously explained, ECF 587 at 13-14, those cases held that the FSIA is *inapplicable*, and thus cannot displace pre-existing common law, in the "discrete" and wholly inapposite contexts of criminal

discovery context, but the Court's holding was clear:  "*any* sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text.  Or it must fall."  573 U.S. at 141-42 (emphasis added).[4]  As for the United States, it has still failed to cite a single pre-FSIA case holding that extraterritorial property enjoyed absolute execution immunity in U.S. courts, and has likewise failed to recognize the relevance of the Supreme Court's decision in *NML*.

Instead, the Government spends pages trying to explain away the Second Circuit's recognition in *Peterson* that "[foreign]-based [a]ssets possess no execution immunity."  *Peterson*, 121 F.4th at 996 n.3.  The Government posits that this holding was merely dicta because it was "not necessary to support the judgment reached."  ECF 702 at 6.  But the Second Circuit acknowledged that without this legal backdrop—that foreign-based assets do not enjoy execution immunity—its interpretation of the statute would have rendered Section 8772 a "nullity."  *See Peterson*, 121 F.4th at 995-98 (explaining the difference between the Terrorism Risk Insurance Act and Section 8772 to demonstrate that the court's interpretation of Section 8772's execution-immunity-stripping effect would not render the statute a "nullity"); *see also id.* at 996 n.3 (noting that, because "[foreign]-based [a]ssets possess no execution immunity," its interpretation of Section 8772 properly "construed [the statute] so that effect is given to all its provisions").

The Republic also argues that, even under the FSIA, Plaintiffs fail to "satisfy any of Section 1610(a)(2)'s requirements with respect to the YPF Shares."  ECF 698 at 10-12.  As

---

actions and suits against state officials.  *See Turkiye Halk Bankasi*, 598 U.S. at 267, 275; *Samantar*, 560 U.S. at 308.

[4] For the same reason, the Republic's reference (at 9) to *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989), is unconvincing.  The Supreme Court held in *NML*— almost 25 years after *Amerada Hess* was decided—that the FSIA, and not pre-existing common law, governs any determination of whether a foreign state is entitled to sovereign immunity.  *NML*, 573 U.S. at 141-42.

Plaintiffs have already explained, the Republic is wrong.  *See* ECF 556 at 8-16; ECF 587 at 6-15;
ECF 598 at 3-5.

The Republic's YPF shares are not immune from execution by virtue of being in
Argentina.  In *Bainbridge Fund Ltd. v. Republic of Argentina*, this Court held that a foreign
state's property is not immune from execution under the FSIA "by virtue of being outside the
United States."  690 F. Supp. 3d 411, 415 (S.D.N.Y. 2023) (heading bold and capitalization
omitted).  Attempting an impermissible collateral attack on *Bainbridge*, the Republic now cites
*Attestor Master Value Fund LP v. Republic of Argentina*, 113 F.4th 220, 233 (2d Cir. 2024), *cert.
pet. pending*, No. 24-668 (U.S.), to argue that the "YPF Shares are not and have never been in 'in
the United States.'"  ECF 698 at 11.  But *Attestor* cannot help the Republic.  In that case, the
Second Circuit affirmed the district court's turnover motion against Argentina, clarifying that
CPLR § 5225 authorizes a court with jurisdiction over a foreign state to order it to turn over its
non-immune property.  113 F.4th at 234; *see also* ECF 684 at 3-4.  *Attestor* also does not change
the fact that the Republic "uses" its majority YPF shares for a commercial activity in the United
States, ECF 556 at 9-14; ECF 587 at 7-10, or the fact that the Republic used its YPF shares for
the commercial activity upon which Plaintiffs' claim is based, ECF 556 at 14-16.

Last, the Republic attempts (at 13) to cabin the Second Circuit's observation in *Peterson*
(prompted by the Supreme Court's decision in *NML*) that "a U.S. court may possess the authority
to execute against extraterritorial property."  *Peterson*, 121 F.4th at 1006 n.11.  The Republic
argues that is so only in cases in which "Congress had specifically overridden long-settled
immunity principles for terrorism-related judgments against Iran."  ECF No 698 at 13.  That
proposed limitation, however, finds no support in the text of CPLR § 5225(c) or the FSIA, or in
existing case law.  To the contrary, *Bainbridge* has already clarified, citing *NML*, that "assets are

not immune from turnover under the FSIA by virtue of being outside the United States."

