UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. AND PETERSEN ENERGÍA, S.A.U.,<br><br>Plaintiffs,<br><br>v.<br><br>ARGENTINE REPUBLIC AND YPF S.A.,<br><br>Defendants. | Case Nos.<br>1:15-cv-02739-LAP<br>1:16-cv-08569-LAP |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD. AND ETON PARK FUND, L.P.,

               Plaintiffs,

      v.

ARGENTINE REPUBLIC AND YPF S.A.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# YPF S.A.'S RESPONSE BRIEF REGARDING THE IMPACT OF *PETERSON V. BANK MARKAZI*

1010761965

**TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................... 4

    I.    Plaintiffs Cannot Proceed Against YPF on an Alter Ego Theory Under *Bank Markazi*. ................................................................................................... 4

    II.   Plaintiffs Cannot Use These Post-Judgment Proceedings to Pursue Discovery From or About YPF to Support an Alter Ego Claim. ............................. 7

    III.  Plaintiffs' Remaining Arguments Lack Merit. ....................................................... 10

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Barbara v. MarineMax, Inc.*,
  2013 WL 1952308 (E.D.N.Y. May 10, 2013) ............................................................10

*Barnes v. Guild Mortg./Guild Holding*,
  2024 WL 3833822 (N.D. Ga. July 17, 2024) ..............................................................9

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*,
  2011 WL 830624 (S.D.N.Y. Mar. 9, 2011) .................................................................9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ....................................................................................3, 6

*Epperson v. Ent. Express, Inc.*,
  242 F.3d 100 (2d Cir. 2001) ....................................................................................3, 6

*First City, Texas Houston, N.A. v. Rafidain Bank*,
  281 F.3d 48 (2d Cir. 2002) ..........................................................................................8

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ..........................................................................................1, 4, 6

*Insured Advocacy Grp., LLC v. Spartan Srvs. Corp.*,
  2024 WL 4893580 (S.D.N.Y. Nov. 26, 2024) ............................................................9

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ....................................................................................................9

*Peterson v. Bank Markazi*,
  121 F.4th 983 (2d Cir. 2024) ............................................................................. passim

*Republic of Argentina v. NML Cap.*,
  573 U.S. 134 (2014) ..................................................................................................10

*Simon v. Republic of Hungary*,
  812 F.3d 127 (D.C. Cir. 2016) ....................................................................................8

*Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic [Laos]*,
  924 F. Supp. 2d 508 (S.D.N.Y. 2013) ........................................................................8

*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
   230 F.3d 489 (1st Cir. 2000) .................................................................................... 6, 8

*United States ex rel. Bilotta v. Novartis Pharms. Corp.*,
   2015 WL 13649823 (S.D.N.Y. July 29, 2015) ............................................................. 10

*Wye Oak Tech., Inc. v. Republic of Iraq*,
   24 F.4th 686 (D.C. Cir. 2022) ........................................................................................ 7

**Statutes**

28 U.S.C. § 1330 .................................................................................................................. 9

28 U.S.C. § 1332(a)(4) ........................................................................................................ 9

28 U.S.C. § 1604 .................................................................................................................. 9

As YPF S.A. ("YPF" or "the Company") demonstrated in its opening brief addressing *Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024) ("*Bank Markazi*"), Dkt. 697, the Second Circuit's decision squarely prohibits what Plaintiffs admit is their attempt to hold YPF "legally responsible for satisfying the judgment against the Republic," Dkt. 619[1] at 2, on the theory that YPF is the Republic's alter ego under *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*").  *Bank Markazi* confirms that an alter ego claim like Plaintiffs' is a "substantive theory to establish liability directly on the part of a new party" that requires an independent basis for subject matter jurisdiction.  *Bank Markazi*, 121 F.4th at 999.  Without that, Plaintiffs cannot proceed.

Plaintiffs offer no credible argument to the contrary.  Plaintiffs concede — as they must — the central holding of *Bank Markazi*, admitting that if a party "use[s] *Bancec* to pursue an alter-ego claim against a foreign entity to hold that entity directly liable" for a judgment, then "the court must have a basis for exercising jurisdiction over the entity."  Dkt. 695 ("Br.") at 19. Plaintiffs do not dispute that the Second Circuit has confirmed that ancillary jurisdiction to enforce an existing judgment is not enough to reach the alter ego claim.  *Bank Markazi*, 121 F.4th at 999.  Plaintiffs do not and cannot deny that they have not identified any independent basis for subject matter jurisdiction, and they do not and cannot deny that they have been relying, implicitly and explicitly, on the Court's ancillary jurisdiction to enforce its judgment against the Republic as a sufficient jurisdictional basis to reach their pursuit of YPF as an alleged alter ego potentially liable to satisfy that judgment.  *See* Br. at 17–24.  That cannot continue in the wake of *Bank Markazi*.  Although Plaintiffs have yet to formally plead their threatened alter ego claim against YPF, that failure to plead does not excuse their failure to abide by this Court's

---

[1] "Dkt." refers to entries in docket No. 15-cv-2739.

jurisdictional requirements.  The Court must have jurisdiction over the claims and parties to grant relief; it has no authority otherwise.

