**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------- x
PETERSEN ENERGÍA INVERSORA,
S.A.U. and PETERSEN ENERGÍA, S.A.U.,

        Plaintiffs,

        v.

ARGENTINE REPUBLIC and YPF S.A.,

        Defendants.
------------------------------- x

Case No.: 1:15-CV-02739 (LAP)

------------------------------- x
ETON PARK CAPITAL MANAGEMENT,
L.P., ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

        Plaintiffs,

        v.

ARGENTINE REPUBLIC and YPF S.A.,

        Defendants.
------------------------------- x

Case No.: 1:16-CV-08569 (LAP)

# ARGENTINA'S RESPONSE SUBMISSION WITH RESPECT TO THE COURT'S NOVEMBER 15, 2024 ORDER

Robert J. Giuffra Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000

January 24, 2025

*Counsel for the Argentine Republic*

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ........................................................................................1

**DISCUSSION** ..................................................................................................................2

    **I.**    **THE COURT MUST DENY PLAINTIFFS' TURNOVER MOTION**............ 2

    **II.**   **BANK MARKAZI CONFIRMS THAT FURTHER ALTER EGO DISCOVERY IS UNWARRANTED HERE.** ...................................................... 5

**CONCLUSION** ..............................................................................................................10

-ii-

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*,
  589 F. App'x 16 (2d Cir. 2014) ...................................................................................9

*Bainbridge Fund Ltd.* v. *Republic of Argentina*,
  690 F. Supp. 3d 411 (S.D.N.Y. 2023) ..........................................................................4

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) .........................................................................................7

*EM Ltd.* v. *BCRA*,
  800 F.3d 78 (2d Cir. 2015) ...........................................................................................6

*Epperson* v. *Ent. Express, Inc.*,
  242 F.3d 100 (2d Cir. 2001) .........................................................................................7

*Gujarat State Petroleum Corp.* v. *Republic of Yemen*,
  2022 WL 1567464 (S.D.N.Y. May 18, 2022) .............................................................9

*Hercaire Int'l, Inc.* v. *Argentina*,
  821 F.2d 559 (11th Cir. 1987) .....................................................................................7

*Imagineering, Inc.* v. *Lukingbeal*,
  1997 WL 363591 (S.D.N.Y. June 30, 1997) ...............................................................8

*Nykcool A.B.* v. *Pacific Fruit Inc.*,
  2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012) ..........................................................6, 8

*Peacock* v. *Thomas*,
  516 U.S. 349 (1996) .....................................................................................................7

*Peterson* v. *Bank Markazi*,
  121 F.4th 983 (2d Cir. 2024) ............................................................................. passim

*Republic of Argentina* v. *NML Cap., Ltd.*,
  573 U.S. 134 (2014) .....................................................................................................7

*Walters* v. *Indus. & Com. Bank of China, Ltd.*,
  651 F.3d 280 (2d Cir. 2011) .....................................................................................3, 7

**Statutes**

22 U.S.C. § 8772 ..................................................................................................................3

-iii-

28 U.S.C. § 1610..................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 26.................................................................................................................9

National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, §
    1226, 133 Stat. 1198 (2019) ........................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs' latest submission on *Peterson* v. *Bank Markazi*, 121 F.4th 983 (2d Cir. 2024), confirms why this Court should deny Plaintiffs' motion for an unprecedented order requiring the Republic of Argentina to bring its sovereign property held in Argentina to the United States for turnover to Plaintiffs. It also confirms why the Court should deny Plaintiffs' effort to obtain further irrelevant—indeed, unusable—"alter ego" discovery from six of the Republic's instrumentalities—YPF S.A. ("YPF"), Banco Central de la República Argentina ("BCRA"), Aerolíneas Argentinas S.A. ("Aerolíneas"), Banco de la Nación Argentina ("BNA"), Energía Argentina S.A. ("ENARSA"), and Empresa Argentina de Soluciones Satelitales S.A. ("ARSAT").

As Plaintiffs concede, *Bank Markazi* "has no effect" on their turnover motion because it "did not change existing law" governing the immunity of sovereign property from execution. (Pls. Br. (ECF No. 695)[1] at 12.) But Plaintiffs misstate the "existing law" governing their motion. As explained by both the Republic (Rep. Br. (ECF No. 698) at 6–13), and the United States (U.S. Br. (ECF No. 702) at 4–8), federal common law, international comity, international law, and the act-of-state doctrine, as well as the Foreign Sovereign Immunities Act ("FSIA") require this Court to deny Plaintiffs' turnover motion.

