# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 11, 2025

Via ECF

The Honorable Loretta A. Preska,
   United States District Court for the Southern District of New York,
     500 Pearl Street,
       New York, NY  10007.

        Re:   *Petersen* v. *Argentine Republic*, No. 15 Civ. 2739 (LAP); *Eton Park* v. *Argentine Republic*, No. 16 Civ. 8569 (LAP)

Dear Judge Preska:

        On behalf of the Argentine Republic (the "Republic"), I respond to Plaintiffs' February 4, 2025 letter ("Ltr.", *Petersen* ECF No. 711) submitted in support of their previously briefed requests (i) to add Luis Caputo and Santiago Caputo as document custodians, and (ii) for purported "alter ego discovery" from Aerolíneas Argentinas ("Aerolíneas") and Banco de la Nación Argentina ("BNA"). (*Petersen* ECF Nos. 657, 658, 670, 671, 675, 677.)  Plaintiffs also "update" their submissions regarding BCRA and YPF, even though the Republic is already producing discovery about those entities.  Plaintiffs' new "evidence" does not support adding Messrs. Caputo and Caputo as additional document custodians, on top of the 20 custodians already agreed-to by the parties or ordered by the Court, or further alter ego discovery.

**I.**    **Plaintiffs' "Updated Evidence" About Luis Caputo and Santiago Caputo Does Not Support Adding Them As Document Custodians.**

       ***Luis Caputo.***  Plaintiffs claim that the Republic's current Minister of Economy, Luis Caputo, is an appropriate "alter ego" custodian simply because he supposedly "was the first official to announce (on his X account) that YPF would join an LNG project with PAE and Golar, days before this deal was confirmed by

The Honorable Loretta A. Preska                                                                                -2-

YPF CEO Marín himself." (Ltr. at 1–2.) But as the article cited by Plaintiffs makes clear, Mr. Caputo posted on X only after "the project was registered in the Incentive Regime for Large Investments," a federal government program administered by the Ministry of Economy[1] to incentivize investment in Argentina. (Harris Ex. 1 at 3.) This innocuous post is not evidence of an alter ego relationship between YPF and the Republic.

Plaintiffs also assert that "Mr. Caputo reportedly instructed YPF to bring its fuel price increases below the CPI in order not to jeopardize the deceleration of inflation in the country," citing to a single newspaper article that in turn cites to claims by a private consulting firm. (Ltr. at 2.) Such speculative hearsay allegations cannot reasonably be the basis for requiring discovery from one of the Republic's most high-ranking officials. The allegation is also irrelevant, because allegations that a sovereign "dictates" prices at which state instrumentalities sell their wares are not evidence of day-to-day control. *NML Cap., Ltd.* v. *Republic of Argentina*, 2011 WL 524433, at *7 (S.D.N.Y. Feb. 15, 2011).

**Santiago Caputo.** As the Republic has explained in its prior letters—and Plaintiffs concede—Santiago Caputo is *not* a government official. (*See Petersen* ECF Nos. 658, 670, 677.) Nonetheless, Plaintiffs seek discovery of Mr. Caputo because he (and unnamed "top Argentine officials") supposedly "routinely send government-related communications via personal devices and accounts like WhatsApp." (Ltr. at 2.) In support of their overbroad discovery demand, Plaintiffs cite an article reporting that Mr. Caputo sent *a published newspaper story* to Argentine President Milei via WhatsApp. (Harris Ex. 3 at 2.) The transmission of this article, which reportedly was about the Republic's vote on a U.N. resolution, has nothing to do with this action and, in any event, was not an official "government-related communication."

## II. Plaintiffs' "Updated Evidence" Regarding the Republic's Instrumentalities is Misleading and Irrelevant.

*Aerolíneas.* Plaintiffs speculate that the Republic's "control" over Aerolíneas "appears to have intensified," citing purported statements from President Milei in November regarding the potential privatization of the company and workforce reductions. (Ltr. at 2.) In fact, the three-month-old article cited by Plaintiffs says something different: that "the debate in Congress for the privatization

---

[1] Annex to Decree 749/2024, Article 122, *available at* https://www.boletinoficial.gob.ar/detalleAviso/primera/312707/20240823.

