UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br>                    Plaintiffs, <br><br> -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br>                    Defendants. | No. 15-CV-2739 (LAP) |
| ETON PARK CAPITAL MANAGEMENT, LP, ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., <br><br>                    Plaintiffs, <br><br> -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br>                    Defendants. | No. 16-CV-8569 (LAP) <br><br> ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

The attached documents were received by Chambers on February 17, 2025. The parties may inform the Court, by letter, no later than February 25, 2025 of their views as to what action, if any, the Court should take in response.

**SO ORDERED.**

Dated:    February 19, 2025
          New York, New York

_Loretta A. Preska_

LORETTA A. PRESKA
Senior United States District Judge



February 17, 2025

### *Ex-Parte Letter by Mail - Confidential*

The Honorable Loretta A. Preska,
United States District Court for the Southern District of New York,
500 Pearl Street,
New York, NY, 10007.

> Re: *Petersen Energ a Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Mgmt. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

I am writing to you on an *ex-parte* basis as the president and legal representative of Republican Action for Argentina, Inc. ("RA4ARG"), a US charitable tax-exempt entity devoted to strengthening the republican institutions in the Republic of Argentina –including the integrity of public office and independence of the judiciary– as well as its free market economy, in order to intervene and file as an interested party an *Ex-Parte* Motion for Order Pursuant to Fed. R. Civ. P., Rule 60.[1]

Please find enclosed all pertinent documentation about RA4ARG.  We encourage you to peruse www.republicanactionforargentina.org to scrutinize our mission and some of our local and international cases over the last few years.  The undersigned is a US-Argentinean citizen with decades of experience as an international attorney, US investment banker and trusted adviser, with exposure to both the federal legal system of Argentina –including its Supreme Court of Justice– as well as the US legal system as a NY licensed attorney with good standing and a member of the Bar of the US Supreme Court.

---

[1] Therefore without any pre-motion conference procedure and service requirements (Individual Practice Rules LAP, Rule 2 A; Fed. R. Civ. P., Rule 5 (D), Rule 24 (c)).



As further entertained in the enclosed *Ex-Parte* Motion for Order with Memorandum of Law, RA4ARG hereby alleges an international criminal conspiracy and/or scheme impacting these legal proceedings at the core, in the sense of turning the US legal system –the judgments rendered by your Honor– into a conduit to consummate fraud and money laundering, which as a whole deserves proper investigation and eventual indictments also under the Foreign Corrupt Practices Act (FCPA) as well as the Racketeer Influenced and Corrupt Organizations Act (RICO), among others.

The Department of Justice (DOJ) has already intervened in this case (# 679, 11/6/2024) and provided information about it to Argentine authorities via formal correspondence.[2]  RA4ARG pleads the Court to grant the enclosed *Ex-Parte* Motion for Order Pursuant to Fed. R. Civ. P., Rule 60, in light of the national and strategic interests of the United States of America, and, with such goal in sight, move the DOJ and any other relevant agencies to adequately scrutinize the facts and parties herein.

In the context of the right of intervention (Fed. R. Civ. P., Rule 24), RA4ARG is not intended to appear beyond securing such a purpose, as long as the deterrence and punishment of any criminal activity within the US jurisdiction is carried out by the State, as opposed to *querellantes* or private prosecutors in Continental jurisdictions like the one of the Republic of Argentina –where they can act alongside public-driven prosecution or in lieu of it–, thus constraining its role to the civil and criminal connotations surrounding the alleged international scheme that affects this very same US Court.

The latter affirmation does carry the remote possibility of triggering further criminal proceedings in Argentina, as a result of some parties having resorted to the US legal system –also a victim in this scenario– in concert to consummate fraud and money laundering against Argentina and eventually Spain.[3] All of it,

---

[2] Letter from the Department of Justice to the Ministry of Justice and Human Rights, Republic of Argentina, July 29, 2024.

[3] Confidential Intelligence Report No. 0704/18 issued by the Unit of Financial Information of Argentina (UIF), *in re*, *"NN/ violation of Law 22,415", Federal Criminal Court No. 4, Buenos Aires, Argentina*, as probatory indication of criminal activity regarding the Eskenazi Family's acquisition of a 25% stake in YPF from

apart from the criminal complaints currently stalled before Argentinean Federal Judge Ariel Lijo (Docket No. 3518/2006, "*NN /about criminal investigation*", Federal Criminal Court No. 4, Buenos Aires, Argentina) that involve and revolve around YPF and Cristina F. de Kirchner, former President and former Vice President of Argentina; Sebastián, Matías and Enrique (deceased) Eskenazi, members of Grupo Petersen; Axel Kicillof, former Minister of Economy of Argentina, former Board Member of YPF, and current Governor of Buenos Aires Province; Carlos Zanini, former Legal Counsel to the Presidency; Miguel Galuccio, former President of YPF; Jorge Marcelo Soloaga, former Board Member of YPF; Cristian Girard, former President of Comisión Nacional de Valores (CNV, local SEC) and Alejandro Vanoli, former Vice President Comisión Nacional de Valores (CNV, local SEC); among several others.[4]

As Your Honor is most likely aware, Argentinean Federal Judge Ariel Lijo has been under major public scrutiny due to his nomination to the local Supreme Court of Justice by the current administration, which in fact lacks the required senatorial votes to attain confirmation of its nominees to the judiciary as a whole – the government is in need of votes pertaining to the political faction led by former President Cristina F. de Kirchner.  Such a candidate to the highest court is facing profound opposition from multiple local and international organizations,[5] including the American Chamber of Commerce; and the main objections to his nomination circle back to his alleged lack of integrity when dealing with high profile cases, in

---

Repsol and related maneuvers, among others. [free open source] https://www.rionegro.com.ar/wp-content/uploads/2023/04/54434.pdf

[4] Idem 3. Criminal complaints before Argentinean Federal Judge Ariel Lijo, Docket No. 3518/2006, "*NN /about criminal investigation*", Federal Criminal Court No. 4, Buenos Aires, Argentina, were filed by former congresswoman Elisa M. A. Carrió in 2006, 2012 (amended and expanded), and 2023 (amended and expanded as a result of Your Honor's $16.1 billion award against the Republic of Argentina). Ms. Carrió has been a stalwart fighter against public-driven corruption in Argentina, and some of his complaints have secured criminal sentences against corrupt politicians, including the former President and Vice president Cristina F. de Kirchner and some of her associates.

[5] RA4ARG, *Our support for the nomination of Manuel García Mansilla and objection to the nomination of Ariel Lijo as justices of the Supreme Court of Justice of the Nation: its moral significance and the values of freedom and justice*, Buenos Aires, May 15, 2024; www.republicanactionforargentina.org



particular the above-mentioned about YPF, in the sense of delaying and/or stalling the respective criminal investigations.[6]

This letter as well as the enclosed fillings are submitted on an *ex-parte* basis for evident reasons: if there is a criminal investigation at the international level out of the United States, namely around the so-called Kirchner Family and their associates as well as the so-called Eskenazi Family –widely perceived to have performed as the figurehead of the prior–, extensive to certain past governmental and YPF officials and the very same financial players participating in these legal proceedings, none of it should be known to those parties prior to the US legal system making a formal determination as to the right course of action. The existing parties in the legal conflict before Your Honor, to a larger or lesser extent, are key subjects of such criminal investigation as well as of any eventual indictments and prosecution.

Relying on the expert knowledge of the facts at hand by this Court, it is respectfully noted that the private law angle of the current legal dispute –civil or commercial–, which derived in an unprecedented $16.1 billion plus judgment against the Republic of Argentina, cannot be fully appreciated without the prism of international criminal activity. Once those forensic and legal lenses are placed over this entire scheme, the following key facts become highly relevant to judge it as a whole:

The "nationalization" of YPF was a two-step process for the benefit of the Kirchner and Eskenazi Families. To begin with, the Kirchner Family compelled YPF's private controlling shareholder, the Spanish energy company Repsol, to sell a 25% stake to their figurehead, the Eskenazi Family. The latter, foreign to the energy sector, did not invest a single cent of equity in this multi-billion-dollar transaction. Everything was financed through various loans of approximately $3.4 billion, which were going to be repaid via dividends of YPF. Repsol mistakenly understood the Kirchner Family was satisfied with such a transaction and the new *status quo*. In fact, the Kirchner Family subsequently triggered the political decision to

---

[6] WLRN Public Media, Associated Press, *Argentina's Libertarian President Shocks with his Supreme Court Pick*, June 21, 2024;
https://www.wlrn.org/americas/2024-06-21/argentinas-libertarian-president-shocks-with-his-supreme-court-pick



nationalize YPF by taking Repsol's controlling stake but excluding the stake held by their alleged figurehead, the Eskenazi Family. At this juncture no more dividends were paid, including to the Eskenazi Family. This caused the Eskenazi Family to default those loans and their for-the-occasion investment vehicle in YPF –the Petersen Group companies– went bankrupt in Spain –the jurisdiction where those companies had been established just before executing this transaction and solely to that effect. As a result, the Eskenazi Family's 25% stake reverted back to their lenders:  6% to Repsol and 19% to financial lenders.  Criminal complaints were filed in Argentina –still ongoing–  against various parties involved as a result of this nefarious plot.[7] The Eskenazi Family –once more, the alleged figurehead of the Kirchner Family– entered into an agreement with the English fund Burford Capital and its US counterpart Eton Park Management to finance and pursue these expensive legal proceedings and ultimately split the $16.1 billion plus award (30/70 split).  In such a way, the aforesaid parties resorted to the US legal system against the Republic of Argentina and YPF by seeking compensation before Your Honor.  Burford Capital has already monetized part of its own share in such award to undisclosed third-party investors.

The elementary question thus becomes self-revealing:  How could the US legal system vouch for foreign government corruption via figureheads within a spurious "nationalization process" claiming leftist or pseudo-communist ideals to defraud an entire population and literally steal billions of dollars out of oil assets for personal enrichment, because, in the end, expensive lawyers were retained by some English and US financial players acting as plaintiffs? And, more troublesome, how could the US legal system guarantee the payment of those parties' criminal bounty via some legal award?  Without a shred of doubt, such a course of action is not what the legal system has been designed and intended for, and none of it is in the national and strategic interests of the United States of America.  As a matter of fact, encapsulating the facts of this case as a civil or commercial honest dispute between the Eskenazi Family –thus the current financial players who acquired such claims fruit of a poisoned relationship at inception– and the Argentinean Government –at the time controlled by the Kirchner Family– means looking at the wrong tree while missing the entire forest subject to arson.  To the contrary, appreciating such criminal activity for what it is indeed sheds legal light to the totality of the factual context.

---

[7] Idem 3, 4.



In the spirit of an *ex-parte* intervention and the confidential nature of the topic addressed in this missive, the *de facto* treatment of paper-filing under seal is hereby presumed (Individual Practice Rules LAP, Rule 1 A).  Moreover, the undersigned is at the Court's disposal if oral arguments were deemed conducive to rule on the issues at hand (Individual Practice Rules LAP, Rule 3 D).

The accompanying *ex-parte* motions to intervene and pursuant to Fed. R. Civ. P., Rule 60, are being filed within a reasonable time after Your Honor's core judgment, attending the circumstances, current litigation stage, and the institutional magnitude of this case not only for the millions of Argentineans who suffered the ignominy summarized above, but also as a potential US legal precedent that could disincentivize foreign governmental corruption around the globe from those who directly or indirectly seek validation of their criminal exploits within the US judiciary.  In short, preventing financial players and other similar brokers from "buying" spurious claims from such sort of State-related actors internationally, with the goal of giving them an aura of respectability under the English language through major financial centers and selective US law firms.  The "normalization" of business standards applicable to companies like YPF, within a global free-market economy, cannot be fostered in such a manner.

What would be the difference if we were talking about some massive corrupt transaction out of Cuba, Venezuela, Brazil, Mexico, South Africa, Russia, Ukraine, India, China and/or any other country that could undergo a similar takeover of its institutions by the hand of individuals like the Kirchner Family?  None whatsoever if the Burford Capitals of this world were to acquire those claims in order to become the financing engine, buffer and fronting of some long and costly litigation before US courts.  And none of it serves the interest of justice, needless to say the national and strategic interests of this great nation.

As a result of all the prior, RA4ARG timely pleads the Court to grant its right to intervene per pertinent motion, as well as to then entertain its *ex-parte* Motion for Order in order to: (i) order the Department of Justice (DOJ) and any other relevant agencies of the imperious need to initiate a formal criminal investigation at the international level of the parties and facts highlighted *supra* –eventually against any other conflictive directive–; (ii) stay these legal proceedings pending of such criminal investigation as well as eventual indictments and prosecution; and (iii) timely vacate the $16.1 billion plus award against the



Republic of Argentina due to institutional interests and concerns in light of international criminal activity unduly impacting the US legal system (Fed. R. Civ. P., Rule 24; Rule 60(b)(6), (d)(1)–(3); Rule 5 (a)(1)(D)).

Respectfully,

_____

Fernando G. Irazu
Attorney at Law, NYSBA # 3898418
President
***Republican Action for Argentina, Inc.***
Billinghurst 1656, 2 A
Buenos Aires, 1425, Argentina
fgirazu@gmail.com
+54911 3084-8080

Enclosures

a. Basic documentation of Republican Action for Argentina, Inc.
b. *Ex-parte* Motion to Intervene Pursuant to Fed. R. Civ. P., Rule 24, with Memorandum of Law.
c. *Ex-parte* Motion for Order Pursuant to Fed. R. Civ. P., Rule 60, with Memorandum of Law.
d. *Ex-parte* Motion for Admission *Pro Hac Vice* with Affidavits.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

PETERSEN ENERGÍA INVERSORA,                          Case No.: 1-15-C-V-02739 (LAP)
S.A.U. and PETERSEN ENERGÍA, S.A.U.,

        *Plaintiffs*,                             The Honorable Loretta A. Preska

        v.

ARGENTINE REPUBLIC and YPF S.A.

        *Defendants*

---------------------------------------------------------x


---------------------------------------------------------x

ETON PARK CAPITAL MANAGEMENT,                        Case No.: 1-16-C-V-08569 (LAP)
LP, ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

        *Plaintiffs,*

        v.

ARGENTINE REPUBLIC and YPF S.A.

        *Defendants*

---------------------------------------------------------x


## *EX-PARTE* MOTION FOR ADMISSION *PRO HAC VICE*

        Pursuant to Local Rule 1.3, Fernando G. IRAZU hereby moves this Court for an order of

admission to practice *Pro Hac Vice* to appear as counsel and legal representative for Republican

Action for Argentina, Inc. ("RA4ARG"), as an interested party.

I am in good standing of the Bar of the State of New York, and there are no disciplinary proceedings against me in any state or federal court. I have never been convicted of a felony. I have never been censured, disbarred or denied readmission by any court. The United State Court of Appeals for the Second District granted me the *Pro Hac Vice* admission in the past on unrelated litigation. Please find attached the affidavit pursuant to Local Rule 1.3.

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.

