# Exhibit 3

## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-956-7676
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*
_____

NEW YORK • LOS ANGELES • PALO ALTO
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 23, 2025

<u>Via E-mail</u>

Alejandra Ávila,
   Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.,
     1615 M Street, N.W. Suite 400,
        Washington, D.C. 20036-3215.

        Re:   <u>*Petersen Energía Inversora S.A.U.* v. *Argentine Republic*,
              No. 15-cv-2739 (S.D.N.Y.)
             *Eton Park Capital Management, L.P.* v. *Argentine Republic*,
             No. 16-cv-8569 (S.D.N.Y.)</u>

Dear Alejandra:

        On behalf of the Argentine Republic, I respond to your May 2, 2025 letter ("Letter") regarding the Republic's September 30, 2024 Responses and Objections to Plaintiffs' Information Subpoena ("Responses"). As an initial matter, we note that your "deficiency" letter comes more than 7 months after the Republic served its Responses. Plaintiffs' long delay in raising these issues confirms that Plaintiffs' complaints are pretextual and this letter is merely a further effort to, as Burford's CEO put it, "throw sand in the gears." *See* Q3 2024 Burford Earnings Call Tr. The Responses the Republic served more than half a year ago properly address the requests for information in Plaintiffs' Information Subpoena ("Subpoena").

        Many of the issues you raise appear untethered to the Republic's specific responses to Plaintiffs' requests. For example, your letter offers a generalized argument regarding the Republic's duplication and burden objections, but ignores both the Republic's specific responses to the Subpoena Questions and the Republic's document productions. For example, in responses to Question Nos. 2–5, 7, 9–11, 14, 16–17, 20, and 23–24, the Republic has specifically identified documents in its productions addressing Plaintiffs' Questions, which is more than sufficient. Further, requests such as Request Nos. 12, 15, 18, and 26–30 seek account information related to specific financial transactions, which is not necessary to aid in execution on the judgment given the scope and scale of information already given.

Alejandra Ávila                                                                                                                      -2-

    Rather than engage in this discussion in the abstract, the Republic addresses below the issues you raise with respect to its responses to each question in the Subpoena:

    ***Question No. 1.***  Plaintiffs argue that the Republic has refused to answer whether it will comply with the Court's order and demand that the Republic "explain . . . the basis for [the Republic's] claim that the Republic cannot borrow funds to pay the judgment." (Ltr. at 5–6.)  The Republic has already responded fully to Question 1, and no further "explanation" is called for (or relevant).  Also, the Republic addressed this issue in declarations submitted to the Court in 2023.  (*See Petersen* ECF No. 514 at 8–11 (explaining that "the Republic cannot fund or bond a $16.1 billion judgment, an amount that likely could not be secured by *any* litigant, much less a nation with C-level credit ratings); *see also Petersen* ECF Nos. 503-1 and 503-2 (explaining the same).)

    In addition, as the Republic has explained, under Article 170 of Law 11,672 (the Permanent Supplementary Budget Law), a non-final judgment "cannot be budgeted for under Argentina law." (*Petersen* ECF No. 514 at 4.)  In other words, until Plaintiffs' judgments are final—no longer subject to appeal—they cannot be budgeted for or paid by the Republic's administration.  Moreover, details on any internal deliberations of the Republic's government are both irrelevant to Plaintiffs' enforcement efforts and privileged.  *See Aurelius Capital Master Ltd.* v. *Republic of Argentina*, 599 F. App'x 16, 18 (2d Cir. 2014); R&Os to Subpoena at 12–13, 31–32; Aug. 26, 2024 Ltr. at 6 (*Petersen* ECF No. 641); *see generally Citizens Union of City of N.Y.* v. *Att'y Gen. of New York*, 269 F. Supp. 3d 124, 157–58 (S.D.N.Y. 2017) (Parker, M.J.) (explaining that executive branch documents are "generally protected" from disclosure because it is "obvious" that "officials will not communicate candidly among themselves if each remark is a potential item of discovery"); *Fox News Network, LLC* v. *U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 541 (S.D.N.Y. 2010) (Maas, M.J.) (documents from U.S. Department of the Treasury were properly withheld because deliberative process privilege "applies to materials that are part and parcel of the process of internal agency decision making").  Such internal deliberations are also not subject to disclosure under the Argentine regime governing the Right of Access to Public Information (*See* Decree 206/2017, as amended by Decree 780/2024, Art. 3(b) (determining that preparatory deliberations and working papers, as well as preliminary examinations on matters, are not considered documents of public nature and thus, not subject to the duty of disclosure); *Petersen* ECF No. 660 at 6 n.2.)

