SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

July 1, 2025

Via ECF

The Honorable Loretta A. Preska,
    United States District Court for the Southern District of New York,
        500 Pearl Street,
            New York, NY  10007.

> Re: *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP); *Eton Park Cap. Mgmt.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP)

Dear Judge Preska:

On behalf of the Argentine Republic (the "Republic"), I respectfully request a pre-motion conference on the Republic's motion, pursuant to Fed. R. Civ. P. 62(d), to stay the Court's June 30, 2025 order requiring the Republic to turnover its shares of YPF S.A. to Plaintiffs (*Petersen* ECF No. 742; the "Turnover Order") pending appeal of that order or, alternatively, for an interim stay until the Republic can seek relief from the Second Circuit.

This Court should stay its Turnover Order pending appeal "as part of its traditional equipment for the administration of justice." *Nken* v. *Holder*, 556 U.S. 418, 421 (2009) (citation omitted). This motion easily meets the four factors supporting a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (citation omitted). These factors are evaluated on a "sliding scale"—"more of one excuses less of the other." *Thapa* v. *Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (citation omitted). The first two "are the most critical." *Nken*, 556 U.S. at 434.

The Honorable Loretta A. Preska                                                                              -2-

*First*, the Republic is likely to succeed on appeal. To satisfy this factor, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *In re 650 Fifth Ave. & Related Props.*, 2020 WL 3000382, at *2 (S.D.N.Y. June 4, 2020) (Preska, J.) (citation omitted). The Turnover Order clearly involves "significant and complicated legal issues," *Citibank, N.A.* v. *Aralpa Holdings Ltd. P'ship*, 2024 WL 664782, at *2 (S.D.N.Y. Feb. 16, 2024) (Rochon, J.), over the interplay between federal common law and statutory sovereign immunity, that have not yet been addressed by the Second Circuit, and on which the United States disagrees with the Court's ruling. (*Petersen* ECF No. 679 at 1 (stating United States' "long-standing position that foreign sovereign property located abroad is not subject to execution in U.S. courts").) Specifically, this Court held, *inter alia*, that (1) the FSIA fully displaced longstanding federal common law governing the execution of foreign-located sovereign property; (2) FSIA § 1610(a)(2)'s requirement that property be "in the United States" can be satisfied if a U.S. court orders a foreign sovereign to amend its laws barring the transfer of the property to this country; and (3) a non-U.S. company's shares are "used for commercial activity in the United States" if it does any business here, even if the shares are voted only in its country of incorporation and principal place of business. (*See* Turnover Order at 15–20, 25.)

*Second*, the Republic will suffer irreparable harm without a stay. The Turnover Order expressly requires the Republic to cede its controlling interest in Argentina's largest energy company, which Argentine law requires the Republic to hold as a matter of its substantial national interest. (*See Petersen* ECF No. 578-1 (YPF Expropriation Law) Art. 10.) In the ordinary case, "the denial of a controlling ownership interest in a corporation may constitute irreparable harm" "for which a monetary award does not adequately compensate." *Wisdom Import Sales Co.* v. *Labatt Brewing Co.*, 339 F.3d 101, 113, 114 (2d Cir. 2003). The Turnover Order also presumes that the Court's judgments in the underlying *Petersen* and *Eton Park* cases, based on its interpretation of governing Argentine law and now before the Second Circuit, will be affirmed. If Plaintiffs take control of the Republic's YPF shares and sell those shares—as they have promised to do (*Petersen* ECF No. 587 (Plaintiffs' Turnover Reply) at 19 (asking Court to "instruct BNYM to transfer the shares to the U.S. Marshall for the S.D.N.Y. *for sale to the public*") (emphasis added))—"it will be impossible to put the genie back in the bottle," *In re 650 Fifth Ave.*, 2020 WL 3000382 at *3.

The Honorable Loretta A. Preska                                                                                              -3-

*Third*, Plaintiffs would not be injured by a stay, which would only maintain the status quo pending the Second Circuit's review. The Republic has no plan to sell its shares in YPF—it cannot without action by the Argentine Congress. This legal requirement alone "eliminate[s] the risk of asset dissipation" pending appeal. *Aralpa Holdings*, 2024 WL 664782 at *3. It also ensures that the stay would be conditioned on "terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d).

*Fourth*, the public interest clearly supports a stay in the extraordinary circumstances of this unprecedented case. Unlike a typical "commercial dispute . . . between two companies," *EJ Brooks Co.* v. *Cambridge Security Seals*, 2016 WL 908633, at *2 (S.D.N.Y. Mar. 2, 2016) (Preska, J.), this dispute affects Argentina's sovereignty and national governance. The Turnover Order directs a foreign sovereign to amend or—in the absence of an amendment—violate its own laws barring the transfer of the shares. (*See Petersen* ECF No. 577 (Argentina's Turnover Opposition) at 5, 7–8.) The Turnover Order also has immediate consequences for YPF—a publicly traded company with 49 percent of its outstanding equity held by shareholders *other* than the Republic and which employs more than 23,000 people. (*See Petersen* ECF No. 560 (Argentina's Opposition to Plaintiffs' Motion to Seal Turnover Motion) at 6–7.) Accordingly, "maintaining the status quo" "best serves the public interest . . . given the involvement of non-parties in this post-judgment action." *Aralpa Holdings*, 2024 WL 664782 at *3.

If the Court does not grant a stay pending appeal, the Court should at least order an interim stay so that the Republic can seek a stay from the Second Circuit, as courts in this District routinely do in ordinary commercial cases. *See, e.g.*, *Arctic Ocean Int'l Ltd.* v. *High Seas Shipping Ltd.*, 2009 WL 5103283, at *2 (S.D.N.Y. Dec. 28, 2009) (Preska, J.). If ever there were an order that should be stayed, this is it, because this order implicates strategic assets of a foreign sovereign, is directly contrary to the position of the United States, and the Republic's pending appeal of the judgments supporting the Turnover Order raise substantial questions under Argentine and U.S. law.

                                                                                               Respectfully,

                                                                                               */s/ Robert J. Giuffra, Jr.*
                                                                                               Robert J. Giuffra, Jr.

The Honorable Loretta A. Preska                                                    -4-

cc:   Counsel of Record (via ECF)