UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA, S.A.U. AND PETERSEN ENERGÍA, S.A.U.,

        Plaintiffs,

    v.

ARGENTINE REPUBLIC AND YPF S.A.,

        Defendants.

Case Nos.
1:15-cv-02739-LAP
1:16-cv-08569-LAP

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD. AND ETON PARK FUND, L.P.,

        Plaintiffs,

    v.

ARGENTINE REPUBLIC AND YPF S.A.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF YPF S.A.'S MOTION FOR RECONSIDERATION/REARGUMENT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY......................................................................................................... 4

LEGAL STANDARD .................................................................................................................. 6

ARGUMENT ................................................................................................................................ 6

    I.   The Order's Attempt to Distinguish "Liability" from "Responsibility" Conflicts With Binding Supreme Court and Second Circuit Authority. .......... 6

    II.  *Bank Markazi* Forecloses Pursuit of YPF's Assets Through the Republic. ...................................................................................................................... 9

    III. By Denying Intervention and Holding the Republic Adequately Protects YPF's Interests, the Order Ignores Black Letter Law That an Alleged Alter Ego Must Be Permitted to Defend Itself. ................................. 12

CONCLUSION........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*ACE Am. Ins. Co. v. Univ. of Ghana*,
  2022 WL 3362193 (S.D.N.Y. Aug. 15, 2022) .............................................................. 14

*Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*,
  2006 WL 3161647 (S.D.N.Y. Oct. 30, 2006) ................................................................ 6

*Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*,
  974 F.2d 450 (4th Cir. 1992) ........................................................................................ 13

*Comm'ns Imp. Exp. S.A. v. Rep. of Congo*,
  2023 WL 3601035 (S.D.N.Y. May 23, 2023) .............................................................. 11

*Complaint of Bakers Tr. Co.*,
  752 F.2d 874 (3d Cir.1984) ........................................................................................... 13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ................................................................................... 3, 10

*EM Ltd. v. Banco Cent. De la Republica Argentina*,
  800 F.3d 78 (2d Cir. 2015) ........................................................................................... 13

*Epperson v. Ent. Express, Inc.*,
  242 F.3d 100 (2d Cir. 2001) ............................................................................ 1, 5, 7, 11

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ................................................................................................ 3, 13

*Gater Assets Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021) ....................................................................................... 13, 14

*Kasilingam v. Tilray, Inc.*,
  2023 WL 5352294 (S.D.N.Y. Aug. 21, 2023) .............................................................. 6

*Knox v. Orascam Telecom Holding S.A.E.*,
  477 F. Supp. 2d 642 (S.D.N.Y. 2007) ........................................................................... 7

*Nykcool A.B. v. Pac. Fruit Inc.*,
  2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012) .......................................................... 7, 13

*Peacock v. Thomas*,
   516 U.S. 349 (1996) ....................................................................................... passim

*Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*,
   895 F.3d 194 (2d Cir. 2018) ..................................................................................... 11

*Peterson v. Bank Markazi*,
   121 F.4th 983 (2d Cir. 2024) ................................................................................ passim

*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
   230 F.3d 489 (1st Cir. 2000) ...................................................................................... 7

*Zenith Radio Corp. v. Hazeltine Rsch.*,
   395 U.S. 100 (1969) ................................................................................................ 13

**Statutes**

28 U.S.C. § 1330(a) ......................................................................................................... 12

28 U.S.C. § 1603(b)(1) .................................................................................................... 14

28 U.S.C. § 1604 ............................................................................................................. 12

**Constitutional Provisions**

U.S. Const. amend. V ...................................................................................................... 14

YPF S.A. ("YPF") respectfully submits this memorandum in support of its motion for reconsideration/reargument of the Court's September 17, 2025 order (the "Order"), Dkt. 798,[1] which denied YPF's request for orders to show cause, on the basis of *res judicata*, to intervene and to enjoin Plaintiffs' attempts to shift liability to YPF as a purported alter ego of the Republic of Argentina (the "Republic").

## PRELIMINARY STATEMENT

Respectfully, the Order overlooked controlling law and factual matters in at least three respects.

First, the Order disregarded controlling precedent in this Circuit to incorrectly conclude that Plaintiffs' alter ego claim "against YPF is not a cause of action for liability but rather responsibility for the Republic's judgment." Order at 10. "Responsibility for [another's] judgment" is the very hallmark of a liability-shifting claim under dispositive Supreme Court and Second Circuit precedent. *See, e.g.*, *Peacock v. Thomas*, 516 U.S. 349, 357–358 (1996); *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001). Plaintiffs cannot escape their own repeated statements that they seek YPF's assets to satisfy the judgment – in other words, to hold YPF "liable" for the $16 billion this Court entered against the Republic alone – and are pursuing discovery for that purpose. In concluding that Plaintiffs are seeking to hold YPF responsible for the judgment against the Republic, but disregarding the legal consequences of that attempt, the Court erred.

