October 2, 2025

**VIA ECF**
Hon. Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street New York, New York 10007

      Re:    *Petersen Energía Inversora S.A.U. v. Argentine Republic.*, No. 15-cv-02739; *Eton Park Capital Management, L.P. v. Argentine Republic,* No. 16-cv-08569

Dear Judge Preska:

Plaintiffs and YPF respectfully set forth below "each party's position on any outstanding discovery disputes as they pertain to categories one and two" identified by the Court in its September 17, 2025 order (the "Order"). Dkt. 798 at 14.[1] The parties met and conferred on September 29, 2025 (the "September 29 call").

### A. YPF's Production of Documents from 18 Custodians

**Plaintiffs' Position**:

YPF asserts that it has made a complete production from the 18 custodians noted in the Court's order, Dkt. 798 at 13. Plaintiffs find that surprising given that the total production was only 1,261 documents, or an average of only 70 documents per custodian over a two year period. One reason for the small production may be YPF's exclusion of communications outside official YPF accounts, addressed further below. While Plaintiffs do not wish to call into question the representation from YPF's counsel, such a small number does call out for some explanation.

In any event, the 18 custodians do not represent the full universe of custodians from whom Plaintiffs are entitled to discovery – instead, they were a subset of the 49 custodians Plaintiffs had identified in a June 17, 2024 letter that Plaintiffs had asked YPF to prioritize. YPF asserts that its production from those

---

[1] All references to "Dkt." refer to docket entries in case number 1:15-cv-2739.

18 custodians was based on an "agreement" that no further custodial searches would be necessary. That is not correct. During the parties' discussions last summer, before YPF's production, Plaintiffs made clear that the 18 custodians would be the first wave instead of an agreed limitation, and that Plaintiffs continued to seek production from the remaining 31 custodians. And if the first production is representative – with just 70 documents per custodian – it would be very difficult for YPF to argue that there is any burden in that incremental production.

**YPF's Position**:

The Order requested an update on the "documents from 18 custodians, which YPF agreed to produce by October 18, 2024, subject to 'its ability to obtain the necessary custodian consents.'" The update is simple and straightforward: As YPF told Plaintiffs at the time and reaffirmed during the September 29 call, YPF completed its production from the 18 agreed-upon custodians on October 18, 2024.

After weeks of negotiations with YPF, Plaintiffs themselves picked 18 specific custodians from a list of 49 they initially had proposed and included 7 newly-identified custodians. YPF never agreed that the 18 custodians were merely those "to prioritize." To the contrary, YPF expressly stated in writing on July 9, 2024: "To be clear, YPF is prepared to negotiate with plaintiffs to reach agreement on a total of up to 18 custodians and one comprehensive set of search terms; we are not amenable to taking a piecemeal approach where plaintiffs come back later with additional custodians or search terms after an agreement has been reached."

YPF obtained consent from custodians, ran every one of Plaintiffs' 73 search terms, reviewed the resulting documents, and produced all responsive documents. The fact that there were not additional documents has nothing to do with YPF's review or production process, but resulted instead from the fact that YPF is not the Republic's alter ego, and so these custodians had limited communications with the Republic about the topics identified by Plaintiffs.

Disappointed with the results of the search protocol that Plaintiffs themselves developed, they now seek to expand to additional custodians. As YPF has consistently explained, including during the September 29 call, it is YPF's strong view that the Court does not have subject matter jurisdiction over Plaintiffs' efforts to pursue an alter ego claim and shift liability for the judgment against the Republic to YPF, including Plaintiffs' ever expanding discovery efforts, and that any such claim would also be barred by *res judicata*. As we previewed to

Plaintiffs on September 29, YPF filed yesterday a motion for reconsideration/reargument of the Order and a request for a pre-motion conference on its anticipated motion to stay further discovery from YPF pending resolution of the reconsideration/reargument motion. YPF's position is that further discovery from YPF should not proceed at least until those motions are resolved. Even if YPF does not prevail on those motions, Plaintiffs' demand that YPF search for documents from 49 custodians for post-judgment enforcement of a judgment against the Republic – more than twice the 18 custodians YPF collected from in the prior merits litigations – is unduly burdensome and clearly unreasonable. Indeed, Plaintiffs' demands from YPF – a non-party – are far in excess of the number of Republic custodians.

### B. YPF's Production of Documents from "a search for ESI other than company email"

**Plaintiffs' Position**:

As Plaintiffs explained in their most recent motion to compel, *see* Dkt. 626 at 3; Dkt. 636 at 2, all of YPF's custodial searches and productions should include off-channel communications, referred to as "ESI other than company email" in the Court's order, Dkt. 798 at 13, such as Gmail, WhatsApp, and other platforms. Plaintiffs reiterated this view during the September 29, 2025 meet and confer, but YPF refused to discuss the issue until the Court decides its motion for reconsideration. YPF now cites a letter in which Plaintiffs requested emails the custodians exchanged with a government domain name, but that request on its face encompasses any email accounts the custodians may have used, whether issued by YPF, Gmail, or any other provider. And Plaintiffs separately made clear that they sought non-email communications such as WhatsApp messages.

Plaintiffs also asked during the September 29, 2025 meet and confer whether potential custodians' off-channel communications had been preserved. YPF's counsel stated they would confirm whether YPF's preservation notices encompassed such communications.

