October 7, 2025

**VIA ECF**

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739; *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Dear Judge Preska:

As directed by the Court at the September 4, 2025 conference, the parties respectfully set forth below an update on certain discovery matters. *See* Sept. 4 Hr'g Tr. at 23:7-10.

## A. "Off-Channel" or "Non-Government" ESI and Internal Communications for "Alter-Ego" Discovery (JSR at 28-40)

**Plaintiffs' Position:**

Consistent with its prior orders, the Court should order the Republic to begin its production of communications between the 25 Court-ordered custodians and any current or former individuals associated with YPF or BCRA existing on any off-channel devices or platforms (*i.e.*, WhatsApp and Gmail). *See* ECF No. 789 at 3; *see also* July 29 Hr'g Tr. at 53:16-23; ECF No. 785 at 10-12. The Court should require the Republic to produce these YPF and BCRA off-channel communications beginning by no later than October 20, 2025, to be followed by the production of relevant internal communications and communications related to the other alter ego entities, ENARSA, BNA, and AA, consistent with the current meet-and-confer process. *See* July 29 Hr'g Tr. at 52:4-8, 63:17-18, 65:9, 66:2-3.

It is now clear that the Republic's request at the September 4, 2025 hearing to have until September 11, 2025 to conduct a "detailed analysis" of Argentine law was yet another delay tactic. *See* ECF No. 789 at 4; Sept. 4 Hr'g Tr. at 10:19-13:11,

Hon. Loretta A. Preska
October 7, 2025
Page 2

15:23-16:2.  On September 15, 2025, the Republic informed Plaintiffs by brief and conclusory letter that it "cannot legally request that custodians allow it to access and search their personal devices," because doing so "would amount to coercing individuals to waive their privacy rights" under Argentine law.  Ex. A, 9/15/2025 ROA Letter at 1.  The Republic proposed that it would stipulate to a request from Plaintiffs that the Court issue Letters of Request for International Judicial Assistance ("Letters Rogatory") to an Argentine court pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention").  Id. at 2.

The Republic's approach is pure gamesmanship.  The reality is that the Republic and its officials are open and notorious about their use of off-channel communications, but have no intention of complying with the Court's orders to produce off-channel communications under any circumstances.  See, e.g., Ex. B at 3, Translation of TN article titled "YPF Lawsuit: The Government asked Judge Preska to stay the order to furnish Caputo's and Massa's messages," dated August 5, 2025 (stating that "under no circumstances" will the Republic "hand over private information of members of the administration and former officials"); Ex. C at 2, Translation of FM La Patriada "X" social media post dated July 30, 2025 (containing video clip of Chief Cabinet of Minister Guillermo Francos stating that this Court's order regarding off-channel communications is a "violation of Argentine sovereignty" and does not have "any application").

The most senior Argentine officials publicly share their personal WhatsApp messages with the public in the media when it suits them.  For instance, during an August 28, 2025 video interview, Economic Minister Luis Caputo (a Court-ordered custodian here) directed the camera to focus on his phone while he displayed his WhatsApp messages with President Javier Milei and discussed his close relationship with the President and their regular communications via chat group.  See Ex. D at 2-3, Translation of Las Tres Anclas interview dated August 28, 2025 with accompanying screenshot.  In another interview captured on video from May 2025, President Milei handed his phone to a journalist so that she could review his WhatsApp messages and "testify" about his communications regarding official government business.  See Ex. E at 2-4, Translation of Radio Mitre interview with journalist Mariana Brey dated May 12, 2025.  The notion that complying with the Court's orders requiring production of off-channel communications somehow "violates" Argentine law, but the disclosure of such communications by Argentine officials at-will with the media does not, is simply self-serving.

Hon. Loretta A. Preska
October 7, 2025
Page 3

The Republic's suggestion that Plaintiffs undertake the burden of the Hague Convention is meritless. The Republic is a party to this action, making the Hague Convention inapplicable. *See, e.g.*, *Skillz Platform Inc. v. Papaya Gaming, Ltd.*, 753 F. Supp. 3d 347, 357 (S.D.N.Y. 2024) (finding that defendant's "status as a party to th[e] litigation and equity counsel strongly against using Hague Convention procedures"). The Republic cites a number of inapposite cases for the proposition that use of the Hague Convention is necessary where discovery is sought from non-parties.[1] But here, Plaintiffs seek discovery from the Republic. There is no legal issue here. The Court has already found that the Republic has control of this material and has ordered the Republic to produce it, having considered both U.S. and Argentine law, including holding that off-channel communications "can be deemed 'public information' under Argentine law" and that such communications are "in the 'control' of the Republic." ECF No. 785 at 11-12.

In any event, the Republic's suggestion is illusory and is nothing more than an effort to further delay and evade the Court's orders. At the parties' meet and confer on September 24, 2025, the Republic admitted that it has no view on—nor has it considered—whether an Argentine court would grant any application pursuant to the Hague Convention, or whether the Republic would be willing to support the Letters Rogatory request once it reached an Argentine court. The Republic's desperation to avoid following the Court's orders is further evident from its changing positions: the Republic previously claimed that only "an Argentine court order in a ***criminal      investigation***" could      order      production      of      off-channel communications. *See* ECF No. 658 at 6 (emphasis added).

---

[1] *See, e.g., McCarthy v. Johnson,* 2022 WL 3038862 (D.D.C. Aug. 2, 2022) (seeking letters rogatory from deceased defendant's lawyer, a non-party, living in Hong Kong); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2023 WL 5322019 (S.D.N.Y. Mar. 8, 2023) (plaintiff and defendants seeking letters rogatory from the same two non-party witnesses: a contractor for one of the defendants and an adviser on one of defendant's projects); *Mesto Mins. Inc.* v. *Powerscreen Int'l Distrib. Ltd.*, 2007 WL 1875560 (E.D.N.Y. June 25, 2007) (seeking letters rogatory from the inventor of the patent in dispute, a non-party); *Saudi* v. *Marine Atl., Ltd.*, 2003 WL 27384297 (E.D.N.Y. July 22, 2003) (seeking letters rogatory from a non-party telephone service provider and a non-party non-employee custodian of records).

