UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETERSEN ENERGÍA INVERSORA, S.A.U. and
PETERSEN ENERGÍA, S.A.U.,

                        Plaintiffs,

     -against-

ARGENTINE REPUBLIC and YPF S.A.,

                        Defendants.

ETON PARK CAPITAL MANAGEMENT, L.P.,
ETON PARK MASTER FUND, LTD., and
ETON PARK FUND, L.P.,

                        Plaintiffs,

     -against-

ARGENTINE REPUBLIC and YPF S.A.,

                        Defendants.

Case Nos.:

1:15-cv-02739-LAP
1:16-cv-08569-LAP

---

**PLAINTIFFS' OPPOSITION TO YPF'S MOTION
FOR RECONSIDERATION UNDER RULE 59(E)**

---

CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV

LEVINE LEE LLP

Seth L. Levine
Alison M. Bonelli

KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith

KING & SPALDING LLP

Laura Harris
Reginald R. Smith

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U.,
Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

LEGAL STANDARD ................................................................................................................ 4

ARGUMENT .............................................................................................................................. 5

I.  Jurisdictional Challenges Are Premature Without A Pleaded Alter-Ego Claim ................. 5

   A.  No Independent Jurisdictional Hook Is Required To Conduct Rule 69 Discovery. ................................................................................................................ 6

   B.  *Peacock* and *Epperson* Do Not Warrant Reconsideration of the Order. .................. 8

II. The Court Correctly Held That Intervention Is Not Warranted ........................................ 11

   A.  YPF Does Not Challenge the Court's Finding of Untimeliness. ........................... 12

   B.  The Court's Denial of Intervention Does Not Implicate Due Process. .................. 12

CONCLUSION .......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Adams v. United States*, 686 F. Supp. 417 (S.D.N.Y. 1988) .............................................. 12

*Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) ............................... 1, 5

*Bank of U.S. v. Halstead*, 23 U.S. 51 (1825) ................................................................... 6

*Caisson Corp. v. County W. Bldg. Corp.*, 62 F.R.D. 331 (E.D. Pa. 1974) ................................ 8

*Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223 (2d Cir. 1996) ....................................... 2, 12

*Chevron Corp., In re*, 749 F. Supp. 2d 170 (S.D.N.Y.) .................................................. 12

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*,
    2024 WL 1555231 (S.D.N.Y. Apr. 10, 2024) .............................................................. 7

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019) ............................................................................ 11

*Drapkin v. Mafco Consol. Grp.*, 818 F. Supp. 2d 678 (S.D.N.Y. 2011) ................................ 4, 5, 13

*EM Ltd. v. Republic of Arg.*, 695 F.3d 201 (2d Cir. 2012) .................................................. 6

*Epperson v. Ent. Express, Inc.*, 242 F.3d 100 (2d Cir. 2001) ............................................ 1, 8, 9

*Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250 (E.D.N.Y. 2009) ....................................... 12

*First City, Texas–Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002) ........................ 1, 8

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) .................................................................................. 13, 14

*Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ................................ 12

*Lewis v. Chrysler FCA US LLC*, 2023 WL 5561176 (S.D.N.Y. Aug. 29, 2023) .......................... 13

*McSweeney v. Kahn*, 2009 WL 10670187 (N.D. Ga. Dec. 21 ............................................... 7

*NYKCool A.B. v. Pac. Fruit Inc.*, 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012) ......................... 8

*Peacock v. Thomas*, 516 U.S. 349 (1996) ................................................................. 1, 8, 9

*Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024) ............................................... 4, 9, 10, 11

*Republic of Arg. v. NML Cap., Ltd.*, 573 U.S. 134 (2014) ............................................. 1, 6, 7, 11

*Resource Grp. Int'l Ltd. v. Chishti*, 2025 WL 2670978 (S.D.N.Y. Sept. 17, 2025) ........................ 8

*Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir. 1998) ................................................................ 5

*Trustees of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*,
    148 F.R.D. 662 (M.D. Fla. 1993) ............................................................................................ 7

*Trustees of N.Y. City Dist. Council of Carpenters Pension Fund v. Port Parties, Ltd.*,
    2018 WL 6061205 (S.D.N.Y. Nov. 20, 2018) ......................................................................... 8

*Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ............... 4, 5, 6

**Rules**

Fed. R. Civ. P. 24(a) ............................................................................................................ 2, 11, 12

   Fed. R. Civ. P. 24(a)(2) ................................................................................................... 13, 14

Fed. R. Civ. P. 24(b) ............................................................................................................ 2, 11, 12

Fed. R. Civ. P. 69 ............................................................................................................... *passim*

   Fed. R. Civ. P. 69(a) .......................................................................................................... 6, 7, 11

   Fed. R. Civ. P. 69(a)(2) ............................................................................................................ 7

**PRELIMINARY STATEMENT**

YPF S.A.'s motion for reconsideration is yet another attempt to halt discovery that has been pending from YPF for nearly 19 months, still with no document production for several of Plaintiffs' requests. The motion falls well short of the strict standard required for this "extraordinary" remedy. Dkt. 785 at 2.[1] Rather than identify an intervening change in law, new evidence, or a clear error warranting reconsideration of the Court's September 17, 2025 Memorandum & Order (Dkt. 798, the "Order"), YPF rehashes arguments the Court has already rejected and advances new theories it chose not to raise before. The motion is, at bottom, an impermissible attempt to take a "second bite at the apple" and to derail Rule 69 alter-ego discovery aimed at aiding execution of Plaintiffs' judgment against the Republic of Argentina. *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

The Court's Order correctly resolved each issue YPF now attempts to revisit. There is no jurisdictional defect and no basis for YPF's *res judicata* defense because Plaintiffs have not asserted any alter-ego claim against YPF. The authorities on which YPF relies—*Peacock v. Thomas*, 516 U.S. 349 (1996), and *Epperson v. Ent. Express, Inc.*, 242 F.3d 100 (2d Cir. 2001)—address jurisdiction over new *claims* brought against associates of the judgment-debtor. Those decisions say nothing about, and do not curtail, the Court's settled authority to compel nonparty alter-ego discovery. Post-judgment discovery is broad and "quite permissive," *Republic of Arg. v. NML Cap., Ltd.*, 573 U.S. 134, 138-40 (2014), and no independent jurisdictional hook is required to obtain it from a nonparty, *see First City, Texas–Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002) ("*Rafidain Bank*").

---

[1] "Dkt." citations refer to the *Petersen* docket except where otherwise noted.

YPF's arguments regarding the Court's denial of intervention fare no better.  YPF does not dispute the Court's dispositive finding (at 9) that its intervention request was untimely.  Both intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b) require a "timely" application, and "untimeliness alone is a sufficient basis to deny intervention."  Dkt. 798 at 6-7 (citing *Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996)).  YPF's failure to contest the Court's timeliness ruling alone warrants denial, and the Court need not reach YPF's new "due process" theory, which is both improperly raised for the first time on reconsideration and meritless.  The Court has neither adjudicated YPF an alter ego of the Republic nor authorized enforcement against YPF.  The Court permitted Rule 69 discovery and found (at 8) that the Republic, as YPF's majority shareholder, "can adequately protect" YPF's interests, while making clear that YPF remains free to protect its own interests—as it repeatedly has—through discovery disputes.

## FACTUAL BACKGROUND

Plaintiffs' claims arise from the Republic's failure to conduct a tender offer for Plaintiffs' shares in connection with the Republic's expropriation, initiated in 2012, of a majority stake in YPF.  *See* Dkt. 437 (opinion on summary judgment) at 5-9.  The Court granted summary judgment on liability to Plaintiffs on their breach of contract claim against the Republic and to YPF on all of Plaintiffs' claims against it.  *Id*. at 63.  The Court's liability findings did not address any events after May 8, 2014, when the Republic "completed the expropriation."  *Id*. at 9.  Nor did Plaintiffs' complaints, apart from describing Petersen's liquidation and Eton Park's tolling agreements with YPF.  *See* Dkt. 1 ¶ 46; *Eton Park* Dkt. 1 ¶ 44.

After the Republic failed to satisfy the Court's requirements to stay enforcement of the judgment, Plaintiffs issued, on March 25, 2024, document and Rule 30(b)(6) subpoenas

to YPF seeking information about, among other things, Argentina exercising control over YPF's management or using YPF assets for government purposes. *See* Dkt. 573-1 (subpoenas) at pdf pp. 8, 22 of 25. Both subpoenas specified that the relevant time period was from January 1, 2020 forward. *See id*. at pdf pp. 7, 18 of 25. When negotiations over the document subpoena broke down, Plaintiffs filed a pre-motion letter, explaining that they sought "discovery on whether YPF is *now* the Republic's alter ego." Dkt. 563 at 2 (emphasis added). In response, YPF argued principally that it had not been properly served. Dkt. 569 at 1-2.

