UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. AND PETERSEN ENERGÍA, S.A.U., <br><br> Plaintiffs, <br><br> v. <br><br> ARGENTINE REPUBLIC AND YPF S.A., <br><br> Defendants. | Case Nos. <br> 1:15-cv-02739-LAP <br> 1:16-cv-08569-LAP |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD. AND ETON PARK FUND, L.P.,

                Plaintiffs,

    v.

ARGENTINE REPUBLIC AND YPF S.A.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF YPF S.A.'S MOTION FOR RECONSIDERATION/REARGUMENT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .................................................................................................................. 3

    I.   Plaintiffs Seek to Shift Liability to YPF. ............................................................ 3

    II.  Plaintiffs Have No Independent Jurisdictional Hook to Pursue an Alter Ego Determination Against YPF or Alter Ego Discovery From YPF. .............. 5

    III. The Order Overlooked Analysis of YPF's Due Process Rights. ....................... 9

CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
 488 U.S. 428 (1989)..................................................................................................7

*Commissions Imp. Exp. S.A. v. Rep. of Congo*,
 2013 WL 3601035 (S.D.N.Y. May 23, 2023) .............................................................6

*Epperson v. Ent. Express, Inc.*,
 242 F.3d 100 (2d Cir. 2001)...............................................................................1, 5, 8

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
 281 F.3d 48 (2d Cir. 2002)..........................................................................................8

*Gater Assets Ltd. v. AO Moldovagaz*,
 2 F.4th 42 (2d Cir. 2021) ............................................................................................7

*In re Backer*,
 2010 WL 2816789 (S.D.N.Y. July 16, 2010) .............................................................9

*In re Petition of Austin*,
 2013 WL 5255125 (S.D.N.Y. July 16, 2013) .............................................................9

*Knox v. Orascom Telecom Holding S.A.E.*,
 477 F. Supp. 2d 642 (S.D.N.Y. 2007).........................................................................6

*Motorola Credit Corp. v. Uzan*,
 388 F.3d 39 (2d Cir. 2004)........................................................................................10

*Nykcool A.B. v. Pac. Fruit Inc.*,
 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012)...........................................................10

*Peacock v. Thomas*,
 516 U.S. 349 (1996)..........................................................................................1, 5, 8

*Petersen Energia Inversora S.A.U. et al. v. Argentine Republic et al.*,
 895 F.3d 194 (2d Cir. 2018).......................................................................................7

*Peterson v. Bank Markazi*,
 121 F.4th 983 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2819 (2025).................... *passim*

*Republic of Arg. v. NML Cap., Ltd.*,
 573 U.S. 134 (2014)................................................................................................7, 8

*Res. Grp. Int'l Ltd. v. Chishti*,
  2025 WL 2670978 (S.D.N.Y. Sept. 17, 2025) ................................................................ 9

*Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*,
  148 F.R.D. 662 (M.D. Fla. 1993) .................................................................................. 9

*Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Port Parties, Ltd.*,
  2018 WL 6061205 (S.D.N.Y. Nov. 20, 2018) ............................................................... 9

*Zenith Radio Corp. v. Hazeltine Research*,
  395 U.S. 100 (1969) ........................................................................................... 9, 10, 11

**Statutes**

28 U.S.C. § 1330(a) ............................................................................................................. 7

28 U.S.C. § 1603(a)-(b) ....................................................................................................... 7

28 U.S.C. § 1604 ............................................................................................................. 3, 7

**PRELIMINARY STATEMENT**

Plaintiffs cannot overcome dispositive Supreme Court and Second Circuit law, which was not addressed in the September 17, 2025 order (the "Order"), Dkt. 798,[1] and which confirms that this Court lacks jurisdiction over Plaintiffs' efforts to use an alter ego theory to "shift liability" onto YPF S.A. ("YPF") for the $16.1 billion judgment against the Republic of Argentina (the "Republic").  *See, e.g.*, *Peacock v. Thomas*, 516 U.S. 349, 357-58 (1996); *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001); *Peterson v. Bank Markazi*, 121 F.4th 983, 999-1000 (2d Cir. 2024) ("*Bank Markazi*"), *cert. denied*, 145 S. Ct. 2819 (2025).  Because the Order did not analyze (at least not explicitly) the effect of these controlling decisions on Plaintiffs' efforts to pursue YPF's assets – including through impermissible pre-complaint alter ego discovery – the reconsideration motion is the proper and appropriate mechanism to address the intersection of that case law with what Plaintiffs have repeatedly conceded is an effort to impose liability on YPF for the judgment entered against the Republic.

