December 8, 2025

**VIA ECF**

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> **Re**: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739; *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Dear Judge Preska:

The parties respectfully submit this update on certain discovery matters in advance of the December 9, 2025 conference.

### A. "Off-Channel" or "Non-Government" Communications for "Alter-Ego" Discovery (July 26, 2025 Joint Status Report ("JSR") at 28-40)

**Plaintiffs' Position**:

The Court ordered the Republic to produce off-channel communications relevant to alter-ego discovery under both U.S. and Argentine law, holding that such communications are public information. July 29 Hr'g Tr. at 52:10-53; Dkt. 785 at 11-12. The Court has already determined that these materials are within the Republic's control, and the Republic's claimed inability to obtain consent from some custodians does not excuse its noncompliance. *See* Dkt. 785 at 12 ("[O]ff-channel communications are in the 'control' of the Republic.").

To date, the Republic has made a very limited production of approximately 200 pages of WhatsApp communications exchanged with alter-ego entities for five out of 36 custodians. This minimal production confirms what Plaintiffs have long argued: that Republic officials use off-channel communications to conduct official business, and the Republic's resistance of this discovery has been an exercise in delay based on an ever-shifting series of baseless legal and factual positions. *See* Nov. 4 Hr'g Tr. at 14:16-21. In one WhatsApp group chat produced by the Republic,

Hon. Loretta A. Preska
December 8, 2025
Page 2

for example, a former undersecretary of Energy, a host of other Republic officials, and four directors of ENARSA (one of the alter-ego entities), including its President and Vice-President, discuss government business.  In another WhatsApp group chat, Republic officials, a director of YPF, and a director of ENARSA even exchange documents.  Ex. A (PX-7 (AR00222461); PX-8 (AR00222480)).

The Republic has indicated that it will produce communications for 11 additional custodians by an unspecified date and is still seeking to confer with another 14 custodians.  Ex. B (Ex. A to Nov. 10 ROA Letter); Ex. C (Ex. A to Nov. 21 ROA Letter); Ex. D (Nov. 28 ROA Letter) at 2.  Plaintiffs respectfully request that the Court direct the Republic to substantially complete its production of off-channel communications with alter-ego entities for the 11 additional custodians by no later than December 16, 2025, and make production for the other 14 custodians by no later than December 23, 2025.

With respect to six custodians, including the Minister of Economy Luis Caputo, it appears that the Republic is refusing to comply with the Court's order based on lack of consent—an objection this Court has already rejected and for which there is no factual basis in the record that the Republic does not have access to these materials.  The Republic's defiance of the Court's order is especially troubling in light of the production showing the Republic's use of WhatsApp and given, for example, the Court's explicit findings that Luis Caputo's communications are relevant to the alter-ego inquiry, noting his involvement in the Republic's relationship with BCRA and YPF.  Ex. E (Pls. Nov. 17 Letter) at 1; *see also* July 29 Hr'g Tr. at 55:17-56:21; Dkt. 775-1 (July 2025 interview involving Caputo and BCRA Governor Santiago Bausili in which interviewer was told that Bausili and Caputo are in continuous contact via chat group, Caputo is Bausili's "jefe" (boss), and Caputo is involved in decision-making with Bausili).  The Republic is also withholding documents for the former Secretary of Finance (now Minister of Foreign Affairs) Pablo Quirno Magrane.  Ex. B (Ex. A to Nov. 10 ROA Letter) at 2.  The Republic itself proposed Quirno as a custodian for BCRA and BNA, recognizing his relevance.  Ex. E (Pls. Nov. 17 Letter) at 1; *see also* Dkt. 642 at 2 n.2.  The Court should direct the Republic to make a production from these custodians no later than December 16, 2025.  Absent production, Plaintiffs intend to seek appropriate remedies and sanctions.

