UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGIA INVERSORA, S.A.U. ET AL., <br><br> Plaintiff, <br><br> -against- <br><br> ARGENTINE REPUBLIC ET AL., <br><br> Defendants. | No. 15 Civ. 02739 (LAP) <br><br> MEMORANDUM AND ORDER |
| ETON PARK CAPITAL MANAGEMENT L.P. ET AL., <br><br> Plaintiff, <br><br> -against- <br><br> ARGENTINE REPUBLIC ET AL., <br><br> Defendants. | No. 16 Civ. 08569 (LAP) <br><br> MEMORANDUM AND ORDER |

LORETTA A. PRESKA, Senior United States District Judge:[1]

The Court is in receipt of nonparty YPF S.A.'s ("YPF") pre-motion letter seeking to extend the Court's existing stay of alter ego discovery pending YPF's interlocutory appeal.[2] For the reasons

---

[1] References to the docket refer to the lead case, Petersen Energia Inversora, S.A.U. et al. v. Argentine Republic et al., No. 15 Civ. 02739.

[2] See YPF Letter Motion, dated Nov. 18, 2025 [Dkt. No. 837]; Plaintiffs' Opposition to YPF Letter Motion, dated Nov. 21, 2025 [Dkt. No. 840]; YPF Reply to Plaintiffs' Letter Opposition, dated Nov. 24, 2025 [Dkt. No. 841].)

set forth below, the Court GRANTS YPF's request and stays alter ego discovery pending YPF's appeal.

## I.  Background

The Court assumes familiarity with the procedural history of this case and only addresses those aspects that are relevant to YPF's request.

On September 17, 2025, the Court issued an order (the "September Order") denying YPF's requested orders to show cause, through which YPF sought to intervene in post-judgment proceedings and enjoin Plaintiffs from pursuing YPF assets on the theory that YPF is an alter ego of the Argentine Republic.  Petersen, 2025 WL 2675848 (S.D.N.Y. Sept. 17, 2025).  On October 1, 2025, YPF moved for reconsideration of the September Order.  (Dkt. No. 803.)

YPF advanced several arguments in its proposed order to show cause and reconsideration motion.  The only argument applicable to this decision, however, relates to YPF's claim of sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq.  Specifically, YPF argued that the Court may not exercise ancillary jurisdiction over YPF to the extent that Plaintiffs pursue YPF's assets on the theory that YPF is merely an alter ego of the Republic.  In YPF's view, the Court of Appeals' decision in Peterson v. Bank Markazi, 121 F.4th 983 (2d Cir. 2024) requires Plaintiffs to establish an independent basis for subject matter jurisdiction over "any putative alter ego claim against YPF

before pursuing any further actions in support of such a claim, including discovery from YPF." (Dkt. No. 803 at 15.) Because, according to YPF, YPF is an instrumentality of a foreign state, (id. at 13), subject matter jurisdiction over YPF "must arise – if at all – pursuant to one of the limited immunity exceptions in the FSIA." (Id. at 11.) In the absence of an identified FSIA exception, YPF maintains that it is "presumptively immun[e] . . . 'from the jurisdiction of the courts of the United States'," including with respect to any alter ego discovery sought by Plaintiffs. (Id. at 12) (quoting 28 U.S.C. § 1604).

While YPF's reconsideration motion was pending, YPF asked the Court to stay alter ego discovery pending resolution of YPF's reconsideration motion and "extend the stay until the issue can be resolved by the Second Circuit" if the Court denied reconsideration. (Oct. 16, 2025 Tr. 13:14-22.) In seeking an extended stay, YPF represented that YPF would seek an accelerated hearing before the Court of Appeals if the Court denied reconsideration. (Id.) On the record before it, the Court granted YPF's request to stay alter ego discovery. (Id. at 34:17-35:5.)

After granting the stay, on November 10, 2025, the Court denied YPF's motion for reconsideration (the "Reconsideration Decision"). See Petersen, 2025 WL 3136573, at *1 (S.D.N.Y. Nov. 10, 2025). The Reconsideration Decision held that Bank Markazi did not preclude the Court from exercising ancillary jurisdiction

over YPF in post-judgment proceedings brought against the Republic, id. at *2-3, meaning that Plaintiffs need not establish an independent basis for subject matter jurisdiction as to YPF under the FSIA.  In so holding, the Court rejected YPF's claim of jurisdictional immunity under the FSIA.  YPF subsequently appealed both the September Order and the Reconsideration Decision.  (Dkt. No. 836.)[3]

Following its appeal, YPF filed the instant letter seeking to extend the stay of alter ego discovery pending YPF's interlocutory appeal.  (Dkt. No. 837.)  Plaintiffs oppose any such stay.  (Dkt. No. 840.)

