# EXHIBIT C



Judicial Branch of the Nation

# FEDERAL COURT OF APPEALS ON
# ADMINISTRATIVE LITIGATION - DIVISION V

15185/2024

BANCARIA SOCIEDAD DE EMPLEADOS DE BANCO ASOCIACION CIVIL
v. BCRA - LAW 27275 on ACTION FOR CONSTITUTIONAL PROTECTION
LAW 16.986

Buenos Aires, date of electronic signature.

**WHEREAS:**

**I.-** That by means of the ruling on page 237 (see digital records, which will be referred to hereinafter), the judge of the previous instance rejected the action for constitutional protection filed against the Central Bank of the Argentine Republic, seeking the revocation of Resolution RESOL-2024-13-E-GDEBCRA-GG#BCRA; and consequently, that the obligated party be ordered to provide the requested information within the framework of Law No. 27,275, which regulates the right of access to public information.

In reaching this decision, after reviewing the applicable regulations and the administrative background of the case, he held that in the present case it had not been proven that the defendant, in responding to the plaintiff's request, had acted arbitrarily or manifestly unlawfully, which were invoked as grounds for the claim, but rather that its actions were based on the exercise of its own powers, since it was considered that the requested information fell within the exceptions provided for in Article 8 of Law No. 27,275.

Furthermore, he indicated that the subject matter of this case, as well as the response provided by the defendant, coincided with the arguments debated in the proceedings entitled "Bancaria Sociedad de Empleados de Banco Asociación Civil y otro v. BCRA-Law 27,275 s/ action for constitutional protection law 16,986," number 17414/2024, pending before Court No. 8 of the jurisdiction. He highlighted that, in that case, the trial court judge issued a final ruling rejecting the action brought by the same plaintiff in these proceedings, and considered that the defendant entity had acted within the scope of its legal powers, in the exercise of which it maintained that the information sought fell within the exceptions provided for in Article 8 of Law No. 27,275. In this regard, it was concluded that, in light of the regulations in force, the defendant agency could not be accused of having engaged in conduct that currently or imminently would harm,

restrict, alter or threaten, with manifest arbitrariness or illegality, rights and guarantees recognized by the Constitution, a treaty or a law, which would enable this exceptional remedy.

Finally, with regard to the claim of unconstitutionality of Articles 1, 2, 5 and 6 of Decree No. 780/24 (regulating Law No. 27,275), he noted that "...it is clear from the case file that the plaintiff does not provide a solid argument to challenge the constitutionality of the aforementioned regulation, insofar as a declaration of this nature always constitutes an act of extreme institutional gravity that must be considered the last resort of the legal system." He added that, as pointed out by the Federal Prosecutor, the Central Bank of the Argentine Republic did not apply the aforementioned decree to support its decision, since Resolution RESOL-2024-13-E-GDEBCRA-GG#BCRA was issued on 15 August 2024, while Decree No. 780/24 was issued on 30 August 2024 and published in the Official Gazette on 2 September 2024.

He ordered the losing party to pay costs (Article 14 of Law No. 16,986 and Article 68, first paragraph of the CPCCN).

**II.-** Dissatisfied, the plaintiff appealed based on the lower court errors cited on pages 243/260, which were replied to on pages 263/286.

In its brief, it argued that the defendant merely invoked the confidential nature of the requested information, but without explaining, describing or demonstrating in detail the reasons why its disclosure would compromise the security of the assets of the Central Bank of the Argentine Republic, thereby justifying the refusal under the terms of Article 8 of Law No. 27,275. It also stated that the defendant did not explain the hypothetical risks and damages that the disclosure of the requested information would cause.

Furthermore, it affirmed that the judge of first instance had erred in failing to conduct "...a weighing of the public interest involved in accessing such information or a proportional assessment of the damage, as required by the law itself in its systematic interpretation and in accordance with the guiding criteria approved by the supervisory body".

It also emphasized that "denying access to this information prevents social control over decisions that have a direct impact on the national economy, the value of the currency, financial policy, institutional credibility, citizen control of management, and economic sovereignty." On this basis,



Judicial Branch of the Nation

# FEDERAL COURT OF APPEALS ON
# ADMINISTRATIVE LITIGATION - DIVISION V

it argued that "...magistrates are empowered to review the documentation and assess whether the decision to keep it confidential is justified and legitimate in order to prevent, through generic and vague statements, the exercise of the aforementioned right from being violated and the disclosure of information of public interest from being obstructed, as has occurred in this case." It cited case law related to the principles of publicity and transparency in public administration.

It concluded that "...the first instance ruling causes irreparable harm by completely obstructing the exercise of one of the fundamental human rights enshrined in both local and international regulations with constitutional status, in which the State is considered to be the guarantor of the right of access to public information."

Consequently, it requested that the appealed ruling be overturned, with costs, and that the requested public information be provided.

**III.-** On pages 288/300, the Attorney General intervened. In his opinion, he stated that, even though it may be legitimate to withhold information related to the security of assets or the technical approach used to avoid distortions in relevant markets, the fact is that, considering the public acknowledgement by the National Government of the shipment of bullion to a foreign country based on news media information, the total withholding of the requested information was contrary to the principles of transparency, maximum disclosure and good faith (see Article 1 of Law No. 27,275).

In effect, he considered that not all the information requested involved, for example, the disclosure of the geographical location of the physical reserves (an aspect which, as indicated by the technical department of the Central Bank of the Argentine Republic, was linked to their security), therefore it could be argued that the measure adopted does not appear to be proportionate to the interest pursued.

Furthermore, he indicated that the defendant's position did not reveal the reasons for not disclosing the formal context in which the decision to carry out the reserve transfer operation was adopted; nor was it possible to verify the reasons for omitting to identify the administrative file in which the aforementioned decision was processed, as well as the possible notification to the audit

committee of the Central Bank of the Argentine Republic. He emphasized that these points are crucial in terms of controlling the legitimacy of government actions and do not necessarily imply the disclosure of elements that compromise the security of assets or the technical approach applied.

Consequently, without prejudice to the monetary authority's obligation to "dissociate" the information, he considered that "...the defendant was obliged to provide access to all elements of the requested information that were not strictly covered by the exceptions invoked, using redactions to dissociate the information related to asset security and the technical approach applied". He concluded that the total refusal to provide access to the information requested by the plaintiff constituted an unlawful act, the nullity of which should be declared in the proceedings.

**IV.-** At this stage of the proceedings, it is appropriate to examine the appeal filed by the plaintiff.

**IV.1.-** To this end, it is first necessary to review the background of the case. In this regard, the purpose of this action is to request that Resolution RESOL-2024-13-E-GDEBCRA -GG#BCRA be revoked and, consequently, that the Central Bank of the Argentine Republic be ordered to provide the public information requested in the requests filed on 15 July 2024, 29 July 2024 and 5 August 2024, which are attached to pages 3/13, in accordance with Law No. 27,275 on Access to Public Information and its regulatory decree No. 206/17, in effect at that time.

Specifically, in the first request, the plaintiff requested access to the following public information:

"1) Whether there were any shipments of gold bars to a foreign country during the month of June, specifically whether there was a shipment on 7 June 2024 and another on 28 June 2024, and if so, what quantity, for what amount and in what currency, under what commercial or other characteristics, to what destination, and whether the transaction was carried out with the transport company Lumil and shipped by British Airways; if not, indicate the transport company and the airline used. Whether new shipments of gold bars are planned; if so, the purpose of the shipments, type of transaction, and destination.



Judicial Branch of the Nation

# FEDERAL COURT OF APPEALS ON
# ADMINISTRATIVE LITIGATION - DIVISION V

"2) In particular, whether internal and/or external agents have been entrusted with any action regarding the transfer and destination of the gold bars and any other type of assets.

"3) If applicable, indicate the Board, Commission or Committee meeting at which this matter was discussed, the BCRA officials involved (President, Vice-President, Directors, Managers or their representatives, advisers, senior managers, administrators and their replacements). Report on the agenda, the minutes in which the decision was recorded, the matters discussed, the opinions expressed and the actions taken.

"4) If no Board, Commission or Committee meeting was held for this purpose, report the manner and channel in which this matter was discussed, BCRA officials, other National Government officials and/or other persons involved, matters discussed, records, opinions expressed and actions taken in this context.

"5) Whether an administrative file or other type of action has been implemented for the purpose of substantiating and promoting said initiative. If […]so, identify its corresponding number and the areas involved.

"6) On what powers or authorities of the BCRA—as well as any other grounds—was the initiative based.

"7) Whether the BCRA's audit committee has been notified of said initiative. If so, the oversight and control measures it has adopted in this regard once it was made aware of it.

"8) Whether the initiative has been included in a short- and medium-term action plan to be developed by the BCRA. If so, whether said plan has been submitted to the Ministry of Economy. If not, whether the Ministry of Economy has been informed by other means."

