# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

January 26, 2026

Via ECF

The Honorable Loretta A. Preska,
   United States District Court for the Southern District of New York,
     500 Pearl Street,
       New York, NY 10007.

        Re:  *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP); *Eton Park Capital Mgmt.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP)

Dear Judge Preska:

      On behalf of the Argentine Republic, I respond to Plaintiffs' January 21, 2026 letter ("Letter"; *Petersen* Dkt. 858) requesting a pre-motion conference on their motion to compel the Republic to "provide a sworn statement identifying the location, movements, and account(s) holding" the Argentine Central Bank's gold reserves and seeking an evidentiary hearing if the Republic lacks access to that information. The Court should deny Plaintiffs' baseless request.

      Plaintiffs accuse the Republic of "concealing more than $1 billion in gold reserves." (Letter at 1.) That is false. Nothing has been "concealed"; instead, the BCRA *publishes* information about the amount of the gold reserves it holds. (*Petersen* Dkt. 858-1 at 19:6-16.) The Republic has repeatedly explained that all gold reserves are the property of and managed by the BCRA—a "legally separate and distinct" entity from the Republic not before this Court[1]—and, consistent with the standard practice of all central banks, the BCRA maintains information about the

---

[1] *EM Ltd.* v. *BCRA*, 800 F.3d 78, 90-91 (2d Cir. 2015); *see also* BCRA Charter § 4(d), available at https://www.bcra.gob.ar/en/charter-of-the-bcra-2/.

The Honorable Loretta A. Preska                                         -2-

location and movement of its gold reserves as confidential.[2]  The real reason Plaintiffs cannot execute upon the BCRA's gold reserves has nothing to do with any discovery Plaintiffs claim to be missing, but is because (i) these reserves are held by the BCRA and not subject to execution here, in the U.K., or in Argentina[3]; and (ii) even if the reserves were held by the Republic, they would not satisfy the only FSIA execution-immunity exception theoretically available to Plaintiffs. 28 U.S.C. § 1610(a)(2).

    1.    The Republic has complied fully with Rule 30(b)(6).  On January 8, 2026, Plaintiffs deposed the Republic's designee on Plaintiffs' noticed topic concerning gold reserves, Luis Trajtenberg, the National Director of Models and Projections of the Ministry of Economy.  Mr. Trajtenberg testified that ▮▮▮▮▮ (*Petersen* Dkt. 858-1 at 31:18-24.)  He testified that ▮▮▮▮▮ (*Id.* at 17:9-12; 18:17-25; 19:1-22; 37:22-38:14.) Plaintiffs may not like those sworn answers, but that does not mean Mr. Trajtenberg was not adequately prepared with the Republic's "known or reasonably available" information.  Fed. R. Civ. P. 30(b)(6); *see In re OpenAI*, 2025 WL 3268785, at *2 (S.D.N.Y. 2025) (to "adequately prepare a 30(b)(6) witness, a corporation's efforts need only be reasonable and performed in good faith").

    2.    Plaintiffs failed to identify any "gaps" in the Republic's searches prior to the deposition.  On March 20, 2025, the Republic disclosed the searches it conducted for responsive documents regarding the BCRA's reserves. (Ex. B at 1-2).  As the Republic explained, it searched within the system that "houses the Republic's official reports and communications" and various Ministry of Economy email inboxes. (*Id.*)  During the ten months that followed and until Mr. Trajtenberg's

---

[2] This past December, an Argentine appellate court held that the BCRA need not disclose such information if disclosure "constitutes a danger to the financial or banking system or could harm the interests of the [BCRA]." (*Petersen* Dkt. 858-3 at 17.)

[3] As property of a "central bank," BCRA's reserves are immune from execution. *E.g.*, 28 U.S.C. § 1611(b)(1); U.K. State Immunity Act of 1978 § 14(4); Law 23,928, Art. 6 (Ex. A).

The Honorable Loretta A. Preska                                                                        -3-

deposition, Plaintiffs did not raise a single issue about these searches. Even worse, after the Court ordered Plaintiffs to confer with the Republic before each deposition regarding any "perceive[d] gaps" in the Republic's discovery responses (Dec. 9, 2025 Hr'g Tr. at 51:17-52:12), Plaintiffs did not identify any "gaps" regarding the BCRA's gold reserves. A 30(b)(6) deposition is not a tool to surprise foreign government officials with newly-raised discovery disputes "better suited to a written response or a supplemental document production." *Blackrock Allocation Target Shares* v. *Wells Fargo,* 2017 WL 9400671, at *2 (S.D.N.Y. 2017). There certainly is no basis for sanctions "when counsel fail to make a good faith effort to resolve the deficiencies." *Agniel* v. *Cent. Park Boathouse*, 2015 WL 463971, at *2 (S.D.N.Y. 2015).

      3.     The Republic had no obligation to prepare Mr. Trajtenberg regarding information held by third parties. The BCRA is an independent entity, and the Auditoría General de la Nación ("AGN") is a technical advisory body of the Argentine Congress with functional autonomy and not under the Executive's control. (*Petersen* Dkt. 858-1 at 18:17-25; 51:14-25.)[4] The Republic's "obligations under Rule 30(b)(6) obviously cease" where it "does not possess knowledge of the matters listed in the deposition notice." *Bigsby* v. *Barclays Capital Real Estate*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019).

      4.     The Republic also was not obliged to conduct additional searches of the Ministry of Security or of specific individuals before the deposition. The Ministry's role is to prepare a report on the BCRA's proposed regulations governing the movement of its reserves, not particular movements. (*Petersen* Dkt. 858-2, Arts. 1-2.) Further, third-party productions confirm that movements of the reserves are arranged by the BCRA without involvement of the Republic, including the Ministry of Security. (*See* Ex. C at LI000002, LI000005, LI000015.)

      Likewise, Plaintiffs' only support for their assertion that Minister Caputo "has knowledge" of gold reserve movements (Letter at 3) is newspaper articles reporting that he commented on the issue in July 2024, *after* a movement of the BCRA's reserves was widely reported. (Ex. B at 3). Plaintiffs have no right to demand that deposition preparation include an interview with a senior cabinet-level official where the Republic had already conducted a thorough, and fully disclosed, search for information within the Ministry of Economy. Plaintiffs' request is clearly

---

[4]   *See also* Argentine National Constitution, Art. 85, available at https://www.congreso.gob.ar/constitucionSeccion1Cap6_ingles.php.

The Honorable Loretta A. Preska                                                              -4-

intended to harass, and granting it would violate international comity's core tenet of "maintaining amicable working relationships between nations." *JP Morgan Chase* v. *Altos Hornos de Mexico*, 412 F.3d 418, 423 (2d Cir. 2005).

*   *   *

For the foregoing reasons, Plaintiffs' request should be denied. Notwithstanding the above, and in an effort to accommodate Plaintiffs' unreasonable demands, the Republic will send information requests to the BCRA, AGN, and Ministry of Security regarding the BCRA's gold reserves.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.


cc:     Counsel of Record (via ECF)