**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETERSEN ENERGÍA INVERSORA,　　　:
S.A.U. and PETERSEN ENERGÍA, S.A.U.,　:
　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiffs,　　　　　　　:　　Case No.:  1:15-CV-02739 (LAP)
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
ARGENTINE REPUBLIC and YPF S.A.,　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　　　　:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ETON PARK CAPITAL MANAGEMENT,　　:
L.P., ETON PARK MASTER FUND, LTD.,　:
and ETON PARK FUND, L.P.,　　　　　:
　　　　　　　　　　　　　　　　　　:　　Case No.:  1:16-CV-08569 (LAP)
　　　　　　Plaintiffs,　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
ARGENTINE REPUBLIC and YPF S.A.,　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　　　　:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DECLARATION OF AMANDA FLUG DAVIDOFF

I, Amanda Flug Davidoff, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a member in good standing of the bar of this Court and a partner of Sullivan & Cromwell LLP, counsel to Defendant the Argentine Republic (the "Republic") in the above-captioned actions.  I make this Declaration in support of the Republic's Pre-Motion Letter for a Stay of Discovery Pending Appeal.

2.  I make this Declaration to put before the Court certain facts regarding the post-judgment discovery in this case.

3.  This Declaration first provides an overview of post-judgment discovery in this action.  It then provides further detail as to the several 30(b)(6) depositions that Plaintiffs have conducted and three areas of ongoing discovery:  (1) discovery related to the Argentine Central Bank's gold reserves, (2) discovery related to swap agreements between the People's Bank of China and the Argentine Central Bank, and (3) discovery of communications from the personal cellphones, WhatsApp, and email accounts of current and former high-ranking Argentine officials.

**Overview of Post-Judgment Discovery**

4.  On October 16, 2023, Plaintiffs served their First Post-Judgment Requests for Production of Documents.  (Ex. 1.)  Plaintiffs' First Requests for Production were directed principally to identifiable documents or "documents sufficient to identify" the Republic's assets, legal or beneficial interests in assets, financial accounts, debts, financial agreements with China, transactions, letters of credit, gold reserves, and escrow accounts, among others.  The Republic served its Responses and Objections on November 15, 2023.  (Ex. 2.)

5.  On November 29, 2023, the Court stayed enforcement of the judgment until January 10, 2024 in part "[t]o accommodate the new administration in Argentina" as a new President was elected on November 19, 2023 and did not take office until December 10, 2023.  (Dkt. 529 at 1.)[1] Discovery re-started on January 10, 2024.

6.  From November 2023 to May 2024, the parties engaged in 11 meet-and-confer discussions concerning Plaintiffs' requests.  At Plaintiffs' request, the Republic prioritized two categories of discovery:  (1) requests regarding its YPF shares, and (2) requests regarding assets outside of Argentina.[2]  As to the Republic's YPF shares, the Republic produced (i) YPF shareholder

_____

[1] All docket numbers refer to docket entries in *Petersen Energia Inversora, S.A.U.* v. *Argentine Republic*, No. 1:15-cv-02739.

[2] Plaintiffs' First Requests also contained requests relating to the Republic's alleged "Alter-Ego Relationships" with various "State-Owned Enterprises":  YPF Sociedad Anonima ("YPF"),

meeting minutes, (ii) YPF share certificates, (iii) YPF Form 20-Fs, (iv) administrative files from the settlement agreement between the Republic and Repsol concerning the expropriation of Repsol's 51% stake in YPF, and (v) documents relating to an agreement between the Argentine national government and certain Argentine provinces regarding the distribution among those provinces of 49% of the 51% stake in YPF expropriated from Repsol.

7. As to the Republic's assets outside of Argentina, the Republic produced (i) documents concerning certain financial agreements between Chinese financial entities and the Republic, (ii) a letter of credit obtained by the Republic in connection with an appeal of a separate litigation in the courts of the United Kingdom, (iii) peso-denominated debt instruments, (iv) foreign-currency-denominated debt, (v) deeds for properties used for diplomatic and consular purposes, (vi) deeds for properties used for national defence and military purposes; (vii) 569 diplomatic, consular, and military bank accounts, (viii) offshore drilling concessions, (ix) final judgments and arbitral awards, (x) Army account transactions, (xi) Navy account transactions, (xii) Air Force account transactions, and (xiii) Joint Chief of Staff of the Armed Forces account transactions.  (Dkt. 808-6 at 2, 4 (Sept. 11, 2025 Ltr. from T. White).)

8. The Republic has also produced two years of interbank (SWIFT) messages accompanying the Republic's transactions initiated or received by the Republic's accounts held at financial institutions outside of Argentina.  In addition, the Republic has produced accounting ledgers created pursuant to Argentine law containing all transactions made in connection with any account held by an Argentine embassy or consulate outside of Argentina from a two-year period.

9. Plaintiffs' requests also called for "[d]ocuments produced in connection with any other proceeding concerning the enforcement of a judgment against Argentina."  (Ex. 1 at 13 (First

---

Aerolíneas Argentinas S.A. ("AA"), Empresa Argentina de Soluciones Satelitales S.A. ("ARSAT"), Banco Central de la República Argentina ("BCRA"), Banco de la Nación Argentina ("BNA"), and Energía Argentina Sociedad Anónima ("ENARSA").  On the parties' first meet-and-confer discussion on November 21, 2023, the Republic stood on its objections to those Requests.  As set forth below, Plaintiffs next raised the issue on April 26, 2024.  (Dkt. 808-6 at 5 (Sept. 11, 2025 Ltr. from T. White).)

Requests).)    On March 25, May 7, and October 4, 2024, the Republic reproduced 832 documents previously produced in another "post-judgment proceeding in which the Republic produced documents during the period covered by Plaintiffs' Request, which is *Bainbridge Fund Ltd.* v. *the Republic of Argentina*, 16-cv-10838."  (Dkt. 699-1 at 6 (Nov. 8, 2024 Ltr. from A. Davidoff).)  Once productions began in *Attestor Master Value Fund LP* v. *The Republic of Argentina*, 14-cv-05849, the Republic reproduced 1,372 documents previously produced in that matter on May 4, June 25, July 25, August 1, August 15, August 29, September 8, October 1, October 3, October 28, and December 8, 2025.

