# LEVINE LEE LLP

400 Madison Avenue
New York, NY 10017
212-223-4400 main
www.levinelee.com

**Seth L. Levine**
212-257-4040 direct
slevine@levinelee.com

February 6, 2026

**VIA ECF**
Hon. Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

>   **Re**: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, **No. 15-cv-02739**; *Eton Park Capital Management, L.P. v. Argentine Republic*, **No. 16-cv-08569**

Your Honor:

Plaintiffs respectfully submit this letter in opposition to the Republic's motion to stay post-judgment discovery and related contempt proceedings pending appeal. This is the latest act in a longstanding pattern of obstruction by a recidivist violator to frustrate judgment enforcement. Worse still, this motion reflects a calculated strategy: the Republic refused to comply with the Court's stay conditions, exploited every opportunity to obstruct discovery and evade accountability, and now—as sanctions and contempt loom—seeks to derail the process.

I.   **The Republic Is Not Entitled to a Stay and Improperly Fails to Address the Court's Previous Ruling**

The Republic previously moved for a stay. The Republic declined to comply with the conditions the Court imposed, Dkt. 527, posting no security and seeking no expedited review. Enforcement began "solely because of the Republic." Dkt. 753 at 2. Now, more than two years later, the Republic returns with what is effectively a motion for reconsideration, once again seeking an unsecured stay of proceedings to enforce the judgment. Nothing in the record justifies that relief. To the contrary, the

Hon. Loretta A. Preska
February 6, 2026
Page 2

passage of time, the Republic's history of contempt, and its record of obstruction make an unsecured stay even less defensible today than it was then.

## II. The Republic's Own Inequitable Conduct Further Demonstrates a Stay Is Inappropriate

A stay is an equitable remedy. The Republic's inequitable conduct makes equitable relief inappropriate. *See, e.g.*, 27A Am. Jur. 2d Equity § 15 (Jan. 2026) ("One who seeks equity must do equity."). The Republic has repeatedly refused to comply with its discovery obligations, while publicly insisting that Plaintiffs' requests "must stop." Ex. A at 2. The Court has recognized the Republic's bad faith, noting that the Republic pursued a "strategy of procedural delay and obfuscation," "mouthing an intent to cooperate but refusing to do so," Dkt. 533 at 5, and that, "given all of the Republic's delay tactics," good faith does not "tilt . . . in its favor." July 29 Tr. at 51:10–12. Recently, the Court described the Republic's conduct as "mere gamesmanship intended to delay collection." Dkt. 843 at 13.

The record confirms that assessment. As detailed in the Appendix (Ex. B), the Republic refused to conduct searches based on a blanket "executability" objection after the Court rejected it, forcing repeated motion practice. App'x ¶¶ 14–15, 34–35. When the Republic produced documents, it did so belatedly and incompletely, including producing nothing in response to many requests and, after a purported three-month search across 114 ministries, only fifteen files relating to Argentine assets. *Id*. ¶¶ 16, 19, 30. After the Court found it "obvious" that officials conduct official business on personal accounts—rejecting the Republic's baseless denials—the Republic failed to comply with the Off-Channel Order, prompting Plaintiffs' motion for sanctions and contempt. *Id*. ¶¶ 20–21, 48. After more than a year of refusing to identify individuals with knowledge, the Republic produced Rule 30(b)(6) designees only when ordered to, and then deliberately presented unprepared witnesses who could not testify meaningfully about either its search methods or the designated topics, rendering the depositions largely pointless. Its China-agreements designee could not explain basic search procedures and could speak only to the scope of his position. *Id*. ¶¶ 39–40. Its gold-reserves designee made no effort to educate himself and knew nothing beyond public sources. *Id*. ¶¶ 44–45.

Against this record of sustained noncompliance and bad faith, the Republic's request for equitable relief fails at the threshold.

### III. The Republic Cannot Satisfy the *Nken* Factors

Under *Nken v. Holder*, 556 U.S. 418 (2009), the Republic bears a heavy burden and fails each factor.

*First*, the Court's opinion was sound, and the Republic has not made a "strong showing" that it is likely to succeed on appeal. *Id*. at 434. It offers only conclusory assertions.

*Second*, the Republic cannot demonstrate irreparable harm. "Burdensome or expensive discovery alone" is insufficient to make the required showing. *New York v. U.S. Dep't of Com.*, 339 F. Supp. 3d 144, 149 (S.D.N.Y. 2018). Now, facing sanctions and contempt, the Republic seeks a stay as a shield. That request "ring[s] hollow" where the Republic's predicament results from "plainly dilatory tactics." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 102 (2d Cir. 2012). Nor may the Republic rely on contempt consequences as irreparable harm. Dkt. 865 at 3. "It would surely be anomalous" to permit a party to satisfy irreparable harm by pointing to its own contempt. *In re Frankel*, 192 B.R. 623, 630 (S.D.N.Y. Bankr. 1996).

*Third*, a stay materially prejudices Plaintiffs by freezing incomplete discovery that should instead "continue[] until th[e] judgment shall be satisfied." *First Tech. Cap., Inc. v. Airborne, Inc.*, 380 F. Supp. 3d 217, 220 (W.D.N.Y. 2019). That principle is especially important here, given the massive judgment and the Republic's history of noncompliance.

The Republic's premise—that discovery is complete and it has complied—is false. Dkt. 865 at 3. The Court rejected that claim outright. *See* Jan. 29 Tr. at 69:15-17 ("What is the point there has been enough discovery in the case? That's not true."). Discovery remains incomplete even in categories the Republic has agreed to produce, including alter-ego communications, SWIFTs, and privatization-related documents, in addition to other actively-litigated categories. App'x ¶ 31. And spoliation risk is especially acute for off-channel communications given the Republic's failure to confirm meaningful preservation efforts. *Id*. ¶ 24.

The Republic's reliance on "115,000 pages," Dkt. 865 at 1, is similarly misleading. That figure masks that the Republic produced only approximately

Hon. Loretta A. Preska
February 6, 2026
Page 4

13,500 documents, including public materials and documents produced in other matters: a miniscule production for sovereign asset discovery.

*Fourth*, the public interest favors enforcement of federal judgments and compliance with discovery obligations. Granting a stay would reward years of noncompliance and undermine respect for the Court's orders. *See, e.g.*, Dkt. 742 at 32 ("While the Republic demands that this Court extend comity, it simultaneously refuses to make any effort to honor the Court's unstayed judgment.").

Finally, the Republic cannot satisfy the standard for staying discovery pending appeal of the Off-Channel Order. Dkt. 865 at 3. Discovery orders are generally not appealable. *Amara v. Cigna Corp.*, 53 F.4th 241, 253 n.6 (2d Cir. 2022). The Republic's delay in seeking a stay until sanctions and contempt became imminent forecloses any legitimate claim of irreparable harm.

Respectfully submitted,

*/s/ Seth L. Levine*
Seth L. Levine
Alison M. Bonelli

cc:  All counsel of record via ECF