# EXHIBIT B

# **APPENDIX**[1]

A. *Initial Stay Proceedings*

1. On October 16, 2023 Plaintiffs served their First Post-Judgment Requests for Production of Documents on the Republic. Dkt. 540-1. Ten days after Plaintiffs served those requests, the Republic moved to stay the judgment pending appeal, and it asked the Court to waive the supersedeas bond requirement set out in Federal Rule of Civil Procedure 62(b). *See* Dkts. 513, 514.

2. On November 21, 2023, the Court stayed execution of the judgment and waived the requirement for the Republic to post a supersedeas bond. But "to uphold one of the aims of Rule 62(b), namely providing Plaintiffs assurances of future payment," the Court imposed conditions on the Republic. *See* Dkt. 527 at 7. "[S]o as to avoid further delay," the Court "require[d] the Republic promptly to seek expedited review of its appeal as a condition of proceeding without full security." *See id.* at 10. In addition, the Court required the Republic to "pledge to Plaintiffs" its "equity interest in YPF" and "its receivables under the Yacyretá project." *See id.*

3. Rather than seek the expedition "require[d]" by the Court, the Republic sought additional time to file its opening brief, slowing the appellate process beyond the default timeline. *See Argentine Republic v. Petersen*, No. 23-7370 (2d Cir.), Dkts. 52, 55. As to the remaining conditions, the Republic moved for and obtained an extension, *see* Dkts. 528, 529, and after the time ran, the Republic reported on December 20, 2023 that it could not "legally or practically pledge" those assets to Plaintiffs. Dkt. 531 at 1. The Republic asked the Court to "waive" the conditions it imposed and to "allow the stay to continue through the pendency of [its] appeal." *See id.* at 2.

4. In the Court's words: "Despite the Court's accommodations, on December 20, 2023, the Republic essentially moved for reconsideration and requested further delay, (dkt. no. 531), which the Court promptly denied on December 21, 2023 (dkt no. 533)." Dkt. 538 at 3. The Court also stated that the Republic

---

[1] Plaintiffs submit this Appendix as a guide to the factual record of the Republic's misconduct and to rebut the Republic's incomplete and distorted narrative in the Davidoff Declaration, dated January 28, 2026, Dkt. 867, not as a comprehensive summary of all issues.

has pursued a "strategy of procedural delay and obfuscation" here, "mouthing an intent to cooperate but refusing to do so." Dkt. 533 at 5 (quotations omitted). On January 11, 2024, the Court issued an order, holding that a "reasonable period of time" had elapsed within the meaning of 28 U.S.C. § 1610(c), clarifying that the temporary stay on the execution had expired. *See* Dkt. 538 at 7.

B. *Post-Judgment Discovery*

   5. On February 27, 2024, Plaintiffs were forced to seek the Court's assistance in discovery. *See* Dkt. 539. For months, the Republic had sought to shield entire asset categories from discovery based on its claim that the assets were absolutely immune from attachment under the FSIA or comity principles. *See id.* at 1. At the March 18, 2024 hearing on Plaintiffs' motion, the Court commented on the scope of discovery the Republic had provided up to that point: "145 documents since October, many of which are public, is not acceptable." Mar. 18, 2024 Tr. at 27:7–8. It ordered the Republic to substantially complete within one month its production relating to assets in Argentina or otherwise outside the United States, excluding diplomatic and military assets. *See id.* at 28:13, 31:22–32:6.

   6. In April 2024, the Republic merely continued its practice of producing publicly available material, and it sought an extension of the substantial completion deadline the Court set in the March 18, 2024 hearing. *See* Dkt. 553 at 1-2.

   7. On May 7, 2024, Plaintiffs were forced to seek assistance from the Court again. *See* Dkt. 568. As of that date, the Republic produced only 925 documents; it refused to produce documents related to its alter-ego relationships, in part based on its broad "executability" objection, *see, e.g.,* Dkt. 572 at 3; and it continued to deny Plaintiffs information concerning financial accounts relating to its military, diplomatic, and consular assets.

