# LEVINE LEE LLP

400 Madison Avenue
New York, NY 10017
212-223-4400 main
www.levinelee.com

**Seth L. Levine**
212-257-4040 direct
slevine@levinelee.com

February 18, 2026

**VIA ECF**
Hon. Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re: **_Petersen Energía Inversora, S.A.U. v. Argentine Republic_, No. 15-cv-02739; _Eton Park Capital Management, L.P. v. Argentine Republic_, No. 16-cv-08569**

Dear Judge Preska:

      Plaintiffs respectfully submit this letter in response to the Republic's February 5 submission purporting to describe the information available to it regarding the location of its gold reserves. Dkt. 872. The Republic has not complied with the Court's January 29, 2026 order directing it to identify the location of the gold. Consistent with its prior ruling, the Court should therefore schedule an evidentiary hearing and require the Republic to demonstrate the impossibility of production or face sanctions and contempt. _See_ Jan. 29 Tr. at 40:19–23. The Republic's submission also provides further support for the imposition of fees and costs arising from the January 8, 2026 Rule 30(b)(6) deposition of the Republic's gold designee (sanctions that Plaintiffs respectfully submit the Court has already indicated are warranted). _See_ Jan. 29 Tr. at 26:17–21, 30:25–31:20.

    A. **The Republic Has Failed to Comply with the Court's Order and the Court Should Schedule a Hearing**

      The Republic submits a declaration from José Ignacio García Hamilton, Legal and Administrative Secretary of the Ministry of Economy (the "Declaration"), asserting that the Republic "does not have information regarding the countries in

Hon. Loretta A. Preska
February 18, 2026
Page 2

which the BCRA holds its gold reserves." Dkt. 872-1 ¶ 4. Consistent with the Court's directive at the last conference, the Court should now schedule an evidentiary hearing. Jan. 29 Tr. at 40:20–23 ("[I]f someone is going to put in an affidavit saying, I have made an investigation, we can't tell you, then we will have a hearing about that, because I find it to be incredible."); *see also* Dkt. 870.

Among other issues, the Declaration is untested and, critically, does not deny that the Republic could obtain access to information about the gold. The Republic entirely ignores the recent Argentine appellate decision holding that information concerning the location and transportation of gold could not be withheld from the Auditoría General de la Nación ("AGN") based on the same type of generalized claims of harm advanced here. *See* Dkt. 858-3. Nor does it reconcile its position with the BCRA's own public statements confirming that the AGN and other "pertinent control agencies" have access to information regarding the gold. Dkt. 872-2 at 3.

Moreover, the Declaration and the accompanying letter from Santiago Bausili, President of the BCRA, offer only conclusory claims of harm from disclosing the gold's location. *See* Dkt. 872-3 at 5–6. Those assertions cannot be reconciled with the Republic's own representations that the gold reserves are actively deployed in transactions outside Argentina with third-party counterparties. *See* Dkts. 872-1 ¶¶ 15–17; 872-3 at 4–6. By the Republic's own account, those counterparties necessarily know the location of the gold in the ordinary course. It is therefore implausible to contend that disclosure of the gold's location is inherently harmful, and, in any event, a vague and unsubstantiated claim of harm is not, in itself, an excuse to withhold crucial information about substantial assets in post-judgment discovery.

The Republic's untested and self-serving invocation of the BCRA's purported "independence" is also inconsistent with the record and fails to grapple with the reality of the Republic's actual relationship with the BCRA. *See, e.g.*, Dkts. 673-13; 673-20; 775-1 at 6–8.

Finally, the Declaration and attached letters are hearsay, and double hearsay for the purported statements from Minister Caputo. Dkt. 872-1 ¶¶ 27–30; *see also* Dkts. 872-3; 872-4. It would be highly prejudicial to permit the Republic to substitute the sworn testimony of its 30(b)(6) representative—who acknowledged that the Republic has not explored what senior officials actually know—with rank hearsay, untested through cross-examination. This is especially true here, where the Republic bears the burden of proving impossibility of production. *See Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995).

Hon. Loretta A. Preska
February 18, 2026
Page 3

Plaintiffs respectfully submit that there is no basis for the Court to depart from its prior directive that the Republic's representations warrant scrutiny through an evidentiary hearing. *See* Jan. 29 Tr. at 40:19–23; Dkt. 870. At the Court's direction, Plaintiffs are prepared to submit a supplemental filing further addressing the numerous deficiencies in the Republic's submission that underscore the need for a hearing, with pre-hearing discovery on any proposition that the Republic will seek to prove to meet its burden.

### B. Plaintiffs Are Entitled to Sanctions Arising from the Republic's Misconduct

Plaintiffs respectfully submit that the Republic's latest submission further confirms the basis for what Plaintiffs understand to be the Court's prior award of fees and costs arising from the Republic's misconduct in connection with the January 8 Rule 30(b)(6) deposition. *See* Dkts. 858; 864; 870; Jan. 29 Tr. at 26:17–21, 30:25–31:20.

The Republic continues to force Plaintiffs to expend time and resources responding to baseless attempts to excuse its production of a woefully unprepared Rule 30(b)(6) designee. Its assertion that relevant sources were only "newly identified" is absurd. Dkt. 872 at 1. Plaintiffs repeatedly put the Republic on notice of Minister Caputo's involvement with the gold reserves. *See, e.g.*, Dkts. 763-9; 763-1 ¶ 22; 763 at 32; 774 at 3–4; 775-1 at 6–8. For months before the deposition, Plaintiffs specifically identified Minister Caputo as a key official with knowledge and expressly requested his testimony at a hearing on this issue. *See, e.g.*, July 29, 2025 Tr. at 38:1–5 ("I want to know what the Republic knows. [Minister Caputo] knows something, so let me talk to him. Let's have him come in here and tell us. They've told us we don't think he has inside information."); *see also id.* at 36:14–21; Aug. 6, 2025 Tr. at 34:11–19; Jan. 29 Tr. at 24:6–11; Dkt. 867-11 at 3.[1] Instead, the Republic represented that it would produce a Rule 30(b)(6) witness with knowledge, which was an accommodation by the Court that relieved the Republic of responding to Plaintiffs' standard requests for persons with knowledge in the Information Subpoena. *See* Aug. 6, 2025 Tr. at 35:17–21. It then failed to do so.

---

[1] The Republic's designee also acknowledged that the Ministry of Security was likely to possess information concerning the movement and management of the gold, yet he made no effort to obtain that information before testifying. *See* Dkt. 858-1 at 39:15–40:23.

Hon. Loretta A. Preska
February 18, 2026
Page 4

      On this record, the Republic's attempt to shift blame to Plaintiffs is indefensible and further confirms that an award of Plaintiffs' fees and costs is warranted.

                                            Respectfully submitted,

                                            */s/ Seth L. Levine*
                                            Seth L. Levine
                                            Alison M. Bonelli

cc:     All counsel of record via ECF