# Exhibit B

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 1 0036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Randy M. Mastro
Partner
Direct Dial: +1 212 827 4019
RMastro@kslaw.com

April 30, 2024

*Via CM/ECF*

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-02739;
*Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-8569

Your Honor:

I respectfully write to request a pre-motion conference regarding Plaintiffs' intended motion to compel YPF S.A. ("YPF") to produce discovery pursuant to a document subpoena.[1] This motion relates solely to Requests 8-16 and 18-21, which seek documents related to whether YPF is currently an alter ego of the Republic.[2] YPF refuses to produce *any* responsive documents.[3]

YPF's main objection, that the discovery is not relevant to identify the Republic's assets, is baseless (approaching frivolous). The discovery is highly relevant because under *Bancec*, a state instrumentality may be liable for the state's debts where it "is so extensively controlled by [the state] that a relationship of principal and agent is created." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983). The *Bancec* test entails factors such as

---

[1] *See* Harris Decl., Ex. A, Document Subpoena dated March 25, 2024.

[2] YPF has agreed to produce some documents responsive to Requests 1-3, 7, and 17 (subject to numerous objections), and the information obtained from the requests at issue here may bear on Requests 22-24. Plaintiffs reserve their rights to seek the Court's assistance with respect to those requests if appropriate at a later date.

[3] *See* Harris Decl., Ex. B, Responses and Objections dated April 8, 2024; Harris Decl., ¶ 16.

Hon. Loretta A. Preska
April 30, 2024
Page 2

the level of economic control, the degree of government management of the entity's daily affairs, and whether the government is the real beneficiary of the entity's conduct. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 823 (2018); *see also Esso Expl. & Prod. Nig. Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 334–340 (S.D.N.Y. 2019), *aff'd in relevant part*, 40 F.4th 56 (2d Cir. 2022) (holding that Nigerian national oil company was alter ego of Nigeria); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 132 (3d Cir. 2019) (holding that judgment could be enforced against sovereign's alter ego).

Plaintiffs need not meet the *Bancec* standard merely to obtain discovery on the issue. Second Circuit precedent permits full alter ego discovery for purposes of judgment enforcement without any threshold showing that the *Bancec* standard is met. *See First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002). In any event, the limited information in the public record provides a sufficient basis to warrant discovery on whether YPF is now the Republic's alter ego:

- YPF's SEC filings explain that the Republic is legally obligated to exercise its control over YPF to advance the strategic interests of the Republic and thus "decisions taken by our controlling shareholder [may] differ from your interests as a shareholder (including the pricing policy of all our main products)."[4]
- Recent reporting in the financial press indicates that the Republic has directed YPF to sell crude oil below its market price, thus using YPF's market power as a means of "controlling prices without the need for written regulations."[5]
- In late 2012 (after its takeover of YPF), the Republic apparently directed YPF to loan 224 million pesos to the Santa Cruz province at an interest rate that then-Vice Minister of Economy Kicillof described as "substantially lower" than the rate offered by a private bank. The loan terms were defined with input from Máximo Kirchner, son of then-President Kirchner, who held no role at YPF.[6]
- In 2023, YPF recorded a $1.8 billion impairment that appears to be related to

---

[4] *See* Harris Decl., Ex. C, 2023 YPF Form 20-F, p. 6. The Third Circuit relied on similar facts to hold PDVSA liable for a judgment against Venezuela. *See Crystallex*, 932 F.3d at 146–47.

[5] *See* Harris Decl., Ex. D, La Politicia, *YPF Moved to Lower the Price of the Local Barrel as a Contribution to the Price Hike*, May 10, 2023.

[6] *See* Harris Decl., Ex. E, Email from Alex Kicillof to Matías Bezi dated December 14, 2012.

Hon. Loretta A. Preska
April 30, 2024
Page 3

politically motivated manipulation of YPF's finances.[7] The impairment corrected an accounting overvaluation that had enabled YPF to avoid disposing of mature fields that provided substantial employment in Santa Cruz (the home province of both the Kirchner family and YPF's then-president).[8]

- Press reports indicate that YPF's executive ranks are filled with politically connected persons who have no "training or experience in the energy industry" and "spend a good part of their time on other types of tasks that have little or nothing to do with YPF."[9]
- Press reports also indicate well-founded suspicions that YPF's large advertising budget has been used for political messaging unrelated to YPF's business.[10]
- Additionally, it is widely reported that politically connected persons have extensively used YPF aircraft without payment, including dozens of flights by then-Vice President Kirchner to her home in Calafate, Santa Cruz,[11] prompting the Republic's new president to direct YPF to sell the jets because the government no longer wants to "cater to" politicians and privileged individuals.[12]

YPF's other main objection, that Plaintiffs could obtain the discovery directly from the Republic, is also baseless. There is no requirement to seek discovery only from a party. *See, e.g., In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003). Considering the Republic's motive to obfuscate, its long history of recalcitrance, and the close relationship between it and YPF, it is reasonable to require YPF to produce its own documents relevant to the alter ego issue.

---

[7] *See* Harris Decl., Ex. F, Form 6-K dated March 6, 2024.

[8] *See* Harris Decl., Ex. G, Forbes, *YPF's Balance Sheet: How It Fared in 2023 and What May Happen to Its Share Price*, March 7, 2024; Harris Decl., Ex. H, Press Release, Government of Santa Cruz, March 25, 2024.

[9] *See* Harris Decl., Ex. I, EconoJournal, *With the Appointment of Federico Basualdo, Cristinism Unblocked a New Level of Politicization in YPF*, May 15, 2023.

[10] *See* Harris Decl., Ex. J, ConverCom, *La Cámpora, Among the Main Advertisers in the Country: Close to 8 Billion Pesos in Government Advertising Campaigns*, July 17, 2022.

[11] *See, e.g.*, Harris Decl., Ex. K, Perfil, *For Cristina Kirchner's Use of YPF's Airplanes, a Debt of $200 Million Is Allegedly Owed*, January 18, 2024.

[12] *See* Press Conference on Dec. 15, 2023, available at https://www.youtube.com/watch?v=P4k9YPYXuW0, at 5:20 – 5:42.

Hon. Loretta A. Preska
April 30, 2024
Page 4

                                    Respectfully,

                                    */s/ Randy M. Mastro*
                                    Randy M. Mastro