**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., <br><br>                     Plaintiffs, <br><br>     -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br>                     Defendants. | Case Nos.: <br><br> 1:15-cv-02739-LAP <br> 1:16-cv-08569-LAP |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., <br><br>                     Plaintiffs, <br><br>     -against- <br><br> ARGENTINE REPUBLIC and YPF S.A., <br><br>                     Defendants. | |

### PLAINTIFFS' OPPOSITION TO NON-PARTY IBERIA'S MOTION FOR A PROTECTIVE ORDER PURSUANT TO FRCP RULE 26(C)

CLEMENT & MURPHY, PLLC
Paul D. Clement
C. Harker Rhodes IV

LEVINE LEE
Seth L. Levine
Alison M. Bonelli

KELLOGG, HANSEN, TODD, FIGEL
  &amp; FREDERICK, P.L.L.C.
Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith

KING & SPALDING LLP
Laura Harris
Reginald R. Smith

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.  Iberia's Procedurally Defective Motion Should Not Be Entertained ................................. 2

    A.  The Court Should Deny Iberia's Motion for Failure to Comply with
        the Mandatory Pre-Motion Conference Requirement ................................................. 2

    B.  The Court Should Deny Iberia's Motion for Failure to Comply with
        Rule 26(c)'s Mandatory Conferral Requirement. ....................................................... 3

    C.  The Court Should Hold Iberia's Objections Waived for Untimeliness .................... 4

II.  Alternatively, Iberia's Objections Are Baseless. ............................................................. 5

    A.  The Court Has Personal Jurisdiction Over Iberia. .................................................. 5

        1.  Rule 4(k)(2) Supplies a Federal Basis for Jurisdiction. ............................ 6

        2.  Under *Fuld*, the Fifth Amendment National-Contacts Standard
            Applies When Federal Law Authorizes Personal Jurisdiction ................... 8

        3.  Rule 4(k)(2)'s Requirements Are Satisfied. ............................................. 9

        4.  Alternatively, Jurisdiction Exists Under Federal
            Rule 4(k)(1)(A) and New York's Long-Arm Statute. .............................. 11

        5.  At a Minimum, Iberia's Substantial Ties to New York
            Warrant Jurisdictional Discovery. ........................................................... 14

    B.  Iberia's Undue-Burden and Confidentiality Objections Are Baseless. ................. 15

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*A.A. v. Omnicom Grp.,* 2026 WL 504904 (S.D.N.Y. Feb. 24, 2026) ............................................. 6

*Anwalt Energy Holdings, LLC v. Falor Cos.*, 2008 WL 2268316 (S.D. Ohio 2008) .................... 5

*Application of Mammoet Salvage, B.V., In re,*
    2025 WL 3009507 (S.D.N.Y. Oct. 28, 2025) .............................................................................. 9

*Cordice v. LIAT Airlines*, 2015 WL 5579868 (E.D.N.Y. Sep. 22, 2015) ................................ 13, 14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................................................. 8

*Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54 (E.D.N.Y. 2012) ........................................................ 3

*Edelman, In re*, 295 F.3d 171 (2d Cir. 2002) ................................................................................. 8

*Enhanced US LLC v. World Aquatics,* 2025 WL 3206662 (S.D.N.Y. Nov. 17, 2025) ................... 7

*Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541 (S.D.N.Y. 2005) ................................... 8

*Finan v. Lafarge S.A.*, 2025 WL 2504317 (E.D.N.Y. Aug. 29, 2025) ............................................ 9

*First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*,
    634 F. Supp. 1341 (S.D.N.Y. 1986) ........................................................................................... 4

*Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025) .......................................................... *passim*

*Graduation Sols., LLC v. Acadima, LLC*,
    2018 WL 10398566 (D. Conn. June 21, 2018) ........................................................................... 4

*Glob. Cord Blood Corp. Sec. Litig., In re*,
    2026 WL 444770 (S.D.N.Y. Feb. 17, 2026) .............................................................................. 9

*Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573 (5th Cir. 2016) ................. 5

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ............................. 5, 11, 12, 13

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) .................................................................................................................... 4

*Int'l Code Council, Inc. v. Skidmore, Owings & Merrill*,
    2025 WL 1936704 (S.D.N.Y. July 15, 2025) ............................................................................. 15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"),
    732 F.3d 161 (2d Cir. 2013) ...................................................................................................... 14

*Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987) ................................ 7

*Palumbo v. Shulman*, 1998 WL 720668 (S.D.N.Y. Oct. 13, 1998)................................ 3, 4

*Parry v. St. Catherine of Siena Med. Ctr.*, 2014 WL 639422 (E.D.N.Y. Feb. 15, 2014).............. 13

*Peterson v. Islamic Republic of Iran*, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013)............. 13, 15

