**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETERSEN ENERGÍA INVERSORA, S.A.U. and PETERSEN ENERGÍA, S.A.U., | |
| Plaintiffs, | |
| -against- | Case Nos.: |
| ARGENTINE REPUBLIC and YPF S.A., | 1:15-cv-02739-LAP |
| Defendants. | 1:16-cv-08569-LAP |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., | |
| Plaintiffs, | |
| -against- | |
| ARGENTINE REPUBLIC and YPF S.A., | |
| Defendants. | |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND A CONTEMPT FINDING AGAINST THE REPUBLIC OF ARGENTINA

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.................................................................................................... 1

I.    THE REQUESTED SANCTIONS ARE WARRANTED........................................................ 3

    A.    The Republic Has Violated the Off-Channel Order................................................... 3

    B.    The Republic Has Not Shown Lack of Access and Must Prove it at the Hearing............. 4

    C.    The Republic's Shifting Positions and Refusal to Accept the Court's Rulings Demonstrate Willfulness ............................................................................................................... 7

    D.    The Republic's Ongoing Discovery Obstruction and Bad Faith Confirm Willfulness....... 9

    E.    Plaintiffs Are Prejudiced by the Republic's Noncompliance............................................ 9

II.   THE REQUESTED SANCTIONS ARE PROPER AND JUST ........................................... 10

    A.    Plaintiffs Are Entitled to the Requested Adverse Inferences .............................................11

    B.    Plaintiffs Are Entitled to a Preclusion Order .................................................................. 14

    C.    The Court Should Hold the Republic in Contempt.......................................................... 15

    D.    The Requested Monetary Sanctions Are Just and Necessary to Compel Compliance ..... 16

III.  THE GOVERNMENT'S STATEMENT OF INTEREST DOES NOT ALTER THE ANALYSIS .......................................................................................................................... 17

CONCLUSION............................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**Cases**

*Brink's Inc. v. City of New York*,
 717 F.2d 700 (2d Cir. 1983).............................................................................. 12

*Chabad v. Russian Fed'n*,
 915 F. Supp. 2d 148 (D.D.C. 2013) ................................................................... 18

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
 337 F.R.D. 47 (S.D.N.Y. 2020)........................................................................... 9

*Chen v. Thai Greenleaf Rest. Corp.*,
 2025 WL 1519145 (E.D.N.Y. May 28, 2025)................................................... 14

*Chevron Corp. v. Donziger*,
 296 F.R.D. 168 (S.D.N.Y. 2013).................................................................. 11, 12

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*,
 334 F.R.D. 68 (S.D.N.Y. 2020)........................................................................... 5

*Creative Res. Grp. of N.J., Inc., v. Creative Res. Grp., Inc.*,
 212 F.R.D. 94 (E.D.N.Y. 2002) ........................................................................ 13

*De Letelier v. Republic of Chile*,
 748 F.2d 790 (2d Cir. 1984)......................................................................... 12, 13

*Exp. Imp. Bank of Republic of China v. Democratic Republic of Congo*,
 2020 WL 6365014 (S.D.N.Y. Oct. 29, 2020) ................................................... 16

*Exum v. Gen. Elec. Co.*,
 819 F.2d 1158 (D.C. Cir. 1987) .......................................................................... 6

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
 637 F.3d 373 (D.C. Cir. 2011) .......................................................................... 18

*First City, Texas–Houston, N.A. v. Rafidain Bank*,
 281 F.3d 48 (2d Cir. 2002)................................................................................ 17

*Funk v. Belneftekhim*,
 861 F.3d 354 (2d Cir. 2017)........................................................................... 3, 14

*Funnekotter v. Republic of Zimbabwe,*
    2011 WL 5517860 (S.D.N.Y. Nov. 10, 2011) ............................................................. 15

*Huber v. Marine Midland Bank,*
    51 F.3d 5 (2d Cir. 1995) ................................................................................. 1, 3, 6

*Larson v. Domestic & Foreign Com. Corp.,*
    337 U.S. 682 (1949) ......................................................................................... 6

*Lyondell-Citgo Refin., LP v. Petroleos de Venezuela, S.A.,*
    2005 WL 1026461 (S.D.N.Y. May 2, 2005) .......................................................... 12

*M'Baye v. N.J. Sports Prod., Inc.,*
    2008 WL 1849777 (S.D.N.Y. Apr. 21, 2008) ......................................................... 6

*Peterson v. Bank Markazi,*
    121 F.4th 983 (2d Cir. 2024) ............................................................................ 14

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.,*
    490 F.3d 130 (2d Cir. 2007) .............................................................................. 6

*Shcherbakovskiy v. Seitz,*
    2010 WL 3155169 (S.D.N.Y. July 30, 2010) ......................................................... 16

*Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers,*
    357 U.S. 197 (1958) ......................................................................................... 6

*Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic,*
    2013 WL 3970823 (S.D.N.Y. Aug. 2, 2013) ...................................................... 6, 13

## PRELIMINARY STATEMENT

The Republic's Opposition (Dkt. 889, the "Opposition" or "Opp.") concedes that the Republic has not complied with the Off-Channel Order.[1] The Republic admits that it has neither collected nor produced court-ordered communications from 22 current and former officials,[2] including Minister of Economy Luis Caputo, Minister of Foreign Affairs Pablo Quirno, and Secretary of Economic Policy Luis Daza Narbona. Its sole excuse for that noncompliance is a purported lack of access. But the Opposition offers no competent evidence to support that claim. Instead, it relies on untested, conclusory hearsay assertions from a Republic attorney that its own ministers declined to cooperate.

The Republic's suggestion that a sovereign lacks access to communications concerning official business exchanged by its senior policymakers, simply because those communications occurred on an off-channel platform, is unsupported by evidence, inconsistent with common sense, and incompatible with the basic realities of how governments function. The Republic's untenable position underscores precisely why the Court has set an evidentiary hearing. There, the Republic must carry its heavy burden to prove that compliance is "plainly and unmistakably" impossible. *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). It should be required to do so with

---

[1] Defined terms have the meaning ascribed to them in Plaintiffs' moving papers. Dkt. 853 (the "Motion" or "Mot.").

[2] The Republic has confirmed that it will not comply with the Order for 12 of the 22 custodians, including the 11 custodians identified in the Motion plus Secretary Daza Narbona (collectively, the "Off-Channel Custodians"). Dkt. 889-1; *see also* Dkt. 854-3 at 2. The 12 Off-Channel Custodians are the subject of the Motion. *See* Dec. 9 Tr. at 18:10. The Republic has not produced communications for the remaining 10 of the 22 custodians because it represents that those custodians either did not respond to the Republic, did not make themselves available for collection, or relayed to the Republic that they did not have responsive off-channel communications. *See* Dkt. 863 at 3, 3 n.2, 5; 842-3 at 6–10. Plaintiffs reserve the right to seek relief with respect to these custodians at a later date.

sworn testimony from Off-Channel Custodians and others with knowledge, and with a factual record on the central issue of actual access.

Should the Republic fail to meet that burden at the hearing, sanctions are warranted. The existing record demonstrates that this is not a case of imperfect compliance despite good-faith effort. Rather, the record reflects a sustained pattern of obstructive conduct spanning more than a decade, aimed at preventing enforcement of the Court's valid, $16.1 billion unstayed judgment. The Republic has repeatedly shifted positions, relitigated resolved issues, advanced new legal theories after adverse rulings, and engaged in motion practice designed to delay. Mot. 5–17; Dkts. 884; 890. The Opposition offers no serious rebuttal to that record. Instead, it perpetuates the same pattern, again asking the Court to reconsider its settled rulings on Argentine law and presenting a newly minted expert whose opinion seeks to undermine the expert the Republic previously urged the Court to credit. What the Republic calls "diligence" is, on this record, the calculated avoidance of compliance.

The prejudice to Plaintiffs is substantial, concrete, and ongoing. The Republic has produced an extremely limited volume of alter-ego discovery, and the WhatsApp messages produced to date are demonstrably relevant to alter-ego issues. It cannot now dismiss the withheld materials as "a few more WhatsApp chats" after years of denying that those communications even exist, especially when the Republic continues to withhold production from the very officials most likely to possess the most probative documents. The importance of these materials is measured by the record, not by the Republic's self-serving, unsupported characterization.

The sanctions Plaintiffs seek are narrowly tailored to the misconduct at issue. Plaintiffs request a preclusion order and adverse inferences on what the improperly withheld documents would have demonstrated, as well as a finding of contempt and appropriate coercive monetary

sanctions. These remedies do not adjudicate alter-ego liability and do not impose liability on any State-Owned Entity. These remedies instead restore the evidentiary balance disrupted by the Republic's refusal to comply and prevent it from withholding probative evidence while disputing the very facts that the withheld evidence is likely to establish. The upcoming hearing will determine whether the Republic can meet its heavy burden. If it cannot, the Court should impose sanctions sufficient to remedy the prejudice caused by the Republic's willful noncompliance and to secure its compliance going forward.

The Republic invokes principles of comity, but as the Court has recognized, comity is a two-way street. Having treated the Court's judgment and discovery orders as optional, the Republic cannot now invoke comity to shield itself from the consequences of its repeated disregard for the Court's authority.

# I.    THE REQUESTED SANCTIONS ARE WARRANTED

Rule 37 sanctions are warranted where, as here, a party willfully fails to comply with a clear discovery order.[3] There is no dispute that the Republic has not complied with the Off-Channel Order. Its sole defense is alleged impossibility based on a purported lack of access to the materials. That factual claim requires the Republic to carry a heavy burden, *see Huber*, 51 F.3d at 10, and will be tested at the hearing the Court has already scheduled.

