# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

May 18, 2026

Via ECF

The Honorable Loretta A. Preska,
    United States District Court for the Southern District of New York,
      500 Pearl Street,
        New York, NY 10007.

> Re: *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP); *Eton Park Cap. Mgmt.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP)

Dear Judge Preska:

On behalf of the Argentine Republic, I respectfully request a pre-motion conference on the Republic's anticipated motion for reconsideration or clarification of the Court's order entered May 5, 2026 modifying the Protective Order (Dkt. 674) "to permit the parties to use materials obtained in discovery in these cases in arbitration proceedings." Dkt. 915 at 5 (the "Modification Order").[1] The Modification Order does not distinguish between pre- and post-judgment discovery, Dkt. 913 at 3-4, and post-judgment discovery is not relevant to any potential arbitration. And in light of the Second Circuit's reversal of the underlying judgment, plaintiffs should never have obtained these materials in the first place. The Court should therefore amend or clarify the Modification Order to exclude post-judgment discovery.

      1.    In the Modification Order (at 3-4), the Court found there was "no indication that the Defendants relied on the Protective Order." Respectfully, in making this finding, the Court overlooked the distinction between merits and post-judgment discovery in analyzing the issue. During post-judgment discovery, in express reliance on the Protective Order, the Republic produced extensive, highly

---

[1]    All docket entries refer to *Petersen*.

The Honorable Loretta A. Preska                                          -2-

sensitive, nonpublic information concerning the Republic's assets from 2020 to March 2026.[2]  Dkt. 740-1 at 6; Dkt. 515-3 at 8; Dkt. 764-2 at 8.  The Republic produced over 115,000 pages of confidential documents about its worldwide financial accounts; diplomatic, consular, and military property; two years of interbank (SWIFT) messages; financial agreements with Chinese entities; and communications from personal devices of 13 current and former high-ranking Argentine officials, among others.  Dkt. 867 at 3; Dkt. 887 at 2.  The Republic also provided 30(b)(6) deposition testimony of seven senior Argentine officials about commercial transactions, proposed privatizations, and agreements with China, among other matters.  Dkt. 887 at 6-7.

In producing this information, the Republic expressly relied on the Protective Order.  With each production, the Republic stated that it was producing the material "subject to the Protective Order."  *E.g.*, Dkt. 867-10 at 1; Dkt. 867-25 at 2; Dkt. 867-26 at 1.  Plaintiffs recognized that reliance, invoking the Protective Order to argue against the Republic's redactions, Dkt. 867-9 at 4, and to urge the Court to compel discovery of diplomatic and military accounts, Dkt. 592 at 9:7-9, 10:5-7.  Plaintiffs' own expert opined that disclosure of confidential information "could not endanger the Argentine financial or banking system" precisely because it was "protected by the terms of the Protective Order."  Dkt. 672 at 14.  Moreover, plaintiffs attached the Protective Order to each of their 169 subpoenas served on 144 different third parties, which produced sensitive information.  Dkt. 887 at 7; *e.g.*, Dkt. 896-1 at 16-37.

2.    The Court also held that, even if the Republic reasonably relied on the Protective Order, "Plaintiffs' claims in arbitration will undoubtedly mirror the claims in this action," and thus "Plaintiffs ha[d] shown a 'compelling need'" to avoid duplicative discovery.  Dkt. 915 at 4.  That is incorrect with respect to post-judgment discovery.  Plaintiffs pursued post-judgment discovery under Rule 69(a)(2) to identify assets from which the now-reversed judgment might be satisfied—*i.e.*, information concerning the Republic's existing assets.  Those materials have nothing to do with plaintiffs' underlying claims, which relate to events in 2012 to 2014.

This Court has recognized that "indiscriminate" requests to modify confidentiality orders should be rejected because it was skeptical that "judicial

---

[2]    Discovery of alter ego theories, and military, diplomatic, and consular assets was limited to 2022 to March 2026.

The Honorable Loretta A. Preska                                    -3-

economy would be served by handing [movant] a mountain of discovery from a separate case that may not even be relevant." *Giuffre* v. *Dershowitz*, 2020 WL 3578104, at *1, *3 (S.D.N.Y. July 1, 2020) (Preska, J.). The same logic applies here: the modification should not permit the use of post-judgment discovery in arbitration proceedings. *See also Rio Tinto* v. *Vale S.A.*, 2016 WL 900652, at *3 (S.D.N.Y. Mar. 9, 2016) (Peck, M.J.) (granting "limited modification" to permit use of specific documents in arbitration). Excluding post-judgment discovery is also consistent with the "narrow and specific" scope of arbitration discovery, which is generally limited to documents "relevant to the case and material to its outcome," IBA Rules on the Taking of Evidence in Int'l Arb., arts. 3.3(a)–(b), 3.7, 9.2(a) (2020), not documents relevant to enforcement. *See* ICSID Arb. Rules, Rule 37 (2022) (Tribunal shall consider "relevance and materiality of the documents requested"); *INVISTA S.à r.l.* v. *E.I. du Pont de Nemours & Co.*, 2011 WL 13382667, at *2 (S.D.N.Y. May 26, 2011) (Freeman, M.J.) ("[T]his Court would not want to interfere with the arbitrator's authority to dictate [discovery] limits.").

3.      Moreover, to the extent that the Court found "no significant prejudice" to the Republic from modification, Dkt. 915 at 4 (internal quotation marks and citation omitted), that is clearly not the case with respect to post-judgment discovery. Allowing discovery obtained based on a now-reversed judgment to be used in subsequent arbitrations would prejudice the Republic by allowing plaintiffs to misuse information that they never should have obtained in the first place. In the Second Circuit, reversal requires that the judgment thereafter be treated "as though it never existed" and "void from the beginning." *In re Enf't of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*, 153 F.4th 142, 161 (2d Cir. 2025) (citations omitted). Plaintiffs should not be permitted to exploit post-judgment discovery based on a now-reversed judgment.

4.      Plaintiffs do not have an arbitral award, much less have they initiated recognition and enforcement proceedings of a nonexistent arbitral award; therefore, they have no need for post-judgment discovery. Courts are reluctant to modify protective orders for use in separate proceedings before discovery there has begun. *See, e.g.*, *Simo Holdings Inc.* v. *Hong Kong uCloudlink Network Techs. Ltd.*, 2020 WL 2133173, at *2 n.2 (S.D.N.Y. May 5, 2020) (Rakoff, J.) (although "a Chinese procedural rule may require" disclosure of certain documents "at some point," the Chinese Court had not "yet ordered it to produce [those] documents"). That reasoning applies with even greater force to post-judgment discovery that has no connection to potential arbitration claims. Notably, even if plaintiffs may need post-judgment materials in potential future enforcement proceedings of a

The Honorable Loretta A. Preska                                    -4-

hypothetical arbitration award, the materials about the Republic's assets from 2022 to 2026 would be stale, and their relevance should be addressed by the court with jurisdiction over the relevant enforcement proceeding.

Respectfully,

/s/ Robert J. Giuffra, Jr.
Robert J. Giuffra, Jr.

cc:    Counsel of Record (via ECF)