July 1, 2026

*Via CM/ECF*

Hon. Loretta A. Preska
United States District Judge for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:  *Petersen Energía Inversora S.A.U. v. Argentine Republic*, No. 15-cv-02739; *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-08569

Dear Judge Preska:

Plaintiffs, the Republic, and YPF respectfully submit this joint letter to summarize the status of the disputes that remain for the July 7 conference, consistent with the Court's June 10, 2026 order directing the parties to make "good-faith efforts to narrow their disputes" over the Protective Order.  Dkt. 927 at 1-2.[1]  The parties exchanged correspondence trying to reach agreement starting on June 17, 2026, and met and conferred on June 30, 2026.

**A. Use of Non-YPF Post-Judgment Discovery Material in Arbitration**

**<u>Plaintiffs' Position</u>**:

Reconsideration is an "extraordinary remedy to be employed sparingly." Dkt. 785 at 2 (citation omitted).  To justify reconsideration, a movant must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted).  That standard is "strict"—reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  The Republic points to nothing of the sort here and cannot meet this strict standard.

---

[1] All references to "Dkt." refer to docket entries in case number 15-cv-02739.

Hon. Loretta A. Preska
July 1, 2026
Page 2

Nonetheless, in an effort to reach agreement, Plaintiffs have largely agreed to the relief the Republic sought in its motion for reconsideration, Dkt. 917. In particular, Plaintiffs have agreed that, as a default matter, the protective order will not allow documents produced after this Court's September 15, 2023 judgment to be used in the merits arbitration, except that material produced after judgment that should have been produced during the merits proceedings before judgment will be treated like pre-judgment discovery material and may therefore be used in arbitration. *See* Ex. A, Part II ¶ 2 (Plaintiffs' proposed protective order). Notwithstanding the burden involved, Plaintiffs have further agreed to identify such material by Bates number and seek the Court's guidance if they cannot agree. *See id*. App. A. Plaintiffs request that the Court enter Plaintiffs' proposed modified protective order, attached as Exhibit A. A redline comparing that order to Plaintiffs' proposed order submitted with their motion for modification, Dkt. 911-1, is attached as Exhibit B.

The remaining disagreement with the Republic concerns post-judgment discovery's potential use in a post-award enforcement context, and the Republic has maintained the position that none of this—extremely hard fought for—discovery should be available for use.

The Republic's central argument for reconsideration is that post-judgment discovery was focused on enforcement and therefore will not be relevant to the merits of an arbitration. *See* Dkt. 917 at 2-4. But that argument falls apart in the context of an arbitration *enforcement* proceeding. If such a proceeding occurs, it will target the Republic's assets, just as the enforcement proceedings in this Court did. Accordingly, all post-judgment discovery should at that point be available for use.

Relying on *In re Enforcement of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*, the Republic complains that Plaintiffs should have "never" even obtained post-judgment discovery in the first place. 153 F.4th 142 (2d Cir. 2025). But the *Philippine Forfeiture Judgment* case discusses the effect of a reversal of a judgment on the parties' substantive rights. It says nothing about the discovery that was lawfully obtained during post-judgment proceedings. *See id.* at 161 (court describing effect of reversing an award on a subsequent judgment by another court).

Hon. Loretta A. Preska
July 1, 2026
Page 3

Indeed, the Second Circuit has explained that "the Federal Rules of Civil Procedure do not regulate what litigants may do with discovery after it lawfully has been obtained." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017). The Federal Rules contain no provision requiring the destruction or return of discovery materials simply because the judgment that authorized the post-judgment discovery proceedings was later reversed.

That the Republic "maintains" this Court's order requiring the Republic to produce off-channel communications was "erroneous" is beside the point and not proper at this stage of its motion for reconsideration. This Court has repeatedly held that the Republic's "personal communications" at issue here were *not* personal – they were exchanged in the course of the Republic's "official business." *See, e.g.*, January 29, 2026 Hr'g Tr. at 6:15-23 ("All these people chose to conduct their business outside of the government platform. Now they have to pay the price for it. That's how they chose to do it, and my recollection of all the discussions we have had in the past is, even under Argentine law, if it's official business, then it is subject to review; it's a public document. Those two things together seem to me to indicate that there is no reason the documents should not be produced.").

