# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

August 3, 2026

Via ECF

The Honorable Loretta A. Preska,
    United States District Court for the Southern District of New York,
      500 Pearl Street,
        New York, NY  10007.

> Re:    *Petersen Energía Inversora S.A.U.* v. *Argentine Republic and YPF S.A.*, No. 15 Civ. 2739 (LAP); *Eton Park Cap. Mgmt.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP)

Dear Judge Preska:

On behalf of the Argentine Republic, I write pursuant to this Court's instruction at the July 7, 2026 hearing that the parties confer regarding the protective order and inform the Court of any remaining disputes.  7/7/2026 Tr. 32:17-33:1.  Plaintiffs and the Republic have narrowed their disputes to three issues.  For the reasons set forth below, the Court should enter the Republic's proposed amended protective order, attached as Exhibit A (clean copy) and Exhibit B (redline against plaintiffs' April 21 proposal, Dkt. 911-1).

**Paragraph 20:**  The parties previously agreed that plaintiffs may not use post-judgment discovery in an arbitration, and this Court ordered that "counsel maintain [post-judgment discovery] in their secure locations" and "[a]ny future decisions with respect to use or further production will be made by the tribunal in charge."  7/7/2026 Tr. 32:7-12.  The parties remain at an impasse regarding *which* counsel should maintain those documents.  As the Republic proposed at the July 7 hearing, the only appropriate and fair course is for the Republic's counsel to maintain a copy of its post-judgment discovery, which it can promptly re-produce if a presiding court allows such discovery to be used in a future arbitration enforcement proceeding.

The Honorable Loretta A. Preska                                        -2-

To start, plaintiffs have no current right to post-judgment discovery—it was permitted solely based on a judgment that the Second Circuit has since reversed.  And plaintiffs now seek to keep that discovery in their possession based on a series of unlikely hypotheticals.  Post-judgment discovery will become available for plaintiffs' use only *if* they bring an arbitration; *if* the tribunal does not dismiss it as untimely, baseless, and duplicative; *if* they win the arbitration on the merits; *if* the arbitral judgment goes to enforcement; and *if* the enforcing court permits the use of what will by then be stale and irrelevant post-judgment discovery from an action brought years ago.

This Court nevertheless entered a compromise ruling, with the stated dual goal to protect the confidentiality of post-judgment discovery while ensuring it would be "available at the order of the presiding tribunal as we go forward." 7/7/2026 Tr. 32:15-16.  Allowing the Republic to maintain its own documents for the duration of the arbitration is the most sensible way to effectuate those goals—the documents will be maintained securely and immediately available if a future court orders their production.  On the other hand, allowing plaintiffs to keep possession of sensitive post-judgment materials for an indefinite period would expose the Republic to unnecessary risks.

*First*, plaintiffs' counsel (like any party) would be susceptible to data breaches, for which law firms are a prime target.  *See United States* v. *Anthem, Inc.*, 2024 WL 2982908, at *2 (S.D.N.Y. June 12, 2024) (Parker, J.) (warning of the "increasing data security risks faced by law firms and entities in litigation"); ABA Comm. on Ethics & Pro. Resp., Formal Op. 483 (2018) ("[L]aw firms are inviting targets for hackers.").  Of course, the Republic faces the same threats, but it should bear those risks on its own behalf, not be exposed to *double* the risk by having its confidential materials in someone else's hands.  *See Berkelhammer* v. *Voya Inst. Plan Servs., LLC*, 2023 WL 5042526, at *3 (D. Conn. Aug. 8, 2023) ("[D]isclosure of proprietary information under any protective order imposes at least some burden because it carries . . . some risk of inadvertent disclosure.").

*Second*, plaintiffs' position would expose the Republic's documents to potential subpoenas served on plaintiffs by third parties attempting to end-run the FSIA.  *See Peninsula Asset Mgmt. (Cayman) Ltd.* v. *Hankook Tire Co.*, 476 F.2d 140, 144 (2d Cir. 2007) (quashing subpoenas on "grounds of foreign sovereign immunity").  Although the Republic could attempt to quash subpoenas, it should not have to undertake such burdens where it is entitled to immunity.

The Honorable Loretta A. Preska                                                    -3-

*Third*, there is no reason for these additional burdens and risks.  Given that plaintiffs cannot use post-judgment materials during an arbitration, they should not hold onto such sensitive materials while the arbitration proceeds.  Plaintiffs have asserted that they will need access to post-judgment discovery to argue its relevance to a hypothetical enforcement tribunal.  But the parties' public filings describe the types of documents produced in enough detail for a tribunal to assess.  *E.g.*, Dkts. 867, 887, 917 (explaining types of documents and time period covered by post-judgment discovery).  The practical course is for the Republic's counsel to maintain a copy and promptly re-produce if ordered to do so.

**Definition C:**  The Court should adopt the Republic's commonsense definition of "Arbitration Enforcement Action" as a proceeding "to recognize or enforce an award entered in an Arbitration Proceeding."  There is no reason to expand the definition to cover other types of proceedings, such as actions "to seek information or documents in any jurisdiction related to the enforcement of an award," as plaintiffs suggest.  Plaintiffs draw a false equivalence with the definition of "Enforcement Action" (Definition H).  But there is a difference between allowing the use of documents in proceedings related to enforcement of *this* Court's judgment and the enforcement of a hypothetical judgment entered by a different tribunal.

**Definition G:**  The parties previously agreed that certain merits-related discovery produced after judgment could be carved out of the definition of "Post-Judgment Discovery" and therefore used during an arbitration proceeding.  Those documents are listed in Appendix A to the proposed amended protective order, which plaintiffs prepared and the Republic accepted wholesale.  Plaintiffs now refuse to agree that, if they wish to try to add yet more documents to Appendix A, those documents must be "related to the underlying claims."  If plaintiffs seek to have post-judgment productions treated as merits discovery, they should, by definition, have to meet that minimal standard.  Plaintiffs say it should be enough that the documents were "*requested* to be provided before entry of judgment" (emphasis added), but applying that standard would overrule valid objections the Republic made to plaintiffs' merits-phase document requests on relevance or other grounds.  Plaintiffs further accuse the Republic of trying to gin up unnecessary "future disputes," but that is baseless:  the Republic agreed to every single document on plaintiffs' proposal for Appendix A on the basis that those documents arguably "related to the underlying claims."  In light of the Republic's previous compromises on this point, there is no reason not to include this reasonable limitation.

The Honorable Loretta A. Preska                                            -4-

Respectfully,

*/s/* Robert J. Giuffra, Jr.
Robert J. Giuffra, Jr.


cc:    Counsel of Record (via ECF)