October 30, 2026

*Via CM/ECF*

Hon. Loretta A. Preska
United States District Judge for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Petersen Energía Inversora S.A.U. v. Argentine Republic*, No. 15-cv-02739; *Eton Park Capital Management, L.P. v. Argentine Republic*, No. 16-cv-08569

Dear Judge Preska:

Plaintiffs, the Republic, and YPF respectfully submit this joint letter pursuant to the Court's October 19, 2026 Memorandum and Order (the "Order"), which directed the parties to submit a proposed amended Protective Order and to identify any remaining disputes with the parties' competing language. Dkt. 946 at 9.[1] The parties began corresponding on October 20 and conferred on October 26. Plaintiffs request that the Court enter Plaintiffs' proposed order. *See* Ex. A (clean proposed order); Ex. B (redline comparing Ex. A to existing Protective Order, Dkt. 674). The Republic and YPF request that the Court enter their proposed order. *See* Ex. C (clean proposed order); Ex. D (redline comparing Ex. C to existing Protective Order, Dkt. 674). A redline comparing the two proposals is attached as Ex. E.

**A. Paragraphs 2(a) and 2(c): YPF's "Authority to Compel" Condition**

**<u>Plaintiffs' Position</u>**:

The Court has already rejected YPF's effort to impose special restrictions on the use of its documents. Yet the Republic and YPF again propose that Plaintiffs may use YPF's Post-Judgment Discovery Material in an Enforcement Action or Arbitration Enforcement Action "only if and to the extent the relevant court conducting the Enforcement Action has the authority to compel production of documents from YPF *and* does compel such production." Ex. C (emphasis added).

[1] Dkt. citations refer to *Petersen*.

At the July 7 conference, YPF argued that Plaintiffs should not be able to use its documents in arbitration because the arbitral tribunal would lack authority over YPF. July 7, 2026 Tr. at 18:21-19:14. The Court rejected that argument as "an improper motion for reconsideration" and held that "[a]ny future decisions with respect to use or further production will be made by the tribunal in charge." *Id.* at 32:3-16. In its August 3 letter, YPF proposed the "authority to compel" condition, Dkt. 940 at 1-2, which it had not included in its motion for reconsideration, Dkt. 924, or proposed at the July 7 conference. Plaintiffs objected to that belated request at the time. Dkt. 942 at 3; *see Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 265 (E.D.N.Y. 2016), *aff'd*, 663 F. App'x 71 (2d Cir. 2016). The Court later described YPF's position as "maximalist" and a repetition of "the same argument the Court rejected on July 7." Dkt. 946 at 6. The Court should reject the argument once again now.

The Order requires YPF to reproduce its documents for use in arbitration "[w]ithin fourteen days of an order of a presiding tribunal or court directing production." Dkt. 946 at 8. Consistent with that ruling, Plaintiffs have agreed to limit the use of Post-Judgment Discovery Material in an Arbitration Enforcement Action "to the extent authorized by the relevant court conducting the Arbitration Enforcement Action." *See* Ex. A (clean proposed order). YPF, however, would add a separate requirement that the court have "authority to compel production of documents from YPF," Ex. C, without specifying *who decides* whether it has that authority. YPF has already asserted that arbitral tribunals lack authority to compel discovery from it "either directly or indirectly" and has objected to the jurisdiction of any arbitration tribunal or enforcement court over it. Dkt. 940 at 1 n.1, 2. If the presiding court or tribunal concludes it lacks authority over YPF, it presumably will not order production. But if it orders production, YPF's language would give YPF a basis to argue that the order does not trigger its obligations under this Court's Protective Order because, in YPF's view, the presiding court or tribunal lacked authority to issue it. YPF's additional condition serves no purpose except to invite a further challenge to the presiding court or tribunal's decision and undermine the fourteen-day reproduction requirement this Court imposed.

YPF's proposed condition is especially unwarranted in Paragraph 2(a), which governs the use of discovery in proceedings *before this Court* to enforce its own judgment. If the Supreme Court reverses the Second Circuit and Plaintiffs ultimately return to a post-judgment enforcement posture, YPF's language could

require Plaintiffs to obtain a new order compelling production of post-judgment materials that YPF already produced pursuant to this Court's orders. Worse, it could require this Court to establish anew its authority to compel production from YPF. *See*, *e.g.*, Dkt. 940 at 1 n.1 (YPF maintaining its objections to this Court's jurisdiction). There is no reason to impose either requirement before Plaintiffs may use YPF's Post-Judgment Discovery Material to enforce this Court's judgment.