*Bainbridge*, 690 F. Supp. 3d at 415 (heading bold and capitalization omitted).

## II.    *Peterson* Does Not Support the Republic's or YPF's Objections To Producing Alter-Ego Discovery

The Court should compel alter-ego discovery from the Republic and YPF.  The Republic argues that this discovery is irrelevant and disproportional because Plaintiffs would not be able to obtain a separate alter-ego determination against YPF, BCRA, Aerolíneas, BNA, ENARSA, or ARSAT in the future.  *See* ECF 698 at 14-19.  YPF similarly argues that the Court lacks jurisdiction over any alter-ego claim involving it.  *See* ECF 697 at 11-16.  These arguments fail for several independent reasons.

1.    As a threshold matter, this Court already recognized that *Peterson*—a jurisdictional holding that says nothing about the proper scope of discovery in FSIA cases—does not affect Plaintiffs' ability to pursue alter-ego discovery from the Republic.[5]  In clarifying its stay of alter-ego discovery, the Court held that "*Peterson* has no impact on Plaintiffs seeking discovery from the Republic or non-sovereign non-parties because *Peterson* did not concern subject-matter jurisdiction with respect to those entities."  ECF 694 at 2-3.  The Court should reject the Republic's implicit request for reconsideration for the reasons set forth in Plaintiffs' now-granted motion for clarification.  ECF 688; ECF 693.

Similarly, the Court already concluded that alter-ego discovery from YPF *is* relevant and appropriate in scope.  The Court ordered YPF to produce documents related to its potential alter-ego relationship with the Republic and limited the responsive time period to two years.  *See* May

---

[5] Citing nothing, YPF claims (at 14) that, although *Peterson* "involved motions to dismiss and for turnover," its holding extends to "Plaintiffs' pending discovery motions, subpoenas, and discovery requests to and about YPF."  This argument overreads *Peterson* and flies in the face of this Court's prior ruling on *Peterson*'s scope.

28, 2024 Hr'g Tr. 39:20-40:1, 54:5-16.  Indeed, YPF and the Republic cannot claim discovery

about YPF's alter-ego status is irrelevant when *the Republic* invoked YPF's purported corporate

separateness in opposition to Plaintiffs' turnover motion.  *See* ECF 577 at 17-20.  As explained

further below, *Peterson* changes nothing.

      **2.**      The Republic's and YPF's arguments fail because they rest on an incorrect

premise:  in the current posture of the case, Plaintiffs are not asking the Court to find that YPF or

any other instrumentality is an alter ego of the Republic.  No new claims have been filed.  And

contrary to YPF's baseless assertion, Plaintiffs have not "insist[ed] that [the alter-ego] question is

properly before the Court."  ECF 697 at 14.  The Court is not required to resolve premature

jurisdictional arguments about a hypothetical claim.

      **3.**      Even if Plaintiffs were now asking the Court to make an alter-ego finding—which

they are not—*Peterson* would not limit the Court's authority.  Any future alter-ego claim that

Plaintiffs could assert in the United States would be proper under *Crystallex International Corp.

v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), and its progeny.  *See* ECF 695

at 23-26.  Under *Crystallex*, "so long as [the instrumentality] is [the judgment-debtor's] alter ego

under" *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611

(1983) ("*Bancec*"), and the plaintiff brings the attachment action against the judgment-debtor

itself, the court has "the power to issue a writ of attachment on [the instrumentality's] non-

immune assets to satisfy the judgment against the [judgment-debtor] country."  932 F.3d at 138,

139; *see also*, *e.g.*, *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2023 WL 7182179, at