Plaintiffs try three routes to avoid the consequences of *Bank Markazi*, none of which has merit.

***First***, Plaintiffs attempt to disavow their prior representations to this Court regarding their intent to pursue YPF as an alter ego liable for the judgment against the Republic, in order to argue that their pursuit of YPF is not "liability-shifting."  But that argument is not credible in the face of Plaintiffs' repeated insistence that "YPF is legally responsible for satisfying the judgment against the Republic because it is currently the Republic's alter ego," Dkt. 619 at 2, and that as a "state instrumentality," YPF "may be liable for the state's debts," Dkt. 563 at 1.  Plaintiffs relied on these representations to seek relief from this Court; they even told their investors that these tactics will gain them leverage.  *See* Burford Capital Q3 2024 Earnings Call Tr. at 7 ("The goal of enforcement campaigns is to apply pressure and create friction so that a rational negotiation can occur. . . . [W]e will try many gambits that won't work as a strictly legal matter[.]").  They now try to disavow these statements to avoid the Court's jurisdictional limits, arguing for the first time that "no pending motion" seeks to hold an instrumentality "directly liable" or "***even raises the prospect*** of that scenario." Br. at 1.  But those arguments are not credible in the face of this record.  For months, Plaintiffs have told this Court — and YPF, and its shareholders, creditors, employees, and commercial counterparties — that they are seeking to hold YPF "directly liable" for the judgment against the Republic.  They have insisted on that, benefitted from it, and cannot expect the Court to disregard it now.

***Second***, Plaintiffs seek to recharacterize their pursuit of YPF for a judgment it does not owe as a mere "collection" effort that does not impose "liability."  Plaintiffs posit that these

1010761965                                                        2

"collection" efforts may take the form of fraudulent conveyance claims like those in *Epperson v. Ent. Express, Inc.*, 242 F.3d 100 (2d Cir. 2001), or attachment like those in the Third Circuit's decision in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), and that, if so, they may be able to conjure some route to recover assets from an instrumentality that would not require an independent basis for jurisdiction. But that is not what is at issue here. By Plaintiffs' own account, they are pursuing YPF for its own assets and liability as an alleged alter ego, and not merely as a custodian or transferee of the Republic's assets. If they attempted some hypothetical other route, the out-of-circuit law in *Crystallex* would not govern here, and *Bank Markazi* rejected its approach. When Plaintiffs use this Court's authority and jurisdiction to litigate the question of YPF's liability to satisfy the judgment against the Republic with YPF's assets — which is exactly what they have said they are doing — they fall squarely within *Bank Markazi*.

***Third***, Plaintiffs ask this Court to allow discovery to proceed as to YPF's alleged alter ego status even though the Court does not have subject matter jurisdiction over that claim, on the theory that "discovery is simply discovery — it does not seek to impose liability at all," Br. at 18, and that jurisdiction to allow it extends from the underlying litigation. But there is no such thing as a free-standing right to discovery. Discovery, too, requires a basis and jurisdiction, assessed by claim and throughout the case; those jurisdictional bases narrow where the target is a sovereign instrumentality in light of the Foreign Sovereign Immunities Act ("FSIA"). Plaintiffs have alleged no jurisdictional basis over YPF that the Court can exercise.

Plaintiffs have no credible path forward in light of *Bank Markazi* and their position to date. And, as YPF demonstrated in its opening brief, the Second Circuit's decision underscores the need for this Court to grant YPF's res judicata motion. That threshold issue bars these

successive efforts to try to recover a judgment that Plaintiffs already fully and finally litigated against YPF — and lost. Granting that preclusion motion would ensure the finality of the Court's decision and the repose to which YPF is entitled.

## ARGUMENT

I.   **Plaintiffs Cannot Proceed Against YPF on an Alter Ego Theory Under *Bank Markazi*.**

Plaintiffs do not dispute the central holding of *Bank Markazi* that an action to establish liability on the part of an entity not otherwise liable — including through alter ego or veil-piercing theories — requires an independent basis for subject matter jurisdiction over that entity. In fact, they expressly concede that under *Bank Markazi*, if a creditor "use[s] *Bancec* to pursue an alter-ego claim against a foreign entity to hold that entity directly liable," then "the court must have a basis for exercising jurisdiction over the entity." Br. at 19.