*Bank Markazi* also confirms that further alter-ego discovery is irrelevant *and* will be unusable. As the Second Circuit has made clear, Plaintiffs need a separate jurisdictional basis to bring alter ego claims seeking to execute against the assets of YPF, BCRA, Aerolíneas, BNA, ENARSA, or ARSAT, even if those entities *were* alter egos of the Republic (which they are not). 121 F.4th at 998–1001. *Bank Markazi* directly rejects Plaintiffs' theory that they can pursue

---

[1] *Petersen* ECF No. 695; *Eton Park* ECF No. 617. All subsequent references to "ECF No." are to the docket filings in *Petersen Energía, et al.* v. *Argentine Republic*, 15-cv-02739-LAP.

supposed alter ego assets without ever obtaining jurisdiction over the alleged alter egos. *See id.* at 1000 & n.6. Because Plaintiffs cannot bring an alter ego claim to hold these entities liable for the *Petersen* and *Eton Park* judgments, this Court should stop further alter ego discovery.

## DISCUSSION

I.   **THE COURT MUST DENY PLAINTIFFS' TURNOVER MOTION.**

The parties agree that *Bank Markazi* "did not change existing law with respect to execution immunity or the contours of CPLR § 5225." (Pls. Br. at 12; *see also* Rep. Br. at 1 (same); U.S. Br. at 1 ("*Bank Markazi* does not impact this Court's determination of Plaintiffs' Turnover Motion . . . .").) But Plaintiffs are wrong in claiming that *Bank Markazi* supports their "reading of Second Circuit law" to authorize turnover of the Republic's sovereign property in Argentina. (Pls. Br. at 13.) Instead, as the Second Circuit explained in *Bank Markazi*, Congress expressly authorized the turnover of Iranian assets held outside the United States by a foreign securities intermediary doing business in the United States to satisfy a terrorism-related judgment. By contrast, Congress has enacted no such statute displacing federal common law and all other immunities for the Republic's assets.

1. Because *Bank Markazi* did not upset the settled law of execution immunity, federal common law continues to protect absolutely the Republic's sovereign property in Argentina from execution and turnover. (*See* Rep. Opp. Br. (ECF No. 577) at 24–30; *see also* U.S. Stmt. of Interest (ECF No. 679) at 3–5.) As the Republic and the United States have explained, this longstanding federal common law displaces N.Y. C.P.L.R. § 5225 to the extent that this state statute may otherwise allow turnover of overseas assets. (Rep. Opp. Br. at 26–27; *see also* U.S.

-2-

Stmt. of Interest at 5.)[2]  And, in any event, international comity, international law, the act of state doctrine, and the FSIA also continue to bar turnover of the Republic's Class D shares of YPF (the "YPF Shares").[3]  (*See* Rep. Opp. Br. (ECF No. 577) at 7–24; *see also* U.S. Br. at 5 (same).)

       2.      Plaintiffs claim that *Bank Markazi* "says nothing" about these fundamental legal principles.  (Pls. Br. at 14.)  Not so.  The operative statute in *Bank Markazi*, Section 8772, expressly made the relevant Iranian assets—located outside the United States—subject to execution, attachment, or turnover "notwithstanding any other provision of law, including any provision of law relating to sovereign immunity," and "without regard to concerns relating to international comity."  22 U.S.C. § 8772(a)(1); *Bank Markazi*, 121 F. 4th at 992–93.

       Congress's enactment of Section 8772 is the "exception that proves the rule."  Absent such a statute, federal common law, the act-of-state doctrine, international comity, international law, and other provisions of law "relating to sovereign immunity," as well as the FSIA, continue to protect sovereign assets located overseas, which are absolutely immune from attachment.  In other words, that Section 8772 explicitly abrogated immunity from execution for overseas property of Iran confirms that such property would otherwise be immune.  *See* 22 U.S.C. § 8772(a)(1)(B) (abrogating immunity for any asset that "would be blocked if the asset were located in the United States"); *see also* National Defense Authorization Act for Fiscal Year 2020,

---

[2]    Plaintiffs also claim that *Bank Markazi* did not change existing law of *jurisdictional* immunity over judgment-debtors (*see* Pls.' Br. at 14), but jurisdictional immunity operates independently from execution immunity.  *See Bank Markazi*, 121 F.4th at 998; *see also Walters* v. *Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 288–89 (2d Cir. 2011) (finding that jurisdictional immunity and execution immunity under the FSIA "operate independently" and "the execution immunity afforded sovereign property is broader than the jurisdictional immunity afforded the sovereign itself").