The Honorable Loretta A. Preska                                                                                  -3-

is stalled," and that "[t]he reality is that the privatization of Aerolíneas Argentinas must go through Congress and the Government does not have the votes to do so." (Harris Decl. Ex. 5 at 2.) In any event, the Republic's ability to dispose of its interest in Aerolíneas does not remotely evidence an alter ego relationship with Aerolíneas.

Plaintiffs' allegation that "the Republic has been laying off a portion of Aerolíneas workforce" (Ltr. at 2) is also misleading. The recent layoffs are reported to be part of Aerolíneas's overall cost-cutting strategy. (Harris Ex. 6 at 3.) Moreover, the Republic's involvement in Aerolíneas's high-level strategy decisions is not evidence of day-to-day control, as Judge Griesa found. *See Seijas* v. *Republic of Argentina*, 2009 WL 10700009 at *2 (S.D.N.Y. Aug. 19, 2009) (Griesa, J.) (allegation that Republic was "actively overseeing Aerolíneas operations" not sufficient "to establish an alter ego . . . relationship"). Finally, Plaintiffs allege that "late last year, an Aerolíneas board member was dismissed" at the request of the Republic. (Ltr. at 2.) But Plaintiffs ignore that Aerolíneas's shareholders voted to remove the board member for "repeatedly act[ing] disloyally and against the interests of the company he represents." (Harris Ex. 7 at 2.) In any event, "hiring and firing of board members or officers is an exercise of power incidental to ownership" and is not evidence of extensive control. *EM Ltd.* v. *BCRA*, 800 F.3d 78, 92–93 (2d Cir. 2015).

**BNA.** As to BNA, Plaintiffs allege that the Republic "uses its control of BNA as a bargaining chip in political disputes with the provinces," but the articles that Plaintiffs cite state that *BNA*, not the Republic, decided to close certain branches in response to threatened taxes.[2] Plaintiffs also allege that BNA is "changing its corporate form, at the behest of President Milei." (Ltr. at 3.) This appears to reference a decree requiring all enterprises owned in any part by the Republic to use the corporate form of a *sociedad anónima*,[3] which has nothing to do with any alter ego inquiry.

**BCRA and YPF.** The Court ordered the Republic to produce alter ego discovery regarding BCRA and YPF on May 28, 2024, and the Republic is now producing documents in compliance with that order. In any event, references to President Milei's statements about "clean[ing] up BCRA's balance sheet" and

---

[2]    Harris Ex. 9 at 3 ("Banco Nación announced its decision to close branches in that province"); Harris Ex. 10 at 2 ("BNA decided to revoke such announcement").

[3]    Decree No. 70/2023, Article 48, *available at* https://www.argentina.gob.ar/normativa/nacional/decreto-70-2023-395521/texto.

The Honorable Loretta A. Preska                                    -4-

removing "restrictions" (Ltr. at 2) are irrelevant: "consult[ation and coordina[tion]" between a government and a central bank is not evidence of alter ego. *EM Ltd.* v. *BCRA*, 800 F.3d at 94.  Similarly, a minister's X post describing a meeting with YPF's CEO about potential LNG exports (*see* Harris Ex. 12) does not evidence day-to-day control.  *See Gater Assets Ltd.* v. *AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021) ("An entity does not become a sovereign's alter ego merely because it assists the sovereign in carrying out the sovereign's policies and goals") (cleaned up).  The Republic's Chief of Cabinet regularly meets with third parties—including many private companies—regarding potential investments in Argentina.[4]

The Court should deny Plaintiffs' requests for further unwarranted alter ego discovery.

                                               Respectfully,

                                               */s/ Robert J. Giuffra, Jr.*
                                               Robert J. Giuffra, Jr.

cc:    Counsel of Record (via ECF)

---

[4] *See*, for example, https://x.com/GAFrancosOk/status/1889092595936379202 (meeting with Ganfeng Lithium); https://x.com/GAFrancosOk/status/1887618921114796305 (meeting with Morgan Stanley); https://x.com/GAFrancosOk/status/1879932504498450634 (meeting with Exponenciar and Expoagro); https://x.com/GAFrancosOk/status/1859688088944992624 (meeting with Enel).