By:   Fernando G. IRAZU
Attorney at Law, NYSBA # 3898418
Billinghurst 1656
Buenos Aires, 1425, ARGENTINA
fgirazu@gmail.com
+54911 3084-8080

2



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x
                                                        ¦
PETERSEN ENERGÍA INVERSORA,                             ¦    Case No.: 1-15-C-V-02739 (LAP)
S.A.U. and PETERSEN ENERGÍA, S.A.U.,                    ¦
                                                        ¦
          *Plaintiffs,*                                 ¦
                                                        ¦    The Honorable Loretta A. Preska
          v.                                            ¦
                                                        ¦
ARGENTINE REPUBLIC and YPF S.A.                         ¦
                                                        ¦
          *Defendants*                                  ¦
                                                        ¦
--------------------------------------------------------x


--------------------------------------------------------x
                                                        ¦
ETON PARK CAPITAL MANAGEMENT,                           ¦    Case No.: 1-16-C-V-08569 (LAP)
LP, ETON PARK MASTER FUND, LTD.,                        ¦
and ETON PARK FUND, L.P.,                               ¦
                                                        ¦
          *Plaintiffs,*                                 ¦
                                                        ¦
          v.                                            ¦
                                                        ¦
ARGENTINE REPUBLIC and YPF S.A.                         ¦
                                                        ¦
          *Defendants*                                  ¦
                                                        ¦
--------------------------------------------------------x


### AFFIDAVIT SUPPORTING ADMISSION *PRO HAC VICE*

I, Fernando G. IRAZU, state the following under oath and penalty of perjury:

1. I have never been convicted of a felony.

2. I have never been censured, disbarred, or denied admission or readmission by any court.

3. I have never been subject to any disciplinary proceedings against me.



4. I have never been sanctioned or disciplined for any ethical or professional issues by any professional body, being in the legal profession or financial industry. For several years I worked as an investment banker. At the time I informed the New York Bar of my professional status to reflect it accordingly, but unfortunately fees accrued without me knowing it and my license was suspended last 1/2/2017. Upon discovering such event, I paid the required past due fees and my license was immediately reinstated based on proper request. The attached certificate of good standing corroborates the aforesaid.

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.



By:    Fernando G. IRAZU
       Attorney at Law, NYSBA # 3898418
       Billinghurst 1656
       Buenos Aires, 1425, ARGENTINA
       fgirazu@gmail.com
       +54911 3084-8080

Firma/s certificada/s en foja N°. FoI5.8031.42....

CABA ...17... de Febrero.............. de 2025....

2





ACTA DE CERTIFICACION DE FIRMAS
LEY 404



F 019803142 

**Buenos Aires,** 17 **de** Febrero **de** 2025. En mi carácter de escribano

Adscripta 2da del Registro 1004 de Capital Federal.

**CERTIFICO: Que la/s** Firma.- - - que obra/n en el

documento que adjunto a esta foja, cuyo requerimiento de certificación se

formaliza simultáneamente por ACTA número 112.- - - del LIBRO

número - - 21 - - , es/son puesta/s en mi presencia por la/s persona/s

cuyo/s nombre/s, documento/s de identidad y justificación de identidad se indican:

**1) Fernando Gabriel IRAZU,** titular del Documento Nacional de

Identidad número 20.384.407.- El compareciente justifica su

identidad conforme artículo 306 inciso a) del Código Civil y

Comercial de la Nación.- **INTERVIENE** por su propio derecho.-

Documento suscripto: Affidavit Supporting Admission Pro Hac

Vice.- El documento está redactado en idioma inglés, el cual

declaro no conocer. Se certifica en Foja Especial número F

019803142.- CONSTE.-





F 019803142

26

27

28

29

30

31

32

33

34

35

36

37

38

39

40

41

42

43

44

45

46

47

48

49

50



*Appellate Division of the Supreme Court*
*of the State of New York*
*First Judicial Department*

———————

I, Susanna M. Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, do hereby certify that

## Fernando Gabriel Irazu

was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **November 13, 2000**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Office of Court Administration, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand in the City of New York on February 10, 2025.

*Clerk of the Court*

CertID-00213786

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

PETERSEN ENERGÍA INVERSORA,
S.A.U. and PETERSEN ENERGÍA, S.A.U.,

          *Plaintiffs,*

          v.

ARGENTINE REPUBLIC and YPF S.A.

          *Defendants*

-------------------------------------------------------x

Case No.: 1-15-C-V-02739 (LAP)


The Honorable Loretta A. Preska


-------------------------------------------------------x

ETON PARK CAPITAL MANAGEMENT,
LP, ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

          *Plaintiffs,*

          v.

ARGENTINE REPUBLIC and YPF S.A.

          *Defendants*

-------------------------------------------------------x

Case No.: 1-16-C-V-08569 (LAP)


## AFFIDAVIT OF *EX-PARTE* MOTION FOR ADMISSION *PRO HAC VICE*

Pursuant to Local Civil Rule 6.1(d), this motion for admission *Pro Hac Vice* is submitted on an *ex-parte* basis in tandem with RA4ARG's *Ex-Parte* Motion to Intervene as well as *Ex-Parte* Motion for Order Pursuant to Fed. R. Civ. P., Rule 60, of today's date. No previous *ex-parte* application seeking such a relief was ever made. As represented in the pertinent affidavits attached to such motions, all these fillings are submitted on an *ex-parte* basis for evident reasons:

if there is a formal criminal investigation at the international level out of the United States as requested therein, involving former and current government officials of the Republic of Argentina and/or YPF, including the very same parties to these legal proceedings and their associates, none of it should be known to any those parties prior to the US legal system making a formal determination as to the right course of action.  The existing parties in the legal conflict before this Court, to a larger or lesser extent, are key subjects of such criminal investigation as well as any eventual indictments and prosecution.

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.

By:   Fernando G. IRAZU
      Attorney at Law, NYSBA # 3898418
      Billinghurst 1656
      Buenos Aires, 1425, ARGENTINA
      fgirazu@gmail.com
      +54911 3084-8080

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

PETERSEN ENERGÍA INVERSORA,
S.A.U. and PETERSEN ENERGÍA, S.A.U.,

        *Plaintiffs*,

        v.

ARGENTINE REPUBLIC and YPF S.A.

        *Defendants*

-----------------------------------------------------------x

Case No.: 1-15-C-V-02739 (LAP)

The Honorable Loretta A. Preska


-----------------------------------------------------------x

ETON PARK CAPITAL MANAGEMENT,
LP, ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

        *Plaintiffs,*

        v.

ARGENTINE REPUBLIC and YPF S.A.

        *Defendants*

-----------------------------------------------------------x

Case No.: 1-16-C-V-08569 (LAP)


## ORDER FOR ADMISSION *PRO HAC VICE*

The motion for admission of Fernando G. IRAZU to practice *Pro Hac Vice* in the above caption matters is hereby granted.

Applicant has declared that he is a member in good standing of the Bar of the State of New York and that his contact information is as follows:

Fernando G. IRAZU
Billinghurst 1656
Buenos Aires, 1425, ARGENTINA
fgirazu@gmail.com
+54911 3084-8080

Applicant having requested admission *Pro Hac Vice* to appear for all purposes for the interested party Republican Action for Argentina, Inc., in the above entitled actions.

**IT IS HEREBY ORDERED** that Applicant is admitted to practice *Pro Hac Vice* in the above captioned cases in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local and Individual Practice Rules of this Court, including those Rules governing discipline of attorneys.

DATED:                         _____

                                           US District Court Judge

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

PETERSEN ENERG A INVERSORA,
S.A.U. and PETERSEN ENERG A, S.A.U.,

           *Plaintiffs*,

           v.

ARGENTINE REPUBLIC and YPF S.A.

           *Defendants*

---------------------------------------------------------x

Case No.: 1-15-C-V-02739 (LAP)

The Honorable Loretta A. Preska

---------------------------------------------------------x

ETON PARK CAPITAL MANAGEMENT,
LP, ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

           *Plaintiffs,*

           v.

ARGENTINE REPUBLIC and YPF S.A.

           *Defendants*

---------------------------------------------------------x

Case No.: 1-16-C-V-08569 (LAP)

## REPUBLICAN ACTION FOR ARGENTINA INC.'S *EX-PARTE* MOTION TO INTERVENE

Pursuant to FRCP, Rule 24, Republican Action for Argentina, Inc. ("RA4ARG") respectfully moves this Court to intervene as an interested party in these legal proceedings. As explained in the Memorandum of Law that accompanies this motion, RA4ARG is entitled to intervene as of right and should also be granted permissive intervention. Due to the nature of

RA4ARG's requested intervention in tandem with its *Ex-Parte* Motion for Order Pursuant to

FRCP, Rule 60, this motion is also submitted on an *ex-parte* basis (FRCP, Rule 24 (c); Rule 5 (a)

(1) (D); Local Civil Rule 6.1 (d)).  RA4ARG remains at the Court's disposal if oral arguments

are deemed convenient and/or necessary to rule on the issues at hand (Individual Practice Rules

LAP, Rule 2 (D)).

**FRCP, Rule 24. Intervention.**

**"(a) INTERVENTION OF RIGHT**.

On timely motion, the court must permit anyone to intervene who: (1) is given an
unconditional right to intervene by a federal statute; or (2) claims an interest relating to
the property or transaction that is the subject of the action, and is so situated that
disposing of the action may as a practical matter impair or impede the movant's ability to
protect its interest, unless existing parties adequately represent that interest.

**(b) PERMISSIVE INTERVENTION**.

(1) In General. On timely motion, the court may permit anyone to intervene who: (A) is
given a conditional right to intervene by a federal statute; or (B) has a claim or defense
that shares with the main action a common question of law or fact.
(2) By a Government Officer or Agency. On timely motion, the court may permit a
federal or state governmental officer or agency to intervene if a party's claim or defense
is based on: (A) a statute or executive order administered by the officer or agency; or (B)
any regulation, order, requirement, or agreement issued or made under the statute or
executive order.
(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the
intervention will unduly delay or prejudice the adjudication of the original parties' rights.

**(c) NOTICE AND PLEADING REQUIRED**.

A motion to intervene must be served on the parties as provided in Rule 5. The motion
must state the grounds for intervention and be accompanied by a pleading that sets out
the claim or defense for which intervention is sought."

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.



By:    Fernando G. IRAZU (*pro hac vice* motion pending)
       Attorney at Law
       **Republican Action for Argentina, Inc.**
       Interested Party
       Billinghurst 1656
       Buenos Aires, 1425, ARGENTINA
       fgirazu@gmail.com
       +54911 3084-8080

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------x
                                                   :
PETERSEN ENERG A INVERSORA,                        :    Case No.: 1-15-C-V-02739 (LAP)
S.A.U. and PETERSEN ENERG A, S.A.U.,               :
                                                   :
            Plaintiffs,                            :    The Honorable Loretta A. Preska
                                                   :
            v.                                     :
                                                   :
ARGENTINE REPUBLIC and YPF S.A.                    :
                                                   :
            Defendants                             :
                                                   :
---------------------------------------------------x
```