    ***Question Nos. 2–3.***  Contrary to your suggestion, the Republic's Response to Question No. 2 provided a complete answer and identification of documents regarding the Republic's ownership of YPF shares, and its Response to Question No. 3 identified documents regarding the accounts through which the Republic holds YPF shares, all of which are in Argentina.  Plaintiffs have not identified any specific deficiency in the Republic's Responses to these Questions.

Alejandra Ávila                                                                                                                    -3-

*Question No. 4.* Contrary to your suggestion, the Republic's Response to Question No. 4 provided a complete answer and identification of documents regarding the payment of the settlement agreement (*Convenio de Avenimiento*) between Argentina and Repsol. In addition, the Republic has confirmed that there have been no transfers, cancellations, or terminations by the Republic of its YPF shares since April 16, 2012, and that the Republic did not own the expropriated shares until May 8, 2014. (*See* June 4, 2024 Ltr. from A. Davidoff at 1.) Plaintiffs have not identified any specific deficiency in the Republic's Response to this Question.

*Question No. 5.* Contrary to your suggestion, the Republic's Response to Question No. 5 provided a complete answer and identification of documents regarding agreements between Argentina and any of the provinces concerning YPF shares. Indeed, the Republic has already stated in its Responses that it is only aware of the agreement between the Republic and the provinces that are part of the *Organización Federal de Estados Productores de Hidrocarburos,* consistent with the YPF Expropriation Law. Plaintiffs have not identified any specific deficiency in the Republic's Response to this Question.

*Question No. 6.* Contrary to your suggestion, the Republic's Response to Question No. 6 provided a complete answer regarding the lack of distributions of YPF dividends to the Provinces in the time period of January 1, 2020 to the date of the Responses, as no dividends have been paid by YPF since 2019. Plaintiffs have not identified any specific deficiency in the Republic's Response to this Question.

*Question No. 7*. Your letter asks the Republic to "explain" its Response to Question No. 7 with respect to the Republic's "movable" assets. The Republic has *already* "explain[ed] what searches were conducted, who was involved, and how the Republic went about conducting" searches for responsive assets in Foreign Countries (Ltr. at 6)—nearly a year ago. (*See* June 4, 2024 Ltr. from A. Davidoff at 3.) To reiterate, in order to search for and produce potentially responsive documents to Request No. 13 of Plaintiffs' First Post-Judgment Requests for Production of Documents ("First Requests"), the Republic first contacted the *Agencia de Administración de Bienes del Estado* ("AABE"), which is responsible for managing the Republic's real and movable property. (June 4, 2024 Ltr. from A. Davidoff at 3.) Because AABE informed us that it does not maintain an updated list of movable property, we inquired directly with the Ministry of Foreign Affairs and the Armed Forces, which maintain operations abroad that would have property abroad to perform their responsibilities. (*Id.*) The Ministry of Foreign Affairs confirmed that it does not keep a registry of its movable assets located abroad. (*Id.*) The Armed Forces stated that they do maintain registries of movable assets located abroad, but after checking those registries, confirmed that they do not have any assets worth more than US$1 million, including in the United States. (*Id.*) The Republic has thus satisfied its obligation to

Alejandra Ávila                                                                                                    -4-

conduct a reasonable search for these types of property (excluding assets of the type that would appear on the Janes Database). (*Id.*)

Your letter provides no basis for a request for further information regarding any asset of the Republic in the United States, which would not be subject to attachment or execution under the FSIA unless, *inter alia*, it "is or was used for the commercial activity upon which the claim is based." 28 U.S.C. 1610(a)(2). That said, the Republic will make a supplementary production identifying the Republic's diplomatic and consular property located in the United States.