The Order's second error follows from its first; because alter ego claims are new

---

[1] All references to "Dkt." refer to docket entries in case number 1:15-cv-2739.

theories of liability, under controlling Supreme Court and Second Circuit precedent, they require a separate jurisdictional hook over YPF and are not covered by the Court's ancillary jurisdiction in post-judgment enforcement proceedings.[2]  Although it acknowledges the parties submitted supplemental briefing on the implications of *Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024) ("*Bank Markazi*"), *cert. denied*, 145 S. Ct. 2819 (2025), in connection with the orders to show cause and alter ego discovery briefing, the Order does not address *Bank Markazi*'s core and dispositive holding:  "[A] post-judgment enforcement proceeding against an instrumentality of the foreign sovereign judgment debtor cannot be supported by ancillary jurisdiction from the proceeding in which the judgment was issued, but must instead have an 'independent basis for jurisdiction.'"  *Id*. at 1000 n.5 (quoting *Peacock*, 516 U.S. at 355).  Here, the District Court has been divested of subject matter jurisdiction over YPF, and the Court's holding it had subject matter jurisdiction over the underlying merits action does not extend to Plaintiffs' post-judgment pursuit of non-party YPF as an alleged alter ego.  The Order does not consider the consequences of *Bank Markazi* and, in fact, does not address subject matter jurisdiction at all.

---

[2]  YPF maintained and continues to maintain its objections to the Court's personal and subject matter jurisdiction over it, including under the Foreign Sovereign Immunities Act ("FSIA"), and for all purposes including as to any discovery sought from YPF.  *See, e.g.*, Dkt. 569 at 3; Dkt. 610 at 1; Dkt. 613 at 1 n.1; Dkt. 618; Dkt. 631 at 3; Dkt. 664 at 1 n.1; Dkt. 697; Dkt. 709.  YPF has raised, preserves, and will continue to raise all of its threshold and merits objections and defenses to any complaint or motion by Plaintiffs against it, if and when filed.

Instead of ascertaining the source of its jurisdiction over YPF, the Court erroneously held that Plaintiffs have "an alternative" path to "sue the Republic and the instrumentality and then, even if the instrumentality is dismissed from liability, subsequently pursue alter ego recovery" – presumably in reliance on the Court's ancillary jurisdiction (though the Order does not expressly say so).  Order at 11.  The Order's apparent endorsement of the Third Circuit's approach in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) ("*Crystallex*") cannot be squared with *Bank Markazi*'s express rejection of *Crystallex*'s expansive (and legally flawed) view of ancillary jurisdiction as to entities not party to the judgment.  *See* 121 F.4th at 1001 n.6.

The Order erred in a third respect:  By denying YPF's intervention and holding that "the Republic, as the majority shareholder of YPF, can adequately protect YPF's interests," Order at 8, the Order disregarded the fundamental premise of *Bancec* that sovereign instrumentalities are presumed to be independent juridical entities, entitled to the full due process of law before being adjudicated an alter ego.  *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–627 (1983) ("*Bancec*"). The Order does not address the cases applying that principle in this Circuit holding alter ego claims must be separately pled, and the purported alter ego named and served in order to ensure that it is afforded the opportunity to defend itself before being saddled with a judgment for which it is otherwise not liable.  Instead, the Order equates YPF's and the Republic's interests *ex ante*, before the alter ego claims have been formally pled or carefully assessed.

That sets up an unfair situation for YPF that, ironically, affords it fewer protections than it had in the original action.  The Order's refusal to permit YPF to intervene now effectively deprives YPF of the ability to defend itself, while permitting Plaintiffs to build a case in secret – taking discovery from and about YPF – all with the ultimate goal of shifting $16 billion in liability from the Republic to YPF.  Despite YPF having prevailed on the merits and having been dismissed, the Order tells YPF to remain on the sidelines and appoints the Republic – the judgment debtor with its own incentives – to guard against the possible seizure of YPF's assets on a newly minted alter ego theory that could have and should have been pled in the merits phase, and that *res judicata* now precludes Plaintiffs from pursuing against YPF.  Plaintiffs cloak their re-do attempt in the guise of post-judgment enforcement proceedings, claiming they are only seeking discovery at this point, but YPF cannot be compelled to produce documents that Plaintiffs have acknowledged they hope to use against it without Plaintiffs first stating the grounds for their claim, and for this Court's subject matter jurisdiction over YPF.