**YPF's Position**:

Plaintiffs drafted the ESI protocol proposal and expressly limited it to "***Emails*** to, from or copying any ***email address*** ending in gob.ar" that contained Plaintiffs' proposed search terms. YPF agreed to that proposal, subject to negotiation of the number of custodians. June 17, 2024 Ltr. at 6. Consistent with

the prior merits litigation, YPF proposed Plaintiffs select 18 custodians. In response to several requests from Plaintiffs, YPF provided additional information that Plaintiffs demanded in aid of their selection of the 18 custodians. It was only after YPF and Plaintiffs had spent weeks negotiating these issues that Plaintiffs made a new, last-minute demand that YPF also search other electronic communications, such as "Teams, WhatsApp, Slack, or any other chat platform." July 30, 2024 Ltr. at 2. That was clearly a re-trade of the agreement Plaintiffs and YPF had already reached on the company email search protocol. In light of Plaintiffs' unexplained departure from their own ESI protocol, YPF and Plaintiffs had a meet and confer on August 8, 2024. During that meet and confer, Plaintiffs refused to negotiate a modified protocol, instead demanding that YPF collect, review, and provide other forms of electronic communications in addition to emails. Six days later, Plaintiffs filed a motion to compel, to which YPF responded. Dkts. 626, 631, 636.

On the September 29 call, Plaintiffs renewed their request for a search of vastly expanded electronic communications, which was inconsistent with the ESI protocol that Plaintiffs themselves drafted. Plaintiffs also asked YPF to confirm that its document preservation notice encompasses the types of expanded electronic communications that Plaintiffs are seeking, which YPF has confirmed. As explained above, YPF respectfully submits that no further discovery from YPF should proceed at least until its motion for reconsideration/reargument of the Order and the anticipated motion for a stay of further discovery from YPF are resolved.

### C. YPF's Responses to Plaintiffs' March 25, 2024 Subpoena for Production Of Documents

**Plaintiffs' Position**:

During the September 29, 2025 meet and confer, Plaintiffs asked YPF to prioritize production in response to requests in their March 25, 2024 subpoena concerning the Republic's accounts (Request Nos. 5, 7, and 20), debts (Request Nos. 16-19), privatization (Request No. 4), YPF's alter ego status (Request Nos. 8-15), and other enforcement actions in which YPF has produced documents (Request No. 24). Plaintiffs noted that, to date, YPF has not made *any* productions in response to several of these requests (Request Nos. 4-5, 8, 10-11, 18, and 24). Plaintiffs explained that they are not withdrawing Request Nos. 1-3, 6, 21-23 but will deprioritize them for now in the interest of advancing discovery.

YPF did not respond to Plaintiffs' recitation of requests set forth above. Instead, YPF informed Plaintiffs that it intends to move for reconsideration of the Court's order and a stay pending its resolution. YPF also explained that it will not produce any additional documents at least until its motion for reconsideration/reargument of the Order and anticipated motion for a stay of further discovery from YPF is decided. Plaintiffs intend to oppose YPF's upcoming motions, and believe YPF should complete its productions in response to Plaintiffs' March 25, 2024 subpoena.

**YPF's Position**:

The Order asked for an update on discovery status about the two categories discussed above and did not direct the parties to meet and confer about anything other than those two categories. YPF does not believe that Section C should be included in this letter, but Plaintiffs insisted on including it. Regardless, Plaintiffs' characterization of YPF's document productions to date is inaccurate. YPF completed its response to some of Plaintiffs' document requests and produced additional documents in response to many of Plaintiffs' other document requests before the stay of discovery from YPF was entered.

As explained above and in YPF's recent motion, given Plaintiffs' failure to establish subject matter jurisdiction, YPF's position is that no further discovery from YPF should proceed at least until its motion for reconsideration/reargument of the Order and anticipated motion for a stay of further discovery from YPF are resolved.

|  |  |
|---|---|
|  | Respectfully submitted, |
| KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C. | DEBEVOISE & PLIMPTON LLP |
| */s/ Andrew E. Goldsmith* | */s/ Mark P. Goodman* |
| Andrew E. Goldsmith | Mark P. Goodman |
| Alejandra Ávila | Shannon Rose Selden |
| 1615 M Street, N.W., Suite 400 | James J. Pastore |
| Washington, D.C. 20036 | Wendy B. Reilly |
| Phone: (202) 326-7900 | J. Robert Abraham |
| agoldsmith@kellogghansen.com | 66 Hudson Boulevard |
|  | New York, NY 10001 |

aavila@kellogghansen.com

KING & SPALDING LLP

Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2100
Fax: (212) 556-2222
lharris@kslaw.com

-and-

Reginald R. Smith
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Phone: (713) 751-3200
rsmith@kslaw.com

LEVINE LEE LLP

Seth L. Levine
Alison M. Bonelli
400 Madison Avenue
New York, New York 10017
Telephone: (212) 257-4400
slevine@levinelee.com
abonelli@levinelee.com

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*

(212) 909-6000
mpgoodman@debevoise.com
srselden@debevoise.com
jjpastore@debevoise.com
wbreilly@debevoise.com
jrabraham@debevoise.com

*Counsel to YPF S.A.*