Hon. Loretta A. Preska
October 7, 2025
Page 4

Indeed, the Republic's remarkable and unsupported claim that asking for its own officials' consent to collect government communications from private devices would amount to "coerci[on]," Ex. A at 1, is precluded by the Court's previous order on control, *see* ECF No. 785 at 11-12.  Doubtless Argentine officials would prefer not to have their communications produced in discovery.  But, as the Court has observed, the Republic chose to run the government this way.  *See* July 15 Hr'g Tr. at 35:11-16, 35:25-36:4 ("THE COURT: . . .  I know it's a pain in the neck, but the fact is that if they [Argentine officials] have chosen to conduct government business in this manner, then they've opened themselves up to discovery. . . .  I know it's going to be a pain, but it sounds like major public business is being conducted on these off-government devices, platforms.").  The notion that Argentine officials are permitted to effectively make otherwise public information private through the use of off-channel devices, and by so doing effectively bar the Republic from requesting access to its own information, defies law as well as common sense.  Nor can the Republic use that laundering of public information through private channels to avoid its discovery obligations.

Accordingly, Plaintiffs respectfully request that the Court end the Republic's gamesmanship and order the Republic to collect and produce off-channel communications beginning by no later than October 20, 2025.  If the Republic does not comply, Plaintiffs respectfully request that the Court consider all appropriate remedies and sanctions, including a contempt hearing providing the parties with the opportunity to develop the factual record on this issue.

**<u>Republic's Position</u>:**

The Republic has proposed an entirely reasonable approach to responding to the Court's July 29 Order requiring the Republic to collect and produce communications from personal devices, personal email accounts, and personal messaging applications of certain senior current and former officials.  In its August 27, 2025 Order denying reconsideration of its July 29 Order, the Court correctly recognized that "[i]t is undisputed that the Republic lacks 'possession' or 'custody' of the communications" as a factual matter.  (*Petersen* ECF No. 785, at 5.)  As the Republic has advised Plaintiffs since November 2023, the Republic cannot access "[t]he personal emails and devices of current and former Republic officials," which are "outside of the Republic's possession [and] custody."  (*Petersen* ECF No. 641, at 6; *see Petersen* ECF No. 658, at 6; *Petersen* ECF No. 767, at 2-3.)  The

Hon. Loretta A. Preska
October 7, 2025
Page 5

Court's ruling that these communications are "public documents," which, in its view, the Republic legally "controls," does not change this practical reality.

Thus, following the Court's August 27 Order, the Republic has carefully evaluated what steps it can take to access those communications under Argentine law.[2] The Republic is not engaged in "gamesmanship." The Republic cannot simply take possession of its current and former officials' personal property or access servers owned by third-party technology companies like Meta or Google. As a result, the Republic on September 15[3] advised Plaintiffs of the steps the Republic can take to comply with the Court's July 29 and August 27 Orders.

The Republic explained that while "the Court held that the Republic could obtain the communications by '(1) requesting the consent of the individual officials; (2) amending the law by statute; or (3) ordering it through the Argentine courts,'" only the third was a viable option. (Ex. A (Sept. 15, 2025 Ltr. from A. Davidoff at 1-2 (alterations omitted) (quoting Aug. 27 Order at 11-12).).)

As to seeking "consent" from senior officials, such requests would interfere with individual property rights under Argentine law. The individual right to property specified in Articles 14 and 17 of the Argentine Constitution extends to "everything that forms part of the patrimony of the inhabitant of the Nation, be it real or personal rights, tangible or intangible property," including "electronic devices and accounts in messaging applications." (Ivanega Decl. (*Petersen* ECF No. 660) ¶¶ 20-23 (citations omitted).) Under Argentine law, if the Republic requested that custodians allow it to access and search their personal devices under threat of termination, whether implicit or explicit, that request would amount to coercing individuals to waive their rights as protected by Articles 18 and 19 of the Argentine Constitution. (*Id*. ¶ 28.) This concern is far from "remarkable" and "unsupported." To the extent that some courts in the United States have held that an employer is deemed to "control" the documents held by its employee *because* the employer "can discharge

---

[2] The Republic has appealed the Court's ruling and is complying with it subject to that appeal. Argentine Republic's Notice of Appeal, *Petersen Energia Inversora S.A.U. et al.* v. *Argentine Republic et al.*, No. 25-2362, ECF No. 4.2 (2d Cir. Sept. 26, 2025).

[3] The Republic was delayed in providing this information by two business days because of an election in the Buenos Aires Province on September 7.

Hon. Loretta A. Preska
October 7, 2025
Page 6

the individual if he or she fails to cooperate in discovery," *Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, at *6 (S.D.N.Y. Sept. 27, 2016) (Moses, M.J.), that is not the law in Argentina, where asking custodians to consent to searches of their personal devices under threat of termination would constitute impermissible coercion for waiver of the custodians' rights under the Argentine Constitution.[4]

As to the second option identified by the Court, "amending the law by statute" (Aug. 27 Order at 11-12), Plaintiffs recognize that is not legally available under U.S. law. *See In re Austrian, German Holocaust Litig.*, 250 F.3d 156, 164-65 (2d Cir. 2001) (federal courts cannot require "the legislature of a foreign sovereign" to "enact or change a law"); *Kallas* v. *Egan*, 842 F. App'x 676, 679 (2d Cir. 2021) ("[F]ederal courts may not require Congress and state legislatures to exercise their legislative powers."). Just as a U.S. district court cannot direct the U.S. President to "amend the law," it cannot require the Argentine executive branch, led by its democratically elected president, to seek an amendment to the country's laws.