On April 30, 2024, Plaintiffs requested a pre-motion conference in advance of their anticipated motion to compel YPF's compliance with the subpoena. Dkt. 563. At oral argument, YPF again argued that it had not been served. *See* Dkt. 611-3 (May 28, 2024 Tr.) at 41:4-45:10. The Court had ruled earlier in the day that Plaintiffs could obtain certain alter-ego discovery from the Republic, and YPF noted that "our recommendation would be that that discovery occur," and if it showed "that YPF is or might be an alter ego, then it might be the case that third-party discovery from YPF to fill in whatever holes remain would be appropriate." *Id*. at 47:20-25. The Court ordered YPF to produce certain materials, holding that Plaintiffs' showing justified alter-ego discovery. *See id*. at 54; *see also* Dkt. 614 at 3. And the Court encouraged Plaintiffs and YPF to work together to "narrow[] the scope of the actual requests." Dkt. 611-3 at 54:12-16.

On August 12, 2024, YPF filed proposed orders to show cause for intervention and a permanent injunction. Dkts. 609, 612. YPF argued for the first time—nearly five months after Plaintiffs issued their subpoenas—that res judicata bars any future attempt by Plaintiffs "to hold YPF liable or attach YPF's assets." Dkt. 613 at 1.

3

On August 14, 2024, after having met and conferred with YPF at least six times with nothing material to show for it, Plaintiffs requested a pre-motion conference regarding Plaintiffs' intended renewal of their motion to compel YPF to produce alter-ego discovery in response to Plaintiffs' document subpoena.  Dkt. 626 at 1.

While the orders to show cause were pending, the Court stayed alter-ego discovery and ordered supplemental briefing on the Second Circuit's decision in *Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024).  Dkts. 685, 694.  The Court lifted the stay on July 29, 2025.  Dkt. 772 at 43:2-4.

On September 17, 2025, the Court denied YPF's orders to show cause and denied Plaintiffs' motion to compel without prejudice.  Dkt. 798.  On October 1, 2025, YPF moved for reconsideration and reargument.  Dkts. 802, 803.

YPF has to this day still not produced any documents in response to several discovery requests served more than a year and a half ago, including request numbers 4-5, 8, 10-11, 18, and 24.

**LEGAL STANDARD**

As this Court observed just two months ago in denying the Republic's motion, reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  Dkt. 785 at 2 (citation omitted); *see also Drapkin v. Mafco Consol. Grp.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (reconsideration is "an extraordinary remedy to be employed sparingly").  To justify reconsideration, a movant must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. National Mediation Bd*., 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted).  That standard is "strict"—reconsideration "will generally be denied

4

unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs.*, 684 F.3d at 52.

On reconsideration, a movant may not "advance new facts, issues or arguments not previously presented to the Court." *Drapkin*, 818 F. Supp. 2d at 695. Nor is reconsideration a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). Indeed, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atl. Airways*, 956 F.2d at 1255 (citation omitted).

## ARGUMENT

YPF identifies no "intervening change of controlling law" and no "clear error" in the Court's Order. *Id*. Instead, it tries to take an impermissible "second bite at the apple" by "relitigating old issues" and "presenting the case under new theories." *Sequa*, 156 F.3d at 144. YPF attempts to graft holdings about pleaded alter-ego *claims* onto the distinct posture of post-judgment *discovery* from a nonparty against which no claim has been pleaded. Dkt. 803 at 9-12. That fundamental error pervades every argument in its motion. Because YPF ignores the procedural posture the Court expressly relied on and invokes inapposite cases involving pleaded alter-ego claims, it cannot meet the "strict" standard for reconsideration. *Analytical Survs.*, 684 F.3d at 52. The Court should leave its Order undisturbed.

### I.    Jurisdictional Challenges Are Premature Without A Pleaded Alter-Ego Claim

The Court correctly rejected YPF's proposed order to show cause seeking an injunction. YPF's attempt to manufacture a jurisdictional defect where none exists relies on its false assertion that Plaintiffs have brought a claim for alter-ego liability against YPF.