To be clear, YPF's motion is not about (i) discovery from the judgment debtor, (ii) discovery from non-sovereign non-parties about the judgment debtor's own assets, or (iii) discovery from non-parties that are not immune under the Foreign Sovereign Immunities Act ("FSIA").  Plaintiffs' reliance on cases permitting discovery in those circumstances completely misses the mark, as those cases are not responsive to YPF's argument.  The heart of YPF's reconsideration motion is that controlling case law and the plain text of the

---

[1]    All references to "Dkt." refer to docket entries in case number 1:15-cv-2739.

FSIA impose a clear requirement that Plaintiffs establish an independent basis for subject matter jurisdiction over proceedings – including impermissible pre-complaint discovery – the entire purpose of which is establishing that YPF should be responsible for paying the judgment against the Republic.  Plaintiffs have not cited a single Second Circuit or United States Supreme Court case that permits an alter ego claim to proceed against a non-party sovereign instrumentality in the absence of a complaint establishing subject matter jurisdiction based on an immunity exception, or that permits pre-complaint alter ego discovery in support of such a claim.

      Plaintiffs' assertion that they "have neither pleaded <u>nor pursued</u>" "an alter-ego claim" against YPF, Dkt. 819 ("Opp'n") at 6 (emphasis added), is both superficial and inaccurate, and, respectfully, compels the Court to dig beyond the surface and make its decision based not on whether Plaintiffs have avoided filing a formal claim but on whether they are in fact using these enforcement proceedings to actively try to impose liability on YPF.  Plaintiffs have repeatedly and explicitly answered that question, making clear that they are pursuing YPF as an alleged alter ego of the Republic, liable for its judgment, and are pursuing discovery toward that end.  That they have tried to circumvent having to establish that the Court in fact has subject matter jurisdiction by proceeding under the guise of non-party discovery and avoiding a formal pleading should make no difference to the Court's analysis, which must consider not only the superficial posture of Plaintiffs' efforts but, at least as importantly, the underlying substance.

      With or without a formal pleading, Plaintiffs have failed to provide the jurisdictional hook required by *Bank Markazi* for a proceeding designed to impose *new,*

*independent liability* on an instrumentality, and have disregarded the FSIA's jurisdictional limitations. Put differently, Plaintiffs are not permitted under the FSIA and *Bank Markazi* to avail themselves of, and subject YPF to, the "jurisdiction of the courts of the United States," 28 U.S.C. § 1604, without first establishing an applicable immunity exception. Unless and until that occurs, Plaintiffs' alter ego claim against YPF – and the impermissible pre-complaint discovery they seek to support it – cannot proceed.

Of course, this would prevent Plaintiffs from, as they have up to this point, having it both ways: If they were to attempt to satisfy the FSIA and *Bank Markazi* by actually pleading the requisite claim against YPF, YPF would have an opportunity to move to dismiss that claim – and, for obvious reasons, Plaintiffs would prefer to avoid that reckoning by simply continuing to try to impose liability on YPF through the backdoor of their existing judgment against the Republic. That approach is not permitted in this Circuit. Plaintiffs must plead, and YPF must be allowed to challenge, an alter ego claim, including for lack of jurisdiction. Suggesting that YPF, a public company with thousands of shareholders making up 49% of the Company's ownership, can rely on the Republic to protect YPF's interests assumes the conclusion and violates controlling case law holding that an alleged alter ego must be given the opportunity to defend itself. Anything less would be a gross violation of YPF's due process rights.

## ARGUMENT

### I. Plaintiffs Seek to Shift Liability to YPF.

Plaintiffs elevate form over substance in maintaining that they "have neither pleaded nor pursued" an alter ego claim against YPF, Opp'n 6, and have not "attempted to

3

impose [on YPF] an obligation to pay [the Republic's] judgment," Opp'n 9.  They also insist that they are simply "seek[ing] discovery under Rule 69(a) to aid execution of their judgment against the Republic," Opp'n 6; and that they are not "attempt[ing] to litigate . . . YPF's liability for $16 billion," Opp'n 9.[2]

Those assertions simply cannot be squared with the facts.  Plaintiffs have been abundantly clear that they are on a mission to "enforc[e] the judgment against YPF," Dkt. 626 at 2, including through discovery:

- "[A]lter ego discovery" from YPF is warranted because "a state instrumentality may be *liable for the state's debts*."  Dkt. 563 at 1-2.