Further, the Republic has yet to apply search terms to internal communications.  On November 7, 2025, the Republic responded to Plaintiffs' October 1, 2025 list of proposed search terms, objecting to many of them without

Hon. Loretta A. Preska
December 8, 2025
Page 3

basis. *See* Dkt. 833 at 9 (reflecting prior communications between the parties regarding search terms). On November 13, 2025, Plaintiffs requested that the Republic provide a search term hit report to support its objections. On November 21, 2025, Plaintiffs sent the Republic a search term counterproposal and reiterated their request for a hit report. On December 8, 2025 at 11 a.m., after Plaintiffs sent the Republic their half of the draft joint letter, the Republic responded to Plaintiffs' counterproposal once again objecting to many search terms without basis. Ex. G (ROA Dec. 8 Letter) at 3. The Republic further represented that it "is not in a position to provide 'hit reports.'" *Id*. Plaintiffs respectfully request that the Court direct the Republic to provide a search term hit report and begin rolling productions by no later than December 16, 2025.

**Republic's Position:**

No good deed goes unpunished. Following the November 4, 2025 conference, the Republic has gone to great pains to collect, review, and produce documents on personal devices of senior officials in the Argentine government. The Republic has already produced communications from the devices of five of the fifteen officials who have consented to have their personal devices searched and will produce promptly—on a rolling basis—communications from the ten others. Given the Republic's clear compliance with the Court's order, all Plaintiffs are left to complain about is the speed and size of the Republic's productions.

The Republic's collection and review of so-called "off-channel" communications has been an enormous and time-intensive undertaking. Because the Republic does not own the custodians' devices, the Republic must schedule individual collections with each custodian. And because most custodians have not consented to the Republic imaging their entire devices but rather only to the collection of potentially responsive chat threads or email chains, the collection process requires custodians—government officials with their own busy schedules and important responsibilities—to comb through their devices, guided by a discovery vendor and a Republic attorney, to identify these individual chat threads and emails. Notwithstanding these burdens, the Republic continues to diligently pursue these communications in light of the Court's directive.

Only six custodians from the current presidential administration, including one who is no longer a Republic official, have invoked protections under Argentine law against disclosure of the communications in question and declined to cooperate. Plaintiffs specifically take issue with Luis Caputo and Pablo Quirno Magrane's

Hon. Loretta A. Preska
December 8, 2025
Page 4

decisions not to turn over their personal devices, but Plaintiffs ignore the fact that the individuals who have agreed to voluntarily provide access to their personal devices include others of the Republic's most senior officials, including the current Secretary of the Treasury (Carlos Jorge Guberman) and former Chiefs of Cabinet (Guillermo Alberto Francos and Nicolás Posse).  The Republic is not in "defiance" of the Court's order because some officials exercised their legal rights under Argentine law not to produce their off-channel communications.[1]  As to the former officials who have not yet responded, the Republic is continuing to try to obtain access to their personal devices.  As is obvious, coordinating with former officials is more challenging.

Plaintiffs know full well that the "alter ego" discovery is ultimately a fruitless exercise.  Courts, including those within the Second Circuit and the Second Circuit itself, have already held that these exact entities are *not* alter egos of the Republic[2]—*i.e.*, entities for which "the sovereign state exercises significant and repeated control over [their] day-to-day operations."  *EM*, 800 F.3d at 91; *see also Transamerica Leasing, Inc.* v. *La Republica de Venezuela*, 200 F.3d 843, 848-49 (D.C. Cir. 2000) ("control" by Venezuela over the purported alter-ego entity must amount to "complete domination").  Plaintiffs say they are pursuing the hypothesis that the Republic's relationship with these entities has changed such that these entities have somehow *become* alter egos of the Republic since courts held the opposite—under a libertarian president, no less.  The record belies this theory.  In addition to the substantial e-mail production the Republic has already made on these issues, the

---

[1] Plaintiffs notably continue to refuse to seek to obtain an order from an Argentine court via the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