## II.   Applicable Law

It is well-settled that the "filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed."  Carroll v. Trump, 88 F.4th 418, 433 (2d Cir. 2023).  This judge-made "divestiture" rule is designed to "avoid confusion or waste of time by having the same issues before two courts at the same time."  Id.  Accordingly,

---

[3] YPF has moved for expedited briefing in the Court of Appeals to resolve "two distinct threshold issues – res judicata and subject matter jurisdiction under the FSIA - either of which, in YPF's view, would bar Plaintiffs from continuing to pursue their alter` ego theory" in seeking to enforce Plaintiffs' judgment against the Republic.  Unopposed Motion to Expedite at 5, Petersen Energia Inversora v. Argentine Republic, No. 25-2629 (2d Cir Nov. 17, 2025), Dkt. No. 24.1.

application of the divestiture rule "is guided by concerns of efficiency and is not automatic."  Id.

The parties disagree, however, as to how the divestiture rule should be applied to YPF's instant interlocutory appeal.  YPF submits that this Court's "denial of [FSIA] immunity is . . . now on appeal before the Second Circuit, divesting this Court of jurisdiction and entitling YPF to a stay" under the divestiture rule.  (Dkt. No. 837 at 2) (emphasis added).  YPF alternatively argues that the Court should exercise its discretion to order a stay pursuant to the traditional factors set forth in Nken v. Holder, 556 U.S. 418, 434 (2009).  (Dkt. No. 837 at 2.)

Plaintiffs, in turn, submit that YPF's appeal does not trigger an automatic stay.  To that end, Plaintiffs offer In re World Trade Center Disaster Site Litigation, 503 F.3d 167, 170 (2d Cir. 2007) as "binding authority" for the proposition that "there [is] no automatic stay pending interlocutory appeal" and that the Court should evaluate YPF's motion solely under the traditional four-factor discretionary stay test.  (Dkt. No. 840 at 2.)

## A. Whether World Trade Center Is Controlling

As a threshold matter, Plaintiffs are wrong in arguing that the Court of Appeals' precedent in World Trade Center is "binding authority" and forecloses automatic stays during interlocutory appeals of FSIA immunity.  As other courts have noted, the relevant

5

portion of the <u>World Trade Center</u> opinion cited by Plaintiffs addressed a stay issued by the <u>Court of Appeals</u>, not the District Court.[4]  In fact, because the <u>World Trade Center</u> panel ultimately "restor[ed]" the district court's jurisdiction, 503 F.3d at 171, the decision arguably confirmed that the district court initially <u>lacked</u> jurisdiction pending the initial appeal of the immunity denial.  It is therefore unsurprising that at least one court in this Circuit has read <u>World Trade Center</u> to endorse the very opposite of what Plaintiffs represent it to hold.  See <u>New York v. Locke</u>, 2009 WL 2413463, at *3 (E.D.N.Y. Aug. 3, 2009) ("While the Second Circuit has not explicitly adopted the dual jurisdiction rule, it held in the <u>World Trade Center</u> litigation that the pursuit of an interlocutory appeal based upon a sovereign immunity defense deprived the district court of jurisdiction over the appealing defendant pending the appeal."). Far from constituting "binding authority" in Plaintiffs' favor, <u>World Trade Center</u> in fact undermines Plaintiffs' case against an automatic stay.

---

[4] See <u>Doe v. Comm'r, New Hampshire Dep't of Health & Hum. Servs.</u>, 2021 WL 863448, at *2 (D.N.H. Mar. 8, 2021) (noting that the <u>World Trade Center</u> court "decided to vacate its stay order and remand the case to the district court, which restored the district court's jurisdiction over the case" and that the "issue and analysis in World Trade is inapposite" to whether an automatic stay is triggered in district court pending an interlocutory appeal).

**B. Nonparty Interlocutory Appeals of Foreign Sovereign Immunity**

The parties have not cited, and the Court has not independently located, any case from our Court of Appeals explicitly addressing whether a <u>nonparty</u> appealing an effective denial of jurisdictional immunity under the FSIA is entitled to an automatic stay of proceedings during that nonparty's interlocutory appeal. The Court believes this specific issue to be one of first impression, at least in this Circuit. But the general principles governing interlocutory appeals under the collateral order doctrine lead the Court to conclude that application of the divestiture rule is appropriate here.