Subsequently, in its request dated 29 July 2024, the plaintiff association requested the following public information:

"1) If, before the end of July 2024, you plan to ship gold bars to a foreign country; if so, what quantity, for what amount and in what currency will it be shipped, under what commercial or other characteristics, to what destination, names of the transport company and airline used, amounts paid or to be paid to both. Report

whether insurance was or will be taken out, in which case, report the characteristics of the policies, the name of the insurance company and the amounts paid or to be paid.

"2) In particular, whether internal and/or external agents have been entrusted with any action regarding the transfer and destination of the gold bars and any other type of assets. If so, indicate names.

"3) If applicable, indicate the Board, Commission or Committee meeting at which this matter was discussed, the BCRA officials involved (President, Vice-President, Directors, Managers or their representatives, advisers, senior managers, administrators and/or their replacements). Report the agenda, the minutes in which the decision was recorded, the matters discussed, the opinions expressed and the actions taken.

"4) If no Board, Commission or Committee meeting was held for this purpose, report the manner and channel in which this matter was discussed, BCRA officials, other National Government officials and/or other persons involved, matters discussed, records, opinions expressed and actions taken in this context.

"5) Whether an administrative file or other type of action has been implemented for the purpose of substantiating and promoting said initiative. If so, identify its corresponding number and the areas involved.

"6) On what powers or authorities of the BCRA—as well as any other grounds—was the initiative based.

"7) Whether the BCRA's audit committee has been notified of said initiative. If so, the oversight and control measures it has adopted in this regard once it was made aware of it.

"8) Whether the initiative has been included in a short- and medium-term action plan to be developed by the BCRA. If so, whether said plan has been submitted to the Ministry of Economy. If not, whether the Ministry of Economy has been informed by other means."

Finally, the plaintiff filed another request, dated 5 August 2024, asking for information on:

"1) Whether during the week of 5 August 2024 to 11 August 2024 it plans to send gold bars to a foreign country, and if so, what quantity, for what amount and in what currency will it be shipped, under what



Judicial Branch of the Nation

## FEDERAL COURT OF APPEALS ON
## ADMINISTRATIVE LITIGATION - DIVISION V

commercial or other characteristics, to what destination, names of the transport company and airline used, amounts paid or to be paid to both.

"2) If the shipments exceed one billion (1,000) dollars and the total amount shipped together with the previous ones. Report whether insurance was or will be taken out, in which case, the characteristics of the policies, the name of the insurance company and the amounts paid or to be paid.

"3) In particular, whether internal and/or external agents have been entrusted with any action regarding the transfer and destination of gold bars and all other types of assets. If so, indicate names.

"4) If applicable, indicate the Board, Commission or Committee meeting at which this matter was discussed, the BCRA officials involved (President, Vice-President, Directors, Managers or their representatives, advisers, senior managers, administrators and/or their replacements). Report the agenda, the minutes in which the decision was recorded, the matters discussed, the opinions expressed and the actions taken.

"5) If no Board, Commission or Committee meeting was held for this purpose, report the manner and channel in which this matter was discussed, BCRA officials, other National Government officials and/or other persons involved, matters discussed, records, opinions expressed and actions taken in this context.

"6) Whether an administrative file or other type of action has been implemented for the purpose of substantiating and promoting said initiative. If so, identify its corresponding number and the areas involved.

"7) On what powers or authorities of the BCRA—as well as any other grounds—was the initiative based.

"8) Whether the BCRA's audit committee has been notified of said initiative. If so, the oversight and control measures it has adopted in this regard once it has been made aware of it.

"9) Whether the initiative has been included in a short- and medium-term action plan to be developed by the BCRA. If so, whether said plan has been submitted to the Ministry of Economy. If not, whether the Ministry of Economy has been informed by other means."

In response, the General Manager of the Central Bank of Argentina issued Resolution RESOL-2024-13-E -GDEBCRA-GG#BCRA, providing Mr. Sergio Omar Palazzo with the public information included by the Investment Analysis Department in its report IF-2024-00154750-GDEBCRA -GAI#BCRA; and declared the total confidentiality of the information requested in the requests for access to public information made by Mr. Palazzo on 15 July 2024, 29 July 2024 and 05 August 2024.

In said administrative act, he indicated that "...the competent technical area ruled that, since the requests for access referred to details on specific operations or rebalancing between accounts, disclosing this information would, among other sensitive aspects, allow knowledge of the movements and location of assets that make up the international reserves of this BCRA; its protection and nondisclosure being justified in the preservation of its security." He also stated that "...any data related to the past, present or future geographical location of the respective accounts used by the BCRA for the custody of its reserve assets (including movements to or from them) could jeopardize the security of these assets, with a consequent impact on the support of the monetary and exchange rate policy implemented, the backing of deposits, and the security of the financial system."

In turn, he highlighted that the competent area had emphasized that "...this criterion is consistent with the public interest and the policies implemented over the last 20 years by the BCRA for the preservation of its assets, especially in matters related to the security and safeguarding of its international reserves.[...] to protect, on the one hand, its competitiveness at a given moment with respect to the alternatives available within the applicable regulatory framework; and, on the other hand, the stability of the financial system in general with respect to the movements of the assets that comprise it, given that disclosure of the technical approach of its administrators could generate distortions in relevant markets [...]; concluding that [...] it is understood that, on all the points requested, reference should be made to the above, and it should also be noted that reserve management operations are carried out in accordance with the provisions of the Organic Charter, Law No. 23,928 and the corresponding provisions applicable to the matter".



Judicial Branch of the Nation

# FEDERAL COURT OF APPEALS ON
# ADMINISTRATIVE LITIGATION - DIVISION V

Consequently, he held that the requested information should be declared totally confidential, in accordance with the exceptions provided for in Article 8, paragraphs b) and c) of Law No. 27,275, in accordance with Article c) of Decree No. 206/17.

This is without prejudice to providing the petitioner with the information included by the Investment Analysis Department in its report IF-2024-00154750-GDEBCRA-GAI#BCRA, in which the petitioner was informed that the BCRA's gold holdings could be continuously monitored on the BCRA's website, and that "...the BCRA manages its gold reserves, foreign currency and other foreign assets on a daily basis, in accordance with the provisions of, mainly, Article 4(d) and Article 33 of its Organic Charter (Law No. 24,144, as amended), and the provisions of Law No. 23,928 [Within this framework], the BCRA maintains various alternatives for the concentration and administration of its gold reserves, and these alternatives have not changed."

**IV.2.-** Having reviewed the background information for the case, it should be noted that Law No. 27,275, which regulates the right of access to public information, provides for the use of amparo proceedings to challenge the denial of information in court (Article 14). This is so, by virtue of the rights at stake and the purpose of the law, which is to guarantee the effective exercise of the right of access to public information, promote citizen participation and transparency in public management (this Court, in "Fundación Poder Ciudadano v. Auditoría General de la Nación- Law 27,573 on action for constitutional protection law 16,986, No. 16190/2023, judgment dated 18 September 2025, and its citations). In this vein, the action for constitutional protection constitutes a constitutionally rooted judicial remedy, suitable for guaranteeing the right of access to public information.

The availability of this procedural remedy is consistent with the criteria of the Inter-American Court of Human Rights, which emphasized the obligation to guarantee an effective procedure for processing and resolving requests for information, setting deadlines for resolving and delivering the information, and placing it under the responsibility of duly trained officials. It also stated that, in the event of denial of access to certain information under its control, the State must guarantee that there is a simple, rapid and effective judicial remedy to determine whether there has been a violation of the

right of access to information and, where appropriate, order the relevant body to deliver it ("Gomes Lund et al. v. Brazil," judgment dated 24 November 2010, paragraph 231).

In this regard, Article 43 of the National Constitution provides in its first paragraph that "[e]very person may file an expedited and prompt action for constitutional protection, provided that there is no other more suitable judicial remedy, against any act or omission by public authorities or private individuals that currently or imminently infringes, restricts, alters or threatens, with manifest arbitrariness or illegality, the rights and guarantees recognized by this Constitution, a treaty or a law. In such cases, the judge may declare the unconstitutionality of the rule on which the harmful act or omission is based."

This guarantee has been established in favor of individuals as an expeditious remedy against the arbitrariness and illegality of public authorities; therefore, the exclusion of this remedy cannot be based on a purely formal assessment (Rulings: 330:1076), since its purpose, rather than the ordering or assurance of jurisdictions, is the effective protection of fundamental rights (Rulings: 308:155; 320:1339 and its citations; and Fiorini, Bartolomé; "Action for constitutional protection. Serious limitations and inconsistencies that distort it"; L.L. 124-1361).