10. On May 15, 2024, Plaintiffs served a Second Set of Requests for Production concerning the Republic's movable assets and accounts in Argentina, certain other transactions, debt offerings or privatizations, additional so-called "State-Owned Enterprises," and arbitrations or litigations in which Argentina is a named party.  The Republic served its Responses and Objections on June 14, 2024.

11. Also on May 15, 2024, Plaintiffs served an Information Subpoena under New York CPLR § 5224, which governs subpoenas regarding the enforcement of money judgments, propounding 31 written questions.  (Ex. 3.)  The Republic served its Responses and Objections on September 30, 2024.  (Dkt. 737-1.)  As set forth below, the Republic provided further information about seven of the requests selected by Plaintiffs in a 12-page letter sent on September 10, 2025.  (Dkt. 808-8 (Sept. 10, 2025 Ltr. from A. Davidoff).)

12. After the Court ordered the Republic to produce "alter ego" discovery concerning two of the state-owned entities (Dkt. 592 at 39:20-25), the Republic agreed to collect and produce emails between certain government officials and the two state-owned entities.  (Ex. 4 (July 27, 2024 Email from H. Masters).)  The Republic collected and restored the Ministry of Economy's backup tapes for the two-year period from July 2022 through August 2024, and completed production of documents based on the then-agreed searches of those tapes in February 2025.  (Dkt. 808-6 at 9 (Sept. 11, 2025 Ltr. from T. White).)

13. On July 29, 2025, the Court ordered the Republic to produce emails between government officials concerning five of the state-owned entities, BCRA, YPF, AA, ENARSA, and BNA.

(Dkt. 772 at 52:5-8.)  On January 15, 2026, the parties reached agreement on search terms. (Ex. 5 (Jan. 15, 2026 Email from H. Masters).)  The review of documents is now underway.

14. In response to Plaintiffs' Second Requests, the Republic has also produced documents related to its assets in Argentina, including its debts, commercial transactions, movable assets, and 480 bank accounts.  (Dkt. 863 at 11.)  The Republic identified to Plaintiffs the ministries, secretariats, and undersecretariats that were most likely to possess information and requested that they identify databases that were likely to contain information responsive to Plaintiffs' requests. (*Id.*) The Republic then directed the various ministries, through their secretariats, undersecretariats, and directorates, to conduct reasonable searches of the systems.  (*Id.*)  Those searches identified responsive documents principally regarding the Republic's debts and movable assets in Argentina which the Republic proceeded to produce.  (*Id.*)  In addition, the Republic provided Plaintiffs with detailed information regarding publicly available sources and instructions on how to access information responsive to their requests about debts and commercial transactions.  (*Id.* at 11-12.)  The Republic also produced two years of interbank (SWIFT) messages accompanying the Republic's transactions initiated or received by the Republic's accounts held at financial institutions in Argentina.

15. The Republic has responded to four other categories of discovery requests from Plaintiffs: (1) requests for 30(b)(6) depositions concerning seven topics, including how the Republic searched for information about those topics during discovery in this action, (2) requests for information concerning the BCRA's gold reserves, (3) requests for the BCRA's swap agreements with the People's Bank of China, and (4) requests to produce personal communications of the Republic's officials regarding the Republic's alleged control of BCRA, YPF, AA, ENARSA, and BNA.  These four categories of discovery are discussed in further detail below.

16. In sum, over the past two years, Plaintiffs have served, and the Republic has responded to, a total of 142 document requests and 31 written questions.  The Republic has produced over 115,000 pages of documents in response to these discovery requests.

17. To date, the Republic has provided approximately 30 hours of deposition testimony in six 30(b)(6) depositions, as described in further detail below.  A seventh 30(b)(6) deposition is scheduled for February 12, 2026.

18. Plaintiffs have served 141 post-judgment third-party subpoenas in this action to date.  In total, Plaintiffs have served subpoenas on 120 different third parties.  A list of third parties and the dates they were served with subpoenas is attached as Appendix A.

19. Responding to Plaintiffs' post-judgment discovery requests has required thousands of hours of outside-counsel time and thousands more hours of work by government officials.  Based on Sullivan & Cromwell's records, I estimate that Sullivan & Cromwell lawyers, paralegals, and other staff have spent over six thousand hours addressing Plaintiffs' enforcement discovery requests.  That work has included at least 20 conferences with Plaintiffs' counsel and 10 court conferences.  I understand that Argentine counsel at the Procuración del Tesoro de la Nación have also spent substantial time and resources, the equivalent of three attorneys working full time, facilitating the enforcement discovery.  In addition, I understand that officials at numerous Argentine ministries have spent considerable time addressing Plaintiffs' requests.

20. I would also expect that substantial third-party counsel and business time has been directed to responding to the 141 subpoenas served on third parties.

**30(b)(6) Depositions**

21. In Information Subpoena Question No. 31, Plaintiffs requested that the Republic "[i]dentify all Persons . . . who have been consulted in connection with the preparation of responses to these written questions."  (Ex. 3 at 12 (Information Subpoena).)  The Republic responded by listing the relevant ministries and government offices.  (Dkt.737-1 at 54-55 (R&Os to Information Subpoena).)  On July 26, 2025, Plaintiffs asked the Republic to provide a list of "individuals with knowledge for each of (i) the Requests . . . to which the Republic has agreed to respond; and (ii) the Requests to which the Republic has responded that there are no, or very limited, materials."  (Dkt. 763 at 25.)  The Republic argued that Plaintiffs' request sought "impermissible 'discovery on discovery.'"  (*Id.* at 28 (quoting *Williams* v. *Fed. Gov't of Nigeria*, 2025 WL 507702, at *2 (S.D.N.Y. Feb. 14, 2025) (Liman, J.)).)  The Court instructed

the parties to treat Plaintiffs' request "as though it were a 30(b)(6) request." (Dkt. 772 at 35:24-36:1.)

22. On August 5, 2025, the Republic proposed a "two-pronged process": "(1) As to responses to the Information Subpoena for which the searches . . . are ongoing, the Republic will provide Plaintiffs with information regarding how the Republic is conducting those searches and meet and confer thereafter as to whether further Rule 30(b)(6)-type information is relevant and proportional for any particular searches. (2) As to completed responses to the Information Subpoena, Plaintiffs will identify any for which they seek Rule 30(b)(6)-type information, and the parties will meet and confer thereafter as to whether further Rule 30(b)(6)-type information is relevant and proportional for any particular searches, and bring any disputes to the Court." (Dkt. 770 at 5.) At the August 6, 2025 Conference, Plaintiffs agreed to this proposal. (Dkt. 812 at 36:9, 38:9.)