   8. At the May 28, 2024 hearing on Plaintiffs' May 7, 2024 motion, the Court ordered the Republic to produce information about its "military, diplomatic, and consular assets," subject to the Court's time period limitation of two years. *See* May 28, 2024 Tr. at 25:4–8. It also ordered the Republic to produce documents concerning its alter-ego relationship with YPF and Banco Central de la República Argentina ("BCRA"). *See id.* at 39:20–21. The Court invited the parties "to discuss the others" and reasoned that "some kind of showing ha[d] to be made" as to the remaining alter egos. *See id.* at 39:21–23.

2

9. Notwithstanding the Court's May 28, 2024 order, the Republic did not agree until July 2, 2024 to conduct email searches as to YPF and BCRA. *See* Dkt. 599 at 2. And although Plaintiffs provided the Republic with proposed custodians and search terms on June 18 for those requests, the Republic did not respond to those proposals until July 27. *See id*.

10. Plaintiffs sought judicial intervention again on August 1, 2024. *See* Dkt. 599. As of that date, the Republic had produced only 3,530 documents. *See id*. at 2. Given the persistent delays, Plaintiffs asked the Court to enter a scheduling order for post-judgment discovery to ensure the Republic's compliance. *See* Dkt. 599 at 1-2. In addition, Plaintiffs asked the Court to compel the Republic to produce discovery to determine whether the additional state-owned entities "are presently alter egos of the Republic." *See id*. at 8.

11. On August 20, 2024, without a hearing, the Court entered a scheduling order on post-judgment discovery setting out production deadlines for the Republic. Dkt. 634 at 1-2. It ordered the Republic to complete production of non-ESI documents by October 4, 2024; to begin "rolling production of restored ESI documents" by November 14, 2024; and to "complete[] its ESI production" by December 14, 2024. *See id*. at 2. The Court also directed the parties to submit scheduling proposals for custodians and search terms. *See id*. at 1.

12. On September 3, 2024, the Court held a hearing on the remainder of Plaintiffs' August 1 motion. As to alter-ego discovery, the Court ordered the parties to submit additional briefing on that dispute. *See* Sept. 3, 2024 Tr. at 78:17–20. On November 15, 2024, the Court ordered further briefing on alter-ego issues, in light of the Second Circuit's decision in *Petersen v. Bank Markazi*, No. 15-690, 2024 WL 4758719 (2d Cir. Nov. 13, 2024). *See* Dkt. 685.

13. On January 2, 2025, Plaintiffs sought judicial intervention on continuing deficiencies in the Republic's document discovery. The Republic, without any basis to do so, had continued to produce summaries of SWIFT messages but not the underlying messages themselves. *See* Dkt. 699 at 1. In addition, the Republic failed to provide information regarding its accounts in Argentina and the United States, documents produced in post-judgment litigation in other cases, and information related to its gold reserves. *See id*. at 1-3. Without holding a hearing, the Court construed the premotion letter as a motion to compel and granted Plaintiffs' motion on January 14, 2025. Dkt. 703. The Court then entered an updated scheduling order as to that motion and other discovery on February 18, 2025. Dkt. 718.

14. On July 15, 2025, the Court then ordered the parties to meet and confer to resolve certain of the remaining discovery issues. July 15, 2025 Tr. at 29:17–19. The Court also reiterated to the Republic "[d]o we understand that the executability objection has been overruled?" July 15, 2025 Tr. at 14:3–4; *see also id*. at 7:12–17, 11:5–6 (also rejecting the Republic's overruled "executability" argument). Up until that point, as the Republic confirmed during the parties' meet and confers, it had not performed specific searches in response to Plaintiffs' Argentina-specific discovery requests on the basis of executability. Dkt. 763 at 11.

15. Since the Court's ruling on its "executability" argument, the Republic has continuously asserted this overruled objection. *See, e.g.*, Dkts. 763 at 37 (July 26, 2025 Joint Ltr.); 770 at 4, n.1 (August 5, 2025 ROA Ltr.); 833 at 5, n.2 (November 4, 2025, Joint Ltr.); 842 at 4-5 (December 9, 2025 Joint Ltr.); 863 at 4, 6 (January 27, 2026 Joint Ltr.); July 29, 2025 Tr. at 27:20–28:1, 39:8–11; Aug. 6, 2025 Tr. at 50:11–23; Dec. 9, 2025 Tr. at 9:8–17; Jan. 29, 2026 at 11:5–13, 38:23–24.