*Samad Bros. v. Bokara Rug Co. Inc.*, 2010 WL 5094344 (S.D.N.Y. Nov. 30, 2010) ................... 5

*Sealed Case, In re*, 932 F.3d 915 (D.C. Cir. 2019) ................................ 11, 15

*Shepherd v. Annucci*, 921 F.3d 89 (2d Cir. 2019)................................ 14

*Snider v. Lugli*, 2011 WL 5401860 (E.D.N.Y. Nov. 4, 2011)................................ 3, 4

*Sullivan v. UBS AG*, 149 F.4th 206 (2d Cir. 2025)................................ 6

*United States v. International Brotherhood of Teamsters*,
    945 F. Supp. 609 (S.D.N.Y. 1996) ................................ 7, 9

*Volkart Bros., Inc. v. M/V Palm Trader*, 130 F.R.D. 285 (S.D.N.Y. 1990*)* ................................ 14

*Zito v. United Airlines Inc.*, 523 F. Supp. 3d 377 (W.D.N.Y. 2021)................................ 13


**Statutes**

28 U.S.C. § 1782................................ 8

49 U.S.C. § 41303 ................................ 10

49 U.S.C. § 46103 ................................ 10


**Rules**

Fed. R. Civ. P. 4(k)................................ 7

    Fed. R. Civ. P. 4(k)(1) ................................ 7

    Fed. R. Civ. P. 4(k)(1)(A)................................ 2, 7, 8, 11, 14

    Fed. R. Civ. P. 4(k)(1)(C)................................ 8

    Fed. R. Civ. P. 4(k)(2) ................................ *passim*

Fed. R. Civ. P. 26................................ 2, 3

Fed. R. Civ. P. 26(c) ........................................................................................................ 1, 3, 4

Fed. R. Civ. P. 26(c)(1) ....................................................................................................... 1, 3

Fed. R. Civ. P. 45 ............................................................................................................... 3, 5, 6

Fed. R. Civ. P. 45(c)(2)(B) ...................................................................................................... 5

Fed. R. Civ. P. 45(d)(2)(B) ............................................................................................... 1, 4, 5

Fed. R. Civ. P. 71 .................................................................................................................... 7

N.Y. C.P.L.R. § 302 ...................................................................................................... 11, 13, 15

N.Y. C.P.L.R. § 302(a)(1) ................................................................................................ 2, 12, 14

## INTRODUCTION

Iberia Airlines' motion for a protective order disregards this Court's Individual Practices, the Local Rules, and Federal Rule of Civil Procedure 26(c), and rests on meritless objections that Iberia has independently waived. The motion should be denied.

In 2024, Iberia carried the Republic's gold from Buenos Aires to the United Kingdom. Plaintiffs' subpoena seeks information concerning that transfer, including not only the location, movement, and custodial arrangements of approximately $1 billion in gold reserves, but also the financial arrangements underlying the shipment—how the transport was paid for, who authorized and funded it, and Iberia's communications with Republic officials regarding the transfer. Despite Plaintiffs' sustained efforts and even in the face of a Court order, the Republic has refused to provide information about those reserves. Instead, the Republic produced a Rule 30(b)(6) witness and a declaration refusing to provide any information about where the Republic holds those reserves. *See* Dkt. 884 at 2. The subpoena thus seeks to obtain from the carrier that physically moved the gold information that the Republic has failed to provide.

Iberia too now seeks to prevent that discovery. But the procedural defects in its motion are straightforward and dispositive. Iberia sought judicial intervention without requesting the pre-motion conference required by the Local Rules and this Court's Individual Practices. It could not certify good-faith conferral as required by Rule 26(c)(1), because it never attempted to contact Plaintiffs before filing. In addition, Iberia did not serve written objections within 14 days of service as required by Rule 45(d)(2)(B). Each of these failures independently forecloses the relief it seeks.

If the Court reaches the merits, Iberia's U.S. contacts satisfy the Fifth Amendment standard governing personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) after *Fuld*

*v. Palestine Liberation Org*., 606 U.S. 1, 14 (2025).  Iberia is registered as a foreign business corporation in New York, accepts service here, and operates twice-daily flights from JFK while maintaining an operational presence in Terminal 8.  More broadly, it has conducted continuous commercial operations in the United States for more than 70 years.  It operates numerous U.S. routes, holds federal regulatory authorizations and trademark protections, is registered as a foreign corporation in multiple states, employs U.S.-based personnel, and has repeatedly retained counsel in this District.  This sustained and deliberate engagement with the United States readily satisfies Rule 4(k)(2) and the Fifth Amendment.  Alternatively, Iberia's substantial and ongoing business activities in New York satisfy New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), and the exercise of jurisdiction comports with the Fourteenth Amendment under Rule 4(k)(1)(A).  At minimum, if any doubt remains, the Court should order jurisdictional discovery directed to whether the underlying transfer of gold from Argentina to the United Kingdom implicated the United States before relieving Iberia of its obligation to comply.  Finally, Iberia's burden and confidentiality objections are baseless.