## A.    The Republic Has Violated the Off-Channel Order

The Court ordered the Republic to collect and produce off-channel communications relevant to the State-Owned Entities. Mot. 10–11; Jan. 29 Tr. at 6:15–21; Dkt. 785 at 10–12. The

---

[3] The Republic challenges the first factor in *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017), namely, whether its noncompliance was willful or otherwise justified. Opp. 12–19. The Republic does not dispute that it has been warned of the consequences of noncompliance, the duration of noncompliance supports sanctions, or that lesser sanctions would be ineffective.

Republic concedes it has not produced those communications for the Off-Channel Custodians, including Minister Caputo, Minister Quirno, and Secretary Daza Narbona, and other senior officials at the center of the Republic's financial affairs and its coordination with the State-Owned Entities. Opp. 11–12. The Republic nevertheless contends that it satisfied the Order by requesting voluntary cooperation and accepting refusal. Opp. 12–14. The Order required production, not a request. The Republic did not produce, and its admitted failure is a violation.

### B.    The Republic Has Not Shown Lack of Access and Must Prove it at the Hearing

The record leaves no room for dispute that Republic officials conduct government business through off-channel platforms. Plaintiffs submitted extensive evidence documenting that practice. *See* Mot. 8–12, 20. Rather than rebut that record, the Republic repeatedly dismissed it as not credible and irrelevant. *See* Mot. 20. It persisted even after the Court recognized that it was "obvious" that "major government business" relevant to this case had been conducted through off-channel communications. *Id.*

The Republic's own (limited) productions confirm that officials routinely communicate about government business through off-channel platforms, and those communications bear directly on alter-ego issues. *See, e.g.*, Mot. 15–16 (describing WhatsApp messages between officials and State-Owned Entities discussing official business); Dkts. 842-1; 863-1; *see also* Declaration of Seth L. Levine, dated March 5, 2026, Ex. A (former Secretary of Economic Policy requesting business information from former chief economist at the BCRA via "email or WhatsApp"); *id*. Ex. B (reflecting coordination between former Secretary of Economic Policy and director of BCRA regarding financial policy).

The Republic nevertheless maintains that it cannot access certain off-channel communications concerning official business. Its sole factual support is the declaration of Deputy Treasury Attorney General Juan Ignacio Stampalija, an attorney for the Republic. Dkt. 888. That

declaration identifies no evidence demonstrating actual lack of access. It states only that Mr. Stampalija and other Republic attorneys asked certain officials to comply with the Order, and, according to his account, simply accepted those officials' refusals. Opp. 11–12, 15–17; Dkt. 888 ¶¶ 6–7, 10–17, 21–25 (reporting that Minister Caputo, Minister Quirno, and Secretary Daza Narbona, among others, "did not consent" to provide their communications). Those assertions are not only conclusory, but they are rank hearsay, untested through cross-examination. Unsurprisingly, the Court recently declined to credit the Republic's application concerning its failure to identify the location of its gold reserves based on a similar declaration from another Republic official and scheduled a hearing on the subject. Dkt. 884.

In any event, the Republic has not put forth any evidence that, outside litigation, it lacks "the ability in the ordinary course of business to obtain documents" from officials' off-channel platforms. *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 73 (S.D.N.Y. 2020). When, for instance, President Milei, Minister Caputo, and senior BCRA officials discuss official matters on WhatsApp, *see* Mot. 9, 11–12, the Republic cannot plausibly contend that the government lacks access to those communications because they reside on private devices. That position is incoherent and incompatible with the basic reality of the ordinary functioning of government.

The Republic's suggestion that it cannot "threaten to fire" its own officials, Opp. 17, for failure to comply with the Order misses the mark. The Republic offers no evidence that an official's refusal to provide public information concerning government business in the ordinary course would not constitute grounds for discipline of some kind, and is something that the Republic will have to prove at the hearing. In any event, nothing in the record demonstrates that the Republic, in fact, lacks access to the withheld information.

The Republic's senior officials also are not "non-parties," as the Republic suggests. *See* Dkt. 888 ¶ 5; Opp. 10, 13, 19, 32, 35. A sovereign acts only through its officials. *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 688 (1949). When those officials exchange messages about government business, including on off-channel platforms, the Republic itself is communicating. *See* July 29 Tr. at 53:16–18. The cases the Republic invokes are distinguishable and therefore inapposite. Opp. 15–18 (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197 (1958); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007); *Exum v. Gen. Elec. Co.*, 819 F.2d 1158 (D.C. Cir. 1987); *Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 2013 WL 3970823 (S.D.N.Y. Aug. 2, 2013); and *M'Baye v. N.J. Sports Prod., Inc.*, 2008 WL 1849777 (S.D.N.Y. Apr. 21, 2008), all of which address circumstances in which a party lacked practical control over materials held by independent, non-party entities). The Republic's attempt to distinguish itself from its officials is artificial and untenable.