The Republic also objects that post-judgment, asset-related discovery will be stale and irrelevant by the time any such enforcement proceeding occurs, and that a different tribunal should decide the scope of any future enforcement discovery. Neither objection justifies a categorical bar.

First, there is no reason to believe that *all* post-judgment discovery will become stale or irrelevant. For example, organizational documents and bank account information may remain accurate for years and provide relevant insight in a later enforcement proceeding. In any event, the possibility that some material may become stale over time does not justify a blanket prohibition on using materials that remain relevant. If particular information is in fact stale or irrelevant, Plaintiffs will have no reason to use it. And if information has become so stale that it has no continuing relevance, that only undercuts any need to maintain a confidentiality designation on it.

Second, the goal of preserving a future tribunal's discretion supports Plaintiffs' position, not a categorical bar. Whether particular post-judgment material is relevant in a later enforcement proceeding should be decided by the tribunal presiding over that proceeding. Making the material available preserves

Hon. Loretta A. Preska
July 1, 2026
Page 4

that tribunal's ability to decide relevance in context.  A categorical exclusion would do the opposite:  it would foreclose the tribunal's judgment before it can be exercised and impose a rigid restriction likely to generate duplicative discovery and delay.  Excluding this material wholesale would force Plaintiffs to seek the same material again, contrary to the Court's goal of "spar[ing] both parties the burden and expense of duplicative discovery."  Dkt. 927 at 2.

The Republic's reliance on *Giuffre v. Dershowitz* is misplaced.  2020 WL 3578104, at *1, *3 (S.D.N.Y. July 1, 2020).  As Plaintiffs previously explained, *see* Dkt. 918 at 5, under the *Tradewinds Airlines*, *Inc. v. Soros* standard for modification, the question is whether the claims in the upcoming arbitration proceedings are "closely related" to these New York actions.  2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016).  That much is obvious, *see* Dkt. 915 at 4 ("Plaintiffs' claims in arbitration will undoubtedly mirror the claims in this action"), and the Republic does not seriously question this finding, *see* Dkt. 917 at 2.  The Republic now argues that a future enforcement proceeding will not be closely related to the one that occurred here, but that makes no sense.  If Plaintiffs eventually need to enforce an arbitral award, they will need to address the same issues they already addressed in this Court.

**The Republic's Position**:

Consistent with the Court's June 10 Order, the Republic has made efforts to reach agreement on a reasonable modification of the Protective Order.  That negotiation has narrowed the parties' dispute.  Plaintiffs now agree that post-judgment discovery should not be imported wholesale into an arbitration record.  And the Republic has agreed to compromise to allow certain documents that were produced after the judgment, but which may be relevant to the merits, to be used in arbitration, as identified in Appendix A of the proposed modified protective order.  But the parties have been unable to reach agreement on a key issue:  whether post-judgment materials in this action may be used for a hypothetical enforcement action arising out of a potential arbitration years in the future, even though such discovery would be both irrelevant and completely stale by that time.  The Republic therefore respectfully requests that the Court enter its proposed modified protective order, attached as Exhibit C (clean copy) and Exhibit D (redline against Plaintiffs' proposed order attached to their motion for modification, Dkt. 911-1), subject to any changes required by the Court's resolution of the dispute between Plaintiffs and YPF.

Hon. Loretta A. Preska
July 1, 2026
Page 5

Reconsideration is appropriate when "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Twine* v. *Powers*, 2012 WL 3834082, at *1 (S.D.N.Y. Aug. 27, 2012) (Sweet, J.). Here, the Court overlooked the important distinction between pre-judgment and post-judgment discovery. The Court granted Plaintiffs' motion to modify the Protective Order based on the premise that "Plaintiffs' claims in arbitration will undoubtedly mirror the claims in this action." Dkt. 915 at 4. That is incorrect with respect to post-judgment discovery (as Plaintiffs have since tacitly conceded). The Republic accordingly moved for reconsideration of the Court's Modification Order specifically with respect to post-judgment discovery, which the parties briefed via letter motion. Dkts. 917, 918, 919.[2] On June 10, the Court directed the parties to "confer and make good-faith efforts to narrow their disputes through stipulation or other proposed mutual modifications to the protective order." Dkt. 927.