**YPF's Position[2]** :

The Court's October 19, 2026 Order directed YPF to preserve its Post-Judgment Discovery Material such that it could be reproduced in its original form "[w]ithin fourteen days of an order of a presiding tribunal or court directing production[.]" As this Court already ruled at the July 7, 2026 conference, "[a]ny future decisions with respect to use or further production will be made by the tribunal in charge, whether it's the arbitral tribunal or whether going forward it's some enforcement tribunal." July 7, 2026 Tr. at 32:10-14. YPF's proposed modifications to Paragraphs 2(a) and 2(c) of the Protective Order are not additional restrictions, as Plaintiffs assert, but rather implement the Court's holdings by making clear that YPF's Post-Judgment Discovery Material may be used in an Enforcement Action or Arbitration Enforcement Action only if the presiding tribunal has the authority to compel production from YPF and does in fact compel such production. As YPF has previously argued, *see*, e.g., Dkt. 940 at 1-2 & Ex. A, this is an important qualification because YPF will not be a party to the Arbitration Proceeding and, if there is a future Enforcement Action or Arbitration Enforcement Action, YPF may not be a party to such an Action either, and YPF's Post-Judgment Discovery Material will not be usable in such proceedings unless the governing tribunal has the authority to compel production from YPF and does compel such production. As a Non-Party, YPF may not have an ability to be heard before future tribunals – including to address arguments that Plaintiffs might make about the Court's prior holdings – so it is particularly important that the Protective Order be clear on this issue, so that future tribunals are aware that this Court left future decisions about use and production of Post-Judgment Discovery Material to those tribunals, subject to their authority.

---

[2] YPF maintains its objections to the Court's jurisdiction over it, including under the Foreign Sovereign Immunities Act.

Plaintiffs' edits to Paragraphs 2(a) and 2(c) delete YPF's implementation of the Court's July 7 ruling that "future decisions with respect to use or further production" are vested with the "tribunal in charge," and imply that this Court has authorized the production and use of Post-Judgment Discovery Material. In doing so, Plaintiffs conflate the Court's rulings concerning pre-judgment and post-judgment discovery. The Court overruled YPF's objections to Plaintiffs' retention and use of YPF's pre-judgment discovery material, but expressly declined Plaintiffs' invitation to permit them to retain and use Post-Judgment Discovery Material, *see* Dkt. 946 at 6, and left that issue for future tribunals to decide. *See* July 7, 2026 Tr. at 32:10-14. The Protective Order revisions need to be consistent with those rulings. Accordingly, YPF's revisions to Paragraphs 2(a) and 2(c) should be accepted and Plaintiffs' revisions to those Paragraphs should be rejected.

**B. Paragraph 2(b): YPF and Non-Party Discovery Material**

**<u>Plaintiffs' Position</u>**:

The Republic and YPF's proposed Paragraph 2(b) would categorically bar Plaintiffs from using post-judgment discovery produced by YPF or Non-Parties in the Arbitration Proceedings, without giving Plaintiffs the same opportunity to identify documents for inclusion in Appendix A that they have for the Republic's productions. Under Definition G, material produced after judgment is excluded from the definition of Post-Judgment Discovery Material only if identified in Appendix A. But Appendix A currently contains *only* documents produced by the Republic. Plaintiffs may therefore be barred from using *any* post-judgment discovery produced by YPF or Non-Parties in the Arbitration Proceedings, even if the documents should have been produced during merits discovery, were never designated Confidential, or the producing party has no objection to their use.

Plaintiffs seek the same opportunity to include YPF and Non-Party documents in Appendix A as they have for the Republic's documents. YPF mischaracterizes Plaintiffs' proposal as permitting unrestricted use of its Post-Judgment Discovery Material in the merits arbitration. Plaintiffs have agreed not to use Post-Judgment Discovery Material in the merits phase, except for documents identified in Appendix A. That agreement, however, should not prevent Plaintiffs from identifying YPF or Non-Party documents that should have been produced during merits discovery. Documents that were never designated Confidential, or that the producing party does not object to Plaintiffs using, should

likewise be eligible for inclusion in Appendix A. Plaintiffs' proposed language preserves the same opportunity for YPF and Non-Party productions as for the Republic's, without disturbing the Court's restrictions on Post-Judgment Discovery Material or the ability of YPF and Non-Parties to seek return or destruction of their Confidential Discovery Material under Paragraph 20.