*11 (D. Del. Nov. 1, 2023), *appeals dismissed*, 2024 WL 2830502 (3d Cir. Mar. 4, 2024).  That

is, a judgment-creditor can pursue post-judgment recovery efforts *directly* against the liable

sovereign, using *Bancec* to identify assets from an instrumentality potentially subject to

execution.  *See Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 562 F. Supp. 3d 867, 884-85 (C.D. Cal. 2021) (explaining that "courts have held that [Federal] Rule [of Civil Procedure] 69 authorizes a garnishment action against the assets of an agency or instrumentality of the judgment debtor" and that, under the *Crystallex* rule, a "judgment creditor d[oes] not seek to impose any new obligation on the agency or instrumentality, but rather s[eeks] only to attach property that nominally belonged to the agency or instrumentality but effectually belonged to the judgment debtor"); *see also Commissions Imp. Exp. S.A. v. Republic of Congo*, 2023 WL 3601035, at *12 & n.9 (S.D.N.Y. May 23, 2023) (although "[p]etitioner has not argued for the rule of *Crystallex*," the *Crystallex* decision authorizes the "appl[ication] [of] the *Bancec* factors to attach assets of [the instrumentality] in satisfaction of judgments against [the sovereign judgment-debtor]"); ECF No. 695 at 18-19.  The Third Circuit reiterated this principle just last month.  *See ConocoPhillips Petrozuata BV v. Bolivarian Republic of Venezuela*, 2024 WL 4986937, at *2 (3d Cir. Dec. 5, 2024).

Contrary to YPF's assertion (at 10-11, 15), *Peterson* did not "explicitly disagree[ ]" with the Third Circuit's conclusion in *Crystallex* or hold that "an alter ego claim must be pled in a new action."  Quite the opposite, *Peterson* recognized the validity of the *Crystallex* plaintiffs' chosen mode of recovery and distinguished those valid efforts from the new claim against a new party filed by the plaintiffs in *Peterson*.  *See* 121 F.4th at 1000 n.6 ("In [*Crystallex*], . . . the plaintiffs brought their post-judgment proceeding against the foreign sovereign itself while seeking to attach assets belonging to the sovereign's instrumentality.").  Indeed, YPF recognizes (at 16) that the Court may *sua sponte* adjudicate its jurisdiction at any time and "does not need a pleading from Plaintiffs" to do so, undermining its core argument (at 12-13) that Plaintiffs must at this stage plead an alter-ego claim and "a separate jurisdictional basis as to YPF."

Ignoring *Crystallex*, the Republic similarly argues (at 14-15) that Plaintiffs "could not seek a declaration" from this Court that an instrumentality is an alter ego of the Republic "without joining the purported 'alter ego' entities" first.  The Republic's reference (at 15) to Federal Rule of Procedure 19 is inapposite:  at this juncture, only discovery is being sought, and there are no new "required" parties for purposes of Rule 19.  The Republic's reference (at 15) to *Seneca Nation of Indians v. New York*, 383 F.3d 45 (2d Cir. 2004), and *Bartfield v. Murphy*, 578 F. Supp. 2d 638 (S.D.N.Y. 2008)—two readily distinguishable non-FSIA cases—is without merit for the same reason.

The Republic's "due process" argument (at 14-15) is equally premature and meritless.  As a threshold matter, foreign sovereigns do not have due process rights separate from the FSIA.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 329 (2d Cir. 2016) (holding that "[f]oreign sovereign states do not have due process rights but receive the protection of" the FSIA); *In re Terrorist Attacks on Sept. 11, 2001*, 298 F. Supp. 3d 631, 659 n.19 (S.D.N.Y. 2018) (explaining that "it is well settled that foreign sovereigns do not have standing to assert due process claims").  And if Argentina's instrumentalities had due process rights, the Republic would lack standing to assert them on the instrumentalities' behalf.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").  The Republic's reliance (at 15) on *Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100 (1969), and *Nykcool A.B. v. Pacific Fruit Inc*, 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012), fares no better.  As previously explained, Plaintiffs have not asked this Court to make an alter-ego determination with respect to any non-party, and neither *Zenith* nor *Nykcool* accounts for the possibility of recovering under the *Crystallex* rule, an approach approved by the Second Circuit in *Peterson*.

*See* 121 F.4th at 1000 n.6.  As for *Imagineering, Inc. v. Lukingbeal*, 1997 WL 363591, at *1

(S.D.N.Y. June 30, 1997) (cited by the Republic at 15), it involved a *Peterson*-style claim, not a

*Crystallex* one, and is therefore irrelevant.  In any event, the Republic has waived these

arguments, as it has never raised them before.

4.      The Republic's and YPF's musings about the proper mechanism for bringing a

future alter-ego claim in the United States are not dispositive in any event.  Plaintiffs may assert

such a claim in a foreign jurisdiction—where foreign law applies, and the FSIA and the contours

of *Crystallex* are irrelevant.  *See* ECF 695 at 19.