Plaintiffs have consistently represented that they *are* seeking to "use *Bancec* to pursue an alter-ego claim against [YPF] to hold [it] directly liable" for the judgment against the Republic, but have failed to establish any independent basis for subject matter jurisdiction over YPF for such a claim, so *Bank Markazi* prohibits the Court from adjudicating it — either on the merits, or through the back-door of discovery.

The basic components of a liability-shifting theory requiring subject matter jurisdiction, as addressed in *Bank Markazi*, are present here. That YPF is an entity "not otherwise liable" for the judgment is beyond dispute; it was dismissed and judgment entered in its favor. Dkts. 437, 498. That Plaintiffs seek to hold YPF "legally responsible for satisfying the judgment" and "liable for the state's debts" is just as clear. Plaintiffs' representations to this Court to that effect are unequivocal. They include Plaintiffs' statements that:

- "[T]he discovery goes to the distinct issue of whether YPF ***is legally responsible for satisfying the judgment against the Republic because it is currently the Republic's***

> *alter ego*[.]" Dkt. 619 at 2.

- "The potential future assertion is that YPF is the Republic's alter ego today and ***therefore is a potential source of funds to satisfy the Republic's judgment***." Dkt. 645 at 15.

- "Plaintiffs may argue that YPF today is an appropriate ***source of funding to satisfy*** Plaintiffs' judgment against the Republic[.]" Dkt. 645 at 1.

- There is a "question of whether YPF today is an alter ego of the Republic ***such that Plaintiffs can look to its assets to satisfy this Court's judgment***." Dkt. 645 at 1.

- "[A]lter ego discovery" from YPF is warranted because "a state instrumentality may be ***liable for the state's debts***." Dkt. 563 at 1–2.

- Criticizing YPF's order to show cause as an effort "to enjoin Plaintiffs from ***enforcing the judgment against YPF***." Dkt. 626 at 2.

Having made these representations to obtain discovery and to create a cloud of uncertainty over YPF, Plaintiffs cannot disavow them at their convenience to avoid jurisdictional requirements. Plaintiffs stated that they seek to hold YPF liable for the judgment against the Republic. That is, on its face, an attempt to impose liability for a judgment that YPF does not owe. Under *Bank Markazi*, that attempt requires an independent basis for subject matter jurisdiction that Plaintiffs have not pled or even proffered. The arguments Plaintiffs offer to avoid the consequences of their prior representations, Dkt. 695, all fall short.

Plaintiffs begin by attempting to recharacterize their potential alter ego claim against YPF as a mere "collection" effort against the Republic to try to salvage jurisdiction. Plaintiffs claim that if they focus on YPF's supposed alter ego status "today," rather than at the time they contend damages accrued, their claim is merely a "collection mechanism" and not liability-shifting. Br. at 20–23. But that distinction takes too narrow a view of the question at the heart of *Bank Markazi*'s analysis. Even if that is Plaintiffs' chosen approach, it seeks to impose liability on YPF for a judgment it does not owe. Today, YPF does not bear any liability, yet Plaintiffs are asking whether they "***can look to its assets to satisfy this Court's judgment***" against the

Republic.  Dkt. 645 at 1.  That is — by any name — an attempt to shift liability to an entity that is not liable and falls within the scope of *Bank Markazi*.  *See Bank Markazi*, 121 F.4th at 999.  Calling it a "collection mechanism" does not alter the nature of the claim.

Neither of Plaintiffs' attempts to identify alternate "collection" claims overcome this fundamental issue.  Plaintiffs' contention that their threatened alter ego claim against YPF would be equivalent to the fraudulent conveyance claim in *Epperson*, Br. at 22, ignores both the legal standards governing such a claim, and the facts that Plaintiffs have never articulated a fraudulent conveyance claim as to YPF and have never indicated that they seek to recover fraudulently-conveyed assets.  To the contrary, they have been quite clear that they are not seeking the Republic's assets from YPF, but hoping to find a path to reach YPF's own assets to satisfy the judgment against the Republic.  *See* Dkt. 645 at 1 ("whether YPF today is an alter ego of the Republic such that Plaintiffs can look to its assets to satisfy this Court's judgment").  That puts their efforts squarely in the category of those that require a separate jurisdictional hook.  *See U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 498 (1st Cir. 2000).