[3]    As noted by the United States, the FSIA "did not abrogate common law principles" of immunity.  (U.S. Stmt. of Interest at 3–5; *see also* U.S. Br. at 6–8 (same).)

Pub. L. No. 116-92, § 1226, 133 Stat. 1198, 1645–46 (2019) (expanding ability to execute on Iranian assets outside of the United States).

Thus, under federal common law, without an overriding statutory directive, the Republic's assets in Argentina are absolutely immune from attachment. Indeed, "it would make no sense to conclude that Congress meticulously delineated [in the FSIA] the circumstances under which execution on foreign-state-owned assets in the United States would be allowed, but, through its silence, abandoned all such limits for assets located abroad." (U.S. Br. at 6.) In addition, the long-settled and uncontroversial international comity principles that apply here—the respect that sovereign nations must accord to each other—bar the extraordinary turnover order that Plaintiffs seek. As the United States has explained, *Bank Markazi* "does not alter the prescriptive comity analysis that this Court must undertake—which precludes application of the New York turnover statute to Argentina's foreign state property located abroad." (U.S. Br. at 4–5; *see also* Rep. Br. at 7 (explaining comity arguments); Rep. Opp. Br. at 7–10 (same); U.S. Stmt. of Interest at 5–8 (same).)

3. To try to evade settled federal common law and other bedrock law, Plaintiffs rely on this Court's decision in *Bainbridge Fund Ltd.* v. *Republic of Argentina*, 690 F. Supp. 3d 411 (S.D.N.Y. 2023), which was issued before the Court had the benefit of the United States' position on these issues. Plaintiffs also cite the Second Circuit's footnote in *Bank Markazi*, stating that in certain circumstances "a U.S. court may possess the authority to execute against extraterritorial property." (Pls. Br. at 13 (quoting *Bank Markazi*, 121 F.4th at 1006 n.11).) But as the Republic explained, whatever N.Y. C.P.L.R. § 5225 may allow regarding turnover orders directed to a non-sovereign *third-party garnishee* like Clearstream, that is irrelevant where Plaintiffs seek turnover from a foreign sovereign of sovereign assets within its own borders. (Rep.

Br. at 12–13.)  There is no "general" principle that New York courts can reach such extraterritorial sovereign property, *Bank Markazi*, 121 F.4th at 1006, which would be contrary to fundamental principles of international comity, the act-of-state doctrine, and international law.  *See* U.S. Stmt. of Interest at 7–8.  In sum, nothing in Plaintiffs' submission supports their unprecedented request for a turnover order of the Republic's sovereign property in Argentina.

There is more.  The YPF Shares are independently immune from execution under 28 U.S.C. § 1610(a) of the FSIA because the YPF Shares are not "used for a commercial activity in the United States," *or* "used for the commercial activity upon which the claim is based."  (*See* Rep. Br. at 10–12; Rep. Opp. Br. at 10–24.)  *Bank Markazi* did not address these elements of the Court's required execution immunity analysis at all.

## II. *BANK MARKAZI* CONFIRMS THAT FURTHER ALTER EGO DISCOVERY IS UNWARRANTED HERE.

Under *Bank Markazi*, Plaintiffs cannot bring alter ego claims against YPF, BCRA, Aerolíneas, BNA, ENARSA, or ARSAT to try to hold them liable for the *Petersen* and *Eton Park* judgments because they can never establish jurisdiction for such claims.  Thus, further discovery about these entities is pointless even if they were alter egos (which they are not).  It makes no difference that *Bank Markazi* "is not a discovery ruling" and "does not implicate jurisdictional immunity as to the Republic."  (Pls. Br. at 17.)  Under settled discovery rules, Plaintiffs' requests for discovery to support claims that do not and cannot exist should not be allowed.

1. As the Republic has explained, under *Bank Markazi*, "alter ego" allegations cannot establish subject matter jurisdiction over sovereign instrumentalities.  (Rep. Br. at 14–16.) Instead, under the FSIA, a plaintiff must establish a separate basis for jurisdiction over a sovereign instrumentality to seek execution of its assets.  *See Bank Markazi*, 121 F.4th at 1000 ("[W]e are aware of no case—and the Plaintiffs cite none—in which this Court has held that *Bancec* may be

used to extend ancillary jurisdiction from a merits proceeding against a foreign sovereign to a new proceeding seeking to establish liability for the judgment on the part of the foreign sovereign's agency or instrumentality.") (citing *First Nat'l City Bank* v. *Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*")).