```
---------------------------------------------------x
                                                   :
ETON PARK CAPITAL MANAGEMENT,                      :    Case No.: 1-16-C-V-08569 (LAP)
LP, ETON PARK MASTER FUND, LTD.,                   :
and ETON PARK FUND, L.P.,                          :
                                                   :
            Plaintiffs,                            :
                                                   :
            v.                                     :
                                                   :
ARGENTINE REPUBLIC and YPF S.A.                    :
                                                   :
            Defendants                             :
                                                   :
---------------------------------------------------x
```

## AFFIDAVIT OF REPUBLICAN ACTION FOR ARGENTINA'S
## *EX-PARTE* MOTION TO INTERVENE

Pursuant to Local Civil Rule 6.1(d), this motion to intervene is submitted on an *ex-parte*

basis in tandem with RA4ARG's *Ex-Parte* Motion for Order Pursuant to Fed. R. Civ. P.,

Rule 60, of today's date.  No previous application seeking such a relief or similar was ever made.

All of these fillings are submitted on an *ex-parte* basis for evident reasons:  if there is a formal

criminal investigation at the international level out of the United States as requested therein, involving former and current government officers and officials of the Republic of Argentina and/or YPF, including the very same parties to these legal proceedings and their associates, none of it should be known to any those parties prior to the US legal system making a formal determination as to the right course of action.  Past and/or present officers and officials of the existing parties in the legal conflict before this Court, to a larger or lesser extent, are key subjects of such criminal investigation as well as any eventual indictments and prosecution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.

By:  Fernando G. IRAZU (*pro hac vice* motion pending)
Attorney at Law
**Republican Action for Argentina, Inc.**
Interested Party
Billinghurst 1656
Buenos Aires, 1425, ARGENTINA
fgirazu@gmail.com
+54911 3084-8080

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

PETERSEN ENERG A INVERSORA,
S.A.U. and PETERSEN ENERG A, S.A.U.,

              *Plaintiffs*,

              v.

ARGENTINE REPUBLIC and YPF S.A.

              *Defendants*

-------------------------------------------------------x

Case No.: 1-15-C-V-02739 (LAP)

The Honorable Loretta A. Preska

-------------------------------------------------------x

ETON PARK CAPITAL MANAGEMENT,
LP, ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

              *Plaintiffs,*

              v.

ARGENTINE REPUBLIC and YPF S.A.

              *Defendants*

-------------------------------------------------------x

Case No.: 1-16-C-V-08569 (LAP)

**REPUBLICAN ACTION FOR ARGENTINA INC.'S MEMORANDUM OF LAW
IN SUPPORT OF *EX-PARTE* MOTION TO INTERVENE**

February 17, 2025

# **TABLE OF CONTENTS**

Table of Authorities…………………………………………………………..…..ii

**I.**    Introduction: Alleged International Criminal Scheme and Factual Context…...………...1

**II.**    Legal Standing: Republican Action for Argentina, Inc………………………………...2

**III.**    Argument: Intervention…………………………………………………………………...6

    **a.**  Applicable Normative…………………………………………………………6

    **b.**  Intervention As of Right………………………………………………………7

    **c.**  Permissive Intervention…………………………………………………...10

**IV.**    Conclusion and Relief…………………………………………………………12

    Certification…………………………………………………………………...13

## TABLE OF AUTHORITIES

*Cases*

*Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)……………………...………………….6

*Brooks v. Flagg Bros*., Inc., 63 F.R.D. 409, 414–15 (S.D.N.Y. 1974)……………………………6

*Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265-66 (2d Cir. 1984)………………8

*United States v. Hooker Chems. & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir. 1984)………...8, 9

*Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co*., 922 F.2d 92, 97 (2d Cir. 1990)……………………………………………………………………………………....9

*Builders Ass'n of Greater Chicago v. City of Chicago,* 170 F.R.D. 435, 440–41 (N.D. Ill. 1996)…………………………………………………………………………………………9

*United Guaranty Residential Ins. Co. v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987)…………………………………………………………………………………9

*Kleissler v. United States Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998)………………….9

*Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior,* 100 F.3d 837, 845 (10th Cir. 1996)……………………………………………………………....9

*Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013)……………………………………………....9

*Commonwealth of Pennsylvania v. President of the United States*, 888 F.3d 52 (3d Cir. 2018) (Little Sisters of the Poor)…………………………………………………………………9

*Trbovich v. United Mine Workers of Am*., 404 U.S. 528, 538 n.10 (1972)………………………9

*Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)………………………………………10

*United States Postal Service v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978)…………………10

*Steves & Sons, Inc. v. Jedlwen, Inc*., 323 F.R.D. 553, 561 (E.D. Va. 2018)……………………10

*Yang v. Kellner*, 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) (quoting *Olin Corp. v. Lamorak Ins. Co*., 325 F.R.D. 85, 87 (S.D.N.Y. 2018))…………………………………………11

*United States v. Local 683, Enterprise Ass'n*, 347 F. Supp 164, 166 (S.D.N.Y. 1972)…………11

*Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747, 754 (E.D.N.Y. 2016), aff'd, 685 Fed. App'x 69 (2d Cir. 2017)…………………………………………………………………………………11

*City of Chicago v. FEMA*, 660 F.3d 980, 987 (7th Cir. 2011)…………………………………...11

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1111 (9th Cir. 2002)……………………...11

**Acts and Rules**

Foreign Corrupt Practices Act (FCPA)……………………………………………...…..2, 3

Racketeer Influenced and Corrupt Organizations Act (RICO)…………………………………2, 3

Fed. R. Civ. P., Rule 24………..……………………………………….…1, 6, 7, 8, 10, 11, 12, 13

Fed. R. Civ. P., Rule 60……………..…………………………………....…6, 7, 8, 9, 10, 11, 13

Fed. R. Civ. P., Rule 5…………………..……………………………….………………13

Local Civil Rule 6.1(d)…………………..…………………………………………….…13

Individual Practice Rules LAP, Rule 2…………………………………..………...13, 14

**Doctrine**

Arbastkaya, Maria, Mialon, Hugo, "The Impact of Foreign Corrupt Practices Act on Competitiveness, Bribery, and Investment", *22(1) American Law and Economics Association*, April 2020, 105-126…………………………………………………………………….3

Kennedy, John E, "Let's All Join In: Intervention Under Federal Rule 24", *57 Kentucky Law Journal 3*, Art. 2, 1969, 329-381…………………………………………………....8

Garner, Amy M., "An Attempt to Intervene in the Confusion: Standing Requirements for Rule 24 Intervenors", *69 University of Chicago Law Review 681*, 2002, 703………………...…12

\* \* \*

## I.      Introduction: Alleged International Criminal Scheme and Factual Context.

Republican Action for Argentina, Inc. ("RA4ARG") hereby seeks to intervene as an interested party to protect its own interests in the above-captioned actions, which cannot be adequately sheltered or simply propelled by any other party inasmuch they do relate to alleged criminal activity embroiling the parties of the very same legal conflict before this Court (Fed. R. Civ. P., Rule 24(a)–(b)).  The Argentinean Nation and its citizens, their rights to an effective administration of justice precluding an award fruit of alleged criminal activity on this Court and at the international level, are in practice protected on an objective basis by RA4ARG.

Such an *ex-parte* claim compels the formal intervention of the Department of Justice (DOJ) and any other relevant agencies via a direct ruling from Your Honor –against any eventual directive indicating otherwise–, in order to conduct a proper investigation of the following *prima facie* international criminal scheme with US ramifications via these legal proceedings:

> The "nationalization" of YPF was a two-step process for the benefit of the Kirchner and Eskenazi Families. To begin with, the Kirchner Family compelled YPF's private controlling shareholder, the Spanish energy company Repsol, to sell a 25% stake to their figurehead, the Eskenazi Family. The latter, foreign to the energy sector, did not invest a single cent of equity in this multi-billion-dollar transaction.  Everything was financed through various loans of approximately $3.4 billion, which were going to be repaid via dividends of YPF.  Repsol mistakenly understood the Kirchner Family was satisfied with such a transaction and the new *status quo*.  In fact, the Kirchner Family subsequently triggered the political decision to nationalize YPF by taking Repsol's controlling stake but excluding the stake held by their alleged figurehead, the Eskenazi Family.  At this juncture no more dividends were paid, including to the Eskenazi Family. This caused the Eskenazi Family to default those loans and their for-the-occasion investment vehicle in YPF –the Petersen Group companies– went bankrupt in Spain –the jurisdiction where those companies had been established just before executing this transaction and solely to that effect. As a result, the Eskenazi Family's 25% stake reverted back to their lenders: 6% to Repsol and 19% to financial lenders.  Criminal complaints were filed in Argentina –still ongoing–  against various parties involved as a result of this nefarious plot.[1]  The

---

[1] Criminal complaints before Argentinean Federal Judge Ariel Lijo, Docket No. 3518/2006, "*NN /about criminal investigation*", Federal Criminal Court No. 4, Buenos Aires, Argentina, were filed by former congresswoman Elisa M. A. Carrió in 2006, 2012 (amended and expanded), and 2023 (amended and expanded as a result of Your Honor's $16.1 billion award against the

Eskenazi Family –once more, the alleged figurehead of the Kirchner Family– entered into an agreement with the English fund Burford Capital and its US counterpart Eton Park Management to finance and pursue these expensive legal proceedings and ultimately split the $16.1 billion plus award (30/70 split).  In such a way, the aforesaid parties resorted to the US legal system in concert against the Republic of Argentina and YPF by seeking compensation before Your Honor.  Burford Capital has already monetized part of its own share in such award to undisclosed third-party investors.

As a result of such factual context, RA4ARG hereby alleges an international criminal conspiracy and/or scheme impacting these legal proceedings at the core, in the sense of turning the US legal system –the judgments rendered by Your Honor– into a conduit to consummate fraud and money laundering, which as a whole deserves proper investigation and eventual indictments under the Foreign Corrupt Practices Act (FCPA) as well as the Racketeer Influenced and Corrupt Organizations Act (RICO), among any other applicable statutes.

As further discussed below, RA4ARG does satisfy the normative requirements for both intervention as of right and permissive intervention; and RA4ARG should be allowed to intervene as an interested party to advance the interests of justice that would otherwise lack any advocacy, including the core national and strategic interests of the United States of America.[2]

## II.    Legal Standing:  Republican Action for Argentina, Inc.

RA4ARG is a US charitable, tax-exempt entity, with the specific purpose of

*"strengthening [Argentina's] republican institutions with democratic participation, with the goal of fostering judicial independence and integrity in public office, while also advocating for*

---

Republic of Argentina). Ms. Carrió has been a stalwart fighter against public-driven corruption in Argentina, and some of his complaints have secured criminal sentences against corrupt politicians, including the former President and Vice president Cristina F. de Kirchner and some of her associates.

[2] Understanding the US national and strategic interests as those related to the safety of the American population, the expansion of economic and business endeavors, as well as the promotion and defense of the values conforming the American way of life rooted in the republican system of government with democratic participation.

*personal rights and free-market economy."*[3]  Indeed, the clear purpose of fighting government-related corruption –to shelter the integrity of public office–, in connection with crimes ranging from money laundering to terrorism on a cross-border basis –expansive toward jurisdictions other than Argentina–, was addressed in particular by RA4ARG to attain its final determination letter by the Internal Revenue Services.[4]

It is worth noting that fostering corruption at the international level does not enhance profitability of American companies, it rather weakens them, especially if the FCPA is not applicable to foreign firms –when it does via similar normative, it increases foreign investment and business standards in host countries–.[5]  As in the case of democracy, corruption hinders the free-market economy by making it unsustainable, because integrity is the foundation of any true free endeavor.[6]  Any idea to the contrary is merely flawed and a disfavor to American interests at home and abroad.  The issue is not about allowing US companies to bribe foreign officials freely, rather deterring such criminal practices whenever possible around the world –current American law of higher order dictates so–.

To begin with, from the perspective of US courts such a commendable policy-effort reasonably implies forbidding foreign and US firms alike to financially benefit, within the legal system, from sanctionable international criminal schemes under FCPA and/or any criminal

---

[3] **Exhibit 1**: Certificate of Incorporation (stamped) of Republican Action for Argentina, Inc.
[4] **Exhibit 2**: 12/18/2024 Determination Letter of the Internal Revenue Services concerning Republican Action for Argentina, Inc., along with 12/14/2024 Republican Action for Argentina, Inc.'s response to 11/19/2024 Determination Letter Request.
[5] Arbastkaya, Maria, Mialon, Hugo, "The Impact of Foreign Corrupt Practices Act on Competitiveness, Bribery, and Investment", *22(1) American Law and Economics Association*, (April 2020), 105-126.
[6] *"Human rights can only be assured among a virtuous people."* Cfr. George Washington to Marquis De Lafayette, February 7, 1788, John C. Fitzpatrick, ed., *The Writings of George Washington*, U. S. Government Printing Office, Washington D. C., 1939, 29:410.

statutes of similar scope.  In sync with the factual context outlined above, RA4ARG is arguing the $16.1 billion plus award via Court decree is the end-result of such sort of criminal activity this country has abhorred in its federal criminal legislation for many decades.

It should be also noted that under Argentinean law, RA4ARG could be entitled to file and prosecute any criminal action concerning the scheme outlined above in such jurisdiction, as long as it would do so based on its own status and purpose as *querellante* or private prosecutor –even without the procedural or accusatory legal impulse of the State– upon the commission of *"grave violations to human rights when its corporate purpose is directly linked to the rights deemed harmed and [RA4ARG is] registered according to law."*[7]

As the Argentinean Supreme Court of Justice stated,[8] the concept of human rights is extensive to the economic wellbeing of the nation, especially when the latter can be compromised as a result of an international criminal scheme –so-called crimes of public order or action perpetrated by government officials and their associates at various levels– that results in a $16.1 billion plus award against the Republic of Argentina.

Historically, Argentinean federal criminal courts had been reluctant to open up the prosecutorial role to foundations and civil associations –as if such a role were to be "privatized"–, yet the official stance notably changed for the better not only because the aforesaid legal provision allows it but also as a result of undue "political influence" on the judiciary –undue pressure on federal prosecutors and judges– with respect to proceedings

---

[7] Argentinean Federal Criminal Procedure Code, Article 84.b., Right to Prosecute; Argentinean National Criminal Procedure Code, Articles 82, 82 bis, Right to Prosecute.

[8] *"…It is also a settled principle that, in situations of extreme need or grave institutional crises, such obligations cannot be fulfilled to the extent of suppressing essential services that would affect the basic rights of its citizens. This has been equally reflected in various international treaties, of constitutional stature, that oblige the National State to comply with a minimum standard of human rights.",* Argentinean Supreme Court of Justice, Fallos 328:690.

ranging from Marxist terrorism from the 70s to plain corruption by former President Cristina F. de Kirchner and others.

In the first case, *Asociación Defensores de Derechos Humanos de Latinoamérica* was recently admitted as *querellante* in the 1976 bombing of the Buenos Aires Police Headquarters' Cafeteria, where more than a hundred people were injured and many died, including children –former Marxist terrorists Mario Firmenich, Horacio Verbitsky and others remain tied to such unforgivable and still unsanctioned act of terrorism (not subject to any statute of limitations), among similar others–.[9]  In the second case, *Fundación Bases* was recently admitted as *querellante* in some money laundering proceedings against former President Cristina F. de Kirchner –structurally not much different from the overall standard practices displayed by the Kirchner Family at YPF with assistance from the Eskenazi Family (Grupo Petersen), and ultimately the associates of the latter–.[10]

At the personal level, none of the founders of RA4ARG have any political exposure whatsoever either in the United States or Argentina.  Two of them are educators and lawyers and the third one is an agribusiness entrepreneur.  RA4ARG focuses on specific legal cases that fit its core purpose regardless of ideology and political inclinations.  The pipeline of cases over the last few years at the local and international levels has included criminal complaints due to governmental corruption, abuse of power, as well as the violation of duties of a public servant; discrimination against judges and undue influence affecting the independence of the judiciary;

---