*Question No. 8*.  This Question seeks legal and beneficial interests of Argentina in assets in the United States and Foreign Countries. The Republic confirms it has already responded to this Question with respect to Foreign Countries. It also confirms that it identified no legal or beneficial interests of the Republic in assets located in the United States.

*Question No. 9*.  This Question seeks the list of all accounts owned by Argentina. The Republic confirms it has already responded to this Question with respect to Foreign Countries. Plaintiffs contend that the Republic "has stonewalled its obligations to produce documents concerning its financial accounts in the United States and Argentina." (Ltr. at 4.) However, the Republic has already responded to Question No. 9 with regard to accounts in the United States through its production in response to First Request No. 15 and its response to Request No. 5 of Plaintiffs' Second Post-Judgment Requests for Production of Documents ("Second Requests"), as well as with regard to accounts in Argentina through its production in response to Second Request No. 3. (*See* AR00184323 and AR00189926 – AR00189962.)[1]

Plaintiffs argue that the lists of U.S. and Argentinian financial accounts do not include sufficient "detail," but those lists include the specific information sought by Plaintiffs' Second Request No. 5—"the name and address of the Financial Institution where the account is held, the name of the account holder, and the account number of the account"—and provide more than sufficient information to respond to Question No. 9, which seeks a "list" of accounts.

*Question No. 10*.  This Question seeks any Debt owed to Argentina by any Person. The Republic has already identified documents pertaining to the only Debt identified as owed to Argentina by any Person located in any Foreign Country and confirms

---

[1] The Republic has identified a small number of accounts inadvertently omitted from the produced list of accounts in Argentina and therefore will supplement this production promptly.

Alejandra Ávila                                                                                                                 -5-

specifically that the Republic's searches identified no Debt owed to the Republic by a U.S. debtor. The Republic maintains its objection that Debt owed to the Republic by Persons in Argentina is not properly the subject of enforcement discovery and would be overly burdensome to provide.

**Question No. 11.** This Question seeks any Debt owed by Argentina to any Person. The Republic has already provided information regarding its Debts in the form of peso-denominated bonds, foreign currency debts, arbitral awards, and final judgments. The documents produced did not exclude debt located in the United States. Plaintiffs have not identified any specific deficiency with respect to this Response.

**Question No. 12.** As previously stated by the Republic, no accounts responsive to this Question exist outside of Argentina, and so no further response is required. The Republic has also responded to Question No. 12 insofar as it has provided you with information regarding accounts in Argentina (which it will supplement as stated in note 1). Plaintiffs have not identified any specific deficiency with respect to this Response.

**Question No. 13.** The Republic stands on its objection that Plaintiffs are impermissibly requesting information about governmental deliberations and the inner workings of government protected by principles of grace and comity and by the deliberative process privilege with respect to the Republic's "negotiations from January 1, 2020 to the present with China regarding any financial agreement." *See Aurelius Capital Master Ltd.* v. *Republic of Argentina*, 599 F. App'x 16, 18 (2d Cir. 2014); R&Os to Subpoena at 12–13, 31–32; Aug. 26, 2024 Ltr. at 6 (*Petersen* ECF No. 641). If state executive branch documents within the United States are "generally protected" from disclosure because it is "obvious" that "officials will not communicate candidly among themselves if each remark is a potential item of discovery," then it can only be doubly true that the communications of foreign sovereign are also protected from disclosure in a foreign proceeding. *See Citizens Union of City of N.Y.*, 269 F. Supp. at 157–58; *Fox News Network, LLC*, 739 F. Supp. 2d at 541. Such communications are also protected from disclosure under the Argentine law governing the Right of Access to Public Information, which excuses the national government from disclosing internal deliberations (*See* Decree 206/2017, as amended by Decree 780/2024, Art. 3(b)). Moreover, Plaintiffs' assertion that the identification of Republic "ministries, agencies, political subdivisions, and representatives" involved in negotiations of "any financial agreement" with China is "highly relevant and discoverable" is entirely conclusory. The Republic's negotiations with another sovereign have no bearing on Plaintiffs' enforcement efforts, and the identification of details of the ministries, agencies, or representatives involved in such negotiations even less so.