The Order seems to credit Plaintiffs' characterization that this is nothing more than a discovery dispute, and authorizes Plaintiffs to pursue what amounts to pre-complaint discovery, but without first assessing whether subject matter jurisdiction exists over Plaintiffs' pursuit of YPF as an alter ego.  That cannot be – and is not – the law, and the Court should reconsider and reverse its Order.

## PROCEDURAL HISTORY

On March 31, 2023, this Court granted summary judgment in YPF's favor, and on September 15, 2023, this Court entered judgments (1) dismissing all claims against YPF;

1010718221                                        4

and (2) finding the Republic liable for damages in excess of $16 billion.  *See* Dkts. 437, 498.  Despite the Court's final judgment in YPF's favor on the merits, Plaintiffs seamlessly transitioned to pursuing the very same damages from YPF in the context of post-judgment proceedings, this time seeking to hold YPF liable as an "alter ego" of the Republic.  *See* Dkt. 563.

On August 12, 2024, YPF moved by order to show cause to intervene in these post-judgment enforcement proceedings for the limited purpose of contesting Plaintiffs' improper attempt to shift liability to YPF because Plaintiffs' belated attempt to establish alter ego liability is barred by the doctrine of *res judicata*.  *See* Dkts. 609–618.

On November 13, 2024, the Second Circuit issued its decision in *Bank Markazi*, which held, among other things, that a court's ancillary jurisdiction to enforce its judgments "does not extend . . . to 'an action to establish liability on the part of a third party,'" including through veil-piercing and alter ego theories.  121 F.4th at 999 (citing *Epperson*, 242 F.3d at 104).  Recognizing the significance of the Second Circuit's holding in that case, the Court promptly stayed alter ego discovery and requested supplemental briefing on the impact of *Bank Markazi* on the issues that remained pending before the Court, including YPF's orders to show cause and Plaintiffs' motion to compel discovery from YPF.  *See* Dkt. 685.  The parties completed the Court-ordered supplemental briefing on January 24, 2025.  *See* Dkts. 695–698, 708–710.

On July 29, 2025, the Court lifted the stay on alter ego discovery.  *See* Dkt. 772.  On September 17, 2025, the Court denied YPF's orders to show cause for intervention and for a permanent injunction.  *See* Order.  But the Order overlooked controlling case law on

at least three issues that require the Court to reconsider and reverse its decision that (1) an alter ego claim "is not a cause of action for liability"; (2) in the Second Circuit, Plaintiffs have the option to pursue YPF's assets solely by acting against the Republic; and (3) the Republic "can adequately protect YPF's interests" on the question of alter ego liability. *See* Order at 8, 10, 11.  Controlling and binding precedent from the Supreme Court and the Second Circuit requires the opposite conclusions on all three points.  Accordingly, YPF now respectfully moves the Court for reconsideration of the Order.

## LEGAL STANDARD

Reconsideration is proper where "the court overlooked controlling decisions or factual matters that were put before it on the underlying motion."  *Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*, 2006 WL 3161647, at *1 (S.D.N.Y. Oct. 30, 2006); *see also Kasilingam v. Tilray, Inc.*, 2023 WL 5352294, at *3 (S.D.N.Y. Aug. 21, 2023) (granting reconsideration where "the Court neglected aspects of Defendants' arguments and overlooked controlling Second Circuit precedent").

## ARGUMENT

**I.    The Order's Attempt to Distinguish "Liability" from "Responsibility" Conflicts With Binding Supreme Court and Second Circuit Authority.**

In concluding that Plaintiffs' contemplated alter ego claim "against YPF is not a cause of action for liability but rather responsibility for the Republic's judgment," Order at 10, the Court overlooked binding and controlling Supreme Court and Second Circuit case law holding that alter ego and veil-piercing claims are necessarily liability-shifting in nature.