This leaves an order of the Argentine courts. (Aug. 27 Order at 11-12.) As the Republic explained to Plaintiffs, the only mechanism to obtain an Argentine court order in aid of these foreign proceedings is through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, to which Argentina is a signatory. (*See* Ex. A (Sept. 15, 2025 Ltr. from A. Davidoff at 2.).) The Republic cannot itself initiate proceedings in Argentina because, as the Republic has explained to Plaintiffs, the only means to do so under Argentine law is via a court order in a

---

[4] Plaintiffs' reference to Argentine press reports about officials voluntarily showing portions of their personal WhatsApp messages as "evidence" that the Republic can force its current and former employees to hand over their personal devices and communications to the Republic is nonsensical. The fact that individual officials have selectively chosen to share a handful of communications has nothing to do with whether, under Argentine law, the Republic can ask officials to turn over other personal data. In any event, Plaintiffs misconstrue the content of those press reports. In the first, Minister Caputo briefly displayed friendly WhatsApp exchanges with President Milei to counter speculation about a personal rift; he was not disclosing communications concerning official government business. Pls.' Ex. D. In the second, President Milei handed his phone to a journalist to demonstrate that he had not pressured a legislator prior to a congressional vote, not to reveal official business. Pls.' Ex. E.

Hon. Loretta A. Preska
October 7, 2025
Page 7

criminal investigation. (*See Petersen* ECF No. 658, at 6.) But this limitation would not impact Plaintiffs' ability to ask this Court to issue letters of request to an Argentine court under the Hague Convention.

Each of the custodians is an Argentine national residing in Argentina, and while *the Republic* is a party to this action, the Court has recognized that *the custodians* are "non-parties." (Aug. 27 Order at 4.) "[A] chorus of federal courts have held that where, as here, a party seeks discovery from a non[-]party foreign national residing in a foreign country over whom the court lacks jurisdiction, such discovery is governed by the Hague Convention." *McCarthy* v. *Johnson*, 2022 WL 3038862, at *4 (D.D.C. Aug. 2, 2022). In this Circuit, courts have similarly looked to the Hague Convention as the proper means to obtain discovery from non-parties in U.S. litigation. *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2023 WL 5322019, at *2 (S.D.N.Y. Mar. 8, 2023) (Liman, J.) ("Both Bowley and Duffy are . . . non-parties and reside in the United Kingdom outside the Court's jurisdiction. The parties are able to secure their documents and testimony only by letter of request.").[5] Indeed, "[a]s one court has put it, 'when discovery is sought from a non-party in a foreign jurisdiction, application of the Hague Evidence Convention is virtually compulsory.'" *McCarthy*, 2022 WL 3038862, at *4 (alterations omitted) (quoting *Tulip Computs. Int'l B.V.* v. *Dell Comput. Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003)). That the Republic cannot predict how an

---

[5] *See also Metso Minerals Inc.* v. *Powerscreen Int'l Distrib. Ltd.*, 2007 WL 1875560, at *3 (E.D.N.Y. June 25, 2007) (Boyle, M.J.) ("It also appears that the procedures of the Hague Evidence Convention may be the only means by which the requested discovery may be obtained given the fact that [the individual from whom discovery was sought] is a citizen of Northern Ireland, who is not a party to this action and is similarly not subject to the jurisdiction of this court."); *Saudi* v. *Marine Atl., Ltd.*, 2003 WL 27384297, at *1 (E.D.N.Y. July 22, 2003) (Bloom, M.J.) ("Plaintiff must pursue Atil's deposition through the Hague Evidence Convention because (1) Atil is a foreign nonparty witness beyond the territorial limits of the Court's subpoena power, . . . and (2) the Court lacks personal jurisdiction over Atil."); *Gap, Inc.* v. *Stone Int'l Trading, Inc.*, 1994 WL 38651, at *1 (S.D.N.Y. Feb. 4, 1994) (Francis, M.J.) ("As a practical matter, in many cases the Hague Convention provides the only means to request documents or testimony from foreign non-parties over whom the court has no personal jurisdiction and who are beyond the subpoena power of the court.").

Hon. Loretta A. Preska
October 7, 2025
Page 8

independent Argentine court will ultimately implement such Hague requests does not make this procedure any less appropriate.

The Republic made clear to Plaintiffs that it would not object to a request that the Court issue Letters of Request for International Judicial Assistance (Letters Rogatory) to an Argentine court seeking judicial assistance in obtaining the documents that the Court has ordered be produced. (*See* Ex. A (Sept. 15, 2025 Ltr. from A. Davidoff at 2.).)  The Republic remains willing to stipulate to its non-objection.

## B. Document Preservation Notice and Obligations

### Plaintiffs' Position:

The Court should order the Republic to confirm, by no later than October 20, 2025, that all potentially relevant material, including off-channel communications, have been and are being preserved, and describe the materials that have been spoliated to date.  The Court should also direct the Republic to produce its preservation notices and make available a Rule 30(b)(6) witness to testify about the Republic's document preservation efforts by October 20, 2025.[6]

Notwithstanding Plaintiffs' repeated requests for clarification (including by email dated September 12, 2025, and again at the parties' meet and confer on September 24, 2025) and a colloquy on the subject with the Court, *see* Sept. 4 Hr'g Tr. at 16:7-18:25, the Republic still fails to confirm that it has preserved and is preserving off-channel communications like WhatsApp messages.  As the Court observed, it is important for Plaintiffs to "know [custodians are] not dumping their

---

[6] On October 3, 2025, the Republic made an offer to produce its preservation notices if Plaintiffs agreed not to argue a broader privilege waiver based on the Republic's production of the notices.  Plaintiffs agreed not to argue the production of the notices would constitute a waiver, but reserved the right to continue to argue that the notices were not privilege for reasons other than their production.  Further, Plaintiffs made clear that if the substance of the notices supported any of Plaintiffs' other arguments, we reserved the right to use the notices for those purposes. As the Republic apparently wishes to bar Plaintiffs from using the notices as evidence, they have not been produced.

Hon. Loretta A. Preska
October 7, 2025
Page 9

phones as we sit here[.]" Sept. 4 Hr'g Tr. at 21:10-11. To date, the Republic has refused to give assurances that relevant communications, including off-channel communications, are being preserved and are not being actively spoliated. Indeed, the Republic's categorical refusal to produce such relevant communications highlights the need for prompt and decisive action to preserve.