5

Plaintiffs seek *discovery* under Rule 69(a) to aid execution of their judgment against the Republic; they have not asserted any *claim* against YPF.

### A. No Independent Jurisdictional Hook Is Required To Conduct Rule 69 Discovery.

A court's subject-matter jurisdiction to decide the underlying case includes ancillary authority to compel alter-ego discovery from nonparties under Rule 69. YPF's contrary position depends on its distortion of the procedural posture of this case. Its assertion that "alter ego claims" constitute "new theories of liability" requiring an independent jurisdictional hook presupposes an alter-ego claim that, to date, Plaintiffs have neither pleaded nor pursued. Dkt. 803 at 9-11.

The Court correctly recognized the significance of YPF's nonparty status in its Order, explaining that "YPF puts the cart before the horse," because "[t]o date, the only actions that Plaintiffs have taken with respect to YPF is alter ego *discovery*." Dkt. 798 at 10. YPF's contrary position depends on recasting basic post-judgment discovery as a claim. But this Court recognized that Plaintiffs are conducting alter-ego discovery—not asserting an alter-ego claim—and YPF offers no "new evidence" as required under the strict standard for reconsideration to unsettle that conclusion. *Virgin Atl. Airways*, 956 F.2d at 1255.

"The rules governing discovery in postjudgment execution proceedings are quite permissive." *NML Cap.*, 573 U.S. at 138. As the Supreme Court long ago recognized, "[t]he judicial power would be incomplete, and entirely inadequate to the purposes for which it was intended, if, after judgment, it could be arrested in its progress, and denied the right of enforcing satisfaction." *Bank of U.S. v. Halstead*, 23 U.S. 51, 53 (1825). For that reason, "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Arg.*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom.*

6

*Republic of Arg. v. NML Cap., Ltd.*, 573 U.S. 134 (2014).  Rule 69(a)(2) authorizes discovery "from any person" in "aid of the judgment or execution," and courts have uniformly construed that authority to permit discovery from nonparties to locate assets of the judgment debtor.

To that end, the Supreme Court has confirmed and this Court has held that post-judgment discovery is not confined to property ultimately subject to execution.  Dkt. 786 at 5 (holding that "at this phase of discovery, . . . the Republic may not categorically raise the 'executability' argument. . . .  Rather, the process will be to 'identify an asset and then determine if it may be executed upon.'"); *NML Cap.*, 573 U.S. at 140-42; *see also McSweeney v. Kahn*, 2009 WL 10670187, at *4 (N.D. Ga. Dec. 21, 2009) (rejecting nonparty's argument that, because plaintiff cannot execute its judgment against it, its transactions with the judgment debtor are beyond the scope of post-judgment discovery).  Indeed, "[t]he law is clear that a judgment creditor need not prove that post-judgment discovery will lead to attachable or executable assets in order to obtain that discovery." *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 2024 WL 1555231, at *3 (S.D.N.Y. Apr. 10, 2024).  Courts permit Rule 69(a) discovery from nonparties in part because plaintiffs "can hardly be expected to make the prima facie showing required to implead [the nonparties] before having access to discovery [that] would allow them to determine [whether] such a showing can be made." *Trustees of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993).  And, to be sure, the Court's authorization of such discovery does not, by itself, render a nonparty's assets subject to execution or impose any liability on that nonparty.

7

Because Rule 69 discovery aids execution and does not adjudicate new liability, no separate claim and therefore no separate jurisdictional basis is required to compel a nonparty's compliance. In *Rafidain Bank*, the Second Circuit affirmed the district court's jurisdiction to compel post-judgment discovery "without deciding whether [the target] is or has been a 'party,'" explaining that jurisdiction "to decide the underlying litigation . . . continues to confer jurisdiction for proceedings in aid of that money judgment." 281 F.3d at 49; *see also Caisson Corp. v. County W. Bldg. Corp.*, 62 F.R.D. 331, 335 (E.D. Pa. 1974) (explaining that "[t]here is no doubt that third parties can be examined in relation to the financial affairs of the judgment debtor" under Rule 69).