- "[T]he discovery goes to the distinct issue of whether YPF *is legally responsible for satisfying the judgment against the Republic because it is currently the Republic's alter ego*[.]"  Dkt. 619 at 2.

- "Plaintiffs may argue that YPF today is an appropriate *source of funding to satisfy* Plaintiffs' judgment against the Republic[.]"  Dkt. 645 at 1.

- There is a "question of whether YPF today is an alter ego of the Republic *such that Plaintiffs can look to its assets to satisfy this Court's judgment*."  Dkt. 645 at 1.

- "The potential future assertion is that YPF is the Republic's alter ego today and *therefore is a potential source of funds to satisfy the Republic's judgment*."  Dkt. 645 at 15.

---

[2]   Plaintiffs' August 14, 2024 letter made clear that the subject of their requested motion to compel was "<u>alter ego discovery</u> in response to Plaintiffs' document subpoena."  Dkt. 626 at 1 (emphasis added).  YPF has completed its document productions regarding Plaintiffs' requests for information about the Republic's assets.  Contrary to Plaintiffs' statement, Opp'n 4, YPF has completed its production in response to request numbers 8, 10, 11, and 18, and has no documents in response to request numbers 4, 5, or 24.  As discussed at the October 16, 2025 conference, YPF's motion for a discovery stay relates to Plaintiffs' alter ego discovery requests; no other requests remain outstanding.  *See* Tr. 18:1-15.

Plaintiffs' argument that their pursuit of YPF is not "liability-shifting" – in order to avoid the ramifications of *Peacock*, *Epperson*, and *Bank Markazi* – is not credible in the face of these and other representations by Plaintiffs to the Court. And, by Plaintiffs' own account, they are pursuing an alter ego determination *against* YPF so that they can pursue *YPF's own assets*. And that objective – making YPF separately liable for the $16.1 billion judgment – is what brings this case squarely within the ambit of *Bank Markazi*'s holding.

## II.     Plaintiffs Have No Independent Jurisdictional Hook to Pursue an Alter Ego Determination Against YPF or Alter Ego Discovery From YPF.

Plaintiffs' obvious goal is to skirt controlling Supreme Court and Second Circuit law that, as *Bank Markazi* made clear and as the Order, respectfully, failed to address, requires Plaintiffs to establish a separate jurisdictional hook for their liability-shifting efforts. *See* Dkt. 803 ("Br.") at 9-12. Plaintiffs cannot evade that requirement through legal maneuvering, refusing to formally plead a claim while enjoying the benefits of having pled one – all while insisting that YPF has no right to challenge the proceedings as they unfold. The Court should not permit Plaintiffs to elevate form (whether they have taken the formal step of filing a complaint) over substance (whether they have in fact commenced a proceeding to impose liability on YPF), and should instead reconsider and reverse the Order to the extent it permits the pursuit of liability shifting – including through impermissible alter ego pre-complaint discovery – in the absence of Plaintiffs first establishing subject matter jurisdiction.

5

Plaintiffs' failure to introduce a formal pleading does not excuse their failure to abide by the FSIA's jurisdictional requirements, *see* Br. 9-12, or permit them to avoid the required jurisdictional inquiry. *Bank Markazi*, the cases that it relies on, and their progeny[3] (which the Order did not address) make it abundantly clear that alter ego claims are, by definition, attempts to shift liability to a party that is not already liable for a judgment. *See* Br. 6-8. *Bank Markazi*'s core and dispositive holding is clear: "[A] post-judgment enforcement proceeding against an instrumentality of the foreign sovereign judgment debtor cannot be supported by ancillary jurisdiction from the proceeding in which the judgment was issued, but must instead have an 'independent basis for jurisdiction.'" 121 F.3d at 1000 n.5. To shift liability, the Court needs subject matter jurisdiction over the claim which – because YPF is covered by the FSIA – can only arise if Plaintiffs satisfy one of the limited exceptions to immunity. *See* Dkt. 613 at 17. But Plaintiffs have no such jurisdictional hook.