[2] *See NML Cap., Ltd.* v. *The Republic of Argentina*, 2015 WL 7731779, at *4 (N.D. Cal. Dec. 1, 2015) (YPF); *EM Ltd.* v. *Banco Central de la República Argentina*, 800 F.3d 78, 94-95 (2d Cir. 2015) (BCRA); *Seijas* v. *Republic of Argentina*, 502 F. App'x 19, 22 (2d Cir. 2012) (BNA); *NML Cap., Ltd.* v. *Republic of Argentina*, 892 F. Supp. 2d 530, 533 (S.D.N.Y. 2012) (Griesa, J.) (ENARSA); *see also Seijas* v. *Republic of Argentina*, 2009 WL 10700009, at *2 (S.D.N.Y. Aug. 19, 2009) (Griesa, J.) (AA); *accord Hercaire Int'l, Inc.* v. *Argentina*, 821 F.2d 559, 565 (11th Cir. 1987) (same).

Hon. Loretta A. Preska
December 8, 2025
Page 5

personal communications the Republic has produced confirm that the Republic by no means "dominates" these private companies.



Plaintiffs' extensive "alter-ego" discovery from third parties has also come up short.  Plaintiffs have subpoenaed (1) YPF, which has produced custodial documents from *18* of its most senior officials; (2) BNA, which has produced spreadsheets detailing the Republic's transactions with the bank; and (3) dozens of financial institutions, seeking *inter alia* documents and communications to support their alter-ego theories.  Plaintiffs have not identified a single document in these productions that supports those far-fetched theories.

Finally, Plaintiffs' complaint that "the Republic has yet to produce any internal communications (*i.e.*, off-channel communications among Republic personnel only)" is baseless.  The Republic has in fact produced such communications where identified on personal devices and will continue to do so.

To the extent Plaintiffs protest that the parties have not yet agreed to search terms for searching custodians' government emails, that is because of Plaintiffs' refusal to accept reasonable search terms to identify potentially responsive documents.  The Republic put forward its search term proposal on November 7. Plaintiffs provided a counterproposal on November 21.  The Republic responded to Plaintiffs' counterproposal on December 8, agreeing to additional terms proposed by Plaintiffs.  In light of this history, the Republic expects that the parties will ultimately reach agreement on search terms during the meet-and-confer process.  But in any event, the Republic's objections to Plaintiffs' overbroad search terms, which are unrelated to the purpose of this discovery process, are well founded.  For example, Plaintiffs proposed the term "Titan / Titan Consortium 1 LLC" for BCRA discovery, which pertains to an action to enforce an arbitral award obtained in connection with

Hon. Loretta A. Preska
December 8, 2025
Page 6

Argentina's expropriation of two airlines. This unrelated action against the Republic has no relevance to an alter-ego inquiry as to BCRA.[3]

### B. Other Discovery Issues

**Plaintiffs' Position:**

The Republic's continued delay extends beyond off-channel communications. Nearly three months ago, the Republic asked the ministries to search databases for responsive information regarding certain assets in Argentina (JSR at 10-17). *See* Sept. 4 Hr'g Tr. at 7:13-23. Since then, Plaintiffs received one production of approximately 10 files and two short appendices, and a second production of two additional files today, December 8, 2025. The Republic appears to represent herein that, as of December 8, 2025, its production is purportedly "substantially complete[]."

Additionally, in prior communications with the Republic and at the November 4, 2025 conference, Plaintiffs raised concerns regarding the Republic's production of SWIFT messages, some of which are unreadable. Nov. 4 Hr'g Tr. at 35:14-36:17. Given that the Republic was unable to address this issue at the conference, the Court directed that we further confer. Nov. 4 Hr'g Tr. at 36:5-17. On November 21, 2025, Plaintiffs requested the re-production of certain SWIFT messages and further requested that the Republic produce searchable PDF or excel files of SWIFT messages on a going-forward basis. Ex. F (Pls. Nov. 21 Letter) at 4. The Republic has not reproduced SWIFT messages, and represented on December 8, 2025 that it "is not willing to duplicate" searches in order to ensure that future productions of

---

[3] The Republic has not applied search terms to most custodians' personal communications but instead has reviewed all collected communications. For the two custodians who permitted the Republic to collect all of their personal data from applications containing potentially responsive communications, the Republic used the broadest possible search terms (*e.g.*, "YPF" and iterations thereof) and reviewed full chat threads that contain even a single hit.