The Court begins with the collateral order doctrine. The collateral order doctrine enables a litigant to appeal a "small class of collateral rulings," including certain denials of immunity, "that do not terminate the litigation in the court below but are nonetheless sufficiently final and distinct from the merits to be appealable without waiting for a final judgment to be entered." <u>EM Ltd. v. Banco Cent. De La Republica Argentina</u>, 800 F.3d 78, 87 (2d Cir. 2015) (internal quotation marks and citations omitted). Our Court of Appeals has "consistently held" that a "threshold sovereign-immunity determination is immediately reviewable under the collateral-order doctrine," in part because "an appeal from final judgment cannot repair the damage caused to a sovereign that is improperly required to litigate a case." <u>Id.</u>

When an appeal is noticed pursuant to the collateral order
doctrine, the general rule is that "because the issues raised in
such appeals are separate from the merits of the underlying
litigation, appeals under the collateral order doctrine do not
generally divest the district court of jurisdiction over issues
not under consideration in the appeal."  City of New York v.
Beretta U.S.A. Corp., 234 F.R.D. 46, 50 (E.D.N.Y. 2006) (Weinstein,
J.).  But "where the very right sought to be protected by the early
appeal—namely, the right not to be tried—could be lost before the
appeal itself is resolved, the district court should not retain
the same authority over the litigation that it generally would
during other kinds of interlocutory appeal."  Id.  Instead, when
an appellant asserts immunity from litigation, the district court
is generally divested of jurisdiction altogether, so long as the
district court does not certify the appeal as "frivolous."  See
Carroll v. Trump, 687 F. Supp. 3d 394, 404 n.24 (S.D.N.Y. 2023)
("[C]ourts in this Circuit have adopted the principle . . . that
unless an appeal is frivolous, 'a district court is divested of
jurisdiction immediately upon the filing of a request for
interlocutory review under the collateral order doctrine . . . in
cases respecting a right not to be tried, such as . . . foreign
sovereign immunity . . . .'") (citation omitted) (emphases added);
see also Davis v. City of New York, No. 12 CIV. 3297 (PGG), 2018
WL 10070503, at *1 (S.D.N.Y. Dec. 14, 2018) (collecting cases).

8

While our Court of Appeals has not reached the issue, its sister Courts of Appeal have held that a defendant's appeal of a denial of foreign sovereign immunity typically divests the district court of jurisdiction over the entire case pending appeal. See Ungar v. Palestine Liberation Org., 402 F.3d 274, 293 (1st Cir. 2005) (appeal of denial of immunity under the FSIA "ordinarily divests the district court of jurisdiction to proceed with the litigation pending its resolution"); Princz v. Fed. Republic of Germany, 998 F.2d 1, 1 (D.C. Cir. 1993) (where defendant appealed foreign sovereign immunity denial, "exclusive jurisdiction to resolve the threshold issue this case presents vests in this court, and the district court may not proceed to trial until the appeal is resolved").

## III. Discussion

### A. Divestiture of Jurisdiction

These cases typically involve defendants' appealing denials of sovereign immunity at the motion to dismiss or summary judgment stages.  They do not resolve, however, whether an appeal by YPF, in its capacity as a nonparty, should trigger the divestiture rule. But in the Court's view, the same rationale for applying the divestiture rule applies here.

The crux of YPF's immunity argument is that Bank Markazi bars this Court from exercising ancillary jurisdiction over Plaintiffs'

post-judgment pursuit of YPF assets on an alter ego theory.  In the absence of ancillary jurisdiction, YPF asserts that it is entitled to jurisdictional immunity under the FSIA.  (Dkt. No. 803 at 11.)  The Court, of course, has rejected this reading of Bank Markazi and concluded that Bank Markazi only forecloses ancillary jurisdiction where a plaintiff brings a new claim for liability against a third party in post-judgment proceedings.  Because Plaintiffs' alter ego theory of post-judgment collection from YPF "is not a cause of action for liability but rather responsibility for the Republic's judgment," Petersen, 2025 WL 2675848, at *4, the Court remains of the view that Bank Markazi does not require an independent basis for subject matter jurisdiction under the FSIA.