In this regard, the Supreme Court of Justice of the Nation held that action for constitutional protection is the simplest and shortest judicial procedure for truly protecting the rights enshrined in the National Constitution (Rulings: 329:2552). It also stated that the importance and sensitivity of the rights at stake should guide judges not only in clarifying and deciding on points of substantive law, but also on those related to the "judicial protection" provided for in Article 25 of the American Convention on Human Rights, which has constitutional status, especially since so-called amparo proceedings must not be "illusory or ineffective" (Rulings: 345:1174, and citations therein).

**IV.3.-** That being said, it should be noted that the right of access to public information is related to transparency and openness in government administration, which are fundamental pillars of a society that prides itself on being democratic (Rulings: 335:2393). In this regard, the Inter-American Democratic Charter recognizes that the following are fundamental components of the exercise of democracy: transparency in government activities, probity, the



Judicial Branch of the Nation

# FEDERAL COURT OF APPEALS ON
# ADMINISTRATIVE LITIGATION - DIVISION V

responsibility of governments in public administration, and freedom of expression (Art. 4).

In turn, the right at issue in this case is linked to the constitutionally enshrined right to seek and receive information (Articles 1, 14, and 32), which has also been expressly enshrined in international human rights instruments that enjoy constitutional status in our country and are mandatory in their conditions of validity (Article 75, paragraph 22 of the National Constitution).

In this regard, the American Declaration of the Rights and Duties of Man provides that "[e]veryone has the right to freedom of investigation, opinion, and expression and dissemination of thought by any means" (Article 4). Likewise, the Universal Declaration of Human Rights establishes: "Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers" (Article 19).

For its part, the American Convention on Human Rights stipulates that "[e]veryone has the right to freedom of thought and expression. This right includes the freedom to seek, receive, and impart information and ideas of all kinds, regardless of frontiers, either orally, in writing, or in print, in the form of art, or through any other media of his choice" (Article 13.1).

In turn, the International Covenant on Civil and Political Rights provides that "1. No one shall be harassed on account of his opinions. 2. Everyone has the right to freedom of expression; this right includes freedom to seek, receive and impart information and ideas of all kinds, regardless of frontiers, either orally, in writing or in print, in the form of art, or through any other media of his choice" (Article 19).

It should be added that the Inter-American Court of Human Rights has given broad content to the right to freedom of thought and expression by describing its individual and social dimensions. In particular, it held that "...the actions of the State must be governed by the principles of publicity and transparency in public administration, which makes it possible for persons under its jurisdiction to exercise democratic control over the State's actions, so that they can question, investigate and consider whether public functions are being properly performed," and that "...in a

democratic society, it is essential that state authorities be governed by the principle of maximum disclosure, which establishes the presumption that all information is accessible, subject to a restricted system of exceptions" ("Claude Reyes et al. v. Chile," judgment dated 19 September 2006, paragraphs 75, 86, and 92).

Consequently, the right that the appellant seeks to exercise is widely recognized in the federal constitutional bloc and enjoys robust protection, on a domestic as well as at the inter-American level.

**IV.4.-** Internally, Law No. 27,275 guarantees the effective exercise of the right of access to public information, promotes citizen participation and transparency in public administration, and is based on the following principles: presumption of publicity, transparency and maximum disclosure, informality, maximum access, openness, dissociation, non-discrimination, maximum urgency, free of charge, control, responsibility, limited scope of exceptions, *in dubio pro petitor*, facilitation and good faith (Article 1).

This right includes the possibility of freely searching, accessing, requesting, receiving, copying, analyzing, reprocessing, reusing and redistributing information held by the entities listed in Article 7 of the law [including the Central Bank of the Argentine Republic], with the sole limitations and exceptions established by this law (Article 2).

In relation to this last aspect, and insofar as it is relevant here, Article 8 provides that 'obligated entities may only be exempted from providing information in any of the following cases: [...]
b) information that could jeopardize the proper functioning of the financial or banking system; c) industrial, commercial, financial, scientific, technical or technological secrets whose disclosure could harm the level of competitiveness or damage the interests of the obligated party."

**IV.5.-** Under the premises of analysis described above and having clarified the scope and extent of the right in question, which is governed in this regard by the principle of maximum disclosure, it is appropriate to refer to the restricted system of exceptions to limit its exercise.

It should be noted that the American Convention on Human Rights provides that the exercise of the right to freedom of thought and expression "...may not be subject to prior censorship but only to subsequent liability, which must be expressly established by law and necessary to ensure: a)


#39272892#485050146#20251217124435772



Judicial Branch of the Nation

# FEDERAL COURT OF APPEALS ON
## ADMINISTRATIVE LITIGATION - DIVISION V

respect for the rights or reputation of others, or b) protection of national security, public order, or public health or morals" (Art. 13.2).

In this regard, the Inter-American Court of Human Rights affirmed that the following requirements must be met in order to restrict the exercise of the right of access to information under State control: 1) restrictions must be clearly established in advance by a formal law; 2) they must respond to one of the objectives permitted by the American Convention on Human Rights, namely, "respect for the rights or reputation of others" or "the protection of national security, public order, or public health or morals"; and 3) the restrictions must be necessary in a democratic society, which depends on whether they are aimed at satisfying an imperative public interest; among several options for achieving that objective, the one that restricts the protected right to the least extent possible must be chosen, that is, the restriction must be proportional to the interest that justifies it and must be conducive to achieving that legitimate objective, interfering as little as possible with the effective exercise of the right (the "Claude Reyes" case, cited above, paragraphs 88 to 91; similarly, Rulings: 342:208, "Savoia" and Rulings: 338:1258, "Giustiniani").

Along these lines, the Special Rapporteur for Freedom of Expression of the Inter-American Commission on Human Rights analyzed the content and scope of the right of access to public information. Specifically, with regard to its limitations, it held that these must be established in advance by law in cases where there is a real and imminent danger that threatens national security in democratic societies; and the burden of proof falls on the State to justify any denial of access to public information, provided that it is to ensure respect for the rights or reputation of others, protect national security, public order, health, or public morals. Finally, it held that certain information may legitimately be kept secret for reasons of national security or the protection of other overriding interests, but that the law must define the concept of national security precisely and specify the criteria to be used to determine whether certain information may be declared secret in order to prevent the disclosure of information that is in the public interest. (Report prepared in 2009, paras. 27, 28, 31, 33            and            35                                    ,
https://www.oas.org/dil/esp/acceso_a_la_informacion_lineamientos_cidh.p

**IV.6.-** That being the case, it should be noted that the response provided by the Central Bank of the Argentine Republic, through Resolution RESOL-2024-13-E-GDEBCRA-GG#BCRA, contains statements that imply a restriction on the right of access to public information, a restriction that must be reasonable in order to be valid (Art. 28 CN). The manner in which the defendant responded to the plaintiff's requests (generically alleging confidentiality or secrecy, or a hypothetical danger to the banking or financial system or citing a provision of law) is incompatible with the principles of publicity, maximum disclosure and transparency, maximum access and good faith, and prevents the court from verifying whether such refusal is legitimate or reasonable.

In effect, the defendant bases its refusal to provide the requested information on the grounds that it would jeopardize the proper functioning of the banking or financial system or because the information would contain secrets that could harm the interests of the obligated party (Section 8, subsections b] and c] of Law No. 27,275). In this regard, although it invokes some of the exceptions contained in that law, such an allegation—based on a unilateral assessment—can only be admitted if the obligated party sets out in detail the reasons why the disclosure of the information is likely to cause harm to a legitimately protected purpose. In this regard, the burden of proof of the legitimacy of the restriction lies with the agency receiving the request, and when a request for information is denied, it must be done so by means of a duly substantiated decision that allows the reasons for not disclosing the information in the specific case to be known.

This obligation has not been fulfilled with the issuance of Resolution RESOL-2024-13-E-GDEBCRA-GG#BCRA, issued by the General Management of the Central Bank of the Argentine Republic, since the grounds invoked to justify its refusal with respect to the specific request are mere generic statements and fail to demonstrate in detail the reasons why its disclosure constitutes a danger to the financial or banking system or could harm the interests of the obligated party, nor did it provide any evidence that would allow the court to verify that any of the exceptions provided for in the regulations actually apply.

In other words, the configuration of any of the legal exceptions to the disclosure of public information cannot



Judicial Branch of the Nation

# FEDERAL COURT OF APPEALS ON
# ADMINISTRATIVE LITIGATION - DIVISION V

depend on a unilateral assessment by the obligated subject. When questioned about the refusal or reluctance to provide such information in court, the subject must provide sufficient evidence to the court that the request can be legitimately denied on legal grounds, a burden that has not been met by the Central Bank of the Argentine Republic.