23. On August 18, 2025, Plaintiffs provided the Republic with a "preliminary list" of seven topics "for which Plaintiffs [sought] the identification of a 30(b)(6)-style person or persons with knowledge": (1) "the gold or precious metal reserves of Argentina," (2) "Argentina's legal or beneficial interests in any asset in the United States or any Foreign Country," (3) "commercial transactions between Argentina and any Person located in the United States or any Foreign Country," (4) "financial agreements between China . . . and Argentina," (5) "any concession or similar agreement relating to natural resources, energy, or public infrastructure between Argentina and any Person located in the United States or any Foreign Country," (6) "payments made by Argentina to any law firm or consulting firm located in the United States or any Foreign Country," and (7) "any privatization or proposed privatization of any of Argentina's state-owned entities or companies with majority state ownership." (Dkt. 808-7 (Aug. 18, 2025 Email from A. Bonelli).) Several of these topics also covered "the search" for documents and information related to these topics "in response to Plaintiffs' discovery requests." (*Id.*)

24. On September 10, 2025, the Republic responded to Plaintiffs' proposed topics via a 12-page letter in which the Republic set forth for each of Plaintiffs' proposed topics the documents, information, and searches the Republic had already provided or conducted. (Dkt. 808-8 (Sept. 10, 2025 Ltr. from A. Davidoff).) The Republic's letter asked Plaintiffs to respond by

identifying what additional information they hoped to obtain on the topics they chose.  (*Id.* at 12.)

25. On September 24, 2025, Plaintiffs stated that they were unwilling to confer regarding the additional information sought until the Republic identified witnesses to testify on each of Plaintiffs' topics or provided a list of "individuals with knowledge."  (Dkt. 808 at 20.)

26. On October 9, 2025, the Court ordered the Republic to designate a 30(b)(6) witness for the Plaintiffs' topics.  (Dkt. 831 at 40:8-42:9.)  The Republic designated a witness on October 23, 2025.  (Ex. 6 (Oct. 23, 2025 Email from S. Briggs).)  Because Plaintiffs' topics concerned how the Republic had searched for specific information in discovery, the Republic's designated witness was the government lawyer most knowledgeable about the Republic's discovery efforts.

27. On November 4, 2025, the Court ordered the Republic to designate a separate witness for each of Plaintiffs' seven topics.  (Dkt. 838 at 27:25, 30:15-17.)

28. On December 9, 2025, the Court ordered Plaintiffs to meet and confer with the Republic regarding what information they hoped to obtain from the depositions.  (*See* Dkt. 847 at 51:17-52:12 ("THE COURT:  It would be helpful if you perceive gaps, Mr. Levine, to let counsel know in advance. . . .  [I]f you perceive a gap, why not let counsel know?").)

29. Six Republic officials have sat for 30(b)(6) depositions on six of Plaintiffs' seven identified topics.  A seventh official will sit for a 30(b)(6) deposition on Plaintiffs' seventh topic on February 12, 2026.

**Gold Reserves**

30. The Republic stated in its November 15, 2023 Responses and Objections to Plaintiffs' First Request for Production No. 26, which called for "[d]ocuments sufficient to identify, locate, and ascertain the purposes of any gold or other precious metals reserves of Argentina held in the United States or any Foreign Country," that "'any gold or other precious metals reserves' would be owned by the Republic's central bank," the *Banco Central de la República Argentina* ("BCRA"), "and not the Republic, and such assets are immune from attachment or execution"

pursuant to 28 U.S.C. § 1611(b). (Ex. 2 at 38.) The Republic reiterated this information to Plaintiffs at a January 19, 2024 meet-and-confer and in a February 12, 2024 letter. (*See* Ex. 7 at 10 (Feb. 12, 2024 Ltr. from A. Davidoff) (citing *EM Ltd.* v. *Banco Central De La República Argentina*, 800 F.3d 78, 90-91 (2d Cir. 2015)).) The Republic provided this information to Plaintiffs again in an April 15, 2024 letter. (Ex. 8 at 4-5 (Apr. 15, 2024 Ltr. from A. Davidoff).)

31. On October 25, 2024, Plaintiffs asserted that the Republic's response was "deficien[t]" because the Republic's productions did "not contain any documents related to known gold reserves, including transfers of gold reserves to London." (Ex. 9 at 1, 5 (Oct. 25, 2024 Ltr. from L. Harris).) Plaintiffs asserted that "public reporting indicates that the Republic may be using these reserves as collateral" and "the use and transfer of these gold bars as collateral does not serve any regular central banking purpose." (*Id.*) In response, the Republic requested that Plaintiffs identify such "reporting," and noted that the Central Bank's statutory mandate includes "owning and managing reserves in the national interest." (Dkt. 699-1 at 6 (Nov. 8, 2024 Ltr. from A. Davidoff) (citing BCRA Charter, Section 4).) The Republic stated again that "the gold reserves Plaintiffs reference belong to BCRA, not the Republic." (*Id.*)

32. On January 2, 2025, Plaintiffs filed a pre-motion letter seeking to move to compel production of, *inter alia*, "documents to establish ownership and 'ascertain the purposes' of the gold reserves, including whether the Republic is using the reserves as collateral as speculated in the press." (Dkt. 699 at 3.) The Republic responded to Plaintiffs' pre-motion letter on January 7, 2025, stating that "only BCRA (a legally separate entity, *see EM Ltd.* v. *BCRA*, 800 F.3d 78, 91 (2d Cir. 2015)), owns any gold reserves." (Dkt. 700 at 2.)

33. On January 14, 2025, the Court entered an order providing that "regardless of whether the gold reserves are held by BCRA, the Republic shall produce its own documents concerning the reserves." (Dkt. 703 at 3.)

34. Following the Court's January 14, 2025 order, the Republic searched for responsive documents, and reported to Plaintiffs that it found no responsive documents. (Ex. 10 at 1 (Feb. 28, 2025 Ltr. from A. Davidoff).)