16. Following the July 15, 2025 hearing, the parties submitted a Joint Status Report to the Court that outlined the areas of continued disagreement among the parties and the substantial categories of documents the Republic refused to produce. Dkt. 763. Therein, the Republic stood on its objections not to proceed with discovery. For example, in connection with Plaintiffs' requests concerning certain assets in Argentina (including debts, commercial transactions, letters of credit, escrow accounts, and movable assets), the Republic refused to search because the "burdens" of doing so were "staggering" and would require "thousands of hours," even though Plaintiffs made clear both in Court and in the parties meet and confers that they were not interested in contracts of *de minimis* value. *Id.* at 12-14. At the same time, it represented that it was not presently aware with particularity where potentially responsive materials were stored. *Id*. at 10-11. Moreover, the Republic would not provide any support for its claims of "burden" as to Plaintiffs' suggested threshold value despite Plaintiffs' willingness to consider the same. *Id.* at 10, 12. When Plaintiffs proposed that the Republic at least investigate where responsive documents were likely to reside and adopt a reasonable search protocol on that basis, the Republic rejected that proposal, claiming that it was harassing and overly burdensome. *Id*. at 12-14.

17. Additionally, regarding Plaintiffs' request for SWIFT account information, Plaintiffs pointed out in the Joint Status Report that the Republic had merely

4

produced a bare list of accounts without any usable information as to the use or nature of such accounts. *Id.* at 19

18. The Republic also took the position that it was not willing to engage with Plaintiffs during meet and confers on the issue of document preservation or off-channel communication use, refusing to respond or confirm whether it had inquired of any officials about their use of, or preservation of, government-related communications on personal email or messaging applications, other than a general representation that the Republic was "complying with its preservation obligations." *Id.* at 29-30, 32-33.

19. On July 29, 2025, the Court ordered the Republic to identify centralized sources and relevant ministries that may contain responsive information about assets, July 29, 2025 Tr. at 16:15–17:14, and recognized that it was apparent that the Republic had not made inquiries regarding its burden objections for these searches. *Id.* at 10:8–11:18. The Court observed that "given all of the Republic's delay tactics in these cases, … the factor of good faith" does not "tilt … in its favor." *Id.* at 51:10–12. On August 29, 2025, the Republic began to identify certain centralized databases across the "Central Administration" that were "likely" to contain responsive information regarding the Republic's assets. Dkt. 789 at 1.

20. On July 29, 2025, the Court also ordered the Republic to collect and produce off-channel communications by certain Argentine officials. July 29, 2025 Tr. at 52:9-53:23 (the "Off-Channel Order"); Dkt. 785 at 11-12. The Court found that, given "the small size of the productions of official communications so far," and the "evidence that officials use off-channel communications, like WhatsApp, for official communications," it "seems obvious that these officials are conducting official business on their personal accounts." July 29, 2025 Tr. at 53:1–18.

21. Following the Off-Channel Order, the Republic moved for reconsideration, claiming that the Court had failed to consider Argentine law. Dkt. 767. On August 27, 2025, the Court denied the Republic's motion for reconsideration, concluding that even "[a]ssuming, without deciding, that Argentine law applies," the Republic has the practical ability to obtain the off-channel communications, because "off-channel communications concerning official business constitute 'public information' under Argentine law, such that the Republic can request the communications from the officials." Dkt. 785 at 11. On September 26, 2025, the Republic filed a notice of appeal from the Court's

5

Off-Channel Order and its denial of reconsideration regarding the same. Dkt. 800.

22. On August 6, 2025, the Court directed the Republic to provide information to Plaintiffs concerning the Republic's preservation efforts. *See* Aug. 6, 2025 Tr. at 32:20-23. On August 8, 2025, the Republic provided Plaintiffs with certain information about the preservation notices that the Republic sent in September 2024, eleven months after Plaintiffs' document requests—that concerned only alter-ego discovery of YPF and BCRA. *See* Dkt. 789-1 at 1. Plaintiffs subsequently learned that preservation notices regarding ENARSA, BNA, and AA were not issued until twenty-three months after Plaintiffs' document requests. Dkt. 808 at 10.