## ARGUMENT

**I.      Iberia's Procedurally Defective Motion Should Not Be Entertained.**

**A.      The Court Should Deny Iberia's Motion for Failure to Comply with the Mandatory Pre-Motion Conference Requirement.**

The Court should deny Iberia's motion because it flouts this District's discovery motion procedures.  This Court's Individual Practices direct movants to "follow Local Civil Rule 37.2" when bringing discovery motions.  Individual Practices of Judge Loretta A. Preska § 2(A) (S.D.N.Y. Apr. 1, 2025).  Local Civil Rule 37.2 is explicit:  "no motion under Fed. R. Civ. P. 26 . . . will be heard" unless the movant first requests a pre-motion conference by letter, and that request is denied or the dispute remains unresolved after the conference.  Iberia filed its

Rule 26(c) motion without requesting the required conference.  The Court should accordingly decline to entertain the motion.

Iberia's characterization of its Rule 26(c) motion as "similar[ ] to a motion for a preliminary injunction" does not cure that defect.  Dkt. 896 ¶ 11; *see also Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 79-80 (E.D.N.Y. 2012) (Rule 26 protective order is not an injunction and so is not subject to Rules 52 and 65).  Individual Practice § 2(A)'s exception for "applications for injunctions" applies by its terms only to motions "other than discovery motions."  Iberia moved under Rule 26(c) to limit or condition discovery.  Local Rule 37.2 expressly applies to motions under Rule 26.[1]  The Court's normal discovery-motion procedures therefore apply, and Iberia was required to request a pre-motion conference.  Because it did not, the motion should be denied.

### B.  The Court Should Deny Iberia's Motion for Failure to Comply with Rule 26(c)'s Mandatory Conferral Requirement.

Rule 26(c) does not allow motion practice as a first resort.  Instead, a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  Fed. R. Civ. P. 26(c)(1).  That certification is a "prerequisite" to judicial consideration, *Palumbo v. Shulman*, 1998 WL 720668, at *2 (S.D.N.Y. Oct. 13, 1998), and applies to non-parties, *see Snider v. Lugli*, 2011 WL 5401860, at *5 (E.D.N.Y. Nov. 4, 2011) (holding non-party's failure to certify conferral is an "independent ground[ ]" for denial under Rule 26(c)(1)).  Iberia's motion contains no such certification, and that omission is dispositive.

---

[1] Local Rule 37.2 explicitly applies to motions brought under Rule 45.  A Rule 45 motion is therefore subject to the same pre-motion conference requirement.

Iberia could not make the required certification because it never attempted to confer with Plaintiffs. Iberia was served on January 22, 2026. *See* Dkt. 896 ¶ 5. Since then, it has not requested a call, responded with objections, or otherwise corresponded with Plaintiffs. Instead, it filed its motion and asserted that, because it views the motion as "sufficient[ly] similar[] to a motion for a preliminary injunction," it "should be exempt" from the conferral requirement. *Id.* ¶ 11. The Federal Rules provide no such exemption. Iberia moved under Rule 26(c), so Rule 26(c) governs. Iberia cannot invoke the rule's protections while ignoring its prerequisites.

Courts in this circuit routinely deny Rule 26(c) motions for failure to confer. In *Palumbo*, the court denied such a motion because the movants failed to confer before filing. 1998 WL 720668, at *2. Rule 26(c), the court explained, requires the movant to "confer or attempt to confer (that is, converse or attempt to converse), either in person or via telephone," in a good-faith effort to resolve the dispute before seeking judicial intervention. *Id.* Letter-writing did not suffice. *Id.* Here, Iberia did not attempt correspondence, much less the conversation Rule 26(c) requires. *See also Snider*, 2011 WL 5401860, at *5; *Graduation Sols., LLC v. Acadima, LLC*, 2018 WL 10398566, at *2 (D. Conn. June 21, 2018) (denying Rule 26(c) motion for failure to include certification and comply with the Rule's procedural prerequisites).

### C.    The Court Should Hold Iberia's Objections Waived for Untimeliness.

A nonparty may object to a subpoena only if its objection is "timely raised." *See First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 634 F. Supp. 1341, 1349 (S.D.N.Y. 1986); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (explaining that personal jurisdiction represents "an individual right" that, "like other such rights, [can] be waived"). Iberia was required to serve its objections within the earlier of 14 days after service or the compliance date. *See* Fed. R. Civ. P. 45(d)(2)(B). It did not. That failure waives any objection.