In short, the Republic must face a heavy burden to show at the hearing that it lacks access to the relevant communications. Mot. 34–35; Dkt. 884; Jan. 29 Tr. 14:20-22; *Huber*, 51 F.3d at 10. As explained in the Motion, that showing requires live testimony from Republic officials, including the Off-Channel Custodians, to address, among other things, the factual question of the practical exchange of information among Republic officials and alter-ego entities. If the Republic contends that senior officials only share and act on information communicated through government systems, and not through off-channel platforms, that contention should be tested under oath. The hearing should also address other factual issues the Opposition ignores, including the Republic's routine use of off-channel communications for official business, the process by which the Republic permits its officials to access sensitive information on their private devices and retain that

information after they leave, and the Republic's efforts to preserve relevant off-channel communications. Mot. 34–35.

### C.    The Republic's Shifting Positions and Refusal to Accept the Court's Rulings Demonstrate Willfulness

The Republic's shifting positions and repeated attempts to relitigate legal arguments the Court has already rejected confirm its willfulness. The Motion details this pattern at length. Mot. 5–17 (documenting the Republic's inconsistent positions, renewed Argentine-law objections following adverse rulings, and repeated efforts to relitigate executability and control). The Opposition continues that pattern.

With respect to Argentine law, when the parties litigated the discoverability of off-channel communications in 2024, the Republic submitted an expert declaration from Miriam Mabel Ivanega acknowledging that such communications could be produced pursuant to "a court order from an Argentine court." Dkt. 660 at 9. Plaintiffs' expert, Alberto Bianchi, agreed, and he added that "that order can also be given by a foreign judge," not just an Argentine judge. Dkt. 672 at 8–9. The Court ordered the Republic to produce the documents. *See* July 29 Tr. at 52:9–53:21. The Republic then moved for reconsideration, which the Court denied. Dkt. 785.

Although the Republic repeatedly relied on Ivanega's opinions on Argentine law from 2024 until the filing of the Opposition, *see, e.g.*, Dkts. 677 at 3–4; 763 at 37–38; 782 at 4; 808 at 5; July 15 Tr. at 36:18–37:12; Aug. 6 Tr. at 24:8–22; Dec. 9 Tr. at 4:5–14, it has now retained a new Argentine law expert, Federico Campolieti. Campolieti opines that, even though an Argentine court has the authority to order production, the Republic cannot lawfully seek that relief from an Argentine court. Dkt. 886 ¶¶ 32–34.

The Court should disregard Campolieti's declaration. It is precisely this goalpost-moving that has plagued these proceedings, and the Court should not entertain it. For starters, the Court

has already ruled on this, twice. *See* July 29 Tr. at 52:9–53:21 (ruling that documents must be produced under U.S. law); Dkt. 785 (holding that Argentine law does not prohibit production); Jan. 29 Tr. at 15:10–18; *id*. at 16:2–3.[4] Even considering his declaration, though, Campolieti offers no additional arguments to Bianchi's key opinion that a "foreign judge" (*i.e.*, a U.S. court) could order the Republic to produce the off-channel communications, and the Republic would not violate Argentine law in complying with that order. *See* Dkt. 672 at 8–11. At most, Campolieti identifies a hypothetical procedural hurdle, while failing to dispute that Argentine law would allow production of the off-channel communications.

Moreover, the Opposition again resurrects the Republic's oft-rejected "executability" objection. Opp. 22–23, 26–27; *see* Mot. 5–6, 23–24. The Court has made clear, time and again, that those issues are "not today's problem" and do not excuse the Republic's discovery obligations. Dec. 9 Tr. at 9:18–10:2; Jan. 29 Tr. at 4:14–17 (rejecting the Republic's repeated arguments concerning ultimate alter-ego liability because they have no bearing on discovery); *id*. at 11:5–17. The Republic likewise persists in insisting that Plaintiffs proceed through Hague Convention procedures. Opp. 23–24; Dkt. 888 ¶ 5. This Court has (repeatedly) rejected that proposal, recognizing that Hague procedures would impose years of delay and are inappropriate here. Dec. 9 Tr. at 17:6–9; Jan. 29 Tr. at 8:10–13. In any event, the Republic has conceded that it has not determined whether an Argentine court would grant such an application, and any issues relating to the Republic's purported lack of access will be addressed at the hearing. Dkt. 808 at 3; Dkt. 886 ¶¶ 8, 36.

---

[4] Plaintiffs do not respond fully to the Campolieti declaration. If the Court is inclined to hear additional expert testimony, which, as set forth above, Plaintiffs respectfully submit is wholly unnecessary and would be inconsistent with the Court's prior rulings, Plaintiffs request an opportunity to cross-examine Campolieti at the hearing and submit their own expert evidence in response to the Campolieti declaration.