On June 17, Plaintiffs emailed the Republic with their position that there should be no modifications to the Protective Order. Ex. E. On June 24, the Republic sent Plaintiffs proposed revisions to the modified Protective Order, which would allow merits discovery to be used in arbitration proceedings, but not post-judgment discovery, and also fixed certain technical errors. Ex. F.

On June 28, Plaintiffs responded with further proposed revisions to the Protective Order that, as to the Republic's documents, would (i) allow post-judgment discovery to be used in an arbitration only if it is effectively merits discovery, *i.e.*, "if such material was required or requested to be provided before entry of judgment"; and (ii) allow all other post-judgment discovery to be used in post-arbitration enforcement actions that may occur years down the road. Ex. G. The next day, the Republic (i) agreed that material which "w[as] related to the underlying claims and w[as] requested to be provided before the entry of the September 15, 2023 judgment" can be used in the arbitration, provided Plaintiffs identify and the parties agree on the specific documents covered by this provision; and (ii) maintained that other post-judgment discovery from this case should not be usable in any hypothetical enforcement proceeding given that it would be stale and irrelevant by the time that any arbitration proceeding could possibly result in an

---

[2] On June 1, 2026, in order to preserve its appellate rights, the Republic filed a formal motion for reconsideration under Federal Rule of Civil Procedure 59(e). Dkts. 921, 922. On June 10, the Court "accept[ed]" the Republic's Rule 59(e) motion "[t]o protect the Republic and YPF's appellate rights." Dkt. 927 at 1.

Hon. Loretta A. Preska
July 1, 2026
Page 6

enforceable judgment.  Ex. H.  On June 30, Plaintiffs agreed to identify the specific merits-related post-judgment discovery that would be usable in arbitration, provided that the list could be supplemented, and the parties are now agreed as to that provision.  Ex. I.  However, Plaintiffs continued to assert that post-judgment discovery from this action should be usable in potential future enforcement actions arising out of arbitration.  *Id.*

The Court should adopt the Republic's compromise proposal.  Plaintiffs should not be allowed to retain vast quantities of sensitive post-judgment discovery for use in a hypothetical future enforcement action arising out of a potential arbitration.

To start, Plaintiffs should never have obtained post-judgment discovery in the first place.  Post-judgment discovery was permitted solely based on a judgment that has been reversed and must therefore be treated "as though it never existed." *In re Enf't of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*, 153 F.4th 142, 161 (2d Cir. 2025).  Plaintiffs try to distinguish *Phillipine Forfeiture Judgment* as "discuss[ing] the effect of a reversal of a judgment on the parties' substantive rights," *supra*, but give no reason why a party would have greater interests in discovery obtained in aid of enforcing a reversed judgment than in the judgment itself. Further, with respect to the personal communications of certain Argentine officials produced in post-judgment discovery, the Republic maintains that the order requiring the Republic to produce those documents was erroneous; the Republic's appeal of that order is pending.

Plaintiffs' other response that "the Federal Rules of Civil Procedure do not regulate what litigants may do with discovery after it lawfully has been obtained" is a non sequitur.  *Supra* (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017)).  As that same case explains, "courts may issue protective orders that restrain parties from using the discovery for other purposes, including as evidence in other litigations." *In re Accent Delight*, 869 F.3d at 135.  The operative Protective Order here included that "common restriction," *id.*, specifically stating that "[a]ll Discovery Material produced or disclosed in connection with these Actions shall be used or further disclosed solely for the prosecution or the defense of these Actions (including any appeal therefrom) and any Enforcement Actions"—defined as actions "to enforce the judgment entered in these Actions"—"and shall not be used for any other purpose, including use in other legal actions, present or future."  Dkt. 674 at 1-2.