**<u>YPF's Position</u>**:

Plaintiffs' edits are inconsistent with the Court's ruling that Plaintiffs will not be permitted to retain Post-Judgment Discovery Material and that such material "will not be used in the merits phase of any arbitration, so its only potential use is in proceedings to enforce a hypothetical arbitral award." Dkt. 946, at 5-6. Paragraph 2 refers to "All Discovery Material," which includes both pre-judgment and Post-Judgment Discovery Material. The Republic and YPF revised Paragraph 2(b) to make clear that Post-Judgment Discovery Material cannot be used during the Arbitration Proceeding. Without explanation, Plaintiffs added language saying: "provided, however, that nothing in this subsection shall restrict the use of Discovery Material produced by YPF or any Non-Party." Plaintiffs now argue that YPF's Discovery Material should not be "categorically" excluded, but this Court imposed certain categorical restrictions: Plaintiffs are required to destroy Post-Judgment Discovery Material and are not authorized to use such Material during the merits phase of the Arbitration.[3]

### C. Paragraph 16: Challenges to YPF's Confidentiality Designations

**<u>Plaintiffs' Position:</u>**

YPF again seeks to amend the existing Protective Order to make its confidentiality designations for documents produced from its email custodians' files immune from challenge. As Plaintiffs explained in their August 3 letter, this is yet another improper request for reconsideration on top of reconsideration. Dkt. 942 at 3-4. YPF did not seek this relief in its original motion for reconsideration. It raised the issue only afterward, pressed it at the July 7 conference, and renewed it in its August 3 letter. *See* July 7, 2026 Tr. at 30:11-31:7; Dkt. 940 at 2. The Court did not grant the request at the July 7 conference or in its Order, and YPF

---

[3] YPF addresses Plaintiffs' arguments about Appendix A in its discussion of Paragraph 20 below.

identifies no intervening law, new evidence, or clear error that could satisfy the "strict" standard for reconsideration. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

Nor is there any basis to give YPF's confidentiality designations special protection unavailable to any other producing party or Non-Party. Plaintiffs have not proposed any change to Paragraph 16, which already protects YPF's interests: Plaintiffs must confer before challenging a designation, YPF has an opportunity to defend it, and the documents remain Confidential unless and until the Court rules otherwise. There is no reason why YPF's designations should be exempt from that process.

YPF argues that its email custodians consented to production in reliance on the confidentiality protections of the existing Protective Order. *See infra* p. 7. But YPF produced those documents under the same Paragraph 16 that Plaintiffs propose retaining, which has *always* allowed challenges to YPF's confidentiality designations. YPF's custodians therefore could not have expected YPF's designations to be immune from challenge. Nor does the conclusion of the underlying litigation or YPF's non-party status in future proceedings justify eliminating Plaintiffs' ability to challenge their designations in this Court. Any dispute over YPF's designations would be resolved by this Court under Paragraph 16, just as it would be for any other Non-Party. It would be highly unusual to deny Plaintiffs access to the Court to challenge YPF's designations, particularly when restrictions on access to the courts are imposed only sparingly. *See Carlin v. Gold Hawk Joint Venture*, 778 F. Supp. 686, 694 (S.D.N.Y. 1991) ("denial of access to the Court is a serious matter and injunctions against such access must be issued only sparingly"). The Court should not make YPF the only producing party whose confidentiality designations are immune from judicial review.

**<u>YPF's Position:</u>**

YPF respectfully requests that the Court enter YPF's proposed modification to Paragraph 16 of the Protective Order to preclude any Party from challenging at this stage the Confidential designations of documents produced by YPF from the files of its email custodians. The Court heard argument on this issue at the July 7 conference, *see* July 7, 2026 Tr. at 30:8-23, and received further letter briefing on it, *see* Dkt. 940 at 2 & Ex. A. The underlying litigation has concluded. Under the

terms of the Protective Order at the time the email custodians provided consent for production of documents from their email files, all such documents were required to be destroyed within 90 days after the exhaustion of any appeal to the Supreme Court. While Plaintiffs argue that the Protective Order "*always* allowed challenges to YPF's confidentiality designations," they omit that at the time the email custodians provided consent the Protective Order also limited use of documents to the underlying litigation, prohibited their use in other proceedings, and required destruction after conclusion of any appeals in this Action. Dkt. 177 at ¶¶ 2, 19. To the extent such documents will be retained beyond this underlying litigation under the Court's October 19 Order and the revised Protective Order, no Party should be permitted to undermine the Confidentiality protections that were in place throughout the underlying litigation by challenging them after-the-fact, particularly given that YPF will not be a party to the Arbitration Action and may not be a party to any future Enforcement Action or Arbitration Enforcement Action.