The Republic suggests (at 19) that "[t]here is no reason to believe" Plaintiffs could bring

enforcement proceedings abroad, but the Republic well knows that Plaintiffs have already done

just that.  In fact, Argentina is aggressively resisting *all* of Plaintiffs' foreign enforcement efforts

across the globe, including in England, Ireland, and a number of other jurisdictions.[6]  These

proceedings independently defeat the Republic's contention that an alter-ego determination

would be "impossible."  As the Republic acknowledges, Plaintiffs' discovery requests can reach

"extraterritorial assets" and support foreign enforcement proceedings "elsewhere."  ECF 698 at

18-19.  Plaintiffs' discovery requests, whether for assets or evidence of alter-ego status, could at

the very least reveal information to support enforcement proceedings *outside* the United States

and, therefore, outside the purview of the FSIA.  That alone meets the "relevan[ce]"

requirement of CPLR § 5223.

---

[6] For example, the Republic has opposed the recognition of this Court's judgment in England, arguing that the Republic never submitted to the U.S. court's jurisdiction, and has even requested a stay of those recognition proceedings, notwithstanding its failure to comply with *this* Court's requirements to stay enforcement.

Plaintiffs' discovery requests are well within the range of requests authorized by other courts. For example, in *Thai Lao Lignite (Thailand) Co. v. Government of Lao People's Democratic Republic*, the plaintiffs obtained and registered a multi-million-dollar award against the Government of the Lao People's Democratic Republic. 924 F. Supp. 2d 508, 510-11 (S.D.N.Y. 2013). Extensive post-judgment discovery proceedings took place, including *inter alia* a request by the plaintiffs for discovery from the Bank of the Lao People's Democratic Republic (the "Lao Bank")—a sovereign instrumentality that the plaintiffs did not name as a party to the suit. *Id.* at 511. Although the court recognized that discovery must be "circumspect" in light of the Lao Bank's status as a "separate entity," the court did not hesitate to compel the Lao Bank to comply with the plaintiffs' discovery requests. *Id.* at 522; *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (explaining that, "as in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way"), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014).

    **5.**    YPF unpersuasively argues (at 13) that it is "in the same jurisdictional position as Bank Markazi." YPF does not deny—because it cannot—that, unlike in *Peterson*, the Second Circuit already concluded that this Court has jurisdiction over YPF. It also agrees (at 14) that this Court currently has "ongoing jurisdiction over the parties . . . to enforce its judgment." The Court's jurisdiction "to enforce its judgment" also necessarily includes the ability to order post-judgment discovery. *See Bank of U.S. v. Halstead*, 23 U.S. (10 Wheat.) 51, 53 (1825); *see also First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002) (holding that the

court's post-judgment subject-matter jurisdiction extends to "discovery regarding a possible alter ego of [the judgment-debtor] that may have assets sufficient to satisfy [the] judgment").[7]

## III.    *Peterson* Does Not Support BNA's Objections To Producing Alter-Ego Discovery

The Court should also compel alter-ego discovery from non-party BNA.  BNA complains that Plaintiffs' December 20, 2024 brief "squeeze[d] in an additional argument . . . that has nothing at all to do with" *Peterson*.  ECF 704 at 1.  That is not true.  As Plaintiffs previously outlined, ECF 695 at 24-25, Plaintiffs' request for discovery from BNA does not involve any substantive attempt to impose direct liability on BNA, and no additional jurisdiction is needed for this Court to compel BNA to produce alter-ego discovery.  If *Peterson* suggested otherwise (it does not), BNA could not rely on it because BNA "long ago abandoned any potential claim to jurisdictional immunity" in connection with Plaintiffs' subpoena.  ECF 695 at 25.  BNA now asserts (at 2) that it has not waived its jurisdictional objections in the event of a future claim by Plaintiffs, but the Court has no need to address that issue now.