Plaintiffs' suggestion that the Third Circuit's decision in *Crystallex* offers a path forward fares no better.  Plaintiffs argue that *Crystallex* does not require an independent basis for jurisdiction over the instrumentality, so long as an attachment action is brought against the judgment debtor only, and the instrumentality is determined to be its alter ego.  Br. at 20–21.  But this is not the Third Circuit and the Third Circuit's approach is broader than the Second Circuit accepts.  *Compare Crystallex*, 932 F.3d at 138 (holding "[t]he District Court properly used *Bancec* to extend its jurisdiction to assets held nominally by" the alleged alter ego even though it was "a non-party to the merits action"), *with Bank Markazi*, 121 F.4th at 1000 n.6 ("[T]o the extent that the *Crystallex* court based its jurisdictional holding on a determination that

ancillary jurisdiction extends to post-judgment proceedings against a foreign sovereign's instrumentality that was not party to the underlying merits proceeding, we disagree."). Plaintiffs do not address the Second Circuit's rejection of *Crystallex*'s reasoning in *Bank Markazi*, 121 F.4th at 1000 n.6, which declines to extend ancillary jurisdiction to alter ego claims against the instrumentality — and applies equally to YPF as a prevailing party, which, like an entity that was never a party, owes no liability for the judgment in the underlying merits proceeding. The unusual circumstances presented in an out-of-circuit case do not excuse Plaintiffs' failure to comply with the law of the Second Circuit, which requires them to plead subject matter jurisdiction over their alter ego pursuit of YPF.

Plaintiffs' own statements put them squarely within the scope of *Bank Markazi*; whatever they call it, they are attempting to use YPF's own assets to satisfy a judgment that the Company does not owe, without establishing that it is a claim this Court has jurisdiction to adjudicate.

## II. Plaintiffs Cannot Use These Post-Judgment Proceedings to Pursue Discovery From or About YPF to Support an Alter Ego Claim.

Plaintiffs' continued demands for discovery through this Court in support of an unpled claim that the Court lacks jurisdiction to decide should be denied. Plaintiffs argue that because the "Second Circuit long ago held that this Court has jurisdiction over YPF under the FSIA's commercial-activity exception," Br. at 23, the Court has jurisdiction to allow discovery of their new alter ego theory. That argument treats YPF like a judgment debtor subject to the Court's ancillary jurisdiction, not a prevailing party that is the target of an attempted new claim. Plaintiffs' argument ignores the facts, and the Court's jurisdiction does not extend so far.

It is black letter law that a court has an "established ongoing duty . . . to determine its own jurisdiction at every stage of the legal proceedings," *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 699 (D.C. Cir. 2022) (Jackson, J.), and that subject matter jurisdiction must

be assessed by claim, *Simon v. Republic of Hungary*, 812 F.3d 127, 141 (D.C. Cir. 2016) ("We make FSIA immunity determinations on a claim-by-claim basis, and claims against foreign sovereigns that do not fall within the ambit of an FSIA exception are barred."). A finding of jurisdiction over one claim at one point in time does not confer carte blanche rights to pursue the defendant indefinitely. In refusing to extend ancillary jurisdiction to what is effectively a new claim, *Bank Markazi* adheres to this core principle, too. *See Bank Markazi*, 121 F.4th at 999–1000; *see also U.S.I. Props. Corp.*, 230 F.3d at 499 ("residual federal jurisdiction from the original action does not flow to [alter ego] claim").

Plaintiffs ignore all of this. Plaintiffs continue to invoke the Court's finding of jurisdiction over their prior claims against YPF, while ignoring the on-going obligation to assess jurisdiction, and that this Court was divested of its jurisdiction over dismissed claims upon Plaintiffs' filing a notice of appeal. Plaintiffs suggest jurisdiction to order discovery from YPF is somehow more expansive than this Court's subject matter jurisdiction, but neither of the cases Plaintiffs rely on supports that conclusion as to YPF. *See* Br. at 23–24. *First City, Texas Houston, N.A. v. Rafidain Bank* involved a Rule 45 subpoena to a sovereign instrumentality that ***was itself*** a judgment debtor and had waived its immunity. 281 F.3d 48, 54 (2d Cir. 2002). Plaintiffs omit the key fact in *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic [Laos]* that "Petitioners have not directed discovery at third parties, but have simply requested [the judgment debtor] to provide account information about ***its own*** assets, whether held by the [instrumentality] or some other institution." 924 F. Supp. 2d 508, 519 (S.D.N.Y. 2013) (emphasis added). YPF did not waive its immunity or consent to jurisdiction; it is not a judgment debtor; and it is not subject to discovery on these grounds. Plaintiffs identify no case permitting what is effectively pre-complaint discovery from a non-

party in circumstances remotely like this.