Sovereign instrumentalities have a due process right to respond to proceedings seeking to enforce a judgment against their assets and would be required parties to any proceeding to determine alter ego status under Federal Rule of Civil Procedure 19. *See Nykcool A.B.* v. *Pacific Fruit Inc.*, 2012 WL 1255019, at *5 (S.D.N.Y. Apr. 16, 2012) (Peck, J.) (citations omitted) (due process will only be satisfied "[w]hen the alleged 'alter ego' is a party to the action where the 'alter ego' status is litigated").

Here, this Court has no separate basis under the FSIA for exercising jurisdiction over YPF, BCRA, Aerolíneas, BNA, ENARSA, or ARSAT on an alter ego claim: none of the exceptions to jurisdictional immunity in 28 U.S.C. § 1605 apply. *See EM Ltd.* v. *BCRA*, 800 F.3d 78, 98 (2d Cir. 2015) (in lawsuit seeking to hold sovereign instrumentality liable as alter ego for debts of sovereign, "gravamen" of the complaint that must satisfy § 1605 is "the alter ego claim, which turns on" the facts allegedly establishing alter ego status). In particular, because those entities are located in Argentina, and their alleged alter ego status is not based on a commercial activity in or directly affecting the United States, or an act in the United States in connection with a commercial activity elsewhere, Plaintiffs cannot satisfy the FSIA's commercial activity exception. *See* Pls. Oct. 11, 2024 Ltr. (ECF No. 675) at 3–6 (Plaintiffs' allegations underlying alter ego claim against Aerolíneas, BNA, ENARSA, and ARSAT, all occurring in Argentina); May 28, 2024 Hearing Tr. (ECF No. 592) at 29:22–31:25 (Plaintiffs' allegations underlying alter ego claim against YPF and BCRA, all occurring outside the U.S.).

As a result, Plaintiffs cannot obtain any alter ego determinations about these entities—and thus cannot enforce the *Petersen* and *Eton Park* judgments as to their assets. (Rep. Br. at 17–19.) Because alter ego claims against these entities are not possible, information about purported alter ego relationships is not relevant, and therefore not discoverable, under Rule 26. *See Republic of Argentina* v. *NML Cap., Ltd.*, 573 U.S. 134, 144 (2014) ("[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place.").

2.  Citing *Crystallex International Corp.* v. *Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), Plaintiffs claim that they need not establish any jurisdiction *at all* over a foreign instrumentality before obtaining a ruling on its alter ego status and executing on its assets. Plaintiffs are wrong in claiming that they can "pursue [] post-judgment recovery efforts directly against the liable sovereign, using *Bancec* merely to identify assets from an instrumentality potentially subject to execution." (Pls. Br. at 19–20.)

*Bank Markazi* expressly rejected this reasoning from *Crystallex*: the Second Circuit specifically "disagree[d]" with the *Crystallex* court's "determination that ancillary jurisdiction extends to post-judgment proceedings against a foreign sovereign's instrumentality that was not party to the underlying merits proceeding." *Bank Markazi*, 121 F.4th at 1000 n.6. Nor has any other circuit followed the now-rejected *Crystallex* holding. In each of Plaintiffs' authorities outside the Third Circuit (Pls. Br. at 20–23), the alleged alter ego *was* a party to proceedings seeking to execute on its assets to satisfy a judgment. *Hercaire Int'l, Inc.* v. *Argentina*, 821 F.2d 559, 563 (11th Cir. 1987) (alleged alter ego was a defendant); *Epperson* v. *Ent. Express, Inc.*, 242 F.3d 100, 102 (2d Cir. 2001) (alleged alter egos joined as co-defendants in amended complaint); *Peacock* v. *Thomas*, 516 U.S. 349, 351 (1996) (alleged alter ego was named as a co-defendant); *Walters*, 651 F.3d at 285 (2d Cir. 2011) (same).

Plaintiffs try to distinguish *Bank Markazi* on the ground that the complaint "assert[ed] eight different counts" on theories that required the veil between Bank Markazi and Iran to be pierced. (Pls. Br. at 11.) But the first claim in the complaint there was for an alter ego determination, and the complaint primarily focused on requesting turnover of the assets of Bank Markazi. (*See* Case No. 1:13-cv-09195, ECF No. 104 at ¶¶ 225–230.) That is no different from what Plaintiffs say they will seek here.