[9] https://www.lanacion.com.ar/politica/montoneros-como-fue-el-atentado-al-comedor-de-la-policia-federal-que-provoco-24-muertos-en-1976-nid19122024/; https://www.lanacion.com.ar/politica/la-camara-federal-ordeno-la-indagatoria-de-mario-firmencih-por-la-voladura-del-comedor-de-la-policia-nid19122024/; https://www.lanacion.com.ar/politica/giro-en-la-jurisprudencia-al-menos-tres-causas-de-peso-podrian-reactivarse-tras-el-fallo-por-el-nid01012025/

[10] https://www.lanacion.com.ar/politica/ruta-del-dinero-k-la-ong-que-promueve-la-investigacion-contra-cristina-kirchner-insiste-en-apartar-nid31102024/

unethical practices in the legal profession also violating the independence and autonomy of judges as well as the unconstitutionality of normative preventing the prosecution of such misdeeds; the unconstitutionality of discriminatory normative concerning the selection, supervision and removal of judges; the right to freedom of speech; the right to association and religious freedom; and ancillary.[11]  We are technicians of the law and servants in the field of education.

Regarding legal standing under Fed. R. Civ. P, Rule 24, it is conditioned upon no other legal remedy available, including *amicus curiae*, which is the case herein.  See *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) *("Participation by the intervenors as amicus curiae is not sufficient to protect against these practical impairments. Amicus participants are not able to make motions or to appeal the final judgment in the case.")*; see *Brooks v. Flagg Bros*., Inc., 63 F.R.D. 409, 414–15 (S.D.N.Y. 1974).

It is then evident that in the case of RA4ARG there is no other legal remedy when the relief is based on Fed. R. Civ. P., Rule 60, as a result of an alleged international criminal scheme impacting this Court as well as various other reasons of institutional nature entertained in a specific *ex-parte* motion to that effect.  As indicated above, it is also evident that no other party can legitimately advance the interests protected by RA4ARG because of the conflict of interests within potential criminal proceedings against the parties involved herein.

### III.    Argument:  Intervention.

### a.    Applicable Normative.

---

[11] www.republicanactionforargentina.org

**Fed. R. Civ. P.,  Rule 24. Intervention.**

"**(a) INTERVENTION OF RIGHT**.

On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b) PERMISSIVE INTERVENTION**.

(1) In General. On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. (2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order. (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

**(c) NOTICE AND PLEADING REQUIRED**.

A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."

b.    **Intervention As of Right**.

RA4ARG claims an unconditional right to intervene in these legal proceedings according to its own purpose subject to federal statute and review –not only in the US but also in Argentina as explained above–, including the capacity to adequately argue on an independent basis a simile action pursuant to Fed. R. Civ. P.,  Rule 60 (Fed. R. Civ. P., Rule 24(a)(1)–(2)), which will never be pursued by the Plaintiffs against their own monetary interests and it has not been pursued by the Defendants against some of their past and/or current officials and officers based on alleged

criminal activity, among various other concerns surrounding the incentives of certain policy-making internationally out of this case.

In order to seek relief pursuant to Fed. R. Civ. P, Rule 60, there is a need for a final judgment that, upon the different scenarios per its own terms, calls for grounds that justify such relief, including the alleged international criminal scheme being consummated by final Court decree as well as the material magnitude of the $16.1 billion plus award on the entire Argentinean population and the forward-looking impact of such a legal precedent (Fed. R. Civ. P., Rule 60(b)(6), (d)(1)–(3)).  Without a doubt, the eventual *stare decisis* effects of this Court's final ruling give room for intervention as of right.  See *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265-66 (2d Cir. 1984).

Although the Court is certainly vested with discretion to rule on RA4ARG's reasonable and well-grounded request, it is hereby claimed that such a jurisdictional power is by definition at odds with its potential abuse, in particular when it is well-settled precedent that Fed. R. Civ. P., Rule 24(a) must be liberally interpreted by making intervention as of right appropriate even if the proposed intervenor's showing is weaker as to others.  See *United States v. Hooker Chems. & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir. 1984).

Beyond some mere academic exercise, it is also proper to notice the statutory evolution from the 1938 version of Rule 24 to its 1966 version and onwards, to the very least, confirming the legislature intent to open up the federal jurisdictional threshold to third-parties[12] who in fact do have a legitimate interest to intervene in the conflict at hand, clearly when the existing parties have not and will not shelter it for whatever the reasons.

---

[12] Kennedy, John E,  "Let's All Join In: Intervention Under Federal Rule 24", *57 Kentucky Law Journal 3*, Art. 2, 1969, 329-381.

Indeed, RA4ARG has a *"direct, substantial, and legally protectable"* interest in the core matter of this legal dispute.  See *Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  Such an interest is the opposing *"mirror-image"* of the Plaintiff's interests as well as some of the Defendant's past and current officials and officers' interests.  To the prior, see *Builders Ass'n of Greater Chicago v. City of Chicago,* 170 F.R.D. 435, 440–41 (N.D. Ill. 1996).  And to the latter, it has been stated that *"when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests should be entitled to intervene."* See *United Guaranty Residential Ins. Co. v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987); *Kleissler v. United States Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998); *Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior,* 100 F.3d 837, 845 (10th Cir. 1996).

Although RA4ARG is fully aligned with the interests of the Argentinean people as well as the national and strategic interests of the United States of America, within the realm of a motion pursuant to Fed. R. Civ. P., Rule 60 –the grounds precisely outlined under such provision– at this procedural juncture, such interests and those of individual nature within the spheres of the Defendants diverge in the context of alleged criminal activity by the prior.  As a principle of law vouching for intervention in the context of divergent, conflictive and/or dissimilar interests, see *United States v. Hooker Chemicals & Plastics Corp*., 749 F.2d at 985 (2nd Cir. 1984); *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013); *Commonwealth of Pennsylvania v. President of the United States*, 888 F.3d 52 (3d Cir. 2018) (Little Sisters of the Poor); *Trbovich v. United Mine Workers of Am*., 404 U.S. 528, 538 n.10 (1972).

Unquestionably, from a practical standpoint RA4ARG and the entire Argentinean population *"stand to gain or lose by the direct legal operation"* of this Court's final ruling.  See *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).  Therefore, under the precise timing of these very own proceedings with now a final ruling framed per Fed. R. Civ. P., Rule 60, the pleaded intervention by RA4ARG is timely via proper motion to that effect, either as a matter of right or permissive leeway from the Court (Fed. R. Civ. P., 24(a)–(b), Fed. R. Civ. P., Rule 60)).

**c.      Permissive Intervention**.

A core consideration of permissive intervention under Fed. R. Civ. P., Rule 24(b) is *"whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." United States Postal Service v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978). RA4ARG's intervention is indeed timely because in order to claim the full consummation of fraud upon the Court it is necessary to have a final judgment by the latter –it could have not happened in full before– as well as a legal precedent that is consistent with current US legislative goals fostering integrity and transparency in business dealings around the world, needless to say a deterrence not to benefit via Court decree from alleged criminal activity as in the present case before Your Honor.  *"Rule 24(b) mentions only undue delay; normal delay does not require denying intervention, because adding parties to a case almost always results in some delay."* See *Steves & Sons, Inc. v. Jedlwen, Inc*., 323 F.R.D. 553, 561 (E.D. Va. 2018).

Moreover, RA4ARG's intervention is not delaying these on-going legal proceedings –in principle geared for long appeals independent of RA4ARG's pleadings–, rather seeking to vacate the judgment that already adjudicated rights to the Plaintiffs via a $16.1 billion plus award in the form of a valid motion pursuant to Fed. R. Civ. P., Rule 60.  In other words,  RA4ARG is not delaying these civil proceedings because it is arguing that they are criminal in nature before a US

court and its final judgment should be vacated entirely.  In this sense, RA4ARG is timely and proper insofar its purpose is foreign to the underlying civil dispute, yet critical to eliminate it at inception due to its alleged criminal poisonous root.

As a sheer fact, RA4ARG does have a *"claim or defense that shares with the main civil action a common question of law or fact"* (Fed. R. Civ. P., Rule 24(b)(1)(B)), yet with very different outcomes never advocated before Your Honor, as a result of a motion pursuant to Fed. R. Civ. P., Rule 60, with specific grounds that presuppose a final judgment subject to it.

As a whole, RA4ARG does satisfy the requirements for permissive intervention.  Indeed, this Court has repeatedly said that Fed. R. Civ. P., Rule 24(b) *"is to be liberally construed."* See *Yang v. Kellner*, 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) (quoting *Olin Corp. v. Lamorak Ins. Co*., 325 F.R.D. 85, 87 (S.D.N.Y. 2018)).  As opposed to Fed. R. Civ. P., Rule 24(a)(2), Rule 24(b) does not ask whether the movant has an interest at stake in the litigation. See *United States v. Local 683, Enterprise Ass'n*, 347 F. Supp 164, 166 (S.D.N.Y. 1972). Furthermore, Fed. R. Civ. P., Rule 24(b) does not inquire as to whether the original parties adequately represent the movant's interests. See *Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747, 754 (E.D.N.Y. 2016), aff'd, 685 Fed. App'x 69 (2d Cir. 2017).  On the contrary, *"Rule 24 (b) is just about economy in litigation."* See *City of Chicago v. FEMA*, 660 F.3d 980, 987 (7th Cir. 2011).  And judicial economy is highly served via a motion pursuant to Fed. R. Civ. P., Rule 60.

In short, the legal standard or bar for permissive intervention is lower than the one for intervention as of right, and, as elaborated herein, RA4ARG does meet the threshold imposed in both scenarios by Fed. R. Civ. P., Rule 24(a)–(b).  Please do note that *"the magnitude of this case is such that [RA4ARG's] intervention will contribute to the equitable resolution of this case."*  See *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1111 (9th Cir. 2002).

At the academic level it has been argued that there is some confusion and disparities as to what standard should apply regarding permissive intervention, yet clarifying such requirements are clearly met by RA4ARG to access the jurisdictional threshold as an interested party in the present legal conflict as follows:

> "The courts should adopt a uniform standard for granting standing for permissive intervention in a suit. That standard should allow a party to intervene, so long as (1) the would-be intervenor meets the requirements of Rule 24 and (2) the original parties remain in the suit and satisfy the requirements for standing. This rule is consistent with the language of Rule 24(b), the history and policy goals of permissive intervention, and the Federal Rules of Civil Procedure. In many cases, the rule would allow voices to be heard in a suit that would otherwise be silenced. Finally, a uniform rule would avoid punishing would-be intervenors based solely on where the original plaintiff filed the suit. A consistent rule would also recognize that the importance of allowing intervenors to be heard can be reconciled with the concerns of efficiency and protection of the rights of the original parties as guaranteed by Rule 24(b). Moreover … courts would recognize that allowing legitimate grievances to be heard is too important to be determined by district court boundaries."[13]

RA4ARG pleads the Court to allow it to permissively intervene and share its legal and financial experience also in dealing with financial players, the Republic of Argentina, and YPF.[14]

**IV.    Conclusion and Relief.**

As a result of the aforementioned, RA4ARG claims to have legal standing to intervene in these legal proceedings as an interested party, within its equitable and just goals as a tax-exempt charitable entity under domestic law, on behalf of all Argentinean citizens and in tandem with the very same national and strategic interest of the United States of America. RA4ARG

---

[13] Garner, Amy M., "An Attempt to Intervene in the Confusion: Standing Requirements for Rule 24 Intervenors", *69 University of Chicago Law Review 681*, 2002, 703.

[14] The undersigned practiced as a lawyer with Clifford Chance and Brown & Wood (now Sidley Austin) out of New York City advising financial institutions and governments in US public offerings, as well as worked as an investment banker for many years advising Latin American governments and companies like in fact YPF (structuring its $1 billion block trade of the Employee Participation Program in the US in 1997, among others) as to their accessing the US capital markets as well as M&A activity.

respectfully pleads the Court to allow it to intervene as an interested party herein (Fed. R. Civ.

P., Rule 24(a)–(b), Fed. R. Civ. P., Rule 60).  It is hereby reminded that RA4ARG's motion to

intervene has been submitted on an *ex-parte* basis with proper affidavit (Fed. R. Civ. P., Rule

5(D), Fed. R. Civ. P., Rule 24(c), Local Civil Rule 6.1(d)).   In addition, RA4ARG remains at the

Court's disposal in case oral arguments are convenient and/or necessary to rule on the issues at

hand (Individual Practice Rules LAP, Rule 2(D)).

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.

By:  _____
     Fernando G. IRAZU (*pro hac vice* motion pending)
     Attorney at Law
     **Republican Action for Argentina, Inc.**
     Interested Party
     Billinghurst 1656
     Buenos Aires, 1425, ARGENTINA
     fgirazu@gmail.com
     +54911 3084-8080

13

## <u>CERTIFICATION</u>

Pursuant to Individual Practice Rules LAP, Rule 2(B), the undersigned certifies that the foregoing Memorandum of Law complies with all formatting requirements and contains 4,228 words.

_____
Fernando G. IRAZU (*pro hac vice* motion pending)
Attorney at Law

# EXHIBIT 1

# STATE OF NEW YORK
# DEPARTMENT OF STATE

I hereby certify that the annexed copy for REPUBLICAN ACTION FOR ARGENTINA INC., File Number 240306002475 has been compared with the original document in the custody of the Secretary of State and that the same is true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on March 06, 2024.

Brendan C. Hughes
Executive Deputy Secretary of State

Authentication Number: 100005321614 To Verify the authenticity of this document you may access the Division of Corporation's Document Authentication Website at http://ecorp.dos.ny.gov



**Division of Corporations, State Records and Uniform Commercial Code**

New York State
**Department of State**
**DIVISION OF CORPORATIONS,**
**STATE RECORDS AND**
**UNIFORM COMMERCIAL CODE**
One Commerce Plaza
99 Washington Ave.
Albany, NY 12231-0001
https://dos.ny.gov

# CERTIFICATE OF INCORPORATION
## OF

Republican Action for Argentina Inc.
_____
*(Corporation Name)*

Under Section 402 of the Not-for-Profit Corporation Law

**FIRST:** The name of the corporation is:

Republican Action for Argentina Inc.
_____.

**SECOND:** The corporation is a corporation as defined in subparagraph (5) of paragraph (a) of Section 102 of the Not-for-Profit Corporation Law.

**THIRD:** *(Select all that apply)*

The purpose(s) for which the corporation is formed is:

☐ any purpose for which corporations may be organized under the Not-for-Profit Corporation Law as a charitable corporation.

☐ any purpose for which corporations may be organized under the Not-for-Profit Corporation Law as a non-charitable corporation.

☒ any purpose for which corporations may be organized under the Not-for-Profit Corporation Law as a charitable corporation or as a non-charitable corporation. (*Note: Checking this box results in the corporation being categorized as a charitable corporation in paragraph FIFTH.*)

☒ the following specific purpose(s):

We help Argentina strengthening its republican institutions with democratic participation, with the goal of fostering judicial independence and integrity in public service, while also advocating for personal rights and free-market economy.

Filed with the NYS Department of State on 03/06/2024
Filing Number: 240306002475 DOS ID: 7272357

**FOURTH:** *(Check the appropriate statement)*

☒ The corporation is not formed to engage in any activity or for any purpose requiring consent or approval of any state official, department, board, agency or other body. No consent or approval is required.

☐ The corporation is formed to engage in an activity or for a purpose requiring consent or approval of a state official, department, board, agency or other body. Such consent or approval is attached.

**FIFTH:** The corporation is a: ☒ charitable corporation ☐ non-charitable corporation under Section 201 of the Not-for-Profit Corporation Law.

**SIXTH:** The office of the corporation is to be located in the County of ____NEW YORK____, State of New York.

**SEVENTH:** The names and addresses of the initial directors of the corporation are:
*(A minimum of three is required)*

Name: ___Fernando Gabriel Irazu___

Address: ___210 EAST 68TH STREET 14 H NEW YORK, NY 10065-6047___

Name: ___Ignacio Martin Irazu___

Address: ___210 EAST 68TH STREET 14 H NEW YORK, NY 10065-6047___

Name: ___Roberto Tomas Helguera___

Address: ___210 EAST 68TH STREET 14 H NEW YORK, NY 10065-6047___

**EIGHTH:** The Secretary of State is designated as agent of the corporation upon whom process against the corporation may be served.

The post office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery is:
___210 EAST 68TH STREET 14 H___

___NEW YORK, NY 10065-6047___

(Optional) The email address to which the Secretary of State shall email a notice of the fact that process against the corporation has been served electronically upon the Secretary of State is:

_____

Filed with the NYS Department of State on 03/06/2024
Filing Number: 240306002475 DOS ID: 7272357

NINTH: *(Optional – Corporations seeking tax exempt status may include language required by the Internal Revenue Service in this paragraph. See Not-for-Profit Incorporation Instructions.)*

The following language relates to the corporation's tax exempt status and is not a statement of purposes and powers. Consequently, this language does not expand or alter the corporation's purposes or powers set forth in paragraph THIRD.

Purpose and Dissolution Clause as required by IRS:

Purpose Clause: This organization is organized exclusively for charitable, educational, religious and/or scientific purposes under Section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code, and shall not inure benefit or earnings to any private shareholder or individual.

Dissolution Clause: Upon the winding up and dissolution of this organization, after paying or adequately providing for the debts and obligations of the organization, the remaining assets shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for one or more exempt purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code, including to another tax-exempt organization under Section 501(c)(3), or shall be distributed to the federal government, or to a state or local government, for a public purpose.

Filed with the NYS Department of State on 03/06/2024
Filing Number: 240306002475 DOS ID: 7272357

NAME, SIGNATURE & ADDRESS OF INCORPORATOR:

Farwa Qazalbash

_(Print or Type Name of Incorporator)_

X

_(Signature of Incorporator)_

6218 Georgia Ave N.W. Unit #1104

_(Address of Incorporator)_

Washington, DC 20011

_(City, State, Zip Code)_

## CERTIFICATE OF INCORPORATION
## OF

Republican Action for Argentina Inc.

_(Corporation Name)_

Under Section 402 of the Not-for-Profit Corporation Law

Filer's Name and Mailing Address:

Farwa Qazalbash

_Name:_

Instant Nonprofit

_Company, if Applicable:_

6218 Georgia Ave N.W. Unit #1104

_Mailing Address:_

Washington, DC 20011

_City, State and Zip Code:_

**NOTES:**

1. §301 of the Not-for-Profit Corporation Law requires that the name contain "Incorporated" or "Inc." or one of the other words or abbreviations indicative of corporate character unless the corporation qualifies for one of the exceptions in §301.
2. This sample form is provided by the New York State Department of State for filing a certificate of incorporation.
3. This form is designed to satisfy the minimum filing requirements pursuant to the Not-for-Profit Corporation Law. The Department of State will accept any other form which complies with the applicable statutory provisions.
4. The Department of State recommends that this legal document be prepared under the guidance of an attorney.
5. The Department of State does not provide legal, accounting or tax advice.
6. This certificate must be submitted with a **$75 filing fee** made payable to the Department of State.

_For DOS use only_

Filed with the NYS Department of State on 03/06/2024
Filing Number: 240306002475 DOS ID: 7272357

# **EXHIBIT 2**



**Department of the Treasury
Internal Revenue Service
Tax Exempt and Government Entities**
P.O. Box 2508
Cincinnati, OH 45201

**Date:**
12/18/2024
**Employer ID number:**
99-1788234
**Person to contact:**
 Name: Paul F Cappel II
 ID number: 1010762
 Telephone: (877) 829-5500
**Accounting period ending:**
 December 31
**Public charity status:**
 170(b)(1)(A)(vi)
**Form 990 / 990-EZ / 990-N required:**
 Yes
**Effective date of exemption:**
 March 6, 2024
**Contribution deductibility:**
 Yes
**Addendum applies:**
 No
**DLN:**
 26053478003764

REPUBLICAN ACTION FOR ARGENTINA INC
210 EAST 68TH STREET 14 H
NEW YORK, NY 10065-6047

Dear Applicant:

We're pleased to tell you we determined you're exempt from federal income tax under Internal Revenue Code (IRC) Section 501(c)(3). Donors can deduct contributions they make to you under IRC Section 170. You're also qualified to receive tax deductible bequests, devises, transfers or gifts under Section 2055, 2106, or 2522. This letter could help resolve questions on your exempt status. Please keep it for your records.

Organizations exempt under IRC Section 501(c)(3) are further classified as either public charities or private foundations. We determined you're a public charity under the IRC Section listed at the top of this letter.

If we indicated at the top of this letter that you're required to file Form 990/990-EZ/990-N, our records show you're required to file an annual information return (Form 990 or Form 990-EZ) or electronic notice (Form 990-N, the e-Postcard). If you don't file a required return or notice for three consecutive years, your exempt status will be automatically revoked.

If we indicated at the top of this letter that an addendum applies, the enclosed addendum is an integral part of this letter.

For important information about your responsibilities as a tax-exempt organization, go to www.irs.gov/charities. Enter "4221-PC" in the search bar to view Publication 4221-PC, Compliance Guide for 501(c)(3) Public Charities, which describes your recordkeeping, reporting, and disclosure requirements.

Sincerely,

Stephen A. Martin
Director, Exempt Organizations
Rulings and Agreements

**Letter 947 (Rev. 2-2020)**
Catalog Number 35152P

IRS  DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  03-07-2024

Employer Identification Number:
99-1788234

Form:  SS-4

Number of this notice:  CP 575 E

REPUBLICAN ACTION FOR ARGENTINA INC
210 E 68TH ST APT 14H
NEW YORK, NY  10065

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you EIN 99-1788234.  This EIN will identify your entity, accounts, tax returns, tax returns, and documents, even if you have no employees.  Please keep this notice in your permanent records.

Taxpayers request an EIN for business and tax purposes. Some taxpayers receive CP575 notices when another person has stolen their identity and are operating using their information. If you did **not** apply for this EIN, please contact us at the phone number or address listed on the top of this notice.

When filing tax documents, making payments, or replying to any related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above. Any variation may cause a delay in processing, result in incorrect information in your account, or even cause you to be assigned more than one EIN. If the information is not correct as shown above, please make the correction using the attached tear-off stub and return it to us.

When you submitted your application for an EIN, you checked the box indicating you are a non-profit organization.  Assigning an EIN does not grant tax-exempt status to non-profit organizations.  Publication 557, Tax-Exempt Status for Your organization, has details on the application process, as well as information on returns you may need to file.  To apply for recognition of tax-exempt status, organizations must complete an application on one of the following forms: Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code; Form 1023-EZ, Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code; Form 1024, Application for Recognition Under Section 501(a); or Form 1024-A, Application for Recognition of Exemption Under Section 501(c)(4) of the Internal Revenue Code.

Nearly all organizations claiming tax-exempt status must file a Form 990-series annual information return (Form 990, 990-EZ, or 990-PF) or notice (Form 990-N) beginning with the year they legally form, even if they have not yet applied for or received recognition of tax-exempt status.

If you become tax-exempt, you will lose tax-exempt status if you fail to file a required return or notice for three consecutive years, unless a filing exception applies to you (search www.irs.gov for Annual Exempt Organization Return: Who Must File). We start calculating this three-year period from the tax year we assigned the EIN to you.  If that first tax year isn't a full twelve months, you're still responsible for submitting a return for that year.  If you didn't legally form in the same tax year in which you obtained your EIN, contact us at the phone number or address listed at the top of this letter. For the most current information on your filing requirements and other important information, visit www.irs.gov/charities.

(IRS USE ONLY)    575E                03-07-2024   REPU  O  9999999999  SS-4

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. This notice is issued only
  one time and the IRS will not be able to generate a duplicate copy for you. You
  may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all
  your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

* Provide future officers of your organization with a copy of this notice.

Your name control associated with this EIN is REPU.  You will need to provide
this information along with your EIN, if you file your returns electronically.

Safeguard your EIN by referring to Publication 4557, Safeguarding Taxpayer
Data: A Guide for Your Business.

You can get any of the forms or publications mentioned in this letter by
visiting our website at www.irs.gov/forms-pubs or by calling 800-TAX-FORM
(800-829-3676).

If you have questions about your EIN, you can contact us at the phone number or
address listed at the top of this notice.  If you write, please tear off the stub at
the bottom of this notice and include it with your letter.

Thank you for your cooperation.


                    Keep this part for your records.        CP 575 E (Rev. 7-2007)

--------------------------------------------------------------------------------
     Return this part with any correspondence
     so we may identify your account.  Please                      CP 575 E
     correct any errors in your name or address.
                                                              9999999999


     Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  03-07-2024
     (      )    -                             EMPLOYER IDENTIFICATION NUMBER:  99-1788234
     _____   _____    FORM:  SS-4              NOBOD


     INTERNAL REVENUE SERVICE                  REPUBLICAN ACTION FOR ARGENTINA INC
     CINCINNATI  OH   45999-0023               210 E 68TH ST APT 14H
     |||||||||||||||||||||||||||||||||||||     NEW YORK, NY  10065



**RA*4*ARG**
*REPUBLICAN ACTION*
*FOR ARGENTINA*

December 14, 2024

Mr. Paul Cappel II
Internal Revenue Services
Tax Exempt and Government Entities
Room 6403
P.O. Box 2508
Cincinnati, OH 45201
Group 7830

Fax # 855.811.4497

Dear Mr. Cappel:

*Re.:  Republican Action for Argentina, EIN 991788234, determination letter request of November 19, 2024, Letter 1312 (Rev. 8-2024)*

I am writing to you as the president and one of the founders of Republican Action for Argentina (*RA4ARG*) to answer on a timely basis the above-referenced determination letter request.

**1.**    Sworn statement.

Under penalties of perjury, I declare that I have examined the attached request, or this modification to the request, including accompanying documents, and, to the best of my knowledge and belief, the request or modification contains all the relevant facts relating to the request, and such facts are true, correct, and complete.

_____
Fernando G. Irazu, President

December 14, 2024
Date

1



**2.**    Detailed description of your past, present, and future activities.

**a.**    *RA4ARG* was established to defend the republican principles with democratic participation under the Constitution of Argentina, which followed the template of the US Constitution. Its activities could also have positive ramifications at the regional level (e.g., Brazil, Venezuela, and other places facing steep challenges at the institutional level).

It is important to clarify that our foundation does not have any political exposure as neither myself nor any of the founders or executives of our institution. We do not advance political interests or parties of any specific sort, rather the ideals that represent the republican system of government under a specific set of moral values.

*RA4ARG* strives to strengthen the core values of justice and freedom, in particular by fostering the independence of the judiciary and the integrity of public office, as well as via our educational endeavors. Indeed, we aim at a positive institutional impact by protecting the republican system of government and individual rights. Such approach translates into sheltering the honest and decent public servants, the independence of the judiciary, core principles, rights and guarantees of constitutional nature with collective impact, and similar activities that encompass the values of freedom and justice.

With various degrees of success, we are involved in various high profile constitutional and criminal law cases of institutional relevance centered on those goals. We encourage you to look at our website www.republicanactionforargentina.org in order to peruse our professional backgrounds and the sort of cases we sponsor locally and also before the Interamerican Commission / Court of Human Rights out of Washington DC, as well their public ramifications in the media.

From the constitutional standpoint, we have outstanding cases about the right to association (one of our local vehicles was blocked by corrupt local officers belonging to some corrupt political faction of former president Kirchner for pursuing criminal complaints against them; an extraordinary appeal to the local Supreme Court was granted, and we are awaiting final judgment); the principle of equal protection and the independence of the judiciary (writ of *amparo* with declarative action of unconstitutionality for certain normative discriminating against the entire private educational sector at the Council of the Judiciary, for political reasons, thus impacting its independence at the time of selecting, overseeing and removing judges, prosecutors and public defenders); ethical complaints concerning the integrity of public officers (firm judgment against the attorney of two former presidents and one economic minister for defaming federal judges, prosecutors and the Jewish community in connection with the terrorist attack by Hezbollah on the Israeli embassy in Buenos Aires; with another case pending before the local Supreme Court calling for the unconstitutionality of certain provisions of the Law for the Practice of the Legal Profession); among other cases defending individual rights as



well as with criminal connotations of corrupt public officers at the highest level irrespective of their political identity or profile.

At the personal level, I am an American citizen myself, a Harvard Law Graduate licensed to practice law in the US (NYS and US Supreme Court) and Argentina (Buenos Aires and Federal Courts), also with a validated law diploma in Spain; a former investment banker and trusted advisor of a few decades in Wall Street; currently a professor of law out the local Catholic University, Faculty of Economics; and a former law clerk with the Public Defender before the local Supreme Court of Justice and Federal Courts, among others.

**b.**     The legal activities or litigation of public-related interest is carried by me, the president of *RA4ARG*. Before launching *RA4ARG,* last 2021 we decided to build-up a serious professional track-record, which is now reflected in some landmark cases per **a.** above. The educational endeavors are mostly carried out by Mr. Roberto Helguera, a consummated educator who puts forward the concept of virtue and family life at the center of the educational experience.

**c.**     So far our litigation activity takes place before Federal Courts and the Supreme Court of Justice in Argentina as well as before the Interamerican Commission / Court of Human Rights out of Washington, DC. I am personally in between Buenos Aires and New York City (where I have two of my three adult American children), and Mr. Helguera is full-time in Buenos Aires.

**d.**     Our activities are fruit of a pipeline of cases we pursue based on suitability, which determines its timing on a case by case basis. We do not charge any fees for the activities.

As the president of *R4ARG*, I split my time almost equally between academia and our foundation activities. I have been affording all expenditures of the foundation's efforts with my personal resources. *RA4ARG* has not started any public fundraising in the US because we would like to attain the tax-exempt status first.

**3.**     <u>Do we and will we engage in financial transactions (such as, loans, payments, or rents) with any of our donors or any entities they own or control?</u>

*RA4ARG* does not engage and does not plan on engaging in any of such financial transactions with donors or entities they own or control.

**4.**     <u>Operations in a foreign country:  Argentina.</u>

**a.**     All legal activities predominantly occur in Argentina, though some litigation can take place elsewhere, like in the United States, when appropriate and conducive to the goals of



the foundation (*e.g.*, international criminal activity, like money laundering and ancillary, from corrupt politicians in public office; or currently litigation before the Interamerican Commission / Court of Human Rights on behalf of a court of appeals criminal judge discriminated and persecuted precisely for his work as a prosecutor against the corrupt former president Kirchner and her family).

    **b.**    Apart from the detailed description about our activities provided above, we do envision conducting fundraising in the United States among like-minded individuals and institutions who care about the republican system of government, rooted in the values of freedom and justice, in the American continent as a whole.

    **c.**    We have not instituted grants for organizations or individuals located in foreign countries yet. We do envision supporting the specific vehicles, either civil associations and/or foundations under Argentinean law, to carry out specific litigation of public-related interest, either in the criminal law field against corrupt public servants or merely defending individual rights with collective interest. The aforesaid implies expenses which we intend to serve via our efforts.