Alejandra Ávila                                                                                                          -6-

***Question No. 14.***  Contrary to your suggestion, the Republic's Response to Question No. 14 provided a complete answer and identification of documents regarding financial agreements between Argentina and China.  Plaintiffs assert that the Republic has "refused to produce any documents relating to a well-publicized currency swap agreement with China." (Ltr. at 5.)  But the Republic has previously explained that it was not a party to the agreement, the Central Bank of Argentina (BCRA) was, and that document requests to the Republic are not a proper means of obtaining documents from BCRA.  *See* Feb. 12, 2024 Ltr. from A. Davidoff at 9; *see also* June 4, 2024 Ltr. from A. Davidoff at 5.  As a non-party to the swap agreement, the Republic has no further information to provide in response to this Question.

***Question No. 15.***  This Question seeks accounts related to financial agreements between Argentina and China.  The Republic confirmed in its Responses that all responsive accounts are located in Argentina.  The Republic has also provided to Plaintiffs a list of its accounts located in Argentina.  (*See supra* Response to Question No. 9.)  To the extent this question seeks additional transaction level information as to any financial arrangements between the Republic and China, the Republic refers to its response to Question No. 14.  It also objects on the basis that detail regarding the Republic's specific financial arrangements is not necessary to identify attachable assets—whether or not an account was used in connection with a financial agreement with China does not make it any more or less subject to execution.  (*See supra* Response to Question No. 9.).

***Question No. 16***.  This Question seeks all Commercial Transactions between Argentina and any Person.  The Republic confirms it has already responded to this Question with respect to Commercial Transactions with counter-parties in Foreign Countries.  Asking the Republic to identify all Commercial Transactions worth more than US$1 million with any Person, including with counter-parties in Argentina, is an immensely burdensome request beyond all reasonable bounds of even the most broad post-judgment discovery.  The Republic, as a federal government, enters into countless transactions with counter-parties in Argentina.  Identifying all Commercial Transactions would be overly burdensome because of the sheer volume of transactions, and because information about such transactions is exceedingly unlikely to lead Plaintiffs to the discovery of attachable assets.  Indeed, the Republic produced documents about Commercial Transactions with counter-parties in Foreign Countries nearly one full year ago, and Plaintiffs have yet to identify any attachable assets as a result of those productions.  Subject to and without waiving those objections, the Republic directs Plaintiffs to the public website maintained by the National Office of Procurement regarding purchases by the government, although not all transactions are "commercial" in nature: https://comprar.gob.ar/?AspxAutoDetectCookieSupport=1.

In addition, subject to and without waiving the Republic's previously lodged objections regarding the attachability of its assets in the United States, the Republic

Alejandra Ávila                                                                                      -7-

states that it is currently aware of the following Commercial Transactions with counter-parties in the United States:
- A transaction between ACS Publications and the Ministry of Science, Technology, and Innovation (AR00199393 – AR00199851);
- A transaction between ITMS Group and the Ministry of Science, Technology, and Innovation (AR00199852 – AR00200615);
- A transaction between SpringerLink and the Ministry of Science, Technology, and Innovation (AR00200616 – AR00201163);
- A transaction between Motorola Solutions Inc. and the Ministry of Security (AR00201164 – AR00202404).