In *Peacock v. Thomas*, the Supreme Court characterized a veil-piercing claim as an "attempt[]" to "shift[] . . . liability for payment of the judgment from the judgment debtor." 516 U.S. at 358. Citing *Peacock*, the Second Circuit explained in *Epperson v. Ent. Express, Inc.* that it has "continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to **shift liability**." 242 F.3d at 106 (emphasis added); *see also id*. at 104 ("[A] distinction for jurisdictional purposes exists between an action to collect a judgment . . . and an action to establish liability on the part of a third party."). And district courts in this Circuit consistently apply *Peacock* and *Epperson* to reach the same conclusion: alter ego claims are not "attempt[s] simply to collect a judgment duly rendered by a federal court, even if chasing after the assets of the judgment debtor in the hands of a third party." *Nykcool A.B. v. Pac. Fruit Inc.*, 2012 WL 1255019, at *7 (S.D.N.Y. Apr. 16, 2012) (cleaned up). While "these distinctions might strike a metaphysical note for some . . . they have been long honored by the law and have been recognized by the Supreme Court," including in *Peacock*. *Knox v. Orascam Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 649 (S.D.N.Y. 2007) (quoting *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 498–499 (1st Cir. 2000)).

The Order does not address the holdings of *Peacock*, *Epperson*, and their progeny, and the Order's attempt to draw a distinction between "liability" and "responsibility" for the Republic's judgment finds no basis in that binding precedent. Order at 10.

Nor does the Order address Plaintiffs' many admissions that they are actively seeking to hold YPF "liable for the state's debts." Dkt. 563 at 1. The Order asserts YPF has put "the cart before the horse," because Plaintiffs have merely sought alter ego "discovery." Order at 10. But Plaintiffs have been unequivocal that their pursuit of discovery from and about YPF is *not* in aid of collecting money from the Republic. Instead, "the discovery goes to *the distinct issue* of whether YPF is *legally responsible* for satisfying the judgment against the Republic because it is currently the Republic's alter ego." Dkt. 619 at 2; *see also* Dkt. 645 at 15 ("The potential future assertion is that YPF is the Republic's alter ego today and *therefore is a potential source of funds to satisfy the Republic's judgment*."); *id.* at 1 (There is a "question of whether YPF today is an alter ego of the Republic *such that Plaintiffs can look to its assets to satisfy this Court's judgment*."); Dkt. 626 at 2 (acknowledging Plaintiffs' efforts at "enforcing the judgment *against YPF*").

Plaintiffs' efforts to recharacterize this as a discovery dispute cannot mask their true intention to hold YPF liable, and it is that attempt to shift liability – from the Republic (which has been adjudicated liable) to YPF (which has prevailed on that question) – that triggers Plaintiffs' obligation to plead and establish a new basis for this Court's subject matter jurisdiction, a point that the Order does not address. And, as discussed below, the binding holding of *Bank Markazi* is dispositive and makes clear Plaintiffs have not and cannot establish subject matter jurisdiction over their alter ego theory and this proceeding.

## II.     *Bank Markazi* Forecloses Pursuit of YPF's Assets Through the Republic.

*Bank Markazi* confirmed that, in the Second Circuit, there are only two options for Plaintiffs to pursue YPF as an alter ego: (1) plead and prove that theory of liability in the original action; or (2) litigate to judgment against the Republic and then commence a separate action, via a newly filed complaint, to enforce that judgment against YPF.  *See* Dkt. 613 at 14–15.  The Order's holding that "there is an alternative — sue the Republic and the instrumentality and then, even if the instrumentality is dismissed from liability, subsequently pursue alter ego recovery" without establishing any basis for jurisdiction over the instrumentality ignores the core holding of *Bank Markazi* that alter ego claims "fall outside the scope of ancillary jurisdiction because they 'involve[] new theories of liability not asserted in the [earlier] suit.'"  121 F.4th at 999 (quoting *Peacock*, 516 U.S. at 358–59) (alteration in original).

The Order acknowledges that the parties briefed the implications of *Bank Markazi* for YPF's motions, but does not otherwise address the Second Circuit's critical and dispositive holding:  This Court lacks ancillary jurisdiction over Plaintiffs' post-judgment attempt to litigate (or, more properly, *re*-litigate) YPF's liability for $16 billion in the guise of enforcement proceedings against the Republic.  *See* 121 F.4th at 999–1000.  As the Supreme Court has held, it has "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment."  Dkt. 697 at 9 (quoting *Peacock*, 516 U.S. at 357).  The Order does not cite or engage with the analysis in *Peacock v. Thomas*, the

controlling Supreme Court decision on this issue, or the Second Circuit decisions applying it.  *See, e.g.*, Dkt. 697 at 9–11.