The Republic's September 11, 2025 letter to Plaintiffs on this subject, Ex. F, confirms significant deficiencies in the Republic's preservation efforts. As of at least September 9, 2025, the Republic had not issued any preservation notices to more than half of the Court-ordered custodians, much less all individuals who may possess responsive information. In its letter, the Republic provided only the vague assurance that "ministries" are distributing the notices to government-employed custodians, while the Republic is "in the process" of sending notices to custodians who no longer work for the government. Ex. F at 10. A preservation notice does no good if the intended recipient never receives it. *See Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 62 (S.D.N.Y. 2020) (finding spoliation in part because individual was included in litigation hold "memo" but not on "transmittal email"). In response, the Republic contends that its September 2024 notice was distributed to the custodians who, at the time, were current employees of the Republic. A custodian's status as a former employee does not relieve the Republic of its preservation obligations with respect to that custodian. *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 503 (S.D.N.Y. 2022) ("That some of these custodians were no longer employees did not mitigate Keurig's preservation obligations.").[7]

Moreover, the Republic delayed even longer than previously understood in issuing its preservation notices. The Court issued a final judgment in September 2023, ECF No. 498, and Plaintiffs served post-judgment document requests on

---

[7] In any event, many of the custodians who did not receive the September 2024 notice were only former employees because of the Republic's unwarranted delay in issuing its preservation notices. For instance, Federico Bernal, Nicolás Posse, Agustín Rossi, Flavia Royon, Eduardo Setti, Raul Rigo, Jose Ignacio de Mendiguren, and Gabriel Rubinstein (all custodians granted prior to and at the September 3, 2024 hearing), were employed by the Republic until at least December 2023. If the Republic had issued notices after the Plaintiffs' October 2023 document requests were served, instead of *eleven* months later in September 2024, these custodians would have been current employees of the Republic.

Hon. Loretta A. Preska
October 7, 2025
Page 10

October 16, 2023, seeking discovery related to, among other topics, potential alter-egos YPF, BCRA, ENARSA, BNA, and AA. The Republic then waited *eleven* months to issue any preservation notices on YPF and BCRA, and it waited *twenty-three* months to issue any preservation notices on ENARSA, BNA, and AA. Ex. F at 9-10. The delay alone breached the Republic's obligations. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *11 (S.D.N.Y. Mar. 12, 2018) (finding that seven-month delay failed to satisfy obligations).

The Republic argues that its November 15, 2023 responses and objections to Plaintiffs' document requests ("Republic's R&Os") somehow absolves it of its failure to preserve off-channel communications. Not so. As the Republic notes, the Republic's R&Os objected to the "collect[ion] or review of documents outside the scope of the Republic's normal business operations," but not preservation. Moreover, as Plaintiffs have shown, off-channel communications are used for official government business, plainly *inside* the scope of the Republic's normal business operations.

Accordingly, Plaintiffs respectfully request that the Court order the Republic to confirm that all potentially relevant material, including off-channel communications, have been and are being preserved, and describe the materials that have been spoliated to date, by no later than October 20, 2025. The Court should also order the Republic to produce its preservation notices and make available a Rule 30(b)(6) witness to testify about the Republic's document preservation efforts by October 20, 2025 so that Plaintiffs can verify the Republic's answers and explore the extent of the Republic's failures.

**<u>Republic's Position</u>**:

Plaintiffs have obtained voluminous information about the Republic's extensive efforts to collect and preserve documents about its assets. Even though Plaintiffs are not entitled to "discovery on discovery," *Haroun* v. *ThoughtWorks, Inc.*, 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020) (Liman, J.), the Republic described its preservation and collection efforts in a detailed, ten-page letter that it delivered to Plaintiffs on September 11, 2025—as promised at the last Conference. (Ex. F (Ltr. from T. White).) That letter demonstrates that the Republic has taken "reasonable steps" to preserve relevant documents here. *See* Fed. R. Civ. P. 37(e); *Medcenter Holdings Inc.* v. *Web MD Health Corp.*, 692 F. Supp. 3d 81, 89 (S.D.N.Y. 2023), *amended on reconsideration*, 734 F. Supp. 3d 303 (S.D.N.Y. 2024) (Gorenstein, M.J.).

Hon. Loretta A. Preska
October 7, 2025
Page 11

It is now clear that Plaintiffs' goal is to manufacture discovery disputes. Tellingly, Plaintiffs never bothered to respond to the Republic's September 11 letter, electing instead to come right to this Court to demand even more information. The Court should put an end to Plaintiffs' continued effort to harass the Republic on these issues (or, at a minimum, direct that Plaintiffs disclose equivalently detailed information about their own preservation efforts in this case (including with respect to the Eskenazis and Burford's officers) to the extent Plaintiffs contend the Republic's post-judgment efforts have not been reasonable).

1.    As the Republic explained in its September 11 letter, the Republic has preserved and continues to preserve the relevant information relating to its assets on a worldwide basis, including its assets in Argentina. Since April 2016, the Republic has modernized its public record-keeping system to ensure that public documents are preserved in the *Sistema de Gestión Documental Electrónica* ("GDE System"). In addition to the preservation of official records on the GDE System, the Ministry of Economy—the central ministry with documents potentially responsive to Plaintiffs' outstanding requests—has also since 2020, maintained archiving and backup systems for e-mail that preserves email from 2020 onward. Argentina also maintains various other systems and databases with respect to its debts, assets, and transactions, including: the *Sistema Integrado de Información Financiera Internet* ("e-SIDIF"), the *Sistema de Unidades Ejecutoras de Préstamos Externos* ("UEPEX"), the *Sistema de Gestión Administrativo Financiera de la Cancillería* ("GAF-CAN"), the *Compras Públicas de la República Argentina* ("COMPR.AR"), and the *Sistema de Gestiónde Bienes* ("GEBI").

2.    Plaintiffs take no issue with the Republic's preservation of documents in the possession or custody of the government responsive to their requests, or the Republic's production of documents "sufficient to show" its assets—the key issue in post-judgment discovery. Instead, Plaintiffs' complaints relate to custodians' personal communications and devices relating to "alter ego" discovery. None of Plaintiffs' complaints has merit:

*First*, Plaintiffs complain that the Republic's preservation notices for non-governmental communications went out too late. In fact, the timeline of those notices was a function of Plaintiffs' demands for email discovery:

- Plaintiffs proposed conducting e-mail searches for the first time on June 18, 2024, with no mention of non-governmental communications. The Republic disputed the need for any email searches, which had never been conducted in connection with any of the post-judgment litigation

Hon. Loretta A. Preska
October 7, 2025
Page 12

    to which the Republic had been a party for many years (because such custodial discovery is not generally relevant to asset discovery). Nonetheless, in July 2024, the Republic agreed to review government e-mail accounts with regard to YPF and BCRA.