For that reason, courts consistently exercise their authority to order alter-ego discovery without requiring the judgment-creditor to assert claims against the potential alter ego. *See, e.g.*, *Resource Grp. Int'l Ltd. v. Chishti*, 2025 WL 2670978, at *2 (S.D.N.Y. Sept. 17, 2025) (granting motion to compel judgment-debtor to provide discovery on its relationship with nonparty and assets "nominally owned by" nonparty given "'reasonable doubt' regarding the ownership of assets held in [nonparty's] name"); *Trustees of N.Y. City Dist. Council of Carpenters Pension Fund v. Port Parties, Ltd.*, 2018 WL 6061205, at *4 (S.D.N.Y. Nov. 20, 2018) (denying motion to quash subpoena to nonparty where there were "sufficient questions as to the existence of an alter ego relationship between [judgment-debtor] and [nonparty]").

### B.   *Peacock* and *Epperson* Do Not Warrant Reconsideration of the Order.

In making its jurisdictional argument, YPF relies exclusively on authorities involving parties against which the plaintiffs had actually pleaded a claim for liability. *See Peacock*, 516 U.S. at 352 (veil-piercing action against judgment-debtor's officer); *Epperson*, 242 F.3d at 103 (fraudulent conveyance action against judgment-debtor's counterparty); *NYKCool A.B.*

8

*v. Pac. Fruit Inc.*, 2012 WL 1255019, at *5 (S.D.N.Y. Apr. 16, 2012) (motion to amend judgment to add judgment debtors under theory of alter ego and successor liability). But YPF has not identified—and cannot identify—any decision holding that a court lacks jurisdiction to order alter-ego discovery from a nonparty in a post-judgment enforcement proceeding where no claim has been pleaded against that nonparty. Indeed, the authorities it argues this Court "overlooked" do not address, much less curtail, the Court's authority to compel alter-ego discovery under Rule 69 from a nonparty against whom no claim has been pleaded. And YPF offers no "new evidence" warranting the Court's reconsideration of that conclusion.

Given that Plaintiffs have not asserted a claim against YPF and that the Court has ancillary jurisdiction to conduct post-judgment discovery in aid of execution, YPF's argument that the court erred by "overlooking" *Peacock*, *Epperson*, and their unidentified "progeny" must fail. Those decisions addressed new claims brought against associates of a judgment-debtor, not the alter-ego discovery from a nonparty at issue here. *See Peacock*, 516 U.S. at 352 (veil-piercing action against judgment-debtor's officer); *Epperson*, 242 F.3d at 103 (fraudulent conveyance action against judgment-debtor's counterparty). And even though the Court did not name those cases, it explained this distinction that renders them irrelevant. Dkt. 798 at 10-11.

Plaintiffs have neither "attempt[ed] to litigate . . . YPF's liability for $16 billion" nor attempted to "impose an obligation to pay [that] judgment" on YPF. Dkt. 803 at 9. So even under YPF's own characterization of *Peacock*, *Epperson*, and *Bank Markazi*, this Court does *not* "lack[ ] ancillary jurisdiction" to order Rule 69 discovery from YPF. Dkt. 803 at 9. Nor, as YPF suggests (at 10), is YPF "in the same position as Bank Markazi with respect to the

9

post-judgment proceedings." The difference is apparent from the caption alone—in *Bank Markazi*, the sovereign entity was a *named defendant* against which a claim had been pleaded. 121 F.4th at 990. Here, by contrast, YPF is a nonparty from which discovery is sought in aid of execution against the Republic.

YPF argues that the Court erred by "attempt[ing] to draw a distinction between 'liability' and 'responsibility' for the Republic's judgment." Dkt. 803 at 7. But YPF misreads the Order by ignoring the context of that statement. The Court's discussion of potential future liability arose solely in resolving YPF's *res judicata* argument. In response to YPF's contention that, "[h]aving elected to sue YPF along with the Republic, Plaintiffs were obligated—like every other plaintiff—to assert all of their claims and theories of recovery or risk preclusion," the Court explained that "the action Plaintiffs could pursue against YPF is not a cause of action for liability but rather responsibility for the Republic's judgment." Dkt. 798 at 10.