Plaintiffs erroneously assert that "YPF cites *no authority* to support its sweeping assertion (at 11) that, in Rule 69(a) discovery, 'YPF is entitled to the protections of the FSIA,' such that 'subject matter jurisdiction must arise – if at all – pursuant to one of the limited immunity exceptions in the FSIA.'" Opp'n 11. That quote from YPF's opening brief (Br. 11) cites Dkt. 613 at 17 (YPF's brief in support of order to show cause for

---

[3]   Contrary to Plaintiffs' assertion (Opp'n 9), examples of these progeny are not "unidentified." *See, e.g.*, Dkt. 613 at 17 (quoting *Commissions Imp. Exp. S.A. v. Rep. of Congo*, 2013 WL 3601035, at *6 (S.D.N.Y. May 23, 2023)); Dkt. 697 at 10 (citing *Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 644-48 (S.D.N.Y. 2007)).

permanent injunction), which cites multiple controlling authorities, including the Second Circuit's earlier decision in the underlying case, stating: "The FSIA 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'" *Petersen Energia Inversora S.A.U. et al. v. Argentine Republic et al.*, 895 F.3d 194, 204 (2d Cir. 2018) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). That same page also cites *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021) (citing 28 U.S.C. § 1603(a)-(b)), which makes clear that "[t]he FSIA's definition of a foreign state includes both the sovereign itself and its agencies and instrumentalities, which are separate legal persons from the sovereign." *See* Dkt. 613 at 17. The following page of YPF's opening brief further explains that no FSIA exception could even potentially apply in this posture because YPF is presumptively immune and the FSIA authorizes subject matter jurisdiction only if a "civil action" has been filed and an exception to immunity has been established, neither of which has occurred here. Br. 12 (citing and quoting 28 U.S.C. §§ 1330(a) & 1604).

Instead of confronting the lack of subject matter jurisdiction, Plaintiffs fall back on the notion that they are only seeking discovery and then cite cases that are easily distinguishable from this one, including cases involving discovery from the judgment debtor, from non-sovereign non-parties about the judgment debtors' own assets, and from entities not protected by immunity under the FSIA.

For example, *Republic of Arg. v. NML Cap., Ltd.*, 573 U.S. 134 (2014), involved discovery in aid of enforcing a judgment *against the sovereign judgment debtor*, not an attempt to shift liability to a non-party. The plaintiff, NML, had issued subpoenas to two

non-party banks seeking information about assets of the judgment debtor that were in the bank's possession. *See id*. at 137. NML was not seeking to shift liability onto the banks and did not argue that the banks might be the alter egos of the judgment debtor or that the banks' own assets could be a "source of funds to satisfy the [] judgment." Dkt. 645 at 15. Here, that is precisely what Plaintiffs are now doing. They are seeking discovery to "enforc[e] the judgment against YPF." Dkt. 626 at 2.

Plaintiffs' reliance on *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002) ("*Rafidain Bank*"), is similarly misplaced. Plaintiffs misleadingly cite *Rafidain Bank* for the proposition that "no independent jurisdictional hook is required to obtain [post-judgment discovery] from a nonparty." Opp'n 1; *see also* Opp'n 8. But Plaintiffs fail to explain that Rafidain Bank, the sovereign entity that was ordered to produce post-judgment discovery, was the ***judgment debtor***. 281 F.3d at 49-50. Thus, the liability-shifting and jurisdictional concerns of *Peacock*, *Epperson*, and *Bank Markazi* obviously would not apply. Rafidain Bank disputed that it was a party to the post-judgment proceeding, but the Second Circuit held that the question of whether the judgment debtor was a "party" to the post-judgment proceeding was irrelevant because it had "waived immunity under the 'commercial activities' exception" in the case resulting in the judgment and that waiver was "broad enough to sustain the court's jurisdiction through proceedings to aid collection of a money judgment rendered in the case, including discovery pertaining to the judgment debtor's assets." *Id.* at 53-54. Here, YPF is not the judgment debtor and has not waived or otherwise lost its immunity under the FSIA.

8

Plaintiffs' additional authorities are similarly unavailing.  *See, e.g.*, *Res. Grp. Int'l Ltd. v. Chishti*, 2025 WL 2670978, at *2 (S.D.N.Y. Sept. 17, 2025) (ordering <u>judgment debtor</u> to respond to discovery requests related to enforcing judgment against him); *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Port Parties, Ltd.*, 2018 WL 6061205, at *3-4 (S.D.N.Y. Nov. 20, 2018) (denying <u>non-sovereign</u> non-party's motion to quash subpoena for documents relating to judgment debtor and non-party); *Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 663 (M.D. Fla. 1993) (applying Florida law and permitting post-judgment discovery from <u>non-sovereign</u> non-party).