Hon. Loretta A. Preska
December 8, 2025
Page 7

SWIFT messages do not suffer the same problems. Ex. G (ROA Dec. 8 Letter) at 4. The Republic should be directed to provide this information by December 16, 2025.

**Republic's Position:**

The Republic has previously explained to Plaintiffs that (i) the burdens of searching for information about "every debt, commercial transaction, moveable asset, letter of credit, and escrow account of a foreign sovereign in its own territory worth more than $1 million . . . are staggering and obvious," and (ii) that such searches would "likely consume thousands of hours of time of busy government officials." (*Petersen* ECF No. 763 at 13-14.)  It therefore should come as no surprise to Plaintiffs that this process—which has indeed been burdensome and thus far consumed at least thousands of hours of time of dozens of government officials—has taken months.  This is not a result of "delay," as Plaintiffs claim, but rather because this is a complex and difficult project.  Nevertheless, the Republic has substantially completed this production as of December 8, 2025.  While Plaintiffs complain about the size of the Republic's productions, the fact is that the Republic has not identified, for instance, government-owned movable assets (*e.g.*, computer systems, art, furniture) in Argentina valued at over US $1 million.  Neither has the Republic identified instruments like escrow accounts or letters of credit, which are not commonly used in Argentina.  For other searches, the Republic has produced the materials resulting from its searches and identified publicly available databases.  None of this signals a deficiency in the Republic's productions.

With respect to SWIFT messages, the Republic has produced tens of thousands of SWIFT messages.  To collect SWIFT messages, the Republic asked each ministry and secretariat that owns a financial account to request SWIFT messages from the financial institution at which each account is held.  That process is completed as to SWIFTs from the Republic's accounts outside of Argentina and well underway for SWIFTs from the Republic's Argentine accounts: a collection of such SWIFTs has already been produced to Plaintiffs and review of additional SWIFTs is underway.

Plaintiffs complain that about a dozen SWIFT messages that have been obtained from third party financial institutions and then produced to them have been "unreadable."  The Republic met and conferred with Plaintiffs on November 14, 2025 about this issue to inquire as to Plaintiffs' preferred format and agreed to look into potential solutions.  The Republic is in the process of exploring what might be possible in terms of improving the quality of the previously produced SWIFTs that

Hon. Loretta A. Preska
December 8, 2025
Page 8

Plaintiffs have identified as unsearchable and requesting a particular format for future productions to allay Plaintiffs' concerns.

The Republic is working expeditiously to resolve these matters, but because these collections involve third-party financial institutions over which the Republic exercises no control, a Court-ordered deadline for third parties to provide easier-to-read versions of these documents is neither necessary nor appropriate.

### C. Individuals with Knowledge – Information Subpoena Question 31 (JSR at 25-28)

**Plaintiffs' Position:**

Pursuant to the Court's order, the Republic designated seven witnesses—one per topic.  *See* Nov. 4 Hr'g Tr. at 27:25-28:2.  To date, the parties have conducted remote depositions on two topics: (i) financial agreements with China and (ii) concessions and similar agreements, and the searches conducted in response to corresponding requests for production.[4]  The Republic's designees were unprepared to adequately testify about the scope and methods of the Republic's searches, including how or when those searches were conducted, what search instructions were provided, or why certain search locations were selected at the exclusion of others.