That said, while YPF's argument is at odds with this Court's prior findings and the Court of Appeals' decision in Bank Markazi, it cannot be said to be frivolous.  And in the unlikely event that the Court of Appeals were to reverse this Court's decision, ongoing alter ego discovery could moot YPF's purported "immunity from trial and the attendant burdens of litigation" under the FSIA.  See Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748, 756 (2d Cir. 1998); see also Rubin v. Islamic Republic of Iran, 637 F.3d 783, 795 (7th Cir. 2011) ("[I]t is widely recognized that the FSIA's immunity provisions aim to protect foreign sovereigns from the burdens of litigation, including the cost and aggravation of

discovery.").  Accordingly, the Court agrees that, as a general matter, "a district court properly stays litigation, including discovery, pending appeal of a denial of sovereign immunity . . . ."  Licea v. Curacao Drydock Co., 870 F. Supp. 2d 1360, 1366 (S.D. Fla. 2012); see also Azima v. RAK Inv. Auth., 2018 WL 7982473, at *2 (D.D.C. Nov. 5, 2018) (Jackson, J.) (finding that court lacked ability to compel third parties to preserve evidence "[b]ecause the pending appeal involves the threshold issue of foreign sovereign immunity [and] RAKIA's appeal has divested this Court of jurisdiction over the entire case [against RAKIA].").

In sum, even if YPF may be wrong on the merits of its appeal, YPF is entitled to appeal this Court's decision.  The divestiture rule is appropriate to apply where, as here, concurrent litigation and discovery would risk mooting a non-frivolous claim of jurisdictional immunity.  The Court therefore finds that it is divested of jurisdiction as to alter ego discovery against YPF pending YPF's appeal of the September Order and Reconsideration Decision and that YPF is entitled to an automatic stay accordingly.

## B. Discretionary Stay

Even if the Court retained jurisdiction over alter ego proceedings against YPF, the Court would still find that a discretionary stay of alter ego discovery is appropriate.  Courts

consider four factors when assessing a motion for a stay pending appeal: "(1) the [movant's] 'strong showing that he is likely to succeed on the merits,' (2) irreparable injury to the [movant] in the absence of a stay, (3) irreparable injury to the nonmoving part if a stay is issued, and (4) the public interest." New York v. United States Dep't of Homeland Sec., 974 F.3d 210, 214 (2d Cir. 2020) (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)). The Court concludes that all four factors support a stay.

First, even if the Court is doubtful of YPF's chances of prevailing on appeal, the Court is mindful that a litigant seeking a discretionary stay "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." In re 650 Fifth Ave. & Related Props., No. 08 CIV. 10934 (LAP), 2020 WL 3000382, at *2 (S.D.N.Y. June 4, 2020) (internal quotation marks omitted). The issues raised by YPF are certainly "novel" and "arguably present 'serious questions' going to the merits of the dispute" raised by YPF. See New York Times Co. v. Dep't of Health & Hum. Servs., No. 20 CIV. 3063 (GWG), 2021 WL 235138, at *2 (S.D.N.Y. Jan. 25, 2021). And "[w]hatever the Court of Appeals decides on those issues . . . will have a material impact on the buffet of remedies available" in post-judgment proceedings. 650 Fifth Avenue, 2020 WL 3000382, at *2. The first factor therefore favors a stay.

With respect to irreparable harm, the Court finds that if YPF is compelled to produce documents pursuant to subject matter jurisdiction that is later overturned, YPF will suffer some degree of irreparable harm because "an appeal . . . cannot repair the damage caused to a sovereign that is improperly required to litigate a case." EM Ltd., 800 F.3d at 87. Again, while the Court deems it unlikely that YPF will prevail in its argument of jurisdictional immunity, the Court is mindful that a reversal from the Court of Appeals would not put the cat back in the metaphorical bag. That, too, favors a stay.

As to prejudice to other parties, the Court does not discount that a stay will incur some prejudice to Plaintiffs, who have been diligently attempting to collect on their judgment against the Republic for years. But that prejudice is mitigated by the fact that YPF has abided by its promise to seek an expedited appeal. And in contrast to the tactics employed by the Republic in this litigation, there is no indication to the Court that YPF's appeal is mere gamesmanship intended to delay collection.

Finally, the public interest will be served by a stay. A stay avoids the inefficiency of concurrent litigations and minimizes the likelihood that YPF will need to file additional appeals before the Court of Appeals issues its mandate. And, notwithstanding the Court's disagreement with YPF's theory of jurisdictional immunity, a stay promotes the foreign relations

13

objectives behind the FSIA.  Even where a purported sovereign's claims of immunity are ultimately without merit, the public interest will be served by minimizing the litigation burdens on a purported sovereign instrumentality until the threshold issue of jurisdictional immunity is decided by the Court of Appeals.

## IV.    Conclusion

For the foregoing reasons, YPF's motion to continue the stay of alter ego discovery pending resolution of its interlocutory appeal is GRANTED.  The Clerk of the Court shall close Dkt. No. 837.

**SO ORDERED.**

_Loretta A. Preska_
_____
Loretta A. Preska
Senior United States District Judge

December 23, 2025

14