To this end, the defendant must proceed in good faith, indicating for each of the points requested in the submissions dated 15 July 2024, 29 July 2024 and 5 August 2024 (which are outlined in recital IV.1) why it cannot provide the relevant information. Specifically, it is not clear—and the defendant does not explain—why it cannot report whether there were any transactions involving the shipment of gold bars to a foreign country and the amount involved, the context in which the decision to transfer reserves was made, the reasons for omitting to identify the administrative file in which that decision was processed, the identification of the BCRA officials who authorized the actions taken, the existence or nonexistence of insurance to guarantee the contracts, and the possible notification to the audit committee of the Central Bank of the Argentine Republic, among other matters. In this regard, it should be noted that certain points requested are relevant and relate to public control and, in particular, to the accountability of public officials, which is essential to the republican system of government (Article 1 of the Constitution).

Furthermore, the defendant—in order to guarantee the public interest—has not chosen the least restrictive option of the right involved, that is, it has not justified that the restrictions on access to information are proportional to the interest that justifies them, but has limited itself to denying in its entirety the delivery of the public information requested by the plaintiff.

Consequently, the appeal based on lower court errors raised by the plaintiff is admissible, and it is unnecessary to rule on the claim of unconstitutionality of Articles 1, 2, 5, and 6 of Decree No. 780/24 (regulating Law No. 27,275), since said regulation is subsequent to the administrative act challenged here, and therefore was not applied and is not applicable in the present case.

**IV.7.-** Furthermore, it should be noted that the requested information refers to a matter of undeniable public interest, namely the administration of reserves by the Central Bank of the Argentine Republic, which is in turn linked to the transparency of public procurement and its dissemination and the

publicity of government affairs (Articles 1 and 36 of the National Constitution). In this regard, when referring to public procurement systems, the United Nations Convention against Corruption (Articles 9, 10 and 13) and the Inter-American Convention against Corruption (Article 3) establish publicity as a means of increasing transparency in public administration.

**V.-** Based on the foregoing considerations, in accordance with the ruling of the Attorney General, the appeal filed by the plaintiff should be upheld and the first instance ruling should be overturned. Consequently, the action brought is upheld and the defendant is ordered to provide the public information requested by the plaintiff in the submissions made to the Central Bank of the Argentine Republic on 15 July 2024, 29 July 2024 and 5 August 2024, which are attached to pages 3/13 or, where appropriate, indicate in detail and point by point the connection between a specific aspect of the information requested and the defendant's statement that its disclosure constitutes a danger to the financial or banking system or could harm the interests of the Central Bank of the Argentine Republic (Article 8, subsections b] and c] of Law No. 27,275).

The costs of both instances are imposed on the defendant, as the losing party in this case (Article 14 of Law No. 16,986 and Article 68, first paragraph of the CPCCN).

Based on the foregoing considerations, and having heard the Attorney General, the Court **RESOLVES:** 1) To uphold the appeal filed by the plaintiff and overturn the judgment of the court of first instance. 2) To uphold the action brought and order the defendant to provide the public information requested by the plaintiff in the submissions made to the Central Bank of the Argentine Republic on 15 July 2024, 29 July 2024 and 5 August 2024, which are attached to pages 3/13 or, where appropriate, indicate in detail and point by point the connection between a specific aspect of the information requested and the defendant's statement that its disclosure constitutes a danger to the financial or banking system or could harm the interests of the Central Bank of the Argentine Republic (Section 8, subsections b] and c] of



Judicial Branch of the Nation

# FEDERAL COURT OF APPEALS ON
# ADMINISTRATIVE LITIGATION - DIVISION V

Law No. 27,275). 3) Impose the costs of both levels of jurisdiction on the Central Bank of the Argentine Republic (Section 14 of Law No. 16,986 and Section 68, first paragraph of the CPCCN).

It is hereby stated for the record that the 15th seat of this Division is vacant.

Be this registered, notified to the parties, and the Attorney General and, in due course, be this remanded.

**Guillermo F. TREACY**          **Pablo GALLEGOS FEDRIANI**

Validity unknown
Digitally signed by GUILLERMO TREACY
Date: 2025.12.19 13:13:13 ART

Validity unknown
Digitally signed by PABLO GALLEGOS FEBRIANI
Date: 2025.12.19 13:32:22 ART

Validity unknown
Digitally signed by TOMAS BRANDAN
Date: 2025.12.19 14:34:13 ART

THE STATE OF TEXAS    }
                         }
COUNTY OF FORT BEND  }

## AFFIDAVIT OF ACCURACY

BEFORE ME, the undersigned authority, on this day personally appeared Maria C. Sanchez, who, by oath and by presentation of identification, is personally known to me to be the person subscribing her name below and, after being by me duly sworn according to law, upon her oath deposes and says in due form of law that to the best of her knowledge, information and belief:

1. "My name is Maria C. Sanchez, and I am over the age of twenty-one years and competent to make this affidavit."

2. I speak, read, and write fluently in both the English and Spanish languages.

3. I have been a professional legal translator since 1992 and graduated from the University of Salvador, Argentina with a degree in Legal and Technical Translations. For the past 22 years, I have worked as a chief editor and linguist for hundreds of documents in international arbitrations, litigation, and contracts and I am currently a Project Manager at TransLite Solutions, LLC.

I hereby certify that the Spanish to English translation attached hereto: *"15185-2024 - Sentencia de Cámara"* is true, correct, fair, accurate and complete English translation to the best of my ability, of the original document in Spanish.

*M Concepción Sánchez*
MARIA CONCEPCION SANCHEZ

Sworn to before me this   01-06-26

Notary Public in and for the State of Texas
My commission expires:  09/12/2028

DANIEL LEGARIA-CAMPUZANO
NOTARY PUBLIC
STATE OF TEXAS
ID #135095693
EXPIRES 09/12/2028



Poder Judicial de la Nación

## CAMARA CONTENCIOSO ADMINISTRATIVO
## FEDERAL- SALA V

15185/2024

BANCARIA SOCIEDAD DE EMPLEADOS DE BANCO
ASOCIACION CIVIL c/ BCRA - LEY 27275 s/AMPARO LEY
16.986

Buenos Aires, fecha de firma electrónica.-

**VISTOS Y CONSIDERANDO:**

**I.-** Que mediante la sentencia de fojas 237 (conf. constancias digitales, a las que se aludirá en lo sucesivo), el juez de la instancia anterior rechazó la acción de amparo interpuesta contra el Banco Central de la República Argentina, tendiente a que se revocara la Resolución RESOL-2024-13-E-GDEBCRA-GG#BCRA; y en consecuencia, se intimara al sujeto obligado a proveer la información solicitada en el marco de la Ley N° 27.275 que regula el derecho de acceso a la información pública.

Para así decidir, luego de reseñar la normativa aplicable y los antecedentes administrativos del caso, sostuvo que en la presente causa no se encontraba acreditado que la parte demandada -al responder la solicitud formulada por la accionante- hubiera incurrido en arbitrariedad o ilegalidad manifiesta, invocadas como fundamento de la pretensión, sino que su accionar se fundó en el ejercicio de facultades que le son propias ya que allí se consideró que la información requerida se encontraba dentro de las excepciones previstas en el artículo 8° de la Ley N° 27.275.

Además, indicó que el objeto de esta causa, como así también la respuesta brindada por la parte demandada, coincidían con los planteos debatidos en las actuaciones caratuladas "Bancaria Sociedad de Empleados de Banco Asociación Civil y otro c/ BCRA- Ley 27.275 s/ amparo ley 16.986", número 17414/2024, en trámite ante el juzgado N° 8 del fuero. Puso de resalto que, en dicha causa, la jueza de grado dictó sentencia definitiva rechazando la acción promovida por la misma parte actora que en estos autos, y consideró que la entidad accionada había actuado en el marco de facultades legales propias, en cuyo ejercicio sostuvo que la información pretendida enmarcaba en las excepciones dispuestas por el artículo 8° de la ley N° 27.275. En tal sentido, se concluyó que, a la luz de la normativa vigente, no cabía atribuir al organismo demandado el haber incurrido en una actuación que en forma actual o inminente lesionara,

#39272892#485050146#20251217124435772

restringiera, alterara o amenazara, con arbitrariedad o ilegalidad manifiesta, derechos y garantías reconocidos por la Constitución, un tratado o una ley, que habilitara esta vía excepcional.

Por último, respecto del planteo de inconstitucionalidad de los artículos 1°, 2°, 5° y 6° del Decreto N° 780/24 (reglamentario de la Ley N° 27.275), señaló que "…resulta de las constancias de autos que la parte actora no realiza un desarrollo sólido para objetar la constitucionalidad de la normativa mencionada, ello en la medida que una declaración de esa índole importa siempre un acto de suma gravedad institucional que debe ser considerada la última ratio del orden jurídico". Añadió que -tal como fue señalado por el Sr. Fiscal Federal- el Banco Central de la República Argentina no aplicó el aludido decreto para sustentar su decisión, lo cual obedecía a que la Resolución RESOL-2024-13-E-GDEBCRA-GG#BCRA fue emitida el 15/8/2024, mientras que el Decreto N° 780/24 fue dictado el 30/8/2024 y publicado en el Boletín Oficial el 2/9/2024.