35. On March 13, 2025, Plaintiffs asserted that the Republic's response was "implausible," and requested that the Republic detail the steps of its search process. (Ex. 11 at 1-2 (Mar. 13, 2025 Ltr. from L. Harris).)  One week later, in a March 20, 2025 letter, the Republic set forth its search process. (Ex. 12 at 1-2 (Mar. 20, 2025 Ltr. from A. Davidoff).)  That letter stated:

   a. "The Republic searched in the *Sistema de Gestión Documental Electrónica* ('GDE'), which . . . houses the Republic's official reports and communications, for communications and documents exchanged between the Ministry of Economy and BCRA from December 2022 to December 2024.  The Republic then conducted a search within these results for any documents containing the search terms '*oro*' and '*reservas*' (the Spanish terms for 'gold' and 'reserves').  No responsive documents resulted from this search." (*Id.*)

   b. "The Republic also collected and reviewed inboxes, some of which required restoration from backup tapes, of the four custodians it identified as most likely to have information on the location and purpose of the reserves.  This collection entailed:  (1) the inbox of Joaquín Alberto Guillermo Cottani, the former Secretary of Economic Policy, for the period he was in office (December 2023 to July 2024); (2) the inbox of José Luis Daza Narbona, the current Secretary of Economic Policy, from September 2024 to December 2024; (3) the inbox of spe@mecon.gov.ar, which is the institutional account for the Secretariat of Economic Policy, from January 2024 to November 2024 (when the account was deactivated); and (4) the inbox of secfinanzas@mecon.gov.ar, which is the institutional account for the Secretariat of Finance, from January 2024 to November 2024 (when the account was deactivated).  Counsel for the Republic then reviewed all emails in this collection that hit on the terms '*oro*' and '*reservas*' and found no responsive documents." (*Id.* at 2.)

   c. "The Republic also ran the same terms across the back-up tapes previously restored through May 2024 in relation to Plaintiffs' YPF and BCRA Requests, and again found no responsive documents." (*Id.*)

36. On July 16, 2025, Plaintiffs asked to "meet and confer on receiving the remainder of the production ordered by the Court on January 14, 2025 (Dkt. 703), including but not limited to the gold reserves." (Ex. 13 at 4 (July 16, 2025 Ltr. from M. Alinikoff).) On July 18, 2025, the Republic responded that "the location of the gold reserves is a matter of reserve management within BCRA's exclusive purview and is handled in a confidential manner by BCRA. This is further confirmed by information about the movements of BCRA's gold reserves that Plaintiffs have elicited through third-party subpoenas, which show that movements of the reserves are arranged by BCRA without involvement of the Republic." (Dkt. 854-1 at 8 (July 18, 2025 Ltr. from A. Davidoff).)

37. Plaintiffs' August 18, 2025 "preliminary list" of seven topics "for which Plaintiffs [sought] the identification of a 30(b)(6)-style person or persons with knowledge" included a request for a witness to testify about "the gold or precious metal reserves of Argentina, including but not limited to any gold or precious metal reserves held in the United States or any Foreign Country and the movement of gold or any other precious metal reserves from Argentina to any other location." (Dkt. 808-7 (Aug. 18, 2025 Email from A. Bonelli).)

38. On November 11, 2025, the Republic designated Luis Alberto Trajtenberg, the National Director of Models and Projections of the Ministry of Economy, as its witness on the gold or precious metal reserves of Argentina and the parties agreed that he would testify on January 8, 2026. The parties met and conferred prior to the deposition on January 6, 2026.

39. On January 8, 2026, Plaintiffs deposed Mr. Trajtenberg. Mr. Trajtenberg testified that he had spent "[a]pproximately eight hours" preparing for the deposition. (Ex. 14 at 31:24 (Trajtenberg Dep. Tr.).) He confirmed that "the legal and technical secretariat [ ] conducted a search of the GDE electronic document management system, which is the official [record] system [of the Argentine government,] as well as the official email accounts" when looking for information responsive to Plaintiffs' request. (*Id.* at 38:6-11.)

40. Mr. Trajtenberg testified that the Republic does "not have any information" on BCRA's gold reserves "other than what the Central Bank publishes" "on its website." (*Id.* at 18:23-19:7.) He explained that "[t]he Central Bank of the Argentine Republic . . . has its own functional

autonomy, it has its own charter and [is] in charge of everything related to managing gold reserves and [the Republic] do[es] not have any information other than what the Central Bank publishes." (*Id.* at 18:17-25.)

41. On January 21, 2026, Plaintiffs filed a pre-motion letter concerning a motion to "compel the Republic to immediately provide a sworn statement identifying the location, movements, and account(s) holding the gold, and make the witness available for testimony." (Dkt. 858 at 1.) Plaintiffs requested that the Court hold an "evidentiary hearing if the Republic fails to do so based on claimed lack of access to information BCRA has or otherwise." (Dkt. 858 at 1.) On January 26, 2026, the Republic filed its response to Plaintiffs' letter. (Dkt. 861.)

**Swap Agreements**

42. Plaintiffs' First Request for Production No. 20 and Second Request for Production No. 15 sought "[d]ocuments sufficient to identify" and "concerning" "any financial agreement between China and Argentina," "including . . . any currency swap agreement between People's Bank of China and BCRA." The Republic objected to the request for swap agreements between People's Bank of China and BCRA on the ground that BCRA is a "separate, non-party entity" and "thus is not under the Republic's control." (Ex. 2 at 32 (R&Os to First Requests); Ex. 15 at 6 (Jan. 26, 2024 Ltr. from L. Harris).) Nevertheless, at the parties' January 19, 2024 meet-and-confer, the Republic agreed to consider producing any documents concerning swap agreements within the Republic's possession, custody, or control. (*Id.*)

43. On April 15, 2024, the Republic informed Plaintiffs that after consultation with the Ministry of Foreign Affairs and the Ministry of Economy, via its Undersecretariat of International Financial Relationships, no such documents are in the Republic's possession, custody, or control. (Ex. 8 at 3-4 (Apr. 15, 2024 Ltr. from A. Davidoff); *see also* Ex. 16 at 1 (May 3, 2024 Ltr. from A. Davidoff).)