23. The Republic further revealed that it had issued its September 2024 notices to four government bodies "call[ing] for the preservation" of documents "of" certain actual and potential custodians, but not directly to those actual and potential custodians. *See* Dkt. 789-1 at 1. Additionally, the notices "were also directed to individuals responsible for file and document management and IT staff." *Id*. at 2. The Republic's letter on the subject noted that preservation efforts applied to "cell phones," but was not precise as to whether this included both governmental and non-governmental devices, and off-channel platforms (*e.g.*, Gmail, WhatsApp, *etc*.). *Id.*

24. In writing on August 13 and August 22, and again during the parties' meet and confer on August 29, Plaintiffs asked the Republic to clarify both its September 2024 preservation efforts pertaining to YPF and BCRA and the extent of its post-judgment preservation efforts generally, so that Plaintiffs could understand the preservation steps that have been taken by the Republic. Dkt. 789 at 5. The Republic refused to clarify, and provided no information concerning any preservation notice aside from the September 2024 notice, or any steps it has taken to preserve documents relating to any post-judgment topic aside from YPF's and BCRA's alter ego status. *Id.*

25. On August 29, 2025, the Republic informed Plaintiffs that the Ministry of Foreign Affairs, International Trade and Worship reported that the Ministry owned no movable assets in the United States Embassy and Consulates whose valuation is equal to or greater than $1 million. Dkt. 789 at 7.

26. On September 4, 2025, the Court observed that it was important for Plaintiffs to "know [custodians are] not dumping their phones as we sit here[.]" Sept. 4, 2025 Tr. at 21:10–11. A week later, the Republic sent a letter to Plaintiffs

revealing that, as of at least September 9, 2025, the Republic had not issued any preservation notices directly to certain Court-ordered custodians, much less all individuals who might possess responsive information. In its letter, the Republic provided only the vague assurance that "ministries" were distributing the notices to government-employed custodians, while the Republic was "in the process" of sending notices to custodians who no longer work for the government. Dkt. 808-6 at 10.

27. On September 10, 2025, the Republic claimed that its search of its Sistema de Gestión Documental Electrónica ("GDE") system—which houses the Republic's official reports and communications—and four email inboxes "most likely to have responsive information" yielded zero documents concerning the Republic's gold reserves. Dkt. 808-8 at 5-6. The Republic also claimed that it had identified no responsive information in its searches for information on the Republic's legal and beneficial interests in the United States or any foreign country, *id.* at 6, and that it had identified only four financial agreements with China, *id.* at 9. Finally, the Republic claimed it had identified only a small handful of concession agreements and had identified no accounts in the United States or any foreign country from which it makes payments to any law firm or consulting firm. *Id.* at 10-11.

28. During the October 9, 2025 conference, regarding preservation, the Court stated that, "reasonable steps, in my view, would probably include more than merely sending the notice." Oct. 9, 2025 Tr. at 35:21–23; *see also id*. at 33:6-7. The Republic subsequently produced preservation notices to Plaintiffs. However, the notices: (1) referenced "email" communications, but made no specific reference to text messages or other messaging platforms like WhatsApp; and (2) called for the preservation of documents through the "present" as of the date they were sent, with no explicit continuing obligation to preserve. Dkt. 833 at 3.

29. On December 8, 2025, in response to Plaintiffs proposal from July, the Republic informed Plaintiffs that it refused to search seven additional ministries, secretariats, and undersecretariats relevant to Plaintiffs' requests, Dkt. 863 at 10, despite the fact that Plaintiffs had provided the Republic—in response to the Republic's own request—with extensive information as to these entities' relevance to discovery. *See* Dkt. 854-2 at 3-4.

30. On December 9, 2025, the Republic represented that its production of documents responsive to Plaintiffs' requests concerning certain assets in

7

Argentina was "substantially complete." Dkt. 842 at 6. That representation followed what the Republic described as a three-month search across 114 ministries. Dkt. 863 at 9-10. The resulting production consisted of approximately 15 files, along with the Republic's representation that it had not identified any government-owned movable assets in Argentina valued at over $1 million, or any escrow accounts or letters of credit. Dkt. 842 at 6-7.