4

Iberia waived its personal-jurisdiction, undue burden, and confidentiality objections by failing to serve written objections as required by Rule 45(d)(2)(B).  "The failure to serve written objections to a subpoena within the time specified by Rule 45([d])(2)(B) typically constitutes a waiver of such objections."  *Samad Bros. v. Bokara Rug Co. Inc.*, 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010) (applying former Rule 45(c)(2)(B), the predecessor to Rule 45(d)(2)(B)).  It is "well established" that personal jurisdiction objections in particular "can be waived" by failing to respond under Rule 45(d)(2)(B).  *Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573, 575 (5th Cir. 2016) (concluding nonparty's failure to timely file objections or motion to quash waived personal jurisdiction); *see also Anwalt Energy Holdings, LLC v. Falor Cos.*, 2008 WL 2268316, at *1-2 & n.2 (S.D. Ohio 2008) (holding nonparty waived objection to lack of personal jurisdiction through "failure to serve written objections to a subpoena within the time specified by Rule 45").

Iberia was served on January 22, 2026 and was required to serve written objections within 14 days.  It did not do so.  Nor can it show that its failure resulted from "unusual circumstances" constituting "good cause."  *See Samad*, 2010 WL 5094344, at *2.  It has therefore waived its objections.

## II.    Alternatively, Iberia's Objections Are Baseless.

### A.    The Court Has Personal Jurisdiction Over Iberia.

Even if Iberia's motion were not procedurally barred, it would still fail on the merits, including because this Court has personal jurisdiction over Iberia.  As Iberia acknowledges (at 2), only three requirements must be met for the Court to exercise personal jurisdiction: (1) Iberia must have been properly served; (2) the Court must have a statutory basis for jurisdiction; and (3) the exercise of jurisdiction must comport with due process (citing *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015)).  Iberia does not dispute that it was properly served

at its registered address in New York. *See* Dkt. 894 ¶ 5. The only remaining questions are the statutory basis for jurisdiction and whether exercising jurisdiction comports with due process.

Accepting Iberia's suggestion that it is not subject to personal jurisdiction in any state, Rule 4(k)(2) permits personal jurisdiction over Iberia on a federal claim through service of process and compliance with due process. No state long-arm analysis is required. Iberia notes (at 4) that the Second Circuit has "not resolved" whether a national-contacts due process analysis applies to Rule 45 subpoenas, and it invokes that uncertainty to look only to New York contacts. But the Supreme Court resolved that issue in *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 14 (2025). In the "subset of federal cases" where personal jurisdiction is "authorized by a federal statute," the due-process inquiry proceeds under the Fifth Amendment, without resort to a state long-arm statute or the Fourteenth Amendment framework. *Id.* at 11-12.[2] Because Rule 4(k)(2) authorizes personal jurisdiction here, this Court must consider Iberia's contacts with the United States under the Fifth Amendment framework.

### 1. Rule 4(k)(2) Supplies a Federal Basis for Jurisdiction.

Rule 4(k)(2) provides that, "[f]or a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Courts in this circuit have repeatedly recognized Rule 4(k)(2) as an independent basis for personal jurisdiction. *See*, *e.g.*, *A.A. v. Omnicom Grp.*, 2026 WL 504904, at *8 (S.D.N.Y. Feb. 24, 2026)

---

[2] Iberia cites (at 4) *Sullivan v. UBS AG*, 149 F.4th 206, 217 (2d Cir. 2025), as stating that the issue is open in the Second Circuit. That decision was issued two months after *Fuld*, but it does not cite *Fuld*, and the appellate docket indicates the parties never brought the Supreme Court's decision to the panel's attention. In any event, in *Sullivan*, the district court, the parties, and the Second Circuit all looked to nationwide contacts, as *Fuld* requires. *See id.*

(affirming Rule 4(k)(2) as basis for personal jurisdiction after *Fuld*); *Enhanced US LLC v. World Aquatics,* 2025 WL 3206662, at *4-8 (S.D.N.Y. Nov. 17, 2025) (same).

That Iberia is a nonparty does not alter the Rule's application. Although Rule 4(k)(2) refers to jurisdiction "over a defendant," courts in this District have applied it to compel compliance by foreign nonparties. For example, in *United States v. International Brotherhood of Teamsters*, 945 F. Supp. 609, 625 (S.D.N.Y. 1996), the court undertook an extended examination of Rule 4(k)(2) before using it to exercise personal jurisdiction over a Canadian corporation that was not a party to the underlying action, determining that the case arose under federal law and that the corporation's nationwide contacts satisfied due process.