### D.    The Republic's Ongoing Discovery Obstruction and Bad Faith Confirm Willfulness

The Republic's claim that it has exhibited no "pattern of bad-faith delay and obstruction," Opp. 3, 21, is irreconcilable with the record. Mot. 4–17 (detailing years of shifting positions, serial re-litigation, noncompliance with discovery orders, and obstruction); *see also* Dkt. 874-2 (12-page appendix cataloging post-judgment misconduct). The Republic does not meaningfully dispute Plaintiffs' post-judgment discovery chronology, rebut Plaintiffs' examples, or grapple with the Court's prior admonitions.

The Republic's obstruction has continued since Plaintiffs filed the Motion. Most recently, the Republic filed what the Court described as an "unmerited motion for reconsideration," styled as a discovery stay request. Dkt. 890 at 3. In denying relief, the Court noted that the Republic continues to "demand that this Court extend comity [while] it simultaneously refuses to make any effort to honor the Court's unstayed judgment." *Id*. at 5–6 (quoting Dkt. 742 at 32).

The Court also recently granted Plaintiffs' request for a hearing regarding the Republic's gold reserves, following years of obstruction on that issue. Dkt. 884; *see also* Dkts. 858; 864; 880; Dkt. 863 at 2–4, 9–10, 14–17 (describing missed deadlines, deficient searches, and inadequate Rule 30(b)(6) testimony). Notably, the Court ordered the hearing, despite the Republic's submission of an untested, hearsay declaration (much like the Stampalija declaration) professing a purported lack of access to the relevant information. Dkt. 884.

### E.    Plaintiffs Are Prejudiced by the Republic's Noncompliance

The Republic's refusal to comply with the Order significantly prejudices Plaintiffs. Mot. 27, 33. Prejudice exists where noncompliance deprives a party of access to evidence necessary to litigate the issues for which discovery was ordered. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 65 (S.D.N.Y. 2020). The scope of the Republic's production to date

underscores that prejudice. As the Opposition concedes, across years of post-judgment litigation, the Republic has produced ***only 8,600 pages*** of alter-ego-related discovery concerning the State-Owned Entities, and only 13,500 documents on all post-judgment discovery topics. Opp. 8; Dkts. 874 at 3–4; 887 ¶ 5. That limited production makes the withheld off-channel communications all the more significant, and the prejudice resulting from the Republic's noncompliance all the more acute.

Nor can the Republic trivialize the withheld materials as "a few more WhatsApp chats." Opp. 22. All custodians are not created equal. The Republic's attempt to produce some off-channel communications[5] while withholding communications from central decisionmakers is a transparent strategic gambit. Moreover, the Republic's characterization of the communications that it continues to withhold is irreconcilable with the record. The Republic conducts official business extensively through off-channel platforms, and the withheld communications are material and involve sitting senior officials, including Minister Caputo, at the center of the Republic's relationship with the State-Owned Entities. Mot. 9–12, 29–30; July 29 Tr. at 55:17–56:21. The Republic cannot minimize the significance of the communications now, especially after years of denying that those communications even existed.

## II.    THE REQUESTED SANCTIONS ARE PROPER AND JUST

The Court should consider appropriate sanctions and remedies after the hearing and on a fully developed record. The existing record already makes clear, however, that each sanction Plaintiffs seek is warranted and available under the law. *See* Mot. 25–35.

---

[5] Plaintiffs have concerns that the Republic's productions are incomplete. *See* Mot. 6 n.6.

### A.    Plaintiffs Are Entitled to the Requested Adverse Inferences

Plaintiffs seek narrowly tailored adverse inferences designed to restore the evidentiary balance disrupted by the Republic's willful refusal to comply with the Order. Plaintiffs requested findings that the withheld communications would have demonstrated: (i) each Off-Channel Custodian exercises extensive control over the respective State-Owned Entity or Entities for which they serve as custodians; (ii) the Republic's high-ranking officials also act as high-ranking officers, directors, or employees of the State-Owned Entities, and vice versa; (iii) the State-Owned Entities report to the Republic and act on its behalf; and (iv) the State-Owned Entities use their assets for the benefit of each other and the Republic, and vice versa. Mot. 28–30.

The requested inferences are plainly permissible under both Rule 37 and the Court's inherent powers, and they are warranted here because the Republic: (1) was subject to an unambiguous order requiring production of the relevant communications; (2) acted with the requisite "culpable state of mind," including bad faith and willfulness; and (3) withheld communications that are relevant to Plaintiffs' alter-ego claims. Mot. 28–30. The Republic disputes only the latter two elements. Opp. 26–28.