Hon. Loretta A. Preska
July 1, 2026
Page 7

Regardless, post-judgment discovery from this action is irrelevant to any enforcement proceedings arising out of arbitration proceedings, which would begin, if ever, years in the future. By definition, enforcement discovery relates to the Republic's assets *at the time of the attempted enforcement*. That includes potential enforcement-related "alter-ego" discovery, which (Plaintiffs have argued) is needed at the time of enforcement "to determine whether any of the [identified entities] is *currently* an alter ego of the Republic." Dkt. 568 at 2. Such discovery would inevitably be stale and irrelevant by the time arbitration proceedings could even hypothetically reach a post-judgment stage. Plaintiffs speculate that certain documents, such as organizational documents and bank account information," could provide "relevant insight in a later enforcement proceeding," but do not argue that those materials would in any way avoid or even reduce the burdens of discovery in those future actions—nor could they, given that Plaintiffs inevitably will request complete then-current discovery to account for the passage of time. The Court should not modify the protective order in this action merely to allow Plaintiffs to use irrelevant documents for "insight" in some hypothetical future action years down the road.[3]

Moreover, the proper court to determine the scope of enforcement discovery as to a hypothetical future judgment would be the court presiding over that enforcement action. That court should have discretion to determine what discovery could potentially lead to execution of that particular judgment in that particular jurisdiction. Plaintiffs' claim that the Republic's position would "foreclose the [future] tribunal's judgment before it can be exercised," *supra*, is wrong. As Plaintiffs concede, to the extent that years-old post-judgment discovery is somehow relevant to a hypothetical future proceeding, Plaintiffs may simply "seek the same material again" before the proper court, which could be produced at the push of a button if the future tribunal so-ordered. *Supra*. On the other hand,

---

[3] Plaintiffs also argue that discovery should be usable across "closely related" proceedings, citing in *Tradewinds Airlines, Inc. v. Soros*, 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016). But "closely related" in that case meant that "the same discovery materials will likely have to be reviewed and re-produced, needlessly causing duplication of effort and extra expense." Id. As the Republic has shown, that standard is not met for a hypothetical potential post-arbitration enforcement proceeding years down the road where, if any discovery is needed, it will be a completely different set of documents than was produced for post-judgment enforcement in this case.

Hon. Loretta A. Preska
July 1, 2026
Page 8

Plaintiffs' proposal would muddy the record with discovery from enforcement proceedings years earlier regarding a different judgment that has since been overturned. *See Giuffre* v. *Dershowitz*, 2020 WL 3578104, at *1, *3 (S.D.N.Y. July 1, 2020) (Preska, J.) (denying motion to modify protective order and expressing "skeptic[ism]" that "judicial economy would be served by handing [movant] a mountain of discovery from a separate case that may not even be relevant").

Finally, Plaintiffs are wrong to brush aside the Republic's concerns of prejudice with the argument that "merely making the discovery available does not prejudice the Republic." Ex. E. Using post-judgment discovery from this action in arbitration or subsequent enforcement proceedings would unfairly prejudice the Republic, regardless of any potential confidentiality protections, by importing vast quantities of irrelevant, highly sensitive information into a proceeding where it does not belong, while increasing the burden and expense of such proceeding.

Further, post-judgment discovery includes senior Argentine officials' personal messages—sensitive information that was outside the Republic's control as a matter of Argentine law and that officials consented to provide for use in this action only, not in any other case. *See* Dkt. 782 at 4; Dkt. 888 ¶ 7 (Stampalija Decl.). Those officials' rights are prejudiced every day that those personal communications are in Plaintiffs' custody. Post-judgment discovery also includes nonpublic information about sovereign assets that should not be in the hands of private parties and discovery vendors any longer than required for purposes of discovery in this action, especially given that it has no bearing on the merits of any potential arbitral claim or on Plaintiffs' eventual efforts to enforce any hypothetical arbitral award. Dkt. 917 at 1-2. All of this information was produced pursuant to a Protective Order that provided for its return or destruction within 90 days upon request after the completion of this action. Dkt. 674 at 12-13. Plaintiffs have never disputed that the Republic produced this material in reliance on the operative Protective Order along with Plaintiffs' repeated assurances that these protections would govern the post-judgment discovery process. Dkt. 917 at 2.