**D. Paragraphs 7, 9, and 17: "Subject to . . . Paragraph 2"**

**<u>Plaintiffs' Position:</u>**

The Republic and YPF propose adding the phrase "subject to the use and disclosure restrictions set forth in Paragraph 2 above" to Paragraph 7 (twice), which governs the persons to whom Confidential Discovery Material may be disclosed; Paragraph 9, which allows counsel to render advice to their clients; and Paragraph 17, which governs use of Confidential Discovery Material at a trial or hearing. Ex. C. The Court should reject these additions.

Paragraph 2 already applies to all Discovery Material, so the repeated cross-references add nothing. They do, however, create ambiguity that invites future disputes. Selectively adding these cross-references could suggest that Paragraphs 7, 9, and 17 are subject to additional restrictions beyond those already imposed by Paragraph 2. For example, the language could be read to restrict counsel's ability to advise their clients about these proceedings, Enforcement Actions, or Arbitration Proceedings, or to prevent Plaintiffs from presenting material to the tribunals and courts charged with deciding whether it may be used. Paragraph 9 already prohibits counsel from revealing "the specific content of the Discovery Material if such disclosure is not otherwise permitted under this Order," and Paragraph 17 already preserves the sealing requirements of Paragraphs 13 and 14. Dkt. 674; Ex. A. There is no reason to add restrictions that serve no purpose

other than to invite disputes. These provisions should remain as they have operated throughout this litigation.

**The Republic's Position:**

The Republic's proposed Protective Order includes language making clear that the disclosures discussed in these paragraphs are "subject to the use and disclosure restrictions set forth in Paragraph 2," whereas Plaintiffs propose to omit this language. Paragraph 2 sets forth how produced discovery material may be used—the references to that paragraph in other provisions maintain consistency and clarity. For example, Paragraph 7 permits disclosure to the "Parties" and to "Burford Capital LLC, Burford Capital UK Limited, Ireton LLC, and Prospect Investments LLC." Ex. C ¶ 7(b), (k). The reference to Paragraph 2 makes clear that if discovery is disclosed to these entities, it can be used "solely" for "the prosecution or the defense of these Actions (including any appeal therefrom) and any Enforcement Action," "the prosecution or defense of any Arbitration Proceeding," or "the prosecution or defense of any Arbitration Enforcement Action," as applicable, and "shall not be used for any other purpose." Ex. C ¶ 2. In short, the Republic's proposed language simply makes clear that the limitations set forth in Paragraph 2 still apply.

Cross-referencing an existing paragraph of the protective order does not "create ambiguity" or "invite[] future disputes," as Plaintiffs suggest. The Republic's proposed language does not impose additional obligations on Plaintiffs; it simply makes abundantly clear that the existing limitations set forth in Paragraph 2 apply in the contexts discussed in Paragraphs 7, 9, and 17.

**YPF's Position:**

YPF's proposed edits to Paragraphs 7, 9, and 17 make clear that the permissions to use or disclose Discovery Material under these provisions remain "subject to the use and disclosure restrictions set forth in Paragraph 2" of the Protective Order. The proposed language merely clarifies that Paragraphs 7, 9, and 17 do not authorize use or disclosure that is prohibited by Paragraph 2, rather than imposing new restrictions (as Plaintiffs incorrectly argue). Their inclusion minimizes the potential for future disputes concerning the permissible use or disclosure of Discovery Material. Plaintiffs' objection to these edits is an extension of their proposed edits to Paragraph 2; they are trying to re-litigate the

Court's prior rulings and delete the restrictions on their use of YPF's Post-Judgment Discovery Material.