In any event, BNA's waiver argument fails on the merits.  Citing *Jacubovich v. State of Israel*, 816 F. App'x 505 (2d Cir. 2020), BNA suggests (at 2) that "engaging in discovery" is insufficient to find implied waiver.  But that is not what *Jacubovich* says.  In that case, the court found that Israel did not "implicitly waive[ ] sovereign immunity by voluntarily complying with [the plaintiffs'] discovery requests in [a separate] [28 U.S.C.] § 1782 proceeding," where Israel "maintained since the beginning of *this* lawsuit that it is immune under the FSIA."  816 F. App'x

---

[7] YPF argues that "this Court was divested of its jurisdiction over the claims against YPF" by the pending appeal.  ECF 697 at 13-14 (emphasis omitted).  But as YPF's own authority underscores, the notice of appeal merely "divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam).

at 509.  Here, BNA readily admits (at 1) that it has never "raised a sovereign immunity defense" in these proceedings.

## IV.    *Peterson* Does Not Support YPF's *Res Judicata* Arguments

The Court should deny YPF's requests for orders to show cause for the reasons outlined in Plaintiffs' prior submissions on this issue.  YPF has waived its *res judicata* arguments, ECF 645 at 8-9; *res judicata* simply does not apply in this case, *id.* at 9-16; and, at the very least, the Court should reject YPF's request for an injunction without prejudice to YPF asserting *res judicata*, in a procedurally appropriate way, in response to a future claim, *id.* at 17.

YPF claims that this Court has no jurisdiction under *Peterson*, but it claims at the same time that this Court can grant its request for an injunction on the basis of *res judicata* as "a non-merits threshold question."  ECF 697 at 17.  That is incorrect, *see Matao Yokeno v. Sawako Sekiguchi*, 754 F.3d 649, 651 (9th Cir. 2014) (noting that "the Supreme Court . . . [has not] previously identified res judicata as such a [non-merits] 'threshold ground' "),[8] but it is also irrelevant, because, as explained above, this Court does have jurisdiction.

YPF makes a final appeal to what is "fair."  ECF 697 at 18.  But relevance and proportionality are the only metrics for "fairness" in this context, and Plaintiffs' requests meet both standards.  Nor should this Court be worried that YPF is somehow unable to meet this Court's discovery orders.  In its own words (at 3), YPF is a "public" company with "over 20,000 employees" that can undoubtedly comply with Plaintiffs' limited requests.  YPF knows how to comply with discovery; it just refuses to do so.

---

[8] YPF cites (at 16-17) to *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365 (2d Cir. 2023), but that case dealt with the distinct issue of collateral estoppel in the context of prudential standing and held only that it could be decided "before addressing a difficult or novel question of constitutional jurisdiction."  *Id.* at 370.

14

**CONCLUSION**

The Court should grant Plaintiffs' turnover motion, *see* ECF 555, and motions to compel

YPF, the Republic, and BNA to produce alter-ego discovery, *see* ECF 599, 626, 657. The Court

should deny YPF's requests for intervention and injunctive relief. *See* ECF 609-610 & 612-613.

Dated: January 24, 2025                Respectfully submitted,

KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.

By:      */s/ Andrew E. Goldsmith*
Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
Email: mhansen@kellogghansen.com
      dho@kellogghansen.com
      agoldsmith@kellogghansen.com

CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV
706 Duke Street
Alexandria, VA 22314
Phone: (202) 742-8900
Fax: (202) 742-8895
Email: paul.clement@clementmurphy.com
      harker.rhodes@clementmurphy.com

KING & SPALDING LLP

Randy Mastro
Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2100
Fax: (212) 556-2222
Email: rmastro@kslaw.com
      lharris@kslaw.com

-and-

Reginald R. Smith
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Phone:  (713) 751-3200
Fax:  (713) 751-3290
Email:  rsmith@kslaw.com

*Counsel for Plaintiffs Petersen Energía Inversora,
S.A.U., Petersen Energía, S.A.U., Eton Park Capital
Management, L.P., Eton Park Master Fund, Ltd.,
and Eton Park Fund, L.P.*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief is 15 pages long, less than the 20 pages authorized by the Court.  See ECF 687 at 2.  In addition, according to the word-processing system used to prepare the foregoing brief (Microsoft Office Word 365), 10 pages (pages 1-10) contain a total of 3,306 words, exclusive of the material omitted under Local Civil Rule 7.1(c), which is fewer than the 3,500 words the Rule permits for reply briefs.  Each of the remaining 5 pages of the brief contains not more than 350 words, exclusive of the material omitted under the Rule.

Dated: January 24, 2025              _/s/ Andrew E. Goldsmith_____
                                      Andrew E. Goldsmith