Plaintiffs' insistence on a free-standing right to alter ego discovery from an instrumentality, without a jurisdictional prerequisite, has no basis in law.  *See, e.g.*, *Barnes v. Guild Mortg./Guild Holding*, 2024 WL 3833822, at *2 (N.D. Ga. July 17, 2024) ("Plaintiff does not have a freestanding 'substantive right' to discovery.").  In fact, the Court should be particularly reluctant to allow such broad discovery against a sovereign instrumentality, which is "immune from the jurisdiction of the courts of the United States and of the States" under 28 U.S.C. § 1604, except in the very limited circumstances set forth in the FSIA not present here.  The FSIA's only two exceptions — §§ 1330 and 1332(a)(4) — do not apply where YPF is not suing anyone, and where Plaintiffs have made no formal attempt to satisfy the prerequisites for an "action against a foreign state" in which a "claim for relief" is asserted.  *See* Dkt. 697 at 15.  Instead of attempting to satisfy the FSIA's requirements — which they cannot — Plaintiffs seek to avoid its limits by speculating that "[i]t is entirely possible that discovery obtained under the supervision of this Court could reveal information to support enforcement proceedings *outside* the United States and, therefore, outside the purview of the Foreign Sovereign Immunities Act." Br. at 1.  But that is not a basis to allow discovery from YPF.[2]  "[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."  *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, 2011 WL 830624, at *1 (S.D.N.Y. Mar. 9, 2011) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978)); *see also Insured Advocacy Grp., LLC v. Spartan Srvs. Corp.*, 2024 WL

---

[2]   Plaintiffs misstate the scope of prior discovery, saying that "YPF produced only 65 documents (most of which are publicly available)," Br. at 8, when in fact, YPF has made four productions, consisting of 1,338 documents and 10,369 pages, and including 923 emails that resulted from applying Plaintiffs' 73 search terms to the files of 18 email custodians.

4893580, at *3 (S.D.N.Y. Nov. 26, 2024) ("A party cannot ordinarily use Rule 34 or Rule 45 to hunt for evidence to support a claim it has not been able to plead."); *Barbara v. MarineMax, Inc.*, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) ("Rule 26(b)(1) 'does not allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'").

*Bank Markazi* also counsels against additional alter ego discovery *about* YPF, even if sought from other entities.  As the Supreme Court has recognized, even the "permissive" rules governing post-judgment discovery have limits and "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place."  *Republic of Argentina v. NML Cap.*, 573 U.S. 134, 144 (2014); *see also United States ex rel. Bilotta v. Novartis Pharms. Corp.*, 2015 WL 13649823, at *2 (S.D.N.Y. July 29, 2015).

The Court should deny both of Plaintiffs' pending discovery motions relating to alter ego discovery about YPF, and enjoin any further alter ego discovery from or about YPF.

### III.    Plaintiffs' Remaining Arguments Lack Merit.

Plaintiffs scatter a handful of arguments in their brief attacking YPF's preclusion and intervention motions as violative of the Local Rules, untimely, and — in somewhat contradictory fashion — premature.  Br. at 18–19.  YPF addressed these arguments in its briefing on those pending motions, and relies on and incorporates those responses here.  *See* Dkts. 609–18, 650.

### CONCLUSION

*Bank Markazi* makes clear Plaintiffs' efforts to pursue YPF as an alleged alter ego have no path forward.  The Court should deny Plaintiffs' pending motions seeking discovery from and about YPF, and grant YPF's motion to enjoin Plaintiffs from any further pursuit of it as an alter ego, including as to any further discovery from or about YPF's putative alter ego status.

Dated: January 24, 2025
    New York, New York

               Respectfully submitted,

               DEBEVOISE & PLIMPTON LLP

               */s/ Mark P. Goodman*
               Mark P. Goodman
               Shannon Rose Selden
               James J. Pastore
               Wendy B. Reilly

               66 Hudson Boulevard
               New York, NY 10001
               (212) 909-6000 (phone)
               mpgoodman@debevoise.com
               srselden@debevoise.com
               jjpastore@debevoise.com
               wbreilly@debevoise.com

               *Counsel to YPF S.A.*

## CERTIFICATE OF COMPLIANCE

    I, Mark P. Goodman, hereby certify that the foregoing memorandum complies with the word limits set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and the page limit set forth in the Court's Order dated November 25, 2024 (Dkt. 687). According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by Local Rule 7.1(c), this memorandum contains 3,383 words.

                                                      */s/ Mark P. Goodman*
                                                      Mark P. Goodman