"A judgment cannot be enforced against an alleged alter ego who has not had an opportunity to litigate whether or not such a relationship did exist." *Imagineering, Inc.* v. *Lukingbeal*, 1997 WL 363591, at *5 n.11 (S.D.N.Y. June 30, 1997) (Carter, J.); *see also Nykcool A.B.*, 2012 WL 1255019, at *5 (due process will only be satisfied "[w]hen the alleged 'alter ego' is a party to the action where the 'alter ego' status is litigated"). None of the instrumentalities at issue here is a party to these post-judgment proceedings. Plaintiffs' theory that a foreign instrumentality can be made liable as an alter ego for a sovereign's debt by a court that has no jurisdiction over that instrumentality cannot be squared with the law in this Circuit, including *Bank Markazi* itself.[4]

3.      In insisting that post-judgment discovery is "broad" (Pls. Br. at 15–16), Plaintiffs claim a right to every piece of information that they seek about sovereign instrumentalities with a separate corporate existence from the Republic. But the broad scope of post-judgment discovery is not limitless. This Court must consider relevance and proportionality

---

[4]    Plaintiffs say that the Republic, by referencing the *Bancec* factors in opposition to the turnover motion, "belied" any requirement that YPF be party to litigation of its alleged alter ego status. (Pls. Br. at 24.) Not true. In Plaintiffs' motion for turnover, *Plaintiffs* put YPF's alleged alter ego status at issue by attempting to attribute YPF's actions to the Republic in order to satisfy the FSIA's commercial activity exception to sovereign immunity. (*See* Pls. Mot. for Turnover (ECF No. 556) at 4-8.) The Republic pointed to *Bancec* as a reason YPF's actions were irrelevant to that inquiry.

concerns applying to the requests as to all six entities. *See* Fed. R. Civ. P. 26(b)(1); *see also Gujarat State Petroleum Corp.* v. *Republic of Yemen*, 2022 WL 1567464, at *8 (S.D.N.Y. May 18, 2022) (Abrams, J.) (post-judgment discovery is tethered to "the concepts of attachability [and] executability"); *Aurelius Cap. Master, Ltd.* v. *Republic of Argentina,* 589 F. App'x 16, 18 (2d Cir. 2014) (urging district court to "closely consider Argentina's sovereign interests in managing discovery" because of the "grace and comity" to which it is entitled).  And for Aerolíneas, BNA, ENARSA, and ARSAT, this Court has not found that Plaintiffs made the requisite showing that there is any "reason to think" that they might be alter egos of the Republic.  (*See* Sept. 3 Tr. 60:18–19, 58:9–11; *see also* Rep. Oct. 2, 2024 Br at 3. (ECF No. 671).)   These are separate instrumentalities, each of which has been found by a U.S. court to be separate from the Republic. (*See* Rep. Br. at 18 n.5.)  The information Plaintiffs seek is irrelevant to identifying executable assets of the Republic and inappropriate for post-judgment discovery, particularly in light of *Bank Markazi*'s confirmation that a separate jurisdictional basis is required to execute on the assets of Republic-owned instrumentalities, even if they were alter egos of the Republic.

4. Having little else to say, Plaintiffs also wrongly claim that the Republic is "avoiding its discovery obligations" and improperly "refusing to accept service of recognition actions in other jurisdictions or to consent to the recognition of this Court's judgment abroad." (Pls. Br. at 3, 7.)  To date, the Republic has produced 6,523 documents comprising 64,797 pages of material about the Republic's bank accounts, real property, commercial transactions, financial agreements, concession agreements, letters of credit, worldwide court judgments and arbitral awards, debts, and relationships with BCRA and YPF.  The Republic has not "obfuscat[ed]" anything. (Pls. Br. at 5.)  And in proceedings abroad, the Republic is exercising its rights under

-9-

foreign law, as required by Argentine law, to oppose enforcement of a decision that remains under appeal.

## CONCLUSION

For the foregoing reasons and for the reasons explained in the Republic's opening brief, the Second Circuit's *Bank Markazi* decision does not impact Plaintiffs' turnover motion, which must be denied, and further confirms that the Court should reject Plaintiffs' outstanding requests for alter-ego-related discovery.

Respectfully,

/s/ Robert J. Giuffra Jr.
Robert J. Giuffra Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588

*Counsel for the Argentine Republic*

January 24, 2025