    **d.**    Under Argentinean law, foundations are exempt from affording legal fees in criminal cases they lose (acting as private prosecutors or *querellantes*), not so civil associations. In either case, if those vehicles channel our efforts, we intend to help them with our financial support. Educational endeavors, when suitable, will also require our effort, and foundations devoted to them under local law are also exempted.

    **e.**    Based on the prior statements, we have not made any distributions to anybody to date.

    **f.**    As far as legal activities are concerned, the process to identify the potential allocation of funds is fairly straight forward because it is driven on a case by case basis. Once we determine there is a legal case with potential institutional impact, a legal case we want to pursue because of its constitutional and/or public integrity ramifications, we are to commit to such effort financially. In fact, our own financial needs relate more to having and growing a team of paid-professionals to continue doing so mostly in-house. We would also reach out to pro-bono assistance from committed professionals to our higher cause.

    **g.**    As a result of the aforesaid, there are no grant agreements signed as of today.

    **h.**    Based on the very careful approach to our legal and educational activities, if there were a situation in which financial support (grants) could become recurrent, it would be precisely so because we are talking about the sort of goal we endeavor to accomplish in court or in classrooms.



**RA4ARG**
REPUBLICAN ACTION
FOR ARGENTINA

    **i.**    We would only accept donations earmarked for particular organizations or individuals that carry out the specific projects we intend to continue advancing in sync with our core goals.

    **j.**    As a part of any potential grant, we will be requiring a specific report detailing how such monies are actually spent, as well as periodic audits when there is merit for it.  In the case of legal activity under local law, civil associations and foundations are necessary as the proper vehicles for matters of collective interest under the Argentinean Constitution (writ of *amparo*) as well as local criminal normative (private prosecutors or *querellantes*).  Moreover, if *RA4ARG* were granted tax-exempt status in the US, we could eventually register it locally, in order to use it directly as such type of vehicle in Argentina, or simply rely on simile local vehicles to advance such same litigation and educational activities.

    **k.**    As a safeguard measure, we do anticipate having officers in local vehicles that do sit at *RA4ARG*.  As a matter of fact, the only purpose of the local vehicle, regarding the legal activities of our organization, is to carry out the specific legal action before the judicial system.  The fact I am the one doing so with my own name, reputation and expertise is what infuses further transparency, regardless of the fact we could vouch for other professionals in similar endeavors via their own local vehicles.

    **5.**    <u>Office of Foreign Assets Control (OFAC) compliance</u>.

    **a.**    We take good care all of our foreign activities are proper and legal, needless to say when our main purpose is to advance the values of freedom and justice at the constitutional level; meaning that we shall scrutinize and check the OFAC List of Specially Designated Nationals and Blocked Persons to make sure we are not to deal with any of those in such list (we have not dealt with anybody yet).

    **b.**    We will comply with all United States statutes, executive orders and regulations that restrict or prohibit US persons from engaging in transactions and dealings with designated countries, entities, or individuals or otherwise engaging in activities in violation of economic sanctions administered by OFAC.

    **c.**    We will acquire from OFAC the appropriate license and registration, if necessary.

    **d.**    It is worth reiterating that part of our mission entails battling corrupt politicians in criminal courts locally, which also includes those supporting terrorism.  It is unfathomable to conceive that we could support something we actively percecute on a case by case basis, while hopefully also educating children and others to do the same.  The replication of our commitments in this subject-matter shall be a *sine qua non* condition for our organization to support any third-party effort.



Sincerely yours,

Fernando Irazu, President
RA4ARG
210 East 68th Street, Apartment 14 H
New York, NY 10065

+ 1 (347) 793-8121
+ 54 9 11 3084-8080

fgirazu@gmail.com
contact@republicanactionforargentina.org

6

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x

PETERSEN ENERG A INVERSORA,
S.A.U. and PETERSEN ENERG A, S.A.U.,

*Plaintiffs,*

v.

ARGENTINE REPUBLIC and YPF S.A.

*Defendants*

-------------------------------------------------x

Case No.: 1-15-C-V-02739 (LAP)

The Honorable Loretta A. Preska

-------------------------------------------------x

ETON PARK CAPITAL MANAGEMENT,
LP, ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

*Plaintiffs,*

v.

ARGENTINE REPUBLIC and YPF S.A.

*Defendants*

-------------------------------------------------x

Case No.: 1-16-C-V-08569 (LAP)

## REPUBLICAN ACTION FOR ARGENTINA INC.'*S EX-PARTE* MOTION FOR ORDER PURSUANT TO FED. R. CIV. P, RULE 60 (b)(6), (d)(1)–(3)

Pursuant to Fed. R. Civ. P, Rule 60 (b)(6), (d)(1)–(3), Republican Action for Argentina, Inc. ("RA4ARG") hereby pleads the Court to: **(i)** order the Department of Justice (DOJ) and any other relevant agencies to initiate a formal criminal investigation at the international level of the facts and parties highlighted in the accompanying Memorandum of Law; **(ii)** stay these legal

proceedings pending of such side criminal investigation as well as eventual indictments and

prosecution; and **(iii)** timely vacate the $16.1 billion plus award against the Republic of

Argentina (# 498, 9/15/2023, as well as all prior and ancillary ones to that effect) due to

institutional interests and concerns in light of international criminal activity unduly impacting the

US legal system (FRCP, Rule 60 (b)(6), (d)(1)–(3)). In light of the nature of RA4ARG's

requested intervention, this motion is submitted on an *ex-parte* basis with proper affidavit (Rule

5(a)(1)(D), Local Civil Rule 6.1(d)).  RA4ARG remains at the Court's disposal if oral arguments

are deemed convenient and/or necessary to rule on the issues at hand (Individual Practice Rules

LAP, Rule 2(D)).

### Rule 60. Relief from a Judgment or Order.

"(a) CORRECTIONS BASED ON CLERICAL MISTAKES; OVERSIGHTS AND OMISSIONS. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so  on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

**(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons**: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable  diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or **(6) any other reason that justifies relief**.

**(c) TIMING AND EFFECT OF THE MOTION**. (1) Timing. **A motion under Rule 60(b) must be made within a reasonable time**—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding. (2) Effect on Finality. The motion does not affect the judgment's finality or suspend its operation.

**(d) OTHER POWERS TO GRANT RELIEF**. **This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2)** grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or **(3) set aside a judgment for fraud on the court**…"

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.

By: _____

Fernando G. IRAZU (*pro hac vice* motion pending)
Attorney at Law
***Republican Action for Argentina, Inc.***
Interested Party
Billinghurst 1656
Buenos Aires, 1425, ARGENTINA
fgirazu@gmail.com
+54911 3084-8080

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

PETERSEN ENERG A INVERSORA,
S.A.U. and PETERSEN ENERG A, S.A.U.,

        *Plaintiffs*,

        v.

ARGENTINE REPUBLIC and YPF S.A.

        *Defendants*

-------------------------------------------------------x

Case No.: 1-15-C-V-02739 (LAP)

The Honorable Loretta A. Preska

-------------------------------------------------------x

ETON PARK CAPITAL MANAGEMENT,
LP, ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

        *Plaintiffs,*

        v.

ARGENTINE REPUBLIC and YPF S.A.

        *Defendants*

-------------------------------------------------------x

Case No.: 1-16-C-V-08569 (LAP)

## AFFIDAVIT OF REPUBLICAN ACTION FOR ARGENTINA'S
## *EX-PARTE* MOTION FOR ORDER PURSUANT TO Fed. R. CIV. P., RULE 60

      Pursuant to Local Civil Rule 6.1(d), this motion for order pursuant to Fed. R. Civ. P.,

Rule 60, is submitted on an *ex-parte* basis in tandem with RA4ARG's *Ex-Parte* Motion to

Intervene, of today's date. No previous application seeking such a relief or similar was ever

made.  All of these fillings are submitted on an *ex-parte* basis for evident reasons:  if there is a

formal criminal investigation at the international level out of the United States as requested therein, involving former and current government officers and officials of the Republic of Argentina and/or YPF, including the very same parties to these legal proceedings and their associates, none of it should be known to any those parties prior to the US legal system making a formal determination as to the right course of action.  Past and/or present officers and officials of the existing parties in the legal conflict before this Court, to a larger or lesser extent, are key subjects of such criminal investigation as well as any eventual indictments and prosecution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.

By:    Fernando G. IRAZU (*pro hac vice* motion pending)
Attorney at Law
**Republican Action for Argentina, Inc.**
Interested Party
Billinghurst 1656
Buenos Aires, 1425, ARGENTINA
fgirazu@gmail.com
+54911 3084-8080

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

PETERSEN ENERG A INVERSORA,
S.A.U. and PETERSEN ENERG A, S.A.U.,

                *Plaintiffs*,

                v.

ARGENTINE REPUBLIC and YPF S.A.

                *Defendants*

---------------------------------------------------------x

Case No.: 1-15-C-V-02739 (LAP)

The Honorable Loretta A. Preska

---------------------------------------------------------x

ETON PARK CAPITAL MANAGEMENT,
LP, ETON PARK MASTER FUND, LTD.,
and ETON PARK FUND, L.P.,

                *Plaintiffs,*

                v.

ARGENTINE REPUBLIC and YPF S.A.

                *Defendants*

---------------------------------------------------------x

Case No.: 1-16-C-V-08569 (LAP)

**REPUBLICAN ACTION FOR ARGENTINA INC.'S MEMORANDUM OF LAW
IN SUPPORT OF *EX-PARTE* MOTION FOR ORDER
PURSUANT TO FED. R. CIV. P., RULE 60(b)(6), (d)(1)–(3)**

February 17, 2025

# **TABLE OF CONTENTS**

Table of Authorities…………………………………………………………..…..ii

**I.**    Standard for Review…………………………..……………………………..…1

**II.**    Factual Context……………………………………………………...………5

**III.**    Legal Standing…………………………………..……………………….....11

**IV.**    Legal Argument…..…………………………………………....................12

   **a.**  Applicable Normative………………………………………..…12

   **b.**  Legal Grounds……………………………………………………13

**V.**    Conclusion and Relief……………………………………………………20

   Certification………………………………………………………...22

# TABLE OF AUTHORITIES

*Cases*

*United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.1993) …………....1

*Tani*, 282 F.3d at 1168 (*citing Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir. 1971)………………………………………………………………………………....1

*Klapprott v. United States*, 335 U.S. 601 (1949)…………………………....………………..2

*Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010), *cert. denied*, 564 U.S. 1006 (2011) (quoting *Batts v. Tow-Motor Forklife Co.*, 66 F.3d 743, 747 (5th Cir. 1995))…………………..2

*Marco Destin, Inc. v. Levy*, No. 23-1330 (2d Cir. Aug. 8, 2024)………………………………3, 4

*RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016)……………………………..6

*United States v. Antonius*, No. 21-1083, 7-10-2023 (2d. Cir. 2023)…………………………9, 10

*Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 188 (2d Cir. 2006)……………………..11, 12

*Binker v. Com. of Pa.*, 977 F.2d 738, 745 (3d Cir. 1992)……………………………………..12

*Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir. 1980) (*per curiam*)…………………...…..12

*Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)………………...14

*People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Hum. Servs.*, 901 F.3d 343, 355 (D.C. Cir. 2018) (quoting *Comput. Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996))……………………………………………………………………14

*Jordan v. U.S. Dep't of Lab.*, 331 F.R.D. 444, 451 (D.D.C. 2019), *aff'd*, No. 19-5201, 2020 WL 283003 (D.C. Cir. Jan. 16, 2020)…………………………………………………………...14

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)…………………………...14

*Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1266 (10th Cir. 1995)……………………..14

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 385 (7th Cir. 2008)…………………………………………………………………………………14, 15

*Consejo de Defensa del Estado de la Republica de Chile v. Banco Santander Central Hispano, S.A.*, No. 09-20621, 2009 WL 2336429 (S.D. Fla. May 29, 2009)……………………………...18

*Consejo de Defensa del Estado de la Republica de Chile v. Banco de Chile*, No. 109CV20614, 2009 WL 1612255 (S.D. Fla. Mar. 11, 2009)……………………………………………………18

*Republic of Haiti v. Aristide*, No. 05-22852, 2005 WL 3521251 (S.D. Fla. Nov. 2, 2005)…18, 19

*Republic of Iran v. Pahlavi*, 464 N.Y.S.2d 487 (N.Y. App. Div. 1983)…………………………19

*Republic of Panama v. BCCI Holdings*, 119 F.3d 935 (11th Cir. 1997)…………………….....19

*Republic of the Philippines v. Marcos*, 818 F.2d 1473, 1480–81 (9th Cir. 1987) rehearing *en banc*, 862 F.2d 1355, 1360–61 (9th Cir. 1988) (*en banc*)………………….....………………..19

**Acts and Rules**

Foreign Corrupt Practices Act (FCPA)……………………………………………….....6, 16

Racketeer Influenced and Corrupt Organizations Act (RICO)………………………………6

Fed. R. Civ. P., Rule 60………..……………………………….…..…1-5, 8, 11-15, 19-20

Fed. R. Civ. P., Rule 24……………..………………………………......................1, 11, 16

Fed. R. Civ. P., Rule 62.1………..…………………………….…………………....1, 11

Local Civil Rule 6.1(d)………………………………………………………………1

Individual Practice Rules LAP, Rule 2……………………………...……………22

**Doctrine**

Notes, "Federal Rule 60(b): Relief From Civil Judgments", *61 The Yale Law Journal 1952*, 77-81-84……………………………………………………………………………..2

Meadows, Christopher G., "Rule 60(b)(6): Whether "Tapping the Gran Reservoir of Equitable Power" Is Appropriate to Right An Attorney's Wrong", *88 Marquette Law Review*, 2005, 997-1011……………………………………………………………………………15

Garner, Amy M., "An Attempt to Intervene in the Confusion: Standing Requirements for Rule 24 Intervenors", *69 University of Chicago Law Review 681*, 2002, 703………………………...16

Arbastkaya, Maria, Mialon, Hugo, "The Impact of Foreign Corrupt Practices Act on Competitiveness, Bribery, and Investment", *22(1) American Law and Economics Association*, April 2020, 105-126……………………………………………………………………...16

Bleimaier, John Kuhn, "The Doctrine of Comity In Private International Law", *24 The Catholic Lawyer 4, 5*, Autumn 1979, 327-332…………………………………………………..

Buxbaum, Hannah L., "Foreign Governments as Plaintiffs in U.S. Courts and the Case Against "Judicial Imperialism", *73 Washington and Lee Law Review 653*, 2016, 688-692…………..…17

* * *

**I.** **Standard for Review**

Republican Action for Argentina, Inc. ("RA4ARG") hereby files this motion pursuant to Fed. R. Civ. P., Rule 60(b)(6), (d)(1)–(3), seeking relief from this Court's judgment against the Republic of Argentina and in favor of the Plaintiffs in the amount of $16.1 billion plus (# 498, 9/15/2023, as well as all prior and ancillary ones to that effect). RA4ARG argues the aforesaid judgments of this Court should be set aside due to institutional interests and concerns in light of international criminal activity engulfing the parties that unduly impact the US legal system (Fed. R. Civ, P., Rule 60(b)(6), (d)(1)–(3)). RA4ARG pleads the Court to defer judgment on this motion until its intervention has been ruled upon per its *ex-parte* motion to intervene of today's date (Fed. R. Civ. P., Rule 24, Rule 62.1, Local Civil Rule 6.1.d).

Fed. R. Civ. P., Rule 60(b)(6) specifically provides *"for any other reason that justifies relief"* against a judgment, order or proceeding, *"but must be made within a reasonable time and must be used sparingly as an equitable remedy to prevent manifest injustice."* See *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.1993); and the pleader must demonstrate *"extraordinary circumstances which prevented or rendered him unable to prosecute [his case]."* See *Tani,* 282 F.3d at 1168 (*citing Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir. 1971).

Attending the extraordinary circumstances surrounding the present litigation described below, RA4ARG argues that its request for relief per Fed. R. Civ. P, Rule 60(b)(6) has been made within the prescribed *"reasonable time"*, unconstrained by the one-year limitation imposed to other grounds under Fed. R. Civ. P., Rule 60(c). The norm is clear about limiting some of its other grounds for relief to a one-year timeframe, even when several State legislatures allow for a two-year one or no limitation at all like in the case of overall fraud.

1

A plain interpretative intelligence indicates that the term *"reasonable time"* is not subject to such one-year limitation –otherwise the legislator could have simply clarified it or imposed the same limitation to all available grounds for relief under Fed. R. Civ. P., Rule 60(b).  On the contrary, the statute leaves discretion to the Court to consider what *"reasonable time"* means in light of *"any other reason that justifies relief"* under Fed. R. Civ. P., Rule 60(b)(c).  The evolution of this specific norm from a *"six month limitation"* to the current wording has long fostered the posture that courts can exercise their *"inherent powers to judgments where the term had not expired or where 60(b) did not provide relief in some traditionally provided post-term relief,"* to the extent that Fed. R. Civ. P., Rule 60(b)(6) has been used to *"circumvent directly the one-year limit."*[1]  See *Klapprott v. United States*, 335 U.S. 601 (1949).

And as to what it means *"any other reason that justify relief"*,  it is well understood that those reasons cannot be the ones covered per Fed. R. Civ. P., Rule 60(b)(1)(2)(3)(4)(5).  In short, the term *"any other reason"* should imply something else apart from the other grounds covered in such a rule to justify relief, some of which are subject to the one-year time limitation.  In fact, RA4ARG is neither circumventing any existing appeal process, as further elaborated below, nor trampling into those other specific grounds for relief under this same rule which are capped by the one-year timeframe.  *"Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses…"* See *Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010), *cert. denied*, 564 U.S. 1006 (2011) (quoting *Batts v. Tow-Motor Forklife Co.*, 66 F.3d 743, 747 (5th Cir. 1995)).