**Question No. 17**.  This Question seeks any Letter of Credit in which Argentina is listed as the applicant or beneficiary.  The Republic confirms that it has already responded to this question with respect to Letters of Credit with counter-parties in Foreign Countries.  Further, asking the Republic to identify all Letters of Credit within its own borders is an immensely burdensome request beyond all reasonable bounds of even the most broad post-judgment discovery.  Since there is no centralized authority that has the responsibility to gather information on Letters of Credit, this Question is particularly burdensome because it would require the Republic to make inquiries with each ministry, secretariat, and department within the National Government.  Plaintiffs have failed to identify how discovery regarding Letters of Credit issued by Argentine Financial Institutions could possibly lead to the discovery of assets subject to execution.  The Republic maintains its objections and will not provide any further information regarding its Letters of Credit within its own borders.

In addition, subject to and without waiving the foregoing objections, the Republic states that it conducted a reasonable search and did not identify any Letters of Credit in the United States.

**Question No. 18**.  The Republic has already provided to Plaintiffs information about its accounts located in Foreign Countries, in the United States, and in Argentina (which it will supplement as stated in note 1).  The detail regarding the Republic's specific financial arrangements is not necessary to identify attachable assets—whether or not an account was used to pay any law firm or consulting firm does not make it any more or less subject to execution.  (*See supra* Response to Question No. 9.)

**Question No. 19**.  This Question seeks escrow accounts established in connection with the sale of any Asset by Argentina to any Person.  The Republic has already confirmed that it has no escrow accounts in Foreign Countries.  Further, asking the Republic to identify all escrow accounts within its own borders is an immensely burdensome request beyond all reasonable bounds of even the most broad post-judgment

Alejandra Ávila                                                                                                          -8-

discovery. This Question is particularly burdensome because it would require the Republic to make inquiries with each ministry, secretariat, and department within the National Government, since there is no centralized authority that has the responsibility to gather information on escrow accounts. Plaintiffs have failed to identify how discovery regarding the Republic's escrow accounts in Argentina could possibly lead to the discovery of assets subject to execution. The Republic maintains its objections and will not provide any further information regarding its escrow accounts within its own borders. Subject to and without waiving the foregoing objections, the Republic states that it conducted a reasonable search and did not identify any escrow accounts in the United States.

*Question No. 20*. This Question seeks any concession agreement or similar agreement relating to natural resources, energy or public infrastructure, between Argentina and any Person located in the United States or any Foreign Country. The Republic confirms it has already responded to this Question with respect to concession agreements with any Person in any Foreign Country and further confirms that any concession agreements with any Person in the United States were included in the documents identified in the Republic's Responses. Information about concession agreements is exceedingly unlikely to lead Plaintiffs to the discovery of attachable assets. Indeed, the Republic produced documents about concession agreements with counter-parties in Foreign Countries over a year ago, and Plaintiffs have yet to identify any attachable assets as a result of those productions. Subject to and without waiving the foregoing objections, the Republic is willing to meet and confer with Plaintiffs regarding concessions with counter-parties in Argentina.

*Question No. 21.* While Plaintiffs do not seem to have requested any further response to Question No. 21, Plaintiffs assert that "the Republic has not produced any documents that it provided to the plaintiff in *Attestor Master Value Fund LP* v. *The Republic of Argentina*, 1:14-cv-05849-LAP (S.D.N.Y.)." The Republic made its first productions in *Attestor* on April 21 and 25, 2025, and counsel for the Republic in this matter, after collecting and processing the as-produced documents, promptly made the production to Plaintiffs on May 5, just over a week later.