The Order instead implies that a subsequent lawsuit is unnecessary because the "alternative" of proceeding directly against the Republic to reach YPF's assets is open to Plaintiffs, tacitly endorsing the approach the Third Circuit sanctioned in *Crystallex*.  *See* Order at 11.  But *Bank Markazi* squarely rejected that approach, holding "to the extent that the *Crystallex* court based its jurisdictional holding on a determination that ancillary jurisdiction extends to post-judgment proceedings against a foreign sovereign's instrumentality that was not party to the underlying merits proceeding, we disagree." 121 F.4th at 1000 n.6.

The Second Circuit, unlike the Third, recognizes that post-judgment enforcement proceedings against a sovereign instrumentality seeking to recover from it as an alter ego of a sovereign judgment-debtor assert a separate claim against that instrumentality and require a separate jurisdictional analysis and basis.  YPF respectfully submits the Court erred in collapsing Plaintiffs' pursuit of YPF as an alleged alter ego into the judgment enforcement proceedings against the Republic, as in *Crystallex*, rather than considering YPF as the separate entity that it is, as required by *Bank Markazi*.  YPF is in the same position as Bank Markazi with respect to the post-judgment proceedings because it, too, is "a person not already liable" for the judgment.  Dkt. 697 at 13–14.

Any pursuit of *YPF's assets* in satisfaction of the judgment against *the Republic* requires an independent evaluation of the Court's subject matter jurisdiction because "veil-piercing and alter ego claims are new theories of liability that require a separate

jurisdictional hook." *Comm'ns Imp. Exp. S.A. v. Rep. of Congo*, 2023 WL 3601035, at *6 (S.D.N.Y. May 23, 2023); *see also Epperson*, 242 F.3d at 104–06.  *Bank Markazi* reaffirmed these cases and removed any doubt about what is required in the Second Circuit:  "[A] post-judgment enforcement proceeding against an instrumentality of the foreign sovereign judgment debtor cannot be supported by ancillary jurisdiction from the proceeding in which the judgment was issued, but must instead have an 'independent basis for jurisdiction'" over the instrumentality.  121 F.4th at 1000 n.5 (quoting *Peacock*, 516 U.S. at 355); *see also id.* at 1001.  The Court's holding that there is a third alternative to pursue YPF's assets solely by acting as to the Republic (and in reliance on the Court's ancillary jurisdiction) cannot be reconciled with *Bank Markazi* or the Supreme Court and Second Circuit cases upon which it relies (all of which is authority that the Order overlooked).  *See* Dkt. 697 at 7–11.

Here, because YPF is entitled to the protections of the FSIA, subject matter jurisdiction must arise – if at all – pursuant to one of the limited immunity exceptions in the FSIA.  *See* Dkt. 613 at 17.  Plaintiffs have not even attempted to identify an exception that applies to their post-judgment attempt to shift liability to YPF, a failure that the Order does not address.

The prior alleged basis for this Court's subject matter jurisdiction over YPF – that there were "breaches of YPF's bylaws," *Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 210 (2d Cir. 2018) – can no longer hold in light of this Court's later summary judgment ruling that the Bylaws "are unambiguous and do not impose any duty on YPF."  Dkt. 437 at 24; *see also* Dkt. 618 at 3.

In fact, it is impossible for an FSIA exception to apply at all because – as the Order acknowledges – Plaintiffs have avoided bringing a civil action against YPF, instead pursuing YPF as an alter ego through discovery while suggesting they may be able to seize YPF's assets without ever needing to file a formal complaint or motion against it. *See* Order at 10–11.  But the plain language of the FSIA presumptively immunizes YPF "from the jurisdiction of the courts of the United States," 28 U.S.C. § 1604, and confers subject matter jurisdiction only over a "civil action against [YPF] . . . as to any claim for relief in personam with respect to which [YPF] is not entitled to immunity . . . under section[] 1605."  28 U.S.C. § 1330(a).  In the absence of such a "civil action against" YPF, Plaintiffs try a clever workaround by characterizing their current efforts as "just" discovery, despite repeatedly acknowledging that they are ***currently*** pursuing YPF as an alter ego for the express purpose of seizing its assets (i.e., holding it liable) for the judgment against the Republic.  But the Court lacks subject matter jurisdiction over Plaintiffs' pursuit of YPF as an alter ego of the Republic – including the discovery intended to support that claim.  And *Bank Markazi* makes abundantly clear that in the Second Circuit ancillary jurisdiction cannot fill that fatal jurisdictional gap.