- At that time, the Republic was already preserving email from the Ministry of Economy's back-up systems for the relevant period. On July 27, 2024, the Republic proposed 18 custodians, most of whom are or were Ministry of Economy employees. In a meet-and-confer on August 1, 2024, Plaintiffs for the first time requested searches of custodians' personal communications and devices.

- On August 23, 2024, Plaintiffs sent the Republic their counterproposal, which sought to expand searches beyond custodians' communications with YPF and BCRA via government email accounts (the scope originally proposed by Plaintiffs) to cover all "Electronically Stored Information (including email, chats, WhatsApp, or any other electronic document)."

- At the September 3, 2024 conference, the Court denied three of Plaintiffs' proposed custodians, granted two, and reserved judgment on seven. (Sept. 3, 2024 Conf. Tr. 44:5-17, 45:22-46:2.) The parties then briefed issues relating to Plaintiffs' requests to (i) conduct searches beyond government email communications with YPF and BCRA (*i.e.*, of internal governmental email), (ii) collect information from personal devices and accounts, and (iii) add further custodians.

- While these disputes were pending, on September 26 and 29, 2024, the Republic issued preservation notices to the four governmental bodies (*Ministerio de Economía*, *Jefatura de Gabinete*, *Secretaría General*, and *Administración Federal de Ingresos Públicos*) associated with the 27 confirmed or potential custodians in relation to BCRA and YPF.[8]

---

[8] To avoid disputes, in addition to the full description of its preservation efforts provided to Plaintiffs on September 11, the Republic offered to provide Plaintiffs with copies of the September 2024 preservation notices sent to the governmental bodies (which it submitted to the Court *in camera* on August 4, 2025) without waiver as to its position that such notices are privileged. Plaintiffs, however, have refused

Hon. Loretta A. Preska
October 7, 2025
Page 13

As the above chronology makes clear, the Republic issued its preservation notices within weeks of Plaintiffs identifying the custodians from whom they sought documents and seeking to obtain information from those custodians' personal devices and accounts.

*Second*, Plaintiffs complain that document custodians who were former employees did not personally receive preservation notices.  But the Republic preserved the custodial material in its possession, custody or control and distributed preservation notices to current employees.  Specifically, the four above-identified governmental bodies distributed the notices to their IT staff and all custodians who were then employed by the government.  More importantly, the Republic collected and restored the Ministry of Economy's backup tapes covering the two-year period from July 2022 through August 2024, thereby preserving electronically stored information for *all* current and former employees of the Ministry for that lengthy period.  (*See* Ex. F (Sept. 11, 2025 Ltr. from T. White at 9).)[9]  In any event, at this point, Plaintiffs have no ongoing need for communications of former officials from the *prior* Argentine administration, which left office nearly two years ago.  Plaintiffs' theory is that "the target entities *currently* are alter egos of the Republic" under the current administration—whose policy agenda Plaintiffs have described as "radically different" from those of previous administrations.  (*Petersen* ECF No. 599, at 4; *Petersen* ECF No. 568, at 2.)

As a result, the cases about preservation notices cited by Plaintiffs bear no resemblance to the facts here.  *See Charlestown Capital Advisors, LLC* v. *Acero Junction, Inc.*, 337 F.R.D. 47, 51, 62 (S.D.N.Y. 2020) (describing as unreasonable defendant's failure to distribute a preservation notice to its then-*current* co-president, and sanctioning defendant for deleting "wholesale" its former co-president's email mailbox); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 502-04 (S.D.N.Y. 2022) (failure to send preservation notices to former employees was unreasonable in a context where "data from at least 23 custodians was lost or irretrievable" and defendant "lost the hard drives of at least nine

---

this offer, insisting on being able to use the preservation notices for any purpose without first demonstrating that the notices are not privileged.

[9] The Republic is collecting e-mail for the five additional custodians the Court ordered discovery from on July 29, 2025, updating its collection for the previously agreed custodians for the period from August 2024 to the present and gathering e-mail for the additional custodians with respect to BNA, ENARSA and AA.

Hon. Loretta A. Preska
October 7, 2025
Page 14

custodians, was unable to decrypt the data from nine custodians, and could not image computers of six custodians due to physical damage"); *Lokai Holdings LLC* v. *Twin Tiger USA LLC*, 2018 WL 1512055, *2-3, *15 (S.D.N.Y. Mar. 12, 2018) (sanctioning defendants for deleting all business emails from the relevant time period). Beyond all that, the Republic issued supplemental preservation notices in September 2025 to the custodians who are current employees of the above-identified governmental bodies, and such notices will also be transmitted by those bodies to the custodians who are former employees.

*Third*, Plaintiffs object that the September 2024 preservation notices covered documents and communications concerning the Republic's relationship with YPF and BCRA, but not the other state-owned entities at issue. But Plaintiffs ignore that the Republic's collection and preservation of the Ministry of Economy's backup tapes meant that *all* potentially relevant government documents and communications in that Ministry's files were preserved, *regardless* of the entity to which those documents relate. The Republic's notices, in any event, reflected the developments in post-judgment discovery. As of September 2024, the Court had denied "alter ego discovery" for entities other than YPF and BCRA, and Plaintiffs had only proposed custodians for those two entities. (May 28, 2024 Conf. Tr. 39:20-25.) It was only almost a full year later—on July 29, 2025—that the Court ordered discovery concerning the Republic's relationship with BNA, ENARSA, and AA (July 29, 2025 Conf. Tr. 63:17-18, 65:9, 66:2-3), but denied discovery as to ARSAT (*id*. at 66:18-19). The Republic proposed custodians for BNA, ENARSA, and AA on August 27, 2025 and on September 9 and 11, 2025, issued supplemental preservation notices to the four entities (*Ministerio de Economía*, *Jefatura de Gabinete*, *Secretaría General*, and former *Administración Federal de Ingresos Públicos*) associated with all 35 confirmed or proposed custodians in relation to BCRA, YPF, BNA, ENARSA, and AA.[10]

*Fourth*, Plaintiffs' suggestion that there is an emergency concerning the preservation of custodians' personal communications is wrong in light of their own

---

[10] Notably, despite their complaints about the timing of discovery, Plaintiffs did not respond to the Republic's list of proposed custodians or propose search terms until more than a month later on October 1, 2025 *after* providing their draft of this letter. Plaintiffs' focus on generating disputes, rather than moving forward with actual discovery, is telling. Nonetheless, the Republic is reviewing Plaintiffs' latest custodian and search term proposal.