In other words, the Court clarified that any *future* alter-ego claim against YPF would not be precluded by Plaintiffs' earlier contract claim because it "would evaluate the status of the Republic's current relationship with YPF." Dkt. 798 at 10. Any future alter-ego claim would therefore not involve pursuing "the same damages, for the same alleged harm, relating to the same underlying facts, that [Plaintiffs] litigated against YPF and lost in a final adjudication on the merits." *Id.* at 11. But, the Court also observed (at 10), YPF's speculation about future liability is premature. In sum, contrary to YPF's assertion (at 10), the Order did not decide whether "a subsequent lawsuit is unnecessary" or whether the

approach in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), would be appropriate if Plaintiffs later asserted a claim against YPF.[2]

Finally, YPF cites *no authority* to support its sweeping assertion (at 11) that, in Rule 69(a) discovery, "YPF is entitled to the protections of the FSIA," such that "subject matter jurisdiction must arise – if at all – pursuant to one of the limited immunity exceptions in the FSIA."  YPF similarly argues that discovery should be stayed pending proof of FSIA jurisdiction because "courts must be circumspect in allowing discovery before the Plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA."  Dkt. 804 at 2.  But YPF ignores that, in this context, it is not a "foreign sovereign *defendant*."  *Id.*  (emphasis added).  Nor does YPF identify a single decision suggesting that requiring a nonparty to produce alter-ego discovery under Rule 69(a) triggers a separate jurisdictional inquiry under the FSIA.  *Id.*  To the contrary, it disregards the Supreme Court's instruction that the FSIA contains "no third provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets."  *NML Cap.*, 573 U.S. at 142.  YPF's position finds no support in precedent or the FSIA, which, as the Supreme Court has recognized, "says not a word on the subject."  *Id.* at 143.

## II.     The Court Correctly Held That Intervention Is Not Warranted

The Court correctly denied YPF's motion to intervene.  On reconsideration, YPF does not challenge the Court's dispositive finding that its petition was untimely, which is an independent and sufficient ground to deny intervention under Rules 24(a) and 24(b).

---

[2] YPF asserts again (at 3, 10) that *Bank Markazi* rejected *Crystallex*, but instead it recognized the same distinction between the cases that this Court did:  "Unlike in this case [*i.e.*, *Bank Markazi*], the [*Crystallex*] district court had no need to exercise jurisdiction over a claim against the instrumentality."  121 F.4th at 1000 n.6.

Dkt. 803.  That omission alone defeats its motion, and the Court need not reach YPF's novel "due process" theory.  But that theory fares no better, in any event.

      A.      **YPF Does Not Challenge the Court's Finding of Untimeliness.**

YPF's motion to reconsider the denial of intervention must fail because it does not challenge the Court's dispositive finding that its petition was untimely.  Both intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b) require a "timely" application by the intervenor.  *Catanzano*, 103 F.3d at 232.  And, as the Court correctly observed, "untimeliness alone is a sufficient basis to deny intervention."  Dkt. 798 at 5-6 (citing *Catanzano*, 103 F.3d at 232).

Finding that "YPF was aware of requests for alter-ego discovery" since March 2024, the Court concluded that "YPF's request to intervene is untimely."  Dkt. 798 at 8-9 (citing *In re Chevron Corp.*, 749 F. Supp. 2d 170, 186 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (three-month delay found untimely); *Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 258 (E.D.N.Y. 2009) (same)).

YPF does not dispute that adverse timeliness finding.  Reconsideration is an extraordinary remedy, available only where the movant identifies controlling decisions or data the Court overlooked, which, "had they been considered, might reasonably have altered the result reached by the court."  *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988) (citation omitted).  Because timeliness is dispositive and YPF does not even purport to identify overlooked authority, new evidence, or a change in law, its motion for reconsideration should be denied.

      B.      **The Court's Denial of Intervention Does Not Implicate Due Process.**

If the Court considers YPF's contention that it "fail[ed] to afford YPF the due process to which it is entitled," the Court should reject it.  Dkt. 803 at 13; *see also id.* at 3.  To start,

YPF's due process theory was not before the Court in the underlying motion and cannot be raised for the first time on reconsideration.  A motion for reconsideration is not a vehicle for raising "new facts, issues or arguments not previously presented to the Court." *Drapkin*, 818 F. Supp. 2d at 695.  Because YPF failed to raise this issue in the underlying motion, it "cannot appropriately be relied upon as a valid basis for reconsideration." *Lewis v. Chrysler FCA US LLC*, 2023 WL 5561176, at *2 (S.D.N.Y. Aug. 29, 2023) (citation omitted).