In addition, because the purpose of Plaintiffs' alter ego discovery from YPF is to build evidence to support shifting liability onto YPF for the $16.1 billion judgment against the Republic, Plaintiffs are pursuing pre-complaint discovery from YPF, which the Federal Rules do not permit – a point Plaintiffs' opposition does not contest.  *See* Dkt. 697 at 15; *see also In re Backer*, 2010 WL 2816789, at *11 n.6 (S.D.N.Y. July 16, 2010); *In re Petition of Austin*, 2013 WL 5255125, at *1 (S.D.N.Y. July 16, 2013).

### III.    The Order Overlooked Analysis of YPF's Due Process Rights.

As YPF pointed out in its *res judicata* briefing, the Supreme Court held in *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100 (1969), that a judgment cannot be enforced against an alleged alter ego entity "which has never had its day in court on the [alter ego] question." *Id.* at 111-12; *see also* Dkt. 613 at 16-17 (collecting cases and explaining an "entity cannot be adjudicated as an alter ego or bound by any such finding,

9

unless it has a full and fair opportunity to litigate whether or not that relationship exists"). YPF also argued that Plaintiffs cannot recover against YPF without acting as to YPF, citing *Nykcool A.B. v. Pac. Fruit Inc.*, 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012). *See* Dkt. 613 at 18. *Nykcool* held that "[w]hen the alleged 'alter ego' is a party to the action where the 'alter ego' status is litigated, due process will be satisfied." 2012 WL 1255019, at *5; *see also id*. at *5 n.2 ("[F]undamental notions of due process" include "the principle that nonparties must be accorded an opportunity to be heard and participate in . . . litigation that could give rise to a judgment against them.") (citing *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 62 (2d Cir. 2004)) (internal quotation marks omitted). Plaintiffs' assertion (at Opp'n 13) that this issue was not originally before the Court is therefore incorrect. The Order simply overlooked and did not address the impact of *Zenith Radio* and *Nykcool* on Plaintiffs' attempt to pursue YPF as an alter ego, and take alter ego discovery from YPF, without filing a complaint against YPF. This reconsideration motion gives the Court the opportunity to address this issue.[4]

Moreover, by finding that the Republic could adequately protect YPF's interests, the Order fails to credit YPF's presumptive independence from the Republic under *Bancec. See* Br. 13-14. It also, as a practical matter, strips YPF of its due process rights, *see* Br. 14, because Plaintiffs are *currently* pursuing their alter ego theory against YPF in an unlawful posture, which deprives YPF of the right to move to dismiss Plaintiffs' claim,

---

[4]  YPF will address on appeal the Order's conclusion that its motion to intervene was untimely. The fact that YPF has not sought reconsideration on that point has no bearing on YPF's request for reconsideration of other aspects of the Order.

including for lack of subject matter jurisdiction. Basic due process protections require that YPF have a direct right to defend itself against any attempt by Plaintiffs to shift the Republic's $16.1 billion liability onto YPF. *See, e.g.*, *Zenith Radio*, 395 U.S. at 111-12.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in YPF's opening papers, Dkt. 803, YPF's motion for reconsideration/reargument should be granted. In the event the Court denies the motion, YPF respectfully requests that the Court stay the Order and extend the current stay of alter ego discovery from YPF pending appeal.

Dated: October 22, 2025
New York, New York

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

*/s/ Mark P. Goodman*
Mark P. Goodman
Shannon Rose Selden
James J. Pastore
Wendy B. Reilly
J. Robert Abraham

66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mpgoodman@debevoise.com
srselden@debevoise.com
jjpastore@debevoise.com
wbreilly@debevoise.com
jrabraham@debevoise.com

*Counsel to YPF S.A.*

## CERTIFICATE OF COMPLIANCE

I, Mark P. Goodman, hereby certify that the foregoing memorandum complies with the word limits set forth in Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and in Rule 2.B. of Judge Preska's Individual Practices. According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by Local Rule 6.3, this memorandum contains 3,000 words.

*/s/ Mark P. Goodman*
Mark P. Goodman