These depositions have also confirmed one of Plaintiffs' core purposes for seeking depositions and a longstanding concern: that substantial gaps exist in the Republic's document productions, including, for example, documents concerning the currency swap agreement between Argentina and China.  Further, despite the Republic's previous repeated representations that it had "no further information to provide" concerning its agreements with China, *see, e.g.,* Dkt. 737-3 at 6, the Republic produced—on the eve of the deposition—more than 2,000 pages of documents.  After the Republic's witness testified these documents had been identified for a "long time," the Republic sought to undermine its own witness by eliciting testimony that the Republic's internal and external counsel had only

---

[4] The noticed topics specifically included a sub-topic that covered "the search for such [information] in response to Plaintiffs' discovery requests."  Dkt. 808-7.

Hon. Loretta A. Preska
December 8, 2025
Page 9

recently been made aware of the documents. This further confirms Plaintiffs' concerns that the Republic is delaying or not producing responsive materials.

If the Republic does not promptly agree to address these issues, which it appears the Republic may not be willing to do based on its response herein, Plaintiffs intend to move to compel and provide the Court with a complete record.

**Republic's Position:**

Again, no good deed goes unpunished. At Plaintiffs' insistence, the Republic designated seven government officials as Rule 30(b)(6) witnesses on their seven individual topics. Once again, this has been a substantial undertaking by the Republic, requiring coordination with high-level officials across various ministries. Plaintiffs' complaints about the two depositions they have taken thus far (over approximately 7 record hours) are baseless.

The Court should reject Plaintiffs' assertion that the Republic's designees on (1) financial agreements with China (Matías Mana), and (2) concession agreements (Mariano Palacios) were unprepared or identified gaps in discovery. To the contrary, Plaintiffs' conduct during the course of these depositions—including their abusive demands to "suspend" the depositions while "hold[ing]" them "open"—confirm Plaintiffs are simply using these depositions as a pressure tactic and not in the service of obtaining any relevant evidence. The Court should make clear that the two depositions Plaintiffs have already taken are closed and advise Plaintiffs to conduct future depositions in good faith, including by identifying in advance any questions they have about the scope of the Republic's searches or the documents produced. *See Winfield* v. *City of New York*, 2018 WL 840085, at *5-6 (S.D.N.Y. Feb. 12, 2018) (Parker, M.J) (describing that a requesting party's onus to specify a Rule 30(b)(6) topic with "reasonable particularity" is heightened for topics regarding "discovery on discovery").

**The Republic's Witnesses Were Prepared.** Start with Mr. Mana, the Republic's witness on its "financial agreements with China" and the accounts related to those agreements. Mr. Mana is the Undersecretary of International Financial Relationships within the Financial Secretariat of the Ministry of Economy, a role he has held since January 2024, and served from June 2017 to January 2024 as the

Hon. Loretta A. Preska
December 8, 2025
Page 10

Director of Project Financing for Bilateral Projects in various other secretariats.[5]  In other words, Mr. Mana's role for many years has been to negotiate the very financial agreements that were the subject of Mr. Mana's deposition.  The Republic offered the person in the Argentine government with the most extensive individual knowledge of the Republic's agreements with China—as reflected in his testimony.

Plaintiffs' complaint is that Mr. Mana was not prepared to testify "about the scope and methods of the Republic's searches," but that accusation is belied by the record.  The entirety of Plaintiffs' inquiry into "searches" during Mr. Mana's deposition consisted of two lines of questioning: (1) whether Mr. Mana (or his office) had searched for responsive agreements outside of the Ministry of Economy, and (2) whether he was aware of searches conducted by other ministries.  Mr. Mana provided detailed testimony in response to these questions, explaining that his undersecretariat is the only entity authorized to manage bilateral financing and therefore the only entity that could possibly possess responsive documents; that he personally reviewed the Ministry of Economy's digitized historical files back to 2013-2014; and that he learned during preparation for his deposition that the Republic's attorneys separately consulted the Ministry of Foreign Affairs, which confirmed that no additional financial agreements with China (other than the four previously identified by the Republic) exist.  Mr. Mana explained in detail why the other accords or minutes Plaintiffs questioned him about—the Belt and Road Initiative and the Dialogue for Economic Cooperation and Coordination—are not financial agreements between the Republic and China.  Given his expertise, Mr. Mana nevertheless answered questions about them (and the underlying documents are easily available at https://tratados.cancilleria.gob.ar/).