Impuso las costas a la vencida (art. 14 de la Ley N° 16.986 y art. 68, primer párrafo del CPCCN).

**II.-** Que disconforme, la parte actora apeló y expresó agravios a fojas 243/260, que fueron replicados a fojas 263/286.

En su memorial, sostuvo que la parte demandada se limitó a invocar que la información requerida tenía el carácter de reservada, pero sin exponer, describir ni demostrar de manera detallada las razones por las cuales la entrega comprometía la seguridad de los activos del Banco Central de la República Argentina, de modo que se justificara la denegatoria en los términos del artículo 8° de la Ley N° 27.275. También afirmó que el accionado no explicó los hipotéticos riesgos y perjuicios que ocasionaría la entrega de la información requerida.

Además, se agravió de que la jueza de primera instancia no hubiera efectuado "…una ponderación del interés público comprometido en acceder a dicha información ni una evaluación proporcional del daño, como exige la propia norma en su interpretación sistemática y conforme los criterios orientadores aprobados por el organismo de contralor".

Asimismo, destacó que "[n]egar el acceso a esta información impide el ejercicio del control social sobre decisiones que tienen impacto directo en la economía nacional, el valor de la moneda, la política financiera, la credibilidad institucional, el control ciudadano de la gestión y la soberanía económica". En base a ello,



#39272892#485050146#20251217124435772



Poder Judicial de la Nación

## CAMARA CONTENCIOSO ADMINISTRATIVO
## FEDERAL- SALA V

alegó que "…los magistrados están facultados para revisar la documentación y evaluar si la decisión de mantenerla reservada es justificada y legítima a fin de evitar que, por vía de genéricas e imprecisas afirmaciones, se vulnere el ejercicio del mencionado derecho y se obstaculice la divulgación de información de interés público, como ocurre en el presente caso". Citó jurisprudencia vinculada con los principios de publicidad y transparencia en la gestión pública.

Concluyó que "…la sentencia de primera instancia genera un gravamen irreparable por obstaculizar de manera íntegra el ejercicio de uno de los derechos humanos fundamentales consagrados de manera vasta tanto en la normativa local como internacional con jerarquía constitucional, en las cuales se considera al Estado como garante del derecho al acceso a la información pública".

En consecuencia, solicitó que se revocara -con costas- la sentencia apelada y por lo tanto, se brindara la información pública solicitada.

**III.-** Que a fojas 288/300 intervino el Sr. Fiscal General. En su dictamen, opinó que, aun cuando pueda resultar legítima la reserva de aquellos elementos vinculados a la seguridad de los activos, o al enfoque técnico empleado en miras a evitar distorsiones en mercados relevantes, lo cierto es que, considerando el reconocimiento público efectuado por el Estado Nacional acerca del envío de lingotes al exterior a partir de información periodística, la reserva total de la información solicitada se encontraba reñida con los principios de transparencia, máxima divulgación y buena fe (conf. art. 1° de la Ley N° 27.275).

En efecto, ponderó que no toda la información requerida implica, por caso, la revelación de la ubicación geográfica de las reservas físicas (aspecto este que, conforme indicó el área técnica del Banco Central de la República Argentina, se vinculaba con su seguridad), de modo que se puede sostener que la medida adoptada no luce proporcional al interés perseguido.

Además, indicó que no surgía de la posición asumida por la demandada cuáles eran las razones para no revelar el ámbito formal en que se adoptó la decisión de realizar la operación de transferencia de reservas; ni era posible verificar las razones para omitir identificar el expediente administrativo en el que tramitó la mentada decisión, así como la eventual notificación a la sindicatura

del Banco Central de la República Argentina. Puso de resalto que tales extremos resultan trascendentales en miras al control de la legitimidad de los actos de gobierno y no implican, necesariamente, la divulgación de elementos que comprometan la seguridad de los activos o el enfoque técnico aplicado.

Por consiguiente, sin perjuicio de la obligación de "disociación" que pesaba sobre la autoridad monetaria, consideró que "…la demandada se encontraba obligada a brindar acceso a todos aquellos elementos de la información requerida que no se encontraren estrictamente comprendidos dentro de las excepciones invocadas, valiéndose a ese fin de tachas que disocien la información vinculada a la seguridad de los activos y el enfoque técnico aplicado". Concluyó que la negativa total a brindar acceso a la información requerida por la parte actora constituía un acto ilegítimo, cuya nulidad debía ser declarada en autos.

IV.- Que, en este estado de las actuaciones, corresponde examinar la apelación interpuesta por la parte actora.

IV.1.- A tal fin, conviene en primer lugar reseñar los antecedentes del caso. Al respecto, la presente acción tiene por objeto que se revoque la Resolución RESOL-2024-13-E-GDEBCRA -GG#BCRA; y en consecuencia, que se ordene al Banco Central de la República Argentina que entregue la información pública requerida en las solicitudes presentadas con fechas 15/7/2024, 29/7/2024 y 5/8/2024, que lucen agregadas a fojas 3/13, de conformidad con la Ley N° 27.275 de Acceso a la Información Pública y su entonces decreto reglamentario N° 206/17.

Específicamente, en el primer pedido efectuado, la parte actora solicitó acceso a la siguiente información pública:

"1) Si existen operaciones de envío de lingotes de oro al exterior durante el mes de Junio, en especial si el día 7/6/2024 hubo una partida y el día 28/6/2024 hubo otra, si así fuera qué cantidad, por qué monto y en qué moneda se ha realizado, bajo qué características comerciales o de otra índole, a qué destino y si la operación se realizó con la transportadora Lumil y enviados por la aerolínea British Airways, caso contrario indique empresa de transporte y por qué línea aérea fueron enviados. Si está previsto nuevo envío de partidas de lingotes de oro, en caso afirmativo, el objetivo de las mismas, tipo de operación y destino.



Poder Judicial de la Nación

# CAMARA CONTENCIOSO ADMINISTRATIVO FEDERAL- SALA V

"2) En particular, si se ha encomendado a agentes internos y/o externos alguna acción con respecto al traslado y destino respecto de los lingotes de oro y todo otro tipo de activos.

"3) En su caso, indique la reunión de Directorio, Comisión o Comité en que se trató dicha cuestión, funcionarios de BCRA intervinientes (Presidente, Vicepresidente, Directores, Gerentes o representantes de los mismos, asesores, responsables jerárquicos, administrativos ylo sus reemplazantes). Informe Orden del Día, Acta en que se registró, asuntos tratados, opiniones vertidas y acciones realizadas.

"4) De no haberse celebrado reunión de Directorio, Comisión o Comité con tal objeto, informe la manera y el canal en que fue tratada dicha cuestión, funcionarios de BCRA, otros funcionarios del Gobierno Nacional y/u otras personas intervinientes, asuntos tratados, registros, opiniones vertidas y acciones realizadas en ese marco.

"5) Si se ha instrumentado Expediente administrativo u otro tipo de actuación con el objeto de sustanciar e impulsar dicha iniciativa. En [...] caso afirmativo, identifique su número correspondiente y áreas intervinientes.

"6) En qué atribuciones o facultades del BCRA -así como otra causa- se ha fundado la iniciativa.

"7) Si ha sido notificada la sindicatura del BCRA de dicha iniciativa. En caso afirmativo, medidas de fiscalización y control que ha adoptado al respecto una vez que ha sido puesto en conocimiento sobre la misma.

"8) Si la iniciativa ha sido incluida en un Plan de acción a corto y mediano plazo a desarrollar por el BCRA. En caso afirmativo, si dicho Plan ha sido remitido al Ministerio de Economía. En caso negativo, si ha sido informado al Ministerio de Economía por otros medios".

Posteriormente, en su petición de fecha 29/7/2024, la asociación actora requirió la siguiente información pública:

"1) Si antes de la finalización del presente mes de julio de 2024 tiene previsto operaciones envío de lingotes de oro al exterior; si así fuera, qué cantidad, por qué monto y en qué moneda se ha realizado realizará, bajo qué características comerciales o de otra índole, a qué destino, nombres de la empresa transportadora y línea aérea utilizada, montos abonados o a abonar a ambas. Informe

#39272892#485050146#20251217124435772

si fueron o serán contratados seguros, en ese caso, características de las pólizas, nombre de la compañía aseguradora y montos abonados o a abonar.

"2) En particular, si se ha encomendado a agentes internos y/o externos alguna acción con respecto al traslado y destino respecto de los lingotes de oro y todo otro tipo de activos. En caso afirmativo indique nombres.

"3) En su caso, indique la reunión de Directorio, Comisión o Comité en que se trató dicha cuestión, funcionarios de BCRA intervinientes (Presidente, Vicepresidente, Directores, Gerentes o representantes de los mismos, asesores, responsables jerárquicos, administrativos y/o sus reemplazantes). Informe Orden del Día, Acta en que se registró, asuntos tratados, opiniones vertidas y acciones realizadas.