44. At Plaintiffs' request, the Republic also asked the Office of the Chief of Cabinet and the General Secretariat of the Presidency for any responsive documents in their possession. Both stated that they did not have copies of the swap agreements or any related documents. (Ex. 16 at 1 (May 3, 2024 Ltr. from A. Davidoff); Ex. 17 at 5 (June 4, 2024 Ltr. from A. Davidoff).)

45. At the same time, the Republic informed Plaintiffs that it does have in its possession, custody, or control documents concerning financial agreements between *the Republic* and Chinese entities.   On April 12, 2024, the Republic produced documents concerning four such agreements:  (1) *Aprovechamiento Hidroeléctricos del Río Santa Cruz 'Represas Presidente Dr. Néstor Kirchner y Gobernador Carlos Cepernic'*; (2) *Proyecto de Rehabilitación del Ferrocarril Belgrano Cargas*; (3) *Parque Fotovoltaico Cauchari Solar I, II y III*; and (4) *Proyecto Integral Jujuy Seguro e Interconectado*.  (Ex. 8 at 4 (Apr. 15, 2024 Ltr. from A. Davidoff); Dkt. 737-1 at 32-33 (R&Os to Information Subpoena).)

46. On May 2, 2025, Plaintiffs asserted that the Republic had "refused to produce any documents relating to a well-publicized currency swap agreement with China."  (Ex. 18 at 5 (May 2, 2025 Ltr. from Alejandra Ávila).)  In response, the Republic reiterated that "it was not a party to the agreement, the Central Bank of Argentina (BCRA) was."  (Ex. 19 at 6 (May 23, 2025 Ltr. from A. Davidoff).)

47. On August 18, 2025, the Republic agreed at Plaintiffs' request to conduct a reasonable search for the bank accounts used in connection with the four financial agreements between *the Republic* and Chinese entities which it had previously produced to Plaintiffs.  (*See* Ex. 20 at 5 (Aug. 18, 2025 Ltr. from A. Davidoff).)   The Republic thereafter produced responsive information.  (Ex. 21 at 1-3 (Oct. 31, 2025 Ltr. From A. Davidoff.).)

48. Plaintiffs' August 18, 2025 "preliminary list" of seven topics "for which Plaintiffs [sought] the identification of a 30(b)(6)-style person or persons with knowledge" included a request for "[i]nformation concerning Argentina's financial agreements between China (as defined in Plaintiffs' RFPs) and Argentina ('Agreements with China') . . . and the search for such agreements in response to Plaintiffs' discovery requests.  (First RFPs 20, 21; Second RFPs 15, 16; Information Subpoena Questions 13, 14, 15, 16)."  (Dkt. 808-7 (Aug. 18, 2025 Email from A. Bonelli).)

49. On December 2, 2025, Plaintiffs deposed Matías Javier Mana, the Undersecretary of International Financial Relationships within the Secretariat of Finance of the Ministry of Economy, whose role for many years has been to negotiate the very financial agreements that

were the subject of his deposition.  Mr. Mana confirmed that the counterparty to a 2009 swap agreement with China was the BCRA, not the Republic, and because the BCRA is "independent" from the Republic, officials from the Republic "cannot" access documentation about the agreement.  (Ex. 22 at 77:14-78:7 (Mana Dep. Tr.).)  Mr. Mana further explained that his undersecretariat is the only entity authorized to manage bilateral financing and therefore the only entity that could possibly possess responsive documents; that he personally reviewed the Ministry of Economy's digitized historical files back to 2013-2014; and that he learned during preparation for his deposition that the Republic's attorneys separately consulted the Ministry of Foreign Affairs, which confirmed that no additional financial agreements with China (other than the four previously identified by the Republic) exist.  (*Id.* at 25:25-26:10, 67:25-68:3, 44:18-22.)

50. Despite Mr. Mana's testimony to the contrary, Plaintiffs maintain that the swap agreement was "between Argentina and China."  (Dkt. 842 at 8.)  At the December 9, 2025 conference, the Republic reiterated Mr. Mana's testimony that, as a non-signatory, it lacked access to the agreement.  (Dkt. 847 at 49:5-7, 50:6-9.)  The Court then ordered the Republic to request the agreement from the BCRA.  (*Id.* at 49:17-23.)  I understand that the Republic requested the agreement on December 26, 2025.  The Republic received a response from BCRA on January 22, 2026 stating that it would not provide the requested information.

**Personal Communications**

51. Beyond seeking discovery regarding the Republic's worldwide assets, Plaintiffs also served discovery requests directed to the Republic's alleged alter-ego relationships with six Argentine entities: BCRA, Aerolíneas, BNA, ARSAT, ENARSA, and YPF.  The Republic objected to the alter-ego requests because the entities "are not alter egos of the Republic and therefore their assets are not subject to attachment or execution to satisfy a judgment against the Republic." (Ex. 2 at 43 (R&Os to First Requests).).  The Republic also objected to the alter-ego requests "to the extent they purport[ed] to require the Republic to collect or review documents outside the scope of the Republic's normal business operations, such as text messages, electronic chats, personal files, or personal e-mails" or "provide information that is in the possession, custody,

or control of any individual, agency, or instrumentalities of the Republic with legal identities separate and apart from those of the Republic." (*Id.* at 7-8.)

52. In May 2024, Plaintiffs submitted a pre-motion letter "request[ing] that the Court order the Republic to produce documents responsive to" Plaintiffs' alter-ego requests. (Dkt. 568 at 2.) Plaintiffs stated that they sought "this discovery to determine whether any of the [identified entities] is currently an alter ego of the Republic." (*Id.*) Plaintiffs' letter did not mention seeking documents on personal accounts and devices. (*Id.*) In response, the Republic argued that "[b]ecause Plaintiffs have made no showing calling into question the conclusions of multiple courts that each of the Entities is not the Republic's alter ego, the Court should not permit Plaintiffs to seek discovery that is 'simply not "relevant" to execution in the first place.'" (Dkt. 572 at 3.) The Court granted Plaintiffs' request to conduct alter-ego discovery as to YPF and BCRA for a two-year period. (Dkt. 592 at 39:20-25.) But the Court rejected Plaintiffs' request as to the four other entities (BNA, Aerolíneas, ENARSA, and ARSAT). (*Id.*)

53. In June 2024, Plaintiffs sent the Republic their "Custodian and Search Term Proposals for Plaintiffs' Alter Ego Requests." (Ex. 23 (June 18, 2024 Email from C. Corey).) Plaintiffs proposed that the Republic conduct searches of custodians' government emails, but did not propose searching custodians' personal devices or accounts. (*Id.*) The Republic disputed the need to search even government emails in response to Plaintiffs' alter-ego requests, but nevertheless agreed to perform those email searches with regard to YPF and BCRA. (Ex. 4 (July 27, 2024 Email from H. Masters).)