31. On December, 23, 2025, the Court observed that "the tactics employed by the Republic in this litigation" indicate "mere gamesmanship intended to delay collection." Dkt. 843 at 13. The Republic has produced approximately 13,500 documents. Its touted 115,000 "pages" of documents comprise more than 20,000 publicly available pages, 20,000 pages from other proceedings, and more than 4,000 duplicate pages. Discovery remains incomplete in categories the Republic has agreed to produce, including SWIFT messages, agreed-upon alter-ego communications, and privatization-related documents, among other categories that are still being actively litigated. *See, e.g.*, Dkt. 842 at 6; Jan. 29, 2026 Tr. at 16:2–12.

C. *Information Subpoena and Depositions*

32. Plaintiffs served their First Information Subpoena on May 15, 2024 (the "Information Subpoena"). Dkt. 599 at 1. On August 1, 2024, as the Republic had failed to respond, Plaintiffs requested that the Court order the Republic to do so. *See* Dkt. 599 at 3-4. On September 3, 2024, the Court ordered the Republic to provide its responses and objections. *See* Sept. 3, 2024 Tr. at 80:17–20.

33. On September 30, 2024, the Republic responded to the Information Subpoena. However, the Republic's response contained broad objections, asserting that Plaintiffs were entitled to no information regarding assets in Argentina because that information—in the Republic's view— would be "useless" to Plaintiffs' execution efforts. *See* Dkt. 737-1 at 7, 54. The Republic also refused to provide the identity of individuals with relevant knowledge. *See id.* at 7, 54. The parties continued to meet and confer over the following months.

34. On June 6, 2025, Plaintiffs sought the Court's intervention again as to the Information Subpoena. *See* Dkt. 736. Notwithstanding multiple meet and confers and the Court's rulings clarifying that the "Republic does not get to just assert that such information could not possibly lead to executable assets," Dkt. 703 at 3; *see* Dkt. 592 at 25:4-6 (similar ruling regarding military and

diplomatic assets), the Republic refused to withdraw its objections to the Information Subpoena that were based on that ground. *See* Dkt. 736 at 2-3.

35. The Court held a hearing on July 15, 2025 on Plaintiffs' June 6, 2025 motion. It reiterated for the Republic "[d]o we understand that the executability objection has been overruled?" July 15, 2025 Tr. at 14:3–4. The Court then ordered the parties to meet and confer regarding the identification of individuals with knowledge as requested in the Information Subpoena. *Id.* at 29:17–19.

36. On August 18, 2025, as directed by the Court, Plaintiffs substantially narrowed their original requests to a request for a 30(b)(6)-style person or persons with knowledge relating to seven discrete topics: (1) the Republic's gold reserves; (2) legal and beneficial interests; (3) commercial transactions; (4) financial agreements with China; (5) concessions or similar agreements; (6) law firm or consulting firm payments; (7) privatizations, and the searches regarding the same. *See* Aug. 6, 2025 Tr. at 35:3–4, 36:2–3; *see also* Dkt. 808-7. In response, the Republic sent Plaintiffs a twelve-page letter reciting the history of the parties' discovery disputes and a summary of its prior searches. 808-8 at 3-12. However, the Republic refused to identify any person with knowledge for any of Plaintiffs' seven topics, including any person with knowledge of the Republic's gold reserves—a topic that Plaintiffs have repeatedly asked the Republic about, *see, e.g.*, Dkt. 763 at 25, July 29, 2025 Tr. at 36:14–37:1, Aug. 6, 2025 Tr. at 34:14–19, 52:21–24, and for which the Court had noted that the identification of a 30(b)(6) witness would be appropriate, *see* Aug. 6, 2025 Tr. at 36:10–18, 53:4–6.

37. On October 9, 2025, Plaintiffs again raised this issue, and the Court ordered the Republic to identify these individuals. Oct. 9, 2025 Tr. at 40:8–13, 41:7–12. Following the Court's order, the Republic still did not fully comply, choosing to identify one witness for Plaintiffs' seven topics: a lawyer for the Republic who had previously been involved in attempts to prosecute Plaintiffs' counsel. Dkt. 833 at 5-6. After the Court subsequently ordered the Republic to produce one knowledgeable witness per topic in addition to that lawyer, Nov. 4, 2025 Tr. at 27:25–28:2, the Republic realized their proposed witness' testimony would include matters the Republic preferred to conceal, and it withdrew the witness, causing further delay. *Id.* at 31:10–14.