Rule 4(k)(1), which Iberia invokes (at 2), confirms the point. That Rule describes when service "establishes personal jurisdiction over a defendant"—language that Iberia recognizes should be read to extend to nonparties as well. *See* Dkt. 895 at 2 ("FRCP 4(k)(1)(A) provides jurisdiction based on state law in the jurisdiction where the court is located."). That parallel language confirms that the word "defendant" in Rule 4(k)(2) does not somehow limit Rule 4(k)(2) to formally named parties. *See also* Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party.").

Rule 4(k)(2) was adopted to close a jurisdictional "gap" identified by the Supreme Court in *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 103 (1987), that allowed foreign actors with substantial nationwide contacts, but insufficient contacts with any single state, to evade the enforcement of federal law. *Teamsters*, 945 F. Supp. at 616-18. That rationale applies to non-parties as much as to parties. Moreover, applying Rule 4(k) only to parties would afford federal courts broader authority to compel discovery in aid of foreign proceedings than to

enforce their own federal judgments, as federal courts routinely exercise jurisdiction over nonparties in aid of foreign proceedings under 28 U.S.C. § 1782.  *See*, *e.g.*, *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002) (concluding that because "tag jurisdiction is consistent with due process," section 1782, "which is simply a discovery mechanism and does not subject a person to liability, [does not] require[] more.").[3]

### 2. Under *Fuld*, the Fifth Amendment National-Contacts Standard Applies When Federal Law Authorizes Personal Jurisdiction.

Instead of applying the governing Fifth Amendment standard, Iberia relies on decisions that predate *Fuld* and its clarification of the controlling framework for personal jurisdiction authorized by federal law.  Under Rule 4(k)(1)(A), federal courts "follow state law in determining the bounds of their jurisdiction over persons," and the resulting inquiry is bound by Fourteenth Amendment limits.  *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  But where personal jurisdiction is "authorized by a federal statute," Rule 4(k)(1)(C), the analysis is different.  In that circumstance, *Fuld* makes clear that the Fifth Amendment supplies the governing due process standard and that the Fourteenth Amendment framework does not apply. 606 U.S. at 11-12.

That is because the Fourteenth Amendment test ensures that States "do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."  *Id.* at 14.  But the Constitution grants the federal government—"and it alone"—"nationwide and extraterritorial authority."  *Id*. at 15.  For that reason, the Supreme Court has "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment."  *Id.*

---

[3] One court has suggested that Rule 4(k)(2)'s reference to "a defendant" limits its application to parties, *see Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 552 (S.D.N.Y. 2005), *aff'd on other grounds*, 332 F. App'x 643 (2d Cir. 2009), but that reading cannot be reconciled with the Rule's structure and function.

at 16. Instead, the Fifth Amendment "permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id.* at 16.

In short, where—as here—personal jurisdiction is authorized by federal law under Rule 4(k)(2), the controlling inquiry is whether Iberia has sufficient contacts with the United States as a whole to satisfy the Fifth Amendment. *See Finan v. Lafarge S.A.*, 2025 WL 2504317, at *16 (E.D.N.Y. Aug. 29, 2025). New York's long-arm statute plays no role in that analysis.

### 3.    Rule 4(k)(2)'s Requirements Are Satisfied.

Rule 4(k)(2) is satisfied here. The action arises under federal law, and Iberia contends— at least implicitly—that it is not subject to personal jurisdiction in any state. The only remaining question is whether Iberia's nationwide contacts satisfy Fifth Amendment due process. *See Teamsters*, 945 F. Supp. 609, 620-23. They do.

Measured against the Fifth Amendment's "flexible" due process standard, Iberia's longstanding, deliberate, and commercially substantial U.S. contacts are more than sufficient to support personal jurisdiction. *Fuld*, 606 U.S. at 16; *see In re Glob. Cord Blood Corp. Sec. Litig.*, 2026 WL 444770, at *8 (S.D.N.Y. Feb. 17, 2026) (noting "relevant contacts for purposes of the 'minimum contacts' analysis are those with the United States as a whole"); *In re Application of Mammoet Salvage, B.V.*, 2025 WL 3009507, at *9 n.5 (S.D.N.Y. Oct. 28, 2025) (noting that *Fuld* suggests that personal jurisdiction is broader under the Fifth Amendment).