With respect to its culpability, the Republic ignores the extensive record of its willfulness and bad faith throughout post-judgment discovery. *Supra* at 7–9; Mot. 19–24, 29–30. Its professed lack of access to the communications will be tested at the hearing. But even setting that factual dispute aside, the circumstances of the Republic's refusal to comply with the clear Order independently satisfies the "culpable state of mind" requirement, *see Chevron Corp. v. Donziger*, 296 F.R.D. 168, 222 (S.D.N.Y. 2013) (citation omitted), notwithstanding the Republic's continued attempts to relitigate Argentine law. Courts have rejected similar efforts to avoid sanctions based on purported foreign-law limitations on document production. *See* Mot. 29 (citing *Chevron*, 296

F.R.D. at 222; *Lyondell-Citgo Refin., LP v. Petroleos de Venezuela, S.A.*, 2005 WL 1026461, at *4 (S.D.N.Y. May 2, 2005)). And, with respect to relevance, Plaintiffs have clearly demonstrated that the withheld evidence is probative of Plaintiffs' alter-ego claims, *supra* at 4, 9–10, which will likewise be established at the hearing.

While the Republic's officials' invocation of a foreign legal privilege to avoid providing discovery does not excuse the Republic of its discovery obligations, such an invocation in any event only further supports Plaintiffs' requested inferences. *See* July 15 Tr. at 36:22. Courts have long held that an employee's or former employee's invocation of testimonial privilege may be treated as competent evidence supporting an adverse inference against an employer. *See Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983). Where, as here, senior government officials acting within the scope of their official duties decline to provide evidence pursuant to a purported privilege, the Court may properly infer that the withheld evidence would have been unfavorable to the Republic.

Unable to meaningfully contest that adverse inferences are an appropriate sanction for its misconduct, the Republic incorrectly suggests that the Court is powerless to impose such sanctions because they might affect third parties. Opp. 24–25. Neither the footnote in *De Letelier v. Republic of Chile*, 748 F.2d 790, 795 n.2 (2d Cir. 1984), nor subsequent precedent applying that footnote, supports that proposition. In *De Letelier*, after Chile failed to comply with discovery obligations, the district court directly imposed "Rule 37 sanctions against [Chile's national airline] consisting of adverse findings of fact that provided a basis to disregard [the airline's] juridical separateness," allowing the court to enforce Chile's default judgement against the airline. *Id.* at 793. On appeal, the Second Circuit found that the alter-ego issue should not have been conclusively determined against the airline based only on Chile's misconduct. *Id.* at 795 n.2. Here, in stark contrast to *De*

*Letelier*, Plaintiffs are neither seeking to sanction the State-Owned Entities directly nor attempting to conclusively establish their status as alter egos. Rather, Plaintiffs are seeking adverse inferences on what the improperly withheld documents would have demonstrated.[6] Should the Court grant these requested inferences, the implementation and reach of such inferences would be subject to further proceedings, and such inferences would be weighed against other record evidence and subject to potential objections and defenses. *See* Mot. 28, n.10.

Even if *De Letelier* stood for the broad proposition that Rule 37 sanctions are unavailable with respect to alter-ego discovery disputes (it does not), this Court may separately "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs," and, with respect to "the failure to produce evidence, a district court . . . has broad discretion in fashioning an appropriate sanction, including . . . giv[ing] an adverse inference instruction." *Creative Res. Grp. of N.J., Inc., v. Creative Res. Grp., Inc*., 212 F.R.D. 94, 102 (E.D.N.Y. 2002) (citation and quotation marks omitted); *see also* Mot. 28–29. The Republic presents no support for stripping the Court of its inherent power to protect its authority and remedy willful discovery defiance. Indeed, accepting the Republic's position would allow defendants to withhold alter-ego discovery with impunity, effectively preventing plaintiffs from proving the issue.

---

[6] In *Thai Lao Lignite*, 2013 WL 3970823, the only other case cited by the Republic on this issue, the plaintiffs sought as a sanction that the court "deem certain facts" regarding the relationship of the defendant and an alleged alter ego "established for the duration of the enforcement proceedings." *Id*. at *6. The court, following a hearing, and having already found sanctions inappropriate on an alternative basis, briefly noted that *De Letelier* also provided a basis to reject the sanctions request because such conclusive findings would act as a sanction against the alter ego. *Id*. Here, Plaintiffs are not seeking that findings regarding the alter-ego relationship between the Republic and the State-Owned Entities be "established for the duration of the enforcement proceedings," only that an adverse inference be made on what the withheld documents would have demonstrated.

Finally, the Republic argues that determinations regarding alter-ego jurisdiction and attachment are necessary before sanctions may be imposed. Opp. 25–27. The Republic's reliance on *Peterson v. Bank Markazi*, 121 F.4th 983 (2d Cir. 2024), is misplaced. *Bank Markazi* addressed a narrow issue of ancillary jurisdiction; it did not consider, let alone limit, a court's authority to impose Rule 37 sanctions. *Id*. at 999–1000, 1011. Nor are those merits issues relevant to whether the Republic has complied with a discovery order. Plaintiffs do not seek through the Motion to establish jurisdiction over, pursue claims against, or execute upon the assets of the State-Owned Entities.