Accordingly, the Court should enter the Republic's proposed revised protective order, attached as Exhibit C (clean copy) and Exhibit D (redline against Plaintiffs' proposed order attached to their motion for modification, Dkt. 911-1), subject to any changes required by the Court's resolution of the dispute between Plaintiffs and YPF.

Hon. Loretta A. Preska
July 1, 2026
Page 9

### B. Treatment of Documents Produced by YPF

**<u>Plaintiffs' Position</u>**:

Despite the Court's direction to attempt to narrow the parties' disputes, YPF stands by its motion for reconsideration, Dkt. 916, arguing that documents it produced in this litigation should not be accessible for arbitration under any circumstances. YPF has made no effort to compromise at all. The Court rejected YPF's argument when it granted Plaintiffs' motion to modify the protective order, *see* Dkts. 912 (YPF opposition to modification), 915 (order granting modification), and YPF cannot meet the requirements for reconsideration. YPF asserts that the Court "overlooked" YPF's "compelling form of reliance," *see* Dkt. 916 at 3. But YPF previously made this very argument, so its motion for reconsideration fails to meet the "strict" standard for re-review. *Analytical Survs.*, 684 F.3d at 52. YPF has failed to "advance new facts, issues or arguments not previously presented to the Court." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citation omitted).

YPF does not challenge the Court's findings that the Protective Order was a "'blanket' order," that it "specifically provides that either party may seek changes to the order," and that the Court's "level of inquiry undertaken before entry of the order weighs in favor of the modification." Dkt. 915 at 3; *see also In re Computer Assocs. 2002 Class Action Sec. Litig.*, 2005 WL 8157511, at *4 (E.D.N.Y. Nov. 30, 2005) (balancing "[t]he other factors" and finding they "weigh heavily in favor of granting the requested modification"). Under these circumstances, modification of the Protective Order "is a decision committed to the sound discretion of [this] trial court," *SEC v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001), and YPF has failed to provide new facts or intervening law showing that this Court abused its discretion in granting Plaintiffs' modification.

Documents YPF produced in these cases do not merit special treatment. Although YPF will not itself be a party to the arbitration, despite looming large in the background, Plaintiffs will be able to obtain discovery from YPF through the Republic, which controls YPF as its majority owner. *See, e.g.*, IBA Rules on the Taking of Evidence in International Arbitration, Art. 3(3)(c)(ii), 4 (establishing "possession, custody or control" standard for party discovery). YPF's position fails for the reasons the Court already addressed—there is "no indication" that YPF relied on the Protective Order to "produce documents they would not have

Hon. Loretta A. Preska
July 1, 2026
Page 10

otherwise disclosed," and the "blanket" order anticipates modification.  Dkt. 915 at 3-4.  YPF's documents also remain protected by the Modified Protective Order.

YPF erroneously claims that Plaintiffs seek to use documents that the parties did not think were of sufficient "importance" to cite in their summary judgment briefing.  Plaintiffs' motion for summary judgment and supporting declaration cited or quoted YPF-produced documents and appended exhibits produced by YPF that remain under seal to this day.  *See* Dkt. 358 (explaining that Plaintiffs rely on "Documents with Bates numbers YPFPT00093058-089, YPFPT00053065-175, and YPFPT00102657-660 designated confidential by Defendant YPF S.A"); *see* Dkt. 364-111 (YPFPT00053065); Dkt. 364-112 (YPFPT00093058); Dkt. 364-113 (YPFPT00102657).  But the question of whether a document was cited in summary judgment briefing is beside the point; that is hardly the standard for this motion.