### E. Paragraph 20(a): Timing, Scope, Contempt, and Certain Post-Judgment Materials

**Plaintiffs' Position:**

***Timing***. The Republic and YPF seek to accelerate the return or destruction of Post-Judgment Discovery Material, even though the Court expressly tied that obligation to Paragraph 20(a) in the existing Protective Order. The Order directs Plaintiffs to return or destroy the material "[u]pon the Designating Party's written request under Paragraph 20(a)" and, "until then," to maintain it "under the existing terms of the Protective Order." Dkt. 946 at 8. The existing terms of Paragraph 20(a), in turn, permit such a request only "within sixty (60) days after dismissal or entry of final judgment not subject to further appeal and the satisfaction of all of Plaintiffs' judgments at issue in all Enforcement Actions." Dkt. 674 ¶ 20(a). Although the Court did not change that deadline in its Order, the Republic and YPF now seek to demand the return or destruction of documents *before* these cases are resolved.

The Republic and YPF identify no basis for accelerating the deadline in Paragraph 20(a) of the existing Protective Order, which the Court expressly incorporated into its Order. Plaintiffs' petition for certiorari remains pending, and if the Supreme Court reverses the Second Circuit, Plaintiffs may again need the Post-Judgment Discovery Material to enforce this Court's judgment. Requiring Plaintiffs to destroy the material before that appeal is resolved would create the duplication of effort and expense the Court sought to avoid when it modified the existing Protective Order. *See* Dkt. 915 at 4; Dkt. 946 at 4. Indeed, YPF previously agreed that Plaintiffs should only be "required to return or destroy YPF's documents within 90 days after the exhaustion of any appeal to the Supreme Court in these Actions." Dkt. 940 at 2.

***Scope***. The Republic and YPF now seek to require the return or destruction of Post-Judgment Discovery Material never designated Confidential. That would go beyond the Court's order and expand Paragraph 20(a) beyond its existing scope without justification. Paragraph 20(a) has *always* applied only to "Confidential Discovery Material." Dkt. 674 ¶ 20(a). It permits return or destruction at the

request of the "Designating Party," defined as a Party or Non-Party that designates material Confidential. *Id*. at 2, Definition E. Although the Order refers to "all Post-Judgment Discovery Material," it expressly makes the obligation subject to a request under Paragraph 20(a). Dkt. 946 at 8.

Both the Republic and YPF justified their requests for destruction with the purported sensitivity of the documents, and the Court relied on those same concerns. The Republic warned of the risk of disclosing "very, very sensitive information," including "account information for military/diplomatic/consular operations of a sovereign government" and "personal communications of senior government officials." July 7, 2026 Tr. at 12:2-7, 9:21-10:15. It also argued that retaining "sensitive post-judgment materials" would expose the Republic to data breaches and third-party subpoenas seeking to "end-run the FSIA." Dkt. 941 at 2. YPF likewise cited the "cumulative risk of disclosure" of its "highly sensitive documents and communications." Dkt. 940 at 3. The Court accepted those concerns, observing that "the specific material at issue includes nonpublic information about sovereign assets and communications of senior Argentine officials," and that the risk of a data breach "grows with each additional custodian." Dkt. 946 at 5.

None of those concerns applies to material that no party designated Confidential. Indeed, the Republic expressly argued that it "should bear those risks on its own behalf, not be exposed to double the risk by having its *confidential materials* in someone else's hands." Dkt. 941 at 2 (emphasis added). YPF likewise warned of the "risk of disclosure" from Plaintiffs' continued retention of "YPF's *confidential documents*." Dkt. 940 at 3 (emphasis added). Having justified their requests based on the risks of retaining confidential materials, the Republic and YPF now seek to require destruction of documents that were never designated Confidential.

The Republic now suggests that Non-Party productions may contain sensitive information that was not designated Confidential. But Plaintiffs shared those productions with the Republic as they were received, and to Plaintiffs' knowledge, the Republic has not challenged a single confidentiality designation. If the Republic believes particular documents should be designated Confidential, Plaintiffs' proposal allows it to seek that relief under the Protective Order. *See* Ex. A ¶ 16. There is no reason to require the return or destruction of all non-confidential documents based on speculative concerns the Republic has never

before raised about any particular production. The Court should preserve Paragraph 20(a)'s existing limitation to Confidential Discovery Material rather than requiring Plaintiffs to return or destroy documents that raise none of the concerns identified by the Republic and YPF.