---

[1]  Notes, "Federal Rule 60(b): Relief From Civil Judgments", *61 The Yale Law Journal 1952*, 77-81-84.

Having said that, it should be noted that pursuant to Fed. R. Civ. P, Rule 60(b)(3), fraud (intrinsic or extrinsic) could not be argued unless procedural fraud or fraud on the Court is claimed as part of *"any other reason",* including under Fed. R. Civ. P., Rule 60(d)(1)–(3). The aforesaid means that Fed. R. Civ. P., Rule 60(b)(6), construed in the mold of some *"catch it all"* provision, can certainly contain elements of the other five preceding grounds as long as there is something distinctive about it that makes such individual ground *"another reason"*, as in the case of a more specific fraud on the Court that logically requires the basic elements of fraud just to be deemed one in the first place.

If such were not the case, any court could dismiss any proper Fed. R. Civ. P., Rule 60(b)(6) claim under the following list of excuses: the judgment under scrutiny possesses some mistake (factual or legal errors); there is new evidence (probatory elements); a subject-matter jurisdiction issue is clearly invoked (lack of jurisdictional powers); the judgment is no longer valid (prospective equitable solution); and/or plain fraud is verified (dishonest and/or criminal activity).

In this regard, RA4ARG also relies on Fed. R. Civ. P., Rule 60(d)(1)–(3), which allows the Court to *"entertain an independent action to relieve a party from a judgment, order, or proceeding"* in order to *"set aside a judgment for fraud on the court."* Insofar this very specific type of relief, there are no time limitations for any party request, and the Court can equally grant it *sua sponte.* In fact, there is no need to be a party to the legal dispute to invoke this remedy.

In connection with an action under Fed. R. Civ. P., Rule 60(d)(1)–(3), it is clear that the reproached behavior must be *"egregious"* in the sense of reaching an extraordinary result at odds with the principles of fairness and justice, something truly inequitable. And as to the standard applicable to fraud on the Court, the Second Circuit has recently established that *"[g]enerally,*

*claimants seeking equitable relief through independent actions must . . . (1) show that they have no other available or adequate remedy; (2) demonstrate that [their] own fault, neglect, or carelessness did not create the situation for which they seek equitable relief; and (3) establish a recognized ground – such as fraud, accident, or mistake – for the equitable relief." ... Among those "recognized ground[s]" is fraud on the court... To obtain relief on that basis, the [party] "must prove, by clear and convincing evidence, that the defendant interfered with the judicial system's ability to adjudicate impartially and that the acts of the [other party] must have been of such a nature as to have prevented the [party] from fully and fairly presenting a case or defense."* See *Marco Destin, Inc. v. Levy*, No. 23-1330 (2d Cir. Aug. 8, 2024).

As further entertained below, RA4ARG is the one arguing such timely defenses because the Defendants could have never posed arguments that were to imply the criminal guilt of various officers and officials from the Republic of Argentina and YPF at the time, who would directly or indirectly benefit, at the personal level, with the civil judgment from Your Honor. Yet such beneficiaries do not include the Republic of Argentina itself –its population– and their true republican and economic interests sheltered by RA4ARG in these legal proceedings. Fraud on the court finally takes place with the magnitude of the unprecedented ruling against the Republic of Argentina, consummating by court decree an international fraud that trampled all republican institutions in Argentina by *"nationalizing"* one of the most attractive energy companies worldwide, and eventually sealing a new *stare decisis* permeable to foreign corruption in US courts.

This Court was boxed-in in a presumable civil dispute of international dimension to ignore an alleged overall international criminal scheme that would otherwise render the entire civil complaint as a further attempt to carry out criminal activity. It is possible that Al Capone

could have entered into a profit share agreement with his business associates in the Chicago underworld, but it is unlikely that he would have resorted to the US legal system to enforce it. We are not talking about the discretion of this Court, rather the incapacity to see the light at the end of the tunnel because the legal system was conceived –these legal proceedings in furtherance of the final judgment now subject to Fed. R. Civ, P., Rule 60 claims– as the getaway of some alleged criminal activity.  At the end of such tunnel, the Plaintiffs are to pick up the $16.1 billion plus bounty and walk free.

There was no party telling this Court the aforesaid, and there could have not been any at the time for obvious reasons.  According to the factual context detailed below, the interests of the those behind the Plaintiffs and the Defendants were not entirely divergent.  RA4ARG is timely claiming otherwise, because there is now a reason to do so post-final judgment under Fed. R. Civ. P., Rule 60 –never before–, and because we can only know all this through the final ruling from this Court.

## II.    <u>Factual Context</u>

As hinted above, the issues in these legal proceedings were for the most part constrained to Argentinean law, as interpreted by this Court; namely, whether the Republic of Argentina was obliged per YPF's bylaws and overall corporate law to tender for all of YPF's shares, including those belonging to the Eskenazi Family via their Petersen Group of Companies –established in Spain with the sole purpose of becoming a shareholder of YPF–, who ended up being the Plaintiff in this conflict along with their associates and financiers Burford Capital and its US counterpart Eton Park Capital Management and others.

RA4ARG alleges that such conceptualization of the case is not the true legal conundrum before this Court and the US legal system, rather the alleged international scheme of criminal nature by which those parties were able to secure a $16.1 billion plus award in their favor from this Court –the consummation of fraud on this Court–, turning it into the fruit of criminal activity at inception, as well as conforming money laundering and other practices sanctionable under both the Foreign Corrupt Practices Act (FCPA) and the Racketeer Influenced and Corrupt Organizations Act (RICO), among others.  Please do note the extraterritoriality of RICO would be permissible under US law because the consummation of the alleged criminal scheme takes place via some legal action and Court decree out of the United States.  See *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016).  Such an overall situation is against the national and strategic interests of the United States of America.

For practical purposes, the $16.1 billion plus award becomes a criminal bounty granted to the Plaintiffs via Court decree, which was clothed as a civil or commercial dispute out of Argentina through federal courts in New York City.  As a matter of fact, encapsulating the facts of this case as a civil or commercial honest dispute between the Eskenazi Family –thus the current financial players who acquired such claims fruit of a poisoned relationship at inception– and the Argentinean Government –at the time controlled by the Kirchner Family– means looking at the wrong tree while missing the entire forest subject to arson.  To the contrary, appreciating such alleged criminal activity for what it is indeed sheds legal light to the totality of the factual context.

Therefore, it is respectfully noted that the private law angle of the current legal dispute –civil or commercial–, which derived in the unprecedented $16.1 billion plus judgment against the Republic of Argentina, cannot be fully appreciated without the prism of international

criminal activity.  Once those forensic and legal lenses are placed over this entire scheme, the

following facts become highly relevant to judge the present case as a whole:

1)   The "nationalization" of YPF was a two-step process for the benefit of the Kirchner and Eskenazi Families.

2)   To begin with, the Kirchner Family compelled YPF's private controlling shareholder at the time, the Spanish energy company Repsol, to sell a 25% stake to their figurehead, the Eskenazi Family.

3)   The Eskenazi Family, foreign to the energy sector, did not invest a single cent of equity in this multi-billion-dollar transaction.  Everything was financed through various loans of approximately $3.4 billion, which were going to be repaid via dividends of YPF.  Even some of dividends distributed were fraudulent based on altered reserves and ancillary.

4)   Repsol mistakenly understood the Kirchner Family was satisfied with such a transaction and the new *status quo*:  Repsol, the controlling shareholder, on the one side; and its new minority partners, the political Eskenazi-Kirchner Families, on the other side.

5)   In fact, the Kirchner Family –at the helm of all relevant Argentinean governmental institutions– subsequently triggered the political decision to nationalize YPF by taking Repsol's controlling stake but excluding the one held by their alleged figurehead, the Eskenazi Family.

6)   At this juncture no more dividends were paid, including to the Eskenazi Family. This caused the Eskenazi Family to default those loans and their for-the-occasion investment vehicle in YPF –the Petersen Group companies– went bankrupt in Spain –the jurisdiction where those companies had been established just before executing this transaction and solely to that effect.

7)   As a result, the Eskenazi Family's 25% stake reverted back to their lenders:  6% to Repsol and 19% to financial lenders.

8)   The Eskenazi Family –once more, the alleged figurehead of the Kirchner Family– entered into an agreement with the English fund Burford Capital and its US counterpart Eton Park Capital Management and others to finance and pursue these expensive legal proceedings and ultimately split the $16.1 billion plus award (30/70 split).

**9)**    In such a way, the aforesaid parties resorted to the US legal system against the Republic of Argentina and YPF by seeking compensation before Your Honor.

**10)**    Burford Capital has already monetized part of its own share in such award to undisclosed third-party investors.

**11)**    The outcome of this Court's $16.1 billion plus award in simple economic terms implies compensating the Plaintiffs for a non-existent investment in YPF by the Eskenazi and Kirchner Families of roughly 25% of its total shares, as a result of a "nationalization" process triggered by the Kirchner Family within the administration of the Argentinean Government that excluded what could be considered as their "own" participation in the company.

**12)**    Some ongoing criminal complaints in Argentina were further amended as a result of the $16.1 billion plus award by Your Honor.

**13)**    As a result, Argentinean taxpayers should be obliged to pay such $16.1 billion plus award to corrupt individuals, who in part were already sentenced in criminal proceedings by Argentinean federal courts in schemes quite similar to the one described herein, including figureheads close to the Kirchner Family and the fraudulent appropriation of massive public funds via large infrastructure projects, while resorting to investment vehicles and money transfers around the world. Former President and former Vice President Cristina F. de Kircher's criminal sentence to 6 years in jail was affirmed by the local Federal Court of Appeals and it would be subject to review by the Argentinean Supreme Court, apart from various other criminal proceedings that continue to progress in the direction of due justice.

Regarding the timeline of these legal proceedings versus the Defendants' interests in light of such factual context surrounding YPF, it must be stressed that from 4/2015 to 12/2015 –this case started last 4/2015– and from 12/2019 to 12/2023 –Your Honor's final ruling was entered last 9/2023–, Cristina F. de Kirchner was President and Vice President of Argentina, respectively.  Indeed, from the perspective of the Defendants, any litigation strategy about this case had to be in line with the interests of the Kirchner Family, thus the interests of the Eskenazi Family or the Petersen Group of Companies: Burford Capital and Eton Park Capital Management and others.  The Republic of Argentina could have never argued anything

8

consistent with the true facts of the case that sustain this motion pursuant to Fed. R. Civ. P., Rule 60, because of self-incrimination by its former President and Vice President, as well as other governmental officials and YPF officers of many years.  All in all, apart from the fact of losing the alleged grounds to obtain a $16.1 billion plus award from this Court.

Separately, it should be highlighted that criminal complaints were filed in Argentina as early as 2006 –still ongoing– against various parties as a result of the elaborated plot concerning YPF, which were updated over the years also to include Your Honor's $16.1 billion plus award against the Republic of Argentina.[2]  Those complaints are supported by a 2018 Intelligence Report from the Argentinean Financial Unit –of indicative probatory nature– depicting the *prima facie* criminal activity performed by the Eskenazi and Kirchner Families in connection with YPF and extensive to Spanish jurisdiction.[3]

The latter affirmation does carry the remote possibility of triggering further criminal proceedings in Argentina, as a result of some parties having resorted to the US legal system –also a victim in this scenario– in concert to consummate fraud and money laundering against Argentina and eventually Spain.[4]  It should be noted that the Second District recently opined that

---

[2] **Exhibit 1:** Criminal complaints before Argentinean Federal Judge Ariel Lijo, Docket No. 3518/2006, "*NN /about criminal investigation"*, Federal Criminal Court No. 4, Buenos Aires, Argentina, were filed by former congresswoman Elisa M. A. Carrió in 2006, 2012 (amended and expanded), and 2023 (amended and expanded as a result of Your Honor's $16.1 billion award against the Republic of Argentina). Ms. Carrió has been a stalwart fighter against public-driven corruption in Argentina, and some of his complaints have secured criminal sentences against corrupt politicians, including the former President and Vice president Cristina F. de Kirchner and some of her associates.

[3] **Exhibit 2:** Confidential Intelligence Report No. 0704/18 issued by the Unit of Financial Information of Argentina (UIF), *in re*, *"NN/ violation of Law 22,415", Federal Criminal Court No. 4, Buenos Aires, Argentina*, as probatory indication of criminal activity regarding the Eskenazi Family's acquisition of a 25% stake in YPF from Repsol and related maneuvers, among others. [free open source]  https://www.rionegro.com.ar/wp-content/uploads/2023/04/54434.pdf

[4] Idem 2, 3.

the jurisdictional anchor at the criminal level could be activated, in a factual context like the one under scrutiny, to courts both in the United States and Argentina as a mirror-effect.  See *United States v. Antonius*, No. 21-1083, 7-10-2023 (2d. Cir. 2023).

All of the prior, apart from the criminal complaints currently stalled before Argentinean Federal Judge Ariel Lijo (Docket No. 3518/2006, "*NN /about criminal investigation*", Federal Criminal Court No. 4, Buenos Aires, Argentina) that involve and revolve around YPF and Cristina F. de Kirchner, former President and former Vice President of Argentina; Sebastián, Matías and Enrique (deceased) Eskenazi, members of Grupo Petersen; Axel Kicillof, former Minister of Economy of Argentina, former Board Member of YPF, and current Governor of Buenos Aires Province; Carlos Zanini, former Legal Counsel to the Presidency; Miguel Galuccio, former President of YPF; Jorge Marcelo Soloaga, former Board Member of YPF; Cristian Girard, former President of Comisión Nacional de Valores (CNV, local SEC) and Alejandro Vanoli, former Vice President Comisión Nacional de Valores (CNV, local SEC); among several others.[5]

As this Court is most likely aware, Argentinean Federal Judge Ariel Lijo has been under major public scrutiny due to his nomination to the local Supreme Court of Justice by the current administration, which in fact lacks the required senatorial votes to attain confirmation of its nominees to the judiciary as a whole –the government is in need of votes pertaining to the political faction led by former President Cristina F. de Kirchner.  Such a candidate to the highest court is facing profound opposition from multiple local and international organizations,[6]

---

[5] Idem 2, 3.
[6] RA4ARG, *Our support for the nomination of Manuel García Mansilla and objection to the nomination of Ariel Lijo as justices of the Supreme Court of Justice of the Nation: its moral significance and the values of freedom and justice*, Buenos Aires, May 15, 2024; www.republicanactionforargentina.org

including the American Chamber of Commerce; and the main objections to his nomination circle

back to his lack of integrity when dealing with high profile cases, in particular the above-

mentioned about YPF, in the sense of delaying and/or stalling the respective criminal

investigations.[7]

This motion and ancillary fillings are submitted on an *ex-parte* basis for evident reasons:

if Your Honor orders a criminal investigation at the international level out of the United States,

namely around the so-called Kirchner Family and their associates as well as the so-called

Eskenazi Family –widely perceived to have performed as the figurehead of the prior–, extensive

to certain past governmental and YPF officials and the very same financial players participating

in these legal proceedings, none of it should be known to those parties prior to the US legal

system making a formal determination as to the right course of action.  The existing parties in the