*Question No. 22*. This Question seeks the Republic's plans to identify state-owned or state-controlled entities, agencies, or instrumentalities that Argentina intends to or will privatize through December 2027. The Republic reaffirms its objection that this unduly impinges on the Republic's sovereign dignity in violation of the "grace and comity" to which it is entitled as a sovereign state by requesting information into the inner workings of government. *See Aurelius Capital Master Ltd.* v. *Republic of Argentina*, 599 F. App'x 16, 18 (2d Cir. 2014); *see generally Citizens Union of City of N.Y.*, 269 F. Supp. at 157–58 (explaining that executive branch documents are "generally protected" from disclosure because it is "obvious" that "officials will not communicate candidly among themselves if each remark is a potential item of discovery"); *Fox News Network, LLC*, 739 F. Supp. 2d

Alejandra Ávila					-9-

at 541 (documents from U.S. Department of the Treasury were properly withheld because deliberative process privilege "applies to materials that are part and parcel of the process of internal agency decision making"). Moreover, this information is protected from disclosure under Argentine law. *See* Law No. 27,275 and Decree No. 780/2021 which amended Decree No. 206/2017. Subject to and without waiving the foregoing objections, the Republic states that the May 5, 2025 production containing documents produced in *Attestor Master Value Fund LP* v. *The Republic of Argentina*, 1:14-cv-05849-LAP (S.D.N.Y.) contains information related to this topic. (*See* AR00197510 – AR00199392.)

*Question Nos. 23–24.* Contrary to your suggestion, the Republic's Responses to Question Nos. 23–24 provided complete answers and identification of documents regarding the arbitrations and litigations in which the Republic is a party. Plaintiffs have not identified any deficiency in the Republic's Responses to these Questions.

*Question No. 25.* This Question requests the location of Airbus helicopters referenced in certain documents. Contrary to your suggestion, the Republic's Response to Question No. 25 provided complete answers and identification of documents regarding the location of the specified helicopters. Plaintiffs have not identified any deficiency in the Republic's Response to this Question.

*Question Nos. 26–27.* These requests seek account information for the accounts used in connection with the 2012 Facility Agreement with China Development Bank and Industrial and Commercial Bank of China and with the August 12, 2016 Engineering, Procurement, and Construction Contract for Cauchari I, II, III and the 2017 Preferential Buyer Credit Loan Agreement regarding the Jujuy Photovoltaic Power Plant Project. The Republic confirmed in its Responses that all responsive accounts are located in Argentina, and that the Republic has already provided to Plaintiffs information about its accounts located in Argentina (which it will supplement as stated in note 1). The detail regarding the Republic's specific financial arrangements is not necessary to identify attachable assets—whether or not an account was used in connection with any particular financial agreement does not make it any more or less subject to execution. (*See supra* Response to Question No. 9.)

*Question No. 28.* Contrary to your suggestion, the Republic's Response to Question No. 28 regarding accounts related to the 2019 Security Agreement and 2018 Financing Agreement between Argentina and the Hong Kong branch of Banco Bilbao Vizcaya Argentaria S.A. provided a complete answer by confirming that the Republic is a guarantor to the referenced agreement, and not a party, and therefore holds no account related to this agreement.

Alejandra Ávila                                                                                                                    -10-

    ***Question Nos. 29–30.*** These requests seek account information for accounts used in connection with the standby Letter of Credit issued by Santander Bank dated April 3, 2024 and with any payments concerning the Yacyretá Dam, Jasyretâ-Apipé Hydroelectric Power Station, or Entidad Binacional Yacyretá. The Republic confirmed in its Responses that all responsive accounts are located in Argentina, and the Republic has already provided to Plaintiffs information about its accounts located in Argentina (which it will supplement as stated in note 1). The detail regarding the Republic's specific financial arrangements is not necessary to identify attachable assets—whether or not an account was used in connection with a Letter of Credit or agreements regarding the Yacyretá Dam project does not make it any more or less subject to execution. (*See supra* Response to Question No. 9.) Further, the specified Letter of Credit is no longer outstanding.