III.    **By Denying Intervention and Holding the Republic Adequately Protects YPF's Interests, the Order Ignores Black Letter Law That an Alleged Alter Ego Must Be Permitted to Defend Itself.**

By denying YPF's intervention request and holding that "the Republic, as the majority shareholder of YPF, can adequately protect YPF's interests," the Court ignored black letter law that an alleged alter ego must be permitted to defend itself.  Order at 8.  As the Supreme Court has explained, a judgment cannot be enforced against an alleged

alter ego entity "which has never had its day in court on the [alter ego] question." *Zenith Radio Corp. v. Hazeltine Rsch.*, 395 U.S. 100, 111 (1969); *see also* Dkt. 613 at 16–17 (collecting cases and explaining an "entity cannot be adjudicated as an alter ego or bound by any such finding, unless it has a full and fair opportunity to litigate whether or not that relationship exists"). That makes sense because any other procedure would fail to afford YPF the due process to which it is entitled. *Cf. Nykcool*, 2012 WL 1255019, at *5 ("On the other hand, when the alleged 'alter ego' is a party to the action where the 'alter ego' status is litigated, due process will be satisfied." (cleaned up)).[3] In so holding, the Court assumes the conclusion before conducting the requisite legal and factual alter ego analysis.

The Court's holding that *the Republic* can adequately represent *YPF's* interests also disregards well-settled Supreme Court and Second Circuit law (including the seminal *Bancec* case) that "instrumentalities of a foreign state," like YPF, "are to be accorded a presumption of independent status" and are presumed to be distinct. 462 U.S. at 627; *see also Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021); *EM Ltd. v. Banco Cent. De la Republica Argentina*, 800 F.3d 78, 89, 96 (2d Cir. 2015) ("[G]overnment instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such."). YPF is not only a separate juridical

---

[3] Due process "mandates that a judicial proceeding give all parties an opportunity to be heard on the *critical and decisive allegations* which go to the *core* of the parties' claims or defenses and to present evidence on the contested facts." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) (quoting *Complaint of Bakers Tr. Co.*, 752 F.2d 874, 890 (3d Cir.1984)) (emphasis in original).

entity, but also 49% of its stock is publicly traded. YPF is accountable to its many stockholders and bondholders, all of whom expect YPF to defend itself against Plaintiffs' liability-shifting scheme rather than relying on its majority shareholder to protect the interests of the Company and its many stakeholders.

The effect of the Order's twin holdings denying YPF's intervention request and finding the Republic "can adequately protect YPF's interests" vitiates YPF's presumptive independence from the Republic in contravention of well-established legal principles; forces YPF to rely on a judgment debtor – with its own distinct interests and concerns – to prevent Plaintiffs from shifting liability away from the judgment debtor to YPF; and ignores the well-settled case law that sovereign instrumentalities "receive protection . . . under the Due Process Clause," *Gater*, 2 F.4th at 49, and cannot "be deprived of . . . property[] without due process of law." U.S. Const. amend. V; *see also ACE Am. Ins. Co. v. Univ. of Ghana*, 2022 WL 3362193, at *5 (S.D.N.Y. Aug. 15, 2022) (holding sovereign instrumentality is separate legal person and "thus [is] entitled to due process protections") (citing 28 U.S.C. § 1603(b)(1)).

In light of this controlling authority, the District Court should revisit and reverse its decision.

## CONCLUSION

For the foregoing reasons, YPF respectfully submits the Court can and should reconsider the Order, vacate its entry, and (1) allow YPF to intervene in this litigation for the limited purpose of contesting Plaintiffs' attempt to hold it liable, as an alter ego or otherwise, for any share of the damages awarded to Plaintiffs against the Republic, and (2)

issue an immediate injunction and bar to further litigation of whether YPF is liable, as an alter ego or otherwise, for any share of the damages awarded to Plaintiffs against the Republic.  In the alternative and at a minimum, *Bank Markazi* requires that Plaintiffs plead and establish a basis for subject matter jurisdiction over any putative alter ego claim against YPF before pursuing any further actions in support of such a claim, including discovery from YPF.[4]

Dated: October 1, 2025
      New York, New York

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

*/s/ Mark P. Goodman*
Mark P. Goodman
Shannon Rose Selden
James J. Pastore
Wendy B. Reilly
J. Robert Abraham

66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mpgoodman@debevoise.com
srselden@debevoise.com
jjpastore@debevoise.com
wbreilly@debevoise.com
jrabraham@debevoise.com

*Counsel to YPF S.A.*

---

[4] Simultaneously with this motion, YPF is submitting a pre-motion letter pursuant to Your Honor's Individual Rules seeking to stay discovery.