Hon. Loretta A. Preska
October 7, 2025
Page 15

behavior. Beginning with its November 15, 2023 Responses and Objections to Plaintiffs' first set of post-judgment document requests served almost two years ago,[11] and followed by repeated representations in Court filings,[12] the Republic told Plaintiffs that it did not have possession, custody, or control of those communications—meaning that it could not preserve or collect them directly[13]—yet

---

[11] On November 15, 2023, the Republic objected to Plaintiffs' first document requests "to the extent they purport[ed] to . . . require the Republic to collect or review documents outside the scope of the Republic's normal business operations, such as text messages, electronic chats, personal files, or personal e-mails." The Republic further objected to the requests to the extent "purport[ed] to require the Republic to provide information that is in the possession, custody, or control of any individual, agency, or instrumentalities of the Republic with legal identities separate and apart from those of the Republic on the grounds that such information is not in the Republic's possession, custody, or control, and is neither relevant nor proportional to the needs of the Actions, nor reasonably calculated to assist in collecting on the judgment." It was only *eight months* later, in August 2024, that Plaintiffs for the first time requested searches of custodians' personal communications and devices.

[12] *See, e.g.*, *Petersen* ECF No. 641, at 6 ("The personal emails and devices of current and former Republic officials are also outside of the Republic's possession, custody, and control."); *Petersen* ECF No. 658, at 2 ("[C]ommunications on personal devices and accounts of Republic officials are not within the Republic's possession, custody, or control, and it would violate the Argentine Constitution for the Republic to collect or search such communications absent specific statutory authorization."); Sept. 3, 2024 Conf. Tr. 51:7-9 ("As a threshold matter, the [R]epublic does not have possession, custody, or control of an employee's private e-mail or private chats."); July 15, 2025 Conf. Tr. 31:7-9 ("[T]he [R]epublic does not have custody or control over the individual person . . . machines of government employees."); *Petersen* ECF No. 767, at 2 ("[T]he Republic does not have possession, custody, or control over officials' personal devices and accounts."); *Petersen* ECF No. 777, at 1 ("Plaintiffs' August 8, 2025 letter [ ] confirms they cannot establish that information contained solely on cellphones and other personal devices and accounts owned by current and former officials, but not the Republic itself, is within the Republic's 'possession, custody, or control' under Federal Rule of Civil Procedure 34(a)(1).").

[13] Even in the U.S., employers typically are not required to preserve the communications on their employees' personal devices. *See, e.g.*, The Sedona

Hon. Loretta A. Preska
October 7, 2025
Page 16

Plaintiffs said *nothing* about personal communications *for almost a year*, nor did they seek to obtain such communications through the Hague Convention. Pursuant to the Court's order to produce custodians' personal communications and devices (July 29, 2025 Conf. Tr. 52:9-53:23), the Republic has proposed a means of obtaining access to those communications and devices under proper legal channels.[14] Yet Plaintiffs continue to drag their feet.

*Finally*, the Court should reject Plaintiffs' demand for "a Rule 30(b)(6) witness to testify about the Republic's document preservation efforts." As a threshold matter, Plaintiffs' demand is procedurally improper. *See* Fed. R. Civ. P. 30(b)(6) (requiring a "notice or subpoena" setting forth "with reasonable particularity the matters for examination"). In any event, Plaintiffs' request for a Rule 30(b)(6) witness on preservation is moot because the Republic provided Plaintiffs with a detailed description of its preservation efforts in its September 11 letter. Plaintiffs (who raised this issue for the first time when they provided a draft of this joint letter) do not identify the additional information that any Rule 30(b)(6) witness would provide. Accordingly, seeking Rule 30(b)(6) testimony now is unnecessary and needlessly duplicative of the efforts the Republic has already undertaken to provide a written description of its preservation efforts. *See Parkinson* v. *Desormeau*, 2024 WL 4973490, at *7 (E.D.N.Y. Dec. 4, 2024) ("Rule 30(b)(6) notices are subject to the same Rule 26 limitations as other forms of discovery: they must be proportional to the needs of the case and not unduly burdensome or duplicative."); *see also Baker* v. *Saint-Gobain Performance Plastics Corp.*, 2023 WL 4763745, at *3 (N.D.N.Y. July 26, 2023), *aff'd*, 2024 WL 4523805 (N.D.N.Y. Mar. 21, 2024) (denying party's request for a 30(b)(6) witness because "it would be inappropriate to essentially start over on these topics.").

---

Conference, *Commentary on BYOD: Principles and Guidance for Developing Policies and Meeting Discovery Obligations*, 19 SEDONA CONF. J. 495, Cmt. 3.d., at 534 (2018) ("The concept of proportionality . . . limits the scope of discovery of ESI on employee-owned devices.")

[14] *See* Ex. A (Sept. 15, 2025 Ltr. from A. Davidoff at 1-2 (explaining that "for the Republic to obtain access to the communications," it must be ordered to do so "through the Argentine Courts," and "[t]he only mechanism to obtain such a court order for discovery in aid of a foreign proceeding is through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, to which Argentina is a signatory.").)