The argument fails on the merits as well.  YPF's due process argument depends on its assertion that an "entity cannot be adjudicated as an alter ego or bound by any such finding," and that "a judgment cannot be enforced against an alleged alter ego entity," if the entity "'has never had its day in court on the [alter-ego] question.'"  Dkt. 803 at 12-13 (citation omitted).  But YPF faces *neither* circumstance.  The Court has not "adjudicated" YPF an alter ego of the Republic, and Plaintiffs have not sought to "enforce[ ]" any judgment against YPF.  Plaintiffs are conducting discovery under Rule 69.  As the Court noted, Plaintiffs have not pursued any claim against YPF—alter ego or otherwise—since their contract claims were dismissed.  Dkt. 798 at 10.

Equally unavailing is YPF's assertion (at 13) that "[t]he Court's holding that the Republic can adequately represent YPF's interests . . . disregards" *Bancec*'s discussion of the "presumption of independent status" due to "instrumentalities of a foreign state."  YPF misreads both the Court's Order and the test derived from *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*").  *Bancec* does *not* limit a court's authority to manage discovery under the Federal Rules.  *See Bancec*, 462 U.S. at 621 (holding that federal law "determines the effect to be given to Bancec's separate juridical status").  This Court (at 10) properly applied Rule 24(a)(2)'s standard for intervention as of

13

right, which asks whether "existing parties adequately represent" the intervenor's interest. The Order did not, as YPF claims (at 14), "vitiate[] YPF's presumptive independence" or "force YPF to rely on a judgment debtor . . . to prevent Plaintiffs from shifting liability."  Nor did the Court overlook YPF's assertion that, despite the Republic's majority ownership, YPF's "own rights and interests" "have not been adequately addressed in the post-judgment enforcement proceedings."  Dkt. 798 at 8 (quoting YPF's brief).  The Court acknowledged that argument but declined to credit YPF's *ipse dixit* without supporting evidence.  *Id*. at 8-9.

Moreover, the Court both began and ended its analysis by emphasizing that YPF can protect its own interests.  Dkt. 798 at 8-9.  At the outset, the Court noted that YPF had "engaged in many meet and confers with Plaintiffs and even a . . . Court conference before bringing the instant objections on August 12, 2024."  *Id*. at 8.  And it made clear that, going forward, "YPF can raise any discovery disputes with the Court, as it has previously done."  *Id*. at 9.  In short, the Court recognized both that YPF remains capable of representing itself and that the Republic as majority shareholder can, under Rule 24(a)(2), "adequately represent" YPF's interest.  That conclusion reflects a straightforward application of the Rule's adequacy-of-representation requirement, not an adjudication of alter-ego status or a diminishment of *Bancec*'s presumption of independent status.

## CONCLUSION

YPF identifies no intervening law or clear error warranting reconsideration of the Court's proper denial of intervention or its rejection of YPF's res judicata defense.  The Court should deny YPF's motion for reconsideration.

Dated: October 15, 2025               Respectfully submitted,

                                      KELLOGG, HANSEN, TODD, FIGEL
                                          & FREDERICK, P.L.L.C.

14

By:   */s/ Andrew E. Goldsmith*
Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
Alejandra Ávila
Diego Negrón-Reichard
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
Email: mhansen@kellogghansen.com
　　　　dho@kellogghansen.com
　　　　agoldsmith@kellogghansen.com
　　　　aavila@kellogghansen.com
　　　　dnegron-reichard@kellogghansen.com


CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV
706 Duke Street
Alexandria, VA 22314
Phone: (202) 742-8900
Fax: (202) 742-8895
Email: paul.clement@clementmurphy.com
　　　　harker.rhodes@clementmurphy.com


KING & SPALDING LLP

Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2100
Fax: (212) 556-2222
Email: lharris@kslaw.com

　　　-and-

Reginald R. Smith
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Phone: (713) 751-3200
Fax: (713) 751-3290

Email: rsmith@kslaw.com

LEVINE LEE LLP

Seth L. Levine
Alison M. Bonelli
400 Madison Ave
New York, New York 10017
Phone: (212) 223-4400
Email: slevine@levinelee.com
      abonelli@levinelee.com

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P*