The story for Mr. Palacios is nearly the same.  His topic was the Republic's concession or similar agreements regarding energy, natural resources, or public infrastructure with foreign companies or subsidiaries of foreign companies and searches thereof.  As the Legal Advisor to the Secretary of Energy, as well as an expert in administrative law who specializes in government concessions, Mr. Palacios was prepared to address these topics in detail.  He also provided complete testimony regarding the Republic's search for concession agreements, all of which are granted through a decree from the Executive or a resolution from the relevant ministry, secretariat, or other authority, and thus can be found on publicly available government websites.  He explained that this search was led by Republic

---

[5] The structure and reporting relationships within the Argentine central government have evolved over time with successive presidential administrations.

Hon. Loretta A. Preska
December 8, 2025
Page 11

attorneys who searched for the concessions on these public government websites and also consulted with relevant government offices, including the Secretariat of Energy, the National Agency of Ports and Navigation, the Regulatory Body for the National Airport System, and the National Highway Administration to assess whether additional concession agreements could be responsive. The questions Mr. Palacios could not answer went far beyond reasonable deposition questioning: which individual government lawyers made the consultations above, on what dates, to which individuals at each ministry, etc. *See Blackrock Allocation Target Shares: Series S Portfolio* v. *Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9400671, at *2 (S.D.N.Y. Apr. 27, 2017) (Netburn, M.J.) ("Rule 30(b)(6) deposition should not be a 'memory contest' of topics better suited to a written response or a supplemental document production" (citation omitted)). Plaintiffs focused in particular on which "systems" at each ministry were searched for documents, which was a red herring because, as Mr. Palacios made clear, there was no need to search ministry systems for agreements that are universally available on public websites.

In sum, both Mr. Mana and Mr. Palacios were more than adequately prepared for their depositions. *See Huber* v. *Arck Credit Co., LLC*, 2016 WL 482955 at *5 (S.D.N.Y. Feb. 5, 2016) (Furman, J.) (in post-judgment posture, deponent was adequately prepared where she was "familiar with the procedures, policies, and reports of the two organizations," even though "she did not know" the location of certain assets and was unfamiliar with certain documents); *see also First Hill Partners, LLC* v. *BlueCrest Cap. Mgmt. Ltd.*, 2015 WL 13885012, at *2 (S.D.N.Y. July 7, 2015) (Sullivan, J.) (Rule 30(b)(6) deponent was adequately prepared where she "spent several hours to review the relevant documents," even if she did not "speak with or review the files of former . . . employee[s] or other individuals involved in" the transaction at issue). The Court should make clear that these depositions are closed, and that further abusive refusals by Plaintiffs to close the 30(b)(6) depositions of witnesses will not be countenanced.

**The Depositions Revealed No Gaps in Document Productions.** Plaintiffs' suggestion that the depositions revealed "substantial gaps" in the Republic's production of financial agreements with China is likewise wrong. Far from suggesting that additional documents within the Republic's possession existed, Mr. Mana repeatedly confirmed that the Republic was not involved in negotiation of swap terms, that it would be "impossible" for him to access the agreement, and that no official of the national administration can access BCRA's documents. Mr. Mana was also personally present at the meeting that Plaintiffs insist involved Republic officials discussing the swap agreement and confirmed that such was not true.