"4) De no haberse celebrado reunión de Directorio, Comisión o Comité con tal objeto, informe la manera y el canal en que fue tratada dicha cuestión, funcionarios de BCRA, otros funcionarios del Gobierno Nacional y/u otras personas intervinientes, asuntos tratados, registros, opiniones vertidas y acciones realizadas en ese marco.

"5) Si se ha instrumentado Expediente administrativo u otro tipo de actuación con el objeto de sustanciar e impulsar dicha iniciativa. En [...] caso afirmativo, identifique su número correspondiente y áreas intervinientes.

"6) En qué atribuciones o facultades del BCRA -así como otra causa- se ha fundado la iniciativa.

"7) Si ha sido notificada la sindicatura del BCRA de dicha iniciativa. En caso afirmativo, medidas de fiscalización y control que ha adoptado al respecto una vez que ha sido puesto en conocimiento sobre la misma.

"8) Si la iniciativa ha sido incluida en un Plan de acción a corto y mediano plazo a desarrollar por el BCRA. En caso afirmativo, si dicho Plan ha sido remitido al Ministerio de Economía. En caso negativo, si ha sido informado al Ministerio de Economía por otros medios".

Por último, la parte actora presentó otro pedido -con fecha 5/8/2024- en el que solicitó que se informara:

"1) Si durante la semana del 5 de agosto de 2024 al 11 de agosto de 2024 tiene previsto operaciones de envío de lingotes de oro al exterior, si así fuera, qué cantidad, por qué monto y en qué moneda se ha realizado o realizará, bajo qué características





Poder Judicial de la Nación

# CAMARA CONTENCIOSO ADMINISTRATIVO
# FEDERAL- SALA V

comerciales o de otra índole, a qué destino, nombres de la empresa transportadora y línea aérea utilizada, montos abonados o a abonar a ambas.

"2) Si las partidas a enviar superan los un mil (1.000) millones de dólares y monto total enviado junto con las anteriores. Informe si fueron o serán contratados seguros, en ese caso, características de las pólizas, nombre de la compañía aseguradora y montos abonados o a abonar.

"3) En particular, si se ha encomendado a agentes internos y/o externos alguna acción con destino respecto al traslado y destino respecto de los lingotes de oro y todo otro tipo de activos. En caso afirmativo indique nombres.

"4) En su caso, indique la reunión de Directorio, Comisión o Comité en que se trató dicha cuestión, funcionarios de BCRA intervinientes (Presidente, Vicepresidente, Directores, Gerentes o representantes de los mismos, asesores, responsables jerárquicos, administrativos y/o sus reemplazantes). Informe Orden del Día, Acta en que se registró, asuntos tratados, opiniones vertidas y acciones realizadas.

"5) De no haberse celebrado reunión de Directorio, Comisión o Comité con tal objeto, informe la manera y el canal en que fue tratada dicha cuestión, funcionarios de BCRA, otros funcionarios del Gobierno Nacional y/u otras personas intervinientes, asuntos tratados, registros, opiniones vertidas y acciones realizadas en ese marco.

"6) Si se ha instrumentado Expediente administrativo u otro tipo de actuación con el objeto de sustanciar e impulsar dicha iniciativa. En [...] caso afirmativo, identifique su número correspondiente y áreas intervinientes.

"7) En qué atribuciones o facultades del BCRA -así como otra causa- se ha fundado la iniciativa.

"8) Si ha sido notificada la sindicatura del BCRA de dicha iniciativa. En caso afirmativo, medidas de fiscalización y control que ha adoptado al respecto una vez que ha sido puesto en conocimiento sobre la misma.

"9) Si la iniciativa ha sido incluida en un Plan de acción a corto y mediano plazo a desarrollar por el BCRA. En caso afirmativo, si dicho Plan ha sido remitido al Ministerio de Economía. En caso negativo, si ha sido informado al Ministerio de Economía por otros medios".

Frente a ello, el Gerente General del Banco Central de la República Argentina dictó la Resolución RESOL-2024-13-E-GDEBCRA-GG#BCRA, mediante la cual brindó al Sr. Sergio Omar Palazzo la información pública incorporada por la Gerencia de Análisis de Inversiones en su informe IF-2024-00154750-GDEBCRA-GAI#BCRA; y declaró la reserva total de las informaciones pretendidas en las solicitudes de acceso a la información pública formuladas por el Sr. Palazzo los días 15/07/24, 29/07/24 y 05/08/24.

En dicho acto administrativo, indicó que "…el área técnica competente se pronunció en el sentido que, al referirse los pedidos de acceso a los detalles sobre operaciones específicas o rebalanceos entre cuentas, revelar esa información, permitiría entre otros aspectos sensibles, conocer los movimientos y la ubicación de activos que componen las reservas internacionales de este BCRA; encontrándose fundamentado su resguardo y no divulgación, en la preservación de su seguridad". Asimismo, consignó que "…cualquier dato vinculado a la ubicación geográfica pasada, presente o futura de las respectivas cuentas utilizadas por el BCRA para la custodia de sus activos de reserva (incluyendo movimientos desde o hacia las mismas) podría poner en peligro la seguridad de estos activos, con su consecuente impacto en el respaldo de la política monetaria y cambiaria implementada, el respaldo de los depósitos, y la seguridad del sistema financiero".

A su vez, puso de resalto que el área competente había destacado que "…dicho criterio se condice con el interés público y las políticas implementadas durante los últimos 20 años por el BCRA para la preservación de su patrimonio, especialmente en las cuestiones vinculadas a la seguridad y el resguardo de sus reservas internacionales.[...] para proteger, por un lado, su competitividad en un determinado momento respecto de las alternativas disponibles dentro del marco regulatorio aplicable; y, por el otro, la estabilidad del sistema financiero en general respecto de los movimientos de los activos que las componen, siendo que la divulgación del enfoque técnico de sus administradores podría generar distorsiones en mercados relevantes […]; concluyendo que […] se entiende que sobre todos los puntos solicitados, corresponde remitir a lo arriba expuesto, y limitarse asimismo a señalar que las operaciones de administración de reservas se realizan de acuerdo con lo establecido por las citadas disposiciones de la Carta Orgánica, la Ley N° 23.928 y las disposiciones concordantes aplicables a la materia".



Poder Judicial de la Nación

## CAMARA CONTENCIOSO ADMINISTRATIVO
## FEDERAL- SALA V

En consecuencia, sostuvo que correspondía declarar la reserva total de la información solicitada, en los términos de las excepciones previstas en el artículo 8°, incisos b) y c) de la Ley N° 27.275, en concordancia con el artículo c) del Decreto N° 206/17.

Ello así, sin perjuicio de brindar al peticionante la información incorporada por la Gerencia de Análisis de Inversiones en su informe IF-2024-00154750-GDEBCRA-GAI#BCRA, en el cual se hizo saber al requirente que en la página web del BCRA se podía dar continuo seguimiento a las tenencias de oro del BCRA, y que "…el BCRA administra diariamente sus reservas de oro, divisas y otros activos externos, de acuerdo con lo dispuesto, principalmente, en el artículo 4 inciso d) y en el artículo 33 de su Carta Orgánica (Ley N°24.144 y sus modif.), y las previsiones de la Ley N° 23.928 [En ese marco] el BCRA mantiene diversas alternativas para la concentración y administración de sus reservas en oro, y estas alternativas no han cambiado".

**IV.2.-** Reseñados los antecedentes de las actuaciones, cabe señalar que La Ley N° 27.275, que regula el derecho de acceso a la información pública, prevé la vía del amparo para impugnar judicialmente la denegatoria de la información (art. 14). Ello así, en virtud de los derechos en juego y de la finalidad de la ley, tendiente a garantizar el efectivo ejercicio del derecho de acceso a la información pública, promover la participación ciudadana y la transparencia de la gestión pública (esta Sala, en la causa "Fundación Poder Ciudadano c/ Auditoría General de la Nación- Ley 27.573 s/ amparo ley 16.986, N° 16190/2023, sentencia del 18/9/2025, y sus citas). En esa línea, la acción de amparo constituye una vía judicial de raigambre constitucional, idónea para garantizar el derecho de acceso a la información pública.

La disponibilidad de esta vía procesal guarda coherencia con el criterio de la Corte Interamericana de Derechos Humanos, que destacó la obligación de garantizar un procedimiento efectivo para la tramitación y resolución de las solicitudes de información, que fije plazos para resolver y entregar la información, y que se encuentre bajo la responsabilidad de funcionarios debidamente capacitados. Asimismo, expresó que, ante la denegación de acceso a determinada información bajo su control, el Estado debe garantizar que exista un recurso judicial sencillo, rápido y efectivo que permita determinar si se produjo una vulneración del

derecho de acceso a la información y, en su caso, ordenar al órgano correspondiente la entrega de la misma (caso "Gomes Lund y otros vs. Brasil", sentencia del 24 de noviembre de 2010, párrafo 231).