54. In August 2024, Plaintiffs requested for the first time searches of the custodians' communications on their personal cellphones and messaging applications. (Dkt. 641 at 3.) The targeted custodians included the Republic's current Minister of Economy (Luis Caputo), the prior administration's Minister of Economy (Sergio Massa), the prior administration's Secretary of Commerce (Matías Tombolini), the current Secretary of Treasury (Carlos Guberman), as well as dozens of other senior officials. (Dkt. 641-4 at 3.) The Republic objected, explaining to the Court that not only are these personal devices not in the Republic's control, but also that because of Argentine constitutional rights to privacy and property, it could

not "legally produce communications from officials' personal accounts and devices (such as Gmail or WhatsApp) without obtaining their consent." (Dkt. 641 at 6.)

55. On July 29, 2025, the Court ordered the Republic to collect and produce communications on the personal cellphones and messaging applications of certain high-ranking current and former Argentine government officials (the "Personal Device Order"). (Dkt. 772 at 53:18-21.) On August 27, 2025, the Court denied the Republic's motion for reconsideration of the order. (Dkt. 785.)

56. I understand that the Republic next evaluated what means exist for the Republic to obtain access to the requested communications. I understand that the Republic determined that the most reasonable and efficient path to obtain the communications would be for Plaintiffs to request letters rogatory to an Argentine court under the Hague Convention, which is the typical way to proceed when a party seeks discovery from a non-party foreign national residing in a foreign country. (Ex. 24 at 1-2 (Sept. 15, 2025 Ltr. from A. Davidoff).) Plaintiffs refused to proceed by the Hague Convention. (Dkt. 808 at 2-3.)

57. After extensive consultations over Argentine legal requirements governing the collection and production of information on non-governmental devices and/or platforms, I understand that the Republic proceeded to request voluntary cooperation from the custodians in producing the relevant communications.

58. On November 10, 2025, the Republic updated Plaintiffs about how each of the 36 custodians, which include current and former officials, had responded to the request for voluntary cooperation. (Dkt. 842-2 at 3 (Nov. 10, 2025 Ltr. from R. Giuffra).) The Republic explained that several officials from the current administration voluntarily agreed to provide responsive communications, if any, on their personal devices and accounts on non-governmental, web-based platforms. (*Id.* at 1.) I understand that several current and former officials, by contrast, declined consent, invoking their rights under Argentine law. (*See, e.g.*, *id.* at 4-5.)

59. On November 17, 2025, Plaintiffs reiterated their position that the Republic must produce communications from the personal devices and accounts of all custodians, even those who had

asserted their right not to produce such communications under Argentine law.  (Dkt. 842-5 at 1-2 (Nov. 17, 2025 Ltr. from S. Levine).)

60. On November 21, 2025, the Republic made its first of four productions of personal communications responsive to the Personal Device Order.  The production consisted of 103 pages of documents.  These documents were collected from the personal WhatsApp accounts of Antonio Milanese (Undersecretary for Energy Transition and Planning, Ministry of Economy) and Eduardo Oreste (former Advisor, Energy Secretariat). At the same time, the Republic completed its review of communications collected from Mariela Beljansky's personal email account (former Undersecretary of Energy Transition and Planning, Ministry of Economy), but did not identify any responsive material.  (Ex. 25 (Nov. 21, 2025 Ltr. from A. Davidoff).)

61. On November 28, 2025, the Republic made its second production of personal communications responsive to the Personal Device Order. The Republic's second production consisted of 107 pages of documents.  These documents were collected from the personal WhatsApp accounts of Mariela Beljansky (former Undersecretary of Energy Transition and Planning, Ministry of Economy), Eduardo Javier Rodríguez Chirillo (former Secretary of Energy, Ministry of Economy), and Damián Eduardo Sanfilippo (Undersecretary of Electric Energy).  (Ex. 26 (Nov. 28, 2025 Ltr. from A. Davidoff).)

62. On December 8, 2025, the Republic made its third production, consisting of 33 pages of documents.  These documents were collected from the personal WhatsApp accounts of José Rolandi (then Deputy Executive Chief, Office of the Chief of Cabinet) and Luis Francisco de Ridder (former Undersecretary of Hydrocarbons and former Undersecretary of Liquid Fuels). At the same time, the Republic completed its review of communications collected from the personal email accounts of Messrs. de Ridder and Rodríguez Chirillo and did not identify any responsive material.  (Ex. 27 (Dec. 8, 2025 Ltr. from A. Davidoff).)

63. On December 9, 2025, the Court held a status conference on ongoing discovery issues.  At the conference, Plaintiffs stated that they intended to move for sanctions on the Personal Device Order, including adverse inferences and monetary penalties.  (Ex. 28 at 6:22-24 (Dec. 9, 2025

Conf. Tr.).)  Plaintiffs also argued that to the extent the Republic wished to defend itself, the Court should hold an evidentiary hearing.  (*Id.* at 6:24-7:6.)  The Court instructed the parties to confer over a briefing schedule.  (*Id.* at 19:15-20:9.)  The Court also ordered the Republic to produce the personal communications of all consenting custodians by January 10, 2026.  (*Id.* at 17:15-19.)

64. On January 10, 2026, the Republic made its fourth production of communications responsive to the Personal Device Order.  The production consisted of 467 pages of documents.  Those documents were collected from the personal WhatsApp accounts of María Carmen Tettamanti (current Secretary of Energy), Maggie Luz Videla Oporto (former Undersecretary of Hydrocarbons), Guillermo Alberto Francos (former Chief of Cabinet), Hernán Adrián Gómez (current Undersecretary of Air Transportation), and Carlos Jorge Guberman (current Secretary of Treasury). This production also included documents collected from a Gmail account used by Mr. Gómez and his administrative secretaries at the Undersecretariat for Air Transportation. As of that production, Luis Octavio Pierrini (then Secretary of Transportation), Nicolás Posse (former Chief of Cabinet), Raúl Enrique Rigo (former Secretary of Treasury), and Gabriel Ernesto Rubinstein (former Secretary of Economic Policy) had consented to cooperate, but the Republic had not yet been able to collect their communications.  (Ex. 29 (Jan. 10, 2026 Ltr. from A. Davidoff).)