38. On November 11, 2025, the Republic finally identified one person with knowledge for each of the seven topics. Dkt. 842 at 8.

9

**China Deposition**

39. Plaintiffs deposed the Republic's first designee (Mr. Matias Javier Mana) on December 2, 2025, regarding the Republic's financial agreements with China. *See* Dkt. 808-7. Mr. Mana could not testify about the scope and methods of the Republic's searches, including how or when those searches were conducted, what search instructions were provided, or why certain search locations were selected to the exclusion of others. *See* Dec. 9, 2025 Tr. at 34:2-10; *see also* Dkt. 842 at 8-9.

40. With respect to the scope of the Republic's searches for financial agreements responsive to Plaintiffs' discovery requests, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████

41. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████ And, despite the Republic's previous repeated representations that it had "no further information to provide," *see, e.g.,* Dkt. 737-3 at 6, the Republic produced—on the eve of the deposition—more than 2,000 pages of documents regarding two of the four project financing agreements. On January 23, 2026, the Republic made another limited production of additional agreements pertaining to exports and other financial activity, although the scope and completeness of that production remain unclear. Dkt. 863 at 15 n.9.

42. The Republic has not produced documents concerning the currency swap agreement with China, claiming it cannot "access" the agreement. *See, e.g.*, Dkt. 737-3 at 7. At the December 9, 2025 conference, the Court directed the Republic to request the agreement from the BCRA and also expressed skepticism regarding the Republic's representation that it could not access the executed agreement, stating that Republic's position was "ludicrous." Dec. 9, 2025 Tr. at 49:23–25; *see also id.* at 35:5–25, 50:10–21. The Republic made its request to the BCRA on December 26, 2025: two weeks after the Court's December 9 directive. Dkt. 863 at 16. On January 27, 2026, the

Republic informed Plaintiffs that the BCRA had "declined to provide a copy of the agreement." *Id.*

43. As described in Plaintiffs' draft proposed order, on January 29, 2026, the Court directed the Republic to provide Plaintiffs with information describing, with specificity, including procedural detail, the searches conducted for documents responsive to Plaintiffs' 30(b)(6) topic concerning Argentina's financial agreements with China, including but not limited to, any currency swap agreement with China. Jan. 29, 2026 Tr. at 63:12–64:5.

### Gold Deposition

44. On January 8, 2026, Plaintiffs deposed the Republic's designee on Argentina's gold reserves (Mr. Luis Alberto Trajtenberg).



45.

46. On February 6, 2026, the Republic submitted an affidavit from José Ignacio García Hamilton, the Legal and Administrative Secretary of the Ministry of Economy of the Argentine Republic, Dkt. 872-1. The Republic did so in response to the Court's order for the Republic to submit, as described in Plaintiffs' draft proposed order, a sworn affidavit identifying where Argentina's gold reserves are held, including the location of Argentina's gold reserves, the account number(s), and any other information designating how the gold reserves are held. *See* Jan. 29, 2026 Tr. at 37:5–8; 37:11–13; 39:11–13; 39:25–40:1; 40:19–25. The affidavit did not provide this information.

**Other Depositions**

47. To date, Plaintiffs have conducted remote depositions of the Republic's designees on four additional topics: (i) concessions and similar agreements; (ii) legal and beneficial interests; (iii) commercial transactions; and (iv) law firm payments. Dkt. 863 at 14. As with the other two depositions, these designees were unable to testify meaningfully about their designated topics and the Republic's search methods. *Id.* at 16-17.

D. *Motion for Sanctions and Contempt*

48. On January 15, 2026, Plaintiffs moved for discovery sanctions and contempt against the Republic based on its willful refusal to comply with the Court's Off-Channel Order. Dkt. 852. The Republic's misconduct underlying the motion is set forth in Plaintiffs' memorandum of law. *See* Dkt. 853 at 4-17. In sum, even though the Court recognized that "major government business" was being conducted through off-channel communications and warned of possible sanctions for continued non-compliance, *id.* at 9, the Republic has continued to resist and evade collection and production of certain of the off-channel communications by, among other things, disputing the discoverability and relevance of off-channel messages, repeatedly asserting overruled objections, and serially changing its positions regarding its "access" to these documents. *See id.* at 9-17; *see also* Dkt. 863 at 1-6.