Iberia's factual recitation of its jurisdictional contacts is incomplete. Iberia has operated flights between Spain and the United States since 1954, when it launched its first Madrid–New York route.[4] Since 2024, it has operated twice-daily flights between Madrid and New York, and

---

[4] *See Iberia Celebrates the 70th Anniversary of Its First Flight to New York*, Iberia (Aug. 2, 2024), https://perma.cc/TUH9-Y9KS.

the airline serves numerous additional U.S. cities, including Miami, Boston, Chicago, Los Angeles, Dallas, San Francisco, and Washington, D.C.[5]  During 2024, it increased the frequency of its flights to U.S. destinations, including Los Angeles, and anticipated deploying seven additional aircraft to U.S. routes in 2025.[6]  Iberia operates from JFK International Airport and maintains operations in Terminal 8.[7]

Iberia's U.S. presence is supported by regulatory authorization and formal legal ties.  It is registered as a foreign business corporation in New York and Florida.[8]  Moreover, it operates transport services pursuant to a foreign air carrier permit issued by the U.S. Department of Transportation, *see* 49 U.S.C. § 41303 (Order 2011-4-6, Docket DOT-OST-2010-0283), a statutory prerequisite to conducting air service in the United States.[9]  It also holds a "Part 129" authorization from the Federal Aviation Administration, reflecting ongoing compliance with U.S. aviation and hazardous-materials safety regulations.[10]  Additional DOT filings designate Iberia's U.S. agent for service of notice and process.[11]  Department of Labor filings reflect approximately

---

[5] *Id.*

[6] *See* International Consolidated Airlines Group, S.A., Annual Report and Accounts 2024, at 34 (2024), https://perma.cc/58UN-F5TK.

[7] *See Iberia Moves to the New Terminal 8 in John F. Kennedy Airport in New York with Its Oneworld Partners*, Iberia (Nov. 29, 2022), https://perma.cc/LY7R-53MU.

[8] *See* Exhibit A, New York Department of State, Division of Corporations, Entity Information: Iberia Lineas Aereas De Espana Sociedad Anonima Operadora; Exhibit B, Florida Department of State, Division of Corporations, Detail by Entity Name: Iberia Lineas Aereas De Espana Sociedad Anonima Operadora Co.

[9] *See* Exhibit C, U.S. Dep't of Transp., Order 2011-4-6 (Feb. 2, 2011).

[10] *See* Federal Aviation Administration, *Part 129 Operators*, at row 436 https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Fwww.faa.gov%2Fabout%2Finitiatives%2Fiasa%2Fforeign_operator_lists%2FPart_129_Operators.xlsx (last visited Mar. 2, 2026).

[11] *See* 49 U.S.C. § 46103 (requiring foreign air carriers to designate an agent on whom service of notice and process may be made).

80 participants in a company-sponsored U.S. retirement plan in 2024, indicating an active domestic workforce.[12]  Iberia also holds multiple active U.S. trademarks and has retained U.S.-based counsel in connection with those registrations.[13]

Taken together, Iberia's sustained commercial operations, regulatory authorizations, corporate registration, federal filings, workforce presence, and retention of U.S. counsel reflect deliberate and ongoing engagement with the United States.  Those contacts readily satisfy the Fifth Amendment's due process standard.  *See In re Sealed Case*, 932 F.3d 915, 926 (D.C. Cir. 2019) (upholding contempt against foreign bank with no U.S. branch for failing to produce records held in China, where U.S. correspondent accounts constituted sufficient contacts).

### 4. Alternatively, Jurisdiction Exists Under Federal Rule 4(k)(1)(A) and New York's Long-Arm Statute.

The only reason jurisdiction over Iberia would not exist under Rule 4(k)(2) is that it exists under state law, and the strongest candidate is New York.  New York's long-arm statute provides that a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" so long as the "cause of action aris[es] from" that "transact[ion]."  N.Y. C.P.L.R. § 302 (2025); *see also Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93-94 (S.D.N.Y. 2015).

---

[12] *See* Exhibit D, Iberia Líneas Aéreas De España Sociedad Anónima Operadora Co Retirement Plan, Form 5500-SF, Short Form Annual Return/Report of Small Employee Benefit Plan, at § 5(a) (2024).

[13] *See* Exhibit E, U.S. Trademark Reg. No. 79036773 (IBERIA mark); Exhibit F, U.S. Trademark Reg. No. 79148073 (IBERIA mark); Exhibit G, U.S. Trademark Reg. No. 79148111 (IB mark); Exhibit H, U.S. Trademark Reg. No. 79354054 (IBERIA mark); Exhibit I, U.S. Trademark Application Serial No. 79435681 (IBERIA CLUB mark) (U.S. Patent & Trademark Office).

Iberia is registered as a foreign business corporation in New York, and it is not an absentee registrant. Iberia operates twice-daily flights between New York and Madrid.[14] It maintains a physical operational presence at JFK International Airport, including its own check-in area within Terminal 8.[15] It boards and disembarks passengers in New York, sells tickets into and out of this State, and derives substantial revenue from these routes. And its contacts extend beyond passenger travel. Through its relationship with International Airlines Group's cargo division, which maintains operations in New York, Iberia participates in transport services on commercial passenger airliners.[16] It has also retained New York-based counsel to secure and protect its U.S. trademarks.[17] These sustained commercial activities constitute the transaction of business in New York within the meaning of section 302(a)(1).