### B.    Plaintiffs Are Entitled to a Preclusion Order

Plaintiffs seek a narrowly tailored preclusion order preventing the Republic, itself, from disputing that the State-Owned Entities are its alter egos. Mot. 26–27. A preclusion order is warranted, because: (1) the Republic has offered no credible explanation for its refusal to comply with the Order; (2) the withheld off-channel communications are indisputably important; (3) the requested preclusion order is directly related to the alter-ego discovery that the Republic has refused to produce; and (4) courts regularly impose such orders where a party flouts clear discovery orders and uses obstruction to prevent discovery into alter-ego issues. *Id.*[7]

The Republic does not meaningfully rebut these showings. First, it argues that the Court cannot enter a preclusion order unless Plaintiffs first bring proceedings against one of the State-Owned Entities. Opp. 28–29. That is not the standard. Where a sovereign's noncompliance deprives its adversary of evidence necessary to litigate an alter-ego claim, courts do not require,

---

[7] The Republic incorrectly asserts that these factors apply only to violations under Rule 37(c). Opp. 29. Courts in this Circuit apply them in the Rule 37(b) context as well. *See, e.g.*, *Chen v. Thai Greenleaf Rest. Corp.*, 2025 WL 1519145, at *8–9, *8 n.8 (E.D.N.Y. May 28, 2025) (awarding a preclusion order under Rules 37(b) and (d) after observing that courts "must consider" the *Softel* factors). Regardless, Plaintiffs prevail under both the *Softel* and *Funk* standards. Mot. 19–27.

or consider, the existence of a separate proceeding against a state instrumentality before issuing a preclusion order. *See, e.g., Funnekotter v. Republic of Zimbabwe*, 2011 WL 5517860, at *4 (S.D.N.Y. Nov. 10, 2011). The Republic even concedes that its position is based on its disagreement with the Court's prior rulings on jurisdiction and attachment. Opp. 28–29 (citing *id.* at 25–26).

The Republic next reprises arguments addressed in the Motion and rejected by the Court: that compliance is beyond its control, that prior alter-ego decisions elsewhere limit discovery here, and that it has provided voluminous discovery in good faith. *Compare* Opp. 29–30, *with* Mot. 21–23 and *supra* at 4–7 (demonstrating that noncompliance is not beyond the Republic's control); Jan. 29 Tr. at 11:11–15 (rejecting reliance on prior alter-ego rulings to limit discovery); Mot. 5–17 (documenting years of minimal, incomplete, and court-compelled productions). Those arguments simply cannot be squared with the record and the Court's prior rulings. But, in any event, the Republic will have the opportunity to attempt to prove at the hearing that it attempted to comply in good faith.

Finally, the Republic argues that a preclusion order would be unfair. Opp. 30. On the contrary, a preclusion order here would be entirely just and proper under the law to remedy the harm to Plaintiffs. Mot. 26–27. In any event, these fairness arguments will be addressed at the hearing.

## C.    The Court Should Hold the Republic in Contempt

As the current record reflects, a contempt finding is warranted because the Republic has failed to comply with the Order and has not diligently attempted to comply with it. *Supra* at 3–9; Mot. 11–17, 19–23, 31–33.

The Republic's claims of "diligence" will be tested at the hearing, where the Republic bears the burden of proving that compliance with the Order is impossible. Opp. 32. The existing record, however, tells a different story. This is not the case of imperfect compliance despite good-faith effort; it is a case of an affirmative decision not to produce discovery from officials likely to possess highly relevant evidence. *Supra* at 7–10; Mot. 7–17. The undisputed chronology reflects not diligence, but calculated delay: months of evolving positions, missed deadlines, and meritless motion practice designed to postpone and evade compliance. Mot. 5–17, 19–23, 31–32. Partial or begrudging compliance cannot excuse the Republic's admitted violation of the Order. *See Shcherbakovskiy v. Seitz*, 2010 WL 3155169, at *9 (S.D.N.Y. July 30, 2010) ("production of numerous responsive . . . documents" does not "excuse[] or moot[]" accompanying nonproduction).[8]

### D. The Requested Monetary Sanctions Are Just and Necessary to Compel Compliance

Plaintiffs request a coercive sanction of at least $1 million per day. As explained in the Motion, that amount is calibrated to the escalating prejudice caused by the Republic's continued refusal to produce uniquely probative evidence central to Plaintiffs' potential alter-ego arguments, and is necessary to compel compliance given the outstanding judgment against the Republic. Mot. 32–33. The Republic contends that the requested monetary sanctions are not "commensurate" considering its purported good-faith efforts to comply. Opp. 34. The existing record reflects the opposite and, the Republic's conclusory assertion of "lack of access" is a disputed factual issue that will be tested at the hearing.