YPF also makes ***two new requests***:  1) that confidentiality designations for documents produced pursuant to individual custodian consents be unchallengeable, and 2) that YPF's documents be destroyed when the appeal of its dismissal concludes, rather than when any arbitration or enforcement proceedings conclude.  These new arguments would not have been appropriate if they had been included in YPF's motion for reconsideration, *see Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 265 (E.D.N.Y. 2016), *aff'd*, 663 F. App'x 71 (2d Cir. 2016) ("Arguments raised for the first time in a motion for reconsideration are not properly presented to the district court and, absent a reason to excuse the untimeliness, are waived by the party.") (cleaned up), and they are even less appropriate following the Court's directive to seek compromise.  They are baseless in any event.

***First***, the Modified Protective Order already protects confidentiality designations with a detailed process for challenges.  *See* Dkt. 674, ¶ 16.  There is no basis to make any category of designations unchallengeable, and it would be highly unusual to preemptively bar a party from seeking relief from the court.  *See*, *e.g.*, *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987) (anti-suit injunction "should be granted 'only with care and great restraint'") (citations omitted).

***Second***, YPF's proposed destruction deadline should also be rejected.  YPF offers no basis for requiring destruction of its documents when the appeal of its

Hon. Loretta A. Preska
July 1, 2026
Page 11

dismissal concludes, particularly if those documents remain available for use in arbitration or any post-award proceedings.

The Court should not revisit its prior determination on this issue. Documents produced by YPF should be treated the same as any other produced in these cases.

**YPF's Position**:

YPF [4] is differently situated from Plaintiffs and the Republic in connection with this dispute. Plaintiffs and the Republic will be parties to the Arbitrations, [5] and potentially subject to discovery as part of those proceedings. YPF, on the other hand, will not be a party to the Arbitrations, and neither Plaintiffs nor the Tribunal will have the power to compel YPF to provide discovery, including pursuant to 28 U.S.C. § 1782. *See* Dkt. 916 at 2; Dkt. 920 at 1–2. Accordingly, the issues that the Court is focused on – including "spar[ing] both parties [Plaintiffs and the Republic] the burden and expense of duplicative discovery," June 10, 2026 Order at 2 [Dkt. 927] – are distinct as to YPF.

Plaintiffs do not dispute that they will be unable to obtain discovery directly from YPF in the Arbitrations. Instead, they now argue (for the first time) that they may be able to obtain discovery from YPF indirectly *through the Republic* as YPF's majority shareholder. That is incorrect as a matter of law, and the IBA Rules on the Taking of Evidence in International Arbitration cited by Plaintiffs are to the contrary (and not mandatory in ICSID arbitrations in any event). Articles 3.3(c)(ii) and 3.4 of the IBA Rules refer to requesting discovery that is in the "possession, custody, or control" of *parties* to an arbitration; nothing in the Rules suggests that a party to an arbitration has "possession, custody, or control" of documents belonging to a separate legal entity by virtue of being that entity's majority owner. Attempting to obtain YPF's documents through the Republic is inconsistent with U.S. and Argentine law, and neither Plaintiffs nor the Tribunal would have the authority to compel YPF to produce documents to anyone, including the Republic.

---

[4] YPF maintains its objections to the Court's jurisdiction over it, including under the Foreign Sovereign Immunities Act.
[5] Capitalized terms not defined herein have the meanings defined in the clarification/reconsideration briefing.

Hon. Loretta A. Preska
July 1, 2026
Page 12

Because YPF will not be subject to discovery directly or indirectly in the Arbitrations and because its positions on the merits of the underlying litigation before this Court were fully vindicated, YPF should not be further prejudiced by being required to permit Plaintiffs to use highly sensitive documents that they should never have had access to in the first place in a further proceeding where YPF has no participation.  Plaintiffs are effectively asking the Court for an end run around *both* the fact that they would not have access to discovery from YPF in the Arbitrations *and* their unambiguous agreement in the 2020 version of the Protective Order that documents produced by YPF in the case before this Court could not be used in any other proceeding or for any other purpose.  Protective Order ¶ 2 [Dkt. 176].