***Contempt***. Plaintiffs propose making clear that failure to comply with the fourteen-day reproduction requirement constitutes contempt. The Order requires the Republic and YPF to reproduce their documents "[w]ithin fourteen days of an order of a presiding tribunal or court directing production." Dkt. 946 at 8. The Protective Order should expressly provide for contempt sanctions if that obligation is violated. As this Court observed, obtaining discovery from the Republic has been "like pulling teeth." July 7, 2026 Tr. at 15:16-17. Plaintiffs should not have to repeat that experience to obtain documents the Republic has already produced if a tribunal or court orders their production. The concern is even greater with YPF, which has insisted that arbitral tribunals have "no authority" to compel discovery from it "either directly or indirectly." Dkt. 940 at 2. YPF could assert that position to resist a future production order, notwithstanding this Court's fourteen-day requirement. Although the Republic and YPF argue that an express contempt provision would improperly prejudge whether contempt is warranted, the provision would not dispense with the ordinary requirements for contempt, which this Court would apply if a violation occurs. *See, e.g.*, *United States v. Wood, Wire & Metal Lathers Int'l Union, Local Union No. 46*, 471 F.2d 408, 411-12 & n.2 (2d Cir. 1973) (upholding consent decree providing that "breach of the agreement would be punishable as a contempt of the court").

***YPF and Non-Party Discovery Material.*** The Republic and YPF's proposed Paragraph 20(a) would also require Plaintiffs to return or destroy post-judgment discovery produced by YPF and Non-Parties, regardless of whether the documents are designated Confidential, the producing party requests their return, or the documents should have been produced before judgment. Ex. C. The Order permits Plaintiffs to identify additional documents for inclusion in Appendix A and suspends the obligation to return or destroy those documents until any dispute is resolved. Dkt. 946 at 9. But Appendix A currently contains only documents produced by the Republic. The proposed language fails to account for YPF and Non-Party documents that the parties may agree, or the Court may determine, should have been produced before judgment.

Plaintiffs should have the same opportunity to identify YPF and Non-Party documents that belong in Appendix A, including documents that were never designated Confidential or that the producing party has not requested be returned or destroyed. Any obligation to return or destroy those documents would be suspended until the parties agree or the Court resolves the dispute. YPF claims that Plaintiffs' proposal would allow them to retain documents merely by asserting that they should be retained. *See infra* p. 15. But Plaintiffs would not have the final say: as with the existing Appendix A protocol, the Court would resolve any dispute over retention. The Republic and YPF's proposal would instead require destruction without regard to whether Plaintiffs may be entitled to retain the documents, potentially forcing them to bear the unnecessary burden and expense of seeking the same discovery again. Plaintiffs' proposed language preserves access to these materials while leaving intact the Republic's, YPF's, and Non-Parties' rights to contest their inclusion in Appendix A.

**<u>The Republic's Position:</u>**

***Timing***. Consistent with this Court's October 19 order, the Republic proposed that Post-Judgment Discovery be returned or destroyed "[u]pon written request of the Designating Party." Ex. C ¶ 20(a); *see* Dkt. 946 at 8 ("The amended Protective Order shall provide, in sum and substance, that . . . [u]pon the Designating Party's written request under Paragraph 20(a), Plaintiffs shall return or destroy all Post-Judgment Discovery Material . . . ."). Plaintiffs seek to delay this, by providing that the written request may only be made "within sixty (60) days after dismissal or entry of final judgment not subject to further appeal in these Actions and the satisfaction of all Plaintiffs' judgments at issue in all Enforcement Actions." Ex. A ¶ 20(a).

Plaintiffs argue that, notwithstanding that the Court did not include this language it its October 19 order, it should be retained because the Court referenced "Paragraph 20(a) in the existing Protective Order," which included the language. But of course, the entire premise of the Court's October 19 order is that Paragraph 20(a) must be significantly revised to account for post-judgment discovery. Paragraph 20(a) of the existing protective order does not even mention post-judgment discovery, whereas Paragraph 20(a) of the modified protective order (under both parties' proposals) is *entirely* about post-judgment discovery.

Moreover, Plaintiffs' proposed limitation ignores the reasoning in this Court's October 19 Order. As this Court already held, at this stage the balance between efficiency and confidentiality "favors retention by the producing parties' counsel, rather than permitting additional copies to remain with Plaintiffs' counsel." Dkt. 946 at 5. "[T]he specific material at issue includes nonpublic information about sovereign assets and communications of senior Argentine officials" at risk of a data breach—a risk that "grows with each additional custodian and with each year the material sits outside the producing party's hands." *Id.* If Post-Judgment Discovery ever is needed again, it will be "produced promptly in its original form." *Id.* There is no need for Plaintiffs to retain it in light of these protections. Furthermore, the simple re-production of existing documents will not involve meaningful "duplication of effort and expense," and, to the extent it does, any expense would be borne by the Republic and YPF as the producing parties, not Plaintiffs.