legal conflict before Your Honor, to a larger or lesser extent, are key subjects of such criminal

investigation as well as of any eventual indictments and prosecution.

### III.    <u>Legal Standing</u>

On today's date, RA4ARG filed a proper *ex-parte* motion to intervene in these legal

proceedings pursuant to Fed. R. Civ. P., Rule 24; as well as requested herein for such

intervention to be ruled upon prior to any ruling on this motion pursuant to Fed. R. Civ. P., Rule

60 (Fed. R. Civ. P., Rule 62.1).  For reasons of judicial economy, RAARG refers back to such

motion to intervene insofar its standing as an interested party in the present case.

Notwithstanding the aforesaid, it must be stressed that there is no need to be deemed a

party to attain timely relief in these legal proceedings, as long as *"Fed. R. Civ. P., Rule 60(b)*

---

[7] WLRN Public Media, Associated Press, *Argentina's Libertarian President Shocks with his Supreme Court Pick*, June 21, 2024;   https://www.wlrn.org/americas/2024-06-21/argentinas-libertarian-president-shocks-with-his-supreme-court-pick

*states, in part, that a court may "relieve a party or its legal representative" from a judgment or order.  Fed. R. Civ. P. 60(b), …. several circuit courts have permitted a non-party to bring a Rule 60(b) motion or a direct appeal when its interests are strongly affected,"* See *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 188 (2d Cir. 2006) (carving out *"an exceedingly narrow exception to the well-established rule that litigants, who were neither a party, nor a party's legal representative to a judgment, lack standing to question a judgment under Rule 60(b)"* where *"there is a strong possibility that the predicate judgment that forms the basis of this fraudulent conveyance action is the result of a settlement process devoid of due process protections and marred by serious procedural shortcomings")*; *see also Binker v. Com. of Pa.*, 977 F.2d 738, 745 (3d Cir. 1992); *Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir. 1980) *(per curiam)*.

The  application of the *Grace* exception in this context is twofold.  First, RA4ARG and the Argentinean people are *"strongly affected"* by the Court's core ruling because of its unprecedented $16.1 billion plus award against the Republic of Argentina in what could be conceived as an alleged international criminal scheme finally sealed by US Court decree. See *Grace*, 443 F.3d at 188.  Second, the Court's core ruling was allegedly entered on the basis of fraud on the court, with the potential to set a legal precedent around the world indicating that foreign corrupt practices could be ignored and rewarded in the United States.  Third, the aforementioned is therefore not in line with the national and strategic interests of the United States of America.  As a consequence, irrespective of the simultaneous motion to intervene and any appellate proceedings, RA4ARG pleads the Court to entertain and grant this motion.

## IV.    <u>Legal Argument</u>

### a.    <u>Applicable Normative</u>

**Fed. R. Civ. P., Rule 60. Relief from a Judgment or Order.**

"(a) CORRECTIONS BASED ON CLERICAL MISTAKES; OVERSIGHTS AND OMISSIONS. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so  on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

**(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons**: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or **(6) any other reason that justifies relief**.

**(c) TIMING AND EFFECT OF THE MOTION**. (1) Timing. **A motion under Rule 60(b) must be made within a reasonable time**—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding. (2) Effect on Finality. The motion does not affect the judgment's finality or suspend its operation.

**(d) OTHER POWERS TO GRANT RELIEF**. **This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;** (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or **(3) set aside a judgment for fraud on the court**…"

b.  **Legal Grounds**

RA4ARG does claim equitable relief is warranted in this setting under both Fed. R. Civ. P., 60(b)(6) and 60(d)(1)–(3). Indeed, the unique set of facts and circumstances of this case make it extraordinary and unprecedented and do call for this Court's final judgment and ancillary rulings to be set aside based on a multiplicity of well-attested reasons that as a whole comply with the requirements stipulated under such normative.

13

As previously highlighted, Rule 60(b)(6) is a catch-all provision granting relief from judgment due to *"any other reason that justifies relief."*  In this sense, *"[w]hen a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper."* See *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).  *"[R]elief under Rule 60(b)(6) is all the more appropriate when 'it involves not only the interests of the [party], but that of a third party.'"* See *People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Hum. Servs.*, 901 F.3d 343, 355 (D.C. Cir. 2018) (quoting *Comput. Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996)).

Once more, Fed. R. Civ. P., Rule 60(d)(3) authorizes a court to *"set aside a judgment for fraud on the court."*  Such relief is only appropriate in *"egregious cases,"* *"in which the integrity of the court and its ability to function impartially is directly impinged."* See *Jordan v. U.S. Dep't of Lab.*, 331 F.R.D. 444, 451 (D.D.C. 2019), *aff'd*, No. 19-5201, 2020 WL 283003 (D.C. Cir. Jan. 16, 2020).  Fraud on the court occurs when a *"party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."*  See *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).  It is actually verified *"where the impartial functions of the court have been directly corrupted."* See *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1266 (10th Cir. 1995).

Furthermore, as already invoked, this Court could and should equally vacate its judgments on its own volition.  As a general issue, *"a majority of circuits to have considered the power of a district court to vacate a judgment under Rule 60(b) have concluded that district courts have the discretion to grant such relief sua sponte."* See *Judson Atkinson Candies, Inc. v.*

14

*Latini-Hohberger Dhimantec*, 529 F.3d 371, 385 (7th Cir. 2008) (collecting cases in circuit split).

On a separate note, it is not uncommon for Fed. R. Civ. P., Rule 60(d) to be claimed by criminal defendants insofar wrongdoings that could involve some specific counsel.[8] As discussed before, the following considerations are key: some *"key figures"* within the Defendants themselves still have conflictive or divergent interests from those of the Republic of Argentina and YPF; this Court was boxed-in in a presumable civil or commercial dispute revolving around Argentinean law; and the Defendants' counsels operated out of the United States within the proper boundaries of their profession subject to such predetermined context. It would have more than a stretch for such counsels to argue this case is in the end about an international criminal scheme engulfing some of those *"leading"* their own institutional clients, in tandem with those behind the Plaintiffs, and not about the legal dispute claimed by the latter.

But such is not the case of RA4ARG, which was established in the United States during the course of 2024 precisely to shelter the constitutional rights of the Argentinean people, the republican institutions of their country –including the integrity of public office and the independence of the judiciary–, as well as their free-market economy. The Internal Revenue Services granted RA4ARG with its charitable, tax exempt status last 12/2024. Nobody could have timely and previously argued the grounds for relief now advocated by RA4ARG in these legal proceedings –as this interested party is currently doing it–, not only because there is a need for a final judgment to be set aside under Fed. R. Civ. P., Rule 60, but also because of those

---

[8] Meadows, Christopher G., "Rule 60(b): Whether "Tapping the Grand Reservoir of Equitable Power" Is Appropriate to Right An Attorney's Wrong", *88 Marquette Law Review*, 2005, 997-1011.

divergent or conflictive interests that do demand a party like RA4ARG for that to happen.   It is in the best interests of justice not to silence RA4ARG's voice.[9]

It is worth noting that fostering corruption at the international level does not enhance profitability of American companies, it rather weakens them, especially if the FCPA is not applicable to foreign firms –when it does via similar normative, it increases foreign investment and business standards in host countries–.[10]  As in the case of democracy, corruption hinders the free-market economy by making it unsustainable, because integrity is the foundation of any true free endeavor.[11]  Any idea to the contrary is merely flawed and a disfavor to American interests at home and abroad.  The issue is not about allowing US companies to bribe foreign officials freely, rather deterring such criminal practices whenever possible around the world –current American law of higher order dictates so–.

From the perspective of US courts, such a commendable policy-effort reasonably implies forbidding foreign and US firms alike to financially benefit, within the legal system, from sanctionable international criminal schemes under FCPA and/or any criminal statutes of similar scope.  In sync with the factual context outlined above, RA4ARG is arguing the $16.1 billion plus award via Court decree is the end-result of the sort of criminal activity this country has abhorred in its federal criminal legislation for many decades.

---

[9] Garner, Amy M., "An Attempt to Intervene in the Confusion: Standing Requirements for Rule 24 Intervenors", *69 University of Chicago Law Review 681*, 2002, 703.

[10] Arbastkaya, Maria, Mialon, Hugo, "The Impact of Foreign Corrupt Practices Act on Competitiveness, Bribery, and Investment", *22(1) American Law and Economics Association*, (April 2020), 105-126.

[11] *"Human rights can only be assured among a virtuous people."* Cfr. George Washington to Marquis De Lafayette, February 7, 1788, John C. Fitzpatrick, ed., *The Writings of George Washington*, U. S. Government Printing Office, Washington D. C., 1939, 29:410.

The Department of Justice (DOJ) has already intervened in this case (# 679, 11/6/2024) and provided information about it to Argentine authorities via formal correspondence.[12] RA4ARG pleads the Court to grant this motion also in light of the national and strategic interests of the United States of America, and, with such goal in sight, move the DOJ and any other relevant agencies to adequately scrutinize the facts and parties herein.  International comity,[13] at the very least, must serve to deter cross-border criminal activity capable of diverting the administration of justice to achieve its illegal goals.

How could the US legal system vouch for foreign government corruption via figureheads within a spurious *"nationalization process"* claiming leftist or pseudo-communist ideals to defraud an entire population and literally steal billions of dollars out of oil assets for personal enrichment, because, in the end, expensive lawyers were retained by some English and US financial players acting as Plaintiffs? And, more troublesome, how could the US legal system guarantee the payment of those parties' criminal bounty via some legal award?  Without a shred of doubt, such a course of action is not what the legal system has been designed and intended for, and none of it is in the national and strategic interests of the United States of America.

RA4ARG's motions are being filed within a reasonable time after Your Honor's core judgment, attending the circumstances, current litigation stage, and the institutional magnitude of this case not only for the millions of Argentineans who suffered the ignominy summarized above, but also as a potential US legal precedent that could disincentivize foreign governmental corruption around the globe from those who directly or indirectly seek validation of their criminal exploits within the US judiciary.  In short, preventing financial players and other similar

---

[12] Idem 2,3.  Letter from the Department of Justice to the Ministry of Justice and Human Rights, Republic of Argentina, July 29, 2024.
[13] Bleimaier, John Kuhn, "The Doctrine of Comity In Private International Law", *24 The Catholic Lawyer 4, 5*, Autumn 1979, 327-332.

brokers from *"buying"* spurious claims from such sort of State-related actors internationally, with the goal of giving them an aura of respectability under the English language through major financial centers and selective US law firms. The *"normalization"* of business standards applicable to companies like YPF, within a global free-market economy, cannot be fostered in such a manner.

What would be the difference if we were talking about some massive corrupt transaction out of Cuba, Venezuela, Brazil, Mexico, South Africa, Russia, Ukraine, India, China and/or any other country that could undergo a similar takeover of its institutions by the hand of individuals like the Kirchner Family? None whatsoever if the Burford Capitals of this world were to acquire those claims in order to become the financing engine, buffer and fronting of some long and costly litigation before US courts driven by the US interpretation of foreign law regarding conducts from foreign public officials abroad. And none of it serves the interest of justice, needless to say the national and strategic interests of this great nation.

It is thus transcendent to highlight that RA4ARG is not hereby suing former President and Vice President Cristina F. de Kirchner and/or any other public officers and officials of the Republic of Argentina and YPF, including any financial institutions that could have participated in some international financial scheme as a conduit for fraud, money laundering and similar criminal activity.[14]  See *Consejo de Defensa del Estado de la República de Chile v. Banco Santander Central Hispano, S.A.*, No. 09-20621, 2009 WL 2336429 (S.D. Fla. May 29, 2009) (concerning misappropriations by Augusto Pinochet); *Consejo de Defensa del Estado de la República de Chile v. Banco de Chile*, No. 109CV20614, 2009 WL 1612255 (S.D. Fla. Mar. 11, 2009) (same cause of action); *Republic of Haiti v. Aristide*, No. 05-22852, 2005 WL 3521251

---

[14] Buxbaum, Hannah L., "Foreign Governments as Plaintiffs in U.S. Courts and the Case Against "Judicial Imperialism", *73 Washington and Lee Law Review 653*, 2016, 688-692.

(S.D. Fla. Nov. 2, 2005) (claims against Jean-Bertrand Aristide under RICO for *"theft, conversion, fraud and breach of fiduciary duty"*); *Republic of Iran v. Pahlavi*, 464 N.Y.S.2d 487 (N.Y. App. Div. 1983) (regarding misappropriations by the former Shah, Mohammed Reza Pahlavi); *Republic of Panama v. BCCI Holdings*, 119 F.3d 935 (11th Cir. 1997) (dealing with misappropriations by Manuel Noriega); *Republic of the Philippines v. Marcos*, 818 F.2d 1473, 1480–81 (9th Cir. 1987) (alleging that Marcos and others extorted and embezzled millions of dollars from the Philippine government), rehearing *en banc*, 862 F.2d 1355, 1360–61 (9th Cir. 1988) (en banc) (ruling, among other things, that the suit was not barred under the act of state or political question doctrines); among several others.

Instead, RA4ARG is timely requesting this Court not to allow such criminal activity to be consummated via its $16.1 billion plus award directly or indirectly in favor of some of those parties, all pursuant to Fed. R. Civ. P., Rule 60(b)(6) and (d)(1)–(3), as long as RA4ARG's claims to vacate the Court's final judgment and ancillary do conform *"any other reason that justifies relief"* as well as *"an independent action"* under the factual and legal premises that it ultimately seals *"fraud on the court."*

Unequivocally, the totally of facts of this case that culminated with the Court's unprecedented award corroborate an *"extraordinary"* situation that prevented any previous intervention capable of securing a different outcome.  The context is *"egregious"* and the underlying allegations of government-related corruption that gave birth to the Plaintiff's claims cannot be condoned in fairness and equity, as if they did not exist or were unrelated to the issues at hand.  There is a compelling reason to remedy the final judgment of this Court to avoid *"manifest injustice."*

Moreover, as clearly stated, a judgment of this *"magnitude"* possesses the latitude to set new legal standards worldwide. Therefore, the national and strategic interests of this country indicate that any incentives to curtail foreign government-related corruption is a commendable legal policy, in particular when it means closing the US jurisdictional door to awards fruit of the prior. Once more, RA4ARG's interests in this litigation are not covered by any existing party to it, despite the fact the Court can *sua sponte* revert its current status as victim of an international fraudulent scheme by granting this motion without delay. Regardless of it, RA4ARG also claims to have justified its right to intervene as an interested party in these legal proceedings.

## V.    Conclusion and Relief

As a result of the facts and law above-mentioned, RA4ARG pleads the Court to grant the following relief: **(i)** order the Department of Justice (DOJ) and any other relevant agencies to initiate a formal criminal investigation at the international level of the facts and parties highlighted in the accompanying Memorandum of Law; **(ii)** stay these legal proceedings pending of such side criminal investigation as well as eventual indictments and prosecution; and **(iii)** timely vacate the $16.1 billion plus award against the Republic of Argentina due to institutional interests and concerns in light of international criminal activity unduly impacting the US legal system (Fed. R. Civ. P, Rule 60 (b)(6), (d)(1)–(3)).

DATED in Buenos Aires, ARGENTINA, on February 17, 2025.



By:  _____
      Fernando G. IRAZU (*pro hac vice* motion pending)
      Attorney at Law
      **Republican Action for Argentina, Inc.**
      Interested Party
      Billinghurst 1656
      Buenos Aires, 1425, ARGENTINA
      fgirazu@gmail.com
      +54911 3084-8080

21

## <u>CERTIFICATION</u>

Pursuant to Individual Practice Rules LAP, Rule 2(B), the undersigned certifies that the foregoing Memorandum of Law complies with all formatting requirements and contains 6123 words.

_____
Fernando G. IRAZU (*pro hac vice* motion pending)
Attorney at Law