    ***Question No. 31***. The Republic disagrees with Plaintiffs' assertion that it "completely failed" to answer Question No. 31, which seeks information about the Republic's work to respond to these Requests, including all Persons "consulted in connection with the preparation of responses." The Republic's response specifically identifies the relevant government ministries and offices it consulted in the preparation of its Responses. A listing of the individual civil servants who assisted with these inquiries is not relevant and would both invade legitimate privacy interests of the Republic's public servants and serve no legitimate enforcement purpose. *See Gesualdi* v. *Rockwala Inc.*, 2019 WL 4306349, at *1 (E.D.N.Y. Sept. 11, 2019). Moreover, in the Second Circuit, such "discovery on discovery" is not permitted absent an "adequate factual basis for [the party's] belief that discovery on discovery is warranted." *Mortgage Resolution Serv., LLC* v. *JPMorgan Chase Bank*, 2016 WL 3906712, at *7–8 (S.D.N.Y. July 14, 2016) (Francis, M.J.) (denying plaintiffs' request for Rule 30(b)(6) deposition where they "provided no factual basis to support their skepticism about the defendants'" discovery process); *see also Kaye* v. *New York City Health and Hospitals Corp.*, 2020 WL 283702, at *2 (S.D.N.Y. Jan. 21, 2020) (Cott, M.J.) ("When documents are produced in discovery, whether they be produced electronically or otherwise, the Court does not believe that, in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process.").

    The Republic further objects to the extent that this Question seeks information protected by the attorney work product doctrine. It requests that the Republic identify "all" Persons who were "consulted in connection with the preparation of responses." The Republic's counsel's methods for identifying relevant and responsive evidence are attorney work product. *See Gardner-Alfred* v. *Federal Reserve Bank*, 2022 WL 17961594 (S.D.N.Y. Dec. 27, 2022) (Plaintiff's request for "Documents and communications sufficient to ascertain *all* documents that were searched and reviewed, or proposed to be searched or reviewed, by *any party*" "calls for work product, seeks discovery on discovery, and would require Defendant to help Plaintiffs comply with their discovery obligations" (emphasis added)).

Alejandra Ávila                                                                                                          -11-

       ***Additional Issues.***  Plaintiffs raise two additional arguments about the Republic's productions and responses.  *First*, Plaintiffs say that the Republic's response to the Information Subpoena is not complete because the Republic has not produced "all requested ESI information" in response to some First Requests.  (Ltr. at 4.)  But ESI searches were not needed to respond to all of the First Requests.  The Republic made clear the scope of reasonable search it was willing to undertake with respect to the First Requests in its February 12, 2024 letter, which Plaintiffs did not dispute.  Plaintiffs further complain that they have not received documents or communications from the personal devices or accounts of the Republic's custodians.  The Court has never ordered such a production and this matter is the subject of fully briefed discovery motions still before the Court (*see Petersen* ECF Nos. 657, 658, 669, 671, 677 and 675).  Indeed, as the Republic has explained, it cannot legally produce communications from officials' personal accounts and devices like Gmail or WhatsApp without their consent or express authorization by statute or an Argentine court order in the context of a criminal investigation (*see Petersen* ECF Nos. 658, 660).  Anyone doing so would violate Argentina's National Constitution and be subject to criminal sanctions under the Argentine Criminal Code for violating officials' right to privacy. (*See Petersen* ECF No. 660 at ¶¶ 28–32.)

       *Second*, Plaintiffs argue that it is entitled to answers to the Subpoena because the Republic produced additional documents after it served its Responses.  This does not follow.  The Republic's later productions were primarily responsive to the Court's order in January 2025 and to alter ego requests not addressed by the Subpoena.  (*See Petersen* ECF No. 703.)  Other supplemental document productions should be taken as supplementing the Responses where relevant.

       Sincerely,

       */s/ Amanda Flug Davidoff*
       Amanda Flug Davidoff