Hon. Loretta A. Preska
October 7, 2025
Page 17

In evaluating Plaintiffs' endless discovery demands, the Court should take into account that Plaintiffs are seeking discovery on discovery that itself has at most extremely attenuated (or non-existent) proportionality to the needs of the case. Plaintiffs assert that the personal communications of government officials might bear upon the alter ego status of various government related enterprises, which might somehow allow for enforcement of the judgment against the assets of those non-party entities. Critically, in *this case*, all of this discovery is irrelevant. Here, Plaintiffs would have no basis to execute on the assets of these entities for at least two independent reasons without regard to their alleged alter ego status: (i) such assets cannot possibly have been "used for the commercial activity upon which the claim is based," putting them outside the scope of the only available FSIA exception to sovereign execution immunity, 28 U.S.C. 1610(a)(2); and (ii) the Court could not, in any event, assert ancillary jurisdiction over any of these entities under *Peterson* v. *Bank Markazi*. 121 F.4th 983, 999 (2d Cir. 2024) ("Ancillary jurisdiction does not extend, however, to 'an action to establish liability on the part of a third party.'" (citation omitted)). Moreover, Plaintiffs have made *no* showing that the discovery they seek of personal communications would be relevant to enforcement of the judgment in *any* jurisdiction *anywhere* in the world.

Plaintiffs have made no showing that they have been deprived of any meaningful enforcement discovery, or that the Republic's preservation efforts relating to its assets has been inadequate. The Court should reject Plaintiffs effort to manufacture a dispute about preservation.

## C. Information Subpoena Question 31 (JSR at 25-28)

### **Plaintiffs' Position**:

To date, after more than a year of litigation on this issue and despite the Court's direction, the Republic refuses to identify a single 30(b)(6)-style person with knowledge. On August 18, 2025, as directed by the Court, Plaintiffs substantially narrowed their original Information Subpoena Question 31 to a request for a 30(b)(6)-style person or persons with knowledge relating to seven discrete topics. *See* Aug. 6 Hr'g Tr. at 35:3-4, 36:2-3; *see also* Ex. G, Email from A. Bonelli to A. Davidoff. On September 10, 2025, the Republic sent Plaintiffs a twelve-page letter reciting the history of the parties' discovery disputes and a summary of its prior searches and making various representations relating to Plaintiffs' seven topics. Ex. H, 09/10/2025 ROA Letter at 3-12. In its letter, the Republic refused to identify any person with knowledge for any of Plaintiffs' seven topics, including any person with

Hon. Loretta A. Preska
October 7, 2025
Page 18

knowledge of the Republic's gold reserves—a topic that Plaintiffs have repeatedly asked the Republic about, *see, e.g.*, ECF No. 763 at 25, July 29 Hr'g Tr. at 36:14-37:1, Aug. 6 Hr'g Tr. at 34:14-19, 52:21-24, and for which the Court has noted that the identification of a 30(b)(6) witness would be appropriate, *see* Aug. 6 Hr'g Tr. at 36:10-18, 53:4-6 ("THE COURT: I thought, for example, on the gold, we were going to -- you were going to say a 30(b)(6) witness with respect to how the gold was moved.").

Plaintiffs are not required to accept the Republic's representations as fact. Plaintiffs are entitled to identification of individuals with knowledge to test the Republic's representations and assertions, as the Court has acknowledged.[15]  *See, e.g.*, *Seven Hanover Assocs., LLC v. Jones Lang LaSalle Ams., Inc.*, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005) (parties are "free to ask for names of persons with knowledge of the facts."); *see also* Aug. 6 Hr'g Tr. at 36:2-18 ("THE COURT: Yeah, but the point is the limitation in the paragraph is 30(b)(6)-type witnesses. . . .   THE COURT: Why can't we do that? That was what we discussed the last time.").

The Court should put an end to the Republic's more-than-year-long delay and order the Republic to identify 30(b)(6)-style persons with knowledge in response to Plaintiffs' list of topics by October 20, 2025.

**Republic's Position**:

Plaintiffs' Information Subpoena Question 31—which asks the Republic to "[i]dentify all Persons . . . who have been consulted" in preparing its Information

---

[15] The Republic cites to various produced documents in this action and asserts that "Plaintiffs are not entitled to information that is cumulative or duplicative of the information already provided by the Republic."  Ex. H, 09/10/2025 ROA Letter at 3.  But that is not the law.  Plaintiffs are entitled to the identification of individuals with knowledge regardless of whether documents have been produced on a given subject. *See, e.g.*, *Williams v. Fed. Gov't of Nigeria*, 2024 WL 5247931, at *2 (S.D.N.Y. Dec. 30, 2024) ("[T]here is no categorical rule that material within one party's possession is not discoverable by that party."); *Burns v. Bank of Am.*, 2007 WL 1589437, at *15 n.13 (S.D.N.Y. June 4, 2007) ("Even if Bank of America already possesses many of the documents in question, this is not a bar to its taking discovery in this matter.").

Hon. Loretta A. Preska
October 7, 2025
Page 19

Subpoena responses—has long been the subject of needless disputes before the Court.  Plaintiffs have no right to a list of every person the Republic consulted to prepare discovery responses, which constitutes work product, is irrelevant to execution, and is impermissible discovery-on-discovery.  (*Petersen* ECF No. 763.)  None of the cases Plaintiffs cite hold otherwise.  To the contrary:  the full quote from *Seven Hanover Associates, LLC* v. *Jones Lang LaSalle Americas, Inc.* states that "Defendant is free to ask for names of persons with knowledge of the facts, but it is *not entitled*, through plaintiffs, to the identification of who among such knowledgeable individuals have been interviewed by plaintiffs' attorney."  2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005) (emphasis added).  And while *Williams* v. *Federal Government of Nigeria* and *Burns* v. *Bank of America* noted that there is no "categorical rule" or "bar" to seeking this discovery as a matter of law, both confirm that "[c]ourts may deny duplicative or cumulative discovery where the burden of production is not offset by the material's relevance," *Williams*, 2024 WL 5247931, at *2 (S.D.N.Y. Dec. 30, 2024), and that "discovery is not boundless," *Burns*, 2007 WL 1589437, at *3 (S.D.N.Y. June 4, 2007).