Hon. Loretta A. Preska
December 8, 2025
Page 12

Further, the roughly 2,000 pages produced shortly before the deposition did not consist of newly identified agreements with China. Rather, they consisted of ancillary or background materials relating to the financial agreements the Republic had already produced—such as side letters referenced within those agreements and amendments thereto. Approximately 350 pages were merely execution versions of documents previously produced. And the bulk of the production, approximately 1,721 pages, was a railway construction contract funded by one of the previously produced financial agreements with China, not a financial agreement. The Republic had no choice as to the timing of these productions, which it made immediately after learning that the witness or his team considered those documents in preparing for the deposition. Plaintiffs' own questioning only confirmed that no additional agreements exist: when asked directly whether *any* projects were signed or executed beyond the four agreements that were produced, Mr. Mana responded "no." And there was zero prejudice to Plaintiffs from the timing of this supplemental production: they did not use a single financial agreement with China as an exhibit to Mr. Mana's deposition or ask him about the terms of any such agreement.[6]

More fundamentally, Plaintiffs' use of these depositions to raise for the first time supposed gaps in document productions should be stopped. Document discovery has been going on for two years, and the parties have met and conferred dozens of times and exchanged dozens of letters. If Plaintiffs believe that particular categories of responsive documents have been missed, they should write a letter or pick up the phone, not try to sandbag senior government officials during depositions.

*       *       *

These frivolous objections appear to be part of Plaintiffs' ongoing harassment strategy—a plan to manufacture endless disputes and baselessly besmirch the Republic. The Republic spent significant time and effort preparing its witnesses—all of whom are senior government officials—to sit for depositions, and Plaintiffs

---

[6] Plaintiffs' claim that the Republic intentionally withheld these documents is also false. Plaintiffs' assertion is based entirely on Mr. Mana's statement (via translation) that the documents had been "identified for a 'long time.'" With no break in testimony, Mr. Mana immediately clarified that while he had previously known about the *existence* of those documents, his office, the Undersecretariat for International Financial Relationships, had transmitted the documents to internal and external counsel of the Republic the day of or the weekend before the production was made while preparing for the deposition.

Hon. Loretta A. Preska
December 8, 2025
Page 13

did not show them a single substantive document or ask a single substantive question.  Instead, they chose to spend their time asking about irrelevant issues (*e.g.*, the witnesses' use of WhatsApp) and raising completely new complaints about the Republic's years-old document productions.  Plaintiffs should be warned to stop this behavior in future depositions.

                              Respectfully Submitted,


/s/ Seth L. Levine                              /s/ Robert J. Giuffra Jr.
Seth L. Levine                                  Robert J. Giuffra Jr.
Alison M. Bonelli                               Sergio J. Galvis
                                                Amanda F. Davidoff
LEVINE LEE LLP                                  Thomas C. White
400 Madison Avenue                              Adam R. Brebner
New York, New York 10017
Telephone: (212) 257-4400                       SULLIVAN & CROMWELL LLP
slevine@levinelee.com                           125 Broad Street
abonelli@levinelee.com                          New York, New York  10004-
                                                2498
KING & SPALDING LLP                             Telephone:   (212) 558-4000
Laura Harris                                     Facsimile:   (212) 558-3588
1185 Avenue of the Americas                     giuffrar@sullcrom.com
New York, NY 10036                              galviss@sullcrom.com
Phone: (212) 556-2100                            davidoffa@sullcrom.com
Fax: (212) 556-2222                              whitet@sullcrom.com
Email: lharris@kslaw.com                        brebnera@sullcrom.com

 -and-                                          *Counsel for the Argentine Republic*

Reginald R. Smith
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Phone: (713) 751-3200
Email: rsmith@kslaw.com

KELLOGG, HANSEN, TODD, FIGEL

Hon. Loretta A. Preska
December 8, 2025
Page 14

& FREDERICK, P.L.L.C.
Andrew E. Goldsmith
Alejandra Ávila
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
agoldsmith@kellogghansen.com
aavila@kellogghansen.com

*Counsel for Plaintiffs Petersen Energía*
*Inversora, S.A.U., Petersen Energía, S.A.U.,*
*Eton Park Capital Management, L.P., Eton*
*Park Master Fund, Ltd., and Eton Park Fund, L.P.*