En ese orden, el artículo 43 de la Constitución Nacional dispone en su primer párrafo que "[t]oda persona puede interponer acción expedita y rápida de amparo, siempre que no exista otro medio judicial más idóneo, contra todo acto u omisión de autoridades públicas o de particulares, que en forma actual o inminente lesione, restrinja, altere o amenace, con arbitrariedad o ilegalidad manifiesta, derechos y garantías reconocidos por esta Constitución, un tratado o una ley. En el caso, el juez podrá declarar la inconstitucionalidad de la norma en que se funde el acto u omisión lesiva".

Dicha garantía ha sido establecida a favor de los particulares como un remedio expedito contra las arbitrariedades e ilegalidades de las autoridades públicas; por lo tanto, la exclusión de esa vía no puede fundarse en una apreciación meramente ritual (Fallos: 330:1076), en tanto su objeto, más que una ordenación o aseguramiento de competencias, es el efectivo resguardo de los derechos fundamentales (Fallos: 308:155; 320:1339 y sus citas; y Fiorini, Bartolomé; "Acción de amparo. Graves limitaciones e incongruencias que la desnaturalizan"; L.L. 124-1361).

Al respecto, la Corte Suprema de Justicia de la Nación sostuvo que el amparo es el procedimiento judicial más simple y breve para tutelar real y verdaderamente los derechos consagrados en la Constitución Nacional (Fallos: 329:2552). Asimismo, expresó que la relevancia y la delicadeza de los derechos en juego deben guiar a los magistrados no sólo en el esclarecimiento y decisión de los puntos de derecho sustancial, sino también de los vinculados con la "protección judicial" prevista en el artículo 25 de la Convención Americana sobre Derechos Humanos, que tiene jerarquía constitucional, máxime cuando los denominados juicios de amparos no deben resultar "ilusorios o inefectivos" (Fallos: 345:1174, y sus citas).

IV.3.- Sentado ello, cabe destacar que el derecho de acceso a la información pública se relaciona con la transparencia y la publicidad de la gestión de gobierno, pilares fundamentales de una sociedad que se precie de ser democrática (Fallos: 335:2393). En tal sentido, la Carta Democrática Interamericana reconoce que son componentes fundamentales del ejercicio de la democracia: la transparencia de las actividades gubernamentales, la probidad, la


#39272892#485050146#20251217124435772



Poder Judicial de la Nación

CAMARA CONTENCIOSO ADMINISTRATIVO
FEDERAL- SALA V

responsabilidad de los gobiernos en la gestión pública y la libertad de expresión (art. 4°).

A su vez, el derecho en examen se vincula con el derecho de buscar y recibir información, de raigambre constitucional (arts. 1, 14 y 32), el cual también ha sido consagrado expresamente por los instrumentos internacionales de derechos humanos que en nuestro país gozan de jerarquía constitucional y resultan de aplicación obligatoria en las condiciones de su vigencia (art. 75, inc. 22 CN).

Al respecto, la Declaración Americana de Derechos y Deberes del Hombre dispone que "[t]oda persona tiene derecho a la libertad de investigación, de opinión y de expresión y difusión del pensamiento por cualquier medio" (artículo 4°). Asimismo, la Declaración Universal de Derechos Humanos establece: "Todo individuo tiene derecho a la libertad de opinión y de expresión; este derecho incluye el de no ser molestado a causa de sus opiniones, el de investigar y recibir informaciones y opiniones, y el de difundirlas, sin limitación de fronteras, por cualquier medio de expresión" (art. 19).

Por su parte, la Convención Americana sobre Derechos Humanos estipula que "[t]oda persona tiene derecho a la libertad de pensamiento y de expresión. Este derecho comprende la libertad de buscar, recibir y difundir informaciones e ideas de toda índole, sin consideración de fronteras, ya sea oralmente, por escrito o en forma impresa o artística o cualquier otro procedimiento de su elección (art. 13.1).

A su vez, el Pacto Internacional de Derechos Civiles y Políticos prevé que "1. Nadie podrá ser molestado a causa de sus opiniones. 2. Toda persona tiene derecho a la libertad de expresión; este derecho comprende la libertad de buscar, recibir y difundir informaciones e ideas de toda índole, sin consideración de fronteras, ya sea oralmente, por escrito o en forma impresa o artística, o por cualquier otro procedimiento de su elección" (artículo 19).

Cabe añadir que la Corte Interamericana de Derechos Humanos ha dado un amplio contenido al derecho a la libertad de pensamiento y de expresión, a través de la descripción de sus dimensiones individual y social. En particular, sostuvo que "…el actuar del Estado debe encontrarse regido por los principios de publicidad y transparencia en la gestión pública, lo que hace posible que las personas que se encuentran bajo su jurisdicción ejerzan el control democrático de las gestiones estatales, de forma tal que puedan cuestionar, indagar y considerar si se está dando un adecuado cumplimiento de las funciones públicas", y que "…en una sociedad

democrática es indispensable que las autoridades estatales se rijan por el principio de máxima divulgación, el cual establece la presunción de que toda información es accesible, sujeto a un sistema restringido de excepciones" (caso "Claude Reyes y otros vs. Chile", sentencia del 19 de septiembre de 2006, párrafos 75, 86 y 92).

Por consiguiente, el derecho que intenta ejercer la recurrente cuenta con amplio reconocimiento en el bloque de constitucionalidad federal y con una protección robusta, tanto a nivel interno como interamericano.

**IV.4.-** En el plano interno, la Ley N° 27.275 garantiza el efectivo ejercicio del derecho de acceso a la información pública, promueve la participación ciudadana y la transparencia de la gestión pública, y se funda en los siguientes principios: presunción de publicidad, transparencia y máxima divulgación, informalismo, máximo acceso, apertura, disociación, no discriminación, máxima premura, gratuidad, control, responsabilidad, alcance limitado de las excepciones, *in dubio pro petitor*, facilitación y buena fe (art. 1°).

Este derecho comprende la posibilidad de buscar, acceder, solicitar, recibir, copiar, analizar, reprocesar, reutilizar y redistribuir libremente la información bajo custodia de los sujetos obligados enumerados en el artículo 7° de la ley [entre los que se encuentra el Banco Central de la República Argentina], con las únicas limitaciones y excepciones que establece esta norma (art. 2°).

En relación con este último aspecto, y en lo que aquí interesa, el artículo 8° dispone que "[l]os sujetos obligados sólo podrán exceptuarse de proveer la información cuando se configure alguno de los siguientes supuestos: [...] b) información que pudiera poner en peligro el correcto funcionamiento del sistema financiero o bancario; c) Secretos industriales, comerciales, financieros, científicos, técnicos o tecnológicos cuya revelación pudiera perjudicar el nivel de competitividad o lesionar los intereses del sujeto obligado".

**IV.5.-** Bajo las premisas de análisis antes descriptas y aclarada la dimensión y alcance que cabe asignar al derecho involucrado, el cual se rige en cuanto aquí interesa por el principio de máxima divulgación, corresponde referirse al sistema restringido de excepciones para limitar su ejercicio.

Cabe destacar que la Convención Americana sobre Derechos Humanos dispone que el ejercicio del derecho a la libertad de pensamiento y de expresión "...no puede estar sujeto a previa censura sino a responsabilidades ulteriores, las que deben estar expresamente fijadas por la ley y ser necesarias para asegurar: a) el


#39272892#485050146#20251217124435772



Poder Judicial de la Nación

## CAMARA CONTENCIOSO ADMINISTRATIVO
## FEDERAL- SALA V

respeto a los derechos o a la reputación de los demás, o b) la protección de la seguridad nacional, el orden público o la salud o la moral públicas" (art. 13.2).

Al respecto, la Corte Interamericana de Derechos Humanos afirmó que se debían cumplir con los siguientes requisitos para restringir el ejercicio del derecho de acceso a la información bajo control del Estado: 1) las restricciones deben estar previa y claramente fijadas por una ley en sentido formal; 2) deben responder a alguno de los objetivos permitidos por la Convención Americana sobre Derechos Humanos, esto es, "el respeto a los derechos o a la reputación de los demás", o "la protección de la seguridad nacional, el orden público o la salud o la moral pública"; y 3) las restricciones deben ser necesarias en una sociedad democrática, lo que depende de que estén orientadas a satisfacer un interés público imperativo; entre varias opciones para alcanzar ese objetivo, debe escogerse aquella que restrinja en menor escala el derecho protegido, es decir, la restricción debe ser proporcional al interés que la justifica y debe ser conducente para alcanzar el logro de ese legítimo objetivo, interfiriendo en la menor medida posible en el efectivo ejercicio del derecho (caso "Claude Reyes" cit., párrafos 88 a 91; en igual sentido, Fallos: 342:208, "Savoia" y Fallos: 338:1258, "Giustiniani").