65. On January 15, 2026, Plaintiffs filed a motion for sanctions and a contempt finding against the Republic on the ground that the Republic has violated the Personal Device Order by failing to produce the personal accounts of non-consenting officials.  (Dkt. 853.)  Plaintiffs requested sanctions in the form of:  (1) an order precluding the Republic from disputing that certain state-owned entities are alter egos, (2) adverse inferences regarding these entities' putative alter-ego status, and (3) a monetary fine of at least $1 million per day of noncompliance.  (*Id.* at 8.) Plaintiffs also took the position that, if the Republic continues to dispute whether it has access to the non-consenting officials' communications, the Republic should produce the relevant officials to testify at an evidentiary hearing.  (*Id.* at 8-9.)

66. The Republic's opposition to Plaintiffs' motion for sanctions and contempt is due on February 19, 2026. (Dkt. 845 at 1.)  Plaintiffs' reply is due on March 5, 2026.  (*Id.*)

67. To date, the Republic has collected, reviewed, and produced responsive communications from twelve current and former officials.  In addition, the Republic collected the communications of Mr. Rubinstein on January 16, 2026, and is currently reviewing those communications.  The Republic is still endeavoring to collect communications from three former officials, Messrs. Pierrini, Posse, and Rigo, who have agreed to cooperate but have not scheduled collections.

68. Overall, I understand that five current officials have refused to cooperate:  Horacio Federico Veller (current Undersecretary of Liquid Fuels), Pablo Quirno Magrane (current Minister of Foreign Affairs), Susana Beatriz Casillas (current National Director of the Office of Public Credit), Jorge Horacio Domper (current National General Treasurer), and Luis Caputo (current Minister of Economy).  I understand that seven former officials have refused to cooperate: Franco Hernán Mogetta Prevedello (former Secretary of Transportation), Eduardo Pablo Guillermo Setti (former Secretary of Finance), Flavia Gabriela Royón (former Secretary of Energy), José Ignacio de Mendiguren (former Secretary of Industry and Productive Development), Sergio Tomás Massa (former Minister of Economy), and Matias Raúl Tombolini (former Secretary of Commerce).  I understand that one former official has stated that he did not conduct government business through personal communications:  Martín Miguel Di Bella (former Secretary of the Treasury); and another, Rafael Ignacio Brigo (former Secretary of Finance), has stated that he did not communicate with anyone at BCRA through personal communications.  I understand that another former official stated he possesses no documents related to this action:  Norman Darío Martínez (former Secretary of Energy).  The Republic is still awaiting a response from one current official who is consulting with his personal attorney about this matter:  José Luis Daza Narbona (current Secretary of Economic Policy).  Finally, the Republic has not received an answer from four former officials as to whether they will cooperate:  Agustín Oscar Rossi (former Chief of Cabinet), Juan Luis Manzur (former Chief of Cabinet), Eduardo Enrique de Pedro (former Minister of the Interior), and Guillermo Michel (former National Director of Customs of the Federal Administration of Public Revenues).

Executed on January 27, 2026 in Washington, DC

*/s/ Amanda Flug Davidoff*

Amanda Flug Davidoff

**Appendix A**

| Entity No. | Entity Name | Date(s) Served |
|:---:|:---:|:---:|
| 1 | The Bank of New York Mellon | 11/3/2023; 3/5/2025; 11/17/2025 |
| 2 | Banco de Brasil, S.A. | 3/13/2024 |
| 3 | Barclays Bank, PLC | 3/13/2024; 11/13/2025 |
| 4 | BlackRock International Holdings, Inc. | 3/13/2024 |
| 5 | BlackRock, Inc | 3/13/2024 |
| 6 | Citibank, N.A. | 3/13/2024; 12/4/2025 |
| 7 | Commerzbank Aktiengesellschaft | 3/13/2024; 11/12/2025 |
| 8 | Credit Agricole CIB Corp. | 3/13/2024 |
| 9 | Industrial and Commercial Bank of China Limited | 3/13/2024 |
| 10 | Itaú Chile | 3/13/2024 |
| 11 | Itaú Unibanco S.A. | 3/13/2024 |
| 12 | Natixis | 3/13/2024 |
| 13 | Cooperatieve Rabobank U.A. New York | 3/13/2024 |
| 14 | Société Générale S.A. | 3/13/2024 |
| 15 | Standard Chartered Bank | 3/13/2024; 7/18/2025 |
| 16 | UBS AG | 3/13/2024; 11/10/2025 |
| 17 | American Express National Bank | 3/11/2024 |
| 18 | Banco Santander, S.A. | 3/11/2024; 11/25/2025 |
| 19 | Bank of America, N.A. | 3/11/2024; 11/24/2025 |
| 20 | Banco Bilbao Vizcaya Argentaria (BBVA), S.A. | 3/11/2024; 4/10/2025; 11/25/2025 |
| 21 | BNP Paribas, S.A. | 3/11/2024 |
| 22 | Deutsche Bank AG | 3/11/2024 |
| 23 | HSBC North America Holdings Inc. | 3/11/2024 |
| 24 | JPMorgan Chase Bank, N.A. | 3/11/2024; 4/6/2025; 11/10/2025 |
| 25 | Wells Fargo Bank, N.A. | 3/11/2024; 12/11/2025 |
| 26 | Wilmington Trust, N.A. | 3/11/2024 |
| 27 | YPF | 3/25/2024 |
| 28 | Banco de la Nación Argentina | 4/1/2024 |
| 29 | Banco Latinoamericano de Comercio Exterior, S.A. | 4/19/2024 |
| 30 | The Clearing House Payments Company L.L.C. | 4/19/2024; 11/10/2025 |
| 31 | MUFG Bank, Ltd. | 4/23/2024 |
| 32 | Bank of China | 4/23/2024; 7/11/2025 |
| 33 | Berk Communications | 5/2/2024 |