There is also a sufficient nexus between these contacts and Plaintiffs' subpoena. Iberia asks the Court to assume that its New York operations were wholly irrelevant to the gold shipments at issue because the flights moved between Buenos Aires and London. But section 302(a)(1) does not require that the aircraft depart from New York. Nor must the "effects of the entity's in-forum conduct . . . also take place in New York for jurisdiction to be proper." *See Gucci*, 135 F. Supp. 3d at 95-96 (holding that the fact that Bank of China's deliberate conduct in New York produced effects in China did "nothing to undermine the nexus" between

---

[14] *See Iberia Celebrates the 70th Anniversary of Its First Flight to New York*, Iberia (Aug. 2, 2024), https://perma.cc/TUH9-Y9KS.

[15] *See Iberia Moves to the New Terminal 8 in John F. Kennedy Airport in New York with Its Oneworld Partners*, Iberia (Nov. 29, 2022), https://perma.cc/LY7R-53MU.

[16] *See Our Activities*, Iberia, https://perma.cc/6A6W-43SR (last visited Mar. 2, 2026); Exhibit J, N.Y. Dep't of State, Div. of Corps., Entity Information, IAG Cargo Ltd., DOS ID No. 4301888; Exhibit K, Fla. Dep't of State, Div. of Corps., 2025 Foreign Profit Corporation Annual Report, IAG Cargo Ltd. Inc., Doc. No. F13000002289 (filed May 16, 2025) (identifying New York mailing address).

[17] *See* Exhibit G, U.S. Trademark Reg. No. 79148111 (IB mark).

New York-based conduct and subpoenas).  Instead, the jurisdictional test requires only a "connection between the nonparty's contacts with the forum and the discovery order at issue." *Gucci*, 135 F. Supp. 3d at 94, 96.  Iberia's continuous presence in New York supports a reasonable inference that some aspect of the subpoenaed transactions may have been connected to this forum, which is sufficient at this stage.  *Parry v. St. Catherine of Siena Med. Ctr.*, 2014 WL 639422, at *3 (E.D.N.Y. Feb. 15, 2014) (explaining that "[p]rior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction" and that "the Court must credit a plaintiff's averments of jurisdictional facts as true").  That is especially true where, as here, the Republic's state-owned bank, Banco de la Nación Argentina, maintains a New York branch that serves as a U.S.-dollar correspondent for its European subsidiaries, including its Madrid branch.[18]  *See Peterson v. Islamic Republic of Iran*, 2013 WL 1155576, at *16 (S.D.N.Y. Mar. 13, 2013), *aff'd*, 758 F.3d 185 (2d Cir. 2014), *aff'd sub nom. Bank Markazi v. Peterson*, 578 U.S. 212 (2016) (noting that the "pathway of proceeds through New York is enough to constitute § 302 'transacting business'").

The decisions that Iberia cites do not compel a different result.  Iberia cites *Zito v. United Airlines Inc.*, 523 F. Supp. 3d 377, 384 (W.D.N.Y. 2021) (at 5), for the proposition that an airline is "not subject to the general jurisdiction of New York despite its regular operations in and out of the state."  But *Zito* made explicit that the plaintiff had "concede[d] that the Court cannot exercise general jurisdiction" over the defendant by failing to "make any meaningful argument over general jurisdiction." *Id.* at 383.  Nor did *Cordice v. LIAT Airlines*, 2015 WL 5579868, at *3 (E.D.N.Y. Sep. 22, 2015) (cited at 5-6), base its jurisdictional ruling only on the fact the injury

---

[18] *See* Exhibit L, *Banco de la Nación Argentina*, Standard Settlement Instructions (Bankers Almanac, LexisNexis Risk Solutions) (report generated Mar. 2, 2026).

occurred elsewhere.  The court considered that the airline did not "maintain an office or have employees, bank accounts, or even a phone listing in New York."  *Id.*  And it considered significant that LIAT did not "operate flights into or out of New York City," unlike Iberia, which offers a twice-daily shuttle out of JFK.  *Id.*

Because Iberia's contacts with New York satisfy New York's long-arm statute, they also satisfy the Fourteenth Amendment due process framework.  *See Fuld*, 606 U.S. at 11 (explaining that the Fourteenth Amendment continues to apply under Rule 4(k)(1)(A)).  As the Second Circuit has made clear, it would be "rare" and "unusual" for a court to find that an entity's conduct satisfied section 302(a)(1), "yet, in connection with the same transaction of business," that the entity did not have minimum contacts with New York or that the exercise of personal jurisdiction would be otherwise unreasonable.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170 (2d Cir. 2013).  This is not that "rare" and "unusual" case.  Iberia's connections to New York are significant, and the Court's exercise of jurisdiction under these circumstances is "reasonable[ ]."  *Licci IV*, 732 F.3d at 173-74.