---

[8] The Republic advances materially identical arguments in opposing Rule 37(b)(2)(C)'s mandate of reasonable fees and costs. Opp. 34–35. Those arguments fail for the same reasons. Mot. 35.

Nor does the FSIA bar the requested sanctions. Opp. 33–34. Courts in this Circuit have routinely issued monetary sanctions against sovereigns and have rejected the very arguments the Republic makes here. *See, e.g.*, *First City, Texas–Houston, N.A. v. Rafidain Bank,* 281 F.3d 48, 53 (2d Cir. 2002); *Exp. Imp. Bank of Republic of China v. Democratic Republic of Congo*, 2020 WL 6365014, at *2, n.2 (S.D.N.Y. Oct. 29, 2020) (collecting cases).

Finally, the Republic argues that the requested fine is "out of step" with prior sanctions against sovereigns in this district. Opp. 34. That comparison misses the mark. The relevant inquiry is whether the sanction is properly coercive and proportionate to the harm and the need to secure compliance. Mot. 32–33. Here, the scale of the judgment and the Republic's sustained noncompliance justify a meaningful coercive sanction.

## III. THE GOVERNMENT'S STATEMENT OF INTEREST DOES NOT ALTER THE ANALYSIS

On February 26, 2026, the United States (the "Government") filed a Statement of Interest opposing Plaintiffs' request for sanctions (the "Statement"). Dkt. 900. The Statement largely rehashes the Republic's arguments, including arguments as to executability, and are meritless for the same reasons. The Statement also adopts the Republic's blatantly incorrect characterizations of the record without analysis, relating to both the Republic's conduct and the relevance of the off-channel communications. Indeed, the Government's position is difficult to reconcile with its longstanding enforcement posture recognizing that business conducted through off-channel communications is relevant. Federal authorities have imposed substantial penalties on financial institutions for failing to preserve such communications.[9]

---

[9] *See, e.g.*, Sec. & Exch. Comm'n, Press Release No. 2022-174, *SEC Charges 16 Wall Street Firms with Widespread Recordkeeping Failures* (Sept. 27, 2022), https://www.sec.gov/newsroom/press-releases/2022-174 ($1.1 billion in penalties for violating "sacrosanct" record-keeping requirement by failing "to maintain and preserve" off-channel communications).

With respect to monetary sanctions, the Government has filed statements making materially similar arguments to oppose monetary sanctions against sovereigns in other cases, and courts have roundly rejected those arguments. *Compare* Brief for United States, *FG Hemispheres Assocs. v. Democratic Republic of Congo*, 2010 WL 4569107, at *7–25 (D.C. Cir. 2010), *with FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 377–80 (D.C. Cir. 2011); and *compare* Brief for United States, *Chabad v. Russian Fed'n*, No. 05-1548, Dkt. 111 at 4–13 (D.D.C. 2012), *with Chabad v. Russian Fed'n*, 915 F. Supp. 2d 148, 151–53 (D.D.C. 2013).

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court order the requested relief.


Dated:  March 5, 2026                    Respectfully submitted,


                                         LEVINE LEE LLP

                        By:     */s/ Seth L. Levine*
                                Seth L. Levine
                                Alison M. Bonelli
                                Julie-Irene A. Nkodo
                                Adam M. King
                                400 Madison Ave
                                New York, New York 10017
                                Phone: (212) 223-4400
                                Email: slevine@levinelee.com

                                KELLOGG, HANSEN, TODD, FIGEL
                                & FREDERICK, P.L.L.C.
                                Mark C. Hansen
                                Derek T. Ho
                                Andrew E. Goldsmith
                                Alejandra Ávila
                                Diego Negrón-Reichard
                                1615 M Street, N.W., Suite 400
                                Washington, D.C. 20036

18

Phone: (202) 326-7900
Fax: (202) 326-7999
Email: mhansen@kellogghansen.com

KING & SPALDING LLP
Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2100
Fax: (212) 556-2222
Email: lharris@kslaw.com

-and-

Reginald R. Smith
Kevin D. Mohr
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Phone: (713) 751-3200
Fax: (713) 751-3290
Email: rsmith@kslaw.com

*Counsel for Plaintiffs Petersen Energía
Inversora, S.A.U., Petersen Energía, S.A.U.,
Eton Park Capital Management, L.P., Eton
Park Master Fund, Ltd., and Eton Park
Fund, L.P.*

19

## <u>LOCAL CIVIL RULE 7.1(c) CERTIFICATION</u>

Pursuant to Local Civil Rule 7.1(c), the total number of words in the foregoing memorandum of law, inclusive of footnotes and exclusive of the caption, indices, tables, signatures blocks, and certificates, is 5,451.

Dated: March 5, 2026

_/s/ Seth L. Levine_

Seth L. Levine