When Plaintiffs negotiated and signed the Protective Order in 2020, they explicitly agreed that the documents produced in the SDNY litigation could be used "***solely*** for the prosecution or the defense" of these proceedings and "***shall not be used for any other purpose, including use in other legal actions, present, or future***."  Protective Order ¶ 2 [Dkt. 176] (emphasis added); *see* Dkt. 916 at 3; Dkt. 920 at 1–2.  That language was relied on not only by YPF itself, but by the individual custodians who consented to production of their documents based in part on the Protective Order's clear mandate that the documents could not be used in any other legal actions of any kind.  Dkt. 916 at 3; Dkt. 920 at 1.

Notwithstanding their agreement to the contrary, after YPF was dismissed from the case on March 31, 2023, and after that dismissal was affirmed by the Second Circuit on March 27, 2026, Plaintiffs moved to modify the Protective Order – over YPF's objection – so Plaintiffs could do precisely what the Protective Order made clear would not be permitted: use YPF's documents in the Arbitrations against the Republic.  *See* Dkt. 911 at 2.

Plaintiffs are trying to take advantage of the fact that they have not yet been required to destroy YPF's documents because they still have a right to appeal to the Supreme Court (though they have declined to confirm whether they intend to appeal YPF's dismissal from the case), to try to modify the Protective Order to use YPF's sensitive business communications in arbitration proceedings where YPF will not even be a party.  Paragraph 20(a) of the Protective Order guaranteed that after exhaustion of the appeals, Plaintiffs would be required to return or destroy YPF's documents within 90 days.  Plaintiffs are now attempting to re-trade on the commitments they made to YPF and indirectly to the custodians who relied on the terms of the Protective Order, and to retain and use the YPF documents in a

Hon. Loretta A. Preska
July 1, 2026
Page 13

separate legal action for years into the future.  This is a new modification seeking to permit Plaintiffs to retain rather than destroy YPF's documents at the end of the appeal process, which Plaintiffs proposed during the meet-and-confer process; it is not part of the modifications they requested in their April 11, 2026 motion. *Compare* Exhibit B, ¶ 20(a) (proposing modification that Confidential Discovery Material be "destroyed or returned" only after the conclusion of any arbitrations, including any related enforcement of an arbitral award), *with* Dkt. 911-2, ¶ 20(a) (leaving in place the requirement that Confidential Discovery Material must be "destroyed or returned" after exhaustion of any appeals).  There is no "extraordinary circumstance" or "compelling need" to justify this new request or Plaintiffs' prior requested modifications of the Protective Order to permit all discovery material produced by YPF to be used in the Arbitrations.  *See* Dkt. 920 at 2; *see also* Dkt. 912 at 2–3.

The lack of compelling need is particularly salient here because Plaintiffs already have access to, and will be able to use in the Arbitrations, all of the pre-judgment documents produced by the Republic as well as the documents that were publicly filed by Plaintiffs, the Republic, or YPF – including documents produced by YPF in the litigation – in connection with summary judgment briefing and the appeals to the Second Circuit.  The universe of YPF documents that Plaintiffs are insisting they need to be able to use in the Arbitrations consists almost entirely of documents that neither they, nor the Republic, nor YPF thought were of sufficient importance to even cite to in the summary judgment briefing.  The hypothetical desire to be able to use peripheral documents cannot possibly overcome the strong presumption in this Circuit that the requirements of a protective order should be enforced and not modified barring "extraordinary circumstances" or "compelling need."  *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979); *see also Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 2017 WL 4641247, at *1-2 (S.D.N.Y. 2017) (explaining the Second Circuit's "strong presumption against modification of a protective order").