***Scope***. Plaintiffs seek to limit the protections of Paragraph 20(a) only to material that has been "designated confidential." Ex. A ¶ 20(a). Plaintiffs' proposed language is contrary to this Court's October 19 order, which provided that "Plaintiffs shall return or destroy *all* Post-Judgment Discovery Material." Dkt. 946 at 8 (emphasis added). There is also no need for Plaintiffs to retain *any* Post-Judgment Discovery now, given that the producing parties' counsel will maintain copies of the Post-Judgment Discovery Material and produce it if needed in the future. Furthermore, although the Republic has made appropriate confidentiality designations in its productions, non-parties may have produced discovery containing the Republic's sensitive information without the appropriate designations. If the Court adopts Plaintiffs' proposed language, the Republic should have the opportunity to designate non-party discovery confidential under the terms of the Protective Order.

***Contempt***. Plaintiffs seek to insert language stating that: "Should the preserving party fail to produce the materials in their original form, bearing their original Bates numbers, within fourteen days of an order by a presiding tribunal or court directing production, such failure shall constitute contempt of this Order." Ex. A ¶ 20(a). Once again, this language has no basis in this Court's October 19 order, and this provision is inconsistent with the protective order as a whole, which does not purport to prejudge contempt, but includes in Paragraph 27 a recitation that the Court "retain[s] jurisdiction" to "enforce any obligations arising hereunder or to impose sanctions for any contempt thereof." There is no need for a unique

and different automatic contempt provision in Paragraph 20. Indeed, it would be improper. Holding a party in contempt requires individualized findings based on specific circumstances. For example, before holding a party in contempt, the Court must find that the party "has not diligently attempted in a reasonable manner to comply" with the relevant order, *N.Y. State Nat. Org. for Women* v. *Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989)—something that cannot possibly be pre-judged. Furthermore, the party seeking contempt bears the burden of proof by clear and convincing evidence, which again must be decided on a case-by-case basis. *N.Y. State Nat. Org. for Women* v. *Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). Plaintiffs appear to agree, accepting that "the provision would not dispense with the ordinary requirements for contempt." This admission underscores that Plaintiffs' proposed language is unnecessary and unfounded.

**<u>YPF's Position:</u>**

The Court's October 19 Order directs that "[u]pon the Designating Party's written request under Paragraph 20(a), Plaintiffs shall return or destroy all Post-Judgment Discovery Material." Dkt. 946 at 8. In reaching this determination, the Court concluded that the balance between litigation efficiency and confidentiality favored retention of the Post-Judgment Discovery Materials by the producing parties' counsel, not by Plaintiffs, recognizing that the risk of inadvertent disclosure "grows with each additional custodian and with each year the material sits outside the producing party's hands." Dkt. 946 at 5.

Plaintiffs' proposed revisions to Paragraph 20 again seek to nullify the Court's October 19 Order, and raise five problems:

*First*, in Paragraph 20(a), Plaintiffs seek to prevent YPF from requesting destruction of its Post-Judgment Discovery Materials until 60 days after "the satisfaction of all Plaintiffs' judgments at issue in all Enforcement Actions," delaying such destruction indefinitely, and potentially for many years. That proposal directly conflicts with the Court's October 19 Order and should be rejected.

*Second*, in Paragraph 20(b), Plaintiffs seek to delay YPF's and the Republic's ability to request destruction of ***pre***-judgment discovery material until 60 days after "the satisfaction of all Plaintiffs' judgments at issue in all Arbitration Enforcement Actions." YPF and the Republic respectfully submit that it is

sufficient for Plaintiffs to keep the pre-judgment discovery materials until "the conclusion of all Arbitration Proceedings and post-award remedies, and Arbitration Enforcement Actions," and not continue to hold onto such material until "the satisfaction of" all hypothetical future judgments.

*Third*, Plaintiffs seek to predetermine that a failure to reproduce Post-Judgment Discovery Materials within 14 days of a tribunal or court directing production automatically constitutes contempt. Whether a contempt finding is warranted is a determination left "to the informed discretion of the district court" and must be assessed "in relation to the facts." *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989). Plaintiffs' proposed language should be rejected because it improperly displaces the Court's independent judgment by foreclosing consideration of the full circumstances surrounding any alleged violation.