　　　　Nevertheless, the Republic has attempted on numerous occasions to find a compromise.  In its initial response to Plaintiffs' Information Subpoena, the Republic provided Plaintiffs with a list of the relevant government ministries and offices it consulted in the preparation of its responses.  (*See Petersen* ECF No. 737-1, at 54-55.)  When Plaintiffs remained unsatisfied, the Republic on August 5, 2025 proposed a "two-pronged process":  "(1) As to responses to the Information Subpoena for which the searches . . . are ongoing, the Republic will provide Plaintiffs with information regarding how the Republic is conducting those searches and meet and confer thereafter as to whether further Rule 30(b)(6)-type information is relevant and proportional for any particular searches.  (2) As to completed responses to the Information Subpoena, Plaintiffs will identify any for which they seek Rule 30(b)(6)-type information, and the parties will meet and confer thereafter as to whether further Rule 30(b)(6)-type information is relevant and proportional for any particular searches, and bring any disputes to the Court."  (*Petersen* ECF No. 770, at 5.)  At the August 6, 2025 Conference, Plaintiffs agreed to this proposal, including the limitation imposed by the Court that "we're not doing everybody with knowledge." (*See* Aug. 6, 2026 Conf. Tr. 36:9, 38:9; *see also id.* at 37:6-13 ("THE COURT: But those are two different things. Individuals with knowledge is like everybody.  A 30(b)(6) witness on the topic of how the gold was moved is quite a different inquiry. . . . And we're not doing everybody with knowledge.").)

Hon. Loretta A. Preska
October 7, 2025
Page 20

On August 18, Plaintiffs provided the Republic with a "preliminary list" of seven topics "for which Plaintiffs seek the identification of a 30(b)(6)-style person or persons with knowledge." (*See* Ex. G (Aug. 18, 2025 Email from A. Bonelli.).) On September 10, the Republic responded to the Plaintiffs' proposed topics via a 12-page letter in which the Republic set forth in detail for each of Plaintiffs' proposed topics the documents, information, and searches the Republic has provided or conducted to date. (*See* Ex. H (Sept. 10, 2025 Ltr. from A. Davidoff at 4-12).) The Republic reminded Plaintiffs that they are not entitled to information that is cumulative or duplicative of the information already provided by the Republic[16] without at least providing an "explanation of what additional information [Plaintiffs] hoped to obtain."[17]  The Republic invited Plaintiffs to respond by identifying what additional information they hoped to obtain on the topics they chose.  Of course, there is nothing novel about this process; when one party believes that a Rule 30(b)(6) notice is overbroad, the typical response is to "pursu[e] good-faith negotiation to narrow the scope of the proposed questioning."  *Alli* v. *Steward-Bowden*, 2013 WL 6053481, at *3 (S.D.N.Y. Nov. 7, 2013) (Castel, J.).  Indeed, since the 2020 amendments to the Federal Rules, Rule 30(b)(6) has *required* that "the serving party and the organization *must* confer in good faith about the matters for examination."  (Emphasis added.)

Regrettably, Plaintiffs declined to take the Republic up on its offer and instead on September 24 declared that they were categorically unwilling to confer unless and until the Republic identified witnesses to testify on each of Plaintiffs' topics or provided a list of "individuals with knowledge."  In this meet-and-confer session, Plaintiffs failed to identify *any* additional information that they believe they require

---

[16] *See Beverley* v. *N.Y.C. Health & Hosps. Corp.*, 2024 WL 2125402, at *8 (S.D.N.Y. May 13, 2024) (Ramos, J.) ("The Court is fully within its discretion to limit 30(b)(6) topics to the extent the deposition topics . . . are unreasonably cumulative or duplicative." (citation and quotation omitted)); *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2021 WL 2481835, at *7 (S.D.N.Y. June 17, 2021) (Caproni, J.) (depositions denied in light of discovery already produced, even though parties "continue to disagree over whether Plaintiffs have, in fact, produced all material covered by the Court's Orders").

[17] *In re Blackstone Partners, L.P.*, 2005 WL 1560505, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (depositions of two individuals denied where trustee has "acquired sufficient relevant facts" from previous deponents).

Hon. Loretta A. Preska
October 7, 2025
Page 21

about their proposed seven topics and refused to discuss the scope of the matters for examination.

Shortly thereafter, Plaintiffs provided the Republic with their draft of this letter to bring this dispute to the Court. But Plaintiffs continue to not address the substance of the scope of their proposed topics. The Republic remains willing to meet-and-confer with Plaintiffs regarding Rule 30(b)(6)-type information they believe is outstanding and to work with Plaintiffs to provide that information, including via Rule 30(b)(6) deposition if needed

Respectfully Submitted,

*/s/ Seth L. Levine*                          */s/ Robert J. Giuffra Jr.*
Seth L. Levine                                Robert J. Giuffra Jr.
Alison M. Bonelli                             Sergio J. Galvis
                                              Amanda F. Davidoff
LEVINE LEE LLP                                Thomas C. White
400 Madison Avenue                            Adam R. Brebner
New York, New York 10017
Telephone: (212) 257-4400                     SULLIVAN & CROMWELL LLP
slevine@levinelee.com                         125 Broad Street
abonelli@levinelee.com                        New York, New York  10004-
                                              2498
KING & SPALDING LLP                           Telephone:   (212) 558-4000
Laura Harris                                  Facsimile:   (212) 558-3588
1185 Avenue of the Americas                   giuffrar@sullcrom.com
New York, NY 10036                            galviss@sullcrom.com
Phone: (212) 556-2100                         davidoffa@sullcrom.com
Fax: (212) 556-2222                           whitet@sullcrom.com
Email: lharris@kslaw.com                      brebnera@sullcrom.com

-and-                                         *Counsel for the Argentine Republic*

Reginald R. Smith
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Phone: (713) 751-3200
Email: rsmith@kslaw.com

Hon. Loretta A. Preska
October 7, 2025
Page 22


KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.
Andrew E. Goldsmith
Alejandra Ávila
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
agoldsmith@kellogghansen.com
aavila@kellogghansen.com

*Counsel for Plaintiffs Petersen Energía
Inversora, S.A.U., Petersen Energía, S.A.U.,
Eton Park Capital Management, L.P., Eton
Park Master Fund, Ltd., and Eton Park Fund, L.P.*