En esta línea de razonamiento, la Relatoría Especial para la Libertad de Expresión de la Comisión Interamericana de Derechos Humanos analizó el contenido y alcance del derecho de acceso a la información pública. Específicamente, respecto de sus limitaciones, sostuvo que deben estar establecidas previamente por ley para el caso que exista un peligro real e inminente que amenace la seguridad nacional en sociedades democráticas; y recae sobre el Estado la carga de la prueba para justificar cualquier negativa de acceso a la información pública, siempre que se trate de asegurar el respeto a los derechos o la reputación de los demás, proteger la seguridad nacional, el orden público, la salud o la moral pública. Finalmente, sostuvo que cierta información puede ser legítimamente secreta por motivos de seguridad nacional o protección de otros intereses preponderantes, pero las leyes deben definir con exactitud el concepto de seguridad nacional y especificar los criterios que deberán utilizarse para determinar si cierta información puede o no declararse secreta para evitar la divulgación de información que es de interés público" (Informe elaborado en el año 2009, párr. 27, 28, 31, 33 y 35, https://www.oas.org/dil/esp/acceso_a_la_informacion_lineamientos_cidh.p

**IV.6.-** Así las cosas, se advierte que la respuesta brindada por el Banco Central de la República Argentina, mediante la Resolución RESOL-2024-13-E-GDEBCRA-GG#BCRA, contiene afirmaciones que importan una restricción al derecho de acceso a la información pública, restricción que requiere, para su validez, ser razonable (art. 28 CN). La forma en que la demandada respondió a los requerimientos de la actora (alegando genéricamente la reserva o secreto, o un hipotético peligro para el sistema bancario o financiero, o citando una norma de la ley) resulta incompatible con los principios de publicidad, máxima divulgación y transparencia, máximo acceso y buena fe e impiden al tribunal verificar si tal negativa es legítima o razonable.

En efecto, la demandada funda su negativa a entregar la información requerida en que se pondría en peligro el correcto funcionamiento del sistema bancario o financiero o porque la información contendría secretos que podrían perjudicar los intereses del sujeto obligado (art. 8°, incs. b] y c] de la Ley N° 27.275). Al respecto, si bien invoca algunas de las excepciones contenidas en dicha ley, tal alegación -basada en una apreciación unilateral- solo puede admitirse si el sujeto obligado expone de manera circunstanciada las razones por las cuales la entrega de la información resulta susceptible de ocasionar un daño a un fin legítimamente protegido. En tal sentido, la carga de la prueba de la legitimidad de la restricción corresponde al organismo requerido y cuando se deniega una solicitud de información debe hacerse mediante una decisión debidamente fundamentada, que permita conocer los motivos para no entregar la información en el caso concreto.

Dicha obligación no ha sido satisfecha con el dictado de la Resolución RESOL-2024-13-E-GDEBCRA-GG#BCRA, emanada de la Gerencia General del Banco Central de la República Argentina, toda vez que los fundamentos invocados para fundar su negativa con respecto al pedido en concreto, resultan meras afirmaciones genéricas y no logran demostrar de manera detallada las razones por las cuales su entrega constituye un peligro para el sistema financiero o bancario o podría perjudicar los intereses del sujeto obligado y tampoco aportó ningún elemento de prueba que permita al tribunal comprobar que efectivamente se verifica alguna de las excepciones normativamente previstas.

Es decir, la configuración de alguna de las excepciones legales a la entrega de información pública no puede





Poder Judicial de la Nación

## CAMARA CONTENCIOSO ADMINISTRATIVO FEDERAL- SALA V

depender de una apreciación unilateral del sujeto obligado. Cuestionada la negativa o reticencia a proporcionar esa información en sede judicial, el sujeto debe aportar evidencia suficiente al tribunal de que el requerimiento puede ser legítimamente denegado por estar sustentado en una causa legal, carga que no ha sido satisfecha por el Banco Central de la República Argentina.

Para ello, la demandada debe proceder de buena fe, indicando respecto de cada uno de los puntos requeridos en las presentaciones de fechas 15/7/2024, 29/7/2024 y 5/8/2024 (que se reseñan en el considerando IV.1) por qué razones no puede aportar la información pertinente. Específicamente, no se advierte -y la demandada no explica- por qué no podría informar si existieron las operaciones de envío de lingotes de oro al exterior y el monto involucrado, el ámbito en que se adoptó la decisión de realizar la transferencia de reservas, las razones para omitir identificar al expediente administrativo en que tramitó dicha decisión, la individualización de los funcionarios del BCRA que autorizaron las acciones realizadas, la existencia o no de seguros que garanticen los contratos, y la eventual notificación a la sindicatura del Banco Central de la República Argentina, entre otros. En tal sentido, se advierte que ciertos puntos solicitados son pertinentes y hacen al control público y, en particular, a la rendición de cuentas por parte de los funcionarios públicos, lo cual es propio de la esencial del sistema republicano de gobierno (art. 1° CN).

Además, la parte demandada -a fin de garantizar el interés público- no ha elegido la opción menos restrictiva del derecho involucrado, esto es, no ha justificado que las restricciones al acceso a la información sean proporcionales al interés que las justifica, sino que se ha limitado a denegar en su totalidad la entrega de la información pública requerida por la accionante.

En consecuencia, los agravios vertidos por la parte actora resultan atendibles, siendo innecesario expedirse sobre el planteo de inconstitucionalidad de los artículos 1°, 2°, 5° y 6° del Decreto N° 780/24 (reglamentario de la Ley N° 27.275) en tanto que dicha norma es posterior al acto administrativo aquí impugnado, de modo que no fue aplicada ni resulta aplicable en el caso de autos.

**IV.7.-** Por lo demás, debe advertirse que la información solicitada se refiere a un asunto de indudable interés público como es la administración de las reservas por parte del Banco Central de la República Argentina, lo cual se vincula a su vez con la transparencia de las contrataciones públicas y su difusión y la

publicidad de los asuntos de gobierno (arts. 1° y 36 CN). En tal sentido, al referirse a los sistemas de contrataciones públicas, la Convención de las Naciones Unidas contra la Corrupción (arts. 9, 10 y 13) y la Convención Interamericana contra la Corrupción (art. 3°), establecen la publicidad como un medio para aumentar la transparencia en la administración pública.

**V.-** Que, por las consideraciones precedentes, en concordancia con lo dictaminado por el Sr. Fiscal General, corresponde hacer lugar al recurso de apelación interpuesto por la parte actora y revocar la sentencia de primera instancia. En consecuencia, se hace lugar a la acción interpuesta y se ordena a la parte demandada que proporcione la información pública requerida por la accionante en las presentaciones efectuadas ante el Banco Central de la República Argentina con fechas 15/7/2024, 29/7/2024 y 5/8/2024, que obran agregadas a fojas 3/13 o, en su caso, indique circunstanciadamente y, punto por punto, la conexión entre determinado aspecto de la información requerida y lo expresado por la parte demandada en torno a que su entrega constituye un peligro para el sistema financiero o bancario o podría perjudicar los intereses del Banco Central de la República Argentina (art. 8°, incs. b] y c] de la Ley N° 27.275).

Las costas de ambas instancias se imponen a la parte demandada, que resultó vencida (art. 14 de la Ley N° 16.986 y art. 68, primer párrafo del CPCCN).

Por las consideraciones vertidas, y oído el Sr. Fiscal General, el Tribunal **RESUELVE:** 1) Hacer lugar al recurso de apelación interpuesto por la parte actora y revocar la sentencia de primera instancia. 2) Hacer lugar a la acción interpuesta y ordenar a la parte demandada que proporcione la información pública requerida por la accionante en las presentaciones efectuadas ante el Banco Central de la República Argentina con fechas 15/7/2024, 29/7/2024 y 5/8/2024, que obran agregadas a fojas 3/13 o, en su caso, indique circunstanciadamente y, punto por punto, la conexión entre determinado aspecto de la información requerida y lo expresado por la parte demandada en torno a que su entrega constituye un peligro para el sistema financiero o bancario o podría perjudicar los intereses del Banco Central de la República Argentina (art. 8°, incs. b] y c] de la



Poder Judicial de la Nación

# CAMARA CONTENCIOSO ADMINISTRATIVO
# FEDERAL- SALA V

Ley N° 27.275). 3) Imponer las costas de ambas instancias al Banco Central de la República Argentina (art. 14 de la Ley N° 16.986 y art. 68, primer párrafo del CPCCN).

Se deja constancia de que la vocalía N° 15 de esta Sala se encuentra vacante.

Regístrese, notifíquese a las partes y al Sr. Fiscal General y, oportunamente, devuélvase.

**Guillermo F. TREACY**          **Pablo GALLEGOS FEDRIANI**