| Entity No. | Entity Name | Date(s) Served |
|---|---|---|
| 34 | Ferox Strategies LLC | 5/2/2024 |
| 35 | Hydro Systems USA, Inc | 5/2/2024 |
| 36 | Mercury Public Affairs LLC | 5/2/2024 |
| 37 | Myriad International Marketing LLC | 5/2/2024; 5/23/2024 |
| 38 | Space Exploration Technologies Corp. | 5/14/2024 |
| 39 | Starlink Services, LLC | 5/14/2024 |
| 40 | Kuiper Systems LLC | 5/15/2024 |
| 41 | Calfrac Well Services Corp. | 5/23/2024 |
| 42 | DeGolyer and MacNaughton Corp | 5/23/2024 |
| 43 | Excelerate Energy, Inc. | 5/23/2024 |
| 44 | Excelerate Energy Limited Partnership | 5/23/2024 |
| 45 | IAPG Houston, Inc | 5/23/2024 |
| 46 | Progress Resources USA Ltd | 5/23/2024 |
| 47 | Clearing House Payments Company L.L.C (second subpoena) | 5/23/2024 |
| 48 | BlackCoral Energy (USA), LLC | 6/5/2024 |
| 49 | Braskem America, Inc. | 6/5/2024 |
| 50 | Compagnie Du Ponant USA LLC | 6/5/2024 |
| 51 | Eliis Inc. | 6/5/2024 |
| 52 | Nitron Group LLC | 6/5/2024 |
| 53 | Man Energy Solutions USA | 6/20/2024 |
| 54 | Ocean Energy Inc. | 6/20/2024; 9/16/2024 |
| 55 | PGR Operating LLC | 6/20/2024 |
| 56 | Safran Helicopter Engines USA, Inc | 6/20/2024 |
| 57 | Trafigura Trading LLC | 6/20/2024 |
| 58 | WEG Electric Corp. USA | 6/20/2024 |
| 59 | Gunvor USA LLC | 6/20/2024 |
| 60 | Exxon Mobil Corp. | 6/20/2024 |
| 61 | KTB-USA Import-Export, LLC | 6/21/2024 |
| 62 | GS Investigations LLC | 6/21/2024 |
| 63 | Loomis Armored US, LLC | 8/7/2024 |
| 64 | Loomis International (US) LLC | 8/7/2024 |
| 65 | British Airways PLC | 8/20/2024 |
| 66 | Duquesne Family Office | 10/16/2024 |
| 67 | Stone Ridge Holdings Group LP | 10/16/2024 |
| 68 | Stone Ridge Asset Management LLC | 10/16/2024 |
| 69 | Arthur D. Little LLC | 12/16/2024 |

| Entity No. | Entity Name | Date(s) Served |
|---|---|---|
| 70 | Pumpco, Inc. | 12/19/2024 |
| 71 | Montanagonia Investments LLC | 12/19/2024 |
| 72 | Techint Engineering Technical and Commercial Services LLC | 12/20/2024 |
| 73 | Samsung Heavy Industries Co., Ltd. | 12/30/2024 |
| 74 | Shell USA, Inc. | 1/2/2025 |
| 75 | Energy Transfer LP | 1/2/2025 |
| 76 | Delta Air Lines, Inc. | 1/7/2025 |
| 77 | Avianca, Inc. | 1/7/2025 |
| 78 | Cube Group, Inc. | 1/24/2025 |
| 79 | Rainmaker Technology Corporation | 1/24/2025; 1/30/2025 |
| 80 | LeoLabs, Inc. | 1/29/2025 |
| 81 | Goldman Sachs & Co. LLC | 1/30/2025 |
| 82 | Moore Capital Management, LP | 1/30/2025 |
| 83 | Mastercard International Incorporated | 1/30/2025 |
| 84 | HP Inc. | 1/31/2025 |
| 85 | S. C. Johnson & Son, Inc. | 1/31/2025 |
| 86 | Converium Capital (USA) Inc. | 2/5/2025 |
| 87 | Mastercard Incorporated | 2/5/2025 |
| 88 | Oracle Advisory Group Inc. | 2/18/2025 |
| 89 | Morgan Stanley | 3/5/2025 |
| 90 | The Depository Trust Company (DTC) | 3/6/2025 |
| 91 | Citigroup Inc. | 3/20/2025 |
| 92 | BMO Harris Bank N.A. | 4/28/2025 |
| 93 | Ameris Bank | 4/29/2025 |
| 94 | Zions First National Bank | 5/7/2025 |
| 95 | Industrial and Commercial Bank of China Ltd., New York Branch | 6/6/2025 |
| 96 | Motorola Solutions, Inc. | 7/11/2025; 11/18/2025 |
| 97 | Springer Nature Customer Service Center LLC | 7/16/2025 |
| 98 | Republican Action for Argentina (RA4ARG) | 10/3/2025 |
| 99 | Deutsche Bank Trust Co. Americas | 10/21/2025 |
| 100 | UMB Bank, National Association | 10/22/2025 |
| 101 | BNP Paribas USA | 11/12/2025 |
| 102 | HSBC Bank USA, N.A. | 11/13/2025 |
| 103 | Société Générale S.A., New York Branch | 11/18/2025 |

| Entity No. | Entity Name | Date(s) Served |
|---|---|---|
| 104 | Cloudflare Inc. | 11/19/2025 |
| 105 | Namecheap Inc. | 11/19/2025 |
| 106 | Sur Energy LLC | 11/20/2025 |
| 107 | Open AI Inc. | 11/20/2025 |
| 108 | KBC Bank | 11/20/2025 |
| 109 | Bank of China, New York Branch | 11/24/2025 |
| 110 | American Chemical Society | 11/24/2025 |
| 111 | Biomarin Pharmaceutical Inc. | 12/5/2025 |
| 112 | Abbvie Inc. | 12/5/2025; 1/14/2026 |
| 113 | Pfizer Inc. | 12/5/2025 |
| 114 | Gilead Sciences, Inc. | 12/11/2025 |
| 115 | Tactic COC LLC | 12/20/2025 |
| 116 | Banco do Brasil Americas | 12/22/2025 |
| 117 | Standard Chartered Bank, New York Branch | 1/2/2026 |
| 118 | Iberia Lineas Aereas de Espana Sociedad Anonima Operadora | 1/22/2026 |
| 119 | Duncan Aviation, Inc. | 1/22/2026 |
| 120 | Associated Energy Group LLC | 1/23/2026 |