### 5. At a Minimum, Iberia's Substantial Ties to New York Warrant Jurisdictional Discovery.

At a bare minimum, Iberia's substantial ties to New York warrant jurisdictional discovery. This Court has discretion to allow discovery to determine the basis for personal jurisdiction.  *See Volkart Bros., Inc. v. M/V Palm Trader*, 130 F.R.D. 285, 290 (S.D.N.Y. 1990*)*; *see also Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019) (noting that district courts have "considerable procedural leeway," to "permit[] discovery in aid of the motion" or conduct "an evidentiary hearing on the merits" of a motion to dismiss for lack of personal jurisdiction).  Only Iberia knows whether payments for the shipments at issue were processed in U.S. dollars through New York correspondent accounts; whether New York-based finance, insurance, compliance, cargo, or

flight personnel approved or participated in the shipments; whether relevant communications were routed through Iberia's New York operations; or whether relevant records are stored or accessible in New York. *See Peterson*, 2013 WL 1155576, at \*16 (S.D.N.Y. Mar. 13, 2013) (noting that the "pathway of proceeds through New York is enough to constitute § 302 'transacting business'"); *In re Sealed Case*, 932 F.3d at 915 (finding U.S. correspondent accounts constituted sufficient contacts). Iberia has not produced documents to negate any of these possibilities. Counsel could declare only that electronic conversations "would have taken place primarily from Spain." Dkt. 895 at 5 (citing Dkt. 896 ¶¶ 9-10). "Primarily" is not "exclusively." In light of Iberia's continuous and systematic contacts with New York, together with the Republic's state-owned bank's maintenance of a New York correspondent branch serving its Madrid branch, this Court should decline to presume the absence of New York contacts and should either find jurisdiction proper or order jurisdictional discovery.

### B.    Iberia's Undue-Burden and Confidentiality Objections Are Baseless.

Iberia's other objections—burden and confidentiality (at 7)—are equally meritless. The subpoena at issue, Dkt. 896-1, seeks documents and communications related to what are presumably only a handful of flights. Iberia offers no specific reason to think that producing these documents and communications would be unduly burdensome, as it must to justify its objection. *See Int'l Code Council, Inc. v. Skidmore, Owings & Merrill*, 2025 WL 1936704, at \*3 (S.D.N.Y. July 15, 2025) ("The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each discovery request is burdensome by submitting affidavits or offering evidence revealing the nature of the burden."). And its purported confidentiality concerns are addressed by the confidentiality order governing this case. *See* Dkt. 674. In any event, Plaintiffs remain willing to confer with Iberia to address any burden or confidentiality concerns.

## CONCLUSION

For the foregoing reasons, the Court should deny Iberia's motion and direct compliance with the subpoena, or at minimum permit jurisdictional discovery before excusing compliance.

Dated: March 2, 2026

Respectfully submitted,

KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.

By:     */s/ Andrew E. Goldsmith*
Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
Alejandra Ávila
Tiffany Pages-Sanchez
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone:  (202) 326-7900
Fax:  (202) 326-7999
Email:  mhansen@kellogghansen.com
     dho@kellogghansen.com
     agoldsmith@kellogghansen.com
     aavila@kellogghansen.com
     thorvath@kellogghansen.com

CLEMENT & MURPHY, PLLC

Paul D. Clement
C. Harker Rhodes IV
706 Duke Street
Alexandria, VA 22314
Phone:  (202) 742-8900
Fax:  (202) 742-8895
Email:  paul.clement@clementmurphy.com
     harker.rhodes@clementmurphy.com

KING & SPALDING LLP

Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone:  (212) 556-2100
Fax:  (212) 556-2222

Email:  lharris@kslaw.com

LEVINE LEE LLP

Seth L. Levine
Alison M. Bonelli
400 Madison Ave
New York, New York 10017
slevine@levinelee.com
abonelli@levinelee.com

*Counsel for Plaintiffs Petersen Energía Inversora,
S.A.U., Petersen Energía, S.A.U., Eton Park Capital
Management, L.P., Eton Park Master Fund, Ltd.,
and Eton Park Fund, L.P.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this brief contains

4,797 words, which complies with the word limitations set forth in Section 2.B of the Individual

Practices of Judge Loretta A. Preska, dated April 1, 2025.

Dated: March 2, 2026                    */s/ Andrew E. Goldsmith*
                                        Andrew E. Goldsmith