YPF's arguments – including that the YPF email custodians relied on the Protective Order's prohibition against using Confidential documents in other legal actions – apply to both the Pre-Judgment and Post-Judgment Discovery Material produced by YPF.  Consistent with the agreement referenced above in Section A, all Post-Judgment Discovery Material produced by YPF will be excluded from use in litigating the merits of the Arbitrations.  While the Republic and Plaintiffs have agreed to a limited exception for certain documents identified by Plaintiffs in

Hon. Loretta A. Preska
July 1, 2026
Page 14

Appendix A, none of those documents were produced by YPF.  There is no "compelling need" or "extraordinary circumstance" warranting Plaintiffs' use of Post-Judgment Discovery Material produced by YPF in any future enforcement proceeding relating to a hypothetical arbitral award against the Republic.  In addition to the arguments raised by the Republic regarding the use of such Discovery Material, YPF maintains its objections to the post-judgment discovery process on the grounds set forth in its res judicata and subject matter jurisdiction briefs, *see* Dkts. 609–18, 650, 697, 709, 803, 825, which issues remain stayed but pending before the Second Circuit.

YPF is a public company, with obligations to all of its shareholders and to the individual custodians whose consent YPF sought before producing their documents in the underlying litigation.  In order to ensure that the status quo is maintained and that the Confidential status of the documents produced by email custodians is protected, YPF requests that the Court accept YPF's proposed modification to ¶ 16 of the Protective Order, which would ensure that Plaintiffs would not be permitted to now – after the conclusion of the litigation, pending resolution of any appeal to the United States Supreme Court – seek to challenge the Confidential designations of the documents produced on behalf of the individual YPF email custodians.  YPF's proposed modifications to the Protective Order are reflected in yellow highlighting on top of the Republic's proposed revisions in the attached Exhibit J and a clean version is attached as Exhibit K.

Plaintiffs re-argue the legal standard for clarification and/or reconsideration, but as YPF has already made clear, clarification and/or reconsideration is appropriate where, as here, the Court's May 4, 2026 Order may have overlooked relevant, potentially dispositive factual matters.  *See* Dkt. 916 at 3; Dkt. 920 at 1–2.

The time for YPF to be left alone is long overdue.  YPF asks that the Court enforce the agreement that the parties made in 2020, when they agreed that the documents YPF produced would be kept confidential, would not be used in any other legal actions, and would be promptly destroyed once the litigation concluded.  YPF's modifications to the Protective Order enforce the reasonable expectations of YPF and the individual custodians and prohibit YPF's Confidential documents from being used in the Arbitrations.

Hon. Loretta A. Preska
July 1, 2026
Page 15


Dated:  July 1, 2026

Respectfully submitted,


/s/ Robert J. Giuffra, Jr

Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
Arturo Carlos Schultz
SULLIVAN & CROMWELL, LLP
125 Broad Street
New York, NY 10004-2498
giuffrar@sullcrom.com


*Counsel for Defendant Argentine Republic*


/s/ Mark P. Goodman

Mark P. Goodman
Shannon Rose Selden
James J. Pastore
Wendy B. Reilly
J. Robert Abraham
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mpgoodman@debevoise.com
srselden@debevoise.com
jjpastore@debevoise.com
wbreilly@debevoise.com
jrabraham@debevoise.com


*Counsel to YPF S.A.*

/s/ Andrew E. Goldsmith

Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
Diego Negron-Reichard
Tiffany Horvath
KELLOGG HANSEN TODD
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone:  (202) 326-7900
Fax:  (202) 326-7999
mhansen@kellogghansen.com
dho@kellogghansen.com
agoldsmith@kellogghansen.com
dnegron-reichard@kellogghansen.com
thorvath@kellogghansen.com


Paul D. Clement
C. Harker Rhodes IV
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Phone:  (202) 742-8900
Fax:  (202) 742-8895
paul.clement@clementmurphy.com
harker.rhodes@clementmurphy.com


Laura Harris
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Phone:  (212) 556-2100
Fax:  (212) 556-2222
Email:  lharris@kslaw.com

Hon. Loretta A. Preska
July 1, 2026
Page 16

Seth L. Levine
Alison M. Bonelli
LEVINE LEE LLP
400 Madison Ave
New York, New York 10017
slevine@levinelee.com
abonelli@levinelee.com

*Counsel for Plaintiffs Petersen Energía
Inversora, S.A.U., Petersen Energía,
S.A.U., Eton Park Capital
Management, L.P., Eton Park Master
Fund, Ltd., and Eton Park Fund, L.P.*