*Fourth*, Plaintiffs seek to create a new category of Post-Judgment Discovery Material produced by YPF or other Non-Parties that Plaintiffs contend should be retained and not destroyed by Plaintiffs. But Appendix A reflects a separate agreement between Plaintiffs and the Republic that was presented to the Court in July 2026. Dkt. 929. Plaintiffs never sought or obtained YPF's agreement to include *any* of YPF's documents on Appendix A at that time, and their request to do so now is an attempted end-run around the Court's October 19 Order. The documents included on Appendix A are defined as "material provided after September 15, 2023, if such material was related to the underlying claims and was requested to be provided before entry of judgment as identified on Appendix A." Definition G in Exhibit C. During the negotiations of Appendix A, Plaintiffs never (and still have not) identified any documents produced by YPF that they believed should be included on Appendix A, and YPF does not believe there are any. Moreover, Plaintiffs' new proposal appears to be untethered to the language in Definition G and contains no criteria for determining which YPF materials might qualify for continued retention, if any. It would thus permit Plaintiffs to suspend their destruction obligations merely by asserting that they believe that such materials "should otherwise be retained." This new proposal is inconsistent with the October 19 Order and should be rejected.

*Fifth*, Plaintiffs seek to limit the return or destruction obligation under Paragraph 20(a) to materials designated Confidential, notwithstanding the Court's express reference to "*all* Post-Judgment Discovery Material." Consistent with

Your Honor's ruling, Plaintiffs should be required to destroy ***all*** Post-Judgment Discovery Material.

### F. Paragraph 20(a) and (b): Satisfaction of Judgments or Conclusion of Proceedings

**Plaintiffs' Position:**

In Paragraphs 20(a) and (b), the Republic and YPF seek to replace the existing requirement that Plaintiffs' judgments be satisfied with a requirement that enforcement proceedings merely be concluded. Ex. C. Plaintiffs' proposal retains the language of Paragraph 20(a) of the operative Protective Order, which allows return or destruction only after "the satisfaction of all of Plaintiffs' judgments at issue in all Enforcement Actions." Dkt. 674 ¶ 20(a). The Republic offers no explanation for changing that language.

Under the Republic and YPF's proposal, Plaintiffs could be required to destroy discovery materials once enforcement proceedings conclude, even if the judgment remains unpaid and further enforcement efforts are necessary. Plaintiffs would then have to seek the same discovery again to pursue collection of an outstanding judgment. The existing language avoids that result by requiring satisfaction of the judgment, not merely the conclusion of enforcement proceedings. The Court should retain it.

**The Republic's Position:**

To avoid duplication of argument, the Republic adopts and incorporates YPF's position.

**YPF's Position:**

YPF addressed the timing arguments in the prior section.

Respectfully submitted,

Dated: October 30, 2026

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner
Arturo Carlos Schultz
SULLIVAN & CROMWELL, LLP
125 Broad Street
New York, NY 10004-2498
giuffrar@sullcrom.com

*Counsel for Defendant Argentine Republic*

*/s/ Mark P. Goodman*
Mark P. Goodman
Shannon Rose Selden
James J. Pastore
Wendy B. Reilly
J. Robert Abraham
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mpgoodman@debevoise.com
srselden@debevoise.com
jjpastore@debevoise.com
wbreilly@debevoise.com
jrabraham@debevoise.com

*Counsel to YPF S.A.*

*/s/ Andrew E. Goldsmith*
Mark C. Hansen
Derek T. Ho
Andrew E. Goldsmith
Diego Negron-Reichard
Tiffany Pages-Sanchez
KELLOGG HANSEN TODD
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
mhansen@kellogghansen.com
dho@kellogghansen.com
agoldsmith@kellogghansen.com
dnegron-reichard@kellogghansen.com
thorvath@kellogghansen.com

Paul D. Clement
C. Harker Rhodes IV
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Phone: (202) 742-8900
Fax: (202) 742-8895
paul.clement@clementmurphy.com
harker.rhodes@clementmurphy.com

Laura Harris
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2100
Fax: (212) 556-2222
Email: lharris@kslaw.com

Seth L. Levine
Alison M. Bonelli
LEVINE LEE LLP
400 Madison Ave
New York, New York 10017
slevine@levinelee.com
abonelli@levinelee.com

*Counsel for Plaintiffs Petersen Energía Inversora, S.A.U., Petersen Energía, S.A.U., Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P.*